IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **LORETO HERNALSTEEN,** | : | |
| | : | |
| Plaintiff, | : | Civil Action File No. |
| | : | |
| v. | : | |
| | : | |
| **ONE TRUST, LLC,** | : | Jury Trial Demand |
| | : | |
| Defendants. | : | |
| _____ | : | |

## COMPLAINT

Plaintiff, Loreto Hernalsteen ("Plaintiff"), by and through counsel undersigned, hereby submits her Complaint against the Defendant, One Trust, LLC ("Defendant"), and shows the Court the following:

## Authority

**1.**

This cause of action arises under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.*, ("Title VII"), seeking a remedy for race, sex, and national origin discrimination and retaliation; the Equal Pay Act of 1963 ("EPA"), as amended, which is part of the Fair Labor Standards Act of 1938, as amended, seeking compensation for unequal pay/treatment; and, under

the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), seeking compensation for significant loss of stock options, all of which occurred during the course of Plaintiff's employment with and termination by Defendant.

**Parties, Jurisdiction and Venue**

**2.**

At all times relevant to this action, Plaintiff was a resident of the Northern District of the State of Georgia.

**3.**

Defendant is a foreign limited liability company, doing business in the State of Georgia, with its principal office address at 1200 Abernathy Road, Building 600, Atlanta, Georgia 30342. Defendant may be served via its registered agent, C T Corporation System, 289 South Culver Street, Lawrenceville, Georgia 30305.

**4.**

The jurisdiction of this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

**5.**

All jurisdictional prerequisites to the institution of Plaintiff's lawsuit have been fulfilled. Plaintiff filed her initial Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the

discriminatory acts; Plaintiff was issued a Notice of Right to Sue from the EEOC; and, Plaintiff now files this Complaint within 90 days of receipt of said Notice. Plaintiff's July 30, 2022 EEOC Charge of Discrimination is attached hereto as **Exhibit A**.

6.

Pursuant to 28 U.S.C. § 1391, venue is appropriate in this judicial district as Defendant is subject to the federal rules of law and the United States District Court for the Northern District of Georgia.

## Factual Allegations

7.

Plaintiff, who is of Chilean descent, had approximately 20 years of experience in her field, and was employed by Defendant for 4 ½ years.

8.

At the time of Plaintiff's termination by Defendant, her title was Localization Manager.

9.

In approximately May of 2021, Plaintiff was given a new immediate supervisor, Nandini Chennur ("Chennur").

**10.**

During the time Plaintiff reported to Chennur, Chennur began treating Plaintiff with disrespect.

**11.**

Chennur began circumventing Plaintiff's authority as to Plaintiff's 14 direct reports, by communicating with them directly, and excluding Plaintiff from the process.

**12.**

Plaintiff was removed from the Company managers' group email, so that she was basically isolated from her peers in regard to the day-to-day business and managerial communications within the Company.

**13.**

In or about December of 2021, one of Plaintiff's direct reports began behaving unprofessionally in an insubordinate manner, and using abusive language toward Plaintiff.

**14.**

Plaintiff advised Chennur, who was completely non-responsive in regard to Plaintiff's requests for assistance or intervention regarding the abusive employee.

15.

Therefore, Plaintiff advised the Human Resources Department ("HR") and the Legal Team of the situation regarding the abusive employee, and Chennur's failure to intervene or assist.

16.

To Plaintiff's knowledge, neither HR, the Legal team, nor Chennur ever made any effort to intervene or stop the employee's abusive behavior toward Plaintiff.

17.

Instead, on February 4, 2022, without any prior warning, Plaintiff was unjustly terminated.

18.

Defendant's reason for terminating Plaintiff, indicated on the Separation Notice she was first given, was ". . . inability to perform her duties in a management role."  The role she had been performing for over 4 ½ years without any complaints from her managers, including Chennur.

19.

When Plaintiff asked that the Company provide her with proof of its stated reason for her termination, the Company re-issued Plaintiff's Separation Notice with

the reason for termination changed to "[m]utual agreement to separate employment due to re-organizational design."

**20.**

Prior to Chennur, Plaintiff had two immediate supervisors at One Trust, LLC, both of whom gave Plaintiff only positive feedback. And, other than the abusive, insubordinate employee, Plaintiff was respected, admired and well-liked by her team members.

**21.**

Chennur, apparently, felt differently about Plaintiff, but unfortunately, never expressed any such dissatisfaction to Plaintiff, nor, to Plaintiff's knowledge, to anyone else in the Company.

**22.**

In fact, Plaintiff never received any type of warning or criticism from Chennur or any other superior. Plaintiff was never written-up, nor put on a performance improvement plan.

**23.**

In fact, shortly before being terminated by Defendant, in late November or December of 2021, Plaintiff received a performance-based salary increase.

