IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO.: |
| v. | ) ) | |
| RAM PRO CONSTRUCTION LLC, | ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Continental Casualty Company ("Continental") files this complaint for damages as follows.

## PARTIES

### 1.

Continental is a corporation organized under the laws of Illinois with is principal place of business in Illinois.

### 2.

Ram Pro Construction LLC ("Ram Pro") is a limited liability company organized in Georgia, has its principal office address at 2260 NW Parkway SE,

Marietta, Georgia 30067, and is a citizen of Georgia for the purposes of federal court jurisdiction, where its only members Reza Madadi and Hossein Moradi are citizens. It may be served through its registered agent, RMZbuilders LLC, at 2045 Glenwood Avenue SE, Atlanta Georgia, 30316.

## JURISDICTION AND VENUE

### 3.

There is complete diversity of citizenship between Continental, which is a citizen of Illinois, and Defendant, which is a citizen of Georgia, for purposes of federal court jurisdiction.

### 4.

The amount in controversy exceeds $75,000.00.

### 5.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

### 6.

Defendant is subject to the personal jurisdiction of this Court.

7.

Venue is proper in the Atlanta Division of the Northern District of Georgia, where Defendant resides. 28 U.S.C. § 1391(b); N.D. Ga. L.R. 3.1.

## FACTS

8.

In March of 2019 Ram Pro submitted an application for workers' compensation insurance that was signed by its member, Reza Madadi and producer Joe Baker with agency Pointenorth Insurance Group LLC. A true and complete copy of the application materials that were included with the binder for coverage are attached hereto as Exhibit 1, which is herein incorporated by reference.

9.

The application signed by Reza Madadi included a section entitled "INDIVIDUALS INCLUDED/EXCLUDED" that listed only Reza Madadi as Ram Pro's member with 100% ownership in the business.

10.

The application further included a Premium Calculator Worksheet that was completed to show that Ram Pro had one (1) employee, and identified the business

as falling within the Class Codes 5474 and 5445 as "Painting NOC Shop Operations Drivers" and "Plasterboard or Cement Board Installation – Within Buildings" respectively.

11.

The application listed Ram Pro's mailing address as 2950 Springdale Rd. SW Apt. B6, Atlanta, GA 30315-7847.

12.

The application then included an "estimated annual premium" which was calculated at a total of $1,621.

13.

Based on the information provided in the application, Continental issued an assigned risk workers' compensation insurance policy to Ram Pro as the named insured, Policy No. 6S59UB-1K87060-8-19, for the policy period March 2, 2019 to March 2, 2020.

14.

Apart from a brief lapse in coverage in May 2021, the policy was renewed annually up to the 2021-2022 term during which time it was cancelled effective

December 7, 2021.

15.

True and complete copies of the following policies issued to Ram Pro are attached to Mark Mocadlo's Declaration, which is enclosed hereto as <u>Exhibit 2</u>, as Exhibits A to D, respectively and which are herein incorporated by reference:

- Policy No. 6S59UB-1K87060-8-19 for the period March 2, 2019 to March 2, 2020 ("2019 Policy");

- Policy No. 6S59UB-1K87060-8-20 for the period March 2, 2020 to March 2, 2021 ("2020 Policy");

- Policy No. 6S59UB-1K87060-8-21 for the period March 2, 2021 to May 2, 2022 ("March 2021 Policy");

- Policy No. 6S59UB-5R85820-7-21 for the period May 4, 2021 to December 7, 2021 ("May 2021 Policy");

(collectively, the "Policies").

16.

The 2019 and 2020 Policies were issued to Ram Pro at 2950 Springdale Rd. SW Apt. B6, Atlanta, GA 30315-7847.

17.

The March and May 2021 Policies were issued to Ram Pro at 2045 Glenwood Ave. SE, Atlanta, GA 30316.

18.

The estimated premium of $1,620.00 was applied to the 2019, 2020 and March 2021 and May 2021 Policies.

19.

Each of the policies included the following notice on the Information Page:

> The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All required information is subject to verification and change by audit to be made ANNUALLY.

20.

The 2019 and 2020 Policies included the following notice to the policyholder:

**ATTENTION: GEORGIA CONTRACTORS**
**YOU MAY BE LIABLE FOR WORKERS COMPENSATION**
**COVERAGE FOR YOUR CONTRACTORS**

Did you know that if you have Workers' Compensation Insurance in Georgia and you use contractors in your business you may be liable for uninsured contractors? Without valid Workers' Compensation

certificates of insurance for your contractors you may be charged an additional premium.

21.

The March and May 2021 Policies included the following notice to the policyholder:

**ATTENTION: CONTRACTORS**
**YOU MAY BE LIABLE FOR WORKERS COMPENSATION**
**COVERAGE FOR YOUR CONTRACTORS**

Did you know that if you have Workers' Compensation Insurance and you use contractors in your business you may be liable for uninsured contractors? Without valid Workers' Compensation certificates of insurance for your contractors you may be charged an additional premium.

22.

The Policies also included the following terms under **PART FIVE PREMIUM, E. Final Premium**:

the premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance.

23.

