IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATLANTIC STATES INSURANCE COMPANY, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE NO. |
| DIAL GOD, LLC and IQUATICS TROPICAL FISH, LLC, | |
| Defendants. | |

## **COMPLAINT FOR DECLARATORY JUDGMENT**

COMES NOW ATLANTIC STATES INSURANCE COMPANY, Plaintiff in the above-styled matter, and files this Complaint for Declaratory Judgment, showing this Honorable Court as follows:

## **PARTIES**

1.

Atlantic States Insurance Company ("Atlantic States") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in the Commonwealth of Pennsylvania.

2.

Dial God, LLC ("Dial God") is a domestic limited liability company organized under the laws of the state of Georgia with its principal place of business in the state of Georgia. Dial God may be served with process through its registered agent, United States Corporation Agents, Inc., at 11175 Cicero Drive, Suite 100, Alpharetta, Georgia 30022. Dial God has the following members: David Lee and Lisa Lee. Members David Lee and Lisa Lee are individuals who reside and are domiciled in the state of Georgia and have the present intention to remain in Georgia. Dial God is subject to the jurisdiction and venue of this Court.

3.

iQuatics Tropical Fish, LLC ("iQuatics") is a domestic limited liability company organized under the laws of the state of Georgia. iQuatics may be served with process through its registered agent, Michael Nguyen, at 3831 Angora Place, Duluth, Georgia 30096. iQuatics has the following member: Michael Nguyen. Member Michael Nguyen is an individual who resides in and is domiciled in the state of Georgia and has the present intention to remain in Georgia. iQuatics is subject to the jurisdiction and venue of this Court.

**JURISDICTION**

4.

This Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 because this action is between citizens of different states and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. The Underlying Lawsuit (defined below) awarded a final judgment in the amount of $256,147.19 to iQuatics.

5.

This Court has personal jurisdiction over the Defendants because the Underlying Lawsuit (defined below) was decided in the Superior Court of Gwinnett County, Georgia, which lies within this judicial district and division of the Court, and each Defendant is present in, or has substantial contacts with, Georgia.

6.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**NATURE OF ACTION**

7.

This is a complaint for declaratory judgment brought pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 to declare the rights and

other legal relations surrounding questions of actual controversy that presently

exist between Atlantic States and the Defendants.

8.

A controversy of a judicial nature presently exists among the parties which

demands a declaration by this Court in order that Atlantic States may have its

rights and duties under the relevant contract of insurance determined and avoid the

possible accrual of damages.

9.

Each named defendant herein has been joined in compliance with case law

requiring the insurer seeking a declaratory judgment to bring into the action all

individuals or entities that have a financial or other interest in the outcome of the

coverage issues to be decided through declaratory judgment.

## THE UNDERLYING CLAIMS AND LAWSUIT

10.

On August 31, 2020, Dial God, as landlord, filed a dispossessory action

against its tenant, iQuatics, in the Magistrate Court of Gwinnett County, file

number 20-M-18835 seeking to recover for unpaid rents upwards of $50,000.00

(the "Dispossessory Action"). Dial God, LLC v. iQuatics Tropical Fish, LLC, No.

20-M-18835 (Gwinnett Co. Mag. Ct. 2020).

11.

On October 28, 2020, the Dispossessory Action was dismissed, by the Magistrate Court, for want of prosecution and the failure of both Dial God and iQuatics to appear for a dispossessory calendar. Id.

12.

On March 10, 2022, iQuatics filed a lawsuit against Dial God in the Superior Court of Gwinnett County, civil action file number 22-A-01926-10 (the "Underlying Lawsuit"). See Underlying Lawsuit attached hereto as **Exhibit A**. Dial God did not file an answer in the Underlying Lawsuit.

13.

The Underlying Lawsuit identifies Dial God's registered agent of service as "United States Corporation Agents, Inc.," at "1420 Southlake Plaza Drive, Morrow, Georgia 30260." See **Ex. A**, at ¶ 3.

14.

iQuatics alleged that it entered into a lease agreement with Dial God concerning property located in a shopping center known as "Merchants Exchange" in Duluth, Gwinnett County, Georgia. Id. at ¶ 6.

15.

iQuatics contended that, pursuant to lease agreement, Dial God was required to maintain the roof of the property, leased by iQuatics, but Dial God failed to do so thus, breaching the lease agreement. Id. at ¶ 8.

16.

Through Dial God's breach of its duty to repair the roof, iQuatics claimed that it lost many valuable fish due to contamination from water intrusion. iQuatics maintained that it notified Dial God of the roof leaks, but same were routinely ignored. Id. at ¶¶ 9-10.

17.

Despite making efforts to remove water and clean up the property, iQuatics was allegedly forced to shut down its business and move from the property that it rented from Dial god. Id. at ¶¶ 11-12.

18.

