

Exhibit A

E-FILED IN OFFICE - KC
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-05959-3

7/11/2023 4:26 PM
TIANA P. GARNER, CLERK

### IN THE SUPERIOR COURT OF GWINNETT COUNTY
### STATE OF GEORGIA

| | |
|---|---|
| **STACY COX and SCOTT MEWBORN,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** 23-A-05959-3 |
| **v.** ) | **FILE NO.:** _____ |
| ) | |
| **NEW YORK LIFE INSURANCE** ) | |
| **COMPANY (AARP OPERATIONS)** ) | |
| ) | |
| **Defendant.** ) | |

### <u>COMPLAINT</u>

COME NOW Stacy Cox ("Stacy Cox") and Scott Mewborn ("Scott Mewborn") (collectively "Plaintiffs") and submit this their Complaint against Defendant New York Life Insurance Company (AARP Operations) ("Defendant" or "New York Life"), a New York corporation showing as follows:

### PARTIES, JURISDICTION AND VENUE

1.

Stacy Cox is a resident of the State of Georgia.

2.

Scott Mewborn is a resident of the State of Georgia.

3.

New York Life is a New York corporation. New York Life's principal office is located at 51 Madison Avenue, New York, New York, 10010. New York Life is registered to do business in the State of Georgia with the Georgia Secretary of State and may be served with process through its registered agent, Linda Banks c/o CT Corporation System, at its registered address of  289 S

Culver St, Lawrenceville, Gwinnett County, Georgia, 30046-4805. New York Life is subject to the jurisdiction of this Court.

4.

Venue is proper in this Court pursuant to O.C.G.A. § 14-2-510 (b)(1).

## FACTS

5.

On or about February 22, 2022, Brenda Craft ("Ms. Craft"), the mother of Plaintiffs, submitted a member enrollment form application (the "Application") for a life insurance policy through Defendant, naming each of the Plaintiffs as fifty-percent beneficiaries under the policy. A true and accurate copy of the Application is attached hereto as Exhibit "A" and is incorporated herein by reference.

6.

On the Application, Ms. Craft was required to answer a number of questions regarding her personal health and history. *See* Exhibit A, p. 2.

7.

One of the questions stated as follows:

1.   In the past 12 months, have you:

   ➢ consulted a doctor or medical professional, or had treatment or diagnostic test of any type (***exclude routine annual physical and HIV when answering***)?

*See* Exhibit A, p. 2. (emphasis added)

8.

Ms. Craft selected the "No" option on the Application in response to the question stated in paragraph 7 above. *See id.*

2

9.

After Ms. Craft filed the Application, on or about March 1, 2022, Defendant mailed an insurance packet (the "Packet") to Ms. Craft including (1) a copy of the Life Insurance Contract (the "Contract") with an effective insurance date of March 8, 2022 (Contract # A11105787) and a coverage amount of $100,000.00, and (2) a certificate of AARP level benefit term life insurance (the "Certificate"). A true and accurate copy of the Packet is attached hereto as Exhibit "B" and is incorporated herein by reference.

10.

Ms. Craft passed away on October 26, 2022, and Plaintiffs subsequently submitted a request for distribution (the "Request") of the $100,000.00 funds under the Contract. A true and accurate copy of the Request is attached hereto as Exhibit "C" and is incorporated herein by reference.

11.

On or about March 9, 2023, Defendant, through its Senior Claims Examiner, sent a letter (the "Denial Letter") addressed to Plaintiff Stacy Cox informing her that the Contract had been rescinded based upon the language contained in the Contract's contestability provision. Specifically, Defendant claimed that Ms. Craft "did not disclose material information concerning her medical history" based upon her failing to disclose that she had visited the Longstreet clinic for an office visit on February 10, 2022.[1] A true and accurate copy of the Denial Letter is attached hereto as Exhibit "D" and incorporated herein by reference.

---

[1] Ms. Craft visited her primary care physician on February 10, 2022 for a routine annual physical.

12.

Defendant's Denial Letter tracks the language contained in the question at issue and states the following:

1.    In the past 12 months, have you:

    ➤ consulted a doctor or medical professional, or had treatment or diagnostic test of any type?

*See* Exhibit D, p. 1.

The Denial Letter failed to include the parenthetical language that specifically excludes "routine annual physicals" from inclusion in the question presented.

13.

On or about April 7, 2023, counsel for Plaintiffs sent a demand letter under O.C.G.A. § 33-4-6 (the "Demand") to Defendant demanding payment of the full $100,000.00 sum under the Contract. Defendant did not provide payment of the sum demanded within sixty days from the date of the Demand and has not provided payment of the sum demanded as of the date of this lawsuit. A true and accurate copy of the Demand is attached hereto as Exhibit "E".

COUNT I
BREACH OF CONTRACT

14.

Plaintiffs restate and incorporate by reference paragraphs 1 – 13 of this Complaint as if set forth herein verbatim.

15.

Plaintiffs and Defendant entered into a valid and binding Contract under Georgia law.

16.

Defendant is in breach of the Contract for (1) improperly rescinding the Contract, and (2)

failing to abide by the terms of the Contract.

17.

Plaintiffs are entitled to special damages in the principal sum of $100,000.00 or such other amount as may be proven at trial.

COUNT II
BAD FAITH UNDER O.C.G.A § 33-4-6

18.

Plaintiffs restate and incorporate by reference paragraphs 1 – 17 of this Complaint as if set forth herein verbatim.

19.

Plaintiffs sustained a loss that was covered by the Contract.

20.

Defendant has refused to pay the total sum due to Plaintiffs under the Contract within sixty days following written demand for same by counsel for Plaintiffs.

21.

Defendant's denial of payment of the total sum due under the Contract was made in bad faith.

22.

Under O.C.G.A. § 33-4-6, Plaintiffs are entitled to the total sum due under the Contract in addition to either fifty percent of the liability of Defendant for the loss or, in the alternative, $5,000.00, whichever is greater. Plaintiffs are entitled to recovery of $50,000.00 in addition to the total sum due under the Contract.

23.

Additionally, under O.C.G.A. § 33-4-6, Plaintiffs are entitled to recovery of all reasonable

attorney's fees for the prosecution of the action against Defendant.

COUNT III
ATTORNEY'S FEES

24.

Plaintiffs restate and incorporate by reference paragraphs 1 – 23 of this Complaint as if set forth herein verbatim.

25.

Plaintiffs sent communication to Defendant in an attempt to resolve the claims alleged in this Complaint.

26.

Plaintiffs' counsel sent Defendant the Demand dated April 7, 2023, outlining Plaintiffs' position as to the improper recission of the Contract by Defendant and demanding payment of the total sum due under the Contract. Defendant failed to remit payment of the total sum due to Plaintiffs.

27.

Defendant has acted in bad faith, has been stubbornly litigious, or has caused Plaintiffs unnecessary trouble and expense.

28.

Plaintiffs are entitled to recover from Defendants their expenses of litigation including attorney's fees pursuant to O.C.G.A. § 13-6-11.

DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury.

WHEREFORE, Plaintiffs pray as follows:

A.  That this Court enter judgment in favor of Plaintiffs and against Defendant for special

damages in the sum of $150,000.00;

B.  That this Court enter judgment in favor of Plaintiffs and against Defendant for general damages in an amount to be determined by the enlightened conscience of a fair and impartial jury;

C.  That this Court enter judgment in favor of Plaintiffs and against Defendant for their costs and attorneys' fees in bringing and litigating this matter in an amount to be proven at trial;

D.  That all costs be cast against Defendant; and

E.  That this Court grant such further relief as it deems just, equitable, and proper.

This 11th day of July, 2023.

SMITH, GILLIAM, WILLIAMS & MILES, P.A.
Attorneys for Plaintiffs

By:  _/s/ *Daniel M. Dupree*_____
         William D. Rhoads
         Georgia Bar No.  940313
         Daniel M. Dupree
         Georgia Bar No. 349494

P.O. Box 1098
Gainesville, Georgia 30503-1098
(770) 536-3381

# EXHIBIT A

☐ I'm already an AARP member.      ☒ I want to become an AARP member. I understand I will be billed $16.00 for a full year of membership.

# MEMBER ENROLLMENT FORM
*Request for Group Insurance  •  AARP Level Benefit Term Life*

 

New York Life Insurance Company
5505 West Cypress
Tampa, FL 33607-1707

M001529140

## STEP 1  MEMBER GENERAL INFORMATION

First Name: Brenda        Middle:

Last Name: Craft

Address: 250 Glen View

City: Hoschton    State: GA    Zip: 30548

Social Security No: ▇▇▇▇▇▇▇▇

Date of Birth: 1  18  ▇▇    Gender: ☐ Male  ☒ Female

Current Height: 5 Feet 5 Inches    Current Weight: 169 Pounds

In the past 12 months, have you used tobacco or nicotine in any form?  ☐ Yes  ☒ No

**Coverage Amount Requested**

☐ $10,000    ☐ $20,000    ☐ $30,000
☐ $50,000    ☒ $100,000    ☐ Other:

Daytime Phone #: 678   614-6837

Email Address: stacycox@windstream.net

**Beneficiary** (If more than one beneficiary is listed, the benefit will be divided equally unless you indicate a share.)

Beneficiary Name: Stacy Cox
Relationship to You: Child        Share: 50%
Beneficiary Name: Scott Mewborn
Relationship to You: Child        Share: 50%

## STEP 2  PAYMENT OPTIONS

1. ☒ **Send no money now. Payment will be billed monthly.**

2. ☐ **I want premiums to be deducted from my bank account each month.**

Account Holder:          Routing Number:          Account Number:

I authorize New York Life to deduct premiums from my account.

