# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**

Office of Disability Adjudication and Review
SSA ODAR Hearing Office
10155 Eagle Drive
2nd Floor
Covington, GA 30014-3804

Date: July 29, 2015

Russell Charles Richards
2498 Jenay Court
Decatur, GA 30032

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision. Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

**Appeals Council**
**Office of Disability Adjudication and Review**
**5107 Leesburg Pike**
**Falls Church, VA 22041-3255**

Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

Russell Charles Richards          5526)          Page 2 of 3

<u>What Else You May Send Us</u>

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

<u>The Appeals Council May Review My Decision On Its Own</u>

The Appeals Council may review my decision even if you do not appeal. If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision. If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all. My decision could also be used to deny a new application for benefits if the facts and issues are the same. If you disagree with my decision, you should file an appeal within 60 days.

Form HA-L76-OP2 (03-2010)

See Next Page

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (877) 626-9909.  Its address is:

Social Security
Suite 8
2853 Candler Rd
Decatur, GA 30034-1421

Paul McAdam
Administrative Law Judge

Enclosures:
Decision Rationale
Form HA-L39 (Exhibit List)

cc:    Kathleen Flynn
       315 W. Ponce De Leon
       Avenue, Suite 940
       Decatur, GA 30030

Form HA-L76-OP2 (03-2010)

## SOCIAL SECURITY ADMINISTRATION
### Office of Disability Adjudication and Review

### DECISION

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |

Russell Charles Richards
_____
(Claimant)

Period of Disability, Disability Insurance
Benefits, and Supplemental Security Income

_____
(Wage Earner)

_____5526_____
(Social Security Number)

### JURISDICTION AND PROCEDURAL HISTORY

This case is before me on remand from the Appeals Council. The claimant appeared and testified at a hearing held on July 14, 2015, in Covington, GA. John D. Blakeman, an impartial vocational expert, also appeared at the hearing. The claimant is represented by Kathleen Flynn and Sydney Jakes, attorneys. Sydney Jakes appeared at the hearing to represent the claimant.

In its remand order, the Appeals Council directed the undersigned to

- Determine whether the claimant constructively waived the right to appear at the time and place of the scheduled hearing. If the Administrative Law Judge determines that the claimant constructively waived the right to appear at the hearing, he will proceed with any further action necessary to complete the record by following the procedures required by HALLEX 1-2-4-25 D.2a. If the Administrative Law Judge determines that the claimant did not constructively waive the right to appear at the hearing, then he will develop and consider whether good cause existed for the claimant's failure to appear at the hearing in accordance with HALLEX 1-2-4-25 C. Considering Good Cause for Failure to Appear. If the Administrative Law Judge determines good cause existed for the claimant's failure to appear, I will offer the claimant a supplemental hearing per HALLEX 1-2-4-25 D.2b.

- In compliance with the above, I will address the evidence, which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision.

The claimant is alleging disability since May 22, 2008.

Following the hearing, the record was held open to allow the claimant an opportunity to submit additional evidence, which was received, admitted into evidence, and considered in making this determination (Exhibit 27F).

See Next Page

## ISSUES

As an initial matter and in compliance with the Appeals Council's Remand Order, I considered whether the claimant constructively waived his right to appear at the hearing held on February 21, 2012.

Additionally, there is the issue of whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2016. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, I conclude the claimant has not been under a disability within the meaning of the Social Security Act from May 22, 2008, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of

See Next Page

the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

See Next Page

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, including evidence received after the hearing, I make the following findings:

**1.   The claimant constructively waived his right to appear at the hearing held on February 21, 2012.**

I considered the prior objections to proceeding without the claimant present, as well as the claimant's testimony on July 14, 2015, suggesting that the claimant did not recall receiving the hearing notice and hearing reminder. Pursuant to HALLEX I-2-4-25(C)(1)(a), proper notification has been established as the claimant's appointed representative received notice of and appeared at the hearing in February 2012. The claimant's address was not updated and the claimant testified in July 2015 that his address was the same as the one on file. There is no evidence documenting that the claimant's hearing notice and reminders were returned as undeliverable. At the hearing, the claimant's representative acknowledged that several attempts had been made to contact the claimant via telephone and mail without success.

