IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA ATLANTA
DIVISION

| | |
|---|---|
| SOUDABEH LARSEN )<br>)<br>   Plaintiff, )<br>v. )<br>)<br>AMERISAVE MORTGAGE COMPANY )<br>)<br>   Defendant. )<br>_____) | CASE NO.: |

## COMPLAINT

### INTRODUCTION

This is an action under of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq*. ("ADAAA") (the "ADA"), and Title VII of the Civil Rights Act of 1964 as incorporated.

### JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to: Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference

1

Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6, and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## **PARTIES**

3. Plaintiff, Soudabeh Larsen, is authorized to bring this action under Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant is a domestic corporation with a principal place of business located at 3525 Piedmont Road, NE 6 Piedmont Center, Suite 600, Atlanta, Georgia 30022 and can be served upon its Registered Agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

5. At all relevant times, Defendant has conducted business in the State of Georgia and has continuously maintained at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C.§ 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

7. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

8. On January 25, 2023, Larsen filed Charge No. 11B-2023-00137 Charge No. with the Equal Employment Opportunity Commission within 180 days of the latest adverse action alleging violations of the ADA by Defendant.

9. On May 23, 2023, the Equal Employment Opportunity Commission issued a Notice of Rights.

10. Larsen files this lawsuit within 90 days of receipt of the Notice of Rights issued by the EEOC. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11. Larsen is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

12. Larsen's physical impairment resulted in a planned series of three hospitalizations during her employment that she had notified the Defendant about prior to her employment separation.

13. Larsen was hired on September 23, 2019, and held the employment position of Loan Officer at the time of her October 10, 2022, termination.

14. In that position, Larsen's income was based on provided leads and closing "deals."

15. Larsen performed at a high level earning six figure annual incomes prior to 2022 when her closings were impacted by medical leave related to surgeries and having been provided lower quality file leads.

16. Larsen was diagnosed with a condition that falls under the ADA and required an initial surgery on August 18, 2021.

17. Larsen communicated the general nature of her disability to Brandon Stein, the Defendant's Vice President of Sales.

18. Larsen performed her employment duties from both her residence and in-office schedule under the Defendant's hybrid work from home policy.

19. Larsen underwent a second surgery for her condition on February 18, 2022.

20. At that time, she anticipated use of Family Medical Leave for a planned third surgery and recovery time.

21. However, shortly after her return to work on March 1, 2022, Larsen was placed on an initial Performance Improvement Plan for the reason she had not closed enough loans during the performance period in which she just had surgery and been out of work.

22. Larsen had raised the fact with Stein that she was receiving second level leads which would not convert to closings at the same rate of top-level leads.

23. Stein disputed her claim until Larsen showed him the reports reflecting the type and number of second level leads, she had received.

24. In April 2022, Larsen underwent unplanned surgery related to her condition.

25. Larsen had taken Family Medical Leave leading up to that surgery and thereafter and returned to work on or about July18, 2022.

26. Upon her return to work, Larsen was informed that Loan Officers were being measured for performance on loan conversion rate of closing transactions.

27. The period included Larsen not being provided leads and/or the quality of leads provided to other Loan Officers and the development of building a pipeline of closings.

28. Approximately 60 days later, on September 23, 2022, Larsen was placed on a second Performance Improvement Plan, typically 30-day periods, based on her conversion rate notwithstanding having been on Family Medical Leave.

29. Larsen was informed that her 90-day conversion rate was one of the lowest comparable to Loan Officers over that time.

30. On October 10, 2022, Larsen was informed of her termination by Stein.

31. On information and belief, Kacee Bradford, a non-disabled Loan Officer was not terminated despite having a comparable low 30-day conversation rate to Larsen.

32. A male, Jack Fang, was terminated at or near the same time within minutes of having requested leave under the Family Medical Leave Act to receive treatment for a disability covered under the ADA.

## STATEMENT OF CLAIMS

### Count I – ADA Discrimination

33. The allegations in the preceding paragraphs are incorporated by reference as if set forth herein.

34. Upon information and belief, Defendant would not have discharged Larsen had she not had a disability, record of disability or had he not been regarded as disabled.

35. Defendant intentionally, with malice and reckless indifference to Larsen's rights, violated the ADA by treating her differently than her non-disabled coworkers, by refusing to accommodate her disability and by terminating her, despite knowing that the ADA required equal terms, conditions, and privileges of employment for all employees and reasonable accommodations for employees with a disability or record of disability.

36. Larsen had a disability which required periodic medical leave.

37. Defendant failed to provide accommodation to her performance standard and measured her performance against full time non-disabled comparable individuals.

38. Larsen was able to perform her duties with or without accommodations for the periods of her active employment as evidenced by her satisfactory record of performance.

39. Defendant systematically impeded her performance by imposing obstacles to her achieving goals including taking away leads, submitted second level leads, and instructing her not to act on additional leads prior to closing.

40. Defendant's actions amount to a violation of the ADA, 42 U.S.C. § 12112, which prohibits discrimination based on disability.

41. As a direct and proximate result of Defendant's intentional discrimination, Larsen has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including health insurance benefits.

42. In addition, Defendant's actions have caused, continue to cause, and will cause Larsen to suffer damages for physical pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

43. Moreover, Larsen is entitled to be reinstated to employment by Defendant and, if reinstatement is not feasible under the circumstances, Larsen is entitled to an award of damages for future lost wages and benefits of employment.

## PRAYER FOR RELIEF

**WHEREFORE,** the Plaintiff respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with Defendant, from engaging in any employment practices which discriminate because of disability by denying reasonable accommodations to disabled employees, discharging employees based on the disability, and by taking. adverse employment actions against persons who engage in protected activity under the ADA

B.     Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees with disabilities and/or who engage in protected activity, and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Larsen whole, by providing appropriate back pay in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.     Order Defendant to make Larson whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E. Order Defendant to make Larsen whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay Larsen punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper.

H. Award Larsen her attorney fees and costs of this action.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted, this 21st day of August 2023.

*/s/ Howard R. Evans*
Ga. Bar No. 292865

Howard R. Evans & Associates
1868 Independence Square, Suite D
Atlanta, GA 30338

Email: attorney4hrlaw@gmail.com
Phone: (770) 377-9521