# Exhibit C

*U.S. Patent No. 6,807,568*

US006807568B1

(12) **United States Patent**

Tannenbaum

(10) Patent No.: **US 6,807,568 B1**
(45) Date of Patent: **Oct. 19, 2004**

(54) **RECIPIENT SELECTION OF INFORMATION TO BE SUBSEQUENTLY DELIVERED**

(75) Inventor: **David H. Tannenbaum**, Dallas, TX (US)

(73) Assignee: **Union Beach, L.P.**, Dallas, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 690 days.

(21) Appl. No.: **09/625,646**

(22) Filed: **Jul. 27, 2000**

(51) Int. Cl.[7] ................................................. **G06F 15/16**
(52) U.S. Cl. ........................................ **709/217**; 709/219
(58) Field of Search ................................ 709/217, 219; 707/1; 725/35, 39, 47, 53

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,754,939 | A | * | 5/1998 | Herz et al. | 455/3.04 |
| 5,835,087 | A | * | 11/1998 | Herz et al. | 345/810 |
| 6,052,714 | A | * | 4/2000 | Miike et al. | 709/217 |
| 6,075,526 | A | * | 6/2000 | Rothmuller | 345/721 |
| 6,236,991 | B1 | * | 5/2001 | Frauenhofer et al. | 707/6 |
| 6,345,293 | B1 | * | 2/2002 | Chaddha | 709/219 |
| 6,434,747 | B1 | * | 8/2002 | Khoo et al. | 725/46 |
| 6,594,682 | B2 | * | 7/2003 | Peterson et al. | 709/102 |
| 6,647,425 | B1 | * | 11/2003 | Chaddha | 709/233 |
| 6,654,735 | B1 | * | 11/2003 | Eichstaedt et al. | 707/3 |

OTHER PUBLICATIONS

Web page for Avant Go: http://avantgo.com/frontdoor/index.html entitled The Internet on your handheld; copyrighted 2000.

Web page for Avant Go: http://avantgo.com/corp/company/index.html entitled About AvantGo, Inc.; copyrighted 2000.

* cited by examiner

Primary Examiner—Krisna Lim
(74) Attorney, Agent, or Firm—Fulbright & Jaworski LLP

(57) **ABSTRACT**

Users may record abstracts of information that they desire and information providers may access the recorded information abstracts from time to time so as to provide the information content that matches the requested information. In one embodiment, the user may select a TV program (or movie) that is not currently available and then at a time subsequent thereto that program is made available to the user, either privately, or over the public network. In another embodiment, users of the Internet may record information requests. Information providers may then access these requests from time to time and provide the requested information, even if the information had not been available at the time the request was initially posted. Prior to delivery of the information content the parties, if desired, may negotiate when and how delivery will occur, how much information will be provided, the cost of the information and the responsibilities of each of the parties pertaining to that information. The information abstract may be stored local to the user or at one or more central sites.

