

# KEVIN A. ADAMSON, P.C.
### TRIAL ATTORNEYS

February 14, 2023

**VIA CERTIFIED MAIL – 7021 2720 0000 2147 1233**
**RETURN RECEIPT REQUESTED**

Sedgwick Claims Management Services, Inc.
Attn: Rachael Justesen
P.O. Box 14453
Lexington, KY 40512

> Re: **Wright, Jill v. Target**
> Our Client:     Jill Wright
> Insured:        Target Corporation
> Date of Loss:   July 9, 2022
> Claim No.       162049H0001

Dear Mrs. Justesen:

As you are aware, this office represents Jill Wright in connection with personal injuries they sustained in the above referenced slip and fall. We will summarize the facts briefly here so the record will be clear that such facts were available for consideration by you and Target Corporation in evaluating this demand. Should you believe that additional information is required to consider this demand, which we do not believe to be the case, please advise us immediately and specifically of what those items are in writing, and we will provide them. Such offer, however, does not modify the time limited nature of this demand.

It is clear upon examination of all their medical records and medical bills, that they sustained pressing injuries as a result of the incident in this matter. Accordingly, I make our demand below for prompt consideration.

## LIABILITY

In the documents produced by Sedgwick Claims Management Services, Inc. it has been expressly represented to us that the total insurance policy limits available to is a sum of **Five Million Dollars and Zero Cents ($5,000,000.00)** for the above-referenced claim. It has also been represented that there is no other liability policy(ies) or umbrella, excess or other insurance policy(ies) which do or may provide additional coverage to Jill Wright pertaining to the claims against her in this case. By receiving this letter, your insured will be made aware that if this case continues to trial and a verdict is rendered in excess of the policy limits, they would be liable from their own assets for the amount of the judgment that exceeds the coverage amount as well as any pre-judgment interest in excess of the demand. It goes without saying that this is an excellent

**Exhibit D**

opportunity to protect your insured's assets, guard against an excess judgment, and close out a file for the insurer. *(See Declarations Page as* **Exhibit A**)

Our investigation of the subject incident indicates that this is a case of clear and absolute liability on the part of your insured. On July 9, 2022, Mrs. Wright was with her daughter and granddaughter, shopping around Target in Bethlehem, Georgia. They had just finished shopping and were headed to check out when her right foot stepped on a wooden toy. She fell with the wooden toy and did a split, causing her to tear her right hamstring and pull muscles in her groin. She reported the incident to the staff on hand and made an incident report. The O.C.G.A § 51-3-1 defines the duty of an owner or occupier of land to an invitee. "When an owner or occupier of land, by express or implied invitation, induces or leads others to come upon the premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." To establish a proprietor's liability for a slip and fall attributable to a foreign substance/object on the floor, the plaintiff must show that the proprietor had actual or constructive knowledge of the foreign substance/object and that the plaintiff was without knowledge of the presence of such substance.

Drake v. Kroger, 213 Ga. App. 72, 73, 443, S.E.2d 698, 700 (1994) citing Alterman Foods v. Ligon, 246 Ga. 620, 623, 272 S.E.2d 327 (1980). Constructive knowledge may be established by evidence that: (1) an employee of Bethlehem Target was in the immediate vicinity and easily could have seen and removed the hazard or (2) the substance on the floor had been on the floor long enough that (a) it would have been discovered if Bethlehem Target had exercised reasonable care in inspecting its premises and (b) it would have been removed if Bethlehem Target had exercised reasonable care in inspecting and cleaning its premises. Dix v. Kroger Company, 570 S.E.2d 89, 91 (2002) citing e.g., Matthews v. The Varsity, 248 Ga.App. 512, 513, 546 S.E.2d 878 (2001); Lovins v. Kroger Co., 236 Ga.App. 585, 586, 512 S.E.2d 2 (1999); see also Jester v. Ingles Market, 206 Ga.App. 327, 328, 425 S.E.2d 323 (1992). While we understand you disagree with Targets knowledge, we have not been provided the surveillance video to suggest that Target may have a defense to the knowledge component required in these cases. Based on our understanding of the facts, we believe that Target Corporation had either actual or constructive knowledge of the fact that there was an object on the floor and Target Corporation therefore is liable for Mrs. Wright' injuries and damages.

