## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PerDiemCo LLC,

                Plaintiff,

      v.

NexTraq LLC,

                Defendant.

**Civil Action No.:**

**JURY TRIAL DEMANDED**

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff PerDiemCo LLC ("PerDiem" or "Plaintiff"), for its Complaint against Defendant NexTraq LLC, ("NexTraq" or "Defendant") alleges the following:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., involving infringement of certain claims of patents identified by United States Patent Nos. 11,716,595 (the '595 patent, Exhibit A); 10,284,662 (the '662 patent, Exhibit B); 10,382,966, (the '966 patent, Exhibit C); 10,397,789 (the '789 patent, Exhibit D); 10,602,364 (the '364 patent, Exhibit E); and 10,277,689 (the '689 patent, Exhibit F) (collectively "the Patents-in-Suit").

Herein, the asserted claims of the Patents-in-Suit are referred to as "Asserted Claims."

2.    The Patents-in-Suit share a common specification and claim priority to U.S. Provisional Patent Application No. 60/752,879, filed on December 23, 2005.

## **THE PARTIES**

3.    Plaintiff PerDiem is a limited liability company organized under the laws of the State of Texas with a place of business at 505 East Travis Street, Suite 205, Marshall, Texas 75670.

4.    PerDiem is the owner of all right, title and interest in the Patents-in-Suit, including the right to bring patent enforcement actions for damages.  The assignment to PerDiem of ownership of the Patents-in-Suit was recorded with the United States Patent & Trademark Office ("USPTO").  The recorded assignment references all subsequent related applications of the parent patents listed on the recorded assignment, thereby encompassing the Patents-in-Suit.

5.    On information and belief, Defendant NexTraq is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 303 Perimeter Center North, Suite 800, Atlanta, Georgia 30346.

6.     NexTraq does business in the Northern District of Georgia and nationally through the sale and servicing of its mobile communications products and technology in the transportation industry.

7.     NexTraq conducts business in this District at its corporate headquarters, located at 303 Perimeter Center North, Suite 800, Atlanta, Georgia 30346 ("NexTraq's Physical Location").

8.     NexTraq's Physical Location is a fixed physical location located within this District.

9.     NexTraq's Physical Location is a location that represents a regular and established place of business for NexTraq.

10.     Upon information and belief, NexTraq is the owner and/or lessee of NexTraq's Physical Location.

11.     Upon information and belief, NexTraq is in possession of, and has control over, NexTraq's Physical Location.

12.     Upon information and belief, NexTraq has employees in Georgia, and employs Georgia residents within the Northern District of Georgia.

13.     NexTraq also does business in the Northern District of Georgia and nationally through its website—www.nextraq.com.

## JURISDICTION AND VENUE

14.     This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

15.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

16.     This Court has personal jurisdiction over NexTraq.  NexTraq's actions establish such minimum contacts that jurisdiction comports with the Georgia longarm statute, O.C.G.A. § 9-10-91, and the United States Constitution.

17.     Upon information and belief, NexTraq has conducted and does conduct business within the State of Georgia and maintains a regular and established place of business in the Northern District of Georgia, including but not limited to NexTraq's Physical Location

18.     Upon information and belief, NexTraq, directly and/or through subsidiaries or intermediaries, ships, distributes, offers for sale, sells, and/or advertises (including through its web pages) its products and services (including infringing products and services) described herein within this District.

19.     Upon information and belief, NexTraq has committed acts of patent infringement within this District.

20.    Upon information and belief, NexTraq has contributed to or induced (instructing and supplying others with infringing products and instructions for use) patent infringement by others in this District.

21.    NexTraq has purposefully and voluntarily placed one or more infringing products into the stream of commerce with the expectation that it will be purchased and used by consumers in the Northern District of Georgia.

22.    Upon information and belief, NexTraq has committed acts of patent infringement within the State of Georgia and, more particularly, within the Northern District of Georgia.

23.    Venue is proper within this District under 28 U.S.C. § 1400(b) because, on information and belief, NexTraq maintains its corporate headquarters in this District and has committed infringing acts in this District.  These infringing acts include at least its sales of the NexTraq's Products in this District and also under 28 U.S.C. § 1391(b)(2) because NexTraq sells and offers to sell products and services throughout the United States, including in this District, and introduces its products and services into the stream of commerce and effectuates these sales knowing that the products and services would be sold and used in this District and elsewhere in the United States.

24.    Venue is also proper in this District because it is the most convenient forum for the parties.

## THE TECHNOLOGY AND THE PATENTS-IN-SUIT

25.    Darrell Diem, the inventor of the Patents-in-Suit, served in the Air Force for four years as an electronics technician.   After being honorably discharged, Mr. Diem worked his way through college to earn degrees in physics and mathematics from Marquette University.   Mr. Diem also obtained a Master of Business Administration from Michigan State University, and a Master of Arts in Pastoral Ministries from St. Thomas University, Miami, Florida.   Mr. Diem has worked for Motorola, Harris Corporation, Time Domain, and other leading technology companies.

26.    Mr. Diem conceived the inventions in the Patents-in-Suit when his daughter's car broke down on a long road trip.  Mr. Diem wanted to convey location information for his daughter in an efficient way that would still protect her privacy. Mr. Diem's inventions have a broad range of significant applications, and are widely used today.

27.    Each of the asserted patents is valid and enforceable.

28.    PerDiem is the exclusive owner of all right, title, and interest in each of the asserted patents.  PerDiem has the right to bring this action to recover damages for

any current or past infringement of these patents.   Plaintiff PerDiem has never granted Defendant NexTraq a license to practice any of the Patents-in-Suit.

