# Exhibit H



UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 124657    7590    03/03/2017 | EXAMINER | |
| Vector IP Law Group LLC | KING, CURTIS J | |
| 3208 Q Street NW | | |
| Washington, DC 20007 | ART UNIT | PAPER NUMBER |
| | 2684 | |

DATE MAILED: 03/03/2017

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/629,347 | 02/23/2015 | Darrell Diem | 1114-0004001 | 8284 |

TITLE OF INVENTION: A LOCATION TRACKING SYSTEM CONVEYING EVENT INFORMATION BASED ON ADMINISTRATOR AUTHORIZATIONS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 06/05/2017 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS. THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN **THREE MONTHS** FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. **THIS STATUTORY PERIOD CANNOT BE EXTENDED.** SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled "Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office (USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b" of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

Page 1 of 3

PTOL-85 (Rev. 02/11)

**PART B - FEE(S) TRANSMITTAL**

**Complete and send this form, together with applicable fee(s), to:** **Mail**   Mail Stop ISSUE FEE
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450
**or Fax**   (571)-273-2885

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

124657      7590      03/03/2017
Vector IP Law Group LLC
3208 Q Street NW
Washington, DC 20007

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)

_____ (Signature)

_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/629,347 | 02/23/2015 | Darrell Diem | 1114-0004001 | 8284 |

TITLE OF INVENTION: A LOCATION TRACKING SYSTEM CONVEYING EVENT INFORMATION BASED ON ADMINISTRATOR AUTHORIZATIONS

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $960 | $0 | $0 | $960 | 06/05/2017 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| KING, CURTIS J | 2684 | 340-539130 |

1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).
☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.
☐ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

2. For printing on the patent front page, list
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) :   ☐ Individual   ☐ Corporation or other private group entity   ☐ Government

4a. The following fee(s) are submitted:
☐ Issue Fee
☐ Publication Fee (No small entity discount permitted)
☐ Advance Order - # of Copies _____

4b. Payment of Fee(s): (**Please first reapply any previously paid issue fee shown above**)
☐ A check is enclosed.
☐ Payment by credit card. Form PTO-2038 is attached.
☐ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

5. **Change in Entity Status** (from status indicated above)
☐ Applicant certifying micro entity status. See 37 CFR 1.29
☐ Applicant asserting small entity status. See 37 CFR 1.27
☐ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

Page 2 of 3

 **United States Patent and Trademark Office**

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/629,347 | 02/23/2015 | Darrell Diem | 1114-0004001 | 8284 |

124657        7590        03/03/2017
Vector IP Law Group LLC
3208 Q Street NW
Washington, DC 20007

| EXAMINER |
|---|
| KING, CURTIS J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2684 | |

DATE MAILED: 03/03/2017

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

| ***Notice of Allowability*** | Application No.<br>14/629,347 | | Applicant(s)<br>DIEM, DARRELL | |
| --- | --- | --- | --- | --- |
| | Examiner<br>CURTIS KING | | Art Unit<br>2684 | AIA (First Inventor to File)<br>Status<br>Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *applicant response received on 02/08/2017*.

    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on_____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☒ The allowed claims is/are *2-23*. As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    **Certified copies:**

      a) ☐ All   b) ☐ Some  *c) ☐ None of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    * Certified copies not received: _____.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application.
**THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

    ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of
Paper No./Mail Date _____.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

1. ☐ Notice of References Cited (PTO-892)

2. ☐ Information Disclosure Statements (PTO/SB/08),
Paper No./Mail Date _____

3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

4. ☐ Interview Summary (PTO-413),
Paper No./Mail Date _____ .

5. ☐ Examiner's Amendment/Comment

6. ☒ Examiner's Statement of Reasons for Allowance

7. ☐ Other _____.

/CURTIS KING/
Primary Examiner, Art Unit 2684

U.S. Patent and Trademark Office
PTOL-37 (Rev. 08-13)
20170222

Notice of Allowability

Part of Paper No./Mail Date

Application/Control Number: 14/629,347                                    Page 2
Art Unit: 2684

### *Allowable Subject Matter*

1.      Claims 2-23 are allowed.


2.      The following is an examiner's statement of reasons for allowance:

        The amendments to the claims from 12/23/2016 in combination with the previous

presented limitations provide the basis for the reason for the allowance over the prior art

of record. The prior art does not disclose or sufficiently suggest the claimed invention in

the manner claimed.

        Any comments considered necessary by applicant must be submitted no later

than the payment of the issue fee and, to avoid processing delays, should preferably

accompany the issue fee.  Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance."


### *Conclusion*

3.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to CURTIS KING whose telephone number is (571)270-

5160.  The examiner can normally be reached on Mon-Thurs 7:30 - 6:00.

        Examiner interviews are available via telephone, in-person, and video

conferencing using a USPTO supplied web-based collaboration tool. To schedule an

interview, applicant is encouraged to use the USPTO Automated Interview Request

(AIR) at http://www.uspto.gov/interviewpractice.

Application/Control Number: 14/629,347                                    Page 3
Art Unit: 2684

     If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Quan-Zhen Wang can be reached on (571)272-3114.  The fax phone

number for the organization where this application or proceeding is assigned is 571-

273-8300.

     Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.


