# EXHIBIT B-005

FILED IN OFFICE
JUN 27 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor Duncan; and others)

## MOTION TO QUASH SUBPOENAS

### I. INTRODUCTION

During the month of June, the Fulton County Special Purpose Grand Jury issued subpoenas to several Members of the General Assembly (hereinafter "witnesses").[1] The subpoenas require the attendance and testimony of the witnesses at the special purpose grand jury during the month of July.

The undersigned counsel acting in their limited capacity as Special Assistants Legislative Counsel, and for the reasons stated and based upon the authorities cited herein move the Court to enter an Order quashing the subpoenas or to provide alternative relief as requested herein.

The Georgia Constitution provides privilege and immunity protections to legislators and their staff:

---

[1] Lt. Governor Geoff Duncan is President of the Senate, not a Member, but the arguments apply equally to him.

1

"[t]he members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. ***No member [of the General Assembly] shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house.***" Ga. Const. art. III, § 4, ¶ 9 (emphasis added).

This motion raises issues concerning the separation of powers that is foundational to our government. As the Supreme Court has long recognized "it is the duty of each [branch] to zealously protect its function from invasion of the others." *McCutcheon v. Smith*, 199 Ga. 685, 690-691 (1945).[2] Based on the published reports of the Fulton DA's goal in issuing the subpoenas to members of the General Assembly, the witnesses who are seeking relief realistically are

---

[2] The Supreme Court explained that the Separation of Powers doctrine is a part of the structural foundation of state government created by the Georgia Constitution: "'The legislative, judicial and executive powers shall forever remain separate and distinct, and no person discharging the duties of one, shall, at the same time, exercise the functions of either of the others, except as herein provided.' [now found at Ga. Const. art 1, §2, ¶ III]. While the line of demarcation separating the legislative, judicial, and executive powers may sometimes be difficult to establish, and for this reason each of the three co-ordinate branches of government frequently invades the province of the others, it is nevertheless essential to the very foundation of our system of government that the mandate of the constitution be strictly enforced. The judicial branch doubtless invades the legislative field more frequently than does the legislative branch the judicial field, but it is the duty of each to zealously protect its function from invasion of the others." *Id.*

2

concerned about the scope of the grand jury's inquiry and the questions that will be posed to them.

The relief sought is straightforward: The Fulton County District Attorney's Office and the Special Purpose Grand Jury that has been convened in Fulton County (1) may not ask any Member of the General Assembly or staff to testify about matters that occurred in the witness's legislative capacity, including conversations a Member had with any other Member or staff; (2) may not ask any Member or staff to testify about the motivations of any Member regarding his or her legislative activities (including, for example, the motivations for questions posed during committee meetings, the motivation for convening committee hearings, or the motivation for allowing certain witnesses to testify, or any other facet of the Member's legislative activities); and (3) may not ask a Member to reveal any research the Member conducted (or staff conducted) including interviewing constituents, lobbyists, or other sources of information that relates to the legislative process.

## II. THE GEORGIA CONSTITUTION PROVIDES UNQUALIFIED PRIVILEGE AND IMMUNITY TO MEMBERS OF THE GENERAL ASSEMBLY AND THEIR STAFF

The Constitution grants unqualified legislative immunity to legislators and their staff for any conduct related to their activity as legislators, including participation in debates on the floor of the Senate or House; participation in legislative committee hearings and other meetings; conversations with staff and

