# EXHIBIT B-045



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

IN RE 2 MAY 2022 SPECIAL PURPOSE
GRAND JURY

2022-EX-000024

## ORDER DISQUALIFYING DISTRICT ATTORNEY'S OFFICE

On 20 January 2022, the District Attorney of Fulton County petitioned the Chief

Judge of the Superior Court of Fulton County to convene the Superior Court bench to

consider approving the District Attorney's request for impaneling a special purpose grand

jury to investigate possible criminal interference in the November 2020 general election

in Georgia. On 24 January 2022, the Chief Judge, having received a majority of the twenty

judges' assent, issued an Order authorizing the special purpose grand jury. Among the

various instances of possible electoral interference this body would be investigating was

the decision by State Republican party officials to draft an alternate slate of Presidential

electors -- despite the vote count indicating their candidate had lost by thousands of votes.

One of the more prominent persons who chose to participate in this scheme was State

Senator Burt Jones.

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June

2022 it began receiving evidence.[1] The District Attorney serves as the "legal advisor" to

the grand jury; she and her team of prosecutors also largely shape the grand jury's

investigation by subpoenaing witnesses and leading their questioning. As forecast, the

District Attorney -- and thus the grand jury -- began to investigate the alternate electors

---

[1] Notably, the District Attorney explained her pause in initiating the special purpose grand jury's investigative activity by referencing the 24 May 2022 primary elections in Georgia, indicating an awareness that her work with the grand jury could have an impact on electoral outcomes.

1

stratagem. The District Attorney has issued subpoenas to at least twelve of the alternate electors, including one to Senator Burt Jones, who is the Republican candidate for Lieutenant Governor in the upcoming 2022 general election.

Senator Jones has filed a motion to disqualify the District Attorney and her office from further investigation into his connection to the apparent efforts to interfere with or otherwise undermine the outcome of the 2020 general election. Eleven other alternate electors have jointly filed a motion to quash their grand jury subpoenas, asserting their Fifth Amendment privilege against compulsory incrimination. Senator Jones subsequently joined in his fellow electors' motion and they adopted his. On 21 July 2022, the Court held a hearing on these motions. Based on the arguments and evidence presented, and a review of relevant legal authorities, the Court GRANTS Senator Jones's motion to disqualify the District Attorney and her office -- as to Senator Jones only. The Court DENIES the motion to disqualify as to the other eleven alternate electors and also DENIES the motion to quash as to those eleven.[2]

## DISQUALIFICATION

On 24 May 2022, Senator Jones won outright the Republican primary for Lieutenant Governor, earning over 50% of the vote.[3] On the Democratic side, a runoff was necessary, as Kwanza Hall, the top vote getter, secured only 30% of the vote. Trailing him with 18% of the vote was the second-place finisher, Charlie Bailey. Hall and Bailey

---

[2] Given the Court's ruling on Senator Jones's motion to disqualify, his adopted motion to quash is moot, as he is no longer a permissible subject (or target or object) of *this* special purpose grand jury's investigation and so may not be compelled to appear before the grand jury. As discussed below, this prohibition does not mean the grand jury cannot receive evidence about Senator Jones's involvement in efforts to undo legitimate electoral results; rather, such evidence simply may not come Senator Jones and he may not be included in any final recommendations from the grand jury.

[3] All 2022 state primary election information for the lieutenant governor's race is taken from https://ballotpedia.org/Georgia_lieutenant_gubernatorial_election,_2022.

2

stood for a run-off election on 21 June 2022. Bailey turned the tide and triumphed; he now faces Senator Jones in the 8 November 2022 general election.

On 14 June 2022, well after the grand jury had begun receiving evidence from witnesses called and examined by the District Attorney's team of prosecutors, the District Attorney hosted and headlined a fundraiser for Bailey. By this time, media coverage of the grand jury proceedings was national and non-stop and the District Attorney was the very public face of those proceedings. She also was one of the faces on the Bailey fundraiser announcement: it prominently featured the District Attorney's name, photo, and title and was widely shared on Bailey's campaign's social media outlets. The fundraiser appears to have been a success, earning Bailey's campaign thousands of dollars. It is important to note that, as counsel for the District Attorney rightly pointed out at the hearing on the motion to disqualify, the fundraiser was entitled a "Runoff Fundraiser" and occurred when Bailey was battling Kwanza Hall for the Democratic nomination. But more relevant -- and harmful -- to the integrity of the grand jury investigation is that the die was already cast on the other side of the political divide: whoever won the Bailey-Hall runoff would face Senator Jones. Thus, the District Attorney pledged her name, likeness, and office to Bailey as her candidate of choice at a time when, if Bailey were successful (which he was), he would face Senator Jones.[4]

