# EXHIBIT B-077

```
1               IN THE SUPERIOR COURT OF FULTON COUNTY

2                          STATE OF GEORGIA

3

4   IN RE:                    )

5   SPECIAL PURPOSE GRAND JURY )

6                             ) CASE NUMBER: 2022-EX-00024

7

8                      2022-EX-00024

9

10        SPECIAL PURPOSE GRAND JURY MOTIONS TRANSCRIPT

11        Before the HONORABLE JUDGE ROBERT C.I MCBURNEY

12            on July 25, 2022, Atlanta, GA 30303

13

14  APPEARANCES:

15  FOR THE STATE:ADA NATHAN WADE

16  FOR THE STATE:ADA DONALD WAKEFORD

17  FOR THE STATE: ATTORNEY ANNA GREEN-CROSS

18  FOR SENATOR JONES: BILL DILLON & ANNA CLAPP

19  FOR THE JURORS: ATTORNEYS MS. PEARSON & MS. DEBORROUGH

20

21              HADASSAH J. DAVID, CVR, CCR

22                 #4857 8554 6837 1968

23               CERTIFIED COURT REPORTER

24            SUPERIOR COURT OF FULTON COUNTY

25             hadassah.david@fultoncountyga.gov

              HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                              1
```

FILED IN OFFICE
AUG 25 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

**PROCEEDINGS**

1

2    THE COURT:  Good afternoon.  Let's get on the record

3    in 2022-Ex-000024.  This is a special purpose Grand Jury.

4    It is about 2:00 o'clock on the 21st of July, and we are

5    going to work through, this afternoon, a couple of motions

6    that have been filed.  A motion filed on behalf of Senator

7    Jones seeking to disqualify the DA's office from handling

8    the case, the case that is Senator Jones and then a motion

9    to quash and disqualify, but to disqualify, I think, is

10   merely an adoption of Senator Jones' motion that was filed

11   on behalf of 11 of the --  for today we'll call them

12   alternate electors.

13       Those are the two motions I think we are covering.

14   The State has filed, the  District Attorney's Office has

15   filed, an opposition to the motion to disqualify.  I let

16   them know, because when I received the motion to quash

17   that they didn't need to file a written response motion

18   which is fine, and hopefully you will be able to address

19   it today.  It's a lot of moving parts.

20       We've got a lot of lawyers here, so I want to make

21   sure we get on the record who is here and who will be

22   speaking for the different parties.  Before we go any

23   further, though, Rule 22 wise.  There were some media

24   outlets that only reached out today to get the green

25   light.  If you were able to get equipment in here you are

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

2

1   free to use it, but I did not sign your Rule 22 today,

2   because the general Rule 22 is to be signed 24 hours in

3   advance, but you really only need the Rule 22 for purposes

4   of getting in the building with the big cameras, so if you

5   sought Rule 22 approval to record things while you're in

6   here and you've got a handheld device, you are welcome to

7   do that.

8       Going forward it's 24 hours in advance, and it would

9   really help if you could report back to your Rule 22

10  people, if you would designate more clearly on the Rule 22

11  forms what kind of equipment you want to bring in.  I am

12  all for having a pool feed rather than four big cameras in

13  here.  It gets a little crowded for you all, but I can't

14  tell because everyone who submits a Rule 22 checks

15  everything -- I want to bring in every kind of equipment

16  in.  I'm bringing in a drone.  I know you're not bringing

17  in a drone, but apparently for everyone bringing in the

18  big cameras we only need one, and like I said, I'm happy

19  to have a pool, but it's hard to tell.

20      With that, let's start with the State.  Who will be

21  handling -- it can be more than one person, but I just

22  don't want to omit anyone if I'm looking to the District

23  Attorney's Office for answers or responses to concerns

24  raised by some of these witnesses.  Who from the DA's

25  office or affiliated from the DA's office should I be

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

3

1    expected to hear from?

2         ATTORNEY GREEN-CROSS:  Good afternoon, Your Honor,

3    I'm Anna Green-Cross.  I'm here representing the District

4    Attorney's office on the motion to disqualify prosecutors.

5         THE COURT:  So if I have questions about quashal or

6    assertion of Fifth Amendment rights?

7         ADA WADE:  Good afternoon, Judge.  I'm Nathan Wade,

8    special prosecutor from the District Attorney's office as

9    well as Donald Wakeford.

10        THE COURT:  So Wade and Wakeford for Fifth Amendment

11   quashal and Green-Cross for the disqualification.

12        ATTORNEY GREEN-CROSS:  Yes.

13        THE COURT:  Okay, got it.  Thank you.  All right.  If

14   we pivot over to potential witnesses and counsel, Mr.

15   Dillon, good morning.  How are you?

16        ATTORNEY DILLON:  Good afternoon.  I'm fine, Judge.

17        THE COURT:  You are representing Senator Jones.  Is

18   there anyone else?  I don't want to ignore anyone.

19        ATTORNEY DILLON:  My associate Anna Clapp is also

20   here.

21        THE COURT:  Great.  Okay.  Clapp as in applause or

22   Platt as in . . .

23        ATTORNEY CLAPP:  Clapp as in applause, two P's.

24        THE COURT:  Got it.  Excellent, and then on behalf of

25   the 11 alternate electors, Ms. Pearson and Ms. Deborroughs

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

4

1    I see Ms. Deborroughs virtually.  She is appearing in

2    Newnan or even further away, but we greenlighted that

3    virtual appearance.  It's fine, and we've got Ms. Pearson

4    here.

5         ATTORNEY PEARSON:   You do, Your Honor.

6         THE COURT:  Okay.  Anyone else on behalf of your

7    clients or just the two of you?

8         ATTORNEY PEARSON:  No, Your Honor, just us.

9         THE COURT:  All right.  I want to start with a

10   question for either Mr. Dillon or Ms. Clapp, and that is

11   whether you are joining in the motion that Ms. Pearson

12   filed in which Fifth Amendment concerns are raised as

13   opposed to conflict issues?

14        ATTORNEY DILLON:  Yes, Your Honor.  Insofar as Ms.

15   Pearson's motion, I believe at page 7.  It raises the fact

16   that these witnesses who have received both subpoenas and

17   target letters should have their appearances waived.  We

18   join in that portion of her motion.

19        THE COURT:  What is the status of your client?  I

20   know he's received the subpoena, that is the only part

21   that's been disclosed to me.

22        ATTORNEY DILLON:  Well, in the government's response

23   to our motion, they actually point out that Senator Jones

24   received a target letter in this case.

25        THE COURT:  Okay.  Do you disagree with that or . . .

```
 1          ATTORNEY DILLON:  No, I do not.  It is an irrefutable
 2     fact at this point.  We publicly acknowledge that it is an
 3     irrefutable fact.
 4          THE COURT:  Okay, so my thought is that we talk about
 5     some of the Fifth Amendment concerns first because it may
 6     make moot for practical purposes the conflict concerns
 7     that you raise in your motion.  Let me simplify my thought
 8     process for you.  If in the end I determine that Senator
 9     Jones need not appear because of Fifth Amendment reasons,
10     I don't know we need to reach the question of
11     disqualification if that would be his only connection to
12     this grand jury.
13          This Grand Jury is not a Grand Jury that would be
14     voting on a bill of indictment.  It is a Grand Jury that
15     has been tasked with generating a report that would
16     contain in it, ideally, a recommendation to the District
17     Attorney as to whether she should pursue charges or not
18     and what those charges might look like, and any other
19     things that that Grand Jury wants to put in there other
20     than a true bill.
21          So the way the Fifth Amendment analysis plays out is
22     that I conclude that Senator Jones doesn't need to appear,
23     if they state his name or something, and we can work
24     through those logistics probably in a smaller group
25     setting.  Do you agree that we don't need to reach the
```

1    question of disqualification?

2       ATTORNEY DILLON:  No, Your Honor.  I do disagree.

3       THE COURT:  Okay.

4       ATTORNEY DILLON:  I think that the disqualification

5    issue is right, and I think that it has been exacerbated

6    by the media circus that's been generated out of the

7    Fulton County's DA's office in this case, and that the

8    harm to my client, Senator Jones, is that he's being drug

9    through the mud publicly as a subject of this special

10   Grand Jury.

11      THE COURT:  Well, apparently as a target, not a

12   subject.

13      ATTORNEY DILLON:  Well, I say a subject as someone

14   who has been affected by this special Grand Jury,

15   particularly as a target, but with the effort and focus

16   being that it's going to have an impact on the Lieutenant

17   Governor's race this fall.  And so if the DA's office has

18   a hand in it and they issue a report that says, Well,

19   we're going to recommend an indictment of Senator Jones,

20   it will have a direct impact on the election in November,

21   and that's been reported in the media numerous times.

22      THE COURT:  Okay.  So I'll correct a couple of things

23   for you.  One, and I may have misunderstood what you were

24   saying, but the District Attorney's Office is not offering

25   any report.  That would come from the grand jurors as

1   supervised by me.  I appreciate that the District Attorney

2   has fashioned herself as the legal adviser to the Grand

3   Jury, and that's an adaptation of the actual language of

4   the role that that office plays, but ultimately it's the

5   Grand Jury's report not the District Attorney's.

6       Second, and a concern we do need to cover today,

7   regardless of how we approach the disqualification piece

8   would be the timing of the release of the report.  Now, I

9   think that's something that everyone ought to leave here

10   today with a better understanding of how that will be

11   managed.

12       That is within my purview, and it was helpful to have

13   it brought to my attention that timelines could collide,

14   that the Grand Jury might complete Its work in October,

15   and that might not be the best time for Its work product

16   to be shared publicly in the way that many investigative

17   agencies, that's what the Grand Jury is an effect here,

18   they hold off on taking certain steps until an election

19   has passed with a few exceptions, and we need to see

20   what's going on with that report, if it's even ready by

21   then.

22       The Grand Jury is authorized to continue its work

23   through May 1 of next year, so I don't know that it's

24   right yet to worry about that other than to get a general

25   understanding that I wouldn't be a big fan of an October

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

8

1    surprise, so if we talk about when reports would be

2    released and we work through a Fifth Amendment analysis,

3    if that Fifth Amendment analysis is, in light of a target

4    letter, et. cetera, Senator Jones probably doesn't need to

5    -- and it's not my analysis yet, but if the end result of

6    that is that Senator Jones does not need to appear before

7    the Grand Jury, that it strikes me that the

8    disqualification piece is moot.

9         I don't know from what the office would be

10   disqualified if Senator Jones isn't being asked to do

11   anything between now and the release of the report other

12   than the timing of the report, which doesn't necessarily

13   tie into who is investigating.  If we were suddenly to

14   switch to the Lowndes County District Attorney's Office,

15   and they finished their work with the Grand Jury in

16   October, we'd be faced with that same chronological

17   challenge.

18        ATTORNEY DILLON:   We would, Your Honor, with the

19   exception of the issue that has to do with the press, and

20   the issue that has to do with the public favoring of my

21   client's opponent for Lieutenant Governor, Charlie Bailey,

22   and the the District Attorney in this case has raised

23   $32,000 for Charlie Bailey in the headliner that she

24   hosted for him in June.  Shortly thereafter, she issued my

25   client a target letter and then shortly after that, in

1    fact, two days ago when they filed their brief, that was

2    the first time that it was publicly known that Senator

3    Jones was a target of this Grand Jury investigation, so on

4    one side we have a public target, and on the other side we

5    have a headliner fundraiser raising $32,000, and we

6    contend that those two things create the appearance of

7    impropriety, that under the Rules of Ethics in the state

8    of Georgia this is prohibited conduct, and then with

9    regard to Senator Jones this investigation in Fulton

10    County should be complete at this point, that this

11    District Attorney's Office needs to be disqualified, and

12    perhaps some other district attorney can be appointed, and

13    in that case, Senator Jones would would be glad to

14    cooperate with that investigation, because he has

15    indicated and indicated early on that he was willing to

16    cooperate and give a statement and meet with their

17    investigators, and then two weeks later he gets a target

18    letter, and then six days after he gets that target

19    letter, and 'm getting ahead of myself.

20        THE COURT:  Yes, you are.  In fact, I'm going to cut

21    you off, because I simply wanted to know whether you

22    thought it was moot and you do not think it is.

23        ATTORNEY DILLON:  I do not think it is, Your Honor.

24    I think it is right at this point.

25        THE COURT:   Okay, and we may get to it.  I was

1   expecting a different answer, but I appreciate your
2   answer.  I still think we need to start with the Fifth
3   Amendment concerns that were brought to a head in
4   Ms. Peterson's motion, but what I want to do is start with
5   the State on that because your perspective with the
6   District Attorney's Office on that, because your
7   perspective may help me better navigate what to do, and
8   for folks in the room here representatives of the District
9   Attorney's Office and a lawyer for another witness, that
10  witness and I have already had some basic discussions
11  about how we might work through the assertion of Fifth
12  Amendment privilege in certain context, and so we will
13  probably build on that.
14       So if I'm referring to what we talked about
15  yesterday, that is what I mean in connection with that
16  situation.  Mr. Wade or Mr. Wakeford, what I would like to
17  hear from you on is is your overarching reaction to
18  Ms.Deborroughs and Ms. Pearson's motion as we discussed in
19  the past.  I don't know that there is a blanket, I don't
20  have to answer any questions that would work here, but
21  insofar as their 11 client's sole connection to the
22  investigation is their participation in the alternate
23  electors scheme, and that was going to be the focus of
24  99 percent of your questions, if that is determined to be
25  in light of some of the target news that's been shared,

1    something that is protected that they don't need to

2    respond to.  I'm not sure what the point would be in

3    bringing those folks in on a non-immunized status before

4    the Grand Jury, so help me work through that, please.

5        ADA WAKEFORD:  Yes, Your Honor.  I would begin by

6    pointing, Your Honor, to the case of State v. Lampl, that

7    is spelled L-A-M-P-L.  Your Honor, may be aware of this

8    case.

9        THE COURT:  Is that Clayton County --- yes?

10       ADA WAKEFORD:  I believe, I'm not sure of the

11   jurisdiction that it began, but it speaks very poignantly

12   to this issue.  Specifically what it says is, that "Under

13   Georgia law, the designation as a target without a formal

14   charge being leveled against an individual doesn't change

15   the ability to subpoena someone to appear before a special

16   purpose Grand Jury."

17       THE COURT:  Fair point, and a footnote may have been

18   dropped somewhere with something that was provided, but

19   that was not my question.  I don't think the word target

20   is as magical in State proceedings as it is in Federal

21   proceedings, but it certainly has caused the temperature

22   in the room to go up and antennas to go up everywhere, and

23   so whether you you call him target or you call him less of

24   a friend, we now have witnesses who are saying, "I'm not

25   comfortable answering those questions, I think I may be

1    facing criminal liability."

2        In other words, I assert my Fifth Amendment privilege

3    or protection, whatever you want to call it, and that's

4    what Ms. Pearson and Ms. Deborrough have done on behalf of

5    their 11 clients, so my question isn't doesn't target mean

6    you can't go any further.  You may want to think through

7    in the future labeling someone that and then hailing them

8    in because of how this is played out.

9        Let's just stick to the topics.  If my sole

10    connection to the investigation that you are conducting

11    with this Grand Jury is that I was one of the people who

12    agreed or was nominated, or however it happened to be an

13    alternate elector, you're going to ask me about that, and

14    I have a good-faith basis to believe my decision to agree

15    to be an alternate elector exposes me to potential

16    criminal liability, why shouldn't I be able to say I'm not

17    answering any of those questions in the context of a Grand

18    Jury?

19        ADA WAKEFORD:  I understand, Your Honor.  Thank you

20    for the clarification.  I would say that the 11

21    individuals identified in the motion are not all situated

22    in exactly the same place, so there may be commonality

23    between them, but there is going to need to be an

24    individual determination with regard to each of them.  The

25    level of involvement is necessarily individual, so what I

1   think would work is for an individual assessment to be

2   made in each case, since we undoubtedly have the ability

3   under the law under Lampl to ask the witnesses to appear,

4   then there would be ahead of time a discussion between the

5   parties with Your Honor's involvement need be, to discuss

6   areas of inquiry that may lead to an identification of

7   Fifth Amendment rights.

8        If that is the case, I believe we would be able to

9   work out a procedure where there is not a badgering of a

10  witness, but simply an ability for the special purpose

11  Grand Jury to walk up to an area of inquiry and be told

12  this is going to be foreclosed by the Fifth Amendment and

13  move on if there are other areas to pursue, so each them

14  will require, I believe an individual assessment.

15       THE COURT:  Are there any of the 11 – – I'm gonna

16  make it 12.  I'm going to include Senator Jones in the

17  group, so any of those 12 where the only topic of interest

18  is that witness's participation in the alternate elector

19  scheme.

20       ADA WAKEFORD:  The answer to that is no.

21       THE COURT:  Every one of them – – it sounds like it's

22  a very diverse group, and one of the concerns Ms.

23  Deborrough and Ms. Pearson had brought up was that some of

24  them are remote, some of them have trouble with mobility,

25  but you are saying all of them have some other potential

1    connection to the investigation or area of interest to the

2    investigation.

3        ADA WAKEFORD:  Standing in my place right now, Your

4    Honor, this is an investigative Grand Jury, so we're not

5    at the stage, you kmow approaching, say a trial, where I

6    can give a statement with the definiteness that you might

7    be seeking.  What I can tell you is, right now, can I say

8    unless there's only one thing that we can connect one of

9    these people to, then no, Your Honor.

10       THE COURT:  Okay, so just to flip it around to the

11   type of questions asked, you envision, or you and your

12   colleagues envision asking each of the 12, including

13   Senator Jones, questions beyond simply why did you decide

14   to be an alternate elector?  Tell me more about that.

15   There are other aspects of the 2020 general election that

16   you would be asking each of the 12 about.  Mr. Wade.

17       ADA WADE:  Yes, sir, Judge.  If I may, much like the

18   witness on yesterday, we have planned categories to touch,

19   and we understand per the Court's instruction, if we can

20   narrow down these buckets, ask the general question about

21   that particular bucket, let the witness assert, at that

22   point ask the witness if they plan to assert their Fifth

23   Amendment privilege to any question concerning that issue,

24   once they say yes, we move on.

25       THE COURT:  Sure.

         HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                    15

1        ADA WADE:  Not a barrage of like 50 questions where

2   they decide to assert, but just to be able to hit the

3   different buckets though and to answer the Court's

4   question directly, that, yes, sir, there are other areas

5   that we plan to attack.

6        THE COURT:  There's more than one bucket for each of

7   the 12 -- --

8        ADA WADE:  Yes,sir.

9        THE COURT:  --- Is what I'm hearing you say -- well,

10  then we would need to work through that.  That helps, I

11  appreciate that, and I think there is ample case law,

12  state and federal, that authorizes witnesses who say up

13  front that I'm going to assert the Fifth Amendment to

14  still be called before the Grand Jury to then assert it.

15       Bank of Nova Scotia from the US Supreme Court is the

16  earliest one I found where you sometimes need to have

17  those people get in front of the Grand Jury to actually

18  invoke, because they might not when put in that situation,

19  and then the investigators are not forced to rely on a

20  claim that they will, or to your point, Mr. Wakeford and

21  Mr. Wade, there may be areas that come up that aren't

22  properly covered by that protection.

23       I know we've been bouncing around a lot, but I think

24  it makes sense for me to hear now from Ms. Pearson or Ms.

25  Deborrough about the approach you've taken, which is my

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                              16

1    client shouldn't have to come in at all, and you may not

2    yet have been able to speak with Mr. Wade and his team to

3    know about these other buckets, to use his terms, but I

4    will just share with you in working with Mr. Wade and his

5    team yesterday and a different witness and lawyer, there

6    are other areas, they may be minor, but they're still

7    areas where even the lawyer agreed that my client doesn't

8    have the Fifth Amendment right not to say, this is my job.

9        I've had this job for 10 years, and then they move on

10   to what did you have to do with the electors scheme Fifth

11   Amendment, and then they stop.  They don't go any further

12   with that topic, but to the District Attorney's offices

13   point it's a broad waterfront, and you have seized upon

14   maybe the big bright lighthouse, vis-a-vis your client's,

15   but there could be some (unintelligible) buildings at that

16   that lighthouse that it's appropriate for questions to be

17   asked and more importantly answered.

18       So tell me why you think that instead the answers

19   should be, and I mean you, go to the extreme, it's

20   quashed, they shouldn't even have to show up to give

21   (unintelligible)

22       ATTORNEY PEARSON:  Correct, Your Honor.  I think the

23   first place to start is, just to correct a few things or

24   to clarify a few things, from my understanding of what you

25   just said, all of my clients are identically situated from

1    a legal perspective.  They were all witnesses, they were

2    all converted to targets, and there has been no

3    differentiation from the DA's office between that.

4        THE COURT:  Let me interrupt you for a second.  So,

5    you are saying all 11 of them have received target letters

6    or some communication from the District Attorney's Office

7    that uses the "T" word?

8        ATTORNEY PEARSON:  Yes.

9        THE COURT:  Whatever that may mean in the State

10   context, but just because two of your clients have, you

11   are saying they are similarly situated, it's just a matter

12   of time for the postman to get there.

13       ATTORNEY PEARSON:  I have 11 target letters.

14       THE COURT:  Okay.  So in that way they are similarly

15   situated, but it sounds like they are, and you note it in

16   your own motion, they are also very differently situated.

17   You have, and I apologize if I have the title wrong, Mr.

18   Schaffer as the chair of the Republican Party in Georgia,

19   A very, very, different role in connection with the

20   affairs of election then.   I don't remember who the

21   elderly individual difficulty with mobility and whatnot.

22   I've never heard of the person.

23       It is a differently situated individual once you get

24   outside of that lighthouse of, I was an alternate elector.

25       ATTORNEY PEARSON:  That's true, Your Honor, but I

             HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                            18

1    don't know what situation you dealt with yesterday or what

2    that person's role was or who they were, but in my

3    client's situation I genuinely cannot think of a single

4    topic or question that they could be asked that would not

5    be either under the Fifth Amendment or a link in the

6    chain.

7        What's your name under these charges that they have

8    said they are going to do by signing your name, by saying

9    who you are, by putting your signature on something could

10   arguably be, as ridiculous as that sounds, an

11   incriminating fact, so I don't think my clients are

12   similarly situated to these other witnesses that you are

13   dealing with, anything they could be asked.

14       What's your name?  That is incriminating.  What's

15   your job?  That could lead to other political links in the

16   chain, that could lead to e-mails where they talked about

17   various issues.  It could lead to anything.  I don't see

18   any topic that could actually be relevant to the Grand

19   Jury's inquiry, upon which my clients could not invoke

20   their federal, their state, or constitutional rights, and

21   their statutory rights, and I think absence of proffer

22   that there is such a subject that you would agree with

23   that is not incriminating.

24       Eleven people should not be essentially frogmarched

25   in front of the cameras and the Grand Jury to be forced to

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

19

1     invoke their rights, and I echo Mr. Dillon's concerns

2     about publicity, you know, we're not use to that.  We are

3     federal prosecutors, there is Grand Jury secrecy.  We

4     don't have that here, but the damage is being done and has

5     already been done to all of my 11 clients, and I assume to

6     Senator Jones, is affected, and it's only going to be

7     exacerbated.

8          I mean the threats that they're getting, the hate

9     mail that they're getting, the hate e-mails they're

10    getting here, Your Honor, for doing, in our view nothing

11    wrong.  They are caught up in ambiguous circumstances,

12    which gives them the right under the Supreme Court

13    precedent to invoke their privileges.

14         THE COURT:  We're not going to get into whether they

15    should be surprised or not that they have become the

16    subject of negative attention, based on the decisions

17    they've made, but I'm wondering.  You have now tried to

18    put your arm around Mr. Dillon's client, who is in an

19    actively contested election.  I am not aware of any of

20    your clients being in that position as well, but again, I

21    don't recognize all of their names.

22         ATTORNEY PEARSON:  Your Honor, Mr. Still, Mr. Sean

23    Still is a candidate for senate office, and in addition,

24    Mr. Schafer is the chairman of the GOP, and he is involved

25    in all of these, and many of these people are involved in

```
1     the electoral arm of the Georgia Republican Party for many
2     of these races, so while and I think the point is, Your
3     Honor, so while Mr. Jones is involved in his race, and Mr.
4     Still is involved in his race, a lot of these people are
5     involved in all of these races, and I think the point is,
6     Your Honor, AVA regulations with Georgia Professional
7     Responsibility Rules cite favorably with special
8     prosecutor rules.
9         They specifically say a target should not be put in a
10    Grand Jury unless they are immunized, and here you know
11    they can't be immunized because they're federal, and under
12    the statute you can't immunize against a federal, so here
13    the burden really should be on them to come forward with
14    some bucket, as you call it, that they can show we can't
15    invoke on it.  If we can invoke on all of the buckets they
16    should not be dragged down here in front of the Grand
17    Jury, Your Honor.
18        THE COURT:  Okay, do I need to check with Ms.
19    Debrrorogh as well, or do you guys both have an agreement
20    that she will speak up if there's something she wants to
21    add?
22        ATTORNEY PEARSON:  Your Honor, you know Ms.
23    Deborrough.  If she's got something to add she certainly
24    will, but I think I covered it.
25        THE COURT:  All right.  Mr. Wakeford or Mr. Wade,
           HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                        21
```

1    talk to me a little bit about the last, second to last

2    point I heard from Ms. Pearson about an inability to

3    immunize because, of course, one ticket you can punch that

4    you may not want to punch for anyone, but you may for some

5    of the alternate electors whose sole connection or primary

6    connection to what you're investigating may be the

7    alternate elector situation, would be to let them know

8    that nothing you say during a Grand Jury can be used

9    against you.

10        If you put that in writing then you magically have

11   some compulsory powers, I do, that did not exist before,

12   but if there is not a way to provide sufficient protection

13   you may not have that, and I hadn't processed it the way

14   Ms. Pearson did.  Anything you want to add on that?  Mr.

15   Wade is shaking his head.  As in you disagree or I don't

16   want to add to it?

17        ADA WADE:  I vehemently disagree, and there was no

18   effort or attempt or even any indication that our position

19   would be to offer any type of immunity, if that is what

20   she's looking for.

21        THE COURT:  I didn't hear Ms. Pearson looking for

22   anything.  What I heard her say was that even if you

23   wanted to, and you're saying I don't want to, the scope of

24   the District Attorney's offices offer of immunity wouldn't

25   be sufficient in Ms. Pearson's mind to protect her clients

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

22

1    such that they could be compelled to testify, but we don't

2    need to work through that if that's nothing that the

3    District Attorney's office is looking at right now.

4         ADA WADE:  Okay.

5         THE COURT:  So then what do you see, and I guess, the

6    vision you have for moving forward with the Fifth

7    Amendment concerns, Mr.Wade, would be to have the kinds of

8    individualized discussions like we had yesterday, and like

9    you suggested you would have with counsel.  I guess it

10   would be Ms. Pearson and  Ms. Deborrough for theses 11,

11   Mr. Dillon and Ms. Clapp for Senator Jones to talk about

12   the buckets.

13        In no way would I be requiring that here are the 112

14   questions, here is a script, but it would be that these

15   are the categories that we want to explore, and then there

16   are the disagreements between your team and counsel for

17   the witness, then we might need to have a group

18   discussion.

19        ADA WADE:  I think much like the process on last

20   evening, on the day of the witnesses testimony, have that

21   conversation.  If we can agree upon the buckets, great.

22   If we can't, then Your Honor would be asked to get

23   involved.  I don't think that having a conversation well

24   in advance of 11 people's testimony -- I don't think it's

25   fair.  I think it puts the State at a disadvantage.

1          THE COURT:  No, I agree.  I wasn't suggesting that

2     you had to map it out in a lot of detail or particularly,

3     far in advance, but more along the lines of what we talked

4     about yesterday.

5          ADA WADE:  Yes, sir.

6          THE COURT:  One more question for one or the two of

7     you.  If target letter is not a reason to conclude that a

8     witness shouldn't appear in front of the Grand Jury, this

9     is a two-part question, is it not at least a reason for

10    that witness to have heightened concern, and if not, why

11    send it?  What was the purpose of it?

12         If the purpose was to get them more concerned

13    shouldn't they be more concerned and say wait a minute?

14    I'm not going to answer these questions in front of a

15    Grand Jury.  I might sit down with you and have a proffer

16    if it's protected, if it can be protected enough.  I'm

17    trying to understand the thinking.

18         ADA WADE:  Judge, to be transparent with the Court,

19    the discussions that took place with our side and Ms.

20    Pearson and Ms. Deborrough prior to a few of their clients

21    having voluntary interviews, the questions were what is

22    the status of my client at this point?  We disclosed the

23    status of the client at that point - -

24         THE COURT:  So it was responsive.  It wasn't

25    proactive, it was reactive.  You're asking - -

              HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                          24

1      ADA WADE:  And we said to them at that time, if at

2      any point the status of your client were to change, we'll

3      disclose that as well, and we did that.

4           THE COURT:  So that explains why, but then help me

5      think through what the consequences should be of that

6      elevation in status.   I assume it wasn't a downgrade that

7      you've been downgraded from, we've actually already

8      indicted you and we've dismissed it, and now you're only

9      target.  Why shouldn't there be the enhanced concern and

10     the beginning of the discussion that it may be that my

11     client is going to invoke his or her Fifth Amendment

12     rights here?

13          ADA WADE:  And certainly this discussion, Judge, from

14     our perspective, is not an attempt to circumvent anyone's

15     rights in terms of a fifth amendment, so I think that what

16     comes up is exactly what we're doing.

17          THE COURT:  Okay.

18          ADA WADE:   It gives Ms. Pearson the right to stand

19     up and say this is not what we want, and it gives the

20     State the right to stand up and cite Lampl, they'll have

21     to come in and do that.

22          THE COURT:  Lampl Bank of Nova Scotia.  They need to

23     come in and assert it in front of the Grand Jury as

24     opposed to having a lawyer say or the witness, him or

25     herself, you know what?   I'm thinking about it, I'm not

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

25

1    comfortable doing that.  No matter what you ask me, I'm
2    going to invoke.
3         ADA WADE:  Yes, sir.
4         ATTORNEY PEARSON:  Your Honor, may I respond briefly?
5         THE COURT:  I was just about to ask you that, and
6    there you go.
7         ATTORNEY PEARSON:  Your Honor, that's not what Lampl
8    says, as you accurately pointed out.  It says they can
9    subpoena people to a Grand Jury, and if that special Grand
10   Jury abuses its power, you'd better bring it up at the
11   time or there is nothing you can do about it later.  We're
12   not going to suppress the evidence.  We're not going to do
13   it, so it doesn't have anything to do with this Court's
14   authority, either under the quashal statute or the
15   supervisory ability of this Court to quash and otherwise
16   properly serve a subpoena.
17        We're not saying they can't subpoena us.  We're
18   saying you could quash it, and we're asking you to.  It's
19   clear, I don't think, Your Honor, that under these facts
20   it is sufficient to drag 11 people in here and then have
21   them figure out the buckets.  I genuinely cannot think of
22   a single question or area of questioning that I would be
23   comfortable allowing them to ask my clients including
24   their names, under these circumstances, and they shouldn't
25   be dragged down here from far away places of the State
                HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                              26

1    just to be told, you know, either by you or us coming to

2    you for 11 witnesses, however many times that they are not

3    going to answer the questions.

4         They should have to come forward with at least a

5    bucket list, so to speak, that Your Honor approves before

6    they are dragged down here.  That is not too much to ask,

7    and if it can't be done before their appearances next

8    week, then you can quash them and we can revisit it, and

9    we can set them for a different time, but they should not

10   be dragged down here and put on public display for doing,

11   in our view, nothing wrong, but their own ambiguous

12   circumstances being forced to invoke their rights, and

13   it's just not appropriate under the Ethical Standards

14   under the Georgia Professional Standards - -

15        THE COURT:  But if they did nothing wrong, why aren't

16   they talking to the Grand Jury?

17        ATTORNEY PEARSON:  Because she's called them targets.

18   I mean, Your Honor, we've outlined in our motion why we

19   don't even think there's jurisdiction here, why the law

20   protects what they did, but as you know the Supreme Court

21   has made clear that the main purpose, one of the main

22   purposes of the Fifth Amendment is to protect innocent

23   people who can be bound up in ambiguous circumstances, and

24   I don't think but you're going to find, at least the cases

25   that I've never been in where ambiguous circumstances are

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

27

1    more ambiguous and politicized and fraught than this, and

2    so, you know, that is why - -

3         THE COURT:  I don't know that politicized makes it

4    ambiguous, but you're using the word ambiguous, and I'll

5    let you use that word.

