# EXHIBIT B-101



THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

In re: Special Purpose Grand Jury
Investigation

2022-EX-000024

**The Honorable Robert C.I. McBurney**

**ATTORNEY-WITNESS BORIS EPSHTEYN'S EMERGENCY MOTION FOR COURT ORDER CLARIFYING AND AUTHORIZING RULE 1.6 DISCLOSURES**

Boris Epshteyn—a former White House commissioned officer, 2020 Trump-Pence campaign attorney and advisor, and current legal counsel to President Donald J. Trump—has been directed to testify before the Special Purpose Grand Jury in the above-captioned investigation, ostensibly about matters relating to and arising out of the attorney-client relationship. Accordingly, as required by the rules of professional conduct governing lawyers in the State of New York, the jurisdiction in which he is licensed to practice law, Mr. Epshteyn respectfully files this Emergency[1] Motion for a Court Order Clarifying and Authorizing Rule 1.6 Disclosures in advance of his grand jury appearance currently scheduled for September 29, 2022.[2]

---

[1]   Although Mr. Epshteyn has styled this pleading as an "Emergency" Motion pursuant to Uniform Superior Court Rule 6.7, Mr. Epshteyn acknowledges that this Motion does not present a true emergency in the conventional sense and is merely styled as such to exempt it from the Court's default filing deadlines in light of the extremely short amount of time remaining prior to the date of Mr. Epshteyn's September 29, 2022 testimony. Mr. Epshteyn regrets any inconvenience that may be caused by his Motion to the Court or the parties, but due to a recent illness and commitments in other matters his counsel was unable to meet and confer with the DA's Office on these issues until September 26, 2022.

[2]   Mr. Epshteyn is aware that the Court previously addressed certain Rule 1.6 issues raised in these proceedings by a different witness, attorney Kenneth Chesebro. Chesebro Mot. Quash (Aug. 25, 2022). Mr. Epshteyn raises different questions here and seeks different relief.

I.      **Salient Factual Background**

Mr. Epshteyn is a graduate of Georgetown University and Georgetown University Law Center, and is an attorney licensed to practice law in the State of New York. He served as a senior advisor to the successful presidential campaign of Donald J. Trump in 2016 and then as a Special Assistant to President Trump in the White House through March 2017; he served as a legal, communications, and policy advisor to President Trump's 2020 re-election campaign; and he continues to serve as legal counsel to President Trump to this day.

On August 19, 2022, the District Attorney's Office for Fulton County, Georgia (the "DA's Office") filed an *ex parte* pleading in this matter, without the knowledge of Mr. Epshteyn or his counsel, seeking a certificate requesting the assistance of judicial authorities in the State of New Jersey, where the DA's Office apparently believed Mr. Epshteyn resided, in compelling Mr. Epshteyn to appear before the grand jury in this matter pursuant to O.C.G.A. § 24-13-90. This pleading did not become public until August 25, 2022, at which time the Court apparently accepted it for public filing and contemporaneously entered the requested Section 24-13-90 "Certificate of Material Witness" on the public docket, and the filings were reported in the local and national news.[3] Tamar Hallerman, *Breaking: Fulton Grand Jury Seeks Testimony from Meadows, Trump*

---

[3]     While grand jury investigations have been conducted in secret for centuries, including perhaps most importantly the timing and progress of the investigation and the identities of individuals called to testify before the grand jury, this highly unusual grand jury investigation apparently is being conducted publicly, with filings made in open court on the public docket. *See, e.g., In re Grand Jury Subpoena, Judith Miller*, 493 F.3d 152, 154 (D.C. Cir. 2007) ("Grand jury investigations are conducted in strict secrecy to encourage witnesses to testify 'fully and frankly,' to prevent those about to be indicted from fleeing, and *to ensure that 'persons who are accused but exonerated by the grand jury will not be held up to public ridicule.'*" (emphasis added) (cleaned up); *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 219 & n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public, and records of such proceedings have been

*Campaign Lawyers*, ATL. JOURNAL-CONST. (Aug. 25, 2002); Emily Johnson, *Powell, Meadows Ordered To Testify In Ga. Election Probe*, Law360.com (Aug. 26, 2022). Again without making any attempt to contact or consult with Mr. Epshteyn or his counsel, the DA's Office thereafter submitted a new *ex parte* filing in this Court to change the jurisdiction of its Section 24-13-90 request from New Jersey to the District of Columbia, and a new "Certificate of Material Witness" appeared on the Court's public docket on September 2, 2022.

The September 2, 2022 Certificate states that Mr. Epshteyn is a "necessary and material witness" in the investigation because he "is known to be affiliated with both former President Donald Trump and the Trump Campaign," he "possesses unique knowledge concerning the logistics, planning, and execution of efforts by the Trump Campaign to submit false certificates of vote to former Vice President Michael Pence and others," he "possesses unique knowledge concerning relevant communications between the Witness, former President Donald Trump, the Trump Campaign, and other known and unknown individuals involved in the multi-state, coordinated efforts to influence the results of the November 2020 elections in Georgia and elsewhere," and his "anticipated testimony . . . is likely to reveal additional sources of information regarding the subject of this investigation." 9/2/22 Certificate ¶¶ 4-7. As noted above, Mr. Epshteyn is currently scheduled to testify before the grand jury on September 29, 2022.

