# EXHIBIT B-156



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

|  |  |
|---|---|
| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | No. 2022-EX-000024 |

**MEDIA INTERVENORS' RESPONSE TO MOTION TO QUASH THE SPECIAL PURPOSE GRAND JURY REPORT, TO PRECLUDE THE USE OF ANY EVIDENCE DERIVED THEREFROM, AND TO RECUSE THE FCDA'S OFFICE**

The Atlanta Journal-Constitution; The Associated Press; Bloomberg L.P.; Cable News Network, Inc.; CMG Media Corporation and its television station WSB-TV; Dow Jones & Company, publisher of The Wall Street Journal; The E.W. Scripps Company on behalf of Scripps News and its local media station group; Gray Media Group, Inc. and its television station WANF; The New York Times Company; and Tegna Inc. and its television station WXIA-TV (collectively, "Media Intervenors"), respectfully submit this response to President Donald J. Trump's Motion to Quash ("Motion").

## INTRODUCTION

In his Motion, President Trump asserts that the Special Purpose Grand Jury's final report ("Report") should be "quashed and expunged from the record." Motion at 51. This relief would, in effect, require an order that the Report be permanently sealed and hidden from public view.[1] Not only is such a remedy unsupported by any legal basis, it would also be starkly at odds with

---

[1] On April 28, 2023, Georgia Elector Cathleen Latham filed a motion joining President Trump's Motion, and similarly seeking to "permanently enjoin" the "publication of the SPGJ Report." Latham Motion at 4-5. For the reasons stated herein, Ms. Latham's request should also be denied.

the fundamental principles of this Nation and State. The Report is a matter of the utmost public concern, and it should be released to the public in its entirety.[2]

In conducting its work, the Special Purpose Grand Jury was guided by an appropriately specific statutory framework, and that framework contemplates both the release of a "final report" on the public docket and publication of such a report at the request of the Special Purpose Grand Jury. Indeed, the Motion acknowledges that in the past special purpose grand jury reports have been filed publicly on other superior court dockets and published in newspapers of record around the State. *See* Motion at 14, n.8; *id.* at 25, n.19.

President Trump's argument that this Report should be treated differently fails. The Motion's assertion that the special purpose grand jury statutory framework is unconstitutionally vague ignores the plain language of the Georgia code and the history of special purpose grand juries in this State. Similarly, President Trump's contention that he has "due process" rights to seek expungement of the Report conflicts with well-established constitutional law.

The Report should be filed on the public docket. Additionally, the Report should be published in the manner the special grand jury requested. The Court should deny the Motion's request to have the Report permanently "quashed and expunged from the record."

---

[2] The Media Intervenors previously intervened to seek immediate public access to the Report. *See* Brief of Media Intervenors in Support of the Public Filing of the Grand Jury Report (filed January 23, 2023). On February 13, 2023, the Court issued an Order finding that portions of the Report were "ripe for publication" at that time and found that the remainder of the Report could become ripe for publication at a later stage in the proceedings. *See* Order at 5, 7 ("those recommendations are for the District Attorney's eyes only – for now"). Media Intervenors are appearing now to respond to the Motion because it explicitly seeks "expungement" of the Report in a manner that would preclude release of the Report now and at any time in the future.

## ARGUMENT

### I.   Georgia Statutes are Not Unconstitutionally Vague with Respect to the Content and Release of Special Purpose Grand Jury Reports.

In addition to their indictment function, American grand juries have carried out a reporting function since well before the founding of our republic. *See* Richard H. Kuh, The Grand Jury "Presentment": Foul Blow or Fair Play?, 55 COLUM. L. REV. 1103, 1106 (1955). Georgia's regular grand juries have been authorized to issue and publish reports in the form of "general presentments" since the adoption of laws in this State. *See generally McDuffie v. Perkerson*, 178 Ga. 230, 173 S.E. 151(1933) (observing that the "grand jury, as an institution, comes to us from the common law, and is of very ancient origin" and noting that "that the March-April term [Fulton County] grand jury had set forth in its general presentments serious abuses in the superior and municipal courts of the county, and had recommended immediate investigation by the next grand jury").

Under Georgia law, not only are such general presentments filed on the public docket of county courts, they are frequently published to local citizens at county expense. O.C.G.A. § 15-12-80 expressly authorizes the publication of "general presentments" and mandates that supervising courts order publication "as recommended." In relevant part, the statute provides:

> Grand juries are authorized to recommend to the court the publication of the whole or any part of their general presentments and to prescribe the manner of publication. When the recommendation is made, the judge shall order the publication as recommended.

