# EXHIBIT B-157

**IN THE SUPERIOR COURT OF FULTON COUNTY**

**STATE OF GEORGIA**

FILED IN OFFICE

MAY 15 2023

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:                                   )
SPECIAL PURPOSE GRAND JURY    )          **2022-EX-000024**
                                         )
                                         )          **Judge Robert C. I. McBurney**
                                         )

## STATE'S RESPONSE TO MOTIONS

On March 20, 2023, former President Donald J. Trump filed a Motion in this matter seeking several forms of relief. Presenting a variety of arguments, the Motion[1] ultimately requested that the final report of the Fulton County Special Purpose Grand Jury[2] be "quashed and expunged from the record"; that all of the evidence "derived from" the SPGJ be suppressed in any future proceedings; and that the Fulton County District Attorney's Office[3] be disqualified from "any further investigation and/or prosecution of this matter or any related matter derived from their use of the SPGJ." Mtn. at 51. On April 28, 2023, Cathleen A. Latham filed a Motion adopting or joining the original Motion. Mrs. Latham's own Motion added a request for an injunction which would quash "the SPGJ actions" in their entirety, enjoin any State entity from "presenting or

---

[1] While two Movants have submitted Motions in this matter, this response will refer to the first, Mr. Trump's, as "the Motion" throughout. Citations to the Motion will read as "Mtn. at [page]" or "Mtn., Exhibit [number]." The second, filed by Mrs. Cathleen A. Latham, will be referred to as the "Latham Motion" where applicable. Citations to the Latham Motion will read as "Latham Mtn. at [page]." This response will refer to the two parties who have brough these Motions as "Movants" or "the Movants" throughout. Where it is necessary to distinguish between the two Movants, this response will refer to them by their names.

[2] This response will refer to the Special Purpose Grand Jury as "SPGJ" or "the SPGJ" throughout.

[3] This response will refer to the Fulton County District Attorney's Office as "FCDAO" or "the FCDAO" throughout. Where it is necessary to discuss the District Attorney as an individual, this response will refer to her as "the District Attorney."

utilizing any evidence or testimony derived by the SPGJ," and disqualify the FCDAO from any further involvement in the matter. Latham Mtn. at 5-6. Both Motions requested a hearing, and also that this matter be reassigned or transferred to another judge for their consideration. This Court thereafter provided an order outlining a schedule for the State's response and asked that the FCDAO specifically address whether the matter should be heard by another judge, as well as whether a hearing should be held.

The State now responds that the Motions should be dismissed or denied as appropriate. The Movants advance constitutional arguments for which they have no standing and which fail to demonstrate the unconstitutionality of pertinent statutes. They request that the FCDAO be disqualified on grounds which fail to meet the exacting standards for prosecutorial disqualification under Georgia law, and also by repeating prior unsuccessful arguments or adopting standards which do not apply. They refer vaguely to violations of their own due process rights arising from a "tainted" grand jury process without making a showing demonstrating the existence of either. Overall, the Motions are procedurally flawed and advance arguments that lack merit, and the State respectfully requests that this Court retain supervision of this matter and dismiss or deny the Motions as appropriate without a hearing.

I.   **Because the Movants do not provide any standard or basis for the transfer of this matter to another judge, this Court should retain supervision of this matter and deny the Motions without a hearing.**

As an initial matter, the Movants request that their Motions not be heard by this Court, instead preferring that they be heard by either the Chief Judge or another Fulton County Superior Court judge. The Movants do not clarify a standard for assessing the request for a transfer to another judge, citing neither the Code of Judicial Conduct, the Superior Court Rules, nor any statute or other provision. The Motion states only that this Court's "nexus to certain aspects of the SPGJ and the subsequent drafting of the report, in combination with his prior rulings" require a

2

transfer. Mtn. at 10. The grounds for this request appear to be twofold. First, the Movants disagree with this Court's "improper application of the law," specifically its rulings regarding the criminal nature of the SPGJ and the disqualification of the FCDAO. Second, the Movants argue that certain comments made by the Court during oral argument in 2022 were improper. Because these arguments lack merit, and neither establishes an appropriate basis for the transfer of this matter to a different judge, the District Attorney respectfully asserts that there are no grounds for another judge to hear these Motions.[4]

The first basis for transfer offered by the Movants is without merit because disagreement or criticism of a judge's prior rulings does not furnish a litigant with a basis for having subsequent motions heard by a different judge. The second basis provided by the Movants concerns comments made by this Court during oral arguments made during 2022 (Mtn. at 48-50), but it is not clear what impact, if any, the comments could have had upon the Movants. Certainly, these comments, which appear to relate to witnesses' possible assertion of Fifth Amendment rights before the SPGJ, have nothing at all to do with Mr. Trump, as they were not made about him or any aspect of SPGJ administration that involved him. Mrs. Latham joins and adopts Mr. Trump's Motion but does not clarify how any comments concerning the possible assertion of Fifth Amendment rights before the SPGJ actually affected her. The Movants argue only that this Court's comments could have possibly affected the grand jurors' understanding of certain witnesses' assertion of their Fifth Amendment rights and that, as a result, non-witnesses were also negatively affected. Mtn. at 50.

