# EXHIBIT A



**Petition for Alien Relative**

Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS
Form I-130**

OMB No. 1615-0012
Expires 07/31/2018

| For USCIS Use Only | | |
|---|---|---|

APP I130
MSC1990611632    02/11/2019

**Action Stamp**

**A-Number**
A-

**Initial Receipt**

**Resubmitted**

**Relocated**       Section of Law/Visa Category

Received  ☐ 201(b) Spouse - IR-1/CR-1  ☐ 203(a)(1) Unm. S/D- F1-1  ☐ 203(a)(2)(B) Unm. S/D - F2-4

Sent  ☐ 201(b) Child - IR-2/CR-2  ☐ 203(a)(2)(A) Spouse- F2-1  ☐ 203(a)(3) Married  S/D - F3-1

**Completed**  ☐ 201(b) Parent - IR-5  ☐ 203(a)(2)(A) Child - F2-2  ☐ 203(a)(4) Brother/Sister - F4-1

Approved  Petition was filed on (Priority Date mm/dd/yyyy):   ☐ Field Investigation  ☐ Personal Interview  ☐ 204(a)(2)(A) Resolved

☐ Previously Forwarded  ☐ Pet. A-File Reviewed  ☐ I-485 Filed Simultaneously

Returned  PDR request granted/denied - New priority date (mm/dd/yyyy):   ☐ 203(g) Resolved  ☐ Ben. A-File Reviewed  ☐ 204(g) Resolved

**Remarks**

At which USCIS office (e.g., NBC, VSC, LOS, CRO) was Form I-130 adjudicated? _____

| To be completed by an attorney or accredited representative (if any). | | | |
|---|---|---|---|

☒ Select this box if Form G-28 is attached.

**Volag Number** (if any)

**Attorney State Bar Number** (if applicable)
2843449

**Attorney or Accredited Representative USCIS Online Account Number** (if any)

▶ **START HERE - Type or print in black ink.**

If you need extra space to complete any section of this petition, use the space provided in Part 9. Additional Information. Complete and submit as many copies of Part 9, as necessary, with your petition.

**Part 1. Relationship** (You are the Petitioner. Your relative is the Beneficiary)

**Part 2. Information About You** (Petitioner)

*Your Full Name*

| | | |
|---|---|---|
| 4.a. | Family Name (Last Name) | BOOTHE-ATU |
| 4.b. | Given Name (First Name) | SHAQUASA |
| 4.c. | Middle Name | JANEE |

(b)(6)

101901551351A   1906533 004529 12 0025824 021219 22:19 021119 AOS-805887

**Part 2. Information About You** (Petitioner) (continued)

*Address History*

Provide your physical addresses for the last five years, whether

(b)(6)

**Part 2. Information About You** (Petitioner).
(continued)

(b)(6)

**Part 2. Information About You** (Petitioner)
(continued)

(b)(6)

## Part 3. Biographic Information (continued)

## Part 4. Information About Beneficiary

**1.** Alien Registration Number (A-Number) (if any)

► A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3

**2.** USCIS Online Account Number (if any)

►

**3.** U.S. Social Security Number (if any)

► | 7 | 1 | 9 | 4 | 5 | 7 | 4 | 2 | 6

### Beneficiary's Full Name

**4.a.** Family Name (Last Name)  ATU

**4.b.** Given Name (First Name)  ENDYSEN

**4.c.** Middle Name  AFAMEFUNA

### Other Names Used (if any)

Provide all other names the beneficiary has ever used, including aliases, maiden name, and nicknames.

**5.a.** Family Name (Last Name)

**5.b.** Given Name (First Name)  NONE

**5.c.** Middle Name

### Other Information About Beneficiary

**6.** City/Town/Village of Birth  ENUGU

**7.** Country of Birth  Nigeria

**8.** Date of Birth (mm/dd/yyyy)  06/06/1981

**9.** Sex  ☒ Male  ☐ Female

**10.** Has anyone else ever filed a petition for the beneficiary?

☒ Yes  ☐ No  ☐ Unknown

**NOTE:** Select "Unknown" *only* if you do not know, and the beneficiary also does not know, if anyone else has ever filed a petition for the beneficiary.

### Beneficiary's Physical Address

If the beneficiary lives outside the United States in a home without a street number or name, leave **Item Numbers 11.a.** and **11.b.** blank.

**11.a.** Street Number and Name  299 BROWNSTONE CIR.

**11.b.** ☒ Apt.  ☐ Ste.  ☐ Flr.  26

**11.c.** City or Town  MARIETTA

**11.d.** State  GA   **11.e.** ZIP Code  30008

**11.f.** Province

**11.g.** Postal Code

**11.h.** Country  United States

### Other Address and Contact Information

Provide the address in the United States where the beneficiary intends to live, if different from **Item Numbers 11.a. - 11.h.** If the address is the same, type or print "SAME" in **Item Number 12.a.**

**12.a** Street Number and Name  SAME

**12.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**12.c.** City or Town

**12.d.** State   **12.e.** ZIP Code

Provide the beneficiary's address outside the United States, if different from **Item Numbers 11.a. - 11.h.** If the address is the same, type or print "SAME" in **Item Number 13.a.**

**13.a.** Street Number and Name  SPIRITAN SCH OF THEOLOGY

**13.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**13.c.** City or Town  ATAKWU

**13.d.** Province  ENUGU

**13.e.** Postal Code

**13.f.** Country  Nigeria

**14.** Daytime Telephone Number (if any)  2084092566

## Part 4. Information About Beneficiary (continued)

15. Mobile Telephone Number (if any)

16. Email Address (if any)

atu_benjamin@yahoo.com

### Beneficiary's Marital Information

17. How many times has the beneficiary been married?

▶ 3

18. Current Marital Status

[ ] Single, Never Married   [X] Married   [ ] Divorced

[ ] Widowed   [ ] Separated   [ ] Annulled

19. Date of Current Marriage (if currently married) (mm/dd/yyyy)

12/20/2018

### Place of Beneficiary's Current Marriage (if married)

20.a. City or Town   MARIETTA

20.b. State   GA

20.c. Province

20.d. Country   United States

### Names of Beneficiary's Spouses (if any)

Provide information on the beneficiary's current spouse (if currently married) first and then list all the beneficiary's prior spouses (if any).

**Spouse 1**

21.a. Family Name (Last Name)   BOOTHE-ATU

21.b. Given Name (First Name)   SHAQUASA

21.c. Middle Name   JANEE

22. Date Marriage Ended (mm/dd/yyyy)   N/A

**Spouse 2**

23.a. Family Name (Last Name)   SAPP

23.b. Given Name (First Name)   ARNETIA

23.c. Middle Name   LAVATREYETTE

24. Date Marriage Ended (mm/dd/yyyy)   VOID (See Addendum 1)

### Information About Beneficiary's Family

Provide information about the beneficiary's spouse and children.

**Person 1**

25.a. Family Name (Last Name)

25.b. Given Name (First Name)

25.c. Middle Name

26. Relationship

27. Date of Birth (mm/dd/yyyy)

28. Country of Birth

**Person 2**

29.a. Family Name (Last Name)

29.b. Given Name (First Name)

29.c. Middle Name

30. Relationship

31. Date of Birth (mm/dd/yyyy)

32. Country of Birth

**Person 3**

33.a. Family Name (Last Name)

33.b. Given Name (First Name)

33.c. Middle Name

34. Relationship

35. Date of Birth (mm/dd/yyyy)

36. Country of Birth

**Part 4. Information About Beneficiary (continued)**

**Person 4**

**37.a.** Family Name (Last Name)

**37.b.** Given Name (First Name)

**37.c.** Middle Name

**38.** Relationship

**39.** Date of Birth (mm/dd/yyyy)

**40.** Country of Birth

**Person 5**

**41.a.** Family Name (Last Name)

**41.b.** Given Name (First Name)

**41.c.** Middle Name

**42.** Relationship

**43.** Date of Birth (mm/dd/yyyy)

**44.** Country of Birth

**Beneficiary's Entry Information**

**45.** Was the beneficiary EVER in the United States?

☒ Yes   ☐ No

If the beneficiary is currently in the United States, complete Items Numbers 46.a. - 46.d.

**46.a.** He or she arrived as a (Class of Admission):

B2-VISITOR

**46.b.** Form I-94 Arrival-Departure Record Number

▶ 8 3 9 7 4 7 0 8 7 2 3

**46.c.** Date of Arrival (mm/dd/yyyy)   01/08/2011

**46.d.** Date authorized stay expired, or will expire, as shown on Form I-94 or Form I-95 (mm/dd/yyyy) or type or print "D/S" for Duration of Status

**47.** Passport Number

**48.** Travel Document Number

**49.** Country of Issuance for Passport or Travel Document

NIGERIA

**50.** Expiration Date for Passport or Travel Document (mm/dd/yyyy)

**Beneficiary's Employment Information**

Provide the beneficiary's current employment information (if applicable), even if they are employed outside of the United States. If the beneficiary is currently unemployed, type or print "Unemployed" in Item Number 51.a.

**51.a.** Name of Current Employer (if applicable)

UNEMPLOYED

**51.b.** Street Number and Name

**51.c.** ☐ Apt.   ☐ Ste.   ☐ Flr.

**51.d.** City or Town

**51.e.** State   **51.f.** ZIP Code

**51.g.** Province

**51.h.** Postal Code

**51.i.** Country

**52.** Date Employment Began (mm/dd/yyyy)

**Additional Information About Beneficiary**

**53.** Was the beneficiary EVER in immigration proceedings?

☐ Yes   ☒ No

**54.** If you answered "Yes," select the type of proceedings and provide the location and date of the proceedings.

☐ Removal   ☐ Exclusion/Deportation

☐ Rescission   ☐ Other Judicial Proceedings

**55.a.** City or Town

**55.b.** State

**56.** Date (mm/dd/yyyy)

## Part 4. Information About Beneficiary (continued)

If the beneficiary's native written language does not use Roman letters, type or print his or her name and foreign address in their native written language.

**57.a.** Family Name (Last Name)  N/A

**57.b.** Given Name (First Name)

**57.c.** Middle Name

**58.a.** Street Number and Name

**58.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**58.c.** City or Town

**58.d.** Province

**58.e.** Postal Code

**58.f.** Country

If filing for your spouse, provide the last address at which you physically lived together. If you never lived together, type or print, "Never lived together" in Item Number 59.a.

**59.a.** Street Number and Name

**59.b.** ☐ Apt.  ☐ Ste.  ☐ Flr.

**59.c.** City or Town

**59.d.** State

**59.e.** ZIP Code

**59.f.** Province

**59.g.** Postal Code

**59.h.** Country

**60.a.** Date From (mm/dd/yyyy)

**60.b.** Date To (mm/dd/yyyy)

The beneficiary is in the United States and will apply for adjustment of status to that of a lawful permanent resident at the U.S. Citizenship and Immigration Services (USCIS) office in:

**61.a.** City or Town

**61.b.** State

The beneficiary will not apply for adjustment of status in the United States, but he or she will apply for an immigrant visa abroad at the U.S. Embassy or U.S. Consulate in:

**62.a.** City or Town

**62.b.** Province

**62.c.** Country

**NOTE:** Choosing a U.S. Embassy or U.S. Consulate outside the country of the beneficiary's last residence does not guarantee that it will accept the beneficiary's case for processing. In these situations, the designated U.S. Embassy or U.S. Consulate has discretion over whether or not to accept the beneficiary's case.

## Part 5. Other Information

**1.** Have you EVER previously filed a petition for this beneficiary or any other alien?  ☐ Yes  ☐ No

If you answered "Yes," provide the name, place, date of filing, and the result.

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

**3.a.** City or Town

**3.b.** State

**4.** Date Filed (mm/dd/yyyy)

**5.** Result (for example, approved, denied, withdrawn)

If you are also submitting separate petitions for other relatives, provide the names of and your relationship to each relative.

**Relative 1**

**6.a.** Family Name (Last Name)

**6.b.** Given Name (First Name)

**6.c.** Middle Name

**7.** Relationship

## Part 5.  Other Information (continued)

**Relative 2**

**8.a.** Family Name
(Last Name)

**8.b.** Given Name
(First Name)

**8.c.** Middle Name

**9.** Relationship

**WARNING:** USCIS investigates the claimed relationships and verifies the validity of documents you submit. If you falsify a family relationship to obtain a visa, USCIS may seek to have you criminally prosecuted.

**PENALTIES:** By law, you may be imprisoned for up to 5 years or fined $250,000, or both, for entering into a marriage contract in order to evade any U.S. immigration law. In addition, you may be fined up to $10,000 and imprisoned for up to 5 years, or both, for knowingly and willfully falsifying or concealing a material fact or using any false document in submitting this petition.

## Part 6.  Petitioner's Statement, Contact Information, Declaration, and Signature

**NOTE:** Read the Penalties section of the Form I-130 Instructions before completing this part.

### Petitioner's Statement

**NOTE:** Select the box for either Item Number 1.a. or 1.b. If applicable, select the box for Item Number 2.

**1.a.** [X] I can read and understand English, and I have read and understand every question and instruction on this petition and my answer to every question.

**1.b.** [ ] The interpreter named in **Part 7.** read to me every question and instruction on this petition and my answer to every question in

a language in which I am fluent. I understood all of this information as interpreted.

**2.** [X] At my request, the preparer named in **Part 8.**,
IHENJI UGENYI
prepared this petition for me based only upon information I provided or authorized.

### Petitioner's Contact Information

**3.** Petitioner's Daytime Telephone Number

**4.** Petitioner's Mobile Telephone Number (if any)
678-281-4086

**5.** Petitioner's Email Address (if any)

### Petitioner's Declaration and Certification

Copies of any documents I have submitted are exact photocopies of unaltered, original documents, and I understand that USCIS may require that I submit original documents to USCIS at a later date. Furthermore, I authorize the release of any information from any of my records that USCIS may need to determine my eligibility for the immigration benefit I seek.

I further authorize release of information contained in this petition, in supporting documents, and in my USCIS records to other entities and persons where necessary for the administration and enforcement of U.S. immigration laws.

I understand that USCIS may require me to appear for an appointment to take my biometrics (fingerprints, photograph, and/or signature) and, at that time, if I am required to provide biometrics, I will be required to sign an oath reaffirming that:

    1) I provided or authorized all of the information contained in, and submitted with, my petition;

    2) I reviewed and understood all of the information in, and submitted with, my petition; and

    3) All of this information was complete, true, and correct at the time of filing.

I certify, under penalty of perjury, that all of the information in my petition and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with, my petition, and that all of this information is complete, true, and correct.

### Petitioner's Signature

**6.a.** Petitioner's Signature

➡ Shangamberthe

**6.b.** Date of Signature (mm/dd/yyyy)   | 12 | 07 | 2019 |

**NOTE TO ALL PETITIONERS:** If you do not completely fill out this petition or fail to submit required documents listed in the Instructions, USCIS may deny your petition.

## Part 7. Interpreter's Contact Information, Certification, and Signature

Provide the following information about the interpreter if you used one.

### Interpreter's Full Name

**1.a.** Interpreter's Family Name (Last Name)

**1.b.** Interpreter's Given Name (First Name)

**2.** Interpreter's Business or Organization Name (if any)

### Interpreter's Mailing Address

**3.a.** Street Number and Name

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town

**3.d.** State          **3.e.** ZIP Code

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country

### Interpreter's Contact Information

**4.** Interpreter's Daytime Telephone Number

**5.** Interpreter's Mobile Telephone Number (if any)

**6.** Interpreter's Email Address (if any)

### Interpreter's Certification

I certify, under penalty of perjury, that:

I am fluent in English and

which is the same language provided in Part 6., Item Number 1.b., and I have read to this petitioner in the identified language every question and instruction on this petition and his or her answer to every question. The petitioner informed me that he or she understands every instruction, question, and answer on the petition, including the **Petitioner's Declaration and Certification**, and has verified the accuracy of every answer.

### Interpreter's Signature

**7.a.** Interpreter's Signature

**7.b.** Date of Signature (mm/dd/yyyy)

## Part 8. Contact Information, Declaration, and Signature of the Person Preparing this Petition, if Other Than the Petitioner

Provide the following information about the preparer.

### Preparer's Full Name

**1.a.** Preparer's Family Name (Last Name)

UGENYI

**1.b.** Preparer's Given Name (First Name)

IHENJI

**2.** Preparer's Business or Organization Name (if any)

Law Office of Michael Nwuba

### Preparer's Mailing Address

**3.a.** Street Number and Name          19 Azalea Court

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town          Staten Island

**3.d.** State   NY   **3.e.** ZIP Code   10309

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country

United States

## Part 8. Contact Information, Declaration, and Signature of the Person Preparing this Petition, if Other Than the Petitioner (continued)

### Preparer's Contact Information

4. Preparer's Daytime Telephone Number

   7183446825

5. Preparer's Mobile Telephone Number (if any)

6. Preparer's Email Address (if any)

   ihenjiugenyi@yahoo.com

### Preparer's Statement

7.a. ☐ I am not an attorney or accredited representative but have prepared this petition on behalf of the petitioner and with the petitioner's consent.

