**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

Case No. _____

LIFEBRITE LABORATORIES, LLC; and
CHRISTIAN FLETCHER

      Plaintiffs,

v.

BLUE CROSS AND BLUE SHIELD OF
FLORIDA, INC. d/b/a FLORIDA BLUE;
BLUE CROSS BLUE SHIELD HEALTHCARE
PLAN OF GEORGIA, INC.; THE ELEVANCE
HEALTH COMPANIES, INC. f/k/a ANTHEM
INSURANCE COMPANIES, INC.;
UNITEDHEALTH GROUP INCORPORATED,
and CVS HEALTH CORPORATION d/b/a
AETNA,

      Defendants.

_____/

Removed from the State Court
of Gwinnett County

Case No. 23-C-05058-S7

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1442(a)(1), Defendant BlueCross

BlueShield Healthcare Plan of Georgia, Inc. ("BCBSGA") removes this matter from the State

Court of Gwinnett County, State of Georgia, to the United States District Court for the Northern

District of Georgia. BCBSGA, by and through its undersigned attorneys, respectfully submits the

following grounds for removing this action:

     Plaintiffs LifeBrite Laboratories, LLC ("LifeBrite") and Christian Fletcher ("Fletcher")

filed this action on July 20, 2023, in the State Court of the Seventeenth Judicial Circuit in and for

Gwinnett County, Georgia, Case No. 23-C-05058-S7 naming BCBSGA as one of several

defendants (the "State Court Action").

As explained below, removal of the State Court Action is proper under 28 U.S.C. § 1442(a)(1) because this is a civil suit against a "person acting under" federal officers or agencies. Federal Officer Removal is appropriate because BCBSGA acted under color of federal office at the request and direction of the U.S. Office of Personnel Management ("OPM"), a federal agency, and pursuant to obligations under a federal contract which delegated to BCBSGA OPM's duties to prevent, detect, and investigate fraud, waste, and abuse related to the administration of health plans for federal employees, retirees, and their spouses and dependents; Plaintiffs have sued BCBSGA for actions BCBSGA took pursuant to obligations from OPM; and BCBSGA has colorable federal defenses to Plaintiffs' claims.

## **INTRODUCTION**

In this civil action, Plaintiffs seek the incredible: to hold BCBSGA and its co-defendants liable for their cooperation with the ***federal government's criminal investigation*** into Plaintiffs' laboratory services and the related billing practices of rural hospitals doing business with Plaintiffs and their co-defendants. A Grand Jury and the U.S. Attorneys' office alleged that such conduct amounted to healthcare fraud, including with respect to federal monies (as discussed more fully below), and the case went to trial – twice. Many of Fletcher's co-defendants were ***found guilty*** on or ***pled guilty*** to such charges, and while the jury in the first trial could not reach a unanimous decision as to the charges the Government brought against Fletcher, the Court found probable cause for the claims against Fletcher. Nonetheless, Plaintiffs now contend that BCBSGA's and its co-defendants' conduct was actionable; such contentions are meritless, and because they challenge BCBSGA's conduct as a federal officer, removal to this Court is proper.

## BACKGROUND

**A.     Nature of the Removed Action.**

1.      As alleged in the Government's Superseding Indictment of Fletcher and his co-defendants, and in Plaintiffs' Complaint, in 2014 Fletcher founded LifeBrite, a clinical testing laboratory in the Atlanta, Georgia area. Compl., attached as Ex. 1, ¶¶ 18-19; Superseding Indictment in *United States v. Perez*, No. 3:20-CR-86 (M.D. Fla. Oct. 7, 2020), ECF No. 180, attached as Ex. 2, ¶ 37(a)-(b).

2.      According to the Government, to obtain payment for laboratory services, the rural hospitals, or their designees, submitted claims to commercial insurers, including BCBSGA, for tests performed at LifeBrite, a Georgia laboratory affiliated with Fletcher, or other independent laboratories owned or controlled by the defendants in the criminal matter, using rural hospitals' Tax Identification Number and National Provider Identification numbers, which yielded reimbursement at "significantly higher rates" than if the tests had been billed by the laboratories that performed the tests. Ex. 2, Superseding Indictment ¶¶ 7, 35-37.

3.      From approximately 2015 through August 2016, the commercial insurers paid the rural hospitals millions of dollars for laboratory tests. Ex. 1, Compl. ¶ 64.

4.      Among other actions, including in response to federal Grand Jury Subpoenas, BCBSGA and other commercial insurers provided certain information to the U.S. Government related to the U.S. Government's investigation as to whether Fletcher and LifeBrite were engaged in healthcare fraud. *Id.* ¶¶ 79-81, 93.

5.      Plaintiffs contend that this investigation by federal law enforcement, with the support of the defendants pursuant to obligations under a federal contract, amounted to an improper conspiracy. *Id.* ¶¶ 65-66.

6.      In June 2020, a federal Grand Jury in the Middle District of Florida indicted Fletcher and his co-defendants for crimes related to fraudulently billing BCBSGA and other companies for laboratory tests.  *See Id*. ¶¶ 5, 68.[1]

7.      On October 7, 2020, the Grand Jury filed a Superseding Indictment against Fletcher and certain of his criminal co-defendants, perfecting those allegations and alleging that the defendants, among other things, performed tests at laboratories owned or operated by his criminal co-defendants, but billed for them through certain rural hospitals "to take advantage of [those hospitals'] in-network contracts, under which the Rural Hospitals were reimbursed at significantly higher rates than the out-of-network, independent laboratories where most of the testing took place." *See* Ex. 2, ¶ 37(l).

