# Exhibit 6

# FEHB Program Carrier Letter
## All FEHB Carriers

**U.S. Office of Personnel Management**
Healthcare and Insurance

Letter No. 2017-13                                                              Date: November 20, 2017

Fee-for-Service  [9]        Experience-rated HMO [9]        Community-rated [12]

**SUBJECT:  Office of Personnel Management (OPM) Federal Employees Health Benefits (FEHB) Fraud, Waste and Abuse**

This Carrier Letter serves to communicate requirements to prevent, detect, investigate, and report Federal Employees Health Benefits related Fraud, Waste, and Abuse. It consolidates and updates information from Carrier Letter 2014-29 which is superseded by this guidance. It will also supplement requirements from the FEHB Contract (Section 1.9 – Plan Performance).

### I. Fraud, Waste, and Abuse (FWA) Definitions[1]

- **Fraud** is knowingly and willfully executing, or attempting to execute, a scheme or artifice to defraud any health care benefit program or to obtain (by means of false or fraudulent pretenses, representations, or promises) any of the money or property owned by, or under the custody or control of, any health care benefit program. Fraud can be committed by a contractor, a subcontractor, a large provider, a provider, and/or a FEHB beneficiary/enrollee. It includes any act that constitutes fraud under applicable Federal and/or state law.

    Examples include but are not limited to the following schemes:

    - billing for services that were never rendered,
    - misrepresenting who provided the services,
    - altering claim forms, electronic claim records or medical documentation, and
    - falsifying a patient's diagnosis to justify tests, surgeries or other procedures that aren't medically necessary.

---

[1] Other Fraud, Waste, and Abuse definitions are outlined **in Attachment 1** and should be used as a reference for the Fraud, Waste and Abuse Annual Report, Case Notifications, and Case Referrals.

1

- **Waste** is the expenditure, consumption, mismanagement, use of resources, practice of inefficient or ineffective procedures, systems, and/or controls to the detriment or potential detriment of entities. Waste is generally not considered to be caused by criminally negligent actions but rather the misuse of resources. Waste can be committed by a contractor, a subcontractor, a large provider, a provider, and/or a FEHB beneficiary/enrollee.

  Examples include but are not limited to the following schemes:

  - performing large number of laboratory tests on patients when the standard of care indicates that only a few tests were sufficient for treatment and/or diagnosis,
  - medication and prescription refill errors, and
  - failure to implement standard industry waste prevention measures.

- **Abuse** includes actions that may, directly or indirectly, result in: unnecessary costs to the FEHB Program, improper payment, payment for services that fail to meet professionally recognized standards of care, or services that are medically unnecessary. Abuse involves payment for items or services when there is no legal entitlement to that payment and the provider has not knowingly and/or intentionally misrepresented facts to obtain payment. Abuse cannot be differentiated categorically from fraud because the distinction between "fraud" and "abuse" depends on specific facts and circumstances, intent and prior knowledge, and available evidence, among other factors. Abuse can be committed by a contractor, a subcontractor, a large provider, a provider, and/or a FEHB beneficiary/enrollee.

  Examples include but are not limited to the following fraud schemes:

  - misusing codes on the claim (i.e., the way the service is coded on the claim does not comply with national or local coding guidelines or is not billed as rendered),
  - waiving patient co-pays or deductibles and over-billing the FEHB Carrier, and
  - billing for items or services that should not be paid for by the FEHB Program such as never events.

## II. <u>FWA - Carrier Actions</u>

**FEHB Carriers must, at minimum, perform the following activities to prevent, detect, investigate, and report FEHB FWA:**

1. Develop programs to prevent, detect, and identify persons and organizations involved in suspicious claim activity
    a. Programs should proactively identify FWA issues, identify program vulnerabilities, initiate action to deny or suspend payments where there is potential fraud, waste, or abuse, develop and refer cases to OPM-Office of

2

      the Inspector General (OIG) for consideration of civil and criminal prosecution and/or application of administrative sanctions, and provide outreach to providers and beneficiaries (further details can be found in Attachment 2 related to the requirement to refer cases to OPM OIG),

  b. Conduct investigations of FWA allegations referred by internal plan sources (i.e. customer service, claims, underwriting, internal audit, utilization/medical review, etc.) or external sources (i.e. fraud hotlines, health care task forces, law enforcement liaison, OPM referrals, OIG data requests, etc.), and

  c. Maintain a database(s) or case tracking system of all FWA cases opened, active, pending, and closed, which shall contain, at a minimum, the case name, the case number, subject names, addresses, basic identifiers (SSN, if available; Tax Identification Numbers; NPI's), specific allegations, investigative activity, case status and disposition, FEHB exposure, FEHB funds identified as a loss, FEHB funds recovered, FEHB funds saved as a result of claim denials, referral agency, date of referral, disposition of referral, and how the case was detected. Case tracking must be performed for all cases/investigations from all internal plan sources and external sources. Upon request, Carriers must establish a process to enable OPM-OIG access to such information, database(s), or case tracking system.

