# EXHIBIT 5

# Berkshire Life Insurance Company of America

700 South Street ● Pittsfield, Massachusetts 01201
1-888-482-7342

## Disability Income Policy
Non-Participating

This Policy, issued by Berkshire Life Insurance Company of America, provides insurance to the extent set out in the Policy. All of the provisions on this page and pages that follow are part of the Policy.

Secretary

President

## NONCANCELLABLE AND GUARANTEED RENEWABLE
## TO YOUR AGE 65 OR AGE 67. PLEASE SEE THE EXPIRATION DATE OF THE POLICY.

The Policyowner may renew the Policy at the end of each Premium Term until the Expiration Date. During that time, We cannot change the premium or cancel the Policy.

## CONDITIONAL RIGHT TO RENEW AFTER THE
## EXPIRATION DATE–PREMIUMS CAN CHANGE

After the Expiration Date, the Policyowner may conditionally renew the Policy on each Policy Anniversary, if You are not Disabled, You are Gainfully Employed Full Time for at least ten months each year, the premium is paid on time, and the Policy is in force up to the Expiration Date.

The premium at each renewal will be based on Our premium rates in effect for Your Age, gender, Class of Risk, Occupation Class, any special class rating under the Policy, and other factors We are using on a class basis at that time. We have the right to change such premiums on a class basis on any Policy Anniversary.

## NOTICE OF THIRTY-DAY RIGHT TO EXAMINE POLICY

Please read the Policy carefully. It is a legal contract between the Policyowner and Us. The Policy may be returned to Us or to the representative through whom it was bought within thirty days from the date the Policy was received. Immediately upon such delivery or mailing, the Policy will be void from the beginning, and any premium, policy fees, or other charges paid for it will be refunded.

## Pre-existing Condition limitations or exclusions, and other limitations or exclusions, may apply. Please read the Policy carefully.

## DUPLICATE POLICY

*Berkshire Life Insurance Company of America*
*is a wholly owned stock subsidiary of*
*The Guardian Life Insurance Company of America,   New York, NY*

ICC16 18ID



Policy01

Case 1:23-mi-99999-UNA   Document 2699-5   Filed 08/23/23   Page 3 of 52

This page intentionally left blank.

Berkshire Life Insurance Company of America, Pittsfield, MA

## Schedule Page 1a

| | | | |
|---|---|---|---|
| Insured: | WAIRIMU WAIYAKI | Policy Number: | Z4834040 |
| Policyowner: | WAIRIMU WAIYAKI | Policy Date: | September 8, 2021 |
| Loss Payee: | WAIRIMU WAIYAKI | | |

### Policy Specifications for the Insured

| | | | |
|---|---|---|---|
| Class of Risk: | Select | Gender: | Female |
| Occupation Class: | 5 | Premium Term: | Monthly |

### Disability Income Insurance Policy Coverage and Premium Summary

| Coverage | Benefit Amount | Annual Premium |
|---|---|---|
| Disability Income Insurance Policy | $4,000 | $2,003.20 |
| Serious Illness Supplemental Benefit Endorsement | | No Charge |
| Occupational Rehabilitation, Modification and Access Benefits Endorsement | | No Charge |
| Annual premium before discounts and policy fee: | $4,000 | $2,003.20 |

| Applicable Policy Discount | Discount Percent | |
|---|---|---|
| Select Risk Class Discount | 25.00% | |
| Discounted Annual Premium before policy fee: | | $1,502.40 |
| Annual Policy Fee: | | $30.00 |
| Annual Premium after discounts and including policy fee: | | $1,532.40 |

Please call Berkshire Life Insurance Company of America with any questions about Your Policy. If You or the Policyowner are not satisfied after contacting Berkshire Life, contact the department of insurance for the state of Georgia, Telephone Number (404) 656-2070.

The Policy is issued with the Level premium payment option.  The level premium period will be to Age 65.

The Policy is issued with a True Own Occupation definition of Total Disability.

---

This Schedule Page replaces any previously issued Schedule Page.

ICC16 18ID

Schedule Page Date: 08/24/2021
Policy03

Berkshire Life Insurance Company of America, Pittsfield, MA

## Schedule Page 1b

| | | | |
|---|---|---|---|
| Insured: | WAIRIMU WAIYAKI | Policy Number: | Z4834040 |
| Policyowner: | WAIRIMU WAIYAKI | Policy Date: | September 8, 2021 |
| Loss Payee: | WAIRIMU WAIYAKI | | |

### About the Premiums



The premiums for the Policy are based on gender distinct rates.

If the Policyowner elects to increase, decrease or change Coverage, the Policy premium may change.  A new Schedule Page will be provided.

The following summarizes the premium for each Premium Term option during the level premium period for the Coverage selected.

For a Semiannual Premium Term:

> A premium of $789.19 must be paid every 6 months. This means an additional $45.98 or 3.00% will be paid per year, or a total annualized premium of $1,578.38.

For a Quarterly Premium Term:

> A premium of $402.49 must be paid every 3 months. This means an additional $77.56 or 5.06% will be paid per year, or a total annualized premium of $1,609.96.

For a Monthly Premium Term:

> A premium of $131.53 must be paid every month. This means an additional $45.96 or 3.00% will be paid per year, or a total annualized premium of $1,578.36.

For a Monthly Premium Term using Automatic Bank Draft (Guard-O-Matic):

> A premium of $131.53 must be paid every month. This means an additional $45.96 or 3.00% will be paid per year, or a total annualized premium of $1,578.36.

The additional charge, if any, that is added for paying premium more frequently than on an annual basis will remain the same until the end of the level premium period.

---

This Schedule Page replaces any previously issued Schedule Page.

ICC16 18ID

Schedule Page Date: 08/24/2021
Policy 04

Berkshire Life Insurance Company of America, Pittsfield, MA

## Schedule Page 1c

| | | | |
|---|---|---|---|
| Insured: | WAIRIMU WAIYAKI | Policy Number: | Z4834040 |
| Policyowner: | WAIRIMU WAIYAKI | Policy Date: | September 8, 2021 |
| Loss Payee: | WAIRIMU WAIYAKI | | |

### About the Policy Coverage

| Issue Age | Monthly Benefit | Elimination Period | Accumulation Period | Benefit Period | Expiration Date | Annual Premium |
|---|---|---|---|---|---|---|
| 40 | $4,000 | 90 Days | 210 Days | 10 Years | 09/08/2046 | $2,003.20 |

### Additional Exclusions and Limitations

The policy has exclusions and/or limitations in addition to those described in the Exclusions and Limitations provision of the Policy. Additional exclusion(s) and/or limitation(s) are attached to the Policy.

### About the Policy Benefit Period

The Benefit Period for the Policy meets the federal guidelines for nondiscrimination in employment because of age.

For a Ten-Year Benefit Period:

| If Disability begins | The Benefit Period is |
|---|---|
| Prior to age 55 | 120 months |
| At or after age 55, but before age 60 | To Age 65 |
| At or after age 60, but before age 61 | 60 months |
| At or after age 61, but before age 62 | 48 months |
| At or after age 62, but before age 63 | 42 months |
| At or after age 63, but before age 64 | 36 months |
| At or after age 64, but before age 65 | 30 months |
| At or after age 65, but before age 75 | 24 months |
| At or after age 75 | 12 months |

This Schedule Page replaces any previously issued Schedule Page.

This page intentionally left blank.

# TABLE OF CONTENTS

DEFINITIONS ........................................................................................................................3

PROVISIONS RELATING TO BENEFITS ...............................................................................7
Total Disability Benefit ...........................................................................................................7
Medical Care Requirement .....................................................................................................7
Presumptive Total Disability Benefit ......................................................................................7
Fractional Month ....................................................................................................................7
Concurrent Disability .............................................................................................................7
Recurrent Disability ...............................................................................................................7
New Benefit Period .................................................................................................................8
Waiver of Elimination Period ..................................................................................................8
Cosmetic Surgery ..................................................................................................................8
Waiver of Premium Benefit .....................................................................................................8
Hospice Care Benefit .............................................................................................................9

PROVISIONS RELATING TO SUSPENSION .........................................................................9
Suspension for Active Military Service ...................................................................................9
Suspension During Unemployment ........................................................................................9

EXCLUSIONS AND LIMITATIONS ......................................................................................10
Exclusions ...........................................................................................................................10
Pre-existing Condition Limitation ........................................................................................10
Mental and/or Substance-Related Disorders Benefit Limitation ..........................................11

PROVISIONS RELATING TO CLAIMS .................................................................................11
Authorization .......................................................................................................................11
Notice of Claim ....................................................................................................................11
Claim Forms ........................................................................................................................11
Proof of Loss .......................................................................................................................11
Payment of Claim .................................................................................................................11
Overpayment of Benefits ......................................................................................................12
Time of Claim Payment .........................................................................................................12
Examinations .......................................................................................................................12
Responsibility to Cooperate and Obtain Appropriate Medical Care ......................................12

PROVISIONS RELATING TO PREMIUM AND RENEWAL .....................................................12
Premium ..............................................................................................................................12
Grace Period ........................................................................................................................12
Premium Term Changes ........................................................................................................12
Conditional Renewal After The Expiration Date ....................................................................13
Reinstatement .....................................................................................................................13

GENERAL CONTRACT PROVISIONS ..................................................................................13
Consideration ......................................................................................................................13
When the Policy is Effective ..................................................................................................13
The Contract ........................................................................................................................13
Time Limit on Certain Defenses ...........................................................................................13
Termination of the Policy ......................................................................................................14
Legal Actions .......................................................................................................................14
Misstatements of Age or Gender ..........................................................................................14
Assignment ..........................................................................................................................14
Waiver of Policy Provisions ..................................................................................................14
Conformity with Interstate Insurance Product Regulation Commission Standards ...............14

Additional Coverage, if any, is shown in the Schedule Page and is described in the rider forms attached to the Policy.
Please call Berkshire Life Insurance Company of America at 1-888-482-7342 with any questions about the Policy.

## DEFINITIONS

**Accumulation Period**
The Accumulation Period is shown in the Schedule Page. It is an uninterrupted period of consecutive days that begins on the first day that You are Disabled and during which the Elimination Period must be satisfied.

**Age**
Age means Your age as of the Policy Anniversary that first occurs on or after the birthday on which You attain that age.

**Benefit Period**
Benefit Period is the longest period of time for which We will pay benefits for a continuous Disability. The Benefit Period is shown in the Schedule Page.

**Class of Risk** 
Class of Risk means the classification We select based on certain risk factors. It is shown in the Schedule Page.

**Coverage**
Coverage means the benefits available under the Policy.

**Disability or Disabled**
Disability means Total Disability. Disabled means Totally Disabled.

**Effective Date**
Effective Date means the date the Policy, or a rider, takes effect, in accordance with the Representations of the Proposed Insured and Owner section in the application.

