# EXHIBIT A
# (State Court Pleadings)

## General Civil and Domestic Relations Case Filing Information Form

*Tiki Brown*

**Tiki Brown**
Clerk of State Court
Clayton County, Georgia
Waukecia Lawrence

☐ Superior or ☒ State Court of ___Clayton_____ County

| For Clerk Use Only | |
|---|---|
| **Date Filed** ___7/21/2023_____ | **Case Number** ___2023CV01870_____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**
Joseph Chad Brannen, as the Temporary Administrator

Last        First        Middle I.    Suffix    Prefix

of the Estate of Peggy Glass, Deceased

Last        First        Middle I.    Suffix    Prefix

Last        First        Middle I.    Suffix    Prefix

Last        First        Middle I.    Suffix    Prefix

**Defendant(s)**
Jonesboro Nursing and Rehabilitation Center, d/b/a

Last        First        Middle I.    Suffix    Prefix

Jonesboro Nursing and Rehabilitation Center;

Last        First        Middle I.    Suffix    Prefix

D&N, LLC; DTD HC, LLC;

Last        First        Middle I.    Suffix    Prefix

ABC Corporations; and John/Jane Does I and II

Last        First        Middle I.    Suffix    Prefix

**Plaintiff's Attorney** ___William F. Holbert___    **State Bar Number** _360088____    Self-Represented ☐

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                              **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

2023CV01870                                                    e-Filed 7/21/2023 4:35 PM

*Tiki Brown*
**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
Waukecia Lawrence

## IN THE STATE COURT OF CLAYTON COUNTY, GEORGIA
### 9151 TARA BOULEVARD, ROOM 1CL181, JONESBORO, GEORGIA 30236
### TELEPHONE: (770) 477-3388 * FACSIMILE: (770) 472-8159

JOSEPH CHAD BRANNEN, AS THE

TEMPORARY ADMINISTRATOR OF THE

ESTATE OF PEGGY GLASS, DECEASED

                                    Plaintiff

Vs.

D & N, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

                                    Defendant

**2023CV01870**
_____
Case Number

## SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):
You are hereby summoned and required to file with the Clerk of said Court and serve upon
Plaintiff's Attorney, whose name and address is:

William F. Holbert
Prieto, Marigliano, Holbert & Prieto, LLC
1555 Mount Vernon Road
Atlanta, GA 30338

answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will
be taken against you for the relief demanded in the complaint.

                    **TIKI BROWN**
                    **CLERK OF COURT**
                    **State Court of Clayton County**

W. Lawrence
By:_____
Deputy Clerk

2023CV01870
e-Filed 7/21/2023 4:35 PM

*Tiki Brown*
**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
Waukecia Lawrence

# IN THE STATE COURT OF CLAYTON COUNTY, GEORGIA
9151 TARA BOULEVARD, ROOM 1CL181, JONESBORO, GEORGIA 30236
TELEPHONE: (770) 477-3388 * FACSIMILE: (770) 472-8159

JOSEPH CHAD BRANNEN, AS THE

TEMPORARY ADMINISTRATOR OF THE

ESTATE OF PEGGY GLASS, DECEASED

Plaintiff

Vs.

DTD HC, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

Defendant

**2023CV01870**

Case Number

## SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):
You are hereby summoned and required to file with the Clerk of said Court and serve upon Plaintiff's Attorney, whose name and address is:

William F. Holbert
Prieto, Marigliano, Holbert & Prieto, LLC
1555 Mount Vernon Road
Atlanta, GA 30338

answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will be taken against you for the relief demanded in the complaint.

**TIKI BROWN**
**CLERK OF COURT**
**State Court of Clayton County**

W. Lawrence
By:_____
Deputy Clerk

2023CV01870

e-Filed 7/21/2023 4:35 PM

*Tiki Brown*
**Tiki Brown**
Clerk of State Court
Clayton County, Georgia
Waukecia Lawrence

# IN THE STATE COURT OF CLAYTON COUNTY, GEORGIA
9151 TARA BOULEVARD, ROOM 1CL181, JONESBORO, GEORGIA 30236
TELEPHONE: (770) 477-3388 * FACSIMILE: (770) 472-8159

JOSEPH CHAD BRANNEN, AS THE

TEMPORARY ADMINISTRATOR OF THE

ESTATE OF PEGGY GLASS, DECEASED

                             Plaintiff

Vs.

Jonesboro Nursing and Rehabilitation Center, LLC
d/b/a Jonesboro Nursing and Rehabilitation Center
c/o Reg. Agent: United Corporate Services, Inc.
4228 First Avenue, Suite 10
Tucker, GA 30084

                             Defendant

2023CV01870
_____
Case Number

*Served 7-25-23 @ 1:19 pm Patricia*

## **SUMMONS**

TO THE ABOVE NAMED DEFENDANT(S):
You are hereby summoned and required to file with the Clerk of said Court and serve upon
Plaintiff's Attorney, whose name and address is:

William F. Holbert
Prieto, Marigliano, Holbert & Prieto, LLC
1555 Mount Vernon Road
Atlanta, GA 30338

answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, Judgment by default will
be taken against you for the relief demanded in the complaint.

                             **TIKI BROWN**
                             **CLERK OF COURT**
                             **State Court of Clayton County**

    W.Lawrence
By:_____
Deputy Clerk

2023CV01870

e-Filed 7/21/2023 4:35 PM

*Tiki Brown*

Tiki Brown
Clerk of State Court
Clayton County, Georgia
Waukecia Lawrence

## IN THE STATE COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| JOSEPH CHAD BRANNEN, AS THE TEMPORARY ADMINISTRATOR OF THE ESTATE OF PEGGY GLASS, DECEASED )))) | |
| Plaintiffs, ) | CIVIL ACTION FILE NO.: |
| ) | 2023CV01870 |
| v. ) | |
| ) | |
| JONESBORO NURSING AND ) | |
| REHABILITATION CENTER, LLC D/B/A ) | |
| JONESBORO NURSING AND ) | |
| REHABILITATION CENTER; D & N, LLC; ) | |
| DTD HC, LLC; ABC CORPORATION; AND ) | |
| JOHN/JANE DOES I AND II ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES

COME NOW Joseph Chad Brannen, as the Temporary Administrator of the Estate of Peggy Glass, deceased, Plaintiffs in the above-styled matter (hereinafter "Plaintiffs") and files this their complaint for damages against Defendants Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; D & N, LLC; DTD HC, LLC; ABC Corporation and John/Jane Does I and II (hereinafter "Defendants") as follows:

1.

In this action, Plaintiffs show that the Defendants' violations of federal and state law and regulations in the operation of a long-term care facility, negligence per se, professional negligence, simple negligence and breach of contract in the provision of nursing home care, treatment and services led directly and proximately to severe and life-threatening injuries, illness, pain, suffering and death of Peggy Glass. At all times material to this lawsuit, Ms. Glass received care, treatment and supervision while residing at Jonesboro Nursing and Rehabilitation Center which is located in

Clayton County, Georgia. Plaintiff therefore seeks damages to recover upon claims arising under tort and contract.

## JURISDICTION AND VENUE

2.

Plaintiff, Joseph Chad Brannen, is an individual over the age of nineteen (19) years and is a County Administrator for Clayton County. He brings this lawsuit on behalf of the Estate and Wrongful Death claimants.  Plaintiff hereby subjects himself to the jurisdiction of this Court.

3.

Defendant Jonesboro Nursing and Rehabilitation Center, LLC is a domestic limited liability company formed under the laws of the State of Georgia with its principal place of business in Jonesboro, Georgia.  This Defendant owns, operates and/or manages a skilled nursing facility called Jonesboro Nursing and Rehabilitation Center located at 2650 Highway 138 SE Jonesboro, Clayton County, Georgia 30236.  This Defendant can be served with process by service upon its registered agent for service of process in this State: United Corporate Services, Inc., 4228 First Avenue, Suite 10, Tucker, DeKalb County, Georgia 30084.

4.

Defendant D & N, LLC is a foreign limited liability company formed under the laws of the State of New York with its principal place of business in Orchard Park, New York. Defendant D & N, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia. This Defendant owns, operates and/or manages a skilled nursing facility called Jonesboro Nursing and Rehabilitation Center located at 2650 Highway 138

SE Jonesboro, Clayton County, Georgia 30236.  This Defendant can be served with process by service upon Leslie Wilson at 3690 Southwestern Boulevard, Orchard Park, New York 14127.

5.

Defendant DTD HC, LLC is a foreign limited liability company formed under the laws of the State of New York with its principal place of business in Orchard Park, New York. Defendant DTD HC, LLC is subject to the jurisdiction of this Court pursuant to Georgia law, including O.C.G.A. § 9-10-91, the Georgia Long Arm Statute, in that it transacted business within the State of Georgia, committed a tortuous act and/or omission within the State of Georgia, and owns, uses or possesses real property within the State of Georgia.  This Defendant owns, operates and/or manages a skilled nursing facility called Jonesboro Nursing and Rehabilitation Center in Jonesboro, Clayton County, Georgia.  This Defendant can be served with process by service upon Leslie Wilson at 3690 Southwestern Boulevard, Orchard Park, New York 14127.

6.

Defendant ABC Corporation is a corporate entity whose correct name is not known at the current time, but is known to Defendants. Upon information and belief, Defendant ABC Corporation is an entity capable of being sued in Georgia and is subject to the jurisdiction and venue of this Court. Once the true and correct identity of Defendant ABC Corporation has been established, it will be substituted into this action by amendment and pursuant to Georgia law.

7.

Upon proper service of process, and based on the foregoing, jurisdiction is proper in this Court.  Venue is proper in this Court under O.C.G.A. § 9-10-31.

2023CV01870

## PARTIES

8.

Plaintiff, Joseph Chad Brannen, is a County Administrator for Clayton County and is the Temporary Administrator for the Estate of Peggy Glass, deceased. Plaintiff shows upon information and belief, Ms. Glass died without a surviving spouse, child, or parent. Therefore, Plaintiff, as Temporary Administrator of the Estate of Peggy Glass, brings this lawsuit in his representative capacity of Administrator of the Estate and on behalf of the undetermined wrongful death beneficiaries.

9.

The Defendant entities known as Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; D & N, LLC; and DTD HC, LLC (Collectively "Defendants") own, operate, and/or manage a long-term skilled nursing care facility called Jonesboro Nursing and Rehabilitation Center (hereinafter "Jonesboro" or "Jonesboro Nursing and Rehab" located at 2650 Highway 138 SE Jonesboro, Clayton County, Georgia 30236. The Defendant entities were contractually charged with responsibility for the provision of residence, care, treatment and convalescent/rehabilitation services to Ms. Glass. The Defendants negligently failed at their responsibilities as described below.

10.

Defendant John/Jane Doe I and II at all relevant times was the Administrator at Jonesboro during Ms. Glass's residency. Defendant John/Jane Doe II at all relevant times was the Director of Nursing Services at Jonesboro during Ms. Glass's residency. In these capacities, each of these Defendants were responsible for ensuring that Ms. Glass received the medical and nursing care, treatment and services necessary to address her medical and nursing needs and her needs with

2023CV01870

respect to her activities of daily living.  These Defendants were also responsible for discovering, investigating, preventing and correcting all instances of resident abuse, mistreatment and neglect. They were responsible for proper and timely communication of Ms. Glass's medical condition and needs to her doctor when necessary, and providing prompt medical care when it was necessary.

## FACTS

11.

Ms. Glass was admitted to Jonesboro Health and Rehabilitation Center on July 1, 2020, for short-term rehabilitation following a stroke.

12.

On July 2, 2020, she was evaluated by Speech Therapy, and Ms. Glass demonstrated the ability to self-feed, good oral intake, functional but prolonged mastication, timely swallows, mild oral residue/pocketing on the left side, and overt signs of aspiration x 2 with a cough. It was noted she might require diet modification. Pharyngeal swallow might be delayed, and she might require compensatory strategies and instruction.

13.

On July 8, 2020, the MDS Assessment indicated Ms. Glass had a BIMS 13/15. She required supervision and set up only for eating.

14.

On July 19, 2020, the staff received training on compensatory strategies to utilize with Ms. Glass during oral intake, as she was moderate independent with safely consuming liquids and solids.

15.

She completed rehabilitation and was discharged home September 2020.

16.

On March 27, 2021, she presented to Piedmont Fayette Hospital with extreme weakness. She was brought in by her friend because she was weak and unable to walk. She reported a decrease in intake of liquids and food for about a week.

17.

On April 1, 2021, she was discharged to Jonesboro Health and Rehabilitation Center.

18.

On June 8, 2021, the Nurses Note indicated Ms. Glass was alert and oriented, and able to make her needs known. She was able to maneuver with a walker through the halls. She needed assistance with ADLs, but could feed herself independently.

19.

