

**Lincoln**
**Financial Group®**

1300 South Clinton
PO Box 2348
Fort Wayne IN 46801-2348

**CONTRACT-ENV ENCLOSED**

JONATHAN A ZULAUF
E D JONES & CO
227 NORTH WALNUT ST
ITASCA, IL 60143

Dear Financial Advisor:

Enclosed you will find your client's Shareholders Advantage annuity contract. Prior to delivering or mailing this contract to your client, please review the attached Client Information Profile to verify that all the information is correct. If there is a need to correct any information, please notify one of our Customer Service Representatives at 1-800-443-8137.

For your convenience, we have enclosed a window envelope and address page for delivering or mailing the contract to your client.

Thank you for considering a Shareholders Advantage annuity product in planning for your client's financial security.

Sincerely,

Individual Annuity Operations
Lincoln Life

*Electronic Copy*

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
ALBWCST 062402

Electronic Copy



**CLIENT INFORMATION PROFILE**

**1300 South Clinton**
**PO Box 2348**
**Fort Wayne IN 46801-2348**

AMERICAN LEGACY CONTRACT NUMBER: **95-9963561**
REGISTERED REPRESENTATIVE: **JONATHAN A ZULAUF**
FIRM NAME: **E D JONES & CO**

**OWNER INFORMATION**

*CONTRACT OWNER*

NAME: GIOVANNI MADEO
ADDRESS: 22W107 GLENDALE TER
MEDINAH IL 60157-9690
SSN/TAX ID: ████1348
DATE OF BIRTH: ████

*JOINT OWNER*

NAME: MARIA MADEO
SSN: ████1628

**ANNUITANT INFORMATION**

*ANNUITANT*

NAME: GIOVANNI MADEO
SSN: ████
DATE OF BIRTH: ████

**CONTRACT INFORMATION**

PRODUCT: SHAREHOLDERS ADVANTAGE
TYPE OF CONTRACT: NON-QUALIFIED
EFFECTIVE DATE: 11/22/2004
INITIAL DEPOSIT: $50,656.21
ALLOCATION: **25.0% GROWTH-INCOME**     **25.0% GROWTH**     **25.0% GOV'T/AAA SEC**
**25.0% BOND FUND**

**CONTRACT FEATURES**

*TELEPHONE/INTERNET*

*AUTHORIZATION:* NO
*DEATH BENEFIT:* GUARANTEE OF PRINCIPAL

**BENEFICIARY INFORMATION**

| *BENEFICIARY NAME* | *SSN/TAX ID** | *PERCENT** |
|---|---|---|
| *PRIMARY* | | |
| FRANK MADEO | ████7511 | 50% |
| (CHILD) | | |
| MARIA GOMEZ | | 50% |
| (CHILD) | | |
| * INFORMATION NOT REQUIRED | | |

**Your contract has been established with information received from you as well as any clarifications from either you or your representative. Please contact Lincoln Life at 1-800-443-8137 within 30 days if information is not accurate. Lincoln Life reserves the right to limit its liability if inaccuracies are not reported promptly.**

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
AVCLNTST 062102        1        Contract Number 95-9963561
Representative Copy

Electronic Copy

Electronic Copy



**1300 South Clinton**
**PO Box 2348**
**Fort Wayne IN 46801-2348**

*AMENDMENT OF APPLICATION*

**AMERICAN LEGACY CONTRACT NUMBER: 95-9963561**

**CONTRACT OWNER NAME: GIOVANNI MADEO**

**PLEASE SIGN AND RETURN THIS FORM TO LINCOLN LIFE WITHIN 10 DAYS OF RECEIPT**

I hereby amend the following section of my application to Lincoln Life:

**REPLACEMENT**

Does the applicant have any existing life insurance policies or annuity contracts?

Yes _____          No _____

Will the proposed contract replace any existing life insurance policies or annuity contracts?

Yes _____          No _____

I further agree that the above changes will be an amendment of my application and of any contract issued by Lincoln Life as a result of that application.

_____          _____
**(Contract Owner's Signature)**                          **(Date)**

_____          _____
**(Annuitant's Signature if different than Contract Owner)**          **(Date)**

---

**SPECIAL NOTE: It is important that Lincoln Life secures this signed amendment for your protection.**

An application amendment is required when the information provided on the original application, signed by you, was either:

- Missing and then received through a telephone conversation with you or your broker;

or

- Crossed off and/or changed using white-out on the original application without your initials present.

If you have any questions, please contact one of our Customer Service Representatives at 1-800-942-5500.

---

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
ALCRIST 062102

*REPRESENTATIVE COPY*

Electronic Copy

Electronic Copy



**Financial Group®**

1300 South Clinton
PO Box 2348
Fort Wayne IN 46801-2348

## CONTRACT ENCLOSED

GIOVANNI MADEO
22W107 GLENDALE TER
MEDINAH IL 60157-9690

# URGENT!

## DATE SENSITIVE MATERIAL ENCLOSED
## SIGNATURE REQUIRED

Please respond within 10 days of receipt by signing and returning the important document(s) enclosed. For your convenience, we have provided a postage-paid return envelope.

If you have questions regarding this request, please contact one of our Customer Service Representatives at 1-800-942-5500 for assistance.

Thank you

Individual Annuity Operations
Lincoln Life

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
ALCADST 062402

Electronic Copy

Electronic Copy



**1300 South Clinton**
**PO Box 2348**
**Fort Wayne IN 46801-2348**

*AMENDMENT OF APPLICATION*

**AMERICAN LEGACY CONTRACT NUMBER: 95-9963561**

**CONTRACT OWNER NAME: GIOVANNI MADEO**

**PLEASE SIGN AND RETURN THIS FORM TO LINCOLN LIFE WITHIN 10 DAYS OF RECEIPT**

I hereby amend the following section of my application to Lincoln Life:

**REPLACEMENT**

Does the applicant have any existing life insurance policies or annuity contracts?

Yes _____          No _____

Will the proposed contract replace any existing life insurance policies or annuity contracts?

Yes _____          No _____

I further agree that the above changes will be an amendment of my application and of any contract issued by Lincoln Life as a result of that application.

_____          _____
**(Contract Owner's Signature)**                              **(Date)**

_____          _____
**(Annuitant's Signature if different than Contract Owner)**          **(Date)**

---

**SPECIAL NOTE: It is important that Lincoln Life secures this signed amendment for your protection.**

An application amendment is required when the information provided on the original application, signed by you, was either:

  - Missing and then received through a telephone conversation with you or your broker;

                              or

  - Crossed off and/or changed using white-out on the original application without your initials present.

If you have any questions, please contact one of our Customer Service Representatives at 1-800-942-5500.

---

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
ALCRIST 062102                                                      ***OWNER SIGN & RETURN***

*Electronic Copy*

Electronic Copy



**1300 South Clinton**
**PO Box 2348**
**Fort Wayne IN 46801-2348**

*AMENDMENT OF APPLICATION*

**AMERICAN LEGACY CONTRACT NUMBER: 95-9963561**

**CONTRACT OWNER NAME: GIOVANNI MADEO**

**PLEASE SIGN AND RETURN THIS FORM TO LINCOLN LIFE WITHIN 10 DAYS OF RECEIPT**

I hereby amend the following section of my application to Lincoln Life:

**REPLACEMENT**

Does the applicant have any existing life insurance policies or annuity contracts?

Yes _____        No _____

Will the proposed contract replace any existing life insurance policies or annuity contracts?

Yes _____        No _____

I further agree that the above changes will be an amendment of my application and of any contract issued by Lincoln Life as a result of that application.

_____        _____
**(Contract Owner's Signature)**                                    **(Date)**

_____        _____
**(Annuitant's Signature if different than Contract Owner)**        **(Date)**

---

**SPECIAL NOTE: It is important that Lincoln Life secures this signed amendment for your protection.**

An application amendment is required when the information provided on the original application, signed by you, was either:

- Missing and then received through a telephone conversation with you or your broker;

or

- Crossed off and/or changed using white-out on the original application without your initials present.

If you have any questions, please contact one of our Customer Service Representatives at 1-800-942-5500.

---

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*
ALCRIST 062102

*OWNER COPY*

Electronic Copy

Electronic Copy



**Financial Group®**
1300 South Clinton
PO Box 2348
Fort Wayne IN 46801-2348

**CONTRACT # 95-9963561**
***PREPARED ESPECIALLY FOR***
**GIOVANNI MADEO**

Dear Contract Owner:

Thank you for purchasing a Shareholders Advantage annuity contract. Your annuity is issued by Lincoln Life.

As an owner of a Shareholders Advantage annuity contract, you can benefit from the complete investment flexibility, important tax advantages and insurance guarantees available through the contract.

If you have any questions, please contact one of our Customer Service Representatives at 1-800-942-5500.

Sincerely,

Individual Annuity Operations
Lincoln Life

Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.
ALWELST 062402

Electronic Copy

Electronic Copy



**CLIENT INFORMATION PROFILE**

**1300 South Clinton**
**PO Box 2348**
**Fort Wayne IN 46801-2348**

AMERICAN LEGACY CONTRACT NUMBER: **95-9963561**
REGISTERED REPRESENTATIVE: **JONATHAN A ZULAUF**
FIRM NAME: **E D JONES & CO**

## OWNER INFORMATION

**CONTRACT OWNER**

| | |
|---|---|
| NAME: | GIOVANNI MADEO |
| ADDRESS: | 22W107 GLENDALE TER |
| | MEDINAH IL 60157-9690 |
| SSN/TAX ID: | ████1348 |
| DATE OF BIRTH: | ████ |

**JOINT OWNER**

| | |
|---|---|
| NAME: | MARIA MADEO |
| SSN: | ████1628 |

## ANNUITANT INFORMATION

**ANNUITANT**

| | |
|---|---|
| NAME: | GIOVANNI MADEO |
| SSN: | ████1348 |
| DATE OF BIRTH: | ████ |

## CONTRACT INFORMATION

| | |
|---|---|
| PRODUCT: | SHAREHOLDERS ADVANTAGE |
| TYPE OF CONTRACT: | NON-QUALIFIED |
| EFFECTIVE DATE: | 11/22/2004 |
| INITIAL DEPOSIT: | $50,656.21 |
| ALLOCATION: | **25.0% GROWTH-INCOME**     **25.0% GROWTH**     **25.0% GOV'T/AAA SEC** |
| | **25.0% BOND FUND** |

## CONTRACT FEATURES

**TELEPHONE/INTERNET**

| | |
|---|---|
| **AUTHORIZATION:** | NO |
| **DEATH BENEFIT:** | GUARANTEE OF PRINCIPAL |

## BENEFICIARY INFORMATION

| BENEFICIARY NAME | SSN/TAX ID* | PERCENT* |
|---|---|---|
| **PRIMARY** | | |
| FRANK MADEO | ████7511 | 50% |
| (CHILD) | | |
| MARIA GOMEZ | | 50% |
| (CHILD) | | |
| * INFORMATION NOT REQUIRED | | |

**Your contract has been established with information received from you as well as any clarifications from either you or your representative. Please contact Lincoln Life at 1-800-443-8137 within 30 days if information is not accurate. Lincoln Life reserves the right to limit its liability if inaccuracies are not reported promptly.**

*Lincoln Financial Group is the marketing name for Lincoln National Corporation (LNC) and its affiliates.*

AVCLNTST 062102

Contract Number 95-9963561
Owner Copy

Electronic Copy

Electronic Copy

 *Lincoln Financial Group Privacy Notice*

**Your Privacy is Important to Us**

One of our top priorities is to make sure that we keep the information we have about you secure. We value our relationship with you. We work hard to preserve your privacy. The very nature of our relationship with you requires us to collect or share certain types of information about you. This privacy notice explains how we use potential, current and former customer information. Please read it carefully.

**What Personal Information Do We Have?**

We collect only information, such as name, address, social security number, assets, income or employment status, that we need to provide the services you request and to administer your business with us. We may also collect health information as you authorize. We may collect information from:

-   you when you complete an application, a fact finder for financial planning, or other form,
-   your employer in connection with its sponsoring and administering your retirement plan,
-   you when you inquire about or purchase other products from us,
-   consumer-reporting agencies, and
-   your business dealings with our family of companies or other companies.

**How Do We Use Your Personal Information?**

We use your personal information described above and may provide it to others:

-   to process your requests and transactions,
-   to fulfill legal and regulatory requirements,
-   to perform services on your behalf,
-   for joint marketing purposes.

We do not disclose nonpublic information about our potential, current and former customers unless allowed or required by law. The law allows us to share your financial information with our affiliates and others to market products or services to you. These types of disclosures are allowed and cannot be prevented.

**Protecting the Confidentiality of Your Personal Information**

We only allow access to your personal information to those individuals who need it in order to provide products or services to you. Individuals who have access to your personal information are required to keep it strictly confidential. We maintain safeguards to protect your personal information.

Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates.

*This notice is being provided by The Lincoln National Life Insurance Company, Lincoln Life & Annuity Company of New York, Lincoln Financial Advisor Corporation and Delaware Investments because you are a customer of one or more of these entities.*

Electronic Copy



*Lincoln National Corporation Business Continuity Strategy*

Electronic Copy

While LNC makes every effort to avoid business disruptions, it is reasonable and prudent to guard against potential disruptions and prepare plans that will enable our affiliated business units to recover from such disruptions and resume business functions.

LNC is headquartered in Philadelphia, PA, and has affiliated business offices located in Fort Wayne, IN; Hartford, CT; Schaumburg, IL; Portland, ME; and Syracuse, NY. Lincoln Financial Advisors has retail business locations throughout the USA . Each of these locations has a business continuity program that aligns with the LNC enterprise wide business continuity plan. LNC has established a Business Recovery Officer Council that is comprised of business recovery officers for each of these business locations.

