## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**TISA GRIMES**,
  *Plaintiff,*

v.

**PAUL HOWARD, in his individual capacity, FULTON COUNTY DISTRICT ATTORNEY'S OFFICE,**
  *Defendants.*

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Tisa Grimes, files this Complaint against Defendants Paul Howard and the Fulton County District Attorney's Office, bringing claims under Title VII of the 1964 Civil Right Act for discrimination on the basis of sex, hostile work environment, and retaliation, and praying for declaratory and injunctive relief in the form of reinstatement of her former position and a declaration that  Ms. Grimes was unlawfully removed from her position, and hereby shows the Court the following in this renewal action of a previous action filed in this Court (Case 1:20-cv-02045-SCJ) which was dismissed by stipulation without prejudice on February 24, 2023:

### INTRODUCTION

"It [has been] self-evident, also, since the officer must justify his action, if at all, by showing that he was authorized of law so to act, that if he commits an act which his authority will not justify, or if he exceeds, ignores, or disregards the limits set on his authority, he cannot then justify at all, **but must respond to the party injured like any other wrongdoer**."

[Floyd Russell Mechem, A Treatise on the Law of Public Offices and Officers, § 663 (Callaghan and Company, 1890)]

1.

Paul Howard, District Attorney of Fulton County, has a textbook modus operandi for punishing women who do not relent to his unlawful sexual harassment and misconduct. First, Howard humiliates and embarrasses the particular woman by stripping away their job duties and moving them to a different building, such as with Ms. Cathy Carter and the plaintiff in this case, Ms. Tisa Grimes. Then, Howard lays the groundwork for firing the woman.

2.

In this instance, over the course of months, Plaintiff Tisa Grimes rejected Howard's repeated uninvited and unlawful sexual comments/advances like "I'm starting to feel somethin'" and "why you switchin' [your buttocks] like that [as Ms. Grimes is simply leaving his office]." Howard moved from that unlawful conduct to the disgusting and reprobate conduct of groping Ms. Grimes' buttocks and then subsequently and repeatedly asking (too many times to count), "when you gonna say 'ready daddy.'" And, once she made every *conspicuous* effort in the world to avoid going into Howard's office alone, Howard started threatening to remove Ms. Grimes from her position as Human Resource Director, while simultaneously continuing his uninvited sexual advances, to see if his threats could bend Ms. Grimes' will to resist. Howard's efforts failed; Ms. Grimes continuously rejected him.

3.

When Ms. Grimes filed EEOC charges against Howard, alleging sexual misconduct, Howard, who has never lacked hubris, kicked Ms. Grimes out of his office building (the infamous 136 Pryor Street), sending her to another office building, while stripping her of her job title and duties as Director of Human Resources in retaliation for her rejection and her courage.

4.

**To this day**, neither Howard (nor anyone) has told Ms. Grimes what her new job duties are. Though Ms. Grimes' new job title is Project Level Up Administrator, Howard, to this day, intentionally excludes Ms. Grimes from all relevant meetings and presentations related to her new job title. Indeed, when Ms. Grimes asked both Human Resources and her supposed new supervisor about her job duties, Human Resources told Ms. Grimes that they had no job description for her title, and her supervisor said she had no knowledge of a job description or job expectation—because Howard had not provided her with one.

5.

After Ms. Grimes was moved, stripped of her title and duties, given zero direction, and alienated from key meetings, word got out that Howard was about to engage in one of his favorite ego-stroking tactics: he was going to fire Ms. Grimes, irrespective of her EEOC charges that had been filed against him.

6.

To protect against Ms. Grimes' termination, the undersigned informed multiple elected public officials in Fulton County/Atlanta about Howard's unlawful conduct towards Ms. Grimes. (See Ex. 1, Letter to public officials.) Howard backed off.

7.

Howard has created a workplace atmosphere, from years of engaging in unlawful sexual harassment of women under his authority as District Attorney, in which women, on a daily basis, are confronted with a choice: give in to Howard's self-initiated, uninvited sexual harassment, or flat-out reject said misconduct and suffer job-related, negative consequences. Defendants Fulton County District Attorney's Office and Fulton County ignored and enabled this environment of abuse and harassment for years.

**JURISDICTION AND VENUE**

8.

Jurisdiction is proper as this Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. §§ 1331 and 1343(a)(4), and 42 U.S.C. § 2000e.

9.

Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Ms. Grimes' claims occurred within this District and Division and (2) Defendant resides and transacts business in this District and Division.

## PARTIES

10.

**Plaintiff, Tisa Grimes,** is an African American adult female employed by the Fulton County District Attorney's Office. At all times relevant to this Complaint, Ms. Grimes was a citizen of the United States and a resident of Georgia. At all times relevant to this Complaint, Ms. Grimes had clearly established legal rights under state and federal law and the United States Constitution, such as the right to be free from discrimination and to enjoy equal protection of the law of this country. Ms. Grimes submits herself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, and any other permissible damages.

11.

**Defendant, Paul Howard**, at all times relevant, was District Attorney of Fulton County, a citizen of the United States, and a resident of Georgia. At all times relevant, Howard was acting under color of state law when he engaged in sexual

harassment of Ms. Grimes, as well as when he created a hostile work environment for Ms. Grimes. At all times relevant, Howard was governed by strict policies that prohibited sexually harassment. Defendant, Paul Howard, at all times relevant, a constitutionally elected officer of a county, and therefore Ms. Grimes' employer.

12.

**Defendant, Fulton County District Attorney's Office**, was Ms. Grimes' employer under Title VII of the 1964 Civil Rights Act and governed by all applicable law.

### STATEMENT OF FACTS

**A.   Ms. Grimes' Human Resources History**

13.

In 2000, Ms. Grimes became the Senior Regulatory Compliance Analyst for Telecom Compliance Services. From there, Ms. Grimes became a Benefits Insurance Specialist in the Risk Management Department with Clayton County Board of Commissioners, where she began her career in the Human Resources field.

