IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| BUU HO AND LIEN NGUYEN, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| vs. | ) | |
| | ) | CIVIL ACTION NO: |
| GWINNETT COUNTY, GEORGIA, | ) | |
| DEKALB COUNTY, GEORGIA, | ) | **JURY TRIAL DEMANDED** |
| HUYEN NGUYEN a/k/a | ) | |
| COURTNEY NGUYEN, | ) | |
| VIVIAN NGUYEN, | ) | |
| TUWANDA RUSH-WILLIAMS, | ) | |
| DEFENDANT JOHN DOE 1 | ) | |
| DEFENDANT JOHN DOE 2, | ) | |
| DEFENDANT JOHN DOE 3, | ) | |
| DEFENDANT JOHN DOE 4 | ) | |
| DEFENDANT JOHN DOE 5, | ) | |
| DEFENDANT JOHN DOE 6, | ) | |
| DEFENDANT JOHN DOE 7, | ) | |
| DEFENDANT JOHN DOE 8 | ) | |
| DEFENDANT JOHN DOE 9, | ) | |
| DEFENDANT JOHN DOE 10 | ) | |
| current or former officers | ) | |
| of Gwinnett and DeKalb, sued in their | ) | |
| official and individual capacities; | ) | |
| | ) | |
|     Defendants. | ) | |

## <u>COMPLAINT</u>

Plaintiffs sue the Defendants in this action, a renewal of a prior, valid matter,

DeKalb Superior Court Case No. 18-CV-1157-2, involving substantially the same

1

parties and claims, filed January 5, 2018, timely served and voluntarily dismissed by a consent motion on August 3, 2023, under O.C.G.A. § 9-2-61 [2018 Action].

## JURISDICTION

1.       Under 28 U.S.C. §§ 1331, 1343 and 1391, jurisdiction exists per 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments of the Constitution and federal law, regarding the unlawful injury to and wrongful deaths of Anh Thy and Phillip Ho causing them and Plaintiffs, their heirs and successors, to be knowingly, intentionally and otherwise wrongfully and illegally deprived of rights, privileges or immunities by the Defendants, acting under color of law. ***Flagg v. Brooks***, 436 U.S. 155-57, (1978).  The Court is not restricted to state-law remedies to determine relief under §1983. ***Gilmere v. Atlanta***, 864 F.2d. 734, 739, 740 (11th Cir. 1989) [court not required to apply state measure of damages in §1983 case by administrator for brother's death as §1983 is "unique remedy making it appropriate to accord the statute a sweep as broad as its language" and "can override certain kinds of state laws," ***Owens v. Okure***, 488 U.S. 235, 248-249, 109 S. Ct. 573, 581 (1989) [affirmed denial of 1983 case based upon state law statute of limitations]'

2.      Per 28 U.S.C. § 1367, jurisdiction exists over all claims in this action, which are so related to each other to form a part of the same controversy at issue, the Incident, including the Open Records at issue, also related to the Incident.

## PARTIES

3.      Plaintiffs, Buu Ho and Lien Nguyen are individuals with the standing to bring suit as parents of Anh Thy Ho, their unmarried male child, with no living children, for his wrongful death and related injuries due to the misconduct of Gwinnett, DeKalb, Does 1-10 and the Nguyens as provided by state and federal law. ***Carringer v. Rodgers***, 331 F3d. 844, 849-50 (11th Cir. 2003) [parent has standing to bring § 1983 wrongful death action for son]

4.      Plaintiffs have standing to bring suit as grandparents of Phillip Ho, the unmarried minor child of Anh Thy, for his wrongful death and related injuries due to the misconduct of Gwinnett, DeKalb, Does 1-10 and the Nguyens. ***Brown v. Liberty Oil & Ref. Co***., 403 S.E. 2d. 806 (1991) [equity permitted minors to maintain wrongful death action for mother per O.C.G.A. §§23-1-13 and 23-4-20]

5.      Defendants Gwinnett and DeKalb are entities that may be sued and and are liable for the misconduct at issue, per their policies, practices, customs and regulations for the hiring, training, discipline of their agents, employees and officers, including Does 1-10, whom they employed at all times relevant.

6.      Defendants Does 1-10 are individual police officers in Gwinnett and DeKalb Counties, subject to federal and state laws, ordinances, regulations, customs, and usages. Does 1-10 are sued in their official and individual capacities, as current or former officers of Gwinnett or DeKalb, as participants in the Incident at issue. They are responsible and liable for depriving Anh Thy and Phillip of their federal rights under color of state law, including their wrongful deaths as a result of the Incident. ***Scheuer v. Rhodes***, 416 U.S. 232, 237-38 (1974). They injured and killed Anh Thy and Phillip, contrary to their training to "handle situations which present a great potential for death or serious injury or require the utilization of personnel specifically trained in specialized techniques safely and effectively deal with said situations" whose duties include among others "negotiation in the event of hostage, barricaded subject or attempted suicide  situations." ***Smith v. LePage***, LEXIS 192577 * 12 (N.D. Ga. 2015) These duties were breached including by their unlawful enforcement of the illegal 287 Program as shown here.

7.      Defendant Rush-Williams was employed by Gwinnett, as its attorney at all times relevant, who is liable for her misconduct at issue, which did not occur in a prosecutorial capacity to whom prosecutorial immunity is inapplicable.

4

8.      The Nguyen Defendants are sued individually and in connection with their involvement with the other Defendants, who resided at 1870 Beyers Landing Road [The Home] throughout all the times relevant to this suit, including March 2020. Vivian Nguyen declined to provide any alternative service address.

9.      Additional Defendants may be joined to this action under a relation back and tolling argument if discovery identifies additional parties who would have been timely identified as proper defendants had Gwinnett or DeKalb complied with their obligations under the Georgia Open Records Act, O.C.G.A. § 50-18-70, et seq., to respond to Plaintiff's counsel's pre-litigation record requests.

## STATEMENT OF FACTS

### The H.O. Program and the 287 Program.

10.     In 1989, the United States and the Socialist Republic of Vietnam agreed that all South Vietnamese detainees in reeducation camps may leave for the United States under the Humanitarian Operation (H.O.) Program, also known as the Special Release Reeducation Center Detainee Resettlement Program.

11.     Over 70,000 former South Vietnamese officers and their families arrived in the United States as a result of this H.O. Program, who could apply for citizenship here and were permanent residents here who cannot be deported.

12.    Since 1990, Vietnamese political prisoners and their families are the largest category of Vietnamese refugees admitted to the United States. Former South Vietnamese civilian and military officials were imprisoned in reeducation camps in Vietnam since 1975. Many of them were released from camps into Vietnamese society as marginal members of a society that discriminates against them and their families in employment, housing, and education.

13.    Plaintiff Ho, a former South Vietnamese officer, conducted covert operations during the Vietnam War with the United States, who imprisoned and tortured by the communist regime of Vietnam from 1975 until at least 1980.

14.    Plaintiff Ho did not see his children, including Anh Thy born in 1973, for much of their childhood, who were cared for by Ms. Nguyen, a nurse.

15.    Plaintiff Ho's brother was executed by the regime while jailed and their family was barred from employment and education in Vietnam by the regime.

16.    In 1995, Plaintiffs and their children, including Anh Thy relocated to the United States by the HO Program, a federal relocation program, becoming permanent residents and later citizens of the United States.

17.    <u>The Socialist Republic of Vietnam lacks a repatriation treaty for the return of Vietnamese refugees in the United States under the H.O. Program.</u>

18.    Anh Thy was a legal resident of the United States who could not be deported due to the H.O. Program, who had no criminal record prior to 1998.

19.    The Ho family became self-sufficient, repaid their federal relocation loan, moving to Gwinnett County in 1996 and worked hard to support themselves.

20.    In 2010, Gwinnett agreed to a racially motivated program by which its deputy sheriffs illegally performed the work of ICE agents in effecting the deportation of millions of persons, for which Gwinnett ranked fifth in the country, resulting in racial profiling and harassment of non-white residents under former, Sheriff Butch Conway, allied with D. A. King on this issue [The 287 Program].

21.    In May 2019 Conway renewed the 287 Program despite widespread opposition to it and his misuse of it damaged Gwinnett and reduced public trust in law enforcement as confirmed by the Georgia Association of Latin Individuals.

22.    Thousands of Gwinnett residents were unlawfully deported under the 287 Program, even if they committed no crime as shown by the below AJC Article. https://www.ajc.com/news/atlanta-news/cobb-gwinnett-end-287g-immigration-programs-work-to-build-trust/TMT42MNZM5E4JCXSXYKBWUYAOU/

23.    The above AJC article indicates over 2,500 people were illegally deported under 287 Program from Gwinnett, which has nearly a million residents, over 25% of which are foreign born.

24.     The events at issue as to Anh Thy and Phillip relate to the illegal 287 Program as Plaintiffs recently learned.

25.     The Program was ended in 2021 by Gwinnett's first African-American sheriff, Keybo Taylor, who called it discriminatory and harmful.

26.     Anh Thy began to date Defendant Huyen Nguyen, who owned a nail salon at which he worked at the time of the matters at issue here.

27.     Defendant Huyen was a chronic gambler and had children with other men, such as her daughter, Defendant Vivian Nguyen, whose family has a history of mental illness and financial issues, which are pertinent to the facts at issue.

28.     Defendant Huyen's problems caused many issues for Anh Thy during his efforts to resume normal life such as her altercations with gambling associates, resulting in his illegal incarceration and release by Gwinnett, based upon an erroneous charge that he violated his probation.

29.     In 2011, Defendant Huyen sold the salon to purchase 1870 Beyers Landing Drive, Buford in 2012, where she lived with Anh Thy, Defendant Vivian Nguyen and her prior son by another man [the Home], which she then sold in turn to purchase or contribute to 785 Jackson Brook Court NW, Lilburn GA 30047 [Second Home] during the pendency of the 2018 Action in January 2023 to fraudulently avoid attachment of the Home in this action.

