# Exhibit C

**PREMIER PLUS ACCELERATE OPTION TRANSITION PAYMENT AWARD AGREEMENT**

This Premier Plus Accelerate Option Transition Payment Award Agreement ("Agreement") is entered into this 1st day of March, 2021, between UBS Financial Services Inc., a Delaware corporation, and its successors and/or assigns, including all affiliates and related entities ("UBSFS") and {first.name} {last.name} ("Employee").

      1.    <u>Transition Payments</u>:  Subject to the terms and conditions set forth in this Agreement, on the dates set forth below, UBSFS agrees to pay Employee transition payments in the amounts set forth immediately below less applicable withholdings for federal, state and local taxes and any offset for defaults, arrearages or past due amounts (and any/all penalties related thereto) owed to UBSFS, and all related entities as of the date of such payment(s):

        $191,603.03, on or before the last day of April, 2022

        $190,309.59, on or before the last day of April, 2023

        $189,016.16, on or before the last day of April, 2024

        $187,722.73, on or before the last day of April, 2025

        $186,429.29, on or before the last day of April, 2026

        $185,135.86, on or before the last day of April, 2027

        $183,842.42, on or before the last day of April, 2028

        $182,548.99, on or before the last day of April, 2029

        $181,255.55, on or before the last day of April, 2030

        $179,962.12, on or before the last day of April, 2031

        $178,668.69, on or before the last day of April, 2032

        $177,375.25, on or before the last day of April, 2033

        $176,081.82, on or before the last day of April, 2034

      2.    <u>Conditions For Payments</u>:  UBSFS shall have no obligation to make any transition payment hereunder if (i) Employee fails to enter and complete Premier Core (as Employee agreed to do in Employee's Premier Plus Commitment Agreement) for any reason whatsoever, except as set forth in Paragraphs 3 and 4 herein; or (ii) Employee's employment with UBSFS is terminated, either voluntarily or involuntarily, by Employee or UBSFS for any reason whatsoever, except as set forth in Paragraphs 3 and 4 herein. Further, UBSFS shall not be obligated to make any transition payment hereunder unless: (a) Employee has, at all times since the date of this Agreement, remained in the full-time, active employment of UBSFS;  (b) Employee has obtained and maintained in full force and effect all licenses and registrations from the Financial Industry Regulatory Authority ("FINRA"), securities exchanges, state securities commissions and other regulatory bodies as UBSFS shall determine is necessary or appropriate in order for Employee to conduct securities or commodities transactions or otherwise perform the functions for which he/she is employed; (c) as of the last day of the month prior to each month set forth in Paragraph 1 has generated Trailing 12 months gross production ("T-12 Production") of at least 30% of the dollar amount of Employee's prior calendar year T-12 Production (except that this

requirement shall not apply if the Employee has entered into the Premier Core Program as a Legacy Financial Advisor); (d) at UBSFS's option, and subject to applicable law, has opened and maintained a Resource Management Account ("RMA") at UBSFS, and authorized UBSFS to deposit all transition payments that he or she may be entitled to pursuant to this Agreement into the RMA and further authorizes UBSFS to offset any outstanding obligations to UBSFS from Employee's RMA; and (e) is current on all other outstanding financial obligations to UBSFS and all related entities (except that UBSFS shall have the right to set off any transition payment by the dollar amount of any defaults, arrearages, penalties or otherwise past due amounts owed to UBSFS and all related entities on any loan or other financial obligation as of the payment date for such transition payment).  For purposes of any applicable wage and hour laws, rules or regulations, Employee hereby acknowledges that the transition payments are not earned by the Employee until any amounts owed to UBSFS, or any related entity, by the Employee are paid and Employee fully complies with all provisions of this Agreement.  Employee further acknowledges that he or she will not be entitled to any part-year or pro-rata transition payment if his or her employment terminates prior to the date the next transition payment is due to be made by UBSFS.

