# Exhibit E

USA03

# The Agreement for New Financial Advisors in the Development Program

HRUS0599592C

This Agreement is made between UBS Financial Services Inc. (defined herein to include its parent UBS AG, its affiliates, subsidiaries and successors and hereinafter referred to as "UBS Financial Services Inc.") and

Rebecca Taylor
(referred to as the "Employee").

Whereas, in consideration of UBS Financial Services Inc. employing Employee and incurring the cost of training Employee in the New Financial Advisor Development (NFAD) program to obtain and develop clients of UBS Financial Services Inc.; and

Whereas, the training will provide Employee with the opportunity to acquire unique skills and knowledge as well as access to confidential and proprietary financial information and contacts of UBS Financial Services Inc.; and

Whereas, during and subsequent to Employee's training, Employee will have access to UBS Financial Services Inc. office facilities, research and investment opportunities, facilities for executing, processing and clearing transactions, and other good and valuable consideration; and

Whereas, Employee agrees that during the period of employment with UBS Financial Services Inc., and thereafter, as expressly set forth below, he or she owes UBS Financial Services Inc. a duty of loyalty and a duty to act in good faith to protect UBS Financial Services Inc.'s goodwill and other proprietary and confidential business information as set forth herein; and

Whereas, Employee values the benefits associated with employment by UBS Financial Services Inc., and acknowledges that he or she has voluntarily accepted those benefits and the opportunity provided to Employee by UBS Financial Services Inc. on the terms and conditions outlined below:

1. Client Lists and Other Proprietary and Confidential Information

1.1 The Employee acknowledges that in the course of and by reason of his or her employment at UBS Financial Services Inc., Employee will have access to information that has been acquired by UBS Financial Services Inc. through expenditures of time, effort and money, or will himself or herself develop such information on behalf of UBS Financial Services Inc. as a normal and ordinary part of his or her duties and responsibilities of his or her employment by UBS Financial Services Inc. This information, which is valuable to UBS Financial Services Inc. and is not generally known to others, includes without limitation: the names, addresses and telephone numbers of UBS Financial Services Inc.'s clients; the assets and obligations carried in the accounts of UBS Financial Services Inc. clients (commonly called "positions"); holding books or client book pages; client monthly statements; client account histories; client lists; prospect lists; client risk profiles; financial and personal information regarding clients and prospects; computer software or hardware for use in computer or word processing equipment; and documents or computer programs prepared or generated by Employee using UBS Financial Services Inc. property and/or records (hereinafter collectively referred to as "Restricted Information"). Employee acknowledges and agrees that: (a) the Restricted Information is unique to UBS Financial Services Inc.; (b) it would be difficult and would require the expenditure of substantial time and effort to duplicate or replicate the Restricted Information by proper means; (c) UBS Financial Services Inc. views the Restricted Information as highly confidential; and (d) UBS Financial Services Inc. takes all reasonable measures including the dissemination of published policies regarding confidentiality to Employees to maintain their confidentiality.

1.2 In the course of and solely as a result of his or her employment with UBS Financial Services Inc., Employee will also have access to records and documents concerning the business and affairs of UBS Financial Services Inc. (hereinafter referred to as "Company Records"). Such Company Records, whether or not Restricted Information, are and will always be the confidential and exclusive property of

For Internal Use Only

1

UBS Financial Services Inc. Company Records include, but are not limited to, originals and copies of UBS Financial Services Inc. books, records, reports, policies and internal memoranda.

1.3 Employee agrees that, during the course of his or her employment with UBS Financial Services Inc., he or she will not remove Restricted Information or Company Records from UBS Financial Services Inc.'s premises in either original or copied form (hard copy or electronically), except in the ordinary course of conducting business for, and subject to approval by, UBS Financial Services Inc. and will not use Restricted Information or Company Records for any purpose other than the purpose of conducting the business of UBS Financial Services Inc.

