## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MISTY DUPREE,

      Plaintiff,

v.

JULIE SU, SECRETARY
U.S. DEPARTMENT OF LABOR

Civil Case No.  _____

### PLAINTIFF'S COMPLAINT

**COMES NOW** Plaintiff, Misty Dupree, by and through her undersigned counsel and files this Complaint against the U.S. Department of Labor (hereinafter "Department of Labor" or "Defendant"), and for causes of action states as follows:

1. Plaintiff brings this civil action pursuant the Equal Pay Act, 29 U.S.C. §206(d), Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq*. and the Americans With Disabilities Act ("ADA"), as amended, 42 U.S.C. §12101 *et seq.*, alleging discrimination and hostile work environment/harassment on the basis of her race, sex, disability and retaliation for her protected activity. Plaintiff has suffered damage through unequal pay, discrete acts of discrimination and retaliation, and an overall hostile work environment which targeted her and were not directed to her similarly situated co-workers outside of her protected class.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1331, as it asserts claims that arise under laws of the United States, specifically Title VII, ADA and the Equal Pay Act.

3.      Venue is appropriate because the actions complained of are the result of actions and the employment practices of a Federal government entity operating within the Northern District of Georgia.

## EXHAUSTION OF REMEDIES
### EEOC No: 570-2020-01194

4.      On or about July 12, 2019, Plaintiff timely contacted a Department of Labor Equal Employment Opportunity ("EEO") counselor and raised an informal complaint alleging violations of Title VII and the Equal Pay Act.

5.      On or about October 25, 2019, Plaintiff (*pro se* at the time) timely filed a Formal Complaint of Discrimination with the EEO Office alleging violations of Title VII, ADA and the Equal Pay Act.  A copy of her Letter of Confirmation is attached as **Exhibit 1**.

6.      On May 26, 2020, Plaintiff received a Report of Investigation ("ROI") informing her, among other things, of her right to request a hearing with an EEOC Administrative Judge.

7.      On May 27, 2020 (and uploaded to the EEOC Public Portal on June 10, 2020), Plaintiff timely submitted a request for a hearing with an EEOC

Administrative Judge.

8.      Plaintiff's EEOC proceeding was not decided for almost three (3) years.  In addition to COVID delays, the Department of Labor repeatedly delayed providing required information and/or documentation.   A history of EEOC submissions is attached as **Exhibit 2**.

9.      On May 24, 2023, EEOC Administrative Judge Elise Jones issued an order entering summary judgment in favor of Defendant but did not address Plaintiff's retaliation claims.  The Order instructed Defendant to take final action by issuing a final order notifying whether or not Defendant would fully implement the decision within forty (40) calendar days of the receipt of the order entering judgment.

10.    To date, Plaintiff has not received a notice from Defendant with respect to the decision of Administrative Judge Jones.

11.    Plaintiff has exhausted all of her administrative remedies.

12.    Plaintiff hereby timely files the instant Complaint.

13.    On December 21, 2021, Plaintiff timely contacted a Department of Labor counselor and raised an informal complaint alleging violations of Title VII (disparate treatment and/or hostile work environment based on race (African American), color, disability (mental and physical) and/or retaliation).

14.    On February 3, 2022, Plaintiff timely filed a Formal Complaint of

Discrimination with the EEO Office alleging violations of Title VII (disparate treatment and/or hostile work environment based on race (African American), color disability (mental and physical) and/or retaliation).

15.     On July 28, 2023, Plaintiff received a Final Agency Decision ("FAD") with respect to her claims of discrimination and hostile work environment in her Formal Complaint of Discrimination.  The FAD did not address her retaliation claim.

16.     Plaintiff has exhausted all of her administrative remedies.

17.     Plaintiff hereby timely files the instant Complaint.

## PARTIES

18.     Plaintiff is currently domiciled at 2015 Village Green Dr., Fairburn, Georgia 30213.  Plaintiff is a resident of the State of Georgia and is a United States citizen.

19.     Department of Labor is a federal agency of the United States of America and is subject to suit for the discriminatory, wanton, intentional, willful, or wrongful acts and/or omissions of its employees or agents.

## FACTUAL BACKGROUND

20.     Plaintiff began her career in the U.S. Army after graduating from high school in 1994.  Plaintiff received an Armed Forces Expeditionary Medal, two (2) Army Achievement Medals, and two (2) Good Conduct Medals. Plaintiff was promoted three (3) times in her six (6) year Active-duty enlistment.

