# Exhibit A

ID# ETZVHUYYX-2XZ
EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**23-A-1724**

**APR 26, 2023 12:01 AM**

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

# STATE COURT OF COBB COUNTY
# STATE OF GEORGIA

CIVIL ACTION NUMBER   23-A-1724

$198.00 COST PAID

porras, Vanessa

_____

**PLAINTIFF**

                                                   **VS.**

SiteMed, Inc.
Walker , Lance

_____

**DEFENDANTS**

## SUMMONS

TO: SITEMED, INC.

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Charles M Dalziel, Jr.**
> **Dalziel Law Firm**
> **680 Village Trace NE**
> **Building 20E**
> **Marietta, Georgia 30067**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 27th day of April, 2023.**

                                   Clerk of State Court



*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia



# STATE COURT OF COBB COUNTY
# STATE OF GEORGIA

TZVHUYYX-2KR
**EFILED IN OFFICE**
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**23-A-1724**

**APR 26, 2023 12:01 AM**

Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

CIVIL ACTION NUMBER  23-A-1724

$198.00 COST PAID

porras, Vanessa

---

**PLAINTIFF**

VS.

SiteMed, Inc.
Walker , Lance

---

**DEFENDANTS**

**SUMMONS**

TO: WALKER , LANCE

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

> **Charles M Dalziel, Jr.**
> **Dalziel Law Firm**
> **680 Village Trace NE**
> **Building 20E**
> **Marietta, Georgia 30067**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 27th day of April, 2023.**

Clerk of State Court



Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

ID# E-TZVHUYYX-WZB
FILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

23-A-1724

APR 26, 2023 12:01 AM

Robin C. Bishop
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

# IN THE STATE COURT OF COBB COUNTY
## STATE OF GEORGIA

**VANESSA PENA PORRAS,**

                    **Plaintiff,**              **CIVIL ACTION NO. _____**

**Vs.**

**SITEMED, INC. and LANCE WALKER,**

                    **Defendants,**

## COMPLAINT

Plaintiff Vanessa Pena Porras files this Complaint against SiteMed, Inc., showing the Court as follows:

1.

SiteMed, Inc., is a Domestic Profit Corporation whose Registered Agent is Lance Walker, 336 Anderwood Ridge, Marietta GA 30064. It is subject to the jurisdiction of the Court.

2.

Walker resides at 336 Anderwood Ridge Marietta GA 30064  and is subject to this jurisdiction of this Court.

3.

Venue is proper in this Court under OCGA 14-2-510 as both Defendants are residents of Cobb County.

4.

Defendants committed illegal discrimination against Porras  as a disabled person ( pregnant woman)  in violation of OCGA 34A-6-1 et seq.

5.

OCGA 34-6A-6 gives an individual with disabilities who is aggrieved by an unfair employment practice against such individual a private right to action against the persons who engaged in the prohibited conduct. Porras has decided to file such action and has consented in writing to the bringing of this action, as required by the statute, in Exhibit A hereto.

Porras  has a variety of remedies available to her under OCGA 34-6A-6 (b) including permanent injunctive relief, reinstatement, and potential upgrading and restoration to her position with SiteMed. Porras  is also entitled to backpay and the award of court costs with reasonable attorney's fees against SiteMed under OCGA 34-6A-6.

6.

Defendants' abuse, private and public, of an individual with disabilities, and its public humiliation of Cook were sufficiently outrageous to constitute intentional infliction of emotional distress, entitling Cook to a judgment against all Defendants in an amount to be determined in the enlightened conscience of the jury for intentional infliction of emotional distress.

7.

Defendants have acted in bad faith and have caused Porras unnecessary trouble and expense.

8.

Accordingly, Porras is entitled to a judgment against Defendantsfor  her expenses of litigation, including reasonable attorneys' fees.

9.

Defendants, as abundantly shown above, acted with specific intent to harm Porras, and are therefore each Defendant is separately liable to Porras for punitive damages under OCGA 51-12-5.1 in an amount without cap, solely to be determined in the enlightened conscience of the jury.

10.

Alternatively, the actions of each Defendant individually were at least willful, wanton, malicious, and showed an entire want of care such that conscious indifference within each of the Defendants to the harm they were causing Porras.

11.

Accordingly, each Defendant is separately liable for punitive damages under the cap, in an amount to be determined in the enlightened conscience of the jury.

