UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

TRAVIS C. KAUFFMANN,            )
                                )
        Plaintiff,              )   Civil Action File
                                )   No. _____
v.                              )
                                )
KRISTINE KAUFFMANN HOPE,        )
                                )
        Defendant.              )
                                )
_____ )

## COMPLAINT

COMES NOW Plaintiff Travis C. Kauffmann ("Travis" or "Plaintiff") and files this Complaint against Defendant Kristine Kauffmann Hope ("Kristine" or "Defendant") and shows the Court the following:

## PARTIES

1.

Plaintiff Travis is an individual and is a citizen and resident of New Castle County, Delaware. Travis is the sole beneficiary of trust that existed and exists for his personal benefit as described herein. The assets of that trust were removed from the trust by Defendant Kristine as described herein, and Travis has been denied the benefit of the trust that existed and exists for his benefit and the substantial assets

that he has been wrongfully deprived of.

2.

Defendant Kristine is an individual and is a citizen and resident of Fulton County, Georgia.  Kristine is Travis's aunt and is the trustee of the trust to which Travis is the sole beneficiary.  As described herein, Kristine transferred away all assets in the trust without the authority to do so and has deprived Travis of the rights and benefits of the trust and its assets to which he was rightfully entitled.

## JURISDICTION AND VENUE

3.

For purposes of diversity jurisdiction, the parties are citizens of different states, with Plaintiff Travis a citizen of Delaware and Defendant Kristine a citizen of Georgia.

4.

The amount in controversy, exclusive of costs and interest, is in excess of $75,000.

5.

This Court has jurisdiction in this case because the parties are diverse under U.S.C. § 1332 and the amount in controversy is in excess of $75,000.

6.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides within this judicial district and a substantial part of the events giving rise to the claims occurred within this judicial district.

**FACTUAL BACKGROUND**

7.

On March 5, 2008, Travis's grandmother, Suzanne M. Kauffmann, established the Craig C Kauffmann Trust (the "Craig Kauffmann Trust"), with Howard Kauffmann (Travis's grandfather) appointed and serving as the initial trustee.  A true and correct copy of the Craig Kauffmann Trust is attached hereto as "**EXHIBIT A**".  The Craig Kauffmann Trust was established for the benefit of Craig C. Kauffmann ("Craig") and his descendants.  Craig was the father of Travis, and Travis was Craig's only child.

8.

Pursuant to the terms of the Craig Kauffmann Trust, the trustee was authorized to distribute income and principal to Craig and Craig's descendants during his lifetime in accordance with the standards set forth therein. The Craig Kauffmann Trust granted Craig a testamentary general power of appointment to appoint the Craig Kauffmann Trust assets to any individual, any charitable organization, Craig's

estate, Craig's creditors, or the creditors of Craig's estate as Craig may specify in his Last Will and Testament. In default of the exercise of this power of appointment, the Craig Kauffmann Trust assets were directed to distribute outright to Craig's then living descendants, per stirpes; provided, however, that any share established for a beneficiary was directed to be retained in trust until the beneficiary reached age 35, at which time said share was to be distributed to said beneficiary.

9.

Craig died on April 17, 2012.  Craig died intestate without having exercised his general power of appointment under the Craig Kauffmann Trust such that Travis is the sole heir and beneficiary of Craig's probate estate.

10.

On or about July 9, 2013, CCK Management, LLC, a Georgia limited liability company (formerly known as "CCK Trust Management, LLC") was formed ("CCK Management").  The Operating Declaration of CCK Management dated September 4, 2013 (the "Operating Declaration") states that Kristine is the sole Member and Kristine and Michael P. English ("English") are appointed as Co-Managers.

11.

On or about July 9, 2013, CCK Investments, LLLP, a Georgia limited liability limited partnership, was formed by Howard Kauffmann, as trustee of the Craig

Kauffmann Trust, ("CCK Investments").   Its Agreement of Limited Partnership dated September 4, 2013 (the "Agreement of Limited Partnership") states that CCK Management is the sole General Partner of CCK Investments, owning a 00.01% General Partnership Interest in CCK Investments, and the Craig Kauffmann Trust is the sole Limited Partner of CCK Investments, owning a 99.99% Limited Partnership Interest.

