IN THE SUPERIOR COURT OF WARE COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| ISAAC BEASLEY, <br> GDC # 956581, | * <br> * <br> * | CIVIL ACTION NO. <br> 15V-0597 |
| Petitioner, | * <br> * | |
| v. | * <br> * | |
| THOMAS GRAMIAK, Warden, | * <br> * | HABEAS CORPUS |
| Respondent. | * | |

ORDER ON REMAND

This case is before the Court on remand from the Georgia Supreme Court for this Court to address, consistent with the Supreme Court's opinion, Petitioner's claims of ineffective assistance of counsel. *See Gramiak v. Beasley*, 304 Ga. 512, 820 S.E.2d 50 (2018).

Based on the record established at the May 12, 2016[1] evidentiary hearing, and arguments made at the hearing on April 12, 2021[2], this Court DENIES relief, based on the following findings of fact and conclusions of law.

---

[1] Citations to the May 12, 2016, evidentiary hearing transcript are "HT" followed by page number(s).

[2] The judge who presided at the May 2016 evidentiary hearing left the bench of this Court prior to the April 2021 hearing on remand. This order was prepared before the transcript of the April 2021 hearing was prepared; at this hearing, neither party tendered evidence.

## I. PROCEDURAL HISTORY

Petitioner Beasley filed this petition a for writ of habeas corpus challenging the validity of his October 2012 DeKalb County jury trial convictions for rape, aggravated sodomy, kidnapping with bodily injury, and aggravated assault, which were affirmed on direct appeal in 2015. *Beasley v. State*, No. A14A1522 (Ga. App. Mar. 16, 2015) (unpublished); (HT. 753-67). This Court adopts and incorporates by reference herein the procedural history set out by the Georgia Supreme Court in the habeas appeal. *See Gramiak*, 304 Ga. at 512.

In its September 2017 final order, this Court granted habeas corpus relief on Petitioner's claims that he received ineffective assistance of counsel, concluding that (1) "trial counsel provided deficient representation when he failed to advise [Petitioner] that he would face a mandatory life sentence if convicted of kidnapping with bodily injury"; (2) "appellate counsel was ineffective for failing to raise the issue on appeal because there was a reasonable probability of a different result on appeal if the issue had been raised"; and (3) "finding that, had [Petitioner] been advised of the mandatory sentence he was facing, he would have pleaded guilty and would have been sentenced to serve ten years in prison." *Id.* at 512-13.

The Warden appealed that decision and the Supreme Court vacated this Court's order granting relief and remanded the case for this Court to determine if appellate counsel's performance was deficient and "to apply the prejudice standard

for trial counsel's performance set forth by the United States Supreme Court in *Lafler*[3] and *Frye*[4]." *Gramiak*, 304 Ga. at 523. Part of that prejudice analysis calls for this Court "to make a finding based on evidence in the record as to whether Beasley would have accepted the State's plea offer if had he been adequately afforded effective assistance of trial counsel who adequately informed him that he would face a mandatory life sentence upon conviction of the kidnapping charge." *Id.* at 519[5].

## II.   THE GROUND FOR RELIEF

### INEFFECTIVE ASSISTANCE OF COUNSEL

In the lone ground before this Court, Petitioner alleges that he received ineffective assistance of counsel when his appellate counsel did not raise "the claim of trial counsel not providing the full range of sentence, that trial would subject him to," his argument being that had trial counsel informed him that his kidnapping with bodily injury conviction required a maximum sentence of life, he

---

[3] *Lafler v. Cooper*, 566 U.S. 156 (2012).
[4] *Missouri v. Frye*, 566 U.S. 134 (2012).
[5] The Supreme Court noted that if this Court were to determine that "there was no reasonable probability that Beasley would have accepted the plea but for the deficient performance of trial counsel, then applying the *Lafler* test, the court would be required to deny relief. *Gramiak*, 304 Ga. at 519. That would mean, in turn, that he could not establish prejudice from appellate counsel's failure to raise the issue on appeal. *Id.* at 519-20.

would not have gone to trial and instead would have accepted the State's plea offer.

## Findings of Fact

Gerard Kleinrock was appointed to represent Petitioner for his motion for new trial and eventual appeal. (HT. 11, 13). After his admission to the Georgia Bar in 1996, Mr. Kleinrock tried death penalty cases for approximately two years, after which he joined the DeKalb County Public Defender's Office, where he worked first as a trial attorney until 2005, when he became the appellate attorney for the office. (HT. 11-12). At the time he represented Petitioner, Mr. Kleinrock estimated that he had handled closed to 100 appeals. (HT. 12).