**24.**

Nevertheless, during Plaintiff's tenure with the Company, she was paid a salary that was, in general, less than the market value of a similar position in Plaintiff's field of expertise, and for someone with Plaintiff's considerable experience. In fact, other White, non-Chilean, male employees were paid more than Plaintiff, despite doing the exact same job as Plaintiff.

**25.**

Following Plaintiff's termination, Defendant filled Plaintiff's former position with a White male, who had little or no similar experience, as compared to Plaintiff.

**26.**

Prior to Plaintiff being hired by Defendant, she was encouraged to consider that the stock options potential the Company offered would make up for her lower salary.

**27.**

In the end, Plaintiff's stock options, which were valued at approximately $120,000.00 at the end of 2021, were fully-vested 1 week before Plaintiff's discriminatory termination.

## COUNT I
## (Race, Sex and National Origin Discrimination and Retaliation - Title VII)

**28.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**29.**

Defendant discriminated against Plaintiff because she is a Chilean female.

**30.**

As evidence of sex discrimination, Plaintiff was treated differently than similarly situated, male coworkers/managers, resulting in Plaintiff being marginalized, and ultimately, being terminated.

**31.**

As evidence of race and national origin discrimination, Plaintiff was treated differently than similarly situated, coworkers/managers, who did not share her Chilean background, resulting in Plaintiff being marginalized, and ultimately, being terminated.

**32.**

As Plaintiff repeatedly requested direction and assistance from Chennur in dealing with an insubordinate employee, Chennur ignored Plaintiff, while meeting

weekly with Plaintiff's coworkers/managers to discuss work projects and any other issues concerning the workplace. Plaintiff was excluded from these meetings.

**33.**

Additionally, Plaintiff was removed from the Company managers' group email, so that she was basically isolated from her peers in regard to the day-to-day business and managerial communications within the Company.

**34.**

Defendant falsely accused Plaintiff of poor management when other non-Chilean and/or male employees, who were similarly situated to Plaintiff, had been given written and/or verbal warnings about their poor performance, but were not terminated, like Plaintiff.

**35.**

These other managers were similarly situated to Plaintiff in all material aspects, so that the differential treatment amounts to an inference of discrimination due to Plaintiff being female and due to her Chilean background.

**36.**

Defendant discriminated against Plaintiff because of her race, sex and national origin and retaliated against her by terminating her employment, all of which was done in violation of Title VII.

**37.**

At the time of the discriminatory acts alleged, Defendant knew or should have known, that the means utilized to discriminate against Plaintiff were discriminatory and forbidden by law.

**38.**

Defendant performed the above described discriminatory actions willfully, wantonly, intentionally and in reckless and callous disregard of Plaintiff's federally protected rights.

**39.**

As a direct result of Defendant's race, sex and national origin discrimination and subsequent retaliation, Plaintiff lost earnings and lost her substantial stock options, lost her benefits, and, incurred and continues to incur, litigation costs and attorney's fees.

**COUNT II**
**(Wage Discrimination - EPA)**

**40.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**41.**

Defendant discriminated against Plaintiff by paying her less than the standard market value that White, male or non-Chilean employees with Plaintiff's expertise and experience would be paid.

**42.**

Defendant convinced Plaintiff that her stock options potential would more than make up for any salary deficiency she sustained.

**43.**

Considering Defendant's assurances regarding her stock options potential, Plaintiff accepted the position with a lower than average salary for her position and experience.

**44.**

Then, 1 week after her stock options became fully-vested, Plaintiff was terminated by Defendant, without warning of any kind, and without justifiable cause, which caused her to lose over $120,000.00 in stock options.

**45.**

Defendant discriminated against Plaintiff by creating a disparity in her annual salary as compared to the annual salaries of other White, male or non-Chilean persons with like and/or similar expertise and experience as Plaintiff.

**46.**

Defendant performed the above described actions willfully, wantonly, intentionally and in reckless and callous disregard of Plaintiff's federally protected rights.

**47.**

As a direct result of Defendant's actions, Plaintiff lost earnings. lost her substantial stock options, lost her benefits, and, incurred and continues to incur, litigation costs and attorney's fees.

## COUNT III
**(Suspicious, Arbitrary and Capricious Termination - ERISA)**

**48.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**49.**

ERISA, the Employee Retirement Income Security Act of 1974, is a federal law that sets minimum standards for most voluntarily-established retirement and health plans in private industry to provide protection for individuals in these plans.

**50.**

This federal law applies to almost all private employers who offer benefits. The rules of ERISA regulate standards, requirements, and conduct for management

and fiduciaries in charge of plans. Employers and fiduciaries are accountable to federal oversight. Transparency toward the recipient is required. Discriminatory practices are prohibited.

**51.**

ERISA does not require employers to offer benefits, but it does regulate the standards of employers who choose to do so. An ERISA-subjected benefits package must be given in writing.

**52.**

Defendant's Notice of Option Grant (Installment Exercise) and the Option Agreement were presented to Plaintiff, in writing.