The Policies further included an endorsement entitled **"PREMIUM DUE**

DATE ENDORSEMENT" that amended **PART FIVE PREMIUM, D. Premium Payments** to state: "You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid. **The due date for audit and retrospective premiums is the date of the billing.**"

24.

The Policies further provided under **PART FIVE PREMIUM, F. Records** that "[y]ou will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them."

25.

The Policies further provided under **PART FIVE PREMIUM, G. Audit:**

> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

26.

The Policies further provided under **PART FIVE PREMIUM, C. Remuneration** that:

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

> 1. all your officers and employees engaged in work covered by this policy; and
> 2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

27.

The Policies also included an endorsement entitled "**AUDIT NONCOMPLIANCE CHARGE ENDORSEMENT**" that permits a maximum audit noncompliance charge multiplier of up to two times the annual premium if the insured does not allow Continental to "examine and audit all of your records that relate to this policy, and/or do not provide audit information as requested."

28.

On February 20, 2020, Continental sent Ram Pro a premium audit online invitation so Continental could perform an audit to determine if Ram Pro owed an additional premium for the 2019 Policy.

29.

Ram Pro did not report any employees or contract labor in the records it submitted for the audit nor did it report any payments to workers during the 2019 policy period.

30.

Accordingly, Continental determined that Ram Pro did not have any payroll for the 2019 Policy and that no additional premium was owed.

31.

In June of 2021 NEIS, Inc. performed an audit on behalf of Continental to determine if Ram Pro owed an additional premium for the 2020 Policy.

32.

Ram Pro submitted records, including 1099s and its 1120-S, which indicated that Ram Pro had paid $744,217.00 for labor costs in 2020.

33.

The audit for the 2020 Policy revealed $54,600.00 of payroll exposure and $320,746 of uninsured subcontractor exposure.

34.

Based on the audit and Ram Pro's confirming that it made payments to uninsured subcontractors while the 2019 Policy was in effect, Continental issued

Ram Pro revised premium adjustment notices reflecting a total earned premium of $50,734.00 for the 2019 Policy and $439,337.00 for the 2020 Policy.

35.

These revised premium adjustment notices are attached to <u>Exhibit 2</u> as Exhibit E and Exhibit F respectively and are herein incorporated by reference.

36.

The May 2021 Policy was cancelled effective December 7, 2021.

37.

Following the cancellation of the May 2021 Policy, Continental performed a cancellation audit on the March and May 2021 Policies.

38.

Based on the cancellation audit of the March and May 2021 Policies, Continental issued Ram Pro revised premium adjustment notices reflecting a total earned premium of $34,852.00 for the March 2021 Policy and $187,721.00 for the May 2021 Policy. The revised premium adjustment notices are attached to <u>Exhibit 2</u> as Exhibit G and Exhibit H respectively and are herein incorporated by reference.

39.

Continental later sent revised premium adjustment notices to Ram Pro dated January 9, 2023 reflecting the following revised premiums and informed Ram Pro

that these amounts could be further revised to account for incomplete information including copious missing checks during all policy periods:

- $35,833.00 for the 2019 Policy;

- $194,285.00 for the 2020 Policy;

- $27,207.00 for the March 2021 Policy;

- $183,785.00 for the May 2021 Policy.

40.

The January 9, 2023 premium adjustment notices are attached to <u>Exhibit 2</u> as Exhibit I, Exhibit J, Exhibit K, and Exhibit L respectively and are incorporated by reference.

41.

As of the date of filing, Ram Pro has not provided copies of any of the missing checks in response to Continental's requests for same.

42.

As of the date of filing, Ram Pro has not paid Continental the balances owed for all of the Policies, which totals at least $416,197.73.

## COUNT I – BREACH OF CONTRACT

43.

Continental hereby incorporates by reference the preceding paragraphs of this complaint as though fully restated herein.

44.

Ram Pro entered into insurance contracts with Continental for workers' compensation coverage that resulted in the Policies described above.

45.

As a result of the auditing of these policies, it was calculated that Ram Pro owes Continental more than the premiums that were paid.

46.

As such, Ram Pro is indebted to Continental and is liable and bound to pay the outstanding premium balance for the Policies, totaling at least $416,197.73.

47.

The amounts were calculated based on the information Ram Pro has provided Continental to date.

48.

Ram Pro incurred these debts through false pretenses, false representation, or actual fraud.

49.

Despite demands for payment, Ram Pro has failed to pay the outstanding premium balance owed, in breach of the Policies' terms.

50.

WHEREFORE, Continental requests the following:

1. A trial by jury on all issues so triable;

2. That Continental be awarded damages against Ram Pro for its contractual debt plus pre-judgment and post-judgment interest;

3. That all costs of this action be taxed against Defendant; and

4. For such other and further relief that this court deems just and proper.

This 18th day of August, 2023.

**FREEMAN MATHIS & GARY, LLP**

*/s/ Jessica C. Samford*
Jessica C. Samford
Georgia Bar No. 231518
jsamford@fmglaw.com
Adam P. Reichel
Georgia Bar No. 377812
adam.reichel@fmglaw.com
*Counsel for Plaintiff*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)