Upon information and belief, the roof leaks had been occurring since April 2019.

19.

Through the Underlying Lawsuit, iQuatics sought a judgment in excess of $400,000.00 and an award of attorney's fees. Id. at ¶¶ 13-14.

20.

The Affidavit of Service in the Underlying Lawsuit shows that, on March 14, 2022, Dial God was served through its registered agent Tanisha Wilson at 1420 Southlake Plaza Drive, Morrow, Georgia 30260. See Affidavit of Service attached hereto as **Exhibit B**.

21.

An Amended Affidavit of Service was filed in the Underlying Lawsuit on July 14, 2022, showing the same registered agent, Tanisha Wilson at 1420 Southlake Plaza Drive, Morrow, Georgia 30260. See Amended Affidavit of Service attached hereto as **Exhibit C**.

22.

On July 14, 2022, an order was entered in the Underlying Lawsuit, granting an entry of default against Dial God and setting a hearing on damages for August 8, 2022. See Entry of Default attached hereto as **Exhibit D**. Upon information and belief, the Entry of Default and notice of the hearing was sent to every party to the Underlying Lawsuit, including Dial God, in July 2022.

23.

Dial God ultimately did not attend the final hearing on damages and, thus, iQuatics was awarded a judgment in the Underlying Lawsuit in the amount of

$256,147.19 on September 15, 2022. <u>See</u> Final Judgment attached hereto as

**Exhibit E**.  Dial God seeks to have Atlantic States pay this judgment.

## <u>THE POLICY</u>

### 24.

Atlantic States issued a commercial general liability insurance policy to Dial

God, policy number CPA9256987, with an effective policy period of January 15,

2020 through January 15, 2021 (the "Policy"). <u>See</u> Policy attached hereto as

**Exhibit F**.

### 25.

The Policy contains the Commercial General Liability Coverage Form (CG

00 01 12 14), which provides the following with respect to coverages:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

[. . .]

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE**
**LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or

"property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [. . .]

<u>See</u> **Ex. F**, CGL Form, at p. 1 of 13.

[. . .]

26.

The Commercial General Liability Coverage Form, in the Policy, further

contains the following exclusion:

**2. Exclusions**
This insurance does not apply to:

**a. Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

<u>See</u> **Ex. F**, CGL Form, at p. 1 of 13.

[. . .]

27.

The Commercial General Liability Coverage Form, in the Policy, further

contains the following conditions precedent to coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

[. . .]

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

       You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    **c.** You and any other involved insured must:

        **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **(2)** Authorize us to obtain records and other information;

        **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

See **Ex. F**, CGL Form, at p. 9 of 13.

[. . .]

28.

The Commercial General Liability Coverage Form, in the Policy, contains

the following relevant definitions:

**SECTION V – DEFINITIONS**

[. . .]

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

[. . .]

**17.** "Property damage" means:
   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of physical injury that caused it; or
   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. [. . .]

[. . .]

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
   **a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

See **Ex. F**, CGL Form, at pp. 12-13.

[. . . .]

29.

The Policy further contains the following endorsement which modifies the

definitions in the Commercial General Liability Coverage Part:

**I.** The definition of "occurrence" as found in **SECTION V – DEFINITIONS** is replaced by the following:

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" also means an accident involving:

    **a.** "Property damage" to "your work" if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor and the "property damage" is included within the "products-completed operations hazard"; or

    **b.** "Property damage" to other than "your work" that arises from "your work".

**II.** The following is added to Paragraph **17.** "Property Damage" as found in **SECTION V – DEFINITIONS**:

    **c.** "Property damage" does not include any loss, cost or expense to correct any defective, faulty or incorrect work performed by you or by any contractors or subcontractors working directly or indirectly on your behalf.

See **Ex. F**, Amendments to Policy Definitions, at p. 1 of 1.

[. . . .]

## NOTICE OF THE OCCURRENCE AND SUIT

30.

The Underlying Lawsuit was filed on March 10, 2022 and Dial God was served on March 14, 2022, via its registered agent, United States Corporation Agents, Inc., at 1420 Southlake Plaza Drive, Morrow, Georgia 30260. See **Ex. A**, generally; **Ex. B**, generally.

31.

On January 10, 2020, Dial God, through David Lee, filed its annual

registration, with the Georgia Secretary of State for the periods of 2020, 2021, and

2022 wherein it is clearly shown that Dial God's registered agent is: United States

Corporation Agents, Inc., at 1420 Southlake Plaza Drive, Morrow, Georgia 30260.

See Annual Registration for 2020 from the Georgia Secretary of State's website

attached hereto as **Exhibit G**.

32.

Georgia Secretary of State records show that Dial God has had the same

registered agent, United States Corporation Agents, Inc., since its formation in

2013.

33.