**X** _____                         /    /

**AUTHORIZATION ELECTRONICALLY SIGNED** Applicant (Account Holder) Signature        Date

Form GPA-A8.4(1)-SS                                1 of 2        3112-02-B-SST

**STEP 3**   **HEALTH AND HISTORY**

Applicant MUST check YES or NO for all questions.  Note: A YES answer may not automatically disqualify you.

1. In the past 12 months, have you:

► consulted a doctor or medical professional, or had treatment or diagnostic tests
of any type (exclude routine annual physical and HIV when answering)? ...................................................................... ☐ YES ☒ NO

► needed help from a person or device to independently walk, bathe, or dress? .................................................................. ☐ YES ☒ NO

► taken or been prescribed any medications? ................................................................................................................... ☒ YES ☐ NO

2. In the past 5 years, have you:

► been admitted to or confined in a hospital, nursing home, extended care, or special treatment facility? ..................... ☐ YES ☒ NO

► received in home medical therapy or assistance? .......................................................................................................... ☐ YES ☒ NO

► had treatment or medication, or been diagnosed by a doctor or medical professional as
having any of the following? (check all that apply below) ............................................................................................... ☐ YES ☒ NO

☐ Heart Trouble  ☐ Stroke  ☐ Cancer  ☐ Diabetes Requiring Insulin  ☐ Drug or Alcohol Abuse
☐ Asthma and/or COPD  ☐ Liver Disease  ☐ Kidney Disease  ☐ Immune System Disorder (excluding HIV)  ☐ AIDS

3. For every question answered "Yes," provide details, such as: condition(s), date(s) of onset, treatment, medicine and dosage.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**STEP 4**   **READ AND SIGN BELOW**

Is the insurance applied for intended to replace, discontinue or change any existing insurance or annuity? ............. ☐ YES ☒ NO

The information on this form is true and complete to the best of my knowledge and belief. False or incomplete answers may cause benefits to be denied within the first two years. I understand AARP membership is needed for coverage eligibility. If I am approved, this life insurance will begin on the Insurance Date shown on my Certificate, provided I pay my premiums when due. Paying a premium before the Insurance Date does not mean coverage is in force. I will promptly notify New York Life ("NYL") in writing if there are changes in my health before the Insurance Date that would cause me to provide different answers to the health questions on this application. Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. Any attempt to defraud NYL may also result in a loss of coverage.

I authorize any physician, hospital, health care provider, pharmacy, pharmacy benefit manager, medical information retrieval service, or consumer reporting agency to release my medical information, prescription drug history, motor vehicle report, and other information to NYL or reinsurers to determine my eligibility for insurance, evaluate or contest a claim, or for reinsurance or other insurance purposes. MIB Inc., or any insurance company may release information about me to NYL, or its reinsurers, in connection with this life insurance. Also, NYL or its reinsurers, may provide a brief report about me to MIB. This information may be subject to further disclosure as required by law and may not be protected by rules pertaining to this authorization. This authorization may be used for 24 months from the date signed, and I may revoke it by writing to NYL, unless NYL has already used it or issued coverage. This authorization is a condition of obtaining this insurance, and I will receive a copy of this signed and dated form.

**X** Brenda Craft                                                                                        2 / 22 / 2022

**APPLICATION ELECTRONICALLY SIGNED**                                              Date

Form GPA-A8.4(1)-SS                                                     4L2C7B        2 of 2     3112-02-B-SST

# EXHIBIT B



**AARP Life Insurance Program**
New York Life Insurance Company
5505 West Cypress, Tampa, FL 33607

Brenda Craft
250 Glen Vw
Hoschton, GA  30548-6135

March 1, 2022

**RE: New Life Insurance Contract #A11105787 Enclosed**

Dear Brenda Craft,

It is my pleasure to welcome you as a customer of the AARP Life Insurance Program from New York Life Insurance Company. Enclosed you'll find your official Contract with complete coverage details. Please review the information carefully before filing this document in a safe place. Your protection will take effect on the Insurance Date indicated on your Contract, as long as your premium payment is received when due.

You will receive your first premium notice shortly, if you haven't already. You can make your premium payment now, by calling **1-800-260-8865**, or going to **nylaarp.com/service**. Just use your checking account, credit or debit card to make a one-time payment, or sign up to have premiums automatically debited each month. You can also pay by mail - simply return your premium notice coupon along with a check or money order.

We know you have many options when it comes to who you trust with the financial future of those you care about, and we take our commitment to you seriously. Your loved ones can have the peace of mind of knowing you're protected by an industry leader, who has been keeping promises to its policyholders for more than 175 years. Thank you for trusting New York Life with your life insurance needs.

Sincerely,

*Jason Montgomery*

Jason Montgomery
Corporate Vice President, New York Life
AARP Life Insurance Program

As a reminder, if you ever need to update your beneficiary information, please call New York Life at 1-800-260-8865 or visit nylaarp.com/service. Phone representatives are available to assist you from 8 a.m. to 8 p.m. (Eastern Time) Monday through Friday, or 9 a.m. to 5 p.m. Saturday. Keeping this information up to date ensures we can contact your beneficiaries quickly in the event of a claim.

As part of the application process, we were provided with personal information about you, such as name, address, Social Security number, date of birth and medical history that was used to underwrite this life insurance. We may disclose this information as required or permitted by law.  You have the right to access certain information we maintain in our files about you.  You may request correction, amendment, or deletion of it by writing to us at the address on the front of this letter.



 

5505 West Cypress
Tampa, FL 33607
1-800-260-8865

# Life Insurance Information Guide
## For those Age 70 and Over

- Why Life Insurance?
- Calculating the Cost
- Free Look Period
- Review Your Certificate Carefully
- What You Should Know About Your Certificate

## Why Life Insurance?

Why buy life insurance? There are a number of reasons why many older adults are buying life insurance - as either their only life insurance or as a supplement to already existing life insurance coverage.

Some buy to pay for a funeral or burial since they don't want to saddle their children with the $5,000-$10,000 that these services can cost. Some buy to leave funds for their final medical bills.

Others buy because life insurance helps pay for outstanding debts, and they choose a small life insurance policy or certificate to do this.  Small whole life policies can serve the same purpose.

Others buy to leave a small legacy for their children, grandchildren or favorite charity.

Finally, there are many people for whom life insurance is an emotional issue. Knowing some funds are available provides them with a feeling of protection.

All of these can be good reasons for buying life insurance.

## Calculating the Cost

While life insurance meets certain needs, however, it can be costly for older people, particularly for those over 70. New York Life wants to help you make the right decision about your life insurance coverage, which is why we are sending you this brochure.

Look at your death benefit under this certificate. Next, look at the premiums you pay every year for this coverage. We suggest you compare the sum of your annual premiums with your death benefit at different times for up to ten years. If your premiums exceed the death benefits at any point in that time, there may be other, more economical ways to provide for your needs.

Before making any decision, be sure to consider the fact that some of your premium will cover  supplemental benefits. These include waiver of premiums while you are in a nursing home (not available in NY for some products or with guaranteed acceptance products), and the right to receive half your death benefits early if you have a terminal illness (not available with all products). If you have permanent coverage you should consider that cash values are available under that certificate.

**Free Look Period**

New York Life also offers a free look period for 30 calendar days from the day that you receive this certificate. This period gives you the time to decide whether your new life insurance certificate meets your needs. State law requires insurance companies to provide new certificate holders with a free look period. During this time, you can reconsider your decision to purchase life insurance. If you choose to cancel during this time, New York Life will refund the premiums you paid.

**Review Your Certificate Carefully**

If you decide to cancel after the 30-day free look, you may receive cash value. The cash values are shown in your certificate.

Read your new certificate carefully, and contact New York Life for an explanation of anything you do not understand. Whatever you decide now, it is important to review your life insurance needs every few years.

**What You Should Know About Your Certificate**

This certificate is offered without the need for a medical exam to determine your health. Life insurance products that require medical exams may charge lower premiums for those who could qualify.



# Privacy Notice

**Our Information Practices**
This Privacy Notice applies to information collected in connection with financial products or services you obtain or seek to obtain from the AARP Life Insurance Program from New York Life ("the Program").

**Types of information we collect**
In the normal course of business we collect:
- Information requested on applications and other forms, (including name, address, email address, phone number, date of birth and social security number);
- Information provided to us by AARP and its subsidiary (such as member identification number);
- Data about your transactions (such as the type of product you purchased);
- Information from outside sources such as public information;
- Information you provide to us on our website, such as when you fill out an online form. We also store data temporarily in your computer's memory using a "cookie". A cookie stores data such as your name and address so that you don't have to re-enter it during your visit. The cookie we place on your computer is also used to show us the source from which you entered our site. This cookie is automatically removed from your computer after 30 days or you can delete it yourself at anytime;
- Health information collected with your permission when you apply for our life insurance products.

**Safeguarding your information**
We maintain physical, electronic and procedural safeguards that meet state and federal regulations. Access to customer information is limited to people who need the information to perform their job responsibilities.

**How we use your information**
We may share all of the information we collect about you as allowed by law, including data shared with non-affiliated companies that perform services for us. These services include:
- Administering and marketing our products; and
- Quality control and measuring member participation and satisfaction with the Program.
We may disclose information we collect about you when required or permitted by law, such as to:
- Respond to a subpoena;
- Prevent fraud and other crimes;
- Comply with legal requirements; or
- Respond to a government inquiry.