Because the claimant's representative appeared at the hearing and continued to represent the claimant, and pursuant to HALLEX I-2-4-25(D)(2)(a), I find the claimant constructively waived his right to appear at the February 2012 hearing. The claimant received or should have received the hearing notice and reminder; his representative acknowledged that attempts had been made to reach the claimant without success; the hearing notice was mailed to the claimant's last known address; and contact procedures pursuant to HALLEX I-2-3-20 were followed. Of note, the claimant did not suggest he had any difficulty receiving the unfavorable decision issued on July 13, 2012, the Appeals Council Remand Order, notice of the July 2015 hearing, or the hearing reminder, all of which were mailed to the claimant's last known address. As such and considering that the claimant constructively waived his right to appear at the February 2012 hearing, I conducted the hearing and obtained proper vocational expert and other testimony. My decision dated July 13, 2012 is incorporated herein by reference.

In compliance with the Appeals Council's Remand Order, I notified the claimant and his representative at the July 2015 hearing that I find the claimant constructively waived his right to appear at the February 2012 hearing and a notice to show cause would not be issued because the claimant's testimony at the July 2015 hearing supported finding no good cause for his failure to appear earlier. Therefore, no supplemental hearing was held and in compliance with the Appeals Council's order, this decision addresses evidence submitted up to and including the request for review, which included only a one page document suggesting the prior decision contained an error of law and fact (11B). Further, I note that evidence received at the hearing level including post-hearing evidence following the Appeals Council's remand was considered despite being under no apparent obligation to do so. I also note that the Appeals Council did not disturb my prior decision and portions of that decision have been incorporated herein. Although I find the claimant constructively waived his appearance at the 2012 Hearing, I considered the evidence submitted with the Appeal and thereafter and find that the newly supplied evidence does not change my initial decision on the merits, as discussed below.

See Next Page

**2.    The claimant meets the insured status requirements of the Social Security Act through June 30, 2016.**

**3.    The claimant has not engaged in substantial gainful activity since May 22, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**

The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity.  Earnings records show the claimant had earnings that constituted substantial gainful activity in all four quarters of 2008 and 2009 and the first two quarters in 2010 (5D; 6D; 7D).  The claimant reported working as a dispatcher on a full-time basis until January 2010 when he was laid off (1E; 2E; 4E).  The claimant further reported that his symptoms did not become serious enough to keep him from working until April 29, 2010 (1E).  Although the claimant had substantial earnings and reported he worked until January 2010, I gave the claimant the benefit of the doubt in finding the claimant did not engage in substantial gainful activity during the relevant period.  Nevertheless, the fact that the alleged impairments did not prevent the claimant from working during this time strongly suggests that it would not currently prevent work.  Moreover, his continued work activity until he was laid off does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

**4.    The claimant has the following severe impairment: status-post thyroid cancer (20 CFR 404.1520(c) and 416.920(c)).**

I find the claimed impairment is a medically determinable impairment that has more than a minimal impact on the ability of the claimant to perform work activities.  It is, therefore, a severe impairment within the meaning of the statute.

The claimant's medically determinable mental impairment of major depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.

In making this finding, I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1).  These four broad functional areas are known as the "paragraph B" criteria.

Examining physicians throughout the record have indicated the claimant's mental status examination revealed normal mood and affect with the claimant denying any guilt, loss of interest, suicidal or homicidal ideation or auditory/visual hallucinations (3F; 9F; 22F).  Furthermore, the record does not indicate the claimant was treated by a mental health physician.  Dr. Sarah Howell conducted a psychological examination on June 6, 2011 (16F).  The claimant admitted that he had been referred to mental health treatment and prescribed medication; however, he had failed to take the medication and continue treatment classes (16F).  Mental status examination revealed alert and oriented to all spheres, no display of confusion/lack of awareness, good task persistence and euthymic affect (16F).  Dr. Howell diagnosed the claimant

See Next Page

with adjustment disorder with depressed mood and assessed him with a global assessment functioning (GAF) score of 65 (16F).