**50 Claims, 4 Drawing Sheets**



Case 1:23-mi-99999-UNA   Document 2659-4   Filed 08/21/23   Page 3 of 16



*FIG. 1*



*FIG. 2*



*FIG. 3*



*FIG. 4*

U.S. Patent     Oct. 19, 2004     Sheet 2 of 4     US 6,807,568 B1



*FIG. 5*

ENTER REQUEST — 501

STORE REQUEST — 502

503
IS SYSTEM CONNECTED TO A REMOTE LOCATION?
NO → DO NOTHING — 504
YES

ACCESS INTERNET (OR OTHER REMOTE SITE) — 505

506
IS THERE A FLAG SET?
NO → DO NOTHING
YES

CHECK PERMISSION LEVEL OF REMOTE SITES AGAINST PERMISSION LEVEL ASSIGNED TO STORED REQUESTS — 507 / 508

509
IS THERE A MATCH IN PERMISSION LEVELS?
NO → DO NOTHING — 510
YES

511
SHOULD MATCHED DATA BE TRANSFERRED TO A REMOTE SITE?
NO
YES

TRANSFER DATA TO A CENTRAL SITE — 512

END — 513

FROM FIG. 6
A

ALLOW REMOTE SITE TO OBTAIN STORED REQUESTS WHICH MATCH PERMISSIONS — 514

515
DOES REMOTE SITE HAVE INFORMATION TO RETURN?
NO → DO NOTHING — 516
YES

INTERACTIVE SESSION — 517

518
IS THE INFORMATION SUBJECT TO A TIME, LOCATION, MEDIA, ETC. ADJUSTMENT?
YES → MAKE NECESSARY ADJUSTMENTS — 520
NO

DOWNLOAD DATA FROM REMOTE SITE TO USER USING MUTUALLY AGREEABLE MEDIA AND AT MUTUALLY AGREEABLE TIME — 519

END — 521



*FIG. 6*

HUNT FOR FLAGS
REQUESTING INFORMATION
OF THE TYPE AVAILABLE — 601

602
HAS
A FLAG BEEN
FOUND?

NO — 603
KEEP LOOKING

606
FROM DIRECT
REQUESTER'S

YES

PROVIDE PERMISSION
LEVEL (IF FOUND) AND
CHECK TO DETERMINE IF
A MATCH EXISTS — 604

605
IS THERE
A MATCH?    NO

YES

A

TO FIG. 5

*FIG. 7*

RECEIVE CALL FROM
REMOTE RECORDERS — 701

702
IS
THERE DATA
STORED FROM
USER?    NO

YES

UPLOAD AND STORE
USER REQUESTS — 704

PASS USER REQUESTS
TO OTHER INFORMATION
SOURCES IF NECESSARY — 705

PROCEED WITH REGULAR
DOWNLOAD OF
PROGRAM DATA — 703

*FIG.  8*



US 6,807,568 B1

**1**

## RECIPIENT SELECTION OF INFORMATION TO BE SUBSEQUENTLY DELIVERED

### TECHNICAL FIELD

This invention relates to the delivery of information from an information provider to an information seeker and more particularly to a system and method for allowing an information provider to find and provide information to information seekers.

### BACKGROUND

Currently, when it is desired to watch a TV program, the viewer is at the mercy of the content providers as to what that viewer watches and at what time. This is changing now that digital recorders, such as the TIVO system from Philips, can record many hours of TV programs thereby allowing viewers to delay watching broadcasts for a period of time by recording such broadcasts for later viewing. Such systems also allow users to select programs to be aired in the future and to record the selected shows. These systems also allow users to select topics and the system selects the shows that match these selected topics. Such systems work well, but suffer from the fact that they also are dependent upon the preselection of content by the content provider. If a person desires to view a certain movie, (or to view, for example, a documentary on the life of George Washington) and if that desired movie (or documentary) was not scheduled for showing within a finite time in the future, the user is not be able to schedule it, except perhaps by broad topic types. In any event, the user cannot in any manner, cause movies, or programs, to be delivered which were not scheduled for delivery.

This same problem exists when users are trying to obtain information from the Internet. The user can only gain access to information if that information exists on the Internet at the time that the information is sought. However, even if the information existed on the Internet at that time, obtaining that information, even using the very sophisticated tools available today, is not trivial. For example, assume that a user desires to obtain tickets to see a certain play (or concert) or to see a certain performer when and if that play, concert or performer is next in town. Today, the user would access the Internet and look for the name of the play or the name of the performer. If there was a scheduled performance, the user might, depending upon his/her skill (and patience), find it. But if there was nothing scheduled (or contemplated) then the user would come away (usually after spending considerable time looking) with nothing.

Thus, there exists a need in the art for a system and method which allows an information seeking individual to gather information even when that information is not currently available and to have that information delivered when it becomes available.

There is also a need in the art for a system and method which allows a user to schedule the delivery of desired information at controllable times in the future using media mutually agreed upon by the requesting and providing parties.

### SUMMARY OF THE INVENTION

These and other objects, features and technical advantages are achieved by a system and method which allows the user to input to his/her own local device the information (or an abstract thereof) that he/she desires to be delivered. This

**2**

information can be as simple or as complex as desired. What is important is that some other party can, from time to time, access the requested information and provide proper responses thereto.

The information, by way of example, can be the names of desired entertainment shows, or subjects, that could be delivered by way of video or live TV. The names, or abstracts, can be, by way of example, past TV shows or past TV subjects; names of biographies or travel documentaries, or they can be queries as to the dates that a certain play or performer will next be in town; or any other desired information. Thus, a person wishing to view on TV a series that aired months ago (or the first three programs of that series) will, in one embodiment, enter the desired requested information into his/her local storage medium. The storage mechanism could be a local recorder, such as the above-mentioned digital recorder, (or any other system), or it could be the user's browser on the Internet. In the preferred embodiment the information is stored on the user's local computer. In an alternate embodiment, the abstracted request is stored on one or more remote devices. The user would enter "deliver by TV over cable (or satellite, or any other desired medium)" a program or programs pertaining to the life of "George Washington". This entry could, of course, be prompted by interactive prompts. If the user had more specific information on the desired program, the user could, if he/she desires, enter such additional details.

It is important to note that the requested information can be stored locally on a TV recorder or stored on a local computer or on any other device having memory capability. The storage medium that the user selects need not be the medium to where the information is to be returned. The user may specify the return medium or the information provider may, by the nature of the content that is to be delivered or otherwise, decide how best and when to deliver the information. The return information can actually arrive using multiple media either in whole or in part. For example, the provider may send a message (using the Internet to the user's PC or perhaps a wireless connection to the user's handheld device) indicating that a certain requested TV program will be available at a certain date on a particular channel. Then, at the proper time (or at a time negotiated between the provider and the requester) the desired information is delivered to the user over a medium different from the one used to verify or confirm the transaction, and perhaps even different from the medium over which the initial request was posted.

One important aspect of this invention is that the requested information is maintained in a location (whether local to the user or remote) such that it remains available for a period of time to anyone who is capable of providing the desired information which is controlled by the provider. Thus, instead of the user searching a massive data base (the web today) the burden falls on information providers to find those folks who need or want the information which is controlled by the provider. This system works particularly well for situations where the desired information pertains to future events, such as entertainment, or for complex situations where the user only has a vague understanding of what he/she desires. In this situation, the content owner knows much more about the subject, and, based on the abstract of the information posted, can provide the proper response.