## JILL WRIGHT'S MEDICAL TREATMENT

**Piedmont Athens Regional**

On July 9, 2022, Mrs. Jill Wright was given 200 mcg of Fentanyl en route to the Emergency Department for Piedmont Athens Regional where an evaluation was given following her fall at Target. She reported to the medical staff on hand of her pain behind her right knee that radiated upward, a posterior splitting feeling of sharp pain in the perineal area and twisting her left knee. X-ray imaging was ordered for her left knee and right hip, resulting in no acute fractures being noted. Mrs. Wright attempted to move but was unable too due to her severe pain even after receiving pain medication and Versed for muscle spasms. Therefore, she underwent a CT scan of the pelvis to rule out the possibility of an occult fracture, not seen on the x-ray. CT scan of her

pelvis revealed a hematoma in the right groin region and due to the severe pain Mrs. Wright was admitted to Piedmont Athens Regional. She was considered for a further work-up such as an MRI and an orthopedic consult.

The next day on July 10, 2022, Mrs. Wright was started on pain management and was seen in combination with Ortho. She started her physical therapy on July 11, 2022, but mobility remailed limited due to her significant pain. PT will try to work with Mrs. Wright another time and was given recommendations for HHPT and or a rolling walker. She was given a walker by medical staff and had medical staff initiate a county-wide HHC search for her. She was discharged the next day on July 12, 2022, after getting a long discussion with her daughter regarding Mrs. Wright's diagnosis with a bedside commode, shower chair, and a walker. *(See Piedmont Athens Regional medical records as* **Exhibit B**)

### Emory Rehabilitation Outpatient Center

On August 12, 2022, Mrs. Wright reported to Emory Rehabilitation Outpatient Center complaining of the same symptoms as before. She was evaluated by Dr. Nicole Felton, PT for her numerous symptoms. Treatment will be focused on muscle function improvement, strengthen disuse components, and maximizing functional activities. She also reported a burning pain when climbing stairs, car transfers, prolonged walking, and prolonged sitting. Dr. Felton noticed Mrs. Wright displayed symptoms of a right hamstring strain. She returned to the clinic on September 14, 2022, for a follow up evaluation. Dr. Felton initiated the use of a stationary bike and isotonics to Mrs. Wrights tolerance. By the next visit on August 17, 2022, knee extensions on a machine were added to her schedule, getting PTA patient education for her distal hamstring.

Mrs. Wright experienced increased complaints over her mid muscle belly of her right hamstring on August 25, 2022. She has also been experiencing difficulty with hypersensitivity with the massage gun on her right hamstring since the beginning of physical therapy. On September 1, 2022, Mrs. Wright was able to somewhat tolerate the LASTM this time, reporting the vibration still being too hypersensitive on her right hamstring but better on the left. There is still a small knot noted just distal to the ischial tuberosity as well. Dr. Felton has been constructing a home exercise program for Mrs. Wright and finalized it on her last day on September 14, 2022. Dr. Felton designed this last visit to instruct Mrs. Wright in the independent performance of a home program that addresses the problems outlined previously. She was instructed to call her physical therapist regarding any problems or questions she might have and discharged this final day. *(See Emory Rehabilitation Outpatient Center medical records as* **Exhibit C**)

### JILL WRIGHT'S MEDICAL EXPENSES

Attached is a summary of medical expenses for our client, Jill Wright, covering the period July 9, 2022, through current (*see Medical Bills attached and marked as* **Exhibit D**).

| | |
|---|---|
| **Piedmont Athens Regional Medical Center** | **$15,962.53** |
| **Georgia Emergency Medicine Specialists, PC.** | **$1,758.00** |

| | |
|---|---|
| Radiology Associates of North Georgia LLC | $295.00 |
| Barrow County EMS | $1,107.50 |
| Emory Rehabilitation Outpatient Center | $3,227.50 |
| **TOTAL MEDICAL BILLS:** | **$22,350.53** |