29.    The '595 Patent entitled "A Method For Conveying Event Information Based on Roles Assigned to Users of a Location Tracking Service" was duly and legally issued by the United States Patent and Trademark Office on August 1, 2023. A copy of the '595 patent is attached hereto as Exhibit A.

30.    The '662 patent entitled "An Electronic Logging Device (ELD) For Tracking Driver of a Vehicle in Different Tracking Modes" was duly and legally issued by the United States Patent and Trademark Office on May 7, 2019.  A copy of the '662 patent is attached hereto as Exhibit B.

31.    The '966 patent entitled "Computing Device Carried by A Vehicle for Tracking Driving Events in a Zone Using Location and Event Log Files" was duly and legally issued by the United States Patent and Trademark Office on August 13, 2019.  A copy of the '966 patent is attached hereto as Exhibit C.

32.    The '789 patent, entitled, "Method for Controlling Conveyance of Event Information About Carriers of Mobile Devices Based on Location Information Received from Location Information Sources Used by the Mobile Devices," was duly and legally issued by the United States Patent and Trademark Office on August 27, 2019.  A copy of the '789 patent is attached hereto as Exhibit D.

33.    The '364 patent, entitled, "Method for Conveyance of Event Information to Individuals Interested Devices Having Phone Numbers," was duly and legally issued by the United States Patent and Trademark Office on March 24, 2020.  A copy of the '364 patent is attached hereto as Exhibit E.

34.    The '689 patent entitled "Method For Controlling Conveyance of Events by Driver Administrator of Vehicles Equipped with ELDS" was duly and legally issued by the United States Patent and Trademark Office on April 30, 2019.  A copy of the '689 patent is attached hereto as Exhibit F.

35.    The Asserted Claims are patentable under 35 U.S.C. §§ 101, 102, 103, and 112, as confirmed because multiple Patent Examiners agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit.  See *Stone Basket Innov. v. Cook Med.,* 892 F.3d 1175, 1179 (Fed. Cir. 2018) ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton*, 879 F.3d 1332, 1342 (Fed. Cir. 2018).

36.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of

the Patents-in-Suit to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. See *K/S Himpp v. Hear-Wear Techs.*, LLC, 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002).

37.    The claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art. See 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); see also *AbbVie Deutschland GmbH v. Janssen Biotech*, 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC*, 545 F.3d 1373, 1382 (Fed. Cir. 2008). Likewise, the claims of the Patents-in-Suit are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners. See, e.g., *St. Clair I.P. Consultants v. Canon, Inc.*, 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation*, 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid*, 774 F.2d 448, 454 (Fed.

Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art.

38.   The claims of the Patents-in-Suit are entitled to the presumption of validity under 35 U.S.C. § 282.

39.   Now with knowledge of the Patents-in-Suit, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. See *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006) (en banc in relevant part).  "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh*, 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313, (Fed. Cir. 2007).

40.   Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element.  See *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof

of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

41.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. See *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

## PERDIEM'S GEOFENCING PATENT

42.    The inventions claimed in the '595 patent, the geofencing patent, represent improvements to location tracking systems.  More specifically, the claims of the '595 patent are directed to, in part, improved location tracking systems and related methods.  The system may track the locations of a plurality of mobile objects or devices in a network employed to provide a tracking service that sends notifications or alerts after group event conditions based on locations of grouped tracked objects are met.

43.     Group event conditions may relate to mobile object/device locations and a zone where the occurrence of an event causes an alert/notification to be sent when grouped vehicles equipped with GPS devices cross a boundary.

44.     The claimed inventions improve conventional networks by providing a reliable and efficient way for service subscribers to track objects and convey notifications to authorized recipients.  The claimed inventions offer these benefits, in part, by creating multiple levels of administrative privileges and applying multiple levels of access control.

45.     In one embodiment, the multiple levels of administrative privileges include a first level of administrative privilege used by a system administrator of the tracking service for controlling user membership in groups specified by the administrator and a second level of privilege being assigned to a second administrator, *e.g.*, a service subscriber, in each group by the system administrator for controlling conveyance of the notifications in the corresponding group such that the administrator having the first level of administrative privilege does not exercise the second level of administrative privilege.

46.     Under this structure, the second administrator has control over who receives the notifications in the group independent of the system administrator and

the second administrators of other groups.  Interfaces may be provided to the second administrator to set event conditions and alert/notifications for the group.

47.   As this embodiment is claimed, a first level of access control is used to allow the second administrator to specify an event condition, *i.e.,* a geo-fence, for the group and specify an access list such that only identified authorized users on the access list can receive the notification information, thereby providing enhanced privacy.  A second level of access control is used to allow authorized recipients to access the notifications/alerts.

## PERDIEM'S ELECTRONIC LOGGING DEVICE ("ELD") PATENTS

48.   The inventions claimed in at least the '662, '966, '789, '364, and '689 patents (collectively the "ELD patents") are directed to, for example, improved electronic logging devices ("ELD") services and ELD computing devices carried in a vehicle and that execute location tracking applications (LTAs).  More specifically, the claims of the ELD patents are directed to, in part, devices, systems, and improved methods for controlling the conveyance of House of Service (HOS) driving event information in an ELD tracking service.  The tracking service may have a system administrator that manages the privileges of the authorized users who log into user accounts as subscribers in a database management system application (DBMSA) executed in a server.