/CURTIS KING/
Primary Examiner, Art Unit 2684

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent Application of:
Darrell Diem                                          Art Unit: 2684

Application No:  14/629,347                            Examiner:  Curtis J King

Confirmation No: 8284

Filed:  02-23-2015                                     Atty. Docket No: 1114-0004001

                                                       Customer No:  124657

For:   A LOCATION TRACKING SYSTEM CONVEYING          PATENT TRADEMARK OFFICE
       EVENT INFORMATION BASED ON
       ADMINISTRATOR AUTHORIZATIONS

## RESPONSE TO FINAL OFFICE ACTION

Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

In response to the Office Action dated **February 5, 2016**, please amend the above-identified U.S. patent application as follows:

**Claims** are reflected in the listing of claims, which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 6 of this paper.

## CLAIMS

1. (Cancelled)

2. (Currently Amended) A location tracking system comprising:

one or more servers capable of receiving identifiers and location information for a plurality of mobile devices**;**

the one or more servers configured to:

store information for a plurality of groups of mobile devices defined by ~~an~~ a first administrator configured to have a first level of administrative privilege ~~associated with a group of multiple mobile devices~~, each group comprising multiple mobile devices of the plurality of the mobile devices;

store information for a plurality of second administrators, each second administrator being configured to have a corresponding second level of administrative privilege to control access privileges to information associated with a group of the plurality of groups in order to protect the privacy of the information associated with the group;

authorize the first administrator based on the first level of administrative privilege to specify a second administrator having a second level of administrative privilege associated with a group;

~~authorize the administrator to add a mobile device to the group;~~

authorize the second administrator based on the second level of administrative privilege to control conveyance of information regarding the group;

provide one or more interfaces ~~for setting~~ configured to receive information related to a zone, an event, and an alert for the group;

receive a request to set a zone for the group, the zone having a boundary that is independent of where the group's mobile devices are located;

2

receive a request to set an event for the group;

receive a request to set an alert for the group, the request identifying a recipient of the alert;

store the group's zone, event and alert in one or more databases;

receive identifiers and location information for the multiple mobile devices in the group;

compare the identifiers and location information with the group's zone and event to determine whether to send the group's alert; and

cause the group's alert to be sent.

3.   (Currently Amended) The system of claim 2, the one or more servers configured to:

receive information corresponding a second zone and a second event;

receive a request to set ~~a~~ the second zone for the group;

receive a request to set ~~a~~ the second event for the group;

store the group's second zone and second event in the one or more databases; and

compare the ~~mobile device's~~ location information for the multiple mobile devices with the group's second zone and second event to determine whether to send an alert associated with group's second zone and second event.

4.   (Previously presented) The system of claim 2, where the one or more interfaces are user interfaces.

5.   (Previously presented) The system of claim 2, where the one or more interfaces comprise an interface for adding a mobile device to the group.

3

6.  (Previously presented) The system of claim 4, where the one or more user interfaces comprise a user interface for adding the mobile device to the group.

7.  (Previously presented) The system of claim 4, where the one or more servers control access to the one or more user interfaces for adding a mobile device to the group.

8.  (Currently Amended) The system of claim 2, where the one or more servers control access to the one or more interfaces.

9.  (Currently Amended) The system of claim 2, where ~~the~~ a received identifier is a serial number.

10. (Currently Amended) The system of claim 2, where ~~the~~ a received identifier is an email address.

11. (Currently Amended) The system of claim 2, where ~~the~~ a received identifier is a phone number.

12. (Currently Amended) The system of claim 2, where ~~the~~ a received identifier is a name.

13. (Previously presented) The system of claim 2, where the alert is an email.

14. (Previously presented) The system of claim 2, where the alert is a text message.

15. (Previously presented) The system of claim 2, where the alert is a device notification.

16. (Previously presented) The system of claim 2, where the alert is phone call.

17. (Currently Amended) The system of claim 2, where the location information of ~~the~~ a mobile device is determined using GPS.

18. (Currently Amended) The system of claim 2, where the location information of ~~the~~ a mobile device is determined using RFID.

19. (Currently Amended) The system of claim 2, where the location information of ~~the~~ a mobile device is determined using NFC.

20. (Previously presented) The system of claim 2, where the one or more servers sends the alert.

21. (Previously presented) The system of claim 2, where the one or more servers cause another server to send the alert.

22. (Currently Amended) The system of claim 2, where identifiers comprise a zone identifier and an event identifier that cause the one or more servers to send ~~an~~ the alert.

23. (Currently Amended) The system of claim 22, where one of the received identifiers comprise a sensor identifier.

5

## REMARKS

The Applicant thanks the Examiner for the careful consideration of the present application. Claims 2-23 remain pending.

### The Information Disclosure Statement

The Action states that the information disclosure statement filed 08/27/2015 and 12/03/2015 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because no date has been provided for the lined through references. Filed herewith is an IDS that shows all the dates for the lined through references.

### 112 Rejection

Claims 2-23 stand rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the invention.

The Action states that it is unclear in claim 2 whether the group of multiple mobile devices in lines 5-6 are from the plurality of mobile devices in lines 2-3. To clarify, claim 2 is amended as shown above to require "each group comprising multiple mobile devices of the plurality of the mobile devices." The remaining claim rejections under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second paragraph, have been overcome based on the amendments shown above. The undersigned thanks the examiner for helpful suggestions for overcoming these rejections.

### Claim Amendment

Claim 2 has been amended as shown above to require a plurality of administrative privileges configured to control access to information. The plurality of administrative privileges comprises a

6

first level of administrative privilege that defines a plurality of groups and a second level of administrative privilege to control conveyance of information regarding a group of the plurality of groups in order to protect the privacy of the information associated with the group. The claims also require authorizing a first administrator to specify a second administrator having a second level of administrative privilege associated with a group.