other members of the General Assembly and their staff about pending legislative matters and all other activities that are part of the legislative responsibility of the legislator and staff. The privilege and immunity is enshrined in the Georgia Constitution and replicates the Speech and Debate Clause of the United States Constitution. Ga. Const. art. III, § 4, ¶ 9; *Village of N. Atlanta v. Cook*, 219 Ga. 316, 319-320 (1963) (addressing this constitutional provision and finding that it is similar to that in the United States Constitution regarding members of Congress;[3] and expressly holding that legislators may not be questioned about the motivations or intent in drafting legislation, or conducting legislative affairs); *Gravel v. United States*, 408 U.S. 606 (1972) (explaining scope of the Speech or Debate Clause in the United States Constitution, Art. I, § 6, cl. 1, as it applies to federal legislators and staff and outlining, *prior* to the appearance of the witness the allowable scope of any questioning of the witness); *Fletcher v. Peck*, 6 Cranch 87, 130, 3 L.Ed. 162 (It was not consonant with our scheme of government for a court to inquire into the motives of legislators, [this] has remained unquestioned); *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975) ("[O]nce it is determined that Members are acting within the 'legitimate legislative sphere' the Speech or Debate Clause is an absolute

---

[3] The Speech and Debate Clause is found in the U.S. Constitution, Article 1, § 6: "[F]or any Speech or Debate in either House, they [members] shall not be questioned in any other Place."

4

bar to interference."); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995) (the Speech or Debate Clause *prohibits compelled questioning* about legislative communications or legislative actions even if the Member is not named as a party in the lawsuit); *Rangel v. Boehner*, 785 F.3d 19 (D.C. Cir. 2015) (reviewing the history and purpose of the Speech or Debate Clause). The Constitution provides that a legislator and staff may not be compelled to disclose any communications that relate to the legislative responsibilities of the legislator and the staff member. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524 (9th Cir. 1983) (legislator may not be questioned about matters to which the privilege applies).

Thus, there are two separate components of the constitutional provision:

The constitutional provision operates to: (1) prohibit civil suits and criminal prosecutions against Members of the General Assembly (and their staff) for their legislative activities; and (2) shield Members of the General Assembly (and their staff) from appearing in any forum outside of the General Assembly to answer questions or to produce documents relating to their legislative activities, including, but not limited to, their motivations for taking certain actions or communications related thereto.[4]

---

[4] In civil matters the federal courts recognize that legislative immunity *completely bars* plaintiffs from seeking evidence from legislators (even non-parties) on *any* aspect of the legislative process. *Roma Outdoor Creations, Inc. v. City of Cumming*, 2008 WL 11411396, at *3 (N.D. Ga. Sept. 18, 2008) (protecting city mayor from a deposition); *Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 2009 WL

## III. THE CONSTITUTIONAL PRIVILEGE AND IMMUNITY CLAUSE SERVES TWO FUNCTIONS: FACILITATING THE LEGISLATIVE PROCESS AND PROTECTING THE SEPARATION OF POWERS

### A. PRIVILEGED COMMUNICATIONS

The importance of both legislative immunity and legislative privilege cannot be overstated: These provisions enable legislators and their staff to communicate with one another free from the fear that their communications will later be reviewed or questioned by another branch of the government or by any private party in the course of litigation. *See United States v. Brewster*, 408 U.S. 501, 524 (1972). Legislators must be permitted to talk to one another – perhaps even across the proverbial "aisle" – without concern that efforts to accommodate, or compromise, will be exposed to the public. Bad ideas need to be discussed and rejected; good ideas should be promoted. Legislators will acquire information from a variety of sources to formulate a proper legislative solution to a perceived problem, or determine that no legislative action is necessary or possible. All these communications should be accomplished without fear that the public and others – including other branches of government – are entitled to examine or question every step along the way as the (again, "proverbial") sausage is made.

---

10697495, at *2 (N.D. Ga. Jan. 29, 2009) (protecting "city council members and mayors from having to attend depositions seeking to question them about their role in the passage of legislation").

The privilege also applies beyond the limited scope of communications between legislators, or between legislators and a staff member. Additionally, the privilege applies to a legislator's source of information if the information relates to a legislative investigation or the formulation of legislation. *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 530 (9th Cir. 1983) ("The possibility of public exposure could constrain these sources. It could deter constituents from candid communication with their legislative representatives and otherwise cause the loss of valuable information. Even more to the point, it would chill speech and debate on the floor. The Congressman might censor his remarks or forgo them entirely to protect the privacy of his sources, if he contemplated that he could be forced to reveal their identity in a lawsuit").