---

[4] The District Attorney also, as a private citizen and in her personal capacity only, donated to Bailey's campaign. Senator Jones points to this private donation as another basis for disqualification. Alone, that is an insufficient basis for disqualification. *See, e.g., Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 884 (2009) ("Not every campaign contribution by a litigant or attorney creates a probability of bias that requires ... recusal."); *Gude v. State*, 289 Ga. 46, 50 (2011) (same) (both cases involve judicial recusals, where rules are more stringent). However, it does add to the weight of the conflict created by the more extensive, direct, public, and job-related campaign work the District Attorney performed on behalf of candidate Bailey.

3

This choice -- which the District Attorney was within her rights as an elected official to make -- has consequences. She has bestowed her office's imprimatur upon Senator Jones's opponent. And since then, she has publicly (in her pleadings) labeled Senator Jones a "target" of the grand jury's investigation.[5] This scenario creates a plain -- and actual and untenable -- conflict.[6] Any decision the District Attorney makes about Senator Jones in connection with the grand jury investigation is necessarily infected by it. To label Jones a target or merely a subject, to subpoena him or instead allow him to proffer, to question him aggressively or mildly, to challenge or accept invocations of legislative privilege or assertions of Fifth Amendment privilege, to immunize or not -- each of these critical investigative decisions is different for him because of the District Attorney's actions taken on behalf of the Senator's electoral challenger. Perhaps the evidence shows that there should be a tighter, stricter focus on Senator Jones than on some of the other alternate electors.[7] Yet any effort to treat him differently -- even if justified -- will prompt

---

[5] The designation, borrowed from federal criminal practice, is a bit confusing in the context of this grand jury, which has no power to bring criminal charges against anyone. It is nonetheless a potent investigative signal that the District Attorney views Senator Jones (and the other alternate electors) as persons more closely connected to the alleged electoral improprieties than other witnesses who have come before the grand jury or who may yet do so.

[6] The Court appreciates the affidavit provided by Robert Smith, General Counsel for the Prosecuting Attorneys' Council of Georgia, on behalf of the District Attorney. His reliance on *Whitworth v. State*, 275 Ga. App. 79 (2005) and *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1247 (2nd Cir. 1979) is instructive but not persuasive. He is correct that a mere appearance of impropriety is generally not enough to support disqualification, except, as noted in *Nyquist*, in the "rarest of cases." This is one of those cases. But it is also a case where the conflict is actual and palpable, not speculative and remote.

[7] This is an entirely plausible scenario given the Senator's political experience and public responsibility. That is, if the District Attorney (or the grand jury) decides that participation in the alternate elector scheme constituted impermissible interference in the 2020 general election, someone of the Senator's public stature, influence, and presumed sophistication ought to be treated differently from an alternate elector who had no representative responsibility and who participated in the scheme merely out of partisan loyalty.

entirely reasonable concerns of politically motivated prosecution: is Senator Jones being singled out because of a desire to further assist the Bailey campaign?[8]

Of course, the actual answer does not matter.[9] It is the fact that concern about the District Attorney's partiality naturally, immediately, and reasonably arises in the minds of the public, the pundits, and -- most critically -- the subjects of the investigation that necessitates the disqualification. An investigation of this significance, garnering the public attention it necessarily does and touching so many political nerves in our society, cannot be burdened by legitimate doubts about the District Attorney's motives. The District Attorney does not have to be apolitical, but her investigations do. The Bailey fundraiser she sponsored -- in her official capacity -- makes that impossible when it comes to investigating Bailey's direct political opponent.[10]

The Court GRANTS Senator Jones's motion to disqualify the District Attorney and her office.[11] This District Attorney and her special prosecution team may no longer investigate Senator Jones in the following sense: they may not subpoena him (or seek to

---

[8] Candidate Bailey has wielded the District Attorney's investigation as a cudgel in his campaign against Jones. *See, e.g.,* https://www.ajc.com/politics/contrasts-on-voting-laws-and-ballot-access-define-georgia-candidates/7QT7XHSAGNGVXBNQPZ64AX56OU/ in which Bailey is quoted as saying "The only danger to safe and secure elections is people like Burt Jones, who come in and substitute their will for the will of the voters and try to overturn the election."