6         ATTORNEY PEARSON:  We certainly have different views

7    of the facts in the law, Your Honor.

8         THE COURT:  There are entirely different views of

9    certain facts and non facts, I hear you on that, but I

10   don't know if that makes it ambiguous, but I hear you, and

11   I am mindful of an inconvenience factor, if in the end the

12   product of the exercise is to have a witness say I assert

13   the Fifth, and that's it.

14        Hopefully, folks will exercise discretion, but I

15   don't think there is, other than some rules that apply

16   more in a Federal setting where the word target means

17   something different, not entirely different, not entirely

18   different.  I wasn't able to find any legal precedent that

19   says it was improper that the Court should have barred the

20   investigating body from requiring someone to come in and

21   in their face saying I'm not answering any questions.  I'm

22   not even going to tell you my name.  That may actually be

23   something that the Grand Jury may want to know, that this

24   person won't even give her name under oath.  That could be

25   instructive to what the Grand Jury is doing, but they

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

28

1    wouldn't know that if they never met the person.

2          ATTORNEY PEARSON:  Well, given that they're not

3    supposed to draw any negative inference from an

4    invocation  I wouldn't think that would be evidence, but

5    even if it were, I think the reason you can't find any

6    precedence is because in the Federal system, and then the

7    State system doesn't do Grand Jury work very often, and

8    then the Federal system they don't do this. .

9          They don't bring targets in and try to force them to

10   testify because they recognize it's unethical, as the AVA

11   has said and as the Georgia Professional Rules have

12   outlined, and we would ask that at a minimum, Your Honor,

13   that you ask them proffer the buckets to you or to us

14   before our people are brought in.

15         THE COURT:  Fair request.  I appreciate that.

16         ADA WAKEFORD:  Your Honor, may I address one point?

17         THE COURT:  Hold on.  Mr. Dillon, if you're going to

18   talk more about disqualification, not yet.  If it's the

19   Fifth Amendment you've been patient, so I'm happy to hear

20   from Senator Jones' perspective.

21         ATTORNEY DILLON:  Keeping quiet my mouth quiet in

22   this whole  disqualification thing - -

23         THE COURT:  But go ahead.

24         ATTORNEY DILLON:  Trust me.  I call the Court's

25   attention to the Georgia Code, that's 15-12-100.  It's a

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

29

```
 1        procedure for a special Grand Jury and hours of that Grand
 2        Jury, and under Subparagraph C it says, "while conducting
 3        any investigation authorized by this part, investigative
 4        grand juries may compel evidence and subpoena witnesses."
 5        It may inspect records, documents, correspondence, and
 6        books, blah, blah, blah , and it specifically excludes
 7        subpoena targets, Your Honor, and these are the rules --
 8             THE COURT:  You mean it says you may not do that or?
 9             ATTORNEY DILLON:  No, it doesn't, but because it is
10        not included in the list, we all know the cannons of
11        constructing statutes.  If there is a list and it's not
12        included in the list, it's excluded from the list, and
13        this is the provision under which this Grand Jury was
14        impaneled.
15             THE COURT:  It didn't say subpoena tall people or
16        short people, it says witnesses.
17             ATTORNEY DILLON:  It says witnesses.
18             THE COURT:  You're saying a target is not a witness?
19             ATTORNEY DILLON:  A target is a different category
20        than a witness, and the case law in the state of Georgia
21        says that because targets are discussed differently in the
22        Lampl case, and that's a good case to cite on.  A target
23        is different than a witness, and this doesn't say subpoena
24        targets.  It says subpoena witnesses.
25             THE COURT:  Okay.  Mr. Wakeford.
               HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                          30
```

1         ADA WAKEFORD:  Your Honor, I'll read directly from
2    Lampl.
3         THE COURT:   Lampl is getting a lot of attention.  Am
4    I right?  Is it a Clayton County - -  It was some sort of
5    city counsel - -
6         ADA WAKEFORD:   I think so, Your Honor.
7         THE COURT:  Ms. Green-Cross is now nodding her head.
8    She would know.  She's the appellate expert.  All right.
9    Continue.
10        ADA WAKEFORD:  "One who has not been so charged,
11   meaning formally charged, in a formal charging instrument
12   --
13        THE COURT:  Which would be every single recipient of
14   a subpoena so far?
15        ADA WAKEFORD:  Yes.
16        THE COURT:  All right.
17        ADA WAKEFORD:  -- may be compelled to appear before a
18   Grand Jury that he retains the option during his
19   appearance of invoking his privilege against
20   self-incrimination and refusing to testify regarding the
21   incriminating matters, this is true even if the witness is
22   a target of the grand jury's investigation."
23        THE COURT:  So Mr. Dillon stood up first, and he's
24   freshest from saying ha ha, take Lampl that way, State.
25   So did he skip a sentence?  That's a pretty powerful
                HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                         31

1    sentence, Mr. Dillon.

2        ATTORNEY DILLON:  A very powerful sentence, and with

3    regard to regular grand juries, I have no doubt that the

4    District Attorney might, but the statute under which the

5    subpoena is issued in this case properly is not that the

6    ordinary Grand Jury, nor the special grand jury, and it's

7    under this chapter in the Georgia code, and the rules are

8    different.

9        THE COURT:  So your argument is that a regular Grand

10    Jury that could indict and would target -- Lampl says you

11    can call that person in front of a that Grand Jury who has

12    the ability to indict Lample, and they can invoke his

13    Fifth from which they need to draw no adverse inference,

14    but a special purpose Grand Jury which can indict no one

15    or anything, they can't subpoena a target because they use

16    the word witness instead of target?

17        ATTORNEY DILLON:  Yes, Your Honor.

18        THE COURT:  Is the word target used in the

19    non-special purpose Grand Jury statute, or is the word

20    witness used?

21        ATTORNEY DILLON:  Interesting question, Your Honor,

22    but I do note that the subpoena is - -

23        THE COURT:  What's the answer?

24        ATTORNEY DILLON:  I don't know, but I do note that

25    the statute under which the subpoenas were supposed to be

1    issued in this case is under Title 15, but the subpoena is

2    actually rolled out under the provision of the Georgia

3    code that is not under Title 15, and they were, in fact,

4    technically, improper subpoenas because they were issued

5    under the normal statute and not under this chapter.

6        THE COURT:  So I guess we could republish them and

7    resign them if that is the - -

8        ATTORNEY DILLON:  Exactly, and then recognize that

9    this rule applies, but not the Lampl rule that we're

10   citing here.

11       ATTORNEY PEARSON:  Your Honor, we would take a

12   slightly different differentiation of Lample  - -

13       THE COURT:  A third reading.

14       ATTORNEY PEARSON:  It's actually the same read, and

15   that is the sentence that he read is (unintelligible) What

16   the the Supreme Court is saying in Lampl, we have an

17   individual who didn't take his Fifth in the Grand Jury,

18   the special purpose grand jury, the special purpose Grand

19   Jury used its authority to have a conveyer who was later

20   indicted in an improper Grand Jury.

21       I'm not suggesting they were improper, but a

22   different regular Grand jury, and then he tried to get

23   evidence suppressed from the special Grand Jury.  This is

24   not about whether they can compel people.  We're not

25   disputing they can issue the subpoenas, everybody says

1    they can.  That is the only thing Lample even arguably

2    says.  The only issue then is you get to quash them if you

3    want to.

4         If you believe that you should, and there's nothing

5    that says your authority under the statute, or under

6    supervisory authority is in any way affected by Lampl at

7    all whatsoever, so you clearly have the authority to do

8    what you think is proper with this Grand Jury here, and

9    we're asking you, on behalf of our clients, not to have

10   them frogmarched in front of a cameras and in this

11   courtroom.

12        THE COURT:  Okay.

13        ADA WAKEFORD:  At this point I was going to address

14   the original point I was going to make, which is I believe

15   we've heard the phrase "frog marched" in front of the

16   cameras three times now.

17        THE COURT:  All right.

18        ADA WAKEFORD:  I do not want to talk about this, but

19   I have to at this point.  Publicity is a hindrance to the

20   special purpose Grand Jury's work.  I believe earlier

21   Ms. Pearson stated that there may have been a witness in

22   here yesterday, but she didn't know who it was or how they

23   appeared, or what they had talked about, which is an

24   indication that the witnesses can come before the special

25   purpose Grand Jury, and no one ever know anything about

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                              34

1    it.  If witnesses exercise their First Amendment right to

2    disclose after the fact or before the fact they were

3    called, then they are allowed to do that.  That is the

4    source of publicity around this.  It is, I think here we

5    are tired of hearing that there is publicity jammed up by

6    the District Attorney's Office in order to create a circus

7    around this when we have actually taken pains to try to

8    create an environment of circus around this, so there is

9    no frogmarching, and there are ways to come before the

10    special purpose Grand Jury without publicity being brought

11    into it.  I just wanted to clarify it right after the

12    third time we heard that phrase.

13        THE COURT:  Okay.  Well, I appreciate much of what

14    you said.  I think it's a little rich to suggest that any

15    particular side that has avoided the cameras.  One need

16    look only at basically any major news outlet, and you will

17    see who is talking to the media, and it is not always the

18    lawyers for the witnesses, so I think everyone involved in

19    this has taken full advantage of media coverage.

20        That said, they're are some things that can be done,

21    I know, because I've been asked to be involved with it to

22    ensure that witnesses can enter into the building and

23    leave the building without much harassment from the media,

24    and we can get to do that.

25        I don't know that there are many of Ms. Pearson's

1    clients that the media would even recognize when they

2    walked up the front steps of the courthouse if that's how

3    they came in, so I think the concern about putting people

4    on public display is a bit exaggerated for most of her

5    clients, but if there are clients who need special

6    accommodations and ingress and egress we can always

7    accommodate them, we've done it before and can do it

8    again.  Anything more from the District Attorney's office

9    on the fifth Amendment concerns raised in Ms. Pearson and

10   Mr. Deborrough's motion as expanded by Mr.Dillon?

11       ADA WAKEFORD:  No, your Honor.  We have responded to

12   your questions, and we have proposed a method going

13   forward, and we have nothing else to add.

14       THE COURT:  Thank you.  Okay.  Ms. Pearson or Ms.

15   Deborrough, anything else on behalf of your 11 clients in

16   connection with the quashal of the requests, in other

17   words the Fifth Amendment concerns?

18       ATTORNEY PEARSON:  I think that's it, Your Honor.

19       THE COURT:  Mr. Dillon, anything more on the Fifth

20   Amendment aspects?

21       ATTORNEY DILLON:  No, Your Honor, we've got the

22   motion as communicated earlier.

23       THE COURT:  Okay.  Thank You.  So I will not be

24   quashing any of the subpoenas, but I will be asking -- we

25   may need to change some of the timelines.  How many of

             HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                        36

1    your 11 are coming all at once?  Are all 11 supposed to

2    come out the same day or are they spread out, Ms. Pearson?

3         ATTORNEY PEARSON:  Your Honor, we have - - they are

4    all coming on the 26th, 27th, and the 28th, so that's 3,

5    4, 5.  I allocated over the states maybe 9 exactly.

6         THE COURT:  The process is going to take longer

7    because what will happen, I suspect it will become more

8    regularized and streamlined after the first few of your

9    witnesses, but what will need to happen is that your

10   witness, and you Ms. Pearson and Ms. Deborroughs, if she

11   clears quarantine she can be here too.  She can appear

12   virtually, however we need to make it work, however we can

13   make it work.

14        We'll need to sit down, and it may just be lawyers at

15   first, so you can have your client wherever you want them

16   to be, as long as he or she is in the building, and

17   you're going to have that bucket conversation and see

18   where there is agreement or disagreement, and you've made

19   very clear that you can't think of anything, not even

20   astrological signs because somehow that would be tied to

21   something, or it would be irrelevant, but that

22   conversation needs to happen so that that we can, lawyers

23   and I can have a conversation about is it really a

24   complete impasse, of I may make the ruling, and you can

25   challenge it in whatever way you want, that the witnesses

              HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                          37

1    will need to go in front of the Grand Jury to answer name,

2    rank, and serial number and then the rest will be Fifth

3    Amendment.

4         It helps the District Attorney's office has 12

5    because they know basically that they're going to ask one

6    question beyond name, rank, and serial number, if I get

7    folks passed that because there is not an area that can be

8    explored that I don't think is unprotected by the Fifth

9    Amendment.

10   ADA WADE:  One thing I believe, Judge, from our side

11   that is noteworthy, is the very thing that the District

12   Attorney's office has fought so hard to do, was keep our

13   witnesses secret and out of the public eye.  What Ms.

14   Pearson just did was, she gave the dates that her clients

15   were coming in here, that's the exact thing she's

16   complaining about.  She gave - -

17   THE COURT:  Well, before we draw more attention to

18   this, I did not hear Ms. Pearson say Steve Jones is coming

19   in on this day.  She divided it over days and did not

20   identify people, and I mentioned, if there is a concern

21   about letting someone in the building discreetly, we can

22   address that and get someone in the building discreetly.

23        Most of these folks who walk, as long as they are

24   wearing normal clothes, they can walk right in the

25   courthouse, and those cameras that seem to be glued to our

1  courthouse steps right now wouldn't even pivot on that, so

2  I think the concern is greater than it needs to be, but we

3  can accommodate it.  I'm not going to ask someone to be

4  more specifically about who is going to be here when, I

5  just need to know if it's going to take a while for these

6  witnesses because there will be the conference before the

7  witness testifies. .

8      Testimony may be greatly reduced because of the

9  outcome of the conference may be that testimony is going

10  to be just as long as the District Attorney's Office had

11  forecast, but there's still this lawyer-to-lawyer

12  conference in advance, but that's how we're going to work

13  through it, and as I said, we may develop some guidelines.

14      A ruling I make with Witness One, isn't going to

15  apply to Witness Two insofar as she is similarly

16  situated.  I don't believe all are similarly situated.

17  There's still the overlap.  They are all alternate

18  electors, so there are certain commonalities, and I assume

19  that is why they all want to have you and Ms. Deborrough.

20  Similarly, they are all situated in this same situation,

21  but they are not clones, and so there may be areas that

22  are explorable with Witness One that are not explorable

23  with Witness Two, so I'm going to let the parties develop

24  the framework they want to use as we go forward.

25      I am here to assist when you reach an impasse, but I

1    don't think it's appropriate under the case law Lampl and

2    others to quash the subpoenas, but it may be that these

3    witnesses have very, very, brief appearances in front of

4    the Grand Jury.

5          ATTORNEY PEARSON:  Your Honor, just so that I

6    understand.  We aren't going to elaborate on it ahead of

7    time.  We will collaborate when the first witnesses come

8    here or in between each witness?  I mean, we've got 11

9    people to get through, so I guess I need some clarity on

10   how that's going to work for each witness.

11         THE COURT:  So I invite early collaboration, but I

12   also understand that if the District Attorney's Office is

13   reluctant to get too specific too far in advance, so they

14   may buckle under the pressure of how long that would take

15   as well, and there may be some basic frameworks that they

16   want to share with you in advance, but if you're now

17   getting into the nuts and bolts that I get to stay out of.

18        I will get in the mix should an impasse be reached.

19   If that impasse is reached tomorrow, because you're

20   talking about a witness who is coming on an undisclosed

21   date next week, at an undisclosed location, then I could

22   talk with you all tomorrow, but it may well be that the

23   default is let's talk when you're witness is here.

24        That may mean you won't get to everything next week.

25   That was - - the reason why I was asking is that if they

1      are spread out you four weeks you - - they're all coming

2      in next week.   I could see it being that what had been

3      scheduled for Thursday ends up being what was scheduled

4      for Tuesday, because you only got through two people on

5      Tuesday because of the confirming that doesn't occur until

6      Tuesday, so I'm not forcing an answer to your question,

7      what you develop with the District Attorney's Office.

8           ATTORNEY PEARSON:   In light of that, Your Honor,

9      would the Court at all be amenable to to moving our grand

10     jurors, not quashing them but moving them to later so that

11     we can work this process out in advance?

12          THE COURT:   So another really good question for you

13     to explore with the District Attorney's office, they may

14     think that's wise and necessary as well, and it may well

15     be that 6 of the 11 go next week because everything is

16     taking a little bit longer because we are being careful

17     about the concerns raised in your motion, but I have made

18     clear that other than checking on the welfare of the Grand

19     Jury, in other words they are not in session from 8 a.m.

20     to  10:00 p.m.

21          I don't micromanage who gets called it or when, but

22     I'll let you know that the District Attorney's office has

23     been flexible at having to move things if obstacles come

24     up.

25          ATTORNEY PEARSON:   Well, we had asked for that, Your

                  HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                              41

 1   Honor, and they refused, that's why I brought that up, but

 2   we'll talk to them about it.

 3        THE COURT:  Well, things are a lot less streamlined

 4   than they were before, so you work through that.

 5        All right.  Let's talk about disqualification and

 6   this process has moved up to the driver's seat on the DA's

 7   side, and I think since Mr. Dillon got in about three

 8   quarters of his argument in answering my simple question

 9   of do you think it's moot or not, I want to give the DA's

10   office a chance to share some of their perspective about

11   it.

12        I think the word partisan gets thrown around a lot in

13   this and why they think disqualification doesn't fit or

14   how to manage what I think are some valid concerns that

15   Senator Jones has raised through counsel, but at a minimum

16   pretty clear appearance of conflict, if it's developed not

17   before the investigation started but in the midst of it.

18        ATTORNEY GREEN-CROSS:  Thank you, your Honor.  I

19   think Your Honor has used the phrase appearance of

20   impropriety.  There is Mr. Dillon's use of the phrase

21   appearance impropriety or appearance of conflict, and the

22   first place the State is going to direct your attention to

23   is on the law cited in the responsive brief that

24   appearance of conflict is enough.

25        Under Georgia law, the disqualification of a

                    HADASSAH J. DAVID, OFFICIAL COURT REPORTER

1    prosecuting attorney or entity requires an actual

2    conflict, not speculative, not conjecture, but an actual

3    personal interest, and in this case would be the

4    investigation of the special purpose Grand Jury or the

5    prosecution  potentially of Senator Jones.

6         So I think that while optics in this case may be

7    more front and center than in some others, optics doesn't

8    carry the day, it's an actual conflict, and there's just

9    nothing at all that suggests that there is the actual

10   personal interest on the behalf of the District Attorney.

11   I'll note that insofar as the motion target, special

12   prosecutor Wade, there is --

13        THE COURT:  Oh, thank you for that.  Pause on that.

14   Mr. Dillon, do you agree --  originally we were going to

15   talk about just disqualification and Ms. Deborrough, and

16   Ms. Pearson arrived on the scene about the Fifth

17   Amendment.  My first question was meant to be that, do you

18   agree, Mr. Dillon, that Mr. Wade's purported donations,

19   and I'm not attributing anything to him, but it looks like

20   from the records that Mr. Wade gave $2,000 to Mr. Bailey

21   when Mr. Bailey was running for Attorney General.

22        No donations of record or any public insofar as the

23   donations is the public because records are made of it, no

24   public donations in support of Charlie Bailey by Nathan

25   Wade since Charlie Bailey switched races, and is instead

1    trying to be Lieutenant Governor instead of Attorney

2    General; do you agree with that?

3         ATTORNEY DILLON:  I agree with that, Your Honor.

4         THE COURT:  Okay.

5         ATTORNEY GREEN-CROSS:  That was my whole paragraph.

6         THE COURT:  You don't need to cover that, because

7    that was very persuasive.

8         ATTORNEY GREEN-CROSS:  Thank you.

9         THE COURT:  If that fact is true, I am focused very

10   much on the appearance of the District Attorney.  Using

11   that title District Attorney Fani Willis, invites you and

12   encourages you to come to this fundraiser for the

13   political opponent of the target of my investigation.

14   That's what we need to navigate here, and I guess the

15   question is, if there's an actual conflict, is

16   disqualification mandatory or discretionary, and if it's

17   mandatory then does that mean that the appearance of

18   conflict still give the judge the discretion to fashion

19   some form of relief?

20        ATTORNEY GREEN-CROSS:  Let me start with the last

21   question.  No.

22        THE COURT:  No?

23        ATTORNEY GREEN-CROSS:  I don't think the Court has

24   the discretion law.  While I want to give the Court as

25   much discretion as you want to have - -

              HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                          44

1    THE COURT:  Only what it should have.

2    ATTORNEY GREEN-CROSS:  Yes.  I don't think the law

3    allows the Court to elevate the standard, what the legal

4    standard is an actual conflict.  I don't believe that the

5    Court's discretion is broad enough to force a remedy for

6    an appearance of conflict.

7    THE COURT:  And examples of actual conflict that I

8    saw in your pleading were somehow the prosecutor was able

9    to be like a defense attorney at the same -- I mean it was

10   these things where like what were you thinking?  Yes, it

11   was kind of crazy.   I represent one co defendant and as

12   the defense attorney in a criminal proceeding become the

13   DA and the prosecute the co defendant.

14   THE COURT:  okay.

15   ATTORNEY GREEN-CROSS:  That makes no sense, and that

16   is not the situation we've got here, but that is the kind

17   of extreme example of what the law recognizes as an actual

18   conflict for a prosecuting attorney, at one time I

19   represented the victim in a case that is now before me in

20   a divorce preceding who is now before me in a case.

21   It's that kind of really striking in your face and

22   routine political support for a political ally.  It just

23   doesn't make it there.  It doesn't go that far.

24   THE COURT:  The routine -- I would interpret as Mr.

25   Wade strokes a check for the candidate he wants to

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

45

1    support.  Using the title of your office and having a

2    social media that you as this political office holder are

3    holding a fundraiser for the opponent of someone that this

4    political office is investigating.  I don't know that it's

5    an actual conflict, but I use that phrase, "what were you

6    thinking," where the prosecutor thought I could prosecute

7    the codefendant of someone I defended.

8         It's a what are you thinking moment?  The optics are

9    horrific.  If you are trying to have the public believe

10   that this is a non-partition driven by the facts, and I'm

11   not here to critique decisions.  The decision was made,

12   but If we are trying to maintain confidence that this

13   investigation is pursuing facts in a non-partisan sense,

14   no matter who the District Attorney is, we follow the

15   evidence where it goes and ignore that fact that I hosted

16   a fundraiser for the political opponent of someone I just

17   named a target.

18        That strikes me as problematic.  Maybe not from an

19   actual conflict level, but if we are at a cocktail party

20   and people are asking do you think that this is a fair and

21   balanced approach to things, I do.  Well, how do you

22   explain this?

23        I mean, how does one explain?  I mean, that is the

24   concern I'm working through is that it is not a lowercase

25   A appearance, it is a capital A with flashy lights

            HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                        46

```
 1        fundraiser District Attorney for the political opponent of
 2        someone I've named a target of my investigation, while I'm
 3        a legal adviser of the Grand Jury, and I'm on national
 4        medial almost nightly talking about this investigation
 5        and  That's problematic.
 6             ATTORNEY GREEN-CROSS:  Okay.  Not accepting the
 7        entirety of the Court's characterization of the series of
 8        events.  I'm going to explain it in a couple of ways.
 9        First, it's still not a legal conflict.  It's still not
10        anything within the Court's discretion to remedy in the
11        way that Mr. Dillon has advocated on behalf of Senator
12        Jones.  As a legal matter, everybody can talk at cocktail
13        parties all they want and watch the cable news station of
14        their choosing, but no matter what it still doesn't amount
15        to a legal conflict under Georgia law.
16             Second, I want to direct the Court's attention to the
17        absolute lack of any evidence to the case that any action
18        taken during the course of the investigation has been
19        politically motivated at all.  As the Court made
20        reference, and maybe I'm paraphrasing, but it's the Grand
21        Jury's duty to Senator Jones, not the District Attorney's
22        office.
23             The District Attorney is the legal adviser of the
24        special purpose Grand Jury, and may well have an
25        investigation of their own, but Senator Jones is trying to
```

1    fight a subpoena to the special purpose Grand Jury, and it
2    was brought under their authority.
3        THE COURT:  It was, and I think technically you are
4    correct.  I wouldn't want anyone to be misled, that the
5    special purpose Grand Jury is the only -- meaning those
6    grand jurors are the only source of subpoenas that they
7    say to their legal adviser, where is what we'd like to see
8    next.  That can happen, but what can also happen, and it
9    doesn't matter who it happened here because your point is
10   a good one, but I don't want people leaving here thinking
11   oh, it's only the special purpose Grand Jury that decides
12   to come in and.  Equally so and perhaps most of the time
13   it's the District Attorney's team that says, here's who we
14   would like to have come before the special purpose Grand
15   Jury next. .
16       That subpoena comes through the Grand Jury maybe the
17   wrong statute under the subpoena, but it comes through the
18   Grand Jury, but the idea, motivation, and the decision is
19   from the District Attorney's office.  I don't know how
20   Senator Jones' subpoena which channel from which it
21   flowed, I've got an inkling, but it doesn't matter.  Your
22   point is a good one.
23       I don't know that it cures the concern about
24   political support for an opponent not having any bearing
25   on how focused or not the special purpose Grand Jury would

```
 1    be on the person I'm supportings political opponent before

 2    November X, whenever the election is.

 3         ATTORNEY GREEN-CROSS:  I understand, and I didn't

 4    mean to imply otherwise to the public in my report, but I

 5    certainly understand the need to clarify that.  The larger

 6    point being though, I think in this posture is that,

 7    Senator Jones is still in obligation to some action taken

 8    during the investigation that is the Court's allegation of

 9    a political motivation, and you just haven't seen it here.

10    The -- Yes, sir.

11         THE COURT:  Mr. Dillon will get a chance to say more,

12    but part of his introductory remarks he emphasized a whole

13    lot then this target letter arise, like there was some

14    cause and effect.  I am not familiar with the timeline and

15    you mentioned that my description of events may have

16    gotten some of the timeline, and I'm not anchored to any

17    particular timeline other than the correct one.

18         Hopefully, there is only one set of facts as to the

19    timeline.  What was your reaction to the way Mr. Dillon

20    was painting -- it was almost a cause and effect timeline

21    that X happens and as a result of X support for Charlie

22    Bailey then Y happens, something that that in the public

23    eye would be negative to Senator Jones.

24         ATTORNEY GREEN-CROSS:  I represent to the Court, and

25    I believe it's accurate that all of the target letters
```

1    went out at the same time.

2        THE COURT:  Okay.

3        ATTORNEY GREEN-CROSS:  So it was not pegged to any

4    event that had any relevance of Lieutenant Governor's race

5    or any other political option was dictated by the terms

6    and the pace of that investigation.

7        THE COURT:  So the 11 that Ms. Pearce and Ms.

8    Deborrough received were issued on the same day, and

9    effectively the same time as Senator Jones?

10       ATTORNEY GREEN-CROSS:  Yes.

11       THE COURT:  It is not Senator Jones got his on a

12    special day, and it was a broadcasted event, and then the

13    other 11 went out?

14       ATTORNEY GREEN-CROSS:  It was a routine issuance of

15    the change of status as Mr. Wade explained in an effort to

16    be transparent to everyone who had been working and

17    talking with the State.

18       The final point I think I kind of want to make is

19    that, as noted in the brief, we have partisan District

20    Attorneys and partisan elections for those offices, so it

21    should surprise exactly nobody elected District Attorney's

22    should have political affiliations with other individual

23    within the same political party, and I think the post case

24    -- I've got a copy for the Court if you are not familiar

25    with it and a copy for Mr. Dillon.

          HADASSAH J. DAVID, OFFICIAL COURT REPORTER

1         THE COURT:  Is there a cite?

2         ATTORNEY GREEN-CROSS:  It is.  298 Georgia 241.  It's

3    a 2015 decision.  It's post, P-O-S-T.  I've got a copy

4    that is highlighted.  I'll hand Mr. Dillon the same copies

5    that have been highlighted for the Court.  May I approach,

6    please?

7         THE COURT:  Sure.  Thank You.

8         ADA GREEN:  On page 5 it is a reference.  The case

9    doesn't raise the issue of a prosecuting attorney who has

10   been or sought disqualified by a defendant or target or a

11   subject, or a witness in the case.  It's an even higher

12   stand to what a judicial recusal would be, and I think

13   it's instructed as a lower standard -- I'm sorry, a lower

14   burden and a higher standard for a recusal of Court, and

15   in this case it was the situation where the District

16   Attorney had been listed as a campaign official of a

17   Superior Court judge's campaign at one time, and the Court

18   in that case found -- well, that's beyond routine, it's

19   beyond financial, it's beyond what we normally expect.

20        Although it even -- and so the Court concluded, You

21   know what, when you got that allegation and the affidavit

22   of recusal you should have sent that on.  I'll note too

23   though, that once it was sent on, the Court determined

24   that that wasn't an actual (unintelligible), and it went

25   right back, so I bring the language to the Court's

              HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                        51

1   attention because it does draw a focus on these are the

2   things that happen when you have political affiliations

3   for elected offices.  It's expected, it's normal, and

4   until or it shows some actual conflict then that is just

5   maybe the upside, maybe the downside, but that's a

6   consequence of the system that we have.

7        THE COURT:  Okay.

8        ATTORNEY GREEN-CROSS:  One more final thing, and I

9   think this could streamline some of our other

10   conversations about remedy.  The State is not interested

11   in any summer surprises.  I couldn't source that October

12   deadline to anything.  I'm unable to determine when that

13   is.  I don't believe we have that here.  It's especially

14   unlikely.

15       THE COURT:  My understanding from speaking with the

16   Grand Jury directly.  My supervisory role is that the

17   timeline is whatever the timeline is.  There is no

18   deadline, they like to be done with this soon, but that is

19   only because they are giving much of their life to this

20   process, but they'll follow this process as it unfolds,

21   and as I intimated to Mr. Dillon and I'll make it clearer

22   when I wrap up the disqualification session that if the

23   work is completed such that it lands on or near the

24   election, it will state in the pleading and be in my

25   office until it gets disclosed after the election.

1        ATTORNEY GREEN-CROSS:  You won't be hearing any

2    objection about that from the State.

3        THE COURT:  I never I heard any requests to the

4    contrary.  What I heard is we don't know when it will end.

5    When will it will be done, when we're done.

6        ATTORNEY GREEN-CROSS:  I got a passed a note that's

7    going to clear up that timeline.  The political event for

8    Mr. Bailey was June 14th, and the target letter was sent

9    to Senator Jones and the others in that July 5th, July 6th

10   timeline.

11       THE COURT:  So  three weeks later.  All right.  Mr.

12   Dillon or Ms. Clapp.  I'm happy to hear what you want to

13   share.  Don't repeat what you already said because I heard

14   that.  I'd like you to start with Ms. Cross's focus, and

15   it is different.  I'm very familiar with the judicial

16   requirements and the impact and affect of apparent

17   conflicts, and Ms. Cross's observation is the District

18   Attorney is not a judge.

19       This is true, but because of that the apparent

20   conflict may be an area of concern that we ought to talk

21   about, but that it would not require me to take any

22   remedial action, only if there were an actual conflict,

23   and even if it was an actual conflict, but I don't

24   disagree with you if you say there is an appearance of a

25   conflict.  You don't need to try to convince me of that.

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

53

1          If that's not enough, legally, then we'll all agree

2     that there was an appearance of conflict, hopefully

3     something like that doesn't happen again between now and

4     the conclusion of this electoral cycle, but that is what I

5     need you to start with appearance verses actual and

6     anything else we need to cover that you already didn't.

7          ATTORNEY DILLON:  Your Honor, if I may.  My associate

8     has a power point, and we'd like to plug into the screen

9     if that is possible to the Court.

10          THE COURT:  It is, Ms. Clapp is a part of this zoom

11     session, and you're able to share your screen.  Is what

12     you're going to share something you shared with Ms. Cross

13     or is this brand new?

14          ATTORNEY DILLON:  We have not shared this with Ms.

15     Cross.

16          THE COURT:  It's not evidence?

17          ATTORNEY DILLON:  It's not evidence, but we do have

18     some exhibits, Your Honor, we do have some evidence here

19     today.

20          THE COURT:  Okay, if there is going to be evidence,

21     let's just make sure Ms. Cross gets a chance to see it

22     before we blast it on the screen.

23          ATTORNEY DILLON:  Absolutely.  oh, no.  It won't be

24     blasted on the screen.  It won't be published before --

25          THE COURT:  Okay.

          HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                    54

1          ATTORNEY DILLON:  As the initial point, Your Honor,

2     I'd like to point out that Senator Jones received his

3     Grand Jury subpoena in late May, and he was set for

4     testimony in late July.

5          We won't go into the date because we don't want to

6     create a bottle neck, but he was assured by the DA's

7     office that he was a witness in the case, and he was glad

8     to do his civic duty.  We were trying to work out the

9     parameters for a voluntary interview to avoid the reptile

10    marching.  I won't use that term.  while I like it, I just

11    won't use it.

12         THE COURT:  Simple, but what you are avoiding is

13    answering my question.  My question was, appearance of

14    conflict verses actual conflict, what do you think the law

15    is, and where do you think this falls?

16         ATTORNEY DILLON:  I think, based on my reading of the

17    law that controls in this area is that when there is a

18    public perception of a conflict, then there's an issue

19    that this Court has to look at, and the standard is the

20    standard that is layed out in the Young case, the Supreme

21    Court case that the DA cites in their response brief.

22         THE COURT:  Young as in not old?

23         ATTORNEY DILLON:  Young as in not old, and I don't

24    have the cite in front of me.

25         THE COURT:  I'll get it.

          HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                        55

1           ATTORNEY DILLON:  It's also in my brief.

2           THE COURT:  Lampl.

3           ATTORNEY DILLON:  Okay.  The DA cites it for the

4      proposition that, "The standard of neutrality for

5      prosecutors is not necessarily astringent as those

6      applicable to judicial or quasi -- judicial offices," and

7      she is correct, direct quote from Young.

8           It is not astringent, and the Court goes on to say

9      that the different in treatment is relevant whether a

10     conflict is found, however, not to it's gravity once

11     identified.  We may require a stronger showing for a

12     prosecutor that a judge in order to conclude that a

13     conflict of interest exists, but once we have drawn that

14     conclusion we have deemed the prosecutor subject to

15     influences that undermine confidence that a prosecution

16     can be conducted in a disinterested fashion.

17          If this is the case we can not have confidence that a

18     proceeding in which the officer plays the critical role of

19     preparing and presenting the case for the defendant's

20     guilt or hear the defendant's recommendation for a charge.

21          And so here is the Supreme Court saying that if the

22     confidence is undermined, if the Court is saying, what

23     were you thinking, then the decision is already made,

24     because if we have a what were you thinking factor that

25     even if they recommend discharge, and even if they died,

                 HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                              56

1    and if they go to trial, and even if they win the case,

2    which we submit will never happen, there it has occurred

3    in the Young case.

4         The bigger issue here is not whether or not they can

5    indict him for submitting a false document, they determine

6    the falsity of all the documents in this case.  The issue

7    here is whether or not they can drag Senator Jones down by

8    literally releasing to the press that he's a target.  This

9    guy get's $32,000 dollars.  This guy get's a publicly

10   disclose target letter.

11        THE COURT:  You're going a little bit off the -- the

12   focus here is disqualification, and I'm not quite sure

13   what you are invoking from the press or who you think said

14   to the press that someone was a target, maybe other than

15   you or your client talking to the press, but that's not

16   what your motion was about.  Your motion was about the

17   decision the District Attorney made to support someone in

18   her political party --

19        ATTORNEY DILLON:  Yes, Your Honor.

20        THE COURT:  -- and how that may create, and it does

21   create the appearance of possible conflict, but is it an

22   actual conflict, and you are helping me process that maybe

23   an appearance would be enough, but that is what I need us

24   to focus on and not your theory that the District

25   Attorney's office is trying to affect someone's political

1       career as opposed to revelations about someones connection

2       to a series of events that are particularly controversial

3       in our society right now might prove problematic for that

4       political candidate.  I can't help that part.  Those were

5       choices that were made.  That might elevate that candidate

6       in the eyes of some.  They might not elevate that

7       candidate in the eyes of many.

8               ATTORNEY DILLON:  It may, Your Honor, and with regard

9       to those facts, Senator Jones was willing to come in and

10      meet with the prosecutor and sit down and say these are

11      the facts of the case, under oath and maybe not under

12      oath, but then they received this carpet bombing of target

13      letters for everyone who signed the document, it is

14      suddenly 16 witnesses had the door slammed in their face

15      because they were told that they less friends of the

16      investigation or targets.

17              Can we go to the next slide?  Mr. Jones received his

18      target letter on July 6th as the DA indicated.  Contrary

19      to their motion where they indicated he was a potential

20      target, he was told he was What?  Next slide.  "You are

21      advised that you are "A target" of the Grand Jury."  This

22      was on July 6th.

23              Next slide, please.  On July the 12th, six days

24      after, I received this target letter, and I will say that

25      we consider this to be highly confidential, and the only

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                                58

1    two people in the world that knew about the target letter

2    were me and the district Attorney's office. I get this

3    unsolicited e-mail from a reporter with --

4         ATTORNEY GREEN-CROSS:  I'm sorry --

5         THE COURT:  Stop.

6         ATTORNEY GREEN-CROSS:  I'm sorry.  This isn't a

7    document that I've seen before, so before we publish it,

8    Mr. Dillon can you --

9         THE COURT:  Can you take that down, Ms. Clapp back to

10    the preceding page?  And so, Mr. Dillon, you had assured

11    me that --

12         ATTORNEY DILLON:  Yes, I did, Your Honor, and in my

13    zeal I got a little ahead of myself.

14         THE COURT:  Well, be less zealous.  Represent your

15    client, but let's not slap e-mails for which no foundation

16    has not been laid upon the screen. I thought you said, in

17    fact, I know you said don't worry, the actual exhibits I

18    won't put on the screen, they'll just be in my hands and

19    they won't be published.

20         ATTORNEY DILLON:  I had a carefully drafted script,

21    and I lost it because we started in the middle of my

22    argument.  May I approach and enter before the Court with

23    a copy.

24         THE COURT:  You may.

25         ATTORNEY GREEN-CROSS:  If it's a copy of Defense

1    Exhibit 2 then again, there's no foundation.  I haven't
2    seen it before.
3         THE COURT:  I'll take it.  I won't necessarily make
4    it a part of the record --
5         ATTORNEY GREEN-CROSS:  That was a part of my request.
6         THE COURT:  If we're going to have a discussion about
7    it, I need to be able to see it.  Thank you.
8         ATTORNEY DILLON:  It's an original and one.
9         THE COURT:  All right.  Any way.  Your representation
10   is that you previously shared with me what happened in
11   your life, and in your life a reporter out of the blue
12   reached out to you and said hey, I heard that your client
13   is targed in the District Attorney's investigation?
14        ATTORNEY DILLON:  Yes, Your Honor.
15        THE COURT:  Well, the special Grand Jury's
16   investigation.  Okay.
17        ATTORNEY DILLON:  Three days later this same reporter
18   broke the story, and we won't publish that either.  It's
19   not an exhibit, and it's on the internet, and we believe
20   the Court -- we'd love to publish the story.
21        THE COURT:  You're free to do that, not through the
22   Court's zoom.
23        ATTORNEY DILLON:  Okay.  We'll hold off on that slide
24   for now, but I will represent to the Court three days
25   later this same reporter broke that everyone who signed on

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

60

1    the alternate slate of electors and had received a target

2    letter including Senator Jones.

3        THE COURT:  Assuming for a minute that is exactly how

4    that played out with you and Mr. Isokoff (sp.) where does

5    that get us actual conflict, apparent conflict -- I

6    understand where your client is very frustrated by that.

7    You suggest that, gosh, the only two people on the planet

8    who should know about it would be the District Attorney

9    and you.

10       Certainly, it's a whole lot more than that.  We know

11   the District Attorney alone didn't, in fact, write all

12   these letters.  In fact, she didn't sign the

13   letters.  It's on the screen right now.  Mr. Wade did, so

14   the universe has just grown by 50%.  It's three people.

15       ATTORNEY DILLON:  Right.

16       THE COURT:  So somehow -- let me finish.  Somehow

17   word got out and the reporting universe knows about it

18   now, and it flows as an unwelcomed development for your

19   client.  Actual conflict, appearance for conflict.  I need

20   you to bend it back to what I need to work through, which

21   is should I take any remedial action to address an actual

22   conflict or the appearance of conflict, if I have the

23   authority, that's what we're working through and not the

24   trials and tribulations of Senator Jones because there was

25   a leak.  Unless you've got proof that it was Charlie

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

1       Bailey who leaked it, and then now we have --

2              ATTORNEY DILLON:  Yes, Your Honor.

3              THE COURT:  But we don't have that here.

4              ATTORNEY DILLON:  I do not have that.  No indication

5       that Mr. Bailey was involved.  All I know is that this

6       organization knew and I knew, and of course my client

7       knew, and then six days later this internet reporter

8       knows, and then shortly after that there's an AJC story

9       about it.  If we could I'd like to publish Exhibit 3,

10      which is a flyer for it.

11            THE COURT:  That's in your pleading.

12            ATTORNEY DILLON:  It is.

13            THE COURT:  You may -- it's already public record.

14     Let me make sure the State can look at it, but if it's in

15     the pleading --

16            ATTORNEY GREEN-CROSS:  If it is what's in the

17     pleading then we don't have an objection to the

18     authenticity of it.

19            THE COURT:  Okay.

20            ATTORNEY DILLON:  May I approach, Your Honor.

21            THE COURT:  I've got it on my screen.  So we have

22     this fundraiser, and it's a blockbuster headlining Fani

23     Willis the District Attorney.  In fine print you can see

24     where Mr. Bailey is, in fact, a candidate there, the font

25     is so small that I have to squint to see what it says.

1     This occurs about three weeks before the decision is made

2     to make my client target in this case.

3         The District Attorney, according to publicly

4     available records, which I have marked as Exhibit 4.  This

5     particular document, Your Honor is from the public

6     campaign finance website here in Georgia, so this is

7     publicly available data.  It shows during the day of and

8     during the day after this fundraiser $32,000 made to the

9     office of Mr. Bailey.  We submit is a direct result of

10    this fundraiser.  I'm told that the custom is, often

11    people show up with a check or they give their regrets and

12    sent a check the next day.  During this particular

13    month, Mr. Bailey raised over $270,000 dollars.

14        THE COURT:  So this was a particularly small

15    fundraiser for him?

16        ATTORNEY DILLON:  This might have been a particularly

17    big one.  This might have been the one that caused the

18    avalanche of checks to come in.

19        THE COURT:  Could be for all those people who are

20    checking the ethics website to see what the cash flow

21    looking like for the first couple of weeks were, so I'll

22    put my money behind it.

23        ATTORNEY DILLON:  This is the sort of headline

24    fundraiser that gets people to say, oh, we have a big

25    wheel.  We have somebody who is on the nightly news, as

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                          63

1       this Court knows, who is pulling for Charlie Bailey.

2                THE COURT:  Okay.

3                ATTORNEY DILLON:  One candidate in the Lieutenant

4       Governor's office or the Lieutenant Governor's race gets a

5       headliner, the other one, three weeks later gets a target

6       letter -- quietly get's a target letter.  Now, there were

7       numerous news stories speculating about the existence of

8       target letters on or about the time of the Yahoo news

9       article, and there was a lot of buzz about that.

10                In fact, there was even an AJC story where DA Wilis

11       was quoted as saying that numerous attorneys had received

12       target letters on their behalf.  It didn't name Senator

13       Jones, fortunately.  In fact, it wasn't publicly known

14       that Senator Jones received a target letter until the DA

15       filed their brief two days ago.

16                They were the first people to acknowledge he was a

17       target for this Grand Jury.  We had never acknowledged

18       that.  It was a mere speculation in the press, but it's

19       that sort of thing that gives the DA the the ability to

20       benefit their friends and harm somebody who is under

21       investigation, and that is really what we're talking

22       about.

23                The cases that the DA's point to in their motion from

24       1916 and 1936 are talking about transactions where the

25       financial transactions were $150, and was that materially,

                   HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                                    64

1    and while those are interesting cases, but once that $150

2    was material in the depression, we were talking about

3    $30,000 and we're talking about swaying an election, a

4    statewide election in Georgia, and that's a significant

5    thing.

6         This is not something that is being done by accident.

7    This is being done by design.  This fundraiser was pointed

8    at benefiting Senator Jones --

9         THE COURT:  Isn't that the purpose of the fundraiser.

10   I agree -- the point of -- the question is does the

11   District Attorney decision to support someone with whom

12   she is politically aligned, it surprises no one that they

13   are politically aligned.  Does that rise to the level of

14   creating -- an appearance of -- , and I've opined on that

15   a little bit an actual conflict, and I understand because

16   you can't climb into someone's mind.

17        You have to do a little of this through the

18   shadowboxing of, okay -- there is a fundraiser and all of

19   this money came in, and then  there was a target letter.

20   Do you have more of a connection of one who proceeded the

21   other?

22        ATTORNEY DILLON:  As far as a direct connection?

23        THE COURT:  Any connection.

24        ATTORNEY DILLON:  What is out there in the press,

25   what is out there in the ether.  A part of Senator Jones'

1    concern is that this report is going to come out in

2    October.  I'm glad to hear there's no October surprise,

3    but there's been this whole series of drips, this whole

4    series of leaks out of the Fulton County DA's office that

5    have tilted benefit towards Mr. Bailey.   It pointed to my

6    client as being a presumptive violator of the law, and

7    it's only because the DA has the authority to do that.

8        So if this Court were to determine that she has a

9    conflict, and this appearance is sufficient, and we go to

10   the Attorney General's office to appoint a new prosecutor

11   with regard to Senator Jones who could sit down with him

12   and say, Well, Senator Jones, we're interested in what

13   happened in December 2020, would you like to talk to us,

14   and just like we did on day one, with the DA's office?

15       Certainly, we would be glad to.  Do we have a target

16   letter from your office?  No, you do not, Senator Jones,

17   because we have useful information that would age your

18   investigation, because this is an investigation when it

19   was impaneled that was supposed to gather evidence to see

20   whether or not there was an effort to undermine democracy

21   in this country, and when Senator Jones said, I have a

22   subpoena here, I'm going to talk to these people we said,

23   fine.   We prepared our rates, but then we've got this

24   target letter and then everything changed, just like it

25   did for these 11 clients.

1        So then where initially they indicated where they

2    wanted to gather evidence, now it appears that what they

3    really wanted to do is gather publicity, and they slammed

4    the door on all 16 witnesses who signed the document by

5    giving them target letters, and then they announced that

6    they're all bad people, and in essence they're going to

7    recommend their charges in this report, if and when it

8    comes to you desk.

9        THE COURT:  So the DA's office doesn't write the

10   report, the Grand Jury does, just to repeat.  You

11   mentioned something about the District Attorney's office

12   leaking this and leaking that.  Supposition or evidence?

13       ATTORNEY DILLON:  I certainly don't know that the

14   District Attorney's office talked to Yahoo News, but I

15   know that I was the only other person holding a copy of

16   that target letter on that day, and there are numerous

17   daily stories in the AJC, to quote learned sources from

18   inside the investigation are the people who are conducting

19   this special Grand Jury.

20       THE COURT:  I'm focused on your client, and I'm

21   asking you to direct me to anything other than the

22   gentleman from Yahoo who said, I heard X about your client

23   being a target. has there been other outreach from the

24   media to you saying, I heard Y, I heard Z about Senator

25   Jones that you can source only to the District Attorney's

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

67

1     office as opposed to, hey, any witness who comes before

2     that Grand Jury is free to talk to the media afterwards if

3     he or she wants to.

4          ATTORNEY DILLON:  That's absolutely correct, and as

5     you know, that's how the Grand Jury work.

6          THE COURT:  Right.

7          ATTORNEY DILLON:  You're supposed to operate in

8     secrecy, which is what was anticipated when this was

9     founded, but the witnesses are free to go talk, and some

10    of the witnesses probably do talk, but certainly Senator

11    Jones had an interest in the public not knowing that

12    Fulton County considered him a target, so he did not talk;

13    we know that.

14          The leak of the existence of this target letter and

15    subpoena actually, violate the the (unintelligible) of

16    ethics that the District Attorney operates under, and one

17    of the things that we have with regard to Exhibit 5 is the

18    ethics training that the DA's office gives from their

19    general counsel, Mr. Robert Smith, who is the general

20    counsel for the Prosecuting Attorney's Counsel of Georgia,

21    and with permission of the Court I'd like to mark this as

22    Exhibit 5.

23          ATTORNEY GREEN-CROSS:  No objection, Your Honor.

24          ATTORNEY DILLON:  I think the District Attorney

25    offered me an affidavit from Mr. Smith earlier today, so I

1    think they rely on him as an expert in regard to ethics.

2         THE COURT:  Okay.

3         ATTORNEY DILLON:  And so at this time I would offer

4    Exhibit 5 into evidence and request to publish it.

5         THE COURT:  Sure.

6         ATTORNEY GREEN-CROSS:  Your Honor, I don't object to

7    the submission of the document -- I can't verify it's

8    authenticity.  If Mr. Dillon is representing to the Court

9    the source of this information, where he got it, that it's

10   accurate, true, and complete, and that's probably going to

11   take care of my objection.  I just can't look at it and

12   know that this is the presentation that Mr. Smith gave.

13        THE COURT:  Right.  It's too long for you to do that,

14   just in this setting.  Any reason we should be concerned

15   that this has been altered in any way, or is anything

16   other that what Mr. Smith presented to this District

17   Attorney, but presumably all District Attorneys and their

18   processes?

19        ATTORNEY DILLON:  My understanding is that this is

20   his presentation and he does it periodically and that he

21   would have done it during the time period that Ms. Willis

22   was the District Attorney here.

23        THE COURT:  Okay.

24        ATTORNEY GREEN-CROSS:  Can I ask for a representation

25   of where you obtained this copy?

                 HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                              69

```
 1          ATTORNEY DILLON:  This was pulled off of the
 2     internet.
 3          ATTORNEY GREEN-CROSS:  Did you pull it from off of
 4     the internet?
 5          ATTORNEY DILLON:  Yes, I did.
 6          ATTORNEY GREEN-CROSS:  Okay.  Was it from the PAC
 7     website?
 8          ATTORNEY DILLON:  You have to have access to the PAC
 9     website to get it.
10          ATTORNEY GREEN-CROSS:  And I'm wondering how you got
11     it.
12          ATTORNEY DILLON:  It's out there in the ethers.
13          THE COURT:  He got it from Yahoo.
14          ATTORNEY DILLON:  I got it from Yahoo.
15          ATTORNEY GREEN-CROSS:  I want to kind of thank you
16     for your candor.
17          ATTORNEY DILLON:  Would you like to present it to
18     your client?  She would have attended this training, and
19     see if it's complete?
20          ATTORNEY GREEN-CROSS:  I would like to preserve
21     publication of the document until I can ascertain whether
22     it is true, accurate, and complete, because I understand
23     that it has been sourced to the internet, and that is not
24     something that I can accept, this authentication.
25          THE COURT:  Okay, so it's admitted.  I'll take it,
              HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                        70
```

```
 1          just don't put it on the screen.  I want us to keep moving
 2          forward.
 3               ATTORNEY DILLON:  Okay.  We won't put it on the
 4          screen, but it does quote the rules of professional
 5          responsibility in Georgia, and so, I think those rules are
 6          relevant here, and the fact that the District Attorney's
 7          members and the District Attorney herself receives
 8          training on this on and gets reminded on a periodic basis
 9          of what their responsibilities are for the prosecutors is
10          relevant.
11               THE COURT:  Okay.  So are you going to be reminding
12          her now by reading it?
13               ATTORNEY DILLON:  I would love to just read a few
14          snippets, if I may, Your Honor.
15               THE COURT:  If they are truly snippets.
16               ATTORNEY DILLON:  "The DA and Assistant DA's should
17          refrain from making extra judicial comments that have a
18          substantial likelihood of heightening public condemnation
19          of the accused."  That is rule 3.8.
20               THE COURT:  This relates to your theory that there
21          was a leak that wasn't necessary -- one, we don't know
22          there was a leak.  Two, the District Attorney herself who
23          is the focus of your concern because of the political
24          support she has from someone with whom she is politically
25          aligned, that she somehow has been behind the leak that, I
```

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

71

1    guess would have been behind the leak that your client is
2    a target, but there is no evidence of that.
3            ATTORNEY DILLON:  There was no evidence that my
4    client was a client was a target until two days ago when
5    they said it in their reply brief, Your Honor.
6            THE COURT:  Okay.
7            ATTORNEY DILLON:  And that was not inadvertent.  That
8    came directly from the mouth of the District Attorney's
9    office, and so we're not talking merely about this runoff.
10   We're talking about the fact that it is publicly confirmed
11   that Senator Jones is a target of this Grand Jury.
12           THE COURT:  Okay.
13           ATTORNEY DILLON:  Irrefutably.
14           THE COURT:  So your focus is not on a theory that
15   would have got out but the confirmation, if you will, in
16   Ms. Cross's response to your response in your motion to
17   disqualify?
18           ATTORNEY DILLON:  Yes, Your Honor.
19           THE COURT:  Okay.  I'll let her talk about that.
20           ATTORNEY DILLON:  Yes, I understand.  That brings us
21   to the juncture that you pointed out where we began, which
22   is on one side, we have this headliner and they raised
23   $32,000, and on the other side we have this target letter
24   that they publicly disclosed, and we have these series of
25   leaks to the press, and this is an effort to sway the

1    outcome of the election for Lieutenant Governor in this

2    case.  It really has nothing to do with whether or not

3    they ultimately indict Senator Jones or the other group of

4    11, or anybody in this case, because once the publicity

5    machine has done it's business, the friends of the

6    District Attorney have won, and so that is really why

7    we're here, and so you ask, is there a real conflict here?

8    It couldn't be more.

9        THE COURT:  Okay.  Short of disqualification, what do

10   you view as a remedy?  If I conclude that something needs

11   to be done, and I have the authority to do it, but I don't

12   think that it's practical or appropriate to say that the

13   entire District Attorney apparatus for Fulton County has

14   to unplug from any investigation, questioning of,

15   exploration of your client's connection to the

16   interference of the 2020 general election.

17       What do you see as an intermediate -- one would be

18   for me to say there is an apparent conflict, but I can't

19   do anything about that, because I can only handle actual

20   conflicts.  Another would be to say either it's an actual

21   conflict, and I'm going to so something, or I'm going to

22   go out on a limb and do something even though it's only an

23   apparent conflict.

24       So if I'm going to do something, but it's not

25   disqualify the whole office, what is your second most

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

73

1        preferable outcome?

2              ATTORNEY DILLON:  Well, as the Court is aware, there

3        are not numerous special Grand Juries of this magnitude to

4        point to for precedent, so what we suggest in our brief is

5        that the statutory provision  that requires, once there's

6        a conflict made apparent, that it be referred to Attorney

7        General Carr's office and he find someone to conduct that

8        portion of that here independent of this special Grand

9        Jury, and it can be as simple as finding a District

10       Attorney that doesn't have to find a good solid democratic

11       District Attorney somewhere who doesn't have a conflict

12       and give him the authority to pursue Senator Jones' issue

13       in this, and we would be glad to sit down with him.

14             We would be glad to sit down with you.  We would be

15       glad to approach this with the same willingness to say

16       let's get to the bottom of this issue and whether or not

17       there was a conspiracy to undermine democracy in this

18       country because that is an important issue, and let's put

19       the media circus behind us.  So let's answer the questions

20       and forget it affecting this election for Lieutenant

21       Governor, because there's no way she can keep a hand in

22       it.

23             THE COURT:  She being the District Attorney?

24             ATTORNEY DILLON:  She being the District Attorney.

25       Forgive me, Your Honor, and not affect the outcome of this

1    election for Lieutenant Governor.

2        THE COURT:  So if Attorney General Carr selected

3    fictional District Attorney X who had also given $2,000 to

4    Charlie Bailey's campaign for Lieutenant Governor --

5        ATTORNEY DILLON:  It would not be a problem at all.

6    It's an ordinary contribution, and it's exactly what

7    counsel points to.  Now, if they had hosted a fundraiser

8    during the time period that they were investigating

9    Senator Jones, I might have to go to that judge and talk

10   about that fundraiser.

11       THE COURT:  What if that District Attorney had

12   already hosted -- the District Attorney is not involved in

13   that investigation.  She hosted a fundraiser two weeks

14   ago, $50 grand or even more money than DA Willis, but it's

15   done.  It's over and done with, and I'm not going to do

16   anymore fundraisers from here on out, because now I've

17   been tasked with seeing what connection, if any, Senator

18   Jones had to what was going on in November and December.

19       ATTORNEY DILLON:  If every District Attorney in the

20   whole state had hosted a fundraiser for Mr. Bailey then

21   that issue might be apparent, but I suspect, giving the

22   list of good democratic District Attorneys in this state

23   that we can find somebody who doesn't have a conflict and

24   hasn't hosted a fundraiser for either one, because

25   certainly, if somebody that hosted a fundraiser for

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                            75

1    Senator Jones, the Attorney General shouldn't nominate

2    that person either.  Find somebody who doesn't have a dog

3    in the hunt.  Fani Willis has a dog in this hunt.

4         THE COURT:  Got it.  Thank you, sir.

5         ATTORNEY DILLON:  Thank you, Your Honor.  Oh, can we

6    offer into evidence Exhibits now.

7         ATTORNEY GREEN-CROSS:  Actually, I was going to ask

8    to leave it up.

9         THE COURT:  Leave it up?  Okay, don't take it down?

10   Too late.  Thank you, Ms. Clapp.

11        ATTORNEY DILLON:  Can we offer into evidence 1-5?

12        THE COURT:  If there's no objection, 1-5.  Was 5 the

13   one where the province was the internet?

14        ATTORNEY GREEN-CROSS:  Yes.  I was going to object to

15   the authenticity.  I believe the foundation has been shown

16   for Exhibit NO. 5, we entered it into evidence so I didn't

17   object to the Court reviewing it, but I do object to it

18   being tendered and admitted.

19        THE COURT:  Why don't we do this?  I will take 1-5,

20   and then I will give Mr. Dillon to maybe shore up his

21   sourcing of it, and if, in fact, it is pretty clear that

22   Smith was the name of -- Mr. Smith's presentation then

23   I'll add to 5 the other 4.  I'll hold on to it, but it

24   won't become part of the record until either Ms. Cross you

25   agree to talk to Mr. Dillon a little bit more and we see

1 the source, or we're substituting to you -- someone can

2 get it off the PACK site.

3   ATTORNEY GREEN-CROSS:  I do want to raise objections

4 to some of the others, but if they're being tendered now

5 into evidence, Exihibit 1, the letter, I don't have any

6 objection to that.

7   THE COURT:  Okay, 1 is admitted.

8   ATTORNEY GREEN-CROSS:  Exhibit No. 2 is the e-mail

9 that I do have an objection to that being tendered and

10 accepted into evidence without any providence of it.  I do

11 also object to the relevance of it.  There's nothing in

12 this e-mail that sources any information to the District

13 Attorney's office insofar as this being offered to show

14 that the leaks are coming from this side of the table.  I

15 object to the relevance of that, and I don't think it

16 shows that, and I object to the admission of it into

17 evidence.

18   THE COURT:  Okay.

19   ATTORNEY GREEN-CROSS:  No. 3 is the fundraiser flyer

20 that is up on the screen now, and we don't have any

21 objection to that being tendered and admitted into

22 evidence.  Exhibit No. 4.  Again, I have an objection to

23 the relevance of this.  I don't think it shows what, at

24 least what's been argued.  It's been identified and

25 offered for the purpose of establishing how much money was

1    raised at the fundraiser, but what the actual document is

2    or appears to be, based on Mr. Dillon's representation,

3    and I don't have any reason to doubt it.

4        This is publicly available about how much money was

5    donated to mr. Bailey campaign during a 2-day period in

6    this document to the fundraiser, and while w  I don't

7    think that is going, and because of that I don't think

8    that we have an objection to the ruling.

9        THE COURT:  Okay, and then 5 is being conditionally

10   admitted, provisionally admitted.  I'm assuming you can

11   clear up the source.

12       ATTORNEY GREEN-CROSS:  Yes, sir.

13       THE COURT:  All right.  Anything you want to add, Mr.

14   Dillon?

15       ATTORNEY DILLON:  No, Your Honor.

16       THE COURT:  All right.  I will admit Exhibits 1 and

17   3, and then 5 will be provisionally admitted.  We'll see

18   if the loose ends can be tied up there.  Last question,

19   Mr. Dillon, and I'll let you sit down.  Beyond the Young

20   case, is there a case or are there cases you want me to

21   look at that stand for the proposition that the appearance

22   of a conflict could be sufficient for a Judge to take any

23   of the forms of remedial action that you are seeking?

24       ATTORNEY DILLON:  Your Honor, I rely on the Davenport

25   case, and that is a Georgia case.

1      THE COURT:  I don't see it in here.  You're free to

2  rely on it.  It didn't manage to make it's way into your

3  motion.

4      ATTORNEY GREEN-CROSS:  It was in mine.  It's on page

5  4.

6      THE COURT:  You guys share very well when it comes to

7  cases.

8      ATTORNEY GREEN-CROSS:  The Cite is 170 -- I'm' sorry,

9  it's 157 Georgia Appeals 704, if that's the case you're

10  referring to.

11      THE COURT:  Okay.  Do you agree, Ms. Cross, that that

12  discusses the Davenport actual vs. apparent conflicts.

13      ATTORNEY GREEN-CROSS:  I didn't cite it for that

14  proposition, and that's not my recollection of discussion

15  in the case.

16      THE COURT:  Okay.  I'll look at it anyway.

17      ATTORNEY GREEN-CROSS:  Yes, but don't -- yes.

18      ATTORNEY DILLON:  Your Honor, I never did get clarity

19  on the basis for the objection to Exhibit 2, other than

20  she objected to it.

21      THE COURT:  Relevance was one, and I think it was

22  foundation, although, the recipient, Mr. Dillon, I think

23  he could authenticate it as receiving it, but I'm not sure

24  the relevance you suppose that Mr. Isokoff(sp.) theorized

25  what he did because the District Attorney's office let him

1    know about it, as opposed to the witness from the Grand

2    Jury or the grand juror.

3         I don't know who's in the circle of discussing who is

4    going to be a target or not, but you've made your point.

5    I'm just not going to make it part of the record.

6         ATTORNEY DILLON:  Okay, and with regard to Exhibit 4,

7    the financial fundraising report.  We offer that as to Mr.

8    Bailey's take over the two days, the day of the fundraiser

9    and the day after, and we submit that it is relevant.

10        THE COURT:  Okay.  I thought it showed his take for

11   the whole month.

12        ATTORNEY DILLON:  No, no, no, no.  It's just a 2-day

13   period.

14        THE COURT:  It is before and after the 14th?

15        ATTORNEY DILLON:  It is the day of the 14th and the

16   day after.

17        THE COURT:  And it is publicly available?

18        ATTORNEY DILLON:  Yes, it is, Your Honor.

19        THE COURT:  All right.  I'll admit it.

20        ATTORNEY DILLON:  That was Exhibit 4.

21        THE COURT:  Yes.

22        ATTORNEY DILLON:  May I offer a copy to the Court;

23   I'm not sure I did that, Your Honor.

24        THE COURT:  What you want to make sure is that the

25   court reporter, ultimately, has them.  I've got number 2

1    of -- here when we're done will do that.   Just make sure

2    before you go that our court reporter has 1, 3, and 4, and

3    5 you're going to hold on to until you and Ms. Cross can

4    work out if you we're able to put more to the story to

5    that.

6          ATTORNEY DILLON:   Yes, Your Honor.

7          THE COURT:   Ms. Cross, your closing thoughts about

8    disqualification.

9          ATTORNEY GREEN-CROSS:   Very brief ones.   Your Honor,

10   we're taking a look now at what has been admitted as Mr.

11   Jones, Exhibit 3.   You'll notice that Mr. Jones is not Mr.

12   Bailey's opponent at this point in the Lieutenant

13   Governor's race.

14         If anybody's got a problem, or was the opponent of

15   Mr. Bailey at that time was Mr. Kwanzaa Hall because at

16   this point, Mr. Bailey was in a run off election, and he

17   was very clearly identified as District Attorney Willis

18   raising money for Mr. Bailey in the runoff fundraiser.

19         THE COURT:   It's the largest font on the page.   Even

20   larger than the District Attorney's name.

21         ATTORNEY GREEN-CROSS:   I understand, insofar, as

22   we're talking about appearances.   I think that shifts the

23   focus a little bit.   The District Attorney isn't raising

24   money for the opponent of Senator Jones in giving this

25   fund raiser, this is prior to Mr. Bailey becoming the

                HADASSAH J. DAVID, OFFICIAL COURT REPORTER

1    actual Lieutenant Governor nominee for his party, so I
2    want to make that as clear as it can be.
3         THE COURT:  When was the runoff election?
4         ATTORNEY GREEN-CROSS:  Sometime after June.
5         THE COURT:  Good.
6         ATTORNEY GREEN-CROSS:  Someone with easier access to
7    google might be able to -- the last week of June.
8         THE COURT:  Late June?
9         ATTORNEY GREEN-CROSS:  Late June.
10        THE COURT:  All right.  Got it.
11        ATTORNEY GREEN-CROSS:  Mr. Smith is going to be so
12   pleased, because he gets another mention.  I shared with
13   Mr. Dillon an affidavit from Mr. Smith, who is actually
14   general counsel of the prosecuting of Georgia.  May I
15   approach, Your Honor?
16        THE COURT:  Yes.
17        ATTORNEY GREEN-CROSS:  I've got an original for the
18   court reporter, but I'll hold onto that until it's  been
19   tendered and amended.  This is an affidavit, thank you,
20   that I shred with Mr. Dillon not long before the hearing
21   identifying that Mr. Smith is someone who deals with
22   conflict.  He routinely advises District Attorney's as far
23   as general and other entities to the inquiry about the
24   legal requirements and that's the legal conflict for
25   individuals, prosecuting attorneys.

1           He's reviewed the motion, he's reviewed the response,

2      the motion of Senator Jones, including the runoff

3      fundraiser flyer that we're still looking at, and he

4      determined, in fact, in his opinion that it does not a

5      legal requirement.

6           I'm not suggesting that Mr. Smith's opinion

7      (undecipherable) the Court's, but insofar as the

8      individual who routinely advises district attorneys about

9      these matters, this is the individual who is saying that

10     there is not an actual conflict.  There is also language

11     in their indicating, of course, that he does advise that

12     an actual conflict is required, as opposed to the

13     appearance of one, so we ask that State's Exhibit No. 1 be

14     admitted.

15          THE COURT:  Any objection to State's 1 being

16     admitted, assuming Jones 5 ultimately get's admitted?

17          ATTORNEY DILLON:  Yes, Your Honor.  I'm going to

18     object, subject to Jones 5 being admitted along with this.

19          THE COURT:  Okay.

20          ATTORNEY DILLON:  I have no reason to doubt the

21     authenticity of this, but Mr. Smith also trains them on an

22     ethical (unintelligible) and so we could be back here next

23     week with a motion for prosecutorial misconduct, which I

24     won't define, but the ethical rules also apply to the

25     District Attorney's office, and in the presentation that I

1    provided the Court, he lays out exactly the rules that DA
2    Willis' office has violated.
3        THE COURT:  Okay.  Sort out Exhibit 5 soon, so I can
4    put that alarm on it.  I'm going to admit DA 1 or State's
5    1, but I'd love to see 5.  It seems like it ought to come
6    in.  I understand the State's concern.
7        ATTORNEY GREEN-CROSS:  I think we can work that out.
8    There comes a time when the Court considers Senator Jones'
9    offer of Exhibit No. 5, Mr. Smith's presentation.  I
10   believe at least the excerpt that Mr. Dillon read this
11   afternoon was a concern or admonishment, or flagging the
12   extra judicial statements of the District Attorney or
13   prosecuting entity.
14       You've heard no evidence this afternoon or to my
15   knowledge in the record anywhere that there has been any
16   extra judicial statement from the District Attorney's
17   office about Mr. Jones officer that has played a part in
18   this.
19       Insofar as the objection this afternoon came to the
20   identification, apparently, for the first time officially,
21   that Senator Jones has received a target letter, of course
22   that was in direct response in the motion to disqualify
23   that was file by Senator Jones on Friday.  They raised in
24   that motion equal protection and due process claims.  They
25   reference constitutional protections of the Federal and
              HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                            84

1    State Constitution, and they are essentially saying, hey,

2    look what you're doing.  You're investigating me, and

3    you're doing that only because I am a political opponent

4    of someone you like.

5        That is our whole point to you, that is the whole

6    thrust of this.  Friends get rewarded and enemies get

7    punished.  The fact of the matter is, and what the

8    District Attorneys represented in that was, no, You're

9    just like everybody else.  You're treated exactly like

10   everybody else, similarly situated to you, received the

11   same treatment and you can't show otherwise, and for that

12   reason the legal standard hasn't been met, so I wanted to

13   clear that up too.

14       Otherwise, I'm happy to address any concern or

15   comment further from the Court that I think the motion --

16   the burden hasn't been satisfied.  It is not a legal

17   conflict here and the motion should be denied after I

18   consult very briefly with my table.

19       THE COURT:  Please consult.  Can we take the screen

20   share down now?

21       ATTORNEY GREEN-CROSS:  Yes, and apparently we can

22   withdraw our objection to Exhibit 5.

23       THE COURT:  Great.

24       ATTORNEY GREEN-CROSS:  There's no need to go forward.

25       THE COURT:  Great.  So before you leave, Mr. Dillon,

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

85

1    make sure a copy gets to our court reporter, but I'd like

2    a copy of 5 as well.

3        ATTORNEY GREEN-CROSS:  I'm handing up the original of

4    the affidavit of Mr. Smith.

5        THE COURT:  Thanks.  Mr. Dillon?

6        ATTORNEY DILLON:  Very briefly, Judge.  Regarding to

7    the last point raised by the State.

8        THE COURT:  Which was?

9        ATTORNEY DILLON:  That it is perfectly okay to out

10   the target letter status of Senator Jones in their

11   pleading.

12       THE COURT:  I didn't hear that it was perfectly

13   okay.  It was an explanation for -- the hand was forced,

14   and because an argument was made or treated differently.

15   I didn't hear that it was perfectly okay.  I heard that it

16   was a justification.  You don't think it's justified

17   because?

18       ATTORNEY DILLON:  I think they could have made that

19   argument under (unintelligible) and not further the

20   appearance that they're favoring Mr. Bailey in trying to

21   do what?  Hold my client up to public ridicule and

22   increase his shame, and do the things that Mr. Smith's

23   presentation says they should never do.

24       THE COURT:  Ms. Pearson, was there anything you

25   wanted to add.  Your motion with Ms. Deborrough, the

               HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                        86

1      motion to quash and disqualify.  I mean your focus was

2      quashal, and I get that, but you adopted Mr. Dillon and

3      Ms. Clapp's motion.

4          You've shared with me that Mr. Still is a political

5      candidate.  I appreciate that Mr. Shaeffer is politically

6      prominent in the Republican party and you said that all of

7      your client's are active in one way or another.  What's

8      the disqualification argument?  They seem to be not in the

9      same category as Mr. Dillon's client.

10         ATTORNEY PEARSON:  Your Honor, I would agree that

11     Senator Jones has the most direct conflict.  In our view

12     not to ask for more relief than the senator himself has

13     asked for, in our view that remedy is not sufficient to

14     address that conflict, and the conflict is exacerbated --

15     the evidence, by the politicization of our client's cases

16     and our client's processes.

17         THE COURT:  Again, I'll have to have you explain what

18     you mean by politicization, given that it was your

19     client's were doing?  What is politicization their

20     politicizing their activity, their political choices,

21     their connection to a political -- what's politicization

22     about it. other than talking about that which is

23     inherently political; I'm not following.

24         ATTORNEY PEARSON:  I think it's a great distinction,

25     Your Honor.  We're not talking about -- although we're

1    talking about political things, we're talking about

2    political motivation by one party against another party,

3    and to actions taken in one uniform direction against

4    republican candidates, prominent republican actors --

5         THE COURT:  Was there a third group of alternate

6    democrat electors in case the democrat electors -- I'm not

7    aware that another group that the special purpose Grand

8    Jury should be investigating in connection with Republican

9    efforts to create republican alternate electors and to

10   challenge the outcome that, at that time, and continues to

11   show that a democrat won.  I was going to press Ms. Cross,

12   but she didn't go there about partisan, because partisan

13   has lots of meanings.

14        I don't think that partisan, the case that she cited

15   was democrat and republican, it was I'm partisan because

16   I'm trying to get this guy prosecuted.  I have a stake in

17   the outcome of this prosecution.  That is not where her

18   argument went today, but everything about this is

19   inherently political, because two political parties

20   collided, someone appears who have won, and folks who

21   appear to have lost didn't like that outcome and said

22   appearances can be deceiving and took some steps, and the

23   question is where those steps legal, and that's the

24   purpose of this special purpose Grand Jury is

25   investigating, so it seems to me utterly unremarkable that

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

88

1    your clients are all republicans.  What would be

2    remarkable is if they weren't.  What's the politicization

3    because I don't want to miss it if there's a reason to be

4    concerned, but you're not asking, I'd hope for, we have to

5    have a Republican District Attorney investigate this

6    because that's the only way it will be fair.

7         ATTORNEY PEARSON:  No, not at all, Your Honor.  I

8    think the process, well, I know Mr. Dillon's motion is

9    that the Attorney General would be allowed to designate

10   the replacement, and so we think that should be done,

11   because I think the appearance of impropriety with Senator

12   Jones taints the entirety as office of the entire

13   investigation, not just with regard to him as the remedy

14   for what I'm trying to say, but you are correct that our

15   focus was quashal, and that we are joining in that motion

16   as an add on.

17        I would also say, Your Honor, that just on behalf of

18   my clients, you asked if there is another slate that they

19   should be investigating, and I would argue under the

20   authorities that I put in our motion to the extent we were

21   contingent electors, and so were the democrats, because

22   there was a pending judicial challenge that made it joint.

23        And so, yes.  The answer to your question is that

24   both electors were contingent about time contingent on the

25   judicial outcome which never came.

          HADASSAH J. DAVID, OFFICIAL COURT REPORTER

                                                    89

```
 1            THE COURT:  Okay.  I appreciate that perspective, but
 2       you did say you are seeking -- I'm paraphrasing you, more
 3       relief or greater relief than Mr. Dillon was seeking, but
 4       then I thought you ended it by saying we want what Mr.
 5       Dillon recommended, which is push for his client, Senator
 6       Jones situation to the Attorney General, and let the
 7       Attorney General decide should I, the Attorney General,
 8       find another District Attorney in her office to see if it
 9       bares having a conversation with Senator Jones, or
10       investigating, or sending a letter, whatever they choose
11       to do.  What's the difference between that and what you
12       think I ought to do in terms of disqualification and your
13       clients?
14            ATTORNEY PEARSON:  Your Honor, I think the
15       disqualification, if there is one, it is disqualification
16       to the entire investigation, and the disease cannot be
17       cabin to Senator Jones alone --
18            THE COURT:  Okay.
19            ATTORNEY PEARSON:  -- because it's still the special
20       Grand Jury being advised by this District Attorney, and
21       the report would still be advised by this District
22       Attorney, and so we don't believe that's a sufficient
23       cure, and that if there's a disqualification, it should be
24       from the entire investigation and not just from Senator
25       Jones.
```

1      THE COURT:  I follow that, and I thank you so much.

2      ATTORNEY DILLON:  Just as a suggestion, Judge, and my

3  learned counsel points to my own brief at page 6.  The

4  Magloclin(sp.) case, Magloclin v. Payne indicates that

5  where the elected District Attorney is totally

6  disqualified from the case, everybody in the office is.

7  Here the special grand jury has two focuses.

8      One, the focus of the call between the president and

9  the Secretary of State's office, and perhaps other

10  officials that related to finding the votes.  That's one

11  aspect of it, and then there's the other aspect of it that

12  could be carved off and sent to Mr. Carr's office to say,

13  let's find a new District Attorney who doesn't have a dog

14  in this hunt and do an investigation, do a proper

15  investigation.

16      They can still have this other aspect of it, but a

17  new District Attorney could come in and look at the

18  evidence.

19      THE COURT:  So without agreeing that there are only

20  two aspects to what the special purpose Grand Jury is

21  investigating, your creative idea is if I determine that

22  there is going to be disqualification, it could be not as

23  to individuals, but as to subject matter, and so this

24  question of an alternate slate of electors, if that is

25  something that needs to be further investigated, create a

1   separate entity to do that, that's not supervised by this

2   District Attorney?

3       ATTORNEY DILLON:  That's correct, Your Honor.

4       THE COURT:  Okay, thank you.  All right.  I think

5   we've covered everything, but let me find out from Ms.

6   Cross, Mr. Wade, Mr. Wakeford.  Anything else from the

7   District Attorney's office?

8       ADA WADE:  Nothing, Judge.  Thank you.

9       THE COURT:  Okay.  Mr. Dillon or Ms. Clapp, anything

10  further from Senator Jone's legal team?

11      ATTORNEY DILLON:  No, Your Honor.

12      THE COURT:  Ms. Pearson, Ms. Deborrough, anything

13  else from your clients?

14      ATTORNEY PEARSON:  No, Your Honor.  Thank You.

15      THE COURT:  All right.  So we're clear, some things

16  I'll need to memorialize in writing.  I am not quashing

17  the subpoenas.  I'm repeating myself, but I will be

18  issuing an order, a written order on the question of

19  disqualification, and it will address, not just Mr.

20  Dillon's client, bur Ms. Pearson and Ms. Deboroughs'

21  clients as well.

22      I'll probably put in there a little bit about the

23  timing of the issuance of the report, but I want to make

24  it clear now in front of everyone what I've heard from the

25  District Attorney's office as well, there is no plan for a

HADASSAH J. DAVID, OFFICIAL COURT REPORTER

1    date right now anyway.  It's not available.  If the way

2    the investigation flows, insofar as it stays with this

3    District Attorney's office and the special purpose Grand

4    Jury, that Grand Jury disgorges it's final report

5    somewhere near the election, it will not be published and

6    released until after the election.

7        I'll put that in writing as well, because from my

8    brief conversation with the grand jurors, just to check in

9    on their health and well being, they don't have that light

10   at the end of the tunnel, but things could change, and if

11   suddenly their work is done I will make sure that there is

12   a meaningful time buffer between release and election, and

13   it may well be that we need to publish the plan -- if it's

14   going to be released.  If the report is going to be

15   released before the election we make sure when that

16   elected date is, so that if people have concerns or

17   objections we could file those and we could air that out

18   before the release.

19       I'd be shocked if there is a report before then.  I'm

20   trying to prime interim report just for me from them on

21   how things are going.  I don't know at all how they do

22   that, so we'll see how that goes.  I appreciate everyone's

23   time, so with that you are all free to go.

24           (This matter has been adjourned.)

25

         HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                    93

1                              Certificate

2

3

4    STATE OF GEORGIA)

5    COUNTY OF FULTON)

6

7

8    I, Hadassah J. David, official court reporter in and for the

9    state of Georgia, do hereby certify that I did report and take

10   down the foregoing pages on the 21th day of July 2022, that it

11   is a true, accurate, and complete transcript of the proceedings

12   transcribed herein to the best of my skill and ability.  I

13   further certify that the transcript is in conformity with the

14   judicial counsel of georgia and the georgia board of court

15   reporting.  I hereby witness my hand and official seal this

16   15th day of August 2022.

17

18

19

20

21                    /S/ HADASSAH J. DAVID, CCR

22            _____

23          HADASSAH J. DAVID, OFFICIAL COURT REPORTER

24                    #4857-8554-6837-1968

25              FULTON COUNTY SUPERIOR COURT

             HADASSAH J. DAVID, OFFICIAL COURT REPORTER
                                                            94

**ADA GREEN: [1]** 51/7

**ADA WADE: [15]** 4/6
15/16 15/25 16/7 22/16
23/3 23/18 24/4 24/17
24/25 25/12 25/17 26/2
38/9 92/7

**ADA WAKEFORD: [14]**
12/4 12/9 13/18 14/19 15/2
29/15 30/25 31/5 31/9
31/14 31/16 34/12 34/17
36/10

**ATTORNEY CLAPP: [1]**
4/22

**ATTORNEY DILLON:**
**[93]** 4/15 4/18 5/13 5/21
5/25 7/1 7/3 7/12 9/17
10/22 29/20 29/23 30/8
30/16 30/18 32/1 32/16
32/20 32/23 33/7 36/20
44/2 54/6 54/13 54/16
54/22 54/25 55/15 55/22
55/25 56/2 57/18 58/7
59/11 59/19 60/7 60/13
60/16 60/22 61/14 62/1
62/3 62/11 62/19 63/15
63/22 64/2 65/21 65/23
67/12 68/3 68/6 68/23 69/2
69/18 69/25 70/4 70/7
70/11 70/13 70/16 71/2
71/12 71/15 72/2 72/6
72/12 72/17 72/19 74/1
74/23 75/4 75/18 76/4
76/10 78/14 78/23 79/17
80/5 80/11 80/14 80/17
80/19 80/21 81/5 83/16
83/19 86/5 86/8 86/17 91/1
92/2 92/10

**ATTORNEY**
**GREEN-CROSS: [53]** 4/1
4/11 42/17 44/4 44/7 44/19
44/22 45/1 45/14 47/5 49/2
49/23 50/2 50/9 50/13 51/1
52/7 52/25 53/5 59/3 59/5

59/24 60/4 62/15 68/22
69/5 69/23 70/2 70/5 70/9
70/14 70/19 76/6 76/13
77/2 77/7 77/18 78/11 79/3
79/7 79/12 79/16 81/8
81/20 82/3 82/5 82/8 82/10
82/16 84/6 85/20 85/23
86/2

**ATTORNEY PEARSON:**
**[26]** 5/4 5/7 17/21 18/7
18/12 18/24 20/21 21/21
26/3 26/6 27/16 28/5 29/1
33/10 33/13 36/17 37/2
40/4 41/7 41/24 87/9 87/23
89/6 90/13 90/18 92/13

**THE COURT: [189]**

## $

$150 [2] 64/25 65/1
$2,000 [2] 43/20 75/3
$270,000 [1] 63/13
$30,000 [1] 65/3
$32,000 [5] 9/23 10/5 57/9
 63/8 72/23
$50 [1] 75/14

## /

/S [1] 94/21

## 0

000024 [1] 2/3
00024 [2] 1/6 1/8

## 1

1-5 [3] 76/11 76/12 76/19
10 [1] 17/9
100 [1] 29/25
10:00 p.m [1] 41/20
11 [22] 2/11 4/25 11/21
13/5 13/20 14/15 18/5
18/13 20/5 23/10 23/24
26/20 27/2 36/15 37/1 37/1
40/8 41/15 50/7 50/13
66/25 73/4
112 [1] 23/13
12 [6] 14/16 14/17 15/12

15/16 16/7 38/4
12th [1] 58/23
14th [3] 53/8 80/14 80/15
15 [2] 33/1 33/3
15-12-100 [1] 29/25
157 [1] 79/9
15th [1] 94/16
16 [2] 58/14 67/4
170 [1] 79/8
1916 [1] 64/24
1936 [1] 64/24
1968 [2] 1/22 94/24

## 2

2-day [2] 78/5 80/12
2015 [1] 51/3
2020 [3] 15/15 66/13 73/16
2022 [3] 1/12 94/10 94/16
2022-Ex-000024 [1] 2/3
2022-EX-00024 [2] 1/6 1/8
21st of [1] 2/4
21th [1] 94/10
22 [8] 2/23 3/1 3/2 3/3 3/5
 3/9 3/10 3/14
24 [2] 3/2 3/8
241 [1] 51/2
25 [1] 1/12
26th [1] 37/4
27th [1] 37/4
28th [1] 37/4
298 [1] 51/2
2:00 [1] 2/4

## 3

3.8 [1] 71/19
30303 [1] 1/12

## 4

4857 [1] 1/22
4857-8554-6837-1968 [1]
 94/24

## 5

50 [2] 16/1 61/14
5th [1] 53/9

**6**

6th [3] 53/9 58/18 58/22

**7**

704 [1] 79/9

**8**

8554 [1] 1/22

**9**

99 percent [1] 11/24

**A**

a.m [1] 41/19
ability [7] 12/15 14/2 14/10
 26/15 32/12 64/19 94/12
able [12] 2/18 2/25 13/16
 14/8 16/2 17/2 28/18 45/8
 54/11 60/7 81/4 82/7
about [85] 2/4 4/5 6/4 8/24
 9/1 11/11 11/14 13/13
 15/14 15/16 15/20 16/25
 17/3 19/16 20/2 22/1 22/2
 23/11 24/4 25/25 26/5
 26/11 29/18 33/24 34/18
 34/23 34/25 36/3 37/23
 38/16 38/21 39/4 40/20
 41/17 42/2 42/5 42/7 42/10
 43/15 43/16 47/4 48/23
 52/10 53/2 53/21 57/16
 57/16 58/1 59/1 60/6 61/8
 61/17 62/9 63/1 64/7 64/8
 64/9 64/22 64/24 65/2 65/3
 67/11 67/22 67/24 72/9
 72/10 72/19 73/19 75/10
 78/4 80/1 81/7 81/22 82/23
 83/8 84/17 87/22 87/22
 87/25 88/1 88/1 88/12
 88/18 89/24 92/22
absence [1] 19/21
absolute [1] 47/17
absolutely [2] 54/23 68/4
abuses [1] 26/10
accept [1] 70/24
accepted [1] 77/10

accepting [1] 47/6
access [2] 70/8 82/6
accident [1] 65/6
accommodate [2] 36/7
 39/3
accommodations [1] 36/6
according [1] 63/3
accurate [4] 49/25 69/10
 70/22 94/11
accurately [1] 26/8
accused [1] 71/19
acknowledge [2] 6/2 64/16
acknowledged [1] 64/17
action [5] 47/17 49/7 53/22
 61/21 78/23
actions [1] 88/3
active [1] 87/7
actively [1] 20/19
activity [1] 87/20
actors [1] 88/4
actual [30] 8/3 43/1 43/2
 43/8 43/9 44/15 45/4 45/7
 45/17 46/5 46/19 51/24
 52/4 53/22 53/23 54/5
 55/14 57/22 59/17 61/5
 61/19 61/21 65/15 73/19
 73/20 78/1 79/12 82/1
 83/10 83/12
actually [11] 5/23 16/17
 19/18 25/7 28/22 33/2
 33/14 35/7 68/15 76/7
 82/13
ADA [2] 1/15 1/16
adaptation [1] 8/3
add [9] 21/21 21/23 22/14
 22/16 36/13 76/23 78/13
 86/25 89/16
addition [1] 20/23
address [8] 2/18 29/16
 34/13 38/22 61/21 85/14
 87/14 92/19
adjourned [1] 93/24
admission [1] 77/16
admit [3] 78/16 80/19 84/4

admitted [12] 70/25 76/18
 77/7 77/21 78/10 78/10
 78/17 81/10 83/14 83/16
 83/16 83/18
admonishment [1] 84/11
adopted [1] 87/2
adoption [1] 2/10
advance [8] 3/3 3/8 23/24
 24/3 39/12 40/13 40/16
 41/11
advantage [1] 35/19
adverse [1] 32/13
advise [1] 83/11
advised [3] 58/21 90/20
 90/21
adviser [4] 8/2 47/3 47/23
 48/7
advises [2] 82/22 83/8
advocated [1] 47/11
affairs [1] 18/20
affect [3] 53/16 57/25
 74/25
affected [3] 7/14 20/6 34/6
affecting [1] 74/20
affidavit [5] 51/21 68/25
 82/13 82/19 86/4
affiliated [1] 3/25
affiliations [2] 50/22 52/2
after [15] 9/25 10/18 35/2
 35/11 37/8 52/25 58/24
 62/8 63/8 80/9 80/14 80/16
 82/4 85/17 93/6
afternoon [8] 2/2 2/5 4/2
 4/7 4/16 84/11 84/14 84/19
afterwards [1] 68/2
again [6] 20/20 36/8 54/3
 60/1 77/22 87/17
against [6] 12/14 21/12
 22/9 31/19 88/2 88/3
age [1] 66/17
agencies [1] 8/17
ago [4] 10/1 64/15 72/4
 75/14
agree [14] 6/25 13/14

**A**

agree... [12]  19/22 23/21 24/1 43/14 43/18 44/2 44/3 54/1 65/10 76/25 79/11 87/10
agreed [2]  13/12 17/7
agreeing [1]  91/19
agreement [2]  21/19 37/18
ahead [5]  10/19 14/4 29/23 40/6 59/13
air [1]  93/17
AJC [3]  62/8 64/10 67/17
alarm [1]  84/4
aligned [3]  65/12 65/13 71/25
all [60]  3/12 3/13 4/13 5/9 13/21 14/25 17/1 17/25 18/1 18/2 18/5 20/5 20/21 20/25 21/5 21/15 21/25 30/10 31/8 31/16 34/7 34/17 37/1 37/1 37/4 39/16 39/17 39/19 39/20 40/22 41/1 41/9 42/5 43/9 47/13 47/19 49/25 53/11 54/1 57/6 60/9 61/11 62/5 63/19 65/18 67/4 67/6 69/17 75/5 78/13 78/16 80/19 82/10 87/6 89/1 89/7 92/4 92/15 93/21 93/23
allegation [2]  49/8 51/21
allocated [1]  37/5
allowed [2]  35/3 89/9
allowing [1]  26/23
allows [1]  45/3
ally [1]  45/22
almost [2]  47/4 49/20
alone [2]  61/11 90/17
along [2]  24/3 83/18
already [8]  11/10 20/5 25/7 53/13 54/6 56/23 62/13 75/12
also [11]  4/19 18/16 40/12 48/8 56/1 75/3 77/11 83/10 83/21 83/24 89/17

altered [1]  69/15
alternate [15]  2/12 4/25 11/22 13/13 13/15 14/18 15/14 18/24 22/5 22/7 39/17 61/1 88/5 88/9 91/24
although [3]  51/20 79/22 87/25
always [2]  35/17 36/6
am [9]  3/11 20/19 28/11 31/3 39/25 44/9 49/14 85/3 92/16
ambiguous [8]  20/11 27/11 27/23 27/25 28/1 28/4 28/4 28/10
amenable [1]  41/9
amended [1]  82/19
amendment [30]  4/6 4/10 5/12 6/5 6/9 6/21 9/2 9/3 11/3 11/12 13/2 14/7 14/12 15/23 16/13 17/8 17/11 19/5 23/7 25/11 25/15 27/22 29/19 35/1 36/9 36/17 36/20 38/3 38/9 43/17
amount [1]  47/14
ample [1]  16/11
analysis [4]  6/21 9/2 9/3 9/5
anchored [1]  49/16
ANNA [4]  1/17 1/18 4/3 4/19
announced [1]  67/5
another [9]  11/9 41/12 73/20 82/12 87/7 88/2 88/7 89/18 90/8
answer [12]  11/1 11/2 11/20 14/20 16/3 24/14 27/3 32/23 38/1 41/6 74/19 89/23
answered [1]  17/17
answering [5]  12/25 13/17 28/21 42/8 55/13
answers [2]  3/23 17/18
antennas [1]  12/22

anticipated [1]  68/8
any [53]  2/22 6/18 7/25 11/20 13/6 13/17 14/15 14/17 15/23 17/11 19/18 20/19 22/18 22/19 25/2 28/18 28/21 29/3 29/5 30/3 34/6 35/14 35/16 36/24 43/22 47/17 47/17 48/24 49/16 50/3 50/4 50/5 52/11 53/1 53/3 53/21 60/9 61/21 65/23 68/1 69/14 69/15 73/14 75/17 77/5 77/10 77/12 77/20 78/3 78/22 83/15 84/15 85/14
anybody [1]  73/4
anybody's [1]  81/14
anymore [1]  75/16
anyone [7]  3/22 4/18 4/18 5/6 22/4 25/14 48/4
anything [24]  9/11 19/13 19/17 22/14 22/22 26/13 32/15 34/25 36/8 36/15 36/19 37/19 43/19 47/10 52/12 54/6 67/21 69/15 73/19 78/13 86/24 92/6 92/9 92/12
anyway [2]  79/16 93/1
anywhere [1]  84/15
apologize [1]  18/17
apparatus [1]  73/13
apparent [8]  53/16 53/19 61/5 73/18 73/23 74/6 75/21 79/12
apparently [4]  3/17 7/11 84/20 85/21
Appeals [1]  79/9
appear [9]  6/9 6/22 9/6 12/15 14/3 24/8 31/17 37/11 88/21
appearance [26]  5/3 10/6 31/19 42/16 42/19 42/21 42/21 42/24 44/10 44/17 45/6 46/25 53/24 54/2 54/5 55/13 57/21 57/23 61/19

**A**

appearance... [7] 61/22 65/14 66/9 78/21 83/13 86/20 89/11

appearances [6] 1/14 5/17 27/7 40/3 81/22 88/22

appeared [1] 34/23

appearing [1] 5/1

appears [3] 67/2 78/2 88/20

appellate [1] 31/8

applause [2] 4/21 4/23

applicable [1] 56/6

applies [1] 33/9

apply [3] 28/15 39/15 83/24

appoint [1] 66/10

appointed [1] 10/12

appreciate [8] 8/1 11/1 16/11 29/15 35/13 87/5 90/1 93/22

approach [8] 8/7 16/25 46/21 51/5 59/22 62/20 74/15 82/15

approaching [1] 15/5

appropriate [4] 17/16 27/13 40/1 73/12

approval [1] 3/5

approves [1] 27/5

are [116]

area [6] 14/11 15/1 26/22 38/7 53/20 55/17

areas [7] 14/6 14/13 16/4 16/21 17/6 17/7 39/21

aren [2] 16/21 27/15

aren't [1] 40/6

arguably [2] 19/10 34/1

argue [1] 89/19

argued [1] 77/24

argument [7] 32/9 42/8 59/22 86/14 86/19 87/8 88/18

arise [1] 49/13

arm [2] 20/18 21/1

around [7] 15/10 16/23 20/18 35/4 35/7 35/8 42/12

arrived [1] 43/16

article [1] 64/9

as [113]

ascertain [1] 70/21

ask [17] 13/13 14/3 15/20 15/22 26/1 26/5 26/23 27/6 29/12 29/13 38/5 39/3 69/24 73/7 76/7 83/13 87/12

asked [10] 9/10 15/11 17/17 19/4 19/13 23/22 35/21 41/25 87/13 89/18

asking [10] 15/12 15/16 24/25 26/18 34/9 36/24 40/25 46/20 67/21 89/4

aspect [3] 91/11 91/11 91/16

aspects [3] 15/15 36/20 91/20

assert [8] 13/2 15/21 15/22 16/2 16/13 16/14 25/23 28/12

assertion [2] 4/6 11/11

assessment [2] 14/1 14/14

assist [1] 39/25

Assistant [1] 71/16

associate [2] 4/19 54/7

assume [3] 20/5 25/6 39/18

assuming [3] 61/3 78/10 83/16

assured [2] 55/6 59/10

astringent [2] 56/5 56/8

astrological [1] 37/20

Atlanta [1] 1/12

attack [1] 16/5

attempt [2] 22/18 25/14

attended [1] 70/18

attention [8] 8/13 20/16 29/25 31/3 38/17 42/22 47/16 52/1

attorney [72] 1/17 4/4 4/8 6/17 8/1 9/22 10/12 17/12

22/24 23/3 32/4 38/4 41/13 43/1 43/10 43/21 44/1 44/10 44/11 45/9 45/12 45/18 46/14 47/1 47/21 47/23 48/13 48/19 51/9 51/16 53/18 57/17 61/8 61/11 62/23 63/3 65/11 66/10 68/16 68/24 69/17 69/22 71/7 71/22 73/6 73/13 74/6 74/10 74/11 74/23 74/24 75/2 75/3 75/11 75/12 75/19 76/1 81/17 81/23 84/12 89/5 89/9 90/6 90/7 90/7 90/8 90/20 90/22 91/5 91/13 91/17 92/2

Attorney's [35] 2/14 3/23 7/24 8/5 9/14 10/11 11/6 11/9 18/6 35/6 36/8 38/12 39/10 40/12 41/7 41/22 50/21 57/25 59/2 60/13 67/11 67/14 67/25 68/20 71/6 72/8 77/13 79/25 81/20 82/22 83/25 84/16 92/7 92/25 93/3

attorneys [8] 1/19 50/20 64/11 69/17 75/22 82/25 83/8 85/8

attributing [1] 43/19

August [1] 94/16

authenticate [1] 79/23

authentication [1] 70/24

authenticity [4] 62/18 69/8 76/15 83/21

authorities [1] 89/20

authority [10] 26/14 33/19 34/5 34/6 34/7 48/2 61/23 66/7 73/11 74/12

authorized [2] 8/22 30/3

authorizes [1] 16/12

AVA [2] 21/6 29/10

available [5] 63/4 63/7 78/4 80/17 93/1

avalanche [1] 63/18

**A**

avoid [1]  55/9
avoided [1]  35/15
avoiding [1]  55/12
aware [4]  12/7 20/19 74/2
88/7
away [2]  5/2 26/25

**B**

back [5]  3/9 51/25 59/9
61/20 83/22
bad [1]  67/6
badgering [1]  14/9
Bailey [22]  9/21 9/23 43/20
43/21 43/24 43/25 49/22
53/8 62/1 62/5 62/24 63/9
63/13 64/1 66/5 75/20 78/5
81/15 81/16 81/18 81/25
86/20
Bailey's [3]  75/4 80/8
81/12
balanced [1]  46/21
Bank [2]  16/15 25/22
bares [1]  90/9
barrage [1]  16/1
barred [1]  28/19
based [3]  20/16 55/16 78/2
basic [2]  11/10 40/15
basically [2]  35/16 38/5
basis [3]  13/14 71/8 79/19
be [188]
bearing [1]  48/24
because [73]  2/16 3/2 3/14
6/5 6/9 10/14 10/21 11/5
11/6 13/8 16/18 18/10
21/11 22/3 27/17 29/6
29/10 30/9 30/21 32/15
33/4 35/21 37/7 37/20 38/5
38/7 39/6 39/8 40/19 41/4
41/5 41/15 41/16 43/23
44/6 48/9 52/1 52/19 53/13
53/19 55/5 56/24 58/15
59/21 61/24 65/15 66/7
66/17 66/18 70/22 71/23

73/4 73/19 74/18 74/21
75/16 75/24 78/7 79/25
81/15 82/12 85/3 86/14
86/17 88/12 88/15 88/19
89/3 89/6 89/11 89/21
90/19 93/7
become [4]  20/15 37/7
45/12 76/24
becoming [1]  81/25
been [45]  2/6 5/21 6/15 7/5
7/6 7/14 7/21 11/25 12/17
16/23 17/2 18/2 20/5 25/7
27/25 29/19 31/10 34/21
35/21 41/2 41/23 47/18
50/16 51/5 51/10 51/16
59/16 63/16 63/17 66/3
67/23 69/15 70/23 71/25
72/1 75/17 76/15 77/24
77/24 81/10 82/18 84/15
85/12 85/16 93/24
before [38]  1/11 2/22 9/6
12/3 12/15 16/14 22/11
27/5 27/7 29/14 31/17
34/24 35/2 35/9 36/7 38/17
39/6 42/4 42/17 45/19
45/20 48/14 49/1 54/22
54/24 59/7 59/7 59/22 60/2
63/1 68/1 80/14 81/2 82/20
85/25 93/15 93/18 93/19
began [2]  12/11 72/21
begin [1]  12/5
beginning [1]  25/10
behalf [11]  2/6 2/11 4/24
5/6 13/4 34/9 36/15 43/10
47/11 64/12 89/17
behind [4]  63/22 71/25
72/1 74/19
being [28]  7/8 7/16 9/10
12/14 20/4 20/20 27/12
35/10 41/2 41/3 41/16 49/6
65/6 65/7 66/6 67/23 74/23
74/24 76/18 77/4 77/9
77/13 77/21 78/9 83/15
83/18 90/20 93/9

believe [18]  5/15 12/10
13/14 14/8 14/14 34/4
34/14 34/20 38/10 39/16
45/4 46/9 49/25 52/13
60/19 76/15 84/10 90/22
bend [1]  61/20
benefit [2]  64/20 66/5
benefiting [1]  65/8
best [2]  8/15 94/12
better [3]  8/10 11/7 26/10
between [10]  9/11 13/23
14/4 18/3 23/16 40/8 54/3
90/11 91/8 93/12
beyond [6]  15/13 38/6
51/18 51/19 51/19 78/19
big [7]  3/4 3/12 3/18 8/25
17/14 63/17 63/24
bigger [1]  57/4
bill [3]  1/18 6/14 6/20
bit [8]  22/1 36/4 41/16
57/11 65/15 76/25 81/23
92/22
blah [3]  30/6 30/6 30/6
blanket [1]  11/19
blast [1]  54/22
blasted [1]  54/24
blockbuster [1]  62/22
blue [1]  60/11
board [1]  94/14
body [1]  28/20
bolts [1]  40/17
bombing [1]  58/12
books [1]  30/6
both [3]  5/16 21/19 89/24
bottle [1]  55/6
bottom [1]  74/16
bouncing [1]  16/23
bound [1]  27/23
brand [1]  54/13
brief [12]  10/1 40/3 42/23
50/19 55/21 56/1 64/15
72/5 74/4 81/9 91/3 93/8
briefly [3]  26/4 85/18 86/6
bright [1]  17/14

## B

bring [5]  3/11 3/15 26/10
29/9 51/25
bringing [4]  3/16 3/16 3/17
12/3
brings [1]  72/20
broad [2]  17/13 45/5
broadcasted [1]  50/12
broke [2]  60/18 60/25
brought [7]  8/13 11/3
14/23 29/14 35/10 42/1
48/2
bucket [5]  15/21 16/6
21/14 27/5 37/17
buckets [8]  15/20 16/3
17/3 21/15 23/12 23/21
26/21 29/13
buckle [1]  40/14
buffer [1]  93/12
build [1]  11/13
building [6]  3/4 35/22
35/23 37/16 38/21 38/22
buildings [1]  17/15
bur [1]  92/20
burden [3]  21/13 51/14
85/16
business [1]  73/5
buzz [1]  64/9

## C

C.I [1]  1/11
cabin [1]  90/17
cable [1]  47/13
call [8]  2/11 12/23 12/23
13/3 21/14 29/24 32/11
91/8
called [4]  16/14 27/17 35/3
41/21
came [5]  36/3 65/19 72/8
84/19 89/25
cameras [8]  3/4 3/12 3/18
19/25 34/10 34/16 35/15
38/25
campaign [5]  51/16 51/17

63/6 75/4 78/5
can [86]  3/21 6/23 10/12
13/6 15/6 15/7 15/7 15/8
15/19 21/12 21/14 21/14
21/15 22/3 22/8 23/21
23/22 24/16 26/8 26/11
26/17 27/7 27/8 27/8 27/9
27/23 29/5 32/11 32/12
32/14 32/15 33/24 33/25
34/1 34/24 35/20 35/22
35/24 36/6 36/7 37/11
37/11 37/12 37/15 37/19
37/22 37/23 37/24 38/7
38/21 38/24 39/3 41/11
47/12 48/8 48/8 56/16
56/17 57/4 57/7 58/17 59/8
59/9 62/14 62/23 67/25
69/24 70/21 70/24 73/19
74/9 74/21 75/23 76/5
76/11 77/1 78/10 78/18
81/3 82/2 84/3 84/7 85/19
85/21 88/22 91/16
can't [8]  3/13 21/11 58/4
65/16 69/7 69/11 73/18
85/11
candidate [8]  20/23 45/25
58/4 58/5 58/7 62/24 64/3
87/5
candidates [1]  88/4
candor [1]  70/16
cannons [1]  30/10
cannot [3]  19/3 26/21
90/16
capital [1]  46/25
care [1]  69/11
career [1]  58/1
careful [1]  41/16
carefully [1]  59/20
carpet [1]  58/12
Carr [1]  75/2
Carr's [2]  74/7 91/12
carry [1]  43/8
carved [1]  91/12
case [50]  1/6 2/8 2/8 5/24

7/7 9/22 10/13 12/6 12/8
14/2 14/8 16/11 30/20
30/22 30/22 32/5 33/1 40/1
43/3 43/6 45/19 45/20
47/17 50/23 51/8 51/11
51/15 51/18 55/7 55/20
55/21 56/17 56/19 57/1
57/3 57/6 58/11 63/2 73/2
73/4 78/20 78/20 78/25
78/25 79/9 79/15 88/6
88/14 91/4 91/6
cases [6]  27/24 64/23 65/1
78/20 79/7 87/15
cash [1]  63/20
categories [2]  15/18 23/15
category [2]  30/19 87/9
caught [1]  20/11
cause [2]  49/14 49/20
caused [2]  12/21 63/17
CCR [2]  1/21 94/21
center [1]  43/7
certain [4]  8/18 11/12 28/9
39/18
certainly [10]  12/21 21/23
25/13 28/6 49/5 61/10
66/15 67/13 68/10 75/25
Certificate [1]  94/1
CERTIFIED [1]  1/23
certify [2]  94/9 94/13
cetera [1]  9/4
chain [2]  19/6 19/16
chair [1]  18/18
chairman [1]  20/24
challenge [4]  9/17 37/25
88/10 89/22
chance [3]  42/10 49/11
54/21
change [5]  12/14 25/2
36/25 50/15 93/10
changed [1]  66/24
channel [1]  48/20
chapter [2]  32/7 33/5
characterization [1]  47/7
charge [2]  12/14 56/20

# C

charged [2]  31/10 31/11
charges [4]  6/17 6/18 19/7
67/7
charging [1]  31/11
Charlie [8]  9/21 9/23 43/24
43/25 49/21 61/25 64/1
75/4
check [5]  21/18 45/25
63/11 63/12 93/8
checking [2]  41/18 63/20
checks [2]  3/14 63/18
choices [2]  58/5 87/20
choose [1]  90/10
choosing [1]  47/14
chronological [1]  9/16
circle [1]  80/3
circumstances [5]  20/11
26/24 27/12 27/23 27/25
circumvent [1]  25/14
circus [4]  7/6 35/6 35/8
74/19
cite [7]  21/7 25/20 30/22
51/1 55/24 79/8 79/13
cited [2]  42/23 88/14
cites [2]  55/21 56/3
citing [1]  33/10
city [1]  31/5
civic [1]  55/8
claim [1]  16/20
claims [1]  84/24
CLAPP [11]  1/18 4/19
4/21 4/23 5/10 23/11 53/12
54/10 59/9 76/10 92/9
Clapp's [1]  87/3
clarification [1]  13/20
clarify [3]  17/24 35/11
49/5
clarity [2]  40/9 79/18
Clayton [2]  12/9 31/4
clear [12]  26/19 27/21
37/19 41/18 42/16 53/7
76/21 78/11 82/2 85/13
92/15 92/24

clearer [1]  52/21
clearly [3]  3/10 34/7 81/17
clears [1]  37/11
client [31]  5/19 7/8 9/21
9/25 11/21 17/1 17/7 20/18
24/22 24/23 25/2 25/11
37/15 57/15 59/15 60/12
61/6 61/19 62/6 63/2 66/6
67/20 67/22 70/18 72/1
72/4 72/4 86/21 87/9 90/5
92/20
client's [7]  17/14 19/3
73/15 87/7 87/15 87/16
87/19
clients [23]  5/7 13/5 17/25
18/10 19/11 19/19 20/5
20/20 22/25 24/20 26/23
34/9 36/1 36/5 36/5 36/15
38/14 66/25 89/1 89/18
90/13 92/13 92/21
climb [1]  65/16
clones [1]  39/21
closing [1]  81/7
clothes [1]  38/24
co [2]  45/11 45/13
cocktail [2]  46/19 47/12
code [3]  29/25 32/7 33/3
codefendant [1]  46/7
collaborate [1]  40/7
collaboration [1]  40/11
colleagues [1]  15/12
collide [1]  8/13
collided [1]  88/20
come [21]  7/25 16/21 17/1
21/13 25/21 25/23 27/4
28/20 34/24 35/9 37/2 40/7
41/23 44/12 48/12 48/14
58/9 63/18 66/1 84/5 91/17
comes [7]  25/16 48/16
48/17 67/8 68/1 79/6 84/8
comfortable [3]  12/25 26/1
26/23
coming [8]  27/1 37/1 37/4
38/15 38/18 40/20 41/1

77/14
comment [1]  85/15
comments [1]  71/17
commonalities [1]  39/18
commonality [1]  13/22
communicated [1]  36/22
communication [1]  18/6
compel [2]  30/4 33/24
compelled [2]  23/1 31/17
complaining [1]  38/16
complete [7]  8/14 10/10
37/24 69/10 70/19 70/22
94/11
completed [1]  52/23
compulsory [1]  22/11
concern [14]  8/6 24/10
25/9 36/3 38/20 39/2 46/24
48/23 53/20 66/1 71/23
84/6 84/11 85/14
concerned [4]  24/12 24/13
69/14 89/4
concerning [1]  15/23
concerns [13]  3/23 5/12
6/5 6/6 11/3 14/22 20/1
23/7 36/9 36/17 41/17
42/14 93/16
conclude [4]  6/22 24/7
56/12 73/10
concluded [1]  51/20
conclusion [2]  54/4 56/14
condemnation [1]  71/18
conditionally [1]  78/9
conduct [2]  10/8 74/7
conducted [1]  56/16
conducting [3]  13/10 30/2
67/18
conference [3]  39/6 39/9
39/12
confidence [4]  46/12 56/15
56/17 56/22
confidential [1]  58/25
confirmation [1]  72/15
confirmed [1]  72/10
confirming [1]  41/5

**C**

conflict [54]  5/13 6/6 42/16
42/21 42/24 43/2 43/8
44/15 44/18 45/4 45/6 45/7
45/18 46/5 46/19 47/9
47/15 52/4 53/20 53/22
53/23 53/25 54/2 55/14
55/14 55/18 56/10 56/13
57/21 57/22 61/5 61/5
61/19 61/19 61/22 61/22
65/15 66/9 73/7 73/18
73/21 73/23 74/6 74/11
75/23 78/22 82/22 82/24
83/10 83/12 85/17 87/11
87/14 87/14
conflicts [3]  53/17 73/20
79/12
conformity [1]  94/13
conjecture [1]  43/2
connect [1]  15/8
connection [17]  6/11 11/15
11/21 13/10 15/1 18/19
22/5 22/6 36/16 58/1 65/20
65/22 65/23 73/15 75/17
87/21 88/8
consequence [1]  52/6
consequences [1]  25/5
consider [1]  58/25
considered [1]  68/12
considers [1]  84/8
conspiracy [1]  74/17
Constitution [1]  85/1
constitutional [2]  19/20
84/25
constructing [1]  30/11
consult [2]  85/18 85/19
contain [1]  6/16
contend [1]  10/6
contested [1]  20/19
context [3]  11/12 13/17
18/10
contingent [3]  89/21 89/24
89/24
continue [2]  8/22 31/9

continues [1]  88/10
contrary [2]  53/4 58/18
contribution [1]  75/6
controls [1]  55/17
controversial [1]  58/2
conversation [7]  23/21
23/23 37/17 37/22 37/23
90/9 93/8
conversations [1]  52/10
converted [1]  18/2
conveyer [1]  33/19
convince [1]  53/25
cooperate [2]  10/14 10/16
copies [1]  51/4
copy [10]  50/24 50/25 51/3
59/23 59/25 67/15 69/25
80/22 86/1 86/2
correct [9]  7/22 17/22
17/23 48/4 49/17 56/7 68/4
89/14 92/3
correspondence [1]  30/5
could [33]  3/9 8/13 17/15
19/4 19/9 19/13 19/15
19/16 19/17 19/18 19/19
23/1 26/18 28/24 32/10
33/6 40/21 41/2 46/6 52/9
62/9 63/19 66/11 78/22
79/23 83/22 86/18 91/12
91/17 91/22 93/10 93/17
93/17
couldn't [2]  52/11 73/8
counsel [12]  4/14 23/9
23/16 31/5 42/15 68/19
68/20 68/20 75/7 82/14
91/3 94/14
country [2]  66/21 74/18
COUNTY [11]  1/1 1/24
9/14 10/10 12/9 31/4 66/4
68/12 73/13 94/5 94/25
County's [1]  7/7
couple [4]  2/5 7/22 47/8
63/21
course [5]  22/3 47/18 62/6
83/11 84/21

court [57]  1/1 1/23 1/24
16/3 16/15 20/12 24/18
26/13 26/15 27/20 28/19
29/24 33/16 41/9 44/23
44/24 45/3 45/5 47/7 47/10
47/16 47/19 49/24 50/24
51/5 51/14 51/17 51/17
51/20 51/23 54/9 55/19
55/21 56/8 56/21 56/22
59/22 60/20 60/24 64/1
66/8 68/21 69/8 74/2 76/17
80/22 80/25 81/2 82/18
84/1 84/8 85/15 86/1 94/8
94/14 94/23 94/25
Court's [5]  15/19 49/8
51/25 60/22 83/7
courthouse [3]  36/2 38/25
39/1
courtroom [1]  34/11
cover [3]  8/6 44/6 54/6
coverage [1]  35/19
covered [3]  16/22 21/24
92/5
covering [1]  2/13
crazy [1]  45/11
create [8]  10/6 35/6 35/8
55/6 57/20 57/21 88/9
91/25
creating [1]  65/14
creative [1]  91/21
criminal [3]  13/1 13/16
45/12
critical [1]  56/18
critique [1]  46/11
CROSS [13]  1/17 4/3 4/11
31/7 54/12 54/15 54/21
76/24 79/11 81/3 81/7
88/11 92/6
Cross's [3]  53/14 53/17
72/16
crowded [1]  3/13
cure [1]  90/23
cures [1]  48/23
custom [1]  63/10

**C**

cut [1] 10/20
CVR [1] 1/21
cycle [1] 54/4

**D**

DA [14] 42/6 42/9 45/13
55/21 56/3 58/18 64/10
64/14 64/19 66/7 71/16
75/14 84/1 84/4
DA's [13] 2/7 3/24 3/25 7/7
7/17 18/3 55/6 64/23 66/4
66/14 67/9 68/18 71/16
daily [1] 67/17
damage [1] 20/4
data [1] 63/7
date [4] 40/21 55/5 93/1
93/16
dates [1] 38/14
Davenport [2] 78/24 79/12
DAVID [4] 1/21 94/8
94/21 94/23
day [19] 23/20 37/2 38/19
43/8 50/8 50/12 63/7 63/8
63/12 66/14 67/16 78/5
80/8 80/9 80/12 80/15
80/16 94/10 94/16
days [10] 10/1 10/18 38/19
58/23 60/17 60/24 62/7
64/15 72/4 80/8
deadline [2] 52/12 52/18
dealing [1] 19/13
deals [1] 82/21
dealt [1] 19/1
Deboroughs' [1] 92/20
DEBORROUGH [14]
1/19 13/4 14/23 16/25
21/23 23/10 24/20 36/10
36/15 39/19 43/15 50/8
86/25 92/12
Deborroughs [3] 4/25 5/1
37/10
Debrrorogh [1] 21/19
deceiving [1] 88/22

December [2] 66/13 75/18
decide [5] 15/13 16/2 90/7
decides [1] 48/11
decision [8] 13/14 46/11
48/18 51/3 56/23 57/17
63/1 65/11
decisions [2] 20/16 46/11
deemed [1] 56/14
default [1] 40/23
defendant [3] 45/11 45/13
51/10
defendant's [2] 56/19
56/20
defended [1] 46/7
defense [3] 45/9 45/12
59/25
define [1] 83/24
definiteness [1] 15/6
democracy [2] 66/20 74/17
democrat [4] 88/6 88/6
88/11 88/15
democratic [2] 74/10
75/22
democrats [1] 89/21
denied [1] 85/17
depression [1] 65/2
description [1] 49/15
design [1] 65/7
designate [2] 3/10 89/9
designation [1] 12/13
desk [1] 67/8
detail [1] 24/2
determination [1] 13/24
determine [5] 6/8 52/12
57/5 66/8 91/21
determined [3] 11/24
51/23 83/4
develop [3] 39/13 39/23
41/7
developed [1] 42/16
development [1] 61/18
device [1] 3/6
dictated [1] 50/5
did [24] 3/1 15/13 17/10

22/11 22/14 25/3 27/15
27/20 31/25 38/14 38/18
38/19 59/12 61/13 66/14
66/25 68/12 70/3 70/5
79/18 79/25 80/23 90/2
94/9
didn [5] 22/21 30/15 33/17
34/22 49/3
didn't [12] 2/17 54/6 61/11
61/12 64/12 76/16 79/2
79/13 86/12 86/15 88/12
88/21
died [1] 56/25
difference [1] 90/11
different [18] 2/22 11/1
16/3 17/5 18/19 27/9 28/6
28/8 28/17 28/17 28/18
30/19 30/23 32/8 33/12
33/22 53/15 56/9
differentiation [2] 18/3
33/12
differently [4] 18/16 18/23
30/21 86/14
difficulty [1] 18/21
DILLON [38] 1/18 4/15
5/10 20/1 20/18 23/11
29/17 31/23 32/1 36/19
42/7 42/20 43/14 43/18
47/11 49/11 49/19 50/25
51/4 52/21 53/12 59/8
59/10 69/8 76/20 76/25
78/14 78/19 79/22 82/13
82/20 84/10 85/25 86/5
87/2 90/3 90/5 92/9
Dillon's [4] 78/2 87/9 89/8
92/20
direct [9] 7/20 42/22 47/16
56/7 63/9 65/22 67/21
84/22 87/11
direction [1] 88/3
directly [4] 16/4 31/1
52/16 72/8
disadvantage [1] 23/25
disagree [5] 5/25 7/2 22/15

**D**

disagree... [2]  22/17 53/24
disagreement [1]  37/18
disagreements [1]  23/16
discharge [1]  56/25
disclose [3]  25/3 35/2
57/10
disclosed [4]  5/21 24/22
52/25 72/24
discreetly [2]  38/21 38/22
discretion [6]  28/14 44/18
44/24 44/25 45/5 47/10
discretionary [1]  44/16
discuss [1]  14/5
discussed [2]  11/18 30/21
discusses [1]  79/12
discussing [1]  80/3
discussion [6]  14/4 23/18
25/10 25/13 60/6 79/14
discussions [3]  11/10 23/8
24/19
disease [1]  90/16
disgorges [1]  93/4
disinterested [1]  56/16
dismissed [1]  25/8
display [2]  27/10 36/4
disputing [1]  33/25
disqualification [24]  4/11
6/11 7/1 7/4 8/7 9/8 29/18
29/22 42/5 42/13 42/25
43/15 44/16 52/22 57/12
73/9 81/8 87/8 90/12 90/15
90/15 90/23 91/22 92/19
disqualified [4]  9/10 10/11
51/10 91/6
disqualify [9]  2/7 2/9 2/9
2/15 4/4 72/17 73/25 84/22
87/1
distinction [1]  87/24
district [95]
diverse [1]  14/22
divided [1]  38/19
divorce [1]  45/20
do [82]  3/7 5/5 5/25 6/1

6/25 7/2 8/6 9/10 9/19 9/20
10/22 10/23 11/4 11/7
17/10 19/8 21/18 21/19
22/11 23/5 25/21 26/11
26/12 26/13 29/7 29/8 30/8
32/22 32/24 34/7 34/18
35/3 35/24 36/7 38/12 42/9
43/14 43/17 44/2 46/20
46/21 46/21 54/17 54/18
55/8 55/14 55/15 60/21
62/4 65/17 65/20 66/7
66/15 66/16 67/3 68/10
69/13 73/2 73/9 73/11
73/17 73/19 73/22 73/24
75/15 76/17 76/19 77/3
77/9 77/10 79/11 81/1
86/21 86/22 86/23 90/11
90/12 91/14 91/14 92/1
93/21 94/9
document [9]  57/5 58/13
59/7 63/5 67/4 69/7 70/21
78/1 78/6
documents [2]  30/5 57/6
does [13]  9/6 44/17 46/23
52/1 57/20 61/4 65/10
65/13 67/10 69/20 71/4
83/4 83/11
doesn [13]  9/4 9/12 13/5
26/13 29/7 30/9 30/23 43/7
45/23 45/23 47/14 48/9
48/21
doesn't [13]  6/22 12/14
17/7 41/5 42/13 51/9 54/3
67/9 74/10 74/11 75/23
76/2 91/13
dog [3]  76/2 76/3 91/13
doing [8]  20/10 25/16 26/1
27/10 28/25 85/2 85/3
87/19
dollars [2]  57/9 63/13
don [26]  4/18 8/23 12/1
17/11 19/11 19/17 20/21
22/15 22/23 23/1 23/23
23/24 26/19 27/24 28/3

28/10 29/8 29/9 32/24 44/6
44/23 45/2 45/4 46/4 48/10
48/23
don't [51]  3/22 6/10 6/25
9/9 11/19 11/19 12/19
18/20 19/1 20/4 27/19
28/15 35/25 38/8 39/16
40/1 41/21 48/19 52/13
53/4 53/13 53/23 53/25
55/5 55/23 59/17 62/3
62/17 67/13 69/6 71/1
71/21 73/11 76/9 76/19
77/5 77/15 77/20 77/23
78/3 78/6 78/7 79/1 79/17
80/3 86/16 88/14 89/3
90/22 93/9 93/21
DONALD [2]  1/16 4/9
donated [1]  78/5
donations [4]  43/18 43/22
43/23 43/24
done [19]  13/4 20/4 20/5
27/7 35/20 36/7 52/18 53/5
53/5 65/6 65/7 69/21 73/5
73/11 75/15 75/15 81/1
89/10 93/11
door [2]  58/14 67/4
doubt [3]  32/3 78/3 83/20
down [17]  15/20 21/16
24/15 26/25 27/6 27/10
37/14 57/7 58/10 59/9
66/11 74/13 74/14 76/9
78/19 85/20 94/10
downgrade [1]  25/6
downgraded [1]  25/7
downside [1]  52/5
drafted [1]  59/20
drag [2]  26/20 57/7
dragged [4]  21/16 26/25
27/6 27/10
draw [4]  29/3 32/13 38/17
52/1
drawn [1]  56/13
drips [1]  66/3
driven [1]  46/10

**D**

driver [1]  42/6
drone [2]  3/16 3/17
dropped [1]  12/18
drug [1]  7/8
due [1]  84/24
during [10]  22/8 31/18
 47/18 49/8 63/7 63/8 63/12
 69/21 75/8 78/5
duty [2]  47/21 55/8

**E**

e-mail [3]  59/3 77/8 77/12
e-mails [3]  19/16 20/9
 59/15
each [8]  13/24 14/2 14/13
 15/12 15/16 16/6 40/8
 40/10
earlier [3]  34/20 36/22
 68/25
earliest [1]  16/16
early [2]  10/15 40/11
easier [1]  82/6
echo [1]  20/1
effect [3]  8/17 49/14 49/20
effectively [1]  50/9
effort [5]  7/15 22/18 50/15
 66/20 72/25
efforts [1]  88/9
egress [1]  36/6
either [9]  5/10 19/5 26/14
 27/1 60/18 73/20 75/24
 76/2 76/24
elaborate [1]  40/6
elderly [1]  18/21
elected [4]  50/21 52/3 91/5
 93/16
election [20]  7/20 8/18
 15/15 18/20 20/19 49/2
 52/24 52/25 65/3 65/4 73/1
 73/16 74/20 75/1 81/16
 82/3 93/5 93/6 93/12 93/15
elections [1]  50/20
elector [6]  13/13 13/15

14/18 15/14 18/24 22/7
electoral [2]  21/1 54/4
electors [13]  2/12 4/25
 11/23 17/10 22/5 39/18
 61/1 88/6 88/6 88/9 89/21
 89/24 91/24
elevate [3]  45/3 58/5 58/6
elevation [1]  25/6
Eleven [1]  19/24
else [9]  4/18 5/6 36/13
 36/15 54/6 85/9 85/10 92/6
 92/13
emphasized [1]  49/12
encourages [1]  44/12
end [5]  6/8 9/5 28/11 53/4
 93/10
ended [1]  90/4
ends [2]  41/3 78/18
enemies [1]  85/6
enhanced [1]  25/9
enough [5]  24/16 42/24
 45/5 54/1 57/23
ensure [1]  35/22
enter [2]  35/22 59/22
entered [1]  76/16
entire [4]  73/13 89/12
 90/16 90/24
entirely [3]  28/8 28/17
 28/17
entirety [2]  47/7 89/12
entities [1]  82/23
entity [3]  43/1 84/13 92/1
environment [1]  35/8
envision [2]  15/11 15/12
equal [1]  84/24
Equally [1]  48/12
equipment [3]  2/25 3/11
 3/15
especially [1]  52/13
essence [1]  67/6
essentially [2]  19/24 85/1
establishing [1]  77/25
et [1]  9/4
ether [1]  65/25

ethers [1]  70/12
ethical [3]  27/13 83/22
 83/24
ethics [5]  10/7 63/20 68/16
 68/18 69/1
even [25]  5/2 8/20 17/7
 17/20 22/18 22/22 27/19
 28/22 28/24 29/5 31/21
 34/1 36/1 37/19 39/1 51/11
 51/20 53/23 56/25 56/25
 57/1 64/10 73/22 75/14
 81/19
evening [1]  23/20
event [3]  50/4 50/12 53/7
events [3]  47/8 49/15 58/2
ever [1]  34/25
every [4]  3/15 14/21 31/13
 75/19
everybody [5]  33/25 47/12
 85/9 85/10 91/6
everyone [8]  3/14 3/17 8/9
 35/18 50/16 58/13 60/25
 92/24
everyone's [1]  93/22
everything [6]  3/15 40/24
 41/15 66/24 88/18 92/5
everywhere [1]  12/22
evidence [26]  26/12 29/4
 30/4 33/23 46/15 47/17
 54/16 54/17 54/18 54/20
 66/19 67/2 67/12 69/4 72/2
 72/3 76/6 76/11 76/16 77/5
 77/10 77/17 77/22 84/14
 87/15 91/18
EX [3]  1/6 1/8 2/3
exacerbated [3]  7/5 20/7
 87/14
exact [1]  38/15
exactly [9]  13/22 25/16
 33/8 37/5 50/21 61/3 75/6
 84/1 85/9
exaggerated [1]  36/4
example [1]  45/17
examples [1]  45/7

**E**

Excellent [1]  4/24
exception [1]  9/19
exceptions [1]  8/19
excerpt [1]  84/10
excluded [1]  30/12
excludes [1]  30/6
exercise [3]  28/12 28/14
 35/1
exhibit [18]  60/1 60/19
 62/9 63/4 68/17 68/22 69/4
 76/16 77/8 77/22 79/19
 80/6 80/20 81/11 83/13
 84/3 84/9 85/22
exhibits [4]  54/18 59/17
 76/6 78/16
Exihibit [1]  77/5
exist [1]  22/11
existence [2]  64/7 68/14
exists [1]  56/13
expanded [1]  36/10
expect [1]  51/19
expected [2]  4/1 52/3
expecting [1]  11/1
expert [2]  31/8 69/1
explain [4]  46/22 46/23
 47/8 87/17
explained [1]  50/15
explains [1]  25/4
explanation [1]  86/13
explorable [2]  39/22 39/22
exploration [1]  73/15
explore [2]  23/15 41/13
explored [1]  38/8
exposes [1]  13/15
extent [1]  89/20
extra [3]  71/17 84/12 84/16
extreme [2]  17/19 45/17
eye [2]  38/13 49/23
eyes [2]  58/6 58/7

**F**

face [3]  28/21 45/21 58/14
faced [1]  9/16

facing [1]  13/1
fact [22]  5/15 6/2 6/3 10/1
 10/20 19/11 33/3 35/2 35/2
 44/9 46/15 59/17 61/11
 61/12 62/24 64/10 64/13
 71/6 72/10 76/21 83/4 85/7
factor [2]  28/11 56/24
facts [9]  26/19 28/7 28/9
 28/9 46/10 46/13 49/18
 58/9 58/11
fair [5]  12/17 23/25 29/15
 46/20 89/6
faith [1]  13/14
fall [1]  7/17
falls [1]  55/15
false [1]  57/5
falsity [1]  57/6
familiar [3]  49/14 50/24
 53/15
fan [1]  8/25
Fani [3]  44/11 62/22 76/3
far [7]  24/3 26/25 31/14
 40/13 45/23 65/22 82/22
fashion [2]  44/18 56/16
fashioned [1]  8/2
favorably [1]  21/7
favoring [2]  9/20 86/20
federal [10]  12/20 16/12
 19/20 20/3 21/11 21/12
 28/16 29/6 29/8 84/25
feed [1]  3/12
few [6]  8/19 17/23 17/24
 24/20 37/8 71/13
fictional [1]  75/3
fifth [32]  4/6 4/10 5/12 6/5
 6/9 6/21 9/2 9/3 11/2 11/11
 13/2 14/7 14/12 15/22
 16/13 17/8 17/10 19/5 23/6
 25/11 25/15 27/22 28/13
 29/19 32/13 33/17 36/9
 36/17 36/19 38/2 38/8
 43/16
fight [1]  48/1
figure [1]  26/21

file [3]  2/17 84/23 93/17
filed [8]  2/6 2/6 2/10 2/14
 2/15 5/12 10/1 64/15
final [3]  50/18 52/8 93/4
finance [1]  63/6
financial [3]  51/19 64/25
 80/7
find [10]  27/24 28/18 29/5
 74/7 74/10 75/23 76/2 90/8
 91/13 92/5
finding [2]  74/9 91/10
fine [5]  2/18 4/16 5/3 62/23
 66/23
finish [1]  61/16
finished [1]  9/15
first [14]  6/5 10/2 17/23
 31/23 35/1 37/8 37/15 40/7
 42/22 43/17 47/9 63/21
 64/16 84/20
fit [1]  42/13
flagging [1]  84/11
flashy [1]  46/25
flexible [1]  41/23
flip [1]  15/10
flow [1]  63/20
flowed [1]  48/21
flows [2]  61/18 93/2
flyer [3]  62/10 77/19 83/3
focus [12]  7/15 11/23 52/1
 53/14 57/12 57/24 71/23
 72/14 81/23 87/1 89/15
 91/8
focused [3]  44/9 48/25
 67/20
focuses [1]  91/7
folks [6]  11/8 12/3 28/14
 38/7 38/23 88/20
follow [3]  46/14 52/20 91/1
following [1]  87/23
font [2]  62/24 81/19
footnote [1]  12/17
force [2]  29/9 45/5
forced [4]  16/19 19/25
 27/12 86/13

**F**

forcing [1]  41/6
forecast [1]  39/11
foreclosed [1]  14/12
foregoing [1]  94/10
forget [1]  74/20
Forgive [1]  74/25
form [1]  44/19
formal [2]  12/13 31/11
formally [1]  31/11
forms [2]  3/11 78/23
fortunately [1]  64/13
forward [8]  3/8 21/13 23/6
 27/4 36/13 39/24 71/2
 85/24
fought [1]  38/12
found [3]  16/16 51/18
 56/10
foundation [4]  59/15 60/1
 76/15 79/22
founded [1]  68/9
four [2]  3/12 41/1
framework [1]  39/24
frameworks [1]  40/15
fraught [1]  28/1
free [6]  3/1 60/21 68/2 68/9
 79/1 93/23
freshest [1]  31/24
Friday [1]  84/23
friend [1]  12/24
friends [4]  58/15 64/20
 73/5 85/6
frog [1]  34/15
frogmarched [2]  19/24
 34/10
frogmarching [1]  35/9
front [16]  16/13 16/17
 19/25 21/16 24/8 24/14
 25/23 32/11 34/10 34/15
 36/2 38/1 40/3 43/7 55/24
 92/24
frustrated [1]  61/6
full [1]  35/19
FULTON [9]  1/1 1/24 7/7

10/9 66/4 68/12 73/13 94/5
94/25
fultoncountyga.gov [1]
1/25
fund [1]  81/25
fundraiser [25]  10/5 44/12
 46/3 46/16 47/1 62/22 63/8
 63/10 63/15 63/24 65/7
 65/9 65/18 75/7 75/10
 75/13 75/20 75/24 75/25
 77/19 78/1 78/6 80/8 81/18
 83/3
fundraisers [1]  75/16
fundraising [1]  80/7
further [9]  2/23 5/2 13/6
 17/11 85/15 86/19 91/25
 92/10 94/13
future [1]  13/7

**G**

GA [1]  1/12
gather [3]  66/19 67/2 67/3
gave [4]  38/14 38/16 43/20
 69/12
general [18]  3/2 8/24 15/15
 15/20 43/21 44/2 68/19
 68/19 73/16 74/7 75/2 76/1
 82/14 82/23 89/9 90/6 90/7
 90/7
General's [1]  66/10
generated [1]  7/6
generating [1]  6/15
gentleman [1]  67/22
genuinely [2]  19/3 26/21
georgia [26]  1/2 10/8 12/13
 18/18 21/1 21/6 27/14
 29/11 29/25 30/20 32/7
 33/2 42/25 47/15 51/2 63/6
 65/4 68/20 71/5 78/25 79/9
 82/14 94/4 94/9 94/14
 94/14
get [34]  2/2 2/21 2/24 2/25
 8/24 10/25 16/17 18/12
 18/23 20/14 23/22 24/12
 33/22 34/2 35/24 38/6

38/22 40/9 40/13 40/17
40/18 40/24 49/11 55/25
59/2 61/5 70/9 74/16 77/2
79/18 85/6 85/6 87/2 88/16
get's [4]  57/9 57/9 64/6
83/16
gets [13]  3/13 10/17 10/18
41/21 42/12 52/25 54/21
63/24 64/4 64/5 71/8 82/12
86/1
getting [7]  3/4 10/19 20/8
20/9 20/10 31/3 40/17
give [10]  10/16 15/6 17/20
28/24 42/9 44/18 44/24
63/11 74/12 76/20
given [3]  29/2 75/3 87/18
gives [5]  20/12 25/18 25/19
64/19 68/18
giving [4]  52/19 67/5 75/21
81/24
glad [7]  10/13 55/7 66/2
66/15 74/13 74/14 74/15
glued [1]  38/25
go [23]  2/22 12/22 12/22
13/6 17/11 17/19 26/6
29/23 38/1 39/24 41/15
45/23 55/5 57/1 58/17 66/9
68/9 73/22 75/9 81/2 85/24
88/12 93/23
goes [3]  46/15 56/8 93/22
going [71]  2/5 3/8 7/16
7/19 8/20 10/20 11/23
13/13 13/23 14/12 14/16
16/13 19/8 20/6 20/14
24/14 25/11 26/2 26/12
26/12 27/3 27/24 28/22
29/17 34/13 34/14 36/12
37/6 37/17 38/5 39/3 39/4
39/5 39/9 39/12 39/14
39/23 40/6 40/10 42/22
43/14 47/8 53/7 54/12
54/20 57/11 60/6 66/1
66/22 67/6 69/10 71/11
73/21 73/21 73/24 75/15

**G**

going... **[15]** 75/18 76/7 76/14 78/7 80/4 80/5 81/3 82/11 83/17 84/4 88/11 91/22 93/14 93/14 93/21
gonna **[1]** 14/15
good **[13]** 2/2 4/2 4/7 4/15 4/16 13/14 30/22 41/12 48/10 48/22 74/10 75/22 82/5
good-faith **[1]** 13/14
google **[1]** 82/7
GOP **[1]** 20/24
gosh **[1]** 61/7
got **[32]** 2/20 3/6 4/13 4/24 5/3 21/23 36/21 40/8 41/4 42/7 45/16 48/21 50/11 50/24 51/3 51/21 53/6 59/13 61/17 61/25 62/21 66/23 69/9 70/10 70/13 70/14 72/15 76/4 80/25 81/14 82/10 82/17
gotten **[1]** 49/16
government **[1]** 5/22
Governor **[7]** 9/21 44/1 73/1 74/21 75/1 75/4 82/1
Governor's **[5]** 7/17 50/4 64/4 64/4 81/13
grand **[104]**
gravity **[1]** 56/10
great **[5]** 4/21 23/21 85/23 85/25 87/24
greater **[2]** 39/2 90/3
greatly **[1]** 39/8
green **[5]** 1/17 2/24 4/3 4/11 31/7
GREEN-CROSS **[4]** 1/17 4/3 4/11 31/7
greenlighted **[1]** 5/2
group **[7]** 6/24 14/17 14/22 23/17 73/3 88/5 88/7
grown **[1]** 61/14
guess **[6]** 23/5 23/9 33/6 40/9 44/14 72/1

guidelines **[1]** 39/13
guilt **[1]** 56/20
guy **[3]** 57/9 57/9 88/16
guys **[2]** 21/19 79/6

**H**

ha **[2]** 31/24 31/24
had **[24]** 11/10 14/23 17/9 23/8 24/2 34/23 39/10 41/2 41/25 50/4 50/16 51/16 58/14 59/10 59/20 61/1 64/11 64/17 68/11 75/3 75/7 75/11 75/18 75/20
HADASSAH **[4]** 1/21 94/8 94/21 94/23
hadassah.david **[1]** 1/25
hadn **[1]** 22/13
hailing **[1]** 13/7
Hall **[1]** 81/15
hand **[5]** 7/18 51/4 74/21 86/13 94/15
handheld **[1]** 3/6
handing **[1]** 86/3
handle **[1]** 73/19
handling **[2]** 2/7 3/21
hands **[1]** 59/18
happen **[8]** 37/7 37/9 37/22 48/8 48/8 52/2 54/3 57/2
happened **[4]** 13/12 48/9 60/10 66/13
happens **[2]** 49/21 49/22
happy **[4]** 3/18 29/19 53/12 85/14
harassment **[1]** 35/23
hard **[2]** 3/19 38/12
harm **[2]** 7/8 64/20
has **[60]** 2/14 2/14 6/15 7/5 7/14 7/17 8/2 8/19 9/19 9/20 9/22 10/14 12/21 18/2 20/4 27/21 29/11 31/10 32/11 35/15 35/19 38/4 38/12 41/22 42/6 42/15 42/19 44/23 47/11 47/18 51/9 54/8 55/19 57/2 59/16 61/14 66/7 66/8 67/23

69/15 70/23 71/24 71/25 73/2 73/5 73/13 76/3 76/15 80/25 81/2 81/10 84/2 84/15 84/17 84/21 87/11 87/12 88/13 91/7 93/24
hasn't **[3]** 75/24 85/12 85/16
hate **[2]** 20/8 20/9
have **[150]**
haven't **[2]** 49/9 60/1
having **[8]** 3/12 23/23 24/21 25/24 41/23 46/1 48/24 90/9
he **[36]** 10/14 10/15 10/17 10/18 20/24 31/18 31/23 31/25 33/15 32/22 37/16 45/25 49/12 55/3 55/6 55/7 55/7 58/19 58/20 58/20 64/16 68/3 68/12 69/9 69/20 69/20 70/13 74/7 79/23 79/25 81/16 82/12 82/22 83/3 83/11 84/1
he's **[5]** 5/20 7/8 57/8 83/1 83/1
head **[3]** 11/3 22/15 31/7
headline **[1]** 63/23
headliner **[4]** 9/23 10/5 64/5 72/22
headlining **[1]** 62/22
health **[1]** 93/9
hear **[13]** 4/1 11/17 16/24 22/21 28/9 28/10 29/19 38/18 53/12 56/20 66/2 86/12 86/15
heard **[15]** 18/22 22/2 22/22 34/15 35/12 53/3 53/4 53/13 60/12 67/22 67/24 67/24 84/14 86/15 92/24
hearing **[4]** 16/9 35/5 53/1 82/20
heightened **[1]** 24/10
heightening **[1]** 71/18
help **[5]** 3/9 11/7 12/4 25/4

# H

help... [1]  58/4
helpful [1]  8/12
helping [1]  57/22
helps [2]  16/10 38/4
her [13]  5/18 22/22 22/25
25/11 28/24 31/7 36/4
38/14 57/18 71/12 72/19
88/17 90/8
here [62]  2/20 2/21 2/25
3/6 3/13 4/3 4/20 5/4 8/9
8/17 11/8 11/20 20/4 20/10
21/10 21/12 21/16 23/13
23/14 25/12 26/20 26/25
27/6 27/10 27/19 33/10
34/8 34/22 35/4 37/11
38/15 39/4 39/25 40/8
40/23 44/14 45/16 46/11
48/9 48/10 48/13 49/9
52/13 54/18 56/21 57/4
57/7 57/12 62/3 63/6 66/22
69/22 71/6 73/7 73/7 74/8
75/16 79/1 81/1 83/22
85/17 91/7
hereby [2]  94/9 94/15
herein [1]  94/12
herself [5]  8/2 25/25 61/12
71/7 71/22
hey [3]  60/12 68/1 85/1
higher [2]  51/11 51/14
highlighted [2]  51/4 51/5
highly [1]  58/25
him [14]  9/24 12/23 12/23
25/24 43/19 57/5 63/15
66/11 68/12 69/1 74/12
74/13 79/25 89/13
himself [1]  87/12
hindrance [1]  34/19
his [26]  6/11 6/23 17/2 17/3
17/4 21/3 21/4 22/15 25/11
31/18 31/19 32/12 33/17
42/8 49/12 50/11 55/2 55/8
58/17 69/20 76/20 80/10
82/1 83/4 86/22 90/5

hit [1]  16/2
hold [7]  8/18 29/17 60/23
76/23 81/3 82/18 86/21
holder [1]  46/2
holding [2]  46/3 67/15
Honor [80]  4/2 5/5 5/8
5/14 7/2 9/18 10/23 12/5
12/6 12/7 13/19 15/4 15/9
17/22 18/25 20/10 20/22
21/3 21/6 21/17 21/22
23/22 26/4 26/7 26/19 27/5
27/18 28/7 29/12 29/16
30/7 31/1 31/6 32/17 32/21
33/11 36/11 36/18 36/21
37/3 40/5 41/8 42/1 42/18
42/19 44/3 54/7 54/18 55/1
57/19 58/8 59/12 60/14
62/2 62/20 63/5 68/23 69/6
71/14 72/5 72/18 74/25
76/5 78/15 78/24 79/18
80/18 80/23 81/6 81/9
82/15 83/17 87/10 87/25
89/7 89/17 90/14 92/3
92/11 92/14
Honor's [1]  14/5
HONORABLE [1]  1/11
hope [1]  89/4
hopefully [4]  2/18 28/14
49/18 54/2
horrific [1]  46/9
hosted [8]  9/24 46/15 75/7
75/12 75/13 75/20 75/24
75/25
hours [3]  3/2 3/8 30/1
how [25]  4/15 8/7 8/10
11/11 13/8 34/22 36/2
36/25 39/12 40/10 40/14
42/14 46/21 46/23 48/19
48/25 57/20 61/3 68/5
70/10 77/25 78/4 93/21
93/21 93/22
however [5]  13/12 27/2
37/12 37/12 56/10
hunt [3]  76/3 76/3 91/14

# I

I'd [8]  53/14 55/2 62/9
68/21 84/5 86/1 89/4 93/19
I'll [18]  51/4 51/22 52/21
55/25 60/3 63/21 70/25
72/19 76/23 76/23 78/19
79/16 80/19 82/18 87/17
92/16 92/22 93/7
I'm [45]  3/18 3/22 4/3
10/20 12/24 16/13 39/3
39/23 43/19 49/1 49/16
51/13 52/12 53/12 53/15
57/12 59/4 59/6 63/10 66/2
66/22 67/20 67/20 70/10
73/21 73/21 73/24 75/15
78/10 79/23 80/5 80/23
83/6 83/17 84/4 85/14 86/3
87/23 88/6 88/15 88/16
89/14 90/2 92/17 93/19
I'm' [1]  79/8
I've [11]  35/21 48/21 50/24
51/3 59/7 62/21 65/14
75/16 80/25 82/17 92/24
idea [2]  48/18 91/21
ideally [1]  6/16
identically [1]  17/25
identification [2]  14/6
84/20
identified [4]  13/21 56/11
77/24 81/17
identify [1]  38/20
identifying [1]  82/21
ignore [2]  4/18 46/15
immunity [2]  22/19 22/24
immunize [2]  21/12 22/3
immunized [3]  12/3 21/10
21/11
impact [3]  7/16 7/20 53/16
impaneled [2]  30/14 66/19
impasse [4]  37/24 39/25
40/18 40/19
imply [1]  49/4
important [1]  74/18
importantly [1]  17/17

**I**

improper [4]  28/19 33/4
33/20 33/21
impropriety [4]  10/7 42/20
42/21 89/11
inability [1]  22/2
inadvertent [1]  72/7
include [1]  14/16
included [2]  30/10 30/12
including [4]  15/12 26/23
61/2 83/2
inconvenience [1]  28/11
increase [1]  86/22
incriminating [4]  19/11
19/14 19/23 31/21
incrimination [1]  31/20
independent [1]  74/8
indicated [5]  10/15 10/15
58/18 58/19 67/1
indicates [1]  91/4
indicating [1]  83/11
indication [3]  22/18 34/24
62/4
indict [5]  32/10 32/12
32/14 57/5 73/3
indicted [2]  25/8 33/20
indictment [2]  6/14 7/19
individual [11]  12/14
13/24 13/25 14/1 14/14
18/21 18/23 33/17 50/22
83/8 83/9
individualized [1]  23/8
individuals [3]  13/21 82/25
91/23
inference [2]  29/3 32/13
influences [1]  56/15
information [3]  66/17 69/9
77/12
ingress [1]  36/6
inherently [2]  87/23 88/19
initial [1]  55/1
initially [1]  67/1
inkling [1]  48/21
innocent [1]  27/22

inquiry [4]  14/6 14/11
19/19 82/23
inside [1]  67/18
insofar [10]  5/14 11/21
39/15 43/11 43/22 77/13
81/21 83/7 84/19 93/2
inspect [1]  30/5
instead [4]  17/18 32/16
43/25 44/1
instructed [1]  51/13
instruction [1]  15/19
instructive [1]  28/25
instrument [1]  31/11
interest [6]  14/17 15/1 43/3
43/10 56/13 68/11
interested [2]  52/10 66/12
interesting [2]  32/21 65/1
interference [1]  73/16
interim [1]  93/20
intermediate [1]  73/17
internet [6]  60/19 62/7
70/2 70/4 70/23 76/13
interpret [1]  45/24
interrupt [1]  18/4
interview [1]  55/9
interviews [1]  24/21
intimated [1]  52/21
introductory [1]  49/12
investigate [1]  89/5
investigated [1]  91/25
investigating [11]  9/13
22/6 28/20 46/4 75/8 85/2
88/8 88/25 89/19 90/10
91/21
investigation [34]  10/3
10/9 10/14 11/22 13/10
15/1 15/2 30/3 31/22 42/17
43/4 44/13 46/13 47/2 47/4
47/18 47/25 49/8 50/6
58/16 60/13 60/16 64/21
66/18 66/18 67/18 73/14
75/13 89/13 90/16 90/24
91/14 91/15 93/2
investigative [3]  8/16 15/4

30/3
investigators [2]  10/17
16/19
invite [1]  40/11
invites [1]  44/11
invocation [1]  29/4
invoke [10]  16/18 19/19
20/1 20/13 21/15 21/15
25/11 26/2 27/12 32/12
invoking [2]  31/19 57/13
involved [10]  20/24 20/25
21/3 21/4 21/5 23/23 35/18
35/21 62/5 75/12
involvement [2]  13/25 14/5
irrefutable [2]  6/1 6/3
Irrefutably [1]  72/13
irrelevant [1]  37/21
is [382]
isn [2]  9/10 13/5
isn't [4]  39/14 59/6 65/9
81/23
Isokoff [2]  61/4 79/24
issuance [2]  50/14 92/23
issue [16]  7/5 7/18 9/19
9/20 12/12 15/23 33/25
34/2 51/9 55/18 57/4 57/6
74/12 74/16 74/18 75/21
issued [5]  9/24 32/5 33/1
33/4 50/8
issues [2]  5/13 19/17
issuing [1]  92/18
it [349]
it's [62]  2/19 3/8 8/4 8/20
35/14 40/1 44/16 45/21
49/25 51/2 51/3 51/11
51/13 51/18 51/19 52/3
52/3 52/13 54/16 54/17
56/1 56/10 59/25 60/8
60/18 60/19 61/10 61/13
61/14 62/13 62/14 62/22
64/18 66/7 69/7 69/9 69/13
70/12 70/19 70/25 73/5
73/12 73/20 73/22 73/24
75/6 75/6 75/14 75/15

**I**

it's... [13]  77/24 79/2 79/4
79/9 80/12 81/19 82/18
86/16 87/24 90/19 93/1
93/4 93/13
its [5]  8/14 8/15 8/22 26/10
33/19

**J**

jammed [1]  35/5
job [3]  17/8 17/9 19/15
join [1]  5/18
joining [2]  5/11 89/15
joint [1]  89/22
Jone's [1]  92/10
JONES [68]  1/18 2/7 2/8
4/17 5/23 6/9 6/22 7/8 7/19
9/4 9/6 9/10 10/3 10/9
10/13 14/16 15/13 20/6
21/3 23/11 29/20 38/18
42/15 43/5 47/12 47/21
47/25 49/7 49/23 50/9
50/11 53/9 55/2 57/7 58/9
58/17 61/2 61/24 64/13
64/14 65/8 66/11 66/12
66/16 66/21 67/25 68/11
72/11 73/3 75/9 75/18 76/1
81/11 81/11 81/24 83/2
83/16 83/18 84/17 84/21
84/23 86/10 87/11 89/12
90/6 90/9 90/17 90/25
Jones' [5]  2/10 48/20 65/25
74/12 84/8
judge [15]  1/11 4/7 4/16
15/17 24/18 25/13 38/10
44/18 53/18 56/12 75/9
78/22 86/6 91/2 92/8
judge's [1]  51/17
judicial [10]  51/12 53/15
56/6 56/6 71/17 84/12
84/16 89/22 89/25 94/14
July [9]  1/12 2/4 53/9 53/9
55/4 58/18 58/22 58/23
94/10

juncture [1]  72/21
June [6]  9/24 53/8 82/4
82/7 82/8 82/9
juries [3]  30/4 32/3 74/3
jurisdiction [2]  12/11
27/19
juror [1]  80/2
jurors [5]  1/19 7/25 41/10
48/6 93/8
jury [93]  1/5 1/10 2/3 6/12
6/13 6/13 6/14 6/19 7/10
7/14 8/3 8/14 8/17 8/22 9/7
9/15 10/3 12/4 12/16 13/11
13/18 14/11 15/4 16/14
16/17 19/19 19/25 20/3
21/10 21/17 22/8 24/8
24/15 25/23 26/9 26/10
27/16 28/23 28/25 29/7
30/1 30/2 30/13 31/18
31/22 32/6 32/6 32/10
32/11 32/14 32/19 33/17
33/18 33/19 33/20 33/22
33/23 34/8 34/20 34/25
35/10 38/1 40/4 41/19 43/4
47/3 47/21 47/24 48/1 48/5
48/11 48/15 48/16 48/18
48/25 52/16 55/3 58/21
64/17 67/10 67/19 68/2
68/5 72/11 74/9 80/2 88/8
88/24 90/20 91/7 91/20
93/4 93/4
Jury's [2]  8/5 60/15
just [48]  3/21 5/7 5/8 13/9
15/10 16/2 17/4 17/23
17/25 18/10 18/11 26/5
27/1 27/13 35/11 37/14
38/14 39/5 39/10 40/5 43/8
43/15 45/22 46/16 49/9
52/4 54/21 55/10 59/18
61/14 66/14 66/24 67/10
69/11 69/14 71/1 71/13
80/5 80/12 81/1 85/9 89/13
89/17 90/24 91/2 92/19
93/8 93/20

justification [1]  86/16
justified [1]  86/16

**K**

keep [3]  38/12 71/1 74/21
Keeping [1]  29/21
kind [7]  3/11 3/15 45/11
45/16 45/21 50/18 70/15
kinds [1]  23/7
kmow [1]  15/5
knew [4]  59/1 62/6 62/6
62/7
know [52]  2/16 3/16 5/20
6/10 8/23 9/9 10/21 11/19
16/23 17/3 19/1 20/2 21/10
21/22 22/7 25/25 27/1
27/20 28/2 28/3 28/10
28/23 29/1 30/10 31/8
32/24 34/22 34/25 35/21
35/25 38/5 39/5 41/22 46/4
48/19 48/23 51/21 53/4
59/17 61/8 61/10 62/5
67/13 67/15 68/5 68/13
69/12 71/21 80/1 80/3 89/8
93/21
knowing [1]  68/11
knowledge [1]  84/15
known [2]  10/2 64/13
knows [3]  61/17 62/8 64/1
Kwanzaa [1]  81/15

**L**

L-A-M-P-L [1]  12/7
labeling [1]  13/7
lack [1]  47/17
laid [1]  59/16
Lampl [15]  12/6 14/3
25/20 25/22 26/7 30/22
31/2 31/3 31/24 32/10 33/9
33/16 34/6 40/1 56/2
Lample [3]  32/12 33/12
34/1
lands [1]  52/23
language [3]  8/3 51/25
83/10

## L

larger [2]  49/5 81/20
largest [1]  81/19
last [7]  22/1 22/1 23/19
  44/20 78/18 82/7 86/7
late [5]  55/3 55/4 76/10
  82/8 82/9
later [9]  10/17 26/11 33/19
  41/10 53/11 60/17 60/25
  62/7 64/5
law [16]  12/13 14/3 16/11
  27/19 28/7 30/20 40/1
  42/23 42/25 44/24 45/2
  45/17 47/15 55/14 55/17
  66/6
lawyer [6]  11/9 17/5 17/7
  25/24 39/11 39/11
lawyer-to-lawyer [1]
  39/11
lawyers [4]  2/20 35/18
  37/14 37/22
layed [1]  55/20
lays [1]  84/1
lead [4]  14/6 19/15 19/16
  19/17
leak [6]  61/25 68/14 71/21
  71/22 71/25 72/1
leaked [1]  62/1
leaking [2]  67/12 67/12
leaks [3]  66/4 72/25 77/14
learned [2]  67/17 91/3
least [5]  24/9 27/4 27/24
  77/24 84/10
leave [5]  8/9 35/23 76/8
  76/9 85/25
leaving [1]  48/10
legal [17]  8/2 18/1 28/18
  45/3 47/3 47/9 47/12 47/15
  47/23 48/7 82/24 82/24
  83/5 85/12 85/16 88/23
  92/10
legally [1]  54/1
less [4]  12/23 42/3 58/15
  59/14

let [18]  2/15 6/7 15/21 18/4
  22/7 28/5 39/23 40/23
  41/22 42/5 44/20 61/16
  62/14 72/19 78/19 79/25
  90/6 92/5
let's [9]  2/2 3/20 13/9 54/21
  59/15 74/16 74/18 74/19
  91/13
letter [26]  5/24 9/4 9/25
  10/18 10/19 24/7 49/13
  53/8 57/10 58/18 58/24
  59/1 61/2 64/6 64/6 64/14
  65/19 66/16 66/24 67/16
  68/14 72/23 77/5 84/21
  86/10 90/10
letters [10]  5/17 18/5 18/13
  49/25 58/13 61/12 61/13
  64/8 64/12 67/5
letting [1]  38/21
level [3]  13/25 46/19 65/13
leveled [1]  12/14
liability [2]  13/1 13/16
Lieutenant [12]  7/16 9/21
  44/1 50/4 64/3 64/4 73/1
  74/20 75/1 75/4 81/12 82/1
life [3]  52/19 60/11 60/11
light [5]  2/25 9/3 11/25
  41/8 93/9
lighthouse [3]  17/14 17/16
  18/24
lights [1]  46/25
like [36]  3/18 6/18 11/16
  14/21 15/17 16/1 18/15
  23/8 23/8 23/19 43/19 45/9
  45/10 48/7 48/14 49/13
  52/18 53/14 54/3 54/8 55/2
  55/10 62/9 63/21 66/13
  66/14 66/24 68/21 70/17
  70/20 84/5 85/4 85/9 85/9
  86/1 88/21
likelihood [1]  71/18
limb [1]  73/22
lines [1]  24/3
link [1]  19/5

links [1]  19/15
list [6]  27/5 30/10 30/11
  30/12 30/12 75/22
listed [1]  51/16
literally [1]  57/8
little [11]  3/13 22/1 35/14
  41/16 57/11 59/13 65/15
  65/17 76/25 81/23 92/22
ll [8]  7/22 25/2 28/4 31/1
  37/14 41/22 42/2 43/11
location [1]  40/21
logistics [1]  6/24
long [6]  37/16 38/23 39/10
  40/14 69/13 82/20
longer [2]  37/6 41/16
look [10]  6/18 35/16 55/19
  62/14 69/11 78/21 79/16
  81/10 85/2 91/17
looking [6]  3/22 22/20
  22/21 23/3 63/21 83/3
looks [1]  43/19
loose [1]  78/18
lost [2]  59/21 88/21
lot [11]  2/19 2/20 16/23
  21/4 24/2 31/3 42/3 42/12
  49/13 61/10 64/9
lots [1]  88/13
love [3]  60/20 71/13 84/5
lower [2]  51/13 51/13
lowercase [1]  46/24
Lowndes [1]  9/14

## M

machine [1]  73/5
made [18]  14/2 20/17
  27/21 37/18 41/17 43/23
  46/11 47/19 56/23 57/17
  58/5 63/1 63/8 74/6 80/4
  86/14 86/18 89/22
magical [1]  12/20
magically [1]  22/10
Magloclin [2]  91/4 91/4
magnitude [1]  74/3
mail [4]  20/9 59/3 77/8
  77/12

**M**

mails [3]  19/16 20/9 59/15
main [2]  27/21 27/21
maintain [1]  46/12
major [1]  35/16
make [24]  2/20 6/6 14/16
34/14 37/12 37/13 37/24
39/14 45/23 50/18 52/21
54/21 60/3 62/14 63/2 79/2
80/5 80/24 81/1 82/2 86/1
92/23 93/11 93/15
makes [4]  16/24 28/3 28/10
45/15
making [1]  71/17
manage [2]  42/14 79/2
managed [1]  8/11
mandatory [2]  44/16 44/17
many [7]  8/16 20/25 21/1
27/2 35/25 36/25 58/7
map [1]  24/2
marched [1]  34/15
marching [1]  55/10
mark [1]  68/21
marked [1]  63/4
material [1]  65/2
materially [1]  64/25
matter [10]  18/11 26/1
46/14 47/12 47/14 48/9
48/21 85/7 91/23 93/24
matters [2]  31/21 83/9
may [62]  6/5 7/23 8/23
10/25 11/7 12/7 12/17
12/25 13/6 13/22 14/6
15/17 16/21 17/1 17/6 18/9
22/4 22/4 22/6 22/13 25/10
26/4 28/22 28/23 29/16
30/4 30/5 30/8 31/17 34/21
36/25 37/14 37/24 39/8
39/9 39/13 39/21 40/2
40/14 40/15 40/22 40/24
41/13 41/14 43/6 47/24
49/15 51/5 53/20 54/7 55/3
56/11 57/20 58/8 59/22
59/24 62/13 62/20 71/14

maybe [11]  17/14 37/5
46/18 47/20 48/16 52/5
52/5 57/14 57/22 58/11
76/20
MCBURNEY [1]  1/11
me [39]  5/21 6/7 8/1 9/7
11/7 12/4 13/13 13/15
15/14 16/24 17/18 18/4
22/1 25/4 26/1 29/24 44/20
45/19 45/20 46/18 53/21
53/25 55/24 57/22 59/2
59/11 60/10 61/16 62/14
67/21 68/25 73/18 74/25
78/20 85/2 87/4 88/25 92/5
93/20
mean [16]  11/15 13/5
17/19 18/9 20/8 27/18 30/8
40/8 40/24 44/17 45/9
46/23 46/23 49/4 87/1
87/18
meaning [2]  31/11 48/5
meaningful [1]  93/12
meanings [1]  88/13
means [1]  28/16
meant [1]  43/17
media [11]  2/23 7/6 7/21
35/17 35/19 35/23 36/1
46/2 67/24 68/2 74/19
medial [1]  47/4
meet [2]  10/16 58/10
members [1]  71/7
memorialize [1]  92/16
mention [1]  82/12
mentioned [3]  38/20 49/15
67/11
mere [1]  64/18
merely [2]  2/10 72/9
met [2]  29/1 85/12
method [1]  36/12
micromanage [1]  41/21
middle [1]  59/21
midst [1]  42/17
might [17]  6/18 8/14 8/15

11/11 15/6 16/18 23/17
24/15 32/4 58/3 58/5 58/6
63/16 63/17 75/9 75/21
82/7
mind [2]  22/25 65/16
mindful [1]  28/11
mine [1]  79/4
minimum [2]  29/12 42/15
minor [1]  17/6
minute [2]  24/13 61/3
misconduct [1]  83/23
misled [1]  48/4
miss [1]  89/3
misunderstood [1]  7/23
mix [1]  40/18
mobility [2]  14/24 18/21
moment [1]  46/8
money [7]  63/22 65/19
75/14 77/25 78/4 81/18
81/24
month [1]  80/11
month,Mr [1]  63/13
moot [4]  6/6 9/8 10/22 42/9
more [28]  3/10 3/21 15/14
16/6 17/17 24/3 24/6 24/12
24/13 28/1 28/16 29/18
36/8 36/19 37/7 38/17 39/4
43/7 49/11 52/8 61/10
65/20 73/8 75/14 76/25
81/4 87/12 90/2
morning [1]  4/15
most [5]  36/4 38/23 48/12
73/25 87/11
motion [40]  2/6 2/8 2/10
2/15 2/16 2/17 4/4 5/11
5/15 5/18 5/23 6/7 11/4
11/18 13/21 18/16 27/18
36/10 36/22 41/17 43/11
57/16 57/16 58/19 64/23
72/16 79/3 83/1 83/2 83/23
84/22 84/24 85/15 85/17
86/25 87/1 87/3 89/8 89/15
89/20
motions [3]  1/10 2/5 2/13

# M

motivated [1]  47/19
motivation [3]  48/18 49/9
88/2
mouth [2]  29/21 72/8
move [4]  14/13 15/24 17/9
41/23
moved [1]  42/6
moving [5]  2/19 23/6 41/9
41/10 71/1
mr [103]
Mr. [2]  17/2 17/4
Mr. Wade [2]  17/2 17/4
Mr.Dillon [1]  36/10
Mr.Wade [1]  23/7
MS [61]  1/19 1/19 4/25 5/1
5/3 5/14 11/18 13/4 13/4
14/22 14/23 16/24 16/24
21/18 21/22 22/2 22/14
22/21 22/25 23/10 23/10
23/11 24/19 24/20 25/18
31/7 36/14 37/2 37/10
38/13 38/18 39/19 43/15
43/16 50/7 50/7 53/12
53/14 53/17 54/10 54/12
54/14 54/21 59/9 69/21
72/16 76/10 76/24 79/11
81/3 81/7 86/24 86/25 87/3
88/11 92/5 92/9 92/12
92/12 92/20 92/20
Ms. [9]  4/25 5/10 5/11 11/4
34/21 35/25 36/9 36/14
37/10
Ms. Clapp [1]  5/10
Ms. Pearson [6]  4/25 5/11
34/21 36/9 36/14 37/10
Ms. Pearson's [1]  35/25
Ms. Peterson's [1]  11/4
Ms.Deborroughs [1]  11/18
much [11]  15/17 23/19
27/6 35/13 35/23 44/10
44/25 52/19 77/25 78/4
91/1
mud [1]  7/9

my [66]  4/19 6/4 6/7 7/8
8/12 8/13 9/5 9/20 9/24
12/19 13/2 13/5 13/9 13/14
15/3 16/25 17/7 17/8 17/24
17/25 19/2 19/11 19/19
20/5 24/22 25/10 26/23
28/22 29/21 42/8 43/17
44/5 44/13 47/2 49/4 49/15
52/15 52/16 52/24 54/7
55/13 55/13 55/16 56/1
59/12 59/18 59/21 60/5
62/6 62/21 63/2 63/22 66/5
69/11 69/19 72/3 79/14
84/14 85/18 86/21 89/18
91/2 91/3 93/7 94/12 94/15
myself [3]  10/19 59/13
92/17

# N

name [11]  6/23 19/7 19/8
19/14 28/22 28/24 38/1
38/6 64/12 76/22 81/20
named [2]  46/17 47/2
names [2]  20/21 26/24
narrow [1]  15/20
NATHAN [3]  1/15 4/7
43/24
national [1]  47/3
navigate [2]  11/7 44/14
near [2]  52/23 93/5
necessarily [4]  9/12 13/25
56/5 60/3
necessary [2]  41/14 71/21
neck [1]  55/6
need [44]  2/17 3/3 3/18 6/9
6/10 6/22 6/25 8/6 8/19 9/4
9/6 11/2 12/1 13/23 14/5
16/10 16/16 21/18 23/2
23/17 25/22 32/13 35/15
36/5 36/25 37/9 37/12
37/14 38/1 39/5 40/9 44/6
44/14 49/5 53/25 54/5 54/6
57/23 60/7 61/19 61/20
85/24 92/16 93/13
needs [5]  10/11 37/22 39/2

73/10 91/25
negative [3]  20/16 29/3
49/23
neutrality [1]  56/4
never [9]  18/22 27/25 29/1
53/3 57/2 64/17 79/18
86/23 89/25
new [4]  54/13 66/10 91/13
91/17
Newnan [1]  5/2
news [7]  11/25 35/16 47/13
63/25 64/7 64/8 67/14
next [13]  8/23 27/7 40/21
40/24 41/2 41/15 48/8
48/15 58/17 58/20 58/23
63/12 83/22
nightly [2]  47/4 63/25
no [57]  5/8 6/1 7/2 14/20
15/9 18/2 22/17 23/13 24/1
26/1 30/9 32/3 32/13 32/14
34/25 35/9 36/11 36/21
43/22 43/23 44/21 44/22
45/15 46/14 47/14 52/17
54/23 59/15 60/1 62/4
65/12 66/2 66/16 68/23
72/2 72/3 74/21 76/12
76/16 77/8 77/19 77/22
78/15 80/12 80/12 80/12
80/12 83/13 83/20 84/9
84/14 85/8 85/24 89/7
92/11 92/14 92/25
nobody [1]  50/21
nodding [1]  31/7
nominate [1]  76/1
nominated [1]  13/12
nominee [1]  82/1
non [5]  12/3 28/9 32/19
46/10 46/13
non-immunized [1]  12/3
non-partisan [1]  46/13
non-partition [1]  46/10
non-special [1]  32/19
normal [3]  33/5 38/24 52/3
normally [1]  51/19

**N**

not [181]
note [6]  18/15 32/22 32/24
43/11 51/22 53/6
noted [1]  50/19
noteworthy [1]  38/11
nothing [12]  20/10 22/8
23/2 26/11 27/11 27/15
34/4 36/13 43/9 73/2 77/11
92/8
notice [1]  81/11
Nova [2]  16/15 25/22
November [3]  7/20 49/2
75/18
now [33]  8/8 9/11 12/24
15/3 15/7 16/24 20/17 23/3
25/8 31/7 34/16 39/1 40/16
45/19 45/20 54/3 58/3
60/24 61/13 61/18 62/1
64/6 67/2 71/12 75/7 75/16
76/6 77/4 77/20 81/10
85/20 92/24 93/1
number [4]  1/6 38/2 38/6
80/25
numerous [5]  7/21 64/7
64/11 67/16 74/3
nuts [1]  40/17

**O**

o'clock [1]  2/4
oath [3]  28/24 58/11 58/12
object [8]  69/6 76/14 76/17
76/17 77/11 77/15 77/16
83/18
objected [1]  79/20
objection [14]  53/2 62/17
68/23 69/11 76/12 77/6
77/9 77/21 77/22 78/8
79/19 83/15 84/19 85/22
objections [2]  77/3 93/17
obligation [1]  49/7
observation [1]  53/17
obstacles [1]  41/23
obtained [1]  69/25

occur [1]  41/5
occurred [1]  57/2
occurs [1]  63/1
October [6]  8/14 8/25 9/16
52/11 66/2 66/2
of Charlie [1]  43/24
off [9]  8/18 10/21 57/11
60/23 70/1 70/3 77/2 81/16
91/12
offer [8]  22/19 22/24 69/3
76/6 76/11 80/7 80/22 84/9
offered [3]  68/25 77/13
77/25
offering [1]  7/24
office [66]  2/7 2/14 3/23
3/25 3/25 4/4 4/8 7/7 7/17
7/24 8/4 9/9 9/14 10/11
11/6 11/9 18/3 18/6 20/23
23/3 35/6 36/8 38/4 38/12
39/10 40/12 41/7 41/13
41/22 42/10 46/1 46/2 46/4
47/22 48/19 52/25 55/7
57/25 59/2 63/9 64/4 66/4
66/10 66/14 66/16 67/9
67/11 67/14 68/1 68/18
72/9 73/25 74/7 77/13
79/25 83/25 84/2 84/17
89/12 90/8 91/6 91/9 91/12
92/7 92/25 93/3
officer [2]  56/18 84/17
offices [5]  17/12 22/24
50/20 52/3 56/6
official [4]  51/16 94/8
94/15 94/23
officially [1]  84/20
officials [1]  91/10
often [2]  29/7 63/10
oh [5]  43/13 48/11 54/23
63/24 76/5
okay [58]  4/13 4/21 5/6
5/25 6/4 7/3 7/22 10/25
15/10 18/14 21/18 23/4
25/17 30/25 34/12 35/13
36/14 36/23 44/4 45/14

47/6 50/2 52/7 54/20 54/25
56/3 60/16 60/23 62/19
64/2 65/18 69/2 69/23 70/6
70/25 71/3 71/11 72/6
72/12 72/19 73/9 76/9 77/7
77/18 78/9 79/11 79/16
80/6 80/10 83/19 84/3 86/9
86/13 86/15 90/1 90/18
92/4 92/9
old [2]  55/22 55/23
omit [1]  3/22
once [9]  15/24 18/23 37/1
51/23 56/10 56/13 65/1
73/4 74/5
one [55]  3/18 3/21 7/23
10/4 13/11 14/21 14/22
15/8 15/8 16/6 16/16 22/3
24/6 24/6 27/21 29/16
31/10 32/14 34/25 35/15
38/5 38/10 39/14 39/22
45/11 45/18 46/23 48/10
48/22 49/17 49/18 51/17
52/8 60/8 63/17 63/17 64/3
64/5 65/12 65/20 66/14
68/16 71/21 72/22 73/17
75/24 76/13 79/21 83/13
87/7 88/2 88/3 90/15 91/8
91/10
ones [1]  81/9
only [30]  2/24 3/3 3/18
5/20 6/11 14/17 15/8 20/6
25/8 34/1 34/2 35/16 41/4
45/1 48/5 48/6 48/11 49/18
52/19 53/22 58/25 61/7
66/7 67/15 67/25 73/19
73/22 85/3 89/6 91/19
operate [1]  68/7
operates [1]  68/16
opined [1]  65/14
opinion [2]  83/4 83/6
opponent [11]  9/21 44/13
46/3 46/16 47/1 48/24 49/1
81/12 81/14 81/24 85/3
opposed [6]  5/13 25/24

**O**

opposed... [4]  58/1 68/1 80/1 83/12

opposition [1]  2/15

optics [3]  43/6 43/7 46/8

option [2]  31/18 50/5

order [4]  35/6 56/12 92/18 92/18

ordinary [2]  32/6 75/6

organization [1]  62/6

original [4]  34/14 60/8 82/17 86/3

originally [1]  43/14

other [40]  6/18 6/19 8/24 9/11 10/4 10/12 13/2 14/13 14/25 15/15 16/4 17/3 17/6 19/12 19/15 28/15 36/16 41/18 41/19 49/17 50/5 50/13 50/22 52/9 57/14 64/5 65/21 67/15 67/21 67/23 69/16 72/23 73/3 76/23 79/19 82/23 87/22 91/9 91/11 91/16

others [4]  40/2 43/7 53/9 77/4

otherwise [4]  26/15 49/4 85/11 85/14

ought [4]  8/9 53/20 84/5 90/12

our [27]  5/23 20/10 22/18 24/19 25/14 27/11 27/18 29/14 34/9 38/10 38/12 38/25 41/9 52/9 58/3 66/23 74/4 81/2 85/5 85/22 86/1 87/11 87/13 87/15 87/16 89/14 89/20

out [41]  2/24 5/23 6/21 7/6 13/8 14/9 24/2 26/8 26/21 33/2 37/2 37/2 38/13 40/17 41/1 41/11 50/1 50/13 55/2 55/8 55/20 60/11 60/12 61/4 61/17 65/24 65/25 66/1 66/4 70/12 72/15 72/21 73/22 75/16 81/4

84/1 84/3 84/7 86/9 92/5 93/17

outcome [8]  39/9 73/1 74/1 74/25 88/10 88/17 88/21 89/25

outlet [1]  35/16

outlets [1]  2/24

outlined [2]  27/18 29/12

outreach [1]  67/23

outside [1]  18/24

over [6]  4/14 37/5 38/19 63/13 75/15 80/8

overarching [1]  11/17

overlap [1]  39/17

own [4]  18/16 27/11 47/25 91/3

**P**

P-O-S-T [1]  51/3

p.m [1]  41/20

PAC [2]  70/6 70/8

pace [1]  50/6

PACK [1]  77/2

page [6]  5/15 51/8 59/10 79/4 81/19 91/3

page 7 [1]  5/15

pages [1]  94/10

pains [1]  35/7

painting [1]  49/20

paragraph [1]  44/5

parameters [1]  55/9

paraphrasing [2]  47/20 90/2

part [12]  5/20 24/9 30/3 49/12 54/10 58/4 60/4 60/5 65/25 76/24 80/5 84/17

participation [2]  11/22 14/18

particular [5]  15/21 35/15 49/17 63/5 63/12

particularly [5]  7/15 24/2 58/2 63/14 63/16

parties [5]  2/22 14/5 39/23 47/13 88/19

partisan [8]  42/12 46/13

50/19 50/20 88/12 88/12 88/14 88/15

partition [1]  46/10

parts [1]  2/19

party [9]  18/18 21/1 46/19 50/23 57/18 82/1 87/6 88/2 88/2

passed [3]  8/19 38/7 53/6

past [1]  11/19

patient [1]  29/19

Pause [1]  43/13

Payne [1]  91/4

Pearce [1]  50/7

PEARSON [27]  1/19 4/25 5/3 5/11 5/15 11/18 13/4 14/23 16/24 22/2 22/14 22/21 22/25 23/10 24/20 25/18 34/21 36/9 36/14 37/2 37/10 38/14 38/18 43/16 86/24 92/12 92/20

Pearson's [1]  35/25

pegged [1]  50/3

pending [1]  89/22

people [32]  3/10 13/11 15/9 16/17 19/24 20/25 21/4 23/24 26/9 26/20 27/23 29/14 30/15 30/16 33/24 36/3 38/20 40/9 41/4 46/20 48/10 59/1 61/7 61/14 63/11 63/19 63/24 64/16 66/22 67/6 67/18 93/16

per [1]  15/19

percent [1]  11/24

perception [1]  55/18

perfectly [3]  86/9 86/12 86/15

perhaps [3]  10/12 48/12 91/9

period [4]  69/21 75/8 78/5 80/13

periodic [1]  71/8

periodically [1]  69/20

permission [1]  68/21

**P**

person [8]  3/21 18/22 28/24 29/1 32/11 49/1 67/15 76/2
person's [1]  19/2
personal [2]  43/3 43/10
perspective [7]  11/5 11/7 18/1 25/14 29/20 42/10 90/1
persuasive [1]  44/7
Peterson's [1]  11/4
phrase [5]  34/15 35/12 42/19 42/20 46/5
piece [2]  8/7 9/8
pivot [2]  4/14 39/1
place [5]  13/22 15/3 17/23 24/19 42/22
places [1]  26/25
plan [4]  15/22 16/5 92/25 93/13
planet [1]  61/7
planned [1]  15/18
Platt [1]  4/22
played [3]  13/8 61/4 84/17
plays [3]  6/21 8/4 56/18
pleading [6]  45/8 52/24 62/11 62/15 62/17 86/11
please [4]  12/4 51/6 58/23 85/19
pleased [1]  82/12
plug [1]  54/8
poignantly [1]  12/11
point [34]  5/23 6/2 10/10 10/24 12/2 12/17 15/22 16/20 17/13 21/2 21/5 22/2 24/22 24/23 25/2 29/16 34/13 34/14 34/19 48/9 48/22 49/6 50/18 54/8 55/1 55/2 64/23 65/10 74/4 80/4 81/12 81/16 85/5 86/7
pointed [4]  26/8 65/7 66/5 72/21
pointing [1]  12/6
points [2]  75/7 91/3

political [29]  19/15 44/13 45/22 45/22 46/2 46/4 46/16 47/1 48/24 49/1 49/9 50/5 50/22 50/23 52/2 53/7 57/18 57/25 58/4 71/23 85/3 87/4 87/20 87/21 87/23 88/1 88/2 88/19 88/19
politically [5]  47/19 65/12 65/13 71/24 87/5
politicization [5]  87/15 87/18 87/19 87/21 89/2
politicized [2]  28/1 28/3
politicizing [1]  87/20
pool [2]  3/12 3/19
portion [2]  5/18 74/8
position [2]  20/20 22/18
possible [2]  54/9 57/21
post [2]  50/23 51/3
postman [1]  18/12
posture [1]  49/6
potential [4]  4/14 13/15 14/25 58/19
potentially [1]  43/5
power [2]  26/10 54/8
powerful [2]  31/25 32/2
powers [1]  22/11
practical [2]  6/6 73/12
precedence [1]  29/6
precedent [3]  20/13 28/18 74/4
preceding [2]  45/20 59/10
preferable [1]  74/1
prepared [1]  66/23
preparing [1]  56/19
present [1]  70/17
presentation [6]  69/12 69/20 76/22 83/25 84/9 86/23
presented [1]  69/16
presenting [1]  56/19
preserve [1]  70/20
president [1]  91/8
press [9]  9/19 57/8 57/13

57/14 57/15 64/18 65/24 72/25 88/11
pressure [1]  40/14
presumably [1]  69/17
presumptive [1]  66/6
pretty [3]  31/25 42/16 76/21
previously [1]  60/10
primary [1]  22/5
prime [1]  93/20
print [1]  62/23
prior [2]  24/20 81/25
privilege [4]  11/12 13/2 15/23 31/19
privileges [1]  20/13
proactive [1]  24/25
probably [6]  6/24 9/4 11/13 68/10 69/10 92/22
problem [2]  75/5 81/14
problematic [3]  46/18 47/5 58/3
procedure [2]  14/9 30/1
proceeded [1]  65/20
proceeding [2]  45/12 56/18
proceedings [4]  2/1 12/20 12/21 94/11
process [10]  6/8 23/19 37/6 41/11 42/6 52/20 52/20 57/22 84/24 89/8
processed [1]  22/13
processes [2]  69/18 87/16
product [2]  8/15 28/12
professional [4]  21/6 27/14 29/11 71/4
proffer [3]  19/21 24/15 29/13
prohibited [1]  10/8
prominent [2]  87/6 88/4
proof [1]  61/25
proper [2]  34/8 91/14
properly [3]  16/22 26/16 32/5
proposed [1]  36/12
proposition [3]  56/4 78/21

**P**

proposition... [1] 79/14
prosecute [2] 45/13 46/6
prosecuted [1] 88/16
prosecuting [7] 43/1 45/18
51/9 68/20 82/14 82/25
84/13
prosecution [3] 43/5 56/15
88/17
prosecutor [9] 4/8 21/8
43/12 45/8 46/6 56/12
56/14 58/10 66/10
prosecutorial [1] 83/23
prosecutors [4] 4/4 20/3
56/5 71/9
protect [2] 22/25 27/22
protected [3] 12/1 24/16
24/16
protection [4] 13/3 16/22
22/12 84/24
protections [1] 84/25
protects [1] 27/20
prove [1] 58/3
provide [1] 22/12
provided [2] 12/18 84/1
providence [1] 77/10
province [1] 76/13
provision [3] 30/13 33/2
74/5
provisionally [2] 78/10
78/17
public [17] 9/20 10/4 27/10
36/4 38/13 43/22 43/23
43/24 46/9 49/4 49/22
55/18 62/13 63/5 68/11
71/18 86/21
publication [1] 70/21
publicity [7] 20/2 34/19
35/4 35/5 35/10 67/3 73/4
publicly [12] 6/2 7/9 8/16
10/2 57/9 63/3 63/7 64/13
72/10 72/24 78/4 80/17
publish [6] 59/7 60/18
60/20 62/9 69/4 93/13

published [3] 54/24 59/19
93/5
pull [1] 70/3
pulled [1] 70/1
pulling [1] 64/1
punch [2] 22/3 22/4
punished [1] 85/7
purported [1] 43/18
purpose [29] 1/5 1/10 2/3
12/16 14/10 24/11 24/12
27/21 32/14 32/19 33/18
33/18 34/20 34/25 35/10
43/4 47/24 48/1 48/5 48/11
48/14 48/25 65/9 77/25
88/7 88/24 88/24 91/20
93/3
purposes [3] 3/3 6/6 27/22
pursue [3] 6/17 14/13
74/12
pursuing [1] 46/13
purview [1] 8/12
push [1] 90/5
put [16] 6/19 16/18 20/18
21/9 22/10 27/10 59/18
63/22 71/1 71/3 74/18 81/4
84/4 89/20 92/22 93/7
puts [1] 23/25
putting [2] 19/9 36/3

**Q**

quarantine [1] 37/11
quarters [1] 42/8
quash [8] 2/9 2/16 26/15
26/18 27/8 34/2 40/2 87/1
quashal [6] 4/5 4/11 26/14
36/16 87/2 89/15
quashed [1] 17/20
quashing [3] 36/24 41/10
92/16
quasi [1] 56/6
question [28] 5/10 6/10 7/1
12/19 13/5 15/20 15/23
16/4 19/4 24/6 24/9 26/22
32/21 38/6 41/6 41/12 42/8
43/17 44/15 44/21 55/13

55/13 65/10 78/18 88/23
89/23 91/24 92/18
questioning [2] 26/22
73/14
questions [16] 4/5 11/20
11/24 12/25 13/17 15/11
15/13 16/1 17/16 23/14
24/14 24/21 27/3 28/21
36/12 74/19
quiet [2] 29/21 29/21
quietly [1] 64/6
quite [1] 57/12
quote [3] 56/7 67/17 71/4
quoted [1] 64/11

**R**

race [6] 7/17 21/3 21/4
50/4 64/4 81/13
races [3] 21/2 21/5 43/25
raise [3] 6/7 51/9 77/3
raised [11] 3/24 5/12 9/22
36/9 41/17 42/15 63/13
72/22 78/1 84/23 86/7
raiser [1] 81/25
raises [1] 5/15
raising [3] 10/5 81/18
81/23
rank [2] 38/2 38/6
rates [1] 66/23
rather [1] 3/12
re [31] 1/4 3/16 7/19 13/13
15/4 17/6 20/2 20/8 20/9
20/9 20/14 21/11 22/6
22/23 24/25 25/8 25/16
26/11 26/12 26/17 26/18
28/4 29/17 30/18 33/9
33/24 34/9 37/17 38/5
39/12 41/1
re going [1] 37/17
reach [3] 6/10 6/25 39/25
reached [4] 2/24 40/18
40/19 60/12
reaction [2] 11/17 49/19
reactive [1] 24/25
read [5] 31/1 33/14 33/15

**R**

read... [2]  71/13 84/10
reading [3]  33/13 55/16
71/12
ready [1]  8/20
real [1]  73/7
really [10]  3/3 3/9 21/13
37/23 41/12 45/21 64/21
67/3 73/2 73/6
reason [9]  24/7 24/9 29/5
40/25 69/14 78/3 83/20
85/12 89/3
reasons [1]  6/9
received [15]  2/16 5/16
5/20 5/24 18/5 50/8 55/2
58/12 58/17 58/24 61/1
64/11 64/14 84/21 85/10
receives [1]  71/7
receiving [1]  79/23
recipient [2]  31/13 79/22
recognize [4]  20/21 29/10
33/8 36/1
recognizes [1]  45/17
recollection [1]  79/14
recommend [3]  7/19 56/25
67/7
recommendation [2]  6/16
56/20
recommended [1]  90/5
record [9]  2/2 2/21 3/5
43/22 60/4 62/13 76/24
80/5 84/15
records [4]  30/5 43/20
43/23 63/4
recusal [3]  51/12 51/14
51/22
reduced [1]  39/8
reference [3]  47/20 51/8
84/25
referred [1]  74/6
referring [2]  11/14 79/10
refrain [1]  71/17
refused [1]  42/1
refusing [1]  31/20

regard [9]  10/9 13/24 32/3
58/8 66/11 68/17 69/1 80/6
89/13
regarding [2]  31/20 86/6
regardless [1]  8/7
regrets [1]  63/11
regular [3]  32/3 32/9 33/22
regularized [1]  37/8
regulations [1]  21/6
related [1]  91/10
relates [1]  71/20
release [4]  8/8 9/11 93/12
93/18
released [4]  9/2 93/6 93/14
93/15
releasing [1]  57/8
relevance [6]  50/4 77/11
77/15 77/23 79/21 79/24
relevant [5]  19/18 56/9
71/6 71/10 80/9
relief [4]  44/19 87/12 90/3
90/3
reluctant [1]  40/13
rely [4]  16/19 69/1 78/24
79/2
remarkable [1]  89/2
remarks [1]  49/12
remedial [3]  53/22 61/21
78/23
remedy [6]  45/5 47/10
52/10 73/10 87/13 89/13
remember [1]  18/20
reminded [1]  71/8
reminding [1]  71/11
remote [1]  14/24
repeat [2]  53/13 67/10
repeating [1]  92/17
replacement [1]  89/10
reply [1]  72/5
report [21]  3/9 6/15 7/18
7/25 8/5 8/8 8/20 9/11 9/12
49/4 66/1 67/7 67/10 80/7
90/21 92/23 93/4 93/14
93/19 93/20 94/9

reported [1]  7/21
reporter [12]  1/23 59/3
60/11 60/17 60/25 62/7
80/25 81/2 82/18 86/1 94/8
94/23
reporting [2]  61/17 94/15
reports [1]  9/1
represent [4]  45/11 49/24
59/14 60/24
representation [3]  60/9
69/24 78/2
representatives [1]  11/8
represented [2]  45/19 85/8
representing [3]  4/3 4/17
69/8
reptile [1]  55/9
republican [9]  18/18 21/1
87/6 88/4 88/4 88/8 88/9
88/15 89/5
republicans [1]  89/1
republish [1]  33/6
request [3]  29/15 60/5 69/4
requests [2]  36/16 53/3
require [3]  14/14 53/21
56/11
required [1]  83/12
requirement [1]  83/5
requirements [2]  53/16
82/24
requires [2]  43/1 74/5
requiring [2]  23/13 28/20
resign [1]  33/7
respond [2]  12/2 26/4
responded [1]  36/11
response [7]  2/17 5/22
55/21 72/16 72/16 83/1
84/22
responses [1]  3/23
responsibilities [1]  71/9
responsibility [2]  21/7
71/5
responsive [2]  24/24 42/23
rest [1]  38/2
result [3]  9/5 49/21 63/9

# R

retains [1]  31/18
revelations [1]  58/1
reviewed [2]  83/1 83/1
reviewing [1]  76/17
revisit [1]  27/8
rewarded [1]  85/6
rich [1]  35/14
ridicule [1]  86/21
ridiculous [1]  19/10
right [37]  4/13 5/9 7/5 8/24
  10/24 15/3 15/7 17/8 20/12
  21/25 23/3 25/18 25/20
  31/4 31/8 31/16 34/17 35/1
  35/11 38/24 39/1 42/5
  51/25 53/11 58/3 60/9
  61/13 61/15 68/6 69/13
  78/13 78/16 80/19 82/10
  92/4 92/15 93/1
rights [8]  4/6 14/7 19/20
  19/21 20/1 25/12 25/15
  27/12
rise [1]  65/13
ROBERT [2]  1/11 68/19
role [5]  8/4 18/19 19/2
  52/16 56/18
rolled [1]  33/2
room [2]  11/8 12/22
routine [4]  45/22 45/24
  50/14 51/18
routinely [2]  82/22 83/8
rule [11]  2/23 3/1 3/2 3/3
  3/5 3/9 3/10 3/14 33/9 33/9
  71/19
rules [11]  10/7 21/7 21/8
  28/15 29/11 30/7 32/7 71/4
  71/5 83/24 84/1
ruling [3]  37/24 39/14 78/8
run [1]  81/16
running [1]  43/21
runoff [4]  72/9 81/18 82/3
  83/2

# S

said [19]  3/18 17/25 19/8
  25/1 29/11 35/14 35/20
  39/13 53/13 57/13 59/16
  59/17 60/12 66/21 66/22
  67/22 72/5 87/6 88/21
same [16]  9/16 13/22 33/14
  37/2 39/20 45/9 50/1 50/8
  50/9 50/23 51/4 60/17
  60/25 74/15 85/11 87/9
satisfied [1]  85/16
saw [1]  45/8
say [35]  7/13 13/16 13/20
  15/5 15/7 15/24 16/9 16/12
  17/8 21/9 22/8 22/22 24/13
  25/19 25/24 28/12 30/15
  30/23 38/18 48/7 49/11
  53/24 56/8 58/10 58/24
  63/24 66/12 73/12 73/18
  73/20 74/15 89/14 89/17
  90/2 91/12
saying [20]  7/24 12/24
  14/25 18/5 18/11 19/8
  22/23 26/17 26/18 28/21
  30/18 31/24 33/16 56/21
  56/22 64/11 67/24 83/9
  85/1 90/4
says [18]  7/18 12/12 26/8
  26/8 28/19 30/2 30/8 30/16
  30/17 30/21 30/24 32/10
  33/25 34/2 34/5 48/13
  62/25 86/23
scene [1]  43/16
Schafer [1]  20/24
Schaffer [1]  18/18
scheduled [2]  41/3 41/3
scheme [3]  11/23 14/19
  17/10
scope [1]  22/23
Scotia [2]  16/15 25/22
screen [12]  54/8 54/11
  54/22 54/24 59/16 59/18
  61/13 62/21 71/1 71/4
  77/20 85/19

script [2]  23/14 59/20
seal [1]  94/15
Sean [1]  20/22
seat [1]  42/6
second [5]  8/6 18/4 22/1
  47/16 73/25
secrecy [2]  20/3 68/8
secret [1]  38/13
Secretary [1]  91/9
see [22]  5/1 8/19 19/17
  23/5 35/17 37/17 41/2 48/7
  54/21 60/7 62/23 62/25
  63/20 66/19 70/19 73/17
  76/25 78/17 79/1 84/5 90/8
  93/22
seeing [1]  75/17
seeking [5]  2/7 15/7 78/23
  90/2 90/3
seem [2]  38/25 87/8
seems [2]  84/5 88/25
seen [3]  49/9 59/7 60/2
seized [1]  17/13
selected [1]  75/2
self [1]  31/20
self-incrimination [1]
  31/20
senate [1]  20/23
senator [67]  1/18 2/6 2/8
  2/10 4/17 5/23 6/8 6/22 7/8
  7/19 9/4 9/6 9/10 10/2 10/9
  10/13 14/16 15/13 20/6
  23/11 29/20 42/15 43/5
  47/11 47/21 47/25 48/20
  49/7 49/23 50/9 50/11 53/9
  55/2 57/7 58/9 61/2 61/24
  64/12 64/14 65/8 65/25
  66/11 66/12 66/16 66/21
  67/24 68/10 72/11 73/3
  74/12 75/9 75/17 76/1
  81/24 83/2 84/8 84/21
  84/23 86/10 87/11 87/12
  89/11 90/5 90/9 90/17
  90/24 92/10
send [1]  24/11

**S**

sending [1]  90/10
sense [3]  16/24 45/15 46/13
sent [5]  51/22 51/23 53/8
63/12 91/12
sentence [4]  31/25 32/1
32/2 33/15
separate [1]  92/1
serial [2]  38/2 38/6
series [5]  47/7 58/2 66/3
66/4 72/24
serve [1]  26/16
session [3]  41/19 52/22
54/11
set [3]  27/9 49/18 55/3
setting [3]  6/25 28/16
69/14
shadowboxing [1]  65/18
Shaeffer [1]  87/5
shaking [1]  22/15
shame [1]  86/22
share [8]  17/4 40/16 42/10
53/13 54/11 54/12 79/6
85/20
shared [7]  8/16 11/25
54/12 54/14 60/10 82/12
87/4
she [37]  5/1 6/17 9/23 9/24
21/20 21/20 21/23 21/23
22/20 31/8 31/8 34/22
37/10 37/11 37/11 37/16
38/14 38/15 38/16 38/19
39/15 56/7 61/12 65/12
66/8 68/3 70/18 71/24
71/24 71/25 74/21 74/23
74/24 75/13 79/20 88/12
88/14
she's [1]  27/17
shifts [1]  81/22
shocked [1]  93/19
shore [1]  76/20
short [2]  30/16 73/9
shortly [3]  9/24 9/25 62/8
should [31]  3/25 5/17 6/17

10/10 17/19 19/24 20/15
21/9 21/13 21/16 25/5 27/4
27/9 28/19 34/4 40/18 45/1
50/21 50/22 51/22 61/8
61/21 69/14 71/16 85/17
86/23 88/8 89/10 89/19
90/7 90/23
shouldn [6]  13/16 17/20
24/8 24/13 25/9 26/24
shouldn't [2]  17/1 76/1
show [6]  17/20 21/14 63/11
77/13 85/11 88/11
showed [1]  80/10
showing [1]  56/11
shown [1]  76/15
shows [4]  52/4 63/7 77/16
77/23
shred [1]  82/20
side [9]  10/4 10/4 24/19
35/15 38/10 42/7 72/22
72/23 77/14
sign [2]  3/1 61/12
signature [1]  19/9
signed [4]  3/2 58/13 60/25
67/4
significant [1]  65/4
signing [1]  19/8
signs [1]  37/20
similarly [7]  18/11 18/14
19/12 39/15 39/16 39/20
85/10
simple [3]  42/8 55/12 74/9
simplify [1]  6/7
simply [3]  10/21 14/10
15/13
since [3]  14/2 42/7 43/25
single [3]  19/3 26/22 31/13
sir [7]  15/17 16/4 24/5 26/3
49/10 76/4 78/12
sit [7]  24/15 37/14 58/10
66/11 74/13 74/14 78/19
site [1]  77/2
situated [11]  13/21 17/25
18/11 18/15 18/16 18/23

19/12 39/16 39/16 39/20
85/10
situation [9]  11/16 16/18
19/1 19/3 22/7 39/20 45/16
51/15 90/6
six [3]  10/18 58/23 62/7
skill [1]  94/12
skip [1]  31/25
slammed [2]  58/14 67/3
slap [1]  59/15
slate [3]  61/1 89/18 91/24
slide [4]  58/17 58/20 58/23
60/23
slightly [1]  33/12
small [2]  62/25 63/14
smaller [1]  6/24
Smith [10]  68/19 68/25
69/12 69/16 76/22 82/11
82/13 82/21 83/21 86/4
Smith's [4]  76/22 83/6 84/9
86/22
snippets [2]  71/14 71/15
so [121]
social [1]  46/2
society [1]  58/3
sole [3]  11/21 13/9 22/5
solid [1]  74/10
some [37]  2/23 3/24 6/5
10/12 11/10 11/25 14/23
14/24 14/25 17/15 18/6
21/14 22/4 22/11 28/15
31/4 35/20 36/25 39/13
40/9 40/15 42/10 42/14
43/7 44/19 49/7 49/13
49/16 52/4 52/9 54/18
54/18 58/6 68/9 77/4 88/22
92/15
somebody [5]  63/25 64/20
75/23 75/25 76/2
somehow [5]  37/20 45/8
61/16 61/16 71/25
someone [21]  7/13 12/15
13/7 28/20 38/21 38/22
39/3 46/3 46/7 46/16 47/2

# S

someone... [10]  57/14
57/17 65/11 71/24 74/7
77/1 82/6 82/21 85/4 88/20
someone's [2]  57/25 65/16
someones [1]  58/1
something [21]  6/23 8/9
12/1 12/18 19/9 21/20
21/23 28/17 28/23 37/21
49/22 54/3 54/12 65/6
67/11 70/24 73/10 73/21
73/22 73/24 91/25
Sometime [1]  82/4
sometimes [1]  16/16
somewhere [3]  12/18
74/11 93/5
soon [2]  52/18 84/3
sorry [4]  51/13 59/4 59/6
79/8
sort [4]  31/4 63/23 64/19
84/3
sought [2]  3/5 51/10
sounds [3]  14/21 18/15
19/10
source [7]  35/4 48/6 52/11
67/25 69/9 77/1 78/11
sourced [1]  70/23
sources [2]  67/17 77/12
sourcing [1]  76/21
sp [3]  61/4 79/24 91/4
speak [3]  17/2 21/20 27/5
speaking [2]  2/22 52/15
speaks [1]  12/11
special [40]  1/5 1/10 2/3
4/8 7/9 7/14 12/15 14/10
21/7 26/9 30/1 32/6 32/14
32/19 33/18 33/18 33/23
34/20 34/24 35/10 36/5
43/4 43/11 47/24 48/1 48/5
48/11 48/14 48/25 50/12
60/15 67/19 74/3 74/8 88/7
88/24 90/19 91/7 91/20
93/3
specific [1]  40/13

specifically [4]  12/12 21/9
30/6 39/4
speculating [1]  64/7
speculation [1]  64/18
speculative [1]  43/2
spelled [1]  12/7
spread [2]  37/2 41/1
squint [1]  62/25
stage [1]  15/5
stake [1]  88/16
stand [4]  25/18 25/20
51/12 78/21
standard [8]  45/3 45/4
51/13 51/14 55/19 55/20
56/4 85/12
Standards [2]  27/13 27/14
Standing [1]  15/3
start [8]  3/20 5/9 11/2 11/4
17/23 44/20 53/14 54/5
started [2]  42/17 59/21
state [32]  1/2 1/15 1/16
1/17 2/14 3/20 6/23 10/7
11/5 12/6 12/20 16/12 18/9
19/20 23/25 25/20 26/25
29/7 30/20 31/24 42/22
50/17 52/10 52/24 53/2
62/14 75/20 75/22 85/1
86/7 94/4 94/9
State's [5]  83/13 83/15
84/4 84/6 91/9
stated [1]  34/21
statement [3]  10/16 15/6
84/16
statements [1]  84/12
states [1]  37/5
statewide [1]  65/4
station [1]  47/13
status [8]  5/19 12/3 24/22
24/23 25/2 25/6 50/15
86/10
statute [8]  21/12 26/14
32/4 32/19 32/25 33/5 34/5
48/17
statutes [1]  30/11

statutory [2]  19/21 74/5
stay [1]  40/17
stays [1]  93/2
steps [5]  8/18 36/2 39/1
88/22 88/23
Steve [1]  38/18
stick [1]  13/9
still [18]  11/2 16/14 17/6
20/22 20/23 21/4 39/11
39/17 44/18 47/9 47/9
47/14 49/7 83/3 87/4 90/19
90/21 91/16
stood [1]  31/23
stop [2]  17/11 59/5
stories [2]  64/7 67/17
story [5]  60/18 60/20 62/8
64/10 81/4
streamline [1]  52/9
streamlined [2]  37/8 42/3
strikes [2]  9/7 46/18
striking [1]  45/21
strokes [1]  45/25
stronger [1]  56/11
subject [9]  7/9 7/12 7/13
19/22 20/16 51/11 56/14
83/18 91/23
submission [1]  69/7
submit [3]  57/2 63/9 80/9
submits [1]  3/14
submitting [1]  57/5
Subparagraph [1]  30/2
subpoena [22]  5/20 12/15
26/9 26/16 26/17 30/4 30/7
30/15 30/23 30/24 31/14
32/5 32/15 32/22 33/1 48/1
48/16 48/17 48/20 55/3
66/22 68/15
subpoenas [8]  5/16 32/25
33/4 33/25 36/24 40/2 48/6
92/17
substantial [1]  71/18
substituting [1]  77/1
such [3]  19/22 23/1 52/23
suddenly [3]  9/13 58/14

**S**

suddenly... [1] 93/11
sufficient [7] 22/12 22/25
26/20 66/9 78/22 87/13
90/22
suggest [3] 35/14 61/7 74/4
suggested [1] 23/9
suggesting [3] 24/1 33/21
83/6
suggestion [1] 91/2
suggests [1] 43/9
summer [1] 52/11
SUPERIOR [4] 1/1 1/24
51/17 94/25
supervised [2] 8/1 92/1
supervisory [3] 26/15 34/6
52/16
support [8] 43/24 45/22
46/1 48/24 49/21 57/17
65/11 71/24
supportings [1] 49/1
suppose [1] 79/24
supposed [5] 29/3 32/25
37/1 66/19 68/7
Supposition [1] 67/12
suppress [1] 26/12
suppressed [1] 33/23
Supreme [6] 16/15 20/12
27/20 33/16 55/20 56/21
sure [16] 2/21 12/2 12/10
15/25 51/7 54/21 57/12
62/14 69/5 79/23 80/23
80/24 81/1 86/1 93/11
93/15
surprise [3] 9/1 50/21 66/2
surprised [1] 20/15
surprises [2] 52/11 65/12
suspect [2] 37/7 75/21
sway [1] 72/25
swaying [1] 65/3
switch [1] 9/14
switched [1] 43/25
system [4] 29/6 29/7 29/8
52/6

**T**

table [2] 77/14 85/18
taints [1] 89/12
take [19] 31/24 33/11
33/17 37/6 39/5 40/14
53/21 59/9 60/3 61/21
69/11 70/25 76/9 76/19
78/22 80/8 80/10 85/19
94/9
taken [6] 16/25 35/7 35/19
47/18 49/7 88/3
taking [3] 8/18 41/16 81/10
talk [22] 6/4 9/1 22/1 23/11
29/18 34/18 40/22 40/23
42/2 42/5 43/15 47/12
53/20 66/13 66/22 68/2
68/9 68/10 68/12 72/19
75/9 76/25
talked [5] 11/14 19/16 24/3
34/23 67/14
talking [17] 27/16 35/17
40/20 47/4 50/17 57/15
64/21 64/24 65/2 65/3 72/9
72/10 81/22 87/22 87/25
88/1 88/1
tall [1] 30/15
targed [1] 60/13
target [69] 5/17 5/24 7/11
7/15 9/3 9/25 10/3 10/4
10/17 10/18 11/25 12/13
12/19 12/23 13/5 18/5
18/13 21/9 24/7 25/9 28/16
30/18 30/19 30/22 31/22
32/10 32/15 32/16 32/18
43/11 44/13 46/17 47/2
49/13 49/25 51/10 53/8
57/8 57/10 57/14 58/12
58/18 58/20 58/21 58/24
59/1 61/1 63/2 64/5 64/6
64/8 64/12 64/14 64/17
65/19 66/15 66/24 67/5
67/16 67/23 68/12 68/14
72/2 72/4 72/11 72/23 80/4
84/21 86/10

targets [7] 18/2 27/17 29/9
30/7 30/21 30/24 58/16
tasked [2] 6/15 75/17
team [5] 17/2 17/5 23/16
48/13 92/10
technically [2] 33/4 48/3
tell [6] 3/14 3/19 15/7
15/14 17/18 28/22
temperature [1] 12/21
tendered [5] 76/18 77/4
77/9 77/21 82/19
term [1] 55/10
terms [4] 17/3 25/15 50/5
90/12
testifies [1] 39/7
testify [3] 23/1 29/10 31/20
testimony [5] 23/20 23/24
39/8 39/9 55/4
than [24] 3/12 3/21 6/20
8/24 9/12 16/6 28/1 28/15
30/20 30/23 39/2 41/18
42/4 43/7 49/17 57/14
61/10 67/21 75/14 79/19
81/20 87/12 87/22 90/3
thank [18] 4/13 13/19
36/14 36/23 42/18 43/13
44/8 51/7 60/7 70/15 76/4
76/5 76/10 82/19 91/1 92/4
92/8 92/14
Thanks [1] 86/5
that [666]
that's [31] 5/21 7/6 7/21
8/3 8/17 11/25 36/2 38/15
40/10 41/14 44/14 51/18
52/5 53/6 54/1 57/15 61/23
62/11 65/4 68/4 68/5 69/10
79/9 79/14 82/24 88/23
89/6 90/22 91/10 92/1 92/3
their [48] 5/17 9/15 10/1
10/16 11/21 11/22 13/5
15/22 19/20 19/20 19/21
20/1 20/13 20/21 24/20
26/24 27/7 27/11 27/12
28/21 35/1 42/10 47/14

**T**

their... [25]  47/25 48/2
48/7 52/19 55/21 58/14
58/19 63/11 64/12 64/15
64/20 64/23 67/7 68/18
69/17 71/9 72/5 83/11
86/10 87/19 87/20 87/20
87/21 93/9 93/11
them [36]  2/11 2/16 13/7
13/23 13/24 14/13 14/21
14/24 14/24 14/25 18/5
20/12 21/13 22/7 24/12
25/1 26/21 26/23 27/8 27/9
27/17 29/9 29/13 33/6 33/7
34/2 34/10 36/7 37/15
41/10 41/10 42/2 67/5
80/25 83/21 93/20
then [59]  2/8 4/24 8/21
9/25 10/8 10/17 10/18 13/7
14/4 15/9 16/10 16/14
16/19 17/9 17/11 18/20
22/10 23/5 23/15 23/17
23/22 25/4 26/20 27/8 29/6
29/8 33/8 33/22 34/2 35/3
38/2 40/21 44/17 49/13
49/22 50/12 52/4 54/1
55/18 56/23 58/12 60/1
62/1 62/7 62/8 62/17 65/19
66/23 66/24 67/1 67/5
75/20 76/20 76/22 78/9
78/17 90/4 91/11 93/19
then I [1]  40/21
theorized [1]  79/24
theory [3]  57/24 71/20
72/14
there [102]
there's [16]  21/20 27/19
43/8 55/18 60/1 62/8 66/2
66/3 74/5 74/21 76/12
77/11 85/24 89/3 90/23
91/11
thereafter [1]  9/24
these [28]  3/24 5/16 15/9
15/20 17/3 19/7 19/12

20/25 20/25 21/2 21/4 21/5
23/14 24/14 26/19 26/24
30/7 38/23 39/5 40/2 45/10
52/1 58/10 61/12 66/22
66/25 72/24 83/9
theses [1]  23/10
they [143]
they'll [3]  25/20 52/20
59/18
they're [6]  29/2 35/20 67/6
67/6 77/4 86/20
thing [9]  15/8 29/22 34/1
38/10 38/11 38/15 52/8
64/19 65/5
things [18]  3/5 6/19 7/22
10/6 17/23 17/24 35/20
41/23 42/3 45/10 46/21
52/2 68/17 86/22 88/1
92/15 93/10 93/21
think [91]  2/9 2/13 7/4 7/5
8/9 10/22 10/23 10/24 11/2
12/19 12/25 13/6 14/1
16/11 16/23 17/18 17/22
19/3 19/11 19/21 21/2 21/5
21/24 23/19 23/23 23/24
23/25 25/5 25/15 26/19
26/21 27/19 27/24 28/15
29/4 29/5 31/6 34/8 35/4
35/14 35/18 36/3 36/18
37/19 38/8 39/2 40/1 41/14
42/7 42/9 42/12 42/13
42/14 42/19 43/6 44/23
45/2 46/20 48/3 49/6 50/18
50/23 51/12 52/9 55/14
55/15 55/16 57/13 68/24
69/1 71/5 73/12 77/15
77/23 78/7 78/7 79/21
79/22 81/22 84/7 85/15
86/16 86/18 87/24 88/14
89/8 89/10 89/11 90/12
90/14 92/4
thinking [8]  24/17 25/25
45/10 46/6 46/8 48/10
56/23 56/24

third [3]  33/13 35/12 88/5
this [198]
those [20]  2/13 6/18 6/24
10/6 12/3 12/25 13/17
14/17 16/17 38/25 48/5
50/20 56/5 58/4 58/9 63/19
65/1 71/5 88/23 93/17
though [5]  2/23 16/3 49/6
51/23 73/22
thought [7]  6/4 6/7 10/22
46/6 59/16 80/10 90/4
thoughts [1]  81/7
threats [1]  20/8
three [8]  34/16 42/7 53/11
60/17 60/24 61/14 63/1
64/5
through [23]  2/5 6/24 7/9
8/23 9/2 11/11 12/4 13/6
16/10 23/2 25/5 39/13 40/9
41/4 42/4 42/15 46/24
48/16 48/17 60/21 61/20
61/23 65/17
thrown [1]  42/12
thrust [1]  85/6
Thursday [1]  41/3
ticket [1]  22/3
tie [1]  9/13
tied [2]  37/20 78/18
tilted [1]  66/5
time [25]  8/15 10/2 14/4
18/12 25/1 26/11 27/9
35/12 40/7 45/18 48/12
50/1 50/9 51/17 64/8 69/3
69/21 75/8 81/15 84/8
84/20 88/10 89/24 93/12
93/23
timeline [9]  49/14 49/16
49/17 49/19 49/20 52/17
52/17 53/7 53/10
timelines [2]  8/13 36/25
times [3]  7/21 27/2 34/16
timing [3]  8/8 9/12 92/23
tired [1]  35/5
title [5]  18/17 33/1 33/3

**T**

title... [2]  44/11 46/1
to be [1]  35/21
today [9]  2/11 2/19 2/24
3/1 8/6 8/10 54/19 68/25
88/18
told [5]  14/11 27/1 58/15
58/20 63/10
tomorrow [2]  40/19 40/22
too [8]  27/6 37/11 40/13
40/13 51/22 69/13 76/10
85/13
took [2]  24/19 88/22
topic [4]  14/17 17/12 19/4
19/18
topics [1]  13/9
totally [1]  91/5
touch [1]  15/18
towards [1]  66/5
training [3]  68/18 70/18
71/8
trains [1]  83/21
transactions [2]  64/24
64/25
transcribed [1]  94/12
transcript [3]  1/10 94/11
94/13
transparent [2]  24/18
50/16
treated [2]  85/9 86/14
treatment [2]  56/9 85/11
trial [2]  15/5 57/1
trials [1]  61/24
tribulations [1]  61/24
tried [2]  20/17 33/22
trouble [1]  14/24
true [8]  6/20 18/25 31/21
44/9 53/19 69/10 70/22
94/11
truly [1]  71/15
Trust [1]  29/24
try [3]  29/9 35/7 53/25
trying [11]  24/17 44/1 46/9
46/12 47/25 55/8 57/25

86/20 88/16 89/14 93/20
Tuesday [3]  41/4 41/5 41/6
tunnel [1]  93/10
two [22]  2/13 4/23 5/7 10/1
10/6 10/17 18/10 24/6 24/9
39/15 39/23 41/4 59/1 61/7
64/15 71/22 72/4 75/13
80/8 88/19 91/7 91/20
two-part [1]  24/9
type [2]  15/11 22/19

**U**

ultimately [4]  8/4 73/3
80/25 83/16
unable [1]  52/12
undecipherable [1]  83/7
under [38]  10/7 12/12 14/3
14/3 19/5 19/7 20/12 21/11
26/14 26/19 26/24 27/13
27/14 28/24 30/2 30/13
32/4 32/7 32/25 33/1 33/2
33/3 33/5 33/5 34/5 34/5
40/1 40/14 42/25 47/15
48/2 48/17 58/11 58/11
64/20 68/16 86/19 89/19
undermine [3]  56/15 66/20
74/17
undermined [1]  56/22
understand [13]  13/19
15/19 24/17 40/6 40/12
49/3 49/5 61/6 65/15 70/22
72/20 81/21 84/6
understanding [5]  8/10
8/25 17/24 52/15 69/19
undisclosed [2]  40/20
40/21
undoubtedly [1]  14/2
unethical [1]  29/10
unfolds [1]  52/20
uniform [1]  88/3
unintelligible [7]  17/15
17/21 33/15 51/24 68/15
83/22 86/19
universe [2]  61/14 61/17
unless [3]  15/8 21/10 61/25

unlikely [1]  52/14
unplug [1]  73/14
unprotected [1]  38/8
unremarkable [1]  88/25
unsolicited [1]  59/3
until [11]  8/18 41/5 52/4
52/25 64/14 70/21 72/4
76/24 81/3 82/18 93/6
unwelcomed [1]  61/18
up [33]  12/22 12/22 14/11
14/23 16/12 16/21 17/20
20/11 21/20 25/16 25/19
25/20 26/10 27/23 31/23
35/5 36/2 41/3 41/24 42/1
42/6 52/22 53/7 63/11 76/8
76/9 76/20 77/20 78/11
78/18 85/13 86/3 86/21
upon [4]  17/13 19/19 23/21
59/16
upside [1]  52/5
us [11]  5/8 16/15 26/17
27/1 29/13 57/23 61/5
66/13 71/1 72/20 74/19
use [10]  3/1 17/3 20/2 28/5
32/15 39/24 42/20 46/5
55/10 55/11
used [5]  22/8 32/18 32/20
33/19 42/19
useful [1]  66/17
uses [1]  18/7
using [3]  28/4 44/10 46/1
utterly [1]  88/25

**V**

valid [1]  42/14
various [1]  19/17
ve [14]  5/3 16/23 16/25
17/9 18/22 20/17 25/7
27/18 27/25 36/21 37/18
40/8 45/16 47/2
vehemently [1]  22/17
verify [1]  69/7
verses [2]  54/5 55/14
very [20]  12/11 14/22
18/16 18/19 18/19 29/7

**V**

very... [14]  32/2 37/19 38/11 40/3 44/7 44/9 53/15 61/6 79/6 81/9 81/17 85/18 86/6
victim [1]  45/19
view [5]  20/10 27/11 73/10 87/11 87/13
views [2]  28/6 28/8
violate [1]  68/15
violated [1]  84/2
violator [1]  66/6
virtual [1]  5/3
virtually [2]  5/1 37/12
vis [2]  17/14 17/14
vis-a-vis [1]  17/14
vision [1]  23/6
voluntary [2]  24/21 55/9
votes [1]  91/10
voting [1]  6/14

**W**

WADE [17]  1/15 4/7 4/10 11/16 15/16 16/21 17/2 17/4 21/25 22/15 43/12 43/20 43/25 45/25 50/15 61/13 92/6
Wade's [1]  43/18
wait [1]  24/13
waived [1]  5/17
WAKEFORD [8]  1/16 4/9 4/10 11/16 16/20 21/25 30/25 92/6
walk [3]  14/11 38/23 38/24
walked [1]  36/2
want [43]  2/20 3/11 3/15 3/22 4/18 5/9 11/4 13/3 13/6 22/4 22/14 22/16 22/23 23/15 25/19 28/23 34/3 34/18 37/15 37/25 39/19 39/24 40/16 42/9 44/24 44/25 47/13 47/16 48/4 48/10 50/18 53/12 55/5 70/15 71/1 77/3 78/13

78/20 80/24 82/2 89/3 90/4 92/23
wanted [7]  10/21 22/23 35/11 67/2 67/3 85/12 86/25
wants [4]  6/19 21/20 45/25 68/3
was [140]
wasn [4]  24/1 24/24 25/6 28/18
wasn't [3]  51/24 64/13 71/21
watch [1]  47/13
waterfront [1]  17/13
way [18]  6/21 8/16 18/14 22/12 22/13 23/13 31/24 34/6 37/25 47/11 49/19 60/9 69/15 74/21 79/2 87/7 89/6 93/1
ways [2]  35/9 47/8
we [198]
we'd [2]  54/8 60/20
we'll [5]  2/11 54/1 60/23 78/17 93/22
we're [20]  26/17 53/5 60/6 61/23 64/21 65/3 66/12 72/9 72/10 73/7 77/1 81/1 81/4 81/10 81/22 83/3 87/25 87/25 88/1 92/15
we've [7]  2/20 25/7 25/8 34/15 36/7 66/23 92/5
wearing [1]  38/24
website [4]  63/6 63/20 70/7 70/9
week [7]  27/8 40/21 40/24 41/2 41/15 82/7 83/23
weeks [7]  10/17 41/1 53/11 63/1 63/21 64/5 75/13
welcome [1]  3/6
welfare [1]  41/18
well [34]  4/9 5/22 7/11 7/13 7/18 16/9 20/20 21/19 23/23 25/3 29/2 35/13 38/17 40/15 40/22 41/14

41/14 41/25 42/3 46/21 47/24 51/18 59/14 60/15 66/12 74/2 79/6 86/2 89/8 92/21 92/25 93/7 93/9 93/13
went [4]  50/1 50/13 51/24 88/18
were [42]  2/23 2/25 7/23 9/13 11/3 18/1 18/1 19/2 24/21 25/2 29/5 32/25 33/3 33/4 33/21 35/2 38/15 42/4 43/14 45/8 45/10 46/5 50/8 53/22 55/8 56/23 56/24 58/4 58/5 58/15 59/2 63/21 64/6 64/16 64/25 65/2 66/8 75/8 87/19 89/20 89/21 89/24
weren't [1]  89/2
what [115]
what's [8]  8/20 19/14 62/16 77/24 87/7 87/21 89/2 90/11
whatever [5]  13/3 18/9 37/25 52/17 90/10
whatnot [1]  18/21
whatsoever [1]  34/7
wheel [1]  63/25
when [30]  2/16 9/1 10/1 16/18 35/7 36/1 39/4 39/25 40/7 40/23 41/21 43/21 51/21 52/2 52/12 52/22 53/4 53/5 53/5 55/17 66/18 66/21 67/7 68/8 72/4 79/6 81/1 82/3 84/8 93/15
whenever [1]  49/2
where [31]  14/9 14/17 15/5 16/1 16/16 17/7 19/16 27/25 28/16 37/18 45/10 46/6 46/15 48/7 51/15 55/15 58/19 61/4 61/6 62/24 64/10 64/24 67/1 67/1 69/9 69/25 72/21 76/13 88/17 88/23 91/5
wherever [1]  37/15

# W

whether [13]  5/11 6/17
10/21 12/23 20/14 33/24
56/9 57/4 57/7 66/20 70/21
73/2 74/16
which [29]  2/18 5/12 9/12
16/25 19/19 20/12 30/13
31/13 32/4 32/13 32/14
32/25 34/14 34/23 48/20
48/20 56/18 57/2 59/15
61/20 62/10 63/4 68/8
72/21 83/23 86/8 87/22
89/25 90/5
while [11]  3/5 21/2 21/3
30/2 39/5 43/6 44/24 47/2
55/10 65/1 78/6
who [62]  2/21 2/21 3/14
3/20 3/24 5/16 7/14 9/13
12/24 13/11 16/12 18/20
19/2 19/9 20/18 27/23
31/10 32/11 33/17 33/19
34/22 35/17 36/5 38/23
39/4 40/20 41/21 45/20
46/14 48/9 48/13 50/16
51/9 57/13 58/13 60/25
61/8 62/1 63/19 63/25 64/1
64/20 65/20 66/11 67/4
67/18 67/22 68/1 68/19
71/22 74/11 75/3 75/23
76/2 80/3 82/13 82/21 83/8
83/9 88/20 88/20 91/13
who's [1]  80/3
whole [11]  29/22 44/5
49/12 61/10 66/3 66/3
73/25 75/20 80/11 85/5
85/5
whom [2]  65/11 71/24
whose [1]  22/5
why [16]  13/16 15/13
17/18 24/10 25/4 25/9
27/15 27/18 27/19 28/2
39/19 40/25 42/1 42/13
73/6 76/19
Wilis [1]  64/10

will [42]  2/18 2/21 3/20
7/20 8/10 11/12 14/14
16/20 17/4 21/20 21/24
28/14 35/16 36/23 36/24
37/7 37/7 37/9 38/1 38/2
39/6 40/7 40/18 49/11
52/24 53/4 53/5 53/5 57/2
58/24 60/24 72/15 76/19
76/20 78/16 78/17 81/1
89/6 92/17 92/19 93/5
93/11
willing [2]  10/15 58/9
willingness [1]  74/15
Willis [6]  44/11 62/23
69/21 75/14 76/3 81/17
Willis' [1]  84/2
win [1]  57/1
wise [2]  2/23 41/14
withdraw [1]  85/22
within [3]  8/12 47/10 50/23
without [5]  12/13 35/10
35/23 77/10 91/19
witness [34]  11/9 11/10
14/10 15/18 15/21 15/22
17/5 23/17 24/8 24/10
25/24 28/12 30/18 30/20
30/23 31/21 32/16 32/20
34/21 37/10 39/7 39/14
39/15 39/22 39/23 40/8
40/10 40/20 40/23 51/11
55/7 68/1 80/1 94/15
witness's [1]  14/18
witnesses [28]  3/24 4/14
5/16 12/24 14/3 16/12 18/1
19/12 23/20 27/2 30/4
30/16 30/17 30/24 34/24
35/1 35/18 35/22 37/9
37/25 38/13 39/6 40/3 40/7
58/14 67/4 68/9 68/10
won [5]  28/24 40/24 73/6
88/11 88/20
won't [13]  53/1 54/23
54/24 55/5 55/10 55/11
59/18 59/19 60/3 60/18

71/3 76/24 83/24
wondering [2]  20/17 70/10
word [10]  12/19 18/7 28/4
28/5 28/16 32/16 32/18
32/19 42/12 61/17
words [3]  13/2 36/17 41/19
work [29]  2/5 6/23 8/14
8/15 8/22 9/2 9/15 11/11
11/20 12/4 14/1 14/9 16/10
23/2 29/7 34/20 37/12
37/13 39/12 40/10 41/11
42/4 52/23 55/8 61/20 68/5
81/4 84/7 93/11
working [6]  17/4 46/24
50/16 61/23
world [1]  59/1
worry [2]  8/24 59/17
would [76]  3/8 3/10 6/11
6/13 6/15 7/25 8/8 9/1 9/9
9/18 10/13 10/13 11/16
11/20 12/2 12/5 13/20 14/1
14/4 14/8 15/16 16/10 19/4
19/22 22/7 22/19 23/7 23/9
23/10 23/13 23/14 23/22
26/22 29/4 29/12 31/8
31/13 32/10 33/11 36/1
37/20 37/21 40/14 41/9
43/3 45/24 48/14 48/25
49/23 51/12 53/21 57/23
61/8 66/13 66/15 66/17
69/3 69/21 70/17 70/18
70/20 71/13 72/1 72/15
73/17 73/20 74/13 74/14
74/14 75/5 87/10 89/1 89/7
89/17 89/19 90/21
would be [1]  6/13
wouldn [6]  8/25 22/24 29/1
29/4 39/1 48/4
wrap [1]  52/22
write [2]  61/11 67/9
writing [3]  22/10 92/16
93/7
written [2]  2/17 92/18
wrong [5]  18/17 20/11

**W**

wrong... [3]  27/11 27/15
 48/17

**Y**

Yahoo [5]  64/8 67/14
 67/22 70/13 70/14
year [1]  8/23
years [1]  17/9
yes [35]  4/12 5/14 10/20
 12/5 12/9 15/17 15/24 16/4
 18/8 24/5 26/3 31/15 32/17
 45/2 45/10 49/10 50/10
 57/19 59/12 60/14 62/2
 70/5 72/18 72/20 76/14
 78/12 79/17 79/17 80/18
 80/21 81/6 82/16 83/17
 85/21 89/23
Yes,sir [1]  16/8
yesterday [7]  11/15 15/18
 17/5 19/1 23/8 24/4 34/22
yet [4]  8/24 9/5 17/2 29/18
you [284]
You'll [1]  81/11
you're [19]  3/5 27/24 40/16
 40/19 40/23 54/11 54/12
 57/11 60/21 68/7 79/1 79/9
 81/3 85/2 85/2 85/3 85/8
 85/9 89/4
you've [6]  3/6 29/19 61/25
 80/4 84/14 87/4
Young [6]  55/20 55/22
 55/23 56/7 57/3 78/19
your [161]

**Z**

zeal [1]  59/13
zealous [1]  59/14
zoom [2]  54/10 60/22