**II.      Governing Legal Standards**

Because certain of the justifications for Mr. Epshteyn's testimony that are set forth in the September 2, 2022 Certificate of Material Witness directly implicate the attorney-client relationship, Mr. Epshteyn anticipates that he will need to invoke the attorney-client privilege in

---

kept from the public eye."); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) (noting that grand jury secrecy is "older than our Nation itself.").

response to certain questioning. Mr. Epshteyn understands that the privilege is sacrosanct, that it even survives the lives of the lawyer and the client, and that he needs to be vigilant in protecting it. He understands that the privilege applies to communications made in confidence between attorney and client for the purpose of requesting or providing legal advice, and thus that there are bright line rules for identifying and protecting it.

### A. The Attorney's Obligation to Safeguard Client Confidences

In contrast, the client confidences that Mr. Epshteyn is required to safeguard as a New York-licensed attorney pursuant to Rule 1.6 of the New York Rules of Professional Conduct ("NYRPC")[4] reach a broader and less easily identifiable array of communications and information. Like its corollary rule in virtually every U.S. jurisdiction, NYRPC 1.6 provides that "[a] lawyer shall not knowingly reveal confidential information . . . or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person" absent client consent or "to comply with other law or court order." NYRPC 1.6(a)-(b). The rule defines "Confidential Information" to mean "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential." NYRPC 1.6(a)(3). The duty to preserve client confidences under Rule 1.6 is much broader that the attorney-client privilege, it includes any information gained during the representation regardless of its nature or source, and it necessarily includes information that is not subject to any other privilege or protection, provided that it is not already generally known in the community. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 145 (2d Cir. 2016); *see*

---

[4] Available at https://www.nycourts.gov/ad3/AGC/Forms/Rules/Rules%20of%20Professional%20Conduct%2022NYCRR%20Part%201200.pdf

*also* NYRPC 1.6, Cmt. [3] ("The professional duty of client-lawyer confidentiality, in contrast, applies to a lawyer in all settings and at all times, prohibiting the lawyer from disclosing confidential information unless permitted or required by these Rules or to comply with other law or court order. The confidentiality duty applies not only to matters communicated in confidence by the client, which are protected by the attorney-client privilege, but also to all information gained during and relating to the representation, whatever its source.").

Unlike the attorney-client privilege, identifying information protected by Rule 1.6 is complicated and difficult. It could include information as mundane as the identity of a client or legal team members, the time period of an attorney-client relationship, the amount of fees incurred or paid, or even personal (yet non-privileged) information about a client or his or her family. In addition, absent client consent to disclose such information or other exceptions not applicable here, a lawyer cannot disclose such information absent "other law" or a court order, even to a federal or state prosecutor or law enforcement officer.

### B. The Attorney's Obligation to Comply with a Court Order or Subpoena

The New York Rules of Professional Conduct do not explain what "other law" might authorize the disclosure of client confidences and information without the client's consent, but a court order or subpoena is at times believed to suffice. *See* NYRPC 1.6, Cmt. [13] ("A tribunal or governmental entity claiming authority pursuant to other law to compel disclosure may order a lawyer to reveal confidential information."); New York State Bar Assoc. Op. 1198, ¶ 12 (2020) (treating subpoena as essentially equivalent to a court order);[5] NYCB Formal Op. 2022-1, at 3-4 (concluding that subpoenas constitute 'other law' that permits disclosure of confidential

---

[5]     Available at https://nysba.org/ethics-opinion-1198/.

information);[6] *SEC v. Sassano*, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) (same). Even in the face of a seemingly valid subpoena, however, lawyers who receive subpoenas seeking client information are instructed to evaluate whether there is any invalidity or defect in the subpoena; to assert any reasonable, non-frivolous objections thereto; and to ensure that any disclosure is no greater than that which is required. NYCBA Formal Op. 2022-1, at 7 ("To ensure that disclosure is limited to that which is required by law, the attorney has an ethical obligation to assert objections to the subpoena, including objections to the technical form of the subpoena and the specific requests for client confidential information, that the attorney concludes, in the exercise of her reasonable judgment, are reasonable and non-frivolous, including objections to the production of privileged information.").

Indeed, "a lawyer facing a court order requiring the disclosure of client confidential information still is faced with complex, critical and fact-intensive questions on how to respond — e.g., what challenges should be considered, what specific information should be disclosed, and what protective measures should be sought," and "the lawyer must assert all reasonable claims against disclosure and seek to limit the subpoena or other demand on any reasonable ground." New York State Bar Assoc. Op. 1198, ¶ 12 (quoting ABA Formal Op. 473 (2016)).[7]

### III. Argument

Consistent with the requirements of NYRPC 1.6, Mr. Epshteyn respectfully requests the Court's assistance and guidance in clarifying his obligations and compelling his disclosure of Rule 1.6 information during his testimony before the grand jury on September 29, 2022.

---

[6] Available at https://www.nycbar.org/member-and-career-services/committees/reports-listing/reports/detail/lawyers-obligations-receiving-subpoena-seeking-client-info.
[7] Available at aba_formal_opinion_473.authcheckdam.pdf (americanbar.org).

Because of the procedure employed to obtain Mr. Epshteyn's appearance before the grand jury, there is no subpoena compelling Mr. Epshteyn's testimony and instead there are two court orders, one from Georgia requesting assistance from the District of Columbia in compelling Mr. Epshteyn's attendance, and one from the District of Columbia directing Mr. Epshteyn to testify in Georgia. The Georgia order does not on its face compel Mr. Epshteyn's testimony before the grand jury, but merely seeks the assistance of the District of Columbia in compelling his attendance. And although the District of Columbia order compels his attendance before the grand jury, it does not identify the subjects of his examination. Moreover, it is unclear if either court was made aware of the fact that Mr. Epshteyn is a licensed attorney or the extensive nature of his legal representation of, among others, President Trump, and neither court order contains sufficient factual detail about the topics of Mr. Epshteyn's testimony to give comfort to Mr. Epshteyn that any Rule 1.6 disclosures are authorized by "other law" or court order. In other words, given that consent to reveal client confidences has not been received, Mr. Epshteyn is unable to comply with his Rule 1.6 obligations without a detailed order from this Court compelling his testimony on specific topics.

In September 26, 2022 meet-and-confer discussions with the DA's Office concerning these issues, the DA's Office declined to provide topics in advance, but stated that it would likely be willing to provide a high-level summary of Mr. Epshteyn's anticipated examination just prior to his examination on the morning of September 29, 2022 and that any Rule 1.6 issues can be addressed as they arise in Mr. Epshteyn's testimony.

This proposal is untenable for Mr. Epshteyn. First, as discussed above, the mere existence of a subpoena or court order does not open the Rule 1.6 floodgates for Mr. Epshteyn. Instead, the relevant guidance appears to require Mr. Epshteyn to obtain specific judicial authorization to disclose information about specific topics. By way of example, assuming that the justifications set forth in the September 2, 2022 Certificate approximate the DA's Office's planned examination of Mr. Epshteyn, those justifications suggest potential inquiry into "multi-state, coordinated efforts" in "Georgia *and*

*elsewhere.*" 9/2/22 Certificate ¶ 7 (emphasis added). Yet, the DA's Office is unwilling or unable to specify whether it will seek to examine Mr. Epshteyn about conduct in or involving jurisdictions other than Georgia, or, if so, the basis therefor.

Second, addressing such issues as they may arise in Mr. Epshteyn's testimony would unfairly burden Mr. Epshteyn by either forcing him to make extremely difficult, on-the-fly decisions about which disclosures are authorized and which are not (*see* ABA Formal Op. 10-456 at 5 (2010) ("it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable."); *id.* ("disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule."))[8] or by necessitating an unreasonable number of breaks in his testimony—perhaps after nearly every question—in order to confer with his counsel and the Court. Third, all of this would lead to a piecemeal, inefficient process that could ultimately render Mr. Epshteyn's testimony incomplete and result in him having to unnecessarily travel to Atlanta for a second time to complete his appearance.

---

[8] Available at https://www.americanbar.org/products/ecd/chapter/220018/.

## IV. Conclusion

For the foregoing reasons, Mr. Epshteyn requests that the Court grant his Motion, direct the DA's Office to supplement the record to identify the specific areas of Mr. Epshteyn's testimony sufficient to enable him to satisfy Rule 1.6 of the New York Rules of Professional Conduct, and enter an order compelling Mr. Epshteyn's testimony on such topics as required.

Respectfully submitted, this 27th day of September, 2022.

/s/ David M. Chaiken
David M. Chaiken
Georgia Bar No. 118618
CHAIKENLAW LTD.
One Atlantic Center
1201 W. Peachtree Street, Suite 2300
Atlanta, Georgia 30309
(404) 795-5005 (Phone)
(404) 581-5005 (Facsimile)
david@chaiken.law

*Counsel to Boris Epshteyn*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused a true and correct copy of the foregoing document to be delivered to the following counsel of record by U.S. Mail and electronic mail:

Will Wooten, Esq.
Deputy District Attorney
Fulton County District Attorney's Office
136 Pryor Street SW
Atlanta, GA 30303
will.wooten@fultoncountyga.gov

This 27th day of September, 2022

_____
David M. Chaiken
Georgia Bar No. 118618
david@chaiken.law

*Counsel to Boris Epshteyn*