Prior statutory versions of O.C.G.A. § 15-12-80 date back to 1889. *See* Georgia Laws 1889, p. 156, § 1; *see also Houston County v. Kersh*, 82 Ga. 252, 10 S.E. 199 (1889) ("The grand jury of Houston county recommended, in their general presentments, that the presentments be

3

published in certain newspapers, provided the cost of publication (meaning in each paper) did not exceed $10. The judge of the superior court ordered the publication.").

Notwithstanding this long history of publishing grand jury general presentments, President Trump's Motion asserts that the statutory framework authorizing special purpose grand juries is "silent" on whether their final reports are subject to O.C.G.A. § 15-12-80. *See* Motion at 20 (asserting that "the statutes are silent as to … public release" so it is "unclear" whether the report "is a court record," how "publishing may occur," and "whether O.C.G.A. § 15-12-80 applies."). This assertion, however, is at odds with straightforward statutory interpretation and long-established precedent.

First, as the Court has already found, the applicability of O.C.G.A. § 15-12-80 to special purpose grand jury reports is apparent as a threshold matter from the fact that the term "general presentments" and grand jury "reports" are terms that are used interchangeably. *See* Feb. 13, 2023 Order at 4, n.3 ("General presentments are, in both form and substance, *reports* of grand jury investigations."). The Court's conclusion rests on well-established law. Georgia's appellate courts have consistently recognized that there is "no magic in nomenclature" and that it will judge a filing by its "function rather than by its name." *Frost v. Frost*, 235 Ga. 672, 674(1), 221 S.E.2d 567 (1975) (citation omitted.). In practice, there is no practical difference between a presentment and report, and the terms are used interchangeably. This is true in Georgia. *See, e.g.*, *In re Presentments of Lowndes County Grand Jury*, 166 Ga. App. 258, 304 S.E.2d 423 (1983) (referring interchangeably to "presentments" against members of a city police department as "reports"); *Kelley v. Tanksley*, 105 Ga. App. 65, 66, 123 S.E.2d 462, 464 (1961) ("The report of the grand jury sought to be expunged from the records in the instant case was not a special presentment or true bill of indictment charging any individual with the violation of the penal

4

laws of this State. It was in the nature of a general presentment or recommendation in which the grand jury took note of an unsolved theft involving county funds which occurred on county property"). It has also been noted in other jurisdictions. *See, e.g., In re: Final Report of the 20th Statewide Grand Jury*, 343 So.3d 584, 588 (Fla. App. 2022) ("We will refer to the statewide grand jury's report interchangeably as either a report or presentment in this opinion.").

The nomenclature that the General Assembly adopted in requiring all special purpose grand juries to issue a "final report" also rebuts President Trump's contention that it is unclear if such reports are intended "to be made public." Motion at 20. In the code sections that authorize special purpose grand juries, the General Assembly required these bodies to issue a "final report" and provided that the "issuance" of such a report could be grounds for the supervising judge to recommend dissolution of a special purpose grand jury on the grounds that its work was complete. O.C.G.A. § 15-12-101. As other courts have observed, mandating that the end product of a special purpose grand jury shall be the issuance of a "final report" inherently suggests it is intended for a broader audience than the supervising court. *Miami Herald Publ'g Co. v. Marko*, 352 So. 2d 518, 523 (Fla. 1977) ("Implicit in the power of the grand jury to investigate and expose official misconduct is the right of the people to be informed of its findings."). Notably, in the context of petite juries, communications between the court and jury are regularly called "notes" or "messages," not "reports." *See, e.g., Montgomery v. State*, 315 Ga. 467, 883 S.E.2d 351 (2023) ("the jury sent the trial court a note that said . . ."). By requiring the issuance of a "final report," the General Assembly chose language that suggests a work product appropriate for a broader audience consistent with the historical "reporting" function of the grand jury. *Marko*, 352 So. 2d at 523 ("A society governed by representative officials concomitantly requires citizen review of public action.").

Finally, President Trump's contention that "publicly releasing the special grand jury's final report was not contemplated by" the Georgia statutory scheme[3] is at odds with modern legislative history. The code sections that authorize grand juries are found in Article 4 of Chapter 12 in Title 15 of the Georgia Code. Article 4 is broken into two "parts." "Part 1" addresses the "general provisions" applicable to the operation of regular grand juries and consists of code sections 15-12-60 to 15-12-83. Thus, "Part 1" includes the publication provision found at O.C.G.A. § 15-12-80. "Part 2" addresses the structure and operation of special purpose grand juries and consists of code sections 15-12-100 to 15-12-102.

Until June 30, 2016, O.C.G.A. § 15-12-102 contained a cross-reference that stated:

Except as otherwise provided by this part, *the law relative to grand juries* shall apply to the grand juries provided for by this part. (emphasis added).

Although this language was clearly intended to incorporate aspects of the law applicable to regular grand juries into the law of special purpose grand juries, the scope of the incorporation contemplated by the phrase "the law relative to grand juries" was arguably unclear. Effective in 2016, the General Assembly amended the law and clarified the scope of incorporation.

Effective as of July 1, 2016, O.C.G.A. § 15-12-102 now provides as follows:

Except as otherwise provided by this part, *Part 1 of this article* shall apply to the grand juries authorized by this part. (emphasis added).

This change left no room for doubt. O.C.G.A. § 15-12-80 is contained in "Part 1 of this article" so it "shall apply" to the special purpose grand juries authorized by Part 2. In essence, if there was any uncertainty about the application of O.C.G.A. § 15-12-80 to special purpose grand juries prior to 2016, that uncertainty was eliminated by the legislative change that became effective in 2016.

---

[3] Motion at 20.

6

Given this legislative backdrop, the reporting function of special purpose grand juries is not unconstitutionally vague. Here, the Special Purpose Grand Jury prepared the Report and requested its publication guided by appropriately precise legal authority. *Franklin v. State*, 279 Ga. 150, 611 S.E.2d 21 (2005) (lawmakers "are not required to draft their statutes with mathematical precision and exactitude"). President Trump's vagueness argument provides no basis to quash or expunge the Report.

## II. President Trump Has no Cognizable Due Process Right to "Expunge" the Report from the Record.

Throughout his Motion, President Trump also alleges that various violations of "principles of fundamental fairness and due process" warrant that the Report be "quashed and expunged from the record." Motion at 8, 51. He has offered no legitimate legal basis for this request.

Under both the United States Constitution and the Georgia Constitution, procedural due process guarantees that neither the federal nor state governments "shall ... deprive any person of life, liberty, or property, without due process of law." In *Paul v. Davis*, 424 U.S. 693 (1976), the United States Supreme Court recognized that extending principles of due process to mere accusations of criminal wrongdoing that could harm an individual's reputation could impair the public nature of our criminal justice system. In essence, the Supreme Court found that the U.S. Constitution does not protect an individual from being accused of committing a crime if government actors do not also deprive the accused of property or liberty rights based on the accusation.

In *Paul*, the chiefs of police of the city of Louisville and the county of Jefferson, Kentucky distributed approximately 800 copies of a flyer to merchants in the Louisville metropolitan area. 424 U.S. at 694-95. The flyer contained the names and photographs of

7

persons depicted as "active" shoplifters. *Id.* at 695. Among those shown was Davis, who had been arrested in 1971 on a shop-lifting charge. The veracity of that "accusation," however, had never been judicially determined. In fact, after the dissemination of the flyer, the charge was dismissed. *Id.* at 696. In essence, Davis had been accused of wrongdoing, but the district attorney declined to pursue charges.

After the circulation of the flyers led to Davis losing his job, Davis sought damages as well as declaratory and injunctive relief against the chiefs of police under 42 U.S.C. § 1983. *Id.* at 694. The Supreme Court rejected Davis's claim that these events raised due process concerns. The Court held that any injury to Davis's reputational interests, even where[,] as here[,] inflicted by an officer of the State," does not result in "a deprivation of any 'liberty' or 'property' recognized by state or federal law." *Paul*, 424 U.S. at 712. In sum, the Court concluded "that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.*

*Paul* established the "stigma plus" doctrine that recognizes that due process rights are not triggered by a reputational injury alone but require an additional showing of tangible harm to liberty or property interest (the "plus" in the "stigma plus" doctrine). *See, e.g., Behrens v. Regier*, 422 F.3d 1255, 1259-60 (11th Cir. 2005) ("Under [the stigma-plus] test, 'a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause.'") (citation omitted); *see also Georgia Department of Human Services v. Steiner*, 303 Ga. 890, 896, 815 S.E.2d 883, 892 (2018) ("We followed this directive from the U.S. Supreme Court [the holding of *Paul*] in … a challenge to the previous child abuse registry where we confirmed that 'stigmatization of

8

reputation alone does not implicate a liberty interest sufficient to invoke federal due process protection.'"); *Gregory v. Sexual Offender Registration Rev. Bd.*, 298 Ga. 675, 685, 784 S.E.2d 392, 400 (2016) (citing *Paul* for proposition that due process implications require more that "reputational harm").

In *Atlanta Journal v. Long*, 258 Ga. 410, 411, 369 S.E. 2d 755 (1988), the Georgia Supreme Court similarly acknowledged that "[e]mbarrassment has always been a problem" in judicial proceedings but that "it has not prompted trial courts to routinely seal" court records. The Court emphasized that "[t]he presumption of open access that is built into Rule 21 implicitly takes this factor into account."[4] *Id.*; *see also In re The Atlanta Journal-Constitution*, 271 Ga. 436, 438, 519 S.E.2d 909, 912 (1999) (reversing trial court order sealing probate case involving claim by illegitimate child seeking portion of the estate of former owner of Atlanta Falcons: "[C]ivil lawsuits quite often cause litigants to experience an invasion of privacy and resulting embarrassment, yet that fact alone does not permit trial courts to routinely seal court records").

After the Court of Appeals decision in *Kenerly v. State*, 311 Ga. App. 190, 715 S.E.2d 688 (2011), special purpose grand juries have become judicial bodies that merely "recommend" the bringing of criminal charges. The reports they issue do not and cannot deprive any

---

[4] *See also Doe v. Frank*, 951 F.2d 320, 323-24 (11th Cir. 1992) ("risk that a plaintiff may suffer some embarrassment is not enough" to overcome the "customary and constitutionally-embedded presumption of openness in judicial proceedings"); *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."); *Davis v. Reynolds*, 890 F.2d 1105, 1109 (10th Cir. 1989) (holding that witnesses' interest in preserving privacy and preventing embarrassment was not an "overriding interest" to justify closure); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180 (6th Cir. 1983) ("[A] naked conclusory statement that publication of the Report will injure the bank in the industry and local community falls woefully short of the kind of showing which raises even an arguable issue as to whether it may be kept under seal.") (alteration in original).

9

individual of a liberty or property interest cognizable under the due process clauses of the United States or Georgia Constitutions. There is simply no argument that the Report deprives President Trump of life, liberty, or property. The Report does not indict him, does not subject him to arrest, and does not authorize seizure of his assets. At most, the Report will simply impact his reputation. Under *Paul* and its progeny, this is insufficient to warrant the Report's quashing or expungement.

### III. President Trump Cannot Establish the Necessary Basis to Seal the Report Pursuant to Rule 21 Once Filed.

As discussed above, in its February 13 and February 16 Orders, this Court ruled that although the Report as a whole was not yet suitable for publication (and therefore not yet a "court record" under Superior Court Rule 21), the Report's status could change as the investigation progressed. *See* Feb. 13, 2023 Order at 8 (requesting periodic updates from the District Attorney's Office so that the Court "can reassess if other parts of the special purpose grand jury's final report can be disclosed"); *see also id.* (holding that the "excerpts" of the Report that the Court approved for publication would be considered a "court record" once filed). By his Motion, President Trump's Motion attempts to effectively seal the Report before that ever comes to pass. There is simply no legal basis to do so.

As the Georgia Supreme Court has stated:

> In the State of Georgia, the public and the press have traditionally enjoyed a right of access to court records. Public access protects litigants both present and future, because justice faces its gravest threat when courts dispense it secretly. Our system abhors star-chamber proceedings with good reason. Like a candle, court records hidden under a bushel make scant contribution to their purpose.

*Atlanta Journal v. Long*, 258 Ga. 410, 411, 369 S.E. 2d 755 (1988).

Moreover, while protecting the secrecy of the grand jury process, the Georgia Supreme Court has consistently emphasized that the outcome of grand jury proceedings must be shared

10

with the public to protect against public distrust of "star chamber court proceedings." In commenting on the importance of indictments being returned in open court, the Court explained: "It is a fundamental part of our judicial system that the general public be permitted to witness court proceedings sufficiently to guarantee that there may never be practiced in this State secret or star-chamber court proceedings, the deliberations of the juries alone excepted." *Zugar v. State*, 194 Ga. 285, 289-290, 21 S.E.2d 647 (1942); *see also In re Gwinnett County Grand Jury*, 284 Ga. 510, 513-14, 668 S.E.2d 682, 685 (1999) (holding that the general presentment rendered by a regular grand jury carrying out its civil investigative function "is a court record under USCR 21 that is available for public inspection unless public access is otherwise limited by law or by USCR 21."); *Undisclosed LLC v. State*, 302 Ga. 418, 430-31, 807 S.E.2d 393, 402-03 (2017) (holding that a "'court record' for Rule 21 purposes includes . . . adjudicative action[s] (rulings, judgment, orders)").

The Georgia Supreme Court has articulated the standard for sealing as requiring a finding that the movants' privacy *clearly outweighs* the public interest in disclosure. *Long*, 258 Ga. at 413. The burden of demonstrating that court records should be sealed is on the party seeking the sealing, and the Court must make factual findings on the record supporting the sealing order. *Id.*; *see also In re Atlanta Journal-Constitution*, 271 Ga. at 438 ("[I]t is not sufficient for the trial court to forego making findings of fact and simply state that the public's interest in access to court records is clearly outweighed by potential harm to the parties' privacy"). The burden is intended to require public access in all cases except those involving a "clear necessity." *Long*, 258 Ga. at 413, 369 S.E.2d at 758; *see also Merchant Law Firm, P.C. v. Emerson*, 301 Ga. 609, 613, 800 S.E.2d 557 (2017); *see also Long*, 258 Ga. at 413 ("In designing USCR 21, this court

and the council of superior court judges . . . incorporated the presumption that the public will have access to all court records.").

As discussed above Georgia courts have consistently emphasized that embarrassment and reputational harm are not sufficient interests to justify sealing. *See, e.g., In re Atlanta Journal-Constitution*, 271 Ga. at 438 (reversing trial court order sealing probate case involving claim by illegitimate child seeking portion of the estate of former owner of The Atlanta Falcons: "[C]ivil lawsuits quite often cause litigants to experience an invasion of privacy and resulting embarrassment, yet that fact alone does not permit trial courts to routinely seal court records"); *Long*, 258 Ga. at 413 (reversing trial court order sealing case file and holding that the privacy interests of Catholic Diocese of Savannah "do not clearly outweigh the public interest in open access to those records").

President Trump's Motion provides no basis to authorize sealing here.

## **CONCLUSION**

For the foregoing reasons, Media Intervenors respectfully request that President Trump's Motion be denied.

Dated this the 15th day of May, 2023

                        Respectfully submitted,

               FOR:  KILPATRICK TOWNSEND & STOCKTON LLP

                        */s/ Thomas M. Clyde*

                        Thomas M. Clyde
                          Georgia State Bar No.: 170955
                          tclyde@kilpatricktownsend.com
                        Lesli N. Gaither
                          Georgia State Bar No.: 621501
                          lgaither@kilpatricktownsend.com
                        Kurtis G. Anderson
                          Georgia State Bar No.: 478223
                          kgandrson@kilpatricktownsend.com
                        Suite 2800, 1100 Peachtree Street, N.E.
                        Atlanta, Georgia 30309
                        Phone: (404) 815-6500

                        Attorneys for Media Intervenors

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has this day served a true and correct copy of the above via Electronic and United States Mail upon:

Fani T. Willis
Will Wooten
District Attorney's Office
136 Pryor Street SW, 3rd Floor
Atlanta, Georgia 30303
Fani.willisda@fultoncountyga.gov
Will.wooten@fultoncountyga.gov

Drew Findling
Marissa Goldberg
Findling Law Firm
3575 Piedmont Rd NE, Suite 1010
Atlanta, Georgia 30305
drew@findlinglawfirm.com
marissa@findlinglawfirm.com

Jennifer L. Little
Jennifer Little Law, LLC
400 Galleria Pkwy SE, Suite 1920
Atlanta, Georgia 30339
jlittle@jllaw.com

Kieran J. Shanahan
Shanahan Law Group, PLLC
128 E. Hargett Street, Suite 300
Raleigh, North Carolina 27601
kieran@shanahanlawgroup.com

DATED this the 15th day of May, 2023

Thomas M. Clyde