---

[4] The Motion also criticizes this Court's denial of certificates of immediate review in two instances. Mtn. at 10; 19 n.13; 24. Such decisions are subject to a judge's "unfettered discretion" and "carte blanche authority." *Duke v. State*, 306 Ga. 171, 178-79 (3)(a) (2019). The Motion clarifies that the Movants disagreed with this Court's decisions in those instances, both substantively and procedurally, but it does not articulate how the denials amount to judicial impropriety or why they might support the transfer of this matter to another judge.

Movants refer generally to the Court's comments "violating the rights of" witnesses as well as "all parties impacted by the investigation, including [Movants]." *Id.* The Motion then combines this Court's comments with other arguments they make regarding the application of the Fifth Amendment within the SPGJ (addressed herein in Part IV) and asserts that together these demonstrate a "flawed process" requiring the quashal of any evidence obtained by the SPGJ "in violation of the rights of witnesses and non-parties alike." *Id.* The Movants argue the SPGJ was a "constitutionally unsound investigation" whose impartiality cannot be trusted by the public and whose report "will negatively impact the due process rights of the named individuals." Mtn. at 48.

This Court should deny the Movants' request on these grounds for quashal of evidence obtained by the SPGJ. The Movants' vague and sweeping assertions of due process violations lack a basis in law or in fact. They provide no authority demonstrating how such comments could be fundamentally unfair to them. This Court's comments, made in the midst of extensive oral argument, are too isolated and too far removed from any possible impact upon the Movants' rights. It cannot suffice to assert that the comments might have been heard by the grand jurors, who as a result might have altered their understanding of the Fifth Amendment, which might in turn have affected their evaluation of certain witnesses, and which thus might have altered or "tainted" the report, which in turn might somehow negatively affect the Movants.

Because these arguments are far too attenuated to support any claim of a due process violation for either Movant, this Court should deny the Movants' request for quashal as presented in Part VI of the Motion. As a result, this Court should also deny the Movants' request that their Motions be heard by another judge, particularly because they do not articulate any sort of standard for this Court's evaluation of their request. Finally, this Court should also deny the Movants' request for a hearing. The Movants' arguments are purely legal and do not raise any factual dispute

requiring resolution in a hearing. The original Motion attaches hundreds of pages of exhibits containing statements, transcripts, and prior orders of this Court, and there is no factual matter that will be further developed by a hearing. As will be shown below, most of the Movants' arguments are barred by lack of standing, untimeliness, and other procedural flaws, and any remaining arguments are without merit. There are simply no matters requiring resolution by this Court that require or warrant a hearing. As a result, in compliance with the instructions of this Court, the District Attorney respectfully requests that this Court deny the Movants' request for a hearing and rule upon these Motions on the basis of the papers.

**II.     The statutes concerning special purpose grand juries are not unconstitutional.**

The Movants argue that the statutory scheme defining and governing special purpose grand juries is unconstitutional.[5] They assert that the statutes are both unconstitutionally vague (Mtn. at 15-21) and unconstitutional as applied in this matter (Mtn. at 21-31). Because the Movants fail to demonstrate a cognizable, individualized injury and therefore lack standing, their constitutional challenges should be dismissed. To the extent that the Court evaluates the substance of their challenges, the Movants' arguments fail to demonstrate either vagueness or as-applied constitutional concerns, and their Motions should be denied.

A.  Standing

The Georgia Supreme Court recently engaged in close examination of the nature of standing under the Georgia Constitution. In so doing, the Court reaffirmed a basic and longstanding tenet of jurisprudence: in order to have standing to challenge the constitutionality of a statute, a citizen must demonstrate an "individualized injury" or "injury-in-fact." "We have long held that Georgia courts may not decide the constitutionality of statutes absent an individualized

---

[5] These statutes include O.C.G.A. §§ 15-12-100, 15-12-101, and 15-12-102.

injury to the plaintiff…This kind of individualized injury seems similar to the injury-in-fact required federally…nothing in this opinion should be understood to undermine in any way our longstanding case law articulating this requirement." *Sons of Confederate Veterans v. Henry County Bd. Of Comm'rs*, 315 Ga. 39, 54 n.13 (2022) (collecting cases). "Standing to challenge a statute on constitutional grounds in Georgia depends on a showing that the plaintiff was injured in some way by the operation of the statute or that the statute has had an adverse impact on the plaintiff's rights." *Mason v. Home Depot U.S.A., Inc.*, 283 Ga. 271, 273 (1) (2008) (citations omitted). Even in the possibly more permissive context of First Amendment challenges (which the Movants do not make here), litigants cannot "make facial attacks upon entire statutory schemes and provisions by which they were not harmed 'as applied' or harmed by 'running afoul' of the provision." *Granite State Outdoor Adver., Inc. v. City of Roswell*, 283 Ga. 417, 421 (1) (2008).

Neither of the Movants can satisfy the standing requirements articulated by the Georgia Supreme Court. Their arguments reveal no individualized injury or injury-in-fact. Instead, the Movants submit arguments that, if anything, argue that certain *other parties* may have standing to challenge the special purpose grand jury statutes. The Movants only arrive at an injury to themselves through a daisy chain of cause and effect: if other parties could articulate individualized injuries to themselves, this could affect the administration of the grand jury or the creation of its final report. If the final report is affected, it is possible that individuals named in the report could be affected. If the Movants are among the individuals named in the report, then their due process rights could possibly be injured. The individualized injury requirement prevents exactly this kind of attenuation.

The Movants' explanations for their own standing are disconnected from the actual arguments they provide in support of a finding of unconstitutionality. Mr. Trump asserts that he

has been "inextricably intertwined with this investigation since its inception" in early 2021, also observing that he participated in the event which precipitated the investigation, a phone call in January of 2021. Mtn. at 11. However, as he acknowledges, he was never a witness before the SPGJ. Mrs. Latham suggests that she has standing because she was identified as a "target" of the investigation.[6] Latham Mtn. at 2. She, too, never testified. Despite this, nearly all of the grounds identified by the Movants for challenging the constitutionality of the statutes involve their application to, and effects upon, the rights of actual witnesses. *See* Mtn. at Part III.A.i, Part III.B, Part III.C. The only remaining grounds identified by the Movants address vagueness as to the administration of the SPGJ and the issuance of its final report. *See* Mtn. at Part III.A.ii. Even if a party is named in a SPGJ final report, that does not mean the party is injured by the statute describing the report's creation. If the statutes were vague in the regards suggested, the parties suffering actual injury would be the supervising judge and the grand jurors, who would be left without guidance as to how they should govern themselves in discharging their duties under the law. Because the Movants' arguments do not demonstrate individualized injuries or injuries-in-fact rather than injuries-in-conjecture, they lack standing to challenge the constitutionality of the pertinent statutes.

### B. Vagueness

The Movants argue that the statutes governing special purpose grand juries are unconstitutionally vague in two ways: because they do not specify whether the nature of SPGJs is civil, criminal, or both; and because the statutes are vague about the "contents and release" of the SPGJ's final report. Neither argument is persuasive.

---

[6] As discussed below, being named as a "target" does not alter one's rights before a special purpose grand jury, particularly when one does not testify before such a grand jury.

Beginning with the "nature" of SPGJs, O.C.G.A § 15-12-100(a) is clear that, similarly to "regular" grand juries, SPGJs are authorized to investigate "any alleged violation of the laws of this state or any other matter subject to investigation by grand juries as provided by law." The authorization is clearly broad, but just because a statute is *broad* does not mean that it is *vague*. It follows, naturally, that if regular grand juries are authorized to investigate both civil and criminal matters, then a SPGJ is as well. In *State v. Lampl*, 296 Ga. 892, 895-96 (1) (2015), the Supreme Court acknowledged that SPGJs can investigate criminal matters. *Lampl* also established that a SPGJ is bound by the law and by the scope of its authority described in its impaneling order; the order in that case authorized a criminal investigation. *Id.* As this Court has previously found, the SPGJ in this case was requested by the District Attorney, impaneled specifically to investigate criminal activity, and authorized to provide recommendations for criminal charges. All of this comported with the clear language of the statute authorizing investigations into any alleged violation of Georgia law.

In response, the Movants cite only the arguments of prospective SPGJ witnesses who moved to quash their SPGJ subpoenas. They cite to *In re Jacki L. Pick*, WR-94, 066-01 (Tex. App. 2022), involving witness Jacki Pick's motion to quash her out-of-state subpoena in Texas, as well as efforts by Governor Brian Kemp and Senator Lindsey Graham to have their subpoenas quashed on grounds of sovereign immunity. Not one of these efforts produced a decision on the merits declaring that SPGJs are necessarily civil rather than criminal. Ms. Pick's subpoena was quashed on procedural grounds, and the concurring opinions attached to the decision in her case likely say more about the application of the law in Texas than they do in Georgia. This is because *In re Pick* was the *only* case where any judge expressed opinions that Georgia's SPGJ investigations might only be civil rather than criminal in nature. Every other court, in multiple states, which opined

upon the nature of the SPGJ determined that it was conducting a criminal investigation and authorized to summons witnesses under the Uniform Act to Secure the Attendance of Witnesses from Without the State. *See* O.C.G.A. § 24-13-90 et seq. Such unanimity indicates clarity rather than unconstitutional vagueness of some kind. Additionally, neither Governor Kemp nor Senator Graham were successful in their attempts to persuade courts that the SPGJ was civil; this Court determined the investigation was clearly criminal, and the Northern District of Georgia dismissed Senator Graham's arguments as "unpersuasive and unavailing." *See In re Jury*, 2022 U.S. Dist. LEXIS 146741, *20-21. To the extent that any conclusion can be drawn from the litigation arising from this matter, it is not that the statutes are too vague in determining whether a SPGJ can be of a criminal nature.

The Movants also assert that the statutes are impermissibly vague regarding the creation, contents, and release of the SPGJ's final report. However, the statutes articulate requirements for the final report which negate any suggestion of impermissible vagueness or possible violations of due process. A SPGJ's final report must indicate that it has completed the investigation authorized in its impaneling order, and it must do so to the satisfaction of the supervising judge and a majority of the jurisdiction's Superior Court bench. *See* O.C.G.A. § 15-12-101(b). Again, this means that a SPGJ's authority to craft the report is *broad*, but it does not follow that it is unconstitutionally *vague*, and the requirement that not one but several judges must approve the dissolution of a SPGJ ensures that fundamental fairness is maintained. While the statute is flexible (a necessity, given the broad mandate afforded to grand juries), it does not contain an "insufficient objective standards and guidelines to meet the requirements of due process." *Jekyll Island State Park Civic Auth. V. Jekyll Island Citizens Ass'n.*, 266 Ga. 152, 153 (1996).

C. As Applied

Finally, the Movants argue that the statutes governing SPGJs are unconstitutional as applied in this case. These arguments all involve the rights of *witnesses* who might come before the SPGJ, so again, the Movants lack standing to challenge the statutes on such a basis. In any event, the application of the statutes in this matter does not demonstrate a constitutional deficiency of any kind.

In making this argument, the Movants first turn again to their insistence that the SPGJ can only be civil in nature. They cite *Kenerly v. State*, 311 Ga. App. 190 (2011) and *State v. Bartel*, 223 Ga. App. 696 (1996) and attempt to demonstrate that this Court's prior rulings distinguishing *Kenerly* and *Bartel* from the present matter were made in error. Mtn. at 22-23. The problem for their argument remains that *Kenerly* mischaracterizes the holding in *Bartel* and that nowhere does *Bartel* indicate that SPGJs can conduct only civil investigations. This is precisely what this Court previously found. *See* Mtn. Exhibit 10 at 3-4. To hold otherwise would be to determine that SPGJs are empowered to conduct investigations of alleged crimes, but only as civil bodies. Such an interpretation makes no sense.

Movants additionally argue that the statutes are unconstitutional as applied because, in finding that the SPGJ was a criminal body, this Court authorized it to subpoena out-of-state witnesses. This argument is unavailing because the SPGJ was clearly criminal in nature, but also because there can be no due process concerns whatsoever. Witnesses subpoenaed from out of state had their subpoenas reviewed by two separate courts, including one in their home jurisdiction. If summoned, they were then able to invoke the Fifth Amendment or consult with an attorney at any time. Where the various requirements of the Uniform Act were followed (and Movant does not contend otherwise), there can be no due process violation to any out-of-state witness, much less to non-witnesses such as the Movants.

Finally, the Movants argue that the statutes were unconstitutional as applied because some individuals were named as "targets" of the SPGJ investigation and because witnesses' Fifth Amendment rights were insufficiently protected. These arguments are unpersuasive because the term "target" has no constitutional significance in Georgia. The Supreme Court has held that a "target" can be summoned to a SPGJ so long as they are afforded the right to invoke the Fifth Amendment as any witness would. *Lampl*, 296 Ga. at 298-99. The Movants' arguments as to the status of "targets" thus cannot demonstrate a constitutional problem. Regarding the application of the Fifth Amendment in the SGPJ, the Movants provide only suppositions, as is discussed below, and certainly nothing demonstrating an injury to either of them.

The Movants provide a litany of arguments but cannot connect them to an actual injury, actual vagueness, or actual as-applied constitutional issues. As a result, their arguments must fail, and this Court should dismiss or deny their Motions as appropriate.

### III.   The Movants fail to demonstrate that the District Attorney's Office should be disqualified because they either repeat prior unsuccessful arguments, submit inadequate grounds for disqualification under Georgia law, or ask this Court to adopt inapplicable standards.

The Movants next argue that the FCDAO "must be recused, disqualified, and prevented from any further investigation or prosecution of this matter." Mtn. at 31. This severe remedy is required, Movants insist, for three reasons: the Supervising Judge should have disqualified the FCDAO in July of 2022; the District Attorney has committed "forensic misconduct" by making public comments related to the investigation; and three of the District Attorney's social media posts on Twitter have created an "appearance of impropriety" severe enough to require disqualification. The Movants' arguments are untimely, improperly brought, and without merit, and they should be dismissed or denied as appropriate.

To begin with the untimeliness of the Movants' arguments, the Motion cites to hearings, statements, and social media posts made months or even years ago, in some instances referencing comments made before the SPGJ had even been impaneled. *See* Mtn. at 38 fn.24. And yet, as noted above, Mr. Trump asserts that he has been "inextricably intertwined with this investigation since its inception" in early 2021, also observing that he participated in the event which precipitated the investigation, a phone call in January of 2021. Mtn. at 11. By his own estimation, Mr. Trump has been at the center of an investigation which has progressed for over two years, but only now is he moving for the prosecutor's disqualification. To the extent that Mrs. Latham's arguments regarding disqualification are not barred by res judicata (discussed below), her remaining arguments are untimely as well.

If any of the elements put forward by Mr. Trump in his Motion (the disqualification of the FCDAO regarding Burt Jones in July of 2022, the District Attorney's statements to the media in 2021 and 2022, or the "appearance of impropriety" created by Twitter posts in July of 2022) were the egregious grounds for disqualification which he asserts they are, he had a duty to raise them to the Court's attention as soon as he learned of them. "Although we have not considered when a motion to disqualify a prosecutor based on an alleged conflict of interest should be asserted, we have held, in other contexts, that such challenges must be raised promptly after the defendant learns of a potentially disqualifying matter." *Reed v. State*, 314 Ga. 534, 546 (4) (2022). The objection must be raised "without delay, at the first opportunity after the accused learns of the grounds for disqualification." *Id.* (quoting *Hudson v. State*, 250 Ga. 479, 481 (1) (1983)).

Far from raising this issue promptly, Mr. Trump has waited years, until after the conclusion of an entire SPGJ investigation, when the FCDAO's own investigation has moved into its latter stages. Mr. Trump could have pursued the disqualification of the FCDAO in February of 2021,

after the District Attorney made certain comments to which he now objects (Mtn. at 38 fn.24), but he did not. He also did not do so when the District Attorney requested the impanelment of the SPGJ, or when the order creating the SPGJ was issued. He might have sought disqualification as the SPGJ pursued its investigation with the assistance of the FCDAO, but he did not then either. Mr. Trump did not argue for disqualification when Burt Jones did in the summer of 2022, nor did he do so when a group of alternate electors (including Mrs. Latham) requested reconsideration of the denial of their own disqualification motion shortly afterward. Mr. Trump remained silent on this matter when the Supervising Judge announced the dissolution of the SPGJ, and he chose not to even attempt to participate in the litigation surrounding the possible publication of the SPGJ's final report. Mr. Trump elected to pursue the disqualification of this office only after the FCDAO announced an investigation in early 2021, pursued it for months, requested the SPGJ in early 2022, impaneled and advised the SPGJ for the remainder of the year, received its report in early 2023, and began to litigate the possibility of the report's release. At this latter stage, and after all of these events occurred without action by Mr. Trump, he now seeks to prevent the FCDAO from "any further investigation or prosecution of this matter." His request for disqualification should therefore be dismissed as untimely.

Mrs. Latham, having adopted Mr. Trump's Motion, is now attempting, for a third time, to disqualify the FCDAO from investigating her. Along with several other alternate electors, she joined Burt Jones's motion for disqualification in July 2022, which was denied as to her (*see* Mtn., Exhibit 4), and she then filed a motion for reconsideration in August of 2022, which was also denied (*see* Mtn., Exhibit 13). To the extent that Mrs. Latham, having adopted Mr. Trump's arguments regarding disqualification, relies upon facts which should have been known to her prior to the filing of her motion for reconsideration in August of 2022, her arguments are untimely. To

13

the extent that, in adopting Mr. Trump's Motion, she merely restates her prior arguments, she is barred from raising them again by the doctrine of res judicata.[7]

If any purported grounds for disqualification remain after dismissing those which are untimely or barred by res judicata, the Movant's arguments concerning them lack sufficient merit. The Movants first insist that this Court erred when, even as it disqualified the FCDAO from investigating or otherwise prosecuting Burt Jones in 2022, it did not also disqualify the FCDAO from the *entire investigation*. In its July 2022 Order, this Court explained the focused and specific analysis required under Georgia law when evaluating motions for disqualification; such motions can be based only upon a conflict of interest or "forensic misconduct" relating to public statements, either of which must have a direct relationship to a specific individual. *See Williams v. State*, 258 Ga. 305, 314 (2)(B) (1988). In arguing that disqualification should extend instead to an entire matter or investigation, the Movants rely extensively upon a single Supreme Court case, *Young v. United States ex rel. Vuitton Et Fil S.A. et al*, 481 U.S. 787 (1987). This case, however, is inapposite. *Young* involved a contempt case stemming from private litigation between two parties. The trial court in *Young* appointed the attorneys for the plaintiff to act as special prosecutors for a criminal contempt action against the defendants for activities arising directly from the private litigation. *Id.* at 791-92. These "special prosecutors" had an obvious and pervasive conflict of interest from the very inception of the contempt case, which led the Supreme Court to hold that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *Id.* at 809.

---

[7] *See* O.C.G.A. § 9-12-40: "A judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside."

14

Obviously, such circumstances are not present in this case. Any reliance upon *Young* for the contention that disqualification applies to entire matters or investigations rather than individual defendants is misplaced. When this Court entered its order disqualifying the FCDAO from investigating Burt Jones, its analysis turned on the nature of the District Attorney's relationship to Mr. Jones specifically and explicitly rejected any claims that the District Attorney had a broader conflict of interest that might have applied to Mrs. Latham (and by extension, Mr. Trump or others). In *Young*, the special prosecutors had an inarguable conflict of interest that necessarily pervaded the entire case, including the facts giving rise to the actual criminal charges at issue. As it stands, nothing in *Young* indicates that Georgia's existing framework for the disqualification of prosecutors is inadequate or was incorrectly applied by this Court previously. The facts have not changed, and they still do not support the attribution of a finding of conflict of interest as to one individual to every other individual with some relation to the events surrounding the 2020 elections. Because the Movants rely solely upon *Young*, their arguments that this Court erred in its initial rulings on disqualification must fail.

The Movants also assert that the District Attorney has engaged in "forensic misconduct" by making statements to the media about the investigation. As noted above, forensic misconduct is one of the two generally recognized grounds for the disqualification of prosecutors. The only described example of forensic misconduct is "the improper expression by the prosecuting attorney of his personal belief in the defendant's guilt." *Williams*, 258 Ga. at 315. It is an exceedingly rare claim; *Williams* appears to be the only Georgia case discussing forensic misconduct in any depth. In *Williams*, the Georgia Supreme Court adopted a stringent and specific standard for evaluating claims of forensic misconduct: "[i]n determining whether an improper statement of the prosecutor as to the defendant's guilt requires his disqualification, the courts have taken into consideration

whether such remarks were part of a calculated plan evincing a design to prejudice the defendant in the minds of the jurors, or whether such remarks were inadvertent, albeit improper, utterances." *Id.*

Two obstacles to the Movants' claims are immediately apparent under this standard: the statements to which they cite do not concern the Movants' guilt, and no jury exists in this case. Nearly every one of the statements contained in Exhibit 5 of the Motion are conditional, vague, comments regarding "allegations," or general statements about the investigation and the reason for its pursuit. The one statement which does directly address the District Attorney's opinion of Mr. Trump's culpability indicates the direct opposite of forensic misconduct: "FCDA said she has yet to make up her mind about whether the former president or his advocates broke the law and reiterates that she will treat President Trump like anyone else who crosses her desk." *See* Mtn., Exhibit 5 at no. 23.

Even if this Court were to determine that there were some statement from the District Attorney that could be considered improper, which was timely objected to and not subject to res judicata, the Movants have not (and cannot) show the sort of pervasive misconduct required for disqualification. The examples provided in *Williams* indicate the sort of egregious conduct required for such a showing. The opinion refers to a Vermont case where a prosecutor was disqualified for publicly pledging during a reelection campaign to secure a conviction against a defendant. *See id.* at 315 n.4; *Vermont v. Hohman*, 420 A2d 852 (Vt. 1980). In *Williams*, the prosecutor flatly stated his opinion of the defendant's guilt, making a series of comments that culminated with, "In my opinion, therefore, there is substantial reason to believe Mr. Williams is guilty of the offense charged." 258 Ga. at 310. Even then, the Supreme Court held that it was "quite clear" that the prosecutor's comments were "not of such egregious nature as to require

disqualification." *Id.* at 315.[8] Disqualification for forensic misconduct in Georgia is only warranted by remarks which speak directly to the *prosecutor's opinion* of a *defendant's guilt* and which are part of a *calculated plan* designed to *prejudice a jury* against that defendant, and such remarks must be *egregious*. Even if a jury existed in this case, there is absolutely no indication of any such comments, or any such plan, in the present matter.

The Movants' final argument regarding disqualification moves past the standard for disqualification under Georgia law and asks that this Court create a new one. The Movants point to three of the District Attorney's social media posts on Twitter, all made in July of 2022, and argue that these posts, in combination with their prior arguments, create an "appearance of impropriety." Mtn. at 41. That appearance of impropriety in turn "creates a conflict." Mtn. at 43.

The Movants' arguments on this last point fail for at least three reasons. First, their reasoning is backward. The "appearance of impropriety" does not create conflict; conflict creates the appearance of impropriety. "[A]ppointment of *an interested prosecutor* creates an appearance of impropriety that diminishes faith in the fairness of the criminal justice system in general." *Young*, 481 U.S. at 811 (emphasis added). Second, the Movants' argument seeks to import the "appearance of impropriety" standard for judicial recusal into the possible disqualification of prosecutors. *See* Rule 1.2, Code of Judicial Conduct (Judges must avoid "impropriety and the appearance of impropriety"). However, the standards for prosecutors and judges cannot be conflated, and courts have intentionally avoided doing so.

> [B]ecause of their differing roles and responsibilities, the neutrality required of a
> judge is necessarily of a higher degree than that required of a prosecutor. While the

---

[8] As an example of the sort of "egregious" behavior or plan contemplated by the term "forensic misconduct," the *Williams* opinion then cites to *Pierce v. United States*, 86 F.2d 949 (6th Cir. 1936), a case that involved repeated improper comments before a trial jury in "what appears to have been a studied effort to inject into the case irrelevant and prejudicial matter for the purpose of influencing the verdict, and its continued repetition after adverse rulings." *Id.* at 953.

prosecuting officer should see that no unfair advantage is taken of the accused, yet he is not a judicial officer. Those who are required to exercise judicial functions in the case are the judge and jury. The public prosecutor is necessarily a partisan in the case. If he were compelled to proceed with the same circumspection as the judge and jury, there would be an end to the conviction of criminals.

*Whitworth v. State*, 275 Ga. App. 790, 793 (2005) (citations omitted). See also *Young*, 481 U.S. at 810-11 ("It is true that we have indicated that the standards of neutrality for prosecutors are not necessarily as stringent as those applicable to judicial or quasi-judicial officers," and such standards apply to "*whether* a conflict is found" in the first place) (emphasis in original). Finally, the social media activity specified by the Movants is simply not disqualifying behavior, a reality which the Movants themselves acknowledge. *See* Mtn. at 42 (the posts "if standing alone, might not be sufficient for disqualification"). The Twitter activity consisted of one retweet of a political cartoon (which involved neither Movant) and two tweets thanking an individual for two tweets of his own, each of which called for more Twitter users to follow the District Attorney. The Movants acknowledge that these facts are so innocuous that they must be considered "in combination" with, again, this Court's ruling regarding Burt Jones. This argument, then, is an extension of the Movants' prior argument: that the Court's ruling regarding Mr. Jones should be applied to the entire investigation, as well as the social media activity of the District Attorney.

In light of the foregoing, the FCDAO respectfully ask that this Court dismiss or deny the Movants' Motion for disqualification of the FCDAO. The arguments are largely untimely or barred by res judicata, and any that survive dismissal fail to demonstrate adequate grounds for disqualification of prosecutors under Georgia law.

### IV.     The Movants fail to demonstrate how the SPGJ was "tainted" or how they have suffered any injury to their due process rights as a result.

The Movants next claim that public comments made by several former grand jurors demonstrate that the SPGJ was "tainted" by "improper influences," "inaccurate instructions," and

"unconstitutional inferences." Mtn. at 43. These apparent improprieties thus demand that this Court "suppress" the SPGJ's report because otherwise, "named individuals" will suffer violation of their due process rights. These arguments are also without merit or a basis in the law.

The Motion does not clarify how "improper outside sources" could have tainted the SPGJ process, perhaps because it is not clear what "improper outside sources" could mean in the grand jury context. It is a basic tenet of grand jury jurisprudence that "the grand jury generally is entitled to act upon its own information, however acquired." *Isaacs v. State*, 259 Ga. 717, 719 (2) (1989) (citing *Groves v. State*, 73 Ga. 205 (1884)). Grand jurors are empowered to undertake investigations on their own initiative and have a statutory duty to "examine or make presentments of such offenses as may or shall come to their knowledge" either before or after they are sworn. O.C.G.A. § 15-12-74; *see Brown v. State*, 295 Ga. 240, 241-242 (2014). This would be impossible if grand jurors could somehow be "tainted" by information which originated outside the grand jury room. The Movants argue that the grand jurors were aware of "extraneous" information which was "beyond their purview," but they do not indicate how or why this is so. The Movants thus demonstrate only that the grand jurors were aware of "outside" information, not that such sources of information were somehow "improper."

As to the Movants' arguments regarding the Fifth Amendment, the Movants do not show or even argue that the grand jury was not instructed on the importance of a witness's right against self-incrimination. The Movants also do not show how either of them have standing to raise any challenge related to the Fifth Amendment rights of witnesses before the SPGJ. They merely argue that, based on a smattering of comments from the former grand jurors, any instruction must have been inadequate. The Movants acknowledge that, in an interview after the discharge of the grand jury, a grand juror indicated that prosecutors "repeatedly" told the grand jury that a witness's

invocation of his or her Fifth Amendment rights could not be seen "as an admission of guilt." Mtn. at 46. The grand juror went on to state that prosecutors "were very passionate about saying: 'I need you to understand that.'" *See* Mtn., Exhibit 8 no. 11.

The Movants insist that these comments demonstrate that any instruction regarding the Fifth Amendment must have been "inadequate on its face." Relying exclusively on *Barnes v. State*, 335 Ga. App. 709 (2016), they argue that the SPGJ was tainted by misunderstanding and that they should have been instructed that they could not draw "any inference" from a witness's silence, rather than merely an inference of guilt. Mtn. at 46-47. This attempt to split hairs fails, not least of all because it misapplies the holding in *Barnes*. That case involved a trial court's failure to instruct a trial jury that it could not "consider in any way" a defendant's decision not to take the stand in his own trial. Notably, the Court of Appeals in *Barnes* approved of the pre-trial instruction that "the defendant had the absolute right to remain silent and the jury was not permitted to draw any inference *of guilt* from his exercise of that right," but said that the trial court erred because "those instructions did not specifically address the issue of Barnes's testimony at trial." *Id*. at 712 (emphasis added). In the present investigation, there is no defendant, no trial, no trial jury, and no scenario where a defendant opts not to testify. Instead, there are grand jurors whom the Movants acknowledge were instructed "repeatedly" not to infer guilt from a witness's assertion of rights. On their own terms, the Movants' arguments fail to demonstrate any inadequacies, much less any that irrevocably "tainted" the SPGJ.

The Movants cannot show that the grand jury was "tainted" by "improper" outside information or inadequate instructions regarding the Fifth Amendment. They do not indicate how outside information can be improper for a grand jury to perceive. They do not indicate how they have standing to address the Fifth Amendment rights of others, how the statements contained in

their own motion indicate some inadequacy, or how the *Barnes* case is applicable in this context. Finally, aside from general references to "fundamental fairness," they do not clarify how the handling of witnesses' Fifth Amendment concerns actually gives rise to a violation of their own due process rights. For all these reasons, their arguments are without merit.

**V.      The Movants are not entitled to injunctive relief.**

Mrs. Latham's Motion also prays that this Court grant her injunctive relief. She requests that the SPGJ's report be quashed and that the FCDAO be disqualified, mirroring Mr. Trump's Motion, but her added request for an injunction is more expansive. Mrs. Latham insists that such an injunction should reach far beyond the FCDAO, the SPGJ, or the report; the injunction should prohibit the FCDAO "or any other prosecuting arm of the State" from using "any evidence *presented to* the SPGJ in any future grand jury or legal proceeding." Latham Mtn. at 2 (emphasis added). The injunction would require that "any and every state entity be enjoined from presenting or utilizing any evidence or testimony derived by the SPGJ." Latham Mtn. at 5. In sum, Mrs. Latham asks this Court to eliminate the report, disqualify the FCDAO, and prevent any other representative of the people of this State from using any evidence even *presented to* the SPGJ, in perpetuity.

This Court must dismiss Mrs. Latham's request for relief because it is plainly without the power to grant it. O.C.G.A. § 9-5-2 states that "Equity will take no part in the administration of the criminal law. It will neither aid criminal courts in the exercise of their jurisdiction, nor will it restrain or obstruct them." Injunctions of criminal investigations are simply not allowed. This prohibition is explicit, and yet O.C.G.A. § 9-5-2 is not mentioned anywhere in Mrs. Latham's Motion. Because her requested relief is not legal and entirely without merit, this Court must dismiss it.

While Mrs. Latham's Motion is entirely without a basis in the law, it is at least explicit in what it actually seeks. Mrs. Latham asks that this Court "restrain or obstruct" not one criminal investigation, but *any* criminal investigation. She requests that not one prosecutor be enjoined, but *all* prosecutors. In so doing, she notes that her requested relief is identical to that requested by Mr. Trump in his own Motion: "Both motions seek to enjoin the publication or use of the of the SPGJ Report and to preclude any State prosecuting agency from presenting or utilizing any evidence or testimony derived by the SPGJ." Latham Mtn. at 1. While Mr. Trump's Motion avoids use of the words "enjoin" or "injunction," its procedural awkwardness is belied by the succession of standing and timeliness issues it presents. Functionally, it seeks a single, sweeping remedy, which is the elimination of the SPGJ's report and any investigation tied to the SPGJ's operation, explicitly or implicitly. In Mrs. Latham's own estimation, what Mr. Trump's Motion seeks is an injunction.

The Movants cannot succeed because their requested remedies have no basis in the law and in fact fly in the face of the orderly administration of the laws of the State of Georgia. If an investigation results in actual criminal charges against the Movants, the justice system ensures they will have no shortage of available remedies to pursue. The general rule set out in O.C.G.A. § 9-5-2 that equity will "take no part in" the operation of criminal law

> is based upon the principle that equity is intended to supplement, and not usurp, the functions of courts of law, and that to sustain a bill in equity to restrain or relieve against proceedings for the punishment of offenses would constitute an invasion of the courts of law; and on the fact that the party has an adequate remedy at law by establishing as a defense to the prosecution that he did not commit the act charged, or that the statute on which the prosecution is based is invalid, and, in case of conviction, by taking an appeal.

*Hodges v. State Revenue Com.*, 183 Ga. 832, 833 (1) (1937). The Movants are not content to follow the ordinary course of the law. They seek to "restrain" a criminal investigation before any charges are filed or even sought; they ask that the judicial system place them above and apart from the common administration of the criminal law; and they do so by raising arguments for which they

have no standing, or which they failed to timely join, or which they have already failed, or which have no basis in law at all.

The FCDAO respectfully requests that, for all these reasons, the Motions presented by Mr. Trump and Mrs. Latham be denied or dismissed as appropriate.

**WHEREFORE**, the State of Georgia, by and through Fani T. Willis, District Attorney, Atlanta Judicial Circuit, Fulton County, Georgia, prays that this Honorable Court dismiss or deny the instant Motions on the basis of the papers.

Respectfully submitted this the 15th day of May, 2023,

FANI T. WILLIS
DISTRICT ATTORNEY
Ga. Bar No. 223955
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

F. McDonald Wakeford
Chief Senior Assistant District Attorney
Ga. Bar No. 414898
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

**Certificate of Service**

I hereby certify that on this 15th day of May 2023, a true copy of this Response was delivered to the following persons by electronic mail: Drew Findling, Jennifer L. Little, and Kieran J. Shanahan, attorneys for the movants.

FANI T. WILLIS
DISTRICT ATTORNEY
Ga. Bar No. 223955
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303