7.b. ☒ I am an attorney or accredited representative and my representation of the petitioner in this case ☒ extends ☐ does not extend beyond the preparation of this petition.

NOTE: If you are an attorney or accredited representative whose representation extends beyond preparation of this petition, you may be obliged to submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, with this petition.

### Preparer's Certification

By my signature, I certify, under penalty of perjury, that I prepared this petition at the request of the petitioner. The petitioner then reviewed this completed petition and informed me that he or she understands all of the information contained in, and submitted with, his or her petition, including the **Petitioner's Declaration and Certification,** and that all of this information is complete, true, and correct. I completed this petition based only on information that the petitioner provided to me or authorized me to obtain or use.

### Preparer's Signature

8.a. Preparer's Signature

8.b. Date of Signature (mm/dd/yyyy)  2/17/2017

## Part 9.  Additional Information

If you need extra space to provide any additional information within this petition, use the space below.  If you need more space than what is provided, you may make copies of this page to complete and file with this petition or attach a separate sheet of paper.  Type or print your name and A-Number (if any) at the top of each sheet; indicate the **Page Number, Part Number,** and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a.** Family Name (Last Name)  BOOTHE-ATU

**1.b.** Given Name (First Name)  SHAQUASA

**1.c.** Middle Name  JANEE

**2.** A-Number (if any) ▶ A-

**3.a.** Page Number  2

**3.b.** Part Number  2

**3.c.** Item Number  12

**3.d.** 2160 SEWARD AVE, 11G, BRONX, NY 10473, United States

**4.a.** Page Number

**4.b.** Part Number

**4.c.** Item Number

**4.d.**

**5.a.** Page Number

**5.b.** Part Number

**5.c.** Item Number

**5.d.**

**6.a.** Page Number

**6.b.** Part Number

**6.c.** Item Number

**6.d.**

**7.a.** Page Number

**7.b.** Part Number

**7.c.** Item Number

**7.d.**

# EXHIBIT B

# Application to Register Permanent Residence
## or Adjust Status

Department of Homeland Security
U.S. Citizenship and Immigration Services

**USCIS**
**Form I-485**
OMB No. 1615-0023
Expires 06/30/2019



APP I485

MSC1990611631    02/11/2019

| | |
|---|---|
| Preference Category: | |
| Country Chargeable: | |
| Priority Date: | |
| Date Form I-693 Received: | |

Action Block

☐ Applicant Interviewed   ☐ Interview Waived

Date of Initial Interview: _____

Lawful Permanent Resident as of: _____

**Section of Law**
☐ INA 209(a)   ☐ INA 249
☐ INA 209(b)   ☐ Sec. 13, Act of 9/11/57
☐ INA 245(a)   ☐ Cuban Adjustment Act
☐ INA 245(i)   ☐ Other _____
☐ INA 245(m)

### To be completed by an attorney or accredited representative (if any).

| ☒ Select this box if Form G-28 is attached. | Volag Number (if any) | Attorney State Bar Number (if applicable) 2843449 | Attorney or Accredited Representative USCIS Online Account Number (if any) |
|---|---|---|---|

▶ **START HERE** - Type or print in black ink. A214477823    A-Number ▶ A- 2 1 4 4 7 8 8 2 3

**NOTE TO ALL APPLICANTS:** If you do not completely fill out this application or fail to submit required documents listed in the Instructions, U.S. Citizenship and Immigration Services (USCIS) may deny your application.

## Part 1. Information About You (Person applying for lawful permanent residence)

### Your Current Legal Name (do not provide a nickname)

1.a. Family Name (Last Name)  ATU
1.b. Given Name (First Name)  ENDYSEN
1.c. Middle Name  AFAMEFUNA

3.a. Family Name (Last Name)
3.b. Given Name (First Name)
3.c. Middle Name

4.a. Family Name (Last Name)
4.b. Given Name (First Name)
4.c. Middle Name

### Other Names You Have Used Since Birth (if applicable)

**NOTE:** Provide all other names you have ever used, including your family name at birth, other legal names, nicknames, aliases, and assumed names. If you need extra space to complete this section, use the space provided in **Part 14. Additional Information.**

2.a. Family Name (Last Name)
2.b. Given Name (First Name)  NONE
2.c. Middle Name

### Other Information About You

5. Date of Birth (mm/dd/yyyy)  06/06/1981

**NOTE:** In addition to providing your actual date of birth, include any other dates of birth you have used in connection with any legal names or non-legal names in the space provided in **Part 14. Additional Information.**

6. Sex  ☒ Male  ☐ Female

7. City or Town of Birth  ENUGU

---

Form I-485  12/13/17  N

1019015513510   1906533 004529 12 0025824 021219 22:18 021119 AOS-805887

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 1. Information About You (Person applying for lawful permanent residence) (continued)

**8.** Country of Birth

Nigeria

**9.** Country of Citizenship or Nationality

Nigeria

**10.** Alien Registration Number (A-Number) (if any)

▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

**NOTE:** If you have EVER used other A-Numbers, include the additional A-Numbers in the space provided in **Part 14. Additional Information.**

**11.** USCIS Online Account Number (if any)

▶ | | | | | | | | | | | |

**12.** U.S. Social Security Number (if any)

▶ | 7 | 1 | 9 | 4 | 5 | 7 | 4 | 2 | 6 |

## U.S. Mailing Address

**13.a.** In Care Of Name (if any)

**13.b.** Street Number and Name

299 BROWNSTONE CIR.

**13.c.** [X] Apt. [ ] Ste. [ ] Flr. | 26

**13.d.** City or Town

MARIETTA

**13.e.** State | GA | **13.f.** ZIP Code | 30008

## Alternate and/or Safe Mailing Address

If you are applying based on the Violence Against Women Act (VAWA) or as a special immigrant juvenile, human trafficking victim (T nonimmigrant), or victim of a qualifying crime (U nonimmigrant) and you do not want USCIS to send notices about this application to your home, you may provide an alternative and/or safe mailing address.

**14.a.** In Care Of Name (if any)

**14.b.** Street Number and Name

**14.c.** [ ] Apt. [ ] Ste. [ ] Flr.

**14.d.** City or Town

**14.e.** State | | **14.f.** ZIP Code | |

## Recent Immigration History

Provide the information for **Item Numbers 15. - 19.** if you last entered the United States using a passport or travel document.

**15.** Passport Number Used at Last Arrival

A02601284

**16.** Travel Document Number Used at Last Arrival

**17.** Expiration Date of this Passport or Travel Document (mm/dd/yyyy)

**18.** Country that Issued this Passport or Travel Document

NIGERIA

**19.** Nonimmigrant Visa Number from this Passport (if any)

20103634290001

Place of Last Arrival into the United States

**20.a.** City or Town

DALLAS, TX

**20.b.** State | TX

**21.** Date of Last Arrival (mm/dd/yyyy) | 01/08/2011

When I last arrived in the United States, I:

**22.a.** [X] Was inspected at a port of entry and admitted as (for example, exchange visitor; visitor, waived through; temporary worker; student):

VISITOR

**22.b.** [ ] Was inspected at a port of entry and paroled as (for example, humanitarian parole, Cuban parole):

**22.c.** [ ] Came into the United States without admission or parole.

**22.d.** [ ] Other:

If you were issued a Form I-94 Arrival-Departure Record Number:

**23.a.** Form I-94 Arrival-Departure Record Number

▶ | 8 | 3 | 9 | 7 | 4 | 7 | 0 | 8 | 7 | 2 | 3 |

**23.b.** Expiration Date of Authorized Stay Shown on Form I-94 (mm/dd/yyyy) | 07/07/2011

**23.c.** Status on Form I-94 (for example, class of admission, or paroled, if paroled)

VISITOR

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 1. Information About You (Person applying for lawful permanent residence) (continued)

24. What is your current immigration status (if it has changed since your arrival)?

STUDENT

Provide your name exactly as it appears on your Form I-94 (if any)

**25.a.** Family Name (Last Name)

ATU

**25.b.** Given Name (First Name)

ENDYSEN

**25.c.** Middle Name

AFAMEFUNA

## Part 2. Application Type or Filing Category

**NOTE:** Attach a copy of the Form I-797 receipt or approval notice for the underlying petition or application, as appropriate.

**I am applying** to register lawful permanent residence or adjust status to that of a lawful permanent resident based on the following immigrant category (select **only one box**). (See the Form I-485 Instructions for more information, including any **Additional Instructions** that relate to the immigrant category you select.):

**1.a.** Family-based

[X] Immediate relative of a U.S. citizen, Form I-130

[ ] Other relative of a U.S. citizen or relative of a lawful permanent resident under the family-based preference categories, Form I-130

[ ] Person admitted to the United States as a fiance(e) or child of a fiance(e) of a U.S. citizen, Form I-129F (K-1/K-2 Nonimmigrant)

[ ] Widow or widower of a U.S. citizen, Form I-360

[ ] VAWA self-petitioner, Form I-360

**1.b.** Employment-based

[ ] Alien worker, Form I-140

[ ] Alien entrepreneur, Form I-526

**1.c.** Special Immigrant

[ ] Religious worker, Form I-360

[ ] Special immigrant juvenile, Form I-360

[ ] Certain Afghan or Iraqi national, Form I-360

[ ] Certain international broadcaster, Form I-360

[ ] Certain G-4 international organization or family member or NATO-6 employee or family member, Form I-360

**1.d.** Asylee or Refugee

[ ] Asylum status (INA section 208), Form I-589 or Form I-730

[ ] Refugee status (INA section 207), Form I-590 or Form I-730

**1.e.** Human Trafficking Victim or Crime Victim

[ ] Human trafficking victim (T Nonimmigrant), Form I-914 or derivative family member, Form I-914A

[ ] Crime victim (U Nonimmigrant), Form I-918, derivative family member, Form I-918A, or qualifying family member, Form I-929

**1.f.** Special Programs Based on Certain Public Laws

[ ] The Cuban Adjustment Act

[ ] The Cuban Adjustment Act for battered spouses and children

[ ] Dependent status under the Haitian Refugee Immigrant Fairness Act

[ ] Dependent status under the Haitian Refugee Immigrant Fairness Act for battered spouses and children

[ ] Lautenberg Parolees

[ ] Diplomats or high ranking officials unable to return home (Section 13 of the Act of September 11, 1957)

[ ] Indochinese Parole Adjustment Act of 2000

**1.g.** Additional Options

[ ] Diversity Visa program

[ ] Continuous residence in the United States since before January 1, 1972 ("Registry")

[ ] Individual born in the United States under diplomatic status

[ ] Other eligibility

2. Are you applying for adjustment based on the Immigration and Nationality Act (INA) section 245(i)?

[ ] Yes [X] No

**NOTE:** If you answered "Yes" to **Item Number 2.,** you must have selected a family-based, employment-based, special immigrant, or Diversity Visa immigrant category listed above in **Item Numbers 1.a. - 1.g.** as the basis for your application for adjustment of status. Fill out the rest of this application and Supplement A to Form I-485, Adjustment of Status Under Section 245(i) (Supplement A). For detailed filing instructions, read the Form I-485 Instructions (including any **Additional Instructions** that relate to the immigrant category that you selected in **Item Numbers 1.a. - 1.g.**) and Supplement A Instructions.

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 2. Application Type or Filing Category (continued)

### Information About Your Immigrant Category

If you are the **principal applicant**, provide the following information.

**3.** Receipt Number of Underlying Petition (if any)

**4.** Priority Date from Underlying Petition (if any) (mm/dd/yyyy)

If you are a **derivative applicant** (the spouse or unmarried child under 21 years of age of a principal applicant), provide the following information for the **principal applicant**.

Principal Applicant's Name

**5.a.** Family Name (Last Name)

**5.b.** Given Name (First Name)

**5.c.** Middle Name

**6.** Principal Applicant's A-Number (if any)
▶ A-

**7.** Principal Applicant's Date of Birth (mm/dd/yyyy)

**8.** Receipt Number of Principal's Underlying Petition (if any)
▶

**9.** Priority Date of Principal Applicant's Underlying Petition (if any) (mm/dd/yyyy)

## Part 3. Additional Information About You

**1.** Have you ever applied for an immigrant visa to obtain permanent resident status at a U.S. Embassy or U.S. Consulate abroad?   ☐ Yes  ☒ No

If you answered "Yes" to Item Number 1., complete *Item Numbers 2.a. - 4. below. If you need extra space to complete this section, use the space provided in Part 14. Additional Information.*

Location of U.S. Embassy or U.S. Consulate

**2.a.** City

**2.b.** Country

**3.** Decision (for example, approved, refused, denied, withdrawn)

**4.** Date of Decision (mm/dd/yyyy)

### Address History

Provide physical addresses for everywhere you have lived during the last five years, whether inside or outside the United States. Provide your current address first. If you need extra space to complete this section, use the space provided in **Part 14. Additional Information.**

Physical Address 1 (current address)

**5.a.** Street Number and Name  `299 BROWNSTONE CIR.`

**5.b.** ☒ Apt. ☐ Ste. ☐ Flr. `26`

**5.c.** City or Town  `MARIETTA`

**5.d.** State `GA`  **5.e.** ZIP Code `30008`

**5.f.** Province

**5.g.** Postal Code

**5.h.** Country  `United States`

Dates of Residence

**6.a.** From (mm/dd/yyyy)  `12/20/2018`

**6.b.** To (mm/dd/yyyy)  `Present`

Physical Address 2

**7.a.** Street Number and Name  `140-46 BOSCOM AVE.`

**7.b.** ☒ Apt. ☐ Ste. ☐ Flr. `B`

**7.c.** City or Town  `JAMAICA`

**7.d.** State `NY`  **7.e.** ZIP Code `11436`

**7.f.** Province

**7.g.** Postal Code

**7.h.** Country  `United States`

A-Number ► A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 3. Additional Information About You (continued)

Dates of Residence

**8.a.** From (mm/dd/yyyy)  05/01/2017

**8.b.** To (mm/dd/yyyy)  12/01/2018

Provide your most recent address outside the United States where you lived for more than one year (if not already listed above).

**9.a.** Street Number and Name  SPIRITAN SCH OF THEOLOGY

**9.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**9.c.** City or Town  ATAKWU

**9.d.** State               **9.e.** ZIP Code

**9.f.** Province  ENUGU

**9.g.** Postal Code

**9.h.** Country  Nigeria

Dates of Residence

**10.a.** From (mm/dd/yyyy)  06/01/2006

**10.b.** To (mm/dd/yyyy)

### Employment History

Provide your employment history for the last five years, whether inside or outside the United States. Provide the most recent employment first. If you need extra space to complete this section, use the space provided in **Part 14. Additional Information.**

Employer 1 (current or most recent)

**11.** Name of Employer or Company  COVENANT HEALTHCARE

Address of Employer or Company

**12.a.** Street Number and Name  700 COOPER AV.

**12.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**12.c.** City or Town  SAGINAW

**12.d.** State  MI      **12.e.** ZIP Code  48602

**12.f.** Province

**12.g.** Postal Code

**12.h.** Country

**13.** Your Occupation

Dates of Employment

**14.a.** From (mm/dd/yyyy)  08/20/2017

**14.b.** To (mm/dd/yyyy)  08/03/2018

Employer 2

**15.** Name of Employer or Company

Address of Employer or Company

**16.a.** Street Number and Name

**16.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**16.c.** City or Town

**16.d.** State      **16.e.** ZIP Code

**16.f.** Province

**16.g.** Postal Code

**16.h.** Country

**17.** Your Occupation

Dates of Employment

**18.a.** From (mm/dd/yyyy)

**18.b.** To (mm/dd/yyyy)

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 3.  Additional Information About You (continued)

Provide your most recent employment outside of the United States (if not already listed above).

**19.** Name of Employer or Company

Address of Employer or Company

**20.a.** Street Number and Name

**20.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**20.c.** City or Town

**20.d.** State

**20.e.** ZIP Code

**20.f.** Province

**20.g.** Postal Code

**20.h.** Country

**21.** Your Occupation

Dates of Employment

**22.a.** From (mm/dd/yyyy)

**22.b.** To (mm/dd/yyyy)

## Part 4.  Information About Your Parents

### Information About Your Parent 1

Parent 1's Legal Name

**1.a.** Family Name (Last Name)   ATU

**1.b.** Given Name (First Name)   SAMSON

**1.c.** Middle Name   OKONKWO

Parent 1's Name at Birth (if different than above)

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

**3.** Date of Birth (mm/dd/yyyy)   01/01/1949

**4.** Sex   ☒ Male   ☐ Female

**5.** City or Town of Birth   ATTAKWU ENUGU

**6.** Country of Birth   NIGERIA

**7.** Current City or Town of Residence (if living)   ENUGU

**8.** Current Country of Residence (if living)   NIGERIA

### Information About Your Parent 2

Parent 2's Legal Name

**9.a.** Family Name (Last Name)   ATU

**9.b.** Given Name (First Name)   BEATRICE

**9.c.** Middle Name

Parent 2's Name at Birth (if different than above)

**10.a.** Family Name (Last Name)   MBA

**10.b.** Given Name (First Name)   BEATRICE

**10.c.** Middle Name

**11.** Date of Birth (mm/dd/yyyy)   10/01/1962

**12.** Sex   ☐ Male   ☒ Female

**13.** City or Town of Birth   ATTAKWU

**14.** Country of Birth   NIGERIA

**15.** Current City or Town of Residence (if living)   ENUGU

**16.** Current Country of Residence (if living)   NIGERIA

A-Number ▶ A- 2 1 4 4 7 8 8 2 3

## Part 3. Additional Information About You (continued)

Provide your most recent employment outside of the United States (if not already listed above).

19. Name of Employer or Company

Address of Employer or Company

20.a. Street Number and Name

20.b. ☐ Apt. ☐ Ste. ☐ Flr.

20.c. City or Town

20.d. State

20.e. ZIP Code

20.f. Province

20.g. Postal Code

20.h. Country

21. Your Occupation

Dates of Employment

22.a. From (mm/dd/yyyy)

22.b. To (mm/dd/yyyy)

## Part 4. Information About Your Parents

### Information About Your Parent 1

Parent 1's Legal Name

1.a. Family Name (Last Name) ATU

1.b. Given Name (First Name) SAMSON

1.c. Middle Name OKONKWO

Parent 1's Name at Birth (if different than above)

2.a. Family Name (Last Name)

2.b. Given Name (First Name)

2.c. Middle Name

3. Date of Birth (mm/dd/yyyy) 12/28/2018

4. Sex ☒ Male ☐ Female

5. City or Town of Birth
ATTAKWU ENUGU

6. Country of Birth
NIGERIA

7. Current City or Town of Residence (if living)
ENUGU

8. Current Country of Residence (if living)
NIGERIA

### Information About Your Parent 2

Parent 2's Legal Name

9.a. Family Name (Last Name) ATU

9.b. Given Name (First Name) BEATRICE

9.c. Middle Name

Parent 2's Name at Birth (if different than above)

10.a. Family Name (Last Name) MBA

10.b. Given Name (First Name) BEATRICE

10.c. Middle Name

11. Date of Birth (mm/dd/yyyy) 10/01/1962

12. Sex ☐ Male ☒ Female

13. City or Town of Birth
ATTAKWU

14. Country of Birth
NIGERIA

15. Current City or Town of Residence (if living)
ENUGU

16. Current Country of Residence (if living)
NIGERIA

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 5. Information About Your Marital History

**1.** What is your current marital status?

☐ Single, Never Married  ☒ Married  ☐ Divorced

☐ Widowed  ☐ Marriage Annulled

☐ Legally Separated

**2.** If you are married, is your spouse a current member of the U.S. armed forces or U.S. Coast Guard?

☐ N/A  ☐ Yes  ☒ No

**3.** How many times have you been married (including annulled marriages and marriages to the same person)?

3

### Information About Your Current Marriage (including if you are legally separated)

If you are currently married, provide the following information about your current spouse.

Current Spouse's Legal Name

**4.a.** Family Name (Last Name)   BOOTHE-ATU

**4.b.** Given Name (First Name)   SHAQUASA

**4.c.** Middle Name   JANEE

**5.** A-Number (if any)

▶ A- | | | | | | | | |

**6.** Current Spouse's Date of Birth (mm/dd/yyyy)   11/11/1990

**7.** Date of Marriage to Current Spouse (mm/dd/yyyy)   12/20/2018

Current Spouse's Place of Birth

**8.a.** City or Town   NYC

**8.b.** State or Province   NY

**8.c.** Country   United States

Place of Marriage to Current Spouse

**9.a.** City or Town   COBB

**9.b.** State or Province   GA

**9.c.** Country   United States

**10.** Is your current spouse applying with you?

☐ Yes  ☒ No

### Information About Prior Marriages (if any)

If you have been married before, whether in the United States or in any other country, provide the following information about your prior spouse. If you have had more than one previous marriage, use the space provided in Part 14. Additional Information to provide the information below.

Prior Spouse's Legal Name (provide family name before marriage)

**11.a.** Family Name (Last Name)   SAPP

**11.b.** Given Name (First Name)   ARNETIA

**11.c.** Middle Name   LAVATREYETTE

**12.** Prior Spouse's Date of Birth (mm/dd/yyyy)   11/10/1987

**13.** Date of Marriage to Prior Spouse (mm/dd/yyyy)   03/08/2017

Place of Marriage to Prior Spouse

**14.a.** City or Town   WHITE PLAINS

**14.b.** State or Province   NY

**14.c.** Country   United States

**15.** Date Marriage with Prior Spouse Legally Ended (mm/dd/yyyy)   N/A

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 5. Information About Your Marital History (continued)

Place Where Marriage with Prior Spouse Legally Ended

**16.a.** City or Town

**16.b.** State or Province

**16.c.** Country

## Part 6. Information About Your Children

**1.** Indicate the total number of ALL living children (including adult sons and daughters) that you have.

NOTE: The term "children" includes all biological or legally adopted children, as well as current stepchildren, of any age, whether born in the United States or other countries, married or unmarried, living with you or elsewhere and includes any missing children and those born to you outside of marriage.

`0`

Provide the following information for each of your children. If you have more than three children, use the space provided in **Part 14. Additional Information.**

Child 1

Current Legal Name

**2.a.** Family Name (Last Name)

**2.b.** Given Name (First Name)

**2.c.** Middle Name

**3.** A-Number (if any)

▶ A-

**4.** Date of Birth (mm/dd/yyyy)

**5.** Country of Birth

**6.** Is this child applying with you?  ☐ Yes  ☐ No

Child 2

Current Legal Name

**7.a.** Family Name (Last Name)

**7.b.** Given Name (First Name)

**7.c.** Middle Name

**8.** A-Number (if any)

▶ A-

**9.** Date of Birth (mm/dd/yyyy)

**10.** Country of Birth

**11.** Is this child applying with you?  ☐ Yes  ☐ No

Child 3

Current Legal Name

**12.a.** Family Name (Last Name)

**12.b.** Given Name (First Name)

**12.c.** Middle Name

**13.** A-Number (if any)

▶ A-

**14.** Date of Birth (mm/dd/yyyy)

**15.** Country of Birth

**16.** Is this child applying with you?  ☐ Yes  ☐ No

## Part 7. Biographic Information

**1.** Ethnicity (Select only one box)

☐ Hispanic or Latino

☒ Not Hispanic or Latino

**2.** Race (Select all applicable boxes)

☐ White

☐ Asian

☒ Black or African American

☐ American Indian or Alaska Native

☐ Native Hawaiian or Other Pacific Islander

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 7. Biographic Information (continued)

3. Height      Feet 6    Inches 0

4. Weight      Pounds 1 8 6

5. Eye Color (Select only one box)

☐ Black    ☐ Blue    ☒ Brown
☐ Gray    ☐ Green    ☐ Hazel
☐ Maroon    ☐ Pink    ☐ Unknown/Other

6. Hair Color (Select only one box)

☐ Bald (No hair)    ☒ Black    ☐ Blond
☐ Brown    ☐ Gray    ☐ Red
☐ Sandy    ☐ White    ☐ Unknown/Other

## Part 8. General Eligibility and Inadmissibility Grounds

1. Have you EVER been a member of, involved in, or in any way associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other location in the world including any military service? ☐ Yes ☒ No

If you answered "Yes" to Item Number 1., complete Item Numbers 2. - 13.b. below. If you need extra space to complete this section, use the space provided in Part 14. Additional Information. If you answered "No," but are unsure of your answer, provide an explanation of the events and circumstances in the space provided in Part 14. Additional Information.

Organization 1

2. Name of Organization

3.a. City or Town

3.b. State or Province

3.c. Country

4. Nature of Group

---

Dates of Membership or Dates of Involvement

5.a. From (mm/dd/yyyy)

5.b. To (mm/dd/yyyy)

Organization 2

6. Name of Organization

7.a. City or Town

7.b. State or Province

7.c. Country

8. Nature of Group

Dates of Membership or Dates of Involvement

9.a. From (mm/dd/yyyy)

9.b. To (mm/dd/yyyy)

Organization 3

10. Name of Organization

11.a. City or Town

11.b. State or Province

11.c. Country

12. Nature of Group

Dates of Membership or Dates of Involvement

13.a. From (mm/dd/yyyy)

13.b. To (mm/dd/yyyy)

A-Number ▶ A- 2 1 4 4 7 8 8 2 3

## Part 8.  General Eligibility and Inadmissibility Grounds (continued)

Answer Item Numbers 14. - 80.b. Choose the answer that you think is correct.  If you answer "Yes" to any questions (or if you answer "No," but are unsure of your answer), provide an explanation of the events and circumstances in the space provided in **Part 14. Additional Information.**

14. Have you EVER been denied admission to the United States?  ☐ Yes ☒ No

15. Have you EVER been denied a visa to the United States?  ☐ Yes ☒ No

16. Have you EVER worked in the United States without authorization?  ☐ Yes ☒ No

17. Have you EVER violated the terms or conditions of your nonimmigrant status?  ☐ Yes ☒ No

18. Are you presently or have you EVER been in removal, exclusion, rescission, or deportation proceedings?  ☐ Yes ☒ No

19. Have you EVER been issued a final order of exclusion, deportation, or removal?  ☐ Yes ☒ No

20. Have you EVER had a prior final order of exclusion, deportation, or removal reinstated?  ☐ Yes ☒ No

21. Have you EVER held lawful permanent resident status which was later rescinded?  ☐ Yes ☒ No

22. Have you EVER been granted voluntary departure by an immigration officer or an immigration judge but failed to depart within the allotted time?  ☐ Yes ☒ No

23. Have you EVER applied for any kind of relief or protection from removal, exclusion, or deportation?  ☐ Yes ☒ No

24.a. Have you EVER been a J nonimmigrant exchange visitor who was subject to the two-year foreign residence requirement?  ☐ Yes ☒ No

If you answered "Yes" to Item Number 24.a., complete Item Numbers 24.b. - 24.c.  If you answered "No" to Item Number 24.a., skip to Item Number 25.

24.b. Have you complied with the foreign residence requirement?  ☐ Yes ☒ No

24.c. Have you been granted a waiver or has Department of State issued a favorable waiver recommendation letter for you?  ☐ Yes ☐ No

## Criminal Acts and Violations

For Item Numbers 25. - 45., you must answer "Yes" to any question that applies to you, even if your records were sealed or otherwise cleared, or even if anyone, including a judge, law enforcement officer, or attorney, told you that you no longer have a record.  You must also answer "Yes" to the following questions whether the action or offense occurred here in the United States or anywhere else in the world.  If you answer "Yes" to Item Numbers 25. - 45., use the space provided in **Part 14. Additional Information** to provide an explanation that includes why you were arrested, cited, detained, or charged; where you were arrested, cited, detained, or charged; when (date) the event occurred; and the outcome or disposition (for example, no charges filed, charges dismissed, jail, probation, community service).

25. Have you EVER been arrested, cited, charged, or detained for any reason by any law enforcement official (including but not limited to any U.S. immigration official or any official of the U.S. armed forces or U.S. Coast Guard)?  ☐ Yes ☒ No

26. Have you EVER committed a crime of any kind (even if you were not arrested, cited, charged with, or tried for that crime)?  ☐ Yes ☒ No

27. Have you EVER pled guilty to or been convicted of a crime or offense (even if the violation was subsequently expunged or sealed by a court, or if you were granted a pardon, amnesty, a rehabilitation decree, or other act of clemency)?  ☐ Yes ☒ No

NOTE: If you were the beneficiary of a pardon, amnesty, a rehabilitation decree, or other act of clemency, provide documentation of that post-conviction action.

28. Have you EVER been ordered punished by a judge or had conditions imposed on you that restrained your liberty (such as a prison sentence, suspended sentence, house arrest, parole, alternative sentencing, drug or alcohol treatment, rehabilitative programs or classes, probation, or community service)?  ☐ Yes ☒ No

29. Have you EVER been a defendant or the accused in a criminal proceeding (including pre-trial diversion, deferred prosecution, deferred adjudication, or any withheld adjudication)?  ☐ Yes ☒ No

30. Have you EVER violated (or attempted or conspired to violate) any controlled substance law or regulation of a state, the United States, or a foreign country?  ☐ Yes ☒ No

A-Number ▶ A | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 8.  General Eligibility and Inadmissibility Grounds (continued)

31. Have you **EVER** been convicted of two or more offenses (other than purely political offenses) for which the combined sentences to confinement were five years or more?  ☐ Yes  ☒ No

32. Have you **EVER** illicitly (illegally) trafficked or benefited from the trafficking of any controlled substances, such as chemicals, illegal drugs, or narcotics?  ☐ Yes  ☒ No

33. Have you **EVER** knowingly aided, abetted, assisted, conspired, or colluded in the illicit trafficking of any illegal narcotic or other controlled substances?  ☐ Yes  ☒ No

34. Are you the spouse, son, or daughter of a foreign national who illicitly trafficked or aided (or otherwise abetted, assisted, conspired, or colluded) in the illicit trafficking of a controlled substance, such as chemicals, illegal drugs, or narcotics and you obtained, within the last five years, any financial or other benefit from the illegal activity of your spouse or parent, although you knew or reasonably should have known that the financial or other benefit resulted from the illicit activity of your spouse or parent?  ☐ Yes  ☒ No

35. Have you **EVER** engaged in prostitution or are you coming to the United States to engage in prostitution?  ☐ Yes  ☒ No

36. Have you **EVER** directly or indirectly procured (or attempted to procure) or imported prostitutes or persons for the purpose of prostitution?  ☐ Yes  ☒ No

37. Have you **EVER** received any proceeds or money from prostitution?  ☐ Yes  ☒ No

38. Do you intend to engage in illegal gambling or any other form of commercialized vice, such as prostitution, bootlegging, or the sale of child pornography, while in the United States?  ☐ Yes  ☒ No

39. Have you **EVER** exercised immunity (diplomatic or otherwise) to avoid being prosecuted for a criminal offense in the United States?  ☐ Yes  ☒ No

40. Have you **EVER**, while serving as a foreign government official, been responsible for or directly carried out violations of religious freedoms?  ☐ Yes  ☒ No

41. Have you **EVER** induced by force, fraud, or coercion (or otherwise been involved in) the trafficking of persons for commercial sex acts?  ☐ Yes  ☒ No

42. Have you **EVER** trafficked a person into involuntary servitude, peonage, debt bondage, or slavery?  Trafficking includes recruiting, harboring, transporting, providing, or obtaining a person for labor or services through the use of force, fraud, or coercion.  ☐ Yes  ☒ No

43. Have you **EVER** knowingly aided, abetted, assisted, conspired, or colluded with others in trafficking persons for commercial sex acts or involuntary servitude, peonage, debt bondage, or slavery?  ☐ Yes  ☒ No

44. Are you the spouse, son or daughter of a foreign national who engaged in the trafficking of persons and have received or obtained, within the last five years, any financial or other benefits from the illicit activity of your spouse or your parent, although you knew or reasonably should have known that this benefit resulted from the illicit activity of your spouse or parent?  ☐ Yes  ☒ No

45. Have you **EVER** engaged in money laundering or have you **EVER** knowingly aided, assisted, conspired, or colluded with others in money laundering or do you seek to enter the United States to engage in such activity?  ☐ Yes  ☒ No

### Security and Related

Do you intend to:

46.a. Engage in any activity that violates or evades any law relating to espionage (including spying) or sabotage in the United States?  ☐ Yes  ☒ No

46.b. Engage in any activity in the United States that violates or evades any law prohibiting the export from the United States of goods, technology, or sensitive information?  ☐ Yes  ☒ No

46.c. Engage in any activity whose purpose includes opposing, controlling, or overthrowing the U.S. Government by force, violence, or other unlawful means while in the United States?  ☐ Yes  ☒ No

46.d. Engage in any activity that could endanger the welfare, safety, or security of the United States?  ☐ Yes  ☒ No

46.e. Engage in any other unlawful activity?  ☐ Yes  ☒ No

47. Are you engaged in or, upon your entry into the United States, do you intend to engage in any activity that could have potentially serious adverse foreign policy consequences for the United States?  ☐ Yes  ☒ No

1 019 015513510   1906533 004529 12 0025824 021219 22:18 021119 AOS-805887

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 8. General Eligibility and Inadmissibility Grounds (continued)

Have you EVER:

**48.a.** Committed, threatened to commit, attempted to commit, conspired to commit, incited, endorsed, advocated, planned, or prepared any of the following: hijacking, sabotage, kidnapping, political assassination, or use of a weapon or explosive to harm another individual or cause substantial damage to property? ☐ Yes ☒ No

**48.b.** Participated in, or been a member of, a group or organization that did any of the activities described in Item Number 48.a.? ☐ Yes ☒ No

**48.c.** Recruited members or asked for money or things of value for a group or organization that did any of the activities described in Item Number 48.a.? ☐ Yes ☒ No

**48.d.** Provided money, a thing of value, services or labor, or any other assistance or support for any of the activities described in Item Number 48.a.? ☐ Yes ☒ No

**48.e.** Provided money, a thing of value, services or labor, or any other assistance or support for an individual, group, or organization who did any of the activities described in Item Number 48.a.? ☐ Yes ☒ No

**49.** Have you EVER received any type of military, paramilitary, or weapons training? ☐ Yes ☒ No

**50.** Do you intend to engage in any of the activities listed in any part of Item Numbers 48.a. - 49.? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any part of Item Numbers 46.a. - 50., explain what you did, including the dates and location of the circumstances, or what you intend to do in the space provided in Part 14. Additional Information.

Are you the spouse or child of an individual who EVER:

**51.a.** Committed, threatened to commit, attempted to commit, conspired to commit, incited, endorsed, advocated, planned, or prepared any of the following: hijacking, sabotage, kidnapping, political assassination, or use of a weapon or explosive to harm another individual or cause substantial damage to property? ☐ Yes ☒ No

**51.b.** Participated in, or been a member or a representative of a group or organization that did any of the activities described in Item Number 51.a.? ☐ Yes ☒ No

**51.c.** Recruited members, or asked for money or things of value, for a group or organization that did any of the activities described in Item Number 51.a.? ☐ Yes ☒ No

**51.d.** Provided money, a thing of value, services or labor, or any other assistance or support for any of the activities described in Item Number 51.a.? ☐ Yes ☒ No

**51.e.** Provided money, a thing of value, services or labor, or any other assistance or support to an individual, group, or organization who did any of the activities described in Item Number 51.a.? ☐ Yes ☒ No

**51.f.** Received any type of military, paramilitary, or weapons training from a group or organization that did any of the activities described in Item Number 51.a.? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any part of Item Number 51., explain the relationship and what occurred, including the dates and location of the circumstances, in the space provided in Part 14. Additional Information.

**52.** Have you EVER assisted or participated in selling, providing, or transporting weapons to any person who, to your knowledge, used them against another person? ☐ Yes ☒ No

**53.** Have you EVER worked, volunteered, or otherwise served in any prison, jail, prison camp, detention facility, labor camp, or any other situation that involved detaining persons? ☐ Yes ☒ No

**54.** Have you EVER been a member of, assisted, or participated in any group, unit, or organization of any kind in which you or other persons used any type of weapon against any person or threatened to do so? ☐ Yes ☒ No

**55.** Have you EVER served in, been a member of, assisted, or participated in any military unit, paramilitary unit, police unit, self-defense unit, vigilante unit, rebel group, guerilla group, militia, insurgent organization, or any other armed group? ☐ Yes ☒ No

**56.** Have you EVER been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party (in the United States or abroad)? ☐ Yes ☒ No

**57.** During the period from March 23, 1933 to May 8, 1945, did you ever order, incite, assist, or otherwise participate in the persecution of any person because of race, religion, national origin, or political opinion, in association with either the Nazi government of Germany or any organization or government associated or allied with the Nazi government of Germany? ☐ Yes ☒ No

1019015512510  1906533 004529 12 0025824 021219  22:18 021119 AOS-805887

A-Number ▶ A- 2 1 4 4 7 8 8 2 3

## Part 8. General Eligibility and Inadmissibility Grounds (continued)

Have you **EVER** ordered, incited, called for, committed, assisted, helped with, or otherwise participated in any of the following:

**58.a.** Acts involving torture or genocide? ☐ Yes ☒ No

**58.b.** Killing any person? ☐ Yes ☒ No

**58.c.** Intentionally and severely injuring any person? ☐ Yes ☒ No

**58.d.** Engaging in any kind of sexual contact or relations with any person who did not consent or was unable to consent, or was being forced or threatened? ☐ Yes ☒ No

**58.e.** Limiting or denying any person's ability to exercise religious beliefs? ☐ Yes ☒ No

**59.** Have you **EVER** recruited, enlisted, conscripted, or used any person under 15 years of age to serve in or help an armed force or group? ☐ Yes ☒ No

**60.** Have you **EVER** used any person under 15 years of age to take part in hostilities, or to help or provide services to people in combat? ☐ Yes ☒ No

**NOTE:** If you answered "Yes" to any part of **Item Numbers 52. - 60.**, explain what occurred, including the dates and location of the circumstances, in the space provided in **Part 14. Additional Information.**

### Public Assistance

**61.** Have you received public assistance in the United States from any source, including the U.S. Government or any state, county, city, or municipality (other than emergency medical treatment)? ☐ Yes ☒ No

**62.** Are you likely to receive public assistance in the future in the United States from any source, including the U.S. Government or any state, county, city, or municipality (other than emergency medical treatment)? ☐ Yes ☒ No

### Illegal Entries and Other Immigration Violations

**63.a.** Have you **EVER** failed or refused to attend or to remain in attendance at any removal proceeding filed against you on or after April 1, 1997? ☐ Yes ☒ No

**63.b.** If your answer to **Item Number 63.a.** is "Yes," do you believe you had reasonable cause? ☐ Yes ☒ No

**63.c.** If your answer to **Item Number 63.b.** is "Yes," attach a written statement explaining why you had reasonable cause.

**64.** Have you **EVER** submitted fraudulent or counterfeit documentation to any U.S. Government official to obtain or attempt to obtain any immigration benefit, including a visa or entry into the United States? ☐ Yes ☒ No

**65.** Have you **EVER** lied about, concealed, or misrepresented any information on an application or petition to obtain a visa, other documentation required for entry into the United States, admission to the United States, or any other kind of immigration benefit? ☐ Yes ☒ No

**66.** Have you **EVER** falsely claimed to be a U.S. citizen (in writing or any other way)? ☐ Yes ☒ No

**67.** Have you **EVER** been a stowaway on a vessel or aircraft arriving in the United States? ☐ Yes ☒ No

**68.** Have you **EVER** knowingly encouraged, induced, assisted, abetted, or aided any foreign national to enter or to try to enter the United States illegally (alien smuggling)? ☐ Yes ☒ No

**69.** Are you under a final order of civil penalty for violating INA section 274C for use of fraudulent documents? ☐ Yes ☒ No

### Removal, Unlawful Presence, or Illegal Reentry After Previous Immigration Violations

**70.** Have you **EVER** been excluded, deported, or removed from the United States or have you ever departed the United States on your own after having been ordered excluded, deported, or removed from the United States? ☐ Yes ☒ No

**71.** Have you **EVER** entered the United States without being inspected and admitted or paroled? ☐ Yes ☒ No

Since April 1, 1997, have you been unlawfully present in the United States:

**72.a.** For more than 180 days but less than a year, and then departed the United States? ☐ Yes ☒ No

**72.b.** For one year or more and then departed the United States? ☐ Yes ☒ No

**NOTE:** You were unlawfully present in the United States if you entered the United States without being inspected and admitted or inspected and paroled, or if you legally entered the United States but you stayed longer than permitted.

1 01901551351 0   1906533 004529 12 0025824 021219 22:18 021119 AOS-805887

A-Number ► A- 2 1 4 4 7 8 8 2 3

## Part 8. General Eligibility and Inadmissibility Grounds (continued)

Since April 1, 1997, have you EVER reentered or attempted to reenter the United States without being inspected and admitted or paroled after:

**73.a.** Having been unlawfully present in the United States for more than one year in the aggregate?　□ Yes　☒ No

**73.b.** Having been deported, excluded, or removed from the United States?　□ Yes　☒ No

### Miscellaneous Conduct

**74.** Do you plan to practice polygamy in the United States?　□ Yes　☒ No

**75.** Are you accompanying another foreign national who requires your protection or guardianship but who is inadmissible after being certified by a medical officer as being helpless from sickness, physical or mental disability, or infancy, as described in INA section 232(c)?　□ Yes　☒ No

**76.** Have you EVER assisted in detaining, retaining, or withholding custody of a U.S. citizen child outside the United States from a U.S. citizen who has been granted custody of the child?　□ Yes　☒ No

**77.** Have you EVER voted in violation of any Federal, state, or local constitutional provision, statute, ordinance, or regulation in the United States?　□ Yes　☒ No

**78.** Have you EVER renounced U.S. citizenship to avoid being taxed by the United States?　□ Yes　☒ No

Have you EVER:

**79.a.** Applied for exemption or discharge from training or service in the U.S. armed forces or in the U.S. National Security Training Corps on the ground that you are a foreign national?　□ Yes　☒ No

**79.b.** Been relieved or discharged from such training or service on the ground that you are a foreign national?　□ Yes　☒ No

**79.c.** Been convicted of desertion from the U.S. armed forces?　□ Yes　☒ No

**80.a.** Have you EVER left or remained outside the United States to avoid or evade training or service in the U.S. armed forces in time of war or a period declared by the President to be a national emergency?　□ Yes　☒ No

**80.b.** If your answer to Item Number 80.a. is "Yes," what was your nationality or immigration status immediately before you left (for example, U.S. citizen or national, lawful permanent resident, nonimmigrant, parolee, present without admission or parole, or any other status)?

## Part 9. Accommodations for Individuals With Disabilities and/or Impairments

**NOTE:** Read the information in the Form I-485 Instructions before completing this part.

**1.** Are you requesting an accommodation because of your disabilities and/or impairments?　□ Yes　☒ No

If you answered "Yes" to Item Number 1., select any applicable box in Item Numbers 2.a. - 2.c. and provide an answer.

**2.a.** □ I am deaf or hard of hearing and request the following accommodation. (If you are requesting a sign-language interpreter, indicate for which language (for example, American Sign Language).):

_____

**2.b.** □ I am blind or have low vision and request the following accommodation:

_____

**2.c.** □ I have another type of disability and/or impairment. (Describe the nature of your disability and/or impairment and the accommodation you are requesting.)

_____

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 10.  Applicant's Statement, Contact Information, Declaration, Certification, and Signature

**NOTE:**  Read the **Penalties** section of the Form I-485 Instructions before completing this part.  You must file Form I-485 while in the United States.

### Applicant's Statement

**NOTE:** Select the box for either Item Number 1.a. or 1.b. If applicable, select the box for Item Number 2.

**1.a.**  ☒ I can read and understand English, and I have read and understand every question and instruction on this application and my answer to every question.

**1.b.**  ☐ The interpreter named in **Part 11.** read to me every question and instruction on this application and my answer to every question in

[_____],

a language in which I am fluent, and I understood everything.

**2.**  ☒ At my request, the preparer named in **Part 12.**,

IHENJI UGENYI

[_____],

prepared this application for me based only upon information I provided or authorized.

### Applicant's Contact Information

**3.**  Applicant's Daytime Telephone Number

2084092566

**4.**  Applicant's Mobile Telephone Number (if any)

[_____]

**5.**  Applicant's Email Address (if any)

atu_benjamin@yahoo.com

### Applicant's Declaration and Certification

Copies of any documents I have submitted are exact photocopies of unaltered, original documents, and I understand that USCIS may require that I submit original documents to USCIS at a later date.  Furthermore, I authorize the release of any information from any and all of my records that USCIS may need to determine my eligibility for the immigration benefit that I seek.

I understand that if I am a male who is 18 to 26 years of age, submitting this application will automatically register me with the Selective Service System as required by the Military Selective Service Act.

I furthermore authorize release of information contained in this application, in supporting documents, and in my USCIS records, to other entities and persons where necessary for the administration and enforcement of U.S. immigration law.

I understand that USCIS may require me to appear for an appointment to take my biometrics (fingerprints, photograph, and/or signature) and, at that time, if I am required to provide biometrics, I will be required to sign an oath reaffirming that:

1)  I reviewed and understood all of the information contained in, and submitted with, my application; and

2)  All of this information was complete, true, and correct at the time of filing.

I certify, under penalty of perjury, that all of the information in my application and any document submitted with it were provided or authorized by me, that I reviewed and understand all of the information contained in, and submitted with, my application and that all of this information is complete, true, and correct.

### Applicant's Signature

**6.a.**  Applicant's Signature (sign in ink)

▶ [_signature_]

**6.b.**  Date of Signature (mm/dd/yyyy)  [_____]

**NOTE TO ALL APPLICANTS:**  If you do not completely fill out this application or fail to submit required documents listed in the Instructions, USCIS may deny your application.

## Part 11.  Interpreter's Contact Information, Certification, and Signature

Provide the following information about the interpreter.

### Interpreter's Full Name

**1.a.**  Interpreter's Family Name (Last Name)

[_____]

**1.b.**  Interpreter's Given Name (First Name)

[_____]

**2.**  Interpreter's Business or Organization Name (if any)

[_____]

1Λ19Λ155135Λ10   19Λ6533 ΛΛ4529 12 ΛΛ25824 Λ21219 22:18 Λ21119 AΛS-8Λ5887

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 11. Interpreter's Contact Information, Certification, and Signature (continued)

### Interpreter's Mailing Address

**3.a.** Street Number and Name

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town

**3.d.** State           **3.e.** ZIP Code

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country

### Interpreter's Contact Information

**4.** Interpreter's Daytime Telephone Number

**5.** Interpreter's Mobile Telephone Number (if any)

**6.** Interpreter's Email Address (if any)

### Interpreter's Certification

I certify, under penalty of perjury, that:

I am fluent in English and _____,
which is the same language specified in Part 10., Item Number
1.b., and I have read to this applicant in the identified language
every question and instruction on this application and his or her
answer to every question. The applicant informed me that he or
she understands every instruction, question, and answer on the
application, including the **Applicant's Declaration and
Certification**, and has verified the accuracy of every answer.

### Interpreter's Signature

**7.a.** Interpreter's Signature (sign in ink)

**7.b.** Date of Signature (mm/dd/yyyy)

## Part 12. Contact Information, Declaration, and Signature of the Person Preparing this Application, if Other Than the Applicant

Provide the following information about the preparer.

### Preparer's Full Name

**1.a.** Preparer's Family Name (Last Name)
UGENYI

**1.b.** Preparer's Given Name (First Name)
IHENJI

**2.** Preparer's Business or Organization Name (if any)
Law Office of Michael Nwuba

### Preparer's Mailing Address

**3.a.** Street Number and Name     19 Azalea Court

**3.b.** ☐ Apt. ☐ Ste. ☐ Flr.

**3.c.** City or Town     Staten Island

**3.d.** State  NY     **3.e.** ZIP Code  10309

**3.f.** Province

**3.g.** Postal Code

**3.h.** Country
United States

### Preparer's Contact Information

**4.** Preparer's Daytime Telephone Number
7183446825

**5.** Preparer's Mobile Telephone Number (if any)

**6.** Preparer's Email Address (if any)
ihenjiugenyi@yahoo.com

1 01 801 551 351 0    1806533 004539 12 0035834 031319 22:18 031119 AOS-805887

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 12. Contact Information, Declaration, and Signature of the Person Preparing this Application, if Other Than the Applicant (continued)

### Preparer's Statement

7.a. ☐ I am not an attorney or accredited representative but have prepared this application on behalf of the applicant and with the applicant's consent.

7.b. ☒ I am an attorney or accredited representative and my representation of the applicant in this case
☒ extends ☐ does not extend beyond the preparation of this application.

**NOTE:** If you are an attorney or accredited representative, you may be obliged to submit a completed Form G-28, Notice of Entry of Appearance as Attorney or Accredited Representative, with this application.

### Preparer's Certification

By my signature, I certify, under penalty of perjury, that I prepared this application at the request of the applicant. The applicant then reviewed this completed application and informed me that he or she understands all of the information contained in, and submitted with, his or her application, including the **Applicant's Declaration and Certification**, and that all of this information is complete, true, and correct. I completed this application based only on information that the applicant provided to me or authorized me to obtain or use.

### Preparer's Signature

8.a. Preparer's Signature (sign in ink)

8.b. Date of Signature (mm/dd/yyyy)  | 07 | 07 | 2015 |

**NOTE:** Do not complete Part 13. until the USCIS Officer instructs you to do so at the interview.

### Part 13. Signature at Interview

I swear (affirm) and certify under penalty of perjury under the laws of the United States of America that I know that the contents of this Form I-485, Application to Register Permanent Residence or Adjust Status, subscribed by me, including the corrections made to this application, numbered [          ]

through [          ], are complete, true, and correct. All additional pages submitted by me with this Form I-485, on

numbered pages [          ] through [          ] are complete, true, and correct. All documents submitted at this interview were provided by me and are complete, true, and correct.

Subscribed to and sworn to (affirmed) before me

USCIS Officer's Printed Name or Stamp

Date of Signature (mm/dd/yyyy)

Applicant's Signature (sign in ink)

USCIS Officer's Signature (sign in ink)

A-Number ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

## Part 14. Additional Information

If you need extra space to provide any additional information within this application, use the space below. If you need more space than what is provided, you may make copies of this page to complete and file with this application or attach a separate sheet of paper. Type or print your name and A-Number (if any) at the top of each sheet; indicate the **Page Number, Part Number,** and **Item Number** to which your answer refers; and sign and date each sheet.

**1.a.** Family Name (Last Name)    ATU

**1.b.** Given Name (First Name)    ENDYSEN

**1.c.** Middle Name    AFAMEFUNA

**2.** A-Number (if any) ▶ A- | 2 | 1 | 4 | 4 | 7 | 8 | 8 | 2 | 3 |

**3.a.** Page Number    4

**3.b.** Part Number    3

**3.c.** Item Number    5

**3.d.** 200 HILL DR, ST. MEINRAD, INDIANA 47577, United States

From: 08/01/2012 To: 02/01/2014

**4.a.** Page Number    4

**4.b.** Part Number    3

**4.c.** Item Number    5

**4.d.** 11509 INDIANA SCH ROAD, ALBUQUERQUE, NEW MEXICO 87112, United States

From: 02/01/2014 To: 08/01/2014

**5.a.** Page Number    4

**5.b.** Part Number    3

**5.c.** Item Number    5

**5.d.** 33 PROSPECT HILL RD, CROMWELL, CT 06416, United States

From: 08/01/2014 To: 05/01/2015

**6.a.** Page Number    4

**6.b.** Part Number    3

**6.c.** Item Number    5

**6.d.** 160 22 110TH AVE, JAMAICA, NY, United States

From: 05/01/2015 To: 02/01/2016

**7.a.** Page Number

**7.b.** Part Number

**7.c.** Item Number

**7.d.**

# EXHIBIT C

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| ASC Appointment Notice - APPLICANT COPY | APPLICATION/PETITION/REQUEST NUMBER<br>MSC1990611631 - MSC1990611633 | | NOTICE DATE<br>02/22/2019 |
| --- | --- | --- | --- |
| CASE TYPE<br>I485 - I765 | SOCIAL SECURITY NUMBER | USCIS A#<br>A214 477 823 | CODE<br>5 |
| ACCOUNT NUMBER | TCR | SERVICE CENTER<br>NBC | PAGE<br>1 of 1 |

ENDYSEN AFAMEFUNA ATU
299 BROWNSTONE CIR APT 26
MARIETTA GA 30008



To process your application, petition, or request, the U. S. Citizenship & Immigration Services (USCIS) must capture your biometrics.
**PLEASE APPEAR AT THE BELOW APPLICATION SUPPORT CENTER (ASC) AT THE DATE AND TIME SPECIFIED.**
**IF YOU FAIL TO APPEAR AS SCHEDULED, YOUR APPLICATION, PETITION, OR REQUEST WILL BE CONSIDERED ABANDONED.**

| APPLICATION SUPPORT CENTER<br>USCIS ATLANTA<br>3358B Chamblee Tucker Road<br>Atlanta GA 30341 | PLEASE READ THIS ENTIRE NOTICE CAREFULLY.<br>DATE AND TIME OF APPOINTMENT<br>03/11/2019<br>08:00AM |
| --- | --- |

**WHEN YOU GO TO THE APPLICATION SUPPORT CENTER TO HAVE YOUR BIOMETRICS TAKEN, YOU MUST BRING:**
1. THIS APPOINTMENT NOTICE and
2. PHOTO IDENTIFICATION. Naturalization applicants must bring their Alien Resident Card. All other applicants must bring a passport, driver's license, national ID, military ID, or State-issued photo ID. If you appear without proper identification, you will not be fingerprinted.

CELL PHONES, CAMERAS, OR OTHER RECORDING DEVICES ARE NOT PERMITTED.

NOTE: If the USCIS ASC is closed due to inclement weather or for other unforeseen circumstances, USCIS will automatically reschedule your appointment for the next available appointment date and mail you a notice with the new date and time.

### REQUEST FOR RESCHEDULING

☐  Please reschedule my appointment.  Once USCIS receives your request, you will be sent a new appointment notice. Make a copy of this notice for your records, then mail the original with your request to BPU, Alexandria ASC, Suite 100, 8850 Richmond Hwy, Alexandria, VA 22309-1586

Intertiud
ACTION COMPLETED
APPROVED FOR FILING
LX3.299   3·19·19
Initials:          Date
FCO/Unit
NBCIpal

LX292   3/19/19
NBC

| APPLICATION NUMBER<br>I485 - MSC1990611631 | APPLICATION NUMBER 2<br>I765 - MSC1990611633 |
| --- | --- |

If you have any questions regarding this notice, please call 1-800-375-5283.

**WARNING:** Due to limited seating availability in our lobby area, only persons who are necessary to assist with transportation or completing the biometrics worksheet should accompany you. If you have open wounds or bandages/casts when you appear, the USCIS may reschedule your appointment if it is determined your injuries will interfere with taking your biometrics.

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.          Form I-797C  06/07/19

# EXHIBIT D

July 26, 2019

U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
National Benefits Center
P.O. Box 648004
Lee's Summit, MO 64002



**U.S. Citizenship
and Immigration
Services**



MSC1990611632

SHAQUASA JANEE BOOTHE ATU
c/o IHENJI UGENYI
LAW OFFICE OF MICHAEL NWUBA
19 AZALEA COURT
STATEN ISLAND, NY 10309



A214-477-823

RE: ENDYSEN AFAMEFUNA ATU
I-130, Petition for Alien Relative



## REQUEST FOR EVIDENCE (FORM I-130)

Dear SHAQUASA BOOTHE ATU:

### Why We Are Writing You

On February 11, 2019, you submitted your I-130. We are writing to inform you that we need more information from you to make a decision on your case. Please read this letter carefully and follow all of the instructions below.

### What You Need To Do

You must provide the following information in order for us to make a final decision on your case. **Please include a copy of ALL pages of this letter with your response.**

- Submit proof that all of the previous marriages of the Form I-130 beneficiary, Endysen Atu, have legally ended. Specifically, the divorce decree for the marriage between Endysen Atu and Ametia Sapp.

  Such proof would normally be a final (absolute) divorce decree, death certificate, annulment, etc. For immigration purposes, this evidence must have been registered with the government agency authorized to register such documents.

### When You Need To Do It

You must send the requested information by mail to the address shown below by October 21, 2019.

You must submit all of the requested evidence at one time. If you submit only part of the evidence, we will make a decision based on the evidence that you submit. We will not consider any evidence that is submitted after the due date. If you do not respond to this request by the date shown above, we will deny your case.

If you submit a document in any language other than English, you must provide: (1) a copy of the original document in

Received

OCT 2 1 2019

www.uscis.gov

National Benefits Center

its foreign language; and (2) a full English translation of the document. The translator must certify that the translation is complete and accurate, and that he or she is competent to translate from the foreign language to English.

We strongly recommend you keep a copy of all documents that you submit to USCIS in response to this request.

**Please include a copy of ALL pages of this letter with your response.**

Submit your response with requested document(s), information, etc. to this address:

| Regular Mail | Express Mail or Courier Deliveries |
|---|---|
| U.S. Department of Homeland Security | USCIS, Attention: Adjustment of Status |
| PO Box 648004 | 850 NW Chipman Rd |
| Lee's Summit, MO 64002 | Lee's Summit, MO 64063 |

**Please do not forget to include a copy of ALL pages of this letter with your response.**

Sincerely,

Robert M. Cowan
Director
Officer: LA-2642



# Law Office of Michael Nwuba, Esq.

19 Azalea court●, Staten Island, NY 10309
Phone: 7183446825 ● Fax: 7182285450 ● E-Mail: ihenjiugenyi@yahoo.com

Date: October 18, 2019

## RE RFI DATED JULY 26, 2019

### MSC1990611632  A214-477-823 ENDYSEN A. ATU

Dear Sir/Madam:

In response to the RFE, we submit the following to show that the marriage between Mr. Endysen Afamefuna Atu and Arnetia Sapp was VOID AB INITIO and therefore requiring no action of dissolution.

On May 4, 2002, Mr. Atu entered into a Customary Marriage with Mrs. Uruka Atu in Attakwu, Enugu State, Nigeria. Upon his knowledge of the infidelity of his wife, Mr. Atu left the marital home and never sought for the dissolution of the marriage to Uruka Atu.

He married Ms. Arnetia Sapp on March 8, 2017 without seeking dissolution of the customary marriage because it was not registered. According to customary marriages in Nigeria, a customary marriage need not be registered as long as all rites have been performed and fulfilled and dowry paid.

On July 4, 2018, Mr. Atu's wife obtained dissolution of her marriage to Mr. Atu. As the marriage with Ms. Arnetia Sapp was entered into on March 8, 2017 before the July 4, 2018 dissolution of the Marriage with Uruka Atu, the marriage to Ms. Sapp is VOID right from its onset.

According to SECTION 6, ARTICLE 2 OF THE NYS DOMESTIC RELATIONS LAW (Exh. 1), a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living

Yes, it is void ab initio, which means it never happened because he was legally unable to be married due to the fact that he was already still married. **A marriage that is void is one that is invalid from the time it occurred and will be treated as though it never existed**. (emphasis mine) - *Rashkov v. Rashkov*, 137 Misc. 2d 824.  N.Y. Dom. Rel. Law § 6: "VOID

MARRIAGES -. A is absolutely void if contracted by a person whose husband or wife by a former marriage is living. ."

As decided in Hasna J. v. David N. 39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016) "Under the Domestic Relations Law, a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage, including a valid common-law marriage, is living, unless, generally speaking, such former marriage has been aned or dissolved. **Such marriage is void even though no judgement declaring its invalidity is ever entered** (emphasis mine). Most notably on the topic of void marriages in New York, the Court of Appeals has held "[...] the law of this State denounces as void a marriage by a person whose husband or wife by a former marriage is living." Landsman v. Landsman, 302 N.Y. 45, 48, 96 N.E.2d 81 [1950]; see Domestic Relations Law, § 6; see also Lipschutz v. Kiderman, 76 A.D.3d 178, 905 N.Y.S.2d 247, [2d Dept.2010]."

As can be seen by both statutory provision as well as case law, Mr. Atu's marriage to Ms. Sapp was void ab initio, in other words, from its inception, because there was still a valid marriage to Ms. Uruka Atu. As case law also revealed, there is no need to seek a court declaration or judgment of nullity.

I have included the copies of the statue as well as the case laws: Landsman v. landsman (Exh. 2), Hasna J. v. David N. (Exh. 3), Kleinfield v. Veruki (Exh. 4), and Rashkov v. Rashkov (Exh. 5) that support and restates this ground of law.

Sincerely,

Ihenji Ugenyi, Esq.
Law Office Michael Nwuba

The Laws Of New York (/ ;ISLATION/LAWS/ALL) / Cons ated Laws (/LEGISLATION/LAWS/CONSOLIDATED) / Domestic Relations (/LEGISLATION/LAWS/DOM) / Article 2: Marriages (/LEGISLATION/LAWS/DOM/A2) /

PREV
SECTION 5
Incestuous And Void Marriages
(/Legislation/Laws/DOM/5/)

NEXT
SECTION 7
Voidable Marriages (/Legislation/Laws/DOM/7/)

# Section 6

Void marriages

**Domestic Relations (DOM)**

SHARE



A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either:

1. Such former marriage has been annulled or has been dissolved for a cause other than the adultery of such person; provided, that if such former marriage has been dissolved for the cause of the adultery of such person, he or she may marry again in the cases provided for in section eight of this chapter and such subsequent marriage shall be valid;

3. Such former marriage has been dissolved pursuant to section seven-a of this chapter.

Exh. 1

Court of Appeals of the State of New York

# Landsman v. Landsman

302 N.Y. 45 (N.Y. 1950) · 96 N.E.2d 81
Decided Nov 30, 1950

LOUGHRAN, Ch. J.

The parties went through a marriage ceremony at a time when the defendant already had a husband. To be sure, she had previously obtained a decree annulling her earlier marriage but that decree had not yet become final when she tried to marry the plaintiff. On these facts, he here demanded a judgment that would declare his union with her to be a nullity.

In her answer herein, she charged him with having deceived her by false representations in respect of the effectiveness of *48 her interlocutory decree. On that basis, she demanded a judgment (1) dismissing his complaint in this annulment action; (2) separating her from his bed and board forever upon the ground of his abandonment of her; (3) awarding her alimony; and (4) permitting her to recover moneys which she claimed she had lent to him. Trial Term dismissed the complaint, separated the plaintiff from the defendant, directed him to pay her $20 each week for her support during her natural life plus $60 of arrears of temporary alimony, but dismissed her claim for money lent.

Cross appeals were taken by the parties to the Appellate Division where the judgment of Trial Term was in all respects affirmed. Then the plaintiff brought to us for review the parts of that judgment which are adverse to him. Since the defendant is content with the affirmance by the Appellate Division, her action for money lent is no longer of any importance.

With exceptions that are here without application, the law of this State denounces as void a marriage by a person whose husband or wife by a former marriage is living. (Domestic Relations Law, § 6.) Thus the attempted marriage here in question was wholly without validity from its beginning; it created neither right nor duty; it gave neither scope for recrimination nor room for any counteractive estoppel. Hence there could be no offense against it and, that being so, the plaintiff was free to bring this annulment action though he did not come to the court with clean hands. Hence, too, the defendant — though she may have acted in good faith — has no right to the judgment of separation that was awarded to her by the courts below ( *Fischer v. Fischer*, 254 N.Y. 463, 466). This result, we think, is dictated by the statute for reasons that can be readily seen.

The judgment of the Appellate Division and that of the Trial Term should be reversed, without costs, and the action remitted to Trial Term for further proceedings not inconsistent with this opinion.

LEWIS, CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Judgment accordingly.

*49

Supreme Court, Kings County, New York.

# Hasna J. v. David N.

39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)  ·  53 Misc. 3d 1142  ·  2016 N.Y. Slip Op. 26317

Decided Sep 28, 2016

JEFFREY S. SUNSHINE, J.

701 *701 Borstein Turkel, P.C., Avram Solomon Turkel, Esq., New York, Attorney for the Plaintiff.

James R. Lambert, Esq. Staten Island, Attorney for the Defendant.

Francine Scotto, Esq., Staten Island, Attorney for the Child.

1143 JEFFREY S. SUNSHINE, J.*1143 The question before the Court is whether the parties in the case at bar had the "justified expectations" that they were married in 2014 when they participated in a religious ceremony but did not obtain a marriage license. The defendant alleges that he was married 702 in 1987, prior to the *702 alleged marriage between plaintiff and defendant, and still is married to another individual with whom he has six (6) children. The plaintiff in a sworn affidavit from a presently pending Family Court proceeding, the same proceeding which she requests to consolidate to the Supreme Court, admits that she was aware of the defendant's prior marriage and attempts to put forth a contrary position in commencing these proceedings in Supreme Court. This Court must determine whether under New York law, without obtaining a marriage license, both parties had a "justified expectation" that as a result of the ceremony they were actually married.

## Procedural History

On May 12, 2016, the Plaintiff moved by emergency order to show cause [motion sequence # 1] requesting the following relief: (1) ordering removal to this Court and consolidation of the corresponding Family Court, Richmond County

matter; (2) ordering a stay of the Family Court, Richmond County Matter; (3) directing that the Plaintiff have temporary custody of the parties' infant or otherwise ordering an expedited hearing on custody; (4) restraining and enjoining Defendant and his attorney, agents, heirs or assigns or anyone acting in concert from transferring, removing, dissipating, encumbering or hypothecating any assets subject to equitable distribution pending the determination of the underlying matrimonial action; (5) directing the Defendant to pay for all health-related expenses, including but not limited to, the costs of medical, dental, and optical insurance and the cost of unreimbursed medical, dental, therapy, optical and pharmaceutical expenses of the parties' child; (6) awarding the Plaintiff temporary counsel fees in the sum of twenty-five thousand ($25,000.00) dollars; (7) ordering an immediate preliminary conference; and (8) awarding the Plaintiff such other, further, and different relief as to the Court may seem just, proper, and equitable.

On May 12, 2016 this Court signed the plaintiff's order to show cause and selected an adjournment date with all counsel, but struck plaintiff's *ex-parte* 1144 relief requested in motion sequence # 1. *1144 On June 17, 2016, the Defendant filed an affirmation in opposition to the Plaintiff's order to show cause as well as a cross-motion [motion sequence # 2] requesting the following relief: (1) dismissal of this action; (2) denial of all other relief and maintenance of the custody action in Richmond County Family Court, provided this Court does not dismiss the action; (3) change of venue of the Plaintiff's order to show cause [motion sequence # 1] from this Court to Richmond County Family

Exh. 3

Hasna J. v. David N.   39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)

Court, provided this Court does not dismiss the action or immediately enter judgment; (4) awarding the counsel fees to the Defendant; and (5) awarding the Defendant such other, further and different relief as is just, proper, and equitable. The Defendant's order to show cause [motion sequence # 2] was held in the Court on June 24, 2016.

On June 24, 2016, the Attorney for the child submitted an affirmation in opposition to the Plaintiff's order to show cause. On June 24, 2016, the Plaintiff submitted an affirmation in opposition to the Defendant's cross motion and in reply to the Plaintiff's order to show cause. This Court heard oral argument on the plaintiff's motion and defendant's cross motion on June 24, 2016.

There is one child at issue in this matter, A.N., born December 2014. It is not disputed that the parties in this action are the parents of this child. The plaintiff in this Kings County Supreme Court action commenced a separate action for custody and child support on April 29, 2015 in Family *703 Court, Richmond County. An attorney *703 for the child, Francine Scotto, Esq., was appointed in that proceeding regarding custody and visitation who also appeared and opposed plaintiff's application.[1] A temporary order of custody was issued by the Referee in Family Court on June 9, 2015 granting temporary custody of the subject child to the father. As of the date of this writing there are both Family Court and Criminal Court proceedings ongoing in Richmond County.

> [1] Originally appointed in Family Court, Richmond County. For purposes of this application the Court will appoint Ms. Scotto as the Attorney for the Child, pursuant to Part 36 of the Rules of the Chief Judge, *nunc pro tunc.*

## Validity of Parties' Marriage

As a threshold issue it is necessary for the Court to determine the validity of the parties' alleged marriage. The Court's determination of the validity of the alleged marriage is paramount because if *1145 the Court determines that the alleged *1145 marriage is not valid, the inquiry would cease. However, if the Court were to find that the marriage was valid, the Court would then be required to determine whether the marriage was void.[2] Even if the Court were to determine the parties' alleged marriage were void, under New York law the plaintiff would be entitled to seek certain economic relief in Supreme Court; namely spousal maintenance, equitable distribution and counsel fees (*see DeLyra v. DeLyra,* 141 A.D.2d 75, 79 532 N.Y.S.2d 899 [2d Dept. 1988] ); order aff'd, 74 N.Y.2d 872, 547 N.Y.S.2d 830, 547 N.E.2d 85 (1989).

> [2] Under the Domestic Relations Law, a marriage is absolutely void if contracted by a person whose husband or wife by a former marriage, including a valid common-law marriage, is living, unless, generally speaking, such former marriage has been aned or dissolved. Such a marriage is void even though no judgment declaring its invalidity is ever entered. Most notably on the topic of void marriages in New York, the Court of Appeals has held "[...] the law of this State denounces as void a marriage by a person whose husband or wife by a former marriage is living." *Landsman v. Londsman,* 302 N.Y. 45, 48, 96 N.E.2d 81 [1950] ; *see* Domestic Relations Law, § 6 ; *see also Lipschutz v. Kiderman,* 76 A.D.3d 178, 905 N.Y.S.2d 247, [2d Dept.2010]."

## Parties Contentions
## The Plaintiff's Affirmation

The Plaintiff contends that she and the Defendant were married in a religious ceremony on October 4, 2014. According to the Plaintiff, she and the

caseset

Hasna J. v. David N.    39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)

Defendant were married in the presence of the Imam and witnesses.[3] The Plaintiff avers that the Defendant paid "the traditional Islamic dowry" to the Plaintiff and that after the October 4, 2014 wedding the two shared a residency.

> [3] Plaintiff's counsel annexes a Certificate of Nikah granted by the Tri–State Islamic Center signed by two witnesses dated October 4, 2014 which includes the names of the plaintiff (bride) and defendant (groom) as exhibit 8 to motion sequence # 1.

The Plaintiff argues in this Supreme Court proceeding that she did not know of the Defendant's alleged previous marriage at the time of the October 4, 2014 ceremony. In early 2015, the Plaintiff contends that she received a call from a woman who claimed that she was married to the Defendant and resided with the Defendant. The Plaintiff avers that after the phone call, she confronted the Defendant and he explained that he was already married at the time of the October 4, 2014 ceremony. The Plaintiff argues that she then requested that the Defendant leave their shared residency and that he complied.

The Plaintiff avers that shortly after the Defendant left their shared residence, she commenced an *1146 action in Family Court *1146 of Richmond County 704 dated June 9, 2015. *704 The Plaintiff commenced a divorce action in Kings County on April 6, 2016. The Plaintiff contends that her previous counsel did not advise her that she could commence a divorce action.

## The Defendant's Opposition and Affirmation

Counsel for the Defendant requests that this Court dismiss the instant action for lack of jurisdiction as the relationship between the parties was an extra-marital affair resulting in a pregnancy. Counsel for the Defendant submits an alleged marriage certificate[4] and wedding photo from the purported wedding in 1987 (both of which include a woman who is not the plaintiff) and argues that the defendant and his wife have six (6) children together. He contends that plaintiff "is speciously alleging the existence of a marriage even though she knows that not to be the case, in order to facilitate her attempt to remove her custody case from Richmond County Family Court." He argues that she wants a "do-ver," and is essentially forum shopping after receiving a less than favorable decision from Family Court.

> [4] The translated marriage certificate indicates that the Defendant's alleged marriage was June 24, 1987, and took place in the Jerusalem Court.

The Defendant argues that the Plaintiff became pregnant "on purpose" with the intent of trapping him into a relationship with her and/ or for financial reasons.[5] Counsel for the Defendant avers that Plaintiff knew before the October 4, 2014 ceremony that the Defendant was married to another woman. The Defendant contends that he and the Plaintiff neither intended to get legally married nor did either party believe they were married to each other. The Defendant contends he and the Plaintiff met the Imam the day of the alleged wedding ceremony and that the plaintiff discussed the marriage certificate with the Imam, and was told that the certificate was not a legal document and would have no legal effect. The Defendant contends that the Imam has agreed to give him an affidavit attesting that the certificate was not legally binding. The Defendant argues that the two obtained a "marriage certificate" to please the Plaintiff's parents were coming to the United States. The Defendant contends that the Plaintiff told him that her father would disown her if her father knew she was unmarried and *1147 pregnant.*1147 The Defendant contends that the Plaintiff admits in her verified complaint in the instant Supreme Court action dated March 25, 2016, that no legal civil marriage was entered into,

Hasna J. v. David N.   39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)

and no legal civil marriage exists. Counsel for the Defendant contends that the Plaintiff's affidavit submitted to the Family Court in June 9, 2015 is in contradiction with the affidavit submitted to this Court in the instant case. Significantly, in the proceeding in Family Court, which the plaintiff commenced, in an affidavit dated June 9, 2015, the Plaintiff stated that "she and the Defendant were engaged in a relationship during which the Defendant led her to believe that he was in the midst of a divorce proceeding and that until the divorce was finalized, the two would only be able to be married by a religious institution and not by the state." Counsel for the Defendant contends that the Plaintiff sent text messages to the Defendant which indicate that the Plaintiff was aware that the Defendant was married to another woman. The Defendant contends that the Plaintiff's sister was also aware that the Defendant was married prior to the parties' wedding in 2014. In an email dated 705 January 9, 2014, *705 the Plaintiff's oldest sister sent an email to the Defendant, inquiring as to whether the Defendant's divorce was in process. The Defendant avers that " there was nothing at all other than the plaintiff and [him] going to the mosque and explaining to the Imam that she needed some kind of document to show her father so he didn't disown her." The Defendant contends that the Imam gave the parties a certificate specifically advising that it was not legally binding because the two had no marriage license and the Defendant was already married to another women.

[5] The Defendant contends that the Plaintiff had told him she was using birth control.

Counsel for the Defendant contends that the instant claim "is an attempt to perpetuate a fraud upon this Court." Counsel for the Defendant doubts the veracity of the Plaintiff's statement that both of the Plaintiff's prior counsel did not advise her that she could file for divorce. Counsel for the Defendant contends that the plaintiff has a history

of fraudulent behavior and is speciously alleging the existence of a marriage in order to remove her custody case from Richmond County Family Court.[6] Counsel for the Defendant contends "[t]hat she knows she is not legally married is illustrated 1148 by the fact that she filed a *1148 Family Court custody case, and a separate child support case, in Richmond county more than a year ago."

[6] [7] The Plaintiff was arrested in June 2015 and charged with: (1) making a punishable false written statement and (2) falsely reporting.

[7]

The Defendant's sister submitted an affidavit dated June 15, 2016. His sister contends that the Plaintiff is lying about not knowing that the Defendant was married before October 4, 2014. She contends that she spoke with the Plaintiff on or about March 2014, in an effort for the Plaintiff to discontinue her relationship with the Defendant since he was a married man with a wife and six children. The manager of the restaurant owned by the Defendant, also submitted an affidavit dated June 14, 2016 in which she alleges that the Plaintiff was aware that the Defendant was married before October 4, 2014. She contends that she and the Plaintiff had many conversations regarding the Plaintiff's marriage, wife, and children. The store owner avers that the Plaintiff has called the restaurant, even before the Plaintiff was pregnant, in order to inquire whether the Defendant's wife had come by or called the restaurant.

Counsel for the Defendant contends that even if the Court does find that the parties were married, the Court should enter judgment immediately and deny all ancillary relief. The Defendant avers that any purported marriage could have only been a duration of a few months as the parties appearance

at the Mosque was in October of 2014 and the Order of Protection against the Defendant was obtained in April 2015.

## The Plaintiff's Reply and Opposition

Counsel for the Plaintiff again contends that the Parties were lawfully married in 2014. Counsel contends that New York's enforcement of religious marriages specifically protects women in the Plaintiff's position who reasonably rely on the legitimacy of their religious practices. The Plaintiff again contends that she did not file for divorce originally because her prior counsel did not advise her that she could do so.

Counsel for the Plaintiff contends that the Defendant does not dispute the occasion of the marriage ceremony at the mosque nor the marriage certificate. Counsel avers that the Defendant does not dispute that the parties went to a mosque of the Defendant's choosing and at his discretion. The Plaintiff avers that the Defendant does not dispute that there was a marriage ceremony at the mosque. The Plaintiff contends that the Defendant asked her father for his blessing for the wedding and that the Plaintiff's father gave his blessing already knowing that the Plaintiff was 706 pregnant. The Plaintiff contends that the *706 two planned a larger wedding ceremony in Morocco during summer 2015.

The Plaintiff again denies that she was aware of the defendant's alleged prior marriage at the time 1149 of the October 4, 2014 *1149 ceremony.[8] The Plaintiff contends that the Defendant did not tell her that he was married to another before their alleged marriage. However, the Plaintiff contends that the Defendant had told her that he had two (2) children and that he shared a residence with his mother.

[8] With reference to the affidavit dated June 9, 2015, counsel for the Plaintiff contends that the affidavit was incorrect as to this point and her previous counsel was mistaken. With reference to the August 2015 text messages, counsel contends that the text messages were sent after she discovered that the Defendant had an alleged wife. The Plaintiff avers that she did know that her sister believed that the Defendant was married and was not told that her sister was emailing the Defendant in 2014.

Counsel for the plaintiff contends that the two parties had an extensive relationship and already lived with each other for many months at the time of marriage. The Plaintiff contends that the Defendant had been staying with her in 2013 at her former apartment in Staten Island.

[9] The Plaintiff contends that she erred in her previous affidavit on this point.

Counsel for the plaintiff avers that the two parties were engaged on June 3, 2014 and that the baby was to be delivered approximately two (2) months after the marriage. The Plaintiff contends that she became engaged to and then pregnant by the Defendant. The Plaintiff avers that she and the Defendant moved to a bigger house together and bought furniture. The Plaintiff contends that the two jointly rented the house and had credit cards under both of their names.

The Plaintiff contends that after she gave birth, she received a call from the Defendant's alleged wife. The Plaintiff contends that the alleged wife threatened to kill her if she did not leave the Defendant. She avers that she confronted the Defendant and she contends that the Defendant told her that he was married to her but he was allowed to have multiple wives. She contends that at this point, she asked the Defendant to vacate their shared residency.

The Plaintiff requests that if the Court determines that the Defendant was already married, the Court should not enter immediate judgment as counsel contends that the Defendant demonstrates no

Hasna J. v. David N.   39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)

prima facie entitlement to judgment as a matter of law. Counsel avers that the Defendant provides no evidence unequivocally demonstrating that he was already married at the time of his marriage to the Plaintiff, such as a verified marriage license. 1150 Counsel for the Plaintiff avers that *1150 he doubts the authenticity of the proposed Jordan marriage certificate.

During oral argument the Court participated in the following colloquy on the record with plaintiff's counsel:

> THE COURT: Is it your position that your client was married to this defendant before he was married to his present wife?
>
> COUNSEL: I don't know. I've seen a document just now from counsel which purports to be a marriage license and a translation of the same, a marriage certificate.
>
> THE COURT: I'm talking about his present wife.
>
> COUNSEL: I don't know.
>
> THE COURT: You don't know? She believes that she is his first wife?
>
> COUNSEL: She believes it's possible.

707    *707 THE COURT: She's prepared to state under oath today that she believes that she is his first wife?

> COUNSEL: She is prepared to say she was married in a religious ceremony.
>
> THE COURT: That is not my question.
>
> COUNSEL: Well, she doesn't know if she is his first wife, which is why she brought the action in the alternative, your honor.
>
> THE COURT: Thank you.

The attorney for the child takes no position in regards to the validity of the parties' marriage but is opposed to removal and consolidation. The Court reserved decision after hearing oral argument on June 24, 2016.

## Discussion

As a threshold matter the Court must determine whether the parties entered into a valid marriage in 2014 despite the parties not obtaining a marriage license. In New York, while the Domestic Relations Law deems it necessary for all persons intending to be married to obtain a marriage license (see Domestic Relations Law § 13 ), a marriage is not void for the failure to obtain a marriage license if the marriage is solemnized (see Domestic Relations Law § 25 ). The Appellate Division, Second Department's decision in *Matter of Farraj* analyzed the validity of a couple's marriage in which the parties participated in a "formal religious ceremony," but a marriage 1151 license was never obtained. *1151 In *Farraj*, the petitioner [...] and decedent participated in a formal marriage ceremony in accordance with Islamic law in 2003, at the home of the petitioner's brother in Clifton, New Jersey. Prior to the marriage ceremony, the decedent was a resident of New York and the petitioner lived at her brother's residence in New Jersey. An Imam (Islamic clergyman) came from New York to New Jersey to solemnize the marriage. However, a marriage

license was not obtained. [...] The decedent and the petitioner lived together in New York until the decedent's death in July 2007. The decedent died intestate and Letters of Administration were issued to the appellant, the decedent's son from a prior marriage. Subsequently, the petitioner filed a petition to compel an accounting of the decedent's estate. The appellant moved to dismiss the petition pursuant to CPLR 3211(a)(3) on the ground that the petitioner lacked standing as a surviving spouse, since her marriage to the decedent was invalid under New Jersey Law. (*Matter of Farraj*, 72 A.D.3d 1082, 1083, 900 N.Y.S.2d 340 [2d Dept.2010] ).

In *Farraj*, the Surrogate's Court, Kings County held that New York law should be applied as New York had the "most significant relationship to the spouses and the marriage." The Surrogates Court held that despite the couple not procuring a valid marriage license, the marriage itself was valid in New York because "[t]he petitioner and the decedent had a justified expectation that they were married since they participated in a formal marriage ceremony in accordance with Islamic law" (*Farraj*, 72 A.D.3d at 1084, 900 N.Y.S.2d 340 ). The Court went on to further define their "justified expectation," stating the couple "believed themselves married, had an expectation that they were married, and believed that their marriage ceremony had resulted in a valid marriage." The Appellate Division, Second Department, affirmed that "[t]he petitioner and the decedent had a justified expectation that they were married since they participated in a formal marriage ceremony in accordance with Islamic law." (*Farraj*, 72 A.D.3d at 1084, 900 N.Y.S.2d 340 ).

The relevant facts relating to the marriage 708 ceremony in the case at bar analogize *708 with those in *Farraj* (without the necessity of determining whether to apply New York or New Jersey law) as the parties were allegedly married in 2014 in a religious ceremony, which was overseen by an Imam and a valid marriage license

was never obtained. However, in the *Farraj* matter the Court found that the parties had a "justified 1152 expectation" *1152 that their marriage was valid. In the case at bar the question of whether the parties had a "justified expectation" that the parties were married is in dispute.

The plaintiff argues, as stated above, that she genuinely believed she and the defendant were married in 2014. She contends that she was not aware of the defendant's prior marriage before the 2014 ceremony. She proffers evidence of a religious marriage certificate dated October 4, 2014 and claims the parties lived together briefly before and after the birth of their child before separating.

The defendant disputes the plaintiff's position and argues that the parties understood that they could not be legally married because they were both aware that he was already married to another individual. He contends that the parties never intended to be "legally" married, but only went through with the marriage ceremony to "mislead the plaintiff's father." The defendant annexes a 1987 marriage certificate from "The Hashemite Kingdom of Jordan" which has been translated into the English language and indicates the date of marriage between the defendant and a third party as June 24, 1987. Defendant also points out that the plaintiff, in her own complaint filed to commence this proceeding, dated March 25, 2016, on line 9 indicates that "the parties did not obtain a civil marriage license." At oral argument defendant's counsel indicated that defendant's alleged first wife was in the courtroom and would have testified if necessary as to their marriage and includes an affidavit from his "first wife" in which she states that she and the defendant were "married in 1987," "are still married" and live in New Jersey and "have six children together, ages 27–7."

The defendant also provides to the Court a sworn affidavit of the plaintiff from the Family Court proceeding, dated June 9, 2015, in which the

plaintiff states "*Respondent and I were engaged in a relationship, during which Respondent led me to believe that he was in midst of a divorce proceeding, and that until the divorce was finalized, we were only able to be married by a religious institution and not by the State.* " [Emphasis added by the Court]. When confronted 1154 by the defendant's evidence of this sworn affidavit from the Richmond County Family Court proceedings by the Court during oral argument her attorney's response regarding her client's position was "[the plaintiff] says that was a mistake. That her lawyer put it in there."

The Court is concerned by the allegations set forth by the plaintiff, most significantly that of her 1153 potentially forum- *1153 shopping and attempting to utilize the Supreme Court to redress the rulings of the Family Court and the position taken by the Attorney for the Child in Family Court. The plaintiff's position in this matter is that she was wholly unaware of the defendant's prior marriage and that she believed the couple were married up until hearing from the defendant's wife after the 2014 ceremony. Even if the Court were to find said claim credible, under the doctrine of Judicial Estoppel the plaintiff is estopped from making this argument. Plaintiff is judicially estopped from taking an adverse or inconsistent position on this issue simply because her interests have changed (*see Karasik v. Bird,* 104 A.D.2d 758, 480 N.Y.S.2d 491 [1d Dept.1984] ; *see*

709 *709 also Anonymous v. Anonymous, formal religious ceremony* 137 A.D.2d 739, 524 N.Y.S.2d 823 [2d Dept.1988] ; *Tilles Inv. Co. v. Town of Oyster Bay,* 207 A.D.2d 393, 615 N.Y.S.2d 895 [2d Dept.1994] ). Judicial estoppel is intended to avoid abuse of the judicial system by preventing a party from obtaining a benefit by taking one position and then asserting a contrary position in the same, or a subsequent proceeding (*see D & L Holdings, LLC v. RCG Goldman Co. LLC.,* 287 A.D.2d 65, 734 N.Y.S.2d 25 [2d Dept.2001] ; *see also Maas v. Cornell Univ.,* 253 A.D.2d 1, 683 N.Y.S.2d 634 [3d Dept.1999] ). The plaintiff, in a

sworn affidavit, admitted she knew the parties could not be legally married and that she was aware of the defendant's prior marriage. This position taken by the plaintiff in the Family Court proceeding is wholly contrary to that which she purports in the case at bar.[10] As such, the Court finds that the plaintiff is judicially estopped from arguing she was unaware of the defendant's *1154 prior marriage and as such did not have a "justified expectation" that their 2014 marriage was valid. If the Court were to allow the plaintiff to essentially change her story, despite her prior inconsistent statement, it would open the door to a cascade of matrimonial cases, especially those that are consolidated from Family Court, where prior sworn documents and hearings are rendered moot.

---

[10] The facts of this case can be distinguished from those in the recent Appellate Division, Second Department case of *Canzona v. Canzona,* 142 A.D.3d 1030, 38 N.Y.S.3d 42 (2d Dept.2016). The relevant facts from *Canzona* are as follows: The plaintiff in a later matrimonial action argued that the defendant was judicially estopped from seeking an award of maintenance because she previously filed two separate bankruptcy petitions which alleged in part, that she was not entitled to any alimony, maintenance or support payments. The Appellate Division, Second Department held that the "defendant was not judicially estopped from seeking maintenance because the parties were still married at the time the bankruptcy petitions were filed and the defendant was not required to list any possible future rights to maintenance payments in the bankruptcy petitions, which were filed years before the judgment of divorce was issued." *Id.* In the case at bar, a matrimonial action commenced by the plaintiff, the prior proceeding in which the plaintiff made a contrary sworn statement was a Family Court custody proceeding. While the plaintiff was not required to comment on the validity of the parties

Hasna J. v. David N.    39 N.Y.S.3d 701 (N.Y. Sup. Ct. 2016)

marriage in the Family Court proceeding, her admission relating to the validity of the parties' marriage was certainly within the scope of the custody proceeding as to determining the child's pedigree. While an individual may not be judicially estopped from making a statement regarding maintenance in a bankruptcy petition as it relates to a later matrimonial matter, this Court believes that an individual that makes an admission in a Family Court custody matter (that she commenced) is not prejudiced if she is then judicially estopped from taking a contrary position in a related matrimonial matter where she seeks to consolidate the Family Court proceedings into Supreme Court.

Therefore, based upon the Court's finding that the parties did not have a "justified expectation" that they were married and in turn did not get legally married, the Court denies plaintiff's motion to stay and consolidate the Richmond County Family Court action based upon the lack of subject matter jurisdiction. As such the Court's inquiry in this matter is concluded and does not need to analyze whether the alleged marriage was void or whether the plaintiff is entitled to economic relief.

The fact remains that the parties have been litigating this matter in Richmond County Family Court for over a year, the subject child has been appointed an attorney, the assigned referee is wholly familiar with the facts and circumstances of this case and has issued a number of orders currently in effect. Both the defendant and the attorney for the child oppose the consolidation. It 710 is clear from both the *710 submissions and both

the *ex parte* applications and the argument on the record on June 24, 2016 of the instant order to show cause that the plaintiff is seeking redress for decisions and order issued in Family Court and using this Court in an attempt at forum shopping based upon her admitted dissatisfaction with the Family Court proceeding and the position taken by the attorney for the child. The Court notes that it generally favors consolidation of Family Court actions for judicial efficiency, but it cannot operate as an Appellate Court by allowing the plaintiff another bite at the apple with a new Attorney for the Child in a new county, especially where the plaintiff is judicially estopped from proceeding with this divorce action.

The relief requested by the plaintiff herein is denied for the reasons stated herein. The Family Court matter shall continue and as a result of this 1155 Court's decision, the action is dismissed *1155 based upon the doctrine of Judicial Estoppel. The defendant asserts it was never his intention to have a recognizable marriage under New York law, and the plaintiff, based upon her statements in Family Court is judicially estopped from taking a contrary position. Under New York law, without obtaining a marriage license, both parties need to have a "justified expectation" that as a result of the ceremony they were actually married. Clearly the defendant did not as he was previously married to another individual with whom he has six (6) children and by plaintiff's own admission in Family Court plaintiff knew he was married and not divorced as well.

casetext

45819 No. 0812-87-2
Court of Appeals of Virginia

# Kleinfield v. Veruki

7 Va. App. 183 (Va. Ct. App. 1988)   ·   372 S.E.2d 407
Decided Sep 20, 1988

## SUMMARY

Wife appealed the judgment of the circuit court that denied spousal support on the ground that her marriage to her husband was bigamous. Husband appealed the judgment of the court, alleging that the trial court erred in awarding attorney's fees and in awarding *pendente lite* support (Circuit Court of the City of Charlottesville, Herbert Pickford, Judge).

The Court of Appeals affirmed, holding that the trial court correctly found that the parties' marriage was void; thus, there was no jurisdiction to award spousal support. The Court also held that the trial court did not abuse its discretion in awarding *pendente lite* support and attorney's fees.

*Affirmed.*

## OPINION

MOON, J.

Wendy L. Kleinfield seeks reversal of a judgment which denied her spousal support on the ground that her marriage to Peter Veruki was bigamous. Because Kleinfield was a party to a voidable marriage that had not been annulled when she married Veruki, we affirm the trial court's decision. Peter Veruki also appeals from the judgment entered and alleges that the trial court erroneously awarded attorney's fees and erroneously failed to provide restitution for *pendente lite* spousal support paid prior to

judgment. Because the trial judge did not abuse his discretion, we also affirm his decision to award attorney's fees and *pendente lite* spousal support.

On November 26, 1983, Wendy Kleinfield and Peter Veruki married in New York City. Three years later, after the couple had moved to Charlottesville, Virginia, Kleinfield filed a complaint for divorce based on desertion. The trial judge ordered $800 per month *pendente lite* support pursuant to Code Sec. 20-103. Thereafter, Veruki answered Kleinfield's bill and asserted that no valid marriage between them ever existed because Kleinfield was already married to a William Ricardo Garcia.

185  Kleinfield filed an amended bill of complaint alleging adultery and arguing that her marriage to Garcia was void *ab initio* as *185 opposed to merely voidable because she married Garcia, an alien, for the sole purpose of allowing him to obtain naturalized citizen status in the United States. These marriages are frequently referred to as "green card marriages" because of the color of the document the alien receives from the Immigration and Naturalization Services (INS) as evidence of legitimate status. Veruki argued that although the marriage may have been entered into solely for the purpose of allowing Garcia to obtain citizenship, the marriage to Garcia was still valid on the date he and Kleinfield married because no court had ever annulled it.

The trial judge decided that the Kleinfield and Garcia marriage was only *voidable* and not *void*. Hence, because no court had ever voided the marriage between Kleinfield and Garcia, the trial

court ruled that Kleinfield's and Veruki's marriage was a bigamous one. Applying Virginia law, the court determined that since the marriage to Veruki was invalid, Kleinfield could not maintain an action for spousal support or equitable distribution. However, the trial court did award attorney's fees of $1,500 to Kleinfield and refused to order reimbursement to Veruki for the *pendente lite* spousal support which he had been required to pay.

The evidence showed that Kleinfield married Garcia for $1,500 on June 7, 1976, in New Jersey solely to insure that Garcia would attain naturalized citizen status in the United States. The couple never lived together as husband and wife. After the marriage, they represented to the INS that they were married, and Garcia applied for citizenship. Two years later, Kleinfield became apprehensive because the INS was proceeding so slowly in approving Garcia's application for citizenship. Therefore, she withdrew the application from the INS and asserted that she had married Garcia solely for the purpose of allowing him to obtain naturalized status. Neither Kleinfield nor Garcia ever secured a judgment which annulled their marriage.

Before her 1983 marriage to Veruki, and in order to obtain her marriage license, Kleinfield swore to a New York City clerk that she had never been married before. Veruki testified that after their marriage, he found documents in Kleinfield's files which led him to suspect that she had been married before. He claimed that Kleinfield never told him before they were married that she had undertaken the 1976 sham marriage with Garcia. Conversely, Kleinfield testified that she had told Veruki early on in their *186 courtship about the circumstances of her marriage to Garcia. The trial judge made no specific finding of fact as to when each individual had been honest with the other; however, he did note that both parties appeared to have been deceptive with and suspicious of each other.

(1) In our analysis, we are concerned with the validity of two marriages: first, Kleinfield's New Jersey marriage to Garcia; and second, Kleinfield's New York marriage to Veruki. A marriage's validity is to be determined by the law of the state where the marriage took place, unless the result would be repugnant to Virginia public policy. *Toler v. Oakwood Smokeless Coal Corp.,* 173 Va. 425, 430, 4 S.E.2d 364, 368-69 (1939).

(2) A marriage entered into prior to the dissolution of an earlier marriage of one of the parties is a void marriage in New York, *Sophian v. Sophian,* 279 A.D. 651, 108 N.Y.S.2d 185 (1951), and Virginia. *See* Code Sections 20-38.1 and 20-45.1(a). A void marriage, unlike a voidable marriage, does not require an action of annulment to render it void. Without obtaining an annulment, a party to a void marriage is free to marry again. Conversely, a party to a voidable marriage must obtain an annulment, or any subsequent marriage is bigamous. Therefore, if Kleinfield's marriage to Garcia was not void, but merely voidable, then the marriage to Veruki was bigamous and could not support an action for spousal support and equitable distribution. *Toler,* 173 Va. at 435, 4 S.E.2d at 368. Thus, we must decide whether Kleinfield's previous marriage to Garcia was void or voidable.

Accordingly, we turn to whether New Jersey law considers the Garcia marriage void *ab initio,* or merely voidable. A void marriage under New Jersey law generally does not require a judicial determination to set it aside. A void marriage may not be ratified and may be attacked, either collaterally or directly, either before or after the death of the parties. *Flaxman v. Flaxman,* 57 N.J. 458, 461, 273 A.2d 567, 569 (1980). In New Jersey, when two parties have entered into a voidable marriage, the marriage remains valid until a decree of nullification is entered. *Ysern v. Horter,* 94 N.J. Eq. 135, 118 A. 774 (Ch. 1922). Therefore, the voidable marriage renders each party incapable of marrying a third party without committing bigamy.

187 *187 No New Jersey court has specifically determined whether a green card marriage is void or voidable or requires court action to annul it. We begin our analysis by scrutinizing the plain language of N.J. Stat. Ann. Sec. 2A:34-1 (West 1987). The statutory section provides in pertinent part:

Judgments of nullity of marriage may be rendered in all cases, when:

a. Either of the parties has another wife or husband living at the time of a second or other marriage.

b. The parties are within the degrees prohibited by law. If any such marriage shall not have been annulled during the lifetime of the parties the validity thereof shall not be inquired into after the death of either party.

\* \* \* \*

c. The parties, or either of them, were at the time of marriage physically or incurably impotent, provided the party making the application shall have been cognizant of such impotency or incapability at the time of the marriage, and has not subsequently ratified the marriage.

d. The parties, or either of them, lacked capacity to marry due to want of understanding because of mental condition, or the influence of intoxicants, drugs or similar agents; or where there was a lack of mutual assent to the marital relationship; duress or fraud as to the essentials of marriage; and have not subsequently ratified the marriage.

e. The demand for such a judgment is by the wife or husband who was under the age of 18 years at the time of the marriage, unless such marriage be confirmed by her or him after arriving at such age.

188 *188 f. Allowable under the general equity jurisdiction of the Superior Court.

Without expressly determining the void/voidability question, the New Jersey Supreme Court has held that a green card marriage falls within the ambit of subsection (d). *Faustin v.*

*Lewis,* 85 N.J. 507, 427 A.2d 1105 (1980). Because subsection (d) authorizes nullity judgments in circumstances where the parties lacked genuine consent *and have not subsequently ratified the marriage,* we believe that in New Jersey green card marriages must be merely voidable and not void *ab initio.* For, if the parties can subsequently ratify the marriage and give it legal effect, the marriage could not have been void from its commencement.

Thus, for example, subsection (a) authorizes judgments of nullity in all cases of bigamy and does not permit the marriage to be subsequently ratified. The New Jersey legislature recognized that since bigamous marriages were void from their inception, ratification could not subsequently render them legally effective. In his dissent in *Faustin v. Lewis,* 85 N.J. 507, 516, 427 A.2d 1105, 1109 (1980) (where the majority did not discuss the void/voidable dichotomy to reach its holding), Justice Pashman recognized that green card marriages were merely voidable because they could subsequently be ratified by the parties.

Kleinfield relies upon the case of *Ramshardt v. Ballardini,* 129 N.J. Super. 445, 324 A.2d 69 (1974). Ramshardt married Ballardini to prevent her deportation. They never intended to live as husband and wife and, after the marriage, Ramshardt notified the INS that the marriage was fraudulent. Ramshardt then brought an action to have the marriage annulled. The Superior Court Chancery Division determined that because the parties lacked the requisite mutual consent under N.J. Stat. Ann. Sec. 2A:34-1(d) to enter a genuine marriage, the marriage may be deemed void. The court further found that the equitable doctrine of "unclean hands" did not bar Ramshardt from relief because he had subsequently withdrawn the application from the INS. Kleinfield argues that her situation is directly apposite to the factual pattern in Ballardini and concludes that her marriage to Garcia was void from its inception.

189 •189 We do not believe that *Ballardini* provides dispositive authority which binds us under the facts at bar. We are not persuaded that the phrase "may be deemed void" was intended to be a declaration that at its inception the marriage was void rather than voidable. Moreover, if the phrase was intended to address the void/voidable distinction it was mere dictum. Under the court's reasoning, the marriage would have been annulled whether it was void from its inception or merely voidable. We must choose, therefore, between the dictum and ambiguous language expressed in a lower court's opinion and Justice Pashman's cogent statutory analysis in *Faustin*.

The issue before the court in *Faustin* was "the extent to which the equitable doctrine of unclean hands should have continued application to annulment proceedings." 85 N.J. at 508, 427 A.2d at 1105. We believe that it is important to note that Justice Pashman "agree[d] with most of the majority opinion and especially with the majority's rejection of . . . [t]he rule that unclean hands is a *per se* bar to an action for annulment . . ., leaving discretion with the courts to apply the doctrine only in appropriate cases." *Id.* at 513-14, 427 A.2d at 1108. Justice Pashman disagreed only with "the way the majority exercise[d] discretion under the facts of [that] case and with the result . . . ultimately reach[ed]." *Id.* In stating how he would exercise discretion on the facts of that case, Justice Pashman discussed N.J. Stat. Ann. Sec. 2A:34-1(d) as it relates to the void/voidable distinction. We conclude that the portion of Justice Pashman's dissent which interprets N.J. Stat. Ann. Sec. 2A:34-1(d), a topic not discussed by the *Faustin* majority and not controlling its decision, is not at odds with the majority opinion and provides a basis upon which we can conclude that under New Jersey law Kleinfield's marriage to Garcia was voidable. Her subsequent marriage to Veruki is thus bigamous and void.

Kleinfield also asserts that Veruki should be estopped to claim that her prior marriage to Garcia was not void. The trial court found that Kleinfield could not rely upon estoppel because she, more than Veruki, knew the true facts concerning the Garcia marriage. Although Veruki admitted becoming suspicious concerning the Garcia marriage while still living with Kleinfield, he denied knowing that the marriage had not been annulled until this divorce action was filed. Thus, we find that the trial court's decision that no estoppel had been proven was not plainly wrong.

190 •190 (3) Furthermore, even where one acts in good faith, a bigamous marriage is void and it confers no legal rights to the parties. It is "contrary to the laws of Virginia and public policy." *Chitwood v. Prudential Life Ins. Co. of America*, 206 Va. 314, 317, 143 S.E.2d 915, 918 (1965); *see also Toler*, 173 Va. at 435, 4 S.E.2d at 368-69. Only "upon decreeing the dissolution of a marriage" do the courts of Virginia have jurisdiction to award spousal support or equitable distribution. Code Sections 20-107.1 and 20-107.3. Since the marriage to Veruki was void and, thus, there was no marriage, the trial court had no authority to award spousal support or make an equitable distribution award. There is no authority for the parties by their actions outside of the law to invest the courts with power to treat a relationship as a lawful marriage.

(4) Next, we turn to Veruki's question as to whether the trial judge abused his discretion in not ordering a refusal of *pendente lite* support and allowing counsel fees to Kleinfield after deciding that her marriage to Veruki was void. In *Henderson v. Henderson*, 187 Va. 121, 46 S.E.2d 10 (1948), the court held that even if the marriage was void, the award of support and maintenance was within the discretion of the trial judge, noting that the statute, now Code Sec. 20-103 made no distinction between suits for annulment and divorce. Code Sec. 20-103 provides:

The court . . . may, at any time pending the suit, in the discretion of such court or judge, make any order that may be proper to compel a spouse to

Klein v. Veruki   372 S.E.2d 407 (Va. Ct. Ap   )88)

pay any such sums necessary for the maintenance and support of the petitioning spouse and to enable such spouse to carry on the suit.

191 Under the facts and circumstances of the case, we cannot find that the trial judge abused his discretion by the award of *pendente lite* support and attorney's fees.

Therefore, the decree appealed from is affirmed.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.

*191

casetext

Supreme Court, Nassau County

# Rashkov v. Rashkov

137 Misc. 2d 824 (N.Y. Misc. 1987)  ·  522 N.Y.S.2d 782
Decided Nov 25, 1987

RALPH DIAMOND, J.

The application by the plaintiff for an order granting her summary judgment as to the cause of action contained in the complaint herein seeking the declaration of the nullity of a void marriage and the defendant's cross motion seeking an order granting him leave to serve an amended answer including a counterclaim for divorce on the grounds of adultery raise what appears to be an issue of first impression, to wit: is equitable distribution of marital assets pursuant to Domestic Relations Law § 236 (B) (5) applicable in a proceeding to declare the nullity of a void marriage?

## FACTS

The parties herein were married on November 28, 1980 in Las Vegas, Nevada. There is one issue of this marriage, Kristin Rashkov, born July 12, 1985. On November 29, 1979, the plaintiff wife, Anne K. Rashkov, married Konstantin Karatzikos in Queens, New York. By verified complaint sworn to on September 3, 1987, the plaintiff wife seeks a judgment declaring the marriage between the parties herein to be a nullity and void on the basis that she was legally married to Konstantin Karatzikos on the date she was married to the defendant, Rashko Rashkov. By verified answer and counterclaim sworn to on September 18, 1987, the defendant husband also seeks a judgment declaring the marriage of the parties herein a nullity and void on the basis that at the time

826 of the parties' marriage, the plaintiff Anne K. Rashkov was married *826 to Konstantin Karatzikos. By notice of motion originally returnable October 23, 1987, the plaintiff wife seeks summary judgment on her action seeking a judgment declaring the marriage between the parties to be a nullity and void. By notice of cross motion, the defendant husband seeks an order granting him leave to serve an amended answer with a second counterclaim alleging adultery as grounds for a divorce. He also seeks to amend his answer to add equitable distribution as part of the relief sought on his counterclaims. Additionally, the defendant husband has made application for court-ordered discovery. The defendant husband's proposed counterclaim recites that upon information and belief, commencing on or about August 1987, at unknown times and places in Nassau County, the plaintiff wife has committed adultery.

## DEFENDANT'S ARGUMENTS

The defendant husband opposes plaintiff wife's motion for summary judgment on the basis that he believes that Konstantin Karatzikos is available to testify in court. The defendant husband does not, however, contest plaintiff wife's assertion that she was married to Mr. Karatzikos when she married the defendant. The defendant husband also cites the prohibition against granting reverse summary judgment to a nonmoving party set forth in CPLR 3212 (e) as grounds for denial of plaintiff wife's application for summary judgment.

Regarding the issue of disposition of the parties' assets, the defendant husband contends that pursuant to Domestic Relations Law § 236 (B) (2) an action to declare the nullity of a void marriage is a matrimonial proceeding and that the statutory provisions regarding equitable distribution of marital assets are applicable.

## PLAINTIFF'S ARGUMENTS

The plaintiff wife's reply urges the court to deny the defendant husband's application for leave to serve an amended answer and to grant her summary judgment. The plaintiff wife contends that while equitable distribution is available in the context of a proceeding to annul a voidable marriage, equitable distribution is not applicable in an action to declare the nullity of a void marriage. Plaintiff wife contends that the defendant husband is now seeking to interpose a counterclaim for divorce solely for the purpose of obtaining equitable distribution.

827 *827 ISSUES

(a) Is the wife entitled to summary judgment as to her cause of action seeking a declaration that her marriage to the defendant is a nullity and void?

(b) Does the Domestic Relations Law in the State of New York direct a court, upon the declaration that a marriage is a nullity and void, to provide for the equitable distribution of the parties' assets according to promulgated statutory standards?

## CONCLUSIONS OF LAW

Both parties have heretofore executed verified pleadings which state that the plaintiff wife was legally married to another man on the date of the purported marriage of the parties herein. The defendant has raised no issue of fact which requires a hearing as to the status of the parties' marriage. A marriage entered into while one party is married to a third party is void *ab initio*. No judicial declaration is required to free a party from a void marriage although statutory procedures are available to obtain a declaration that a marriage is a nullity and void. (*Landsman v Landsman*, 302 N.Y. 45; *Brodlieb v Brodlieb*, 32 Misc.2d 347; *Maiorana v. Salerno*, 133 N.Y.S.2d 521; *Ray v. Ray*, 193 Misc. 131.) The prohibition against reverse summary judgment is not relevant particularly in view of the fact a judicial declaration is not even a prerequisite to the termination of the relationship of these parties as husband and wife. The plaintiff wife is entitled to summary judgment declaring the marriage of the parties void *ab initio*. As the purported marriage herein is declared void *ab initio*, the defendant husband's application for leave to interpose a counterclaim of adultery is denied.

Having determined that the plaintiff wife is entitled to summary judgment declaring the marriage a nullity and void *ab initio*, the court must address the issue as to whether or not the court must equitably distribute the parties' assets according to statutory standards.

Domestic Relations Law § 236 (B) (2), entitled "Matrimonial actions", provides that "[e]xcept as provided in subdivision five of this part, the provisions of this part shall be applicable to actions for an annulment or dissolution of a marriage, for a divorce, for a separation, *for a declaration of the nullity of a void marriage*, for
828 a declaration of the validity or nullity of a foreign judgment of divorce, for a *declaration of *828 the validity or nullity of a marriage * * *  commenced on and after the effective date of this part*" (emphasis added). It is clear that an action to declare the nullity of a void marriage is a matrimonial action as defined by this section. (*See, Stimpfle-Jones v Jones*, 124 A.D.2d 869; *Brandt v Brandt*, NYLJ, Nov. 19, 1987, at 30, col 3.)

Domestic Relations Law § 236 (B) (6) (a) empowers a court to award temporary maintenance and maintenance in *any* matrimonial proceeding. Domestic Relations Law § 236 (B) (7) (a) empowers the court to direct payment of temporary child support and child support in *any* matrimonial proceeding. Domestic Relations Law § 236 (B) (8) empowers the court to direct a party to maintain health and life insurance in *any* matrimonial action. It is clear that the court has discretion, as justice requires, to award maintenance, child support and make

provision for insurance coverage in an action to declare the nullity of a void marriage. (Neither party herein seeks an award of maintenance in the context of these proceedings. As maintenance is a statutory right unknown at common law, maintenance may only be granted when specifically authorized by statute. *[Querze v Querze,* 290 N.Y. 13, *mot to amend remittitur denied* 290 N.Y. 765.] Domestic Relations Law § 236 [A] has been interpreted to permit a court, in its discretion, under appropriate circumstances, to award permanent maintenance upon granting a judgment declaring a marriage to be void *ab initio. [Zeitlan v Zeitlan,* 31 A.D.2d 955, *affd* 26 N.Y.2d 835, *rearg denied* 27 N.Y.2d 670.] Under Domestic Relations Law § 236 [B] an award of maintenance would be within the court's discretion upon declaration of the nullity of a void marriage.)

Domestic Relations Law § 236 (B) (5) (a), "Distribution of property in *certain* matrimonial actions" (emphasis added), which provides for equitable distribution of marital property, is not, however, applicable to all matrimonial proceedings. This statute provides that in an action wherein all or part of the relief granted is divorce, or dissolution, annulment *or declaration of the nullity of a marriage,* the court shall determine the respective rights of the parties in their separate or marital property and shall provide for the disposition thereof in the final judgment. Actions for separation, actions to declare the nullity of a foreign judgment of divorce and actions to declare the nullity of a void marriage are not included as matrimonial actions in which equitable

829  distribution of marital property is available. It is clear that it is not \*829 appropriate for a court to equitably distribute marital assets in an action for separation as the marital relationship is not being terminated. If a foreign judgment of divorce is declared a nullity, the effect would be to declare the parties validly married, so that it would not be appropriate for a court to direct distribution of the parties' property. Similarly, distribution of property would be improper in the context of an action to declare the nullity of a void marriage. If the action is denied, the parties are validly married; if the action is granted, not only were the parties never married, but one party may, in fact, still be legally married to a third person. The exclusion of an action for the declaration of the nullity of a void marriage from Domestic Relations Law § 236 (B) was not an "oversight" on the part of the Legislature, but rather evinces a clear legislative intent that actions for the declaration of the nullity of a void marriage as well as separation actions and actions for the declaration of the nullity of a foreign judgment of divorce not be subject to equitable distribution of marital assets.

A voidable marriage is void only from the date that the marriage is declared a nullity by a court of competent jurisdiction. (Domestic Relations Law § 7; *Nakoneczna v Eisenberg,* 60 A.D.2d 403.) A marriage occurring prior to dissolution of a previous marriage is however void *ab initio. (Landsman v Landsman,* 302 N.Y. 45, *supra.)* In the context of certain proceedings to declare the nullity of a voidable marriage, a valid marriage exists until such time as the nullity of the marriage is declared and marital property is acquired from the date of the marriage until the date of the declaration of the nullity of the marriage by a court of competent jurisdiction. A marriage which is void from its inception due to the existence of a previous marriage is void from the date of the purported marriage. As a valid marital relationship never existed, there is no "marital property" subject to equitable distribution. While an action for the declaration of the nullity of a void marriage is clearly defined as a matrimonial action pursuant to Domestic Relations Law § 236 (B) (2), it is uncontrovertible that equitable distribution of marital assets is available only in *certain* matrimonial actions and that an action for the declaration of the nullity of a void marriage was specifically excluded as an action in which equitable

830  distribution was applicable. Further, as equitable distribution, like \*830 maintenance, is a statutory right, not based in common law, the statute providing for equitable distribution must be strictly construed and the provisions of the equitable distribution statute may be applied by the court only in the specific actions set forth in the statute. *(But see, Brandt v Brandt,* NYLJ, Nov. 19, 1987, at 30, col 5, *supra,* wherein the court infers that

equitable distribution could apply in an action to declare the nullity of a void marriage, but notes that the Legislature has set forth no standards to calculate, evaluate or distribute the property of parties to a marriage declared void *ab initio.)*

The court notes that pursuant to Domestic Relations Law § 236 (B) (3) an agreement making provision for ownership, division and distribution of the parties' property is enforceable in a matrimonial action. The decision herein is without prejudice to the parties' right to enter into such an agreement and is further without prejudice to the parties' right to pursue any and all other claims or causes of action they may have in an appropriate forum in regard to jointly held or individually owned assets.

The ancillary issues of custody, child support and visitation are still outstanding and as regards child support, both sides are entitled to full financial disclosure.

Domestic Relations Law § 236 (B) (4) (a) provides that there *shall be* compulsory disclosure by both parties of their respective financial status in *all matrimonial actions and proceedings* in which alimony, maintenance or support is an issue. As child support is an issue which must be determined by the court, compulsory financial disclosure is required in this proceeding.

ORDER OF THE COURT

Based upon the foregoing findings of fact and conclusions of law, it is hereby

Ordered, that the marriage of the parties herein entered into on November 28, 1980 in Las Vegas, Nevada, is declared null and void *ab initio,* and it is further,

Ordered, that the cross motion by the defendant husband for an order granting him leave to serve an amended answer with a counterclaim for divorce based upon grounds of adultery and with an amended prayer for relief seeking equitable distribution of marital assets is denied, and it is further,

831  *831 Ordered, that both parties are entitled to full financial disclosure on the issue of support for the child, Kristin, and it is further,

Ordered, that this action shall be calendared for a preliminary conference on November 25, 1987 at 11:00 A.M. for the purpose of scheduling court-ordered financial disclosure.

832  *832

 casetext

4

EXHIBIT E

**Natalie Griggs**

| | |
|---|---|
| **From:** | afam mba <afammba@yahoo.com> |
| **Sent:** | Friday, February 17, 2023 1:48 PM |
| **To:** | Natalie Griggs |
| **Subject:** | Senator Warnock |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

[EXTERNAL]

Spry, Charles (Warnock) <charles_spry@warnock.senate.gov>
To:Benjamin Atu
Thu, Apr 8, 2021 at 10:42 AM
Please see below response from USCIS-NYC, according to our liaison the case is still under review.
Take Care,
Charles Spry
Senator Raphael Warnock

Response:

Good day,
Re: Endysen Atu


The United States Citizenship and Immigration Services (USCIS) is committed to adjudicating immigration benefits in a timely, efficient manner that ensures public safety and national security.
Toward that end, USCIS requires extensive background checks for every application or petition it adjudicates.   While background checks for most applications or petitions are completed quickly, a small percentage of cases involve unresolved background check issues that result in adjudication delays.

Background checks involve more than just the initial submission of and response related to biographical information and fingerprints.   When checks and/or a review of an administrative record reveal an issue potentially impacting an applicant's eligibility for the requested immigration benefit, further inquiry is needed.  The inquiry may include an additional interview and/or the need to contact another agency for updates or more comprehensive information.  If it is determined that an outside agency possesses relevant information about a case, USCIS requests such information for review. Upon gathering and assessing all available information, USCIS then adjudicate the application as expeditiously as possible.

Please be advised that we have researched the status of your constituent's case, I-485 Permanent Residence/Adjust Status, A214477823.

We have checked into your constituent's case and have been assured that the agency is aware of your inquiry, and is monitoring progress related to it.  However, unresolved issues in your constituent's case require thorough review before a decision can be rendered.  Unfortunately, we cannot speculate as to when this review process will be completed.

We realize that your constituent may feel frustrated by delays related to his or her case.  As an agency, we must weigh individual inconvenience against the broader concerns of public safety and national security.

Congressional Liaison
New York City Field Office
DHS / USCIS

- 
- 
- 
-

# EXHIBIT F



An official website of the United States government
Here's how you know



U.S. Citizenship
and Immigration
Services

Español   ⊕ Multilingual Resources

MENU

# Case Status Online

## Response To USCIS' Request For Evidence Was Received

On October 22, 2019, we received your response to our Request for Evidence for your Form I-130,
Petition for Alien Relative, Receipt Number MSC1990611632. USCIS has begun working on your case
again. We will send you a decision or notify you if we need something from you. If you move, go to
www.uscis.gov/addresschange to give us your new mailing address.

Enter Another Receipt Number   ❓

```
EAC1234567890
```

Check Status

Already have an Account? Login

Create an Account? Sign up

DHS PRIVACY NOTICE

## Related Tools