8.      On April 21, 2022, Nestor Rojas, one of Fletcher's criminal co-defendants, pleaded guilty to one count of Conspiracy to Commit Health Care Fraud and Wire Fraud. *See id*., *United States v. Perez*, No. 3:20-CR-86, ECF No. 575.

9.      In the first trial, Fletcher's co-defendants, Jorge Perez and Ricardo Perez, were convicted on multiple counts, including for health care fraud. *See id.*, No. 3:20-CR-86, ECF Nos. 768-769. While the jury hung as to Fletcher and certain other co-defendants, the Court ruled there was probable cause for all the claims asserted and denied Plaintiffs' Rule 29 motion. *See id*., ECF Nos. 866.

10.      On July 18, 2022, the Government filed a Notice of Intention to Retry All Counts on Which the Jury Did Not Reach a Verdict, including as to Fletcher. *See id*., ECF No. 814.

---

[1] This Notice of Removal recites some of Plaintiffs' allegations (whether or not well pled or plausible) as background for the Court's convenience and without waiver of BCBSGA's right to dispute Plaintiffs' allegations.

11.     On January 5, 2023, Fletcher's co-defendant James F. Porter, Jr. pleaded guilty to one count of Conspiracy to Commit Health Care Fraud. *See id*., ECF No. 904.

12.     On January 5, 2023, Fletcher's co-defendant Sean Porter pleaded guilty to one count of Conspiracy to Commit Money Laundering. *See id*., ECF No. 905.

13.     The Government proceeded with a second trial against Fletcher, as well as three other of his criminal co-defendants. The jury acquitted all four defendants, including Fletcher. *See id*., ECF Nos. 1005-1008.

14.     With respect to many of the benefit claims at issue in the criminal matter, BCBSGA—acting as a contractor for OPM—received claims for laboratory tests submitted on behalf of independent laboratories owned or controlled by the defendants in the criminal matter. Ex. 1, Compl. ¶¶ 49, 51, 53, 117-126.

15.     Plaintiffs now bring various claims causes of action against BCBSGA: malicious prosecution; conspiracy to maliciously prosecute; aiding and abetting malicious prosecution; Georgia RICO; tortious interference with contractual relations; tortious interference with business relations; fraudulent scheme; and defamation.

16.     Plaintiffs' claims hinge on their conclusory allegations that BCBSGA and other national insurers all provided false documents and false information to federal law enforcement agents and prosecutors, false testimony to a federal grand jury, and false trial testimony. *Id.* ¶ 65.

17.     Plaintiffs allege that the Defendants provided the purportedly false information to avoid paying health benefit claims that were otherwise payable. *See Id.* ¶ 64 ("[b]ecause Defendants did not see a clear legal path to deny further payments under existing contracts, Defendants conspired with each other to wrongfully withhold payment of tens of millions of dollars owed to the rural hospitals and to destroy LifeBrite and others involved in the programs.");

¶ 71 ("Defendants realized from a review of the rural hospital contracts that there was no clear legal path to deny laboratory testing claims under those contracts" and so Defendants "searched for a way to 'stop the bleeding'").

**B.    The Allegations in the Complaint Implicate BCBSGA's Performance Under Its Contracts with OPM.**

18.    OPM administers the Federal Employees Health Benefits Program ("FEHBP"), through which the government provides medical benefits and services to federal employees, retirees, and eligible spouses and dependents. *See* Federal Employees Health Benefits Act (the "Act"), 5 U.S.C. § 8901, *et seq.*; 5 C.F.R. § 890.101, *et seq.*

19.    Under the Act, OPM is permitted to contract with private health insurance "carriers" to administer FEHBP plans and carry out OPM's duties in their respective localities. 5 U.S.C. § 8902(a); *see also Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 90 (2017).

20.    The nationwide Service Benefit Plan is one such plan. It is governed by the Act and created in 1960 by a federal government contract between OPM and the Blue Cross and Blue Shield Association ("BCBSA"). *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 682 (2006). That contract is restated periodically in the "OPM-BCBSA Contract," with the two most recent versions being 2013 and 2022. *See* 2013 OPM-BCBSA Contract (Declaration of Brendan G. Stuhan ("Stuhan Decl."), attached as Ex. 3, at Ex. A) [hereinafter "2013 OPM-BCBSA Contract"]; 2022 OPM-BCBSA Contract (Stuhan Decl., Ex. B); *see also, e.g.,* 2016 Statement of Benefits for the Service Benefit Plan at 5 (Stuhan Decl., Ex. O). In other years, the contract has been renewed on an annual basis through contract amendments. *See, e.g.* Stuhan Decl. ¶ 6; 2016 Amendment to Contract CS 1039 (Stuhan Decl., Ex. E); *see also* Stuhan Decl., Exs. C-D, F-K.

21.    BCBSA is the "carrier" of the Service Benefit Plan. Stuhan Decl. ¶ 4. In contracting to establish the Service Benefit Plan, BCBSA acts on behalf of local Blue Cross and Blue Shield

companies for the administration of the Service Benefit Plan in their respective localities. *Id.* BCBSGA is such a company and administers the Service Benefit Plan in Georgia. *Id.*; *see also*, 2016 Statement of Benefits at 4 (Stuhan Decl. Ex. O); 2021 Statement of Benefits at 4 (Stuhan Decl., Ex. T); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015); *Brady v. Brady*, No. 19-cv-1268, 2019 WL 3206871, at *2 (M.D. Fla. July 16, 2019).

22.     Under the Act, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich*, 804 F.3d at 1092. All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Unlike commercial insurers, carriers of experience-rated FEHBA plans – such as the Service Benefit Plan (*see, e.g.*, 2013 OPM-BCBSA Contract § 3.3(a)) – do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury. Instead, the premiums for the Service Benefit Plan are placed into a special letter of credit account within the U.S. Treasury fund. 48 C.F.R. § 1632.170(b)(1); *see also id.* § 1652.232-71(d). The Blue Cross and Blue Shield companies administering the Service Benefit Plan, such as BCBSGA, then draw directly from the letter of credit account in the U.S. Treasury fund to pay for benefit claims and allowable administrative expenses. 48 C.F.R. §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092. Any unused funds in the Treasury account remain the property of the government. *Helfrich*, 804 F.3d at 1092; 2023 OPM-BCVSA Contract § 3.3. An experience-rated carrier's profit, if any, comes from a separate, negotiated service charge. *See Nat'l Ass'n of Postal Supervisors v. United States*, 21 Cl. Ct. 310, 315 (1990) ("The service charge is the only profit element . . . [an experience-rated] carrier may not make a profit on the premium charges themselves."), *aff'd*, 944 F.2d 859 (Fed. Cir. 1991); *see also* 48 C.F.R. § 1615.404-4; *Helfrich*, 804 F.3d at 1092.

23.    Under FEHBA, OPM is vested with sole authority to contract for the provision of health plans, to determine the benefit structure of each plan, and to promulgate the official description of a plan's terms in a "Statement of Benefits" (sometimes referred to as a "brochure"). *See* 5 U.S.C. §§ 8902(a), (d), 8907. The Statement of Benefits is incorporated into the government contract between OPM and BCBSA. *See* 2013 OPM-BCBSA Contract § 2.2(a); *Empire*, 547 U.S. at 684. The Statement of Benefits is given to enrollees and is publicly available online. *See* Stuhan Decl. ¶ 7.

24.    Relevant to this case, certain of the independent laboratories owned or controlled by the defendants in the criminal matter had laboratory testing service claims submitted on their behalf to BCBSGA (and other health insurance payors) for patients who were enrolled in the Service Benefit Plan through BCBSA's contracts with OPM. *See* Declaration of Wesley Foister ("Foister Decl."), attached as Ex. 4; Compl. ¶¶ 49, 51-53.

25.    The Act, the regulations implementing it, and the relevant contractual provisions set forth a comprehensive framework for the supervision and administration of FEHBP plans, including the Service Benefit Plan.

26.    For instance, Congress delegated solely to OPM the authority to police the conduct and practices of FEHBP carriers, and the agency has promulgated extensive regulations on the topic. *See* 5 U.S.C. §§ 8902I, 8910, 8913(a); 48 C.F.R. Ch. 16; *see also Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 42-43 (D.D.C. 1996); *Kight v. Kaiser Found. Health Plans of Mid-Atl. States, Inc.*, 34 F. Supp. 2d 334, 342 (E.D. Va. 1999).

27.    Moreover, BCBSGA, as a contractor, ***had a legal obligation*** to report to the U.S. Government any suspected fraudulent billing practices (***which reporting now forms the basis of Plaintiffs' civil action***). For example, federal regulations require that the following clause be

inserted into all FEHBP contracts: "The Carrier agrees to notify OPM of any Significant Event," which includes "[a]ny fraud, embezzlement or misappropriation of FEHB funds," "within ten (10) working days after the Carrier becomes aware of it.  As used in this section, a Significant Event is any occurrence or anticipated occurrence that might reasonably be expected to have a material effect upon the Carrier's ability to meet its obligations under this contract." 48 C.F.R. § 1652.222-70(a)(12). And that provision is in the 2013 OPM-BCBSA Contract under which BCBSGA operated at all relevant times. *See* 2013 OPM-BCBSA Contract, Section 1.10(a).

28.    Moreover, BCBSGA has a contractual obligation to OPM to "[c]onduct a program to assess the vulnerability to fraud and abuse and shall operate a system designed to detect and eliminate fraud and abuse . . . by providers providing goods and services to FEHB Members, and by individual FEHB members." *Id.*, 2013 OPM-BCBSA Contract, Section 1.9(a).

29.    In addition, OPM periodically issues guidance to FEHBP carriers through "carrier letters" that address specific topics.

30.    For instance, in December 2014, the OPM issued a carrier letter clarifying BCBSGA's (and other FEHBA administrators') obligation to "prevent, detect, investigate, and report FEHB" fraud, waste, and abuse, or "FWA." *See* Ex. 5, OPM, FEHB Program Carrier Letter 2014-29 (Dec. 19, 2014).[2] Section II of that carrier letter requires, among other things, that FEHB participants, like BCBSGA, "[c]onduct investigations of FWA allegations referred by internal plan sources . . . or external sources (i.e. fraud hotlines, health care task forces, law enforcement liaison, OPM referrals, OIG data requests, etc.)." *Id.* at Section II.1.b. It also requires carriers such as BCBSGA to "provide liaison and investigative support to OPM-OIG, other law enforcement agencies, and personnel upon request.  Investigative support may include, but is not limited to the

---

[2] Available at www.opm.gov/healthcare-insurance/healthcare/carriers/2014/2014-29.pdf

following: providing claims data analysis, professional medical review, medical policy guidelines, provider contracting agreements, hard copy claims, explanation of benefits, and copies of cashed checks (considered *substantial support* for the Fraud and Abuse Annual Report, item: OPM-OIG Reported Recoveries - Substantial Support). *Id.* at Section II.3.

31.     By way of another example, in November of 2017, OPM issued another carrier letter. Communicating more "requirements to prevent, detect, investigate, and report Federal Employee Health Benefits related Fraud, Waste, and Abuse," Section II of that letter reiterates FEHBA administrators such as BCBSGA's obligation to "[d]evelop programs to prevent, detect, and identify persons and organizations involved in suspicious claim activity." Ex. 6, OPM, FEHB Program Carrier Letter No. 2017-13 (Nov. 20, 2017).[3] It likewise requires participants such as BCBSGA to "[c]onduct investigations of FWA allegations referred by internal plan sources . . . or external sources (i.e. fraud hotlines, health care task forces, law enforcement liaison, OPM referrals, OIG data requests, etc.), and . . . Provide liaison and investigative support to OPM-OIG, other law enforcement agencies, and personnel upon request. Investigative support may include, but is not limited to the following: providing claims data analysis, professional medical review, medical policy guidelines, provider contracting agreements, hard copy claims, explanation of benefits, and copies of cashed checks." *Id.* at Section II.

32.     Both the December 2014 and November 2017 Carrier Letters identify "misrepresenting who provided the services" as examples of "fraud." *See* Exs. 5 & 6.

33.     Accordingly, Plaintiffs' allegations against BCBSGA—which are based on the various investigation, reporting, and cooperation obligations BCBSGA owes to OPM, and the obligations imposed by OPM to cooperate with other law enforcement—implicate BCBSGA's

---

[3] Available at www.opm.gov/healthcare-insurance/healthcare/carriers/2017/2017-13.pdf

performance of its obligations under the Service Benefit Plan, including its role of administering claims for FEHBP enrollees on OPM's behalf and using OPM's funds.

## GROUNDS FOR FEDERAL OFFICER REMOVAL

### A.     This Case Is Removable Under the Federal Officer Removal Statute.

34.     BCBSGA is entitled to remove this action based on the Federal Officer Removal statute, 28 U.S.C. § 1442.

35.     Section 1442 "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (internal quotation marks omitted). "[D]efendants enjoy much broader removal rights under the federal officer removal statute than they do under the general removal statute." *Killam v. Air & Liquid Sys., Inc.*, No. 16-CV-2915, 2016 WL 7438434, at *2 (M.D. Fla. Dec. 27, 2016) (internal quotation marks omitted).

36.     Courts – including the Eleventh Circuit – now routinely find that suits against health insurance companies administering the Service Benefit Plan are removable under the Federal Officer Removal Statute. *See, e.g.*, *St. Charles Surgical Hosp.*, 935 F.3d 352, 355-358 (5th Cir. 2019) (Blue Cross and Blue Shield company administering the Service Benefit Plan properly invoked section 1442(a)(1)); *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1256 (9th Cir. 2017) (same); *Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1235 (8th Cir. 2012) (same); *Anesthesiology Assocs. of Tallahassee Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-CV-15664, 2005 WL 6717869, at *2 (11th Cir. Mar. 18, 2005) (same); *Brady*, 2019 WL 3206871, at *3 (same); *Malibu v. Anthem Blue Cross Life*, 16-CV-5229, 2016 WL 5746337, at *1 (C.D. Cal. Sept. 30, 2016) (same); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1063-67 (S.D. Cal. 2016) (same); *Owens v. Health Care Serv. Corp.*,

No. CV 16-95, 2016 WL 7675406, at *3-5 (D. Mont. Dec. 16, 2016) (same); *Bell v. Blue Cross &*
*Blue Shield of Oklahoma*, 5:14-CV-05046, 2014 WL 5597265, at *1 (W.D. Ark. Nov. 3, 2014),
*aff'd*, 823 F.3d 1198 (8th Cir. 2016) (same); *The Alabama Dental Ass'n v. Blue Cross & Blue*
*Shield Of AL, Inc.*, 205-CV-1230, 2007 WL 25488, at *1 (M.D. Ala. Jan. 3, 2007) (same); *accord*
*Cal. Spine & Neurosurgery Inst. v. Nat'l Ass'n of Letter Carriers Health Benefit Plan*, No. 20-CV-
08511, 2021 WL 2908676 (N.D. Cal. July 12, 2021) (carrier of different FEHBP plan properly
used Federal Officer Removal Statute in removing lawsuit filed by medical provider).

37.    The Federal Officer Removal statute "'grants independent jurisdictional grounds
over cases involving federal officers where a district court otherwise would not have jurisdiction.'"
*Jacks*, 701 F.3d at 1230 (quoting *Johnson v. Showers*, 747 F.2d 1228, 1229 (8th Cir. 1984)). The
Supreme Court has long admonished that § 1442 is to be "liberally construed." *Colorado v. Symes*,
286 U.S. 510, 517 (1932). "The right of removal is 'absolute for conduct performed under color
of federal office,' and the 'policy favoring removal "should not be frustrated by a narrow, grudging
interpretation of § 1442(a)(1)."'" *Goncalves*, 865 F.3d at 1244 (citation omitted). Courts have a
"duty to 'interpret Section 1442 broadly in favor of removal.'" *Id*. (citation omitted). Whether
Federal Officer Removal jurisdiction exists must be assessed "'without a thumb on the remand
side of the scale.'" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020) (en
banc) (citation omitted). Congress also signaled the importance of the right to removal under
§ 1442 by making remands of cases removed under it one of the few types of remands reviewable
on appeal. *See* 28 U.S.C. § 1447(d).

38.    Under the Eleventh Circuit's three-part test, removal is appropriate where the
defendant, although not itself a federal official, (i) is a person who acted under a federal officer;
(ii) performed the actions for which it is being sued under color of federal office; and (iii) has a

colorable federal defense.[4] *Caver*, 845 F.3d at 1142; *see also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427-28 (11th Cir. 1996). BCBSGA satisfies each of these requirements.

> **i.      BCBSGA Is a "Person" That "Act[ed] Under" Federal Officer Authority.**

39.     BCBSGA satisfies the first requirement of Federal Officer Removal because "[a] health plan insurer contracting with a government agency under a federal benefits program is considered a 'person acting under' a federal officer." *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at *2 (quoting *Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 56-58 (5th Cir. 1975) (finding § 1442(a)(1) jurisdiction over a claim by a physician against a health insurer operating under Medicare); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1122 n.4 (9th Cir. 2014) (explaining that government contractors qualify as "persons" under the statute); *Jacks*, 701 F.3d at 1230 n.3 (noting that "the 'person' contemplated by the federal officer removal statute includes corporations"); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (stating that "corporate entities qualify as 'persons' under § 1442(a)(1)").

40.     Moreover, since BCBSGA administers federal healthcare plans pursuant to a federal government contract with OPM, BCBSGA was acting under a federal officer's authority. *Peterson*, 508 F.2d at 58; *see also,* Ex. 3, at Ex. A.

41.     This case is thus one against or directed to persons acting under federal officers (*i.e.*, against or directed to BCBSGA, acting under OPM) for or relating to their actions under color of federal office (*i.e.*, relating to BCBSGA's investigatory, reporting, and cooperation obligations under the OPM-BCBSA Contract governing the Service Benefit Plan). A defendant is deemed to act under the direction of a federal agency and federal officers where the actions at issue were

---

[4] Removal under § 1442(a)(1) is appropriate even where a federal question does not appear on the face of the plaintiff's complaint.  *Caver*, 845 F.3d at 1145.

taken in the course of administering a federal program over which a federal agency has control or supervision. *See Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, *2. Government contractors may remove a case pursuant to the Federal Officer Removal Statute where "the acts for which they are being sued . . . occurred because of what they were asked to do by the Government," even if the acts were not "specifically contemplated by the government contract." *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137-138 (2d Cir. 2008). Here, BCBSGA "help[s] the government fulfill the basic task of establishing a health benefits program for federal employees. OPM has direct and extensive control over these benefit contracts under the FEHBA." *Jacks*, 701 F.3d at 1233. "[T]he benefit payment process [is] a process over which OPM exerts regulatory control." *Id.*; *see also St. Charles Surgical Hosp.*, 935 F.3d at 355-56 (FEHBP carrier acts under OPM); *Cal. Spine & Neurosurgery Inst.*, 2021 WL 2908676, at *3-5 (FEHBP carrier and its subcontractor act under OPM).

> ii.   **The Complaint Relates to BCBSGA's Acts Under Color of Federal Office.**

42.   "The second question for federal officer removal is whether there is a causal connection between [the plaintiff's] claims and an act of [the defendant] that forms the basis of those claims." *Caver*, 845 F.3d at 1144. The Eleventh Circuit has found that a complaint relates to a defendant's acts under color of federal office where, for example, the defendant is being sued because of "performance of its duties and [the relevant] agreement with [the federal government]." *Id.* at 1145.

43.   There are at least two ways that Plaintiffs' claims relate directly to BCBSGA's acts under color of federal office: (a) Plaintiffs' claims relate to BCBSGA's obligations to report fraud, waste, and abuse, and to cooperate with law enforcement investigations; and (b) Plaintiff's

Complaint relies on allegations that the laboratory tests at issue were covered benefits and payable, including under the FEHBP.

### a. Plaintiffs' Claims Relate to BCBSGA's Obligations to Report Fraud, Waste, and Abuse, and to Cooperate with Law Enforcement Investigations into Same.

44.      The core of Plaintiffs' allegations is that the Defendants caused the United States Department of Justice to maliciously prosecute Fletcher and his co-defendants in the criminal matter through their responses to grand jury and trial subpoenas in the criminal matter. *See, e.g.*, Ex. 1, Compl. ¶¶ 2-5.

45.      Plaintiffs' allegations are causally connected to BCBSGA's actions under the direction of a federal agency and its officers. *See Jacks*, 701 F.3d at 1230 n.3 (finding the requisite causal connection). "The hurdle erected by [the causal nexus] requirement is quite low." *Isaacson*, 517 F.3d at 137-38; *see also Goncalves*, 865 F.3d at 1244 (quoting *Isaacson*). "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." *Isaacson*, 517 F.3d at 137-38 (emphasis added). That is certainly the case here. Indeed, as it relates to Service Benefit Plan enrollees, all of BCBSGA's alleged conduct in this case was done while performing its official duties for OPM.

46.      But here there is even more than that causal connection. In this case, BCBSGA was contractually obligated to report fraud to OPM and to provide "liaison and investigative support" to law enforcement agencies generally. Exs. 5 and 6; *see also*, Ex. 2, Superseding Indictment, at ¶¶ 28-31.

47.      BCBSGA's compliance with its contractual duty to report fraud and cooperate with law enforcement agencies is more than sufficient to find a causal connection between this lawsuit and BCBSGA's actions under its federal contract. *Anesthesiology Assocs. of Tallahassee*, 2005 WL 6717869, at *2 (finding that removal was proper where plaintiff's allegations related to duty

to pay for health services, which arose from the terms of the federal health plan). Plaintiffs'
allegations expressly relate to BCBSGA's interactions with OPM and other federal law
enforcement officials during a healthcare-fraud investigation that related to BCBSGA's
administration of the Service Benefit Plan under the FEHBP. *See, e.g.,* Compl. ¶ 65.

48.     Indeed, the Criminal Indictment which formed the basis for the U.S. Government's
underlying prosecution explicitly identified BCBSGA and the other insurance company
defendants as OPM contractors. *See* Ex. 2, Superseding Indictment, at ¶¶ 28-31.

49.     Moreover, many of the allegations underlying Plaintiffs' causes of action concern
information provided by BCBSGA pursuant to BCBSGA's obligations pursuant to their
government contracts. *See, e.g.*, Compl. ¶ 118 (" . . .  investigator John Iacovelli at BCBS Ga made
a referral of fraudulent activity to the United States Attorney's Office for the Northern District of
Georgia"); *id.* at ¶ 119 ("By January 2018 [the BCBS Ga investigator] was sharing e-mails with
Gary Winters with the DOJ Fraud Division in Washington, D.C."). That information related to the
processing, payment, and administration of FEHBP benefits.  *See* Ex. 4, Foister Decl., at ¶¶ 3-4,
and Ex. 2 Superseding Indictment, ¶¶ 29 and 30.

50.     Thus, BCBSGA's alleged conduct in this case relates to its acts under color of
federal office.  *See Caver*, 845 F.3d at 1144-45.

### b.   *Plaintiffs' Complaint Relies on Allegations that the Laboratory Tests at Issue Were Covered Benefits and Payable, Including Under the FEHBP.*

51.     Plaintiffs' Complaint includes extensive allegations that the health benefit claims
billed by the Plaintiffs and their co-defendants in the criminal matter to the named defendants were
payable, and that the desire to avoid paying such claims was the defendants' motivation for their
alleged malicious prosecution of Fletcher. *See*, *e.g.*, Compl. ¶ 134 ("The hospitals billed for
LifeBrite's laboratory testing services honestly and properly.""); *id.* ¶¶ 133-137 (" . . . Defendants

saw the increase in claims from the rural hospitals, realized that there was nothing improper, and concocted a scheme to leverage regulators, law enforcement and others in the health care community to save Defendants from having to pay monies owed and to punish LifeBrite and set an example.")

52.     The benefit claims submitted by the defendants in the criminal matter included claims for laboratory tests for patients enrolled in the Service Benefit Plan. *See supra* ¶ 48; Foister Decl., ¶ 4.

53.     The question of whether benefits are payable, including whether they are medically necessary (an express requirement under the Service Benefit Plan), is conferred by OPM to BCBSGA through the Service Benefit Plan. *See* Stuhan Decl., Ex. B, § 2.2(e) ("Except as provided for in (b) above, the Carrier shall provide benefits for services or supplies in accordance with Appendix A," *i.e.*, the Statement of Benefits); *id.,* Ex. O, 2016 Statement of Benefits at 147 (claims are payable only if BCBSGA "determine[s] that the criteria for medical necessity are met"); *id.,* Ex. A, 2013 OPM-BCBSA Contract § 2.2(f) ("The Carrier . . . shall determine whether in its judgment a service or supply is medically necessary or payable under this contract."); *id.* § 2.8(a)(1) ("The Carrier resolves claims filed under the Plan.  All health benefit claims must be submitted initially to the Carrier."); 5 C.F.R. § 890.105(a)(1).

54.     FEHBA OPM's regulations, and the Statement of Benefits establish that the exclusive remedies to challenge a refusal to pay benefits is a request for reconsideration to the insurer, followed by an administrative appeal at OPM, followed by judicial review in federal court of OPM's decision. OPM regulations prohibit lawsuits against a FEHBA carrier or its subcontractors relating to the provision of benefits under a FEHBA plan.  *See* 5 U.S.C. §§ 8902(j), 8912; 5 C.F.R. §§ 890.105, 890.107; *see also, e.g.*, Stuhan Decl., Ex. S, 2020 Statement of Benefits

at 142-44; *id.* Ex. T, 2021 Statement of Benefits at 139-41. This administrative remedy is available to "medical providers" who have obtained the enrollee's consent. *E.g.*, 2020 Statement of Benefits at 143; 2021 Statement of Benefits at 140; *see also* 5 C.F.R. § 890.105(a)(2).

55.     Thus, because the Plaintiffs challenge whether the benefit claims at issue were payable, their Complaint further relates to BCBSGA's acts under color of federal office.

### iii.     BCBSGA Has Multiple Colorable Federal Defenses.

56.     The third prong of Federal Officer Removal is whether the defendant has a colorable federal defense. Here, BCBSGA certainly does.

57.     The Eleventh Circuit gives "a broad reading [to the federal officer removal statute] so as to encompass all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Caver*, 845 F.3d at 1145 (internal quotation marks and citation omitted). "The colorable federal defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Id.* (internal quotation marks and citation omitted).

58.     BCBSGA asserts the federal defense of derivative sovereign immunity. *See Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based on its performance of the contract in carrying out a government function. *See id*. Here, BCBSGA is protected by derivative sovereign immunity because BCBSGA administered the relevant health benefit plans pursuant to validly conferred authority, and BCBSGA's conduct was within the bounds of that authority. If the U.S. Government had administered the relevant health benefit plans itself, it would be immune from suit. That immunity extends to BCBSGA, who stepped into the government's shoes for these purposes. *See Malibu*, No. 16-CV-5229, 2016 WL 5746337, at *6 (dismissing state law claims against Service Benefit Plan administrator on

sovereign immunity grounds); *Tantuwaya*, 169 F. Supp. 3d at 1070-71 ("Any recovery against Blue Shield in this case would come from the funds in the federal treasury. The United States cannot be sued without its consent and the United States has not waived sovereign immunity in this case . . . ."); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *4-5 (E.D. La. Sept. 30, 2014) (dismissing state-law claims against Service Benefit Plan administrator on sovereign immunity grounds); *Mentis El Paso, LLP* v. *Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 756 (W.D. Tex. 2014) (same); *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587 (N.D. Tex. 2014) (same); *see also Omega Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 592 F. App'x 268, 272 (5th Cir. 2014) (citing *Innova*); *Cal. Spine & Neurosurgery Inst.*, 2021 WL 2908676, at *9 (sovereign immunity is colorable federal defense).

59.     BCBSGA also asserts a defense of express federal preemption. FEHBA contains a broad preemption provision that states: "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1) (2000) (as amended by the Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363, 2366). "[U]nder § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686 (citing 5 U.S.C. § 8902(m)(1)). The Supreme Court later emphasized that the phrase "relate to" in FEHBA's preemption provision "'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 96 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added

by *Nevils* Court).  Under its terms, Section 8902(m)(1) preempts state-law claims if (1) "the State's law 'relates to health insurance or plans'" and (2) the relevant "requirements in OPM's contract with [an administrator] 'relate to the nature, provision, or extent of coverage or benefits,' 'including payments with respect to benefits.'" *Id*. at 95 (quoting 5 U.S.C. § 8902(m)(1)). In this case, the first of these requirements is met even though Plaintiffs rely on state laws of general application. Court have repeatedly held that state laws of general application "relate to" the subject listed in a preemption provision where, as here, the state law would operate on the listed subject in the particular case at issue. *See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (finding that "a State's general consumer protection laws" relate to airline rates, routes, or services so as to fall within the ambit of the Airline Deregulation Act's preemption provision, 49 U.S.C. § 41713(b)(1)); *id*. at 386 (dismissing the argument that the preemption provision "imposes no constraints on laws of general applicability," a theory this Court has "consistently rejected" in the context of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*.); *Gonzalez v. Blue Cross and Blue Shield Association*, 62 F.4th 891, 904 (5th Cir. 2023) (plaintiff's state common law claims preempted by FEHBA even though those state laws "do not specifically relate to health insurance," because "preemption reaches even a state's general laws when their application relates to the scope or administration of federal healthcare plans"); *Metro. Life Ins. Co. v. Christ*, 979 F.2d 575, 579 (7th Cir. 1992) (interpreting preemption provision nearly identical to FEHBA's original, narrower provision); *Hayes v. Prudential Ins. Co.*, 819 F.2d 921, 926 (9th Cir. 1987) (finding state common law and statutory claims to be preempted under FEHBA's original, narrower preemption provision); *Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*, 791 F.2d 1501 (11th Cir. 1986) (finding state unclaimed property law to be preempted under FEHBA's original, narrower preemption provision). As to the second

requirement, Plaintiffs' allegations relate to the Service Benefit Plan's terms relating to coverage or benefits, including the provisions described above obligating BCBSGA to decide whether health benefits claims are medically necessary and payable under the Service Benefit Plan and to investigate and report suspected fraud, waste, or abuse in connection with health benefit claims under the Plan. Thus, the Act's express preemption provision bars Plaintiffs' claims.

60.     BCBSGA also asserts a defense of implied federal preemption. State law claims are impliedly preempted by federal law where state and federal law conflict or where the state law is an obstacle to the accomplishment of federal objectives. *Mahajan v. Blue Cross Blue Shield Ass'n*, No. 16-CV-6944, 2017 WL 4250514, at *9-11 (S.D.N.Y. Sept. 22, 2017) (finding that the Act impliedly preempted state-law tort claims related to the Service Benefit Plan). Here, Plaintiffs' claims are founded on a dispute over BCBSGA reporting suspected fraudulent billing practices to the U.S. Government, which BCBSGA was required to do pursuant to both its federal contract and federal regulation. Ex. 3, at Ex. A, 2013 OPM-BCBSA Contract; 48 C.F.R. § 1652.222-70(a)(12). Plaintiffs' claims therefore conflict with and pose an obstacle to the accomplishment and execution of federal law.

61.     BCBSGA also asserts the government contractor defense. *Boyle v. United Tech. Corp.*, 487 U.S. 500 (1988). In a case involving a maintenance service contract, the Eleventh Circuit has explained that federal contractors are shielded by the U.S. Government's sovereign immunity where: "(1) the United States approved reasonably precise maintenance procedures; (2) [the contractor's] performance of maintenance conformed to those procedures; and (3) [the contractor] warned the United States about the dangers in reliance on the procedures that were known to [the contractor] but not to the United States." *LaCourse v. PAE Worldwide Inc.*, 980 F.3d 1350, 1359 (11th Cir. 2020) (internal quotation marks omitted). In this case, BCBSGA asserts

the government contractor defense because of the nature of its contractual relationship with OPM, OPM's approval of precise contractual specifications, BCBSGA's performance of those procedures, and because there was no need for a warning under the facts of this case.

62.     Removal is appropriate here under the Federal Officer Removal statute because BCBSGA has at least four colorable federal defenses: derivative sovereign immunity, express federal preemption, implied federal preemption, and the government contractor defense.[5]

## PROCEDURAL COMPLIANCE

63.     BCBSGA was served with a copy of the Complaint in the State Court Action on July 24, 2023.  BCBSGA's removal is timely because BCBSGA is filing this Notice of Removal within thirty (30) days of being served in the State Court Action.  *See* 28 U.S.C. § 1446(b).

64.     Removal under § 1442(a)(1) does not require the consent of co-defendants. *See, e.g.*, *Rosenberg v. Labarga*, No. 17-21699-CV, 2017 WL 7803860, at *5 (S.D. Fla. Sept. 26, 2017) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006)). Presently, only BCBSGA and The Elevance Health Companies, Inc. f/k/a Anthem Insurance Companies, Inc. ("Elevance") have been served, and Elevance consents to removal.

65.     In accordance with § 1446(a), a copy of the Complaint is attached as Exhibit 1, and all process, pleadings, and orders served upon BCBSGA in the State Court Action are attached as Ex. 7.

66.     No defendant has appeared by answer to the complaint prior to removal. *See* LR 26.2(A).

67.     There are currently two motions pending in the State Court Action that seek the appointment of special process servers. *See* LR 7.2(A).

---

[5] BCBSGA reserves the right to assert additional defenses at the appropriate time.

68.     BCBSGA will file a copy of this Notice of Removal with the Clerk of Court, State Court of Gwinnett County, Georgia and shall provide written notice to Plaintiffs. *See* 28 U.S.C. § 1446(d).

69.     Nothing in this notice should be interpreted as a waiver or relinquishment of any of BCBSGA or any other defendant's rights to assert any and all defenses or objections to the Complaint, including as to personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, BCBSGA respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal.

70.     BCBSGA reserves the right to amend or supplement this Notice.

**WHEREFORE**, BCBSGA respectfully removes the State Court Action currently pending in the State Court, Gwinnett County, Georgia to this Court for further proceedings.

Dated this day, August 22, 2023.

Respectfully submitted,

**TROUTMAN PEPPER**
600 Peachtree Street, N.E.
Atlanta, GA 30308
Telephone:     (404) 885-3000

By: */s/ Harold Melton*
Harold Melton
Georgia Bar No.: 501570
harold.melton@troutman.com

**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500

Jeffrey S. Gleason (*PHV application forthcoming*)
jgleason@RobinsKaplan.com
Nathaniel J. Moore (*PHV application forthcoming*)
nmoore@RobinsKaplan.com

*Counsel for BlueCross BlueShield Healthcare Plan of Georgia, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2023, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List via electronic mail.

*/s/ Harold Melton*

## SERVICE LIST

Dax E. Lopez
dax@dglattorneys.com
J. Antonio Delcampo
tony@dglattorneys.com
Randall D. Grayson
rgrayson@dglattorneys.com
**DelCampo Grayson Lopez LLC**
5455 Chamblee Dunwoody Road
Dunwoody, Georgia 30338

Louis R. Miller
David W. Schecter
**MILLER BARONDESS, LLP**
2121 Avenue of the Stars, 26th Floor
Los Angeles, CA 90067

*Counsel for Plaintiffs*