2. Anti-fraud programs will include both proactive and reactive activities, such as:
   a. Carriers are encouraged to proactively monitor and actively participate in healthcare fraud prevention in all geographical regions in their service areas.
   b. Carriers should perform a thorough assessment of all allegations/complaints received within their anti-fraud units or Special Investigation Unit (SIU) as defined as a "preliminary review" within the Mandatory Information sharing via Case Notifications and Referrals to the OPM-OIG Attachment 2. The preliminary review or assessment process and procedures must be documented within their FWA Process and Procedure manuals.
   c. Carriers should assess all allegations entered into their case tracking system for FEHB Program paid amounts (i.e., exposure), both total amounts and paid amounts related to the allegations retrospectively at a minimum of 36 months from the date of the last payment made by the Carrier and/or the case open date.
   d. In the absence of a specific time period requested by the OPM-OIG on an official response to a case notification whereby the OPM-OIG is "Monitoring" the Carrier's case, the Carrier should provide a status update for any reported potential FWA case every 90 days to the OPM-OIG.

3. Provide claims data upon request from OPM-OIG in the required format per these guidelines and track all data requests separately.

3

4. Provide liaison and investigative support to OPM-OIG, other law enforcement agencies, and personnel upon request. Investigative support may include, but is not limited to the following: providing claims data analysis, professional medical review, medical policy guidelines, provider contracting agreements, hard copy claims, explanation of benefits, and copies of cashed checks.

5. FEHB Carriers are required to report the receipt of subpoenas that relate to FEHB business to OPM-OIG. OPM-OIG is the only Office of Inspector General that may be provided with Personal Health Information under the FEHB Contract. Carriers must notify OPM-OIG upon receipt of a subpoena or request from an office of inspector general other than OPM-OIG prior to responding.

6. Track all provider, member, and pharmacy case notifications sent to OPM-OIG and all other law enforcement agencies, and provide an annual report of such activity to OPM and OPM-OIG. Mandatory Information Sharing via Written Case Notifications and Referrals to OPM-OIG are detailed in **Attachments 2, 3, and 4.**

7. FWA Reports (medical and pharmacy) are due March 31st of each year to your Health Insurance Specialist (Contracts).

### III. Industry Standards[2]

All FEHB Carriers must have, at minimum, the following commercial industry-based program standards to prevent, detect, investigate, and report all FEHB related FWA. Many FEHB Carriers currently implement robust FWA programs, inclusive of OPM's required practices and procedures. These Carriers are encouraged to update their practices in accordance with this guidance and share additional practices and procedures with OPM. OPM may alert all Carriers to 'Best Practices' that may further enhance their FWA programs.

1. **FWA Hotlines:** Establish and maintain a fraud hotline for reporting both internal and external allegations of FWA, via telephone and/or computer base, and track all reports. Hotlines should be available to providers, enrollees, employees, and others. Compliance programs must prohibit retaliation against whistleblowers.

2. **FWA Manual:** Publish an FWA prevention, detection, investigation, and reporting manual. The manual must include all plans, policies, and procedures involved in the Carrier's FWA program. The Carrier does not have to publish a separate FEHB FWA manual. Carriers with other lines of business can include a separate section on FEHB FWA within their manual or fully integrate FEHB FWA into their overall manual, including reporting requirements, contractual obligations, etc. The manual must be available (either electronically or hard copy) to all Carrier personnel and OPM, and

---

[2] Per the National Healthcare Anti-Fraud Association (NHCAA), the Association of Certified Fraud Examiners (ACFE), and America's Health Insurance Plans (AHIP).

4

include the following, at minimum:
   a. An anti-fraud policy statement providing your corporate strategy to address FWA.
   b. Written policies and procedures, followed by all personnel, for the prevention, detection, and identification of FWA.
   c. Information for anti-fraud personnel and subcontractors regarding general investigation guidelines, investigative planning, retrospective claims analysis, interview procedures, prospective claims, review, report writing, information disclosure, law enforcement relations, and all FEHB FWA related reporting requirements.
   d. The composition, structure, duties, and functions of anti-fraud personnel and subcontractors, including names, titles, and contact information.
   e. Procedures for referral of potential FWA issues to Carrier anti-fraud personnel.
   f. An overview and listing of all relevant Federal laws that pertain to healthcare violations, including all relevant criminal and civil laws.
   g. Formal FWA training requirements for all anti-fraud personnel.
   h. A listing of FWA indicators by health plan business unit.
   i. Information about fraud hotlines as related to the FEHB Program, the phone number, email address, and on-line module or web-based method for submitting a complaint or referral.
   j. Established security safeguards to protect claims, member, and provider information from unauthorized use or access.
   k. Information related to the education of enrollees and contracted providers about FWA issues via newsletters, websites, and/or other means of education.
   l. Processes and procedures for detecting and identifying members and their dependents, who are exhibiting drug dependence, drug seeking, and doctor shopping behavior.
   m. An Appendix page listing all minimum requirements herein, along with all other plan items included by the Carrier.
   n. Manuals must be routinely updated, kept current, and list all revisions and dates of revision.

3. **Formal Employee Training:** Ensure FWA awareness training is conducted for all employees, underwriting departments, and subcontractors engaged in the Carrier's FEHB Program business.
   a. Training should consist of an overview of specific FWA reporting requirements, debarment policies, and procedures to enable personnel to identify and handle potentially fraudulent claims submitted. The training shall include, but not be limited to, the following areas as appropriate and related to the FEHB Program: Overcharging and overpayment detection, claims processing guidelines for potential fraud, foreign medical claims, medical coding, duplicate billing, unnecessary services or supplies, over-utilization, services not rendered, miscoding, up-coding, unbundling, misleading claims

5

information, false diagnosis, prescription drug abuse, pharmacy related fraud and pill mills, patient safety, and the requirements related to notifying and referring potential fraud cases to OPM and OPM-OIG.
   b. Training should include a review of the Carrier's FWA Manual.
   c. Training should include all relevant Federal criminal and civil statutes and laws related to health care FWA.
   d. Instruction format may be classroom instruction, self-guided instruction, videotape, seminar, conference, computer based or by any other means available.
   e. Carrier must maintain records of training for all FEHB Program related health plan personnel.
   f. We highly encourage members of SIU, or in the absence of an SIU, those performing activities to obtain training at least every three years from an external organization such as the National Healthcare Anti-Fraud Association (NHCAA), the Association of Certified Fraud Examiners (ACFE), America's Health Insurance Plans (AHIP), etc.
   - If accredited, the health Carrier must maintain records of the credentialed investigator.

4. **Enrollee Education**:  Inform enrollees about FWA practices via newsletters, websites, or other means.
5. **Fraud Protection/Detection Software:**  Use Fraud Protection Software to analyze claims data. Software should evaluate on a prospective claim-by-claim basis and through the retrospective analysis of claim trends from providers and/or members.
6. **Private Information Security:**  Implement safeguards per HIPAA requirements to protect claims, member, and provider information from unauthorized use or access.
7. **Patient Safety Security:**  Address FWA issues with the potential to develop into patient safety issues. Patient safety issue areas may include, but are not limited to: (1) pharmaceuticals, such as altered prescriptions, illegal refills, and abuse of controlled substances; (2) medical errors in both inpatient and outpatient care, resulting in unfavorable outcomes; and (3) improper settings for procedures and services that result in poor outcomes.

## IV. Fraud, Waste, and Abuse Reporting

**Fraud, Waste, and Abuse Annual Report (Attachment 5) – Due March 31st** covers reporting of prior calendar year (January 1st – December 31st) for medical and pharmacy data. Carriers are required to submit one FWA report per contract number.  Carriers must submit FWA reports in Excel.  Any reports submitted in any other format will be returned.

Please utilize **Attachment 1** as a supplement for reporting.

6

**Signed FWA Report Certification – Due March 31st (Attachment 6).** We are requiring signatures from the person authorized to execute the FEHB contract to certify that, to the best of their knowledge, the FWA report is in compliance with the requirements in this Carrier letter.
**Send both items** to your Carrier's Health Insurance Specialist (Contracts).

### V. FEHB Fraud, Waste, and Abuse Program Recommendations

We strongly encourage all FEHB Carriers to participate in the quarterly OPM-OIG Carrier Task Force meeting. For more information about the Task Force, please contact the OIG.

### VI. Best Practices Recognition

Innovative FEHB Carriers that choose to describe their 'Best Practices' in the annual FWA Report may be featured on the OPM website.

### VII. Conclusion

We appreciate the Carrier's feedback we received. If you have any questions or concerns please contact your Health Insurance Specialist (Contracts).

Sincerely,

Alan P. Spielman
Director
Healthcare and Insurance

Attachments:
Attachment 1 – FEHB Fraud and Abuse Definitions
Attachment 2 – Mandatory Information Sharing via Written Case Notifications and Referrals to OPM-OIG
Attachment 3 – Case Notification/Status Updates Format
Attachment 4 – OPM/OIG Exposure Request Form
Attachment 5 – FWA Report
Attachment 6 – Federal Employees Health Benefits Program Statement about Fraud, Waste and Abuse (FWA) Annual Report Certification

7