**Elimination Period**
Elimination Period is the number of days You must be Disabled before benefits begin to accrue and starts on the first day that You are Disabled. The days within this period need not be consecutive, but they must occur within the Accumulation Period. Benefits will not accrue or be payable during the Elimination Period. The Elimination Period is shown in the Schedule Page.

**Expiration Date**
Expiration Date means the date on which Coverage ends, if the Policy has not previously terminated. The Expiration Date is shown in the Schedule Page.

**Full Time**
Full Time means at least 30 hours each week.

**Gainfully Employed or Gainful Employment**
Gainfully Employed or Gainful Employment means actively at work or engaged in activities for Income, remuneration, or profit.

**Hospital**
Hospital means a facility or institution legally operating as a hospital that:
- is mainly engaged in providing inpatient care and treatment of sick or injured persons, and routinely makes a charge for such care; and
- is supervised by a staff of physicians on the premises; and
- provides 24-hour nursing services on the premises by registered nurses.

In no event will Hospital include any facility or institution that is:
- operated as a rest home, a convalescent facility, or a long-term nursing care facility; or
- mainly for the care of the elderly, or which primarily provides custodial or educational care.

## Income

Income means:

- the compensation that You receive, or which is attributable to You, for work or personal services; and
- the income that You receive, or which is attributable to You, from a privately held business in which You have an ownership interest. This amount is determined after deduction of normal and customary unreimbursable Business Expenses, but before any other deductions, including, but not limited to, any deduction of Your personal income taxes.

Income includes, but is not limited to, salaries, wages, fees, commissions, bonuses, pension and/or profit sharing contributions, other payments for work or personal services, and business profits. Income also includes Unearned Income if the Unearned Income is the result of Your work or personal services. In all other cases, Income does not include Unearned Income.



*Unearned Income* includes income from dividends, capital gains, interest (including tax exempt interest), rentals, royalties, alimony, investments, business interests as an inactive owner, and income received from deferred compensation plans, formal sick pay plans, retirement plans, or disability income policies.

*Prior Income* means Your average monthly Income for either the last 24 calendar months just prior to the date on which You became Disabled, or for the two calendar years with the highest earnings in the three calendar years just prior to the date on which You became Disabled, whichever is greater.

*Current Income* means all Income for each month during a period of Disability. Current Income does not include Income received for work or personal services provided prior to the start of Disability. For the purpose of determining Current Income, Business Expenses may not exceed Prior Business Expenses.

*Business Expenses* means the normal and customary business expenses that may be deducted from gross earned income for federal tax purposes for the period in which Income is being determined.

*Prior Business Expenses* means Your average monthly Business Expenses for the same period in which Your Prior Income is determined.

*Loss of Income* means the difference between Your Prior Income and Your Current Income. This difference will be considered a Loss of Income to the extent it is solely the result of the Injury or Sickness that caused Your Disability.

## Injury

Injury means accidental bodily injury that first occurs on or after the Effective Date and while the Policy is in force, and that is not contributed to by Sickness. If a Disability occurs 30 days or more after the Injury, We will deem the Disability to be due to Sickness.

## Issue Age

Issue Age is shown in the Schedule Page. It is Your age on the Policy Date.

## Loss Payee

Loss Payee, named in the Schedule Page, is the person or entity to whom We will pay benefits.

## Mental and/or Substance-Related Disorders

Mental and/or Substance-Related Disorders means any disorder classified in the Diagnostic and Statistical Manual of Mental Disorders (DSM). This includes, but is not limited to, psychiatric, psychological, emotional, or behavioral disorders, or disorders related to stress or to substance abuse or dependency, or any biological or biochemical disorder or imbalance of the brain, regardless of the cause, including any complications thereof. This does not include dementia or cognitive impairment resulting from stroke, physical trauma, infection, or a form of senility or irreversible dementia such as Alzheimer's Disease.

*Diagnostic and Statistical Manual of Mental Disorders or DSM* means the most recent version of the diagnostic manual as published by the American Psychiatric Association (APA) as of the start of Your Disability. If the DSM is discontinued, We will use the replacement chosen by the APA, or by an organization which succeeds it, subject to approval by the Interstate Insurance Product Regulation Commission before using such replacement.

**Monthly Benefit**
Monthly Benefit is the amount We will pay for each month of Total Disability. It is shown in the Schedule Page.

**Occupation Class**
Occupation Class means the classification We select based on occupational risk. It is shown in the Schedule Page.

**Physician**
Physician means a person who is licensed by law in the state in which he or she practices as a Medical Doctor, Doctor of Osteopathy, or health care practitioner, and is acting within the scope of that license to treat Injury or Sickness that results in a Disability. A Physician cannot be:

- You and/or the Policyowner; or
- anyone related to You and/or the Policyowner by blood or marriage; or
- a member of Your and/or the Policyowner's household; or
- Your and/or the Policyowner's business or professional partner, employee or employer; or
- any person who has a financial affiliation or business interest with You and/or the Policyowner.

If Your Disability is due to a Mental and/or Substance-Related Disorder, the Physician must be a licensed psychiatrist or a licensed doctoral level psychologist.

**Policy**
Policy means the legal contract between the Policyowner and Us. The entire contract consists of the Policy, any application(s), Schedule Pages, and any attached riders, amendments, and endorsements.

**Policyowner**
Policyowner is the person or entity named as Policyowner in the Schedule Page. The Policyowner has the right to renew the Policy, to request a change in Coverage, to change the Loss Payee, and to make other Policy changes.

**Policy Anniversary**
Policy Anniversary is the yearly anniversary of the Policy Date while the Policy remains in force.

**Policy Date**
The Policy Date is the date from which premiums are calculated and become due. It is shown in the Schedule Page.

**Pre-existing Condition**
Pre-existing Condition means a physical or mental condition:

- that was misrepresented or not disclosed in the application; and
- for which You received professional medical advice, diagnosis or treatment within two years before the Effective Date; or
- that caused symptoms within one year before the Effective Date for which a prudent person would usually seek professional medical advice, diagnosis or treatment.

**Premium Term**
Premium Term is shown in the Schedule Page. It is the frequency of premium payments.

**Sickness**
Sickness means an illness or disease that first manifests itself on or after the Effective Date and while the Policy is in force. If a Disability occurs 30 days or more after the Injury, We will deem the Disability to be due to Sickness.

**Total Disability or Totally Disabled**

Total Disability or Totally Disabled means that, solely due to Injury or Sickness, You are not able to perform the material and substantial duties of Your Occupation. You will be Totally Disabled even if You are Gainfully Employed in another occupation so long as, solely due to Injury or Sickness, You are not able to work in Your Occupation.

Working an average of more than 40 hours in a week, in itself, is not a material and substantial duty.

**We, Us, Our and Berkshire Life**

We, Us, Our, and Berkshire Life mean Berkshire Life Insurance Company of America.

**You and Your**

You and Your mean the person named as the insured in the Schedule Page.

**Your Occupation**

Your Occupation means the occupation (or occupations, if more than one) in which You are Gainfully Employed during the 12 months prior to the time You become Disabled. Your Occupation does not mean a specific job title, designation, industry, or job with a certain employer.



Z4834040

## PROVISIONS RELATING TO BENEFITS

**Total Disability Benefit**
When You are Totally Disabled, the Monthly Benefit is paid as follows:

- You must become Totally Disabled while the Policy is in force.
- You must satisfy the Elimination Period.
- After You have satisfied the Elimination Period, the Monthly Benefit will be payable at the end of each month while You remain Totally Disabled.
- The Monthly Benefit will stop at the end of the Benefit Period or on the date You are no longer Totally Disabled, if earlier.

We will not increase the Monthly Benefit because You are Totally Disabled from more than one cause at the same time.

**Medical Care Requirement**
We will neither pay benefits nor waive premium under the Policy for any period of Disability during which You are not under a Physician's regular care that is appropriate, according to prevailing medical standards, for the conditions causing Disability. Appropriate care includes a plan between You and Your Physician that addresses Your goals for treatment and recovery, coordinates care among all Physicians involved in the treatment of the conditions causing Disability, and addresses Your functional status. The medical care must be provided by Physicians whose specialties are appropriate for Your Injury or Sickness causing Disability. You have the responsibility to obtain, and reasonably participate in, Your appropriate medical plan of care.

We will waive the medical care requirement during any claim under the Policy upon reasonable written proof that Your Injury or Sickness no longer requires the regular medical care of a Physician under prevailing medical standards. Such waiver will not restrict any of Our rights under the Policy.

**Presumptive Total Disability Benefit**
We will consider You to be Totally Disabled even if You are Gainfully Employed if, while the Policy is in force, Injury or Sickness results in Your total and complete loss of:

- sight in both eyes;
- hearing in both ears;
- speech; or
- the use, in their entirety, of both hands, both feet, or one hand and one foot.

We will then waive the unexpired portion of the Elimination Period and benefits will start to accrue from the date of Your Total Disability. The Monthly Benefit will be paid for as long as Your Total Disability continues, but not longer than the Benefit Period.

**Fractional Month**
If You are Disabled for less than a full month, We will pay 1/30 of the monthly benefit payable under the Policy for each day You are Disabled.

**Concurrent Disability**
A concurrent Disability is a Disability that is caused by more than one Injury and/or Sickness. Once a period of Disability begins, We will consider it to be one continuous period of Disability no matter what Injury or Sickness, or combination thereof, caused the Disability or caused it to continue. We will pay benefits for a concurrent Disability as if there were only one Injury or Sickness. In all cases, the amount and duration of benefits for a concurrent Disability will not be more than the maximum for any one Disability.

**Recurrent Disability**
A recurrent Disability is a Disability that is determined to be a continuation of a previous Disability. If We determine Your Disability to be a recurrent Disability, Your prior claim for Disability will resume and no new Elimination Period will be required. All terms and conditions of the Policy must be satisfied. We will deem Your Disability to be a recurrent Disability, if:

- after the previous Disability ends, You have returned to Gainful Employment Full Time for less than 6 months; and

- the Disability results entirely or in part from the same cause or causes as the previous Disability; and
- benefits were received under the Policy for the previous Disability.

If a Disability is determined not to be a recurrent Disability, then it will be considered a new and separate Disability.

## New Benefit Period
If the Benefit Period is 2 Years, 5 Years, or 10 Years, and You continue to be Disabled after the Benefit Period has ended, You will not be eligible for a new 2 Years, 5 Years, or 10 Years Benefit Period unless:
- Your Disability ends; and
- You return to Gainful Employment Full Time; and
- the Policy remains in force; and
- all terms and conditions of the Policy are satisfied.

## Waiver of Elimination Period
We will waive the Elimination Period if:
- You become Disabled within five years after the end of a previous Disability; and
- the previous Disability lasted more than six months; and
- We paid benefits under the Policy for the previous Disability; and
- You remain continuously Disabled for at least for 30 days.

## Cosmetic Surgery
We will deem You to be Totally Disabled as a result of Sickness if You become Totally Disabled due to complications from elective cosmetic surgery to improve Your appearance or correct a disfigurement, if the surgery occurs more than six months after the Effective Date. Cosmetic surgery will not include reconstructive surgery when the surgery is incidental to or follows surgery resulting from trauma, infection, other diseases of the involved part, or reconstructive surgery because of congenital disease or anomaly resulting in a functional defect.

We will not pay benefits for any Disability caused by, contributed to by, or which results from, complications due to elective cosmetic surgery that occurs during the first six months after the Effective Date.

## Waiver of Premium Benefit
If You are Disabled for the length of the Elimination Period due to Injury or Sickness not excluded from Coverage:
- We will refund that portion of any premium paid that applies to the period of Disability beginning with the date that You were first Disabled in the same claim.
- We will then waive any later premium that is due while You are continuously Disabled in the same claim and receiving benefits for the Disability.

We will continue to waive premium if You remain continuously Disabled after the end of the Benefit Period and before the Expiration Date. You must notify Us within six months of the date Your Disability ends. The pro rata portion of the premium for the remainder of the current Premium Term must be paid, and all premiums due thereafter must be paid, in order to keep the Policy in force. The Policy will terminate if You fail to notify Us within six months of the date Your Disability ends.

We will continue to waive premium for the six-month period after Your Disability ends. At the end of the six-month period, the pro rata portion of the premium for the remainder of the current Premium Term must be paid, and all premium due thereafter must be paid, in order to keep the Policy in force.

The Waiver of Premium Benefit will also apply if benefits are payable because You have met the requirements of the Recurrent Disability provision.

Nothing in this provision will change the conditions for renewal after the Expiration Date that require You to be Gainfully Employed Full Time for at least ten months each year.

If the Expiration Date occurs while premiums are being waived, the Policy will terminate.

**Hospice Care Benefit**

We will consider You to be Totally Disabled if, due to an Injury or Sickness, You are:

- under a Physician-ordered plan of care for hospice services; and
- receiving hospice services through a member of the National Hospice and Palliative Care Organization.

We will then waive the unexpired portion of the Elimination Period and benefits will start to accrue from the date a Physician-ordered plan of care is initiated for hospice services. The Monthly Benefit will be paid for as long as Your Total Disability continues, but not longer than the Benefit Period.

## PROVISIONS RELATING TO SUSPENSION

**Suspension for Active Military Service**

A suspension of the Policy may be requested if You begin active duty in the military of any nation, or international authority including, but not limited to the United States Army, Navy, Air Force, Marine Corps, Coast Guard, or National Guard. Active duty does not include training that lasts 90 days or less, or any period of travel preceding a period of active duty. If You are eligible for a suspension, the suspension of the Policy starts on the date We, or any authorized agent, receive the Policyowner's written request or a later date if requested by the Policyowner.

The Policy must be in force and premium must be paid to the date it is suspended. Active duty begins at 12:01 a.m. on the date You are obligated to appear for active duty and for which You will be paid for such duty. Acceptance of premium by Us while You are on active duty will not waive the suspension of the Policy. Any premium paid that applies on or after the date it is suspended will be refunded.

While the Policy is suspended:

- We will neither require premium nor pay benefits under the Policy; and
- the Policy will not cover losses that result from Injury or Sickness that occurs or begins while the Policy is suspended; and
- no privileges or options under the Policy or any attached riders may be exercised.

The suspension of the Policy ends when You are no longer on active duty. On the date We receive a written request to place the Policy back in force and the required pro rata premium, the Policy will be placed back in force as of the date active duty ended. We will not require evidence of insurability. Any such request and premium payment must be received by Us within 90 days after the date Your active duty ends. The Grace Period does not apply. The Policy will terminate if the premium for the Policy remains unpaid for more than 90 days after the suspension ends.

If the Policy is placed back in force following a suspension:

- premium will be at the same rate that it would have been had the Policy not been suspended.
- the Policy will cover only losses that result from Injury that occurs, or Sickness that first manifests itself, on or after the date the Policy is placed back in force.

In all other respects, the Policyowner and We will have the same rights under the Policy as before it was suspended.

If the Expiration Date occurs while the Policy is suspended, the Policy will terminate.

**Suspension During Unemployment**

A suspension of the Policy may be requested if:

- You become unemployed; and
- You have received at least eight weeks of governmental unemployment benefits; and
- the Policy has been in force for at least one year from the Effective Date; and
- the Unemployment Waiver of Premium rider is not attached to the Policy.

The suspension of the Policy starts on the date We receive:

- a written request to suspend the Policy; and
- proof that You are unemployed and have received eight weeks of governmental unemployment benefits.

The Policy must be in force and premium must be paid to the date it is suspended. Any premium paid that applies on or after the date it is suspended will be refunded.

While the Policy is suspended:
- We will neither require premium nor pay benefits under the Policy; and
- the Policy will not cover losses that result from Injury or Sickness that occurs or begins while the Policy is suspended; and
- no privileges or options under the Policy or any attached riders may be exercised.

The suspension will end at the earlier of:
- the date We receive a written request to end the suspension of the Policy, subject to proof that You are Gainfully Employed; or
- 12 months after the date on which the Policy is suspended.

When the suspension of the Policy ends, We will require pro rata premium to place the Policy back in force. The Grace Period does not apply. The Policy will terminate if the premium for the Policy remains unpaid for more than 90 days after the suspension ends.

If the Policy is placed back in force following a suspension:
- premium will be at the same rate that it would have been had the Policy not been suspended.
- the Policy will cover only losses that result from Injury that occurs, or Sickness that first manifests itself, on or after the date the Policy is placed back in force.

In all other respects, the Policyowner and We will have the same rights under the Policy as before it was suspended.

If the Policy has been suspended by reason of unemployment, the Policy may not be suspended by reason of unemployment again until 48 months have elapsed from the end of the last suspension by reason of unemployment.

If the Expiration Date occurs while the Policy is suspended, the Policy will terminate.

## EXCLUSIONS AND LIMITATIONS

**Exclusions**
We will not pay benefits for any Disability:
- caused by, contributed to by, or which results from, declared or undeclared war or acts of war ; or
- caused by, contributed to by, or which results from, active duty in the armed forces of any nation or international governmental authority or while serving in units auxiliary thereto or the National Guard or similar government organizations; or
- for any period in which You are legally incarcerated or legally detained; however, this exclusion does not apply to any incarceration or detainment of seven days or less; or
- caused by, contributed to by, or which results from, Your commission of, or attempt to commit, a felony as defined under local, state, or federal law; or
- caused by, contributed to by, or which results from, Your being engaged in an illegal occupation; or
- caused by, contributed to by, or which results from, any suspension, revocation, restriction, inactivation, surrender, or the like, of Your professional or occupational license or certification; or
- caused by, contributed to by, or which results from, an intentionally self-inflicted injury; or
- caused by, contributed to by, or which results from, a normal pregnancy or childbirth until 90 days have elapsed from the date of Disability or the Elimination Period has been satisfied, if later; or
- due to any loss We have excluded by name or description.

**Pre-existing Condition Limitation**
We will not cover any loss that begins in the first two years after the Effective Date from a Pre-existing Condition.

**Mental and/or Substance-Related Disorders Benefit Limitation**

If the Policy includes a Mental and/or Substance-Related Disorders Benefit Limitation, it is shown in the Schedule Page. Under this limitation, benefits We pay for a Disability caused by, contributed to by, or which results from, a Mental and/or Substance-Related Disorder are limited during Your lifetime to the number of months specified in the Schedule Page.

After We have paid benefits for a Disability caused by, contributed to by, or which results from, a Mental and/or Substance-Related Disorder for the number of months specified in the Schedule Page, We will not pay benefits for a Disability caused by, contributed to by, or which results from, a Mental and/or Substance-Related Disorder unless You are:

- continuously confined in a Hospital for treatment of a Disability caused by, contributed to by, or which results from, a Mental and/or Substance-Related Disorder; and
- under the regular care of a Physician.

Under no circumstance will We pay benefits for a Disability caused by, contributed to by, or which results from, a Mental and/or Substance-Related Disorder that We have excluded by name or description.

This limitation will not apply to Severe Disability or Catastrophic Disability due to a Functional Impairment or Cognitive Impairment, as defined in the Severe Disability Benefit Rider or Enhanced Catastrophic Disability Benefit Rider, if attached to the Policy.

**PROVISIONS RELATING TO CLAIMS**

**Authorization**

We will require an authorization, without alterations, signed by You, or Your duly authorized legal representative, for Us to obtain information, as often as is reasonably necessary.

**Notice of Claim**

You must give Us written notice of claim within 30 days after any loss covered by the Policy occurs or begins, or as soon after that as is reasonably possible. Written notice of claim, with complete information to identify You, will be sufficient if provided to Us, or any authorized agent, at Our home office, 700 South Street, Pittsfield, MA 01201.

**Claim Forms**

When We receive written notice of claim, We will send claim forms for filing proof of loss. Claim forms must be completed, signed and returned to Us, and are a required part of proof of loss. If We do not send You such forms within 15 days after receiving written notice of claim, You may submit a written statement within the time provided in the Policy for filing proof of loss, which provides the nature and extent of the loss for which a claim is made.

**Proof of Loss**

You must provide Us with written proof of loss at Our home office for any loss within 90 days after the end of each monthly period for which benefits are claimed. All losses must occur while the Policy is in force.

We can require any proof that We consider necessary to evaluate Your claim. Such proof may include, but is not limited to, medical records, employment records, business records, evidence of Your Prior Income and Current Income, financial records, and any other information necessary for Us to evaluate Your claim.

If You cannot give Us written proof of loss within the prescribed time, We will not deny or reduce Your claim if You give Us written proof of loss as soon as reasonably possible. Under no circumstance will We pay benefits if written proof of loss is delayed for more than one year, unless You have lacked legal capacity.

**Payment of Claim**

All terms and conditions of the Policy must be satisfied in order for benefits to become payable. After all required proof of loss is provided and the claim is approved by Us, benefits due under the Policy will be paid to the Loss Payee.

If any benefit of the Policy becomes payable to a person not competent to give a release, We may pay such benefit, up to $5,000, to a relative by blood or marriage of such person We deem appropriate. Any payment made in good faith under this provision will fully discharge Us to the extent of such payment.

The Policy, and all Coverage, terminates upon Your death. Any accrued benefits that are unpaid will be paid to Your estate.

If You would like to appeal Our claim determination, You may submit an appeal in writing to Us at Our Home office.

## Overpayment of Benefits

In the event that an overpayment of benefits occurs, We have the right to either recoup the overpayment from future claim benefits or require reimbursement within 60 days of notification of overpayment.

## Time of Claim Payment

Subject to satisfactory written proof of loss and upon Our determination that benefits are payable under the Policy, We will pay all accrued benefits that are due for Disability and other specified losses. Benefits will be immediately payable at the end of each month for which benefits are due while You are Disabled. Any amounts due that are unpaid when You are no longer Disabled will be paid promptly after We receive satisfactory written proof of loss. If We do not pay accrued benefits within 30 days after We receive satisfactory written proof of loss, We will pay simple interest at the rate of 10% per annum beginning with the 31st day after receipt of satisfactory written proof of loss and ending on the day the claim is paid.

## Examinations

We have the right to have You examined at Our expense and as often as We reasonably require to determine Your eligibility for benefits under the Policy as part of the Proof of Loss provision. We will select the examiner and the examination conditions. The examiner will be a specialist appropriate to the assessment of Your claim.

The examinations may include, but are not limited to, medical examinations, functional capacity examinations, psychiatric examinations, psychological examinations, neuropsychological examinations, vocational evaluations, rehabilitation evaluations, and occupational analyses. Such examinations may include any related tests that are reasonably necessary to the performance of the examination. We may deny or suspend benefits under the Policy if You fail to attend an examination, fail to cooperate with the examiner, or fail to comply with Our selected examination conditions.

You must meet with Our representative for a personal interview or review of records at such time and place, and as frequently, as We reasonably require. Upon Our request, You must provide appropriate documentation.

We have the right, at Our expense, to analyze or require an analysis of all relevant business, financial and operational records, including, but not limited to, Your personal, business and corporate federal and state tax returns, as often as We reasonably require by a financial examiner of Our choice. Such assessments may include analysis of business, financial and operational records for any business in which You have or may have an ownership interest. We can require that Your accounting practices be the same as those that were in effect immediately preceding the start of Your Disability.

## Responsibility to Cooperate and Obtain Appropriate Medical Care

You have the responsibility to cooperate with Us concerning all matters relating to the Policy including, but not limited to, any claims under the Policy. You have the responsibility to obtain, and reasonably participate in, all appropriate medical care for the condition for which benefits are claimed.

## PROVISIONS RELATING TO PREMIUM AND RENEWAL

## Premium

Premiums are due on the first day of each Premium Term. If You die, any premium paid that applies to the period after Your date of death will be refunded to the Policyowner or the Policyowner's estate.

## Grace Period

Except for the first premium, if the premium has not been paid by the premium due date, We allow a grace period of 31 days in which to pay each premium due. The Policy stays in force during the grace period. If the premium has not been paid by the end of the grace period, the Policy will lapse.

## Premium Term Changes

The Policyowner may submit a written request to Our home office to change the Premium Term. On request, and subject to Our approval, premiums may be paid annually or on a periodic basis. As shown in the Schedule Page, the

Premium Terms available are annual, semiannual, quarterly, or monthly. Any change to the Premium Term will begin with the next premium due date. We will not allow any change that would result in any premium not being due on a Policy Anniversary.

**Conditional Renewal After The Expiration Date**
After the Expiration Date, the Policy may be conditionally renewed on each Policy Anniversary, if:
- You are not Disabled; and
- You are Gainfully Employed Full Time for at least ten months each year; and
- the premium is paid on time; and
- the Policy is in force up to the Expiration Date.

If the Policyowner renews the Policy after the Expiration Date, We can require satisfactory written proof that You have continued to be Gainfully Employed Full Time for at least ten months each year. Upon Our approval, We will issue a new Schedule Page.

The only Coverage that will continue after the Expiration Date is for Total Disability, unless otherwise stated. The Benefit Period after the Expiration Date is shown in the Schedule Page.

The premium at each renewal will be based on Our premium rates in effect for Your Age, gender, Class of Risk, Occupation Class, any special class rating under the Policy, and other factors We are adding on a class basis at that time. We have the right to change such premiums on a class basis on any Policy Anniversary.

Any premium paid after the Expiration Date for a period not covered by the Policy will be refunded.

**Reinstatement**
If the Policy has lapsed at the end of the grace period, the Policyowner can apply to reinstate the Policy by completing an application for reinstatement and paying all overdue premium. We must receive the application within six months of the date the Policy lapsed.

We may require satisfactory evidence of insurability to reinstate the Policy. If We approve the application, the Policy will be placed back in force on the date of such approval. If We refuse to reinstate the Policy, We will refund the overdue premium. If We have neither approved nor refused the application in writing within 45 days after receipt of such application and overdue premium, the Policy will be reinstated on that 45th day.

If We, or an authorized agent, accept a premium without an application, the Policy will be placed back in force as though the Policy had not lapsed.

The reinstated Policy will cover only losses that result from Injury that occurs, or Sickness that first manifests itself, on or after the date of reinstatement. In all other respects, the Policyowner and We will have the same rights under the Policy as before it lapsed, subject to any provisions endorsed on or attached to the Policy in connection with reinstatement.

## GENERAL CONTRACT PROVISIONS

**Consideration**
We have issued the Policy in consideration of the representations in the application and payment of the first premium. A copy of the application is attached and is a part of the Policy.

**When the Policy is Effective**
The Policy takes effect at 12:01 a.m. on the Effective Date and terminates at 11:59 p.m. on the date on which the Policy terminates.

**The Contract**
The Policy with any application(s), Schedule Pages, and any attached riders, amendments, and endorsements make up the entire contract. No change in the Policy will be valid unless it has been endorsed on, or attached to, the Policy in writing by the president, a vice president, or the secretary of Berkshire Life.

No agent or broker has authority to change the Policy or waive any of its provisions.

**Time Limit on Certain Defenses**
After two years from the Effective Date of the Policy, no misstatements, except fraudulent misstatements, contained in the application for the Policy will be used to void the Policy or to deny a claim for loss incurred or Disability that starts after the end of such two-year period.

No claim for a loss incurred or Disability that starts after two years from the Effective Date of the Policy will be reduced or denied on the ground that a sickness or physical condition not excluded by name or specific description effective on the date of loss had existed before the Effective Date of the Policy.

In the event of a reinstatement, after two years from the date of reinstatement, no misstatements, except fraudulent misstatements, contained in the application for reinstatement will be used to void the Policy or to deny a claim for loss incurred or Disability, as defined in the Policy, commencing after the expiration of such two-year period.

In the event that any Coverage or rider is added to the Policy after the date the Policy takes effect, after two years from the date that such Coverage or rider was added to the Policy, no misstatements, except fraudulent misstatements, contained in the application for such Coverage or rider will be used to void such Coverage or rider or to deny a claim for loss incurred or Disability, as defined in the Policy, commencing after the expiration of such two year period. No claim for a loss incurred or Disability that starts after two years from the date such Coverage or rider takes effect will be reduced or denied on the ground that a sickness or physical condition, not excluded by name or specific description, effective on the date of loss had existed before the date such Coverage or rider took effect.

**Termination of the Policy**
The Policy will terminate when the first of the following occurs:
- the premium for the Policy remains unpaid at the end of the grace period; or
- the premium for the Policy remains unpaid for more than 90 days after the end of a suspension for active military service or a suspension for unemployment; or
- Our receipt of the Policyowner's written request to terminate the Policy; or
- the Expiration Date, unless the Policy is conditionally renewed; or
- Your death.

**Legal Actions**
No one can bring an action at law or in equity under the Policy until 60 days after written proof of loss, as required by the Proof of Loss provision under the Policy, has been furnished. In no case can an action be brought against Us more than three years after written proof of loss must be furnished.

**Misstatements of Age or Gender**
If Your age or gender is misstated on the application, Coverage will be what the premium paid would have purchased based on the correct age or gender.

If We would not have issued the Policy at Your correct age, there will be no insurance and We will refund all premiums paid for the period not covered by the Policy.

**Assignment**
An assignment will take effect on the date the assignment is signed unless otherwise specified by the Policyowner. We will be bound by an assignment of the Policy for any claim only if We receive a written assignment from the Policyowner on a form provided by Us before We pay the benefits claimed. We will not be responsible for the validity or tax consequences of any assignment.

**Waiver of Policy Provisions**
Our failure to invoke or enforce any right under the terms of the Policy will not be deemed a waiver of that right.

**Conformity with Interstate Insurance Product Regulation Commission Standards**
The Policy was approved under the authority of the Interstate Insurance Product Regulation Commission ("Commission") and issued under the Commission standards. Any provision of the Policy that, on the Effective Date, is in conflict with the Commission standards for the Policy is hereby amended to conform to the Commission standards for the Policy as of the Effective Date. We will notify the Policyowner of any such change no less than 30 days before the change becomes effective.

This page intentionally left blank.

**Berkshire Life Insurance Company of America**
**700 South Street**
**Pittsfield, MA 01201**

## SERIOUS ILLNESS SUPPLEMENTAL BENEFIT ENDORSEMENT

This endorsement is a part of the Policy to which it is attached. All provisions of the Policy apply to this endorsement and remain the same except where modified by this endorsement.

The Policy is hereby amended by adding the following:

**Serious Illness Supplemental Benefit**
We will pay a Serious Illness Supplemental Benefit in addition to the Monthly Benefit when You are Totally Disabled solely due to Cancer, Stroke and/or Heart Attack. The Serious Illness Supplemental Benefit is equal to 50% of the Monthly Benefit. It is paid for a maximum of 12 months during the life of the Policy and is only payable while the Monthly Benefit is payable.

The Serious Illness Supplemental Benefit is in addition to any other benefit provided by the Policy or any attached riders. In no event will We pay more than 50% of the Monthly Benefit for the Serious Illness Supplemental Benefit, even if You are Totally Disabled from more than one cause at the same time.

> *Cancer* means a disease that is identified by the presence of malignant cells, or a malignant tumor, characterized by uncontrolled and abnormal growth and spread of invasive malignant cells.

> *Stroke* means any cerebrovascular incident due to rupture or acute occlusion of blood flow to the cerebral artery. The Stroke must cause a neurological deficit resulting in complete or partial loss of function involving the motion or sensation of a part of the body and must last more than 24 hours. The Stroke must be positively identified by a Physician based upon documented neurological deficits and must be confirmed by neuroimaging studies. Traumatic Brain Injury caused by external forces will not be considered a Stroke.

> *Heart Attack* means the death or damage of a portion of the heart muscle as a result of inadequate blood supply to the relevant area. The diagnosis for this must be evidenced by:
> - new electrocardiogram changes; and
> - elevation of cardiac-specific enzymes or troponins.

**Berkshire Life Insurance Company of America**

*Sean D. Quinn*

Secretary

ICC16 SISB

1

Policy21

This page intentionally left blank.

**Berkshire Life Insurance Company of America**
**700 South Street**
**Pittsfield, MA 01201**

# OCCUPATIONAL REHABILITATION, MODIFICATION AND ACCESS BENEFITS ENDORSEMENT

This endorsement is a part of the Policy to which it is attached. All provisions of the Policy apply to this endorsement and remain the same except where modified by this endorsement.

The Policy is hereby amended by adding the following:

**Occupational Rehabilitation Benefit**
If You are Disabled, You may be eligible for an Occupational Rehabilitation Benefit. We will pay for a program of occupational rehabilitation if:

- You and We agree in advance of beginning the occupational rehabilitation program; and
- the program is a formal plan that will help You return to Gainful Employment in Your Occupation; and
- the program is directed by an organization or individual licensed or accredited to provide occupational rehabilitation or education to persons who are disabled; and
- the program is documented in a signed written agreement.

The extent of Our role in this program will be determined by the written agreement. We will pay only those costs, as agreed to, that are not otherwise covered by insurance, workers' compensation, or any public fund or program.

We will periodically review the program and Your progress in it. We will continue to pay for the program as long as We determine that it is helping You return to Gainful Employment in Your Occupation.

Participating in a program of occupational rehabilitation will not in itself be considered a recovery from the Injury or Sickness that resulted in Your Disability, and benefits will continue as provided in the Policy.

**Modification and Access Benefit**
If You are Disabled, You may be eligible for a Modification and Access Benefit. If a modification is determined by Us to be appropriate and reasonable to enable You to perform Your material and substantial duties, We will reimburse You for the cost that You incur for such modification upon written proof acceptable to Us as set forth in a signed written agreement. The purpose of any such modification must be to help You return to Gainful Employment in Your Occupation.

**Berkshire Life Insurance Company of America**

Sean D. Quinn

Secretary

This page intentionally left blank.

☑ **Berkshire Life Insurance Company of America**
Home Office: 700 South Street, Pittsfield, MA 01201
A wholly owned stock subsidiary of The Guardian Life
Insurance Company of America, New York, NY

☐ **The Guardian Life Insurance Company of America**
Administrative Office: 700 South Street, Pittsfield, MA 01201
(Please check appropriate company(ies). Any insurer checked above
is herein referred to as the "Company.")

Z4834040

## AMENDMENT TO APPLICATION

This Amendment is made a part of Policy No. Z4834040 to which it
is attached and becomes effective on the Policy Date.

It is hereby requested that the application for insurance made to
Berkshire Life Insurance Company of America on 8/3/2021 be
amended as follows:

Application for Individual Disability Insurance: Part I

Question No. 9:

"The issuing company for this policy is Berkshire Life Insurance
Company of America and therefore references to the company
and the application forms are Berkshire Life Insurance Company
of America."

Application for Individual Disability Insurance – Individual Disability
Insurance Supplement

Question No. 1.C:

Occupation Class (if unsure, leave blank): "5"

\*\*\*\*\*\*\*\*\*\*

It is agreed that these amendments and
declarations are to be taken and considered
a part of said application and subject to the
representations and agreements therein,
and that the said application and these
amendments are to be taken as a whole and
considered as the basis, and form part of
the contract or policy issued thereon.

It is further represented that the
statements and answers in said application
were complete and true when made and that
no changes have occurred which would
make said statements and answers incorrect
or incomplete as of the present date.

The undersigned declare that a duplicate
copy of the foregoing amendment to
application is attached to the policy.

Date _____

e-Signed by Wairimu Waiyaki
on 08/27/2021

_____
Wairimu Waiyaki – Insured

This page intentionally left blank.

# §  Guardian®

**Berkshire Life Insurance Company of America**
Home Office: 700 South Street, Pittsfield, MA 01201
A wholly owned stock subsidiary of The Guardian Life
Insurance Company of America, New York, NY

Z4834040

Attached to and made a part of Policy No. Z4834040.

Application for insurance policy dated 8/3/2021.

In consideration of the issuance of this policy by Berkshire Life
Insurance Company of America, it is hereby understood and agreed
that the policy shall not cover loss because of disability caused by:

"In consideration of the issuance of this policy by Berkshire Life
Insurance Company of America, it is hereby understood and agreed
that the policy shall not cover loss because of disability contributed
to or caused by any sickness or injury incurred while outside of the
50 United States, the District of Columbia or Canada including
treatment, surgery or complications thereof. This does not apply to
incidental travel where the policyholder is out of the 50 United
States, the District of Columbia or Canada for less than 31 days and
has made plans to return."

anything in the policy to the contrary notwithstanding.

**********

It is agreed that this Special Exceptions
Agreement is to be taken and considered a
part of this policy and subject to the
representations and agreements therein.

It is further represented that the
statements and answers in said application
were complete and true when made and that
no changes have occurred which would
make said statements and answers incorrect
or incomplete as of the present date.

The undersigned declare that a duplicate
copy of the foregoing Special Exceptions
Agreement is attached to the policy.

Date _____

e-Signed by Wairimu Waiyaki
on 08/27/2021

_____
Wairimu Waiyaki – Insured

This page intentionally left blank.

 **Guardian**®

X   **Berkshire Life Insurance Company of America**
Home Office: 700 South Street, Pittsfield, MA 01201
A wholly owned stock subsidiary of The Guardian Life
Insurance Company of America, New York, NY

# APPLICATION FOR **INDIVIDUAL** DISABILITY INSURANCE: PART I

## SECTION 1: PROPOSED INSURED INFORMATION

**A.** First Name
Wairimu

Middle Initial

Last Name
Waiyaki

Suffix

Previous Last Name (if applicable)
Waiyaki

**B.** Gender: ☐ Male   ☒ Female

**C.** Social Security Number: ▮▮▮▮▮▮

**D. 1.** Residence Address:

Street
302 perimeter center north

City
Atlanta

State
GA

Zip Code
30346-____

**2.** If less than two years, state prior address:

Street
339 Meadow farm lane

City
Lawrenceville

State
GA

Zip Code
30045-____

**E.** Date of Birth (mm/dd/yyyy) : ▮▮▮1981

**F.** State, Country of Birth: Kenya

**G.** Phone: (678)469-1124

**H.** Email Address: wairimu.waiyaki@gmail.com



## SECTION 1: PROPOSED INSURED INFORMATION (CONTINUED)

**I.** **1.** Are you a U.S. citizen or green card holder? [X] Yes [ ] No

**If No, please answer the following:**

**2.** Visa Type: [_____]

**3.** Visa Duration: [_____]

**4.** Do you plan to reside in another country besides the U.S. in the next 2 years? [ ] Yes [ ] No

If Yes, include details:

[_____]

**5.** When do you expect to obtain U.S. citizenship or permanent residency (green card)?

[_____]



## SECTION 2: BUSINESS INFORMATION

**A.** **1.** Current Employer: [Voya Financial]

**2.** Number of years with current employer: [>2 years]

**3.** If less than two years, state prior employer: [_____]

**B.** Business Address:

Street

[5780 Powers Ferry Rd]

City [Atlanta]    State [GA]    Zip Code [303274347]

**C.** Business Website: [www.voya.com]

**D.** Nature of Business or Industry: [Financial services]

**E.** How many people are employed by your business/organization? [4000]

**F.** **1.** Is this a home-based business? [ ] Yes [X] No

**2.** If yes, what percentage of time do you spend working outside the home? [_____] %

## SECTION 3: OCCUPATIONAL INFORMATION

**A.** Occupation: Computer Analyst

**B.** Number of years working in this occupation: 2

**C.** How many hours per week are you at work in this occupation? 40

**D. 1.** Job Title: Hr. Analyst

   ***For Medical Occupations Only: Physicians, Fellows, Residents, and Students –
   Please list certification(s) or intended certification(s):***

   **2.** Medical Board Specialty Certification:

   **3.** Medical Board Subspecialty Certification:

**E.** Academic degrees, professional licenses, and/or designations held (if none, so state):

   BA in communication, MSC organizational development

**F. 1.** Are you any of the following?

   ☐ Student    ☐ Resident    ☐ Fellow    ☒ None

   **2.** If yes, what is your expected graduation date?

**G.** Describe the specific duties of your occupation, including but not limited to surgery, travel, sales, and supervisory duties. If the space provided is not adequate, provide additional details in Remarks & Special Requests Section 9.

| Description of Specific Duties | % of Time Devoted to Each Duty |
|---|---|
| Data analysis | 100% |
|  |  |
|  |  |

**H. 1.** Do you ever perform any manual duties such as operating machinery, carrying or lifting objects in excess of 30 lbs., climbing ladders, or driving a delivery vehicle? ................................................................. ☐ Yes ☒ No

   If yes, please provide details:

   **2.** Do you ever wear any protective gear or attire? ................................................................................ ☐ Yes ☒ No

   If yes, please provide details:

## SECTION 3: OCCUPATIONAL INFORMATION (CONTINUED)

**I.**  Are you presently employed, and have you been continuously at work full-time (at least 30 hours per week) performing the usual duties of your occupation for the past 180 days?................................................. [X] Yes   [ ] No

If no, explain in Remarks & Special Requests Section 9.

**J.**  Do you supervise any employees? .................................................................................................................... [ ] Yes   [X] No

If yes, how many? [____]

**K.**  Employment Status?  [X] Employee (no ownership)

[ ] Sole Proprietor or 1099 Employee

[ ] Partner [____] % of ownership

[ ] S-Corp Shareholder [____] % of ownership

[ ] C-Corp Shareholder [____] % of ownership

**L.**  Do you plan to change your occupation, occupational duties, job, or employment within the next six months? ...... [ ] Yes   [X] No

If yes, provide details:

[                                                                              ]

**M.**  Do you have any other part-time or full-time occupations, jobs, or employment?..................................... [ ] Yes   [X] No

If yes, provide details:

[                                                                              ]

---

## SECTION 4: OTHER INSURANCE COVERAGE

**A.** Within the past five years, have you had any application for insurance declined, postponed, modified, rated, cancelled, rescinded, or have you withdrawn a pending application, or had a renewal or reinstatement request refused? .................................................................................................................. ☐ Yes ☒ No

If yes, provide details in Remarks & Special Requests Section 9

**B. 1.** Within the past six months, have you applied for life insurance through The Guardian Life Insurance Company of America ("Guardian") or any other company? ................................................... ☐ Yes ☒ No

**2.** If yes, what company? [                                    ]

**C.** Do you have any disability insurance in force or applied for, or for which you are eligible within the next 12 months with any company, including Guardian or Berkshire Life Insurance Company of America ("Berkshire")? .... ☐ Yes ☒ No
If yes, list all coverages in the chart below.

**Type:** Individual (ID) ; Long–Term Disability (LTD) ; Short–Term Disability (STD) ; Overhead Expense (OE) ; Disability Buy-Out (DBO) ; Retirement Protection (RP) ; if other, please specify.

***Include all sources of insurance including Association, Employer, Group, Self-Purchased, etc.***

| | | Column A | Column B | Column C | Column D |
|---|---|---|---|---|---|
| 1. | Company Name | | | | |
| 2. | Type | | | | |
| 3. | Status (In-Force, Applied For, Eligible For) | | | | |
| 4. | Benefit Amount | | | | |
| 5. | Benefit Period | | | | |
| 6. | Catastrophic Benefit | | | | |
| 7. | Retirement Protection | | | | |
| 8. | Employer-Paid* | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No |
| 9. | Is this coverage being replaced? If yes, date to be replaced | ☐ Yes ☐ No Date: _____ | ☐ Yes ☐ No Date: _____ | ☐ Yes ☐ No Date: _____ | ☐ Yes ☐ No Date: _____ |
| 10. | Amount to be replaced | | | | |

*\* "Employer-paid" means your employer pays the premium and does not include it as taxable income to you.*

## SECTION 5: PERSONAL FINANCIAL INFORMATION

For purposes of this section only, Earned Income means the income you are required to report to the Internal Revenue Service ("IRS") for income tax purposes. This includes W-2 wages, salary, bonuses, your share of net business income, and all other compensation you received for work or services. Explain in Remarks & Special Requests Section 9, any significant fluctuations between years.

**A. Earned Income**

**1.** Year-to-Date This Calendar Year: `$45,000.00`

**2.** Actually Filed with the IRS Last Calendar Year: `$64,903.00`

**3.** Actually Filed with the IRS Two Calendar Years Ago: `$38,219.00`

**B.** What percentage of your Earned Income is commission-based? `0` % (if none, enter 0)

**C.** Would you like to have contributions such as your 401(k) or 403(b) considered as part of your Earned Income?

☐ Yes   ☒ No   ☐ Not Applicable

*If yes, complete question (D).*

**D.** Total Annual Retirement Contributions:

| **Personal Contributions** | **Employer Contributions** |
|---|---|
| **1.** Year-To-Date This Calendar Year: | **4.** Year-To-Date This Calendar Year: |
| **2.** Last Calendar Year: | **5.** Last Calendar Year: |
| **3.** Two Calendar Years Ago: | **6.** Two Calendar Years Ago: |

## SECTION 6: ADDITIONAL INFORMATION

**(Please provide details in Remarks & Special Requests Section 9 to all "Yes" answers)**

**A.** Have you or a business you've owned ever filed, or plan to file, for bankruptcy? ................................................. ☐ Yes ☒ No

If yes, Type: ☐ Personal   ☐ Business   Filing Date: _____   Discharge Date: _____

**B.** Within the next 2 years, do you plan to reside or travel outside of the U.S.? ........................................... ☒ Yes ☐ No

**C.** Within the past 5 years, have you ever: pled guilty to, pled no contest to, or been convicted of reckless driving, driving while impaired or intoxicated, or any other moving violation; had your license suspended or revoked; or been involved in any accident in which you were found to be at fault? ................................. ☐ Yes ☒ No

**D.** In the past 10 years, have you ever pled guilty to, pled no contest to, or been convicted of any felony or misdemeanor? ................................................................................................................. ☐ Yes ☒ No

**E.** Do any of the following apply? 1) Your professional or occupational license or certification has ever been suspended, revoked, restricted, inactivated, surrendered, or the like; 2) There is a pending investigation or complaint concerning you with a regulatory, governmental, or other entity that oversees your profession; 3) You have ever been disbarred; or 4) You have ever been fined or sanctioned by an entity that oversees your profession. ................................................................. ☐ Yes ☒ No

**F.** Have you participated within the last 3 years, or do you intend within the next 2 years to engage in any of the following activities: contact martial arts; mountain or rock climbing; motor sports events or racing (auto, truck, cycle, boat, etc.); scuba diving; skydiving; hang gliding; parachuting; and/or paragliding? .................. ☐ Yes ☒ No

(If yes, complete the Avocation Supplement)

## SECTION 6: ADDITIONAL INFORMATION (CONTINUED)

**(Please provide details in Remarks & Special Requests Section 9 to all "Yes" answers)**

**G.** Have you used any tobacco or nicotine products and/or nicotine delivery systems in the last 12 months? ............. ☐ Yes  ☒ No

(If you no longer use any of the above, date last used: _____ )

**H.** Are you currently a member of the US armed forces or National Guard, have you received military orders
to appear for service, been placed on alert, or have you entered into a written agreement to become a
member of the military? ....................................................................................................................... ☐ Yes  ☒ No

## SECTION 7: PREMIUM INFORMATION

**A.** What percentage of the premium for the coverage you are applying for will be paid by your employer?
☒ None  ☐ 100%  ☐ Other _____

**B.** If your employer will pay any part of the premium, will it be reportable by you as taxable income? ........................ ☐ Yes  ☐ No

**C.** If any part of the premium is paid by you, is it paid with: ☐ Pre–Tax dollars  ☒ After–Tax dollars

**D.** Premium Mode: ☐ Annual  ☐ Semi-annual  ☐ Quarterly  ☒ Monthly (available with Group Bill and Automatic Bank Draft only)

**E.** Billing Type: ☐ Paper Bill

☒ Automatic Bank Draft: ☒ New Service (Complete Request for Guard-O-Matic (GOM) Arrangement Form R223)

☐ Add to my existing Guardian or Berkshire services – GOM #: _____

☐ Group Bill: ☐ Existing Group # _____

☐ New – Billing Name: _____  Common Billing Day _____

**F.** Send premium notices to:
☒ Residence

☐ Owner's Address

☐ Business

☐ Other

_____

**G.** Prepayment of Premium – *A prepayment must be accompanied by a signed Conditional Receipt.*

☒ No money has been submitted with this application.

☐ _____ has been submitted with this application.

See Supplement for Application for Insurance

Z4834040

## SECTION 8: COVERAGE APPLIED FOR

Indicate all insurance applied for with this application and specify coverage desired. Complete the appropriate application supplement as noted below:

[X] Individual Disability (Including Retirement Protection) – Complete Individual Disability Insurance Supplement

[ ] Overhead Expense (Including Business Loan Protection) – Complete Overhead Expense Insurance Supplement

[ ] Disability Buy-Out – Complete Disability Buy-Out Insurance Supplement

[ ] Reducing Term – Complete Reducing Term Insurance Supplement

## SECTION 9: REMARKS & SPECIAL REQUESTS

Identify each detail by question number. For additional space use the Supplement to Application for Insurance.

See Supplement for Application for Insurance

## SECTION 10: AMENDMENTS OR CORRECTIONS (FOR HOME OFFICE USE ONLY)

Policy36

## SECTION 11: REPRESENTATIONS OF THE PROPOSED INSURED AND OWNER

Those parties who sign below, agree that:

1. This Application for Disability Insurance: Part I, Application for Insurance: Part II – Health and Medical History, any required Representations to the Medical Examiner, and any other supplements or amendments to this Application for Disability Insurance: Part 1 will form the basis for, and become part of and attached to any policy or coverage issued and is herein referred to as the "Application."

2. The Proposed Insured has read the application and all statements and answers as they pertain to the Proposed Insured, and all of the statements that are part of this Application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them.

3. No agent, broker or medical examiner has any right to accept risks, make or change contracts, or to waive or modify any of the Company's rights or requirements.

4. Any misrepresentation or omission, if found to be material, may adversely affect acceptance of the risk, claims payment, or may lead to rescission of any policy that is issued based on this Application.

5. All coverage you have identified to be replaced in answer to Question 4C of this Application will be permanently terminated on or before the date(s) indicated. If not, it is understood and agreed that the Company reserves all rights provided in any policy issued and those available by law. Further, benefits under any policy or coverage issued based on this Application may be reduced by any monthly indemnity or benefit under such existing policies.

6. The policy date is the date from which premiums are calculated and become due. Except as provided in the Conditional Receipt (if an advance payment has been made and acknowledged and such Receipt issued), no insurance shall take effect unless and until the policy is delivered, the first premium is paid, and there has been no change in the health, the income level, status of employment or occupation of the proposed insured. If disability insurance becomes effective in the manner stated in the Conditional Receipt, the amount of such insurance shall not exceed the limits set forth in such Receipt. If a request is made for coverage to commence as of a specified date, it is understood and agreed that certain rights under the conditional receipt may be waived.

7. Changes or corrections made by the Company and noted in the "Amendments or Corrections" section are ratified by the owner upon acceptance of a policy containing this Application with the noted changes or corrections. Any change in plan of insurance, amount, age at issue, gender, class or benefits shall require the written consent of the owner and the Proposed Insured.

8. By paying premiums on a basis more frequently than annually, the total premium payable during one year's time will be greater than if the premium were paid annually. That is, the cost of paying annualized periodic premiums will be more than the cost of paying one annual premium.

9. If applying for Disability Buy-Out insurance, if no written buy-sell agreement is in place, one must be executed before a disability occurs that would qualify for benefits under the policy. Otherwise, the Company will have no liability other than to refund premiums. We will require written assurance within one year of the policy date that a written buy-sell agreement is in place. If no written assurance is received, the policy will be voided and the premiums refunded.

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

| Signed at City, State | Today's Date (mm/dd/yyyy) |
|---|---|
| Atlanta                          GA | 8/3/2021 |

| Signature of Proposed Insured | Signature of Applicant/Owner if Other than Proposed Insured |
|---|---|
| eSigned by Wairimu Waiyaki | |

Witness Signature

# Guardian®

**Customer Service Office**
**Mailing Address**
P.O. Box 26100
Lehigh Valley, PA 18002-6100

## Supplement to Application for Insurance

**The insurer identified below will be herein referred to as the "Company."**

THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA

*Unless subsidiary checked below:*

☐ THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC.

☒ BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

---

This Supplement is to be attached to and made part of the policy.

Please print. *The Owner and/or Proposed Insured must initial any changes.*

### SECTION A: Proposed Insured Information

First Name  Wairimu          MI          Last Name  Waiyaki

Date of Birth (mm/dd/yyyy)  ███ 1981

Use space below to amplify and extend answers to questions in your application dated  8/3/2021 .

| Form # | Question # | Details |
|--------|-----------|---------|
| Part 1 Section 5 - Personal Financial Information<br>5 - Significant fluctuations details: Worked half a year two years ago | | |
| Part 1 Section 6 - Additional Information<br>6B - Travel details: Nairobi, Kenya December 15th 2021 to January 13th 2022. Visiting Family | | |
| Part 1 Section 7 - Premium Information<br>7E - Billing Type: I have selected Monthly-Automatic Bank Draft Service and would like to provide banking information at policy delivery. | | |

### SECTION B: Signatures

I (We) represent that the answers as amplified and extended above are true and complete to the best of my (our) knowledge and belief and are part of my (our) application to the Company as described above.

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

Signed at  Atlanta                                    GA                  8/3/2021
_____                    _____
City and State                                      Month/Day/Year

eSigned by Wairimu Waiyaki

_____          _____
Signature of Proposed Insured                Signature of Applicant/Owner

_____
Witness



IMNB0018000200101

**S Guardian®**

**Berkshire Life Insurance Company of America**
Home Office: 700 South Street, Pittsfield, MA 01201
A wholly owned stock subsidiary of The Guardian Life
Insurance Company of America, New York, NY

## APPLICATION FOR INDIVIDUAL DISABILITY INSURANCE – INDIVIDUAL DISABILITY INSURANCE SUPPLEMENT

If applying for an individual disability insurance policy, complete sections 1 and 2 only. If applying for a separate Retirement Protection Plus policy, complete sections 1 and 3 only.

### SECTION 1: PROPOSED INSURED INFORMATION

**A.** First Name: Wairimu    Middle Initial:    Last Name: Waiyaki    Suffix:

**B.** Date of Birth (mm/dd/yyyy): ████1981    **C.** Occupation Class (if unsure, leave blank): 6

**D.** Is this part of an Approved Employee Multi-Life Program (Unisex Rates)?    ☐ Yes    ☒ No

**E.** GSI Case # (Fully Underwritten Buy-Ups Only):

### SECTION 2: INDIVIDUAL DISABILITY INSURANCE

**A.** Monthly Benefit Amount: $4,000

**B.** Elimination Period:

☐ 30 Days    ☐ 60 Days    ☒ 90 Days    ☐ 180 Days    ☐ 360 Days    ☐ 720 Days

**C.** Benefits Selection:
*Select options from a single column only.*

|  | Essential Package | Select Package | Premier Package |
|---|---|---|---|
| **1. Definition of Disability** | Two-Year Modified Own Occupation (Any Occupation Thereafter) | Two-Year True Own Occupation (Modified Thereafter) | True Own Occupation |
| **2. Premium Structure** | Level | ☐ Level    ☐ Graded | ☒ Level    ☐ Graded |
| **3. Benefit Period** | ☐ 2 Year    ☐ 10 Year<br>☐ 5 Year    ☐ To Age 65 | ☐ 2 Year    ☐ To Age 65<br>☐ 5 Year    ☐ To Age 67<br>☐ 10 Year    ☐ To Age 70 | ☐ 2 Year    ☐ To Age 65<br>☐ 5 Year    ☐ To Age 67<br>☒ 10 Year    ☐ To Age 70 |

ICC18 DI-IDI-2018-1    Page 1



Z4834040

## SECTION 2: INDIVIDUAL DISABILITY INSURANCE (CONTINUED)

| | Essential Package | Select Package | Premier Package |
|---|---|---|---|
| **4. Increase Option** | N/A | ☐ Future Increase Option<br><br>☐ Benefit Purchase Rider | ☐ Future Increase Option<br><br>☐ Benefit Purchase Rider |
| **5. Automatic Benefit Enhancement (ABE)** | N/A | ☐ Automatic Benefit Enhancement (ABE) | ☐ Automatic Benefit Enhancement (ABE) |
| **6. Mental and/or Substance-Related Disorders Limitation** | 12 Month | ☐ 12 Month<br>☐ 24 Month<br>☐ Unlimited | ☐ 12 Month<br>☐ 24 Month<br>☒ Unlimited |
| **7. Partial/Residual Disability** | ☐ Short-Term Residual | ☐ Enhanced Partial<br>☐ Basic Partial | ☐ Enhanced Partial<br>☐ Basic Partial |
| **8. Cost of Living Adjustment (COLA)** | N/A | ☐ Four-Year Delayed<br>☐ 3% Compound<br>☐ 6% Maximum | ☐ Four-Year Delayed<br>☐ 3% Compound<br>☐ 6% Maximum |
| **9. Severe Disability**<br>*Cannot be combined with Catastrophic Disability* | N/A | ☐ Severe Disability<br><br>Benefit Amount | ☐ Severe Disability<br><br>Benefit Amount |
| **10. Catastrophic Disability (CAT)**<br>*Cannot be combined with Severe Disability* | N/A | ☐ Enhanced CAT<br><br>Benefit Amount | ☐ Enhanced CAT<br><br>Benefit Amount |
| **11. Extended Benefits** | N/A | ☐ Graded Lifetime Benefit for Total Disability<br>☐ Lump Sum Disability | ☐ Graded Lifetime Benefit for Total Disability<br>☐ Lump Sum Disability |
| **12. Retirement Protection** | N/A | ☐ Retirement Protection Plus<br><br>Monthly Benefit<br><br><br>Elimination Period:<br>☐ 180 Days  ☐ 360 Days | ☐ Retirement Protection Plus<br><br>Monthly Benefit<br><br><br>Elimination Period:<br>☐ 180 Days  ☐ 360 Days |
| **13. Student Loan Protection** | N/A | ☐ Student Loan Protection Rider (Complete Student Loan Protection Rider Supplement) | ☐ Student Loan Protection Rider (Complete Student Loan Protection Rider Supplement) |

## SECTION 2: INDIVIDUAL DISABILITY INSURANCE (CONTINUED)

| | Essential Package | Select Package | Premier Package |
|---|---|---|---|
| **14. Additional Benefits** | ☐ Social Insurance Substitute<br><br>Benefit Amount<br><br>[          ] | ☐ Social Insurance Substitute<br><br>Benefit Amount<br><br>[          ]<br><br>----------------------------------<br><br>☐ Supplemental Benefit Term Rider<br><br>Benefit Amount<br><br>[          ]<br><br>Elimination Period:<br>☐ 90 Days    ☐ 180 Days<br><br>Benefit Term:<br>☐ 10 Year    ☐ 15 Year<br><br>----------------------------------<br><br>☐ Unemployment Waiver of Premium | ☐ Social Insurance Substitute<br><br>Benefit Amount<br><br>[          ]<br><br>----------------------------------<br><br>☐ Supplemental Benefit Term Rider<br><br>Benefit Amount<br><br>[          ]<br><br>Elimination Period:<br>☐ 90 Days    ☐ 180 Days<br><br>Benefit Term:<br>☐ 10 Year    ☐ 15 Year<br><br>----------------------------------<br><br>☐ Unemployment Waiver of Premium |

## SECTION 3: RETIREMENT PROTECTION PLUS – SEPARATE POLICY

**A.** Benefit Amount:  $ [                    ]

**B.** Premium Structure:  ☐ Level    ☐ Graded

**C.** Elimination Period:  ☐ 180 Days    ☐ 360 Days

**D.** Supplemental Benefits:
   *You may only select one in each row.*

| 1. Increase Option | ☐ FIO: $ [                    ] | | |
|---|---|---|---|
| 2. Cost of Living Adjustment (COLA) | ☐ Four-Year Delayed | ☐ 3% Compound | ☐ 6% Maximum |

Z4834040

This page intentionally left blank.

# § Guardian·

## Medical Supplement for Individual Life And Disability Insurance – Part II

The insurer identified below will be herein referred to as the "Company."

**THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA**
*Unless subsidiary checked below:*

☐ THE GUARDIAN INSURANCE & ANNUITY COMPANY, INC.
☐ BERKSHIRE LIFE INSURANCE COMPANY OF AMERICA

**Customer Service Office**
**Mailing Address**
P.O. Box 26100
Lehigh Valley, PA 18002-6100

### Health and Personal History of Proposed Insured

**SECTION A:  Proposed Insured Information**

1. First Name  Wairimu          MI _____    Last Name  Wajyaki
2. Date of Birth (mm/dd/yyyy)  ████ 1981

**SECTION B:  Primary Doctor Information**

Please provide information about the primary care doctor you last consulted within the past 5 years.  If you have consulted more than one primary care doctor within the past 5 years, please provide complete details in the Additional Details section.

1. Primary Care Doctor  None
2. Street Address _____
   City _____  State _____  Zip _____
3. Phone _____  4. Date Last Seen (mm/dd/yyyy) _____
5. Reason ☐ Routine Physical  ☐ Check-up  ☐ Other  *If reason for visit is "Other," please explain.* _____

6. What treatment or medication was given or recommended? _____
7. Was your primary care doctor the last physician seen? ☑ Yes  ☐ No  *If "No," please complete the following:*
   a. Doctor Last Seen _____
   b. Street Address _____
      City _____  State _____  Zip _____
   c. Phone _____  d. Date Last Seen (mm/dd/yyyy) _____
   e. Reason _____
   f. What treatment or medication was given or recommended? _____

Z4834040

2108190600

IMNB5218000240105

Policy43

**SECTION C:** Proposed Insured's Health/Medical History

*If you answer "Yes" to any of the questions below, please provide details in the Additional Details section.*

1. Height **5** ft **~** in     2. Weight **18?** lbs

3. Have you lost more than 10 lbs in the past year? ☐ Yes ☑ No *If "Yes," please provide the following information:*

   a. Reason for change in weight: ☐ Diet ☐ Exercise ☐ Illness ☐ Pregnancy (women only)

   ☐ Other _____

   b. How much weight have you lost in the past year? ⬭ lbs

4. In the past 10 years, have you been diagnosed with, treated for, tested positive for, been given medical advice by a member of the medical profession or received a consultation or counseling for:

   a. any cancer or tumor? ☐ Yes ☑ No

   b. high blood pressure, heart murmur, irregular heartbeat, palpitations, heart attack, coronary artery disease, chest pain, or any other disease or disorder of the heart, blood vessels or circulatory system? ☐ Yes ☑ No

   c. high blood sugar, high cholesterol, diabetes, thyroid disorder or any disease or disorder of the blood (except HIV), skin, glands or endocrine system? ☐ Yes ☑ No

   d. disease or disorder of the kidney, bladder or urinary systems (including blood or protein in the urine)? ☐ Yes ☑ No

   e. any disease or disorder of the prostate, breasts, reproductive system (including infertility) or genital organs or complications of pregnancy? ☐ Yes ☑ No

   f. Crohn's disease or colitis, blood in stool, hepatitis or any disease or disorder of the liver, colon, pancreas, spleen, stomach, intestines, esophagus, rectum, gall bladder or hernia or surgery for weight loss? ☐ Yes ☑ No

   g. arthritis, chronic pain, auto-immune or connective tissue disorder, multiple sclerosis, Parkinson's disease or tremor? ☐ Yes ☑ No

   h. any disease, disorder or condition of the back, neck, spine/spinal cord, joints, limbs or bones? ☐ Yes ☑ No

   i. asthma, emphysema, chronic obstructive pulmonary disease, shortness of breath, disease or disorder of the lungs or respiratory system, allergies or any sleep disorder including sleep apnea? ☐ Yes ☑ No

   j. seizure disorder, stroke, transient ischemic attack (TIA), memory loss, Alzheimer's disease, dizziness, headache or disease or disorder of the brain? ☐ Yes ☑ No

   k. any disease or disorder of the eyes, vision, ears, hearing, nose or throat? ☐ Yes ☑ No

   l. anxiety, depression, stress, attention deficit disorder (ADD), post-traumatic stress disorder (PTSD) or any other mental, nervous, eating or emotional disorder? ☐ Yes ☑ No

   m. chronic fatigue syndrome, fibromyalgia, neuritis, neuralgia, narcolepsy, insomnia, restless leg syndrome, Epstein Barr virus, Lyme Disease, muscle weakness or any disease or disorder of the muscles, nerves or nervous system? ☐ Yes ☑ No

5. Have you had an amputation of any kind or any physical deformity, handicap or impairment that has been diagnosed by a member of the medical profession? ☐ Yes ☑ No

6. Within the past 10 years, have you received any speech, physical or occupational therapy? ☐ Yes ☑ No

7. Within the past 10 years, have you tested positive, been diagnosed by or received treatment from a member of the medical profession for Acquired Immune Deficiency Syndrome (AIDS), AIDS Related Complex (ARC), or Human Immunodeficiency Virus (HIV)? ☐ Yes ☑ No

8. Are you currently taking prescription medication or have you been prescribed any medication within the past 6 months that was not already disclosed? ☐ Yes ☑ No

Policy44

2108190060O

**SECTION C: Proposed Insured's Health/Medical History (continued)**

9.  Are you currently taking non-prescription medication or supplements?  ☐ Yes ☑ No

10. Describe your complete use of tobacco or tobacco products below. This includes, but is not limited to: cigarettes, cigars, pipes, chewing tobacco, snuff, hookah, nicotine gum, nicotine patch and electronic delivery devices. *If additional space is needed, please provide in the Additional Details section.*

| Type of Product | Quantity | Frequency | Date Last Used (mm/dd/yyyy) |
|---|---|---|---|
| Cigarettes | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Cigars | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Pipes | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Chewing Tobacco | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Other_____ | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| ☐ I have never used tobacco products. | | | |

11. Describe your complete use of alcohol below. This includes, but is not limited to: beer, wine and liquor. *If additional space is needed, please provide in the Additional Details section.*

*Note: Alcohol types and equivalent amounts: 1 Beer = 12 oz. 1 Wine = 4 oz. 1 Liquor = 1 oz.*

| Type of Product | Quantity | Frequency | Date Last Used (mm/dd/yyyy) |
|---|---|---|---|
| Beer | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Wine | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Liquor | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| Other_____ | | ☐ Daily ☐ Weekly ☐ Monthly ☐ Yearly | |
| ☐ I have never used alcohol. | | | |

12. Describe your use of marijuana, in any form, in the last 5 years below. If you have not used marijuana in the last 5 years, check here ☑

    a. Purpose: ☐ Recreational/Social ☐ Medicinal *If purpose is medicinal, please provide the below information:*

        i. Reason for Use: _____

        ii. Prescribing Doctor's Name: _____.

    b. Date Last Used (mm/dd/yyyy): _____

    c. Frequency: _____ times per: ☐ day ☐ week ☐ month ☐ year

13. **Age 15 and over:** In the past 10 years, have you used stimulants, cocaine, heroin, morphine, hallucinogens, methamphetamines, narcotics, opioids or any other illicit drug or controlled substance except as prescribed by a member of the medical profession? *If "Yes," complete the Alcohol and Drug Usage Supplement.*  ☐ Yes ☑ No

14. **Age 15 and over:** In the past 10 years, have you had or been advised to have counseling or treatment for alcohol or drug use or been advised by a member of the medical profession to limit your use of alcohol or drugs? This includes both prescription and non-prescription drugs. *If "Yes," complete the Alcohol and Drug Usage Supplement.*  ☐ Yes ☑ No

15. **Age 15 and over:** Are you now pregnant? *If "Yes," expected delivery date:* _____  ☐ Yes ☑ No

Z4834040

2108190600

**SECTION C: Proposed Insured's Health/Medical History (continued)**

16. Are you currently receiving or within the last 5 years, have you had a sickness, injury or any other condition for which you received or applied for any disability benefits including worker's compensation, social security disability insurance or any other form of disability insurance? ☐ Yes ☐ No

17. Within the past 5 years, have you had a physical exam, check-up of any kind or diagnostic tests performed that were not previously disclosed, except for HIV or AIDS tests? ☐ Yes ☑ No

18. Within the past 5 years, have you been advised by a member of the medical profession to have surgery or any diagnostic tests that were *not* performed, except for HIV or AIDS tests? ☐ Yes ☑ No

19. Do you have an appointment scheduled within the next 6 months to seek medical attention, excluding routine physicals? ☐ Yes ☑ No

20. Other than as previously stated on this application, are you currently or in the past 5 years have you received medical advice, counseling, or treatment for any medical, surgical, psychological, or psychiatric condition from a medical professional or have you been a patient in a hospital, clinic, rehabilitation center or other medical facility? ☐ Yes ☑ No

21. Age 6 and below and Life coverage only:

   a. Was the Proposed Insured born prematurely (gestational age less than 37 weeks)? ☐ Yes ☐ No
     If "Yes," provide gestational age: _____

   b. Was the Proposed Insured's birth weight less than 5 pounds? ☐ Yes ☐ No

   c. Has the Proposed Insured ever been evaluated, tested, treated for or diagnosed with any growth or developmental delays or failure to thrive? ☐ Yes ☐ No

**SECTION D: Family History**

1. To the best of your knowledge, have any immediate family members (father, mother or sibling) died before age 60 from cardiovascular disease or cancer? ☐ Yes ☑ No

2. To the best of your knowledge, have any immediate family members (father, mother or sibling) been diagnosed by a member of the medical profession before age 60 with cardiovascular disease or cancer? ☐ Yes ☑ No

3. Have any immediate family members been diagnosed or treated by a member of the medical profession for diabetes, mental illness or a hereditary condition of the brain, muscles, nervous system, eyes or kidneys? ☐ Yes ☑ No

4. Complete the chart below for all immediate family members (father, mother or sibling). The Gender column only needs to be completed for siblings. *If additional space is needed, please provide in the Additional Details section.*

| Family Member | Gender Male (M) or Female (F) | Age of Onset | Age if Living | Age at Death | Condition and/or Cause of Death (if applicable) |
|---|---|---|---|---|---|
| Father | NA | | | unknown | unknown |
| Mother | NA | | | | |
| Sibling | ☑M ☐F | | 03 | | |
| Sibling | ☐M ☐F | | 27 | | |
| Sibling | ☐M ☐F | | 27 | | |
| Sibling | ☐M ☐F | | | | |
| Sibling | ☐M ☐F | | | | |
| Sibling | ☐M ☐F | | | | |

**ICC18-C-MEDSUPP 2018**       **Page 4 of 5**

2108190O600

## SECTION E: Additional Details

**Provide all details to any "Yes" answers, identifying each detail by question number.** Include, if applicable, all dates, diagnoses, stage or severity of diagnoses, known symptoms, tests performed, treatment (recommended or received), medications (types and amounts), surgeries, length of disability, days of work missed, job restrictions or modifications due to injury or sickness, physical limitations and the names and addresses of all treatment providers including, but not limited to, physicians, medical or mental health professionals, counselors, psychotherapists, chiropractors, acupuncturists, practitioners or hospitals, clinics or other medical or mental health facilities. For additional space use the Supplement to the Application for Insurance.



## SECTION F: Signatures

I understand and agree that the statements and answers in this application: (1) are written as made by me; (2) to the best of my knowledge and belief are full, complete and true; and (3) shall be a part of the contract of insurance, if issued.

**Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law.**

Signed at _____ 08/14/21
                 City and State                    Month/Day/Year

_____            _____
Signature of Witness                      Signature of Proposed Insured

**ICC18-C-MEDSUPP 2018**                Page 5 of 5

This page intentionally left blank.

This page intentionally left blank.

Z4834040

Case 1:23-mi-99999-UNA   Document 2699-5   Filed 08/23/23   Page 51 of 52



*Issued by Berkshire Life Insurance Company of America, Pittsfield, MA,*
*a wholly owned stock subsidiary of*
*The Guardian Life Insurance Company of America, New York, NY.*



**Berkshire Life Insurance Company of America**
Home Office: 700 South Street, Pittsfield, MA 01201
A wholly owned stock subsidiary of The Guardian
Life Insurance Company of America, New York, NY

# DECLARATION OF INSURABILITY

Proposed Insured: Wairimu Waiyaki     Policy Number: Z4834040

For the policy identified above, I represent that since the date of the earlier of the Application for Insurance: Part II – Health and Medical History, the Representations to the Medical Examiner Part 2, or the Application For Disability Insurance: Part I to Berkshire Life Insurance Company of America (the "Application)", I have **not**:

1. had a physical exam or checkup of any kind;
2. been diagnosed, treated, or tested positive by a member of the medical profession, counselor, or professional of the healing arts for any disease, illness, or injury;
3. received medical advice or counseling from any physician, medical or mental health professional, counselor, psychotherapist, chiropractor, or other practitioner;
4. been a patient in a hospital, clinic, or other medical or mental health facility;
5. had any change in occupation, job title, duties, employment, income, residence, military status, or tobacco or nicotine use;
6. applied nor am I eligible for other life, disability or accident insurance;
7. had a professional license suspended or revoked, nor have I been notified of any pending investigation or complaint concerning my professional license; or
8. filed for bankruptcy nor has any business I own or have owned filed for bankruptcy.

In addition to the above representations, I further represent that: 1) as of today's date, I am actively at work on a full time basis at least 30 hours per week performing the same duties and occupation(s) identified in the Application for Disability Insurance: Part I; and 2) there are no exceptions to the above representations other than as set forth below:

Exceptions:

**This Declaration of Insurability does not require disclosure of medical, financial, occupational or other facts already provided by me, or about me, and which are stated in an amendment, or other form(s) attached to the policy or policies delivered to me. It is agreed that this Declaration: (1) shall be made part of the Application for the policy identified above; and (2) is made to induce Berkshire Life Insurance Company of America to deliver said policy to the owner.**

Signed at City, State     Today's Date (mm/dd/yyyy)

GA     08-27-2021

Signature of Proposed Insured

e-Signed by Wairimu Waiyaki
on 08/27/2021

**Instructions to the Producer:** This policy must not be delivered if there are any exceptions noted above. If there are no exceptions to the above representations: 1) make sure that Proposed Insured signs and dates where indicated; 2) attach a completed copy to the policy; and 3) forward the original to the Home Office immediately with any other reporting requirements. Delivery of the policy must be withheld and the policy returned to the Home Office if: 1) there are any exceptions to the above representation; or 2) this form is not signed by the Proposed Insured.