On June 20, 2021, Ms. Glass was transferred to Piedmont Henry Hospital because of altered mental status. She had been unable to feed herself or sit and eat for long periods of time. She appeared to be hallucinating.

20.

On June 22, 2021, Ms. Glass returned to Jonesboro HR with a diagnosis of neurocognitive disorder likely from previous stroke.

21.

On June 28, 2021, the MDS Assessment noted Ms. Glass had a BIMS of 7/15. She required supervision of one staff member for eating.

22.

On July 13, 2021, Ms. Glass was noted to have seizure-like activity, The physician was notified and medications were ordered.

2023CV01870

23.

On July 14, 2021, the Dietary Data History and Initial Screening Report noted a significant change in Ms. Glass' status, and she was totally dependent with meals.

24.

On July 14, 2021, the Nurses Note indicated Ms. Glass was attempting to climb out of bed. She was incontinent of bowel and bladder. She was unable to hold utensils steady to place food in her mouth, and so the staff fed her.

25.

On July 28, 2021, the SHC Medical Partners Note indicated Ms. Glass was evaluated because of worsening weakness and decline. She had been sent to the ED on 7/26/21 and returned on 7/27/21 with a diagnosis of hydrocephalus.

26.

On August 4, 2021, Ms. Glass choked during lunch. She was transferred to Piedmont Henry Hospital, and died.

## COUNT I
## VIOLATION OF FEDERAL STATUTES AND
## REGULATIONS OF 42 CFR §483.1 et seq.

27.

Jonesboro is a licensed and certified long-term care facility that provides skilled nursing care as a participant in the Medicare program and that provides nursing care as a participant in the Medicaid program; Jonesboro receives funding under the Medicare and Medicaid programs.

28.

The U.S. Department of Health & Human Services has promulgated a number of regulations pursuant to its authority under OBRA at 42 USCA § 1395i-3 related to the care,

treatment and services provided to residents of skilled nursing facilities participating in the Medicare program and nursing facilities participating in the Medicaid program. Among those regulations are the following:

a)  42 CFR § 483.10(a)(1) and 10(e) provide that the resident has a right to live a dignified existence,

b)  42 CFR § 483.12(b) requires the facility to implement protocols to protect the resident from neglect,

c)  42 CFR § 483.12(c)(1) requires that all instances of patient neglect be reported to the facility Executor and other officials in accordance with state law,

d)  42 CFR § 483.12(c)(2) requires that the facility maintain evidence of its investigation into patient neglect and must prevent future neglect of patients,

e)  42 CFR § 483.12(c)(4) requires that results of neglect investigation be reported to the Executor and appropriate state authorities,

f)  42 CFR § 483.10(a)(1) requires the facility to care for its residents in a manner that maintains and enhances the resident's quality of life,

g)  42 CFR § 483.35 requires that each resident be provided services in the facility to accommodate their individual needs,

h)  42 CFR § 483.20(b) and (g) require the facility to maintain a comprehensive and accurate assessment of the resident's medical needs, including the resident's general health and physical functioning,

i)  42 CFR § 483.21(b)(1) requires that the facility prepare an accurate comprehensive care plan that addresses the patient's medical and nursing needs,

j)  42 CFR § 483.70(b) requires that services provided or arranged by the facility meet

professional standards of quality and be provided by qualified persons,

k)  42 CFR § 483.21(b)(1)(i) requires the facility to provide services to attain and maintain the highest practicable physical, mental and psychosocial well-being in accordance with the resident's assessments and Care Plan,

l)  42 CFR § 483.24(b) requires the facility to provide a resident who is unable to carry out the activities of daily living necessary services to maintain good nutrition, hygiene, grooming and oral hygiene,

m)  42 CFR § 483.35(a) requires the facility to maintain an adequate nursing staff,

n)  42 CFR § 483.70 requires that the facility be administered in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of each resident,

o)  42 CFR §§ 483.12(b)(3) and 483.95 requires properly trained, qualified and competent staff.

p)  42 CFR § 483.70(f) requires the facility to operate and provide services in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

q)  42 CFR § 483.70(i) requires the facility to maintain clinical records in accordance with accepted professional standards and practices which are complete and accurate.

29.

As a licensed and certified long-term care facility which receives funding under the Medicare and Medicaid programs, the Defendants' long-term care facility is subject to the above federal regulations for the provision of care, treatment and services to residents of the facility.

2023CV01870

30.

As described in this complaint, the Defendants violated the above regulations of the U.S. Department of Health and Human Services in the following acts and omissions, among others to be demonstrated by the evidence:

a)   Defendants failed to administer the nursing facility in such a way as to use its resources effectively and efficiently to maintain the highest practicable physical, mental and psychosocial well-being of Peggy Glass,

b)   Defendants failed to implement protocols to protect Peggy Glass from neglect,

c)   Defendants failed to operate and provide services to Peggy Glass in compliance with law and acceptable professional standards and principles that apply to professionals providing said services,

d)   Defendants failed to provide or arrange services for Peggy Glass that met professional standards of quality,

e)   Defendants failed to maintain an adequate nursing staff to provide for Peggy Glass's needs,

f)   Defendants failed to provide properly trained, qualified and competent staff to care for Peggy Glass,

g)   Defendants failed to maintain complete and accurate clinical records related to the care and treatment of Peggy Glass in accordance with accepted professional standards and practices,

h)   Defendants failed to protect Peggy Glass from neglect,

i)   Defendants failed in their duty to report all instances of Peggy Glass's neglect to the facility administrator and appropriate state authorities,

2023CV01870

j)   Defendants failed to report results of any neglect investigation to the administrator and appropriate state authorities,

k)   Defendants failed to properly train and supervise the nursing staff to provide the appropriate care, treatment and services that Peggy Glass needed,

l)   Defendants failed to follow physician's orders with respect to the care and treatment that Peggy Glass needed.

31.

The aforesaid violations of 42 CFR §483.1 et seq. constitute evidence of a deviation of the standard of care.

32.

Defendants are liable to Plaintiff, for all damages recoverable, including but not limited to pain and suffering, medical expenses, and funeral expenses.

33.

Defendants are liable to Plaintiff for all damages recoverable, including but not limited to the full value of Ms. Glass's life.

**COUNT II**
**VIOLATION OF REQUIREMENTS OF THE GEORGIA BILL OF RIGHTS FOR RESIDENTS OF LONG-TERM CARE FACILITIES AT O.C.G.A. §31-8-100 et seq.**

34.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. §31-8-100 et seq. which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state. In particular, O.C.G.A. § 31-8-108(a) requires that residents of long-term care facilities receive care, treatment and services that are adequate and appropriate and which must be provided with reasonable care and

skill and in compliance with all applicable laws and regulations (including those listed in the preceding Count of this complaint), and with respect for the resident's personal dignity, among other requirements.

35.

Pursuant to its authority granted by statute, the Georgia Department of Human Resources has promulgated a number of regulations for the provision of care, treatment and services to residents of long-term care facilities. In particular, GA ADC 290-5-39-.07 requires that each resident be provided with care, treatment and services which are adequate and appropriate for the condition of the resident as determined by the resident's developing care plan. The regulation also requires that services be provided with reasonable care and skill and in compliance with all applicable laws and regulations (including the state laws and federal regulations identified above).

36.

The Defendants violated the provisions of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources identified above in all of the acts and omissions that are described in this Complaint for Damages. Among the acts and omissions constituting violation of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* are the following:

a) Defendants deviated from the standard of care by failing to complete a comprehensive assessment that is consistent with the resident's needs and choices, and failed to reassess Ms. Glass when significant changes in condition occurred.

b) Defendants deviated from the standard of care by failing to establish a resident-centered, comprehensive care plan for Ms. Glass. The facility failed to care plan

consistently with the residents' specific conditions, risks and needs identified from different assessment tools.

c)  Defendants deviated from the standard of care by failing monitor the condition of Ms. Glass and the effectiveness of the care plan interventions.

d)  Defendants deviated from the standard of care by failing to revise the care plan interventions and/or justify the need to continue with the existing plan of care.

e)  Defendants deviated from the standard of care by failing to maintain accurate assessments and by failing to timely update Ms. Glass' plan of care to reflect her deterioration and increased need for assistance with eating.

f)  Defendants deviated from the standard of care by failing to acknowledge that Ms. Glass' eating skills and ability to feed herself declined significantly due to deficits in her neurological status, oral health, her chewing ability and confused mental state.

g)  Defendants deviated from the standard of care by failing to conduct a nutritional and dietary reassessment of Ms. Glass when she continued to lose weight and her dentures became loose-fitting.

h)  Defendants deviated from the standard of care by failing to conduct a reassessment of Ms. Glass when she had significant changes in her neurological, cognitive, behavioral, and oral/dental status necessitated a referral to the Speech Therapist.

i)  Defendants deviated from the standard of care by failing to include Ms. Glass' dietary order in the Medication Administration Record. There was no evidence that the nursing staff was feeding Ms. Glass the mechanically altered therapeutic diet as ordered.

j)  Defendants deviated from the standard of care by failing to ensure Ms. Glass' safety by providing direct oversight and feeding assistance to Ms. Glass' while eating,

2023CV01870

specifically during lunch time on August 4, 2021 causing her to choke on a piece of vegetable (broccoli) that caused respiratory distress and life-threatening situation which prompted an emergent hospital transfer. Prior to the incident, Ms. Glass needed to be fed by staff because she has lost her ability to feed herself due to neurological, cognitive, behavioral factors and oral/dental conditions.

k) Defendants deviated from the standard of care by failing to identify a choking emergency with Ms. Glass that happened at lunch. It was well into the second hour after lunch was served when the situation was noted. The failure placed Ms. Glass in a life-threatening situation. She suffered from "distress breathing" as documented. The failure to identify the situation delayed Ms. Glass' transfer to the emergency room for further management that could have saved her life.

l) Defendants deviated from the standard of care by failing to ensure that the staff was trained and certified to respond to a choking situation.

m) Defendants deviated from the standard of care by failing to provide competent and trained nursing staff.

n) Defendants deviated from the standard of care by failing to provide Ms. Glass the highest practicable physical, mental, and psychosocial well-being.

37.

The Defendants' violations of the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above constitute evidence of a deviation of the standard of care.

2023CV01870

38.

Defendants' failure to comply with the *Georgia Bill of Rights for Residents of Long Term Care Facilities* and the regulations of the Georgia Department of Human Resources set out above lead directly to the serious injury, illness, terrible pain and suffering, and the death of Peggy Glass.

39.

As a result of the Defendants' acts and omissions, and the resultant damages and harm, the Plaintiff is entitled to an award of damages in their representative capacities as set out below.

## COUNT III
## STATUTORY REMEDIES AGAINST DEFENDANTS FOR VIOLATION OF FEDERAL AND STATE STATUTES AND REGULATIONS IN THE OPERATION OF A NURSING HOME

40.

Jonesboro is a "nursing home" as that term is defined under O.C.G.A. § 31-7-1(1)(B).

41.

Nursing homes in Georgia must be licensed by the DHR/DCH and are required to comply with all applicable state and federal laws governing the administration of long term care facilities, including, but not limited to the *Bill of Rights for Long Term Care Facilities* and its rules and regulations.

42.

Pursuant to O.C.G.A. §§ 31-8-100 through 31-8-127, residents of nursing homes in Georgia have been granted certain rights which are enumerated in the regulations promulgated by the Georgia Department of Human Resources at GA ADC 111-8-50, et seq.

43.

Among the regulations promulgated by the Georgia Department of Human Resources for the operation of nursing homes is GA ADC 111-8-50-.02 and 111-8-50-.07 which provide that

each resident of a nursing home must receive care and services which shall be adequate, appropriate and *in compliance with applicable federal and state law and regulations.*

44.

The State of Georgia has promulgated the *Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et eq., which sets out requirements for those providing care, treatment and services to residents of long-term care facilities in this state, including personal care homes.

45.

Defendants' conduct which is described in great detail above constitutes numerous individual violations of the *Georgia Bill of Rights for Residents of Long-term Care Facilities* at O.C.G.A. § 31-8-100 et seq., the regulations of the Georgia Department of Human Resources at GA ADC § 111-8-50 et seq. and the regulations of the U.S. Department of Health and Human Services at 42 CFR § 483.1 et seq.

46.

Defendants are liable to Plaintiff for all damages recoverable.

## COUNT IV
## GENERAL NEGLIGENCE

47.

Peggy Glass entered into a contract for the provision of long-term residence, care, treatment and services with the Defendants in this action, and pursuant to their agreement the Defendants had a duty to exercise ordinary care in the provision of that care, treatment, and services to Ms. Glass. The Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Ms. Glass, and she sustained serious injury, great pain and suffering, and death as a result as demonstrated below.

2023CV01870

48.

Defendants deviated from the standard of care by failing to complete a comprehensive assessment that is consistent with the resident's needs and choices, and failed to reassess Ms. Glass when significant changes in condition occurred.

49.

Defendants deviated from the standard of care by failing to establish a resident-centered, comprehensive care plan for Ms. Glass. The facility failed to care plan consistently with the residents' specific conditions, risks and needs identified from different assessment tools.

50.

Defendants deviated from the standard of care by failing monitor the condition of Ms. Glass and the effectiveness of the care plan interventions.

51.

Defendants deviated from the standard of care by failing to revise the care plan interventions and/or justify the need to continue with the existing plan of care.

52.

Defendants deviated from the standard of care by failing to maintain accurate assessments and by failing to timely update Ms. Glass' plan of care to reflect her deterioration and increased need for assistance with eating.

53.

Defendants deviated from the standard of care by failing to acknowledge that Ms. Glass' eating skills and ability to feed herself declined significantly due to deficits in her neurological status, oral health, her chewing ability and confused mental state.

54.

Defendants deviated from the standard of care by failing to conduct a nutritional and dietary reassessment of Ms. Glass when she continued to lose weight and her dentures became loose-fitting.

55.

Defendants deviated from the standard of care by failing to conduct a reassessment of Ms. Glass when she had significant changes in her neurological, cognitive, behavioral, and oral/dental status necessitated a referral to the Speech Therapist.

56.

Defendants deviated from the standard of care by failing to include Ms. Glass' dietary order in the Medication Administration Record. There was no evidence that the nursing staff was feeding Ms. Glass the mechanically altered therapeutic diet as ordered.

57.

Defendants deviated from the standard of care by failing to ensure Ms. Glass' safety by providing direct oversight and feeding assistance to Ms. Glass' while eating, specifically during lunch time on August 4, 2021 causing her to choke on a piece of vegetable (broccoli) that caused respiratory distress and life-threatening situation which prompted an emergent hospital transfer. Prior to the incident, Ms. Glass needed to be fed by staff because she has lost her ability to feed herself due to neurological, cognitive, behavioral factors and oral/dental conditions.

58.

Defendants deviated from the standard of care by failing to identify a choking emergency with Ms. Glass that happened at lunch. It was well into the second hour after lunch was served when the situation was noted. The failure placed Ms. Glass in a life-threatening situation. She

suffered from "distress breathing" as documented. The failure to identify the situation delayed Ms. Glass' transfer to the emergency room for further management that could have saved her life.

59.

Defendants deviated from the standard of care by failing to ensure that the staff was trained and certified to respond to a choking situation.

60.

Defendants deviated from the standard of care by failing to maintain Ms. Glass' highest practicable physical, mental, and psychosocial well-being.

61.

Defendants' staff was negligent in a number of other ways identified herein and to be further demonstrated by the evidence.

62.

As a direct and proximate result of each one of the above-described negligent acts and omissions, Ms. Glass suffered grave injury, suffered tremendously, and suffered death.

63.

Many of the Defendants' acts and omissions described herein are ministerial in nature and constitute simple negligence for which the Defendants are liable to Plaintiff.

64.

As a result of the foregoing acts and omissions and the resultant injuries, pain and suffering, and death of Ms. Glass, Plaintiff is entitled to recover from the Defendants as set out below.

2023CV01870

## COUNT V
## PROFESSIONAL NEGLIGENCE

65.

Peggy Glass entered into a contract with the Defendants for the provision of long-term residence, care, treatment and services at the Defendants' facility, and Defendants failed to provide that care, treatment and service as described herein.

66.

Defendants were negligent and failed to exercise that degree of care required of the long-term care and skilled nursing home profession in general under similar conditions and like circumstances. To the extent that this Count may be considered a medical malpractice action as defined in O.C.G.A. § 9-11-8 or O.C.G.A. § 9-3-70, see the Affidavit and CV of Louella Burgos, RN, BSN, attached hereto as Exhibit "A" to pursuant to O.C.G.A. § 9-11-9.1(a), to the extent that this statute may apply, if at all, to this action, and which Affidavit is hereby incorporated herein by reference. The Affidavit specifies at least one negligent act or omission on the part of Defendants and/or their staff, and the factual basis for such negligent act or omission that caused injury to Peggy Glass. The Affidavit is not inclusive of each act, error, or omission that has been committed by Defendants, and Plaintiffs reserve the right to contend and prove additional acts, errors, and omissions on the part of Defendants that reflects a departure from the requisite standard of care required by law.

67.

Pursuant to Nurse Burgos's education, training and experience, Nurse Burgos is familiar with the guidelines and regulations of long term care facilities.

2023CV01870

68.

Also, pursuant to Nurse Burgos's education, training and experience, Nurse Burgos is familiar with the proper care of patients who had medical conditions similar to Ms. Glass, including but not limited to stroke, hypertension, and dementia.

69.

As a result of Nurse Burgos's education, training and experience, Nurse Burgos is well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects of nursing care that occurs at a nursing home, assisted living facility and/or any type of long-term care.

70.

The standard of care for a patient in a long-term care setting requires staff to prepare comprehensive and accurate assessments and care plans for the identification of residents at risk for skin breakdown and nutritional deficits, and to provide proper care for the prevention of the same.

71.

The standard of care for a patient in a long-term care setting requires staff to provide appropriate monitoring and accurate assessments and to update the patient's care plan(s) when the resident's need have changed substantially.

72.

The standard of care for a patient in a long-term care setting requires staff to recognize significant changes in a resident and to initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

2023CV01870

73.

The standard of care for a patient in a long-term care setting requires staff to obtain immediate emergency or hospital care when the resident's condition requires it.

74.

Notwithstanding the duty owed to Peggy Glass by Defendants as described above, Defendants were negligent and failed to exercise that degree of care, skill and diligence required of the medical and nursing home profession in general under similar conditions and like circumstances. The negligence of Defendants included, but was not limited to, the following:

1.      The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to complete a comprehensive assessment that is consistent with the resident's needs and choices, and failed to reassess Ms. Glass when significant changes in condition occurred.

2.      The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to establish a resident-centered, comprehensive care plan for Ms. Glass. The facility failed to care plan consistently with the residents' specific conditions, risks and needs identified from different assessment tools.

3.      The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing monitor the condition of Ms. Glass and the effectiveness of the care plan interventions.

4.      The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to revise the care plan interventions and/or justify the need to continue with the existing plan of care.

2023CV01870

5.　　The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to maintain accurate assessments and by failing to timely update Ms. Glass' plan of care to reflect her deterioration and increased need for assistance with eating.

6.　　Jonesboro Nursing and Rehabilitation Center deviated from the standard of care by failing to acknowledge that Ms. Glass' eating skills and ability to feed herself declined significantly due to deficits in her neurological status, oral health, her chewing ability and confused mental state.

7.　　Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to conduct a nutritional and dietary reassessment of Ms. Glass when she continued to lose weight and her dentures became loose-fitting.

8.　　Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to conduct a reassessment of Ms. Glass when she had significant changes in her neurological, cognitive, behavioral, and oral/dental status necessitated a referral to the Speech Therapist.

9.　　Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to include Ms. Glass' dietary order in the Medication Administration Record. There was no evidence that the nursing staff was feeding Ms. Glass the mechanically altered therapeutic diet as ordered.

10.　　Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to ensure Ms. Glass' safety by providing direct oversight and feeding assistance to Ms. Glass' while eating, specifically during lunch time on August 4, 2021 causing her to choke on a piece of vegetable (broccoli) that caused respiratory

2023CV01870

distress and life-threatening situation which prompted an emergent hospital transfer. Prior to the incident, Ms. Glass needed to be fed by staff because she has lost her ability to feed herself due to neurological, cognitive, behavioral factors and oral/dental conditions.

11.   Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to identify a choking emergency with Ms. Glass that happened at lunch. It was well into the second hour after lunch was served when the situation was noted. The failure placed Ms. Glass in a life-threatening situation. She suffered from "distress breathing" as documented. The failure to identify the situation delayed Ms. Glass' transfer to the emergency room for further management that could have saved her life.

12.   Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to ensure that the staff was trained and certified to respond to a choking situation.

13.   The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to maintain Ms. Glass' highest practicable physical, mental, and psychosocial well-being.

75.

Defendants also have vicarious liability for the negligent acts and omissions of all persons or entities under Defendants' control either direct or indirect, including its respective employees, agents, and consultants.

2023CV01870

76.

As a direct and proximate result of the negligence of Defendants as described herein, Peggy Glass lacked appropriate health care, causing tremendous struggle, suffering, and death.

## COUNT VI
### NEGLIGENT MANAGEMENT AND OPERATION OF A LONG TERM CARE FACILITY

77.

The Defendants had a duty to make operational, budgetary, and administrative decisions that would benefit the custodial, medical, and nursing needs of residents in Jonesboro, including Ms. Glass. The Defendants failed to exercise reasonable care with respect to the management and operational decisions of Jonesboro, and Ms. Glass sustained serious injury, great pain and suffering and death as demonstrated below.

78.

At all material times, Defendants represented that: (a) they were competent to provide Ms. Glass with the necessary care, treatment and services and would provide the same; and (b) that Ms. Glass' condition was capable of being successfully managed by them.

79.

At all times relevant to this action, Defendants were fully aware that the delivery of care and custodial services to residents at Jonesboro, including Ms. Glass, required: (a) provision of adequate and appropriate staffing in the facility; and (b) appropriate census levels and census mixes within the facility.

80.

Despite this knowledge, Defendants made operational, budgetary, and administrative decisions that were determined more by the financial needs and goals of the Defendants than by

the custodial, medical, and nursing needs of residents in Jonesboro, including Ms. Glass.

81.

Defendants entered into a continuing course of negligent conduct, creating, implementing, and enforcing dangerous operational budgets, practices, and policies at Jonesboro which deprived residents, including Ms. Glass, of safe, adequate, and essential care and resources to meet their needs.

82.

Notwithstanding Defendants' decisions, directives, and practices which resulted in inadequate and inappropriate staffing of Jonesboro, Defendants sought to market, recruit, and admit higher acuity, heavier care, higher pay residents to Jonesboro, even though the needs of the resident population, including the needs of Ms. Glass, exceeded the capacity of the staff.

83.

At all material times, Defendants had a duty to allocate resources and exercise fiscal and operational policies with reasonable care so as to prevent the infliction of harm on residents of Jonesboro, including Ms. Glass.

84.

Defendants breached their duty by failing to allocate sufficient financial and operational resources to Jonesboro, thereby causing harm to residents, including Ms. Glass.  This conduct was specifically directed, controlled, and authorized by Defendants, who knew or should have known that such conduct would likely cause harm to residents at Jonesboro, including Ms. Glass.

85.

At all material times, Defendants knew or should have known that the delivery of essential and necessary care would suffer due to their budgetary and operational decisions, causing resident

injury if they did not provide needed resources to adequately and appropriately staff and operate Jonesboro.

86.

As a direct and proximate result of each one of the above-described negligent acts and omissions, dependent residents, including Ms. Glass, suffered repeated and ongoing neglect and were subjected to dangerous conditions, including the routine deprivation of basic custodial care.

87.

As a result of the foregoing acts and omissions and the resultant injuries, illness, and suffering of Peggy Glass, Plaintiff is entitled to recover from the Defendants as set out below.

## COUNT VII
## BREACH OF CONTRACT

88.

Peggy Glass entered into a contract for the provision of long term nursing care, treatment, and services with the Defendants in this action, and pursuant to that agreement the Defendants had a duty to exercise ordinary care in the provision of care, treatment and services to Peggy Glass. Defendants failed to exercise reasonable care in a number of instances with respect to the care, treatment and services provided to Ms. Jones, and she sustained serious illness, injury, pain and suffering, and death as a result.

89.

In the wrongful acts and omissions described in detail above and in the insufficiency of care, treatment and services outlined herein, Defendants failed to provide the services that they promised to provide pursuant to the contract for services entered between Defendants and Peggy Glass.  Defendants therefore breached the contract for services as set out herein.

2023CV01870

90.

As a result of the foregoing, Plaintiff is entitled to recover all amounts paid to obtain services under the contract and all consequential damages arising therefrom.

## COUNT VIII
## FAILURE TO PROVIDE SUFFICIENT AND PROPERLY TRAINED STAFF

91.

Defendants had a duty to exercise ordinary and reasonable care in providing sufficient staffing and properly trained staff at Defendants' facility.

92.

Defendants were chronically understaffed, which put patients at the facility at risk and in danger. In addition, the staff at Defendants' facility was inadequately and improperly trained.

93.

Defendants breached their duty to exercise reasonable and ordinary care in providing sufficient and quality staffing.

94.

Defendants failed to provide sufficient staffing at Defendants' facility and caused the facility to be chronically understaffed, and failed to properly train said staff. Defendants' acts and omissions proximately caused Peggy Glass serious injury, pain, suffering, and death.

95.

As a further result of the Defendants' failure to provide sufficient staff at Defendants' facility and failure to properly train its staff, Plaintiff is entitled to recover damages for the pain and mental anguish, death, suffering, medical expenses, and funeral and burial expenses.

2023CV01870

## COUNT IX
## IMPUTED LIABILITY

96.

All of Peggy Glass's injuries and damages were the direct result of the acts and omissions of the agents, servants and employees of the Defendant business entities  conducted within the course and scope of each individual's employment with the Defendant business entity health care providers.

97.

The Defendant business entities are therefore vicariously liable for the  individual employee and agent's acts and omissions, and for each individual officer, director, employee, agent and servant's negligent acts and omissions, and the resultant injuries, and damages of Peggy Glass by application of the doctrine of respondent superior. The Plaintiff is therefore entitled to recover damages from the Defendants as set out herein.

## COUNT X
## ESTATE'S TORT CLAIMS

98.

Plaintiff Joseph Chad Brannen is the Temporary Administrator for the Estate of Peggy Glass, deceased, and he prosecutes these claims in that capacity.

99.

As set out above, Ms. Glass sustained grievous injuries, pain, suffering, and death as a direct result of Defendants' acts and omissions which constitute violations of federal and state law, professional negligence and general negligence.

2023CV01870

100.

In Plaintiff's capacity as Temporary Administrator of Ms. Glass' estate, Plaintiff Joseph Brannen is entitled to recover all damages to which Ms. Glass would have been entitled had she survived.  As a result of the Defendants' wrongful conduct, Ms. Glass incurred medical expenses and related expenses for her care, treatment and services prior to her death, and final expenses. Ms. Glass also endured untold pain and suffering as a result of Defendants' negligent acts and omissions prior to her death.

101.

Based on the foregoing, Joseph Chad Brannen is the Temporary Administrator for the Estate of Peggy Glass, deceased, is entitled to recover from Defendants damages equal to all expenses incurred in the provision of medical care and treatment to Ms. Glass resulting from the Defendants' wrongful conduct and to recover for Ms. Glass's final expenses.  Plaintiffs are also entitled to recover damages for Ms. Glass's conscious pain and suffering prior to her death.

## COUNT XI
## JOINT ENTERPRISE

102.

At the time of the negligent acts and omissions and Peggy Glass's resultant injuries and damages described above, Defendants combined their property and labor in a joint undertaking for the provision of long-term nursing home care, treatment and services for a fee. Each had rights of mutual control over all aspects of the residence, care, treatment and services provided to Peggy Glass while she was a resident at Jonesboro.

103.

By virtue of the foregoing, all of the Defendants are liable to Plaintiff herein for money damages as set out below by application of the joint enterprise theory of recovery.

2023CV01870

## COUNT XII
## WRONGFUL DEATH

104.

As set out above, Ms. Glass sustained grievous illness, suffered tremendously and ultimately died as a direct result of Defendants' acts and omissions in the provision of care, treatment and services to him which constituted violations of federal and state law, professional negligence and simple negligence.

105.

Plaintiff shows upon information and belief that Ms. Glass died without a surviving spouse, child, or parent; therefore, Plaintiff, as Temporary Administrator of the Estate of Peggy Glass, beings this action in his representative capacity for the Estate and on behalf of the undetermined wrongful death beneficiaries.

106.

As a result of the Defendants' violations of federal and state law, professional negligence and simple negligence and Ms. Glass's resultant death as set out in detail above, Plaintiff is entitled to recover damages against the Defendants for Ms. Glass's wrongful death in an amount equal to the full value of the life of the deceased.

## COUNT XIII
## PUNITIVE DAMAGES

107.

As described and set forth herein, Defendants actions, inactions, and omissions demonstrate willful misconduct, malice, wantonness, oppression, and an entire want of care giving rise to the presumption of Defendants' conscious indifference to the consequences of their actions.

-31-

2023CV01870

108.

As a result of the foregoing, Plaintiffs are entitled to an award of punitive damages from the Defendants Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; D & N, LLC; DTD HC, LLC; ABC Corporation and John/Jane Does I and II in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future.

WHEREFORE: Plaintiffs pray for the following:

a)   That service of summons and process be had upon each Defendant,

b)   That this case be tried before 12 fair and impartial jurors on all issues so triable,

c)   That judgment be entered against the Defendants in amounts in excess of $10,000.00 with all costs to be taxed against the Defendants, for all special damages, pain, and suffering of Peggy Glass,

d)   That Plaintiffs recover a judgment against Defendants Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; D & N, LLC; DTD HC, LLC; ABC Corporation and John/Jane Does I and II; for punitive damages in an amount sufficient to punish Defendants and deter the Defendants from similar conduct in the future;

e)   That the Court grant Plaintiffs all other relief that it deems appropriate.

*(signature to follow)*

2023CV01870

This 21st day of July, 2023.

Respectfully submitted,

**PRIETO, MARIGLIANO, HOLBERT
& PRIETO, LLC**

/s/ William F. Holbert
William F. Holbert
Georgia Bar No.:  360088
Michael A. Prieto
Georgia Bar No.:  587236
Elizabeth Evinger Meyer
Georgia Bar No.: 337929
Attorneys for the Plaintiff

1555 Mount Vernon Road
Atlanta, GA 30338
P: 404-856-0040 ● F: 404-856-0066
bholbert@pmhplaw.com
mprieto@pmhplaw.com
emeyer@pmhplaw.com
www.pmhplaw.com

2023CV01870

e-Filed 7/21/2023 4:35 PM

*Tiki Brown*
**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
Waukecia Lawrence

## AFFIDAVIT OF LOUELLA BURGOS, RN, BSN

Personally, appeared before me, the undersigned officer duly authorized to administer oaths, Louella Burgos, RN, BSN, who, after being duly sworn, deposes and states the following:

1.

I am of sound mind and legal age and am fully competent to testify to the matters stated herein. I make this affidavit upon my own personal knowledge unless otherwise stated herein.

2.

I am a Registered Nurse licensed to practice nursing in the State of California. I have nursing experience in long-term care, home health and hospice care. I have experience in nursing management, including working as Director of Nursing at a skilled nursing and rehabilitation facility. As shown in my attached CV, I was active in practice where I provided frequent and regular care to geriatric residents for three of the last five years immediately preceding Defendants' negligent treatment of Peggy Glass while at Jonesboro Nursing and Rehabilitation Center.

3.

Specifically, from April 2022 to the present, I serve as Director of Nursing Administration at Mission Park Healthcare. I identify the facility's strengths, weaknesses, potentials, needs, and current resources including, but not limited to, labor and physical logistics, initiating systems and processes with emphasis on compliance, staff competencies, and retention to fulfill the facility's mission.

4.

From October 2020 to April 2022, I have been the Director of Nursing at Ojai Valley Continuing Care Center. I am responsible for overseeing the administrative functions of the nursing department. I ensure quality facility standards in accordance with the Federal, State, and standard guideline and regulations. I am responsible for planning, coordinating, and managing the

2023CV01870

nursing care within a long -term care facility.  I maintain an active clinical role in all aspects of nursing care where I provide hands-on clinical care to residents on a daily basis.

5.

From October 2012 to September 2020, I served as the Director of Nursing Administration for the Californian Skilled Nursing and Rehabilitation Facility.  I directed and supervised the entire nursing department, including RNs, LVNs and CNAs. I taught the nurses wound care and other new skills and equipment to be utilized in care provision. I created, modified, and reviewed nursing department policies and procedures in accordance and alignment with Federal, State and County regulations. I ensured that all policies and procedures were implemented as written by providing staff in-services and competency testing.

6.

From September 2013 to present, I serve as an inpatient hospice RN, where I provide comforting, compassionate, and professional end -of -life care for patients with terminal illnesses including, but not limited to, psychological, social and clinical support. I identify and meet all direct patient needs through coordination of care with the interdisciplinary hospice team while continually assessing, monitoring, coordinating, and communicating about changing patient conditions.

7.

From July 2011 to October 2012, I was Nursing Supervisor and wound care RN at The Californian Skilled Nursing and Rehabilitation Facility, where I supervised all unit nurses and assigned tasks to ensure regulatory and organizational compliance through the delivery of high-quality standard of care for residents and patients. I specialized in managing the treatment and care of wounds; working as a part of the medical team to monitor wounds and their healing process optimizing recovery.

2023CV01870

8.

For a more detailed description of my credentials, including my education, training, experience, and employment history, I have attached a true and correct copy of my updated CV to this affidavit.

9.

Based on the foregoing, I have extensive education, training, and experience in all aspects of the provision of nursing care, treatment, and services to patients in a medical facility for at least three out of the five years preceding Ms. Glass' residence at Jonesboro Health and Rehabilitation Center.

10.

Also, pursuant to my education, training, and experience, I am familiar with the proper care and assessment of patients who have had medical conditions like Ms. Glass, including but not limited to stroke, hypertension, and dementia.

11.

Pursuant to my education, training, and experience, I am familiar with the circumstances under which a resident needs the services of a physician for care and treatment following an acute condition change.  My experience includes the provision of emergency medical care when the resident needs it.

12.

As a result of my education, training and experience outlined above, I am well qualified to testify as to the acceptable standards of care with respect to the below referenced aspects of nursing care, including care for patients that occurs at nursing homes, assisted living facilities, and/or any type of long-term care facility.

2023CV01870

13.

The standard of care for a patient in a long-term care setting requires staff to prepare comprehensive and accurate assessments and care plans for the identification of residents at risk for skin breakdown and nutritional deficits, and to provide proper care for the prevention of the same.

14.

The standard of care for a patient in a long-term care setting requires staff to provide appropriate monitoring and accurate assessments and to update the patient's care plan(s) when the resident's need have changed substantially.

15.

The standard of care for a patient in a long-term care setting requires staff to recognize significant changes in a resident and to initiate a resident's transfer to an acute care center sufficient to meet the resident's needs.

16.

The standard of care for a patient in a long-term care setting requires staff to obtain immediate emergency or hospital care when the resident's condition requires it.

17.

I have reviewed records and charts related to the medical and nursing care treatment and services provided to Ms. Glass at Jonesboro Health and Rehabilitation Center. In addition, I am familiar with the allegations of the Complaint to which this affidavit is attached.

18.

Based upon my review of the records, I have learned the following, which I will assume to be true for purposes of this affidavit:

a)      Ms. Glass was admitted to Jonesboro Health and Rehabilitation Center on July 1,

2023CV01870

2020, for short-term rehabilitation following a stroke.

b)      On July 2, 2020, she was evaluated by Speech Therapy, and Ms. Glass demonstrated the ability to self-feed, good oral intake, functional but prolonged mastication, timely swallows, mild oral residue/pocketing on the left side, and overt signs of aspiration x 2 with a cough. It was noted she might require diet modification. Pharyngeal swallow might be delayed, and she might require compensatory strategies and instruction.

c)      On July 8, 2020, the MDS Assessment indicated Ms. Glass had a BIMS 13/15. She required supervision and set up only for eating.

d)      On July 19, 2020, the staff received training on compensatory strategies to utilize with Ms. Glass during oral intake, as she was moderate independent with safely consuming liquids and solids.

e)      She completed rehabilitation and was discharged home September 2020.

f)      On March 27, 2021, she presented to Piedmont Fayette Hospital with extreme weakness. She was brought in by her friend because she was weak and unable to walk. She reported a decrease in intake of liquids and food for about a week.

g)      On April 1, 2021, she was discharged to Jonesboro Health and Rehabilitation Center.

h)      On June 8, 2021, the Nurses Note indicated Ms. Glass was alert and oriented, and able to make her needs known. She was able to maneuver with a walker through the halls. She needed assistance with ADLs, but could feed herself independently.

i)      On June 20, 2021, Ms. Glass was transferred to Piedmont Henry Hospital because of altered mental status. She had been unable to feed herself or sit and eat for long periods of time. She appeared to be hallucinating

2023CV01870

j)   On June 22, 2021, Ms. Glass returned to Jonesboro HR with a diagnosis of neurocognitive disorder likely from previous stroke.

k)   On June 28, 2021, the MDS Assessment noted Ms. Glass had a BIMS of 7/15. She required supervision of one staff member for eating.

l)   On July 13, 2021, Ms. Glass was noted to have seizure-like activity, The physician was notified and medications were ordered.

m)   On July 14, 2021, the Dietary Data History and Initial Screening Report noted a significant change in Ms. Glass' status, and she was totally dependent with meals.

n)   On July 14, 2021, the Nurses Note indicated Ms. Glass was attempting to climb out of bed. She was incontinent of bowel and bladder. She was unable to hold utensils steady to place food in her mouth, and so the staff fed her.

o)   On July 28, 2021, the SHC Medical Partners Note indicated Ms. Glass was evaluated because of worsening weakness and decline. She had been sent to the ED on 7/26/21 and returned on 7/27/21 with a diagnosis of hydrocephalus.

p)   On August 4, 2021, Ms. Glass choked during lunch. She was transferred to Piedmont Henry Hospital, and died.

19.

Based upon the above facts, I have developed the following opinions about the care, treatment, and services that the Jonesboro Health and Rehabilitation Center staff provided to Mr. Glass:

1.   The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to complete a comprehensive assessment that is consistent with the resident's needs and choices, and failed to reassess Ms. Glass when significant changes in condition occurred.

2023CV01870

2. The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to establish a resident-centered, comprehensive care plan for Ms. Glass. The facility failed to care plan consistently with the residents' specific conditions, risks and needs identified from different assessment tools.

3. The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing monitor the condition of Ms. Glass and the effectiveness of the care plan interventions.

4. The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to revise the care plan interventions and/or justify the need to continue with the existing plan of care.

5. The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to maintain accurate assessments and by failing to timely update Ms. Glass' plan of care to reflect her deterioration and increased need for assistance with eating.

6. Jonesboro Nursing and Rehabilitation Center deviated from the standard of care by failing to acknowledge that Ms. Glass' eating skills and ability to feed herself declined significantly due to deficits in her neurological status, oral health, her chewing ability and confused mental state.

7. Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to conduct a nutritional and dietary reassessment of Ms. Glass when she continued to lose weight and her dentures became loose-fitting.

8. Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to conduct a reassessment of Ms. Glass when she had significant changes

2023CV01870

in her neurological, cognitive, behavioral, and oral/dental status necessitated a referral to the Speech Therapist.

9.  Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to include Ms. Glass' dietary order in the Medication Administration Record. There was no evidence that the nursing staff was feeding Ms. Glass the mechanically altered therapeutic diet as ordered.

10. Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to ensure Ms. Glass' safety by providing direct oversight and feeding assistance to Ms. Glass' while eating, specifically during lunch time on August 4, 2021 causing her to choke on a piece of vegetable (broccoli) that caused respiratory distress and life-threatening situation which prompted an emergent hospital transfer. Prior to the incident, Ms. Glass needed to be fed by staff because she has lost her ability to feed herself due to neurological, cognitive, behavioral factors and oral/dental conditions.

11. Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to identify a choking emergency with Ms. Glass that happened at lunch. It was well into the second hour after lunch was served when the situation was noted. The failure placed Ms. Glass in a life-threatening situation. She suffered from "distress breathing" as documented. The failure to identify the situation delayed Ms. Glass' transfer to the emergency room for further management that could have saved her life.

12. Jonesboro Nursing and Rehabilitation Center deviated from the standards of care by failing to ensure that the staff was trained and certified to respond to a choking situation.

2023CV01870

13.   The Jonesboro Health and Rehabilitation Center staff deviated from the standard of care by failing to maintain Ms. Glass' highest practicable physical, mental, and psychosocial well-being.

20.

As a result of each one of the above-described failures to follow the acceptable standards of care, Ms. Glass lacked appropriate health care, causing tremendous struggle, suffering and death.

21.

This Affidavit is given pursuant to the provisions of Official Code of Georgia Annotated § 9-11-9.1, which states that a single negligent act or omission be specified for a Complaint to be filed in the Courts of Georgia. It is not intended to encompass all the opinions presently held by me. Rather, as discovery progresses and additional information becomes available, I reserve the right to modify or alter or form additional opinions.

Further affiant sayeth not.

This the 17th day of July, 2023.

Louella Burgos, RN, BSN,

-9-

2023CV01870

# CALIFORNIA NOTARY ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF SANTA BARBARA

On JULY 17 _____, 2023 before me, **Nels C. Henderson, Notary Public**, personally appeared

LOVELLA BURGOS

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

NELS C. HENDERSON
COMM. #2400677
Notary Public · California
Santa Barbara County
My Comm. Expires Apr. 27, 2026

[SEAL]

| Description of Attached Document (Optional) | Method of Signer Identification |
|---|---|
| The preceding Certificate of Acknowledgement is attached to a document titled/for the purpose of: <br><br> affidant <br><br> Containing _____ pages, and dated 7/17/2023 <br><br> The signer(s) capacity or authority is/are as: <br><br> ☒ Individual(s) <br> ☐ Attorney-in-Fact <br> ☐ Corporate Officer(s): _____ <br> ☐ Guardian/Conservator <br> ☐ Partner - Limited/General <br> ☐ Trustee(s) <br> Representing: _____ <br> _____ | Proved to me on the basis of satisfactory evidence: <br><br> ☒ Form(s) of Identification <br> ☐ Credible Witness(es) <br><br> **Notarial Event is detailed in notary journal on:** <br><br> Page # 99   Entry # 4 <br><br> Notarized by: <br><br> **Nels C. Henderson, Notary Public** <br> Santa Barbara Mobile Notary <br> http://www.sbmobilenotary.com <br> (805) 335-8360 |

2023CV01870

# Louella Burgos, RN, BSN, MAN

Goleta, CA 93117

lwella88ryt@gmail.com ▪ 805.284.6185

## Profile

Dedicated nursing professional with knowledge, skills and abilities in clinical nursing, leadership and management with years of experience and good job retention history; a proven leader who builds an empowered team through the establishment of a conducive organizational culture where staff commit to work, thrives, performs and delivers quality resident, patient and organizational outcomes; a skilled communicator, instructor and educator who works with team members to attain the common organizational goals; well-versed in the development of policies and procedures to keep the organization compliant with Federal, State and local agency regulations; advocate of transformational leadership where trust is the building block of team work.

## Professional Experience

**Mission Park Healthcare, LLC - 623 W. Junipero St., Santa Barbara, Ca 93105**

Certified Director of Nursing Administration - LTC - April 2022 - present

Identifying the facility's strengths, weaknesses, potentials, needs and current resources including but not limited to labor and physical logistics, initiating systems and processes with emphasis on compliance, staff competencies and retention to fulfill the facility's mission of delivering an enhanced experience and exceptional care to its guests and employees.

**Ojai Valley Continuing Care Center - 1306 Maricopa Hi-way, Ojai, Ca 93023**

Distinct Part Skilled Nursing Facility of the Ojai Valley Community Hospital (Community Memorial Health System)

Certified Director of Nursing Administration - LTC - October 2020 - April 2022

- Transitioned from 66-bed capacity to 75-beds through active involvement in referral reviews, patient throughput and patient flows;
- Successful implementation of Federally and State-accepted Mitigation Plan in response to the COVID-19 pandemic;
- Successful Infection Prevention and Control Program efforts to keep the facility COVID-19-free for the last two years of the pandemic;
- Managing and reviewing fiscal resources of the Nursing Department including guidance for financial success of the department through research and implementation of cost-effective and cost-efficient operations;
- Instrumental in the hiring process to find staff that are fit for the job and filled key positions to better streamline the workflow;
- Established intra-facility team, department and discipline huddles to improve communication and work relationship;
- Developed quality assurance and performance improvement projects based on assessed facility needs.

**The Californian Skilled Nursing and Rehabilitation Facility - 2225 Dela Vina St.,  Santa Barbara, CA 93105**

- ❖ 68-bed Medicare-Medicaid certified, 5-Star Facility

Certified Director of Nursing Administration, October 2012 - September 2020

Initiated and established efforts:

*Continued...*

2023CV01870

# Louella Burgos  ☐  Page 2

- Directed and supervised the entire Nursing Department that has 50 - 70 RNs, LVNs and CNAs;
- Directly supervised the licensed staff of the facility which includes Registered and Licensed Vocational Nurses;
- Directed RN Supervisor in case management;
- Created, modified and reviewed Nursing Department Policies and Procedures in accordance and alignment with Federal, State, and County regulations;
- Built strong patient-care teams through hiring of qualified staff and established key performance indicators and evaluations based on benchmarks and set parameters;
- Supervised the MDS staff in resident and patient assessments, reviewed person-centered care plans and helped with evaluation of implementation;
- Supervised and directed the Admissions Liaison about referrals from partner hospitals and doctor's offices and clinics;
- Screened referrals from referring agencies for admission or denial;
- Oversaw the RN Supervisor regarding the care of all residents and patients;
- Educated nurses about wound care and other new skills or equipment to be utilized in care provision;
- Ensured that all policies and procedures are implemented as written by rolling them out to the staff through in-services and competency tests;
- Wrote Plans of Correction in response to 2567's and other survey findings issued by Federal or State agencies and ensures that corrections are implemented in a timely manner through in-services;
- Reviewed CASPER report to ensure the maintenance of 5-Star Quality Rating of the facility;
- Created Performance Improvement Plans (PIP) for clinical areas and concerns needing improvement;
- Managed and reviewed fiscal resources of the Nursing Department including guidance for financial success of the department through research and implementation of cost-effective and cost-efficient operations;
- Builds and initiates programs and systems based on current trends and evidence-based practices;
- Directs Supplies Officer in purchases and requisition of supplies while observing cost effectiveness and containment without sacrificing quality;
- Supports, guides and directs other department heads and ancillary staff as needed.
- Works directly with the contracted Pharmacy, Consultant and pharmacy staff in finding ways to contain cost and observe therapeutic interchanges without compromising patient care.
- Successful transition from paper-based to Electronic Medical Records (EMR) with continuous efforts to build modules in accordance to facility systems and needs;
- Successful writing of Federally and State-accepted Mitigation Plan in response to the COVID-19 pandemic;
- Successful Infection Prevention and Control Program efforts to keep the facility COVID-19-free;
- Contributed to the facility to be accepted as one of the three Preferred Providers of Cottage Hospital System:
- Contributed to the facility to be accepted as one of the three Accountable Care Organization (ACO) providers of Sansum Clinic which is the largest clinic system in Santa Barbara.

Serenity House - 930 Miramonte Drive, Santa Barbara, CA 93103

**In-Patient Hospice RN**, Per Diem status - September 2013 -Present

(started in 2013 as Home Health and Hospice RN then transitioned to Inpatient after two years)

- Admits patients to home health or hospice services;
- Provides comforting, compassionate and professional end-of-life care for patients with terminal illnesses including but not limited to psychological, social and clinical support;
- Identifies and meets all direct patient needs through coordination of care with the Interdisciplinary Hospice Team while continually assessing, monitoring, coordinating and communicating about changing patient conditions;
- Supports patients and their families by providing end-of-life information, education and support.

**Other Professional Experiences:**

**The Californian Skilled Nursing and Rehabilitation Facility - 2225 Dela Vina St., Santa Barbara, CA 93105**

Nursing Supervisor / Wound Care RN, July 2011- October 2012

- Supervised all unit nurses and assigned tasks to ensure regulatory and organizational compliance through the delivery of high quality standard of care for residents and patients;
- Specialized in managing the treatment and care of wounds; working as a part of the medical team to monitor wounds and their healing process optimizing recovery.
- Assessed and documented wound care, as well as developed and modified care plans as needed;
- Consulted with treating physicians appropriately to adjust treatment plans including use of antibiotics, surgical drains, or surgical debridement;
- Educated patients, their families, and other caregivers on proper wound care for patients who are returning to home..

**Carmel Home Health - South Patterson St.,(corner of Hollister Avenue) Santa Barbara, CA 93111**

Home Health RN /Wound Care Nurse, January 2011– January 2012

- Performed assessments to establish appropriate service level and care through determination of a nursing diagnosis to guide patient care;
- Interviewed patients in-home to develop understanding of needs and identify appropriate community resources to support their health and success;
- Promoted community health through focusing on health education while planning, organizing, and directing home care services;
- Provided skilled nursing in-home care according to established care plans and physician directions;
- Communicated with care team members to ensure meeting of all patient and family needs.

**Senior Living Concepts - 3880 Via Lucero Dr., Santa Barbara, CA 93110**

RN Supervisor, August 2009 – July 2012

- Guided care operations through direction of staff, evaluating performance against expectations, and delivering corrective actions as required by company policy;
- Initiates the admission process by reviewing documents, validates information, verifies orders with the admitting physician, conducts patient assessment and initiates the plan of care;
- Managed patient cases by coordinating care with the Interdisciplinary Team for quality care delivery by meeting patient needs appropriately;
- Conducted follows-through to ensure that care is provided according to established nursing care plans;
- Conducted daily and as needed rounding on residents and reported to the Director of Nursing or appropriate clinical staff on resident status and needs;
- Maintained compliance and adherence to Federal, State and organizational policies and procedures;
- Actively supported organizational missions, vision and goals for quality and safe delivery of patient care.

**Buenavista Care Center - 160 South Patterson Ave., Santa Barbara, CA 93111**

Charge Nurse / Wound Care Nurse, December 2008- January 2011

Provided safe and efficient patient care in accordance with established care plans. Managed patient cases, reporting condition changes or treatment reactions to appropriate supervising staff to adjust care plan accordingly. Assessed county, state, and federal requirements to design and implement nursing policies and regulations guiding compliance. Maintained quality of patient care through assigning staff tasks, monitoring staff care, and evaluating performance against established requirements. Supervised CNAs and made appropriate adjustments to assignments ensuring optimal patient care.

**Cavite State University / University of the Philippines, Philippines**

2023CV01870

## Louella Burgos ☐ Page 4

College of Nursing Instructor, June 2003 - March 2008
- Contributed to the development of strong future nurses by providing classroom and clinical instruction specializing in community, maternal and child, medical and surgical, and psychiatric nursing;
- Led student learning in alignment with required learning objectives and curriculum goals;
- Monitored student progress and assisted in academic development of future nurses through successful achievement of learning goals.

*Additional work experiences:*
- *Family Planning Coordinator for the Philippine Department of Public Health for 13 years*
- *Registered Nurse 1 for Philippine Heart Center for Asia (Pediatric NICU) for 1.5 years*
- *Part-time Nursing Licensure Examination Instructor/Reviewer (NCLEX)*

## Education and Credentials

**Masters in Science Degree In Nursing** (Expected Spring 2023) - George Washington University – Washington, D.C.

**Master's Degree in Nursing Administration -** La Salette University – Isabela, Philippines (2008)

**Bachelor of Science in Nursing -** University of Santo Tomas – Manila, Philippines (1993)

## Certifications

Certified Director of Nursing – National Association of Directors of Nursing, 2017 to present

Certified Wound Care Nurse - current

Infection Prevention Nurse - current

MDS Certification – MDS-RAI - 2011 to 2022

CPR/BLS Certification - current

## Professional Associations

Santa Barbara City College, College of Nursing - Advisory Board Member 2017 - present
California Association of Health Facilities – Nursing Council Member, 2016 - present
National Association of Directors of Nursing Administration – Member, 2017 - present

2023CV01870

e-Filed 7/21/2023 4:35 PM

*Tiki Brown*

Tiki Brown
Clerk of State Court
Clayton County, Georgia
Waukecia Lawrence

## IN THE STATE COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

JOSEPH CHAD BRANNEN, AS THE )
TEMPORARY ADMINISTRATOR OF THE )
ESTATE OF PEGGY GLASS, DECEASED )
                                 )      CIVIL ACTION FILE NO.:
     Plaintiffs, )        2023CV01870
                                   )
v. )       _____
                                   )
JONESBORO NURSING AND )
REHABILITATION CENTER, LLC D/B/A )
JONESBORO NURSING AND )
REHABILITATION CENTER; D & N, LLC; )
DTD HC, LLC; ABC CORPORATION; AND )
JOHN/JANE DOES I AND II )
                                   )
     Defendants. )

## PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO DEFENDANT JONESBORO NURSING AND REHABILITATION CENTER, LLC D/B/A JONESBORO NURSING AND REHABILITATION CENTER

COMES NOW Plaintiff in the above-styled civil action, and pursuant to the provisions of O.C.G.A. § 9-11-33 serves upon Defendant Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center [hereinafter referred to as "Defendant Jonesboro Nursing" or "Facility"], the following Interrogatories, and requires Defendant to answer said Interrogatories separately and fully, in writing and within forty-five (45) days after service of said Interrogatories upon Defendant Jonesboro as provided by law.

These Interrogatories shall be deemed continuing so as to require supplemental answers if you or your attorneys, or anyone on your behalf, obtain further information between the time answers are served and the time of trial.

In answering the following Interrogatories, you are requested to give full and complete answers based upon your personal knowledge as well as that of any agents, employees, investigators or attorneys who may have obtained information on your behalf.

2023CV01870

1.

If you have not been sued under your correct name or contend that service was not proper and/or timely, please state your full correct name and explain why you contend service was not proper and/or timely.

2.

What is the name and address of the person(s) answering these interrogatories and the person's official position or relationship with Defendant Jonesboro Nursing?

3.

Please provide the names, addresses, of all current owners, regardless of percentage of ownership and regardless of whether the owner(s) is an individual(s) and/or a business entity(ies), of the skilled nursing facility known as Jonesboro Nursing and Rehabilitation Center, located at 2650 Highway 138 SE Jonesboro, Clayton County, Georgia 30236 [hereinafter referred to as "Jonesboro"), and please state the percentage of ownership each such person/entity has in the facility.

4.

Please provide the names, addresses, of all persons and/or entities that had any type of ownership interest in the Jonesboro in August, 2021, and please state the percentage of ownership each such person/entity had in the facility as of August 1, 2021.

5.

Please provide the name and address of any and all individual(s) and/or entities that played any role in the management and/or operation of the Jonesboro in August, 2021.

6.

Please provide the name and address of any and all individual(s) and/or entities that currently play any role in the management and/or operation of Jonesboro.

-2-

7.

If Plaintiff has failed to name any or all parties with an ownership, management, or operational interest/responsibility in the Jonesboro as of August, 2021 or currently, please identify any and all such parties by name, address and registered agent.

8.

Please provide an explanation of what the nature of Defendant Jonesboro's business was as of August 1, 2021. Specifically, please state whether Defendant Jonesboro provided goods and/or services, what such goods and/or services were, to whom Defendant provided such goods and/or services and how it was that Defendant provided such goods and/or services. If the nature of Defendant's business has since changed, please state how it has changed since August 1, 2021.

9.

Please provide an understanding as to the nature of any business relationship Defendant Jonesboro Nursing had, in August 2021, with Defendants D & N, LLC; and DTD HC, LLC. If the current business relationship between Defendant Jonesboro Nursing and Defendants D & N, LLC; and DTD HC, LLC are different then it was in 2021, please state how the relationship(s) is different, when the relationship(s) became different and why the relationship(s) became different.

10.

Please identify by name and home address any and all person(s) and or business entity(ies) who currently have or had any right to receive any financial compensation and/or any portion of profits and/or revenue resulting from the operation of the Jonesboro as of August, 2021 as well as currently. For each such person/entity, please state the date(s) as to when such person/entity acquired or received such a right and please detail why such person/entity had/has such a right to such financial consideration.

–3–

2023CV01870

11.

Please provide the names and, if such persons are no longer employed by any defendant, the last known phone numbers, email addresses and home addresses for the persons that occupied the following roles at Jonesboro on August 4, 2021: (1) Medical Director; (2) Director of Nursing; (3) Assistant Director of Nursing; (4) Administrator; (5) Assistant Administrator; (6) Charge Nurse and/or Nurse Supervisor for the wing/hall/department where Ms. Peggy Glass was residing on August 4, 2021.

12.

Please state whether any of the following persons were employees of Defendant Jonesboro Nursing on August 4, 2021:

(1)     Satori Jones, CNA;

(2)     Elmer Kohorst, LPN; and

(3)     Nogie Vincent-Ekunwe.

If such persons were not employees of Defendant Jonesboro Nursing as of August 4, 2021, please describe what the nature of the relationship was between each such individual(s) and Jonesboro Nursing as of August 4, 2021 and how such individual was allowed to provide health services to Peggy Glass at that time.

13.

For any such person identified in Plaintiff's Interrogatory No. 12, if you contend that such a person was not providing health care services to Peggy Glass within the course and scope of their employment with Defendant Jonesboro Nursing in August, 2021, please provide the basis of such an opinion and/or statement and identify who said person's employer was on the date(s) such person provided health care services to Peggy Glass.

-4-

14.

Please state by name, position/title, and last known addresses of all persons at Jonesboro who provided any evaluations, care, treatment, therapy and/or who had any interaction with Peggy Glass in August, 2021. For each such person, please provide a description of the evaluation, care, treatment, therapy and/or who had any interaction they had with Ms. Glass in August, 2021, when such interaction occurred and whether such person was an eye witness to any injury, choking and/or complaint of pain by Ms. Glass.

15.

Please state by name, position/title, and last known addresses of all persons at Jonesboro who provided any evaluations, care, treatment, therapy and/or who had any interaction with Peggy Glass on August 4, 2021. For each such person, please provide a description of the evaluation, care, treatment, therapy and/or who had any interaction they had with Ms. Glass on August 4, 2021, when such interaction occurred and whether such person was an eye witness to any injury, fall and/or complaint of pain by Ms. Glass.

16.

Please identify by name, position/title, and last known addresses of the person(s) who were in charge of and/or overseeing Ms. Peggy Glass's care and treatment on August 4, 2021 at Jonesboro.

17.

To the best of your understanding, please provide your understanding as to the circumstances surrounding how it was discovered that Ms. Peggy Glass had an obstructed airway, on the day of August 4, 2021 while a resident of Jonesboro. Please identify all persons who either observed Ms. Glass on or about August 4, 2021 who were consulted and/or played any role in evaluating Ms. Glass on or about August 4, 2021.

2023CV01870

18.

Please identify by name, position/title, and last known addresses of the person(s) who have any knowledge of the circumstances surrounding in Ms. Glass airway obstruction or choking as of the day of August 4, 2021 while she was a resident of Jonesboro.

19.

Please detail how the budgets for the operation of Jonesboro was created, evaluated and approved for the calendar years of 2019, 2020, 2021 and 2022. Specifically, please state what individuals, by name and title, played any role in the drafting of the proposed budgets, the discussion of the budgets, the revisions of the budgets and ultimately the confirmation of the budgets of Jonesboro for the calendar years 2019, 2020, 2021 and 2022?

20.

Please identify, by names and titles, the individuals who were responsible for staffing at Jonesboro for the calendar years 2019, 2020, 2021 and 2022.

21.

Please detail how staffing was determined at Jonesboro for the calendar years 2019, 2020, 2021 and 2022. Specifically, whose responsibility was it to determine appropriate staffing levels, who made the actual staffing assignments, and who was responsible for ensuring that sufficient staff was working at Jonesboro for the calendar years 2019, 2020, 2021 and 2022? Please identify all such individuals by name, title and state whether such individual(s) is still employed by any defendant in this action.

22.

Whose responsibility was it in 2019, 2020, 2021 and 2022 to file cost reports with the federal government on behalf of Jonesboro? Please identify such person(s) by name, title and state whether such person(s) are still employed by any defendant in this action.

2023CV01870

23.

Please describe what policies and/or procedures existed at Jonesboro in August, 2021 concerning, referencing or otherwise related to unanticipated events, patient injuries, choking, swallowing, feeding, staffing and/or budgets.  For any such policy and/or procedure, please identify by name, number and location of any such policy and/or procedure.

24.

Do you claim or contend that Peggy Glass, her family, or any other person or entity was at fault, negligent, or comparatively negligent, in whole or in part, for the claims asserted against you in this lawsuit? If you do so contend, please describe in detail each act and/or omission on the part of Ms. Glass or any other person or entity that you contend constituted negligence or fault or caused in whole or in part Ms. Glass's injuries.

25.

Was any employee of any defendant reprimanded, disciplined or fired as a result of Ms. Glass's injuries suffered on/or about August 4, 2021? If so, please identify any such employee, please state the reason said employee was reprimanded, disciplined and/or fired and describe any document relating to such action(s).

26.

Have you or anyone acting on your behalf interviewed, and/or obtained any written or recorded statement from any individual concerning any matter discussed in the complaint for damages and/or any matter related to Defendant Jonesboro Nursing's care, treatment and services provided to Ms. Glass in August, 2021 of the injuries she suffered while at Jonesboro?  If so, for each individual state:

    (a)     The name, address, and telephone number of the individual interviewed;

    (b)     The date of the interview;

2023CV01870

(c)     The name, address, and telephone number of the person who conducted the interview and/or obtained the statement.

(d)     The name, address, and telephone number of each person who has the original statement or a copy.

27.

State the name, last known address, telephone number and employer of any person, including any party who to your knowledge, information or belief was an eyewitness to any of the facts or circumstances complained of in the complaint, and/or has some knowledge of any fact or circumstance complained of in the complaint and describe the general subject matter of that knowledge.

28.

Please identify each and every insurance policy, contract or agreement pursuant to which any insurer is or may be liable to cover all or any portion of any judgment against any or all of the Defendants in this lawsuit.  For each such policy, provide the name and address of the insurer and the insurance agent through whom the policy was obtained, the policy number, the claim number associated with this lawsuit, the total limits of liability coverage, and state whether any insurer has notified any Defendant that it has reserved any alleged right to deny coverage.

29.

If as a result of the language of any applicable policy of insurance, the limits of liability coverage are diminished as a result of the payment of claims, or the payment of costs related to the defense of legal action(s) against the insured, or if the limits of liability coverage have changed or are diminished for any reason, please state so, and provide the following information:

a)     Please state the present, total dollar amount of liability insurance coverage available for payment of any judgment obtained against the Defendants in the present action,

2023CV01870

b)      If the amount of available liability coverage has diminished, please state the exact amount of the diminution, the date of the diminution, and the reason for the diminution.

c)      Please update your response to this interrogatory seasonably upon changes in the available policy limits.

30.

At any time in the last five (5) years, has the Georgia Department of Human Services, the Joint Commission or any other regulatory or investigatory body, whether a private organization or a government organization, contacted you about the incident detailed in this Complaint or for other incidents relating to the falls of a patient received while a patient at Jonesboro? If so, please detail when such contact was made, the nature of such contact, whether an investigation was launched by the regulatory body, and the results of such investigation(s) if known to you. This interrogatory is concerned with investigations or inquiries conducted or made by outside agencies or entities and is not related to your internal investigation(s). Plaintiffs are not seeking the name(s) of any such patients or any personal health information protected by HIPAA but would like to know if there were such incidents and the nature, date, and circumstances surrounding such incidents. If you contend any such information is protected by the work product doctrine or some other privilege, please so state and provide a privilege log of any such documentation related to such incident(s).

31.

Please identify the person at Defendant Jonesboro Nursing who is most familiar with maintaining the security of the electronic medical records at Jonesboro and who can best explain when notes were physically entered into Ms. Glass's electronic medical record.

2023CV01870

32.

Please describe the software used for residents' electronic medical records at Jonesboro in August, 2021.

33.

Do you contend that the affidavit of Louella Burgos, RN, BSN, submitted with this Complaint is in any way improper or not in compliance with O.C.G.A. § 9-11-9.1 or do you contend that Nurse Burgos is not qualified per O.C.G.A. § 24-9-67.1 to provide such an affidavit in this matter? If so, please state the basis for such contention(s).

34.

Pursuant to the provisions of O.C.G.A. § 9-11-26(b)(4)(A)(i), defendant is requested to identify each person whom defendant expects to call as an expert witness at trial, state the subject matter on which such expert is expected to testify, and state the substance of the facts and opinions to which the expert is expected to testify and the summary of the grounds of each opinion.

35.

Has anyone produced a record, report, diary, memorandum, correspondence or any other document of any type which explains, documents, notes, memorializes, describes or is any other way related to the incident in question?  If so, state:

    (a)      The name, address and title of the person who produced the document;

    (b)      The date and type of document produced;

    (c)      Who presently has possession of the document;

    (d)      The reason the document or item was produced.

36.

Do you or anyone acting on your behalf know of any objects, photographs, films, videotapes, diagrams, reproductions or models depicting any place, object, or individual related in

2023CV01870

any way to the incident or Ms. Glass's treatment and injuries?  If so, state:

    (a)    The places, objects, or persons photographed, filmed, or videotaped;

    (b)    The type of item created (i.e., diagram, reproduction, or model);

    (b)    The date the item was created or produced,

    (d)    The subject matter;

    (e)    The name, address, and telephone number of the individual who created each such item,

    (f)    The name, address, and telephone number of each person who has each item,

    (g)    The reason each such item was produced.

37.

Did you or anyone acting on your behalf cause an investigation to be conducted at any time in connection with the subject matter of this action that is not privileged by O.C.G.A. § 31-7-130 et. seq. or O.C.G.A. § 31-7-140 et. seq.?  If so, please state for each such investigation:

    (a)    The date of each investigation;

    (b)    Where the investigation was made;

    (c)    The names of the persons conducting each such investigation;

    (d)    The names and capacities of all persons present during the investigation, and/or were contacted with respect to the investigation;

    (e)    Whether any written notes or memoranda of any kind were made in connection with the investigation;

    (f)    Whether a report of the investigation was made;

    (g)    The name of the person making each such report;

    (h)    The name and address of the person having custody of each written report.

2023CV01870

38.

If there is any document of any type that you have not produced in response to Plaintiff's request for production on the grounds that such document constitutes work product and/or privileged information as defined under O.C.G.A. § 9-11-26(b)?  If so, please provide a privilege log or a document compliant with Superior Court Rule 5.5 in which you list each such document by title or brief description so as to facilitate the Court's in camera inspection.

39.

Do you contend that service, service of process, venue, and/or jurisdiction is improper in this matter? If so, please state the basis for such contention(s).

40.

For any such person identified in Plaintiff's Interrogatory No. 11 and Interrogatory No. 12, please state whether he/she is a current or former employee of Defendant as well as his/her last known home and business address, email addresses, telephone number, employment title, and current employer.

This the 21st day of July, 2023.

PRIETO, MARIGLIANO, HOLBERT
& PRIETO, LLC

*/s/ William F. Holbert*
William F. Holbert
Georgia Bar No.:  360088
Michael A. Prieto
Georgia Bar No.:  587236
Elizabeth Evinger Meyer
Georgia Bar No.:  337929
Attorneys for the Plaintiff

1555 Mount Vernon Road
Atlanta, GA 30338
P: 404-856-0040 ● F: 404-856-0066
bholbert@pmhplaw.com
mprieto@pmhplaw.com
emeyer@pmhplaw.com

-12-

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of **PLAINTIFF'S FIRST CONTINUING INTERROGATORIES TO DEFENDANT JONESBORO NURSING AND REHABILITATION CENTER, LLC D/B/A JONESBORO NURSING AND REHABILITATION CENTER** upon all parties to this matter by serving the same with the Complaint.

Jonesboro Nursing and Rehabilitation Center, LLC
d/b/a Jonesboro Nursing and Rehabilitation Center
c/o Reg. Agent: United Corporate Services, Inc.
4228 First Avenue, Suite 10
Tucker, GA 30084

DTD HC, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

D & N, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

This the 21st day of July, 2023.

PRIETO, MARIGLIANO, HOLBERT
& PRIETO, LLC

/s/ William F. Holbert
William F. Holbert
Georgia Bar No.: 360088
Michael A. Prieto
Georgia Bar No.: 587236
Elizabeth Evinger Meyer
Georgia Bar No.: 337929
*Attorneys for the Plaintiff*

1555 Mount Vernon Road
Atlanta, GA 30338
P: 404-856-0040 ● F: 404-856-0066
bholbert@pmhplaw.com
mprieto@pmhplaw.com
emeyer@pmhplaw.com
www.pmhplaw.com

2023CV01870

e-Filed 7/21/2023 4:35 PM

*Tiki Brown*

**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
Waukecia Lawrence

## IN THE STATE COURT OF CLAYTON COUNTY

## STATE OF GEORGIA

| | |
|---|---|
| JOSEPH CHAD BRANNEN, AS THE TEMPORARY ADMINISTRATOR OF THE ESTATE OF PEGGY GLASS, DECEASED<br><br>Plaintiffs,<br><br>v.<br><br>JONESBORO NURSING AND REHABILITATION CENTER, LLC D/B/A JONESBORO NURSING AND REHABILITATION CENTER; D & N, LLC; DTD HC, LLC; ABC CORPORATION; AND JOHN/JANE DOES I AND II<br><br>Defendants. | CIVIL ACTION FILE NO.:<br><br>2023CV01870<br>_____ |

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS

COMES NOW Plaintiff, in the above-styled civil action, and serves this Request for Production of Documents pursuant to O.C.G.A. §§ 9-11-34 and 24-10-26 and herein requires Defendants Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; and D & N, LLC; DTD HC, LLC [hereinafter referred to as "Defendants"], to comply with these Code sections by producing and permitting the Plaintiff's attorney to inspect and copy each of the following documents and to produce the following at trial within 45 days of service of these requests.

**NOTE A:** Should any document or thing herein requested come into existence or become known to you or your attorney subsequent to your receipt of this request or subsequent to the inspection or other means of producing said documents or things herein below requested, this request shall be deemed to be continuing in nature.

2023CV01870

**NOTE B:** As the alternative to producing the documents or other evidence of writing herein below designated at the time, date and place above specified, you may photocopy true, correct and genuine copies of such requested documents or other evidence of writing and attach same to your formal response to the within and foregoing request for Production and serve same upon the undersigned counsel within forty-five (45) day from the date of service of this request.

**NOTE C:** This request for documents specifically includes all records which are stored on microfiche, or by electronic means including, but not limited to, computer hard drive, hard disc, floppy disc, tape storage, zip drive, memory card, memory stick and all other media of electronic storage which may be used to reduce the information to printable form.

1.

Please provide any and all documentation that relates to, concerns or details who the current owner(s) is/are of the skilled nursing facility known as Jonesboro Nursing and Rehabilitation Center, located at 2650 Highway 138 SE Jonesboro, Clayton County, Georgia 30236 [hereinafter referred to as "Jonesboro"), as inquired into by Plaintiff's Interrogatory No. 3.

2.

Please provide any and all documentation that relates to, concerns or details who the owner(s) was/were of Jonesboro in August, 2021, as inquired into by Plaintiff's Interrogatory No. 4.

3.

Please provide any and all documentation that relates to, concerns or details who played any role in the management and/or operation of Jonesboro in August, 2021, as inquired into by Plaintiff's Interrogatory No. 5.

2023CV01870

4.

Please provide any and all documentation that relates to, concerns or details who currently plays any role in the management and/or operation of Jonesboro as inquired into by Plaintiff's Interrogatory No. 6.

5.

Please provide any and all documentation that relates to, concerns or details who had any ownership, management, or operational interest/responsibility in Jonesboro as of August, 2021 as inquired into by Plaintiff's Interrogatory No. 7.

6.

Please provide any and all documentation that relates to, concerns or details the exact nature of Jonesboro's business both in August, 2021 as well as currently as inquired into by Plaintiff's Interrogatory No. 8.

7.

Please provide any and all documentation that relates to, concerns or details the exact nature of any and all business relationship(s) Defendant Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center had in August, 2021 as well as currently with all of the other defendants: D & N, LLC; and DTD HC, LLC as inquired into by Plaintiff's Interrogatory No. 9.

8.

Please provide any and all documentation that relates to, concerns or details how, when and/or why any person(s) and or business entity(ies) currently has or had any right to receive any financial compensation and/or any portion of profits and/or revenue resulting from the operation of Jonesboro as of August, 2021 as well as currently and as inquired into by Plaintiff's Interrogatory No. 10.

–3–

2023CV01870

9.

Please produce a copy of all nursing, medical and/or healthcare records of Peggy Glass in the possession of <u>any</u> Defendant, concerning Peggy Glass's residency at Jonesboro.

10.

Produce a copy of all medical records of Peggy Glass in the possession of <u>any</u> Defendant, that were created by any other healthcare provider.

11.

Produce any and all business records, including but not limited to admissions forms and contracts, Medicare and Medicaid forms, financial records and all other business documents that in any way concern or relate to Peggy Glass.

12.

Please produce any and all documentation, not already requested and produced, that in any way relates to, concerns, discusses or mentions, by name or otherwise, Peggy Glass in the possession of any Defendant. Such request includes but is not limited to e-mails, "sticky notes," handwritten notes that are not in Ms. Glass's business, nursing or medical file, etc.

13.

Please produce the complete personnel files for Satori Jones, Elmer Kohorst, and Nogie Vincent-Ekunwe. Defendant may redact personal health information that is protected by HIPAA.

14.

Please produce the complete personnel files for those individuals identified in your response to Plaintiff's Interrogatory No. 15.  If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

-4-

2023CV01870

15.

Please produce the complete personnel files for those individuals identified in your response to Plaintiff's Interrogatory No. 16. If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

16.

Please produce the complete personnel files for those individuals identified in your response to Plaintiff's Interrogatory No. 17. If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

17.

Please produce the complete personnel files for those individuals identified in your response to Plaintiff's Interrogatory No. 18. If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

18.

Please produce a complete index of all policies and procedures that were in effect at Jonesboro or promulgated by Defendant as of August, 2021.

19.

Please produce any and all policies and procedures were in effect at Jonesboro or promulgated by Defendant in August, 2021 that concern, reference or otherwise relate to

unanticipated events, patient injuries, feeding, choking, emergency situations, staffing and/or budgets.

20.

Please produce any and all documents that reflect every license and/or certificate that you have received from any local, state or federal authority that allows you to operate a skilled nursing facility.

21.

Please produce copies of the actual photographic images of each and every X-ray, CT, MRI and all other testing or diagnostic films related to the care and treatment provided to Peggy Glass during August, 2021 while she was a resident at Jonesboro.

22.

Produce all payroll-based-journal data submitted to CMS for the calendar years of 2019, 2020, 2021 and 2022.

23.

Please produce all cost reports, including but not limited to Medicare Cost Reports 2540-10 and CMS Form 671, submitted to the federal government on behalf of Jonesboro for the calendar years 2019, 2020, 2021 and 2022.

24.

Please produce any and all schedules, time cards, payroll documentation and any documentation reflecting what nurses, patient care techs and all other health care providers were working at Jonesboro for August, 2021.

25.

Please produce any and all documentation, including but not limited to emails, PDFs, JPEGS, excel spreadsheets, power point presentations, sticky notes, word documents, etc., that

2023CV01870

show initial budgets, revised and final budgets or any matter related to budgets for staff, equipment, supplies and all other items required for the operation of Jonesboro for the calendar years 2019, 2020, 2021 and 2022.

26.

Produce any and all daily and/or weekly resident census records for Jonesboro for 2019, 2020, 2021 and 2022.

27.

Produce each and every staffing assignment sheet for Jonesboro for April 2021 through September 2021.

28.

Produce any and all documents including training manuals, textbooks, videotapes, audio-tapes and any other documents or things that in any way relate to or concern the training of personnel regarding patient care and/or charting at the Defendant facility for the calendar year 2021.

29.

Produce each and every weekly, monthly, and/or yearly cost report created by each Defendant and/or their agents, servants, and employees relating to and/or concerning Jonesboro for the calendar year 2019, 2020, 2021 and 2022.

30.

Please produce any and all documentation concerning any employee of Defendant that was reprimanded, disciplined and/or fired as a result of Peggy Glass's care and treatment as detailed in Defendant's Response to Interrogatory No. 25.

31.

Please produce a complete copy of any and all witness statements and/or recordings identified in your responses to Plaintiff's Interrogatory No. 26.

32.

Please produce any and all insurance agreements, contracts, and/or policies under which any person or corporation carrying on an insurance business may be liable to satisfy part or all of any judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, including but not limited to any professional malpractice coverage, E&O coverage, liability coverage, indemnity coverage, umbrella or excess coverage covering Defendants at the time of the subject incidents. This request would concern any policy or coverage identified in your responses to Plaintiff's Interrogatories No. 28 and No. 29.

33.

Please produce any and all documentation concerning the software used at Jonesboro in August, 2021 to serve as the electronic medical records of its residents as detailed in Defendant's Response to Interrogatory No. 32.

34.

Please produce the audit trail and/or audit log of the electronic medical record, including but not limited to each and every entry, deletion, addition, correction or alteration/change of any type for the electronic medical record of Peggy Glass for August, 2021.

35.

Please produce any and all reports, whether written or otherwise recorded, made by each expert who has been retained or otherwise employed by Defendants and who is anticipated provide expert testimony in this matter.

2023CV01870

36.

Please produce the CV, fee schedule and any bills from any expert who has been retained or otherwise employed by Defendants and who is anticipated to provide expert testimony in this matter.

37.

Please produce any record, report, diary, memorandum, correspondence or any other document of any type which explains, documents, notes, memorializes, describes or is any other way related to the incident in question as inquired into by Plaintiff's Interrogatory No. 35. If you contend any such information is protected by the work product doctrine or some other privilege, please so state and provide a privilege log of any such documentation related to such incident(s).

38.

Please produce any and all surveillance movies, videotapes or photographs that were made of the decedent, Peggy Glass, or any family member.

39.

Please produce all documents that record, reflect, describe, notate, document and/or are in any way related to communications between Peggy Glass and her family and Defendant regarding the incident forming the subject of the complaint.

40.

Please produce all documents that Peggy Glass and/or her family has provided to Defendant at any time related in any way to the facts and circumstances forming the basis of the complaint.

41.

Please produce any and all documentation that was provided by Defendant or some person/entity on behalf of Defendant to any local, state and/or federal agency that in any way concerns, references or is in any way related to Peggy Glass.

42.

Please produce any and all documentation created and or generated by any investigation conducted concerning the circumstances leading to the injured femur Peggy Glass suffered in August, 2021. If such documentation exists but you believe it to be privileged or otherwise non-discoverable, please identify what documentation you are withholding, the reason for such withholding and a description of what the documentation is in conformity with Superior Court Rule 5.5.

43.

Produce any and all incident and/or accident reports created by any you or any Defendant which in any way relate to, concerns, mentions or in any way refers to Peggy Glass.

44.

Produce all documents created for and/or provided to CMS or Georgia Department of Community Health which in any way mentions, refers to, relates to or otherwise concerns Peggy Glass.

45.

Please produce a privilege log for any document that you have not produced in response to Plaintiff's request for production on the grounds that such document constitutes work product and/or privileged information as defined under O.C.G.A. § 9-11-26(b) and as questioned in Interrogatory No. 38.

-10-

2023CV01870

46.

If you contend that the wrong corporate entities have been sued, please provide documentation demonstrating who the correct corporate entity(s) is(are).

47.

Please produce copies of each document that you contend support any defenses alleged in your Answer.

48.

Please produce the complete personnel files for those individuals identified in your response to Plaintiff's Interrogatory No. 11. If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

49.

Please produce the complete personnel files for those individuals identified in Plaintiff's Interrogatory No. 12. If such an individual was neither an employee nor agent of Defendant and no such personnel file exists for said individual, please state so. For those individuals that did have personnel files, Defendant may redact personal health information that is protected by HIPAA.

The aforesaid production shall be made on the forty-fifth (45) day after service of this request, at 10:00 a.m., at the Plaintiff's attorney's office and at any trial of the case. The Plaintiff's attorney is willing to pay for the reasonable cost of reproducing these documents and simply mailing them to the Plaintiff's attorney rather than an actual appearance at the office of the Plaintiff's attorney. Please advise us of such charges in advance.

2023CV01870

This request seeks documents in the possession of the Defendant, Defendant's agents, attorneys. Defendant shall notify and produce any such documents received subsequent to this date.

This 21st day of July, 2023.

PRIETO, MARIGLIANO, HOLBERT & PRIETO, LLC

/s/ William F. Holbert
William F. Holbert
Georgia Bar No.: 360088
Michael A. Prieto
Georgia Bar No.: 587236
Elizabeth Evinger Meyer
Georgia Bar No.: 337929
*Attorneys for the Plaintiff*

1555 Mount Vernon Road
Atlanta, GA 30338
P: 404-856-0040 ● F: 404-856-0066
bholbert@pmhplaw.com
mprieto@pmhplaw.com
emeyer@pmhplaw.com
www.pmhplaw.com

2023CV01870

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO ALL DEFENDANTS** upon all parties to this matter by serving the same with the Complaint.

Jonesboro Nursing and Rehabilitation Center, LLC
d/b/a Jonesboro Nursing and Rehabilitation Center
c/o Reg. Agent: United Corporate Services, Inc.
4228 First Avenue, Suite 10
Tucker, GA 30084

D & N, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

DTD HC, LLC
c/o Reg. Agent: Leslie Wilson
3690 Southwestern Boulevard
Orchard Park, NY 14127

This the 21ˢᵗ day of July, 2023.

PRIETO, MARIGLIANO, HOLBERT
& PRIETO, LLC

/s/ William F. Holbert
William F. Holbert
Georgia Bar No.:  360088
Michael A. Prieto
Georgia Bar No.:  587236
Elizabeth Evinger Meyer
Georgia Bar No.: 337929
*Attorneys for the Plaintiff*

1555 Mount Vernon Road
Atlanta, GA 30338
P: 404-856-0040 ● F: 404-856-0066
bholbert@pmhplaw.com
mprieto@pmhplaw.com
emeyer@pmhplaw.com
www.pmhplaw.com



# ERIE COUNTY SHERIFF'S OFFICE
## CIVIL ENFORCEMENT DIVISION



Tiki Brown
Clerk of State Court
Clayton County, Georgia
Shalonda Green

JOHN C. GARCIA
SHERIFF

WILLIAM J. COOLEY
UNDERSHERIFF

134 W. EAGLE ST. — 4TH FLOOR   BUFFALO, NY 14202

## SHERIFF'S CERTIFICATE OF SERVICE (CPLR § R306)

**STATE COURT
STATE OF GEORGIA
COUNTY OF CLAYTON**

Sheriff's Docket # 00447284

**JOSEPH CHAD BRANNEN, AS THE TEMPORARY
ADMINISTRATOR OF THE ESTATE OF PEGGY GLASS,
DECEASED**

Plaintiff/Petitioner

*-against-*

**DTD HC, LLC**

Defendant/Respondent

Court Case/Index # 2023CV01870

I, Todd Jones, a deputy sheriff in and for the County of Erie, State of New York, do hereby certify that I am over eighteen years of age, not a party to the action or proceeding above and that the above captioned **SUMMONS & COMPLAINT/PETITION/NOTICE** in the above entitled action or proceeding was effected upon **DTD HC LLC**, the corporation named therein as defendant/respondent, by personally serving **LESLIE WILSON**, **VP OF FINANCE** of **DTD HC LLC** who is authorized to accept service, in said action or proceeding, at **12:47 PM** on **8/1/2023** at **3690 SOUTHWESTERN BOULEVARD C/O:  LESLIE WILSON ORCHARD PARK, NY 14127.**

**Description of Person Served:**

| | | | |
|---|---|---|---|
| Approx. Age or DOB: | 556 | Sex: | FEMALE |
| Eye Color: | BLUE | Skin: | LIGHT |
| Approx. Weight: | 100-120 lbs. | Height: | 5' 2" |

Dated:  8/2/2023

**Todd Jones**
**Deputy Sheriff**
**Erie County Sheriff's Office**
**Civil Enforcement Division**

TELEPHONE: (716) 858-7606          FAX: (716) 858-7621          WEBSITE: WWW.ERIE.GOV/SHERIFF



# ERIE COUNTY SHERIFF'S OFFICE
## CIVIL ENFORCEMENT DIVISION



Tiki Brown
Clerk of State Court
Clayton County, Georgia
Shalonda Green

JOHN C. GARCIA
SHERIFF

WILLIAM J. COOLEY
UNDERSHERIFF

134 W. EAGLE ST. — 4TH FLOOR  BUFFALO, NY 14202

## SHERIFF'S CERTIFICATE OF SERVICE (CPLR § R306)

**STATE COURT**
**STATE OF GEORGIA**
**COUNTY OF CLAYTON**

Sheriff's Docket # 00447284

**JOSEPH CHAD BRANNEN, AS THE TEMPORARY**
**ADMINISTRATOR OF THE ESTATE OF PEGGY GLASS,**
**DECEASED**

Plaintiff/Petitioner

*-against-*

**D & N, LLC**

Defendant/Respondent

Court Case/Index # 2023CV01870

I, Todd Jones, a deputy sheriff in and for the County of Erie, State of New York, do hereby certify that I am over eighteen years of age, not a party to the action or proceeding above and that the above captioned **SUMMONS & COMPLAINT/PETITION/NOTICE** in the above entitled action or proceeding was effected upon **D & N, LLC**, the corporation named therein as defendant/respondent, by personally serving **LESLIE WILSON, VP OF FINANCE** of **D & N, LLC** who is authorized to accept service, in said action or proceeding, at **12:47 PM** on **8/1/2023** at **3690 SOUTHWESTERN BOULEVARD C/O LESLIE WILSONORCHARD PARK, NY 14127.**

**Description of Person Served:**

| | | | |
|---|---|---|---|
| Approx. Age or DOB: | 56 | Sex: | FEMALE |
| Eye Color: | BLUE | Skin: | LIGHT |
| Approx. Weight: | 100-120 lbs. | Height: | 5' 2" |

Dated:  8/2/2023

**Todd Jones**
**Deputy Sheriff**
**Erie County Sheriff's Office**
**Civil Enforcement Division**

*2023CV01870*

e-Filed 8/8/2023 2:42 PM

*Tiki Brown*
**Tiki Brown**
**Clerk of State Court**
**Clayton County, Georgia**
**Shalonda Green**

## AFFIDAVIT OF SERVICE

| Case: 2023CV01870 | Court: State | County: Clayton, GA | Job: 9240891 (Glass, P) |
|---|---|---|---|
| **Plaintiff / Petitioner:** Joseph Chad Brannen, as the Temporary Administrator of the Estate of Peggy Glass, Deceased | | **Defendant / Respondent:** Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center; D&N, LLC; DTD HD, LLC; ABC Corporation and John/Jane Does I and II | |
| **Received by:** Georgia Attorney Process and Mobile Notary Services | | **For:** PMHP Law | |
| **To be served upon:** Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center | | | |

I, PATRICIA JOYCE DAMBACHCIRKO, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center, 4228 1st Ave Suite: 14, Tucker, GA 30084-4426

**Manner of Service:** Registered Agent, Jul 25, 2023, 1:16 pm EDT

**Documents:** Summons , Complaint , Affidavit - Burgos NH , Plaintiffs first set of interogatoriesTo Jonesboro , Plaintiffs First request for production of documents to all Defendants

**Additional Comments:**
1) Successful Attempt: Jul 25, 2023, 1:16 pm EDT at 4228 1st Ave Suite: 14, Tucker, GA 30084-4426 received by Jonesboro Nursing and Rehabilitation Center, LLC d/b/a Jonesboro Nursing and Rehabilitation Center. Age: 40+; Ethnicity: Caucasian; Gender: Female; Weight: 155-160; Height: 5'6"; Hair: Brown; Relationship: Legal Assistant ;
Perfected service by delivering 1 copy of documents to Becky Chatham, Authorized recipient, as described

_____  7/26/23
PATRICIA JOYCE DAMBACHCIRKO        Date

Georgia Attorney Process and Mobile Notary Services
375 Rockbridge Rd NW Ste: 172-268
Lilburn, GA 30047-5810
470-636-SERV(7378)

Subscribed and sworn to before me by the affiant who is personally known to me.

_____
Notary Public

7-26-23                09-13-25
Date                Commission Expires