**LNC's Business Continuity Strategy employs:**

System and Telecommunication Accessibility
System Back-up and Recovery
Employee Safety and Communication

LNC's business continuity plan includes documented and tested procedures that will assist in ensuring the availability of critical resources and in maintaining the continuity of operations during an emergency situation.

**Alternative Facilities**
Strategies include the use of both affiliated sites and mobile sites for client response centers. The location of the continuity site will be determined based on the geographical scope of a disruption (firm, city, and region). This strategy will allow client communication to continue with minimal disruption due to the fact that telephone or computer access will be available as in non-disruptive times.

**Critical System**
Critical applications have been identified throughout LNC. In the event of a site disruption, these critical applications will be available upon the alternative facilities being established.

**Recovery Time**
Recovery time for critical systems will be determined based on the scope of the disruption, but targeted recovery for most disruptions, depending on function, ranges from 24 hours to 72 hours.

**Communication**
Communication teams are identified in each location as well as at an LNC level. These teams will establish communications with internal employees, clients and members of the media as well as the general public.

*Lincoln Financial Group is the marketing name for Lincoln National Corporation and its affiliates. Certain affiliates act as the administrative agent for CIGNA Life Insurance Company and Connecticut General Life Insurance Company.*

33381  8/04

Electronic Copy

Dear Contract Owner,

Thank you for selecting American Legacy to help meet your long term investment goals.

In order to provide quality service, your opinion is important to us. If you have concerns, questions about your account, or want to voice a complaint directly to Lincoln National, please write to the following address or call our toll-free number:

The Lincoln National Life Insurance Company
1300 South Clinton Street
P.O. Box 2348
Fort Wayne, IN 46801

Telephone: 1-800-942-5500

We have made a commitment to satisfy our contract owners. However, if you feel your problem isn't properly resolved, you can also contact the Illinois Department of Insurance and seek assistance. They can be reached at:

Illinois Department of Insurance
Consumer Division
320 West Washington Street
Springfield , IL 62767

We look forward to working with you in the future.

American Legacy Operations
Lincoln National Life Insurance Company

ILAF

Electronic Copy

Electronic Copy

# ILLINOIS
# LIFE AND HEALTH INSURANCE GUARANTY
# ASSOCIATION LAW

Residents of Illinois who purchase health insurance, life insurance, and annuities should know that the insurance companies licensed in Illinois to write these types of insurance are members of the Illinois Life and Health Insurance Guaranty Association. The purpose of this Guaranty Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its policy obligations. If this should happen, the Guaranty Association will assess its other member insurance companies for the money to pay the covered claims of policyholders that live in Illinois (and their payees, beneficiaries, and assignees) and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guaranty Association is not unlimited, however, as noted below.

## ILLINOIS LIFE AND
## HEALTH INSURANCE GUARANTY ASOCIATION

## DISCLAIMER

The Illinois Life and Health Insurance Guaranty Association provides coverage of claims under some types of policies if the insurer becomes impaired or insolvent. COVERAGE MAY NOT BE AVAILABLE FOR YOUR POLICY. Even if coverage is provided, there are substantial limitations and exclusions. Coverage is generally conditioned on continued residence in Illinois . Other conditions may also preclude coverage.

You should not rely on availability of coverage under the Life and Health Insurance Guaranty Association Law when selecting an insurer. Your insurer and agent are prohibited by law from using the existence of the Association or its coverage to sell you an insurance policy.

The Illinois Life and Health Insurance Guaranty Association or the Illinois Department of Insurance will respond to any questions you may have which are not answered by this document. Policyholders with additional questions may contact:

Illinois Life and Health Insurance Guaranty Association
8420 West Bryn Mawr Avenue
Chicago , Illinois  60631
(773) 714-8050

Illinois Department of Insurance
320 West Washington Street
4th Floor
Springfield , Illinois 62767
(217) 782-4515

Summary of General Purposes And<br/>Current Limitations of Coverage

The Illinois law that provides for this safety-net coverage is called the Illinois Life and Health Insurance Guaranty Association Law (*Law*) (215 ILCS 5/531.01, et seq.). The following contains a brief summary of the Law's coverages, exclusions, and limits. This summary does not cover all provisions, nor does it in any way change anyone's rights or obligations under the Law or, the rights or obligations of the Guaranty Association. If you have obtained this document from an agent in connection with the purchase of a policy, you should be aware that its delivery to you does not guarantee that your policy is covered by the Guaranty Association.

    a)  Coverage**:**

        The Illinois Life and Health Insurance Guaranty Association provides coverage to policyholders that reside in Illinois for insurance issued by members of the Guaranty Association, including:
        1)  life insurance, health insurance, and annuity contracts;
        2)  life, health or annuity certificates under direct group policies or contracts;
        3)  unallocated annuity contracts; and

Electronic Copy

4) contracts to furnish health care services and subscription certificates for medical or health care services issued by certain licensed entities. The beneficiaries, payees, or assignees of such persons are also protected, even if they live in another state.

b) Exclusions from Coverage:

1) The Guaranty Association does not provide coverage for:
   A. any policy or portion of a policy for which the individual has assumed the risk;
   B. any policy of reinsurance (unless an assumption certificate was issued);
   C. interest rate guarantees which exceed certain statutory limitations;
   D. certain unallocated annuity contracts issued to an employee benefit plan protected under the Pension Benefit Guaranty Corporation and any portion of a contract which is not issued to or in connection with a specific employee, union or association of natural persons benefit plan or a government lottery;
   E. any portion of a variable life insurance or variable annuity contract not guaranteed by an insurer; or
   F. any stop loss insurance.
2) In addition, persons are not protected by the Guaranty Association if:
   A. The Illinois Director of Insurance determines that, in the case of an insurer which is not domiciled in Illinois, the insurer's home state provides substantially similar protection to Illinois residents which will be provided in a timely manner; or
   B. their policy was issued by an organization which is not a member insurer of the Association.

c) Limits on Amount of Coverage:
1) The Law also limits the amount the Illinois Life and Health Insurance Guaranty Association is obligated to pay. The Guaranty Association's liability is limited to the lesser of either:
   A. the contractual obligations for which the insurer is liable or for which the insurer would have been liable if it were not an impaired or insolvent insurer, or
   B. with respect to any one life, regardless of the number of policies, contracts, or certificates:
      i) in the case of life insurance, $300,000 in death benefits but not more than $100,000 in net cash surrender or withdrawal values;
      ii) in the case of health insurance, $300,000 in health insurance benefits, including net cash surrender or withdrawal values; and
      iii) with respect to annuities, $100,000 in the present value of annuity benefits, including net cash surrender or withdrawal values, and $100,000 in the present value of annuity benefits for individuals participating in certain government retirement plans covered by an unallocated annuity contract. The limit for coverage of allocated annuity contracts other than those issued to certain governmental retirement plans is $5,000,000 in benefits per contract holder, regardless of the number of contracts.
2) However, in no event is the Guaranty Association liable for more than $300,000 with respect to any one individual.

Electronic Copy

GIOVANNI MADEO
95-9963561



® **LINCOLN NATIONAL LIFE INSURANCE CO.**
A part of LINCOLN NATIONAL CORPORATION

( A Stock Company)

# ANNUITY CONTRACT

**Individual Flexible Purchase Payment
Deferred Variable Annuity Contract
With Annuity Payment Options**

**Nonparticipating**

The Lincoln National Life Insurance Company (LNL) agrees to provide the benefits and other rights described in this Contract in accordance with the terms of this Contract.

**READ THIS CONTRACT CAREFULLY**. This is a legal contract between the Owner and LNL. We want to be sure you understand the features and benefits contained in this Contract. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR CONTRACT CAREFULLY. If you have any questions after reading the Contract, we hope you will contact your representative or the Home Office of LNL.

**NOTICE OF RIGHT TO EXAMINE CONTRACT. Within 10 days after this Contract is first received, it may be cancelled for any reason without penalty (e.g., no Sales Charge will be deducted) by delivering or mailing it to the representative through whom it was purchased or to the Home Office of LNL. Upon cancellation, LNL will return the value of the Variable Account as of the Valuation Date on which LNL receives the cancellation request and any Sales Charge deducted from the Gross Purchase Payments.**

ALL PAYMENTS AND VALUES PROVIDED BY THIS CONTRACT, WHEN BASED ON THE INVESTMENT EXPERIENCE OF THE VARIABLE ACCOUNT, ARE VARIABLE. THE AMOUNTS MAY INCREASE OR DECREASE AND ARE NOT GUARANTEED AS TO FIXED DOLLAR AMOUNT (SEE ARTICLE 4 AND ARTICLE 7).

Signed for The Lincoln National Life Insurance Company at its Home Office located at 1300 South Clinton Street in Fort Wayne, Indiana 46802.

*John H. Gotta*, President

*Dede DeRosa*
SVP & Chief Operating Officer

Form 30070-A-IL 8/03

American Legacy Shareholders

*Electronic Copy*

# Table of Contents

**Article**                                                                                          **Page**

1    Definitions ..........................................................................................................    4

2    Gross Purchase Payments ...............................................................................    6

3    Contract Value ..................................................................................................    7

4    Variable Account ..............................................................................................    8

5    Transfers, Withdrawals and Surrenders ........................................................    10

6    Death Benefits ..................................................................................................    12

7    Annuity Payment Options ................................................................................    15

8    Beneficiary ........................................................................................................    18

9    Suspension or Deferral of Payments .............................................................    19

10   General Provisions ...........................................................................................    20

Electronic Copy

# CONTRACT SPECIFICATIONS

| | |
|---|---|
| **Contract Number:** | 95-9963561 |
| **Annuitant:** | GIOVANNI MADEO |
| **Age at Issue:** | 72 |
| **Contract Date:** | November 22, 2004 |
| **Initial Gross Purchase Payment:** | $50,656.21 |
| **Maturity Date:** | May 9, 2022 |
| **Owner(s):** | GIOVANNI MADEO<br>MARIA MADEO |
| **Beneficiary Designation:** | Refer to the Client Information Profile |
| **Death Benefit on Contract Date:** | GUARANTEE OF PRINCIPAL |

## PURCHASE PAYMENT AND ALLOCATION REQUIREMENTS:

**Minimum Subsequent Gross Purchase Payment Transmitted Electronically:** $25

**Minimum Subsequent Gross Purchase Payment Transmitted Other Than Electronically:** $100

**Minimum Allocation to Any One Variable Subaccount:** $20

**Minimum Allocation To Any Fixed Subaccount:** $2,000

**Minimum Allocation To The DCA Fixed Account:** $2,000

## ACCOUNT FEE:

The Account Fee is $20 per Contract Year. The Account Fee will be deducted on the first Valuation Date following the last day of each Contract Year. If the Contract is surrendered prior to the last day of a Contract Year, the full Account Fee will be deducted upon the surrender. The Account Fee will be deducted from each Variable Subaccount and any Fixed Subaccount on a pro-rata basis. The Account Fee will be waived for any Contract Year in which the Contract Value equals or exceeds $50,000.00 as of the Valuation Date on which the Account Fee would otherwise be deducted. The Account Fee will be waived after 15 Contract Years. The Account Fee will also be waived on and after the Annuity Commencement Date.

## SALES CHARGE

A Sales Charge will apply to all initial and subsequent Gross Purchase Payments paid into this Contract. This charge is taken as a percentage of the Gross Purchase Payment and is based on the amount of the Owner's Investment at the time of each Gross Purchase Payment. For purposes of determining the Sales Charge associated with this Contract, the following table will be used.

| Owner's Investment | Sales Charge as a percentage<br>of Gross Purchase Payment |
|---|---|
| Less than $25,000 | 5.75% |
| $25,000 or greater but less than $50,000 | 5.00% |
| $50,000 or greater but less than $100,000 | 4.50% |
| $100,000 or greater but less than $250,000 | 3.50% |

Electronic Copy

| | |
|---|---|
| $250,000 or greater but less than $500,000 | 2.50% |
| $500,000 or greater but less than $750,000 | 2.00% |
| $750,000 or greater but less than $1,000,000 | 1.50% |
| $1,000,000 or greater | 1.00% |

The Owner's Investment is determined at a given time, in accordance with LNL's procedures, as the sum of:

a.   The contract values for any individual LNL American Legacy annuity contracts owned by an Eligible Owner (defined below), if LNL receives Notice of Eligible Owner, as well as any other individual LNL contracts (either Qualified or Non-Qualified) that may be made available by LNL in the future for this purpose; plus

b.   The account values for any mutual fund accounts in the American Funds Group (AFG) owned by an Eligible Owner (defined below), as well as any other AFG mutual fund accounts that may be made available by AFG and LNL in the future for this purpose; plus

c.   The amount of the current Gross Purchase Payment made into this Contract.

An Eligible Owner includes the Owner of this Contract, the spouse of the Owner of this Contract, and a child under the age of 21 of the Owner of this Contract.

## VARIABLE ACCOUNT:
   Lincoln Life Variable Annuity Account H

## FIXED ACCOUNT:

**Minimum Guaranteed Interest Rate:** 1.50%

**The Fixed Subaccounts are:**
 1-YEAR INITIAL GUARANTEED PERIOD
 2-YEAR INITIAL GUARANTEED PERIOD
 3-YEAR INITIAL GUARANTEED PERIOD
 4-YEAR INITIAL GUARANTEED PERIOD
 5-YEAR INITIAL GUARANTEED PERIOD
 6-YEAR INITIAL GUARANTEED PERIOD
 7-YEAR INITIAL GUARANTEED PERIOD
 8-YEAR INITIAL GUARANTEED PERIOD
 9-YEAR INITIAL GUARANTEED PERIOD
 10-YEAR INITIAL GUARANTEED PERIOD

## VARIABLE ACCOUNT REQUIREMENTS:

**MORTALITY AND EXPENSE RISK AND ADMINISTRATIVE CHARGE PRIOR TO THE ANNUITY COMMENCEMENT DATE:**

We assess a daily charge equal on an annual basis to the percentages shown of the average daily net asset value of each Variable Subaccount. The daily charge will not exceed the percentage(s) shown.

If, on the Contract Date, one of the below listed Death Benefit Option(s) has been selected, the Mortality and Expense Risk and Administrative Charge will be as indicated for the Death Benefit Option selected.

| Death Benefit Option(s): | Charges: |
|---|---|
| - Guarantee of Principal Death Benefit: | 0.60% |
| - Enhanced Guaranteed Minimum Death Benefit: | 0.72% |

Electronic Copy

After the Contract Date, the Owner (or a spouse who continues the Contract as the Owner) may change at any time to a Death Benefit Option with a lower charge than the Death Benefit Option in effect, but may never change to a Death Benefit Option with a higher charge (see the Death Benefit Option charges above), If the Death Benefit Option is changed after the Contract Date, the change will be effective as of the Valuation Date the Notice to change the Death Benefit Option is received.

**MORTALITY AND EXPENSE RISK AND ADMINISTRATIVE CHARGE ON OR AFTER THE ANNUITY COMMENCEMENT DATE:** 0.60%**.**

The daily charge will not exceed the percentage shown.

**TRANSFER REQUIREMENTS PRIOR TO THE ANNUITY COMMENCEMENT DATE:**

Transfers cannot be made during the first 30 days.

The amount being transferred may not exceed LNL's maximum amount limit then in effect.

LNL reserves the right to require a 30 day minimum time period between each transfer.

**Maximum Number of Transfers Not Subject to a Transfer Fee:** 12 per Contract Year, excluding automatic DCA transfers. Transfers in excess of 12 per Contract Year must be authorized by LNL.

**Variable Account:**

**Minimum Single Transfer Amount From A Variable Subaccount**: The lesser of 1) $300; or 2) the remaining amount in the Variable Subaccount.

**Minimum Transfer Amount To A Variable Subaccount**: $300

**Fixed Account:**

**Minimum Single Transfer To A Fixed Subaccount:** $2,000

**Minimum Single Transfer To The DCA Fixed Account:** $300

**Minimum Single Transfer Amount From Any Fixed Account:** The lesser of 1) $300; or 2) the remaining amount in the Fixed Subaccount.

**Minimum Single Transfer Amount From The DCA Fixed Account:** The lesser of 1) $300; or 2) the remaining amount in the DCA Fixed Account. This restriction does not apply to automatic DCA transfers.

**Maximum Percentage Available For Transfer From Any Fixed Subaccount**: For transfers on a date other than the Expiration Date of a Guaranteed Period, the sum of the percentages transferred from any Fixed Subaccount in any Contract Year, where the percentages are based upon the value of the Fixed Subaccount at the time of the current withdrawal, will be limited to 25% of the value of the Fixed Subaccount. Such transfers will be subject to an Interest Adjustment.

**WITHDRAWAL AND SURRENDER REQUIREMENTS:**

**Minimum Partial Withdrawal Amount**: $300

**DEATH BENEFIT REQUIREMENTS PRIOR TO THE ANNUITY COMMENCEMENT DATE:**

The Owner may select a Death Benefit Option(s) to be effective as of the Contract Date. If no Death Benefit Option is selected, the Guarantee of Principal Death Benefit will be the Death Benefit effective as of the Contract Date.

Electronic Copy

**ANNUITY PAYMENT REQUIREMENTS:**

**Determination of the First Annuity Payment Date:**

For 100% Fixed Annuity Payment, the Annuity Payment Date must be at least 30 days after the Annuity Commencement Date. If any portion of the annuity payment will be on a variable basis, the Annuity Payment Date will be 14 days after the Annuity Commencement Date. The Annuity Unit value, if applicable, and Contract Value used to effect annuity payments will be determined as of the Annuity Commencement Date.

**Minimum Annuity Payment Amount:** $50

**Minimum Guaranteed Interest Rate for the Fixed Annuity Payment:** 1.5%

**Assumed Investment Rate for the Variable Annuity Payment:** Between 3% - 6%

Electronic Copy

# ARTICLE 1
# DEFINITIONS

**ACCUMULATION UNIT** -- A unit of measure used in the calculation of the value of a Variable Subaccount prior to the Annuity Commencement Date.

**ANNUITANT OR JOINT ANNUITANT** -- The person or persons upon whose life or lives the annuity payments made after the Annuity Commencement Date will be based.

**ANNUITY COMMENCEMENT DATE** -- The Valuation Date on which the Contract Value is withdrawn for payment of annuity benefits under the annuity payment option selected.

**ANNUITY PAYMENT DATE** -- The date on which the Owner is entitled to the first annuity payment. Subsequent annuity payments will be due on the same day of the month as the first annuity payment, at the applicable frequency.

**ANNUITY UNIT** -- A unit of measure used after the Annuity Commencement Date to calculate the amount of a Variable Annuity Payment.

**BENEFICIARY** -- The person or persons or entity designated by the Owner to receive the Death Benefit, if any.

**CODE** -- The Internal Revenue Code of 1986, as amended.

**CONTINGENT ANNUITANT** -- Prior to the Annuity Commencement Date, the individual who will become the Annuitant upon the death of the Annuitant.

**CONTRACT** -- The agreement between LNL and the Owner, in which LNL provides an annuity as described on the front page of this Contract.

**CONTRACT DATE** -- The date this Contract became effective. The Contract Date is shown on the Contract Specifications.

**CONTRACT VALUE** -- Prior to the Annuity Commencement Date, the sum of the values of the Variable Subaccounts.

**CONTRACT YEAR** -- Each twelve-month period starting with the Contract Date on the Contract Specifications and starting with each Contract Date anniversary thereafter.

**DEATH BENEFIT** -- The amount payable upon death of an Owner or an Annuitant.

**DOLLAR COST AVERAGING (DCA)** -- An option that allows the automatic transfer of a portion of the Contract Value in periodic installments from a designated DCA holding account to one or more of the Variable Subaccounts available under the Contract. The periodic installments will be over any DCA period made available by LNL and selected by the Owner.

**EARNINGS** -- The excess of the Contract Value over the Gross Purchase Payments which have not yet been withdrawn from this Contract.

**FIXED ANNUITY PAYMENTS** -- Periodic payments made to the Owner or the Owner's designee by LNL on or after the Annuity Commencement date which LNL guarantees as to the dollar amount. Fixed annuity payments are made out of the General Account.

**FUND** -- Any of the underlying investment options available in the Variable Account.

**GENERAL ACCOUNT** -- An account consisting of all assets owned by LNL other than those assets in segregated investment accounts.

**GROSS PURCHASE PAYMENTS** -- Amounts paid into this Contract by the Owner before deduction of the Sales Charge.

Electronic Copy

**HOME OFFICE** -- The principal office of LNL located at 1300 South Clinton Street, Fort Wayne, Indiana, 46802, or an institution designated by LNL.

**LNL** -- The Lincoln National Life Insurance Company.

**MATURITY DATE** -- The date by which an election to receive payments under an Annuity Payment Option must be made. The Maturity Date is shown on the Contract Specifications.

**NET ASSET VALUE PER SHARE** -- The market value of a Fund share calculated each day.

**NET PURCHASE PAYMENT** -- An amount equal to the Gross Purchase Payment less the Sales Charge.

**NOTICE** -- Any form of communication providing information as required by LNL, either in signed writing or another manner, that LNL approves in advance. All Notices must be received by LNL in the Home Office and must include all required information necessary to process the request. To be effective for any Valuation Date, a Notice must be received in good order prior to the end of that Valuation Date.

**OWNER** -- The one person, two persons or entity who exercises rights of ownership under this Contract. If two persons are named as Owner, all references to Owner means joint Owner.

**QUALIFIED CONTRACT** -- A contract that is used as a funding vehicle for a retirement plan qualified for special tax treatment under the Code, including Sections 401, 403, 408, 408A and 457. All other contracts are considered Non-qualified contracts.

**SALES CHARGE** -- A charge deducted from each Gross Purchase Payment, expressed as a percentage of the Gross Purchase Payment.

**VALUATION DATE** -- Close of the market of each day that the New York Stock Exchange is open for business.

**VALUATION PERIOD** -- The period commencing at the close of business on a particular Valuation Date and ending at the close of business on the next succeeding Valuation Date.

**VARIABLE ACCOUNT** -- The segregated investment account into which LNL sets aside and invests the assets allocated to the Variable Subaccount(s) made available by LNL and selected by the Owner. The Variable Account for this variable annuity Contract is shown on the Contract Data page.

**VARIABLE ANNUITY PAYMENTS** -- Periodic payments made to the Owner or the Owner's designee by LNL on or after the Annuity Commencement Date which vary in amount with the investment experience of each applicable Variable Subaccount.

**VARIABLE SUBACCOUNT** -- That portion of the Variable Account which invests in shares of a particular Fund. There is a separate Variable Subaccount for each particular Fund.

Electronic Copy

# ARTICLE 2
# GROSS PURCHASE PAYMENTS

**2.01 WHERE PAYABLE**

All Gross Purchase Payments must be made to LNL at its Home Office.

**2.02 AMOUNT AND FREQUENCY**

LNL reserves the right to limit future Gross Purchase Payments into this Contract. The minimum subsequent Gross Purchase Payments are shown on the Contract Specifications.

Gross Purchase Payments may be made until the earliest of: the Annuity Commencement Date, death of the Owner, or surrender of the Contract. In the event that Gross Purchase Payments are discontinued by the Owner, this Contract will continue and Gross Purchase Payments may be resumed at any time prior to the earlier of: the Annuity Commencement Date, death of the Owner, or surrender of this Contract.

**2.03 SALES CHARGE**

A Sales Charge will be deducted from each Gross Purchase Payment as shown in the Contract Specifications.

Electronic Copy

# ARTICLE 3
# CONTRACT VALUE

**3.01 CONTRACT VALUE**

The Contract Value, at any time prior to the Annuity Commencement Date, is equal to the sum of the values of the Variable Subaccounts on a given Valuation Date.

**3.02 ACCOUNT FEE**

LNL will deduct an Account Fee from the Contract Value as shown on the Contract Specifications.

**Electronic Copy**

# ARTICLE 4
# VARIABLE ACCOUNT

## 4.01 THE VARIABLE ACCOUNT

The Variable Account, which is designated on the Contract Specifications, is for the exclusive benefit of persons entitled to receive benefits under variable annuity contracts. The Variable Account will not be charged with the liabilities arising from any other part of LNL's business.

Subject to any required regulatory approvals, LNL reserves the right to eliminate the shares of any Fund and substitute the securities of a different Fund or investment company or mutual fund. Such elimination and substitution may occur if the shares of a Fund are no longer available for investment, or, if in the judgment of LNL, further investment in any Fund should become inappropriate in view of the purposes of the Contract. LNL may close any Variable Subaccount to new Net Purchase Payments, transfers of Contract Value or both. LNL may add new Variable Subaccounts in which the assets of the Variable Account may be invested. LNL will give the Owner written notice of the elimination and substitution of any Fund as required by law after such substitution occurs.

## 4.02 ALLOCATION OF NET PURCHASE PAYMENTS TO A VARIABLE SUBACCOUNT

The Owner may allocate Net Purchase Payments to any of the available Variable Subaccounts in accordance with the restrictions on the Contract Specifications.

A Notice must be given to LNL if the Owner elects to allocate any Net Purchase Payment to a new Variable Subaccount not previously selected.

Net Purchase Payments allocated to each Variable Subaccount will be invested at Net Asset Value Per Share of one of the Funds. Following receipt of a Gross Purchase Payment, LNL will use each Net Purchase Payment to buy Accumulation Units in the Variable Subaccount(s) selected by the Owner.

## 4.03 VALUATION OF THE VARIABLE ACCOUNT

The value of the Variable Account, at any time prior to the Annuity Commencement Date, is equal to the sum of the values allocated to the Variable Subaccounts. The value of a Variable Subaccount, at any time prior to the Annuity Commencement Date, is equal to the Accumulation Units credited to a Variable Subaccount multiplied by the value of the Accumulation Unit for the respective Variable Subaccount.

Accumulation Units are used to value all amounts allocated to or withdrawn from a Variable Subaccount as a result of Net Purchase Payments, transfers, withdrawals, or fees and charges. Accumulation Units for each Variable Subaccount are valued separately. The value of an Accumulation Unit may increase or decrease from Valuation Period to Valuation Period. The number of Accumulation Units is determined by dividing the amount allocated to or withdrawn from a Variable Subaccount by the dollar value of one Accumulation Unit of the Variable Subaccount as of the Valuation Date the transaction becomes effective. The number of Accumulation Units held for an Owner in a Variable Subaccount will not be changed by any change in the dollar value of Accumulation Units in the Variable Subaccount.

The value of an Accumulation Unit was arbitrarily established at the inception of the Variable Subaccount. The Accumulation Unit value for a Variable Subaccount for any later Valuation Period is determined as follows:

    a.   the total value of Fund shares held in the Variable Subaccount is calculated by multiplying the number of Fund shares owned by the Variable Subaccount at the beginning of the Valuation Period by the Net Asset Value Per Share of the Fund at the end of the Valuation Period, and adding any dividend or other distribution of the Fund if an ex-dividend date occurs during the Valuation Period; minus

    b.   the liabilities of the Variable Subaccount at the end of the Valuation Period (such liabilities include daily charges imposed on the Variable Subaccount (see Section 4.04) and may include a charge or credit with respect to any taxes paid or reserved for by LNL that LNL determines is a result of the operation of the Variable Account); the result divided by

Electronic Copy

c.  the outstanding number of Accumulation Units in the Variable Subaccount at the beginning of the Valuation Period.

The Accumulation Unit value may increase or decrease the dollar value of benefits under the Contract. Expenses incurred by LNL will not adversely affect the dollar value of benefits.

## 4.04 MORTALITY AND EXPENSE RISK AND ADMINISTRATIVE CHARGE

LNL will deduct a Mortality and Expense Risk and Administrative charge (daily charge) from the Variable Account as shown on the Contract Specifications.

## 4.05 CHANGE IN OPERATION

LNL reserves the right to transfer assets of the Variable Account to another account, and to modify the structure or operation of the Variable Account, subject to obtaining any necessary regulatory approvals. LNL guarantees that such modification will not affect the Contract Value.

**Electronic Copy**

# ARTICLE 5
# TRANSFERS, WITHDRAWALS AND SURRENDERS

## 5.01 TRANSFERS BEFORE THE ANNUITY COMMENCEMENT DATE

Prior to the earlier of: the Annuity Commencement Date, termination of this Contract upon payment of any Death Benefit, or surrender of this Contract, the Owner may direct a transfer of a portion of the Contract Value from any available Variable Subaccount to another Variable Subaccount by providing Notice to transfer.

Transfers will be subject to the following:

 a. The Transfer Requirements outlined on the Contract Specifications.

 b. LNL reserves, in its sole opinion, the right to limit or modify transfers that may have an adverse effect on other contract owners. Restrictions may be applied in any manner reasonably designed to prevent any use of the transfer right that is considered by LNL to disadvantage other contract owners.

LNL has the right to waive or modify any of these restrictions.

Upon receipt of Notice to transfer, LNL will process the transfer within the time period required by the Securities and Exchange Commission, unless the Suspension or Deferral of Payments or Transfers from the Variable Account provision (Article 9) is in effect.

Transfers will be accomplished at Accumulation Unit values as of the Valuation Date the Notice to transfer is received.

## 5.02 WITHDRAWALS

The Owner may, upon Notice to LNL, withdraw a part of the surrender value of this Contract at any time prior to the earlier of: the Annuity Commencement Date, termination of this Contract upon payment of any Death Benefit, or surrender of this Contract.

Withdrawals will be subject to the withdrawal and surrender requirements as shown on the Contract Specifications.

The Notice to withdraw must specify from which Variable Subaccount the withdrawal will be made. If no Subaccount is specified, LNL will withdraw the amount requested on a pro-rata basis from each Variable Subaccount.

Upon receipt of Notice of withdrawal, LNL will pay the amount of any withdrawal within the time period as required by the Securities and Exchange Commission unless the Suspension or Deferral of Payments or Transfers from the Variable Account provision (Article 9) is in effect.

Withdrawals will be accomplished at Accumulation Unit values as of the Valuation Date the Notice for withdrawal is received.

## 5.03 SURRENDERS

The Owner may, upon Notice to LNL, surrender this Contract for its surrender value at any time prior to the earlier of: the Annuity Commencement Date, or termination of this Contract upon payment of any Death Benefit.

This Contract will terminate upon surrender. The surrender will be effective on the Valuation Date on which LNL receives Notice of surrender.

Surrenders will be subject to the withdrawal and surrender requirements as shown on the Contract Specifications.

Electronic Copy

LNL reserves the right to surrender this Contract if any withdrawal reduces the total Contract Value to a level at which this Contract may be surrendered in accordance with the terms set forth in the standard nonforfeiture law for individual deferred annuities applicable in the state in which this Contract was purchased. LNL may surrender the Contract for its Contract Value.

Upon receipt of Notice to surrender, LNL will pay the amount of any surrender within the time period required by the Securities and Exchange Commission, unless the Suspension or Deferral of Payments or Transfers from the Variable Account provision (Article 9) is in effect.

## 5.04 MAXIMUM BENEFIT PAYMENTS

Any benefits paid under this Contract for withdrawal, surrender or death will not be less than the minimum benefits required by any applicable statute of the state in which this Contract is delivered.

Electronic Copy

# ARTICLE 6
# DEATH BENEFITS

**6.01 DEATH BEFORE THE ANNUITY COMMENCEMENT DATE**

**Entitlement.**

If there is a single Owner, then upon the death of the Owner LNL will pay a Death Benefit to the designated Beneficiary(s). If the designated Beneficiary of the Death Benefit is the surviving spouse of the deceased Owner, the spouse may elect to continue the Contract as the new Owner. The Death Benefit in effect at the time of death of the original Owner will continue, unless subsequently terminated by the surviving spouse. If there are no designated Beneficiaries, LNL will pay a Death Benefit to the Owner's estate. Upon the death of the spouse who continues the Contract as the new Owner, LNL will pay a Death Benefit to the designated Beneficiary(s).

If there are two Owners, upon the death of the first Owner, LNL will pay a Death Benefit to the surviving Owner. If the surviving Owner is the spouse of the deceased Owner, then the spouse may elect to continue the Contract as sole Owner. The Death Benefit in effect at the time of death of the original Owner will continue, unless subsequently terminated by the surviving spouse. Upon the death of the Owner who continues the Contract, LNL will pay a Death Benefit to the designated Beneficiary(s).

If the Annuitant is also an Owner, then the Death Benefit paid upon the death of the Annuitant will be subject to the Contract provisions regarding death of an Owner. If the surviving spouse of the deceased Annuitant assumes the Contract, the Contingent Annuitant, if any, will become the Annuitant. If there is no named Contingent Annuitant, the surviving spouse will become the Annuitant.

If an Annuitant who is not an Owner dies, then the Contingent Annuitant, if named, becomes the Annuitant and no Death Benefit is payable on the death of the Annuitant.

If an Annuitant who is not an Owner dies and no Contingent Annuitant is named, the youngest Owner immediately becomes the Annuitant and the Contract continues. In lieu of continuing the Contract, the Owner(s) may elect to receive a Death Benefit (in equal shares, if applicable). Written notification of the election to receive the Death Benefit must be received by LNL within 75 days of the death of the Annuitant. This Contract will terminate when any Death Benefit is paid due to the death of the Annuitant.

If the Owner is a corporation or other non-individual (non-natural person), the death of the Annuitant will be treated as the death of the Owner.

The Death Benefit will be paid upon approval by LNL and after LNL is in receipt of:

    a.  proof, satisfactory to LNL, of the death;

    b.  written authorization for payment; and

    c.  all claim forms, fully completed.

Due proof of death may be a certified copy of a death certificate, a certified copy of a decree of a court of competent jurisdiction as to the findings of death, or any other proof of death acceptable to LNL.

All Death Benefit payments will be subject to the laws and regulations governing death benefits.

Notwithstanding any provision of this Contract to the contrary, the payment of Death Benefits provided under the Contract must be made in compliance with Code Section 72(s) or 401(a)(9) as applicable, as amended from time to time.

**Determination of Amounts**

The Death Benefit is equal to the greater of:

    a.  the Contract Value on the Valuation Date the Death Benefit is approved by the LNL Home Office for payment; or

    b.  the sum of all Gross Purchase Payments minus all death benefit reductions.  Each death benefit reduction of Gross Purchase Payments will be in proportion to the amount withdrawn.

Electronic Copy

Any withdrawal from the Contract will result in a death benefit reduction. For purposes of determining a death benefit reduction, a withdrawal is any amount that the Owner requests to be withdrawn (including any applicable charges), any amount partially annuitized and any amount deducted for premium tax, if any. Cumulative amounts withdrawn include any current withdrawal from the Contract.

Upon the death of an Owner or Annuitant of this Contract, if a surviving spouse continues the Contract, the excess, if any, of the Death Benefit over the current Contract Value as of the date on which the death claim is approved by LNL for payment will be credited into the Contract. This excess will only be credited one time for each Contract.

If the Owner is a corporation or other non-individual (non-natural person) and there are Joint Annuitants, upon the death of the first Joint Annuitant to die, if the Contract is continued, the excess, if any, of the Death Benefit over the current Contract Value as of the date on which the death claim is approved by LNL for payment will be credited into the Contract. This excess will only be credited one time for each Contract.

If at any time the Owner or Annuitant named on this Contract is changed, except on the death of a prior Owner or Annuitant, the Death Benefit for the new Owner or Annuitant will be the Contract Value as of the Valuation Date the death claim for the new Owner or Annuitant is approved by the LNL Home Office for payment.

Other Death Benefit requirements may apply as shown on the Contract Specifications.

**Payment of Amounts**

The Death Benefit payable on the death of the Owner, or after the death of the first Owner, or upon the death of the spouse who continues the Contract, will be distributed to the designated Beneficiary(s) as follows:

    a. the Death Benefit must be completely distributed within five years of the Owner's date of death; or

    b. an election may be made within the one year period after the Owner's date of death for the designated Beneficiary, to receive the Death Benefit in substantially equal installments over the life of such designated Beneficiary or over a period not extending beyond the life expectancy of such designated Beneficiary; provided that such distributions begin not later than one year after the Owner's date of death.

The Death Benefit payable upon the death of the Annuitant, must be elected by the Owner within 75 days of the death of the Annuitant, and will be distributed to the Owner in either form of a lump sum or under an Annuity Payment Option. An Annuity Payment Option must be selected within 60 days after LNL approves the death claim.

If a lump sum settlement is elected, the proceeds will be mailed within the time period required by the Securities and Exchange Commission following LNL's approval of the death claim, unless the Suspension or Deferral of Payments or Transfers from the Variable Account provision (Article 9) is in effect.

The Death Benefit in effect will terminate on the Annuity Commencement Date.

**6.02 DEATH ON OR AFTER THE ANNUITY COMMENCEMENT DATE**

Upon receipt of due proof of death of the Annuitant, any remaining annuity benefits payable will continue to be distributed under the Annuity Payment Option then in effect.

Upon the death of the Owner, any remaining annuity payments will be made at least as rapidly as the Annuity Payment Option then in effect. Upon the death of the Owner, the rights of ownership granted by the Contract will pass to the surviving Owner, if any, otherwise to the Beneficiary. If there is no named Beneficiary at the time of a sole Owner's death, then the rights of ownership will pass to the Annuitant, if still living; otherwise to the Joint Annuitant, if applicable. If no named Beneficiary, Annuitant or Joint Annuitant survives the Owner, any remaining payments payable will continue to the Owner's estate.

**6.03 MAXIMUM BENEFIT PAYMENTS**

Any benefits paid under this Contract for withdrawal, surrender or death will not be less than the minimum benefits required by any applicable statute of the state in which this Contract is delivered.

Electronic Copy

# ARTICLE 7
## ANNUITY PAYMENT OPTIONS

**7.01 ANNUITY PAYMENTS**

Annuity Payments will commence on the Annuity Payment Date. Payments are made under the Annuity Payment Option selected (see Section 7.02).

**7.02 CHOICE OF ANNUITY PAYMENT OPTION**

An election to receive payments under an Annuity Payment Option must be made by the Maturity Date. The Maturity Date is set forth on the Contract Specifications.

Upon written request by the Owner and any Beneficiary who cannot be changed, the Maturity Date may be deferred. If the Maturity Date is extended, LNL reserves the right to restrict the availability of certain Annuity Payment Options.

**By Owner**

Prior to the Annuity Commencement Date, the Owner may choose or change any Annuity Payment Option. In addition, the Owner may select an Annuity Payment Option that meets the requirements of Code Section 72(s) or 401(a)(9) as set forth in Section 6.01, Payment of Amounts, for payment of the Death Benefit to a Beneficiary. A Notice of such selection of a distribution method must be made and approved by LNL. Upon Notice, the Owner may change or revoke, in writing to the Home Office, any such selection, unless such selection was made irrevocable.

**By Beneficiary**

If an Annuity Payment Option has not been previously selected by the Owner as the distribution option for the payment of the Death Benefit to a Beneficiary, then at the time proceeds are payable to a Beneficiary, a Beneficiary may choose any Annuity Payment Option that meets the requirements of Code Section 72(s) or 401(a)(9) as set forth in Section 6.01, Payment of Amounts. The Beneficiary then becomes the Annuitant.

A Notice is required to choose an Annuity Payment Option.

**7.03 ANNUITY PAYMENT OPTIONS**

Annuity Payment Options are shown on the attached Annuity Payment Option Rider. If an Annuity Payment Option is not chosen prior to the Maturity Date, payments will commence to the Owner on the Maturity Date under the Annuity Payment Option providing a Life Annuity with annuity payments guaranteed for 10 years.

At the time an Annuity Payment Option is selected under the provisions of this Contract, the Owner may elect to have the Contract Value applied to provide a Variable Annuity Payment, a Fixed Annuity Payment, or a combination Fixed and Variable Annuity Payment. If no election is made, the Contract Value will be used to provide a Variable Annuity Payment.

**7.04 DETERMINATION OF THE AMOUNT OF THE FIRST ANNUITY PAYMENT**

The amount of annuity payment will depend on the age and sex (except in cases where unisex rates are required) of the Annuitant as of the Annuity Commencement Date. A choice may be made to receive payments once each month, four times each year, twice each year, or once each year.

The attached Annuity Payment Option Rider illustrates the minimum payment amounts and the age adjustments which will be used to determine the first monthly payment for a unisex Variable Annuity Payment based upon the assumed interest rate selected by the Owner. The tables show the dollar amount of the first monthly payment which can be purchased with each $1,000 of Contract Value, after deduction of any

Electronic Copy

applicable premium taxes. The Owner must select one of the assumed interest rates, as shown on the Contract Specifications, for the Variable Annuity Payment prior to the Annuity Commencement Date. The assumed interest rate may not be changed after the Annuity Commencement Date.

The attached Annuity Payment Option Rider illustrates the minimum payment amounts and the age adjustments that will be used to determine the monthly payments for a Fixed Annuity Payment. The tables show the dollar amount of the guaranteed monthly payments which can be purchased with each $1,000 of Contract Value, after deductions of any applicable premium taxes.

Determination of the first Annuity Payment Date is shown on the Contract Specifications.

## 7.05 DETERMINATION OF THE AMOUNT OF VARIABLE ANNUITY PAYMENTS AFTER THE FIRST PAYMENT

The first Variable Annuity Payment is sub-divided into components, each of which represents the product of:

a. the percentage elected by the Owner of a specific Variable Subaccount, the performance of which will determine future Variable Annuity Payments, and

b. the entire first Variable Annuity Payment.

Each Variable Annuity Payment after the first payment attributable to a specific Variable Subaccount will be determined by multiplying the Annuity Unit value for the Variable Subaccount for the Valuation Date no more than 14 days before each payment is due by a constant number of Annuity Units. This constant number of each specific Variable Subaccount is determined by dividing the component of the first payment attributable to such Variable Subaccount as described above by the Annuity Unit value for that Variable Subaccount on the Annuity Commencement Date. The total Variable Annuity Payment will be the sum of the payments attributable to each Variable Subaccount. In the absence of transfers between Variable Subaccounts, the number of Annuity Units attributable to each Variable Subaccount remains constant, although the Annuity Unit values will vary with the investment performance of the Funds. The Annuity Unit value may increase or decrease the dollar value of benefits under the Contract.

The Annuity Unit value for any Valuation Period for any Variable Subaccount is determined by multiplying the Annuity Unit value for the immediately preceding Valuation Period by the product of (a) the daily factor raised to a power equal to the number of days in the current Valuation Period and (b) the Accumulation Unit value of the same Variable Subaccount for this Valuation Period divided by the Accumulation Unit value of the same Variable Subaccount for the immediately preceding Valuation Period.

The valuation of all assets in the Variable Subaccount will be determined in accordance with the provisions of applicable laws, rules, and regulations. The method of determination by LNL of the value of an Accumulation Unit and of any Annuity Unit will be conclusive upon the Owner, Annuitant and any Beneficiary.

LNL guarantees that the dollar amount of each payment after the first will not be affected by variations in mortality experience from mortality assumptions on which the first payment is based.

## 7.06 TRANSFERS AFTER THE ANNUITY COMMENCEMENT DATE

After the Annuity Commencement Date, if any portion of the annuity payment is a Variable Annuity Payment, the Owner may direct a transfer of assets from one Variable Subaccount to another Variable Subaccount or to a Fixed Annuity Payment by providing Notice to transfer. Such transfers will be limited to three (3) times per Contract Year. Assets may not be transferred from a Fixed Annuity Payment to a Variable Annuity Payment.

A transfer from one Variable Subaccount to another Variable Subaccount will result in the purchase of Annuity Units in one Variable Subaccount and the redemption of Annuity Units in the other Variable Subaccount. Such a transfer will be accomplished at relative Annuity Unit values as of the Valuation Date the Notice to transfer is received. The valuation of Annuity Units is described above. A transfer from a Variable Subaccount to a Fixed Annuity Payment will result in the redemption of Annuity Units in that Variable Subaccount and the purchase of a minimum Fixed Annuity Payment based on the tables on the attached Annuity Payment Option Rider.

**7.07 PROOF OF AGE**

Payment will be subject to proof of age that LNL will accept, such as a certified copy of a birth certificate.

**7.08 MINIMUM ANNUITY PAYMENT REQUIREMENTS**

LNL reserves the right to reduce the frequency of payments to an interval which will result in each payment exceeding the minimum annuity payment amount shown on the Contract Specifications.

**7.09 EVIDENCE OF SURVIVAL**

LNL has the right to ask for proof that the Annuitant(s) on whose life (or lives) the payment is based is alive when each payment is due.

**7.10 CHANGE IN ANNUITY PAYMENT OPTION**

The Annuity Payment Option may not be changed after the Annuity Commencement Date.

Electronic Copy

# ARTICLE 8
# BENEFICIARY

## 8.01 DESIGNATION OF BENEFICIARY

The Owner may designate a Beneficiary and a contingent Beneficiary.

Prior to the Annuity Commencement Date, if there is a single Owner, the designated Beneficiary will receive the Death Benefit proceeds upon the death of the Owner unless the Beneficiary as the surviving spouse elects to continue the Contract.

Prior to the Annuity Commencement Date, if there are two Owners, upon the death of the first Owner, the surviving Owner will receive the Death Benefit proceeds. The surviving Owner will be treated as the primary designated Beneficiary. Any other Beneficiary designation on record at the time of death will be treated as a contingent Beneficiary.

Prior to the Annuity Commencement Date, if the surviving spouse of a deceased Owner continues the Contract as the sole Owner, then the designated Beneficiaries move up, in the order of their original designation, to replace the spouse as original Beneficiary, unless the Beneficiary designation is subsequently changed by the surviving spouse as the new Owner.

Prior to the Annuity Commencement Date, if the Annuitant dies and a Death Benefit is paid, the Owner will be treated as the primary designated Beneficiary. Any other primary Beneficiary on record at the time of death will be treated as a contingent Beneficiary.

Unless otherwise stated in the Beneficiary designation, multiple Beneficiaries are presumed to share equally.

## 8.02 CHANGE OF BENEFICIARY

The Owner may change any Beneficiary unless otherwise provided in the previous designation by providing a Notice to change beneficiary. A change of Beneficiary will revoke any previous designation. The change will become effective upon receipt by LNL of the Notice.

LNL reserves the right to request the Contract for endorsement of the change.

## 8.03 DEATH OF BENEFICIARY

Unless otherwise provided in the Beneficiary designation, if any Beneficiary dies before the Owner, that Beneficiary's interest will go to any other primary Beneficiaries named, according to their respective interests. If there are no primary Beneficiaries, the Beneficiaries' interest will pass to a contingent Beneficiary, if any. Prior to the Annuity Commencement Date, if no Beneficiary or contingent Beneficiary survives the Owner, the Death Benefits will be paid to the Owner's estate.

Unless otherwise provided in the Beneficiary designation, once a Beneficiary is receiving Death Benefits or annuity payments under an Annuity Payment Option, the Beneficiary may name his or her own Beneficiary to receive any remaining benefits due under the Contract, should the original Beneficiary die prior to receipt of all benefits. If no Beneficiary is named or the named Beneficiary predeceases the original Beneficiary, any remaining benefits will continue to the original Beneficiary's estate. A Beneficiary designation must be made by Notice to LNL.

# ARTICLE 9
# SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS
# FROM THE VARIABLE ACCOUNT

**9.01  SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS FROM OR WITHIN THE VARIABLE ACCOUNT**

LNL reserves the right to suspend or postpone payments for a transfer, withdrawal or surrender for any period when:

a.  the New York Stock Exchange is closed (other than customary weekend and holiday closings);

b.  trading on the New York Stock Exchange is restricted;

c.  an emergency exists as a result of which disposal of securities held in the Variable Account is not reasonably practicable or it is not reasonably practicable to determine the value of the Variable Account's net assets; or

d.  during any other period when the Securities and Exchange Commission, by order, so permits for the protection of the Owner.

The applicable rules and regulations of the Securities and Exchange Commission will govern as to whether the conditions described in (b.) and (c.) exist.

Electronic Copy

# ARTICLE 10
# GENERAL PROVISIONS

**10.01 THE CONTRACT**

The Contract and any riders attached constitute the entire Contract. Only the President, a Vice President, the Secretary or an Assistant Secretary of LNL has the power, on behalf of LNL, to change, modify, or waive any provisions of this Contract.

LNL reserves the right to unilaterally change the Contract for the purpose of keeping the Contract in compliance with federal or state law.

Any changes, modifications, or waivers must be in writing. No representative or person other than the above named officers has authority to change or modify this Contract or waive any of its provisions. All terms used in this Contract will have their usual and customary meaning except when specifically defined.

**10.02 OWNERSHIP**

All Owners will be treated as having equal, undivided interests in the Contract, including rights of survivorship. Either Owner, independently of the other, may exercise any ownership rights in the Contract.

**10.03 ANNUITANTS**

**Prior to the Annuity Commencement Date.**

The Owner may name only one Annuitant. If the Owner is a tax-exempt entity, the Owner may name one Annuitant or two Joint Annuitants.

If the Owner is a natural person, the Owner has the right to change the Annuitant at any time by sending Notice of change to LNL. If the Owner is a non-natural person, the Annuitant may not be changed. The new Annuitant must be under the age of 91 as of the effective date of the change. Change of Annuitant may affect the Death Benefit (refer to Article 6, Death Benefit).

A Contingent Annuitant may be named, or changed upon receipt of Notice by LNL.

**On or After the Annuity Commencement Date.**

The Annuitant or Joint Annuitants may not be changed. Any Contingent Annuitant designation is no longer applicable and is terminated.

**10.04 ASSIGNMENTS**

The Contract may not be sold, discounted or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose. In addition, if this Contract is a Qualified Contract, the Contract will not be transferable unless allowed under applicable law.

**10.05 INCONTESTABILITY**

This Contract will not be contested by LNL.

Electronic Copy

**10.06 MISSTATEMENT OF AGE AND/OR SEX**

If the age and/or sex of the Annuitant has been misstated, the benefits available under this Contract will be those which the Net Purchase Payments would have purchased using the correct age and/or sex. Any underpayment already made by LNL will be made up immediately and any overpayments already made by LNL will be charged against the annuity benefit payments falling due after the correction is made.

**10.07 NONPARTICIPATING**

The Contract is nonparticipating and will not share in the surplus earnings of LNL.

**10.08 OWNERSHIP OF THE ASSETS**

LNL will have exclusive and absolute ownership and control of its assets, including all assets in the Variable Account.

**10.09 REPORTS**

Prior to the Annuity Commencement Date, at least once each Calendar Year, LNL will mail a report to the Owner. The report will be mailed to the last address known to LNL. The report will include a statement of the Contract Value including the number of Accumulation Units credited to the Variable Account and the dollar value of such units. The information in the report will be as of a date not more than two months prior to the date of mailing the report. The Owner will have 60 days from the date the report or confirmation is received to notify LNL of any errors in the report or confirmation, otherwise the report or confirmation will be deemed to be final and correct.

**10.10 PREMIUM TAX**

State and local government premium tax, if applicable, will be deducted from Gross Purchase Payments or Contract Value when incurred by LNL or at another time of LNL's choosing.

**10.11 MAXIMUM ISSUE AGE**

The Owner and the Annuitant (or both Joint Annuitants, if applicable), when named, must be under the age of 91.

Electronic Copy

# ANNUITY PAYMENT OPTION RIDER
## ("this Rider")

This Rider is part of the Contract to which it is attached and is effective on issue. In the case of a conflict with any provision of the Contract, the provisions of this Rider will control.

## ANNUITY PAYMENT OPTIONS

a.  Life Annuity / Life Annuity with Certain Period - Fixed and/or Variable Annuity Payments will be made for the lifetime of the Annuitant with no Certain Period, or life and a 10 year Certain Period, or life and a 20 year Certain Period.

b.  Unit Refund Life Annuity - Variable Annuity Payments will be made for the lifetime of the Annuitant with the guarantee that upon death, if:
    1.  the number of Annuity Units initially purchased (determined by dividing the total dollar amount applied to purchase this option by the Annuity Unit value on the Annuity Commencement Date) is greater than;
    2.  the number of Annuity Units paid as part of each Variable Annuity Payment multiplied by the number of annuity payments paid prior to death;
    then a refund payment equal to the number of Annuity Units determined by (1) minus (2) will be made.

    The refund payment value will be determined using the Annuity Unit value on the Valuation Date on which the refund payment is approved by LNL, after LNL is in receipt of:
    a)  due proof of death acceptable to LNL;
    b)  written authorization for payment; and
    c)  all claim forms, fully completed.

c.  Cash Refund Life Annuity - Fixed Annuity Payments will be made for the lifetime of the Annuitant with the guarantee that upon death, if:
    1.  the total dollar amount applied to purchase this option is greater than;
    2.  the Fixed Annuity Payment multiplied by the number of annuity benefit payments paid prior to death;
    then a refund payment equal to the dollar amount of (1) minus (2) will be made.

    The refund payment will be paid upon approval by LNL, after LNL is in receipt of:
    a)  due proof of death acceptable to LNL;
    b)  written authorization for payment; and
    c)  all claim forms, fully completed.

d.  Joint Life Annuity / Joint Life Annuity with Certain Period - Fixed and/or Variable Annuity Payments will be made during the joint life of the Annuitant and a Joint Annuitant. Payments will be made for joint life with no Certain Period, or joint life and a 10-year Certain Period, or joint life and a 20-year Certain Period. Upon the death of either Annuitant, annuity payments continue for the life of the surviving Annuitant.

e.  Joint Life and Two-Thirds to Survivor Annuity / Joint Life and Two-Thirds to Survivor Annuity with Certain Period - Fixed and/or Variable Annuity Payments will be made during the joint life of the Annuitant and a Joint Annuitant. Upon the death of either Annuitant, two thirds of the annuity payment due while both Annuitants were alive will continue for the life of the surviving Annuitant. Payments will be made for joint life with no Certain Period, or joint life and a 10-year Certain Period, or joint life and a 20-year Certain Period.

f.  Other options may be available as agreed upon in writing by LNL.

Electronic Copy

At the time an Annuity Payment Option is selected under the provisions of this Contract, the Owner may elect to have the Contract Value applied to provide a Variable Annuity Payment, a Fixed Annuity Payment, or a combination Fixed and Variable Annuity Payment. If no election is made, the Contract Value will be used to provide a Variable Annuity Payment.

The Lincoln National Life Insurance Company

Dede DeRosa
SVP & Chief Operating Officer

Electronic Copy

Form 32147  8/03

**ANNUITY PURCHASE RATES UNDER A VARIABLE PAYMENT OPTION**
**WITH A 3.0% ASSUMED INTEREST RATE**
**1983 'a' Individual Annuity Mortality Table, modified**

| DOLLAR AMOUNT OF FIRST MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED | | | |
|---|---|---|---|
| SINGLE LIFE ANNUITIES | | | |
| Age | No Period Certain | 120 Months Certain | 240 Months Certain | Unit Refund |
|---|---|---|---|---|
| 60 | $4.33 | $4.29 | $4.13 | $4.09 |
| 61 | 4.43 | 4.38 | 4.20 | 4.16 |
| 62 | 4.53 | 4.47 | 4.27 | 4.23 |
| 63 | 4.64 | 4.57 | 4.34 | 4.31 |
| 64 | 4.75 | 4.68 | 4.40 | 4.39 |
| 65 | 4.87 | 4.79 | 4.47 | 4.48 |
| 66 | 5.00 | 4.90 | 4.55 | 4.57 |
| 67 | 5.15 | 5.03 | 4.61 | 4.67 |
| 68 | 5.30 | 5.16 | 4.68 | 4.77 |
| 69 | 5.46 | 5.30 | 4.75 | 4.87 |
| 70 | 5.64 | 5.44 | 4.81 | 4.98 |
| 71 | 5.83 | 5.60 | 4.88 | 5.10 |
| 72 | 6.03 | 5.76 | 4.93 | 5.22 |
| 73 | 6.25 | 5.93 | 4.99 | 5.35 |
| 74 | 6.50 | 6.10 | 5.04 | 5.48 |
| 75 | 6.76 | 6.29 | 5.08 | 5.62 |

| JOINT AND SURVIVOR ANNUITIES | | | | | | |
|---|---|---|---|---|---|---|
| Joint and Full to Survivor Certain Period | | | | Joint and Two-Thirds to Survivor Certain Period | | |
| None | 120 | 240 | Joint Age | None | 120 | 240 |
|---|---|---|---|---|---|---|
| $3.93 | $3.93 | $3.90 | 60 | $4.34 | $4.29 | $4.14 |
| 4.00 | 4.00 | 3.96 | 61 | 4.43 | 4.38 | 4.20 |
| 4.08 | 4.08 | 4.03 | 62 | 4.53 | 4.48 | 4.27 |
| 4.17 | 4.16 | 4.10 | 63 | 4.64 | 4.58 | 4.34 |
| 4.25 | 4.25 | 4.18 | 64 | 4.75 | 4.68 | 4.41 |
| 4.35 | 4.34 | 4.25 | 65 | 4.88 | 4.79 | 4.48 |
| 4.45 | 4.44 | 4.33 | 66 | 5.01 | 4.91 | 4.55 |
| 4.56 | 4.55 | 4.41 | 67 | 5.15 | 5.03 | 4.61 |
| 4.68 | 4.66 | 4.49 | 68 | 5.30 | 5.16 | 4.68 |
| 4.80 | 4.78 | 4.57 | 69 | 5.46 | 5.29 | 4.75 |
| 4.94 | 4.91 | 4.64 | 70 | 5.63 | 5.44 | 4.81 |
| 5.08 | 5.05 | 4.72 | 71 | 5.81 | 5.59 | 4.87 |
| 5.23 | 5.19 | 4.79 | 72 | 6.01 | 5.74 | 4.93 |
| 5.40 | 5.34 | 4.86 | 73 | 6.22 | 5.91 | 4.98 |
| 5.57 | 5.50 | 4.93 | 74 | 6.45 | 6.08 | 5.03 |
| 5.77 | 5.67 | 4.99 | 75 | 6.70 | 6.25 | 5.08 |

Age Adjustment Table

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1970-1979 | -4 |
| 1920-1929 | +1 | 1980-1989 | -5 |
| 1930-1939 | 0 | 1990-1999 | -6 |
| 1940-1949 | -1 | 2000-2009 | -7 |
| 1950-1959 | -2 | 2010-2019 | -8 |
| 1960-1969 | -3 | | |

Electronic Copy

**A VARIABLE ANNUITY PAYMENT WITH A 4.0% ASSUMED INTEREST RATE**
1983 'a' Individual Annuity Mortality Table, modified

**DOLLAR AMOUNT OF FIRST MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED**

SINGLE LIFE ANNUITIES

| Age | No Period Certain | 120 Months Certain | 240 Months Certain | Unit Refund |
|---|---|---|---|---|
| 60 | $4.88 | $4.83 | $4.66 | $4.67 |
| 61 | 4.97 | 4.92 | 4.72 | 4.74 |
| 62 | 5.07 | 5.01 | 4.79 | 4.82 |
| 63 | 5.18 | 5.11 | 4.85 | 4.90 |
| 64 | 5.30 | 5.21 | 4.92 | 4.99 |
| 65 | 5.42 | 5.32 | 4.99 | 5.08 |
| 66 | 5.55 | 5.43 | 5.05 | 5.17 |
| 67 | 5.69 | 5.55 | 5.12 | 5.27 |
| 68 | 5.84 | 5.68 | 5.18 | 5.38 |
| 69 | 6.00 | 5.82 | 5.25 | 5.49 |
| 70 | 6.18 | 5.96 | 5.31 | 5.61 |
| 71 | 6.37 | 6.11 | 5.37 | 5.73 |
| 72 | 6.57 | 6.27 | 5.42 | 5.86 |
| 73 | 6.80 | 6.44 | 5.47 | 6.00 |
| 74 | 7.04 | 6.61 | 5.52 | 6.14 |
| 75 | 7.30 | 6.79 | 5.56 | 6.29 |

JOINT AND SURVIVOR ANNUITIES

| Joint and Full to Survivor Certain Period | | | Joint Age | Joint and Two-Thirds to Survivor Certain Period | | |
|---|---|---|---|---|---|---|
| None | 120 | 240 | | None | 120 | 240 |
| $4.47 | $4.46 | $4.43 | 60 | $4.89 | $4.84 | $4.67 |
| 4.54 | 4.53 | 4.49 | 61 | 4.98 | 4.92 | 4.73 |
| 4.61 | 4.61 | 4.56 | 62 | 5.08 | 5.01 | 4.79 |
| 4.69 | 4.69 | 4.63 | 63 | 5.19 | 5.11 | 4.86 |
| 4.78 | 4.78 | 4.70 | 64 | 5.30 | 5.21 | 4.92 |
| 4.88 | 4.87 | 4.77 | 65 | 5.42 | 5.32 | 4.99 |
| 4.97 | 4.96 | 4.84 | 66 | 5.55 | 5.44 | 5.05 |
| 5.08 | 5.07 | 4.92 | 67 | 5.69 | 5.56 | 5.12 |
| 5.20 | 5.18 | 4.99 | 68 | 5.84 | 5.68 | 5.18 |
| 5.32 | 5.30 | 5.07 | 69 | 6.00 | 5.82 | 5.25 |
| 5.45 | 5.42 | 5.14 | 70 | 6.17 | 5.96 | 5.31 |
| 5.59 | 5.56 | 5.22 | 71 | 6.36 | 6.10 | 5.36 |
| 5.74 | 5.70 | 5.29 | 72 | 6.55 | 6.25 | 5.42 |
| 5.91 | 5.85 | 5.35 | 73 | 6.76 | 6.41 | 5.47 |
| 6.08 | 6.01 | 5.41 | 74 | 6.99 | 6.58 | 5.52 |
| 6.27 | 6.17 | 5.47 | 75 | 7.24 | 6.75 | 5.56 |

Age Adjustment Table

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1970-1979 | -4 |
| 1920-1929 | +1 | 1980-1989 | -5 |
| 1930-1939 | 0 | 1990-1999 | -6 |
| 1940-1949 | -1 | 2000-2009 | -7 |
| 1950-1959 | -2 | 2010-2019 | -8 |
| 1960-1969 | -3 | | |

Electronic Copy

**A VARIABLE ANNUITY PAYMENT WITH A 5.0% ASSUMED INTEREST RATE**
**1983 'a' Individual Annuity Mortality Table, modified**

**DOLLAR AMOUNT OF FIRST MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED**

### SINGLE LIFE ANNUITIES

| Age | No Period Certain | 120 Months Certain | 240 Months Certain | Unit Refund |
|---|---|---|---|---|
| 60 | $5.45 | $5.39 | $5.21 | $5.27 |
| 61 | 5.55 | 5.48 | 5.27 | 5.34 |
| 62 | 5.64 | 5.57 | 5.33 | 5.42 |
| 63 | 5.75 | 5.66 | 5.39 | 5.50 |
| 64 | 5.86 | 5.76 | 5.46 | 5.59 |
| 65 | 5.98 | 5.87 | 5.52 | 5.68 |
| 66 | 6.11 | 5.98 | 5.58 | 5.77 |
| 67 | 6.25 | 6.10 | 5.64 | 5.87 |
| 68 | 6.40 | 6.22 | 5.70 | 5.98 |
| 69 | 6.56 | 6.35 | 5.76 | 6.10 |
| 70 | 6.73 | 6.49 | 5.82 | 6.22 |
| 71 | 6.92 | 6.64 | 5.88 | 6.35 |
| 72 | 7.13 | 6.80 | 5.93 | 6.48 |
| 73 | 7.35 | 6.96 | 5.98 | 6.62 |
| 74 | 7.60 | 7.13 | 6.02 | 6.77 |
| 75 | 7.86 | 7.30 | 6.06 | 6.93 |

### JOINT AND SURVIVOR ANNUITIES

| Joint and Full to Survivor Certain Period | | | Joint Age | Joint and Two-Thirds to Survivor Certain Period | | |
|---|---|---|---|---|---|---|
| None | 120 | 240 | | None | 120 | 240 |
| $5.03 | $5.03 | $4.99 | 60 | $5.46 | $5.40 | $5.22 |
| 5.10 | 5.09 | 5.05 | 61 | 5.55 | 5.48 | 5.28 |
| 5.17 | 5.17 | 5.11 | 62 | 5.65 | 5.57 | 5.34 |
| 5.25 | 5.24 | 5.18 | 63 | 5.75 | 5.67 | 5.40 |
| 5.33 | 5.33 | 5.24 | 64 | 5.86 | 5.77 | 5.46 |
| 5.42 | 5.41 | 5.31 | 65 | 5.98 | 5.87 | 5.52 |
| 5.52 | 5.51 | 5.38 | 66 | 6.11 | 5.98 | 5.58 |
| 5.62 | 5.61 | 5.45 | 67 | 6.25 | 6.10 | 5.64 |
| 5.73 | 5.72 | 5.52 | 68 | 6.40 | 6.22 | 5.70 |
| 5.85 | 5.83 | 5.59 | 69 | 6.56 | 6.35 | 5.76 |
| 5.98 | 5.95 | 5.66 | 70 | 6.73 | 6.49 | 5.82 |
| 6.12 | 6.08 | 5.73 | 71 | 6.91 | 6.63 | 5.87 |
| 6.27 | 6.22 | 5.80 | 72 | 7.11 | 6.78 | 5.93 |
| 6.43 | 6.37 | 5.86 | 73 | 7.32 | 6.94 | 5.97 |
| 6.61 | 6.52 | 5.92 | 74 | 7.55 | 7.10 | 6.02 |
| 6.80 | 6.69 | 5.97 | 75 | 7.79 | 7.26 | 6.06 |

Age Adjustment Table

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1970-1979 | -4 |
| 1920-1929 | +1 | 1980-1989 | -5 |
| 1930-1939 | 0 | 1990-1999 | -6 |
| 1940-1949 | -1 | 2000-2009 | -7 |
| 1950-1959 | -2 | 2010-2019 | -8 |
| 1960-1969 | -3 | | |

Electronic Copy

Form 32147  8/03

**A VARIABLE ANNUITY PAYMENT WITH A 6.0% ASSUMED INTEREST RATE**
**1983 'a' Individual Annuity Mortality Table, modified**

| DOLLAR AMOUNT OF FIRST MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED | | | |
|---|---|---|---|
| SINGLE LIFE ANNUITIES | | | |
| Age | No Period Certain | 120 Months Certain | 240 Months Certain | Unit Refund |
| 60 | $6.05 | $5.98 | $5.78 | $5.87 |
| 61 | 6.13 | 6.06 | 5.84 | 5.95 |
| 62 | 6.23 | 6.14 | 5.90 | 6.02 |
| 63 | 6.33 | 6.23 | 5.95 | 6.10 |
| 64 | 6.44 | 6.33 | 6.01 | 6.19 |
| 65 | 6.56 | 6.43 | 6.07 | 6.28 |
| 66 | 6.69 | 6.54 | 6.13 | 6.38 |
| 67 | 6.82 | 6.65 | 6.19 | 6.48 |
| 68 | 6.97 | 6.78 | 6.24 | 6.59 |
| 69 | 7.13 | 6.90 | 6.30 | 6.71 |
| 70 | 7.30 | 7.04 | 6.35 | 6.83 |
| 71 | 7.49 | 7.18 | 6.40 | 6.96 |
| 72 | 7.70 | 7.33 | 6.45 | 7.10 |
| 73 | 7.92 | 7.49 | 6.50 | 7.24 |
| 74 | 8.16 | 7.65 | 6.54 | 7.40 |
| 75 | 8.43 | 7.82 | 6.58 | 7.56 |

| JOINT AND SURVIVOR ANNUITIES | | | | | | |
|---|---|---|---|---|---|---|
| Joint and Full to Survivor Certain Period | | | | Joint and Two-Thirds to Survivor Certain Period | | |
| None | 120 | 240 | Joint Age | None | 120 | 240 |
| $5.61 | $5.61 | $5.57 | 60 | $6.05 | $5.98 | $5.79 |
| 5.68 | 5.67 | 5.63 | 61 | 6.14 | 6.06 | 5.84 |
| 5.75 | 5.74 | 5.69 | 62 | 6.23 | 6.15 | 5.90 |
| 5.82 | 5.82 | 5.75 | 63 | 6.34 | 6.24 | 5.96 |
| 5.90 | 5.89 | 5.81 | 64 | 6.45 | 6.33 | 6.01 |
| 5.99 | 5.98 | 5.87 | 65 | 6.56 | 6.43 | 6.07 |
| 6.08 | 6.07 | 5.94 | 66 | 6.69 | 6.54 | 6.13 |
| 6.18 | 6.17 | 6.00 | 67 | 6.82 | 6.66 | 6.19 |
| 6.29 | 6.27 | 6.07 | 68 | 6.97 | 6.77 | 6.24 |
| 6.41 | 6.38 | 6.14 | 69 | 7.13 | 6.90 | 6.30 |
| 6.53 | 6.50 | 6.20 | 70 | 7.30 | 7.03 | 6.35 |
| 6.67 | 6.63 | 6.27 | 71 | 7.48 | 7.17 | 6.40 |
| 6.81 | 6.76 | 6.33 | 72 | 7.67 | 7.32 | 6.45 |
| 6.97 | 6.90 | 6.39 | 73 | 7.89 | 7.47 | 6.50 |
| 7.14 | 7.05 | 6.44 | 74 | 8.11 | 7.62 | 6.54 |
| 7.33 | 7.21 | 6.50 | 75 | 8.36 | 7.79 | 6.57 |

Age Adjustment Table

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1970-1979 | -4 |
| 1920-1929 | +1 | 1980-1989 | -5 |
| 1930-1939 | 0 | 1990-1999 | -6 |
| 1940-1949 | -1 | 2000-2009 | -7 |
| 1950-1959 | -2 | 2010-2019 | -8 |
| 1960-1969 | -3 | | |

Electronic Copy

**ANNUITY PURCHASE RATES UNDER A FIXED ANNUITY PAYMENT**
**WITH A 1.5% INTEREST RATE**
**1983 'a' Individual Annuity Mortality Table, modified**

| DOLLAR AMOUNT OF FIRST MONTHLY PAYMENT WHICH IS PURCHASED WITH EACH $1,000 APPLIED | | | |
|---|---|---|---|
| SINGLE LIFE ANNUITIES | | | |
| Age | No Period Certain | 120 Months Certain | 240 Months Certain | Cash Refund |
|---|---|---|---|---|
| 60 | $3.63 | $3.59 | $3.46 | $3.28 |
| 61 | 3.72 | 3.69 | 3.53 | 3.35 |
| 62 | 3.83 | 3.78 | 3.60 | 3.42 |
| 63 | 3.94 | 3.89 | 3.68 | 3.50 |
| 64 | 4.06 | 4.00 | 3.75 | 3.57 |
| 65 | 4.18 | 4.11 | 3.83 | 3.65 |
| 66 | 4.32 | 4.24 | 3.91 | 3.74 |
| 67 | 4.46 | 4.37 | 3.98 | 3.82 |
| 68 | 4.61 | 4.50 | 4.06 | 3.92 |
| 69 | 4.78 | 4.65 | 4.13 | 4.01 |
| 70 | 4.96 | 4.80 | 4.20 | 4.11 |
| 71 | 5.15 | 4.96 | 4.27 | 4.22 |
| 72 | 5.36 | 5.13 | 4.33 | 4.33 |
| 73 | 5.58 | 5.30 | 4.39 | 4.45 |
| 74 | 5.83 | 5.48 | 4.44 | 4.57 |
| 75 | 6.09 | 5.67 | 4.49 | 4.69 |

| JOINT AND SURVIVOR ANNUITIES | | | | | | |
|---|---|---|---|---|---|---|
| Joint and Full to Survivor Certain Period | | | | Joint and Two-Thirds to Survivor Certain Period | | |
| None | 120 | 240 | Joint Age | None | 120 | 240 |
|---|---|---|---|---|---|---|
| $3.24 | $3.24 | $3.22 | 60 | $3.63 | $3.60 | $3.46 |
| 3.32 | 3.32 | 3.29 | 61 | 3.73 | 3.69 | 3.54 |
| 3.40 | 3.40 | 3.36 | 62 | 3.83 | 3.79 | 3.61 |
| 3.49 | 3.49 | 3.44 | 63 | 3.94 | 3.89 | 3.68 |
| 3.59 | 3.58 | 3.52 | 64 | 4.06 | 4.00 | 3.76 |
| 3.69 | 3.68 | 3.60 | 65 | 4.19 | 4.12 | 3.83 |
| 3.79 | 3.78 | 3.68 | 66 | 4.32 | 4.24 | 3.91 |
| 3.90 | 3.89 | 3.77 | 67 | 4.46 | 4.37 | 3.98 |
| 4.02 | 4.01 | 3.85 | 68 | 4.62 | 4.50 | 4.06 |
| 4.15 | 4.14 | 3.94 | 69 | 4.78 | 4.64 | 4.13 |
| 4.29 | 4.27 | 4.02 | 70 | 4.95 | 4.79 | 4.20 |
| 4.44 | 4.41 | 4.10 | 71 | 5.14 | 4.95 | 4.26 |
| 4.59 | 4.56 | 4.18 | 72 | 5.34 | 5.11 | 4.33 |
| 4.76 | 4.72 | 4.26 | 73 | 5.55 | 5.28 | 4.39 |
| 4.94 | 4.88 | 4.33 | 74 | 5.78 | 5.46 | 4.44 |
| 5.14 | 5.06 | 4.39 | 75 | 6.03 | 5.64 | 4.49 |

Age Adjustment Table

| Year of Birth | Adjustment to Age | Year of Birth | Adjustment to Age |
|---|---|---|---|
| Before 1920 | +2 | 1970-1979 | -4 |
| 1920-1929 | +1 | 1980-1989 | -5 |
| 1930-1939 | 0 | 1990-1999 | -6 |
| 1940-1949 | -1 | 2000-2009 | -7 |
| 1950-1959 | -2 | 2010-2019 | -8 |
| 1960-1969 | -3 | | |

Electronic Copy

Form 32147  8/03

Electronic Copy

# INTEREST ADJUSTED FIXED ACCOUNT RIDER
### ("this Rider")

**INTEREST ADJUSTED FIXED ACCOUNT RIDER FOR VARIABLE ANNUITY**

This Rider is part of the Contract to which it is attached and is effective upon issue. In the case of a conflict with any provision of the Contract, the provisions of this Rider will control. The terms of this Rider apply to the Contract when Net Purchase Payments or transfers are allocated to one or more Fixed Subaccounts. This Rider will terminate on the Annuity Commencement Date. This Rider amends the Contract as follows:

**The following paragraph will be added to the front cover of this Contract.**

UPON A TRANSFER, WITHDRAWAL OR SURRENDER, PAYMENTS AND VALUES ALLOCATED TO THE INTEREST ADJUSTED FIXED ACCOUNT MAY BE SUBJECT TO AN INTEREST ADJUSTMENT WHICH MAY RESULT IN UPWARD OR DOWNWARD ADJUSTMENTS IN AMOUNTS TRANSFERRED, WITHDRAWN OR SURRENDERED BY THE OWNER.

**The definition of CONTRACT VALUE in ARTICLE 1 will be amended to read as follows:**

**CONTRACT VALUE** -- Prior to the Annuity Commencement Date, the sum of the values of the Variable Account and any Fixed Account attributable to this Contract on a given Valuation Date.

**The following definitions will be added to ARTICLE 1**

**EXPIRATION DATE** -- The date on which a selected Guaranteed Period of the Interest Adjusted Fixed Account will end.

**INTEREST ADJUSTED FIXED ACCOUNT** -- The fixed portion of the Contract that is invested in the General Account of LNL.

**FIXED SUBACCOUNT** -- That portion of the Interest Adjusted Fixed Account which accepts allocations for a Guaranteed Period at a Guaranteed Interest Rate. There is a separate Fixed Subaccount for each Guaranteed Period.

**GUARANTEED INTEREST RATE** -- The effective annual rate of interest LNL guarantees to credit on assets in each Fixed Subaccount.

**GUARANTEED PERIOD** -- The length of the period during which an initial or subsequent Guaranteed Interest Rate will be credited. The Guaranteed Period is selected by the Owner from those made available by LNL at the time of selection.

**The following INTEREST ADJUSTED FIXED ACCOUNT provisions are added to the Contract.**

**INTEREST ADJUSTED FIXED ACCOUNT**
The Interest Adjusted Fixed Account holds the Fixed Subaccounts for the Guaranteed Period(s). LNL reserves the right to discontinue accepting new allocations or transfers to any of the available Guaranteed Periods at any time. LNL may also add one or more new Guaranteed Periods at any time.

**ALLOCATION OF NET PURCHASE PAYMENTS INTO THE INTEREST ADJUSTED FIXED ACCOUNT**
Any Net Purchase Payment to this Contract may be allocated to the Interest Adjusted Fixed Account of the Contract. Net Purchase Payments allocated to the Interest Adjusted Fixed Account of the Contract will be credited to the Fixed Subaccounts(s) made available by LNL and selected by the Owner.

The Owner may allocate Net Purchase Payments to any of the available Fixed Subaccounts subject to the following limitations:

Form 32143  8/03

Electronic Copy

a. The minimum amount that may be allocated to any Fixed Subaccount is shown on the Contract Specifications.

b. If the Owner elects to allocate any Net Purchase Payment to a Fixed Subaccount and the Fixed Subaccount was not previously selected, the Owner must first provide LNL with Notice of allocation.

Any Net Purchase Payment allocated to a Fixed Subaccount will be invested at the Guaranteed Interest Rate in effect for the respective Guaranteed Period on the day the allocation is credited to the Fixed Subaccount.

**VALUATION OF INTEREST ADJUSTED FIXED ACCOUNT**
The value of the Interest Adjusted Fixed Account of this Contract at any time prior to the Annuity Commencement Date is equal to the sum of the then current values of all Fixed Subaccount(s) with respect to this Contract before any Interest Adjustment.

**CREDITING OF INTEREST ON INTEREST ADJUSTED FIXED ACCOUNT**
LNL will establish the applicable effective annual Guaranteed Interest Rate for each Fixed Subaccount at the beginning of that Guaranteed Period. The Guaranteed Interest Rate will be guaranteed for the duration of the applicable Guaranteed Period. Subsequent Guaranteed Interest Rate(s) will be determined at the beginning of subsequent Guaranteed Period(s) and may be higher or lower than the previous interest rate. A Guaranteed Interest Rate will never be less than the effective annual Minimum Guaranteed Interest Rate shown on the Contract Specifications. LNL may credit interest at effective annual rates in excess of the Minimum Guaranteed Interest Rate at any time.

Prior to the earlier of:

a. the Annuity Commencement Date;

b. termination of this Contract upon payment of any Death Benefit; or

c. surrender of this Contract;

LNL guarantees that at the end of each Valuation Period the applicable effective annual interest rate, adjusted for the number of days in the Valuation Period, will be credited to the portion of Contract Value, if any, in the Interest Adjusted Fixed Account at that time.

**GUARANTEED PERIODS**
Each individual amount allocated to a Fixed Subaccount will have an associated Guaranteed Period, Guaranteed Interest Rate and Expiration Date and will be treated separately from other amounts allocated to the Fixed Subaccount. Multiple amounts allocated to the same Fixed Subaccount may have different Guaranteed Interest Rates, and Expiration Dates, and Interest Adjustments. The Guaranteed Period begins when the amount is allocated to that Fixed Subaccount and ends on the Expiration Date for the Guaranteed Period selected.

A Guaranteed Period may not be selected if its Expiration Date would occur after the Maturity Date.

LNL will send written notice to the Owner at the last address known to LNL regarding an upcoming expiration of a Guaranteed Period. LNL will send this notice at least 30 days prior to the Expiration Date of such Guaranteed Period. The Owner must provide a Notice, prior to the Expiration Date of a previously selected Guaranteed Period, to transfer all or a portion of the value of the amount in a Fixed Subaccount at the Expiration Date. The value may be transferred to one or more of the Fixed Subaccounts or Variable Subaccounts. Such Notice must be in accordance with the transfer provisions of the Contract. If no Notice from the Owner is received by LNL prior to the Expiration Date of a previously selected Guaranteed Period, a subsequent Guaranteed Period of the same duration, if available, will begin automatically upon the expiration of the preceding Guaranteed Period.

If the Notice requests only a portion of the value of the Fixed Subaccount to be transferred, the remaining amount will be automatically invested in a subsequent Guaranteed Period of the same duration, if available, upon the expiration of the preceding Guaranteed Period.

In the event the preceding Guaranteed Period is no longer available and no Notice has been received from the Owner, the value of the Fixed Subaccount will be transferred to a new Fixed Subaccount for a Guaranteed Period with the shortest duration currently available.

Form 32143  8/03

**INTEREST ADJUSTMENT**

Any transfer, withdrawal, or surrender of Contract Value from a Fixed Subaccount, will be increased or decreased by an Interest Adjustment, unless the transfer, surrender or withdrawal is effective:

a. During the Right to Examine Contract period (shown on the front cover).

b. On the Expiration Date of a Guaranteed Period.

c. As a result of the death of the Owner or the death of the Annuitant.

d. Subsequent to the onset of the "permanent and total disability" of the Owner as defined in section 22(e)(3) of the Code. Permanent and total disability must occur subsequent to the Contract Date and prior to the 65th birthday of the disabled Owner.

e. Subsequent to the diagnosis of a terminal illness of the Owner. Diagnosis of the terminal illness must be subsequent to the Contract Date and result in a life expectancy of less than one year, as determined by a qualified professional medical practitioner.

f. Subsequent to the admittance of the Owner into an accredited nursing home or equivalent health care facility. Admittance in such a facility must be subsequent to the Contract Date and continue for 90 consecutive days prior to the surrender or withdrawal.

g. Upon annuitization of the Contract.

If a non-natural person is the Owner of the Contract, the Annuitant or Joint Annuitant will be considered the Owner of the Contract for purposes of this provision.

The amount of the Interest Adjustment is calculated by multiplying the dollar amount transferred, withdrawn or surrendered by the following amount:

$(1+A)^n$ divided by $(1 + B + K)^n$, the result reduced by 1.0, where:

A = the yield rate determined at the beginning of the Guaranteed Period, for a U.S. Treasury security with time to maturity equal to the applicable Guaranteed Period;

B = the yield rate, determined at the time of the transfer, withdrawal or surrender, for a U.S. Treasury security with time to maturity equal to the time remaining in the applicable Guaranteed Period, if greater than one year. For periods remaining of one year or less, the yield rate for one-year U.S. Treasury security is used;

K= 0.25%

n = the number of fractional years remaining in the applicable Guaranteed Period (e.g. 1 year and 73 days = 1 + (73 divided by 365) = 1.2 years).

Straight-line interpolation is used to determine the yield rate for a U.S. Treasury security with time to maturity for the applicable Guaranteed Period if such yield rate is not quoted.

A positive Interest Adjustment increases the amount transferred, withdrawn or surrendered while a negative Interest Adjustment decreases it. A negative Interest Adjustment, however, will not reduce the amount transferred, withdrawn, or surrendered below the value it would have had if the Minimum Guaranteed Interest Rate had been credited to the Fixed Subaccount instead of the actual Guaranteed Interest Rate.

If such yields are no longer published, LNL will substitute an appropriate index of publicly traded obligations.

**Section 3.01 CONTRACT VALUE will be amended to read as follows:**

**3.01 CONTRACT VALUE**

The Contract Value, at any time prior to the Annuity Commencement Date, is equal to the sum of the values of the Variable Subaccounts and any Fixed Account attributable to this Contract on a given Valuation Date.

Form 32143  8/03

**The first paragraph of Section 5.01 TRANSFERS BEFORE THE ANNUITY COMMENCEMENT DATE will be amended to read as follows:**

Prior to the earlier of the Annuity Commencement Date, termination of this Contract upon payment of any Death Benefit or surrender of this Contract, the Owner may provide Notice to direct a transfer of a portion of the Contract Value between any Variable Subaccount and/or any Fixed Account subject to any restrictions described in the Contract.

**The following paragraphs will be added at the end of Section 5.01 TRANSFERS BEFORE THE ANNUITY COMMENCEMENT DATE.**

Each transfer from a Fixed Subaccount will be subject to an Interest Adjustment unless the transfer is effective on the Expiration Date of the Guaranteed Period. If a Notice to transfer from a Fixed Subaccount is received during the 30-day period immediately proceeding the Expiration Date of that Guaranteed Period, the transfer will be effective as of the Expiration Date unless an immediate transfer is requested. If an immediate transfer is requested, the transfer will occur on the Valuation Date the Notice to transfer is received. If a Notice to transfer is received at any time other than during this 30-day period, the transfer will be accomplished as of the Valuation Date the Notice for transfer is received.

Each transfer to a Fixed Subaccount will have an associated Guaranteed Period, Guaranteed Interest Rate and Expiration Date and will be treated separately from other Net Purchase Payment allocations or transfers of a portion of the Contract Value to the Interest Adjusted Fixed Account. The allocation of multiple Net Purchase Payments and transfers into the same Fixed Subaccount may result in portions of the Contract Value therein having different Guaranteed Interest Rates, Expiration Dates and Interest Adjustments. The Guaranteed Period begins when the transfer of a portion of Contract Value is credited into that Fixed Subaccount and ends on the Expiration Date of the Guaranteed Period selected.

**The third paragraph of Section 5.02 WITHDRAWALS will be amended to read as follows:**

LNL must receive from the Owner a Notice of a withdrawal request. The Notice must specify from which Subaccount the withdrawal will be made. If no Subaccount is specified, LNL will withdraw the amount requested on a pro-rata basis from each Variable Subaccount and/or Fixed Subaccount.

**The following paragraph will be added to the end of Section 5.02 WITHDRAWALS.**

Withdrawals from a Fixed Subaccount will be subject to an Interest Adjustment unless the withdrawal is effective on the Expiration Date of the Guaranteed Period. If a request for a withdrawal from a Fixed Subaccount is received during the 30-day period immediately preceding the Expiration Date of that Guaranteed Period, the withdrawal will be effective as of the Expiration Date unless an immediate withdrawal is requested. If an immediate withdrawal is requested, the withdrawal will occur on the Valuation Date the Notice for a withdrawal is received. If a Notice for a withdrawal is received at any time other than during the 30-day period, the withdrawal will be accomplished as of the Valuation Date the Notice for a withdrawal is received.

**The fourth paragraph of Section 5.03 SURRENDERS will be amended to read as follows:**

The surrender value on the Valuation Date of surrender will be the sum of "a." and "b.", where:

　　"a." is the Contract Value in the Interest Adjusted Fixed Account after any Interest Adjustment(s) and;

　　"b." is the portion of the Contract Value in the Variable Account.

**Section 9.02 SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS FROM ANY FIXED AC-COUNT will be added to ARTICLE 9.**

**9.02 SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS FROM ANY FIXED ACCOUNT**

Electronic Copy

LNL reserves the right to defer payment for a withdrawal, surrender or transfer from the Interest Adjusted Fixed Account for the period permitted by law but not for more than six (6) months after Notice is received by LNL.

The Lincoln National Life Insurance Company

*Dede DeRosa*

Dede DeRosa
SVP & Chief Operating Officer

Electronic Copy

Form 32143  8/03

Electronic Copy

# DCA FIXED ACCOUNT RIDER
## ("this Rider")

**DCA FIXED ACCOUNT RIDER FOR VARIABLE ANNUITY**

This Rider is part of the Contract to which it is attached and is effective upon issue. In the case of a conflict with any provision of the Contract, the provisions of this Rider will control. The terms of this Rider apply to the Contract when Net Purchase Payments or transfers are allocated to the DCA Fixed Account. This Rider will terminate on the Annuity Commencement Date. This Rider amends the Contract as follows:

**The following definitions in ARTICLE 1 will be amended to read as follows:**

**CONTRACT VALUE** -- Prior to the Annuity Commencement Date, the sum of the values of the Variable Account and any Fixed Account attributable to this Contract on a given Valuation Date.

**DOLLAR COST AVERAGING (DCA)** -- An option that allows the automatic transfer of a portion of the Contract Value in periodic installments from a designated DCA holding account to one or more of the Variable Subaccounts and any Fixed Account available under the Contract. The periodic installments will be over any DCA period made available by LNL and selected by the Owner. A designated DCA holding account may be the DCA Fixed Account and/or a designated Variable Subaccount.

**The following definition will be added to ARTICLE 1**

**DCA FIXED ACCOUNT** -- A portion of this Contract established by LNL to accept Purchase Payments or transfers of Contract Value that may only be used for the Dollar Cost Averaging program. Funds in the DCA Fixed Account are invested in the General Account of LNL.

**The following DCA FIXED ACCOUNT provisions are added to the Contract:**

**DCA FIXED ACCOUNT**

**ALLOCATION OF NET PURCHASE PAYMENTS INTO THE DCA FIXED ACCOUNT**

Any Net Purchase Payment paid into this Contract may be allocated to the DCA Fixed Account of the Contract. The Owner may allocate Net Purchase Payments to the DCA Fixed Account subject to the following limitations:

a. The minimum amount that may be allocated to the DCA Fixed Account is shown on the Contract Specifications.

b. If the Owner elects to allocate any Net Purchase Payment to the DCA Fixed Account and the DCA Fixed Account was not previously selected, the Owner must first provide LNL with Notice of allocation.

LNL reserves the right to discontinue accepting new allocations or transfers to the DCA Fixed Account at any time.

**CREDITING OF INTEREST ON DCA FIXED ACCOUNT**

Prior to the earlier of:

a. the Annuity Commencement Date;

b. termination of this Contract upon payment of any Death Benefit; or

c. surrender of this Contract;

Electronic Copy

LNL guarantees that at the end of each Valuation Period an effective annual interest rate, adjusted for the number of days in the Valuation Period, will be credited to the portion of Contract Value, if any, in the DCA Fixed Account at that time. LNL guarantees that it will credit an effective annual Minimum Guaranteed Interest Rate during all years as shown on the Contract Specifications. LNL may credit interest at effective annual rates in excess of the Minimum Guaranteed Interest Rate at any time.

**Section 3.01 CONTRACT VALUE will be amended to read as follows:**

**3.01 CONTRACT VALUE**

The Contract Value, at any time prior to the Annuity Commencement Date, is equal to the sum of the values of the Variable Subaccounts and any Fixed Account attributable to this Contract on a given Valuation Date.

**The first paragraph of Section 5.01 TRANSFERS BEFORE THE ANNUITY COMMENCEMENT DATE will be amended to read as follows:**

Prior to the earlier of the Annuity Commencement Date, termination of this Contract upon payment of any Death Benefit or surrender of this Contract, the Owner may provide Notice to direct a transfer of a portion of the Contract Value between any Variable Subaccount and/or any Fixed Account subject to any restrictions described in the Contract.

**The following paragraph will be added as the last paragraph of Section 5.01 TRANSFERS BEFORE THE ANNUITY COMMENCEMENT DATE.**

If the DCA program is discontinued by the Owner prior to the end of the selected DCA period, any remaining portion of the Contract Value held in a designated DCA holding account within the DCA Fixed Account will be transferred automatically to the Variable Subaccount(s) and any Fixed Account the Owner selected under the DCA program.

**The third paragraph of Section 5.02 WITHDRAWALS will be amended to read as follows:**

A withdrawal will be effective on the Valuation Date that LNL receives Notice to withdraw. The Notice must specify from which Variable Subaccount and/or any Fixed Account the withdrawal will be made. If no allocation is specified, LNL will withdraw the amount requested on a pro-rata basis from each Variable Subaccount and/or any Fixed Account.

**Section 9.02 SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS FROM ANY FIXED AC-COUNT will be added to ARTICLE 9.**

**9.02 SUSPENSION OR DEFERRAL OF PAYMENTS OR TRANSFERS FROM ANY FIXED ACCOUNT**

LNL reserves the right to defer payment for a withdrawal, surrender or transfer from any Fixed Account for the period permitted by law but for not more than six (6) months after Notice is received by LNL.

The Lincoln National Life Insurance Company

Dede DeRosa
SVP & Chief Operating Officer

Electronic Copy

# ENHANCED GUARANTEED MINIMUM
# DEATH BENEFIT RIDER
### ("this Rider")

**ENHANCED GUARANTEED MINIMUM DEATH BENEFIT FOR A VARIABLE ANNUITY**

This Rider is part of the Contract to which it is attached. This Rider is effective if selected by the Owner. In the case of a conflict with any provision of the Contract, the provisions of this Rider will control. This Rider will terminate on the earlier of the Annuity Commencement Date or the Valuation Date LNL receives Notice to change the Death Benefit to a Death Benefit Option with a lower charge.

**The following provision replaces Section 6.01 Determination of Amounts.**

The *Enhanced Guaranteed Minimum Death Benefit* is equal to the greatest of:

    a.  The Contract Value on the Valuation Date the Death Benefit is approved by the LNL Home Office for payment; or

    b.  The sum of all Gross Purchase Payments minus all death benefit reductions. Each death benefit reduction of Gross Purchase Payments will be in proportion to the amount withdrawn.

    c.  The highest Contract Value on the Contract Date or on any Contract Date anniversary (determined before the allocation of any Gross Purchase Payments on that Contract Date anniversary) prior to the 81st birthday of the deceased Owner or Annuitant and prior to the date of death of the Owner or Annuitant for whom a death claim is approved by the LNL Home Office for payment. The highest Contract Value is adjusted for certain transactions. It is increased by Gross Purchase Payments made on or after that Contract Date anniversary on which the highest Contract Value is obtained. It is decreased by all death benefit reductions incurred on or after the Contract Date anniversary on which the highest Contract Value is obtained. Each death benefit reduction of the highest Contract Value will be in proportion to the amount withdrawn.

Any withdrawal from the Contract will result in a death benefit reduction. For purposes of determining a death benefit reduction, a withdrawal is any amount that the Owner requests to be withdrawn (including any applicable charges), any amount partially annuitized and any amount deducted for premium tax, if any. Cumulative amounts withdrawn include any current withdrawal from the Contract.

Upon the death of an Owner or Annuitant of this Contract, if a surviving spouse continues the Contract, the excess, if any, of the Death Benefit over the current Contract Value as of the date on which the death claim is approved by LNL for payment will be credited into the Contract. The excess will only be credited one time for each Contract.

If the Owner is a corporation or other non-individual (non-natural person) and there are Joint Annuitants, upon the death of the first Joint Annuitant to die, if the Contract is continued, the excess, if any, of the Death Benefit over the current Contract Value as of the date on which the death claim is approved by LNL for payment will be credited into the Contract. This excess will only be credited one time for each Contract.

If at any time the Owner or Annuitant named on this Contract is changed, except on the death of the prior Owner or Annuitant the Death Benefit for the new Owner or Annuitant will be the Contract Value as of the Valuation Date the death claim for the new Owner or Annuitant is approved by the LNL Home Office for payment.

Other Death Benefit requirements may apply as shown on the Contract Specifications.

The Lincoln National Life Insurance Company

*Dede DeRosa*

**Dede DeRosa**

SVP & Chief Operating Officer

Form 32149 5/03

Electronic Copy

Electronic Copy

**Electronic Copy**

# ANNUITY

# CONTRACT

**Individual Flexible Purchase Payment**
**Deferred Variable Annuity Contract**
**With Annuity Payment Options**

**Nonparticipating**

If you have any questions concerning
this Contract, please
contact your Lincoln National Life
representative or the Home Office of LNL.

**Electronic Copy**

# THE LINCOLN NATIONAL
# LIFE INSURANCE COMPANY

**1300 South Clinton Street**
**P.O. Box 2348**
**Fort Wayne, Indiana 46801-2348**

**1-800-942-5500**

Form 30070-A-IL  8/03                    American Legacy Shareholders