14.

In 2005, after receiving both a Master of Business Administration Degree and Master of Human Resources Management from the Keller Graduate School of Management, Ms. Grimes continued her career in Human Resources, working as

a human resources generalist with Dennis, Corry, Porter & Smith, L.L.P. in Atlanta, Georgia.

15.

In January 2018, Ms. Grimes met Defendant Paul Howard, who hired her as the Human Resources Director/Office Manager of the Fulton County District Attorney's Office.

16.

At all relevant times, Ms. Grimes was a subordinate employee under Paul Howard's authority per governing statute in his role an elected Constitutional Officer, District Attorney for the Office of the Fulton County District Attorney.

**B.    Policies and procedures to which the Fulton County District Attorney is bound**

17.

At all times relevant, Howard was under a strict policy (informal or otherwise) —while being also governed by industry standards applicable to District Attorneys—not to grope the body parts and systematically sexually harass subordinate female employees such as Ms. Grimes at the workplace.

18.

At all times relevant, Howard was under a strict policy (informal or otherwise) —while being also governed by industry standards applicable to District Attorneys—not to make sexually charged comments to subordinate employees such as Ms. Grimes at the workplace.

19.

At all times relevant, Howard was under a strict policy (informal or otherwise) — while being also governed by industry standards applicable to District Attorneys — not to grope the body parts of subordinate employees such as Ms. Grimes in the workplace, under any circumstance, but especially when uninvited to do so.

**C.    In January 2019, Howard begins a campaign of sexual harassment and misconduct against Ms. Grimes**

20.

From January 2018 through December 2018, Ms. Grimes had no disciplinary write ups in her role as Human Resource Director/Office Manager.

21.

On or around January 3, 2019, Howard began whispering uninvited sexual comments in Ms. Grimes' ear such as, "I'm starting to feel somethin'" and making unprovoked, sexually charged statements such as, "why you switchin' like that," referring to Ms. Grimes' buttocks as she turned around to leave his office.

22.

In January 2019, Howard began calling Ms. Grimes into meetings, as a "chalkboard girl," for which she had no purpose other than to take notes of the subject meeting on a whiteboard. To do so, Ms. Grimes had to stand with her backside exposed to the meeting's attendees; when she would glance back, she would often catch Howard staring at her buttocks.

23.

A "chalkboard girl" was something commonly known by Ms. Grimes and other women in the office (including Ms. Carter) as a demeaning and humiliating practice to which Howard subjected subordinate female employees. (See Ex. 2, Complaint of Ms. Carter, who Howard demoralized and sexually harassed and assaulted for years.)

24.

In January 2019, Howard began summoning Ms. Grimes to his office in order to "update" the "trial board," which kept track of trial lawyers' assignments. To complete this mandated task, Ms. Grimes had to turn around and slightly bend over to re-arrange lawyer assignments on the subject board; when Ms. Grimes would face Howard, she consistently found Howard's eyes fixed on her buttocks. From at least January 2019 through September 2019, this happened too many times to count.

25.

In February 2019, Howard began summoning Ms. Grimes to his office weekly and began making numerous uninvited appearances to her office, where he would say, "I had to come by and see you," remarking on Ms. Grimes' attire, and staring at her body parts. From at least February 2019 through September 2019, this sexual harassment tactic happened to many times to count.

26.

In early March 2019, Howard summoned Ms. Grimes to his office, asking her: "Do you know what I want you to say?" Ms. Grimes responded, "no." Howard said, "**I want you to say, 'Ready Daddy**.'" Ms. Grimes refused to respond.

27.

After telling Ms. Grimes that he wanted her to say, "Ready Daddy," Howard continued to pop up in Ms. Grimes' office, or summon her to his office, repeatedly asking her whether she was ready to say, "Ready Daddy." From March 2019 through September 2019, this happened on too many occasions to count.

28.

From March 2019 through August 2019, on too many occasions to count, when Howard would see Ms. Grimes, he would fix his eyes on her and **then lick his lips, all while smiling at her**. Ms. Grimes would turn and walk away.

29.

Notably, while Howard was sexually harassing Ms. Grimes, during this same time period, another one of Howard's victims, Ms. Carter, had taken a firm stance against Howard, a result that reasonably caused Howard to turn up his inappropriate and unprofessional sexual harassment of Ms. Grimes. (See Ex. 2, Carter Complaint.)

30.

Howard vacillated from one victim to the next, with at least these two women having a common trait: both are and were single mothers.

**D. Howard intentionally exposes his half naked body to Ms. Grimes at a professional conference**

31.

On or around March 15, 2019, at a Supervisors Retreat at the Allen Entrepreneurial Institute Conference Center, Howard followed Ms. Grimes into a hallway during a break and asked for Ms. Grimes' room number. Ms. Grimes responded that she didn't know and walked away from Howard.

32.

At that same Supervisors Retreat, Ms. Grimes mistakenly knocked on Howard's door while looking for Chief of Staff Lynne Nelson, whose room was next to Howard's room. Howard opened the door wearing a button-down shirt that reached his mid-thigh and no pants, and then motioned with his hand for Ms. Grimes to come inside his room, with a smile on his face. Ms. Grimes walked away.

33.

Upon information, belief, **and common sense**, Howard, for his own safety, (inter alia, as the DA for Fulton County) looked through the peep hole prior to opening the door, saw Ms. Grimes, and intentionally chose to open the door without pants on, so as to expose himself nearly naked to Ms. Grimes.

34.

At the Supervisors Retreat, Howard followed Ms. Grimes around the hotel so much that she confided her concern about Howard's harassment of her to a current employee within the District Attorney's office.

**E.   After Ms. Grimes rejects Howard's invitation at the hotel, Howard sexually assaults Ms. Grimes in her own office**

35.

On March 27, 2019, Howard entered Ms. Grimes' office, uninvited, telling her that he had to tell her how nice she looked. He then walked around Ms. Grimes' desk to see the dress she was wearing. Ms. Grimes scooted her chair under her desk, an act that caused Howard to say, "Why you scooting up under your desk, you don't want me to see you?"  In response to Howard's comment, Ms. Grimes stood and attempted to leave her office.

36.

When Ms. Grimes stood and attempted to leave her office, on March 27, 2019, Howard said, "can I touch it?" **and then suddenly grabbed Ms. Grimes buttocks.**

37.

After Howard squeezed Ms. Grimes' buttocks, she returned to her desk in a state of shock and humiliation, as Howard left. Ms. Grimes became emotional, in disbelief over what just happened.

**F.    Howard continues his sexual harassment while Ms. Grimes continues to reject him and does her best to avoid him**

38.

After the March 27, 2019 sexual harassment of groping Ms. Grimes, Howard continued to summon Ms. Grimes to his office, repeatedly making statements such as, "when you going to say what I told you to say?"; "what do you think that I am thinking about?"; and "you remember what I told you." From March 2019 through May 2019, this happened too many times to count.

39.

After the March 27, 2019 sexual harassment of groping Ms. Grimes, she tried to enter Howard's office to update the trial board **only** when he was not present or with other employees.

40.

When Howard found out that Ms. Grimes updated the trial board when he was not present to stare at her, he became infuriated, calling Ms. Grimes to his office, to berate her, even though the task of updating the trial board simply did not require Howard's presence.

41.

Still, whenever Ms. Grimes had to enter Howard's office in his presence, Howard would continuously ask, "when are you going to say what I told you to say?"

42.

At all times relevant, Ms. Grimes absolutely did not invite or reciprocate Howard's self-initiated and uninvited sexually harassing comments and misconduct and Ms. Grimes' conduct made it unmistakably clear that she was not interested in engaging in any sexual conversations or conduct with Howard, to Howard's visible dismay.

43.

From April 2019 through May 2019, Howard continued to summon Ms. Grimes to "update" the trial board and when she did so, Howard continued to make sexually inappropriate comments; Howard also continued to make comments such as "when you going to say ready daddy," "you remember what I told you," "when you going to say what I told you to say." Ms. Grimes continued to reject these sexual advances and ignore Howard, to his visible dismay.

**G.   Feeling rejected, Howard's retaliation towards Ms. Grimes begins**

44.

In June 2019, Howard told Ms. Grimes **for the first time,** he would be replacing her, as head of HR, with Lynne Nelson, Chief of Staff, because Ms. Grimes allegedly conducted an improper google/social media search on a hired job candidate with a controversial background.

45.

Howard's allegation against Ms. Grimes with regards to the employee's background search is easily debunked as pretext because the search was performed by another staff member in the office, according to the Chief of Staff, Lynne Nelson.

46.

Howard **never followed through on his threat** to replace Ms. Grimes, nor did he announce to the staff that he was moving Ms. Grimes.

47.

Instead, testing whether his threat to demote her would bend her will to his sexual harassment, Howard continued his sexual harassment of Ms. Grimes, calling her to his office, commanding her to update the trial board (i.e., turn around and bend over) while telling Ms. Grimes, "you know what I told you to say," and "when you going to say what I told you to say," (referencing his "Ready Daddy") , while also saying, "now tell me what I am thinking." Ms. Grimes continued to ignore Howard but continued to be deeply affected and emotional about this sexual harassment.

48.

Relevantly, making empty threats aimed at a female employee's employment status, in retaliation for rejecting his sexual advances, was a common

tactic used by Howard to test whether subordinate female employees would bend to his sexual misconduct, as evidenced by Howard using this same disgusting tactic on another one his victims, Ms. Carter, around this same time period. (See Ex. 2, Carter Complaint.)

49.

From June 2019 through August 2019, especially after Howard first threaten to take her job, then continued his sexual harassment of her, Ms. Grimes continued to do everything she could to avoid being alone with Howard, including making every attempt to ensure that she updated the trial board when Howard was not in his officer. Howard became extremely frustrated with, admonishing her repeatedly for updating the trial board when he was not around even though he had nothing to add to the trial board that she could not do when Howard was not present.

**H.  Next, Howard threatens to lower Ms. Grimes' salary or move her to another position**

50.

With Ms. Grimes sternly avoiding Howard and rejecting all attempts to bend her will to his sexual perversions, on September 4, 2019, Howard sent a letter to Ms. Grimes in which he made another threat, this time to move Ms. Grimes "to another position or salary level." The letter, notably, was never placed in Ms. Grimes' personnel file.

51.

Prior to receiving said September 4, 2019 letter, Ms. Grimes' personnel file had zero negative reviews/performance evaluations, or formal negative "write ups."

52.

About nine days after receiving the September 4, 2019 letter, Ms. Grimes had a conversation with Lynne Nelson, Chief of Staff, who told Ms. Grimes that Howard planned to move Ms. Grimes into a state position, which would mean a demotion and $13,000 salary decrease; this never happened either.

53.

Howard's September 4, 2019 letter was another bare threat unsubstantiated by anything other than Ms. Grimes' rejection of Howard's self-initiated and unlawful sexual advances toward Ms. Grimes.

54.

From September 4, 2019 through November 13, 2019, Howard never moved Ms. Grimes or changed her salary, as evidenced, by, inter alia, the fact that Ms. Grimes was never contacted by Human Resources or anyone about this threatened move or salary decrease.

**I.    Ms. Grimes files an EEOC charge against Howard**

55.

On September 13, 2019 (about nine days after receiving Howard's bargaining tool, i.e., threatening letter) Ms. Grimes filed a Charge of Discrimination with the EEOC alleging sex discrimination and a hostile work environment: "Paul Howard, Jr. has engaged in derogatory behavior towards me because of my sex and created a hostile work environment throughout my employment. Mr. Howard has engaged in sexual harassment towards me during this time frame as well."

56.

On November 7, 2019, Ms. Grimes (with counsel) amended her EEOC charge to allege more specifics, including Howard "groping her buttocks," asking her to say "I want you to say 'Ready Daddy,'" and repeatedly questioning her over a period of months: "when are you going to say it?"

**J.    After filing a more detailed EEOC Charge, Howard kicks Ms. Grimes out of the building, changes her job duties, while refusing to tell her what her new job duties are**

57.

After Ms. Grimes filed her amended EEOC charge on November 7, 2019, Howard moved Ms. Grimes out of his building (136 Pryor Street) to 395 Pryor Street. This conduct is his routine when women stand up against Howard's sexual misconduct. (<u>See</u> Ex. 2, Carter Complaint.)

58.

Ms. Grimes found out about this move to her new building on November 14, 2019, when she arrived at work, and Lynne Nelson advised her of Howard's decision.

59.

Upon Ms. Grimes' involuntary move to a new building in November 2019, Howard initially directed Lynne Nelson to tell Ms. Grimes that she would retain her Human Resource duties but would also be tasked with providing support to the Project Level Up Program. That was a farce.

60.

Though Ms. Grimes was Director of HR, once she was kicked out of her 136 Pryor Street office, Ms. Grimes had no participation in HR matters, as evidenced by the letter dated December 4, 2019 and provided by Howard.

61.

From November 7, 2019 (when Ms. Grimes filed her amended EEOC charge) through January 17, 2020, Ms. Grimes requested a job description from Paul Howard, Jr.; requested a job description and expectations from her new supervisor; and requested a job description from Human Resources.

62.

To the date of this filing, no one ever told Ms. Grimes what duties she was to undertake in her role of supporting the "Project Level Up Program."

**K.  After Ms. Grimes relentlessly pursues an answer about her new job duties, Howard retaliates against Ms. Grimes by formerly stripping her of her HR title**

63.

On November 22, 2019 and December 2, 2019, though Ms. Grimes was to support the Project Level Up Program per her recent role change, Ms. Grimes was excluded from a Project Level Up Press Release and a Project Level Up meeting.

64.

When Ms. Grimes inquired again about her job duties and about her exclusion from the November 22, 2019 press release and the December 2, 2019 Project Level Up meeting, Howard stripped Ms. Grimes of her HR title and duties, permanently.

65.

On December 4, 2019, Ms. Grimes became the "full-time administrator" of the Project Level Up Program on December 4, 2019.

66.

The Project Level Up Administrator role is **a social worker position that does not utilize human resources expertise**, which is the expertise for which Ms. Grimes was initially hired in January 2018.

67.

Once again, Howard did not provide Ms. Grimes with a job description or a list of assigned duties for the Project Level Up Administrator position.

68.

On December 30, 2019, having been stripped of her title and duties as HR Director/Office Manager and assigned a job for which no one would tell her the job duties, Ms. Grimes again amended her EEOC charge, claiming retaliation.

L. **After filing yet another EEOC Charge, Howard starts excluding Ms. Grimes from nearly, if not all, essential meetings, presentation, and so forth, while she has been allegedly the fulltime Administrator of Project Level Up**

69.

On December 16, 2019 (by phone);January 3, 2020 (in-person); January 21, 2020 (in-person); and January 24, 2020 (in-person), Ms. Grimes requested a job description and/or job expectations for the role of Project Level Up Administrator from Shannon Trotty, her newly appointed supervisor, and inquired if Howard had provided a job description and/or job expectations to Mrs. Trotty; **on all occasions, Mrs. Trotty told Ms. Grimes that Howard hadn't mentioned or discussed Ms. Grimes role.**

70.

Ms. Grimes continued to request, from Howard, a job description or a list of assigned duties for the Project Level Up Administrator position; Howard has never responded.

71.

Ms. Grimes could not perform her job of Project Level Up Administrator without knowledge of her duties—an intentional act by Howard in order to 'set the stage' for a seemingly legitimate termination.

72.

On January 28, 2020, Ms. Grimes was intentionally excluded from a scheduled visit to At Promise Youth Center with the Project Level Up team because Lydia Toomer, Community Court Program Administrator, advised the team that there should only be four Project Level Up team members in attendance.

73.

On January 29, 2020, Ms. Grimes asked Mrs. Trotty if she could attend a meeting as the alleged Project Level Up Administrator; Mrs. Trotty hesitated, then stated, "I don't have a problem with it."

74.

Though Mrs. Trotty stated she did not have a problem with Ms. Grimes' attendance, no one informed Ms. Grimes that the meeting was moved until January 31, 2020, moments before the meeting began.

75.

At the January 31, 2020 meeting, Lydia Toomer discussed the rescheduling of a February training retreat; Ms. Grimes had no knowledge of the retreat as she had not received a calendar invite or been provided details.

76.

At the January 31, 2020 meeting, Ms. Grimes asked Mrs. Toomer and Mrs. Trotty if she was required to attend the retreat; both stated that **they did not know**.

77.

At the January 31, 2020 meeting, Ms. Grimes requested that Mrs. Toomer check with Howard to determine whether or not she should be a part of the February retreat; Mrs. Toomer agreed but never got back to Ms. Grimes.

78.

At the January 31, 2020 meeting, Ms. Grimes requested to be included on all correspondences, emails, phone calls, and communications pertaining to Project Level Up, yet, this never happened.

79.

On February 3, 2020, Lydia Toomer made a phone call to a Project Level Up staff member informing said staff member that she would like the Project Level Up team to make a presentation to the Community Court Division; during this phone conversation, Mrs. Toomer emphasized that she only wanted four Project Level Up members to be present for the presentation. The Project Level Up made a presentation to the Community Court Division the next day, February 4, 2020, **without Ms. Grimes' knowledge**.

80.

Upon information and belief, Howard excluded Ms. Grimes from the meetings discussed above, to include meetings which Project Level Up staff attended on December 2, 2019, December 9, 2019, January 6, 2020, January 13, 2020, January 21, 2020, January 23, 2020, January 24, January 27, 2020, January 28, 2020, February 3, 2020, February 4, 2020, February 6, 2020, and February 13, 2020,

**M. Ms. Grimes files another EEOC charge, yet, Howard continues to exclude Ms. Grimes from essential meeting relevant to her new title through February, March, and April of 2020**

81.

Because of the fact that from December 4, 2019, when Howard demoted Ms. Grimes to Project Level Up Administrator, through February 4, 2020, Ms. Grimes could not get anyone to tell her what her job duties were, Ms. Grimes amended her EEOC charge again on February 5, 2020, noting in detail, amongst other facts, that her supervisor, Mrs. Trotty, told her that Howard hadn't mentioned or discussed Ms. Grimes' new role.

82.

On February 20, 2020, Ms. Grimes was intentionally excluded from a meeting, Grass Roots Meeting with Leading Youth. The meeting, scheduled by Brown-Becker with Leading Youth regarding networking and partnering with Project Level Up, was attended by Project Level Up Staff Member, Brittany Brown-

Becker (Director of Policy and Programs), Ian Elmore-Moore (Gang Prevention

Coordinator) and Amanda Timpson (Gang Prevention Director)

83.

On February 21, 2020, Ms. Grimes was intentionally excluded from a Project

Level Up Grant Meeting. This meeting, scheduled by Michele Henry (Grants

Administrator) and Brittany Brown-Becker (Director of Policy and Programs), was

to discuss additional funding for Project Level Up.

84.

On February 26, 2020, Ms. Grimes was intentionally excluded from a

meeting regarding Project Level Up Mentoring Strategies, regarding conducting

group mentoring instead of individual mentoring. This meeting was attended by

Trotty, Howard, and the Project Level Up Team.

85.

On February 28, 2020, Ms. Grimes was intentionally excluded from a

meeting with At Promise Facility to discuss disbursement of funding to At

Promise, YMCA, and Greater Works. This meeting was attended by Trotty,

Howard, and the Project Level Up Team.

86.

On March 5, 2020, Ms. Grimes was intentionally excluded from a meeting

with Pittsburgh Neighborhood Association President, Johnny Floyd to discuss

Partnership with Neighborhood Association and Mentoring. This meeting was attended by Lydia Toomer and Project Level Up Staff.

87.

On March 10, 2020, Ms. Grimes was intentionally excluded from a tour of the YMCA, and a meeting to discuss partnership and logistics for Project Level Up and how YMCA can assist Project Level Up with program. This meeting was attended by Project Level Up Staff.

88.

On March 12, 2020, Ms. Grimes was intentionally excluded from a Project Level Up meeting with Aftercare Providers to discuss Project Level Up MOU's. This meeting was attended by Howard, Brittany Brown-Becker, At Promise (Representative), Greater Works (Craig Ferguson), and Project Level Up Staff.

89.

On March 13, 2020, Ms. Grimes was intentionally excluded from Project Level Up meeting with Antioch North to discuss mentoring with Reverend Duncan. This was attended by Project Level Up Staff.

90.

On April 3, 2020, Ms. Grimes was intentionally excluded from a Project Level Up meeting (Conference Call / Zoom Meeting) to discuss progress of Project Level Up, Church mentorships, and Recidivism Rate. This meeting was attended by Project Level Up Staff Member, Brittany Brown-Becker, and Howard.

91.

On April 7, 2020 Ms. Grimes was intentionally excluded from a Project Level Up meeting with Church Antioch North - Reverend Duncan (Conference Call / Zoom Meeting) to discuss the Mentorship Program. This meeting was attended by Project Level Up Staff, Brittany Brown-Becker, and Reverend Duncan.

92.

On April 9, 2020, Ms. Grimes was intentionally excluded from a Project Level Up meeting with Church Impact Church – Reverend Thibodeaux (Conference Call / Zoom Meeting) to discuss the Mentorship Program. This meeting was attended by Project Level Up Staff, Brittany Brown-Becker, and Reverend Thibodeaux.

93.

On April 13, 2020, Ms. Grimes was intentionally excluded from Project Level Up meeting with Temple Church – Rabbi Berg (Conference Call / Zoom Meeting) to discuss the Mentorship Program. This meeting was attended by Project Level Up Staff, Brittany Brown-Becker, Rabbi Berg, and Howard.

94.

On April 16, 2020, Ms. Grimes was intentionally excluded from a Project Level Up Aftercare Providers Meeting (Conference Call / Zoom Meeting) to discuss the Aftercare Partnership. This meeting was attended by Project Level Up Staff, Brittany Brown-Becker, and, At Promise's Craig Ferguson.

95.

On April 23, 2020, Ms. Grimes was intentionally excluded from a Project Level Up meeting with Elizabeth Baptist Church – (Conference Call / Zoom Meeting) to discuss the Mentorship Program. This meeting was attended by Project Level Up Staff, Brittany Brown-Becker, Elizabeth Baptist Church Pastor, and Howard.

96.

Howard, upon information and belief, was the proximate and direct cause of every exclusion of Ms. Grimes discussed in this Complaint, as no one but Howard had any reason to exclude Ms. Grimes from these events.

**N. Howard and Fulton County take the investigation out of DCRC's hands so that a prominent employment defense firm can essentially act as Howard's private counsel**

97.

After filing her EEOC Charge on September 13, 2019, Ms. Grimes filed an internal discrimination complaint with the Fulton County Office of Diversity and Civil Rights Compliance (DCRC) against Howard on September 26, 2019.

98.

The DCRC has its own in-house investigators, who are well-trained in the process of investigating complaints of sexual harassment by Fulton County employees.

99.

The DCRC's in-house investigators are **not** lawyers, and upon information and belief, the specific DCRC in-house investigator assigned to investigate Ms. Grimes' Complaint was not a lawyer.

100.

On or about November 4, 2019, DCRC's in-house counsel informed Ms. Grimes that she could be interviewed in-person or **by written questions**; however, because Ms. Grimes amended her EEOC charge on November 7, 2019, adding specific details regarding Howard's unlawful sexual misconduct (uninvited and rejected groping of Ms. Grimes buttocks), Howard and Fulton County positioned themselves to undermine a transparent internal investigation by the DCRC.

1. **DCRC and Fulton County hire an employment defense firm aimed at getting rid of the "HR Headache," Ms. Grimes**

101.

After Ms. Grimes amended her EEOC charge on November 7, 2019, and after Howard kicked Ms. Grimes out of 136 Pryor Street, the DCRC, through Fulton County, took Grimes' investigation away from the assigned in-house DCRC investigator, using taxpayer money **to pay a private law firm that specializes in employment defense**.

102.

At the same time that the DCRC and the County provided Howard with a prestigious employment defense firm to conduct Ms. Grimes' investigation, the County also provided Mr. Howard with a high-profile private sector attorney from another prestigious defense law firm.

103.

The DCRC's newly acquired employment law firm advised Ms. Grimes' council that she could **no longer** provide a written statement, that instead she must subject herself to an "interview," which turned into a deposition-style attack.

104.

On December 12, 2019, Ms. Grimes sat for a two-hour ~~deposition~~ "interview," wherein the DCRC's attorneys questioned Ms. Grimes about her background, qualifications, and performance in her job, **refusing to address Ms. Grimes' complaint against Howard**.

105.

The issue of Ms. Grimes' complaint against Howard was addressed for approximately 15 minutes at the end of the two-hour ~~deposition~~ "interview" on December 12, 2019.

106.

Thereafter, the lawyer from the employment defense firm hired by the DCRC requested that Ms. Grimes sit for an additional "interview" to last **four more hours**, which would make the total time for this ~~deposition~~ "interview" six hours, a time estimate **that closely reaches** the **seven-hour** deposition limitation imposed by the Federal Rules of Civil Procedure.

107.

When counsel for Ms. Grimes objected to a six-hour ~~deposition~~ "interview", the DCRC's private attorneys implied that Ms. Grimes was obstructing the investigation if she did not return.

### 2.  Ms. Grimes files an ethics Complaint, requesting an ethics opinion

108.

In January 2020, Ms. Grimes filed a Complaint with the Fulton County Board of Ethics, requesting an advisory opinion on "[w]hether there is an appearance of partiality on the part of the DCRC with respect to going outside of the DCRC's own investigation team to hire an employment **defense firm** that "**focuses on serving business clients**" while providing "**proactive strategies to minimize litigation and disruption to the business**" in order to investigate an allegation of sexual assault and harassment against a sitting district attorney, Paul Howard." (See Ex. 3.)

109.

In her Complaint/Request to Fulton County Board of Ethics, Ms. Grimes

notes that the Fulton County Code of Ethics makes the following clear:

> "[I]t is essential to the proper government and administration of Fulton
> County that members of the board of commissioners, as well as all **other
> officers and employees of the county**, are in fact **and in appearance,
> independent and impartial in the performance of their official duties; that
> public service not be used for private gain; and that there be public
> confidence in the integrity of the county.** Because the attainment of one or
> more of these ends is impaired whenever there exists in fact, or appears to
> exist, a conflict between the private interests and public responsibilities of
> county officers and employees**, the public interest requires that the county
> protect against such conflicts of interest** by establishing **appropriate
> ethical standards of conduct**. Fulton County Code of Ethics Sec. 2-66(a)."

110.

In her Complaint/Request to Fulton County Board of Ethics, Ms. Grimes

notes that Fulton County's Code of Ethics, mandates an avoidance of

circumstances **"that would provide a reasonable basis for the impression that**

**the officer's or employee's ability to… impartially perform an official act is**

**compromised by** his or her financial or personal interests in the matter or

transaction."

111.

To the best of Counsel's knowledge, Fulton County Board of Ethics has not

ruled on the matter.

**O.   Howard misleads the public about Ms. Grimes' DCRC Investigation**

**1.   False and misleading statements on public radio webpage**

112.

On March 6, 2020, a radio station 1380 WAOK made an egregiously misleading and false statement that Howard had been cleared regarding Ms. Grimes' DCRC investigation: "Independent Investigation Clears Fulton DA of Harassment and Wrongful Termination Allegation," read the headline.

113.

That same misleading WAOK article also falsely stated that "Tisa Grimes alleged that elected Fulton DA Paul Howard sexually harassed her and **wrongfully terminated** her employment." However, Ms. Grimes is still employed and **never** alleged that Paul Howard wrongfully terminated her employment.

114.

Moreover, Ms. Grimes investigation is undisputedly ongoing and neither Paul Howard nor anyone else has ever communicated to Ms. Grimes that a final determination has been made about this investigation.

115.

It is quite clear by the blatant inaccuracies found in the WAOK article that Paul Howard was using media messaging as part of his crisis management, public-relations tools for his upcoming election, to do damage control regarding negative

AJC articles published about his sexual harassment and misconduct towards Ms. Grimes, in an attempt to jeopardize, defame, and destroy Ms. Grimes' name, integrity, and credibility.

### 2. Misleading statements in the AJC by Howard's subordinate attorney

116.

On March 20, 2020, the Atlanta Journal Constitution published the following false information: "An investigation, sanctioned by Fulton County, has found no sustainable allegations of sexual harassment and retaliation lodged by a former human resources director against District Attorney Paul Howard."

117.

In the same article, an assistant county attorney under Howard's authority stated that "[t]he independent investigation revealed no evidence substantiating or corroborating Ms. Grimes' allegations," as if the investigation had been concluded, though the same AJC article made clear that the investigation was still ongoing.

118.

Relevantly, at the time this article was published, the attorney who made the statements to the AJC knew, upon information and belief, that Ms. Grimes had given a two hour "interview" in which she was only asked about her sexual allegations for 15 minutes; that the DCRC's hired private law firm refused to

permit Ms. Grimes to submit written answers to any questions; and that Ms. Grimes had filed a Complaint/Request with the Fulton County Board of Ethics for an advisory opinion due to the unmistakable appearance of partially surrounding the facts of Ms. Grimes' investigation.

**P.  Howard's pervasive pattern and practice of self-initiated sexual harassment and misconduct, while Ms. Grimes struggles to stay strong throughout**

119.

Upon information and belief, from 2014 through the present, numerous women have sought legal counsel to explore their options regarding Howard's self-initiated and uninvited sexual harassment of them.

120.

In fact, the undersigned represents women, other than Ms. Grimes and Ms. Carter, who have been subjected to Howard's sexually predatorial conduct and will file more suits on behalf of women traumatized by Howard's sexual misconduct.

121.

Ms. Grimes has tried to stay strong throughout all of this sexual harassment/misconduct and retaliation in the form of Howard, inter alia, alienating and isolating her, and throughout this entire time, Ms. Grimes has confided in a close family member about Howard's sexual misconduct.

122.

While Ms. Grimes continues to hold her job as Project Level Up Administrator, she is continually overwhelmed with feelings of intimidation and fear and trying to overcome that fear and intimidation with the knowledge that she has to provide for herself and more importantly, provide for her two children, as a single mother.

123.

Ms. Grimes knows that because she rejected unprofessional and unlawful sexual advances by Howard, she has lost her opportunities for career advancement by being relegated from a Human Resource position, for which she has acquired multiple degrees, to a social worker position, which does not utilize her skills. Her chances for advancement in human resources with Fulton County have been effectively negated.

## COUNT I
## DISCRIMINATION ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT
### *(Against the Fulton County District Attorney's Office)*

124.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-124, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

125.

Based on the facts incorporated to support this Count, including all the paragraphs found in Count I, Ms. Grimes was a qualified individual for her employment position and Howard discriminated against Ms. Grimes by subjecting her to demeaning conditions to which he did not subject men on the basis of her sex.

**COUNT II**
**RETALIATION IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT FOR OPPOSING WHAT SHE REASONABLY BELIEVED TO BE UNLAWFUL CONDUCT**
*(Against the Fulton County District Attorney's Office)*

126.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-124, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

127.

Based on the facts incorporated to support this Count, including all the paragraphs found in Count I, Howard retaliated against Ms. Grimes in violation of Title VII of the 1964 Civil Rights act, in the form of reassigning Ms. Grimes from a Human Resources position to a social work position, in order to stymie and derail her career.

128.

Based on the facts incorporated to support this Count, Howard retaliated against Ms. Grimes because she opposed what she reasonably believed to be an unlawful employment practice in the form of filing multiple formal complaints against Howard for his sexually harassing behavior.

**COUNT III**
**HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT**
*(Against the Fulton County District Attorney's Office)*

129.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-124, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

130.

Based on the facts incorporated to support this Count, including all the paragraphs found in Count I, Howard created, condoned, and ratified a severe, prolonged, and outrageous hostile work environment for Ms. Grimes, in violation of Title VII of the Civil Rights Act.

131.

Based on the facts incorporated to support this Count, Ms. Grimes was subjected to unwelcome sexual harassment, along with other women in Howard's employ, that was sufficiently severe or pervasive as to alter the terms and

conditions of her employment and create a discriminatorily abusive working environment.

## COUNT IV
**RETALIATORY HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT**
*(Against the Fulton County District Attorney's Office)*

132.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-124, and any other facts this Court deems relevant, as if fully stated herein to support all allegations made in this Count.

133.

Based on the facts to support this Count, including all the paragraphs found in Count IV, Howard retaliated against Ms. Grimes by creating, condoning, and ratifying a severe, prolonged, and outrageous hostile work environment for, inter alia, rebuffing and reporting his harassing sexual advances. Howard created this environment not only for Ms. Grimes, but for other employees as well. Howard's retaliatory conduct was such that it would dissuade a reasonable worker from taking constitutionally protected action—rejecting sexual misconduct, refusing to submit oneself to sexual harassment, reporting discrimination, and/or supporting a discrimination complaint. Retaliation in this manner by creating this kind of hostile work environment is prohibited by Title VII.

## COUNT V
## 42 U.S.C. Section 1983 — VIOLATION OF FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION (SEX DISCRIMINATION)
### *(Against Howard in his individual capacity)*

134.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-12, 16-49, 119-124 and any other paragraphs this court deems relevant.

135.

Based on the facts to support this Count, Paul Howard sexually harassed Ms. Grimes in a pervasive, unlawful, and continuous manner that is prohibited by the Constitution.

136.

At all relevant times, Howard was Ms. Grimes' employer.

137.

Based on the facts incorporated to support this Count, Howard controlled everything about Ms. Grimes' employment, such as the ability to terminate her employment pursuant to controlling law; promote and demote her; discipline her; and approve or disapprove her leave from the office pursuant to governing law. *See* O.C.G.A. Section 15-18-20(a)-(b) (stating in part, "[p]ersonnel employed by the district attorney pursuant to this Code section shall serve at the pleasure of the district attorney.")

138.

Based on the facts incorporated to support this Count, Howard did not treat male employees under his authority as District Attorney the way he treated Ms. Grimes, as described in this Complaint regarding sexual harassment and misconduct. *See Bohen v. City of E. Chicago, Ind.,* 799 F.2d 1180, 1185 (7th Cir. 1986) (stating, "Creating abusive conditions for female employees and not for male employees is discrimination.")

139.

Based on the facts incorporated to support this Count, Howard knows and understands that "[f]orcing women and not men to work in an environment of sexual harassment is no different than forcing women to work in a dirtier or more hazardous environment than men simply because they are women. Such unjustified unequal treatment is exactly the type of behavior prohibited by the equal protection clause." *Id*.

## COUNT VI
## 42 U.S.C. Section 1983 — VIOLATION OF FOURTEETH AMENDMENT RIGHTS TO EQUAL PROTECTION (HOSTILE WORK ENVIRONMENT BASED ON SEX)
### *(Against Howard in his individual capacity)*

140.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-12, 16-49, 119-124 and any other paragraphs this court deems relevant.

141.

Based on the facts to support this Count, including all the paragraphs found in Count IV, Howard created a hostile work environment against Ms. Grimes by creating, condoning, and ratifying a severe, prolonged, and outrageous hostile work environment for, inter alia, rebuffing his harassing sexual advances. Howard created this environment not only for Ms. Grimes, but for other employees as well. This hostile work environment is prohibited by the Constitution.

## COUNT VII
## 42 U.S.C. Section 1983 — VIOLATION OF FOURTEENTH AMENDMENT RIGHTS TO EQUAL PROTECTION (RETALIATORY HOSTILE WORK ENVIRONMENT)
### *(Against Howard in his individual capacity)*

142.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-12, 16-49, 119-124 and any other paragraphs this court deems relevant.

143.

Based on the facts to support this Count, including all the paragraphs found in Count IV, Howard retaliated against Ms. Grimes by creating, condoning, and ratifying a severe, prolonged, and outrageous hostile work environment for, inter alia, rebuffing and reporting his harassing sexual advances. Howard created this environment not only for Ms. Grimes, but for other employees as well. Howard's conduct was such that it might dissuade a reasonable worker from taking

constitutionally protected action—rejecting sexual misconduct, refusing to submit oneself to sexual harassment, reporting discrimination, or supporting a discrimination complaint. This retaliatory hostile work environment is prohibited by the Constitution.

**COUNT VIII**
**ATTORNEY FEES**
*(Against all defendants)*

144.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-12, 16-49, 119-124 and any other paragraphs this court deems relevant. Based on the facts alleged in this Complaint and under Title VII of the 1964 Civil Rights Act, Plaintiff is entitled to reasonable attorney's fees.

**COUNT IX**
**PUNITIVE DAMAGES**
*(Against Howard in his individual capacity)*

145.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-123 and any other paragraphs this court deems relevant. Based on the facts alleged in this Complaint, Ms. Grimes is entitled to punitive damages against Paul Howard under Ga. Code Ann., § 51-12-5.1 because Howard's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences.

## COUNT X
## DECLARATORY AND INJUNCTIVE RELIEF
### (*Against the Fulton County District Attorney's Office*)

146.

Plaintiff now fully incorporates the facts and assertions found in paragraphs 1-123 and any other paragraphs this court deems relevant.

147.

Based on the incorporated facts to support this Count, and the facts set forth in this Count, Plaintiff is asking for injunctive relief in the form of restoring her employment position. The irreparable harm is ongoing and cannot be resolved merely by monetary damages, and governing law supports restoring Plaintiff to her employment position due to losing that position as a direct cause of the violation of her rights under Title VII. Plaintiff also seeks declaratory judgment that she lost her subject employment position as a direct and proximate cause of Defendants violating her rights under Title VII. Ms. Grimes' claims for declaratory and injunctive relief meet all applicable legal criteria for granting these claims.

148.

Because Defendant Howard is no longer the District Attorney, and because Ms. Grimes' demotion was based on Defendant Howard's animus toward her, there is no reason that reinstatement of Ms. Grimes would not be appropriate.

## COUNT XI
## SPECIAL DAMAGES
### *(Against all Defendants)*

149.

Based on the incorporated facts, Plaintiff would be entitled to all special damages including lost wages that resulted from Howard's discriminatory and retaliatory conduct toward Ms. Grimes.

**WHEREFORE**, Plaintiff prays for a trial by jury of twelve and judgment against Defendant as follows:

a)  That process issue and service be had on Defendant;

b)  That Plaintiff recover all costs of this litigation;

c)  That Plaintiff receives all permissible damages under law, including punitive damages, compensatory damages, and special damages;

d)  That a jury trial be had on all issues so triable;

e)  And that Plaintiff receives such other and further relief as the Court deems just and proper, including any injunctive relief this Court deems proper.

Respectfully submitted this 24th day of August 2023,

/s/ MARIO B. WILLIAMS
Mario B. Williams
Ga. Bar No.  235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C,  Suite 103
Sandy Springs, GA 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com
*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **TISA GRIMES**,<br>    *Plaintiff,*<br><br>v.<br><br>**PAUL HOWARD, in his individual<br>capacity, FULTON COUNTY<br>DISTRICT ATTORNEY'S OFFICE,**<br>    *Defendants.* | **JURY TRIAL DEMANDED** |

## CERTIFICATE OF COMPLIANCE

I hereby certify that on the 24th day of August 2023, the foregoing COMPLAINT has been prepared in Book Antiqua font, 13 point, which complies with the typestyle and size specifications pursuant to Local Rule 5.1 of the local rules of the Northern District of Georgia.

/s/ MARIO WILLIAMS
Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C,  Suite 103
Sandy Springs, GA 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com
*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**TISA GRIMES**,
     *Plaintiff,*

v.

**PAUL HOWARD, in his individual**
**capacity, FULTON COUNTY**
**DISTRICT ATTORNEY'S OFFICE,**
     *Defendants.*

**JURY TRIAL DEMANDED**

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing COMPLAINT to the Clerk of Court using the CM/ECF system which will automatically send electronic notification of such filing to all counsel of record.

Respectfully submitted this 24th day of August 2023.

/s/MARIO WILLIAMS
Mario B. Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C,  Suite 103
Sandy Springs, GA 30342
(404) 341-4434
mwilliams@hdrattorneys.com
admin@hdrattorneys.com
*Counsel for Plaintiff*