8

30.     Anh Thy contributed to the Home's purchase and upkeep particularly as Defendant Huyen could not afford these household expenses alone, by which she and her family were unjustly enriched and benefitted as a result including by their purchase of or contributions to the Second Home.

31.     Defendant Huyen insisted her children with various men live at the Home, whose fathers were unwilling to acknowledge and support them whom Anh Thy supported and cared with her elderly father, whom she did not care for either.

32.     Defendant Huyen installed a home security and video system at the Home and obtained gun due to her illicit activities, which she can display on her phone, one of which was located in the Home.

33.     Defendant Huyen gave birth to Phillip Ho a/k/a Phillip Nguyen, whom she claimed was Anh Thy's son.

34.     Anh Thy acknowledged his paternity of Phillip and was a caring and loving parent to Philip, unlike Huyen, who wanted nothing to do with Phillip.

35.     Huyen altered Phillip's birth certificate to manipulate Anh Thy to support her personally, even after Anh Thy acknowledged his paternity.

36.     Huyen was verbally and physically abusive to Anh Thy and Phillip,

often illegally forcing them from the Home to live with Plaintiffs due to her self-serving rage that Anh Thy earned insufficient money to support her.

37.     Huyen put Phillip outside the Home in his car seat during one winter, in the freezing weather, who called Anh Thy to take Phillip away.

38.     Huyen did not change, feed or care for Phillip, even at family gatherings, which Anh Thy did as a loving father of Phillip, who contacted other family members for advice on how to care for Phillip.

39.      Huyen's misconduct resulted in many police dispatches to the Home, but did not result in arrests as the Defendants admitted.

40.     Anh Thy worked shifts exceeding 12 hours at his job, at Schuetz Container Systems to support Huyen, her children, including Vivian and Phillip while Huyen often just gambled and engaged in relations with other men.

41.     Anh Thy also cared for Huyen's father, whose was neglected by his family including both of the Nguyen Defendants.

42.     Plaintiffs often cared for Phillip when Anh Thy was working and when Defendant Huyen forced Anh Thy and Phillip out of the home.

43.     Often, Defendant Huyen forced Anh Thy to leave the Home and prevented him from seeing Phillip, just to extort money from him, who suffered from being illegally separated from Phillip, whom he loved very much.

44.     Anh Thy stayed away from the Home to avoid provoking Huyen, who lived there with Phillip during late 2015, with her other children, such as Vivian while Huyen had relations with and shared her indecent photos with many men.

45.     Anh Thy was a skilled and diligent worker for Schuetz who worked considerable overtime to support Huyen, her children, the family home and Phillip.

46.     By 2015, Anh Thy purchased a Jaguar coupe from a friend of the Plaintiffs, in good condition, which he proudly drove, which a relative of Defendant Huyen damaged on one occasion and did not disclose to him.

47.     In October 2015, Anh Thy took Phillip trick-or-treating for Halloween near Plaintiffs' home from which Defendant Huyen largely absented herself and later showed briefly, dressed most indecently.

48.     By November 2015, Schuetz offered Anh Thy a promotion to a management role enabling him to obtain a degree in return for a specific tenure.

49.     Anh Thy wished to share his new opportunities with Phillip.

50.     Huyen was enraged as Anh Thy and Phillip were happy without any benefit to her when she learned of Anh Thy's planned promotion.

51.     In late 2015, Huyen sued Anh Thy for Phillip's support, for which an administrative hearing was scheduled in February 2016 to resolve this matter along with visitation of Phillip, which Huyen had obstructed for Anh Thy until then.

11

**The Incident: The Unexplained Deaths of Anh Thy and Phillip.**

52.     On the evening of January 5, 2016, Huyen invited Anh Thy to visit Phillip and her at the Home, to allegedly reconcile, a ruse to lure him there.

53.     During the visit, Anh Thy called Plaintiffs who watched him playing with Phillip from a Face-Time or other visual signal on Anh Thy's cellphone.

54.     Defendant Huyen began arguing with Anh Thy as to her relationships and indecent photos with other men and he ended the call to Plaintiffs.

55.     Later that night, Defendant Huyen's daughter, Defendant Vivian contacted Gwinnett about an alleged domestic disturbance at the home.

56.     Defendant Vivian had a bad relationship with Anh Thy, who did not wish to support her and her boyfriend about which she was deeply resentful.

57.     At least two Gwinnett Police appeared on the scene of the alleged disturbance after which Defendants Vivian, Huyen and her son by another man emerged from the garage of the Home with Phillip.

58.     Anh Thy remained inside the Home, apparently due to the threats of Defendant Huyen to have him arrested and harmed by the police.

59.     Phillip followed Huyen into the garage to exit the Home, which he then voluntarily reentered to remain with his loving and caring father, contrary to baseless claims by other parties in this case that he was a "hostage."

60.     Phillip clearly wished to remain with his father throughout this matter.

61.     Gwinnett's police officers escalated this minor domestic matter into a 19-hour armed confrontation [Incident], resulting in a platoon of police and SWAT from Gwinnett and Dekalb arriving at the Home for reasons still undisclosed.

62.     The Gwinnet and Dekalb police and SWAT were armored and heavily armed with military equipment and weapons, trained to kill or injure, including officers and their supervisors, namely Defendant's Does 1-10.

63.      Does 1-10 consisted of officers from Gwinnett and DeKalb Counties.

64.     No evidence of Dekalb's authority in the Incident was ever provided, including in the Open Records on it produced by them and Gwinnett.

65.     SWAT and police for Gwinnett and DeKalb, Does 1-10, called Plaintiffs to the Home around 3:00 a.m., asking them to negotiate with Anh Thy to leave the Home with Phillip during the siege of the Incident.

66.     Police and SWAT of Gwinnett and Dekalb Police, including Does 1-10, oversaw and directed Plaintiffs' communications with Anh Thy, inaccurately conveyed by a police translator who could not properly speak Vietnamese.

67.     SWAT and police for Gwinnett and DeKalb, such as Does 1-10, texted Anh Thy with Plaintiffs' phone on the pretext to 'negotiate' with him.

68.   Upon information, Gwinnett and/or DeKalb, including Does 1-10 sought to lure Anh Thy outside the bedroom to kill, or illegally detain and deport him under the 287 Program, in violation of the H.O. Program and the Constitution.

69.   Anh Thy's death was requested by Huyen, who was interviewed outside by an officer as shown by Records provided by Gwinnett County.

70.   Records obtained from DeKalb and Gwinnett confirm the presence of at least 3 police snipers at the Incident, apparently to kill Anh Thy or to assist in detaining and deporting him under the 287 Program.

71.   Huyen had no concern for Phillip during the Incident, who remained indoors or in a car the entire time, unlike the elderly Plaintiffs, who remained late into the night outside the Home, in freezing weather who constantly sought to communicate with Anh Thy and with Phillip to safely resolve this matter.

72.   Anh Thy knew he and Phillip faced injury and even death if exiting the bedroom of the Home during the Incident, to take food, water or supplies left outside for that very purpose by Gwinnett, DeKalb and the Doe Defendants.

73.   Records obtained from Gwinnett indicated they or Dekalb would kill Anh Thy with snipers if he emerged into their line of sight and out of protective cover at the Home during the Incident.

74.     Gwinnett, DeKalb and Does 1-10 only permitted food, water or supplies into the Home during the Incident under limited circumstances as shown here, which Anh Thy and Phillip could not obtain, which these Defendants deliberately and willfully prevented to inflict pain and suffering on them.

75.     Phillip was visible on Anh Thy's phone during the Incident and very happy to be with his father as Plaintiffs could see, who have photo imagery of Anh Thy and Phillip in a closet together, who sought to avoid injury by the police.

76.     Plaintiffs remained on the scene of the Incident for hours, only leaving on the morning of January 6, 2016, who due to their exhaustion, after being inexplicably told to leave by Dekalb, Gwinnett and the Doe Defendants.

77.     Anh Thy indicated to Does 1-10, Gwinnett and DeKalb, that he sought to exit the Home with Phillip, but could not, who would be shot if they emerged, by the concealed snipers of these Defendants.

78.     Gwinnett and DeKalb participated in the standoff through police and staff, such as their SWAT teams, including Does 1-10, who sought to harm Anh Thy including deporting him under the 287 Program.

79.     The police entered the Home and awaited a clear shot of Anh Thy outside the bedroom door, who could hear Phillip laughing and playing inside with Anh Thy, who continued to text and call the police from his cellphone.

80.     The police drilled a hole in the back of the bedroom closet to observe Anh Thy and confirmed he went downstairs at least once, with Phillip still upstairs.

81.     Gwinnett, DeKalb, Rush Williams and Does 1-10 refused to disclose the reason the police did not seek to shoot Anh Thy while he was separated from Phillip if he was such a threat to Phillip.

82.     The standoff at the Incident continued until late in afternoon of January 6, 2016, when one or more shots rang out from the Home as Gwinnett and DeKalb SWAT stormed it, including Does 1-10, who entered the bedroom.

83.     Around that time, Gwinnett and DeKalb SWAT, including Does 1-10, denotated a bomb in the back of the home, blowing a hole in its rear wall, rushing the bedroom occupied by Phillip and Anh Thy.

84.     Phillip was found on the floor with a traverse wound from his right scapular to his left breast while Anh Thy had a gunshot wound to the right side of his head. Both victims were unconscious and near death.

85.     Various witnesses heard only one gunshot and there are no records or evidence which shows who shot Anh Thy and Phillip at the Incident.

86.     Upon information, Anh Thy and Phillip were shot by the officers storming the Home when the bomb exploded, such as the Does, by direction of Gwinnett and DeKalb at the Incident.

87.     The bomb was omitted in nearly all press releases of Gwinnett as were the identities of the persons who shot Anh Thy and Phillip.

88.     Upon information, the bomb explosion did or could have discharged shrapnel into the home, also harming Anh Thy and Phillip during the Incident.

### Conflicting Accounts of the Incident.

89.     The alleged complete Open Records of DeKalb and Gwinnett contain conflicting versions of the Incident, such as the number of shots fired and fail to disclose who shot them and when. Some accounts claimed to have seen Anh Thy shoot a gun while others did not.  All of the Records omit mention of the bomb.

90.     For example, Gwinnett's statement of January 6, 2016, alleged that:

"Gwinnett Police Cpl. Michele Pihera said via email Wednesday morning that the standoff began around 10 p.m. Tuesday when officers were called to the 1700 block of Beyers Landing Drive in Buford. Pihera said the caller told police there was a disturbance between a man and a woman at the address - the woman, he said, was his mother and the man, her boyfriend. ***He said the boyfriend, later identified as Ho, was holding several people at gunpoint and threatening to shoot all of them and then commit suicide. "officers initiated a series of intense negotiations with the suspect, with correspondence between the parties continuing through Wednesday afternoon. The negotiation efforts ended abruptly when officers heard a gunshot emanating from the master bedroom of the home. Officers immediately made entry into the home, where they soon encountered the suspect. Cpl. Deon Washington of the Gwinnet County Police says upon seeing the officers, Ho turned his weapon on himself and fired***. Washington says authorities were then able to locate the child, who had *apparently* been shot by his father. At this point, it is unknown what caused Ho to shoot his son. The bodies of

the deceased will be turned over to the <u>Gwinnett County Medical</u> <u>Examiner, who will determine the official cause of death for both</u> <u>individuals.  An investigation into the matter is ongoing at this time,</u> <u>and is being handled by the Gwinnett County Police Department</u>." <u>https://accesswdun.com/print/2016/1/360736/gwinnett-co-swat-</u> <u>standoff-ends-with-death-of-buford-man-and-his-young-child</u>

91.    There is no documentation of the above statement in the Records including the cause of death of Anh Thy and Phillip, the victims of the Incident which Gwinnett and DeKalb concealed even now, after Gwinnett stated on January 6, 2016 that: "*Police said investigators are still processing the crime scene and the Gwinnett County medical examiner will determine the official causes of death.*" See Fox News Article: "Father shoots and kills 2-year-old son, himself after hours-long standoff outside Atlanta" www.foxnews.com/us/father-shoots-and-kills-2-year-old-son-himself-after-hours-long-standoff-outside-Atlanta.

92.    Upon information, Gwinnett issued the above falsified statement to conceal its own misconduct regarding the Incident.

93.    On January 6, 2016, Gwinnett issued another statement, stating:

"I don't know what led to the shooting or what prompted the suspect to begin firing," said Cpl. Pihera, ***who could not confirm if police fired any shots***. ***As SWAT members entered the master bedroom, the suspect shot himself, Pihera said, but the location of the shot was unknown***.

<u>https://www.gwinnettdailypost.com/local/cities/buford/19-hour-</u> <u>swat-standoff-ends-with-death-of-child-</u> <u>suspect/article_fb3845a1-3f24-580b-bd4d-8d87f6be4138.html</u>

94.    On January 7, 2016, Gwinnett issued another statement that:

> ***SWAT team members contacted the suspect inside the home by phone and text messages before entering after hearing a gunshot. Upon their entry, the suspect shot himself***," Gwinnett County Police Cpl. Michele Pihera said in a news release. "The officers quickly grabbed the baby and noticed that he had received a gunshot wound."
> https://www.gainesvilletimes.com/news/child-father-dead-after-standoff-in-buford/

95.    This statement again omitted any mention of the bomb and falsely states that Anh Thy shot himself, which is unsupported in the Records selectively produced by Gwinnett to conceal its misconduct at issue.

96.    The Records produced omit documentation of the above statements, which are contradictory and were apparently made by Gwinnett to conceal its own misconduct regarding the Incident, upon information.

97.    On **June 21, 2021**, DeKalb produced Report No. GA0440200, dated January 7, 2016, with a different version of the Incident, stating in part as follows:

> "Due to the evolving situation and after ***gunshots*** were heard inside the suspect's bedroom, ***an explosive breach*** was conducted on an upstairs bedroom to facilitate a firing port in support of the DeKalb SWAT Team's efforts. The breach was successful ***and actions to conclude the situation continued.   No persons, civilians or police, were injured as a result of the breach.***" DeKalb Incident Report No. GA0440200, dated January 7, 2016. This Record is the sole public mention of the bomb.

98.     The Records produced omit any details of the above statement including the "gunshots" and "explosive breach" presumably the bomb or the basis for its alleged "success" or the "actions to conclude the situation."

99.     On June 21, 2021, DeKalb produced an After-Action Report, dated January 11, 2016 which confirmed the presence of three snipers at the residence with still another version of the Incident, which states in pertinent part as follows:

> "During the incident, the subject (Thy Ho) ***fired a gunshot***, which prompted the entry team to enter into the bedroom, Once the entry team was inside the bedroom, they located a small child and the subject. The child sustained a ***gunshot*** wound and the subject sustained a self-inflicted ***gunshot*** wound. [DeKalb After Action Report, dated January 11, 2016.

100.   The Records produced  by Gwinnett and DeKalb again omit any documentation of the above alleged "gunshot" or the "wound" which appear to be falsified to conceal the misconduct of Gwinnett and Dekalb regarding the Incident.

101.   On January 8, 2016, Gwinnett admitted in the below article that it did not know how Phillip and Anh Thy died, but would use the Incident "*as a learning experience*" to hopefully prevent future such incidents and promised to "*comb through the timeline and critique exactly what took place.*" See below. usatoday.com/story/news/local/buford/2016/01/08/behind-scenes-tragic-gwinnett-county-standoff/78523246/. **However, no such 'critique' ever took place.**

20

102.   On January 7, 2016, another Gwinnett officer had admitted as follows:

"Our primary focus at this time is gathering as much information about Mr. Thy Ho and the circumstances that led up to this particular incident," Cpl. Deon Washington said Thursday, adding that there had been arguments at the home before. But Washington conceded *that police might never find an explanation that a "reasonable person" would understand for what happened to Phillip.*"

103.   Gwinnett and DeKalb released no further details of the Incident and of their alleged 'learning experience' including the bomb and its explosion, to again conceal their own misconduct regarding the Incident.

104.   Gwinnett and DeKalb also did not disclose any details of the 287 Program in relation to the Incident, to again conceal their own misconduct.

105.   Upon information, the shots during the Incident were fired by or at command of SWAT and police for Gwinnett and DeKalb, such as Does 1-10, who did not identify the shooter including in the Open Records of the Incident.

106.   The identity of those involved with the bomb and its detonation at the time of the Incident is still unknown as is the relation of the 287 Program to it.

107.   SWAT and police for Defendants Gwinnett and DeKalb, such as Does 1-10, emerged from the home at the time of the Incident with Phillip, who had a back-chest gunshot traverse wound as shown by online imagery of the Incident that day, which is undisclosed in their Open Records of the Incident.

108.   Phillip was flown to Children's Healthcare of Atlanta, Eggleston and died that day in Fulton County, a fact omitted in the Records provided.

109.   Does 1-10 emerged from the Home after the Incident with Anh Thy who had a gunshot wound to his right temple.

110.   Anh Thy was taken by ambulance to Gwinnett Medical and died per reports that day, a fact omitted in the Records provided by Gwinnett and DeKalb.

111.   Ballistics tests were not conducted by Gwinnet and DeKalb showing how Anh Thy and Phillip died or were omitted in the Records provided by them.

112.   Anh Thy's hands were not tested for gunshot residue showing he discharged a firearm or such tests were undisclosed by Gwinnett and DeKalb.

113.   Audio or video records made during the Incident were not released by Gwinnett and DeKalb such as bodycams of Does 1-10 in the Records.

114.   No evidence of any internal affairs or GBI investigation of the Incident was released by Gwinnett or Dekalb in their Records produced.

115.   There was no official determination of the cause of deaths of Philip and Anh Thy, now mere fodder for groundless public speculation in social media.

116.   On January 6, 2016, Gwinnett stated in several press releases that its investigators were "still processing the crime scene" and its "medical examiner will determine the official causes of death" but no such information was ever released in the Open Records at issue, including the details of the bomb.

117.   On January 10 and 11, 2016, Gwinnett misrepresented details of Anh Thy's prior incarceration and falsely claimed he was subject to deportation by ICE in both Indiana and Georgia stating in the below press release as follows:

> **Officials confirmed to the Daily Post that the 43-year-old registered sex offender was supposed to be deported in 2009 after doing 10 years in an Indiana prison for convictions including criminal confinement, armed robbery and gang activity. But Vietnamese and French authorities declined to provide the necessary travel documents, and Ho had to be released on Sept. 10, 2009, according to U.S. Immigration and Customs Enforcement.** https://patch.com/georgia/buford/man-who-shot-2-year-old-self-should-have-been-deported-0.

118.   No basis for the above false statement was provided in the Records allegedly produced by Gwinnett as required by law, as Gwinnett issued it to apparently conceal its own misconduct in connection with the Incident.

119.   Gwinnett's above statement of deportation of Anh Thy was untrue as he was a *permanent* resident and not subject to deportation under H.O. Program.

120.   Upon information, Gwinnett racially profiled Anh Thy for illegal deportation under its 287 Program, in violation of the H.O Program between the United States and Republic of Vietnam, the true meaning of the above statement.

121.   Apparently, Gwinnett sought to use the Incident to illegally deport Anh Thy with the 287 Program, in violation of the H.O. Program, which misrepresented that illegal detail in its statements, also omitted in its Records.

122.   Upon information, Does 1-10 and the Gwinnett and DeKalb officers at the Incident were not certified trained or authorized to enforce federal immigration law under the 287 Program at the time of the Incident, in violation of the Constitution and the H.O. Program.

**<u>The Aftermath of the Incident.</u>**

123.   Huyen used the unexplained deaths of Anh Thy and Phillip to solicit nearly $4,000.00 online in public for herself through her neighbors by GoFundMe.

124.   Huyen conducted Phillip's funeral on January 8, 2016, who attacked Plaintiffs while they were present at that same funeral home to arrange Anh Thy's funeral, whom she ejected from Phillip's funeral, as they watched from a distance.

125.   Huyen burned Phillip's body and scattered its ashes in India for reasons unknown as she only disclosed to Plaintiffs in the 2018 Action.

126.   Gwinnett and DeKalb refused to disclose the causes of the deaths of Phillip and Anh and the involvement of Does 1-10 with the Incident, declining to release complete Records of the Incident, particularly of the bomb, the 287 Program and the basis for their above falsified and erroneous press releases.

127.   Gwinnett and DeKalb never released any GBI Records related to the Incident, contrary to standard operating procedure requiring the death of a minor at the hands of the police to be investigated by GBI.

128.   Records of Gwinnett indicate the Nguyen Defendants maliciously filed a false police report with Gwinnett, misrepresenting Anh Thy as the cause of the alleged domestic disturbance upon which the Defendants erroneously relied to conduct the matters resulting in the Incident.

129.   Defendant Huyen and Vivian, her daughter incited and engineered the Incident to isolate, confine and kill Anh Thy and Phillip, a practice called 'swatting' as Anh Thy indicated to the Plaintiffs via phone before he died.

130.   After the Incident, the Nguyen Defendants were questioned by police of Gwinnett about their involvement with it in a recorded Interview.

25

131.   During the Interview, Defendant Vivian nervously asked the police for illegal advice if she could be jailed for owning an unregistered firearm, which Gwinnett's police provided, by illegally advising her to remain silent to avoid implicating herself and them in their misconduct as detailed here.

## Gwinnett and DeKalb illegally Refuse to Provide Open Records of the Incident.

132.   On February 2, 2016, Plaintiffs made the below Open Records Requests upon Gwinnett for all records of the Incident and stated as follows:

We are the family of Thy Ho and Phillip Ho a/k/a Phillip Nguyen, who died on 1/6/16 in Gwinnett County. We request all documents, items and things regarding the events resulting in their deaths, including investigative reports, police reports, records of telephone calls, texts and other items, things and communications regarding these matters. We also request documents, items and things, such as coroner's reports, showing the date, time, location and cause of death for both victims. We also request any documents, items and things, such as reports, regarding the firearms allegedly used by Thy Ho in connection with this matter, setting forth the name, address and owner of the firearm and any tests done on Thy Ho's body to determine if he discharged a firearm. We also seek any documents, items and things with information on the disposition of their personal belongings obtained by the police, such as Mr. Ho's mobile phone. We also request any information, items and tangible things, such as reports and/or other information on Mr. Ho's vehicle, a Jaguar sedan which was at the scene. We also request information, items and tangible things, regarding the person or persons who reported these matters to the police, Huyen Nguyen a/k/a Courtney Nguyen and/or her children by several other men. We also request any documents or other information upon which the Gwinnett County Police have based their many reports to the press on this matter, including those used by Cpl. Deon Washington. We also request information, items and tangible

things as to any investigation of their deaths after they died, including crime scene photographs, videos, witness statements and reports. Also we seek information, documents, items and tangible things showing the hostage negotiations and why the police believe mistakes were made in handling this matter. Please email the information to myoshintai@aol.com. Please call us at 678-425-7378 with any questions.

133.   Gwinnett did not respond to the above Open Records Request, which

it admitted by its silence, which sought to conceal its misconduct as shown here.

134.   On 2/24/16, Plaintiffs made a Second Open Records Request upon

Gwinnett for all records of the Incident as follows:

From: myoshintai@xxx.com
Sent: Wednesday, February 24, 2016 11:50 PM
To: Policeopenrecords/Chief Info Line Open Records Information; Sorenson, Joe; Sawyer, Heather; Clay, Melissa Subject: Second Open Records Requst - Thy Ho and Phillip Ho a/k/a Phillip Nguyen

To Whom it May Concern: On February 2, 2016, under the Georgia Open Records Act, O.C.G.A. § 50-18-70 et seq, we made the following open records request through the website of Gwinnett County. To date, contrary to the Act, we have not received a response from the County or any of its agencies.

As provided by the Act, please respond to this request within three (3) business days of today or we will bring legal action to compel production of these records, including seeking our fees and costs under the Act. We note that this information was repeatedly referenced in press releases by the public relations officer of the Police Department, Dion Washington since 1/6/16. We are unaware of any basis for the County to withhold this information. The County must respond to this request as provided by the Act. We are the family of Thy Ho and Phillip Ho a/k/a Phillip Nguyen, who died on 1/6/16 in Gwinnett County. We request all documents, items and things

regarding the events resulting in their deaths, including investigative reports, police reports, records of telephone calls, texts, ambulance, EMT, emergency response and other items, things and communications regarding these matters.

We also request documents, items and things, such as coroner's reports, showing the date, time, location and cause of 6 death for both victims. We also request any documents, items and things, such as reports, regarding the firearms allegedly used by Thy Ho in connection with this matter, setting forth the name, address and owner of the firearm and any tests done on Thy Ho's body to determine if he discharged a firearm. We also seek any documents, items and things with information on the disposition of their personal belongings obtained by the police, such as Mr. Ho's mobile phone. We also request any information, items and tangible things, such as reports and/or other information on Mr. Ho's vehicle, a Jaguar sedan which was at the scene. We also request information, items and tangible things, regarding the person or persons who reported these matters to the police, Huyen Nguyen a/k/a Courtney Nguyen and/or her children by several other men. We also request any documents or other information upon which the Gwinnett County Police have based their many reports to the press on this matter, including those used by Cpl. Deon Washington. We also request information, items and tangible things as to any investigation of their deaths after they died, including crime scene photographs, videos, witness statements and reports. Also we seek information, documents, items and tangible things showing the hostage negotiations and why the police believe mistakes were made in handling this matter.

Please email the information to myoshintai@aol.com or mail it to 2200 Willow Trail Parkway, Lot A95, Norcross, Georgia 30093. Please email us at the above email address or call us at 678-425-7378 with any questions. Buu Ho and Lien Nguyen Parents of Thy Ho and Grandparents of Phillip Ho a/k/a Phillip Nguyen

135.   Gwinnett failed to respond to the Second Request which it admitted as

it still sought to conceal its misconduct regarding the Incident.

136.   Gwinnett's refusal to respond to the Requests violated the Open

Records Act, requiring Plaintiffs to sue it in Gwinnett Superior Case No. 16-

A059595-6. [2016 Action] through their counsel to resolve these issues.

137.   Gwinnett contacted Plaintiff's counsel, acknowledged its misconduct,

and agreed to pay a penalty and fees to Plaintiffs for its misconduct and provide the

Open Records sought in the 2016 Action, per its below email:

> **From:** Duane Pritchard; **Date:** June 22, 2016 at 3:10:35 PM EDT
> **To:** Paul Wersant; **Cc:** Tuwanda Rush-Williams
> **Subject: Nguyen v. Gwinnett County**
>
> Paul, I'm glad we were able yesterday to discuss this case. **To
> summarize, the documents you requested under the Open
> Records Act will be made available, probably within the next 5-7
> days.** The document will be available in whatever format is most
> convenient for you (I recall that you said scanned on a thumb drive
> would be best) and at no cost. **I ask that you put off any further
> work on the lawsuit during the next 5-7 days, and would also
> request that your clients dismiss the lawsuit once they receive the
> documents.** Please discuss this with your clients and let me know
> their response.
>
> We also discussed whether the Gwinnett records would contain any
> DeKalb County records (the DeKalb Police were also involved in the
> incident that is the subject of the open records request). I do not know
> the answer to this question, but if the DeKalb records are part of the
> Gwinnett records, the records will be produced. If not, you are
> welcome to request the records directly from DeKalb County.
>
> I've cc'ed Tuwanda Williams from my office on this e-mail. She will
> be handling this case if it goes forward, which I hope it does not.
> Please let me know if you have any questions. I look forward to

hearing your clients' response to the above proposal. Duane D. Pritchett, Chief Assistant County Attorney

138.   Gwinnett agreed and confirmed that resolving the 2016 Action

required it to provide all Records of the Incident, *which it represented it had*

*fully provided to Plaintiffs without exception*, per the below email, stating:

> *From: Tuwanda.Williams@gwinnettcounty.com*
> *Sent: Wednesday, July 12, 2017 10:52 AM*
> *To: Paul Wersant pwersant@alaw.net*
> *Subject: Ho and Nguyen v. Gwinnett County, Georgia, et al.*
> *Importance: High*
>
> *Mr. Wersant,*
> You probably know that the above referenced case appears on Judge Batchelor's two-week trial calendar next week.  When I spoke with his calendar coordinator late yesterday evening, she stated that the case will likely be called in for Monday morning because we have moved from position #13 to #8, and cases continue to come off.  Are you still proceeding to trial on this matter?  ***As you know, we have provided you with all of the County's documents that are responsive to your clients' open records requests***.  We have also repeatedly requested a reasonable demand for your client's attorney's fees and costs for filing the lawsuit.  I plan to share our efforts in this regard with the judge next week when we are called in for trial.  Please let me know as soon as possible if I need to take the next couple of days to prepare for trial.
>
> *Thanks.*
> *Tuwanda Rush Williams*
> *Senior Assistant County Attorney*
> *Gwinnett County Department of Law*

139.   Plaintiffs only settled their prior Open Records Claims with Gwinnett in the 2016 Action not any others, under a Settlement Agreement dated December 7, 2017 and per the December 8, 2017 dismissal of the 2016 Action which states:

> *"Pursuant to O.C.G.A. 9-11-41, Plaintiffs dismiss this case with prejudice just as to their claims under the Open Records Act, the sole claims in this case"*

140.   Plaintiffs voluntarily dismissed the 2016 Action, accepted payment of their fees and the Records of the Incident as settlement for this suit – based upon the representations of Gwinnett and its counsel, Tuwanda Williams, that they were providing complete Records on the Incident without exception.

141.   Plaintiffs received Gwinnett's Records, which they and their counsel reviewed and noticed certain items deliberately omitted by Gwinnett from them.

142.   The items omitted by Gwinnett included the Firearm involved in the Incident, information on the autopsies, a report, photographs and other documents.

143.   Gwinnett's illegal omissions from the Records were confirmed by correspondence from Plaintiffs' counsel to Defendant Rush-Williams to which she and Gwinnett failed to respond and admitted by their silence, which states:

> *From: Paul Wersant <paulgwer@yahoo.com>*
> *To: "Tuwanda.Williams@gwinnettcounty.com"*
> *<Tuwanda.Williams@gwinnettcounty.com>;*
> *"duane.pritchett@gwinnettcounty.com"*
> *<duane.pritchett@gwinnettcounty.com>*
> *Sent: Thursday, January 11, 2018 2:05 PM*

*Subject: Re: 2016-1449 Buu Ho and Lien Nguyen v. Gwinnett County, et al. 16-A-05695-6: Ho vs Gwinnett County, Civil Action No. 16A-05695-6*

*Dear Ms. Williams,*

*Attached, please find the executed W-9 as requested by you.  The voluntary dismissal was filed and provided as was the settlement agreement executed by my clients. Accordingly, please advise when the settlement check will be available. On a related note, my clients settled this case with the understanding and on the condition that the County was providing all records in its possession, custody and control regarding Thy Ho and Phillip Ho, regarding their deaths on January 6, 2016, as Mr. Pritchett agreed on or about June 21, 2016.*

*However, review of the records which were provided by the county [without an index] does not show any information about any firearm involved in the incident, which was allegedly involved in the deaths of Thy Ho and Phillip Ho. There is also no information regarding their autopsies, including an autopsy report, photographs or other documents.*

*Please advise if these or any other documents were withheld by the County regarding the request.*

*Sincerely,*
*Paul Wersant*

*From: Tuwanda.williams@gwinnettcounty.com*
*To: paulgwer@yahoo.com*
*Sent: Thursday, January 11, 2018, 02:06:29 PM EST*
*Subject: Automatic reply: 2016-1449 Buu Ho and Lien Nguyen v. Gwinnett County, et al. 16-A-05695-6: Ho vs Gwinnett County, Civil Action No. 16A-05695-6*

*I will be out of the office on medical leave until February 20, 2018.  If you require immediate assistance, please contact my assistant, Mercedes Thomas, at (770) 822-8793 or Chief Assistant County Attorney Duane Pritchett at (770) 822-8791.*

*Thank you.*

*Tuwanda Rush Williams*
*Senior Assistant County Attorney*
*Gwinnett County Department of Law*

144.   Plaintiffs and their counsel then hired an investigator to review the

Records produced by Gwinnett, namely Marc Lacrimosa.

145.   Gwinnett's Records lacked complete records of the Incident from

DeKalb and Gwinnett, as detailed here as Plaintiffs learned from Mr. Lacrimosa.

146.   Plaintiffs learned the Records omitted significant information on the

Incident, such as the identity of the shooter at the Incident per Mr. Lacrimosa.

147.   The Records also lack other responsive information from DeKalb or

Gwinnett as confirmed by Mr. Lacrimosa, such as the following:

(a)   SWAT on-scene information such as statements and command center
Information, Crime Scene Logs and SWAT Statements.

(b)   Forensics of the shootings – the records contended that Anh Thy was
found with an alleged stolen pistol, but there were no ballistics tests of
that or any other gun at the scene showing if they were fired and who
fired them. No residue tests were disclosed for Anh Thy's hands.

(c)   Records of outside agency support, such as by Defendant DeKalb;

(d)   Witness statements, such as persons in the neighborhood.

(e)   Any information about the bomb explosion, including officers who
detonated the bomb in the rear of the home

(f)   GBI Reports/internal affairs investigations; [See ***Smith v. DeKalb
County***, LEXIS 197339 *11-12 (N.D. Ga. 2012) [detailed DeKalb,
standard operating procedures for use of a SWAT Team which
conducted internal review board review of an excessive force case and
***Ivey v. Smart***, LEXIS 186775 * 15-16 (N.D. Ga. 2014) [alleged

        unjustified shooting of suspect by DeKalb officer was <u>investigated</u> by internal affairs and internal review board].

(g)     Negotiator reports, including their use of Plaintiffs' cellphone;

(h)     Audio and visual tapes of the Incident.

(i)     An event timeline of the Incident.

(j)     Identities and other information of the team involved with the bomb.

(k)     Notably, the records disclosed that Anh Thy left a folded-up or sealed note in the bathroom but did not disclose its contents or disposition.

(l)     The records disclosed that Anh Thy's cellphone was found with him, but this was never returned to the Plaintiffs, its contents were not described and its disposition is unknown.

(m)     Details from the medical examiner of the alleged causes of death of both Anh Thy and Phillip as a result of the Incident.

(n)     Exit interviews conducted with on-scene officers were brief, unsworn and claimed there was 'one shot fired' with no questions asked about the bomb explosion.

148.    Notably, the Records omit recordings and video records of Does 1-10 as visual imagery of the Incident shows them with body cameras and radios.

149.    The Records omitted any details of the bomb or the 287 Program.

150.    The Records omitted the video records from Defendant Huyen' home Security and video system at the home which are mentioned in the written reports.

151.    On February 12, 2019 and March 6, 2019, Mr. Lacrimosa placed the below Open Records Requests online or by email with Gwinnett and DeKalb:

> *Open records "On incident regarding (1-5-16)1870 Beyers Landing Drive, Buford Georgia home of Anh Thy and Huyen Nguyen. Looking for records on the police on scene, Swat team on scene, All access logs of LEO on scene, Command center information and personal, and other departments involved assisting, this incident involved Dekalb County Swat team as well. Any information regarding as well.*

*Interviews with police after the incident and any documentation of witnesses on scene, forensics of shooting."*

152.   On February 12, 2019, Gwinnet confirmed that it would provide its

Records of the Incident to Lacrimosa in three business days as required by law,

again without exception, as set forth in Gwinnett's below email to him:

**From:** openrecords@gwinnettcounty.com
**Sent:** Tuesday, February 12, 2019 3:38 PM
**To:** Policeopenrecords/Chief Info Line Open Records Information; Open Records
**Subject:** Online Open Records Request - Police [Confirmation #: 18580]

| | |
|---|---|
| **Confirmation #:** | 18580 |
| **Request Type:** | Request Type: Police<br>Specific Type of Record Requested: Police Reports<br>How you want to receive records? Pick up at Police Headquarters |
| **Requested Records:** | Incident regarding (1-5-16)1870 Beyers Landing Drive, Buford Georgia home of Anh Thy and Huyen Nguyen. Looking for records on the police on scene, Swat team on scene, All access logs of LEO on scene, Command center information and personal, and other departments involved assisting, this incident involved Dekalb County Swat team as well. Any information regarding as well. Interviews with police after the incident and any documentation of witnesses on scene, forensics of shooting. |
| **Records Delivery Method:** | Obtain copies of records |
| **Request Timeline:** | Within 3 business days |

| | |
|---|---|
| **Business Name:** | Savy Investigations & Security Inc |
| **Name:** | Marc r Lacrimosa |
| **Address:** | 217 Rainey Brooke dr |

| | winder GA 30680 |
|---|---|
| **Email:** | marc.lacrimosaXXX |
| **Phone:** | (770) 712-xxxx |
| **Comments:** | Any additional information needed please contact me |

153.   Mr. Lacrimosa followed up with Defendants Gwinnett and DeKalb in March 2019 regarding the Second Open Records Request of the Incident and an identical Request by Plaintiffs' counsel to DeKalb on March 26, 2019.

154.   On February 25, 2019, Gwinnett wrote to Mr. Lacrimosa, now admitting it illegally and inexplicably *withheld* Records of the Incident, such as the above ones, contrary to the Agrement, by a letter referenced and cited below:

February 25, 2019
Savy Investigations & Security, Inc.
Attn: Marc R. Lacrimosa, 217 Raineay Brooke Dr. Winder, GA 30680

Subject:   **Gwinnett County Police Records re: SWAT call out 1/5/16 Beyers Landing Drive**
Dear Mr. Lacrimosa,
The following is in response to your Open Records request, received by the Gwinnett County Police Department and regarding the above listed item or person. As required by law, it has been determined that:

   **[X] *Responsive records exist but are exempted [in whole][in part] from production by the following specific legal authority:***

   **[X] *The records are specifically exempted by law from being open to inspection by the general public; that law is***

   **[X] *O.C.G.A. 50-18-72(a) (3) Except as otherwise provided by law, records compiled for law enforcement or prosecution***

> ***purposes to the extent that production of such records is
> reasonably likely to disclose the identity of a confidential
> source, disclose confidential investigative or prosecution
> material which would endanger the life or physical safety of
> any person or persons, or disclose the existence of a
> confidential surveillance or investigation***.

Sincerely,  Sebrina H. Bateman, Open Records ASA II
Records Management Section **policeopenrecords@XXX**

155.   Gwinnett never disclosed to Plaintiffs it was withholding any Records
of the Incident after Plaintiffs settled their 2016 Action with Gwinnett in exchange
for and reliance on production of Records of the Incident, without exception.

156.   Gwinnett illegally withheld details of the bomb, 287 Program and
other Records of the Incident of the actual cause of the deaths of Anh and Phillip.

157.   Upon information, Gwinnett's alleged investigation of the Incident is
still open as it refused to produce the Records on that basis, tolling the statute of
limitations in this matter under O.C.G.A. § 9-3-99.

158.   On February 11, 2019, Mr. Lacrimosa again requested that DeKalb
provide its Open Records of the Incident as follows:

**From:** Marc Lacrimosa
**Sent:** Monday, February 11, 2019 8:59 AM
**To:** DKPD Open Records Unit **Subject:** Question

I need to pick up some information involving a case from 2 years ago. I am a
private investigator and looking into case. Where do I go or how.  I emailed
a few weeks ago and received no response.  Thanks Marc Lacrimosa

37

159.   On February 11, 2019, DeKalb responded to Lacrimosa as follows:

From: **DKPD Open Records Unit** Date: Mon, Feb 11, 2019, 10:12 AM
Subject: RE: Question To: Marc Lacrimosa, DKPD Open Records Unit <

Marc,

Good morning/afternoon. To submit your Open Record Request please see
the following information:
Please provide any/all information to facilitate the research involved such as
date, time/location, report number, name(s) of parties involved. Also, please
include your full return contact information to include mailing address and
phone number for response.
Should you choose to send your Open Records Request via USPS, the
physical mailing address is:
DeKalb County Police Department
ATTN: Open Record, 4th Floor, 1960 West Exchange Place, Tucker
Ga 30084. Or via email to:
For records pertaining to **911 related material(s)** you may email your
request directly to E911OpenRecords@dekalbcountyga.gov
For records pertaining to **supplemental reports, photos, case file,  body
cam/ dash cam** you may email your request
to DKPDOpenRecords@dekalbcountyga.gov
Additional open record information can be located at link below:

https://www.dekalbcountyga.gov/transparency-initiatives/open-records

We kindly ask that you select one method of delivery to avoid duplication in
processing.

Leslie Finch Paralegal *DeKalb County Police Department ~ Open Records*

160.   On February 13, 2019, DeKalb wrote Mr. Lacrimosa, denying it was

the custodian of Records of the Incident and would not produce any Records

allegedly protected by attorney-client, work product or otherwise legally exempt.

161.   It is unknown if DeKalb is illegally withholding Records of the Incident which are clearly in its possession as shown below.

162.   On or about March 19, 2019, Mr. Lacrimosa went to Gwinnett's headquarters to pick up Records of the Incident as requested by him, which Gwinnett had illegally omitted from its Records that it previously provided to the Plaintiffs.

163.   Mr. Lacrimosa was met in the lobby after an extended wait by a an African-American female, an employee of Gwinnett, who again illegally refused to provide the Records of the Incident requested by him without explanation.

164.   Upon information and belief, Gwinnett's above female employee was Rush-Williams, who illegally obstructed production of the Records to conceal the misconduct of the other Defendants regarding the Incident

165.   The misconduct of Rush-Williams regarding the Records was contrary to her prior representations and promises to Plaintiffs that all Records of the Incident were provided by her as part of the Settlement of the 2016 Action.

166.   On March 26, 2019, Plaintiffs' counsel conducted another Open Records Request regarding the Incident with DeKalb, which responded on March 27, 2019, quoted $350.00 to produce the Records and provided several written reports without cost on June 21, 2021, absent certain Records such as notes of internal investigations or video or audio records and personnel records.

167.   It remains unclear if DeKalb is still withholding any Records of the Incident per its letter, which did not provide Records about the bomb, the gun and other information omitted by Gwinnett in its Open Records production.

168.   Defendants conspired to deliberately, wrongfully and unlawfully detain, arrest and kill Anh Thy and Phillip, swatting them, or detaining them to deport Anh Thy under the 287 Program so Huyen could retain custody of Phillip.

169.   On or about 04/20/22, the Nguyen Defendants sold the Home and used those proceeds to purchase or contribute to the Second Home, to avoid any enforcement against the Home in the 2018 Action, to which they lacked a valid defense as they twice conceded when they offered a judgment to the Plaintiffs.

170.   Gwinnett an/d DeKalb illegally withheld their Records of the Incident to preclude an investigation of it including details of the bomb, even during the the 2018 Action, in which a motion to dismiss that action on these claims was denied on or about September 22, 2022 after which the Defendants again refused to provide the Records on 07/05/23.

171.   Defendants have knowledge of, consented to and ratified and are liable for each other's misconduct as agents and/or conspirators.

172.   All conditions precedent occurred, were fulfilled, waived or their fulfillment was futile and otherwise excused.

## COUNT I: 42 U.S.C. § 1983 DEPRIVATION OF CIVIL RIGHTS
## AS TO DEFENDANTS DOES 1-10, DEKALB AND GWINNETT

173.   Paragraphs 1-172 are incorporated by reference.

174.   An officer's use of deadly force is justified against a suspect if an officer had probable cause to believe a suspect poses a threat of serious physical harm or committed a crime involving actual or threatened serious harm.

175.   There was no basis for probable cause here because Anh Thy posed no immediate threat to the officers at the time of the Incident, was not committing a crime involving any harm, was not resisting arrest and instead barricaded himself and Phillip in the Home to avoid injury by the police.

175.   An officer's use of deadly force is justified if the officer reasonably believes its use was necessary to prevent the escape of a suspect.

176.   There is no basis for any such reasonable belief of escape as Anh Thy was not a fleeing felon, was instead trapped in and did not attempt to escape the Home during the Incident where he remained with Phillip within the bedroom, at the time to avoid injury from the police if they exited it.

177.   An officer's use of deadly force is justified if the officer provided a warning, if feasible, to the suspect about the possible use of such force.

178.   The record does not show that Does 1-10 or any officers of Gwinnett and DeKalb warned Anh Thy and Phillip they were storming the Home by a show of overwhelming force, opening fire and detonating the bomb during the Incident.

179.   This use of deadly force by Does 1-10 and other officers of Gwinnett and DeKalb at the Incident, was unjustified, constituting excessive force, resulting the deaths of Anh Thy and Phillip, who are liable for this misconduct. ***Dixon v. Ga. Dept. of Public Safety***, 135 F. Supp. 1362 (S.D. Ga. 2015) [denied summary judgment for SWAT officer on individual §1983 excessive force claims, who shot and killed barricaded suspect, who posted no immediate threat to safety of officers, was not actively resisting arrest or attempting to flee and had not made aggressive actions toward officers, for whom qualified immunity may be inapplicable]

180.   Gwinnett and Dekalb have a policy and practice of employing officers such as Does 1-10 as described above and a persistent and widespread practice of authorizing officers such as them to employ and cover up their unjustified use of excessive force with matters such as the use of the bomb and gunfire at the Incident, despite the law to the contrary, of which they were aware and deliberately indifferent, a custom, policy and practice, resulting in the Incident.

181.   There is no evidence that Anh Thy shot himself and Phillip or the alleged reason he did so or if Does 1-10 did so but the facts indicate Does 1-10 shot Anh Thy and Phillip or otherwise caused their deaths, who subjected them to many hours of pain and suffering and their unexplained deaths at the time of the Incident per the customs, policies and practices of Gwinnett and DeKalb.

182.   Gwinnett and DeKalb have a persistent, widespread practice of failing to train and supervise their police offices in the proper use of force in arresting a non-resistant suspect, instead escalating a simple matter into an armed standoff and of ratifying and condoning this unlawful and illegal conduct such their use of excessive force and deprivation of the civil rights of Anh Thy and Phillip.

183.   The above practices, policies and customs of Gwinnett and DeKalb in failing to supervise and train Does 1-10, caused the Incident, for which they are liable due to that excessive force, in violation of and disregard of the constitutional rights of Anh Thy and Phillip, who died as a result of their abuse and indifference to violations of the constitutional rights of others per their similar misconduct under **_Monell v. N.Y. Dept. of Social Serv_**. 436 U.S. 685 (1978) as follows:

(a)   **_Smith v. DeKalb County_**, LEXIS 197339 *52-53 (N.D. Ga. 2012) [denied motion to dismiss individual §1983 claims as to DeKalb officers and dismissed **_Monell_** claims without prejudice with leave to amend, **_Smith v. LePage_**,

LEXIS 192577 (N.D. Ga. 2015) , *aff'd* by **_Smith v. LePage_**, 834 F3d. 1285, 1295-1296 (11th Cir. 2016) [2010 excessive force case, affirmed denial of summary judgment on § 1983 claims against DeKalb officers who lacked probable cause to kill unarmed, barricaded suspect, who made no physical contact with or threatened them and instead tried to retreat, meaning deadly force was unjustified, who did not warn the suspect, *citing* **_Tennessee v. Garner,_** 471 U.S. 1,11-12 105 S.Ct. 1694, 1701 (1985) [police illegally shot retreating suspect in 1983 case as: "if the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape, and if, where  feasible, some warning has been given."]

(b)    **_Hall v. McGhee_**, 762 Fed. Appx. 837 (11th Cir. 2019) [2013 excessive force action against DeKalb officer who used excessive force to handcuff, beat and threaten to taser compliant suspect].

(c)    **_Ivey v. Smart_**, LEXIS 186775 * 15-16 (N.D. Ga. 2014) [2011 excessive force action against DeKalb officer who shot a handcuffed, non-resisting burglary suspect, was not entitled to use deadly force and judgment was denied].

(d)   ___*DeKalb v, Bailey, et al*___, 736 S.E. 121, 124-126 (Ga. App. 2012) [2010 § 1983 wrongful death action denied defense judgment on excessive force claim as officer was not threatened and lacked probable cause to shoot suspect].

(e)   ___*Bradley v. Benton*___, LEXIS 229431 (N.D. Ga. 2018) [2014 § 1983 wrongful action against DeKalb police who tasered and killed fleeing suspect, similar to prior 2010 and 2014 incidents based on a failure to train].

(f)   ___*McKinney v. DeKalb County*___, 997 F.2d 1440 (11th Cir. 1993) [1990 § 1983 excessive force action as to police who illegally shot barricaded suspect].

(g)   ___*Elby v. Dekalb et al*___, 1:14-cv-02092-LMM (N.D. Ga. 2014) [Dekalb had a "custom," if not a written policy, of quotas for arrests and compliance was "strongly encouraged" resulting in payment over $150,000 by DeKalb for its misconduct, a custom or policy adopted by Gwinnett upon information and belief.

184.   Upon information, Gwinnett and DeKalb used the Incident as a pretext to illegally confine, seize and deport Anh Thy under the 287 Program, in violation of the H.O. Program, as there was no basis for them and Does 1-10 to employ deadly force against him at that time, due to the lack of probable cause against him, his lack of escape attempts and the lack of warnings to him about the use of deadly force by the police at the time of the Incident.

185.   Gwinnett's current Sheriff admitted Gwinnett's 287 Program was its illegal, discriminatory practice, program and custom at the time of the Incident.

186.   Gwinnett since ended the 287 Program by the current Sheriff for these very reasons as the Sheriff also admitted.

187.   Does 1-10s lacked training, supervision, certification or authority to enforce the 287 Program at the time of the Incident, an illegal, actionable practice, policy or custom of Gwinnett and Dekalb under ***Monnell. Santos v. Frederick Board of Comm***, 725 F.3d. 451 (4th Cir. 2013) [deputies violated civil rights of suspect seized under 287 Program warrant, without authority] ***Lopez Flores, v. Douglas Cty***, LEXIS 94847 (D. Or. 2020) [illegal enforcement of 287 Program stated Monell claim under 42 U.S.C. 1983]

188.   The misconduct of Gwinnett, DeKalb and Does 1-10 violated the Constitutional rights of Anh Thy and Phillip, was grossly negligent, malicious, willful, wanton and reckless, which actually or proximately caused their injuries and wrongful deaths, requiring punitive damages to punish and deter.

188.   The misconduct of Gwinnett, Dekalb and Does 1-10 proximately and directly harmed Plaintiffs, who suffered general and special damages, such as past, present, and future medical and burial expenses, lost wages and earning capacity,

present and future pain and suffering and the wrongful deaths of Anh Thy and Phillip and may recover the full value of their lives per O.C.G.A. §§ 51-4-2 (a).

189.   Gwinnett, DeKalb and Does 1-10 acted in bad faith, were stubbornly litigious, forcing Plaintiffs to bring this action against them, who are entitled to fees and costs and pre-judgment interest under O.C.G.A. §§ 13-6-11 and 7-4-16.

190.   Under 42 U.S.C. §1983 *et seq* and applicable law, Plaintiffs demand judgment as to Defendants Does 1-10, Gwinnett and DeKalb for the harm to and wrongful deaths of Anh Thy and Phillip, based upon their excessive use of force in violation of the Fourth Amendment, including compensatory, consequential, special, nominal, punitive damages, attorney's fees, interest, costs and just relief.

## COUNT II: NEGLIGENCE, WRONGFUL DEATH AND FALSE SWEARING AGAINST THE NGUYENS

191.   Paragraphs 1-172 are incorporated by reference.

192.   The Nguyen Defendants had common law and statutory legal duties not to make false statements to Gwinnett and DeKalb about the Incident at the Home involving Anh Thy and Phillip to the police.

193.   The Nguyen Defendants knowingly and willfully falsely swore untrue statements to the police of the alleged circumstances at the Home regarding the Incident to swat Anh Thy and Phillip, in violation of O.C.G.A. § 16-10-71(a) after which they illegally sold the Home to avoid its loss in the 2018 Action.

194.   The misconduct of the Nguyen Defendants was grossly negligent, malicious, willful and wanton, actually or proximately causing the wrongful deaths of Anh Thy and Phillip, requiring punitive damages to punish and deter this misconduct, for which Plaintiffs incurred medical, burial and other damages, pain, suffering and loss of companionship of Anh Thy and Phillip.

195.   Furthermore, the Nguyen Defendants benefitted from and unjustly enriched themselves at Anh Thy's expense, including his contributions to the Home which they sought to conceal by his wrongful death, who wrongfully sold the Home to evade any enforcement against it in the 2018 Action and used those proceeds to purchase or contribute to the Second Home.

196.   The Nguyens then used the illegal proceeds of the Home to purchase other property, such as the Second Home, which is subject to enforcement in this action by an equitable lien or constructive trust.

197.   The Nguyens acted in bad faith, were stubbornly litigious, forcing Plaintiffs to bring this action against them, who are entitled to fees and costs and pre-judgment interest under O.C.G.A. §§ 13-6-11 and 7-4-16.

198.   Under O.C.G.A. § 51-1-1 *et seq* and applicable law, Plaintiffs demand judgment as to the Nguyen Defendants for their misconduct, compensatory, consequential, special, nominal, punitive and exemplary damages, fees, interest,

costs and an equitable lien or constructive trust on their property and assets, such as the Second Home as well as any property and assets purchased with the sale of Anh's automobile as detailed below and all just relief.

## COUNT III: CONVERSION AS TO THE NGUYENS, DOES 1-10 AND GWINNETT

199.   Paragraphs 1-172 are incorporated by reference.

200.   O.C.G.A. § 53-6-2 states:

Any person who, without authority of law, wrongfully intermeddles with or converts the personalty of a decedent whose estate is unrepresented shall be deemed an executor de son tort and as such shall be liable to the creditors and heirs or beneficiaries of the estate for double the value of the property so possessed and converted. Such executor shall not be allowed to set off any debt due the executor by the decedent or voluntarily paid by the executor out of the assets.

201.   Anh Thy's property remained at the home after the Incident, such as his Jaguar which the Nguyen Defendants illegally retained, without any legal basis, which again was legally owned by his parents, the Plaintiffs.

202.   Any Thy's property was illegally taken and retained by Gwinnett and Does 1-10 after his death, including his cellphone and other personal belongings, again legally owned by the Plaintiffs.

203.   The Nguyen Defendants intermeddled with and converted Anh Thy's Property after his death, who illegally disposed of his Jaguar, contrary to its ownership by Plaintiffs, his beneficiaries under applicable law.

49

204.   Defendant Does 1-10 converted Anh Thy's personal property, of which Plaintiffs, its legal owners, were deprived in violation of the Fifth and Fourteenth Amendments, for which they were never compensated.

205.   The misconduct of the Nguyen Defendants, Gwinnett and Does 1-10 was malicious, willful and wanton, and injured Plaintiffs, who are entitled to relief, including punitive damages to punish and penalize these Defendants for their misconduct and deter future misconduct.

206.   Under 42 U.S.C. §1983 and applicable law, Plaintiffs demand judgment as to the Nguyens, Gwinnett and Does 1-10 for their conversion, interference with and damage to Anh Thy's property, including compensatory, consequential, special, nominal and punitive damages, interest, costs and just relief, such as for double the value of the property.

## COUNT IV: OPEN RECORDS VIOLATIONS AS TO GWINNETT, DEKALB, THE NGUYENS AND RUSH-WILLIAMS

207.   Paragraphs 1-172 incorporated by reference.

208.   The Records of the Incident in the possession of Gwinnett and DeKalb are public records within the meaning of O.C.G.A. §50-18-70.

209.   The Records of the Incident in the Possession of Gwinnett and DeKalb are not exempt from disclosure under O.C.G.A. §§ 50-18-70 or 50-18-72.

210.   Gwinnett and DeKalb waived any exemptions from disclosure of the Records by sharing parts of them with third parties such as those shown in the above press releases including their use of the Incident as a 'learning experience.'

211.   The Records of the Incident were demanded by Plaintiffs from Gwinnett in 2016 due in part to the press releases which partially disclosed them.

212.   Gwinnett did not release complete Records of the Incident within three days after the Requests and failed to cite any valid objection to them, in violation of O.C.G.A. § 50-18-71 (b)(1)(A) which states as follows:

> In any instance in which an agency is required to or has decided to withhold all or part of a requested record, the agency shall notify the requester of the *specific legal authority* exempting the requested record or records from disclosure by *Code section, subsection, and paragraph* within a reasonable amount of time not to exceed three business days or in the event the search and retrieval of records is delayed pursuant to this subsection or pursuant to [O.C.G.A. § 50-18-71 (b) (1) (A)] then no later than 3 business days after the records have been retrieved."

213.   Gwinnett failed to produce the Records of the Incident to Plaintiffs, after agreeing to produce them under the Settlement through Rush-Williams.

214.   Instead, Gwinnett illegally withheld the Records in violation of the Act at the request of Rush Williams in 2018, who concealed this omission.

215.    Gwinnett also illegally withheld Records of the Incident in violation

of the Act at the request of the Nguyens during the 2018 Action, which Gwinnet again sought to conceal from the Plaintiffs.

216. This misconduct was confirmed when Gwinnett orally contacted the Nguyens on or about 02/08/23 during discovery in the 2018 Action, claiming it discovered certain Records of them as Plaintiffs learned only at that time.

217. The above Records of the Nguyen Defendants are allegedly "wholly unrelated to this lawsuit" and "of a confidential and extremely personal nature" and "irrelevant and immaterial" as detailed in their baseless Motion for Protective Order filed in the 2018 action solely to illegally obstruct their production.

218. Gwinnett, Rush Williams and the Nguyen Defendants violated the Act by their knowing and willful failure to produce the Records or their frustration of production of the Records in violation of O.C.G.A. § 50-18-74 (a), which imposes civil and criminal remedies for this misconduct.

219. Gwinnett violated the Act by its illegal refusals to provide the Records of the Incident under which it should be assessed penalties and fees under the Act.

220. Gwinnett also withheld Records of the Incident at the request of the Nguyen Defendants and Defendant Rush Williams, who should be assessed with civil penalties and attorney's fees under the Act for obstruction of the Records.

221. The above issues, conflicting statements and cover up by Defendants,

of their misconduct, mandate production of all Records of the Incident in order to investigate as Plaintiffs repeatedly requested.

222.   Per O.C.G.A. §50-18-70 *et seq*, 28 U.S.C. § 2201 *et seq*, Plaintiffs demand a declaratory judgment and decree, including an injunction, compelling Gwinnett and Dekalb to provide all Records of the Incident or confirm they did.

223.   Plaintiffs also demand judgment as to Gwinnett, Rush-Williams and the Nguyens for their violations of the Act, including fees, costs and all just relief, including as to DeKalb if it withheld any records.

## COUNT V: BREACH OF CONTRACT AND RELATED RELIEF AGAINST GWINNETT

224.   Paragraphs 1-172 are incorporated by reference.

225.   Plaintiffs sued Gwinnett in the 2016 Action to compel its production of all Records of the Incident as well as seeking their fees and costs.

226.   Gwinnett offered to settle the 2016 Action by allegedly providing all Records of the Incident and paying a sum to resolve it exchange for its dismissal per the June 22, 2016, email of Chief Assistant County Attorney, Duane Pritchard.

227.   Plaintiffs accepted Gwinnett's offer and agreed to dismiss the 2016 Action in exchange for Gwinnett providing all Records of the Incident and paying their fees and costs as further set forth in the December 7, 2017 Agreement.

228.   The correspondence of these parties as to the Records constitute a legally enforceable contract [The Settlement] which they fully ratified.

229.   Plaintiffs detrimentally relied upon the Settlement in dismissing the 2016 Action and not further pursuing their claims in that action.

230.   Gwinnett breached the Settlement by illegally withholding all Records of the Incident, failed to cure the breach, such as repeatedly refusing to release the remaining Records to Plaintiffs to conceal its misconduct regarding the Incident.

231.   Gwinnett selectively disclosed portions of the Records requested by by Plaintiffs in public statements on the Incident, waiving any expectation of confidentiality as to the Records for which Gwinnet has no immunity.

232.   Furthermore, Rush Wiliams and Attorney Murray-Weed, of Gwinnett, repeatedly and illegally disclosed the Social Security Number of Plaintiff's counsel referenced in the Agreement in the 2018 Action, as Gwinnett admitted in the 2018 Action, on or about April 11, 2022, stating in part that:

> *Plaintiffs have raised the issue that Gwinnett County has filed two exhibits where the tax identification number of Plaintiffs' counsel was not redacted. Gwinnett admits its inadvertent failure to redact said information.*

233.   Gwinnett illegally disclosed the social security number in connection

with its baseless defense of 'res-judicata' in the 2018 Action that the Settlement

somehow barred the 2018 Action, a defense rejected when its motion to dismiss

was denied in that matter in September 2022.

234.   These illegal actions of Gwinnett and Weed are documented in the

below correspondence which they wrote or failed to respond and conceded.

> From: **Paul W.** <pwersant@gmail.com>
> Date: Wed, May 10, 2023 at 4:22 PM
> Subject: Re: Ho v. Gwinnett County, et al.
> To: Angela Couch <angela.couch@carmitch.com>
> Cc: Mary Minter <mary.minter@carmitch.com>, paulgwer@yahoo.com
> <paulgwer@yahoo.com>, Beth Bedingfield
> <Beth.Bedingfield@carmitch.com>
>
> Ms. Couch - we first have Gwinnett's unexplained refusal to produce the
> Open Records to which it agreed SIX YEARS ago which is a CRIMINAL
> OFFENSE. And Gwinnett is now taking directions from Hall Booth on
> performing this legal duty and complying with its agreement with my clients
> to do so?  As represented by Tuwanda Rush Williams before Judge Ronnie
> Batchelor in 2017. That is on top of Gwinnett's ILLEGAL behavior in
> publishing my social security number -and operating the illegal immigration
> program at the heart of this case.
>
> I am starting to think that I should refer this matter to the Attorney General
> of Georgia and GBI and federal authorities for criminal prosecution.
> Sincerely,
>
> Paul Wersant
> Attorney (MD, DC, GA, FL)
> Telephone: 678-894-5876
> Email: pwersant@gmail.com

Admitted in federal courts in CO, IL, IN, MI, MO, OH, OK, TN, TX, WI
and  pro-hac-vice in AZ, CA, OR, MT, NY, VA

235.   The illegal disclosure of the social security number by Gwinnett and

Murray-Reed breached the Settlement, which did not provide for its disclosure.

236.   Gwinnett is subject to the Fair Business Practices Act, O.C.G.A. §

10-1-393.8 which prohibits a person, firm or corporation from the public posting or

display of an individual's social security number, its intentional communication to

and availability to the general public.

237.   Gwinnett violated the FBPA by illegally posting and displaying the

social security number of Plaintiff's counsel in the 2018 Action, which was not

required by and is actually prohibited by state law, namely O.C.G.A. § 9-11-7.1 (a)

(1) which permits disclose of only the last four digits of a social security number.

238.   Gwinnett is subject to Section 7 (b) of the Privacy Act, 5 U.S.C. §§

552a (b), as an agency, which prohibits disclosure of an individual's social security

number, contained in its system of records by any means of communication to

another person or agency except by the individual's written consent or based upon

twelve statutory exceptions. 5 U.S.C. §§ 552 a(b) (4) and (a)(5)

239.   Gwinnett violated the Privacy Act which (a) disclosed the social

security number Plaintiff's counsel without compliance with the Act, including his

lack of consent (b) deliberately, for improper purposes in the 2018 Action, its

56

baseless defense of res-judicata based on the Settlement, rejected in the 2018 Action, (c) causing Plaintiffs' counsel to suffer the adverse consequences of its illegal disclosure and publication to all opposing counsel and parties (d) who was damaged per 5 U.S.C. §§ 552 a(g) (1) (D), 552 a(g) (4), a(g)(1) (D) and a(g)(4(A).

240.  This misconduct violated O.C.G.A. § 10-1-399, the Fair Business Practices Act, which prohibits public posting or display of an individual's social security number. See O.C.G.A. § 9-11-7.1 (a) (1) which permits disclosure of only the last four digits of an individual social security number.

241.  Plaintiffs were damaged by Gwinnett's breach of the Settlement which prevented them from obtaining the Records and investigating the deaths of Anh Thy and Phillip, which delayed and impeded this action.

242.  Plaintiff's counsel was adversely affected and damaged by the illegal disclosure of his social security number by Gwinnett and Murray Reed for which notice was provided to them during the 2018 Action on or about January 3, 2023 to which they failed to respond, admitted and conceded.

243.  Plaintiff's counsel assigned his claims against Gwinnett and Murray Reed for their illegal disclosure of his social security number to Plaintiffs, a purely pecuniary injury, per O.C.G.A. §§ 44-12-22 and 44-12-24, who are entitled to

treble damages, fees and costs under O.C.G.A. §§ 10-1-399 and the Privacy Act, 5 U.S.C. §§ 552 a (b), enforceable by 42 U.S.C. §1983.

244.   Gwinnett acted in bad faith and was stubbornly litigious, forcing Plaintiffs to bring suit against it to enforce the Settlement and its misconduct, who are entitled to fees, costs and interest per O.C.G.A. §§ 13-6-11 and 7-4-16.

245.   Plaintiffs demand judgment for compensatory, consequential, special and nominal damages against Gwinnett for its breach of the Settlement, treble damages, costs and fees and other just relief for its related violations of the Fair Business Practices Act and the Privacy Act.

## COUNT VI: CONSPIRACY
## AS TO ALL DEFENDANTS

246.   Paragraphs 1-172 are incorporated.

247.   Defendants had a conspiracy, a common design to harm and kill Anh Thy and Phillip, who sought to conceal this matter involving their injuries and wrongful death from the authorities, each sharing their intent and knowledge to accomplish this goal by concerted action by unlawful purposes or lawful purposes by unlawful means: namely obstructing the truth of the Incident.

248.   Several Defendants committed overt acts to further the conspiracy, such as the Nguyens soliciting Gwinnet and Does 1-10 to unlawfully confine and kill Anh Thy and Phillip and then Gwinnett, Does 1-10, Rush Willaims and

DeKalb obstructed production of the Records, to illegally conceal the truth of the Incident from the authorities as required and to effect the other misconduct alleged here, for which they are all liable, as they adopted and ratified this misconduct.

249.   These Defendants made agreed to perform aspects of their illegal conspiracy in concert, just to avoid the legal consequences of their actions, including their unexplained and illegal obstruction of many Records of the Incident

250.   The misconduct of these Defendants was intentional, willful, wanton, malicious and oppressive, reckless and wanting in care, grossly negligent and consciously indifferent to its results, which they ratified for this unlawful purpose.

251.   Plaintiff are entitled to fees and costs per O.C.G.A. § 13-6-11 for their unnecessary trouble and expense to prosecute the Defendants, who acted in bad faith and were stubbornly litigious regarding their actions.

252.   Plaintiffs sustained physical and mental pain and suffering as a proximate or direct result of the conspiracy of these Defendants against whom Plaintiffs demand general and special damages, past, present, and future medical expenses, present and future pain, and suffering, punitive damages for this gross and willful misconduct, attorney's fees and costs and just relief.

253.   The individual Defendants are not minor(s), or adjudged incompetent, or in the military for the last 30 days or subject to protection per 50 U.S.C. § 3901.

## <u>CERTIFICATE OF COMPLIANCE</u>

Per L.R. 5.1(C), I certify this document was prepared per L.R. 5.1(B) in

Times Roman 14-point typeface.

Respectfully submitted this 25th day of August 2023.

By:    *<u>/s/Paul G. Wersant</u>*
           Paul G. Wersant
-          Georgia Bar No. 748341
           3245 Peachtree Parkway, Suite D-245
           Suwanee, Georgia 30024
           Telephone: (678) 894-5876
           Email: pwersant@gmail.com
           Attorney for Plaintiffs