Further, Employee's right to receive the transition payments is also subject to Employee not doing, on or before the payment dates set forth in this Agreement, any of the following, which, in the opinion of UBSFS, is harmful to the interests of UBSFS, UBS Group AG or any of their subsidiaries or affiliates (collectively, 'UBS Group'):

- Employee's performance is deemed to contribute substantially to the UBS Group or part of the UBS Group incurring significant financial losses; or

- Employee's performance is deemed to contribute substantially to a significant downward restatement of any published results of the UBS Group or any business division of the UBS Group; or

- Employee engages in conduct and/or fails to discharge Employee's supervisory or managerial responsibilities which contribute to an outcome that is detrimental to the UBS Group or part of the UBS Group, or contributes to significant reputational harm to the UBS Group or any part of the UBS Group.  Such conduct and/or failure would include, but not be limited to, any material violation of applicable legal and regulatory requirements or internal policies and procedures (including, without limitation, those policies in respect of risk management, compliance, discipline and any applicable supervisory practices),

in which event the amount of Employee's transition payment(s) shall be reduced by such amount as UBSFS shall in its absolute discretion determine, taking account of any such harmful act(s) and/or omission(s), the circumstances surrounding them, and their consequences and/or potential consequences for Employee and/or any UBS Group entity.

Please note that UBSFS retains the right to amend the terms of this Agreement in the future if necessary to comply with legal or regulatory requirements or any changes in

applicable law, rules or regulations or in the interpretation thereof by any regulator, agency or tribunal of competent jurisdiction.

3. <u>Death and Total Disability</u>: If Employee shall die or incur a Total Disability (as hereinafter defined) while a full-time employee of UBSFS, then UBSFS shall make a discounted accelerated lump sum payment of the remaining transition payments, if any, as of the date of the Employee's death or Total Disability. Such lump sum payment shall be discounted by a rate equal to the mid-term AFR in effect as of the date of this Agreement multiplied by 120%. Payment shall be subject to all applicable withholdings and shall be remitted to Employee (in the case of Total Disability) or Employee's estate (in the case of death) or, at UBSFS's option, applied to any financial obligation Employee or his/her estate has to UBSFS, or any related entity, as soon as administratively feasible following the date the Employee dies or incurs a Total Disability, but in no event later than March 15 of the calendar year following the calendar year in which such event occurs. Solely for the purposes of this Agreement, "Total Disability" means Employee has been determined to be totally disabled by the U.S. Social Security Administration.

4. <u>Termination Without Cause</u>: If UBSFS terminates Employee's employment other than for Cause (as hereinafter defined), then UBSFS shall make a discounted accelerated lump sum payment of the remaining transition payments, if any, as of the date of the Employee's termination. Such lump sum payment shall be discounted by a rate equal to the mid-term AFR in effect as of the date of this Agreement multiplied by 120%. Payment shall be subject to all applicable withholdings and shall be remitted to Employee or, at UBSFS's option, applied to any financial obligation Employee has to UBSFS, or any related entity, as soon as administratively feasible following the date of such termination, but in no event later than March 15 of the calendar year following the calendar year in which the termination occurs.

Solely for the purposes of this Agreement, "Cause" shall be defined as: (i) a material violation by the Employee of this Agreement or UBSFS's written rules, regulations, policies (including without limitation the Code of Conduct, Employee Handbook and Compliance Bulletins), practices, and/or procedures, in effect during the course of Employee's employment; (ii) the material violation by the Employee of the rules or regulations of a regulatory or self-regulatory organization of which UBSFS is a member; (iii) criminal conduct, dishonest conduct (whether such conduct takes place during Employee's period of employment or took place by way of misrepresentations before employment), immoral conduct, or unethical conduct, by the Employee, in the reasonable opinion of UBSFS; (iv) willful or gross neglect of duties by the Employee; or (v) Employee's failure to fulfill or meet any financial obligations that exist between Employee and UBSFS or any related entity for a period of four consecutive months. UBSFS agrees to make all determinations regarding the existence of "Cause" in good faith.

For purposes of Paragraphs 2, 3 and 4 of this Agreement, no termination of employment shall be deemed to have occurred in the event that UBSFS assigns this Agreement to any entity that continues to employ, or offers to continue to employ, Employee after the assignment

5.   <u>Binding Mutual Arbitration</u>.  UBSFS values each of its employees and fosters good relations with, and among, all of its employees.  UBSFS recognizes, however, that disagreements occasionally occur between an individual employee and UBSFS, or between employees in a context that involves UBSFS.  UBSFS believes that the resolution of such disagreements is best accomplished by internal dispute resolution and, where that fails, by external arbitration.  For these reasons, UBSFS has adopted an Employment Arbitration Agreement ("Arbitration Agreement").  The Arbitration Agreement is attached to this Agreement as Exhibit A.  By signing this Agreement, Employee acknowledges that Employee has received and read to the Arbitration Agreement and that Employee agrees to all of its terms.

6.   <u>Confidential Information</u>:  Employee may not directly or indirectly use, maintain, take or disclose any Confidential Information, except (i) in the course of carrying out Employee's duties for UBSFS during Employee's employment, or (ii) as otherwise required by law or governmental agency with jurisdiction, or (iii) as otherwise permitted by this Agreement.  "Confidential information" as used herein includes but is not limited to any nonpublic information concerning UBS Group, its financial data, strategic business plans, products and product development, services, client relationships and prospective client relationships, client lists and contact information, client information (including but not limited to clients' past and present financial conditions, investment practices, preferences, activities, objectives and plans and other client data Employee obtained while in UBSFS' employ), marketing plans, and any other trade secrets or confidential or proprietary information.

Please note that Employee must provide immediate written notice to UBSFS (Attention: General Counsel's Office, 1000 Harbor Boulevard, 8th Floor, Weehawken, New Jersey 07086) of any disclosure requirement by a court or government agency in order to allow UBSFS an opportunity to respond to such a request.  Notwithstanding the foregoing, nothing in this Agreement or any other agreement or document prohibits Employee from voluntarily communicating, without notice to or approval by UBSFS, with any government agency or self-regulatory organization ('SRO') about a potential violation of a law or regulation or SRO regulation.  With respect to Employee's obligations to maintain in confidence any and all confidential and/or trade secret information of UBSFS, the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1833(b), provides Employee with immunity from criminal or civil liability under any federal or state trade secret law for Employee's disclosure of a trade secret that is made in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, provided that it is disclosed solely for the purpose of reporting or investigating a suspected violation of law, or is made in a complaint or other document filed in a lawsuit or other proceeding and the document is filed under seal so that it is not disclosed to the public.

7.   <u>Other Agreements</u>:  Employee acknowledges that Employee may have entered, or may in the future enter, into other agreements with UBSFS or any of its related entities that contain non-competition, non-solicitation and/or confidentiality obligations. Employee understands and agrees that the non-competition, non-solicitation and confidentiality obligations restrictions in this Agreement are in addition to, and not in lieu of, equity plan documents or any agreements between Employee and UBSFS or any of its

related entities, all of which will remain in full force and effect in accordance with their terms. If there is a conflict between a provision in this Agreement and a provision in any other agreement between Employee and UBSFS (or any of its related entities), the provision that gives the greater protection to UBSFS (or any of its related entities) shall govern.

8.    Remedies:   In the event that any of the provisions contained in the Confidential Information paragraph or paragraph 14 of this Agreement is breached by Employee, Employee understands that Employee will be liable to UBSFS for any damage and/or injury, including but not limited to reasonable attorney's fees, incurred to enforce the provisions of this Agreement. Employee also specifically agrees that, in the event of such breach, damages alone will be an inadequate remedy and UBSFS will, in addition to damages for breach, be entitled to injunctive or other equitable relief against Employee to enforce the provisions of such paragraphs.

EMPLOYEE FURTHER EXPRESSLY CONSENTS TO THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER OR A PRELIMINARY INJUNCTION BY ANY COURT OR ARBITRATION PANEL WITH JURISDICTION OVER EMPLOYEE TO PROHIBIT THE BREACH OF ANY PROVISION OF THIS AGREEMENT, OR TO MAINTAIN THE STATUS QUO PENDING THE OUTCOME OF ANY ARBITRATION PROCEEDING THAT MAY BE INITIATED; AND, FURTHER, THAT THE ISSUE OF TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF MAY BE DECIDED BY A COURT AND NOT BY AN ARBITRATION PANEL SHOULD UBSFS IN ITS DISCRETION ELECT TO SEEK SUCH RELIEF.

9.    Assignment:  This Agreement may be assigned by UBSFS and the benefits and obligations hereof shall inure to UBSFS's successors and assigns (and all references herein to UBSFS shall together be deemed to refer to such successors or assigns as the case may be).

10.    Terms And Modifications:  This Agreement contains all of the terms of the agreement between the parties hereto relating to the subject matter hereof and may not be amended, modified or discharged, nor may any provision hereof be waived, orally, by course of dealing or otherwise, unless such amendment, modification, discharge or waiver shall be in writing and duly executed by UBSFS. The non-exercise by UBSFS of any right or remedy in any particular instance shall not constitute a waiver thereof in that or any other instance. Any provision hereof found to be illegal, invalid or unenforceable for any reason whatsoever shall not affect the validity, legality or enforceability of the remainder hereof.

11.    Not An Employment Contract:   Employee expressly acknowledges that his/her employment with UBSFS is "at will" and that this Agreement is not an employment contract or agreement to employ Employee for a specified period of time or a promise of continued employment with UBSFS for any period whatsoever. Accordingly, Employee acknowledges that his/her employment may be terminated for any reason by Employee or UBSFS and without notice by UBSFS.

12.    Governing Law:  Except as may be otherwise expressly provided for in this Agreement, this Agreement shall be governed by and construed and enforced in

accordance with the laws of the state of New York without regard to principles of conflicts of laws.  This Agreement is not intended to be subject to the Employee Retirement Income Security Act, as amended, and the regulations and guidance thereunder ('ERISA') and shall be construed and administered accordingly.   To the extent that any provision of this Agreement could be read in a manner that would subject this Agreement to ERISA, such provision shall be read and applied in a manner that causes this Agreement not to be subject to ERISA.

13.   <u>Repayment of Gross Transition Payments</u>.  Employee understands and agrees that UBSFS has entered into this Agreement because of Employee's execution of his/her Premier Plus Commitment Agreement, and Employee's commitment to enter and complete Premier Core (as set forth in Employee's Premier Plus Commitment Agreement).   As a result, Employee understands and agrees that, in addition to any other rights and remedies UBSFS may have under this Agreement or otherwise, Employee must immediately repay to UBSFS the gross amount of all payments UBSFS made to Employee under this Agreement if:

a.   Employee's employment terminates for any reason (except because of Death, Total Disability or Termination without Cause, as set forth in Paragraphs 3 and 4 above) prior to the Premier Core Start Date (as that term is defined in Employee's Premier Plus Commitment Agreement), in which case such repayment is due immediately upon the termination date; or

b.   Employee fails to enter and complete the Premier Core as he/she agreed to do so in Employee's Premier Plus Commitment Agreement for any reason (except for a failure because of Death, Total Disability or Termination without Cause, as set forth in Paragraphs 3 and 4 above), in which case such repayment is due immediately upon the date such failure occurs; or

c.   Employee breaches Paragraph 14 below, in which case such repayment is due immediately upon the date of such breach. Employee acknowledges and agrees that this remedy is in addition to and not in lieu of any other remedies UBSFS may have for the breach of Paragraph 14 or any other similar restrictions, including, without limitation, injunctive relief.

Employee acknowledges and agrees that any transition payments made under this Agreement are not earned by Employee until all conditions in this Agreement are satisfied, including, without limitation, entering and completing Premier Core as he/she agreed to do so in Employee's Premier Plus Commitment Agreement (except on account of Death, Total Disability or Termination without Cause, as set forth in Paragraphs 3 and 4 above) and complying with the provisions of paragraph 14 below.

14.   <u>Non-Solicitation and Non-Competition</u>.

6

A. <u>Non-Competition</u>.  Employee agrees that, during the Restricted Period, Employee shall not, directly or indirectly obtain or hold a Competitive Position with a Competitor or own greater than a 2% interest in any Competitor.

B. <u>Non-Solicitation</u>.   During the Restricted Period, Employee may not directly or indirectly for Employee or for any third party, solicit, influence, induce, recruit or cause any employee of any UBS Group entity to terminate his or her employment with the UBS Group for the purpose of joining, associating or becoming employed with any business wherever located, with which or of which Employee is or anticipates becoming an employee, owner, partner, investor, member, agent, director, consultant, independent contractor or otherwise associated in any way whatsoever.  Employee also agrees that during the Restricted Period Employee will not directly or indirectly solicit or interfere with any client who maintains or maintained an Premier Account (i.e., an Account transitioned to a Receiving Financial Advisor under the Premier Core Program) or any of the clients or client relationships of any UBS Group entity that Employee either performed work for, supervised or actively solicited work from during the twelve months prior to the date on which Employee's employment terminates or whose name became known to Employee during Employee's employment.  Employee's agreement 'not to solicit' includes but is not limited to Employee's agreement not to initiate, whether directly or indirectly, any contact or communication of any kind whatsoever, for the purpose of inviting, encouraging or requesting a client or that may have the effect of inviting, encouraging or requesting a client to transfer any account from the UBS Group to Employee or any other entity or person; to open a new account with Employee or any other entity or person; or to discontinue the client's business relationship with the UBS Group.

C. For purposes of this Agreement, the following definitions shall apply:

      i.    "Restricted Period" means the period during which Employee is employed by UBSFS until one year from the last to occur of the following: (i) the date on which Employee's employment terminates with UBSFS for any reason whatsoever and (ii) the Scheduled Inactive Phase End Date as defined in Employee's Premier Plus Commitment Agreement.

      ii.    "Competitor" means any company, firm, partnership, corporation or any other business organization that engages in the same trade or business as UBSFS, including, but not limited to: (i) the sale or trading of securities for the accounts of corporate or individual clients; (ii) proprietary trading, including risk arbitrage; or (iii) asset management.

      iii.    "Competitive Position" means any employment or service with a Competitor in which Employee will have duties to or will be expected to perform services for such Competitor that: (i) are the same or similar to those services performed while an employee of UBSFS, including, but not limited to the sale or trading of securities for the accounts of corporate or individual clients, proprietary trading (including risk arbitrage) or asset management or (ii) involve servicing (directly or indirectly) or having contact with clients of UBS Group whom Employee

serviced or whose names became known to Employee while in the employ of UBSFS.

      iv.   "UBS Group" includes UBS Group AG and all of its, subsidiaries and affiliates, without limitation, UBS AG, UBS Americas Inc., UBS Bank USA, UBS Financial Services Inc., UBS Financial Services Incorporated of Puerto Rico, UBS Securities LLC, UBS Hedge Fund Solutions, UBS Asset Management, Inc., UBS Realty Investors, LLC, UBS Agrivest, LLC, UBS O'Connor, LLC, UBS Services LLC, UBS Bank USA, UBS BUSA Services, LLC, UBS USA, LLC, UBS Altern & Quant Investment LLC, UBS Services LLC, and UBS Business Solutions US LLC.

D.  The activities described above in this Paragraph 14 shall be prohibited regardless of whether undertaken by Employee in an individual or representative capacity, and regardless of whether performed for Employee's own account or for the account of another individual, partnership, firm, corporation or other business organization (other than UBS Group).

E.  Employee acknowledges and agrees that the UBS Group is global and includes offices throughout the world.  Employee therefore acknowledges and agrees that the restrictions in this Paragraph 14 are necessary for the protection of the business and goodwill of the UBS Group, are not overly broad, and that they are reasonable and fair.  Employee further acknowledges and agrees that to the extent Employee is in breach of any of these restrictive covenants, the length of the restriction will be increased (or if such finding is made after the restriction has expired, reinstated) for such a period of time as to ensure that UBS Group has received the benefit of the full period of the restriction.

F.  Employee understands that the terms of this Paragraph 14 are material to the UBS Group and, therefore, if a court or arbitration panel of competent jurisdiction rules that Employee has breached the terms of this Paragraph 14, Employee agrees that damages in the event of breach of this Paragraph 14 would not be possible to ascertain.  Therefore, Employee also agrees that in addition to and without limiting any other remedy or right the UBS Group may have, it shall have a right to an injunction or other equitable relief enjoining any such breach or prospective breach. The existence of this right shall not limit any other rights and remedies at law or in equity.  The UBS Group shall not be required to post any bond in connection with the foregoing. For the avoidance of doubt, the restrictions set forth herein are in addition to and not in lieu of any post-employment restrictions set forth in any plan rules governing awards, and nothing in this Agreement limits the terms and conditions of the applicable plan rules.

G.  Employee agrees that if any restriction set forth in this Paragraph 14 is found by any court or arbitrator of competent jurisdiction to be unenforceable because it extends for too long a period of time or over too great a range of activities or in too broad a geographic area, it shall be interpreted to extend only over the maximum period of time, range of activities or geographic areas to which it may be enforceable.

IN WITNESS WHEREOF, Employee has executed this Agreement as of the date set forth above

EMPLOYEE: Leslie Lauer

*[signature]*

UBS Financial Services Inc.

By: 4/5/21

**BY ENTERING INTO THIS AGREEMENT THROUGH THE ABOVE SIGNATURE, EMPLOYEE AGREES TO BE BOUND BY THE ARBITRATION AGREEMENT, WHICH IS ATTACHED TO THIS AGREEMENT AS EXHIBIT A. THE ARBITRATION AGREEMENT REQUIRES THAT BOTH UBS (AS DEFINED IN THE ARBITRATION AGREEMENT) AND EMPLOYEE RESOLVE ANY COVERED CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT), IN FINAL AND BINDING ARBITRATION ON A NON-CLASS, NON-COLLECTIVE, AND NON-REPRESENTATIVE ACTION BASIS. AS NOTED IN THE ARBITRATION AGREEMENT, EMPLOYEE AND UBS ARE GIVING UP THEIR RIGHTS TO A JURY TRIAL, IN ANY FORUM, OF COVERED CLAIMS.**

## *Exhibit A*
## *Employment Arbitration Agreement And Class, Collective and Representative Action Waivers*

### *Statement of Intent*

UBS[1] values each of its employees and fosters good relations with, and among, all of its employees.  UBS recognizes, however, that disagreements occasionally occur between an individual employee and UBS, or between employees in a context that involves UBS.

UBS believes that the resolution of such disagreements is best accomplished by internal dispute resolution and, where that fails, by external arbitration.  For these reasons, UBS has adopted this Employment Arbitration Agreement ("Arbitration Agreement"), which is applicable to all employment-related disputes whether initiated by you or by UBS, as further described below.  Arbitration shall be conducted either under the auspices and rules of the Financial Industry Regulatory Authority, Inc. ("FINRA"), where applicable, or otherwise of JAMS as follows:

### *Arbitration Agreement*

a. **Binding Mutual Arbitration**.  You and UBS agree that any Covered Claims (defined below) will be resolved by final and binding arbitration as set forth in this Arbitration Agreement.  This Arbitration Agreement shall be governed by and interpreted in accordance with the Federal Arbitration Act ("FAA") and the law of the State of New York to the extent New York law is not inconsistent with the FAA and without regard to conflicts of law principles.  This Arbitration Agreement applies to both you and UBS and makes arbitration the required and exclusive forum for the resolution of all Covered Claims (defined below) between you and UBS.  Therefore, you and UBS are giving up your and its right to a jury trial, in any forum, of Covered Claims.

b. **Covered Claims**.  Except for the Excluded Claims (defined below), and to the fullest extent permitted by law, Covered Claims include any and all claims or disputes between you and UBS, or its parents, subsidiaries, affiliates, partners, predecessors, and successor corporations and business entities or any entity of the UBS Group, and its and their respective officers, directors, employees, and agents, including but not limited to all past, present or future claims based on, arising out of or which arose out of, or in any way relating to your prospective or actual employment, hiring, compensation, benefits or terms and conditions of employment with UBS or any of its current, former or future parents, subsidiaries, affiliates, partners, predecessors, or successor or affiliated or related corporations or business entities (including, without limitation, any entity of the UBS Group) or the termination thereof, including but not limited to contract, tort, defamation, breach of fiduciary duty and other common law claims, wage and hour claims, statutory discrimination, harassment and retaliation claims, and any claims arising under or relating to any federal, state or local constitution, statute or regulation, including, without limitation, the Fair Labor Standards Act ("FLSA"), Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), the Older Workers Benefit Protection Act ("OWBPA"), the Employee Retirement Income Security Act ("ERISA"), the Worker Adjustment and Retraining Notification Act ("WARN"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Family and Medical Leave Act ("FMLA"), the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), and all amendments thereto, and any and all other federal, state or local wage and hour, compensation, benefits, or

---

[1] For purposes of this Agreement, "UBS" includes UBS Group AG and all of its, subsidiaries and affiliates, without limitation, UBS AG, UBS Americas Inc., UBS Bank USA, UBS Financial Services Inc., UBS Financial Services Incorporated of Puerto Rico, UBS Securities LLC, UBS Hedge Fund Solutions, UBS Asset Management, Inc., UBS Realty Investors, LLC, UBS Agrivest, LLC, UBS O'Connor, LLC, UBS Services LLC, UBS Bank USA, UBS BUSA Services, LLC, UBS USA, LLC, UBS Altern & Quant Investment LLC, UBS Services LLC, and UBS Business Solutions US LLC.

discrimination law, and any and all other federal, state, or local constitutional, statutory, regulatory, or common law claims or causes of action now or hereafter recognized. Except as provided herein, this Arbitration Agreement applies to both existing and future claims, including any claims based on conduct that occurred before this Arbitration Agreement.

c.   **Excluded Claims**.  The following claims and disputes are not subject to this Arbitration Agreement: (i) applications by either party for temporary or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration; (ii) claims for workers' compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation benefits; (iii) claims for unemployment compensation benefits; (iv) claims under the National Labor Relations Act, as amended, within the exclusive jurisdiction of the National Labor Relations Board; and (v) any claim that is expressly precluded from arbitration by a federal statute.  Nothing in this Arbitration Agreement shall prohibit you from filing a charge or complaint or participating in an investigation resulting from the filing of a charge or complaint with the U.S. Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), the U.S. Department of Labor ("DOL"), the Occupational Safety and Health Administration ("OSHA"), or any other federal, state, or local administrative agency.  You also have the right to challenge the validity of the terms and conditions of this Arbitration Agreement on any grounds that may exist in law and equity, and UBS shall not discipline, discharge, or engage in any retaliatory actions against you in the event you choose to do so or engage in other protected legal activity.  UBS, however, reserves the right to enforce the terms and conditions of this Arbitration Agreement in any appropriate forum.

d.   **CLASS, COLLECTIVE, AND REPRESENTATIVE ACTION WAIVERS.  TO THE MAXIMUM EXTENT PERMITTED BY LAW, YOU AND UBS AGREE THAT ARBITRATION ON A NON-CLASS, NON-COLLECTIVE AND NON-REPRESENTATIVE ACTION BASIS PURSUANT TO THIS ARBITRATION AGREEMENT IS THE EXCLUSIVE PROCESS FOR RESOLVING ANY COVERED CLAIMS THAT MIGHT OTHERWISE BE BROUGHT ON A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION BASIS.  ACCORDINGLY, YOU MAY NOT PARTICIPATE AS A CLASS OR COLLECTIVE ACTION REPRESENTATIVE OR AS A MEMBER OF ANY CLASS, COLLECTIVE OR REPRESENTATIVE ACTION, AND WILL NOT BE ENTITLED TO ANY RECOVERY FROM A CLASS, COLLECTIVE OR REPRESENTATIVE ACTION IN ANY FORUM RELATING TO ANY COVERED CLAIMS.**  An arbitrator appointed under the rules referenced by this Arbitration Agreement shall not conduct a class, collective or representative action arbitration and shall not allow you to serve as a representative of others in an arbitration of Covered Claims conducted under this Arbitration Agreement.   You further agree that if you are included within any class action, collective action or representative action in court or in arbitration involving any such Covered Claims, you will take all steps necessary to opt-out of the action or refrain from opting in, as the case may be.

Nothing in this section shall preclude you from pursuing or participating in a class, collective or representative action in court where your claim is based solely on your status as a customer or an investor and does not arise out of or in any way relate to your employment relationship with UBS or any subsidiary or affiliate of UBS Group AG (should you eventually become employed by one of those entities).

Any disputes concerning the validity or enforceability of the Class, Collective and Representative Action Waivers contained in this Arbitration Agreement shall be governed by and determined under and in accordance with the FAA, and shall be decided only by a court of competent jurisdiction, not by an arbitrator.  To the extent any Covered Claims are not eligible for arbitration or otherwise are excluded from or not subject to arbitration, for any reason, the Class, Collective and Representative Action Waivers set forth in this Arbitration Agreement remains valid and enforceable.

e.   **Selection and Rules**.  Except as specified herein, the applicable arbitration rules will be the rules of the selected arbitration forum as indicated below, or any successor rules or, if none exist, the rules most applicable to employment claims and disputes and, if the forum no longer exists, the successor forum.

11

**i. Forum: FINRA & JAMS.**

**Registered Employees:** Except as specified herein, if you are a registered employee or have executed a Uniform Application for Securities Industry Registration or Transfer (Form U-4) and/or hold a securities license with a self-regulatory organization ("registered employee"), any arbitration of a Covered Claim that is properly subject to the jurisdiction of FINRA must be conducted under the auspices and rules of FINRA in accordance with the FINRA Code of Arbitration Procedure for Industry Disputes ("FINRA Arbitration Rules").[2] If a Covered Claim of a registered employee is not eligible for arbitration before FINRA or is otherwise excluded from or not subject to arbitration before FINRA, then such Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS ("JAMS Arbitration.") In addition, in lieu of FINRA arbitration, a registered employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS. Any JAMS Arbitration shall be conducted in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Arbitration Rules"),[3] except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.

**Non-Registered Employees:** Except as specified herein, any arbitration of a Covered Claim of a non-registered employee, or of a registered employee that is not otherwise eligible for arbitration before FINRA (as indicated above), will be conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Arbitration Rules, except as specified herein, and shall be conducted before a single arbitrator unless all parties to the arbitration agree otherwise in writing.

Notwithstanding any language in this Arbitration Agreement, to the extent any of the terms, conditions or requirements of this Arbitration Agreement conflict with the FINRA Arbitration Rules or JAMS Arbitration Rules, the terms, conditions or requirements of this Arbitration Agreement shall govern.

**ii. Hearing Location.**

Arbitration shall be held in the city, county, town or municipality in which you worked at the time the claim arose or, if not possible, in the city, county, town or municipality closest to your principal place of employment at the time the claim arose where the arbitration can be held, unless all parties to the arbitration agree in writing to a different location for the arbitration. If your current or last principal place of employment with UBS is outside of the U.S. or Puerto Rico, the arbitration shall be held in New York, New York.

**iii. Awards.**

Arbitrators are required to issue a written award and, subject to the parties' right to appeal or seek vacatur under applicable law, their awards shall be final and binding, and any judgment or award issued by an arbitrator may be entered in any court of competent jurisdiction. No arbitration award or decision will have any preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the arbitration.

**iv. Remedies.**

You and UBS agree that the arbitrator(s) is authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction, including attorneys' fees and costs.

f.   **Additional Provisions Applicable to Arbitration of Statutory Claims and Counterclaims.**
     Subject to any applicable fee-shifting provisions, if you initiate arbitration of statutory claims with

---

[2] Information about FINRA, including its FINRA Arbitration Rules, can be found at www.finra.org.
[3] Information about JAMS, including its JAMS Arbitration Rules, can be found at www.jamsadr.com.

FINRA or JAMS or assert any statutory claims as counterclaims, you shall be responsible for the filing fee required to initiate arbitration of such claims up to the amount of the filing fee you would have incurred had you filed such claims in federal district court, and UBS shall be responsible for all additional arbitration filing fees, forum fees, and other fees and costs assessed in any such arbitration.

g.   **Additional Provisions Applicable to Arbitration Before JAMS**.  In any arbitration before JAMS, the parties may file and the arbitrator shall hear and decide at any point in the proceedings any motion permitted by the Federal Rules of Civil Procedure, including but not limited to motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine.

h.   **Pending Class or Collective Actions**.  Nothing set forth in this Arbitration Agreement applies to any Covered Claims in a class or collective action for which you are a putative member of and that is pending and conditionally certified or certified on the date you enter into this Arbitration Agreement, and any such Covered Claims shall be governed by the agreement(s) between you and UBS in effect at the time such Covered Claims were filed.

## *At-Will Employment*

Employment with UBS is a voluntary relationship for no definite period of time, and nothing in this Arbitration Agreement constitutes an express or implied contract of employment for any definite period of time.  This Arbitration Agreement does not constitute, nor should it be construed so as to constitute, a waiver by UBS of its rights under the "employment-at-will" doctrine, nor does it afford a prospective, current or former employee any rights or remedies not otherwise available under applicable law.

## *Consideration*

Your acceptance of employment with UBS, continued employment with UBS, receipt of compensation and/or benefits from UBS, and/or eligibility and consideration for merit increases, incentive, retention, and equity awards and/or any other form of compensation or benefit provided to you by UBS shall constitute consideration for your rights and obligations under this Arbitration Agreement, including the Class, Collective and Representative Action Waivers contained herein.

## *Modification*

UBS may from time to time modify or discontinue the Arbitration Agreement by providing thirty (30) calendar days written notice; however, any such modification or rescission shall only be applied prospectively.  An employee shall complete the processing of any dispute pending pursuant to this Arbitration Agreement at the time of an announced change, under the terms of the procedures in effect at the time such Covered Claims were initially submitted to arbitration pursuant to this Arbitration Agreement.

## *Severability*

The provisions of this Arbitration Agreement shall be severable and, if any provisions hereof shall be determined to be legally unenforceable or void, such unenforceable or void provision shall not affect the legality, validity or enforceability of the remaining provisions hereof.  Any such unenforceable or void provision shall be severed from the remaining provisions as appropriate, to the extent permitted by law, except that, in the event any of the waivers set forth in sub-paragraph d of this Arbitration Agreement ("Class, Collective and Representative Action Waivers") are determined to be invalid, unenforceable or void with respect to any Covered Claim, that Covered Claim and only that Covered Claim shall proceed in a court of competent jurisdiction and not in arbitration (and such court shall be the exclusive forum for all such claims), and the waivers set forth in sub-paragraph d of this Arbitration Agreement shall remain effective and enforceable with respect to all other Covered Claims.  If a court of competent jurisdiction determines that a particular provision of this Agreement is invalid, unenforceable or void under the applicable law in a particular

jurisdiction, such provision will not be enforced with respect to you in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.