1.4 Employee also agrees that while on inactive employment status, or upon the voluntary or involuntary suspension or termination of Employee's employment relationship with UBS Financial Services Inc.:
  (a) His or her use of Restricted Information and Company Records will stop immediately;
  (b) He or she will immediately deliver to UBS Financial Services Inc. any originals or copies of any Restricted Information or Company Records in his or her possession or control and will not retain any Restricted Information or Company Records or any copies thereof; and
  (c) Employee will permit UBS Financial Services Inc. to inspect, prior to removal, any materials or laptop computer to be taken from UBS Financial Services Inc.'s offices and his or her work area including desk and file cabinets.

1.5 Employee also agrees that his or her use of Restricted Information and Company Records will stop immediately upon Employee's determination to leave UBS Financial Services Inc. employment, unless otherwise agreed to in writing by UBS Financial Services Inc.

1.6 Employee agrees that both during and subsequent to the course of his or her employment with UBS Financial Services Inc., Employee will not disclose to any person or entity the content, in whole or in part, of Restricted Information or Company Records, except in the ordinary course of conducting business for UBS Financial Services Inc. or as may be required by law. Employee agrees to give UBS Financial Services Inc. timely and prompt written notice of the receipt of any subpoena, court order or other legal process compelling the disclosure of Restricted Information and/or Company Records, so as to allow UBS Financial Services Inc. reasonable opportunity to take such action as may be necessary in order to protect such Restricted Information and/or Company Records from disclosure.

1.7 Employee will not at any time assert any claim of ownership or other property interest in Restricted Information or Company Records.

2. Non-Solicitation Covenants

2.1 In the event of Employee's termination from UBS Financial Services Inc. for any reason whatsoever, whether voluntary or involuntary, Employee agrees that he or she:
  (a) Will not solicit, directly or indirectly, for a period of six months from the date of termination of Employee's employment, any of the clients who maintain accounts at UBS Financial Services Inc. ("Clients of UBS Financial Services Inc.") whom Employee serviced during his or her employment at UBS Financial Services Inc. or other Clients of UBS Financial Services Inc. whose names became known to Employee while in the employ of UBS Financial Services Inc.; and,
  (b) For a period of six months following termination of employment for any reason, Employee will not, directly or indirectly, recruit or solicit any employee of UBS Financial Services Inc. for employment with, or as a consultant or to provide services of any kind to, any other organization which engages in any line of business in which UBS Financial Services Inc. or any of its affiliates is engaged; and
  (c) Will return any and all original, copied and computerized Restricted Information or Company Records, in whatever form they may exist.

2.2 "Solicit" as used in Paragraph 2.1(a) means that the Employee will not initiate, whether directly or indirectly, any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting a client, or that may have the effect of inviting, encouraging or requesting a client:
  (a) To transfer his or her UBS Financial Services Inc. account(s) to the Employee or his or her new employer; or
  (b) To open a new account with Employee or his or her new employer, or

For Internal Use Only

(c) To otherwise discontinue its existing business relationship with UBS Financial Services Inc. Without limiting the generality of the foregoing, UBS Financial Services Inc. and Employee specifically and further agree that the term "solicit" as used in Paragraph 2.1(a) includes any mailing or other communication that is sent directly to one or more of the Clients of UBS Financial Services Inc. whom Employee serviced during his or her employment at UBS Financial Services Inc. or other Clients of UBS Financial Services Inc. whose names became known to Employee while in the employment of UBS Financial Services Inc.

2.3 Nothing in this Paragraph shall prevent Employee from retaining records or information referring or relating to his or her own personal accounts with UBS Financial Services Inc. or the accounts of Clients of UBS Financial Services Inc. who are related by blood or marriage to Employee or from soliciting said accounts.

2.4 The non-solicitation period may be extended in subsequent agreements such as the UBS Financial Services Inc. Financial Advisor/Trainee Team Agreement.

3. **Right to an Injunction**

3.1 In the event Employee breaches any of his or her obligations set forth in Paragraphs 1 and/or 2 of this Agreement, Employee agrees that UBS Financial Services Inc. will be entitled to injunctive relief. Employee recognizes that UBS Financial Services Inc. will suffer immediate and irreparable harm and that money damages will not be adequate to compensate UBS Financial Services Inc. or to protect and preserve the status quo pending arbitration as provided for under this Agreement. Therefore, Employee expressly consents to the issuance of a temporary restraining order or a preliminary injunction, without bond, by any court with jurisdiction over him or her to prohibit the breach of any provision of this Agreement, or to maintain the status quo pending a determination on the merits of the dispute by a full panel appointed in any arbitration proceeding initiated by either UBS Financial Services Inc. or Employee. Further, Employee expressly agrees that all issues pertaining to temporary and preliminary injunctive relief will be decided by a court and not by an arbitrator or arbitration panel should UBS Financial Services Inc. in its sole discretion elect to seek such relief before a court.

3.2 Employee agrees that UBS Financial Services Inc.'s application to a court of law for injunctive relief pursuant to this Paragraph shall not be deemed a waiver of UBS Financial Services Inc.'s right to arbitration. For purposes of this Paragraph 3, Employee agrees to submit to jurisdiction (a) in the United States District Court or the appropriate State Court which has original jurisdiction for the judicial district or county in which Employee last worked for UBS Financial Services Inc. or (b) any other court where Employee is subject to jurisdiction.

4. **Expectations**

4.1 Pre-Hire Paperwork: All Human Resources (HR) documentation must be filled out truthfully in its entirety.

4.2 Licensing Exams:
(a) If Employee has not already passed the Series 7 and 66 exams prior to commencing employment with UBS Financial Services Inc., said exam(s) must be completed and passed; as stated in paragraph 4.2 b, c, d, e, f.
(b) Employee must schedule all licensing exams not previously passed by the end of his or her third (3rd) week at the Branch- prior to Phase 2 of the NFAD Program.
(c) If Employee has not already passed the Series 7 exam prior to commencing employment, with UBS Financial Services Inc., he or she must do so (on the first attempt) during week seven (7); One exam failure will result in Employee's removal from the (NFAD) program and potential termination of his or her employment with UBS Financial Services Inc.;
(d) If Employee has not already passed the Series 66 exam prior to commencing employment, it must be taken during week nine (9); If a second attempt at passing the Series 66 exam is needed, it must be completed by week sixteen (16), prior to Phase 4 of the NFAD program;
(e) Two unsuccessful attempts on any combination of the Series 66, 63, or 65 exams will result in Employee's removal from the (NFAD) program and the potential termination of his or her employment with UBS Financial Services Inc.;
(f) Employee must pass all licensing exams (Series 7, 66, and Life/Health insurance) prior to attending Phase 4 of the NFAD program in Weehawken, New Jersey.

4.3 Attendance and Punctuality:
   (a) Regular and punctual attendance at work is mandatory;
   (b) Employee's work hours must comport with Branch requirements; and
   (c) Employee must timely attend all scheduled meetings and conference calls in accordance with Branch standards.

4.4 Dress and Personal Appearance: Appropriate business attire in accordance with branch standards must be worn Monday through Friday.

4.5 Standards of Conduct: Employee's professional conduct must conform with UBS Financial Services Inc. policies and procedures, as well as with industry standards and regulations.

4.6 Work Objectives and Measurement (Phases 1- 4 of the NFAD Program):
   (a) Employee must: complete all Phase 1 learning activities and deliverables as outlined in the Phase 1 curriculum, including, without limitation, completion of Phase 1 Practice Management Handbook components (worksheets and Wealth Management Reference Guide), participation in Phase 1 virtual sessions, and attendance at Weekly Progress Meetings.
   (b) Employee must complete all Phase 2 learning activities and deliverables as outlined in the Phase 2 curriculum, including, without limitation, the Knowledge Assessment and Day-in-the-Life Performance Assessments, and mandatory attendance at the five-day program at Lincoln Harbor in Weehawken, New Jersey.
   (c) Employee must complete all Phase 3 learning activities and deliverables as outlined in the Phase 3 curriculum, including, without limitation, the completion of Phase 3 Practice Management Handbook components (worksheets, the Business Development and UBS Client Experience Guides, participation in Phase 3 virtual sessions, and attendance at Weekly Progress Meetings.
   (e) Employee must complete all Phase 4 learning activities and deliverables as outlined in the Phase 4 curriculum, including, without limitation, the Knowledge Assessment and mandatory attendance at the five-day program at Lincoln Harbor in Weehawken, New Jersey.

4.7 General: This Section 4 is not an exhaustive list of applicable expectations, and is not meant to entail all essential functions of this job.

5. Compliance with Applicable Laws, Rules, Policies and Procedures

5.1 Until such time as Employee becomes registered, Employee shall not sign any correspondence to any prospective or actual UBS Financial Services Inc.'s clients or hold himself or herself out as a Financial Advisor or use any other title that would cause someone to believe that he or she is registered and able to provide investment advice.

5.2 In order to avoid any issues concerning solicitation or recruitment of Clients or current UBS Financial Services Inc. Employees that may arise from his or her departure from UBS Financial Services Inc., Employee agrees to notify UBS Financial Services Inc. in writing of the extent to which he or she will be pursuing employment in businesses competitive with UBS Financial Services Inc.

5.3 Employee agrees at all times to comply with all provisions of all applicable federal and state securities and commodities laws, the rules of all securities and commodities exchanges by whom Employee may become registered, and all policies and procedures established or to be established by UBS Financial Services Inc. to govern the conduct of its Employees.

6. Terms and Modifications

6.1 This Agreement contains all the terms of the Agreement between the parties hereto relating to the subject matter hereof and supersedes any or all other representations, agreements, understandings, oral or otherwise, between the parties with respect to the matters contained herein. This Agreement may not be modified except by a writing signed by Employee and UBS Financial Services Inc.'s Director of Education and Development.

7. Arbitration

7.1 With the exception of claims for injunctive relief or for the denial of benefits under UBS Financial Services Inc.'s disability or medical plans, Employee and UBS Financial Services Inc. agree that, unless prohibited by applicable law any disputes between Employee and UBS Financial Services Inc. including claims concerning compensation, benefits or other terms or conditions of employment and termination of employment, or any claims for discrimination, retaliation or harassment, or any other claims whether they arise by statute or otherwise, including but not limited to, claims arising under the Fair Labor Standards Act, Title VII of the

For Internal Use Only

Civil Rights Act of 1964, as amended, The Age Discrimination in Employment Act of 1967, The Worker Adjustment and Retraining Notification Act, The Employee Retirement Income Security Act, The Americans With Disabilities Act, The Equal Pay Act of 1963, The Americans With Disabilities Act of 1990, The Family and Medical Leave Act of 1993, The Sarbanes-Oxley Act, or any other federal, state or local employment or discrimination laws, rules or regulations, including wage and hour laws, will be determined by arbitration as authorized and governed by the arbitration law of the state of New Jersey. Any such arbitration will be conducted under the auspices and rules of The Financial Industry Regulatory Authority (FINRA), except that Employee may elect to arbitrate discrimination claims under any federal, state or local law (including claims of harassment and retaliation under those laws) before JAMS pursuant to its Employment Arbitration Rules and Procedures and subject to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness. Subject to the parties' right to appeal or seek vacatur under applicable law, Employee and UBS Financial Services Inc. agree that the decision of the Arbitrator(s) will be final and binding on the parties and that the Arbitrator(s) is authorized to award whatever remedies would be available to the parties in a court of law. Employee and UBS Financial Services Inc. further agree that any disputes between Employee and UBS Financial Services Inc. shall be heard, as set forth above, by FINRA or JAMS' without consolidation of such claims with any other person or entity. To the fullest extent permitted by law, by agreeing to the terms of this Agreement, Employee waives any right to commence, be a party to or an actual or putative class member of any class or collective action arising out of or relating to Employee's employment with UBS Financial Services Inc. or the termination of Employee's employment with UBS Financial Services Inc.

7.2 Paragraph 6.1 shall not be deemed a waiver of UBS Financial Services Inc.'s right to injunctive relief provided for in Paragraph 3 above.

8. Employment "at Will"
8.1 The Employee expressly acknowledges that this Agreement is ancillary to and in addition to other terms and conditions governing Employee's employment relationship with UBS Financial Services Inc., including all applicable UBS Financial Services Inc.'s policies, procedures and requirements. This Agreement does not constitute an agreement by UBS Financial Services Inc. to employ Employee for a specified period of time, does not consist of a promise of continued employment with UBS Financial Services Inc. for any period whatsoever, and does not in any way alter Employee's status as an "Employee at will."

9. Drug and Background Screening
9.1 The Employee understands that UBS Financial Services Inc.'s offer and his or her employment are contingent upon his/her satisfactorily completing a drug screen. In addition, employment will be contingent upon satisfactory completion of all pre and post employment processing including, but not limited to, background screening and fingerprinting.

10. Assignment
10.1 This Agreement may be assigned by UBS Financial Services Inc. and the benefits and obligations thereof shall inure to UBS Financial Services Inc.'s successors and assigns. This Agreement may not be assigned by Employee.

11. Non-Waiver
11.1 The Employee understands that UBS Financial Services Inc.'s failure to enforce the breach of any covenant of this Agreement (or the breach of any similar agreement signed by UBS Financial Services Inc.'s Employees) will not constitute a waiver of UBS Financial Services Inc.'s right to enforce any other breach of the same or any other covenant.

12. Invalid Provisions
12.1 If any provision of this Agreement or part thereof is held to be illegal, invalid or unenforceable under present or future laws effective during the term thereof, such provision shall be fully severable and shall not affect, impair or invalidate the remainder of the Agreement which shall remain in full force and effect. For purposes of injunctive relief only, in the event the restrictions set forth in Paragraphs 1 and/or 2 of this Agreement are deemed to exceed the time, geographic or other such limitations permitted by applicable laws, such limitations shall be and are reformed to the maximum time, geographic or other limitations permitted by the applicable laws.

Information about JAMS, including its Employment Arbitration Rules and Procedures can be found at www.jamsadr.com. If Employee chooses to arbitrate before JAMS, then, where permitted by law, Employee only shall be responsible for those arbitration fees and costs that Employee would have been required to bear in a FINRA arbitration.

### 13. Choice of Law

13.1 This Agreement shall be construed and the validity, performance and enforcement thereof shall be governed by the laws of the State of New Jersey, without regard to its choice of law rules.

The parties to this Agreement hereby acknowledge that they have read and understand the Agreement and consent and agree to be bound by all of the terms and conditions thereof. Employee expressly represents and warrants to UBS Financial Services Inc. that no promises or representations have been made to Employee that vary from or are inconsistent with the terms and conditions set forth above. Employee acknowledges that he/she understands that no manager, Employee, agent or other representative of UBS Financial Services Inc. is authorized to vary, modify or alter the terms and conditions of this Agreement, except as set forth in Paragraph 6.1, and that he or she has not been told and has received no assurance from anyone with respect to UBS Financial Services Inc.'s right and intention to enforce this Agreement fully in the event of a breach by Employee.

Employee further acknowledges that he or she has read this Agreement prior to accepting employment at UBS Financial Services Inc. and has had an opportunity to review it with UBS Financial Services Inc.'s representatives and persons or legal representatives of Employee's own choosing and understands its terms and effects. Employee understands that his or her signing this Agreement is a condition of employment, which condition Employee understood before accepting employment with UBS Financial Services Inc.

Dated: 4 - 24, 20 08

_____
Employee

Dated: 4-24, 20 2008

_____
UBS Financial Services Inc. Branch Manager

©2008 UBS Financial Services Inc. All Rights Reserved. Member SIPC.


**UBS**

UBS Financial Services Inc.
www.ubs.com/financialservicesinc
080317-0711-X392

UBS Financial Services Inc. is a subsidiary of UBS AG.

For Internal Use Only