21.    After leaving the Army in 2001, Plaintiff worked as a Logistics/Transportation Specialist as she attained her bachelor's degree in business management with Saint Leo University in 2008.

22.    In 2009, Plaintiff received her MBA in Human Resources Management with Saint Leo University as she entered her career as a civil servant with the Department of Labor.

23.    From July 2009 to February 2016, Defendant promoted Plaintiff five (5) times.

24.    She initially began as a GS-6 Assistant in July 2009 to December 2009 with the Department of Labor's Office of the Assistant Secretary for Administration and Management ("OASAM").

25.    From December 2009 to February 2010, she worked as a GS-7 Management Program Assistant with Federal Aviation Administration.

26.    In March 2010, Plaintiff transferred back to the Department of Labor's Office of Federal Contract Compliance Programs ("OFCCP") as a GS-7 Equal Opportunity Specialist.

27.    From April 2010 to January 2016, she worked as a GS-9 Wage Hour Investigator and as a GS-12 Senior Wage Hour Investigator.  She received (2) Quality Step Increases, (5) Secretary of Labor Honor Awards (Worker Protection), (1) Peer Award and (1) Regional Office Award.  She was a subject

5

matter expert in interpreting, applying and enforcing laws, statutes, identifying irregularities with employment practices and encouraging employers in ways to maintain and sustain compliance. She was the lead investigator for the first litigation case regarding Executive Order 13495 Non-displacement of Qualified Workers under Service Contracts.

28.   In February 2016, Defendant promoted Plaintiff to the Supervisory Wage Hour Investigator GS-13. She worked cooperatively with Georgia Bureau of Investigations and Office of Internal General on several human trafficking/wage cases. In addition, Plaintiff  directed, supervised investigators, and reviewed investigations involving complex issues of laws, facts, violations, and compliance in industrial, commercial, governmental, retail, agricultural, public institutions, other business establishments, as well as domestic service in households. She oversaw the operation, enforcement, compliance, education, and information programs conducted under the statutory authority contained in: the Fair Labor Standards Act, Walsh-Healey Public Contracts Act, Service Contract Act, , Migrant and Season Agricultural Worker Protection Act, Family Medical Leave Act, Occupational Safety and Health Act (field sanitation/housing standards), Davis-Bacon Act, National Plan for Emergency Preparedness, Employee Polygraph Protection Act, wage garnishment provisions under the Consumer Protection Act, and several provisions of the Immigration and Nationalities Act dealing with labor

standards. Ms. Dupree implemented, counseled and rated her staff annual performance appraisals as well as handled disciplinary actions.

29.    In 2017, Ms. Dupree left Wage and Hour to rejoin  OASAM as a human resources specialist.

30.    At the time she rejoined OASAM, Ms. Dupree's first-line supervisor was Cindy Williams, and her second-line supervisor was Michelle Driscoll.

31.    Ms. Dupree was part of the employee relations and development branch, all supervised by Ms. Williams, which also included team members Anton Donaldson (African-American, Male, GS-13), Julia Harris (African-American, Female, GS-13), and Derrell Deaton (Caucasian, Male, GS-11).

32.    Ms. Williams assigned each team member an agency client, regardless of task, complexity or required independence.  The assignments for each agency client were substantially similar (almost always exactly similar) and included all facets of labor and employee relations such as disciplinary actions, grievances, management training, interpretation and implementation of policies/procedures, and issues regarding employee performance.

33.    There was also a team member assigned as a backup for each agency client.

34.    Ms. Dupree performed both the original assignment and backup assignment at GS-13 levels.  Ms. Dupree served and performed as backup for tasks

7

originally assigned to a GS-13 employee.

35.    Ms. Dupree was an exemplary HR Specialist.  For each performance appraisal from FY2017 – 2019, Ms. Williams documented in Ms. Dupree performance narratives that she was detailed, timely, very effective when interpreting and explaining policies and procedures, knowledge in understanding laws and regulations, and conducted sound research.  Additionally, Ms. Williams described Ms. Dupree as follows:

> She provides timely and accurate information to her assigned client agencies.  Ms. Dupree provides timely and accurate information to her assigned client agencies.
>
> She promptly returns calls.
>
> She provides up-to-date and detailed information to agency managers and administrative officials concerning the requirements of these ER/LR programs in accordance with current DOL rules/policies, law and regulations.
>
> She is very effective when it comes to interpreting and explaining policies and procedures and documents her case files and interactions with the customers.
> Ms. Dupree's guidance and technical assistance demonstrates her knowledge and understanding of current Federal Service Labor Management laws and regulations as evidenced by case file documentation which contains the necessary investigations and evidence and sound technical research in keeping with applicable laws and internal policy.[1]
>
> Her work products demonstrate her knowledge and understanding of current Federal Service Labor Management laws and regulations

---

[1] This same language appears in Mr. Donaldson's review.

as evidenced by case file documentation which contains the necessary investigations and evidence and sound technical research in keeping with applicable laws and internal policy.

She also provides coverage for other ER/LR employees' assigned agencies when they are out of the office …and willing[ly] shares her expertise with other team members.

She kept her supervisor updated on the status of cases on a bi-weekly basis and/or as needed.

36.     From January 2018 through May 2018, Plaintiff performed classified GS-14 duties as a Career Development Director in a Repository of Opportunities, Assignments, and Details ("ROAD") detail.   Ms. Williams documented that Plaintiff: "...did a fantastic job," "... took the lead on creating training," "...took the initiative to make decisions and kept the program running almost exclusively," "wonderful disposition for mediating disputes," and "handled responsibilities of running Board meetings for seven (7) SES leaders in the agency."

37.     Ms. Dupree's performance ratings were:

FY 2017:     Exemplary
FY 2018:     Exemplary
FY 2019:     Outstanding

38.     Ms. Williams was only allowed two (2) GS-13s as part of her team, regardless of work complexity, task, workload or assignments.   Because Ms. Williams was only allowed two (2) GS-13s, Ms. Dupree was classified as a GS-12.

39.     Ms. Dupree notified Cindy Williams that she was not being properly

compensated but received no response.

40.     The duties of Ms. Dupree, a GS-12 employee, and Anton Donaldson, a GS-13 employee, were substantially similar.

41.     In addition to unequal pay, Ms. Dupree did not receive the same cash award that Mr. Donaldson received in 2019.

42.     Ms. Dupree and Mr. Donaldson were on substantially similar performance standards – six (6) of Mr. Donaldson's seven (7) elements were the same for Ms. Dupree.

43.     Ms. Dupree and Ms. Harris were on the same performance standards.

44.     The GS-12 and GS-13 position descriptions are substantially similar.

45.     Ms. Williams prepared the position description by including the major duties and responsibilities of the job.

46.     Ms. Dupree had the knowledge, skills and ability to work independently and to work as a GS-13.

47.     The "Discretion and Independent Judgment" component for the GS-12 and GS-13 position descriptions are the same, including the same definition located at 5 CFR §551.206(a), (b) and (c).

48.     Ms. Williams did not question Ms. Dupree's ability to work independently.

49.     Ms. Driscoll was not aware of any issues with Ms. Dupree's ability to

10

work independently or her command of ER or LR principles.

50.    Ms. Williams' management style is "hands-off."

51.    Ms. Williams rarely had weekly meetings with Ms. Dupree.

52.    Ms. Williams sporadically reviewed Ms. Dupree's work.  Ms. Dupree estimates that Ms. Williams provided feedback for her work product approximately five (5) times in 2.5 years as first-line supervisor.

53.    Mr. Donaldson consistently provided periodic updates to his supervisors.

54.    Peers did not often review Ms. Dupree's work.

55.    Staff were encouraged to "bounce things off each other" to get a different perspective.

56.    Ms. Williams was involved in the decision to promote Mr. Donaldson to GS-13.

57.    Ms. Williams was Mr. Deaton's hiring official.

58.    Mr. Deaton was unable to perform the tasks performed by the other team members.

59.    Mr. Deaton did not share equal skill, effort and responsibility as Ms. Dupree or the other team members.

60.    Mr. Deaton's poor performance issues first surfaced in 2017 and remained in 2018 and into 2019.

61.     For two and a half (2.5) years, tasks originally assigned to Mr. Deaton were reassigned by Ms. Williams to her other team members because of Mr. Deaton's poor performance and untimeliness.

62.     Mr. Deaton negatively affected the workload and required all of the other team members to perform more tasks.

63.     Mr. Donaldson recognized that "frequently" a co-worker "has been allowed to get away with not pulling their fair share of weight" that "I or my other co-workers would not be able to get away with."

64.     Mr. Donaldson believed that the "perception is that a white male co-worker has been allowed to do less and get away with it for an extended period of time" and that it "certainly looked" like he was treated differently because he was white."

65.     Julia Harris believes that Ms. Williams absolutely treated Mr. Deaton differently than Ms. Harris, Ms. Dupree and Mr. Donaldson.

66.     In early 2018, there was a meeting in which Ms. Williams and OASAM Regional Director Michelle Driscoll were confronted with allegations of racial discrimination.

67.     The 2018 Management meeting was due to the frustration of the African-American employees, including Ms. Dupree, who had raised the issue regarding Mr. Deaton with Ms. Williams "multiple times with no relief."

68.     All of Ms. Williams' African-American direct reports identified her differential treatment based on race.  Ms. Williams treated Mr. Deaton differently than Ms. Harris, Ms.  Dupree and Mr. Donaldson.

69.     Defendant did not respond or investigate, over this extended period of time, to the allegations of Ms. Williams' preferential treatment based on race.

70.     Ms. Williams treated her male direct reports differently than her female direct reports.

71.     At the 2018 Management meeting, Ms. Harris specifically stated that the Caucasian male (Mr. Deaton) was being treated differently than all of Ms. Williams' African-American staff and was not being held accountable for his products and his work was being reassigned.

72.     At the time of the 2018 Management meeting, the complaints regarding Mr. Deaton became more frequent.

73.     As a result of the 2018 Management meeting, Defendant did not conduct an investigation.

74.     After hearing the issues, Ms. Driscoll suggested that Mr. Deaton be given a "do-over."

75.     For her part, Ms. Williams tried to "assess" what was going on.

76.     Rather than report the allegations of discrimination and preferential treatment, Ms. Williams decided to work with Mr. Deaton more frequently and

unilaterally determined that the problem was not based on race.

77.    Mr. Deaton's poor performance hurt morale.

78.    After the 2018 Management meeting, Defendant continued to protect Mr. Deaton.

79.    In August 2018, Defendant's managers and supervisors were directed that "appraisals include an overall performance rating … and must be supported by a summary rating narrative.

80.    Notable, for FY 2019 (10/1/2018 – 9/30/2019) and following the 2018 Management meeting, Mr. Deaton's rating improved to "Fully Successful." However, in giving Mr. Deaton the "do-over" that Ms. Driscoll suggested, neither Ms. Williams nor Ms. Driscoll provided the required narrative to justify his improved rating.

81.    Thereafter, Ms. Driscoll decided against proposing Mr. Deaton for discipline (AWOL) because she wanted to give him "another opportunity."

82.    During her tenure at the Department of Labor, in addition to the 2018 Management meeting, Ms. Dupree engaged in other prior EEO activity.

83.    Ms. Dupree disclosed a "pattern of hostility" in an April 18, 2018 e-mail to Ms. Williams (and forwarded to Ms. Driscoll).

84.    Because Ms. Driscoll did not agree with Ms. Dupree, no investigation was performed.

14

85.    On August 29, 2018, Ms. Dupree disclosed to Ms. Williams that she (Ms. Dupree) would be a witness for Mr. Deaton who felt that he is experiencing retaliation/harassment/hostile work environment.  Mr. Deaton never provided Ms. Dupree with a basis or support for his claim, and she understands that he never initiated EEO contact.

86.    In early October 2018, Ms. Williams interfered with and delayed Ms. Dupree's request for leave under FMLA as a Caregiver.

87.    On November 7, 2018, without Ms. Dupree's permission and against the normal practice, Ms. Williams disclosed to Defendant's personnel via email that Ms. Dupree was out on leave due to her FMLA status.

88.    In February 2019, Ms. Williams denied Ms. Dupree a Repository of Opportunities, Assignments, and Details ("ROAD") detail.

89.    Ms. Williams stated she was unable to approve the detail due to mission requirements as well as the impending implementation of HR Shared Services.

90.    In February of 2019, the target transition date for shared services was December 2019.

91.    There was no discussion about a shorter ROAD detail or any alternatives for Ms. Dupree.

92.    Holly Coffey-Flynn, Defendant's then Division Chief of Staffing, stated that the decision to deny the ROAD detail was made with Ms. Williams and

Mr. Sebastian and based solely on the complaints by the client agencies regarding the back log of LER cases, responsiveness of the LER staff and the current workload and the transition to shared services.

93.   The customer complaints were tied to Mr. Deaton's performance.

94.   Jon Sebastian, Defendant's Regional Administrator and Ms. Dupree's third line supervisor, stated that the decision to deny the ROAD detail was based on two factors: Ms. Dupree already participated in one 120-day ROAD detail and the branch had a heavy employee and labor relations workload and there was a need to have her continue to perform her primary function.

95.   Defendant did not conduct an investigation after Ms. Dupree advised Ms. Williams and Ms. Coffey-Flynn in February 2019 that she believed the ROAD denial was based on discriminatory treatment and a hostile work environment.

96.   Ms. Dupree's earlier GS-14 ROAD detail, in August 2017, was delayed several months after Ms. Dupree was assigned hostile s work investigations that should have been assigned to Ms. Harris.  Julia Harris told Cindy Williams that the Hostile Work Environment investigation was  "career suicide" because the Plaintiff was investigating her second line supervisor (Ms. Driscoll).

97.   On July 11, 2019, Ms. Dupree notified Ms. Williams and Ms. Coffey-Flynn that she was being "impacted by disparate treatment" and that "DOL policies are being violated, and [Mr. Deaton] is not being held accountable.  He brags about

16

how he is getting away with his wrongdoing and management does nothing." As a result of this disclosure, Defendant undertook no investigation.

98.   Defendant failed to separate the responsible management official (Ms. Williams) from the EEO Office as required.   Specifically, in September 2019, Ms. Williams asked Betty Lopez, head of OASAM EEO, how to respond regarding any potential offers toward complaint resolution and was directed to say "No."

99.   On October 7, 2019, Ms. Williams did not knock but listened at Ms. Dupree's closed door right shortly after Ms. Dupree filed her EEO complaint (Complaint ¶¶4, 5) and when she was no longer Ms. Williams' direct report.

100.   In December 2019, Ms. Williams invited Mr. Deaton to attend a meeting she had with Ms. Harris in which the particulars of Ms. Dupree's EEO allegations were discussed.

101.   Defendant did not comply with its anti-harassment policies.

102.   DLMS 4 – Personnel Management, Chapter 700, entitled Policy & Procedures for Preventing & Eliminating Harassing Conduct in the Workplace, describes Defendant's policy in Section 703 as:

A hostile work environment claim under Title VII usually requires showing a pattern of offensive conduct.  The Department will not wait for such a pattern to emerge.  Rather, the Department will act before the harassing conduct is so pervasive and offensive as to constitute a hostile environment.

103.   Section 704, entitled "Procedures and Responsibilities," mandates that all supervisors and managers shall be responsible for:

- Acting promptly and appropriately to prevent harassment in the workplace, and retaliation against those who complain of harassment.

- Reporting … any incident of harassing conduct that they witness or is otherwise brought to their attention.

- Receiving and handling allegations of harassing conduct promptly and appropriately, utilizing the procedures set forth in section 706 below.

- In consultation with the EEO Manager, providing interim relief … pending the outcome of the investigation …

104.   Section 704 further mandates that the OASAM Regional Administrator shall be responsible for "promptly notifying the EEO Manager …"

105.   Under Section 706, a supervisor or manager who receives an allegation of harassing conduct shall immediately inform the EEO Manager and seek guidance as to further actions and, in consultation with the EEO Manager, take action to stop any harassing conduct.

106.   Under Section 706, if the OASAM Regional Manager receives an allegation of harassing conduct, she shall promptly notify the EEO Manager.

107.   Mr. Donaldson, Ms. Harris and Ms. Dupree left the Department of Labor while each was one of Ms. Williams' direct reports.

108.   Mr. Donaldson left on or about October 11, 2019.

109.   After Ms. Harris left the Department of Labor, Ms. Williams hired

Thomas Hicks (Caucasian, Male) to replace Ms. Harris at the GS-13 HR Specialist position.  Ms. Dupree performed substantially the same work as Mr. Hicks, and Ms. Dupree was asked by Ms. Williams to train Mr. Hicks on certain tasks and projects to which Mr. Hicks was assigned.

110.   Prior to his selection by Ms. Williams, Mr. Hicks was employed at another federal agency where he was facing Agency disciplinary action.

111.   Ms. Dupree applied for the position in which Mr. Hicks was hired. Ms. Dupree applied on June 24, 2019 and was referred for a GS-13 ER/LR position (replacing Julia Harris) on July 12, 2019.

112.   Ms. Dupree was interviewed by Ms. Williams and Ms. Jamie Olson on September 6, 2019 but not selected.

113.   At the time Ms. Dupree was not selected, Ms. Williams was aware that Ms. Dupree had asserted a hostile work environment based on Ms. Williams' conduct.

114.   Ms. Dupree supplemented the ROI record in July 2021 to include documentation and her assertion that she "was never offered this slot when it became vacant."   Defendant included information regarding the hiring of Mr. Hicks in its responses to Ms. Dupree's written discovery requests and questioned Ms. Dupree at deposition regarding Mr. Hicks.

115.   Faced with continuing improper treatment that Defendant would not

19

address or correct, Ms. Dupree returned to Wage and Hour on September 1, 2019 as a <u>GS-9</u> due to the harassment and hostile work environment she was experiencing.

116.   Ms. Dupree returned to OASAM on September 15, 2019 as a human resources specialist first under the supervision of Ms. Sheila DeMartino, then under Ms. Jamie Olson.

117.   Unlike his former African-American co-workers, Mr. Deaton is still employed by Defendant.

118.   Mr. Deaton has confirmed that all of Mrs. Dupree's allegations are valid and true.

119.   Everything from Ms. Williams to Ms. Dupree was always late, including issues concerning Ms. Dupree's detail, training requests and performance plan.

120.   For two and a half years, Ms. Williams isolated Ms. Dupree and negatively impacted her ability to work with her co-workers, reduced her trust among co-workers and made negative statements about her to co-workers.

121.   Ms. Williams falsely told Ms. Dupree's co-workers that Ms. Dupree "was watching them."

122.   Ms. Williams described Ms. Dupree as "combative."

123.   Ms. Williams holds grudges.

124.   Ms. Dupree was denied training that was provided to Mr. Deaton and/or Mr. Donaldson.

125.   Unlike Mr. Deaton, Ms. Williams called Ms. Dupree on June 11, 2019 and July 26, 2019 with non-emergency work questions after hours and to deny training while Ms. Dupree was on vacation and on a documented medical restriction that limited her hours of work.  Ms. Dupree had requested a reasonable accommodation on May 24, 2019, which had been received by Ms. Williams.

126.   In December 2019, Ms. Dupree transitioned under a reorganization in which her first-line supervisor was Jaime Olson (Caucasian female) and her second-line supervisor was Sheila DeMartino (Caucasian female). Contemporaneously, Ms. Dupree advised Ms. Olson that she (Ms. Dupree) had a pending EEO Complaint against Ms. Williams.

127.   After becoming one of Ms. Olson's direct reports, Ms. Dupree advised Ms. Olson that she needed official time to participate in the processing of her first (pending) EEO case.   Ms. Olson approved Ms. Dupree's time and attendance sheets.

128.   On or around October 2019 - December 2019, Ms. Dupree advised Ms. DeMartino and Ms. Olson that she had a disability.

129.   In February 2020, Ms. Dupree emailed Ms. DeMartino and Ms. Olson a copy of her FMLA Certification as well as her Reasonable Accommodation

21

packet.

130.    Ms. Dupree was rated higher in her Fiscal Year 2020 (Exceeds Fully Successful) performance appraisal than in her Fiscal Year 2021 (Fully Successful) performance appraisal.

131.    On or about January 27, 2021, Ms. Dupree engaged in protected activity by initiating an informal complaint of discrimination naming Ms. Olson and Ms. DeMartino as responsible management officials.  On April 28, 2021, Ms. Dupree filed a timely formal complaint of discrimination.

132.    On November 9, 2021, Ms. Dupree received a lower Fiscal Year 2021 performance appraisal than was warranted and repeatedly was referred to as a "Mentee" by Ms. Olson.  During her Fiscal Year 2020 mid-year review, Ms. Dupree was asked to train the team, develop customized training and was "always willing to lend a hand to help her colleagues with their customers and to provide them with insight."  Ms. Dupree's Fiscal Year 2021 performance appraisal and award was negatively impacted by not providing her training on arbitration and/or drafting a Motion to Dismiss.  Ms. Dupree requested arbitration training in January 2020, December 2020 and April 2021.

133.    In accordance with the Federal Records Retention Act (44 U.S.C. §31), and EEOC requirements (29 C.F.R. Part 1602), Defendant failed to provide to only Ms. Dupree a Fiscal Year 2021 performance appraisal and only Ms.

Dupree's performance appraisal was not uploaded by Defendant to her eOPF, thereby continuing its effort to harm her.  The Department of Labor Departmental Policy Regulations require, within 30 days after the end of the rating period, that each employee should receive an annual rating of record.

134.   From February/March 2022 until Ms. Dupree went on extended leave, Ms. Olson reassigned and/or altered Ms. Dupree's job duties on several occasions, including reassigning agencies, reassigning negotiations, unduly scrutinized work assignments, allowing co-workers to assign her work and treating her differently than co-workers.  These actions were unrelated to "high turnover" as Defendant attempted to justify.

135.   In May 2022, Ms. Olson falsely disclosed to Gregory Weller (Caucasian) that Ms. Dupree would be absent indefinitely.

136.   Ms. Olson responded "I believe them" when Ms. Driscoll and Henry Word (Caucasian) made false allegations against Ms. Dupree, even though Ms. Olson believes Ms. Dupree to be honest.

137.   Of the nine (9) hires made by Ms. Olson during Ms. Dupree's tenure, only one (1) was African-American.

138.   On July 1, 2022, Plaintiff left the Department of Labor and took a position at the U.S. Department of  Agriculture due to Defendant's ongoing hostility, discrimination and retaliation.

139.   Regarding the transfer of ratings record, Department of Labor Departmental Policy Regulations require that if an employee moves to a new Federal agency, the current performance rating of record must be transferred, and if the employee has served at least 90 days under a performance plan, an interim summary rating must be prepared which will be taken into consideration by the gaining agency or organization in completing the next rating of record.   The creation date for the transfer of Ms. Dupree's eOPF was November 2022.

## COUNT I
## Violation of Equal Pay Act – 29 U.S.C. §206(d)

140.   The factual allegations contained in paragraphs 1-139 are hereby incorporated by reference as if fully set forth herein.

141.   Ms. Dupree received less pay than an individual of the opposite sex (Mr. Donaldson; Mr. Hicks) for equal work, requiring equal skill, effort, and responsibility, under similar working conditions within the same establishment.

142.   The difference in pay is not justified under (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production of work (also referred to as an incentive or piecework system); or, (4) a differential based on any factor other than sex.

143.   As directed and proximate result of Defendant's acts and omissions, Ms. Dupree has suffered substantial damages which will be proven at trial.

## COUNT II
## Violation of 42 U.S.C. §2000e *et seq.* - Discrimination

144.    The factual allegations contained in paragraphs 1-139 are hereby incorporated by reference as if fully set forth herein.

145.    By and through its conduct, Defendant did not afford Plaintiff equal rights under the law under the law and violated 42 U.S.C. §2000e-2(a)(1) by discriminating against Plaintiff on the basis of her race and/or sex.

146.    Plaintiff is a member of a protected group.

147.    As set forth, Defendant discriminated against Plaintiff on the basis of her protected group status.  Defendant's actions as set forth above included, *inter alia,* unequal pay, assignment of work at a higher grade level, allowing Mr. Deaton to receive preferential treatment and produce unsatisfactory work product, require Plaintiff to perform tasks assigned to Mr. Deaton, reduced performance rating(s), failure to promote to the GS-13 level, refusal to permit a ROAD detail, disregard its policies, denial of training, contacted Plaintiff after hours and failed to provide/upload her eOPF and required to train new employee (Mr. Hicks).

148.    There is no legitimate, non-discriminatory reason for Defendant's actions.  Any purported reason offered is pretextual to mask unlawful discrimination.

149.    Due to Defendant's actions, Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering and such impact is permanent.

150.   As a direct and proximate result of Defendant's acts and omissions, Ms. Dupree has suffered substantial damages which will be proven at trial.

**COUNT III**
**Violation of 42 U.S.C. §2000e *et seq.* - Hostile Work Environment**

151.   The factual allegations contained in paragraphs 1-139 are hereby incorporated by reference as if fully set forth herein.

152.   As set forth herein, Defendant created and sustained a hostile work environment for Plaintiff and for the "reasonable person."  Defendant's actions as set forth above included, *inter alia,* coordinated with the EEO Office to deny offering a settlement, transfer of all African-American employees from Ms. Williams' supervision, disregard policies, refused to investigate allegations of disparate treatment, reduced trust among co-workers, made negative comments about Plaintiff, listened at Plaintiff's closed office door after EEO complaint was filed, assignment of work at a higher grade level, allowing Mr. Deaton to receive preferential treatment and produce unsatisfactory work product, require Plaintiff to perform tasks assigned to Mr. Deaton, , reduced performance rating(s), failure to promote to the GS-13 level, contacted Plaintiff after hours, failed to provide/upload her eOPF, reassigned job tasks, denied training, unduly scrutinized work assignments and allowed co-workers to assign her work.

153.   Defendant's conduct was severe or pervasive, humiliating and unreasonably interfered with Plaintiff's work performance.  Defendant's conduct

created an intimidating, hostile and/or offensive work environment.

154.   Plaintiff clearly indicated that the conduct was unwelcome. Plaintiff did not solicit or incite the conduct and she perceived the conduct to be offensive and/or undesirable.

155.   There is no legitimate, non-discriminatory reason for Defendant's actions. Any purported reason offered is pretextual to mask the hostile work environment created and sustained by Defendant.

156.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages which will be proven at trial.

## COUNT IV
## Violation of 42 U.S.C. §2000e *et seq*. - Retaliation

157.   The factual allegations contained in paragraphs 1-139 are hereby incorporated byreference as if fully set forth herein.

158.   By and through the conduct of its employees, including Ms. Williams, Ms. Driscoll and Ms. Olson, Defendant did not afford Plaintiff equal rights under the law and violated Title VII by retaliating against her.

159.   Plaintiff engaged in protected activity.

160.   Defendant, through its aforementioned employees, took a "materially" adverse action against Plaintiff soon after becoming aware of her protected activity that might discourage a reasonable person from participating in protected activity. Defendant's actions as set forth above included, *inter alia,* reduced/lowered

performance rating(s), failure to promote to the GS-13 level, refusal to permit a ROAD detail, interference with and delay of Plaintiff's request for leave under FMLA, coordinated with the EEO Office to deny offering a settlement, disregarded its policies, denied training, reduced trust among co-workers, contacted Plaintiff after hours, failed to provide/upload her eOPF, allow Ms. Williams to discuss Plaintiff's EEO claims with co-workers, reassigned job tasks, unduly scrutinized work assignments and allowed co-workers to assign her work.

161.   A causal connection existed between Plaintiff's activity and the adverse action taken against her.

162.   There is no legitimate, non-discriminatory reason for Defendant's actions. Any purported reason offered is pretextual to mask unlawful discrimination.

163.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages which will be proven at trial.

## COUNT V
## Violation of Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.*, - Disability Discrimination

164.   The factual allegations contained in paragraphs 1-139 are hereby incorporated byreference as if fully set forth herein.

165.   Ms. Dupree had a disability (migraines, depression, back) that substantially limited one or more major life activities for which Ms. Williams was aware.

166.   Ms. Dupree was qualified for her position and was able to perform its essential functions, with or without a reasonable accommodation (which she received).

167.   The circumstances suggest that the employee was subjected to a negative job action based on disability, including *inter alia* non-emergency work questions after hours and denial of training while Ms. Dupree was on vacation and on a documented medical restriction that limited her hours of work.

168.   As a direct and proximate result of Defendant's acts and omissions, Plaintiff has suffered substantial damages which will be proven at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays this Honorable Court:

a.   Award compensatory damages in an amount proven at trial;

b.   Award medical costs and expenses incurred as a result of Defendant's unlawful conduct;

c.   Award lost wages, including back pay and benefits, with pre and post judgment interest;

d.   Award liquidated damages;

e.   Award reasonable attorney fees, costs, and expenses incurred for this action and the underlying proceedings;

f.   Order Defendant to restore Plaintiff's retirement fund and TSP to the

appropriate amounts;

g.     Award Plaintiff an additional amount to account for any taxes she may be called upon to pay in relation to these awards herein;

h.     Order Defendant to appropriately adjust Plaintiff's and Defendant's retirement contributions;

i.      Order Defendant to restore Plaintiff's annual leave hours or, in the alternative, make an equivalent lump sum payment;

j.      Order Defendant to restore Plaintiff's sick leave hours or, in the alternative, make an equivalent lump sum payment;

k.     Order Defendant to approve of Plaintiff's attendance at, and pay the costs of, any training denied to her, and reinstate any other employment benefits denied to her;

l.      Order Defendant to adjust Plaintiff's performance years for all years affected, award Plaintiff an appropriate performance award for all years affected, and expunge all negative comments from Plaintiff's performance evaluations;

m.    Order Defendant to expunge all negative documents and adverse actions from personnel files, SF-50s and eOPF; and

n.     Award such other and further relief as this Honorable Court deems just and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.

Dated:  August 28, 2023                          Respectfully submitted,

*/s/ Julie H. Burke*
Julie H. Burke, Esq.
GA Bar No. 448095
HILL, KERTSCHER & WHARTON
One Overton Park
3625 Cumberland Blvd SE,
Suite 1050
Atlanta, GA 30339-6406
T: 770-953-0995
Email: jb@hkw-law.com

*/s/ Marc E. Pasekoff*
Marc E. Pasekoff, Esq.
VA Bar No. 77171
(*Pro hac vice application
forthcoming)*
SHANNON & WRIGHT
124 S. Royal Street
Alexandria, Virginia 22314
T: 571-620-1930
Email:  mpasekoff@shannonwright.law

*Attorneys for Plaintiff*

31