WHEREFORE, Porras prays that the court grant her a judgment against Defendants in amounts allowed by law.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this  25th day of April, 2023.

**DALZIEL LAW FIRM**
s/ *Charles M. Dalziel, Jr.*
Charles M. Dalziel, Jr.
Georgia Bar No. 203730
680 Village Trace NE Building  20E
Marietta GA 30060
(404) 735-0438
chuck@dallziellawfirm.com
Attorney for Plaintiff

ID# J-HFJFWWWH-A3D
EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA
23-A-1724

JUL 18, 2023 09:27 AM

Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

## OMNIBUS ORDER TO PERFECT SERVICE

Plaintiffs in the cases listed below commenced their respective civil actions by filing a Complaint in the State Court of Cobb County. Upon filing of the Complaint, Code section 9-11-4 required them to serve Defendants with a copy of a Summons together with the Complaint. Nowhere in the record, however, does it appear Plaintiffs perfected service. Because service should closely follow the filing of a complaint, Plaintiffs in the cases listed below are **HEREBY ORDERED** to serve process and file proof of such service within 20 days of this Order's entry date. Failure to do so will result in a dismissal without prejudice for lack of diligence in pursuing service and want of prosecution.

| | |
|---|---|
| 23-A-847 | 23-A-1775 |
| 23-A-1218 | 23-A-2197 |
| 23-A-1163 | 23-A-2179 |
| 23-A-874 | 23-A-2237 |
| 23-A-868 | 23-A-1849 |
| 23-A-1724 | 23-A-2175 |
| 23-A-1328 | 23-A-2013 |
| 23-A-1822 | 23-A-2233 |
| 23-A-2232 | 23-A-2307 |
| 23-A-1826 | 23-A-1633 |
| 23-A-1634 | 23-A-1632 |

**SO ORDERED** this ___11th___ day of July, 2023.

Janep Manning

Judge Jane P. Manning
State Court of Cobb County

Distributed Electronically through Peach Court to all Counsel of Record

1

ID# E-EWQBD4NV-XB2
FILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**23-A-1724**

JUL 24, 2023 11:09 PM

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

# IN THE STATE COURT OF COBB COUNTY
# STATE OF GEORGIA

**VANESSA PENA PORRAS,**

**Plaintiff,**     CIVIL ACTION NO. <u>23-A-1724</u>

**Vs.**

**SITEMED, INC. and LANCE WALKER,**

**Defendants,**

## AMENDED COMPLAINT

Plaintiff Vanessa Pena Porras files this Complaint against SiteMed, Inc., showing the Court as follows:

1.

SiteMed, Inc. ("Site Med') is a Domestic Profit Corporation whose Registered Agent is Lance Walker, 336 Anderwood Ridge, Marietta GA 30064. SiteMed is subject to the jurisdiction of the Court.

2.

Walker resides at 336 Anderwood Ridge Marietta GA 30064  and is subject to the jurisdiction of this Court.

3.

Venue is proper in this Court under OCGA 14-2-510 as to SiteMed, and Walker is a resident of a Cobb County. Therefore, venue is proper in this Court because both Defendants are residents of Cobb County.

4.

Defendants committed illegal discrimination against Porras as a disabled person (pregnant woman) in violation of OCGA 34A-6-1 et seq.

5.

In late October, 2022, while in the midst of a dispute with defendants about them not properly paying her under the Fair Labor Standards Act, Plaintiff informed Defendants that she was pregnant.

6.

Shortly after delivering the news to Defendants that she was pregnant, Plaintiff was fired.

7.

In the context of the conversations prior to her termination, Plaintiff had emphasized to Defendants that she would be needing both maternity leave and FMLA leave.

8.

Plaintiff's statements about maternity leave and FMLA leave were grounded in her knowledge that other Sitemed employees had been allowed to take maternity leave in the past.

9.

Shortly after Plaintiff became unemployed, she filed a claim for unemployment compensation with the Georgia Department of Labor.

10.

Without legal or factual basis, Sitemed presented information to the Department of Labor contesting Plaintiff's right to unemployment compensation, by advancing a false narrative.

11.

Sitemed provided the Department of Labor with the false information as a part of its continuing campaign of retaliation against Plaintiff, after she had

demanded that she paid all the compensation she had earned, and after she told Defendants not only that she was pregnant, but also that she expected maternity leave and FMLA benefits because of the pregnancy.

12.

The false narrative Defendants supplied led to Plaintiff being disqualified to receive unemployment benefits by the Department of Labor effective October 25, 2022, the day she was fired illegally.

13.

Defendants had actual knowledge that Defendants had no evidence of facts that would be grounds todisqualify Plaintiff from receiving unemployment benefits.

14.

There was no evidence that while employed by Defendants, Plaintiff had failed to obey rules, orders, or instructions from Defendants; and in fact Plaintiff had never failed Defendants in this regard.

15.

There was no evidence that while employed by Defendants, Plaintiff had failed to perform her duties as an employee of Defendants; and in fact Plaintiff had never failed Defendants in this regard.

16.

There was no evidence that while employed by Defendants, Plaintiff was at fault in any way, and no evidence that Plaintiff took deliberate action to hurt Defendants, or that Plaintiff acted with conscious neglect of her duties to Defendant. had failed to perform her duties as an employee of Defendants.

17.

Plaintiff appealed the Department of Labor Disqualification, and a hearing was held on March 14, 2023.

18.

Defendants, being fully aware that Defendants had no evidence to support Plaintiff's disqualification from receiving unemployment benefits, did not attend the appellate hearing, much less provide any evidence or argument in support of the disqualification, because they knew they had acted in bad faith in causing the disqualification without any evidence to support it.

19.

Central to Defendants' effectuated plan of retaliation against Plaintiff was to deny her the unemployment benefits while she was pregnant.

20.

Defendants had actual knowledge that it would be more difficult for Plaintiff to obtain a new job comparable to the job she performed for Defendants, because she was pregnant.

21.

Firing Plaintiff because she was pregnant and had dared to attempt to collect all the pay she had earned from Sitemed, then seeking to deny her unemployment benefits with false statements to the DOL, were acts taken with specific intent to harm Plaintiff.

22.

Defendants, on top of illegally firing Plaintiff, resisted her claim for unemployment benefits through the date of the hearing, March 14, 2023, and through the date of the  Decision, March 20, 2023.

23.

Only after the March 20, 2023 Decision, which was rendered after Defendants willfully failed to appear for the hearing and made a conscious choice not to even try to claim any evidence they had would support disqualification, did Plaintiff become entitled to the unemployment benefits she badly needed, which Defendants had in bad faith soughty

OCGA 34-6A-6 gives an individual with disabilities who is aggrieved by an unfair employment practice against such individual a private right to action against the persons who engaged in the prohibited conduct. Porras has decided to file such action and has consented in writing to the bringing of this action, as required by the statute, in Exhibit A hereto.

24.

Plaintiff has a variety of remedies available to her under OCGA 34-6A-6 (b) including permanent injunctive relief, reinstatement, and potential upgrading and restoration to her position with SiteMed. Plaintff is also entitled to backpay and the award of court costs with reasonable attorney's fees against SiteMed under OCGA 34-6A-6.

25.

26.

Defendants' abuse, private and public, of Plaintiff was sufficiently outrageous to constitute intentional infliction of emotional distress, entitling Plaintiff to a judgment against Defendants in an amount to be determined in the enlightened conscience of the jury for intentional infliction of emotional distress.

27.

Naturally, being pregnant caused significant changes in Plaintiff's hormones. Pregnancy hormones are a significant cause of mood swings in all women. Plaintiff's mood swings were abnormally significant. Having been fired exacerbated Plaintiff's mood swings.

28.

During the early days of gestation, any woman experiences a veritable flood of estrogen and progesterone, both of which negatively affect the mental health of the pregnant woman, such as Plaintiff. Estrogen worked throughout the entire body of the Plaintiff and has been active in the region of the brain that regulates mood. It is well known that estrogen surges are associated with anxiety, irritability, and depression, of the kind that Plaintiff experienced during her

pregnancy, only her symptoms were worse because Defendants had illegally fired her.

29.

It is also well known that the progesterone hormone helps to loose a pregnant woman's muscles and joints and the relaxation it provides prevents early contractions. Progesterone can cause fatigue, sluggishness, and even sadness, all of which Plaintiff suffered to an enhanced degree because of the emotional toil Defendants' illegally firing Plaintiff took on Plaintiff.

30.

Plaintiff was suffering predictable but aggravated depression, anxiety, and mood swings during her pregnancy, and these conditions were exacerbated by the very stigma of mental illness. These conditions inflicted abnormal stress on Plaintiff's body and caused health problems that suggested a scheduled C-Section would be best to deliver the baby.

31.

However, Plaintiff's physical and mental health maladies required the scheduling and performance of an emergency C-section which was followed by complications involving multiple blood transfusions.

32.

The emotional distress Defendants intentionally inflicted on Plaintiff allows her to recover damages from Defendants which must take into account her months of suffering prior to the emergency delivery, the emergency delivery itself, the serious complications that followed, and Plaintiff's ongoing mental distress.

33.

Before she became pregnant, Plaintiff was involved in an ongoing dispute with Defendants about her contentions that she had not been paid properly under the Fair Labor Standards Act and Company Policy. Company policy regarding timekeeping was stated in the Personnel Policies and Procedures Manual for SiteMed North America LLC, which will be added as a party to this case. A copy of the Manual Pages relevant to Plaintiff's underpayment claim is attached hereto as Exhibit A.

34.

Plaintiff complied with the detailed instructions regarding how to report her time. Plaintiff's job was primarily doing "on-site" medical evaluations in places other than Cobb County. Therefore, rules for when Plaintiff went on the clock, breaks, recording travel time, travel time when traveling from home, travel time from a hotel, travel only days, mileage payments when using a personal vehicle, calculation of time when using a SiteMed vehicle, and for calculations when air travel was involved, were included in the Manual, and Plaintiff kept her time accordingly.

35.

Plaintiff was not paid all the compensation she earned under the Manual policies and was not paid in compliance with the FLSA.

36.

Defendant did not want Plaintiff to see how her pay was calculated easily. Thus, when she was paid, no pay stub or memorandum confirming how Plaintiff's pay was calculated was provided to her.

37.

Plaintiff complained about the lack of disclosure about her pay, but instead of simply emailing Plaintiff the memoranda, Defendants told Plaintiff she had to log in and to reach a certain page to obtain the information. Plaintiff was locked out of access to the information frequently.

38.

Plaintiff had expressed her frustration with the short pay and the non-disclosure, and when Plaintiff told Defendants she was pregnant, Defendants were quick then to short her on assignments even at the early stage of her pregnancy, and then to fire Plaintiff because of her pregnancy and because of her assertion of her FLSA rights, and they continued retaliating against her all the way through March 20, 2023 when the disqualification of Plaintiff from recovering unemployment benefits was reversed by the Georgia Department of Labor.

## COUNT ONE: VIOLATIONS OF OCGA 34-6A-1

39.

Defendants committed illegal discrimination against Plaintiff as a disabled person (pregnant woman) in violation of OCGA 34A-6-1 et seq.

40.

Defendants discharged Plaintiff because of Plaintiff's pregnancy in violation of OCGA 34-6A-4.

41.

As a pregnant woman, Plaintiff was an individual with disabilities as defined by OCGA 34-6A-2 (3), in that her pregnancy condition substantially limited one or more of her major life activities, i.e., working. Immediately before she was fired, Plaintiff had to miss a day of work because she was having morning sickness.

42.

The pregnancy was known by Defendants (they had a record of Plaintiff's pregnancy), and in addition, Defendants had actual knowledge that as the pregnancy continued to the due date, Plaintiff would face growing obstacles in attempting to work or ibn carrying out her work duties.

43.

Under the circumstances, Defendants had a legal duty to provide reasonable accommodations to Plaintiff during her pregnancy. Instead they fired her, and

thereafter until March 20, 2023 maintained a false narrative against Plaintiff so that she could not collect unemployment. Indeed, Defendants NEVER stopped retaliating against Plaintiff; only the hearing officer's reversal of the false disqualification for benefits that Plaintiff falsely procured, that Defendants didn't even try to defend at the appellate hearing, stopped Defendants' retaliation.

44.

Before illegally firing Plaintiff, defendants intentionally discriminated against Plaintiff with respect to wages, rates of pay, and other terms and conditions of employment because of her pregnancy, taking away assignments she'd been given because she was pregnant, and by not providing assignments Plaintiff could perform while pregnant.

45.

Both Plaintiff's firing and the contesting of her entitlement to unemployment benefits violated OCGA 34-6A-5, as they constituted discharge and otherwise discrimination in retaliation for Plaintiff asserting her rights as a pregnant employee of Defendants.

46.

Under OCGA 34-6A-6, Plaintiff is entitled to recover back pay from the Defendants from the date of her firing until the date of the judgment in favor of Plaintiff against Defendants. She is also entitled to a judgment for attorneys' fees and costs.

## COUNT TWO: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

47.

Plaintiff is entitled to a judgment against Defendants for intentional infliction of emotional distress in an amount to be determined in the enlightened conscience of the jury, but not less than $500,000.

48.

In regard to this claim, Defendants have undoubtedly acted in bad faith toward Plaintiff and have caused Plaintiff unnecessary trouble and expense in firing her, fraudulently resisting her unemployment claim, and in failing to do anything to mitigate the harm they have caused to Plaintiff.

49.

Accordingly, Plaintiff is entitled to a judgment against Defendants for her expenses of litigation, including reasonable attorneys' fees, under OCGA 13-6-11.

50.

Defendants, as abundantly shown above, acted with specific intent to harm Plaintiff, and are therefore liable to Plaintiff for punitive damages under OCGA 51-12-5.1 in an amount without cap, solely to be determined in the enlightened conscience of the jury, but not less than $1,500,000.

51.

Alternatively, the actions of Defendants were at least willful, wanton, malicious, and showed an entire want of care such that conscious indifference within each of the Defendants to the harm they were causing Plaintiff.

52.

Accordingly, Defendants are liable to Plaintiff for punitive damages at the cap level of $250,000, or in an amount to be determined in the enlightened conscience of the jury.

## COUNT THREE: VIOLATIONS OF FLSA/ACCOUNTING

### 53.

Plaintiff is entitled to a full accounting of her pay and how Defendants calculated it for the entire period of her employment with Defendants, pursuant to the law and in light of Defendants total control of Plaintiff's pay, pursuant to OCGA 23-2-58.

### 54.

To the extent Plaintiff was underpaid, Plaintiff is entitled to a judgment for unpaid time and unpaid overtime in an amount to be proven at trial.

### 55.

Defendants willfully underpaid Plaintiff and willfully violated and intentionally ignored their obligations under the FLSA, entitling Plaintiff to an equal amount as liquidated damages, i.e., double damages, plus reasonable attorneys' fees as calculated in the Atlanta market at the rate of $575.00 per hour.

## COUNT FOUR: FLSA RETALIATION

### 56.

Section 15(a)(3) of the FLSA states that it is a violation for *any person* to **"discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related**

to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." Employees are protected regardless of whether the complaint is made *orally* or *in writing*. Complaints made to the Wage and Hour Division are protected, and **most courts have ruled that internal complaints to an employer are also protected**.

57.

Any **employee** who is **"discharged or in any other manner discriminated against"** because she has filed a complaint against the employer under the FLSA may file a private cause of action seeking appropriate remedies including, but not limited to, employment, reinstatement, lost wages and an additional equal amount as liquidated damages.

58.

Plaintiff elects as her remedies for Defendants' retaliation back pay and lost wages in an amount to be proven at trial, plus the same amount in liquidated damages because Defendants acted willfully, plus attorneys fees at the $575/hr. rate.

WHEREFORE, Porras prays that the court grant her a judgment against Defendants as follows:

(1) Under OCGA 34-6A-6, a judgment against Defendants for back pay from the date of her firing until the date of the judgment in favor of Plaintiff against Defendants, plus a judgment for attorneys' fees and costs.

(2) A judgment against Defendants for intentional infliction of emotional distress in an amount to be determined in the enlightened conscience of the jury, but not less than $500,000, plus expenses of litigation including reasonable attorneys' fees under OCGA 13-6-11, plus punitive damages without cap in amount not less than $1,500,000, or alternatively at the cap of $250,000.

(3) Under the FLSA, a judgment against Defendants for unpaid time and unpaid overtime in an amount to be proven at trial, plus an equal amount as liquidated damages, i.e., double damages, plus reasonable attorneys' fees as calculated in the Atlanta market at the rate of $575.00 per hour.

(4) For FLSA retaliation, a judgment against Defendants for back pay and lost wages in an amount to be proven at trial, plus the same amount in liquidated

damages because Defendants acted willfully, plus attorneys fees at the

$575/hr. rate.

(5) For such other and further relief as the Court deems meet and proper.

PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL

ISSUES SO TRIABLE.

Respectfully submitted this  24th day of July, 2023.

DALZIEL LAW FIRM
s/ *Charles M. Dalziel, Jr.*
Charles M. Dalziel, Jr.
Georgia Bar No. 203730
680 Village Trace NE Building  20E
Marietta GA 30060
(404) 735-0438
chuck@dallziellawfirm.com
Attorney for Plaintiff

# WORKMEN'S COMPENSATION INSURANCE #128

128.0   As required by law, SITEMED shall carry workmen's compensation insurance. This insurance will cover all work-related accidental injuries, illness, or death while on duty.

128.1   All accidents or illness must be reported immediately to the business manager/administrator.

128.2   If medical treatment is necessary, information will be submitted to the insurance carrier to determine if the injury is compensable.

# TIMESHEETS #129

129.0   On Site Timesheets

- It is the responsibility of the lead tech/phase one tech to accurately record start and end times for each tech
  - Start time is the time you are on-site and ready to work. It is not the time you are pulling into the parking lot, changing, grabbing a drink, etc. If you are late to work, that difference will be deducted from your minimum time paid.
    - Phase one- on the first day you are allowed 30 minutes of set up time. Please arrive 30 minutes before the patient start time. Arrival before that will not be paid. On subsequent days, you are allowed 15 minutes of set up time if you were allowed to leave supplies set up.
    - Phase two- on the first day you are allowed 60 minutes of set up time. Please arrive 30 minutes before the patient start time. Arrival before that will not be paid. On subsequent days, you are allowed 30 minutes of set up time if you were allowed to leave supplies set up.
  - End time is the time you leave the building the job is in. Any supply or sample drop off or pick up is paid by travel time via Mapquest submission
  - Please put down the exact time you start and end each day. No rounding up or down
- Lead Techs/ Phase one techs are also required to fill in how many exams and additional services were done each day and add to the timesheet- IT IS VERY IMPORTANT THAT THIS INFORMATION IS ACCURATE. TAKE YOUR TIME AND DOUBLE CHECK WHEN COUNTING
- Timesheets should be completely filled out on a daily basis, and emailed to your Clinical Director at the end of each workday. You may take a picture of the timesheet to email. Do not text timesheets.

129.1   Office Timesheets

- Due on the Monday of each new pay period by 11am to your Clinical Director for approval
- Any variations from published staff schedule must be pre approved by your Clinical Director
- Please put down the exact time you start and end each day. No rounding up or down
- If working a full 8 hours in the office, a 30 minute break is required
- Be very descriptive about what you are working on in the office each day. That information is used for expense reports and is very important for us to monitor staff time on each task.

Ex A

- Write down your time and tasks EACH DAY. It is very hard to try to remember two weeks worth of times and tasks
- Double check your math before submitting
- Entering lab orders at home or at a hotel are paid at the following rates (add to "Other" section on office timesheet):
    - Existing patients: 2 minutes/patient
    - New patients: 3 minutes/patient

# Travel Policy Addendum: SiteMed Food Per Diem, Hours and Travel Policy

This Policy is broken down into 5 main job types at SiteMed:

- start at office/home→end at office/home
- start at home→end at hotel
- start at hotel→ end at hotel
- start at hotel→end at home
- Travel only days


## Start at office/home→End at office/home

Defined as you start at home, work an on-site SiteMed job (excluding office) and end up at home the same day:

- ➢ There will be no per diem for food
- ➢ Minimum pay including travel time:
    - Phase one- 2 hours
    - Phase two- 5 hours
- ➢ Mileage is paid above the standard deduction per the Mapquest map that is submitted
- ➢ Travel time will be paid per the Mapquest map that is submitted
- ➢ Start and End points:
    - Full time employees
        - paid mileage and travel time starting and ending at your assigned office for the job; standard deduction does not apply
    - PRN employees
        - paid mileage and travel time starting and ending at their home address on file

## Start at office/home→End at hotel

Defined as you start at home, work an on-site SiteMed job (excluding office) and end up staying in a hotel room that night:

- ➢ Dinner per diem will be paid
- ➢ Minimum pay including travel time:
    - Phase one- 8 hours- will be issued as a taxable "short day" stipend that will not count toward overtime
    - Phase two- 8 hours

- ➢ Mileage is paid per the Mapquest map that is submitted
- ➢ Travel time will be paid per the Mapquest map that is submitted
- ➢ Start and End points:
  - o Full time employees
    - ▪ paid mileage and travel time starting and ending at your assigned office for the job
  - o PRN employees
    - ▪ paid mileage and travel time starting and ending at their home address on file

## Start at hotel→End at hotel

Defined as you start at a hotel, work an on-site SiteMed job (excluding office) and end up staying in a hotel room that night:

- ➢ Lunch & Dinner per diem will be paid
- ➢ Minimum pay including travel time:
  - o Phase one- 8 hours- will be issued as a taxable "short day" stipend that will not count toward overtime
  - o Phase two- 8 hours
- ➢ Job site→ hotel/ hotel→ job site travel (this also includes to/from travel for Lab pick up/drop off)
  - o Mileage is paid only if mileage exceeds 20 miles one way per the Mapquest map that is submitted
  - o Travel time is paid only if time exceeds 30 minutes one way per the Mapquest map that is submitted

## Start at hotel→End at office/home

Define as you start at a hotel, work an on-site SiteMed job (excluding office) and end at home:

- ➢ Lunch per diem will be paid
- ➢ Minimum pay including travel time:
  - o Phase one- 8 hours- will be issued as a taxable "short day" stipend that will not count toward overtime
  - o Phase two- 8 hours
- ➢ Mileage is paid per the Mapquest map that is submitted
- ➢ Travel time will be per the Mapquest map that is submitted
- ➢ Start and End points:
  - o Full time employees
    - ▪ paid mileage and travel time starting and ending at your assigned office for the job
  - o PRN employees
    - ▪ paid mileage and travel time starting and ending at their home address on file

## Travel only days

Defined as a day you are traveling to a SiteMed job where you are not working on site and your travel time exceeds 6 hours

- ➢ Lunch & dinner per diem will be paid
- ➢ No minimum pay

- ➤ Mileage above the standard deduction per the Mapquest map that is submitted
- ➤ Full travel time will be per the Mapquest map that is submitted
- ➤ Start and End points:
  - ○ Full time employees
    - ▪ paid mileage and travel time starting and ending at your assigned office for the job
  - ○ PRN employees
    - ▪ paid mileage and travel time starting and ending at their home address on file

## Additional Information

If equipment has to be set up the night before a job, such as inside the testing facility, the standard on-site hourly rate will apply for the time it takes. This does not include just dropping off the SiteMed trailer or truck the night before, however travel time and mileage still apply per the policy.

### Mileage & Travel Time

- Mileage is paid at the current IRS rate
- Travel time is paid at a half rate of pay for hourly employees when driving a personal vehicle or riding in a personal or SiteMed vehicle. Exempt (salaried) employees do not get paid additional for travel time
- Travel time is paid at a full rate of pay for hourly employees if driving a SiteMed vehicle, this includes rental vehicles.
- The standard deduction is 30 miles one way from mileage submitted
- Map submission: Mileage and hours are based on **Mapquest** directions that are submitted according to the procedures listed below.
  - ○ You must use Mapquest to submit maps. No other vendor may be used
  - ○ The information sent must contain the starting and ending address, travel time, and mileage
  - ○ The information must be sent via EMAIL to vflores@sitemed.net. Include job name in subject line
- Start and End points
  - ○ SiteMed will only pay mileage and travel time from one of the following addresses
    - ▪ Job site addresses: physical job site location address
    - ▪ Hotel site addresses: physical hotel location address
    - ▪ Home address: home address on file with SiteMed
    - ▪ Office address: GA or NC office address
  - ○ The Clinical Director for each job will determine who and how many people drive. You may also be asked to meet at the office or a central meeting point to ride with other employees or drive/ride in a SiteMed vehicle. If you are not assigned to drive your own vehicle by your Clinical Director and you choose to drive your own vehicle, you will not be paid mileage.
  - ○ Full time employees will be paid travel time (if applicable) and mileage above the standard deduction to a meeting point from the office address.
  - ○ PRN employees will be paid travel time and mileage above the standard deduction to meeting points, including the office, from their home address on file.

Food Per Diems

- Amounts Paid:
  - Breakfast          $6
    - Only applies if hotel doesn't provide breakfast at all or you are unable to attend the hotel breakfast due to the job hours
  - Lunch              $10
  - Dinner             $15
- If SiteMed pays for a lunch or dinner for you, you cannot claim a per diem
- Per Diems are applied automatically and you do not need to submit meal receipts

## Airline Travel (salaried employees are exempt)

- Standard travel time pay for all hourly employees (half rate of pay):
  - 2 hours before originally scheduled flight time
    - If leaving from Atlanta airport 3 hours of travel time before originally scheduled flight will be paid
  - Flight duration
  - 1 hour after flight landing time at final destination
- You will be paid travel time for any delays
- Per diems are paid as defined above
- Parking
  - If charged for parking at an airport, SiteMed will reimburse you with submitted receipt
  - SiteMed will only reimburse the economy parking rate at that particular airport. If you park in any other lot besides the airport's economy lot, you will be responsible for the difference.
- Traveling to and from the airport
  - To/From local airport from home
    - Full time hourly employees will be paid travel time to their local airport from the office address. Mileage is paid above the standard deduction per the Mapquest map that is submitted
    - PRN hourly employees will be paid travel time to their local airport from their home address on file. Mileage is paid above the standard deduction per the Mapquest map that is submitted
  - To/From airport to/from hotel or job site
    - All hourly employees will be paid travel time per the Mapquest map that is submitted

148292

**SHERIFF'S ENTRY OF SERVICE**

Marietta, Georgia       **COBB COUNTY**

Superior Court ☑       State Court ☐

ID# J-MY34ANGG-Q52
⚖ EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**23-A-1724**

AUG 01, 2023 02:57 PM

Robin C. Bishop
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

**Attorney's Address**

Charles M Dalziel J-
Dalziel Law Firm
680 Village Trace NE
Building 20E
Marietta GA 30067

**Name and Address of Party to be Served**

Lance Walker
336 Anderwood Ridge
Marietta GA 30064

_____

_____
                                    Garnishee

Civil Action No. 23-A-1724

Date Filed 04/26/2023

_____

Vanessa Pena Porras

_____
                                    Plaintiff

VS.

SiteMed, Inc. and
Lance Walker

                                    Defendant

---

**PERSONAL** ☑   I have this day served the defendant _Lance Walker_ personally with a copy of the within action and summons.

**NOTORIOUS** ☐   I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☐   Served the defendant _____ a corporation

by leaving a copy of the within action and summons with _____
in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐   I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐   Diligent search made and defendant _____
not to be found in the jurisdiction of this Court.

---

This _____30_____ day of _July_, 20 23

                                    Lucas Dykstra
                                    DEPUTY

SHERIFF DOCKET _____   PAGE _____

                                    15044
                                    COBB COUNTY, GEORGIA

WHITE: Clerk       CANARY: Plaintiff Attorney       PINK: Defendant

148291

1:21-J-MX34ANGG-D55
E-FILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

23-A-1724

AUG 01, 2023 02:57 PM

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

A/80

**SHERIFF'S ENTRY OF SERVICE**

Marietta, Georgia    COBB COUNTY

Superior Court ☒    State Court ☐

**Attorney's Address**

Charles M Dalziel Jr
Dalziel Law Firm
680 Village Trace NE
Building 20E
Marietta GA 30067

**Name and Address of Party to be Served**

SiteMed, Inc.
Reg Agent Lance Walker
336 Anderwood Ridge
Marietta GA 30064

Civil Action No. 23-A-1724

Date Filed 04/26/2023

Vanessa Pena Porras

_____ Plaintiff

VS.

SiteMed, Inc. and Lance Walker

_____

_____ Garnishee                    Defendant

**PERSONAL** ☐ I have this day served the defendant _____ personally with a copy of the within action and summons.

**NOTORIOUS** ☐ I have this day served the defendant _____ by leaving a copy of the action and summons at his most notorious place of abode in this County.

Delivered same into hands of _____ described as follows age, about _____ years; weight, about _____ pounds; height, about _____ feet and _____ inches, domiciled at the residence of defendant.

**CORPORATION** ☒ Served the defendant Lance Walker "Sitemd Inc _____ a corporation by leaving a copy of the within action and summons with Lance walker _____ in charge of the office and place of doing business of said Corporation in this County.

**TACK & MAIL** ☐ I have this day served the above styled affidavit and summons on the defendant(s) by posting a copy of the same to the door of the premises designated in said affidavit, and on the same day of such posting by depositing a true copy of same in the United States Mail, First Class in an envelope properly addressed to the defendant(s) at the address shown in said summons, with adequate postage affixed thereon containing notice to the defendant(s) to answer said summons at the place stated in the summons.

**NON EST** ☐ Diligent search made and defendant _____ not to be found in the jurisdiction of this Court.

This ____30____ day of ___July___, 20_23_

_____
DEPUTY
Lucas Dykstra

_____
COBB COUNTY, GEORGIA
1542

SHERIFF DOCKET _____    PAGE _____

WHITE: Clerk    CANARY: Plaintiff Attorney    PINK: Defendant