12.

The Agreement of Limited Partnership of CCK Investments states that CCK Management transferred cash into CCK Investments in the amount of $300.00 in exchange for its 00.01% General Partnership Interest (the "CCK Management Contribution"), and that Howard Kauffmann, as trustee of the Craig Kauffmann Trust, transferred cash in the amount of $2,999,700.00 into CCK Investments in exchange for its 99.99% Limited Partnership Interest (the "Craig Kauffmann Trust Contribution").

13.

The Craig Kauffmann Trust Contribution was not made to CCK Investments in 2013, and no significant assets were in fact transferred from the Craig C. Kauffmann Trust to CCK Investments, LLLP prior to 2019.

14.

Howard Kauffmann resigned as trustee on April 13, 2016, and was succeeded by Kristine as trustee of the Craig Kauffmann Trust.  Howard Kauffmann thereafter passed away on or about May 3, 2016.

15.

Pursuant to the express terms of the Craig Kauffmann Trust, Kristine, as trustee, was and is required to "furnish at least annually to each beneficiary entitled to receive income hereunder a statement of all receipts and disbursements made hereunder."  Kristine failed to provide the required statements to Travis.

16.

Pursuant to the express terms of Craig Kauffmann Trust, all of the assets of the Craig Kauffmann Trust were required to be distributed outright to Travis upon Travis attaining the age of thirty-five (35).

17.

On or about June 26, 2019, just weeks prior to Travis's 35th birthday, Kristine, as trustee of the Craig Kauffmann Trust, transferred essentially all of the assets of the Craig Kauffmann Trust out of the Craig Kauffmann Trust without authorization and specifically with the intent to deprive Travis of the assets of the trust upon Travis

reaching 35 years of age.

18.

Instead of an outright distribution of trust assets, an illiquid partnership interest was transferred to Travis, the control of which interest and assets remains with Kristine, and prevented Travis from obtaining full use and the beneficial enjoyment of the Trust assets to which he was entitled.

19.

The assets of the Craig Kauffmann Trust had been primarily held in an investment account at Morgan Stanley Smith Barney ("Morgan Stanley"), but Kristine transferred the assets to a new account established at Morgan Stanley in the name of CCK Investments, with such transferred cash and securities having a value in excess of $4,300,000.

20.

At the time of the transfers of the funds from the Craig Kauffmann Trust to CCK Investments, Kristine was the sole member of the general partner of CCK Investments.

21.

As a result of the above-referenced transfers orchestrated by Kristine, the transferred assets were retained in CCK Investments and not distributed outright to

Travis upon Travis's 35th birthday despite Travis's entitlement to said funds under the express terms of the Craig Kauffmann Trust.

22.

Not only did Kristine serve as the trustee of the Craig Kauffmann Trust, and serves as Co-Manager of CCK Management, which is the General Partner of CCK Investments, but Kristine also serves as Trustee of the SMK 2013 Travis Kauffmann Irrevocable Trust u/a/d July 2, 2013 that was established by Travis's grandmother, Suzzanne Kauffmann.  Pursuant to the terms of the Travis Kauffmann Trust, during Suzanne Kauffmann's lifetime, Travis was the permissible income and principal beneficiary of the trust.  Upon Suzanne Kauffmann's death, Travis became the beneficiary of a Descendants Separate Trust that authorizes income and principal distributions for Travis, and Travis's descendants, in accordance with the terms and standards set forth therein. The SMK 2013 Travis Kauffmann Irrevocable Trust, and the Descendants Separate Trust created thereunder, are collectively referred to herein as the "Travis Kauffmann Trust."

23.

Not only did Kristine transfer the Craig Kauffmann Trust's assets out of the trust and out of the reach of Travis, but Kristine, acting as the sole member of the general partner of CCK Investments, also largely denied Travis access to the funds

held in CCK Investments following the transfer of those assets from the Craig Kauffmann Trust.  By way of example, in or about February 2020, Travis, who had been accepted to a medical fellowship program in Wilmington, Delaware, and was therefore moving from Memphis, Tennessee to Wilmington, asked his aunt Kristine to provide funds and a "Proof of Funds" letter so that he could purchase a home for him and his wife in a safe neighborhood near the hospital where he would be working.  Travis specifically wrote to Kristine that "[o]ur priorities are being in a location that is safe, close to work for both of us, in a home that has a garage, and will keep its resale value."  Not only did Kristine refuse the request for the needed funds, but Kristine responded to the request by stating, "I am too busy to deal with this at the moment.  Honestly, I think I'm willing to only go as high as we discussed on the earlier home.  If you want it [the house in the safe neighborhood near the hospital], you can put your own funds into it."  Kristine's refusal and her suggestion that Travis "put his own funds into it" ignored the fact that the money in CCK Investments actually belonged to Travis, should have been distributed to him, and he did not have sufficient funds that could be allocated to the purchase of the reasonably desired home.

24.

Not only did Kristine transfer the Craig Kauffmann Trust's assets out of the

trust and out of the reach of Travis, but Kristine has used those funds and depleted the assets in CCK Investments' account(s) to try to defend herself against her own egregious misconduct.   Effectively, Kristine is improperly using Travis's own money to defend against Travis's efforts to recover what rightfully belongs to him, thus adding insult to injury, and at the same time increasing the damages suffered by Travis as a result of Kristine's misconduct.

25.

Kristine has frequently demonstrated and specifically expressed animus towards Travis and his immediate family members.  This personal animus has driven Kristine's actions in depriving Travis of the funds to which he is entitled.

## COUNT I

### Breach of Fiduciary Duty

26.

Travis incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

27.

As a result of Kristine's position as Trustee of the Craig Kauffmann Trust, Kristine owed Travis fiduciary duties of care.

28.

Kristine owed duties to Travis, as the sole beneficiary of the Craig Kauffmann Trust, to (among other things) act in accordance with the express terms of the Craig Kauffmann Trust and manage, oversee, protect and safeguard the assets of the Craig Kauffmann Trust for the benefit of Travis.  In particular, Kristine had duties to periodically report financial information to Travis, and to distribute all funds in the Craig Kauffmann Trust to Travis upon Travis reaching 35 years of age.

29.

Kristine breached her fiduciary duties to Travis by, among other things: (1) failing and refusing to provide Travis with any financial information concerning the Craig Kauffmann Trust; (2) failing and refusing to distribute to Travis the funds that had been maintained in the Craig Kauffmann Trust when Travis reached the age of 35; (3) transferring all of the assets from the Craig Kauffmann Trust to CCK Investments in order to ensure that Travis had no access to said funds and no ability to manage, control, use or distribute any of those funds to himself, or to anyone else of his choosing, for his benefit or for any purpose, including, for example, to purchase a home for him and his wife in a safe neighborhood near the places where he and his wife work; (4) transferring said funds into CCK Investments, an entity over which Kristine exercises complete control and over which she has a personal

interest; and (5) using her control over the funds in CCK Investments to pay out funds from CCK Investments' account(s) to defend herself against her own egregious misconduct.

30.

In addition to causing damages to Travis in the principal estimated amount of more than $6,000,000 (the estimated current value of the funds transferred out of the Craig Kauffmann Trust just prior to Travis's 35th birthday), Kristine also proximately caused Travis to be further damaged by both mismanaging the assets and depriving Travis of the use of the funds withdrawn and the increased value of those funds that would have been recognized and achieved over time had said funds been properly managed.

31.

Since the time Kristine improperly seized control over the funds due to be distributed outright to Travis, upon information and belief, the value of generally recognized market indices (e.g. Dow Jones Industrial Average, S&P 500 market index) have increased substantially more than the value of the assets kept in CCK Investment and controlled by Kristine.  Had Kristine properly managed and controlled the funds, the funds that should have been available for the benefit of Travis would have increased in value at approximately the same rate as these

investment market benchmarks, but, upon information and belief, they have not because of Kristine's misconduct and willful neglect. Travis was damaged by the loss of that growth in value as a direct and proximate result of Kristine's misconduct, in an amount to be proven at trial but believed to be in excess of an additional $1,000,000.

32.

By engaging in the conduct described and effecting and directing the transfer of funds out of the Craig Kauffmann Trust, Kristine willfully, maliciously and/or recklessly breached her fiduciary duties of care owed to Travis thus justifying an award of punitive damages in an amount to be determined by the enlightened conscience of a jury.

33.

As a direct and proximate result of Kristine's breaches, Travis was damaged in an amount to be proven at trial but believed to be in a principal amount in excess of $7,000,000, as well as continuing interest, and consequential damages and punitive damages.

34.

Travis is entitled to recovery of these direct, consequential and punitive damages, plus interest, attorneys' fees and costs.

## COUNT II

## Breach of Contract

35.

Travis incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

36.

The Craig Kauffmann Trust is a contract between its settlor and trustee(s).  It is also an agreement with the intended and specifically identified beneficiaries of the trust.   Kristine freely and willingly agreed to serve as Trustee of the Craig Kauffmann Trust and agreed to abide by the term so the Craig Kauffmann Trust.

37.

Pursuant to the terms of the agreements between the parties as set forth in the Craig Kauffmann Trust, all assets and funds that were held in the Craig Kauffmann Trust were to be retained in the trust until the beneficiary (Travis) reached age 35, at which time said funds were to be distributed outright to the beneficiary (Travis).

38.

Kristine breached the Craig Kauffmann Trust agreement by (1) failing and refusing to provide Travis with any financial information concerning the Craig Kauffmann Trust as required; (2) failing to retain the trust funds in the trust until

Travis reached age 35; and (3) failing and refusing to distribute said funds outright to Travis when he turned 35 years of age.

39.

Travis has suffered damages related to the breaches of contract that have occurred and is entitled to recover damages in an amount to be proven at trial, but in a principal amount believed to be in excess of $4,300,000 (as valued at the time of the improper failure and refusal to distribute the funds to Travis), as well as continuing interest and consequential damages.  Travis is entitled to recovery of these direct and consequential damages, plus interest, attorneys' fees and costs.

## COUNT III

## Attorneys' Fees

40.

Travis incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set out herein.

41.

Kristine has acted in bad faith, has been stubbornly litigious, and/or has caused Travis unnecessary trouble and expense.

42.

Travis has incurred attorneys' fees and expenses in connection with having to

file and pursue the claims of this lawsuit.

43.

As a result, Travis is entitled to an award of his reasonable attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Travis prays:

(1)     That the Court enter judgment on all counts in his favor;

(2)     That he recovers actual and consequential damages in an amount to be proved at trial, but in no event less than the amount of $7,000,000 plus applicable pre-judgment and post-judgment interest;

(3)     That he recovers punitive damages in an amount to be proven at trial and determined by the enlightened conscience of a jury;

(4)     That all costs of this action be taxed against Defendant Kristine, and that the Court enter an award of attorney's fees, costs and expenses against Defendant Kristine and in favor of Plaintiff Travis;

(5)     That Kristine be enjoined and prevented from using any funds from the Craig Kauffmann Trust or CCK Investments to defend herself from the claims asserted against her herein, both during the pendency of this action or at any time thereafter;

(6)     That all issues of fact be tried by a jury; and

(7)     That Plaintiff recover such other and further relief as is just and proper.

Dated this 28th day of August, 2023.

Respectfully submitted,


By: /s/ Scott M. Ratchick
SCOTT M. RATCHICK
Georgia Bar No. 595136


CHAMBERLAIN, HRDLICKA, WHITE,
   WILLIAMS & AUGHTRY, P.C.
191 Peachtree Street, N.E., 45th Floor
Atlanta, Georgia  30303
(404) 659-1410
(404) 659-1852 (facsimile)
scott.ratchick@chamberlainlaw.com

*Counsel for Plaintiff*
*Travis C. Kauffmann*

31027858.v1