Upon his appointment, Mr. Kleinrock chiefly scoured the transcript for potential issues. (HT. 13-14). Mr. Kleinrock also had considerable communication with Petitioner's fiancé, who routinely provided him with suggestions from Petitioner about potential issues to raise. (HT. 14). He also spoke with trial counsel and had an extensive discussion about the case with trial counsel's investigation. (HT. 16). Mr. Kleinrock amended and then litigated the motion for new trial on a variety of issues, including aa claim that "[t]rial counsel rendered ineffective assistance by not advising [Petitioner] of the applicable post-trial sentence[.]" (HT. 181).

Mr. Kleinrock called Petitioner's trial counsel, Robert Glickman, as a witness at the motion for new trial hearing. (HT. 636). At that hearing, Mr. Glickman testified as follows about Petitioner's theory of defense:

> Well, the defense in the case was entirely dependent upon the story that [Petitioner] had to tell that he met a prostitute one night; that they engaged in sexual relations in exchange for payment; that they smoked marijuana together; that it was consensual interaction; that he left her and that was the end of it. It was completely contrary to the alleged facts in the case.
>
> The investigation, which we conducted, resulted in finding a gentleman that she had mentioned in her interview and that she had talked about in our discussions with our investigator.
>
> We found information about her that indicated that there was a very strong likelihood that she led a desolate life and was involved in drug activity and was involved with this individual who we had found through our investigations.
>
> So we found a gentleman who had told us a story about this woman, and when you tie together all of these plot points, we felt that we had a very strong case to undermine her credibility and that she wasn't in fact a prostitute.

(HT. 638-39). Mr. Glickman testified further:

> Our theory wasn't necessarily that there was a second sexual assault. Our theory was that [Petitioner] bought the services of a prostitute; had sex with her.
>
> Then at some point, she was beaten up by someone else. For a variety of reasons, in an attempt to conceal her activities as a prostitute or a drug user for any reasons that she was not [to] declare her activities to the rest of the world, she came up with a lie that she had been attacked by him for a rape and physical assault, as opposed to maybe she was beaten up by her pimp or she was beaten up by another customer.

> There was a disconnect between the beating and the sexual activity. It didn't seem as though we were going to be able . . . assert [that] there was another individual who had sex with her that night.
>
> It was just that she apparently had sex with [Petitioner], but our defense was someone else beat her and that [Petitioner's] sex with her wasn't rape. It was consensual.

(HT. 642-43)[6]. When asked by the State on cross, "Did [Petitioner] agree with the theory of the case that you developed," Mr. Glickman responded, "I think it would be more accurate to say that I agreed with him on the defense that he asserted to the charge." (HT. 653).

The trial transcript reflects that on the first morning of trial, prior to the start of trial, the prosecutor (Mr. Dunaway), the court, and Mr. Glickman had the following exchange:

> The Court: And what is the maximum sentence this defendant would face if convicted at trial on all counts?
>
> Mr. Dunaway: Rape is life; aggravated sodomy would be life; kidnapping with bodily injury, I believe the only sentence on that is life; then aggravated assault is twenty; so three life sentences plus twenty years would be the maximum sentence.
>
> The Court: Mr. Glickman, you've discussed the plea offer from the State with defendant?
>
> Mr. Glickman: Yes.

---

[6] Mr. Glickman implemented this strategy at trial. *See* HT. 389, 398-402, 406-413, 514-16, 523-24, 526.

> The Court: And he's aware of the maximum sentence if convicted at trial?
>
> The Defendant: That's fine.
>
> Mr. Glickman: He is.

(HT. 225-26).

At the motion for new trial, Mr. Glickman testified as follows about his discussions with Petitioner about the State's plea offer:

> The Supreme Court requires that I communicate a plea offer to my client. In some situations, I am compelled to advocate for a plea because of my consideration of the essence of the case.
>
> My feelings about it are secondary to the desires and concerns of the Defendant. [Petitioner] was very emotionally distraught being a Defendant in this case. He was a delicate individual who I had to handle extremely delicately.
>
> He had seem to make it clear to me that he did not want to talk about plea deals, and when I discussed it earlier, I got the feeling that it was destructive to our relationship to get into that.
>
> His focus was on contesting the facts in the case as presented by the State.

(HT. 639). Mr. Glickman testified that the time Petitioner would serve if convicted on all of his counts "wasn't a substantial focus of our discussions[.]" (HT. 637).

Petitioner did not testify at either his trial or motion for new trial. *Gramiak*, 304 Ga. at 516 (I)(C). Petitioner declined to testify before this Court. (HT. 39-40)

Following the denial of the motion for new trial, Mr. Kleinrock abandoned his claim related to trial counsel not explaining Petitioner's sentencing exposure to

7

him and instead elected to raise three issues on appeal, two dealing with venue. (HT. 14-15). Mr. Kleinrock explained that he will try not to file briefs with a multitude of issues, and instead attempt to focus on the few enumerations which he believed have the greatest chance of success; he employed this strategy in Petitioner's case. (HT. 15-16).

## Conclusions of Law

Petitioner has the burden to show that appellate counsel's performance was deficient and that he was prejudiced by the alleged errors of counsel in order to satisfy the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-pronged test, both of which must be proven by a defendant to prevail on a claim of ineffective assistance.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreasonable.

*Strickland*, 466 U.S. at 687.

As to the first prong, this Court's scrutiny of an attorney's performance must be "highly deferential." *Strickland*, 466 U.S. at 689.

him and instead elected to raise three issues on appeal, two dealing with venue. (HT. 14-15). Mr. Kleinrock explained that he will try not to file briefs with a multitude of issues, and instead attempt to focus on the few enumerations which he believed have the greatest chance of success; he employed this strategy in Petitioner's case. (HT. 15-16).

## Conclusions of Law

Petitioner has the burden to show that appellate counsel's performance was deficient and that he was prejudiced by the alleged errors of counsel in order to satisfy the standard of *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* sets forth a two-pronged test, both of which must be proven by a defendant to prevail on a claim of ineffective assistance.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreasonable.

*Strickland*, 466 U.S. at 687.

As to the first prong, this Court's scrutiny of an attorney's performance must be "highly deferential." *Strickland*, 466 U.S. at 689.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.*

As to the prejudice prong:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Strickland*, 466 U.S. at 694.

As the Supreme Court made clear in its decision in the habeas appeal, where the claim is that appellate counsel was ineffective for not raising ineffective assistance of trial counsel on appeal, "two layers of fact and law are involved in the analysis of the habeas court's decision." *Gramiak*, 304 Ga. at 513. To find that appellate counsel provided ineffective assistance, a reviewing court must determine that appellate counsel's performance was deficient in not raising the issue. *Id.* A demonstration of prejudice "requires a showing that, had the ineffective assistance of trial counsel been raised on appeal, a reasonable probability exists that the outcome of the appeal would have been different." *Id.* "This, in turn, requires a finding that trial counsel provided deficient representation and that the defendant was prejudiced by it." *Id.*

The United States Supreme Court addressed the right to effective assistance of counsel during the plea-bargaining process in *Lafler* and *Frye*. *Frye*, 566 U.S. 134. As the Supreme Court has since observed, and as the Georgia Supreme Court acknowledged in the appeal of this case, "*Frye* and *Lafler* articulated a *different* way to show prejudice, suited to the context of pleas not accepted, not an additional element to the *Hill* inquiry." *Lee v. United States*, 582 U.S. ___, 137 S.Ct. 1958, 1965 n.1 (2017) (emphasis in original); *Gramiak*, 304 Ga. at 515 (I)(B) n. 3.

*Lafler* addressed the question about "how to apply *Strickland*'s prejudice test where ineffective assistance resulted in a rejection of the plea offer and the defendant is convicted at the ensuing trial." *Lafler*, 566 U.S. at 163. The Court in *Lafler* noted that the prejudice alleged was the defendant having to stand trial, as opposed to choosing to waive it. *Lafler*, 566 U.S. at 163-64.

> In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164. *See also Frye*, 566 U.S. at 147. The Georgia Supreme Court has adopted this standard. *See Gramiak*, 304 Ga. 512.

Petitioner alleges that his appellate counsel should have raised on appeal that he received ineffective assistance of trial counsel for not informing him properly about his sentencing exposure. *Gramiak*, 304 Ga. at 512. Petitioner has not satisfied his burden under *Strickland* and further defined by *Frye* and *Lafler* as to the claim of ineffective assistance of counsel. This Court concludes that Petitioner has not demonstrated prejudice from trial counsel's performance because he has not shown that he would have accepted the plea offer. Accordingly, Petitioner has demonstrated neither deficient performance of appellate counsel nor prejudice from appellate counsel's decision to not raise this trial counsel ineffectiveness claim in his direct appeal.

As the Georgia Supreme Court observed in its decision in the habeas appeal, the third criterion discussed in *Lafler* and *Frye*, i.e., that the sentence under the terms of the plea offer would have been less severe than the sentence imposed after trial "is readily established in this case." *Gramiak*, 304 Ga. at 516. "It is the first and second criteria that pose difficult issues in this case." *Id.*

The Court noted that, as to whether the plea offer would have been presented to the trial court, "the record reflects no intervening circumstances that might have prompted the State to withdraw its plea offer since the plea

hearing was held immediately prior to the trial's commencement." *Id.* But the conclusion that the plea offer would have been presented "also requires a finding that Beasley would have accepted the plea had he been advised by counsel that a life sentence was mandatory for a conviction for the kidnapping with bodily injury charge." *Id.*

> No *direct evidence* was presented to the habeas court on this issue. Beasley did not provide sworn testimony at the habeas hearing or at the motion for new trial hearing.

*Id.* (emphasis added).

Instead, all that is before this Court from Petitioner as to whether he would have accepted the State's plea offer came in the form of Petitioner's argument to this Court. However, "[a]rguments and representations made in court briefs . . . do not constitute record evidence to support a finding of fact." *Gramiak*, 304 Ga. at 516 (internal citation omitted).

As the United States Supreme Court made clear in *Lee*, courts should not upset convictions solely because of post hoc assertions by a defendant that he would have pleaded guilty, but should also look for "contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee*, 137 S.Ct. at 1967. *See also Yarn v. State*, 305 Ga. 421, 427(4), 826 S.E.2d 1 (2019). The only "contemporaneous evidence" from Petitioner as to what he wanted to do is the pre-trial discussion where he expressly *rejected* the plea offer after

the prosecutor informed him on the record that a life sentence was the only available sentence if he were found guilty of kidnapping with bodily injury, as discussed above. This does not support Petitioner's current claim that he was interested in the plea offer. *See Dresbach v. State*, 308 Ga. 423, 427 (2), 841 S.E.2d 714 (2020). Added to that is trial counsel's testimony at the motion for new trial hearing that Petitioner was adamant of his innocence and was all but hostile to the prospect of anything but a trial. "When a client expressly asserts that the objective of 'his defence' is to maintain innocence of the charged criminal acts, his lawyer must abide by that objective and may not override it[.]" *McCoy v. Louisiana*, ___ U.S. ___, 138 S.Ct. 1500, 1508 (II)(A) (2018) (internal citation omitted).

Accordingly, there is no evidence demonstrating that Petitioner would have accepted the State's plea offer had trial counsel adequately informed him that he would face a mandatory life sentence if he were convicted of kidnapping with bodily injury at trial. Consequently, Petitioner has not satisfied the first criterion of the *Lafler* test, much less all three, to establish prejudice from trial counsel's performance, and he would have been unable to establish a reasonable probability of a different result had appellate counsel raised this trial counsel ineffectiveness claim on direct appeal. Petitioner has

also failed to show that appellate counsel performed deficiently by not raising this issue. This ground lacks merit and provides no basis for relief.

## CONCLUSION

Wherefore, the petition is DENIED.

If Petitioner desires to appeal this order, Petitioner must file an application for a certificate of probable cause to appeal with the Clerk of the Supreme Court of Georgia within thirty (30) days from the date of the filing of this order. Petitioner must also file a notice of appeal with the Clerk of the Superior Court of Ware County within the same thirty (30) day period.

The Clerk of the Superior Court is hereby DIRECTED to mail a copy of this order to counsel for Petitioner, Respondent, and the office of the Attorney General.

SO ORDERED, this 21st day of June, 2021.

David L. Cavender
DAVID L. CAVENDER
Senior Judge, Superior Courts
Sitting by Designation

Prepared by:
Michael A. Oldham
Assistant Attorney General
Georgia Department of Law
40 Capitol Square, S. W.
Atlanta, Georgia 30334-1300
(404) 458-3394
moldham@law.ga.gov

FILED IN OFFICE THIS 21 DAY
OF June, 20 21
_____ CLERK
WARE COUNTY