**53.**

If not stated verbatim in ERISA, it is tacitly evident that plans subject to ERISA law, are to be conducted fairly, and in accordance with the stated regulations and/or requirements of the plans, as well as in accordance with ERISA.

**54.**

According to the terms of Defendant's Option Agreement, Plaintiff's stock options, in the approximate amount of $120,000.00, were fully-vested 1 week before Defendant terminated Plaintiff without cause.

**55.**

Plaintiff's interests were not protected, nor was she treated fairly in regard to Defendant's Option Agreement, the vesting of Plaintiff's stock options, and the extremely questionable timing of Plaintiff's termination.

**56.**

Defendant performed the above described actions willfully, wantonly, intentionally and in reckless and callous disregard of Plaintiff's federally protected rights.

**57.**

As a direct result of Defendant's actions, Plaintiff lost earnings, lost her substantial stock options, lost her benefits, and, incurred and continues to incur, litigation costs and attorney's fees.

**COUNT IV**
**(Breach of Contract)**

**58.**

Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in the preceding paragraphs.

**59.**

Plaintiff and Defendant entered into a contract for the vesting and purchase of stock options from the Defendant to the Plaintiff.

**60.**

At the time of her unfair, illegal termination, Plaintiff was fully-vested for over $120,000.00 of Defendant's stock options that Defendant had offered Plaintiff and to which Plaintiff accepted by working for Defendant for over 4 ½ years.

**61.**

Defendant breached the contract with Plaintiff for the vesting and purchase of the stock options by unfairly and without cause terminating Plaintiff so that she lost the benefit of the bargain, i.e., the stock options.

**62.**

Defendant violated the duty of good faith contained in every contract by terminating Plaintiff without any write-ups or warnings of any kind that her work performance was somehow deficient.

**63.**

Because of Defendant's bad faith breach of contract, Plaintiff has lost the benefit of the bargain, in the amount of $120,000.00, or in a greater amount to be determined at trial.

**WHEREFORE**, Plaintiff respectfully prays for judgment against the Defendant, as follows:

(a) That Defendant be permanently enjoined from discriminating and retaliating against Plaintiff on any basis whatsoever;

(b) That Defendant be ordered to formulate, distribute and implement a written policy which does not discriminate in any manner which is a violation of Title VII, the EPA, or ERISA;

(c) That Defendant be ordered to compensate, reimburse, and make whole the Plaintiff for all the benefits, if any, she would have received had it not been for Defendant's illegal actions, including but not limited to pay, benefits, stock options value, insurance costs, bonuses, raises, training, promotions, and seniority;

(d) That Plaintiff be awarded compensatory damages to compensate for the humiliation, pain, suffering and stigma associated with race-based, sex-based and national origin-based discrimination and retaliation;

(e) That Plaintiff be awarded punitive damages to punish Defendant for its unlawful actions;

(f) That Plaintiff recover costs and expenses of litigation, including an award of reasonable attorney's fees;

(g) That Plaintiff recover prejudgment interest;

(h) That the Court issue a declaratory judgment that the practices complained of are unlawful and void; and

(i) For such other and further relief as the Court deems just and proper.

## **Jury Demand**

Plaintiff herein demands a trial by jury of all issues in this action.

Dated this 18th day of August 2023.

                                  **PANKEY & HORLOCK, LLC**

                                  By: */s/ Larry A. Pankey*
                                        Larry A. Pankey
                                        Georgia Bar No. 560725
                                        ***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338
Telephone:  770-670-6250
Facsimile:    770-670-6249
LPankey@PankeyHorlock.com

## CERTIFICATION OF FONT SIZE

Pursuant to Local rule 5.1C of the Local Rules of the United States District Court for the Northern District of Georgia, I, Larry A. Pankey, of Pankey & Horlock, LLC, attorney for Plaintiff, Loreto Hernalsteen, hereby certify that the foregoing **COMPLAINT** is typewritten in MS Word using Times New Roman font, fourteen (14) point type.

Dated this 18th day of August 2023.

**PANKEY & HORLOCK, LLC**

By: */s/ Larry A. Pankey*
    Larry A. Pankey
    Georgia Bar No. 560725
    ***Attorneys for Plaintiff***

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **LORETO HERNALSTEEN,** | : | |
| | : | |
| Plaintiff, | : | **Civil Action File No.** |
| | : | |
| v. | : | |
| | : | |
| **ONE TRUST, LLC,** | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **Complaint** with the Clerk of Court using the CM/ECF system.

Dated this 18th day of August 2023.

            **PANKEY & HORLOCK, LLC**

            By: */s/ Larry A. Pankey*
              Larry A. Pankey
              Georgia Bar No. 560725
              ***Attorneys for Plaintiff***

1441 Dunwoody Village Parkway
Suite 200
Atlanta, Georgia 30338
Telephone:  770-670-6250
Facsimile:    770-670-6249
LPankey@PankeyHorlock.com