On July 21, 2022—approximately eighteen (18) days prior to the hearing on

damages in the Underlying Lawsuit—Dial God filed a Statement of Change of

Address of Registered Office. See Statement of Change of Address, attached

hereto as **Exhibit H**.

34.

Dial God's registered agent remained United States Corporation Agents, Inc.; however, Dial God changed the registered office address to 8905 Indian Wells Ct., Duluth, Georgia 30097. <u>See</u> **Ex. H**, at p. 1.

35.

Notably, the address 8905 Indian Wells Ct., Duluth, Georgia 30097 is that of a residential property owned by "Lee David & Lisa K Living Trust." <u>See</u> Forsyth County Property Record Search, attached hereto as **Exhibit I**. In other words, Dial God's owners changed the registered agent's address to that of their own house, immediately prior to the hearing on damages. <u>See</u> **Ex. H**, at p. 1.

36.

Atlantic States did not receive notice of the Underlying Lawsuit until February 9, 2023—approximately five (5) months after final judgment was entered in favor of iQuatics and approximately eleven (11) months after Dial God was served with the Underlying Lawsuit. <u>See</u> **Ex. B**, generally.

37.

Despite Dial God having known about the water leaks since approximately April 2019, Atlantic States did not receive notice of the water leaks or issues

surrounding same until around September 2020—approximately one (1) year and five (5) months later.

38.

Atlantic States was not immediately forwarded copies of any demands, notices, summonses or legal papers until February 9, 2023—approximately five (5) months after final judgment was entered in favor of iQuatics and approximately eleven (11) months after Dial God was served with the Underlying Lawsuit. See **Ex. B**, generally.

**COUNT I**

39.

Atlantic States hereby realleges and incorporates paragraphs 1 through 38 of this Complaint as if set forth fully herein.

40.

Coverage A of the Policy states, in part, that Atlantic States will pay those sums that Dial God becomes legally obligated to pay as damages because of "bodily injury" or "property damage" resulting from and "occurrence." See **Ex. F**, CGL Form at p. 1 of 13.

- 15 -

41.

An "occurrence" is generally defined by the Policy as an "accident." <u>See</u> **Ex. F**, Amendments to Policy Definitions, at p. 1 of 1.

42.

The Underlying Lawsuit did not allege that iQuatics' property, rented from Dial God in accordance with the lease agreement, was damaged as a result of an "occurrence," or accident. Rather, the Underlying Lawsuit alleged that Dial God failed to maintain the roof, in accordance with its duties under the lease agreement, such that water intruded, causing the loss of iQuatics' tropical fish. <u>See</u> **Ex. A**, at ¶¶ 8-9.

43.

iQuatics' claims, in the Underlying Lawsuit, all stem from Dial God's alleged breach of the lease agreement by its failure to repair the roof. <u>See</u> **Ex. A**, generally.

44.

Consequently, because the Underlying Lawsuit did not allege any injuries or damages caused by an "occurrence" or an accident, Atlantic States should have no duty to indemnify Dial God or iQuatics under Coverage A of the Policy in connection with the judgment awarded in the Underlying Lawsuit.

- 16 -

45.

Atlantic States is, therefore, entitled to a declaratory judgment that it is not under a duty to indemnify Dial God or iQuatics under Coverage A of the Policy for the judgment awarded in the Underlying Lawsuit.

## COUNT II

46.

Atlantic States hereby realleges and incorporates paragraphs 1 through 45 of this Complaint as if set forth fully herein.

47.

Coverage A of the Policy contains an exclusion which expressly and unambiguously excludes "property damage" that is "expected or intended from the standpoint of [Dial God.]" See **Ex. F**, CGL Form, at p. 1 of 13.

48.

The Underlying Lawsuit alleged that it was made "abundantly clear" to Dial God that the roof was leaking, and water was intruding. See **Ex. A**, at ¶ 10. Yet, "[Dial God] ignored the pleas of [iQuatics.]" Id.

49.

Upon information and belief, Dial God had known about the roof leaks since April 2019.

50.

To the extent that the water intrusion, and resulting damage, constitutes "property damage" under the Policy, any damages because of same are expressly and unambiguously excluded by the Expected Or Intended Injury Exclusion because Dial God was informed of the need for repairs to the roof, the water intrusion, and yet, still did not remedy the situation.

51.

Consequently, because the Expected Or Intended Injury Exclusion applies, effectively barring coverage for any damages because of "property damage," Atlantic States should have no duty to indemnify Dial God or iQuatics under Coverage A of the Policy in connection with the judgment awarded in the Underlying Lawsuit.

52.

Atlantic States is, therefore, entitled to a declaratory judgment that it is not under a duty to indemnify Dial God or iQuatics under Coverage A of the Policy for the judgment awarded in the Underlying Lawsuit.

## COUNT III

53.

Atlantic States hereby realleges and incorporates paragraphs 1 through 52 of this Complaint as if set forth fully herein.

54.

The Policy contains a condition precedent to coverage requiring the insured, Dial God, to notify Atlantic States of an "occurrence" "which may result in a claim," "as soon as practicable." See **Ex. F**, CGL Form, at p. 9 of 13.

55.

To the extent that the failure to repair the roof and subsequent water intrusion constitutes an "occurrence," or accident, under the Policy, notice of same was not made "as soon as practicable."

56.

Dial God had known about the roof leaks since approximately April 2019, yet Atlantic States was first made aware of the roof leaks and issues surrounding same in September 2020—approximately one (1) year and five (5) months later.

57.

Consequently, because notice of the roof leaks and subsequent water intrusion/damage was not made "as soon as practicable," in accordance with the

conditions precedent in the Policy, Atlantic States should have no duty to indemnify Dial God or iQuatics under Coverage A of the Policy in connection with the judgment awarded in the Underlying Lawsuit.

58.

Atlantic States is, therefore, entitled to a declaratory judgment that it is not under a duty to indemnify Dial God or iQuatics under Coverage A of the Policy for the judgment awarded in the Underlying Lawsuit.

## **COUNT IV**

59.

Atlantic States hereby realleges and incorporates paragraphs 1 through 58 of this Complaint as if set forth fully herein.

60.

The Policy contains a condition precedent to coverage requiring Dial God to "notify [Atlantic States] as soon as practicable," if a claim is made or "suit" is brought. See **Ex. F**, CGL Form, at p. 9 of 13. The same condition precedent further required Dial God to provide such notice in writing. Id.

61.

Atlantic States was first made aware of the Underlying Lawsuit on February 9, 2023—approximately five (5) months after final judgment was entered in favor

of iQuatics and approximately eleven (11) months after Dial God was served with the Underlying Lawsuit. See **Ex. B**, generally.

62.

Atlantic States' notice of the Underlying Lawsuit was not made "as soon as practicable"; nor was it made in writing.

63.

Consequently, because notice of the Underlying Lawsuit was not made "as soon as practicable," nor in writing, in accordance with the conditions precedent in the Policy, Atlantic States should have no duty to indemnify Dial God or iQuatics under Coverage A of the Policy in connection with the judgment awarded in the Underlying Lawsuit.

64.

Atlantic States is, therefore, entitled to a declaratory judgment that it is not under a duty to indemnify Dial God or iQuatics under Coverage A of the Policy for the judgment awarded in the Underlying Lawsuit.

## **COUNT V**

65.

Atlantic States hereby realleges and incorporates paragraphs 1 through 64 of this Complaint as if set forth fully herein.

- 21 -

66.

The Policy contains a condition precedent to coverage requiring Dial God to "[i]mmediately send [Atlantic States] copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'" <u>See</u> **Ex. F**, CGL Form, at p. 9 of 13.

67.

Atlantic States was first made aware of the Underlying Lawsuit on February 9, 2023—approximately five (5) months after final judgment was entered in favor of iQuatics and approximately eleven (11) months after Dial God was served with the Underlying Lawsuit. <u>See</u> **Ex. B**, generally.

68.

Atlantic States did not "immediately" receive "copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit.'"

69.

Consequently, because Atlantic States did not "immediately" receive "copies of any demands, notices, summonses or legal papers received in connection with the claim or 'suit,'" in accordance with the conditions precedent in the Policy, Atlantic States should have no duty to indemnify Dial God or iQuatics under

Coverage A of the Policy in connection with the judgment awarded in the Underlying Lawsuit.

70.

Atlantic States is, therefore, entitled to a declaratory judgment that it is not under a duty to indemnify Dial God or iQuatics under Coverage A of the Policy for the judgment awarded in the Underlying Lawsuit.

**PRAYER FOR RELIEF**

**WHEREFORE**, Atlantic States respectfully prays as follows:

(1) That this Court declare that Atlantic States owes no duty to indemnify Dial God or iQuatics in connection with the Underlying Lawsuit;

(2) That judgment be entered in Atlantic State's favor and against all Defendants;

(3) That this Court bind each and every named party herein by said judgment;

(4) That this Court award Atlantic States all costs, expenses, and attorney's fees that it is entitled to receive under federal and/or state law; and

(5) That this Court enter an order granting such other and further relief as justice requires.

- 23 -

This 18th day of August, 2023.

Respectfully submitted,

KENDALL | MANDELL, LLC


/s/ Nicholas B. Tuz
Michael C. Kendall
Georgia Bar No. 414030
Nicholas B. Tuz
Georgia Bar No. 274964
*Attorneys for Atlantic States Ins. Co.*

3152 Golf Ridge Blvd., Suite 201
Douglasville, Georgia 30135
Telephone: (770) 577-3559
Facsimile:  (770) 577-8113
mckendall@kendallmandell.com
nbtuz@kendallmandell.com