# Important Privacy Choices

We respect your privacy choices. Customers who have purchased products or services from the Program have the option to authorize us to share information as follows: With AARP or its subsidiary for purposes unrelated to the Program. These purposes include sharing with AARP and its subsidiary to allow them to analyze members' needs and interests. AARP and its subsidiary use non-member data to solicit memberships. AARP and its subsidiary may also share your information with other AARP service providers to inform you of other AARP member benefits and services that may be of interest to you. These AARP service providers include other insurers, financial services companies and providers of consumer products and services.

**How to make your choice:**
- If you do not want us to share your information in this manner, please complete the enclosed form and return it to us. Keep in mind that the sharing of this information will allow AARP and its subsidiary to evaluate member interests and provide members with information about benefits and services that may meet their needs.
- Your choice will apply to all AARP life insurance products from New York Life that you own.
- We will honor your choice until you cancel or change it.
- You may inform us of your choice at anytime by writing to the address mentioned below.

**Please keep this notice for your records.**
The accuracy of your information is important to us. You have the right to access and seek correction of your information, and we will respond to your request in accordance with applicable law. We will follow the privacy law in your state if that law differs from the policy described in this notice.

**Informing customers about privacy**
This Privacy Notice was last updated in May 2020. Customers will receive our Privacy Notice at least once a year as long as they are a customer. You can also review the current Privacy Notice on our website (www.nylaarp.com) or you can contact us for a copy by writing to:
New York Life AARP Operations
P.O. Box 31670
Tampa, Florida 33631-3670
If you would like to change any of the information we collect about you as listed above, please call us at 1-866-687-5160.
Note: You do not need to return the enclosed form unless you want to restrict us from sharing your information with AARP and its subsidiary.

---

NOTE: Because you are already an AARP member, you may still receive mailings from AARP and other providers of AARP member benefits and services. If you do not wish to receive promotional mailings from other AARP service providers you must contact AARP directly by calling 1-888-687-2277.

* "New York Life", "we" and "us" refer to New York Life Insurance Company (NYLIC). NYLIC underwrites the AARP Life Insurance Program.

This Privacy Notice is specific to the AARP Life Insurance Program. If you own any other New York Life product, New York Life will protect your personal information it collects in connection with that product in accordance with the privacy notice that applies to that other product.





Please do not share my personal information with AARP and its subsidiary for purposes unrelated to the AARP Life Insurance Program, such as advising me of other AARP member benefits and services that may be of interest to me.

**Mail to:**
New York Life AARP Operations
P.O. Box 31670
Tampa, Florida 33631-3670
Attn: Privacy Department

Name: _____

Address: _____

City: _____ State: _____ Zip: _____

Contract No.: _____

AN0026616737CRA



# THIS INSURANCE

---

## DOCUMENT HAS BEEN PREPARED

---

### EXCLUSIVELY FOR:

## Brenda Craft

| | |
|---|---|
| Date of Birth: | 01/18/███ |
| Sex: | Female |
| Insurance Date: | 03/08/2022 |
| Amount of Insurance: | $100,000 |

---

THE FOLLOWING PAGES
CONSTITUTE THE CERTIFICATE.
*Please review and keep for your records.*

---





**New York Life Insurance Company**
51 Madison Avenue, New York, NY 10010

# CERTIFICATE

### AARP LEVEL BENEFIT TERM LIFE
### (GROUP LEVEL BENEFIT TERM LIFE INSURANCE)
### (To *Age* 80 With Increasing Premiums)

**Please note: Defined terms are in *italics* and can be found on the definitions page[s].**

| | |
|---|---|
| **POLICYHOLDER** | TRUSTEE OF THE AARP LIFE INSURANCE TRUST |
| **POLICY NUMBER** | AA-74 (the "*policy*") |

*We* certify that the *insured* becomes insured on 03/08/2022 if the initial *premium* is paid no later than 31 days after 03/08/2022. Insurance is subject to: (a) the Suicide limitation; (b) the terms and conditions of the *policy;* and (c) *our* underwriting requirements.

### INDIVIDUAL SCHEDULE OF BENEFITS

| | |
|---|---|
| **CERTIFICATE NUMBER** | A11105787 |
| **INSURED MEMBER** | Brenda Craft |
| **ADDRESS** | 250 Glen View<br>Hoschton, GA 30548 |
| **DATE OF BIRTH** | 01/18/████ |
| **AGE AT ISSUE** | 73 |
| **SEX** | Female |
| **INSURANCE DATE** | 03/08/2022 |
| **AMOUNT OF INSURANCE** | $100,000 |
| **MINIMUM AMOUNT OF INSURANCE** | $7,500 |
| **PREMIUM** | $272.00* monthly - direct bill<br>*premiums* increase at five-year *age* bands. *Premiums* are not guaranteed and may change.  See '*premium*' for a complete schedule of *premiums*. |
| **CLASS OF RISK** | Non Smoker |
| **BENEFICIARY** | First Beneficiary - Stacy Cox 50% & Scott Mewborn 50% |
| **RIGHT TO EXAMINE THE CERTIFICATE FOR 30 DAYS** | The *owner* will have 30 days from the date of receipt to examine the Certificate. If the *owner* does not wish to keep the Certificate, it must be surrendered to *us*, or to the agent through whom it was purchased if applicable, within this period. Upon such surrender, *we* will return any *premium* paid and insurance will be void from the start. |

This Certificate replaces all Certificates previously issued under the above Certificate Number.
*PREMIUM* WILL INCREASE IN FIVE YEAR *AGE* BANDS. See *premium* on the premium schedule page.

_Amy Miller_
Secretary

_(signature)_
Chairman and CEO

AA-74/CERT

GMR-FACE,GMR-C-SCH

10/01/2017, LBT10

## SCHEDULE

### Premium

The *premium* increases at five year *age* bands as follows: 45-49, 50-54, 55-59, 60-64, 65-69, 70-74 and 75-79. The *premium* for each five year *age* band will be based on the *insured's* then *current age*.

*Premiums* are not guaranteed and may change at any time on a class basis. Any change in *premium* will apply to all Certificates in the same class, based on Sex, Class of Risk, and the *insured's* attained *age*.

#### Table 1- Monthly Premiums for Female / Non Smoker / Age at Issue 73 with $100,000 coverage on the *Insurance Date*

| Insured's Age | Monthly Premium |
|---------------|-----------------|
| 73 | $272.00 |
| 74 | 272.00 |
| 75 | 524.00 |
| 76 | 524.00 |
| 77 | 524.00 |
| 78 | 524.00 |
| 79 | 524.00 |

A $12 annual fee is added to monthly non-Automatic Premium Payments, translating to an additional $1 per monthly payment. Automatic Premium Payments (APPs) are monthly automatic deductions from an authorized bank account.

The *premiums* are based on the billing mode and method on the *insurance date*. Any change to the billing mode or method may cause a change in the *premium*.

AA-74

GMR-S

**TABLE OF
CONTENTS**

IMPORTANT NOTICE..................................................................................................................6-7
    Certificate
    Conformity with State Laws and/or Regulations
    Continuation of Coverage
    Duty to Cooperate
    Examination
    Incontestability
    Misstatements
    Policy Changes
    Right to Continue Coverage to Age 80
    Validity
    Other Details

GROUP LEVEL BENEFIT TERM LIFE INSURANCE.........................................................7-9
    Accelerated Benefit
    Death Benefit
    What Benefit is Payable
    Beneficiary
    Request Procedure
    Transfer of Ownership
    Option to Exchange Insurance

WHEN INSURANCE ENDS.........................................................................................................9

WAIVER OF PREMIUM BENEFIT
    FOR NURSING HOME CONFINEMENT...............................................................10

CONVERSION RIGHTS.......................................................................................................10-11
    Conversion Period Benefit
    Individual Policy
    Notice of Conversion Right

DEFINITIONS.......................................................................................................................11-12

# IMPORTANT NOTICE

**CERTIFICATE**
This Certificate is a summary of the provisions of the *policy*. It should be kept in a safe place. It is not a contract of insurance. Any conflict between the terms of the Certificate and the *policy* will be decided in favor of the *policy*. A copy of the *policy* is available at the Policyholder's office for inspection at any time during business hours. The *owner* should contact *us* with questions regarding the insurance.

**CONFORMITY WITH STATE LAWS AND/OR REGULATIONS**
Any provision of the *policy* which is in conflict with any law and/or regulation of its Contract State or any applicable extraterritorial law and/or regulation of any other state in which the *insured* and/or *owner* is a resident on the *Insurance Date*, is amended to conform to the minimum requirements of such law and/or regulation.

**CONTINUATION OF COVERAGE**
Except as stated in the When Insurance Ends section, once insurance becomes effective coverage will continue even if: (a) the *policy* with AARP ends, (b) the *insured* ceases to be an AARP member, or (c) the *policy* is amended to end the eligible class of which the *insured* is a member.

**DUTY TO COOPERATE**
The *owner, insured* and Beneficiary(ies) each have a duty to cooperate with *us* in the underwriting for the insurance, the investigation of any claim for benefits, and any other inquiry *we* make in connection with the insurance. This duty to cooperate includes, but is not limited to, providing signed authorizations, in the form *we* request and without time limitation, for the release of medical records or other information concerning answers to questions on the enrollment form.

**EXAMINATION**
*We*, at *our* expense, have the right to examine the medical records of the *insured* and other information as to which we have been given authorization, in order to determine the cause of death and assess insurability.

**INCONTESTABILITY**
Except for nonpayment of *premiums, we* cannot contest the validity of the insurance or reinstated insurance after it has been in force for two years during the *insured*'s lifetime from: (1) the *insurance date*, and (2) the date the insurance is reinstated, if applicable. To contest, *we* will only rely upon statements signed by the *owner* in applying for such insurance. A copy of all statements must be furnished to the *owner* or to the beneficiary. Such statements are representations, not warranties.

**MISSTATEMENTS**
If relevant statements of *age at issue* or Sex were not accurate for any person: (a) a fair adjustment of remittances and/or insurance will be made; and (b) based upon the facts, *we* will decide whether, and what, insurance is valid under the policy. If the *age at issue* or Sex is incorrect but such person would have qualified as an *eligible member* on the *insurance date* with the correct information, the amount payable under the *policy* will be the amount the *premiums* would have purchased at the correct *age at issue* or Sex.

**POLICY CHANGES**
The *policy* can be changed: (a) at any time by written agreement between *us* and the Policyholder; and (b) without the consent of any other person. No agent is authorized to change the *policy* or this Certificate or waive any of their provisions.

**RIGHT TO CONTINUE COVERAGE TO AGE 80**
The *insured*'s coverage can continue to *age 80*. The *premium* for the continued coverage increases as described in the Premium section.

**VALIDITY**
Any attempt to defraud *us* when obtaining this insurance or making a claim may invalidate this Certificate and/or result in a loss of coverage.

AA-74
GMR-C-NOTICE

**OTHER DETAILS**

On all stated days and dates, insurance begins at 12:01 A.M. and insurance ends at midnight as applicable to the *insured*.

AA-74

GMR-C-NOTICE

---

## GROUP LEVEL BENEFIT TERM LIFE INSURANCE

*We* will pay a benefit for the *insured*'s: (a) Terminal Illness; or (b) death; in accordance with all of the following:

**ACCELERATED BENEFIT**

The Accelerated Benefit is available if the *insured* has a Terminal Illness. "Terminal Illness" is a medical condition where the patient has a life expectancy of 24 months or less, if such condition does not result directly or indirectly from self-inflicted injuries. For the Accelerated Benefit to be paid, *we* must receive: (1) a completed request for the benefit in a form satisfactory to *us*; and (2) satisfactory proof that the *insured* has a Terminal Illness.

Only one Accelerated Benefit is payable for this Certificate while the *insured* is insured under the *policy* whether insurance is continuous or interrupted. The Minimum Amount of Insurance shown on the Individual Schedule of Benefits does not apply to this provision. Receipt of the Accelerated Benefit may be taxable. The *owner* is advised to consult with a personal tax advisor to determine the tax impact.

**DEATH BENEFIT**

The Death Benefit is payable when the *insured* dies, after *we* receive satisfactory proof of the *insured*'s death.

**WHAT BENEFIT IS PAYABLE**

The benefit payable is as follows:

1.  **Accelerated Benefit:** Except as stated below, 50% of the Amount of Insurance in force on the *insured*'s life on the date *we* approve the *owner*'s request for the Accelerated Benefit. The benefit will be paid in a lump sum. Upon payment of the Accelerated Benefit, the Amount of Insurance will be reduced by 50%. Future *premiums* will be based on the reduced Amount of Insurance.
2.  **Death Benefit:** Except as stated below, the Amount of Insurance in force on the *insured* on the date of the *insured*'s death and, if death occurs during the *grace period*, less any *premium* due and not paid.

**MAXIMUM** - Amounts of insurance under this *policy* are not subject to the Maximum provision of other policies issued to the Policyholder by *us* which limit the total Amount of Insurance of AARP Group coverage for the *insured*.

**SUICIDE** - If the *insured* dies within the first two years insurance is in force and the death is due to, related to or occurs during: suicide, an attempt at suicide or an intentional self-inflicted injury; *we* will only return the *premiums* paid for insurance. If insurance ends, and is reinstated, this Suicide provision will be measured from the reinstatement date, and not from the original *insurance date*. If this Certificate is issued from exercising the "Option to Exchange" provision of another certificate issued by *us* this Suicide provision will be measured from the original certificate's *insurance date*, or reinstatement date, that is being exchanged.

AA-74

GMR-L/AB

**BENEFICIARY**

Beneficiary(ies) are classed as first, second and so on. Unless otherwise provided in the beneficiary designation, the benefits will be paid as follows:

1. The Accelerated Benefit will be paid to the *owner*, except if *we* have received satisfactory proof of the *insured*'s death before such payment is made, then the Death Benefit will be paid as stated below.

2. The Death Benefit will be paid in equal shares to the first beneficiary(ies) who survives the *insured* by 15 days. If no first beneficiary(ies) so survives, payment will be made in equal shares to any second beneficiary(ies) who survives the *insured* by 15 days, and so on. Surviving beneficiary(ies) in the same class will have an equal share in the proceeds otherwise designated for a deceased beneficiary in that class. If no beneficiary is designated or no beneficiary survives the *insured*, the benefit will be payable to the *insured*'s estate, or at *our* option to the *insured*'s surviving relative(s) in the following order of survival:  spouse or domestic partner as defined by law, as applicable; children equally; parents equally; or brothers and sisters equally.

**FACILITY OF PAYMENT -** *We* have the right to pay up to $250 of the benefit to anyone who has incurred expenses for the *insured*'s fatal illness or burial.  If a payee is a minor or is, in *our* opinion, not legally able to give a valid receipt for any payment due him or her, payment may be made in monthly installments of up to $50 each to any person or institution who, in *our* opinion, is caring for or supporting such payee.  These monthly installments will continue until the earlier of the date:  (a) claim is made by a duly appointed guardian or committee of the payee for the remainder of the benefit, if any; or (b) the full benefit, to which such payee is entitled, has been paid.  Such payment will be proper to the extent made.

**FORFEITURE OF PAYMENT -** No payment will be made to any person(s) if such person(s) is the principal or an accomplice in willfully bringing about the *insured*'s death. Payments will be made in accordance with this section as though that person(s) had died before the *insured*.

**INDIVIDUAL POLICY -** Subject to the Facility Of Payment exception, if the *owner* exercises the conversion right, the beneficiary designation in the application for the new policy will constitute a beneficiary change.

**REQUEST PROCEDURE**

To: (a) designate a beneficiary or change a beneficiary designation; and/or (b) transfer ownership; *we* must be given a completed request from the *owner* in a form satisfactory to *us*.  Such request must be approved and recorded by *us*.  After such recording, the request will take effect as of the date it was signed, subject to any payment made or any other action taken by *us* before the recording.

**TRANSFER OF OWNERSHIP**

The *owner* can transfer all or any part of incidents of ownership of the insurance. Any incidents of ownership so transferred shall be transferred on the date the transfer becomes effective.

**OPTION TO EXCHANGE INSURANCE**

The *owner* can buy Group Permanent or Term Life Insurance in exchange for this Group Term Life Insurance. The new insurance will be on a form then currently offered by *us*, without giving *us* medical evidence of insurability. After exchange, any remaining Amount of Insurance may not be below the Minimum Amount of Insurance allowable as shown on the Individual Schedule of Benefits. The Exchange will be in accordance with all of the following:

AA-74

GMR-L/AB

**Available Prior To _Age_ 80 – This option is not available if an Accelerated Benefit has been paid.**

**The _owner_ can exchange the insurance for new group life insurance -** Prior to _age_ 80, the _owner_ can exchange the insurance for new insurance on any _premium due date_ after the insurance becomes effective if the _insured_ is not confined in a _nursing home_ on the date of the exchange.

**The amount that can be exchanged -** The _owner_ can exchange all, or any part of the insurance, in multiples of $500. The premium for such insurance will be based on the _insured_'s Class of Risk and _age_ on the date of the exchange. The new insurance will take effect on the _premium due date_ for which the _owner_ requests the exchange.

**Available At _Age_ 80**

**The _owner_ can exchange the insurance for new group life insurance –** Provided the _owner_ does not exercise the Conversion Right, the _owner_ can exchange the insurance for new insurance on the date the insurance ends because the _insured_ reaches _age_ 80. Such insurance can be exchanged during the 31-day period (the Exchange Period) immediately after such date of termination.

**The amount that can be exchanged -** The _owner_ can exchange all, or any part of the insurance, less any amount paid under the Accelerated Benefit, in multiples of $500.

A completed application for the exchange of the new life insurance must be given to _us_, within the Exchange Period, on a form satisfactory to _us_. The first premium for the insurance must be paid within the Exchange Period and while the _insured_ is alive. The premium for such insurance will be based on the _insured_'s Class of Risk and _age_ on the effective date of the new insurance. The new insurance will take effect on the day after the Exchange Period ends.

**Notice of option to exchange insurance -** if the _owner_ has not been given notice of the right to exchange the insurance for new life insurance before the 15th day of the Exchange Period, the _owner_ will have an additional period within which the _owner_ can exchange such insurance. The additional period will end on the earlier of the: (a) 15th day after the _owner_ is given such notice; or (b) 60th day after the end of the 31-day Exchange Period. Written notice presented to the _owner_ or mailed to the _owner_'s last known address by _us_ will be deemed notice.

After _we_ receive the _owner_'s completed application and initial premium to exchange the insurance for the new insurance, _we_ will furnish the _owner_ a Certificate or Certificate Rider which describes the new insurance.

AA-74

GMR-L/AB

---

## WHEN INSURANCE ENDS

Except as stated in the Waiver of Premium Benefit for Nursing Home Confinement section, the insurance will end on the earlier of:

1. prior to _age_ 80, the last day of the _insurance period_ for which the last _premium_ has been paid, except that insurance will not end if the _premium_ is paid within the _grace period_; or

2. the day before the anniversary of the _insurance date_ on which the _insured_ is _age_ 80. See the "Option To Exchange Insurance" provision in the Group Level Benefit Term Life Insurance section for other alternatives.

AA-74

GMR-ENDS

## WAIVER OF PREMIUM BENEFIT
## FOR NURSING HOME CONFINEMENT

*We* will continue the insurance without the payment of *premiums*, if:

1. the *insured* is confined in a *nursing home* at the explicit direction of a physician;
2. the *insured*'s confinement in the *nursing home* has lasted for at least 180 consecutive days;
3. *we* receive satisfactory proof that the *insured* has been so confined. Such proof must be received by *us* within one year after the date such confinement began, except if it is not possible to give such proof within one year after such date, then proof must be given as soon as reasonably possible. Further proof that the *insured* is confined in a *nursing home* must be provided each year thereafter; and
4. *we* approve the benefit.

The Amount of Insurance continued under this benefit is equal to the Amount of Insurance in force on the date the *insured*'s *nursing home* confinement began.

*We* will waive the payment of *premiums* due on the *premium due date* following the date the *insured* has been confined in the *nursing home* for 180 consecutive days. Payment of *premiums* should continue until *we* approve the benefit.

The benefit will end on the earliest of the date:

1. the *insured* is no longer confined in a *nursing home*;
2. confinement in the *nursing home* is no longer at the explicit direction of a physician;
3. *we* do not receive the required proof that the *insured* remains so confined; or
4. the *insured* reaches *age* 80.

Insurance in force on the date the benefit ends will continue, except as stated on the When Insurance Ends section.

AA-74
GMR-L/DL C

---

## CONVERSION RIGHTS

A conversion right is available to the *owner* if insurance ends because the *insured* reaches *age* 80. The *owner* can convert all or any part of the insurance that ends to an individual policy, without giving *us* the *insured*'s medical evidence of insurability, in accordance with all of the following:

**CONVERSION PERIOD BENEFIT**

The maximum Amount of Insurance the *owner* is eligible to convert will continue during the 31-day period immediately after the date insurance would otherwise end (the "Conversion Period") without payment of the *premium.*

AA-74
GMR-L/DL CR

**INDIVIDUAL POLICY**

The individual policy requirements are as follows: (a) a completed, written application for the individual policy must be given to *us* by the *owner*, within the Conversion Period, on a form satisfactory to *us*; (b) the first premium for the individual policy must be paid within the Conversion Period; (c) the premium for the individual policy will be based upon the *insured*'s risk class and attained *age*; (d) the individual policy will be on one of the forms currently offered by *us* without extra benefits; (e) the individual policy will take effect on the day after the Conversion Period Benefit ends.

**NOTICE OF CONVERSION RIGHT**

If the *owner* has not been given notice of the conversion right before the 15th day of the Conversion Period, the *owner* will have an additional period within which the *owner* can exercise a conversion right.  The additional period will: (a) <u>not</u> extend insurance beyond the end of the 31-day Conversion Period; and (b) end on the earlier of the: (1) 15th day after the *owner* is given such notice; or (2) 60th day after the end of the 31-day Conversion Period.  Written notice presented to the *owner* or mailed to the *owner*'s last known address by *us* will be deemed notice.

AA-74

GMR-L/DL CR

# DEFINITIONS

**AGE**

The *insured*'s *age at issue* plus the number of complete years from the *insurance date*.

**AGE AT ISSUE**

The *insured*'s attained age on the date that the Enrollment Form was signed; or, if this Certificate was issued as an exchange from another Certificate, *age at issue* will be determined in accordance with any applicable provisions of the Certificate being exchanged.

**ELIGIBLE MEMBER**

A person who is: (a) a member of AARP; (b) between *age* 45 and *age* 74 inclusive; and (c) a legal resident of the fifty states of the United States of America, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, or Guam; or a person who is insured under another Group Life Insurance policy issued by *us* to the Policyholder, when the *owner* exercises the "Option To Exchange Insurance" section of said other group policy.

**GRACE PERIOD**

The 31-day period that begins on any *premium due date* if the *premium* due on such date is not yet paid.  During the *grace period*, the insurance will be continued. However, if the *premium* due on the *premium due date* is not paid by the end of the *grace period*, insurance will lapse and end.

**INSURANCE DATE**

The date that insurance under the *policy* takes effect, subject to the initial *premium* being paid.

**INSURANCE PERIOD**

The span of time from a *premium due date* through the day before the next *premium due date*, during which insurance continues, if the *premium* for such span of time is paid.

**INSURED**

The person who: (a) was an *eligible member* on the *insurance date*; (b) became *insured* under the *policy*, as approved by *us*; and (c) remains *insured* under the *policy*.

AA-74

GMR-DEF

**NURSING HOME**  A facility that: (a) is operated pursuant to law; (b) is approved for payment of Medicare benefits or qualified to receive such approval, if so requested; (c) is primarily engaged in providing, aside from room and board accommodation, skilled nursing care under the supervision of a duly licensed physician; (d) provides continuous 24-hours-a-day nursing service by or under the supervision of a registered professional nurse (R.N.); and (e) maintains a daily medical record of each patient.

*Nursing home* does not include a home or facility: (a) used primarily for rest; (b) for the care of drug addicts or alcoholics; (c) for the care and treatment of mental diseases or disorders; or (d) for custodial care.

**OWNER**  The person who has all rights of ownership for the insurance.   Unless otherwise stipulated, on the *insurance date* the *owner* will be the *insured*.

**POLICY**  The Group Policy, as shown on the face page of this Certificate, issued to the Policyholder by *us*.

**PREMIUM**  The applicable full periodic payment toward the insurance coverage, which must be paid for insurance to take effect on the *insurance date* and/or for insurance to continue in force under the *policy*. *Premium* is due on each *premium due date*.

**PREMIUM DUE DATE**  The following dates by which the *premium* must be received: (a) initially the *insurance date*; (b) thereafter, until *age* 80, based upon the mode of payment elected by the *owner* and approved by *us*, the annual, semiannual, quarterly or monthly reoccurrence of the *insurance date*.

**WE, OUR, US**  New York Life Insurance Company.

AA-74

GMR-DEF

☐ I'm already an AARP member.

☒ I want to become an AARP member. I understand I will be billed $16.00 for a full year of membership.

# MEMBER ENROLLMENT FORM
*Request for Group Insurance  •  AARP Level Benefit Term Life*

  | Life Insurance Program from

New York Life Insurance Company
5505 West Cypress
Tampa, FL 33607-1707

M001529140

## STEP 1  MEMBER GENERAL INFORMATION

First Name: Brenda     Middle:

Last Name: Craft

Address: 250 Glen View

City: Hoschton     State: GA     Zip: 30548

Social Security No: ███████████

Date of Birth: 1 / 18 / ███     Gender: ☐ Male  ☒ Female

Current Height: 5 Feet 5 Inches     Current Weight: 169 Pounds

In the past 12 months, have you used tobacco or nicotine in any form?   ☐ Yes  ☒ No

**Coverage Amount Requested**

☐ $10,000     ☐ $20,000     ☐ $30,000
☐ $50,000     ☒ $100,000     ☐ Other: _____

Daytime Phone #: 678   614-6837

Email Address: stacycox@windstream.net

**Beneficiary** (If more than one beneficiary is listed, the benefit will be divided equally unless you indicate a share.)

Beneficiary Name: Stacy Cox
Relationship to You: Child     Share: 50%

Beneficiary Name: Scott Mewborn
Relationship to You: Child     Share: 50%

## STEP 2  PAYMENT OPTIONS

1. ☒ **Send no money now. Payment will be billed monthly.**

2. ☐ **I want premiums to be deducted from my bank account each month.**

Account Holder: _____     Routing Number: _____     Account Number: _____

I authorize New York Life to deduct premiums from my account.

X _____     / /

**AUTHORIZATION ELECTRONICALLY SIGNED** Applicant (Account Holder) Signature     Date

Form GPA-A8.4(1)-SS

1 of 2     3112-02-B-SST

**STEP 3   HEALTH AND HISTORY**

Applicant MUST check YES or NO for all questions.  Note: A YES answer may not automatically disqualify you.

1. In the past 12 months, have you:

▶ consulted a doctor or medical professional, or had treatment or diagnostic tests
of any type (exclude routine annual physical and HIV when answering)? ........................................................................... ☐ YES ☒ NO

▶ needed help from a person or device to independently walk, bathe, or dress? .................................................................. ☐ YES ☒ NO

▶ taken or been prescribed any medications? ................................................................................................................... ☒ YES ☐ NO

2. In the past 5 years, have you:

▶ been admitted to or confined in a hospital, nursing home, extended care, or special treatment facility? .................... ☐ YES ☒ NO

▶ received in home medical therapy or assistance? ......................................................................................................... ☐ YES ☒ NO

▶ had treatment or medication, or been diagnosed by a doctor or medical professional as
having any of the following? (check all that apply below) ......................................................................................... ☐ YES ☒ NO

☐ Heart Trouble   ☐ Stroke   ☐ Cancer   ☐ Diabetes Requiring Insulin   ☐ Drug or Alcohol Abuse
☐ Asthma and/or COPD   ☐ Liver Disease   ☐ Kidney Disease   ☐ Immune System Disorder (excluding HIV)   ☐ AIDS

3. For every question answered "Yes," provide details, such as: condition(s), date(s) of onset, treatment, medicine and dosage.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**STEP 4   READ AND SIGN BELOW**

Is the insurance applied for intended to replace, discontinue or change any existing insurance or annuity? ............. ☐ YES ☒ NO

The information on this form is true and complete to the best of my knowledge and belief. False or incomplete answers may cause benefits to be denied within the first two years. I understand AARP membership is needed for coverage eligibility. If I am approved, this life insurance will begin on the Insurance Date shown on my Certificate, provided I pay my premiums when due. Paying a premium before the Insurance Date does not mean coverage is in force. I will promptly notify New York Life ("NYL") in writing if there are changes in my health before the Insurance Date that would cause me to provide different answers to the health questions on this application. Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. Any attempt to defraud NYL may also result in a loss of coverage.

I authorize any physician, hospital, health care provider, pharmacy, pharmacy benefit manager, medical information retrieval service, or consumer reporting agency to release my medical information, prescription drug history, motor vehicle report, and other information to NYL or reinsurers to determine my eligibility for insurance, evaluate or contest a claim, or for reinsurance or other insurance purposes. MIB Inc., or any insurance company may release information about me to NYL, or its reinsurers, in connection with this life insurance. Also, NYL or its reinsurers, may provide a brief report about me to MIB. This information may be subject to further disclosure as required by law and may not be protected by rules pertaining to this authorization. This authorization may be used for 24 months from the date signed, and I may revoke it by writing to NYL, unless NYL has already used it or issued coverage. This authorization is a condition of obtaining this insurance, and I will receive a copy of this signed and dated form.

**X** Brenda Craft _____ 2 / 22 / 2022

**APPLICATION ELECTRONICALLY SIGNED**                                     Date

Form GPA-A8.4(1)-SS                                          4L2C7B          2 of 2      3112-02-B-SST

THIS CONCLUDES THE CERTIFICATE.

# New York Life is here at your convenience.



The control is in your hands when you need it, where you need it, at **nylaarp.com/service**. You can manage your contract and more, including:

- Change your address or phone number
- Review your coverage information
- Check the due date for your premium payments
- Update beneficiary information
- Change the way you choose to be billed
- Make a one-time payment
- Set up automatic payments

To speak with a member of our Customer Experience Team, call (800) 260-8865. Representatives are available from 8 a.m. to 8 p.m. Monday through Friday, and 9 a.m. to 5 p.m. Saturday (Eastern Time).

> **To notify us of a life insurance claim, please contact us or visit nylaarp.com/claims.**

 



# EXHIBIT C

 

**AARP** | Life Insurance Program from | NEW YORK LIFE

# Claim Form
Please type or print legibly

**1.** List below only the Contracts under which you are making a claim.

Insurance Contract Number(s): **A111O5787**

**2.** Deceased Insured Information.

Name of Deceased:
(First, Middle, Last) **Brenda Gail Craft**     Nickname or Maiden Name: **Dean**

Birthdate: **01** - **18** - ▓▓ (MM DD YYYY)     Date of Death: **10** - **26** - **2022** (MM DD YYYY)

Manner of Death: ☐ Natural   ☒ Accident*   ☐ Unknown   ☐ Suicide*   ☐ Homicide*   ☒ Other: **Fall-BrainBleed**
*Please attach copies of police and coroner's report and any relevant news articles.

**3.** Beneficiary Information.     If Beneficiary is an Estate or Trust, please list the name of the Estate or Trust

Beneficiary Name:
(First, Middle, Last) **Stacy Michelle Cox**

Mailing Address of Beneficiary:
Street **250 Glen View**     City **Hoschton**     State **GA.**   Zip **30548**

Relationship to the Deceased: ☐ Spouse   ☒ Child   ☐ Grandchild   ☐ Parent   ☐ Other:

Birthdate: **06** - **15** - ▓▓ (MM DD YYYY)     Home Phone: **678-614-6837** Alternate Phone:

E-Mail of Beneficiary: **Stacycox@windstream.net**

Income Tax Certification:
Enter your **Social Security Number** if you are an individual beneficiary: ▓▓▓▓▓▓▓▓

Enter **Taxpayer Identification Number**
if claiming benefits as an Estate, Trust or Corporation     __ __ __ - __ __ - __ __ __ __ __ __

Check **only** if statement below applies:
☐ I have been notified by the Internal Revenue Service that I am subject to backup withholding as a result of failure to report all interest or dividends.

**Capacity under which you are making this claim:   Check one.**

**X** **Individual Beneficiary:** If you are requesting benefits to be paid to the funeral home, a copy of the assignment is required.

____ **Estate Executor:** Be sure to submit a copy of the certified appointment papers and provide Estate Tax ID. Claim Form must be signed by all the Estate Representatives.

____ **Trustee:** A copy of the Title, Signature and Notary pages of the Trust are required, including the pages showing the Trustee and Successor Trustee. Provide Trust Tax ID. Claim Form must be signed by all the Trustees.

____ **Collateral Assignee:** A copy of the assignee's statement of interest must be provided. Claim form must be signed by the assignee or their authorized representative.

____ **Corporate Officer:** Claim Form must be signed by Corporate Officer(s) and must indicate the title by which you are authorized to act on behalf of the company.

____ **Guardian/Custodian:** If a legal guardian of the child's estate/property has been appointed by the court, he or she must sign on behalf of the minor child and submit a copy of the guardianship papers. If signing under the UTMA/UGMA, please sign your name and indicate your relationship (father, mother, etc) to the minor child as "Custodian of (name of child), under the (name of resident state), UTMA/UGMA.

**4.** Beneficiary's Signature.

Please refer to the enclosed page entitled STATE VARIATIONS OF FRAUD WARNINGS for specific notices in certain jurisdictions. **New York Residents:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

I have read and understand the Fraud Statement that is applicable in the state in which I reside.

- **I certify, under penalty of perjury, that the Social Security or Taxpayer Identification Number and Back-up Withholding status in Section 3 are correct. I also certify that I am a U.S. person, including a U.S. resident alien (non-U.S. person must complete form W8-BEN).**
- **I am exempt from the Foreign Account Tax compliance Act (FATCA) reporting.**
- **The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.**

Signature: (REQUIRED) *Stacy M. Cox*     Print Name: **Stacy M. Cox**     Date: **10/27/22**

NDCF2017V9A

 

**AARP** | **Life Insurance Program** from

New York Life Insurance Company
P.O. Box 30713
Tampa, FL 33630-3713

**5. Authorization.**

### HIPAA-Compliant Authorization

**To expedite the processing of your claim, please complete this page in its entirety.**

Complete if
(a) the death occurred within two years of the issue date, rider effective date or reinstatement date,
(b) the death was due to an accident and the policy contains the Accidental Death Benefit, or
(c) if specifically requested.

I give my permission to release information concerning

| Name of Insured (First, Middle, Last) | Insured's Date of Birth | Insured's Social Security Number |
|---|---|---|
| Brenda Gail Craft | 01 MM  18 DD  ▉ YYYY | ▉ |

| Date of Death | Contract Number(s) |
|---|---|
| 10/26/2022 | A 11105787 |

to New York Life Insurance Company including its agents, affiliates or subsidiary companies and attorneys, reinsurers, insurance support groups and independent administrators who are acting on their behalf ("New York Life"). Information released may include records of **medical advice, medical care,** medical treatment of **AIDS** or **AIDS-related diseases, mental illness, drug** or **alcohol use,** other insurance coverage, **financial** and **employment history, driving records,** or information otherwise needed to determine policy claim benefits due but excludes psychotherapy notes. This information may be released by medical professionals or facilities, pharmacies, pharmacy benefit managers, government offices, employers, insurance companies, insurance support groups, group policyholders or benefit plan administrators, any consumer reporting agency, the Social Security Administration, the Internal Revenue Service, the Veteran's Administration, or any other organization or person having any knowledge of the above-named Insured. When requesting information from any of the sources named above, a copy of this form is as valid as the original. I am aware that any information obtained will be used to evaluate my claim.

Either I, or a person I choose, am entitled to receive a copy of this authorization. This authorization is valid from the date signed until the claim is resolved, except in those states that allow for only a one-year limit.

I have the right to revoke this authorization at any time by notifying New York Life in writing at the address on this authorization. My revocation will not be effective to the extent New York Life or any other person already has disclosed or collected information or taken other action in reliance on this authorization. My revocation will also not be effective to the extent state law gives New York Life the right to contest a claim under the policy or the policy itself.

The information New York Life obtains based on this authorization may be subject to further disclosure. For example, New York Life may be required to provide it to insurance regulatory or other government agencies. In this case, the information may no longer be protected by the rules governing this authorization.

| Please Print Name: Stacy Michelle Cox | | |
|---|---|---|
| Signature X  _Stacy M Cox_ | Relationship to Insured* Daughter | Date 10-27-22 |

*Authorized Representative must provide proper documentation, such as Estate representation documents.

NDCF2017V9A

 

**AARP** | Life Insurance Program from

**New York Life Insurance Company**
P.O. Box 30713
Tampa, FL 33630-3713

## 6. Medical Information

In order to expedite the processing of your claim, please complete this section in its entirety. This section should be completed ONLY (a) if the death occurred within two years of the issue date, rider effective date or reinstatement date, (b) if the death was due to an accident and the policy contains the Accidental Death Benefit, or (c) if specifically requested.

### Other Life Insurance in effect for the Insured

| Company Name: | N/A | Policy Number: |
|---|---|---|
| Company Name: | | Policy Number: |

### Physicians and Hospitals where the Insured was treated

Please provide the names and addresses of all physicians and hospitals that may have treated the insured within the last five years.
☑ Check here if a separate sheet is attached with additional providers. This sheet must be signed and dated.

**Primary Care Physician:** Dr. Margaret Davis M.D.

Address, City, State, Zip: 725 Jesse Jewell Parkway SE Suite 300 Gainesville, GA. 30501

| Telephone 770 535-0191 | Dates treated | Condition(s) |
|---|---|---|

**Physician/Hospital:** Dr. James G. Reeves

Address, City, State, Zip: 200 South Enota Dr. N.E. Suite 360 Gainesville, GA. 30501

| Telephone 770-219-4000 | Dates treated 6-7-22 | Condition(s) Carotid Artery Surgery |
|---|---|---|

**Physician/Hospital:** Northeast Georgia Medical Center   Braselton è Gainesville

Address, City, State, Zip: Braselton 1400 River Pl. Braselton, GA. 30517       Gainesville 30501 743 Spring St. NE Gainesville, GA

| Telephone Braselton 770 848-8000 Gainesville 770 219-9000 | Dates treated 6-7-22 Surgery 7-26-22 8-13-22 | Condition(s) 6-7-22 Carotid Artery 7-26-22 - UTI + TIA 8-13-22 - Brain Bleed from fall |
|---|---|---|

### Health Insurance policies that covered the Insured

Please list all health insurance carriers during the past 5 years.
☐ Check here if a separate sheet is attached with additional carriers.

Piedmont Eastside Medical   6-18-22 - 7-1-22 1700 Medical Way   Memory Issues Snellville, GA. 30078   770-979-0200

| Company Name: Humana — Humana Medicare | Address, City, State, Zip P.O. Box 14601 Lexington, KY. 40512-4601 | |
|---|---|---|
| Telephone 1-866-396-8810 | Policy Number H535962I5 | Effective Date 12-11-2021 |
| Company Name: | Address, City, State, Zip | |
| Telephone | Policy Number | Effective Date |
| Company Name: | Address, City, State, Zip | |
| Telephone | Policy Number | Effective Date |

NDCF2017V9A

# EXHIBIT D



**AARP** | Life Insurance Program from | NEW YORK LIFE

New York Life Insurance Company
**AARP Operations**
Claims Service
P.O. Box 30713
Tampa, FL 33630-3713
1-800-695-5165

March 9, 2023

Stacy Cox
250 Glen View
Hoschton GA 30548-6135

Insured: Brenda Craft
Claim #: LC-1557433
Contract #: A11105787

Dear Stacy Cox:

On behalf of New York Life Insurance Company, I am writing to you regarding your claim for benefits due to the passing of your mother, Brenda Craft.

When a proposed insured applies for life insurance, he or she must answer certain questions concerning his or her medical history in order for the Company to properly consider the risks. We rely on the proposed insured's answers to health questions on the application to determine whether the proposed insured is an acceptable risk in accordance with our underwriting guidelines.

When an insured dies within two years of the Insurance Date, the Contract's Incontestability provision permits us to contest the validity of the insurance if material facts were misstated on the application. In addition, the application informed the proposed insured that if material facts have been misstated, benefits may be denied.

The Contract's Insurance Date is March 8, 2022. Your mother passed away on October 26, 2022. Consequently, the Contract is contestable. On your mother's application, electronically signed and dated February 22, 2022, she responded to the following health question:

   1. **In the past 12 months, have you:**

      ▶ **Consulted a doctor or medical professional, or had treatment or diagnostic tests of any type?**

Your mother responded "no" to this health question.

We requested medical records from Longstreet Clinic, located in Gainesville, Georgia.

Upon our review of the medical records, it was determined that your mother did not disclose material information concerning her medical history.

The medical records received documented your mother was seen for an office visit on February 10, 2022.  The history of present illness for this visit documented your mother presented with her daughter for memory loss.  She was referred to neurology and also had an MRI of the brain ordered.

Had New York Life been aware of this medical information when processing the insured's application, we would have declined to issue this coverage.  This information should have been disclosed in the insured's response to the health questions on the application.

Based on the above information, we believe the appropriate resolution is to rescind the Contract.

We are tendering to you a refund of your proportionate share of the premiums paid, plus interest. A check will be sent to you shortly.  Your endorsing, cashing or depositing of this check will constitute your agreement to rescission of the Contract.  By doing so, you agree that the Contract is of no force or effect and irrevocably waive and release all claims you may have under the Contract.  The refund check is being sent to you on the express condition that your acceptance of this check is without reservation and in full and complete satisfaction of any claims you may have under the Contract.

If you disagree with our findings or believe we have been misinformed, you may submit additional information to us in support of your position.  In addition, you may contest our decision by bringing a legal action in court.

New York Life's decision to deny this claim is subject to a complete reservation of its rights and defenses, whether under the Contract, at law or in equity, and whether based on facts and legal theories currently known to it or those that may be developed in the future.  If you do not agree to rescission of the Contract, New York Life reserves its rights to obtain a judicial determination of rescission.

If you have any questions, you may contact me at 813-288-7030, between the hours of 8am to 3pm Eastern Time, Monday through Friday, or you may contact our Claims Support team at 1-800-695-5165, between the hours of 8:00 am to 5:00 pm Eastern Time, Monday through Friday. You may also send correspondence to us through fax at 1-855-381-5010.

Sincerely,

*Katie K.*

Katie K.
Sr Claims Examiner

# EXHIBIT E



# SMITH GILLIAM
# WILLIAMS & MILES

| | |
|---|---|
| Website: | sgwmfirm.com |
| Phone: | 770.536.3381 |
| Fax: | 770.531.1481 |
| Mailing Address: | P.O. Box 1098 Gainesville, GA 30503 |

April 7, 2023

*VIA Certified Mail, Return Receipt Requested*
*Tracking # 9214790102406409000459*

*Via Fax to 1-855-381-5010*

New York Life Insurance Company
AARP Operations
Claims Service
PO Box 30713
Tampa, FL 33630

RE:  Brenda Craft
Claim #: LC-1557433
Contract #: A11105787

To Whom it May Concern:

This law firm, Smith, Gilliam, Williams and Miles, PA, represents Stacy Cox and her brother, Scott Mewborn, as beneficiaries under life insurance policy contract A11105787.  This letter shall serve as formal demand of their claim as beneficiaries to the above contract.

In a letter dated March 9, 2023, New York Life Insurance company denied benefits and implied that Ms. Craft failed to honestly respond to questions contained in the application for insurance.[1]

The question presented in your denial letter is listed as follows:

1.  In the past 12 months, have you:
    ➢ Consulted a doctor or medical professional, or had treatment or diagnostic tests of any type?

Your denial letter fails to include the entire question asked of Ms. Craft in her application, and your denial letter **is written for the purpose of intentionally misleading Ms. Cox to believe that her Mother failed to properly answer the question**.  The application question in full, instead, reads as follows:

1.  In the past 12 months, have you:
    ➢ Consulted a doctor or medical professional, or had treatment or diagnostic

---

[1] A copy of the denial letter is attached as Attachment "A".

*In Your Community.*

*In Your Corner.*

tests of any type **(exclude routine annual physical and HIV when answering)**?[2]

    New York Life, in an effort to deny coverage of a life insurance policy, specifically omitted that a routine annual visit was allowable.  Your omission of the above parenthetical, which refers to routine annual physicals as an exclusion for the in the denial letter, is the most glaring reason why your denial is in bad faith.  This specific omission was done in order to try to lead Ms. Cox and her brother, as the other beneficiary, to believe their mother misrepresented her physician's visit and that coverage and benefits should be excluded. Additionally, the omission is an outright misrepresentation of the actual question asked to their mother when filling out the application. The denial letter, by omitting the parenthetical, has been intentionally written to misrepresent the actual question asked of their mother.

    As specifically allowed on the coverage application, Ms. Craft visited her doctor annually, and the visit with Longstreet Clinic on February 10, 2022 was a routine annual visit with her physician where she received her standard physical – height, weight, blood pressure.  **Her records will show her previous visit was February 5, 2021 – approximately one year prior**.  Ms. Craft responded "NO" because of the parenthetical – she was visiting her doctor for her annual visit. She visited her doctor for the exact allowed exclusion on the application.

    Due to your bad faith in denying coverage, you are being put on notice, pursuant to OCGA 33-4-6, that if we file suit in this matter to recover the policy amount, we will seek penalties and interest as provided by OCGA 33-4-6.    In part, such statute provides:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer…[3]

    Pursuant to OCGA 33-4-6, New York Life has 60 days from its receipt of this letter to pay Stacy Cox and Scott Mewborn in full the balance of $100,000.00.  The checks must be payable to each of them, individually, in $50,000.00 increments, and sent to my attention at PO Box 1098, Gainesville, GA 30503.  If New York Life fails to do so, it shall be liable for such amount, plus 50 percent of the liability, plus all reasonable attorney's fees.

---

[2] A copy of the Request for Group Insurance, as provided to Ms. Craft is included as Attachment "B".

[3] Note the use of ellipses here to indicate additional wording in the statute.  Such use of ellipses in your original letter would have, at minimum, led the reader to understand additional text was not included in the demand letter which was included in the original application.

Please contact me at 770 536 3381 or brhoads@sgwmfirm.com if you have questions.

Regards,

William D. Rhoads

Cc:     Stacy Cox
        Scott Mewborn



New York Life Insurance Company
AARP Operations
Claims Service
P.O. Box 30713
Tampa, FL 33630-3713
1-800-695-5165

March 9, 2023

Stacy Cox
250 Glen View
Hoschton GA 30548-6135

Insured: Brenda Craft
Claim #: LC-1557433
Contract #: A11105787

Dear Stacy Cox:

On behalf of New York Life Insurance Company, I am writing to you regarding your claim for benefits due to the passing of your mother, Brenda Craft.

When a proposed insured applies for life insurance, he or she must answer certain questions concerning his or her medical history in order for the Company to properly consider the risks. We rely on the proposed insured's answers to health questions on the application to determine whether the proposed insured is an acceptable risk in accordance with our underwriting guidelines.

When an insured dies within two years of the Insurance Date, the Contract's Incontestability provision permits us to contest the validity of the insurance if material facts were misstated on the application. In addition, the application informed the proposed insured that if material facts have been misstated, benefits may be denied.

The Contract's Insurance Date is March 8, 2022. Your mother passed away on October 26, 2022. Consequently, the Contract is contestable. On your mother's application, electronically signed and dated February 22, 2022, she responded to the following health question:

1.  **In the past 12 months, have you:**

    ► **Consulted a doctor or medical professional, or had treatment or diagnostic tests of any type?**

Your mother responded "no" to this health question.

We requested medical records from Longstreet Clinic, located in Gainesville, Georgia.

Attachment A

Upon our review of the medical records, it was determined that your mother did not disclose material information concerning her medical history.

The medical records received documented your mother was seen for an office visit on February 10, 2022. The history of present illness for this visit documented your mother presented with her daughter for memory loss. She was referred to neurology and also had an MRI of the brain ordered.

Had New York Life been aware of this medical information when processing the insured's application, we would have declined to issue this coverage. This information should have been disclosed in the insured's response to the health questions on the application.

Based on the above information, we believe the appropriate resolution is to rescind the Contract.

We are tendering to you a refund of your proportionate share of the premiums paid, plus interest. A check will be sent to you shortly. Your endorsing, cashing or depositing of this check will constitute your agreement to rescission of the Contract. By doing so, you agree that the Contract is of no force or effect and irrevocably waive and release all claims you may have under the Contract. The refund check is being sent to you on the express condition that your acceptance of this check is without reservation and in full and complete satisfaction of any claims you may have under the Contract.

If you disagree with our findings or believe we have been misinformed, you may submit additional information to us in support of your position. In addition, you may contest our decision by bringing a legal action in court.

New York Life's decision to deny this claim is subject to a complete reservation of its rights and defenses, whether under the Contract, at law or in equity, and whether based on facts and legal theories currently known to it or those that may be developed in the future. If you do not agree to rescission of the Contract, New York Life reserves its rights to obtain a judicial determination of rescission.

If you have any questions, you may contact me at 813-288-7030, between the hours of 8am to 3pm Eastern Time, Monday through Friday, or you may contact our Claims Support team at 1-800-695-5165, between the hours of 8:00 am to 5:00 pm Eastern Time, Monday through Friday. You may also send correspondence to us through fax at 1-855-381-5010.

Sincerely,

*Katie K.*

Katie K.
Sr Claims Examiner

☐ I'm already an AARP member. [_____]    ☒ I want to become an AARP member. I understand I will be
billed $16.00 for a full year of membership.

# MEMBER ENROLLMENT FORM
*Request for Group Insurance* • *AARP Level Benefit Term Life*

**AARP** | Life Insurance Program from | NEW YORK LIFE

New York Life Insurance Company
5505 West Cypress
Tampa, FL 33607-1707

[M001529140]

## STEP 1 MEMBER GENERAL INFORMATION

First Name: Brenda    Middle: [____]

Last Name: Craft

Address: 250 Glen View

City: Hoschton   State: GA   Zip: 30548

Social Security No: ███████████

Date of Birth: [1] [18] ███   Gender: ☐ Male  ☒ Female

Current Height: 5 Feet 5 Inches   Current Weight: 169 Pounds

In the past 12 months, have you used tobacco or nicotine in any form? ☐ Yes ☒ No

**Coverage Amount Requested**
☐ $10,000   ☐ $20,000   ☐ $30,000
☐ $50,000   ☒ $100,000   ☐ Other: [____]

Daytime Phone #: 678   614-6837

Email Address: stacycox@windstream.net

**Beneficiary** (If more than one beneficiary is listed, the benefit will be divided equally unless you indicate a share.)

Beneficiary Name: Stacy Cox
Relationship to You: Child   Share: 50%

Beneficiary Name: Scott Mewborn
Relationship to You: Child   Share: 50%

## STEP 2 PAYMENT OPTIONS

1. ☒ **Send no money now. Payment will be billed monthly.**

2. ☐ **I want premiums to be deducted from my bank account each month.**

Account Holder: [____]   Routing Number: [____]   Account Number: [____]

I authorize New York Life to deduct premiums from my account.

**X** [_____]   [__/__/__]

**AUTHORIZATION ELECTRONICALLY SIGNED** Applicant (Account Holder) Signature      Date

Form GPA-A8.4(1)-SS                                    1 of 2      3112-02-B-SST

Attachment B

## STEP 3   HEALTH AND HISTORY

Applicant MUST check YES or NO for all questions. Note: A YES answer may not automatically disqualify you.

1. In the past 12 months, have you:

▶ consulted a doctor or medical professional, or had treatment or diagnostic tests
of any type (exclude routine annual physical and HIV when answering)? ................................................ ☐ YES  ☒ NO

▶ needed help from a person or device to independently walk, bathe, or dress? ............................................ ☐ YES  ☒ NO

▶ taken or been prescribed any medications? ................................................................................................ ☒ YES  ☐ NO

2. In the past 5 years, have you:

▶ been admitted to or confined in a hospital, nursing home, extended care, or special treatment facility? .......... ☐ YES  ☒ NO

▶ received in home medical therapy or assistance? ...................................................................................... ☐ YES  ☒ NO

▶ had treatment or medication, or been diagnosed by a doctor or medical professional as
having any of the following? (check all that apply below) ........................................................................ ☐ YES  ☒ NO

☐ Heart Trouble  ☐ Stroke  ☐ Cancer  ☐ Diabetes Requiring Insulin  ☐ Drug or Alcohol Abuse
☐ Asthma and/or COPD  ☐ Liver Disease  ☐ Kidney Disease  ☐ Immune System Disorder (excluding HIV)  ☐ AIDS

3. For every question answered "Yes," provide details, such as: condition(s), date(s) of onset, treatment, medicine and dosage.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

## STEP 4   READ AND SIGN BELOW

Is the insurance applied for intended to replace, discontinue or change any existing insurance or annuity? ............. ☐ YES  ☒ NO

The information on this form is true and complete to the best of my knowledge and belief. False or incomplete answers may cause benefits to be denied within the first two years. I understand AARP membership is needed for coverage eligibility. If I am approved, this life insurance will begin on the Insurance Date shown on my Certificate, provided I pay my premiums when due. Paying a premium before the Insurance Date does not mean coverage is in force. I will promptly notify New York Life ("NYL") in writing if there are changes in my health before the Insurance Date that would cause me to provide different answers to the health questions on this application. Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. Any attempt to defraud NYL may also result in a loss of coverage.

I authorize any physician, hospital, health care provider, pharmacy, pharmacy benefit manager, medical information retrieval service, or consumer reporting agency to release my medical information, prescription drug history, motor vehicle report, and other information to NYL or reinsurers to determine my eligibility for insurance, evaluate or contest a claim, or for reinsurance or other insurance purposes. MIB Inc., or any insurance company may release information about me to NYL, or its reinsurers, in connection with this life insurance. Also, NYL or its reinsurers, may provide a brief report about me to MIB. This information may be subject to further disclosure as required by law and may not be protected by rules pertaining to this authorization. This authorization may be used for 24 months from the date signed, and I may revoke it by writing to NYL, unless NYL has already used it or issued coverage. This authorization is a condition of obtaining this insurance, and I will receive a copy of this signed and dated form.

**X** Brenda Craft                                                                    2  /  22  /  2022

**APPLICATION ELECTRONICALLY SIGNED**                                    Date

Form GPA-A8.4(1)-SS                                    4L2C7B          2 of 2      3112-02-B-SST



SMITH GILLIAM
WILLIAMS & MILES
Attorneys at Law
P.O. Box 1098
Gainesville, GA 30503

**CERTIFIED MAIL**
PS Form 3800 7/2015

9214 7901 0240 6409 0004 59

New York Life Insurance Company
AARP Operations
Claims Service
PO Box 30713
Tampa, FL 33630



Hasler
04/07/2023
**US POSTAGE** **$008.34°**
FIRST-CLASS MAIL
ZIP 30501
011E11680781



REORDER CAT. NO. 3086

CERTIFIED MAIL

Blumbergs Law Products

www.blumberg.com

9214 7901 0240 6409 0004 59

Sender:

SENDER: COMPLETE THIS SECTION

1. Article Addressed to:

S&WM
WDR
P.O. BOX 1098
AARP OPERATIONS
CLAIMS SERVICE
PO BOX 30713
TAMPA FL 33630
GAINESVILLE GA 30503-1098

9290 9901 0240 6409 0004 53

2. Article Number (Transfer from service label)

9214 7901 0240 6409 0004 59

PS Form 3811 Facsimile, July 2015

Domestic Return Receipt

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

D. Is delivery address different from Item 1?     ☐ Yes
   If YES, enter delivery address below:          ☐ No

3. Service Type
☒ Certified Mail®
☐ Certified Mail® Restricted Delivery

★ USA/Certified Mailer System™ ★
★ Patent #5,573,277; 5,697,648; 5,848,809 ★
★ 5,887,904; 5,951,053; 5,967,558 ★
★ 5,984,365 6,003,902; 6,050,603 ★
★ ©/USA 6/15 CMF-088 ★ © 1998-99 ★

FEED