Dr. Howell noted that the disorder was enduring and persistent at the time of the evaluation only due to the claimant's stressor of not having a job/regular income, however, when the claimant gains gainful employment, the symptoms from adjustment disorder would decrease (16F). Dr. Howell provided the following work-related mental abilities: able to relate to others, able to follow simple one, two and three instructions and/or directions, maintain attention and concentration and withstand the stresses and pressures associated with most day to day work settings (16F). The opinion of Dr. Howell and state agency consultant, Dr. Glenda Scallorn, who found the claimant's affective disorder to be nonsevere are assigned great weight, as they are consistent with the longitudinal record (16F; 18F).

I also note that Dr. John Moseri conducted a psychological examination with the claimant and diagnosed him with major depressive disorder and assessed him with a GAF score of 60 (14F). Dr. Moseri recommended that the claimant participate in mental health treatment, however, the findings of Dr. Moseri are not completely consistent and he does not provide full support for his conclusions (i.e. "long standing history of major depressive disorder which was never diagnosed") (14F). Therefore, the findings and conclusions reached Dr. Moserio are assigned only some weight.

The first functional area is activities of daily living. In this area, the claimant has mild limitation. The record indicates the claimant is able to urinate, defecate, brush teeth, comb hair, dress self, eat, stand, sit, recline, walk greater than 100 feet, able to climb stairs, able to taste, smell, and feel (8E; 9F; 16F). The claimant is able to travel without difficulty and handle his own money (8E; 9F; 16F). The claimant does shop for groceries and perform light household chores (8E; 9F; 16F). The claimant is able to prepare his own food and lift 30 pounds from the floor (9F). The claimant is able to sort and handle papers and files and is able to place files in a cabinet at or above waist level (9F). It was noted in two separate consultative examinations that the claimant drove himself to the medical office (9F; 16F).

The next functional area is social functioning. In this area, the claimant has no limitation. The record indicates that the claimant was separated from his wife and going through a divorce (16F). The claimant was noted to have no difficulty getting along with family, friends, and neighbors but it was stated that the claimant does not participate in many social activities due to fatigue or crowd anxiety (8E). I find that the assertion of anxiety in crowds is not credible particularly in light of the absence of medication for anxiety or mental health treatment. Otherwise, it was noted the claimant spends time with others regularly and he had no difficulty establishing rapport with unfamiliar examiners (9F; 14F; 16F).

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. It was noted that the claimant is able to follow written instructions "great" and oral instructions "good" but that the claimant has some difficulty paying attention for prolonged periods and completing tasks (8E). There was also minimal difficulty reported with handling stress and changes in routines (8E). The claimant's mental status examination during the

See Next Page

consultative psychological evaluation in June 2011, revealed alert and oriented to all spheres, no display of confusion/lack of awareness, good task persistence, and euthymic affect (16F).

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

**5.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

I considered medical Listings 13.01 *et seq.*; however, based upon the medical evidence more fully analyzed below, the claimant's impairment does not rise to the listing level severity nor is there a medical opinion from an acceptable medical source that the claimant's impairment is equivalent in severity to the criteria listed impairment. Specifically, however, I note that the claimant's history of thyroid cancer has not been noted to be anaplastic (undifferentiated), and there is no evidence of metastatic disease process beyond the regional lymph nodes.

**6.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c).**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and

See Next Page

laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, I must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that due to a combination of physical and mental impairments, including a history of thyroid cancer with surgeries in May and September 2005, hyperthyroidism, depression and adjustment disorder, he is unable to perform work at a level equal to substantial gainful activity. The claimant reported that he was disabled due to stress, depression, difficulty sleeping and panic attacks (7E; 10E). In consultative examinations the claimant reported that he was unable to work due to low energy, lethargic, inability to stand for long periods or sit unless sitting back (9F; 16F).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

Specifically, the record reveals the claimant was diagnosed with medullary thyroid cancer and underwent thyroidectomy in May 2005 and re-operation in September 2005 (1F; 2F; 3F; 5F; 19F). The record indicates the claimant was prescribed synthroid (6F). CT scan conducted September 20, 2006, revealed no evidence of recurrent mass or metastatic adenopathy (5F; 19F). USO soft tissue examination also revealed no cystic or solid masses or nodules (5F; 19F). The record indicates the claimant had rising CEA and calcitonin levels in December 2008 and again in January 2009; however, radiological testing revealed no evidence of significant somatostatin receptor-rich tumor and no evidence of FDG avid recurrent or residual disease (6F; 7F; 8F; 19F; 27F). Thyroid ultrasound conducted in June 2010 also revealed no evidence of definite masses and PET scan conducted in October 2010 was normal with no evidence of foci or abnormal FDG uptake (11F; 12F). Interestingly, and supporting the determination that the claimant is able to perform medium work is the fact that treatment notes indicate that the claimant has remained asymptomatic up to and beyond May 2012 (22F).

Although treatment records suggest the claimant's CEA and calcitonin were again rising in 2013 and he underwent additional procedures in August 2013 and thyroidectomy in 2014, progress notes do not suggest the claimant is more limited than he was in 2012 (19F; 21F; 22F; 23F; 24F; 26F). Specifically, the claimant noted that his energy level was good, denied significant symptoms, and was noted to be recovering well just one month after his additional thyroidectomy (22F). Treatment notes also continue to confirm that the claimant is asymptomatic (22F). Further, medical imaging continued to demonstrate no metastatic disease

See Next Page

process despite the recurrence of his medullary thyroid cancer (23F). I note that the claimant's treating physician recommended pursuing treatment through clinical trials, which seems to suggest the claimant's history of thyroid cancer may at some point result in a decreased level of functioning but is not currently supported by the evidence of record (24F).

In choosing not to appear at a February 2012 hearing, the claimant waived the opportunity to provide convincing testimony regarding the allegedly disabling symptoms and limitations. In terms of the claimant's alleged history of thyroid cancer, the record shows the claimant did undergo surgery for the alleged impairment, which certainly suggests that the symptoms were genuine. While that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. While the record shows the claimant had intermittent elevated tumor markers, radiological testing has been normal. Office visit records indicate the claimant suffered only minimal residual disease but was otherwise stable with no new nodules or masses prior to 2013. The claimant was instructed to continue medications and return only for routine office visits (17F). More recent records suggest some recurrence and additional treatment but the evidence does not demonstrate that the claimant is more limited than I determined in 2012.

In terms of the claimant's report of panic attacks, inability to stand for long periods or sit unless sitting back, all over body pain including back pain and difficulty sleeping, the record contains no evidence to substantiate those symptoms. Further, although there is some mention of fatigue in the third party function report, the majority of treatment notes document no such symptoms.

As for the opinion evidence not previously addressed, I note Dr. Murray conducted a consultative examination with the claimant in September 2010 (9F). The claimant reported that he experienced fatigue, decreased appetite, generalized weakness, intermittent palpitations, dizziness and back pain, however, physical examination was essentially normal with Dr. Murray commenting that the claimant had a healed incision on the left side of the neck. Dr. Murray opined that Claimant may sit up to 8 hours; stand and walk up to 8 hours. Claimant should frequently be able to bend, kneel, crawl, stoop, and crouch. There are no limitations to reacting, handling, feeling or gasp. Claimant should be able to push and pull without limitations. I would expect Claimant to have no limitations in lifting with both hands. There is no workplace, visual, or environmental limitations noted. There is no need for any assistive devices. Claimant does not have any obvious learning disabilities that could be limiting (9F). The opinion of Dr. Murray is assigned significant weight, as it is consistent with treatment records discussed above.

In accordance with Social Security Ruling 96-6p, I considered the administrative findings of fact made by the State agency medical consultants and weighed the opinions as statements from a non-examining expert sources (13F; 14F; 18F). The state agency physical consultant concluded that the claimant's impairment was nonsevere (13F). The State agency physical consultants and mental consultants (previously discussed above) are assigned great weight as they are consistent with the objective evidence of record. Nevertheless, I gave the claimant the benefit of the doubt in finding his history of thyroid cancer was severe and limited the claimant to a full range of medium work to accommodate his alleged fatigue and pain, despite lack of support in the record.

See Next Page



As for Global Assessment of Functioning (GAF) scores within the record, Administrative Message (AM) 13066 indicates that the Administrative Law Judge must consider: (1) the GAF rating as opinion evidence; (2) whether the GAF rating is consistent with other evidence; (3) how familiar the rater is with the claimant; and (4) the rater's expertise. GAF scores are a combined subjective rating of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. The Commissioner has declined to endorse the GAF scale for "use in the Social Security and SSI disability programs," and has indicated that GAF scores have no "direct correlation to the severity requirements [of the] mental disorders listings". 65 Fed.Reg. 50746, 50764-65 (2000). Thus, although GAF scores can be helpful in an Administrative Law Judge's decision-making process, they are considered a snapshot of functioning at the time of the examination, not determinative of overall disability. Here, I gave little weight to the GAF score assigned by Dr. Moseri as he provided little to no support for his opinions and the lack of mental health treatment/medication undermines the assertion that the claimant experiences moderate symptoms (14F). I gave more weight to the GAF score assigned by Dr. Howell because the score is consistent with finding the claimant has no more than mild limitations in any area of functioning or as the result of any mental impairment.

Pursuant to Social Security Ruling 06-03, I have also considered the third party statements and opinion evidence from the "non-medical" sources of record and find them unpersuasive to the extent they are inconsistent with the above residual functional capacity (8E). I find that the third-party function report, which generally suggests the claimant has mild limitations in activities of daily living, no limitations in social functioning, and minimal limitations in concentration, are generally consistent with the evidence of record. However, the assertion that the claimant is limited by panic and fatigue is not well-supported. Therefore, I gave no more than partial weight to the statements contained in the third party function report.

In sum, the above residual functional capacity assessment is supported by the opinions of the state agency consultants and the opinion of Dr. Murray and the objective evidence of record. Therefore, I find that while the claimant may have some limitations such as intermittent difficulty sleeping and intermittent elevated tumor markers and occasional fatigue, the vocational expert testified that given the most restricted residual functional capacity contained herein, the claimant is able to return to past relevant work.

**7.   The claimant is capable of performing past relevant work as a dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).**

The claimant performed his past relevant work as a dispatcher within the last fifteen years, for a sufficient length of time to learn the skills necessary to adequately perform his job duties, and at a monetary level that exceeded the monthly limit necessary to be presumed substantial gainful activity. Therefore, the claimant's work qualified as past relevant work.

At the February 2012 hearing, the vocational expert testified that a person of the same age, education, vocational background and residual functional capacity as the claimant would be able to perform the claimant's past relevant work as a dispatcher, which is defined in the Dictionary of Occupational Titles (DOT) # 379-362.010. The vocational expert testified that the DOT defines

See Next Page

the position as sedentary with a SVP of four and is considered semiskilled. I find that the claimant has the ability to perform a full range of medium work, and the vocational expert testified that the claimant's past relevant work as a dispatcher does not require the performance of work related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565). I have evaluated the testimony of the vocational expert in light of the provisions of Social Security Ruling 00-4p in finding the testimony to be credible. Therefore, I find the claimant is capable of performing his past relevant work as actually and generally performed.

**8.    The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2008, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

See Next Page

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on July 26, 2010, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on July 26, 2010, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.


/s/ *Paul McAdam*
_____
Paul McAdam
Administrative Law Judge

July 29, 2015
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1A | Disability Determination Transmittal | | 11/22/2010 | 1 |
| HO 2A | Disability Determination Transmittal | | 11/22/2010 | 1 |
| HO 3A | Disability Determination Transmittal | | 07/06/2011 | 1 |
| HO 4A | Disability Determination Transmittal | | 07/06/2011 | 1 |
| HO 5A | Explanation of Determination | | | 1 |
| HO 6A | Explanation of Determination | | | 1 |
| HO 7A | ALJ Hearing Decision | | 07/13/2012 | 16 |
| HO 8A | AC Order | | 04/25/2014 | 5 |

## Jurisdictional Documents/Notices

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1B | Notice of Disapproved Claim - Concurrent | | 11/22/2010 | 4 |
| HO 2B | Request for Reconsideration | | 01/18/2011 | 2 |
| HO 3B | Appointment of Representative | | 01/18/2011 | 2 |
| HO 4B | Representative Fee Agreement | | 01/18/2011 | 2 |
| HO 5B | T2 Disability Reconsideration Notice | | 07/06/2011 | 2 |
| HO 6B | T16 Disability Reconsideration Notice | | 07/06/2011 | 2 |
| HO 7B | Request for Hearing by ALJ | | 07/13/2011 | 2 |
| HO 8B | Hearing Notice | | 09/08/2011 | 16 |
| HO 9B | Notice Of Hearing Reminder | | 02/07/2012 | 6 |

HA-L39 (03-2007)

Russell Charles Richards      -5526)      Page 2 of 6

| | | | | |
|---|---|---|---|---|
| HO 10B | Resume of Vocational Expert | | | 2 |
| HO 11B | Request for Review of Hearing Decision/Order | | 09/10/2012 | 2 |
| HO 12B | Request for Hearing Acknowledgement Letter | | 05/09/2014 | 9 |
| HO 13B | Outgoing ODAR Correspondence | | 09/19/2014 | 4 |
| HO 14B | Objection to Video Hearing | | 10/02/2014 | 2 |
| HO 15B | Objection to Video Hearing | | 10/29/2014 | 2 |
| HO 16B | Hearing Notice | | 03/18/2015 | 26 |
| HO 17B | Resume of Vocational Expert | | 06/25/2015 | 3 |
| HO 18B | Notice Of Hearing Reminder | | 06/30/2015 | 6 |
| HO 19B | Appointment of Representative-Sydney Jakes (main rep K Flynn) | | 07/14/2015 | 1 |
| HO 20B | Representative Fee Agreement- 25%/$6000.00-Sydney Jakes | | 07/14/2015 | 1 |

## Non-Disability Development

| Component No. | Description | Received | Dates | Pages |
|---|---|---|---|---|
| HO 1D | Application for Disability Insurance Benefits | | 07/26/2010 | 2 |
| HO 2D | Statement of Income and Resources | | 07/26/2010 | 2 |
| HO 3D | Application for Supplemental Security Income Benefits | | 07/26/2010 | 8 |
| HO 4D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 01/18/2012 | 3 |
| HO 5D | Certified Earnings Records | | 01/18/2012 | 2 |
| HO 6D | Summary Earnings Query | | 01/18/2012 | 1 |
| HO 7D | Detailed Earnings Query | | 01/18/2012 | 4 |

HA-L39 (03-2007)



| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 8D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | | 06/22/2015 | 3 |
| HO 9D | Certified Earnings Records | | | 06/22/2015 | 2 |
| HO 10D | Detailed Earnings Query | | | 06/22/2015 | 3 |
| HO 11D | Summary Earnings Query | | | 06/22/2015 | 1 |
| HO 12D | Misc Non-Disability Development | | | 01/08/2011 | 9 |

### Disability Related Development

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1E | Disability Report - Adult | | Decatur FO | | 7 |
| HO 2E | Work History Report | | Decatur FO | | 8 |
| HO 3E | Disability Report - Field Office | | Decatur FO | to 07/26/2010 | 4 |
| HO 4E | Work History Report | | Claimant | to 08/09/2010 | 9 |
| HO 5E | Report of Contact | | DDS STONE MOUNTAIN GA | to 10/07/2010 | 2 |
| HO 6E | Disability Report - Field Office | | Decatur FO | to 02/24/2011 | 2 |
| HO 7E | Disability Report - Appeals | | Decatur FO | | 5 |
| HO 8E | 3rd Party Function Report - Adult | | Claimant | | 8 |
| HO 9E | Disability Report - Field Office | | Decatur FO | | 2 |
| HO 10E | Disability Report - Appeals | | Decatur FO | | 5 |
| HO 11E | Representative Correspondence | | Kathleen M. Flynn, LLC | to 10/11/2011 | 4 |
| OAO 12E | Misc Disability Development and Documentation | | Separation Notice from Employer | 04/09/2012 to | 2 |

HA-L39 (03-2007)

Russell Charles Richards          ·5526)          Page 4 of 6

## Medical Records

| Component No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|
| HO 1F | Laboratory Test Report | | Matthew Ferber, Ph.D., Mayo Clinic Molecular Genetics Lab | 05/16/2005 to 06/01/2005 | 3 |
| HO 2F | Outpatient Hospital Records | | Emory University Hospital | to 06/07/2005 | 4 |
| HO 3F | Inpatient Hospital Records | | Emory University Hospital | 09/12/2005 to 09/18/2005 | 20 |
| HO 4F | Laboratory Test Report | | Emory University Hospital | 09/09/2005 to 09/26/2005 | 10 |
| HO 5F | Office Treatment Records | | David Jacobson, MD - Diabetes & Endocrinology Associates | 05/03/2005 to 09/29/2006 | 43 |
| HO 6F | Outpatient Hospital Records | | Emory University Hospital | to 12/22/2008 | 10 |
| HO 7F | Outpatient Hospital Records | | Emory University Hospital | to 01/14/2009 | 11 |
| HO 8F | Office Treatment Records | | David Jacobson, MD - Diabetes & Endocrinology Associates | 01/03/2007 to 07/27/2009 | 51 |
| HO 9F | Consultative Examination Report | | DARRELL LEE MURRAY MD | to 09/24/2010 | 9 |
| HO 10F | Laboratory Test Report | | Grady Health System | 07/22/2010 to 09/24/2010 | 3 |
| HO 11F | Hospital Records | | Grady Health System | 05/27/2010 to 09/24/2010 | 45 |
| HO 12F | Radiology Report | | Grady Health System | to 10/19/2010 | 2 |

HA-L39 (03-2007)

Russell Charles Richards          5526)          Page 5 of 6



| HO 13F | Medical Evaluation/Case Analysis | Shakoora Omonuwa, M.D. | to 11/19/2010 | 1 |
| HO 14F | Mental RFC Assessment | John Moseri, MD Newport Integrated Behavioral Healthcare | to 02/07/2011 | 4 |
| HO 15F | Hospital Records | Grady Health System | 04/14/2010 to 02/24/2011 | 17 |
| HO 16F | Consultative Examination Report | Sarah E. Howell, Psy.D. | to 06/06/2011 | 5 |
| HO 17F | Outpatient Hospital Records | Grady Health System | 04/14/2010 to 06/16/2011 | 21 |
| HO 18F | Psychiatric Review Technique | Glenda Scallorn, M.D. | to 07/01/2011 | 14 |
| HO 19F | Misc Medical Records | Diabetes and Endocrinology Associates 5-3-05 to 7-27-09 | 05/03/2005 to 07/27/2009 | 170 |
| HO 20F | Medical Source - No MER Available-No records for dates requested | Grady Memorial Hospital | to 05/12/2011 | 1 |
| HO 21F | Outpatient Hospital Records | Grady Memorial Hospital 1.29.14 | to 01/29/2014 | 2 |
| HO 22F | Hospital Records | grady 5-7-13 to 2-10-14 | 05/07/2013 to 02/10/2014 | 73 |
| HO 23F | Outpatient Hospital Records | Emory Midtown 4-23-14 | to 04/23/2014 | 2 |
| HO 24F | Letter | Dronavalli, Suma MD | to 05/14/2014 | 2 |
| HO 25F | Medical Source - No MER Available-No records for dates requested | Emory University Hospital No recs 07-19-11 to 06-06-14 | to 06/06/2014 | 1 |

HA-L39 (03-2007)

Russell Charles Richards          ·5526)          Page 6 of 6

| HO 26F | Outpatient Hospital Records | | Northside Hospital 9.11.06 - 10.7.14 | 09/11/2006 to 10/07/2014 | 18 |
|--------|------------------------------|--|---------------------------------------|---------------------------|----|
| HO 27F | Hospital Records | Subsequent to hearing | DeKalb Medical Center 5-3-05 to 12-1-08 | 05/03/2005 to 12/01/2008 | 24 |

SSA ODAR
2nd Floor
Covington, GA 30014



#    000000007    I=000000   0729 IP CIT

7 3 AT 1.095

Kathleen Flynn
315 W. Ponce De Leon
Avenue, Suite 940
Decatur, GA 30030