Thus for vacation planning a person might type in the location desired and the time of year desired and request information on climate, hotel availability, restaurants, etc. This information then would be stored (either at the user's location) or at a central site, and will be accessible for a

US 6,807,568 B1

**3**

period of time by anyone who believes they have the desired information. The return information can then be delivered without further action taken by the posting user. There could be an interactive exchange prior to downloading of the information. Today, this interaction is only possible if the user were to first go to a specific site to post his/her desired information.

The vacation planner instead of specifying the place could have entered parameters, such as time of year, climate, desired activities (beach, golfing, shopping, hiking, sailing, etc.,) and those locations desiring to supply information would then provide either the information or an abstract of the information, and the user (either live or via a filter program) would accept as much information as is desired.

In the context of entertainment, assume the user requested a TV program on George Washington. The requester could have specified a desired time frame or could have left it open ended. The user could also have specified the type of media over which the program was to be received or again, left it open ended. In any event, assume that a provider had the program or a series of programs pertaining to George Washington, and could deliver the content at a certain time. The provider would then notify the user that a two hour program on George Washington would be available, for example, on channel 87 at 2:00 p.m. Wed., three months hence. The user could accept this time and arrange for it to be recorded if he/she were not going to be available to watch it live. This recording could be by traditional VCR or by digital recording under processor control. In one embodiment, the recorder would be set and controlled by the provider.

Assuming that the user wanted the information sooner, one option would be to accept the information as a streamed video directly into the user's computer for recording on a CD or other portable recording device at a mutually agreeable time. The content could, of course, be delivered in any manner agreed between the sender and the user.

The foregoing has outlined rather broadly the features and technical advantages of the present invention in order that the detailed description of the invention that follows may be better understood. Additional features and advantages of the invention will be described hereinafter which form the subject of the claims of the invention. It should be appreciated by those skilled in the art that the conception and specific embodiment disclosed may be readily utilized as a basis for modifying or designing other structures for carrying out the same purposes of the present invention. It should also be realized by those skilled in the art that such equivalent constructions do not depart from the spirit and scope of the invention as set forth in the appended claims. The novel features which are believed to be characteristic of the invention, both as to its organization and method of operation, together with further objects and advantages will be better understood from the following description when considered in connection with the accompanying figures. It is to be expressly understood, however, that each of the figures is provided for the purpose of illustration and description only and is not intended as a definition of the limits of the present invention.

### BRIEF DESCRIPTION OF THE DRAWING

For a more complete understanding of the present invention, and the advantages thereof, reference is now made to the following descriptions taken in conjunction with the accompanying drawing, in which:

FIG. **1** shows an embodiment of the invention using TV programs and a digital recording device at the user's location;

**4**

FIG. **2** shows a block diagram of an information provider location;

FIG. **3** shows an embodiment of the invention using a processor, such as a PC, at the user's location;

FIG. **4** shows an intermediary web site adapted to accepting user's requests;

FIG. **5** is a flow chart of one embodiment of the invention where the user stores abstracts of his/her desired information;

FIG. **6** is a flow chart of one embodiment of the invention where an information provider searches for flags indicating that a person is seeking information and checks for matches between the information available and the information desired;

FIG. **7** is a flow chart of one embodiment of the invention where a central control in a TV program control system receives information from various users and provides return programming in accordance with posted requests from users; and

FIG. **8** is a flow chart of one embodiment of the invention where the central control sends requested information to a user.

### DETAILED DESCRIPTION

Turning now to FIG. **1**, there is shown system **10**, which has user input device **11** which could, for example, be a remote control into the TV set or digital recorder or a computer or any other input device, such as a wireless phone. The input could be by voice command, using, for example, a voice recognition system. In the TV environment, the input could be to digital recorder **12**, such as, for example, the aforementioned TIVO recorder provided by Philips. Such a device would typically have processor **1201** and memory **1202** and would operate to receive input signals from a variety of sources such as, for example inputs **1203**. This data can be in analog or digital form and would be stored in a memory. In the illustrative embodiment, analog signals are digitized by recorder **12** and stored in memory **1202**. Information stored in memory **1202** is made available to display **13** on command from the user, or, alternatively, under control of the information provider.

Recorder **12** is designed to interact with a remote location **14** either by phone connection, satellite or by any other mechanism, whether wireless or wireline, to exchange information pertaining to the lineup on the various channels. In this manner the user, using input device **11**, may determine what is available today, tomorrow or sometime in the future. This then allows the user to select, (and set for recording if desired) certain programs which will become available over input **1203** at future times. This information is updated periodically via a connection made between recorder **12** and remote location **14**, thereby assuring recorder **12** that it has the latest program information.

User **11** may specify to recorder **12**, usually in the form of an interactive session between user device **11** and recorder **12**, that the user desires to watch certain programs by name or type, which programs will occur in the future. Recorder **12** then monitors the information received from remote location **14** and picks out of the titles or other information made available the information desired to be recorded. Thus, for example, user **11** may decide that he or she wants to see only those programs featuring a certain artist. If that information is available from remote location **14**, then recorder **12** will monitor the information and, whenever an input program arrives having that artist, the recorder will proceed to record the program.

**5**

The problem at this point, however, is that if recorder **12** has no information pertaining to future programs, movies, artists, etc., then the interactive session between user **11** and recorder **12** will not achieve the desired result, i.e., the scheduling of a desired program.

In the embodiment shown in FIG. **1** user **11** could input to recorder **12** the desired movie, series, concept, artist or any other desired information. This information then is provided from recorder **12** to remote location **14**, for example, over the periodic connection between the two. Remote location **14** then stores the information pertaining to user **11**. Location **14** then accesses data base **15**, which could be local to remote location **14** or remote therefrom. This access can either be direct, via connection **1204**, or it could be through Internet **100** via connections **1205, 1206**.

In one embodiment, location **14** simply records the information and makes it available for remote providers to access the desired user information via Internet **100** in a manner to be discussed. Once the information is available, one or more potential providers could see that one or more users wish to see a program, for example, a program about George Washington. Accordingly, one or more of these potential providers could then either make the program available at a time in the future so that many viewers could then watch that program or the remote provider could make the program available only to user **11** over a specific channel at a specific time.

In either event, the remote provider would instruct recorder **12** at user location **10** to record that information for that user. In addition, the remote provider, assuming enough information was on file pertaining to user **11**, could contact user **11** over the Internet via a separate PC, not shown in FIG. **1**, or by e-mail, wireless messaging, telephone call, message left on recorder **12**, or the like. The provider would interact with user **11** to instruct user **11** as to when the program will be available, or to interact with user **11** to refine the request and to, perhaps, schedule alternate modes and/or media for delivery. It could, for example, be most appropriate to provide the information via an alternate network directly from program data base **15** to the user's PC, for recording on a medium separate from recorder **12**. In either event, the user will eventually see or have available to him/her the program that that user desires when that information becomes available.

As discussed, the information may be information about a past TV series, past historical events, news reports, sports, or the requested information might be about a planned future event. This could occur if user **11**, for example, were to input that he/she desires all information pertaining to natural disasters in a certain location or desires information pertaining to nuclear testing activities or any other activity that he/she desires to monitor if and when that information becomes available. Under such a condition various providers of content anywhere in the world may access remote location **14** via Internet **100**, or otherwise, to determine which users would like to have information pertaining to subject matter which it has available. In this manner specific information can be made available to users, such as user **11**, even though that information is not available at the time user **11** asks for it, but subsequently becomes available, or subsequently is constructed based upon one or more users requesting such information.

Note that while the information request was transferred from the user's location to a remote location, the system could be constructed so that the request is maintained local to the user and potential providers would then access the

**6**

user's location from time to time to monitor such requests. Certainly, user **11** could put time restraints on the request and have the request disappear or become modified after a certain period of time.

Turning now to FIG. **2**, system **20** shows information provider **21** having a search engine **22** which searches Internet **100** (or which searches directly) to other locations for requests that include within them information that provider **21** has an ability to deliver. Information provider **21** might search for requests that it does not have the ability to deliver at this time but could go out and purchase, obtain, or create depending upon the perceived market for that information as determined by its continuing search for requests. This search could be, for example, into PC's or other devices located at user's premises which have on them permission for access. In some situations, search engine **22** might only be able to search PC's which are then active on the Internet. Also, information provider **21** could be prevented from downloading any information to a user until an interactive session is held with that user such that both parties agree that what is to be provided matches what is desired to be received. Also, the parties can determine what the media will be for distribution, what the payment will be, if any, and what the various responsibilities and liabilities of the parties are with respect to the information. The information could be controlled by codes or flags and different permission levels could be established for different types of information or for different types of providers. Note that program database **15**, FIG. **1**, could, if desired, include system **20**.

FIG. **3** shows system **30** which includes an alternative method of user input, such as, for example, PC **31** which allows the user to store the information requests in memory **32**, which typically would be internal to PC **31**, but which could be external thereto if desired. These requests, as discussed above, could be maintained local or could be sent out over Internet **100**, or otherwise, to a remote site. For example, the user at PC **31** might desire tickets to a circus coming to town at some time in the future unknown to the user. The user simply records the abstracted information "circus" in memory **32** which then becomes accessible via Internet **100**. Anyone having information pertaining to a circus once a circus is scheduled for the locality of PC **31** (assuming that user **31** desires the locale to be local), will scan the system looking for a seeker who has posted a desire for information pertaining to a circus.

Note that PC **31** could be any type of processor and/or memory, including a telephone, pager, portable computer, personal assistants and the like.

Thus, information provider **21**, (FIG. **2**) which could be the circus itself, or an intermediate web site acting on behalf of the circus, could then, by use of search engine **22**, realize that the user at PC **31** desires information pertaining to the circus and requires **4** tickets to that circus. Once this information becomes available, i.e., once the circus is scheduled for the location (city) in which PC **31** is located, a message is sent to PC **31**, or to a particular alternate location, saying in effect: "The circus will be in Dallas, Tex. August 15th through the 28th. Do you still desire 4 tickets?" If the posting user answers "yes," then via Internet **100**, or otherwise, information provider **21** may arrange with user **31** for the delivery of and payment for the tickets. The provider may contact one of a number of ticket sources to provide the tickets, which ticket could be printed on printer **33** at the user's location, or the provider could issue the tickets directly. Note that at the time the request was made by PC **31**, the circus had not been scheduled for Dallas and therefore, under known systems, the user of PC **31** would not

US 6,807,568 B1

7

have been able to post a general request for information pertaining to the circus.

Under the system of this invention, the user at PC **31** could put into his or her PC all of the activities that the user would like to do within the next six months, one year, or whatever, including plays, sporting events, TV programs, movies, music concerts, artists, books or any other type of activity, and the user will be contacted (if desired) at the appropriate time when the information on each activity is made available. The user could input his/her sought information from a pager, a wireless phone or a hand held processor and these requests would be stored and made available as discussed above.

FIG. **4** shows an intermediary web site **41** which acts to collect information from many users and provides a central place for information providers, such as information provider system **20** (FIG. **2**) to search. In such a situation, search engine **22** could search the entire Internet looking for any user having a flag indicating that it has a desired request, or it could instead search the intermediary web sites, or it could do both if desired. These web sites would contain in storage **401** requests from various users. Intermediary web site **41** could then provide various services for the end user, such as the coordination of the tickets, flights for vacation, scheduling and other such activities, such as payment and filtering.

Intermediary web site **41** could record and receive information directly from a user such that the user would log onto the web site and answer a series of questions, thereby recording the information that it seeks. Alternatively, web site **41** could periodically go out and upload (using search engine **22** or otherwise) from various user sites information that the users are seeking to receive. In either event, the centralized server, or servers, could themselves wait so that they would be accessed by information providers on an inquiry basis much like the information providers would do if they were searching for individuals who had flags set for them to review. However, alternatively, the central servers could actively go out on a periodic basis scanning the Internet for information to satisfy requests that they have received.

Once the end user posts the information, either locally or on the server, it is available continuously for either a period of time dictated by the user or dictated by common sense based upon the information requested. The request would remain available until such time as the information is provided, the program distributed, the time for the circus has come and gone, or other actions taken. This system, in operation, acts as a push system so that information is pushed down to the end user but only in response to flags or codes set by the end user.

For example, a convention could be established that information in a data base that has a certain ending, such as FLG (for flag), is always available for review by any legitimate party. Of course, it could be established that only certain parties could look at certain flags such that the message itself could give permission for certain types of providers to respond to different types of messages. Thus, the FLG message could be a message that is open to anyone, whereas a FLG1 message is open to only certain segments of information providers where FLG2 is open to other segments of providers, etc. Therefore, a hierarchy could be established that would allow an end user to determine who has access to the requests and how and by whom those requests are to be honored.

Today typically such requests are made in bulk such that a user or pager could request that all baseball scores (or

8

weather, or stock quotes) be downloaded periodically to the end user. In typical operation, such systems are subscription services where the person subscribes to a service that provides information and the information is gathered by an intermediary the intermediary establishes what information is to be provided and the end user simply subscribes. One such service is shown at AVANTGO.COM and allows subscribers to obtain stock quotes and other information, upon logging onto the site. The difference in the inventive system is that the user does not subscribe to preestablished data but is free to request any information, even information that is not available at the time of the request, and that information could come from any provider who has the required data and who wishes to deliver the data either free or for a charge at a particular time under a particular medium.

FIGS. **5–8** show simple flow charts which can be rearranged to run on one or more processors. These processors could be central to everyone, or could be at a provider location, FIG. **2**, or at a destination location, FIGS. **1** and **3**, or at an intermediary web site, FIG. **4**. These processors could be general purpose computers or could be specialty devices, as desired by a system designer as is well known in the art.

FIG. **5** shows box **501** which is an interactive request routine which allows a user either using a PC, or a TV with remote control, or a TV with a keyboard, or any type of input device, including voice recognition, to enter requests for information. These requests can be as broad or as specific as desired. For example, a user wishing to see a documentary on George Washington may simply just say"George Washington" or "documentary on George Washington", or if the user knew that a series had been aired sometime in the past, the user could identify the series, or could simply say a "two hour documentation of George Washington", or any additional information the user desires to add. The user, for example, could request information pertaining to future events, such as information about fires or public disasters, when they occur, or could request information on any sporting or entertainment event. Note that the user could be more specific and request scores, or statistics, on the Texas Rangers, or could request that all Stanley Cup Hockey games be received on his/her digital recorder and all final scores delivered to his/her pager. This request could be limited to local events, in which case the system might require the user to input the locality, or the system, as will be discussed, might calculate the locality based on information it has or can obtain about the user. Under control of box **502** the user could, for example, enter information, as discussed in FIG. **1** or in FIG. **3**, pertaining to TV shows, software, music, movies, plays, concerts, artists, etc.

Box **502** stores the request and could abstract certain words as key words and also would add, if desired, flags and permission levels as to who can respond and under what conditions. For example, a flag could be that only responses from one of the major TV channels would be accepted or another flag could be that only a particular channel is acceptable for delivery. Another flag could indicate that anyone with information could respond. Some flags could identify whether the user wanted the information to come via video on the public channels or privately over the Internet or via a wireline or wireless communication through a hand held personal communicator. Note that any system can be used to grant permissions to various would be providers, including dedicating a portion of the abstracted information for such housekeeping chores.

In box **503** the local system optionally determines if it is connected to a remote location. This could be connected

US 6,807,568 B1

**9**

immediately or connnectable for a period of time, such as periodically, with a phone call or connected whenever the user enters the Internet for other purposes. If there is not a connection, then box **504** does nothing.

Box **505** detects a connection to the Internet or to another remote site or detects that an information provider wishes to check for stored requests. This connection can be either accessed under control of the user by logging on, for example, to the Internet or accessed to a remote site by a phone call (wireline or wireless) being placed by the unit or simply a permanent connection which is available for access by anyone looking for request flags. Box **505** could be set to access the Internet (or some other location) periodically.

Box **506** makes a determination as to whether a flag is set in the user's data. If there is no flag set, then no data will be read, box **507**.

If a flag has been set, however, then box **508** (if this feature is active) begins the permission level checking to determine if the permission level of the potential information provider matches the permission level assigned to the stored requests. If there is a match in levels, box **509** detects that match and box **511** determines whether all of the matched data is to be transferred to a remote site or is to remain stored locally. If the information is to be transferred, box **512** attends to the transfer and box **513** ends the transmission. However, if the information was not to be transferred, then box **514** allows the remote site, again once permission has been granted, to obtain the stored requests which match the permissions.

Box **515**, which typically would be activated at the remote site, but which could in actuality be programmed to occur locally, determines whether there is information to return to the user. If there is such information, then if desired an interactive session can be controlled under box **517**. The user can be on line to answer questions live. More typically, the user would have a local program to screen permission levels which would interact automatically with the remote site to determine when the program information will be delivered, under what media it would be delivered, and would negotiate any other required parameters, such as cost, liabilities, rights of the end-user and etc. If it is determined during the interactive session that a download of data will occur, box **519** controls that download such that both parties are in agreement as to what, when, how and where that transmission will occur. At box **520** the session is ended.

Note that if desired, a filter, or set of filters, could be used, as in box **518**, to change the timing of delivery, or to change the locality for the information. These filters could be set by the user, could come from the physical location of the user (either when the request is entered or after the requested information is delivered) or would be derived from the context of the requested information.

For example, assume that a user wishes to stay at a particular hotel chain when traveling. The user could enter the hotel chain into a hand held device. As the user moves around the world, the user's display would continually change to reflect the address and phone number of the local hotel in that chain. In this same manner, the delivery of TV programming would be adjusted to match the time zone of the location where the program is being delivered, regardless of where the request came from. Therefore, a user traveling in one city could request that a particular program be recorded at a particular time on his/her home TV in another city, or the user could view the program guide, including proper times, for one city while traveling in another city in a different time zone.

**10**

FIG. **6** shows an embodiment of the system and method of operation at the information provider site where boxes **601**, **602** **603** hunt for flags requesting the type of information that the provider has available. This hunt can be made periodically on the Internet to all users of the Internet or to specific sites which would be acting as intermediaries.

When a flag has been found, box **604** provides the permission level of the information provider that is required and checks box **605** to determine if a match exists. If a match exists, then the system either goes to interactive session, box **517**, as discussed previously with respect to FIG. **5**, or goes directly to box **518**, or to box **519**, depending on the operation of the system. If there is no match, and when matches have been handled, the system continues the hunt for flags.

Box **601** can be bypassed in situations where external information is made available telling the system that there is a flag set. For example, in the TV system described above, the user would have its information uploaded, perhaps once every 24 hours, by a telephone call from the user to a remote location. When the remote location, such as location **14**, FIG. **1**, determines that a user desires a certain program or other information, the remote site then activates the various information providers, via box **606**, thereby launching the program to see if and when information is available.

FIG. **7** shows a typical scenario where a digital recorder system such as shown in FIG. **1** is used between the user and the central system. Box **701** at the central system receives a call from each remote recorder on a periodic basis. Box **702** checks to see if data has been received from the user. If not, then the system via box **703** proceeds with its regular download of program data. If there are requests received from the user, then the system uploads and stores the user request via box **704**. As discussed previously, box **705** passes the user request to other information sources (such as to box **606**, FIG. **6**), if necessary, or simply stores the information for future comparison to programs that will become available at some time in the future.

Note also that while in the TV system usually it would be specific programs that are requested, the user might request different types of data. For example, the user could ask for a program listing for next month, or could request a list of music which is available, or a list of future music. Also, the information requested by the user via the TV system need not be limited to entertainment but could be general information requests that could be returned via a PC or via the TV screen.

In FIG. **8** the central TV system, such as shown in FIG. **1**, receives updated information content, such as movies, programs, other information, as well as channel information, from various content providers. The system then checks its data base to see if any user is waiting for this information. This is accomplished via box **802**. If no user is waiting for the information, then the system proceeds with its regular downloaded schedule with respect to the users via box **803**.

If it is determined that there is a data request from any particular user or set of users that pertains to the new information, then the system via box **804** determines if there is time to wait until the next scheduled user update before providing the information to the user. This would typically be the situation since the system typically stores several weeks of information and that information would have been available had the user selected a movie or program that was known to be available. However, some situations are such that the requested information could be inserted because of user demand and thus the system would have to initiate a

US 6,807,568 B1

**11**

message and update the user immediately and set the user's recorder, if necessary, via box **807**. This message could be a telephone call, an e-mail message, or simply setting the user's recorder and would not wait until the scheduled call.

One example of this type of immediate update would be if the user had selected sports programs, such as, for example, the Stanley Cup series where each game would be allocated a three hour time interval. The user could also have set a flag saying that he/she wanted the recording time extended if a particular game took longer than three hours. If the system determined that the game is going to last longer than three hours, the system could initiate a message to delay ending the record time for that user until a separate signal is sent indicating that the game is over. Under this scenario, if a network changes its schedule at the last minute or adds information, that information could be made available to specific users depending upon the flags that have been set by each user.

Thus, if a user has scheduled a particular movie for 6 p.m. on Sunday and the football game which preceded the movie was not over until 6:15, the user's system could be notified and the recorder changed to reflect the correct recording time. In a situation where there is time to wait until the next scheduled update, box **806** sets the user's local recorder to record information as per the stored request if that is the desired result, and in box **807** notifies the user via one or more methods and sets the user's recorder again if necessary.

While the invention has been discussed in terms of a situation where a user simply "flags" desired information for pick up by an information provider, in actual use a person desiring information, such as from the Internet or from an entertainment guide or from any other source, could first contact that source, or set of sources. If the requesting user failed in his/her attempt to obtain information, or to schedule a program or to obtain tickets (or anything else desired) then that requesting user could, if desired, leave a "flag" with the desired information. This would allow providers to find the "flag" and deliver the desired information at a later time.

Note also that while a TV system and an Internet system have been shown for illustrative purposes, any other type of information retrieval system could be used. Thus, a wireless network or a pager network or even a private network could employ the concepts disclosed. For example, an insurance company network, a retail network or even a pharmacy network could be arranged to allow customers (doctors, patients, third parties, etc.) to post diagnosis, $R_x$ questions, medical questions, referral issues and these would be answered when the information became available.

One example might be that a user of a particular medicine could post that information and request updates on side effects of the drug. Any provider, anywhere in the world, could, from time to time, provide such information. People could seek information on a particular treatment or on a particular doctor or hospital or business and, as that information became available, would receive replies from anyone having such information. As discussed above, the requesting party could set flag permission levels which could control who (and under what circumstances) someone could "see" the request and/or provide responses thereto.

Although the present invention and its advantages have been described in detail, it should be understood that various changes, substitutions and alterations can be made herein without departing from the spirit and scope of the invention as defined by the appended claims. Moreover, the scope of the present application is not intended to be limited to the particular embodiments of the process, machine,

**12**

manufacture, composition of matter, means, methods and steps described in the specification. As one of ordinary skill in the art will readily appreciate from the disclosure of the present invention, processes, machines, manufacture, compositions of matter, means, methods, or steps, presently existing or later to be developed that perform substantially the same function or achieve substantially the same result as the corresponding embodiments described herein may be utilized according to the present invention. Accordingly, the appended claims are intended to include within their scope such processes, machines, manufacture, compositions of matter, means, methods, or steps.

What is claimed is:

**1**. A method of delivering information to a requesting user, said method comprising the steps of:

making a request available to information providers by a user that said user desires certain information content;

accessing said request by any information provider other than said user and wherein said accessing is under control of said accessing information provider independent from said user;

determining by said information provider whether said information provider has control of information content that said user desires; and

under at least partial control of said determining step delivering said information content which is under the control of said information provider and which information content is desired by said user.

**2**. The method of claim **1** wherein said information provider accesses said information via the Internet.

**3**. The method of claim **1** wherein said information provider accesses said information via a connection from said information provider directly to said user.

**4**. The method of claim **1** wherein said making a request step includes providing user information to control the accessing of said requests by third parties.

**5**. The method of claim **1** wherein said requesting step includes the step of receiving said requests over a medium different from the medium in which the requested information content is to be returned to said user.

**6**. The method of claim **1** wherein said delivering step includes the step of:

interacting between said information provider and said user as to the nature of the information to be delivered.

**7**. The method of claim **6** wherein said interacting is selected from the list including:

time of delivery, media for delivery, content of delivery, location for delivery, follow up after delivery, payment information, respective obligation requirements, comparing access permissions.

**8**. The method of claim **6** wherein said interacting step can occur in a media different from the media under which said information is delivered.

**9**. The method of claim **1** wherein said delivering step includes the step of:

making adjustments for one or more factors selected from the list including time, location, media.

**10**. The method of claim **9** wherein said adjustment is made based on the context of the desired information.

**11**. The method of claim **9** wherein said adjustment is made based on the location of the user.

**12**. The method of claim **1** wherein said information to be delivered is entertainment media.

**13**. The method of claim **1** wherein said request is recorded local to said user and from time to time transmitted to a remote location.

US 6,807,568 B1

13

**14**. The method of claim **1** wherein said request is recorded locally and accessible from time to time from remote locations by said information providers.

**15**. The method of claim **1** wherein said request is recorded locally and sent to one or more remote locations for accessing by said information providers.

**16**. The method of claim **1** wherein said request is initially recorded at a location remote from said user.

**17**. The method of claim **1** wherein said request is available for accessing by said information providers at one or more locations remote from said user.

**18**. The method of claim **1** wherein the information desired by said user is not currently available.

**19**. The method of claim **1** wherein the information desired by said user pertains to future events not scheduled at the time said request is made.

**20**. The system of delivering information to a requesting user, said system comprising:

means for recording requests from a user pertaining to information content desired by said user;

means controlled by at least one information content provider for accessing recorded ones of said requests, said at least one information content provider being independent from said user;

means controlled by accessing ones of said information content providers for determining, independent from said user, whether or not said information that said information content provider has control of matches a recorded one of said requests; and

means operable under at least partial control of said determining means for delivering the information desired by said user.

**21**. The system of claim **20** wherein said accessing means includes:

means for matching a permission level of a recorded request against a permission level of an accessing information content provider.

**22**. The system of claim **20** wherein said delivering means includes:

means for interacting between said information content provider and said user for determining the nature of the information to be delivered.

**23**. The system of claim **20** wherein said delivering means includes:

means for making adjustments for factors selected from the list including time, location, media.

**24**. The system of claim **23** wherein said adjustment is made based on the context of the desired information.

**25**. The system of claim **23** wherein said adjustment is made based on the location of the user.

**26**. A system for providing information to a user, said information available over a network, said system comprising:

means for allowing said user to input and store an abstract of the desired information;

means operative from time to time for allowing any party other than said user to have access to said abstract of said desired information; and

means for allowing those of said other parties having information which said other party deems to be fulfilling of said abstracted information to deliver to said user said fulfilling information, said delivery being under control of said delivering party.

**27**. The system of claim **26** wherein said fulfilling information was not available at the time said user stored said abstract of said desired information.

14

**28**. The system of claim **26** wherein said delivery allowing means includes means for interacting between the user and said accessing parties to determine one or more of the following, scope of the information content to deliver, time of delivery, mode of delivery, location of delivery, cost of the information, respective liabilities of the parties with respect to the delivered information, limitations on the use of said delivered information.

**29**. The system of claim **26** wherein said allowing means includes flagging certain data at said user's location.

**30**. The system of claim **26** wherein said allowing means includes storing said inputted abstracted desired information at least one site remote from said user.

**31**. The system of claim **26** wherein said delivering means includes means for modifying the information in accordance with the user's location.

**32**. The system of claim **26** wherein said delivering means includes means for delivering the information in a media context consistent with the user's ability to receive the information at the time of delivery.

**33**. The system of claim **26** wherein said system allowing means includes means for controlling which set of parties may access said desired information.

**34**. A method of delivering information to a requesting user, said method comprising the steps of:

storing requests from users, said requests pertaining to information content desired by said users;

accessing said stored requests by information providers;

determining by an accessing provider whether or not said accessing provider has control of information which matches an accessed stored request; and

providing information in accordance with stored requests under control of said accessing provider.

**35**. The invention set forth in claim **34** further including the step of:

under control of said storing user, determining if said storing user will accept information provided by said accessing user.

**36**. The invention set forth in claim **34** wherein said stored requests pertain to information not available to said storing user at the time of said storing.

**37**. The invention set forth in claim **34** wherein said stored requests pertain to information not in existence at the time of said storing.

**38**. The invention set forth in claim **34** wherein said determining step includes the step of:

under control of an accessing provider, generating information for delivery to said storing user pertaining to at least one stored request of said storing user.

**39**. The invention set forth in claim **38** further including the step of:

allowing said storing user to control whether or not information will be received by said storing user.

**40**. The method of claim **34** wherein said user requests arrive over the Internet.

**41**. The method of claim **34** wherein said user requests arrive over a first communication service, and wherein said information is provided to said user over a second communication service different from said first communication service.

**42**. The method of claim **1** further including the step of communicating to said user that a match has been determined.

**43**. The method of claim **42** wherein said communication step includes an e-mail message.

**44**. The method of claim **42** wherein said communication step includes a wireless communication.

US 6,807,568 B1

**15**

**45**. A method of delivering information to a requesting user said method comprising:

recording at a location not under control of said user and available for access by parties other than said user a request from a user pertaining to non-subscription information content desired by said user, said information content not necessarily being available to said user at the time of said request;

accessing said recorded request by a party not under the control of said user;

determining by any of said accessing parties other than said user when information which becomes available subsequent to said user request that said subsequently available information matches said user request; and

delivering any determined matched information to said user.

**16**

**46**. The method of claim **45** wherein said request is recorded with an intermediary party other than potential parties controlling information desired by said user; said intermediary party available to record requests from a plurality of users desiring information.

**47**. The method of claim **46** wherein said determining is controlled by said intermediary party.

**48**. The method of claim **45** wherein said delivering is controlled, at least in part, by interaction with said user.

**49**. The method of claim **48** wherein said information content desired by said user is a commodity.

**50**. The method of claim **49** wherein said commodity comprises items selected from the list of: goods, services, tickets to events, vacations, travel, entertainment programs.

\*   \*   \*   \*   \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.            : 6,807,568 B1                                            Page 1 of 2
APPLICATION NO.   : 09/625646
DATED                     : October 19, 2004
INVENTOR(S)         : David H. Tannenbaum

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Please replace Fig. 8 with attachment;
In the drawings, Sheet 4, Fig. 8, Indice 806, delete "LEVEL" and insert --LOCAL--.

Signed and Sealed this

Twenty-fourth Day of October, 2006

JON W. DUDAS
*Director of the United States Patent and Trademark Office*

**U.S. Patent**          Oct. 19, 2004          Sheet 4 of 4          **6,807,568 B1**

*FIG. 8*