## HUMAN LOSS

As demonstrated in great detail above, Mrs. Jill Wright has suffered a tremendous injury as a result of her fall on Targets premises. She has been trying to hold out on some semblance of normal daily living to her life for too long. Prior to her fall Mrs. Wright was very active, both with her family and within the community. Mrs. Wright is a Walton County teacher at Monroe Elementary, where she has had to put aside the many needs of her young students and faculty as well. She lived at an apartment complex with stairs and had to figure out where she could live for at least 1 month since she couldn't climb them. Having her life deteriorate, even with simple acts such as having a good night's sleep and getting in a car. Sitting in a normal chair, something most take for granted, is usually painful for Mrs. Wright. Basic interpersonal relations with friends and family, has become strained or lost entirely with this fall. Causing a complete burden to her previously simple life. Simply put, while Mrs. Wright' injuries have not taken or ended her life, they have robbed Mrs. Davis of the ability to "live" and enjoy her life.

## SETTLEMENT DEMAND

We are providing Sedgwick Claims Management Services, Inc. a reasonable opportunity to resolve this matter in the form of the payment of **Two-Hundred and Forty-Nine Thousand Five Hundred Dollars and Zero Cents ($249,500.00)** for **Jill Wright** which represents the liability limits of your Policy in exchange for a Georgia Limited Liability Release (as set forth in O.C.G.A. § 33-24-41.1). We have attached copies of the Incident Report, and medical bills and records pertaining to this claim. This OFFER TO RESOLVE is made under the following material terms, as well as those set forth in the attached Limited Liability Release:

1. You have thirty (30) days from your receipt of this offer to accept it. The thirty (30) day period shall be conclusively established by the date received by Walmart Claim Services, Inc. via US Mail/Certified/Return Receipt. If we do not actually receive a timely acceptance, this offer will be deemed rejected, and we will seek a jury award to recover the total amount of losses caused by your insured, instead of the limited amount afforded by your coverage and other coverage that may be available;

2. Payment in the amount of **Two-Hundred and Forty-Nine Thousand Five Hundred Dollars and Zero Cents ($249,500.00)** must be made payable to Kevin A. Adamson, PC in trust for **Jill Wright** within ten (10) days after your written acceptance of this offer to settle. Timely payment is an essential element of acceptance;

3. Target Corporation and Sedgwick Claims Management Services, Inc. will be released under a Georgia Limited Liability Release (as set forth in O.C.G.A. § 33-24-41.1) for Jill Wright;

4. The claims released by accepting this offer are all claims against Target Corporation and Sedgwick Claims Management Services, Inc., for the Bodily Injury Policy Limits, subject to the terms of the Georgia Limited Liability Release (as set forth in O.C.G.A. § 33-24-41.1) Jill Wright.;

5. Target Corporation and Sedgwick Claims Management Services, Inc. may not demand that a purported uninsured/underinsured carrier waive any rights to subrogation in this matter. Any refusal to accept this Demand contingent on such a requirement will be deemed a counteroffer, and rejection of this Demand;

6. We are aware of no statutory liens;

7. Jill Wright has agreed to leave sufficient funds in this Firm's escrow account to cover all valid statutory liens until such time as those claims can be negotiated and/or resolved. The release document attached provides for indemnity for valid statutory liens;

8. Payment of said **Two-Hundred and Forty-Nine Thousand Five Hundred Dollars and Zero Cents ($249,500.00)** shall not be evidence that **Jill Wright** has been made whole for all economic and non-economic losses incurred as a result of the fall;

9. Your acceptance of this offer must be made, in writing, to the undersigned at 4295 International Blvd, Ste D., Norcross, Georgia 30093. This Firm's Tax Identification Number is ▉▉▉▉▉▉▉ We will be happy to provide a signed W9 upon your request, but such request does not extend your time to respond to this offer. *(See Kevin A. Adamson PC W-9 attached and marked as* **Exhibit E**).

Please accept our demand as an attempt to settle this matter without imposing a financial burden upon your insured. This demand shall remain open for a period of thirty (30) days and shall be automatically withdrawn if not responded to within that time. If you are interested in resolving this matter, it is reasonable to expect that now would be the most efficient time to do so before the parties incur the costs of preparing for litigation.

Very truly yours,

Kevin A. Adamson
Attorney at Law

KAA/cc
Enclosures