49.    In one embodiment, the claimed improvements in the ELD-type claims are directed to using multiple levels of privileges that allow driver access to recorded event log files for driving events.  The driving events may occur after detecting that the vehicles are powered on.  This detection can cause locating the drivers that are moving at different rates.  After detection, this can cause the recording of driving events, based on the driver's movement and/or non-movement, into the event log files.

50.    The claimed ELD-type inventions provide benefits, in part, by allowing the drivers to use the LTAs to log into driver user accounts over a wireless interface provided by the ELD computing devices.  The ELD devices may also permit a user to edit, write or enter information into the event log files and send notifications to one or more recipients whom a driver administrator authorizes to receive the recorded driving event information.

## PERDIEM'S CLAIMS ARE PATENT ELIGIBLE

51.    The claims in the Patents-in-Suit are directed to patent eligible subject matter.

52.    During prosecution of the claims of a related patent in Perdeim's patent family, namely, US Patent No. 9,680,941 (the '941 patent, Exhibit G), the USPTO specifically considered whether the claims satisfied the criteria for subject matter

eligibility under the *Alice*/Mayo two-part test. The USPTO determined that the asserted claims are directed to patent-eligible subject matter under 35 U.S.C. § 101. A copy of excerpts of the prosecution history of the '941 patent is attached hereto as Exhibit H including an Office Action by the USPTO rejecting claims under 35 U.S.C. § 101, PerDiem's response to the Office Action setting forth reasons why the USPTO should withdraw the Section 101 rejection, and the USPTO's Notice of Allowance of the claims.

53.    In the Patents-in-Suit, the locations of mobile objects or devices are tracked in a network and a tracking service sends notifications or alerts after group event conditions are met based on the locations of tracked objects in the group. Group event conditions may be based on a relationship between the locations of mobile objects or devices and the location of a zone, such as, for example, an event occurring when group vehicles equipped with GPS devices cross a boundary, which causes an alert/notification to be sent.

54.    The claimed inventions in the Patents-in-Suit improve upon conventional systems by providing a reliable and efficient way for service subscribers to track objects and convey notifications to authorized recipients.  The claimed inventions achieve these benefits, in part, by creating multiple levels of administrative privilege and applying multiple levels of access control.

55.    In at least one of the claimed embodiments in the Patents-in-Suit, a first level of administrative privilege is used by a system administrator of the tracking service to control user membership in groups specified by that administrator.  A second level of privilege is assigned by this system administrator to a second administrator, e.g., a service subscriber, for each group, thereby allowing the second administrator to control sending of notifications within the group.  The system administrator does not exercise control of the sending of notifications within groups.

56.    In this claimed embodiment in the Patents-in-Suit, the second administrator of each group has control over who receives notifications within the group.  This control is exercised independent of the system administrator and independent of the second administrators for any other groups.  The second administrator may be provided with interfaces for setting event conditions and setting alerts/notifications for the group.

57.    In this claimed embodiment in the Patents-in-Suit, a first level of access control is used to enable a second administrator to specify an event condition, *i.e.*, a geo-fence, and an access list for the group.  Only authorized users identified by the second administrator on an access list can receive the alerts/notifications, thereby providing enhanced privacy.  A second level of access control is used to enable authorized users to access the notifications/alerts.

58.    The systems, devices, and methods of the asserted claims in the Patents-in-Suit establish object location events that may be defined at an application or user level.  (*See, e.g.,* Exh. G, '941 patent at 2:11-15.)   These systems, devices, and methods are also directed to conveying information relating to object location events to one or more computing devices which may be associated with corresponding identification codes of one or more users.  (Exh. G, '941 patent at 2:16-19.)

59.    According to at least one of the claimed embodiments in the Patents-in-Suit, an object location event can relate to information about the object location and information about a zone defined by a user.  (Exh. G,'941 patent at 2:23-25.)   In another claimed embodiment, information about the object location is derived from a location information source associated with the object, and an object location event may occur as a result of the satisfaction of a defined relationship or condition between the object location information and user-defined zone information. (Exh. G, '941 patent at 2:26-31.)

60.    A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit are directed to unconventional computing solutions and address problems particular to computerized location tracking systems.

61.    A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit provide computerized location tracking systems,

devices, and methods in a manner that solved challenges and problems associated with the tracking techniques and systems known in the art at the time.  A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit contain novel and unconventional inventive concepts sufficient to render the asserted claims patent-eligible.

62.    A person of ordinary skill in the art understood that, in location tracking systems that were known or available before the priority date of the Patents-in-Suit, information about the mere location of a device might be conveyed but without the correlation of events to the object location and without conveying information about such events to computing devices.  (Exh. G, '941 patent at 1:55-60.)

63.    A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit overcame these disadvantages by, for example, describing and enabling systems, devices, and methods in which information about the object location is derived from a location information source associated with the object, and in which an object location event may occur as a result of the satisfaction of a defined relationship or condition between the object location information and user-defined zone information.  (Exh. G, '941 patent at 2:26-31).  Moreover, a person of ordinary skill in the art would understand that these claimed systems, devices, and methods are directed to conveying information relating to object

location events to one or more computing devices which may be associated with corresponding identification codes of one or more users. (Exh. G, '941 patent at 2:16-19.)

64.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit resolve technical problems related to interactive location-tracking technology.  For example, the claimed inventions allow remotely located parties to interact in a computerized environment in real-time with one or more users, which is necessarily implemented using computer technology. (Exh. G, '941 patent at 17:9-57).

65.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit do not recite performance of a method that was known in the pre-Internet or pre-computer world and do not merely add the requirement that a known method be performed on the Internet or using a computing device. Instead, a person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit recite inventive concepts that are necessarily rooted in computerized location tracking system technology and overcome problems specifically arising in the realm of computerized location tracking system technology. (Exh. G, '941 patent at 1:21-59).

66.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit do not preempt all ways of using location tracking system technology, do not preempt the use of any well-known location tracking technology, and do not preempt the use of any other well-known or prior art technology.

67.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit are not directed to any general or well-known "method of organizing human activity," or to a "fundamental economic practice long prevalent in our system of commerce," or to "a building block of the modern economy."

68.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit do not apply a well-known or established business method or process to a general-purpose computer.  Instead, a person of ordinary skill in the art would understand that the claimed inventions have no direct corollary to a process that predates the advent of computers, networking, and the Internet.

69.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit are directed toward a technical solution necessarily rooted in computer technology that uses technology unique to computers and

networks to overcome problems specifically arising in computerized location tracking technologies.

70.     A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit are not directed at a mere mathematical relationship or formula.

71.     A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit cannot be performed by a human, in the human mind, or by pen and paper.

72.     Moreover, a District Court in the Eastern District of Texas has previously determined that subject matter disclosed and claimed in the Patents-in-Suit is directed to patent-eligible subject matter. The Patents-in-Suit are related to and have the same specification as another PerDiem patent that was before this Court in *PerDiemCo LLC v. Industrack LLC et al.*, No. 2:15-cv-727-JRG-RSP (Exh. I).   In that action, the Court adopted the Report and Recommendation by Magistrate Judge Payne attached hereto as Exhibit I (the Report and Recommendation), which confirms that the subject matter disclosed and claimed contains eligible subject matter under 35 U.S.C. §101. Exh. I.

73.     In the Report and Recommendation, this Court recognized that the subject matter claimed in a related patent "requires a variety of computer-related

components, including: 'user identification code[s],' 'a location information source,' and 'an information access code.' The claim then recites a specific structure of rules for providing information about the locations of objects to users and for managing user access to this information." This Court then determined, "It is therefore not apparent that claim 6 recites "'nothing significantly more" than an instruction to apply [an] abstract idea . . . using some unspecified, generic computer.'" Instead, claim 6 defines a set of rules for organizing and improving the behavior of a computerized location information system. Here, as in *McRO*, "[t]he specific structure of the claimed rules would prevent broad preemption of all rules-based means" for achieving the desired result. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016).

74.    A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit recite elements that are computer-related components, as well as a specific structure of rules for providing object location information to users and for managing user access to this information.

75.    The Report and Recommendation, adopted by the Court, recognized that, when considering the patent-eligibility of the subject matter claimed in a related patent, "[m]anaging the information provided by the location information source using a set of relationships defined in part by access codes is what the claim is all

about.   The analogy also fails to capture another key feature of the claim: centralization. . . .   It is also not clear that any actor in the analogy performs the 'interfacing' and 'conveying' steps. These deficiencies in the analogy help to illustrate why claim 6 is not merely a computerized version of conventional human activity, it is an improvement to a computer system that administers, manages, and conveys location information in a centralized way."

76.   A person of ordinary skill in the art would understand that the asserted claims in the Patents-in-Suit recite elements that are not merely a computerized version of conventional human activity, but are an improvement to a computer system that administers, manages, and conveys location information in a centralized way.

## PERDIEM'S PATENT LITIGATION HISTORY

77.   Currently, there is a pending case before this court, namely, Case No. 1:23-cv-00193-MHC, which was filed by PerDiem on January 13, 2023 against NexTraq involving different asserted patents than the Patents-in-Suit (the Pending Case). One asserted patent in this case, namely, the '595 patent, was issued by the USPTO on August 1, 2023, after the filing of the Pending Case.   The remaining asserted claims in this case, namely, the claims of the '662, '966, '689 patents, claim 12 of the '364 patent, and claim 17 of the '789 patent are for infringement of identified

Accused ELD Instrumentalities below, which were not accused of infringement in the Pending Case.

78.    PerDiem owns other, non-asserted related patents that share a patent specification with the asserted patents and claim priority to the same provisional application, Serial No. 60/752,879.  Several of the related PerDiem patents, both asserted and non-asserted, have been subject to extensive federal court litigations in various districts.

79.    Several of the non-asserted related PerDiem patents have been subject to extensive federal court litigations in the Eastern District of Texas ("the EDTX Litigations") against eleven companies, each of which settled with PerDiem after the filing of thirteen *Inter Partes* Review (IPR) petitions ("the EDTX-related IPRs") challenging the validity of various of PerDiem's patent claims.  All settlements in these EDTX Litigations resulted in licensing agreements in which PerDiem was compensated.  Furthermore, all the prior art that has been recited in an asserted ground in any of the thirteen EDTX-related IPRs was submitted for consideration by the USPTO in the prosecution history of the Patents-in-Suit.

80.    During one EDTX Litigation, the court issued a Claim Construction Memorandum and Order attached hereto as Exhibit J construing several terms that are at issue in this action.  *PerDiemCo LLC v. GPS Logic, LLC, et al.*, No. 2:15-cv-

1216-JRG-RSP (July 27, 2016,) at Dkt. 107 (Exh. J).  The Patents-in-Suit in this action have the same ownership and specification as those at issue in the EDTX.

81.    During another EDTX Litigation, the court issued a Claim Construction Memorandum and Order attached hereto as Exhibit K construing several terms that are at issue in this action.  *PerDiemCo LLC v. Industrack LLC, et al.*, No. 2:15-cv-727-JRG-RSP (July 7, 2016,) at Dkt. 155 (Exh. K).

82.    During this EDTX Litigation, the court issued an R&R at attached as Exhibit L holding the specification satisfies the written description and enablement requirement.  *PerDiemCo LLC v Industrack LLC, et al.*, No. 2:15-cv-727-JRG-RSP (Oct. 28, 2016) at Dkt. 272 (Exh. L).

83.     NexTraq's Accused Instrumentalities identified below infringe one or more claims of the Patents-in-Suit (Exhibits A through F) as set forth in detail in the attached claim charts (Exhibits A-1 through F-1) as indicated below.

## THE ACCUSED INSTRUMENTALTIES

84.    NexTraq offers tracking products and services (the Accused Instrumentalities), including but not limited to :

A: Geo-fencing Accused Instrumentalities, including:

i: NexTraq® Fleet Tracking solution (https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_Quick_Start_Guide.pdf),  which

provides data to NexTraq® Web Services (http://www.discretewireless.com/resources/APIReference.pdf) for use in various platforms and solutions that support:

ii:   NexTraq®'s Fleet Visibility and Productivity products, services and solutions which are used for vehicle tracking (https://www.nextraq.com/services/vehicle-tracking/), asset tracking https://www.nextraq.com/services/asset-tracking/), geo-fencing and mapping (https://www.nextraq.com/services/geofencing-mapping/), real-time alerts (https://www.nextraq.com/services/real-time-alerts/), sensors (https://www.nextraq.com/services/sensors/) and integration with third party platforms, solutions and/or applications (https://www.nextraq.com/services/integration/);  and

B: ELD Accused Instrumentalities, including:

i-   NexTraq ELD Compliance Solution and Services for the Accused ELDs (the Accused ELD Service).

(https://www.nextraq.com/solutions/maintenance-compliance/).

ii-   NexTraq® ELD for Tablets and Smartphones (the Accused ELDs).  (https://www.nextraq.com/services/eld-compliance/).

iii-   NexTraq ELD Android and NexTraq ELD iOS (the Accused

App.).  (https://eld.fmcsa.dot.gov/List).

85.   More specifically, NexTraq makes, uses, sells, offers for sale, and/or imports at least the Accused Instrumentalities, each of which supports the ability to monitor and report vehicle fleet activity.

86.   Upon information and belief, NexTraq is a reseller of "White Labelled Hours of Service" offered by Vistracks Inc., a third-party, for resale by NexTraq (Vistracks).  (https://www.vistracks.com/about-us/).

87.   Upon information and belief, the Accused ELD Service is VisTracks Hours of Service (HOS) resold by NexTraq for use with the Accused ELDs and the Accused ELD apps, which are developed for resale by Vistarcks in compliant with US Department of Transportation Hours of Service regulations. (https://www.vistracks.com/about-us/).

88.   Upon information and belief, VisTracks is part of Omnitracs, a SaaS-based fleet management and data analytics solution used in transportation technology (Omnitracs).  (https://www.vistracks.com/about-us/).

89.   Upon information and belief, Omnitracs has acquired VisTracks and acts as its parent company.  (https://www.vistracks.com/omnitracs-acquires-vistracks-

accelerates-innovation-of-omnitracs-one-platform-and-expansion-into-smb-market/).

90.    Upon information and belief, Vistrack has registered its products with the Federal Motor Carrier Safety Administration (FMCSA).

91.    Upon information and belief, Vistrack's user guide for its products (the Vistrack User Guide) is publically available for download at (https://eld.fmcsa.dot.gov/List).

92.    Upon information and belief, "NexTraq LLC – NexTraq ELD" is a user guide for using the Accused ELDs (the NexTraq ELD User Guide).   NexTraq ELD User Guide is publically available for download using https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755.

93.    Upon information and belief, the NexTraq ELD User Guide is substantively identical to the Vistrack User Guide.

94.    Upon information and belief, Vistrack is the author of the NexTraq ELD User Guide.

95.    Upon information and belief, Vistracks and Omnitracks, either alone or jointly, are administrators of the Accused ELD Service acting on behalf of NexTraq.

96.    On information and belief, NexTraq is a for-profit entity owned by Groupe Michelin of France.  Moreover, NexTraq, its employees and/or agents make, use,

sell, offer to sell, import, and/or provide and/or cause to be used the Accused Instrumentalities for NexTraq's partners and customers, leading to direct or indirect revenues and profit. On information and belief, without the availability of infringing tools such as the Accused Instrumentalities, NexTraq would be at a disadvantage in the marketplace and would generate less revenue and profit overall.

## <u>COUNT I – INFRINGEMENT OF THE '595 PATENT</u>

97.    Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

98.    NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '595 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities. An exemplary claim chart detailing the correspondence of every element of claims 1, 4, 5, and 6 of the '595 patent with features of the Accused Instrumentalities is attached hereto as Exhibit A-1 and incorporated by reference.

99.    Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '595 patent, either literally and/or under the doctrine of equivalents, by making,

using, importing, selling, and/or offering for sale the Accused Instrumentalities in the United States so as to infringe one or more claims of the '595 patent.

100.   NexTraq was made aware of the '595 patent through an e-mail sent by PerDiem's counsel, Ms. Meredith Addy, to NexTraq's counsel, Mr. Justin Oliver, on July 17, 2023, informing him of PerDiem's intent to assert the patent.

101.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).   NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused Geofence Instrumentalities constitutes direct infringement of at least one claim of the '595 patent.

102.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused Instrumentalities in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused Geofencing Instrumentalities, for their intended purpose to infringe the '595 patent, with instructions as to the use of that product and guidance as to the specific steps that must be taken to utilize that Accused Geofencing

Instrumentalities, including the provision of interactive data fields, such as through

NexTraq's     Fleet     Tracking     software     (see     User     Guide     at

https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_

Quick_Start_Guide.pdf, all with the knowledge and intent to encourage and facilitate

infringement   through   the   dissemination   of   the   Accused   Geofencing

Instrumentalities and/or the creation and dissemination of documentation and

technical information to customers and prospective customers related to the Accused

Geofencing Instrumentalities, including the product literature described in Exhibit

A-1, attached hereto.

103.   In particular, NexTraq's actions that aid and abet others to infringe include

advertising and/or providing support services to partners contracted by NexTraq or

providing  instruction  materials,  training,  and  services  regarding  the  Accused

Geofencing Instrumentalities which actively induce a user of the NexTraq system to

infringe the Asserted Claims.  For example, NexTraq provides potential users with

detailed instruction materials on how to operate NexTraq's Fleet Tracking software

(see   https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_

Quick_Start_Guide.pdf, last accessed and downloaded December 6, 2022) in a way

that infringes at least one claim of the '595 patent.

104.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '595 patent, including at least claims 1, 4, 5 and 6, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale the Accused Geofencing Instrumentalities in the United States, including NexTraq's Fleet Tracking software (see User Guide at https://www.nextraq.com/wp-content/uploads/2018/04/NexTraq_New_User_ Quick_Start_Guide.pdf) knowing that those products constitute a material part of the inventions of the '595 patent, knowing that those products are especially made or adapted to infringe the '595 patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

105.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '595 patent.

106.   From the time of notice, NexTraq has willfully infringed the '595 patent.

107.   The conduct by NexTraq in infringing the '595 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

108.   PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the

attached claim charts.  PerDiem intends the claim chart for the '595 patent (Exhibit A-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT II – INFRINGEMENT OF THE '662 PATENT

109.    Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

110.  NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '662 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing the Accused ELDs to be used in the United States.  An exemplary claim chart detailing the correspondence of every element of claims 1, 3, 4, 5, 13, and 14 of the '662 patent with features of the Accused ELDs is attached hereto as Exhibit B-1 and incorporated by reference.

111.    Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '662 patent, either literally and/or under the doctrine of equivalents, by making,

using, importing, selling, and/or offering for sale the Accused ELDs in the United States so as to infringe one or more claims of the '662 patent.

112.  NexTraq was made aware of the '662 patent through an e-mail sent by PerDiem's counsel, Ms. Meredith Addy, to NexTraq's counsel, Mr. Justin Oliver, on June 23, 2023, informing him of PerDiem's intention to assert the patent.

113.  Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).  NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused ELDs constitutes direct infringement of at least one claim of the '662 patent.

114.  NexTraq induces infringement by selling or otherwise supplying and supporting the Accused ELDs in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused ELDs, for their intended purpose to infringe the '662 patent, with instructions as to the use of the Accused ELDs and guidance as to the specific steps that must be taken to utilize the Accused ELDs, including user guide found in:

https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and

tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1,

all with the knowledge and intent to encourage and facilitate infringement through

the dissemination of the Accused ELDs and/or the creation and dissemination of

documentation and technical information to customers and prospective customers

related to the Accused ELDs, including the product literature described in Exhibit

B-1, attached hereto.

115.   In particular, NexTraq's actions that aid and abet others to infringe include

advertising and/or providing support services to partners contracted by NexTraq or

providing instruction materials, training, and services regarding the Accused ELDs

which actively induce a user of the the Accused ELDs to infringe the Asserted

Claims.   For example, NexTraq provides potential users with detailed instruction

materials on how to operate the Accused ELDs, including user guide found   in:

https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and

tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1,

in a way that infringes at least one claim of the '662 patent.

116.   Upon information and belief, since at least the time NexTraq received

notice, NexTraq has contributed to, and continues to contribute to, the infringement

by third parties, including their customers, of one or more claims of the '662 patent,

including at least claims 1, 3, 4, 5, 13 and 14, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale the Accused ELDs in the United States, based for example, including user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, knowing that those products constitute a material part of the inventions of the '662 patent, knowing that those products are especially made or adapted to infringe the '662 patent, and knowing that the Accused ELDs are not staple articles of commerce suitable for substantial non-infringing use.

117.  PerDiem has been and continues to be damaged by NexTraq's infringement of the '662 patent.

118.  From the time of notice, NexTraq has willfully infringed the '662 patent.

119.  The conduct by NexTraq in infringing the '662 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

120.  PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim charts for the '662 patent (Exhibit B-1) only to satisfy the notice requirements of Rule 8(a)(2) of the

Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

### COUNT III – INFRINGEMENT OF THE '966 PATENT

121.   Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

122.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '966 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing the Accused ELDs to be used in the United States.  An exemplary claim chart detailing the correspondence of every element of claims 1, 3, 8, 13, and 18 of the '966 patent with features of the Accused ELDs is attached hereto as Exhibit C-1 and incorporated by reference.

123.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '966 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused ELDs in the United States so as to infringe one or more claims of the '966 patent.

124.   NexTraq was made aware of the '966 patent through an e-mail sent by PerDiem's counsel, Ms. Meredith Addy, to NexTraq's counsel, Mr. Justin Oliver, on June 23, 2023, informing him of PerDiem's intention to assert the patent.

125.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).   NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused ELDs constitutes direct infringement of at least one claim of the '966 patent.

126.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused ELDs in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused ELDs, for their intended purpose to infringe the '966 patent, with instructions as to the use of the Accused ELDs, including user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, all with the knowledge and intent to encourage and facilitate infringement through

the dissemination of the Accused ELDs and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused ELDs, including the product literature described in Exhibit C-1, attached hereto.

127.   In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused ELDs which actively induce a user of the the Accused ELDs to infringe the Asserted Claims.  For example, NexTraq provides potential users with instructions on how to operate the Accused ELDS, including user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, in a way that infringes at least one claim of the '966 patent.

128.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '966 patent, including at least claims 1, 3, 8, 13 and 18, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale the Accused ELDs  based for example on user guide found   in:  https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-

e053-0100007fc755 and tutorial found in: https://www.iorad.com /player/1706543/NexTraq-ELD#trysteps-1, knowing that those products constitute a material part of the inventions of the '966 patent, knowing that those products are especially made or adapted to infringe the '966 patent, and knowing that the Accused ELDS are not staple articles of commerce suitable for substantial non-infringing use.

129.  PerDiem has been and continues to be damaged by NexTraq's infringement of the '966 patent.

130.  From the time of notice, NexTraq has willfully infringed the '966 patent.

131.  The conduct by NexTraq in infringing the '966 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

132.  PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '966 patent (Exhibit C-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## COUNT IV – INFRINGEMENT OF THE '789 PATENT

133.   Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

134.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '789 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.  An exemplary claim chart detailing the correspondence of every element of claims 17 of the '789 patent with a feature of the Accused ELD Service is attached hereto as Exhibit D-1 and incorporated by reference.

135.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '789 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused ELD Service in the United States so as to infringe one or more claims of the '789 patent.

136.   NexTraq was made aware of the '789 patent through an e-mail sent by PerDiem's counsel, Ms. Meredith Addy, to NexTraq's counsel, Mr. Justin Oliver, on June 23, 2023, informing him of PerDiem's intention to assert the patent.

137.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).   NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused ELD Service constitutes direct infringement of claim 17 of the '789 patent.

138.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused ELD Service in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused ELD Service, for their intended purpose to infringe the '789 patent, with instructions as to the use of the Accused ELD Service and guidance as to the specific steps that must be taken to utilize the Accused ELD Service, including user guide found     in:     https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755     and     tutorial     found     in:     https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused ELD Service and/or the creation and dissemination of documentation and technical

information to customers and prospective customers related to the Accused ELD Service, including the product literature described in Exhibit D-1, attached hereto.

139.   In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused ELD Service which actively induce a user of the Accused ELD Service to infringe the Asserted Claims.   For example, NexTraq provides potential users with detailed instruction materials on how to operate Accused ELD, including user guide found in:   https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and   tutorial   found   in:   https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, in a way that infringes at least one claim of the '789 patent.

140.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of claim 17 of the '789 patent under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale Accused ELD Service in the United States, based for example, on user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, knowing that those products constitute a material part of the inventions of the '789

patent, knowing that those products are especially made or adapted to infringe the '789 patent, and knowing that the Accused ELD Service is not staple articles of commerce suitable for substantial non-infringing use.

141.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '789 patent.

142.   From the time of notice, NexTraq has willfully infringed the '789 patent.

143.   The conduct by NexTraq in infringing the '789 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

144.   PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '789 patent (Exhibit D-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## <u>COUNT V – INFRINGEMENT OF THE '364 PATENT</u>

145.   Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

146.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '364 patent either literally and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing the Accused ELD Service to be used in the United States.  An exemplary claim chart detailing the correspondence of every element of claim 12 of the '364 patent with features of the Accused ELD Service is attached hereto as Exhibit E-1 and incorporated by reference.

147.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '364 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused ELD Service in the United States so as to infringe one or more claims of the '364 patent.

148.   NexTraq was made aware of the '364 patent through the complaint filed in the Pending Case on on January 13, 2023.

149.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).  NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted

others to infringe, and continues to actively, knowingly, and intentionally induce others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused ELD Service constitutes direct infringement of claim 12 of the '364 patent.

150.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused ELD Service in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the Accused ELD Service, for their intended purpose to infringe the '364 patent, with instructions as to the use of the Accused ELD Service, including user guide found in:   https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and   tutorial   found   in:   https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused ELD Service and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused ELD Service, including the product literature described in Exhibit E-1, attached hereto.

151.   In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or providing instruction materials, training, and services regarding the Accused ELD

Service which actively induce a user of the Accused ELD Service to infringe the Asserted Claims.  For example, NexTraq provides potential users with detailed instruction materials on how to operate Accused ELD Service, based for example, on the user guide found  in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, in a way that infringes claim 12 of the '364 patent.

152.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of claim 12 of the '364 patent under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale the Accused ELD Service, based for example, on the user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, knowing that those products constitute a material part of the inventions of the '364 patent, knowing that those products are especially made or adapted to infringe the '364 patent, and knowing that the Accused ELD Service is not staple articles of commerce suitable for substantial non-infringing use.

153.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '364 patent.

154.   NexTraq was made aware of the '364 patent and its infringement thereof at least as early as the filing of this Complaint.

155.   From the time of notice, NexTraq has willfully infringed the '364 patent.

156.   The conduct by NexTraq in infringing the '364 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

157.   PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '364 patent (Exhibit E-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## **COUNT VI – INFRINGEMENT OF THE '689 PATENT**

158.   Paragraphs 1 through 96 are incorporated by reference as if fully set forth herein.

159.   NexTraq directly infringes and continues to directly infringe under 35 U.S.C. § 271(a) at least one or more claims of the '689 patent either literally

and/or under the doctrine of equivalents, by, among other things, making, using, importing, selling, offering for sale and/or providing and/or causing to be used in the United States the Accused Instrumentalities.  An exemplary claim chart detailing the correspondence of every element of claims 1, 4, 5, 6 and 7 of the '689 patent with features of the Accused ELD Service is attached hereto as Exhibit F-1 and incorporated by reference.

160.   Third parties, including NexTraq's customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '689 patent, either literally and/or under the doctrine of equivalents, by making, using, importing, selling, and/or offering for sale the Accused ELD Service in the United States so as to infringe one or more claims of the '689 patent.

161.   NexTraq was made aware of the '689 patent through an e-mail sent by PerDiem's counsel, Ms. Meredith Addy, to NexTraq's counsel, Mr. Justin Oliver, on June 23, 2023, informing him of PerDiem's intention to assert the patent.

162.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has induced infringement and continues to induce infringement under 35 U.S.C. § 271(b).  NexTraq has actively, knowingly, and intentionally induced, and with specific intent or conscious blindness, actively aided and abetted others to infringe, and continues to actively, knowingly, and intentionally induce

others to infringe, including but not limited to each of NexTraq's partners, clients, customers, and end users, whose use of the Accused ELD Service constitutes direct infringement of at least one claim of the '689 patent.

163.   NexTraq induces infringement by selling or otherwise supplying and supporting the Accused ELD Service in the United States with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States the accused products, for their intended purpose to infringe the '689 patent, with instructions as to the use of Accused ELD Service and guidance as to the specific steps that must be taken to utilize Accused ELD Service, including the user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755 and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, all with the knowledge and intent to encourage and facilitate infringement through the dissemination of the Accused ELD Service and/or the creation and dissemination of documentation and technical information to customers and prospective customers related to the Accused ELD Service, including the product literature described in Exhibit F-1, attached hereto.

164.   In particular, NexTraq's actions that aid and abet others to infringe include advertising and/or providing support services to partners contracted by NexTraq or

providing instruction materials, training, and services regarding the Accused ELD Service which actively induce a user of the Accused ELD Service to infringe the Asserted Claims.   For example, NexTraq provides potential users with detailed instruction materials on how to operate Accused ELD Service, based for example, on the user guide found in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and   tutorial   found   in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, in a way that infringes at least one claim of the '689 patent.

165.   Upon information and belief, since at least the time NexTraq received notice, NexTraq has contributed to, and continues to contribute to, the infringement by third parties, including their customers, of one or more claims of the '689 patent, including at least claims 1, 4, 5, 6 and 7, under 35 U.S.C. § 271(c), by, for example, selling and/or offering for sale the Accused ELD Service in the United States, based for   example,   on   the   user   guide   found   in: https://eld.fmcsa.dot.gov/File/Index/4bf98a83-0c56-27fd-e053-0100007fc755   and tutorial found in: https://www.iorad.com/player/1706543/NexTraq-ELD#trysteps-1, knowing that those products constitute a material part of the inventions of the '689 patent, knowing that the Accused ELD Service is especially made or adapted to

infringe the '689 patent, and knowing that Accused ELD Service is not staple articles of commerce suitable for substantial non-infringing use.

166.   PerDiem has been and continues to be damaged by NexTraq's infringement of the '689 patent.

167.   From the time of notice, NexTraq has willfully infringed the '689 patent.

168.   The conduct by NexTraq in infringing the '689 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

169.   PerDiem reserves the right to modify its infringement theories as discovery progresses in this case and is not to be estopped for purposes of its infringement contentions or any claim construction, express or implied, set forth within the attached claim charts.  PerDiem intends the claim chart for the '689 patent (Exhibit F-1) only to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure.  The claim chart does not represent PerDiem's preliminary or final infringement contentions or preliminary or final claim construction positions.

## **JURY DEMAND**

170.   Pursuant to Rule 38 of the Federal Rules of Civil Procedure, PerDiem demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, PerDiem demands judgment for itself and against NexTraq as follows:

A.     An adjudication that NexTraq has infringed each of the Patents-in-Suit;

B.     An award of damages to be paid by NexTraq adequate to compensate PerDiem for NexTraq's past infringement of the Patents-in-Suit, and any continuing or future infringement through the date such judgment is entered, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C.     A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of PerDiem's reasonable attorneys' fees; and

D.     An award to PerDiem of such further relief at law or in equity as the Court deems just and proper.

Dated: August 21, 2023     Respectfully submitted,


/s/ *Meredith Martin Addy*

Meredith Martin Addy (Georgia Bar No. 473555)
meredith@addyhart.com
Charles A. Pannell, III (Georgia Bar No. 141535)
cpannell@addyhart.com
ADDYHART P.C.
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
Telephone:  312.320.4200
Facsimile:  312.264.2547

Benjamin M. Cappel (*pro hac vice* to be filed)
benjamin@addyhart.com
ADDYHART P.C.
401 Michigan Avenue, Suite 1200-1
Chicago, Illinois 60611
Telephone:  732.991.7285
Facsimile:  312.264.2547

*Attorneys for Plaintiff,*
*PerDiemCo LLC*