It is respectfully submitted that the above amendments are fully supported by the Specification. As described in the Specification, "[t]he present invention can be implemented in a variety of information-sharing environments. The sharing of information may be managed among a small number of users such as a family or group of friends, or among a very large number of users such as among employees of very large business, or among a worldwide user base such as a might be provided via an Internet service. Furthermore, information-sharing environments may involve information-sharing environments within information-sharing environments. That is, one or more smaller information-sharing environments may overlap or coexist independent of each other within one or more larger information-sharing environments." **(See page 9 lines 1-9)**. Because information-sharing environments exist within information-sharing information environments, the specification enables various levels of administrator privileges, including, first level administrative privilege and second level administrative privileges.

According to the specification "one or more administrators may be given privileges to configure the information-sharing environment. Such configuration could include specifying authorized users of the environment and their access privileges, etc. Such configuration can also define groups of users as part of an established organizational structure associated with the information-sharing environment." **(See, page 9, lines 10-14)**. The specification describes multiple

7

levels of administrative privileges being used to administer multiple levels of information sharing environments. The specification describes setting up the various groups making up a given information sharing environment, where a given level of administrative privileges are used to define the users belonging to the various groups. Thus, the Specification fully supports authorizing the first administrator to specify a second administrator based on the first level of administrative privilege.

According to the Specification, one or more users can access at least one of the location information, information relating to the zone or conveyed information regarding the event using one or more access control codes. The access control codes can be configured to require multiple levels of access control. **(See, page 2, lines 24-27)**. In this way, the Specification fully supports protecting privacy of groups of mobile users by controlling access to information.

## 101 Rejection

Claims 2-23 stand rejected under 35 U.S.C. 101. The Action states that the claimed invention is directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an abstract idea) without significantly more. The Action states that claim(s) 2-23 are directed to comparing identifiers and location information with a group's zone and event to determine whether to send out a group alert. The Action alleges that "the claim(s) does/do not include additional elements that are sufficient to amount to significantly more than the judicial exception because the generically recited computer elements do not add a meaningful limitation to the abstract idea because they would be routine in any computer implementation. For example, the server only performs generic computer functions of receiving, comparing, and transmitting information.

8

Generic computers performing generic computer functions, alone, do not amount to significantly more than the abstract idea."

The determination of whether patent claims fall within one of the patent-ineligible exceptions (i.e., law of nature, natural phenomenon, and abstract idea), as emphasized by the Supreme Court in *Alice Corp.* must be accomplished through a two-part analysis.  The first step is to determine whether the claims at issue are directed to a patent-ineligible exception.  If so, step two is to determine whether an element or combination of elements is sufficient to ensure that the claim amounts to significantly more than the abstract idea itself.  The Alice court, however, specified that improvements and enhancements to computerized technologies are fully patent-eligible.

Prior art mobile devices were being equipped with GPS receivers, which could give real-time data about the device's location.  The claims improve upon this location-tracking functionality by implementing "zones" corresponding to actual places on the Earth's surface, where the zones have boundaries independent of where the group's mobile devices are located.  Under the claims, when one or more mobile devices cross the boundary of a zone, an alert could be sent to a group of users.  Moreover, the claims as amended now require a hierarchy of administrative privileges, including a first level of administrative privilege for a first administrator and a second level of administrative privilege for a plurality of a second administrator that allows creating groups of mobile devices and controlling conveyance of information regarding each group independently.  In this way only intended recipients of group alerts receive them and other groups can not spy on each other.  Thus, rather than simply tracking a given mobile device's location as done in the prior art, the claims create a robust location-tracking system that: (1) tracks *groups* of mobile devices *in relation to particular zones of interest*, (2) sends automatic alerts when the tracked mobile devices

9

cross zone boundaries, and (3) distributes these alerts to flexible, user-defined groups that have the proper information access privileges.  For this reason, claims 2-23 of the present application are not directed to an abstract idea.  These claims are patent eligible because they extend location tracking technology beyond its prior-art application of simply identifying the location of a mobile device and improve and augment the functionality of location technology and other computerized location technology by providing efficient event-based alerts under multiple levels of administrative privileges that insures those with necessary access privileges are conveyed event information. In other words, by controlling which users have access privileges privacy of information is controlled.

MPEP 2106(II) provides a detailed explanation of the judicial exceptions and their legal bases, which refers to the 2014 Interim Guidance on Patent Subject Matter Eligibility, 79 Fed. Reg. 74618 (the Interim Guidance).  According to the Interim Guidance, abstract ideas have been identified by the courts by way of example, including 1) fundamental economic practices, 2) certain methods of organizing human activities, 3) an idea 'of itself,' and 4) mathematical relationships/formulas.  However, none of the examples apply here because claims recite improving the functionality of location-tracking technologies, such as GPS receivers in mobile phones and other mobile devices.  The claimed invention is not a fundamental economic practice because it protects group privacy by controlling access to information for groups of mobile devices.   No economic activity is involved under the claims.  The claims do no relate to organizing human activities because they convey automated alerts based on occurrence of events determined based on mobile device location relative to zones.  For this reason, the claims are more than an idea 'of itself.'  Finally, the claims do not apply any mathematical relationships/formulas.

10

Even assuming that the claims are directed to an abstract idea, the claims as a whole have elements sufficient to ensure that the claim amounts to significantly more than an abstract idea. Indeed, Example 4 of the Interim Guidance specifically finds GPS related technology to be patent eligible. Applying the same analysis, the claims recite storing information for a plurality of groups of mobile devices defined by a first administrator that has a first level of administrative privilege and storing information about a plurality of second administrators, each being configured with a corresponding second level of administrative privilege. As recited in claim 2, the first level of administrative privilege is used by the servers to define a plurality of groups of mobile devices and the second level of administrative privilege is used to control conveyance of information regarding a group. The one or more servers provide interfaces for receiving information corresponding a zone, an event, and an alert for the group. The servers receive a request to set a zone having a boundary that is independent of where the group's mobile devices are located for the group. The one or more servers further receive a request to set an event and an alert for the group. The request for setting the alert identifies a recipient of the alert. The claims require storing the group's zone, event and alert in one or more databases.

In this way, the one or more servers act in concert with the recited features to convey alerts to users authorized in groups to receive then. Thus, meaningful limitations have been placed upon the claimed application that the claim is not directed to performing generic computer functions of receiving, comparing, and transmitting information. Thus the claims are not directed to generic computers performing generic computer functions. Rather, the combination of elements impose meaningful limits in that are applied to improve an existing technology (i.e., location tracking) by efficiently conveying event-related information to extend the usefulness of the technology into

11

industries where privacy of such information must be protected and providing the event information for tracking objects, e.g., vehicles, etc.   All of these features, especially, when viewed in combination, amount to significantly more than the judicial exception.  Thus, the claims are patent eligible.

## Claim Rejections -35 USC § 103

Claims 2-17 and 20-22 stand rejected under 35 U.S.C. 103 as being unpatentable over Cao (Pub. No.: US 2003/0020623 Al) in view of Blass (Pub. No.: US 2006/0058948 Al).

Cao discloses "[a] group notification system and associated method that allow particular activities to be executed based on the group dynamics, such as the dynamics of organizing meetings. The system facilitates the availability of knowledge concerning the proximity and direction of movement of individuals, objects, or groups, and whether this information satisfies preset criteria or rules. One such criterion is that the proximity distance of the group members be less than a predetermined threshold range. The threshold range can be adjustable or programmable." (See, Cao Abstract).  According to Cao, the system and method permit knowledge exchange of the proximity of individuals, objects, groups of persons, or collection of objects, to each other, and are suited for the implementation of location driven activities and/or location based services.   There is no teaching or suggestion for protecting privacy of groups of mobile devices independent of each other.

It is respectfully submitted that Cao fails to disclose the amended claim requirements for defining a plurality of administrative privileges, including a first level of administrative privilege that defines groups and a plurality of second level of administrative privileges that control conveyance of information regarding the groups. Instead, Cao discloses "[a] user/group manager 425 manages the profile database 430. It updates the records for the user. The user may have

12

permission to set his or her profile over the Internet using his or her user wireless module 200. Alternatively, only <u>a system administrator of the group location alert server 400, with an executive privilege, may change the profile database 430 containing information about the clients and the user wireless modules 200, 300.</u>" (See, Cao [0068], Emphasis added) Thus, Cao describes <u>a single executive privilege</u>, but not multiple levels of privileges, as required by the amended claims. Indeed, FIG. 6 of Cao reproduced below shows a flow chart for a single level of administrative control.   There is no teaching or suggestion in Cao regarding multiple levels of administrative privileges in the manner required by the amended claims.



FIG. 6

13

The Action correctly states that Cao also does not disclose a system providing one or more interfaces for setting a zone, an event, and an alert for the group, receive a request to set a zone for the group, the zone having a boundary that is independent of where the group's mobile devices are located, receive a request to set an event for the group, receive a request to set an alert for the group, the request identifying a recipient of the alert, store the group's zone, event and alert in one or more databases, and compare the identifiers and location information with the group's zone and event to determine whether to send the group's alert.

The Action cites Blass fig. 6.1 for disclosing "a server that provides a user interface for setting a zone, an event, and an alert for a group."   Blass discloses "[a]n organization system using location information, possibly in conjunction with time based information for tasks, with the purpose of optimizing user travel distance and/or time to complete specified tasks."  (See, Blass, Abstract).  Similar to Cao, there is no teaching or suggestion in Blass regarding multiple levels of administrative privileges in the manner required by the amended claims to protect privacy of groups of mobile devices independent of each other.   Looking at Blass's Fig. 17(a), reproduced below, Blass discloses a single level of administration.

14



FIG. 17(a)

Thus, Blass also fails to disclose the amended claim requirements for defining a plurality of administrative privileges, including a first level of administrative privilege that defines groups and a plurality of second level of administrative privileges that control conveyance of information regarding the groups.

Finally, it is respectfully submitted that Cao and Blass can not be combined.  Cao, in its essence, is a group notification system that sends notifications to members of a group regarding proximity and direction of movement of individuals, objects, or groups when a pre-determined criterion or threshold is met. Therefore, Cao relies on proximity or movement direction of individuals for sending alerts, for example, to conduct or not to conduct a meeting amongst a group.

15

(**See Cao, [009]**) As a result, Cao would have no use for a zone that has a boundary independent of where the group's mobile devices are located.  Indeed, one of ordinary skill in the art would have no reason to modify Cao to include such zone, for example, a library, as disclosed in Blass.  This is because the event that sends an alert in Cao solely relies on users' proximity or movement direction regardless of the location of a zone, such as the library.  Even if Cao is modified to include a zone, e.g., a library, no alerts would be sent based on the location of library relative to a user.   The criteria for sending alerts in Cao has nothing to do with where the library is located.  What matters in Cao is users' proximity or movement direction relative to each other.  Thus there is no motivation for combining Cao based on Blass.

According to the Action, "it would have been obvious to one of ordinary skill in the art at the time the claimed invention was made to allow the server of Cao to provide an interface to receive parameter data and the ability to receive the parameter data, as taught by Blass."   The Action states that "One skilled in the art would be motivated to modify Cao as described above in order to use a known technique which would allow a user of the system the ability to make changes to the system."   As best understood, the Action relies on modifying Cao based on Blass for the "ability to receive the parameter data" in order "to allow a user of the system the ability to make changes to the system."   However, Cao already teaches receiving "parameter data" and making system changes regardless of what Blass discloses.  According to Cao, the proximity distance or range of the group members can be defined in numerous way.  (**See, Cao [00076]**).  Examples given in Cao for changing the system based on parameters include A) "the distance between two or more group members" (**See, Cao [0077]**), B) the distance between the majority, or all the members of group 800 (**See, Cao [0078]**) C) the distance between the majority, or all the members of group 800

16

and a dynamic geometric center (GC) formed by interpolating the positions of all or the majority of the group members (**See, Cao [0079]**) and D) the distance between group (or user) 850, and either (1) one or more members (i.e., 200A, 200D) of group 800 or (2) the dynamic geometric center GC of group 800 (shown in solid lines) (**See, Cao [0080]**).   Therefore, Blass does not add to Cao beyond what Cao already teaches in terms of providing interfaces for receiving "parameter data" in order to make system changes.

      As stated above, modification of Cao to include Blass's zones would provide no benefit to the way Cao's system function.   Cao sends alerts based on users' proximity or movement directions to each other.   For example, if users are within a defined proximity of each other Cao sends an alert. Blass on the other hand, sends alerts based on user proximity to a defined location/zone instead of user proximity to each other.   Specifying Blass's location/zone in Cao has no bearing as to whether alerts are sent.

17

## CONCLUSION

In view of the above, it is respectfully submitted that all pending claims are now in allowable form.  Early issuance of a Notice of Allowance is respectfully submitted.  If the Examiner is of the opinion that the prosecution of this application would be advanced by a personal interview, the Examiner is invited to telephone undersigned counsel to arrange for such an interview.

Dated: <u>March 23, 2016</u>                    Respectfully submitted,

By: <u>/ Robert S. Babayi /</u>
Robert S. Babayi
Registration No.: 33,471
VECTOR IP LAW GROUP

(202) 446-1481 (Direct)
(703) 587-3803 (Mobile)
(202) 446-1485  (Fax)
Attorney/Agent For Applicant

18



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/629,347 | 02/23/2015 | Darrell Diem | 1114-0004001 | 8284 |

124657          7590          02/05/2016
Vector IP Law Group LLC
3208 Q Street NW
Washington, DC 20007

| EXAMINER |
|---|
| KING, CURTIS J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2684 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/05/2016 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

us@vectoriplaw.com

PTOL-90A (Rev. 04/07)

| *Office Action Summary* | Application No.<br>14/629,347 | Applicant(s)<br>DIEM, DARRELL | |
|---|---|---|---|
| | Examiner<br>CURTIS KING | Art Unit<br>2684 | AIA (First Inventor to File)<br>Status<br>Yes |

-- *The MAILING DATE of this communication appears on the cover sheet with the correspondence address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on *09/08/2015*.
  ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☒ This action is **FINAL**.        2b)☐ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) *2-23* is/are pending in the application.
  5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐ Claim(s) _____ is/are allowed.
7)☒ Claim(s) *2-23* is/are rejected.
8)☐ Claim(s) _____ is/are objected to.
9)☐ Claim(s) _____ are subject to restriction and/or election requirement.
* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☐ The specification is objected to by the Examiner.
11)☐ The drawing(s) filed on _____ is/are: a)☐ accepted or b)☐ objected to by the Examiner.
  Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
  Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
  **Certified copies:**
  a)☐ All   b)☐ Some**  c)☐ None of the:
  1.☐ Certified copies of the priority documents have been received.
  2.☐ Certified copies of the priority documents have been received in Application No. _____.
  3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☒ Notice of References Cited (PTO-892)

2)☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413)
  Paper No(s)/Mail Date. _____.
4)☐ Other: _____.

U.S. Patent and Trademark Office
PTOL-326 (Rev. 11-13)                    Office Action Summary                    Part of Paper No./Mail Date 20160126

Application/Control Number: 14/629,347                                    Page 2
Art Unit: 2684

### *Response to Amendment*

1.      This action is responsive to applicant's amendment and remarks received on

09/08/2015.  Claims 2-23 have been presented for examination.  Claims new claims 2-

23 have been added.  Claims 2-23 have been examined.


2.      The present application, filed on or after March 16, 2013, is being examined

under the first inventor to file provisions of the AIA.


### *Information Disclosure Statement*

3.      The information disclosure statement filed 08/27/2015 and 12/03/2015 fails to

comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because no date has

been provided for the lined through references.  It has been placed in the application

file, but the information referred to therein has not been considered as to the merits.

Applicant is advised that the date of any re-submission of any item of information

contained in this information disclosure statement or the submission of any missing

element(s) will be the date of submission for purposes of determining compliance with

the requirements based on the time of filing the statement, including all certification

requirements for statements under 37 CFR 1.97(e).  See MPEP § 609.05(a).




### *Claim Rejections - 35 USC § 112*

4.      The following is a quotation of 35 U.S.C. 112(b):

Application/Control Number: 14/629,347                                    Page 3
Art Unit: 2684

> (b)  CONCLUSION.—The specification shall conclude with one or more claims particularly
> pointing out and distinctly claiming the subject matter which the inventor or a joint inventor
> regards as the invention.
>
> The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:
> The specification shall conclude with one or more claims particularly pointing out and distinctly
> claiming the subject matter which the applicant regards as his invention.

5.      Claims 2-23 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA),

second paragraph, as being indefinite for failing to particularly point out and distinctly

claim the subject matter which the inventor or a joint inventor, or for pre-AIA the

applicant regards as the invention.


6.      Claim 2 recites the limitation "a plurality of mobile devices" in lines 2-3, and "a

group of multiple mobile devices" in lines 5-6.  It is unclear whether the *group of multiple*

*mobile devices* is lines 5-6 are from the *plurality of mobile devices* in lines 2-3. In order

to advance the prosecution, the examiner will interpret the claim as if the *mobile devices*

from lines 5-6 are from the mobile devices of lines 2-3. Appropriate correction is

required. Claims 3-23 are rejected due to their claim dependency.


7.      Claim 2 recites the limitation "receive a request to set a zone…receive a request

to set an event…receive a request to set an alert" in lines 11-15.  It is unclear how the

server sets the zone, event, and alert when the server never receives a zone, event,

and alert. Applicant may overcome the rejection by amending the claims to allow the

server to receive a zone, event, and alert. Appropriate correction is required.

Application/Control Number: 14/629,347                                    Page 4
Art Unit: 2684

8.      Claim 2 recites the limitation "receive identifiers and location information for the

multiple mobile devices in the group" in lines 17-18, and "receiving identifiers and

location information for a plurality of mobile devices" in lines 2-3.  It is unclear whether

the identifiers received in line 2 are the same or different than the identifiers received in

line 17. Further explanation is required.


9.      Claim 2 recites the limitation "receive a request to set a second zone…receive a

request to set a second event…" in lines 2-3.  It is unclear how the server sets the

second zone and second event when the server never receives a zone and event.

Applicant may overcome the rejection by amending the claims to allow the server to

receive a second zone and second event. Appropriate correction is required.


10.     Claim 2 recites the limitation "the database" in line 4.  There is insufficient

antecedent basis for this limitation in the claim.


11.     Claim 2 recites the limitation "the mobile's location information" in line 4.  There is

insufficient antecedent basis for this limitation in the claim. Furthermore, item 7 explains

claim 1 has two different set of location information. Appropriate correction is required.


12.     Claim 2 recites the limitation "an alert" in line 6.  It is unclear whether claim 2

*alert* is referring to claim 1 *alert* or a different *alert*. Applicant may overcome the

Application/Control Number: 14/629,347                                           Page 5
Art Unit: 2684

rejections by amending the claim to clarify which *alert* is being referenced. Appropriate

correction is required.

13.     Claim 8 recites the limitation "the interfaces" in line 1.  There is insufficient

antecedent basis for this limitation in the claim.

14.     Claims 9-12 recites the limitation "the identifier" in line 1, respectively.  There is

insufficient antecedent basis for this limitation in the claim.

15.     Claims 17-19 recites the limitation "the mobile device" in line 1, respectively.

There is insufficient antecedent basis for this limitation in the claim.

16.     Claims 22 and 23 recites the limitation "identifiers" in line 1, respectively.  It is

unclear whether claim 22 *identifiers* are referring to claim 1 *identifiers* or different

*identifiers*. Applicant may overcome the rejections by amending the claim to recite --the

received identifiers--. Appropriate correction is required.

17.     Claim 22 recites the limitation "an alert" in line 2.  It is unclear whether claim 22

*alert* is referring to claim 1 *alert*, claim 2 *alert* or a different *alert*. Applicant may

overcome the rejections by amending the claim to clarify which *alert* is being

referenced. Appropriate correction is required.

Application/Control Number: 14/629,347                                    Page 6
Art Unit: 2684

18.    Claim 23 recites the limitation "The system of claim 22, where identifiers

comprise a sensor identifier" in line 1.  It appears the claim is incomplete. Appropriate

correction is required.


## *Claim Rejections - 35 USC § 101*

19.    35 U.S.C. 101 reads as follows:

> Whoever invents or discovers any new and useful process, machine, manufacture, or
> composition of matter, or any new and useful improvement thereof, may obtain a patent
> therefor, subject to the conditions and requirements of this title.

20.    Claims 2-23 are rejected under 35 U.S.C. 101 because the claimed invention is

directed to a judicial exception (i.e., a law of nature, a natural phenomenon, or an

abstract idea) without significantly more.

Claim(s) 2-23 are directed to comparing identifiers and location information with a

group's zone and event to determine whether to send out a group alert which is a

judicial exception.  The claim(s) does/do not include additional elements that are

sufficient to amount to significantly more than the judicial exception because the

generically recited computer elements do not add a meaningful limitation to the abstract

idea because they would be routine in any computer implementation. For example, the

server only performs generic computer functions of receiving, comparing, and

transmitting information. Generic computers performing generic computer functions,

alone, do not amount to significantly more than the abstract idea.

Application/Control Number: 14/629,347                                    Page 7
Art Unit: 2684

### *Claim Rejections - 35 USC § 103*

21.     The following is a quotation of 35 U.S.C. 103 which forms the basis for all

obviousness rejections set forth in this Office action:

> A patent for a claimed invention may not be obtained, notwithstanding that the claimed
> invention is not identically disclosed as set forth in section 102 of this title, if the differences
> between the claimed invention and the prior art are such that the claimed invention as a whole
> would have been obvious before the effective filing date of the claimed invention to a person
> having ordinary skill in the art to which the claimed invention pertains.  Patentability shall not
> be negated by the manner in which the invention was made.

22.     Claims 2-17 and 20-22 are rejected under 35 U.S.C. 103 as being unpatentable

over Cao (Pub. No.: US 2003/0020623 A1) in view of Blass (Pub. No.: US

2006/0058948 A1).

        1) In regard to claim 2, Cao discloses the claimed location tracking system (fig. 2:

10) comprising:

one or more servers (fig. 2: 400) capable of receiving identifiers and location

information for a plurality of mobile devices (Cao ¶0040 discloses the client devices

communicate their identification and location to the servers; see also ¶0046);

the one or more servers configured to:

        store information for an administrator associated with a group of multiple

mobile devices (Cao ¶0068 discloses an administrator is associated with a

group);

        authorize the administrator to add a mobile device to the group (Cao

¶0068 discloses an administrator may perform changes with regards to wireless

modules);

Application/Control Number: 14/629,347                                          Page 8
Art Unit: 2684

authorize the administrator to control conveyance of information regarding the group (Cao ¶0056 discloses the profile database contains proximity range and thresholds; ¶0068 discloses the administrator may manage this information);

receive identifiers and location information for the multiple mobile devices in the group (Cao ¶0051 discloses the group location server receives location information of the wireless modules; hence, it is clear each location received is accompanied by identification information associated with the wireless module which allows the server to determine which module location has been received); and

cause the group's alert to be sent (Cao ¶0051 discloses an alert is transmitted based on distance between the two devices).

Cao does not explicitly disclose the system provide one or more interfaces for setting a zone, an event, and an alert for the group, receive a request to set a zone for the group, the zone having a boundary that is independent of where the group's mobile devices are located, receive a request to set an event for the group, receive a request to set an alert for the group, the request identifying a recipient of the alert, store the group's zone, event and alert in one or more databases, and compare the identifiers and location information with the group's zone and event to determine whether to send the group's alert.

Cao discloses storing information on a server and the server receives information from a plurality of devices and providing an alert to those devices based on a parameter

Application/Control Number: 14/629,347                                    Page 9
Art Unit: 2684

(see above rejection). However, Blass discloses it has been known for a server to

provide a user interface for setting a zone, an event, and an alert for a group (Blass fig.

6.1). Blass goes on to disclose the server may receive a request to set a zone for the

group, the zone having a boundary that is independent of where the group's mobile

devices are located (Blass fig. 6.1: Location), receive a request to set an event for the

group (Blass fig. 6.1: Reminder distance), and receive a request to set an alert for the

group, the request identifying a recipient of the alert (fig. 6.1: Task and ¶0105 discloses

task may be assigned to a specific group member). Blass discloses the server may

store the group's zone, event and alert in one or more databases (¶0028), and compare

the identifiers and location information with the group's zone and event to determine

whether to send the group's alert (¶0070).

Therefore, it would have been obvious to one of ordinary skill in the art at the

time the claimed invention was made to allow the server of Cao to provide an interface

to receive parameter data and the ability to receive the parameter data, as taught by

Blass.

One skilled in the art would be motivated to modify Cao as described above in

order to use a known technique which would allow a user of the system the ability to

make changes to the system.

2) In regard to claim 3 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, the one or more servers configured to:

Application/Control Number: 14/629,347                                    Page 10
Art Unit: 2684

  receive a request to set a second zone for the group (Blass ¶0028, ¶0056,

and ¶0083 disclose a list of task are stored in the database; hence, there will be

a second location associated with a second task);

  receive a request to set a second event for the group (Blass ¶0028,

¶0056, and ¶0083 disclose a list of task are stored in the database; hence, there

will be as second reminder distance associated with a second task);

  store the group's second zone and second event in the database (Blass

¶0083); and

  compare the mobile device's location information with the group's second

zone and second event to determine whether to send an alert (Blass ¶0070).


  3) In regard to claim 4 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the one or more interfaces are user interfaces (Blass

¶0048).


  4) In regard to claim 5 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the one or more interfaces comprise an interface for

adding a mobile device to the group (Cao ¶0068 and Blass ¶0114).


  5) In regard to claim 6 (dependent on claim 4), Cao and Blass further disclose

the system of claim 4, where the one or more user interfaces comprise a user interface

for adding the mobile device to the group (Cao ¶0068 and Blass ¶0114).

Application/Control Number: 14/629,347                                              Page 11
Art Unit: 2684

6) In regard to claim 7 (dependent on claim 4), Cao and Blass further disclose
the system of claim 4, where the one or more servers control access to the one or more
user interfaces for adding a mobile device to the group (Cao ¶0039).

7) In regard to claim 8 (dependent on claim 2), Cao and Blass further disclose
the system of claim 2, where the one or more servers control access to the interfaces
(Cao ¶0039).

8) In regard to claim 9 (dependent on claim 2), Cao and Blass further disclose
the system of claim 2, where the identifier is a serial number (Cao ¶0083 discloses user
identification is used to identify relevant users for a particular event; thus, it would be
obvious to use a serial number in order to use a distinct userid which would allow the
system to determine one user from another).

9) In regard to claim 10 (dependent on claim 2), Cao and Blass further disclose
the system of claim 2, where the identifier is an email address (Cao ¶0083 discloses
user identification is used to identify relevant users for a particular event; thus, it would
be obvious to use an email address in order to use a distinct userid which would allow
the system to determine one user from another).

Application/Control Number: 14/629,347                                    Page 12
Art Unit: 2684

   10) In regard to claim 11 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the identifier is a phone number (Cao ¶0083 discloses

user identification is used to identify relevant users for a particular event; thus, it would

be obvious to use a phone number in order to use a distinct userid which would allow

the system to determine one user from another).


   11) In regard to claim 12 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the identifier is a name (Cao ¶0083 discloses user

identification is used to identify relevant users for a particular event; thus, it would be

obvious to use a name in order to use a distinct userid which would allow the system to

determine one user from another).


   12) In regard to claim 13 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the alert is an email (Cao ¶0066 discloses email).


   13) In regard to claim 14 (dependent on claim 2), Cao and Blass further disclose

the system of claim 2, where the alert is a text message (Cao ¶0066 discloses the

notification may be sent via email, fax, pager, phone call, or another suitable technique

of choice; hence, it is clear to one of ordinary skill in the art a text message is an

alternative suitable technique of choice; see also Blass ¶0063).

Application/Control Number: 14/629,347                                       Page 13
Art Unit: 2684

14) In regard to claim 15 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where the alert is a device notification (Cao ¶0066 discloses pager).

15) In regard to claim 16 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where the alert is phone call (Cao ¶0066 discloses phone call).

16) In regard to claim 17 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where the location information of the mobile device is determined using GPS (Cao ¶0020).

17) In regard to claim 20 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where the one or more servers sends the alert (Cao ¶0051).

18) In regard to claim 21 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where the one or more servers cause another server to send the alert (Cao fig. 1 and ¶0040).

19) In regard to claim 22 (dependent on claim 2), Cao and Blass further disclose the system of claim 2, where identifiers comprise a zone identifier and an event identifier that cause the one or more servers to send an alert (Blass fig. 6.1 shows the zone and event identifiers will be different).

Application/Control Number: 14/629,347                                      Page 14
Art Unit: 2684

23.      Claims 18 and 19 are rejected under 35 U.S.C. 103 as being unpatentable over
Cao (Pub. No.: US 2003/0020623 A1) in view of Blass (Pub. No.: US 2006/0058948 A1)
and further in view of Applicant Admitted Prior Art (AAPA).

         1) In regard to claim 18 (dependent on claim 2), Cao and Blass disclose the
system of claim 2.

         Cao and Blass do not explicitly disclose the location information of the mobile
device is determined using RFID.

         However, applicant explicitly discloses in the Background of the Invention various
sources of information are available for determining the location of an object, such as
RFID (¶0002).

         Therefore, it would have been obvious to one of ordinary skill in the art at the
time the claimed invention was made to allow the system of Cao and Blass to determine
the location of an object using RFID, as taught by AAPA.

         One skilled in the art would be motivated to modify Cao and Blass as described
above in order to simply use a known alternative technique which allows an object to be
located.


         2) In regard to claim 19 (dependent on claim 2), Cao and Blass disclose the
system of claim 2.

         Cao and Blass do not explicitly disclose the location information of the mobile
device is determined using NFC.

Application/Control Number: 14/629,347                                      Page 15
Art Unit: 2684

However, applicant explicitly discloses in the Background of the Invention various

sources of information are available for determining the location of an object, such as

radars and a variety of other technologies that can be used to determine location

information pertaining to an object (¶0002).

Therefore, it would have been obvious to one of ordinary skill in the art at the

time the claimed invention was made to allow the system of Cao and Blass to determine

the location of an object using NFC, as taught by AAPA, since it has been known at the

time of the invention NFC is one of the technologies which can be used to determine the

location of an object.

One skilled in the art would be motivated to modify Cao and Blass as described

above in order to simply use a known alternative technique which allows an object to be

located.

24.     Claim 23 is rejected under 35 U.S.C. 103 as being unpatentable over Cao (Pub.

No.: US 2003/0020623 A1) in view of Blass (Pub. No.: US 2006/0058948 A1) and

further in view of Elliott (Pat. No.: US 6,509,830 B1).

1) In regard to claim 23 (dependent on claim 22), Cao and Blass disclose the

system of claim 22.

Cao and Blass do not explicitly disclose the identifiers comprise a sensor

identifier.

Application/Control Number: 14/629,347                                    Page 16
Art Unit: 2684

However, Elliott discloses it has been known for a tracking device to transmit
identification information back to a server which includes a sensor identifier (col. 5, lines
39-54).

Therefore, it would have been obvious to one of ordinary skill in the art at the
time the claimed invention was made to have the identifiers of Cao and Blass to include
a sensor identifier, as taught by Elliot.

One skilled in the art would be motivated to modify Cao and Blass as described
above in order to provide the server with additional information which would allow the
system to monitor conditions of the user and the environment.

### Response to Arguments

25.     Applicant's arguments with respect to the new claims, based solely on the
presentation of the new claims, have been considered but are moot because the
arguments do not apply to the combination of the references including new prior art
being used in the current new grounds of rejection for the newly added claims.

### Conclusion

26.     Any inquiry concerning this communication or earlier communications from the
examiner should be directed to CURTIS KING whose telephone number is (571)270-
5160.  The examiner can normally be reached on Mon-Thurs 7:30 - 6:00.

Application/Control Number: 14/629,347                                    Page 17
Art Unit: 2684

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Benjamin C. Lee can be reached on (571)272-2963.  The fax phone number

for the organization where this application or proceeding is assigned is 571-273-8300.

      Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free). If you would like assistance from a

USPTO Customer Service Representative or access to the automated information

system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/CURTIS KING/
Primary Examiner, Art Unit 2684