### B. SEPARATION OF POWERS

Legislative immunity and legislative privilege also delineate the proper boundaries ensuring the governmental separation of powers. The legislative branch of government is entitled to pursue its agenda without undue interference from the executive or judicial branches, just as the judicial branch pursues its mission without undue interference from the other branches of government. In *Kilbourn v. Thompson*, 103 U.S. 168, 203-04 (1880), the Supreme Court explained the importance of the legislative privileges and immunity, citing the language of an earlier 19th Century Massachusetts Supreme Court decision:

7

'These privileges are thus secured, not with the intention of protecting the members against prosecutions for their own benefit, but to support the rights of the people, by enabling their representatives to execute the functions of their office without fear of prosecutions, civil or criminal. I, therefore, think that the article ought not to be construed strictly, but liberally, that the full design of it may be answered. I will not confine it to delivering an opinion, uttering a speech, or haranguing in debate, but will extend it to the giving of a vote, to the making of a written report, and to every other act resulting from the nature and in the execution of the office. And I would define the article as securing to every member exemption from prosecution for everything said or done by him as a representative, in the exercise of the functions of that office, without inquiring whether the exercise was regular, according to the rules of the House, or irregular and against their rules. I do not confine the member to his place in the House; and I am satisfied that there are cases in which he is entitled to this privilege when not within the walls of the representatives' chamber.'

103 U.S. at 203–04 (1880) (quoting *Coffin v. Coffin*, 4 Mass. 1 (1808)). *See also Brewster*, 408 U.S. at 524 ("[T]he purpose of the Speech or Debate Clause is to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process."); *Powell v. McCormack*, 395 U.S. 486, 503 (1969) (noting that legislative immunity "insures that legislators are free to represent the interests of their constituents without fear that they will later be called to task in the courts for that representation").

Imagine, by analogy, if a grand jury (or for that matter, a legislative committee), could summon judges to answer why a judicial decision was reached in a certain way (for example, perhaps the grand jury will summon a Superior Court Judge to inquire why the Judge ruled one way or another regarding a Motion to Quash a subpoena), or summon an appellate judge and compel the judge to reveal

the discussions that were held during the appellate court's conference prior to issuing a decision, or demand to know what law review articles the judge read or considered prior to reaching a decision. Permitting the executive branch to question legislators about their conversations or their motivations is equally disruptive of the functioning of the legislative branch of government.

We anticipate the District Attorney and her assistants will decline to provide the attorneys representing these witnesses any preview of the questions that will be posed to the witness during his grand jury appearance. Pursuant to Ga. Const. art. III, § 4, ¶ 9, there are undeniably numerous topics that are within the scope of the legislative immunity and legislative privilege and may not be the subject of any inquiry. On the other hand, there are questions the District Attorney may pose to the witness that are entirely unrelated to his legislative duties.

### IV. THIS COURT SHOULD SET FORTH THE GUIDELINES FOR QUESTIONING OF MEMBERS PRIOR TO THE MEMBERS' APPEARANCE

Because counsel has been provided no preview and because counsel may not appear in the grand jury to interpose any objection, the prudent course is to inquire into the scope of the intended questioning of the witness and to set forth the boundaries. In addition, the District Attorney should be advised that the witness will be permitted to invoke privilege and to assert his immunity and to suspend the

questioning to consult with counsel outside the grand jury room as often as necessary to protect the privilege and to seek advice about the propriety of any topic of inquiry.

In *United States v. Swindall*, 971 F.2d 1531, 1547 (11th Cir. 1992), the Eleventh Circuit reversed the conviction of a Georgia Congressman on certain counts based on the government's improper reliance on evidence presented to the grand jury, relating to the the Congressman's legislative activities. The Eleventh Circuit's description of the purpose of the Speech and Debate Clause applies in this case:

> The central role of the Speech or Debate Clause [is] to prevent intimidation of legislators by the Executive and accountability before a possibly hostile judiciary." Gravel v. United States, 408 U.S. 606, 617, 92 S. Ct. 2614, 2623, 33 L. Ed. 2d 583 (1972) (citing Johnson, 383 U.S. at 181, 86 S. Ct.at 755).
>
> The Speech or Debate Clause "at the very least protects [a member of Congress] from criminal or civil liability and from questioning elsewhere than in [Congress]." Gravel, 408 U.S.at 2615, 92 S. Ct. at 2622. \*\*\*
>
> The clause is read broadly to effectuate its purposes. See Eastland v. United States Servicemen's Fund, 421 U.S. 491, 501, 95 S. Ct. 1813, 1820, 44 L. Ed. 2d 324 (1975). Legislative activities covered by the privilege include issuing committee reports and holding hearings, see Doe v. McMillan, 412 U.S. 306, 93 S. Ct. 2018, 36 L. Ed. 2d 912 (1973), as well as "*those things generally said or done in the House or the Senate in the performance of official duties.*" United States v. Brewster, 408 U.S. 501, 512, 92 S. Ct. 2531, 2537, 33 L. Ed. 2d 507 (1972) (emphasis added]).

Id. 1544. The Court reversed Swindall's conviction based on the improper use of the evidence in presenting the case to the grand jury: "Invocation of the constitutional protection at a later stage cannot undo the damage. If it is to serve its

purpose, the shield must be raised at the beginning." The Court went on to find that "[w]hen a member is improperly questioned, however, the violation occurs automatically. 'It is the very act of questioning that triggers the protection of the Speech or Debate Clause.'" *Id.* at 1549 *quoting In re Grand Jury (Intervenor "A"),* 587 F.2d 589, 598 (3d Cir. 1978).

For these reasons, the Court should set this matter down for oral argument[5] to consider the propriety of any topic of inquiry that the District Attorney intends to pursue with a Member or staff of the Georgia General Assembly. The alternative would require this court to evaluate all questions to all Members who have been subpoenaed throughout the course of each Members' testimony over the following weeks or months.

Setting ground rules in advance, as the Supreme Court did in *Gravel*, is the efficient method of evaluating the scope and breadth of the privileges and immunities enjoyed by the Members and staff.

---

[5] The court should also consider, given the nature of the inquiry, whether certain communications are privileged (and particularly in the context of a grand jury proceeding) and should be conducted in closed session and not open to the public, just as the grand jury proceedings are secret and not open to the public. If the Court intends to hear the specifics of privileged communications, the inquiry should be conducted *in camera. United States v. Zolin*, 491 U.S. 554 (1989) (when attorney-client privilege is invoked, inquiry into the specifics of the communication should be conducted *in camera).*

For the foregoing reasons, the witnesses urge the Court to enter an Order holding that Legislative Immunity and Privilege bars the DA from demanding the appearance of any Member at the Grand Jury to respond to questions relating to the Member's legislative duties and holding that the DA may not ask any witness to reveal any communications involving the Member and any other person relating to the Member's legislative duties.

RESPECTFULLY SUBMITTED,

GARLAND, SAMUEL & LOEB, P.C.

*/s/ Donald F. Samuel*
Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

*/s/ Amanda Clark Palmer*
Amanda Clark Palmer, Ga. Bar #130608
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com
aclark@gsllaw.com

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor Duncan; and others)

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **MOTION TO QUASH SUBPOENAS** upon the following counsel this date by depositing a copy of same in the United States mail, first class postage prepaid, and properly addressed as follows:

> Fani T. Willis, DA
> Fulton County District Attorney's Office
> Lewis Slaton Courthouse, Thid Floor
> 136 Pryor Street, S.W.
> Atlanta, Georgia 30305

This the 27th day of June, 2022.

RESPECTFULLY SUBMITTED,
GARLAND, SAMUEL & LOEB, P.C.

*/s/ Donald F. Samuel*
Donald F. Samuel, Ga. Bar #624475
Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com