[9] Nor is it knowable, which is another reason to separate the District Attorney and her office from any investigation into Senator Jones. An "actual" conflict does not mean that Senator Jones has definitive proof that an investigative decision was made explicitly to benefit candidate Bailey. This rarely, if ever, occurs, absent wiretaps or leaked e-mails. The conflict is "actual" because *any* public criminal investigation into Senator Jones plainly benefits candidate Bailey's campaign, of which the District Attorney is an open, avid, and official supporter.

[10] Senator Jones also sought to disqualify Special Prosecutor Nathan Wade for a campaign donation he made to Charlie Bailey's earlier aborted campaign for Attorney General. As discussed above, a routine campaign contribution is not enough – and this one was to a different campaign altogether, with no connection to Senator Jones.

[11] When the elected District Attorney is disqualified, so, too, is her entre office. *McLaughlin v. Payne*, 295 Ga. 609, 613 (2014).

obtain any records from him via subpoena), they may not publicly categorize him as a subject or target (or anything else) of the grand jury's investigation, and they may not ask the grand jury to include any recommendations about him in their final report. This does not mean that the District Attorney cannot gather evidence about Senator Jones's involvement in efforts to interfere with or undermine the 2020 general election results. Her office may ask witnesses about the Senator's role in the various efforts the State Republican party undertook to call into question the legitimacy of the results of the election. What her office may *not* do is make use of any such evidence to develop a case against the Senator. That decision, as to whether any charges should be brought, and what they should be, will be left to a different prosecutor's office, as determined by the Attorney General.

The Court DENIES the motion to disqualify as adopted by the other eleven electors. There has been no showing that the District Attorney or any member of her prosecution team is impaired by a conflict of interest vis-à-vis any of these individuals. One of those eleven, Shawn Still, is running for the State Senate but he has offered no evidence that the District Attorney or anyone else from her office has materially supported either his campaign or the campaign of his opponent.[12]

---

[12] Counsel for the eleven also raised the specter of the District Attorney releasing the special purpose grand jury's final report on the eve of the November 2022 general election in an effort to advantage Democratic candidates over Republican ones. Apart from offering no basis for this claim beyond unsubstantiated hearsay, counsel's concern displays a misunderstanding of the investigative grand jury process. The grand jury will prepare a final report recommending action (or inaction). That report is released to the undersigned, who in turn passes it to the Chief Judge. Only after a majority of the Superior Court bench subsequently votes to dissolve the grand jury will the report be released to the District Attorney. O.C.G.A. § 15-12-101(b). The undersigned will not begin this dissolution process at or near the time of the 2022 general election, should the grand jury complete its work by then.

QUASHAL

The eleven other alternate electors have moved to quash their subpoenas on the basis of their collective, blanket assertion of their Fifth Amendment privilege. This group assertion came after the District Attorney upgraded their status from witness to target in late June 2022 (following several alternate electors' voluntary interviews with the District Attorney's team (and the Bailey fundraiser)). These eleven now characterize the subpoenas for their testimony as "unreasonable and oppressive." The Court disagrees. Counsel for the eleven presented several creative legal arguments concerning the possible (in)validity of future charges that might conceivably be brought against these alternate electors. While intriguing, such argumentation is premature. This grand jury has no authority to bring charges. *Kenerly v. State*, 311 Ga. App. 190 (2011). It is merely investigating who did what after the 2020 general election and developing a perspective about whether anyone's post-election actions merit criminal prosecution in Fulton County.

The eleven electors' conduct falls well within the reach of this broad charter. It is not unreasonable to seek their testimony and it is not oppressive to require an appearance by way of subpoena. Nothing about that process deprives the electors of their Fifth Amendment privilege, which they may freely assert *as applicable* when they appear before the grand jury.[13] Their subpoenas will not be quashed. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 258-59 (1988); *State v. Lampl*, 296 Ga. 892, 898-99

---

[13] Counsel for the eleven revealed at the 21 July 2022 hearing that her advice to her clients will be to assert privilege as to *any and every* question asked, even something as mundane as name and profession. While this strikes the Court as a rather expansive view of what might be self-incriminating, that determination can be made at the time of the electors' appearances. *See State v. Pauldo*, 309 Ga. 130, 135 (2020) (investigating authorities may ask basic biographical questions, even in the face of the assertion of Fifth Amendment rights).

(2015) (target of grand jury investigation may be compelled to appear before grand jury); O.C.G.A. § 24-5-506(a) (only persons charged with the commission of a criminal offense are not compellable to testify).

SO ORDERED this 25th day of July 2022.

Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit