UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| British American Insurance Intermediaries, Inc. | \| |
| | \| |
| | \| CIVIL ACTION FILE NO.: |
| And | \| |
| | \| **JURY TRIAL DEMANDED** |
| Security Benefit Associates Group Services, Inc., | \| |
| | \| |
| Plaintiffs, | \| |
| | \| |
| v. | \| |
| | \| |
| Milner Financial, LLC [Serve: Registered Agent Corporation Service Company 251 Little Falls Drive Wilmington, DE 19808] | \| |
| | \| |
| And | \| |
| | \| |
| Milner Financial Services, LLC [Serve: Registered Agent Corporation Service Company 251 Little Falls Drive Wilmington, DE 19808] | \| |
| | \| |
| And | \| |
| | \| |
| The Milner Agency, Inc. [Serve: Registered Agent David Hayes 1360 Peachtree Street, Ste 800 Atlanta, GA 30309] | \| |

Integrity Marketing Group, LLC              |
[Serve: Registered Agent                    |
Corporation Service Company                 |
251 Little Falls Drive                      |
Wilmington, DE 19808]                       |
                                            |
And                                         |
                                            |
Integrity Marketing Partners, LLC           |
[Serve: Registered Agent                    |
Corporation Service Company                 |
251 Little Falls Drive                      |
Wilmington, DE 19808]                       |
                                            |
And                                         |
                                            |
American Independent Marketing,             |
LLC                                         |
[Serve: Registered Agent                    |
Corporation Service Company                 |
300 Deschutes Way SW                        |
Ste 208 MC-CSC1                             |
Tumwater, WA 98501]                         |
                                            |
    Defendants.         |

---

## COMPLAINT

    COME NOW Plaintiffs, by and through counsel, and for their Complaint against Defendants state as follows:

### NATURE OF SUIT

1. This action arises from a concerted and tortious effort by Defendants to divert assets and customers from Plaintiffs for and to their benefit.

2. Plaintiffs therefore bring this action for trademark infringement, false designation of origin, cybersquatting, deceptive trade practices, racketeering, tortious inference, unfair competition, conversion, bailment, unjust enrichment, and civil conspiracy against Defendants.

3. In the highly competitive insurance world, where reputation counts for more than in most other fields, Plaintiffs have set themselves apart as a premier insurance agency and broker, and as a result has brought distinction and a following in the industry.

4. Since the early 1980s, Plaintiffs have continuously marketed and developed a substantial following in the insurance industry in connection with its services.

5. Plaintiffs have made extensive, continuous, and substantially exclusive use of its distinctive THE MILNER GROUP mark (the "Milner Mark") which consumers have come to associate with Plaintiffs and to which Plaintiffs have dedicated significant time and resources to create and protect.

6. Despite Plaintiffs' prior rights, Defendants have used the Milner Mark and adopted the confusingly similar term, Milner Financial, and used such to offer services identical to Plaintiffs' services.

7.  Defendants' infringing services are likely to cause, and in fact have caused, confusion among the trade and consuming public as to the source or origin of the infringing services, thereby causing ongoing irreparable harm to Plaintiff.

8.  Additionally, despite Plaintiffs' rights to numerous assets once shared by Plaintiffs and Defendant The Milner Agency, Inc. ("MAI"), Defendants have misappropriated Plaintiffs' assets and have used them to directly compete with and harm Plaintiffs.

## PARTIES

9.  Plaintiff British American Insurance Intermediaries, Inc. ("BAII") was formed on or around September 22, 1982 as a Georgia corporation and is the holding company for Plaintiff Security Benefit Associates Group Services, Inc.

10. Plaintiff Security Benefit Associates Group Services, Inc. ("SBAGS") was formed on or around November 14, 1983 as a Georgia corporation.

11. Defendant MAI was formed on or around November 19, 1990 as a Georgia corporation.  On or around November 1, 2022 MAI converted to a Delaware corporation.  Then, on or around April 12, 2023, MAI, a Delaware corporation, filed an amendment with the Georgia Secretary of State,

amending its name to Milner Financial, LLC, a Delaware limited liability company created on April 6, 2023, with Defendant Integrity Marketing Partners, LLC listed as the Manager.

12. Defendant Milner Financial, LLC ("MF") was formed on or around March 9, 2016 as a Georgia limited liability company. Then, on or around November 1, 2022, Milner Financial, LLC, a Georgia limited liability company, converted to Milner Financial, LLC a Delaware limited liability company. Then, on or around March 29, 2023, Milner Financial, LLC, a Delaware limited liability company, filed an amendment with the Georgia Secretary of State, amending its name to Milner Financial Services, LLC.

13. Defendant Milner Financial Services, LLC ("MFS") was formed on or around November 1, 2022 as MF, a Delaware limited liability company. Then, on or around March 29, 2023, MF's name was changed to MFS.

14. Defendant Integrity Marketing Group, LLC ("IMG") was formed on or around June 21, 2016 as Delaware limited liability company.

15. Defendant Integrity Marketing Partners, LLC ("IMP") was formed on or around June 27, 2016 as a Delaware limited liability company.

16. Defendant American Independent Marketing, LLC ("AIM") was formed on or around December 14, 1981 as a Washington corporation then converted to a Washington limited liability company on or around January 3, 2018.

17. Upon information and belief, on or around February 6, 2018, Defendant IMG acquired Defendant AIM.

18. Upon information and belief, on or around November 14, 2022, Defendant IMG acquired Defendant MAI.

19. Upon information and belief, Defendant IMP is the managing member entity for Defendants IMG and AIM.

20. Upon information and belief, Defendants IMG, IMP, and AIM (together the "Integrity Defendants") are entities involved in the management and operation of Defendants MAI, MF, and MFS (together the "Milner Defendants").

## JURISDICTION AND VENUE

21. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and under its supplemental jurisdiction of 28 U.S.C. §1367, the Counts of which concern acts of unfair competition under the Lanham Act, 15 U.S.C. §§ 1120, 1125(a), 1125(d),

and trademark infringement and unfair competition under the laws of the State of Georgia.

22. The Court has supplemental jurisdiction over the claims arising under the laws of the State of Georgia, pursuant to 28 U.S.C. §1367(a), because the state law claims are so related to the federal subject-matter claims that they form part of the same case or controversy and derive from a common nucleus of operative fact.

23. This Court has personal jurisdiction over Defendants because Defendants: (a) reside in this District and the State of Georgia; (b) conduct business in this District and the State of Georgia and are otherwise purposefully, systematically, and continuously engaged in substantial and not isolated activities in this District and the State of Georgia, and/or (c) the vast majority of the conduct complained of herein occurred in this District and the State of Georgia.  Furthermore, Defendants liability to Plaintiff arises from and/or is related to Defendants' activities within this District and the State of Georgia.

24. Venue is proper in this Court under 28 U.S.C. §1391 in that Plaintiff's principal place of business is located in this judicial district, Defendants are subject to the personal jurisdiction of this judicial district, and that a

substantial part of the events giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Timeline

25. Since 1959, the patriarch of the Milner family, Willis J. Milner, Jr., had been in the insurance industry operating under Security Benefit Associates, Inc ("SBA") which was formed on or around November 10, 1959 as a Georgia corporation. After the death of Willis J. Milner, Jr., his son, Seixas G. Milner, Sr., took over the family business and continued operating SBA.

26. With the assistance and guidance of their father, Seixas G. Milner, Sr., Plaintiff BAII was formed on or around September 22, 1982 as a Georgia for-profit corporation with four shareholders (and his sons) – Seixas G. Milner, Jr. ("Chip"), Frederick R. Milner ("Fritz"), Willis Latimer Milner ("Lat"), and Whitner Reade Milner ("Whit") – to continue the family insurance business. See Exhibit 1 – Original Shareholders' Agreement & Exhibit 2 - BAII Articles of Incorporation.

27. After receiving some professional advice, Plaintiff SBAGS was formed in November of 1983 as a Georgia corporation for purposes of operating the

insurance business and, of which, BAII became the holding company.  See
Exhibit 3 - SBAGS Articles of Incorporation.

28. For nearly seven years, the family business operated solely under SBA,
Plaintiff BAII, and Plaintiff SBAGS together as THE MILNER GROUP as
evidenced by the September 21, 1990 Affidavit to Register Trade Name.
See Exhibit 4 - Affidavit to Register Trade Name.

29. Then, on or around November 19, 1990, Defendant MAI formed as Georgia
corporation after Greg Ragan offered a partnership opportunity with the
family to offer life insurance.  After receiving the family's approval, Chip
and Greg opened MAI, received a limited license to use the name THE
MILNER GROUP, and agreed to share assets and liabilities with BAII,
SBAGS, and SBA effectively forming the "Milner Family Agreement."

30. Shortly thereafter, on or around November 24, 1990, Chip transferred his
shares of BAII back to the entity.

31. Then, on or around August 8, 1997, Fritz transferred his shares of BAII back
to the corporation and exited the family business, leaving Lat and Whit as
the sole shareholders of BAII.

32. On or around September 28, 2001, BAII and SBA transferred and assigned THE MILNER GROUP to SBAGS.  Exhibit 5 - Transfer and Assignment of Trade Name.

33. For over twenty-five (25) years, even after the death of their father, Seixas G. Milner, Sr., on May 12, 2002, BAII, SBAGS, and Defendant MAI operated under the Milner Family Agreement which allowed MAI to use THE MILNER GROUP name and numerous assets and liabilities to be shared in their operations, including, but not limited to, the following:

    a. The main phone numbers of 404-455-1234, 770-455-1234, and 800-926-9206 (hereinafter the "Legacy Phone Numbers").  Of note, the Legacy Phone Numbers of 404-455-1234 and 770-455-1234 were the original phone numbers utilized by the Milner family patriarch under SBA and continued with BAII and SBAGS and later shared with MAI under the Milner Family Agreement.

    b. The website of www.milnergroup.com (hereinafter the "Legacy Website").  Notably, the Legacy Website was formed around July of 1998 for the purpose of promoting BAII, SBAGS, and MAI under the Milner Family Agreement.

c.  The physical location of 3610 DeKalb Technology Parkway in Atlanta, Georgia then 1000 Hurricane Shoals Rd in Lawrenceville, Georgia.

d.  The @milnergroup.com email server.

e.  The database of listing/insurance agents and other customers.

f.  The social media accounts, including, but not limited to, The Milner Group Facebook page created on September 12, 2011.

g.  The staff, utilities, supplies, and more.

Hereinafter all of the above assets will be jointly referred to as the "Milner Assets."

34. On or around November 30, 2014, Lat was informed by an insurance agent that Chip, then CEO of Defendant MAI had changed all THE MILNER GROUP employee benefits from the handling and control of Lat's company, Plaintiff SBAGS, to an outside provider.  When Lat confronted Chip about not informing him and removing him as handler of the group insurance policy, Chip evicted Plaintiffs BAII and SBAGS from the shared building.

35. Notably, even after being evicted, BAII, SBAGS, and MAI continued to share the Milner Assets and liabilities under the Milner Family Agreement

and MAI was still operating under a limited license to use THE MILNER GROUP name.

36. On March 6, 2015, Plaintiff SBAGS filed its trademark application for THE MILNER GROUP for insurance agency and brokerage services with a claimed first date of use of at least as early as January 1, 1989 [Application Serial No. 86/556,368].

37. On February 4, 2016, Defendant MAI filed its opposition to Plaintiff SBAGS' trademark application.  See Exhibit 6 – Opposition to Plaintiff SBAGS' Trademark Application Serial No. 86/556,368.

38. Then, just one month later, on March 9, 2016, Defendant MF formed as a Georgia limited liability company with the initial manager listed as Seixas G. Milner, III ("Chad"), son of Chip. See Exhibit 7 - MF Articles of Incorporation.

39. Then on June 21st and 27th, 2016, respectively, Defendant IMG and Defendant IMP formed as Delaware limited liability companies.

40. On July 13, 2016, Plaintiff SBAGS filed its Answer to Defendant MAI's opposition to Plaintiff SBAGS' trademark application.  See Exhibit 8 - Answer to Opposition of Plaintiff SBAGS' Trademark Application Serial No. 86/556,368.

41. On August 12, 2016, SBAGS and MAI conducted a discovery conference pursuant to the Trademark Trial Appeal Board's ("TTAB") schedule.

42. Then on November 28, 2016, Whit emailed Lat inquiring about ownership of Plaintiff SBAGS and the use of THE MILNER GROUP name further exhibiting the plot of Defendants.  Exhibit 9 - Email dated 11-28-2016.

43. While Plaintiff SBAGS was waiting for Defendant MAI to meet its required deadlines in the Opposition, at some point on or before January 18, 2017, Defendant MAI's officers changed.  Specifically, the Chief Executive Officer changed from Chip to his son, Chad, and the Secretary changed from Whit to Danielle Graves.

44. Then, on May 11, 2017, Chip filed a lawsuit in Gwinnett County against Plaintiff BAII, Lat, and Whit claiming ownership of stock in Plaintiff BAII.

45. On May 12, 2017, Plaintiff SBAGS filed its Motion to Dismiss Defendants MAI's Opposition to its Trademark Application Serial No. 86/556,368 for failure to prosecute the case.

46. Defendant MAI failed to respond and on June 7, 2017, the TTAB granted Plaintiff SBAGS's Motion to Dismiss with Prejudice.  See Exhibit 10 - TTAB Order dated June 7, 2017.

47. On July 11, 2017, Plaintiff SBAGS's trademark application for THE MILNER GROUP registered as Registration No. 5,239,004.  See Exhibit 11 - THE MILNER GROUP Trademark Registration No. 5,239,0004.

48. On July 18, 2017, Chip voluntarily dismissed the lawsuit against Plaintiff BAII, Lat, and Whit after receiving a letter from the then counsel for BAII and Lat which highlighted the falsities and frivolousness of the claims.

49. A couple of weeks later, in yet another attempt by Defendants to gain control of Plaintiffs' Milner Assets and THE MILNER GROUP name, on August 7, 2017, Whit executed a Stock Purchase Agreement purporting to sell his 125 shares of BAII stock to his nephew & Chip's son, Chad, for a price of $10,000.00.

50. On August 14, 2017, BAII and Lat received notice of Whit's intent to transfer his BAII shares from purported purchaser, Chad, who had requested a shareholders' meeting. See Exhibit 12 - Email dated 8-14-2017.

51. On August 21, 2017, BAII, through counsel, informed Whit that BAII considered the purported Stock Purchase Agreement to be written notice of his intent to transfer his shares, thus triggering BAII's 30-day option to purchase the shares under the right-of-first-refusal provision in the Shareholders' Agreement.

52. BAII's counsel asked Whit, as a voting member of the board, to sign and return a corporate resolution allowing BAII to purchase the shares.  Counsel further noted that if the board could not agree to such a purchase, the shareholders' agreement required Whit to extend the right of first refusal to Lat, the remaining shareholder.

53. Once notified of this requirement, Whit and Chad executed a rescission agreement on or around September 5, 2017, but Whit did not then execute the necessary corporate resolution to allow BAII to purchase the shares within thirty (30) days.

54. After BAII's 30-day option expired, Lat sent Whit a letter on or around October 6, 2017 seeking to buy the shares on the same terms set forth in the stock purchase agreement.  During a conversation later that day, Whit accepted Lat's offer and followed up a few days later with a text message to Lat confirming his intent to transfer the stock to Lat.

55. Whit, however, did not respond to Lat's request to close, despite numerous follow-up attempts by Lat, and as a result, Lat was forced to file legal action on May 14, 2018 in Barrow County, Georgia (hereinafter referred to as the "Barrow County Lawsuit").  See Exhibit 13 – Barrow County Complaint, Case No. 18-CV-000736-W.

56. Unbeknownst to Plaintiffs, principals of Defendant MAI and Defendant IMG & IMP had already undergone a plan to financially destroy and distract Plaintiffs with extensive litigation, which would provide them with the time they needed to divert all the Milner Assets and carry out the claims described herein.

57. In fact, Bryan W. Adams, co-founder & CEO of Defendant IMG, has known Chad, son of Chip and principal of the Milner Defendants, for years prior to 2019.  See Exhibit 14 - Integrity Announcement 11-7-2019.

58. Conveniently, two weeks after Lat was forced to file the Barrow County Lawsuit over the ownership of Plaintiff BAII, on May 31, 2018, Steve Sigrist with the Integrity Marketing caused an application for certificate of authority for foreign limited liability company to be filed in the State of Georgia for Defendant AIM claiming business commenced in the State of Georgia as of May 14, 2018 [notably the same day the Barrow County Lawsuit was filed] and that Defendant AIM was converted to a limited liability company on January 3, 2018 in the State of Washington just months after Lat put Whit on notice of his intent to exercise his right to purchase Whit's shares of BAII as described above and one most before IMG

announced its acquisition of AIM.  See Exhibit 15 – Integrity Announcement 2-6-2018.

59. Conspicuously, the first annual filing in the State of Washington after the conversion of Defendant AIM lists its governors as Bryan W. Adams, Eric Pederson, and Steven Sigrist, all of which are executives of Defendants IMP & IMG.  To date, Defendant IMP and/or its executives, Bryan W. Adams, Eric Pederson, and Steven Sigrist, have been listed as the governors of Defendant AIM.

60. Then, on or around November 7, 2019, Defendant IMG acquired North American Senior Benefit ("NASB").  Notably, NASB is and was another insurance company owned by Chad.  As part of the deal, NASB's co-founder Chad became an owner in Defendant IMG.  See Exhibit 14 - Integrity Announcement 11-7-2019.

61. Meanwhile, after nearly two years of litigation in the Barrow County Litigation, Lat filed his motion for summary judgment on March 2, 2020.

62. Then, on or around April 9, 2020, Defendant IMG filed a foreign entity registration in the state of Texas for its Delaware limited liability company.

63. Then on September 17, 2020, the Barrow County Court entered summary judgment in favor of Lat and finding that Plaintiff BAII is owned entirely by

Lat.  See Exhibit 16 – Barrow County Summary Judgment Order, Case No.
18-CV-000736-W.

64. On October 15, 2020, Whit filed his notice of appeal of the summary
judgment decision with the State of Georgia Court of Appeals then
continued the attack on Plaintiffs by filing an additional lawsuit.

65. On November 19, 2020, Defendant MAI and Whit filed another lawsuit
against Plaintiffs BAII and SBAGS seeking declaratory judgment of the
Milner Assets, damages, and injunctive relief.  See Exhibit 17 – Gwinnett
County Complaint, Case No. 20-A-07822-1.

66. On March 23, 2021, BAII & SBAGS filed their answer and the case was
ultimately stayed pending the result of the Barrow County Litigation appeal.

67. On March 8, 2022, the Court of Appeals of Georgia entered an order
affirming the September 17, 2020 order in Barrow County.  See Exhibit 18 –
Court of Appeals of Georgia Order dated March 8, 2022.

68. On May 9, 2022, Lat filed his Motion for Attorneys' Fees under O.C.G.A.
§9-15-14(b) in the Barrow County Case which the court ultimately granted
on January 24, 2023 and found that Whit's counterclaims and defenses
lacked substantial justification, were interposed for delay and harassment,
and otherwise designed to unnecessarily expand the proceeding by other

improper conduct in violation of O.C.G.A. §9-15-14(b).  See Exhibit 19 –

Barrow County Motion for Attorney's Fees Order dated January 24, 2023.

69. On July 11, 2022, Plaintiff SBAGS filed its Section 8 Affidavit for its

registered trademark THE MILNER GROUP.

70. Within months of the Barrow County Lawsuit being affirmed and the

subsequent motion for attorney's fees filed, officers of the Defendants

caused numerous companies to be formed including, but not limited to,

Milner Financial Holdings, LLC on September 15, 2022, Milner Agency

Holdings, Inc. on September 15, 2022, and Milner Holdings, LLC on

October 19, 2022 and numerous existing companies to be moved/converted

including but not limited to, converting Defendant MAI to a Delaware

corporation on November 1, 2022, converting Defendant MF to a Delaware

limited liability company on November 1, 2022, and filing foreign entity

registrations for the newly converted entities with the Georgia Secretary of

State within the next two days.  All of which led up to the public

announcement of the acquisition of Defendant MAI by Defendant IMG on

November 14, 2022.

71. On November 14, 2022, Defendant IMG publicly announced its acquisition

of Defendant MAI.  Additionally, on November 14, 2022, Defendant MAI

caused emails to go out to the mutual Milner client list informing Plaintiffs' clients that The Milner Group joined Integrity causing confusion.  See Exhibit 20 - Email dated 11-14-2022.

72. On December 12, 2022 Defendant IMP is listed as the governor of Defendant AIM.

73. On December 30, 2022, Defendant MAI, by and through Chip, Chad, and Whit sent their brother/uncle Lat a letter terminating an "oral agreement" between Lat and Defendant MAI.  See Exhibit 21 - Termination Letter dated 12-30-2022.

74. Of importance, from 2015 through 2022, unbeknownst to Plaintiffs and its officers, Defendants had been unilaterally assuming control of the Milner Assets from Plaintiffs.  Defendants used years of legal and personal battles to distract Plaintiffs from their wrongdoings.

75. Then less than two weeks after Plaintiffs received the December 30, 2022 termination letter, Defendant MF filed its foreign entity registration in the State of Texas with Defendant AIM listed as the governing person and care of the legal department at Defendant IMG on January 10, 2023.

76. After receiving the December 30, 2022 letter, Defendants began to use their misappropriated control and ownership to alienate Plaintiffs from their

assets, tortiously interfere with their businesses, directly compete with
Plaintiffs, and more.

77. On January 4, 2023, the United States Patent & Trademark Office
("USPTO") accepted Plaintiff SBAGS's Section 8 declaration.

78. On March 1, 2023, Defendants caused emails to go out to the mutual Milner
Asset client list informing Plaintiffs' clients that The Milner Group is now
Milner Financial causing further confusion.  See Exhibit 22 - Email dated
03-01-2023.

79. On or around March 10, 2023, Defendants changed The Milner Group
Facebook page (a Milner Asset) to Milner Financial.  See Exhibit 23 -
Screenshot of Page Transparency.

80. On March 29, 2023, Duncan McQueen, who upon information and belief
was and is general counsel for the Integrity Defendants, caused Defendant
MF to file its application for amended certificate of authority of a foreign
entity with the State of Georgia changing its name to Defendant MFS.

81. On April 12, 2023, Duncan McQueen, who upon information and belief was
and is general counsel for the Integrity Defendants, caused Defendant MAI
to file its application for amended certificate of authority of a foreign entity

with the State of Georgia changing its name to Defendant MF and listing

Defendant IMP as the manager.

82. Sometime between April 2, 2023 and May 28, 2023, Defendants began

redirecting the Legacy Website of milnergroup.com to

www.milnerfinancial.com causing further confusion and harm to Plaintiffs.

83. The facts, timeline, filings, and public announcements demonstrate that the

Milner Defendants and Integrity Defendants have participated in a concerted

effort to carry out the claims contained in this Complaint. See Exhibit 24 -

Demonstrative Timeline.

84. Of note, despite the nearly identical acquisition of Chad's other company,

NASB, by Defendant IMG, there are zero conversions, amendments, name

changes, or diversions of NASB, unlike the numerous carried out in this

matter which further demonstrates Defendants joint effort to carry out the

claims in this Complaint.

## Defendants' Conduct is Knowing, Intentional, and Willful and has Harmed and Continues to Harm Plaintiff

85. Plaintiffs have been using the Milner Mark since at least as early as January

1, 1989 and Plaintiff SBAGS owns the trademark listed in the table below.

A true and correct copy of the U.S. registration certificate for the Milner

Mark is attached hereto as Exhibit 11.

| Mark | Registration Number | Registration Date | Class & Goods/Services |
|---|---|---|---|
| THE MILNER GROUP | 5,239,004 | 07/11/2017 | Class 36: insurance agency and brokerage |

86. The constant attacks on Plaintiffs and its officers since 2015 have been done intentionally to harm Plaintiffs financially and distract Plaintiffs from the concerted efforts of Defendants.  This includes, but is not limited to:

    a.  Filing an opposition against Plaintiff SBAGS' trademark application.

    b.  Filing suit against Plaintiff BAII, Lat, and Whit in Barrow County to claim ownership of BAII.

    c.  Attempting to secretly sell Whit's shares of BAII to Chad in attempt to deviously gain control of Plaintiff BAII from Lat.

    d.  Filing another suit against Plaintiff BAII and SBAGS to claim ownership of BAII & SBAGS' Milner Assets and attack THE MILNER GROUP mark.

87. While Plaintiffs were under attack, Defendants were actively setting up companies to carry out their plans and acquiring control of the Milner Assets.

88. Once Defendants had full control of the Milner Assets, they struck again by alienating Plaintiffs from the Milner Assets.

89. While Plaintiffs struggled to maintain their business and mitigate their damages by setting up replacements for the Milner Assets wrongfully taken from them and attempting to cooperate with the Milner Defendants to reach resolution, the Milner Defendants sold the Milner Assets to the Integrity Defendants.

90. Then to further harm Plaintiffs, the Defendants publicly and personally announced to the Milner Assets' client database that The Milner Group had been acquired by the Integrity Defendants causing actual consumer confusion and tortiously interfering with Plaintiffs' business.

91. To further add to the consumer confusion and harm, Defendants caused another public and personal announcement indicating that THE MILNER GROUP is now MILNER FINANCIAL, a confusingly similar name.

92. Below are just some of the examples of how Defendants have misappropriated various Milner Assets, wrongfully alienated Plaintiffs from them, and are using them to intentionally damage Plaintiffs:

    a. The Legacy Phone Numbers – Prior to Defendants' misappropriation, clients would call the Legacy Phone Numbers which would provide

access to Plaintiff BAII, Plaintiff SBAGS, Defendant MAI, and all of
their mutual and separate employees.  After Defendants
misappropriated the Legacy Phone Numbers by unilaterally assuming
its control with the service vendor, and alienated Plaintiffs from it,
their clients were no longer able to reach Plaintiffs at the only phone
numbers that had been consistently advertised and used by them for
over thirty (30) preceding years.  Furthermore, if clients called the
Legacy Phone Numbers, Defendants would hold themselves out as
THE MILNER GROUP in violation of Plaintiff SBAGS' trademark
rights.

b. The Legacy Website - Prior to Defendants' misappropriation, clients
would visit the Legacy Website which would provide information on
insurance products & services offered under THE MILNER GROUP
name by Plaintiff BAII, Plaintiff SBAGS, and Defendant MAI.
However, after Defendants misappropriated the Legacy Website by
unilaterally usurping its control with the service vendor, they alienated
Plaintiffs from it and held themselves out as THE MILNER GROUP
offering insurance services in direct competition with those of
Plaintiff SBAGS, and in violation of Plaintiff SBAGS' trademark

rights.  Moreover, sometime between April 2, 2023 and May 28,
2023, Defendants began redirecting the Legacy Website to
www.milnerfinancial.com.

c.  Building Signage – Prior to 2015, Plaintiff BAII, Plaintiff SBAGS,
and Defendant MAI shared their physical location.  First, it was
located at 3610 DeKalb Technology Parkway in Atlanta, Georgia, and
then 1000 Hurricane Shoals Road in Lawrenceville, Georgia.  Each
location bared the signage THE MILNER GROUP.  After Defendants
alienated Plaintiffs from the latter physical location, Defendant MAI
maintained control of the physical location, which still bares the name
THE MILNER GROUP in violation of Plaintiff SBAGS' trademark
rights.  Exhibit 25 - Picture of building

d.  The @milnergroup.com email server.  – Prior to Defendants'
misappropriation, Plaintiff BAII, Plaintiff SBAGS, and Defendant
MAI shared the same email server.  However, without Plaintiffs'
consent, Defendants deleted Plaintiffs' important business emails,
restricted Plaintiffs' access to their individual @milnergroup.com
email accounts, provided insufficient advance notice of Defendants'
intent to fully eliminate Plaintiffs' access to years of emails, and

continued to use all other email addresses containing Plaintiff

SBAGS' trademark in violation of its trademark rights.

e.   The database of listing/insurance agents and other customers – Prior

to Defendants' misappropriation, Plaintiff BAII, Plaintiff SBAGS, and

Defendant MAI shared the same database of listing/insurance agents

and other customers.  After Defendants alienated Plaintiffs from that

database, and subsequent to Plaintiffs' objections thereto, Defendants

later provided Plaintiffs with mere limited access to part of that shared

listing/insurance agent and customer database.  However, Defendants

continued to use the entire database to communicate with consumers

who were historically shared among Plaintiffs and Defendant MAI,

cause consumer confusion in violation of Plaintiff SBAGS' trademark

rights and to unfairly compete against Plaintiffs.

f.   The social media accounts, including, but not limited to, The Milner

Group Facebook page created in 2011. – Prior to Defendants'

misappropriation, Plaintiff BAII, Plaintiff SBAGS, and Defendant

MAI shared the same social media accounts.  After Defendants

alienated Plaintiffs from the social media accounts by unilaterally

assuming their control with the service vendors, such social media

accounts were no longer directed by or to Plaintiffs.  Instead,

Defendants held themselves out as THE MILNER GROUP in

violation of Plaintiff SBAGS' trademark rights, and sometime

between April 2, 2023 and May 28, 2023 converted all the accounts to

the confusingly similar MILNER FINANCIAL name.

g.  The staff, utilities, supplies, and more. – Prior to Defendants'

misappropriation and alienation of all the above, Plaintiff BAII,

Plaintiff SBAGS, and Defendant MAI shared staff, utilities, supplies,

and more in the operation of their businesses.  After Defendants

alienated Plaintiffs from them, Plaintiffs incurred additional damages

in staffing, utilities, supplies, and more which they did not have prior.

93. All of the above was done with the distinct intent to harm Plaintiffs and has,

in fact, caused significant harm to Plaintiffs.

**COUNT I**
**Trademark Infringement**
**(Lanham Act Section 32, 15 U.S.C. §1114)**

94. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth

herein.

95. Plaintiff SBAGS owns the exclusive rights in and to the Milner Mark, including the United States Trademark Registration for the mark.  See Exhibit 11.

96. At all relevant times, Plaintiff SBAGS is and was the owner of all right, title, and interest to the Milner Mark and those rights have not been assigned, or otherwise transferred, to Defendants.

97. Through Plaintiff's continuous and substantially exclusive use of the Milner Mark in commerce for over thirty (30) years, the relevant trade and consuming public has come to identify the Milner Mark and the services offered under it as originating with Plaintiff.

98. Plaintiff have built a valuable business in its use of the Milner Mark and the goodwill associated with Plaintiff is of high value both to Plaintiff and on an objective economic basis.

99. Prior to December 2022, Plaintiff permitted Defendant MAI an implied license to use the Milner Mark as part of the Milner Family Agreement.

100.    After Defendant MAI decided to break the Milner Family Agreement, without Plaintiff's authorization or consent, Defendant MAI used and continues to use the Milner Mark and confusingly similar marks in interstate commerce.

101.    Despite Plaintiff's superior rights, Defendants have adopted and used the Milner Mark and confusingly similar terms on the Legacy Website, their various websites, and various social media accounts in interstate commerce for services that are identical, similar, and/or related to, and compete with those of Plaintiff.

102.    Defendants' adoption and use of the Milner Mark, including the confusingly similar mark Milner Financial, has caused confusion, deception, and mistake by creating the false and misleading impression that Defendants' products and/or services originate from, are associated with, or are sponsored, endorsed, or approved by Plaintiff.

103.    Defendants had and have direct financial interests in, and directly benefitted from, their intentionally infringing activity.

104.    Defendants used the Milner Mark and confusingly similar marks with willful and deliberate intent to trade and capitalize on the goodwill established in the registered Milner Mark.

105.    Defendants used the Milner Mark in an intentional effort to cause confusion, mistake, or to deceive consumers, Plaintiff's customers, and the general marketplace.

106.    Without Plaintiff's authorization or consent, Defendants used and

continue to use marks and names bearing the Milner Mark in interstate

commerce.

107.    Defendants' adoption and use of the Milner Mark, including

confusingly similar mark Milner Financial, was done with intentional,

willful, and malicious intent to trade on the goodwill associated with the

Milner Mark.

108.    Defendants' adoption and use of the Milner Mark, including

confusingly similar mark Milner Financial, caused actual confusion among

consumers, and deceived and misled consumers regarding the source,

sponsorship, authenticity, and quality of products/services connected to the

Milner Mark.

109.    Defendants' intent in using the Milner Mark was to confuse, deceive,

and mislead consumers.

110.    Defendants' intent in using the Milner Mark was also to harm

Plaintiff.

111.    Defendants have infringed, and will continue to infringe, Plaintiff's

rights by imitating and/or using without authorization the registered Milner

Mark.

112.     Defendants' unlawful conduct was deliberate, intentional, knowing, willful, and malicious.

113.     As a direct and proximate result of Defendants' infringement, Plaintiff suffered significant damages, including damage to the goodwill and reputation of the Milner Mark, as well as ascertainable damages in an amount to be determined at trial.

114.     Defendants' conduct constitutes trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

115.     Defendants' adoption and use of the Milner Mark, including confusingly similar mark Milner Financial, caused, and unless enjoined by this Court, will continue to cause immediate and irreparable injury to Plaintiff's goodwill and reputation as developed and symbolized by the Milner Mark.

116.     Defendants' adoption and use of the Milner Mark, including confusingly similar mark Milner Financial, caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among consumers.

117.     Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage

to Plaintiff and to prohibit Defendants from further violations of Section 32
of the Lanham Act, 15 U.S.C. §1114.

118.    Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual
damages, costs, and Defendants' profits derived from its infringing activities.

119.    Because Defendants' acts of infringement have been and continue to
be knowing, willful, and intentional, this is an exceptional case under Section
35 of the Lanham Act, 15 U.S.C. §1117(a) entitling Plaintiff to recover its
attorneys' fees and up to three times its actual damages.

120.    Pursuant to Section 36 of the Lanham Act, 15 U.S.C. §1118, Plaintiff
is entitled to an order requiring Defendants to deliver up to Plaintiff the
milnergroup.com domain (the Legacy Website), including all website content
and associated email addresses, the milnerfinancial.com domain (given its
confusing and infringing interplay with the Milner Mark for insurance
services), including all website content and associated email addresses, and
the various social media accounts using the Milner Mark and/or Milner
Financial.  Plaintiff further seeks a destruction order requiring that
Defendants deliver up and destroy all goods, merchandise, products, labels,
signs, prints, packaging, advertising materials, letterhead, business cards, and
other materials bearing the Milner Mark, and any other marks that are

confusingly similar to the registered Milner Mark, including Milner

Financial.

WHEREFORE, for the foregoing reasons, Plaintiff SBAGS pray this Court

enter its order (1) granting preliminary and permanent injunctive relief, (2)

awarding Plaintiff SBAGS the Defendants' profits, damages sustained by Plaintiff,

and the costs of this action, (3) finding this is an exceptional case and awarding

Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring

Defendants to deliver up the infringing domain names and social media accounts

and to destroy all other materials bearing the Milner Mark or any other confusingly

similar marks.

## COUNT II
### False Designation of Origin
### (Lanham Act Section 43(a), 15 U.S.C. §1125(a))

121.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

122.     Defendants' conduct as described herein constitutes use of a false

designation of origin and/or a false or misleading description or

representation of fact on or in connection with their services which is likely

to cause confusion, mistake, or deception as to the affiliation, connection, or

association of the parties, and/or as to the origin, sponsorship, or approval of

their respective goods and services, in violation of Section 43(a) of the

Lanham Act, 15 U.S.C. §1125(a).  Defendants' conduct as described herein

also constitutes an attempt to arrogate to themselves the substantial goodwill

that Plaintiff has developed in the Milner Mark, all to the damage of Plaintiff.

123.     Defendants' use in commerce of designations which are identical

and/or confusingly similar to the Milner Mark, despite having actual and

constructive notice of Plaintiff's rights in and to the Milner Mark, constitutes

intentional conduct by Defendants to make false designations of origin and

false descriptions about their goods, services, and commercial activities.

124.     By Defendants' conversion, adoption, and use of Plaintiff's

milnergroup.com domain name and the adoption and use of the confusingly

similar name, Milner Financial, and the milnerfinancial.com domain name,

Defendant has affixed, applied, annexed, and/or used false designations of

origin and/or false or misleading representations of fact in connection with

the advertisement and promotion of Defendants' services in interstate

commerce.

125.     Defendants' aforementioned conduct has and is likely to continue to

cause confusion, mistake, and deception as to the origin of Defendants'

services and/or Plaintiff's services, and/or has and is likely to continue to

cause confusion, mistake, and deception as to whether there is an association, affiliation, connection, sponsorship, or endorsement of Defendants and Defendants' services by or with Plaintiff and Plaintiff's services.

126.    Defendants' conduct constitutes false designation of origin, false affiliation, false association, false endorsement, and/or false sponsorship in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

127.    Defendants' conduct has been and continues to be knowing, willful, and intentional.

128.    Defendants' unlawful conduct has caused, and will continue to cause, irreparable harm to Plaintiff.  Unless Defendants are enjoined from continuing the aforementioned unlawful acts, Plaintiff will suffer irreparable harm.

129.    Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage to Plaintiff and to prohibit Defendants from further violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

130.    Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual damages, costs, and Defendants' profits derived from its infringing activities.

131.    Because Defendants' acts of infringement have been and continue to
be knowing, willful, and intentional, this is an exceptional case under Section
35 of the Lanham Act, 15 U.S.C. §1117(a) entitling Plaintiff to recover its
attorneys' fees and up to three times its actual damages.

132.    Pursuant to Section 36 of the Lanham Act, 15 U.S.C. §1118, Plaintiff
is entitled to an order requiring Defendants to deliver up the milnergroup.com
domain (the Legacy Website), the milnerfinancial.com domain, and the
various social media accounts using the Milner Mark and/or Milner Financial
to Plaintiff and a destruction order requiring that Defendants deliver up and,
at Plaintiff's preference, destroy all goods, merchandise, products, labels,
signs, prints, packaging, advertising materials, letterhead, business cards, and
other materials bearing the Milner Mark or any other marks confusingly
similar to the registered Milner Mark, including Milner Financial.

WHEREFORE, for the foregoing reasons, Plaintiff SBAGS pray this Court
enter its order (1) granting preliminary and permanent injunctive relief, (2)
awarding Plaintiff SBAGS the Defendants' profits, damages sustained by Plaintiff,
and the costs of this action, (3) finding this is an exceptional case and awarding
Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring
Defendants to deliver up the infringing domain names and social media accounts

and to destroy all other materials bearing the Milner Mark or any other confusingly similar marks.

## COUNT III
**Cybersquatting**
**(Lanham Act Section 43(d), 15 U.S.C. §1125(d))**

133.  Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

134.  The Milner Mark was a valid and distinctive trademark of Plaintiff before Defendants registered and began using the milnerfinancial.com domain name.

135.  The Milner Mark was a valid and distinctive trademark of Plaintiff before Defendants misappropriated Plaintiff's milnergroup.com domain name for its own personal uses.

136.  The milnerfinancial.com domain name registered and used by Defendants is confusingly similar to the Milner Mark.

137.  The milnergroup.com domain name is identical to the Milner Mark and was misappropriated by Defendants from Plaintiff.

138.  Defendants had actual or constructive knowledge of Plaintiff and the Milner Mark prior to registering and using the milnerfinancial.com domain name.

139.     Defendants had actual or constructive knowledge of Plaintiff and the

Milner Mark prior to misappropriating, and unilaterally assuming control of,

the milnergroup.com domain name.

140.     Defendant has registered and/or used and continues to use the

milnerfinancial.com domain name and the milnergroup.com domain name in

bad faith to profit from the Plaintiff's name and the Milner Mark.

141.     Defendants have no legitimate trademark or other intellectual property

rights in the milnergroup.com domain name, Defendants' legal names are not

"The Milner Group" nor are the Integrity Defendants commonly known by

such name, and Defendants are not making a bona fide noncommercial or fair

use of the Milner Mark.  Instead, Defendants are using the milnergroup.com

domain name and the confusingly similar milnerfinancial.com domain to

divert consumers and internet traffic from Plaintiff to Defendants and for

Defendants' commercial gain.  Further, Defendants registered and have used

the milnerfinancial.com domain name while cloaking their true identity in the

domain name registration records.  Similarly, after misappropriating the

milnergroup.com domain name, Defendants have registered and used the

milnergroup.com domain name while cloaking their true identity in the

domain name registration records.

142.     Defendants' registration and/or use of the milnergroup.com domain name and the milnerfinancial.com domain name as described above constitutes cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

143.     Defendants' cybersquatting has been and continues to be knowing, willful, and intentional.

144.     Defendants' cybersquatting has caused and will continue to cause irreparable harm to Plaintiff.  Unless Defendants are enjoined from continuing the aforementioned unlawful acts, Plaintiff will suffer irreparable harm.

145.     Pursuant to Section 34 of the Lanham Act, 15 U.S.C. §1116, Plaintiff is entitled to preliminary and permanent injunctive relief to prevent damage to Plaintiff and to prohibit Defendants from further violations of Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d).

146.     Pursuant to 15 U.S.C. §1117(a), Plaintiff should be awarded its actual damages, costs, and Defendants' profits derived from its infringing activities. As an alternative to actual damages and Defendants' profits, and at Plaintiff's election any time before final judgment, Plaintiff is entitled to statutory damages between one thousand dollars and one hundred thousand dollars

($1,000.00 - $100,000.00) per each domain name found to be in violation of Section 43(d) pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117(d).

147.    Because Defendants' acts of infringement have been and continue to be knowing, willful, and intentional, this is an exceptional case under Section 35 of the Lanham Act, 15 U.S.C. §1117(a) entitling Plaintiff to recover its attorneys' fees and up to three times its actual damages.

148.    Pursuant to Section 43(d) of the Lanham Act, 15 U.S.C. §1125(d)(1)(C), Plaintiff is entitled to an order requiring Defendants to transfer to Plaintiff the milnergroup.com domain name, the milnerfinancial.com domain name, and any other domain name(s) incorporating "MILNER" or otherwise confusingly similar terms.

WHEREFORE, for the foregoing reasons, Plaintiff SBAGS pray this Court enter its order (1) granting preliminary and permanent injunctive relief, (2) awarding Plaintiff the Defendants' profits, damages sustained by Plaintiff, and the costs of this action, or, as an alternative and at Plaintiff's election, statutory damages of $200,000.00 ($100,000.00 per domain name) (3) finding this is an exceptional case and awarding Plaintiff's attorneys' fees and three times its actual damages, and (4) requiring Defendants to deliver up the infringing domain names.

**COUNT IV**
**Violation of Georgia Uniform Deceptive Trade Practices Act**
**(O.C.G.A. §10-1-372)**

149. Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

150.    The Georgia Uniform Deceptive Trade Practices Act ("GUDTPA") states a person engages in a deceptive trade practice when, in the course of his business he:

   a. Passes off goods or services as those of another (O.C.G.A. §10-1-372(a)(1));

   b. Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services (O.C.G.A. §10-1-372(a)(2));

   c. Causes likelihood of confusion or misunderstanding as to affiliation, connection, or association with another (O.C.G.A. §10-1-372(a)(3));

   d. Represents that goods or services have sponsorship or approval they do not have (O.C.G.A. §10-1-372(a)(5));

   e. Disparages the goods, services, or business of another by false or misleading representation of fact (O.C.G.A. §10-1-372(a)(8)); and/or

f.  Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding (O.C.G.A. §10-1-372(a)(12)).

151.    Defendants are businesses and in the course of their businesses use websites and social media to advertise, distribute, and sell goods/services to consumers.

152.    Defendants use of a corporate names or identities, identical and confusingly similar in appearance, sound, and meaning to Plaintiff's registered Milner Mark caused and continues to cause a likelihood of confusion, mistake, and deception as to the identity of the parties in the marketplace.  Specifically, Defendants use the Milner Mark and confusingly similar terms on their various websites and social media accounts to sell products/services to consumers.  Defendants engage in these consumer-facing business practices without Plaintiff's consent, authorization, or permission.

153.    Defendants' actions described above cause a likelihood of confusion and misunderstanding amongst consumers as to the parties' identities by their use of the Milner Mark and Milner Financial constituting unfair and deceptive methods of competition which are unlawful under O.C.G.A. §10-1-372(a)(1).

154.     Defendants' use of the Milner Mark and Milner Financial name and identity causes a likelihood of confusion or misunderstanding amongst consumers and customers as to the source, sponsorship, or approval in violation of O.C.G.A. §10-1-372(a)(2).  Specifically, in using the Milner Mark on their various websites and social media accounts in connection with the sale of various insurance products and services, Defendants have caused and likely will continue to cause confusion or misunderstanding as to the source, sponsorship or approval of the products that Defendants advertise, distribute, and sell.  Consumers see, on the Defendants' various websites and social media accounts, the Milner Mark in connection with the offering of products/services and are led to believe Defendants either are Plaintiffs or have Plaintiffs' sponsorship or authorization to sell these products/services under the Milner Mark.  Defendants have misled those consumers.

155.     Defendants' use of the Milner Mark and Milner Financial name and identity causes a likelihood of confusion or misunderstanding amongst consumers and customers as to the affiliation, connection, association, or relationship with the Plaintiffs and Plaintiff's Milner Mark in violation of O.C.G.A. §10-1-372(a)(3).  Specifically, in using the Milner Mark and confusingly similar terms on the Defendants' various websites and social

media accounts in connection with the sale of products/services, Defendants have caused, and likely will continue to cause, confusion or misunderstanding as to Defendants' affiliation, connection, or association with Plaintiffs. Consumers see the Milner Mark in connection with the offering of products/services and are led to believe that Defendants are associated with Plaintiffs. Defendants have misled those consumers.

156.    Defendants' use of the Milner Mark and Milner Financial name and identity on identical or substantially similar goods and/or services represents that the goods and/or services have sponsorship or approval of Plaintiffs that they do not have in violation of O.C.G.A. §10-1-372(a)(5). Specifically, in using the Milner Mark and confusingly similar terms on the Defendants' various websites and social media accounts in connection with the sale of products/services, Defendants have caused, and likely will continue to cause, confusion or misunderstanding as to Defendants' sponsorship or approval of Plaintiffs. Consumers see the Milner Mark in connection with the offering of products/services and are led to believe that Defendants are sponsored or approved by Plaintiffs. This representation is false. Again, Plaintiffs do not approve or sponsor Defendants' use of the Milner Mark or Defendants' business practices related to the use of the Milner Mark.

157.    Defendants' public announcement, as well as notification sent to its

customers which includes Plaintiff's customers, that the Milner Group was

acquired by Integrity Marketing Group and that the Milner Group was now

Milner Financial were false or misleading representations of fact that

disparaged the goods, services, and business of Plaintiff in violation of

O.C.G.A. §10-1-372(a)(8).

158.    Defendants' actions created a likelihood of confusion or

misunderstanding amongst the consuming public in violation of O.C.G.A.

§10-1-372(a)(12).

159.    As a direct and proximate result of the Defendants' deceptive and

unlawful trade practices, Plaintiffs have suffered damage to the goodwill and

reputation of the Milner Mark as well as ascertainable damage in an amount

to be determined at trial.

160.    Plaintiffs are without an adequate remedy at law for the non-monetary

damages it continues to sustain as a direct and proximate result of

Defendants' unfair and deceptive trade practices and such practices set forth

herein will continue unless enjoined by this Court pursuant to O.C.G.A. §10-

1-373.

161.     In accordance with O.C.G.A. §10-1-373, Plaintiffs should be awarded

costs and attorneys' fees incurred in pursuing this action to cease Defendants'

infringing and unfair deceptive trade and market practices.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its

order (1) finding Defendants have committed unfair and deceptive trade practices

in violation of Georgia Uniform Deceptive Trade Practices Act, (2) granting

preliminary and permanent injunctive relief, and (3) awarding Plaintiffs its

damages sustained, as well as its costs and attorneys' fees.

## COUNT V
### Tortious Interference

162.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

163.     Defendants' misappropriation and use of Plaintiffs' proprietary and

confidential information is wrongful.  Based on their past conduct already

known to Plaintiffs, Plaintiffs anticipate that discovery will reveal further

details of Defendants' wrongful activities.

164.     Defendants' wrongful actions resulted in a diversion of business from

Plaintiffs and constitutes tortious interference with Plaintiff's business

relationships and prospective economic advantage.

165.     Defendants' wrongful actions have caused and will continue to cause Plaintiffs to suffer significant damages, including lost business opportunities, lost profits, and damage to its reputation and goodwill.

166.     As a result of the foregoing, Plaintiffs have been damaged, in an amount to be proven at trial, but exceeding $75,000.

167.     Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiffs warranting an award of exemplary and punitive damages under Georgia statutory and common law.  O.C.G.A. §51-12-5.1.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its order (1) finding Defendants' wrongful actions resulted in a diversion of business from Plaintiffs and constitutes tortious interference with Plaintiff's business relationships and prospective economic advantage, (2) awarding Plaintiffs its damages sustained, as well as its costs and attorneys' fees, and (3) finding Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiffs warranting an award of exemplary and punitive damages.

## COUNT VI
## Common Law Trademark Infringement under Georgia Law
## (O.C.G.A. §23-2-55)

168.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

169.     Georgia's O.C.G.A. §23-2-55 prohibits any attempt to encroach upon

the business of another by the use of similar trademarks or names with the

intention of deceiving and misleading the public.

170.     Through the long-standing, continuous, and primarily exclusive use of

the Milner Mark in commerce, the relevant trade and consuming public have

come to understand the Milner Mark as identifying Plaintiffs and indicating

the source of origin of the insurance agency and brokerage services as

coming from Plaintiffs.

171.     Plaintiffs have built a valuable business in its use of the Milner Mark

and the goodwill associated with the Milner Mark is of great value to

Plaintiffs.  The Milner Mark has come to indicate to the trade and the

consuming public that the products and services bearing the Milner Mark

originate from Plaintiffs.

172.     Defendants have used, and are continuing to use, designations that are

confusingly similar and/or identical to Plaintiff's Milner Mark in interstate

commerce, including the State of Georgia, in connection with products and
services identical to those offered by Plaintiffs under the Milner Mark.

173.     Defendants' unauthorized use of the Milner Mark and confusingly
similar terms has caused, and is likely to continue to cause, confusion in the
marketplace between the parties' respective services.

174.     Defendants' infringement of Plaintiff's Milner Mark is in willful and
wanton disregard of Plaintiff's rights in and to the same, and without the
consent of Plaintiffs.

175.     Defendants' wrongful actions have caused, and will continue to cause,
Plaintiffs to suffer significant damages, including lost business opportunities,
lost profits, and damage to its reputation and goodwill.

176.     As a result of the foregoing, Plaintiffs have been damaged, in an
amount to be proven at trial, but exceeding $75,000.

177.     Defendants' wrongful, tortious conduct was willful, wanton, reckless,
or entirely indifferent to the consequences of actions on the rights of Plaintiff
warranting an award of exemplary and punitive damages under Georgia
statutory and common law.  O.C.G.A. §51-12-5.1.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its
order (1) finding Defendants' infringed Plaintiff's Milner Mark, (2) awarding

Plaintiffs its damages sustained, as well as its costs and attorneys' fees, and (3)

finding Defendants' wrongful, tortious conduct was willful, wanton, reckless, or

entirely indifferent to the consequences of actions on the rights of Plaintiffs

warranting an award of exemplary and punitive damages.

## COUNT VII
**Violation of the Georgia Computer Systems Protection Act**
**(O.C.G.A. §16-9-93.1)**

178.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

179.     Defendants knowingly transmitted data through a computer network,

or over transmission facilities, or through local telephone networks, for the

purpose of setting up, maintaining, operating, or exchanging data with an

electronic mailbox, home page, or any other electronic information storage

bank, or point of access to electronic information, that uses the Milner Mark

which falsely identifies and/or implies association or authorization to use the

Milner Mark.

180.     None of the Defendants had authorization from Plaintiffs to

impersonate or associate themselves with Plaintiffs.

181.     Accordingly, Defendants have directly and proximately caused Plaintiffs monetary damages in violation of O.C.G.A. §16.9-93.1 in an amount to be determined at trial but exceeding $75,000.

182.     As a result of Defendants' past, present, and ongoing violations of O.C.G.A. §16-9-93.1, Plaintiffs are without an adequate remedy at law and is therefore entitled to immediate and permanent injunctive relief.

183.     Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages under Georgia statutory and common law.  O.C.G.A. §51-12-5.1.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its order (1) finding Defendants' actions constitutes a violation of the Georgia Computer Systems Protection Act, (2) awarding Plaintiffs its damages sustained, as well as its costs and attorneys' fees, (3) granting preliminary and permanent injunctive relief, and (4) finding Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiffs warranting an award of exemplary and punitive damages.

## COUNT VIII
**Unfair Competition**

184.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

185.     Plaintiffs own all rights, title, and interest in and to the Milner Mark.

To protect its interest in the Milner Mark, and to use that interest to enhance

the goodwill, reputation, and business of Plaintiffs, Plaintiffs bring this

action.

186.     Defendants, through its unauthorized use of the Milner Mark and the

misappropriated Milner Assets, are directly and unfairly competing with

Plaintiffs in sale of insurance agency and brokerage products/services.  In

using the Milner Mark and the misappropriated Milner Assets without

consent, Defendants are unlawfully undermining and injuring Plaintiffs'

business.

187.     The injuries Defendants have and are inflicting on Plaintiffs also

harms consumers.  Defendants' use of the Milner Mark in connection with

the sale of the products/services has caused, and is likely to continue to

cause, consumers to confuse and misunderstand the distinction between the

business of Defendants and Plaintiffs and the products/services they sell.

188.     Through the use of the Milner Mark on the Defendants' various
websites and social media accounts and connected sales of the
products/services, Defendants mislead consumers to believe that Defendants
are lawfully associated, affiliated, or connected with Plaintiff, and that
Defendants are endowed with the sponsorship, endorsement, or approval of
Plaintiff.

189.     In other words, Defendants are passing themselves off as Plaintiffs.
For example, Defendants caused a public announcement that The Milner
Group (aka Plaintiffs) were acquired by Integrity Marketing Group and that
The Milner Group (aka Plaintiffs) were now Milner Financial.  Neither of
which is true.  Defendants also alienated Plaintiffs from the Milner Assets
and held themselves out as The Milner Group, including but not limited to,
signage on the building, answering the phones, various social media accounts
and profiles, websites, public announcements, and more.

190.     Defendants' actions, as set forth above, constitute unfair and
deceptive trade practice and competition in violation of the common law of
the State of Georgia.

191.    Defendants' actions described herein have caused, and will continue to cause, irreparable injury to Plaintiffs unless this Court restrains Defendants from doing so.

192.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages to the goodwill and reputation of the Milner Mark, as well as ascertainable damages in an amount to be determined at trial.

193.    Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiff warranting an award of exemplary and punitive damages under Georgia statutory and common law.  O.C.G.A. §51-12-5.1.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its order (1) finding Defendants' actions constitutes unfair and deceptive trade practices and competition, (2) awarding Plaintiffs its damages sustained, as well as its costs and attorneys' fees, (3) granting preliminary and permanent injunctive relief, and (4) finding Defendants' wrongful, tortious conduct was willful, wanton, reckless, or entirely indifferent to the consequences of actions on the rights of Plaintiffs warranting an award of exemplary and punitive damages.

## COUNT IX
**Conversion**

194.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

195.     Defendant MAI gained access to Plaintiffs' assets, including the website, social media accounts, client list, and phone numbers through lawful means – under the Milner Family Agreement as described above.

196.     However, Milner Defendants have never been the lawful owners of any of the Plaintiffs' assets to which they were provided joint access.  To the contrary, Milner Defendants' privilege to use and possess such assets was strictly limited to the terms of the Milner Family Agreement as described above.

197.     Defendant MAI used its access to the Milner Assets under the Milner Family Agreement to wrongfully misappropriate the Milner Assets for the Defendants' own benefit, and to Plaintiffs' detriment, in violation of Plaintiffs' property rights.

198.     After Defendant MAI ended the relationship between the parties to the Milner Family Agreement, Plaintiffs demanded the return of its property.

199.     Milner Defendants refused to return the Plaintiffs' assets.

200.     Upon information and belief, Milner Defendants have also sold the

Plaintiffs' assets to Integrity Defendants.

201.     Upon information and belief, Integrity Defendants knew or should

have known Milner Defendants did not own the Plaintiffs' assets in which it

acquired interest.

202.     Defendants have, therefore, "exercised unauthorized dominion over

the property and [have] thereby converted the property." *Williams v. Nat'l

Auto Sales, Inc.*, 651 S.E.2d 194, 196 (Ga. Ct. App. 2007).

203.     Defendants are in possession of the Milner Assets and/or the proceeds

thereof.

204.     Defendants' conduct in taking possession of and retaining the Milner

Assets was willful, wanton, and malicious, in knowing disregard of

Plaintiffs' ownership rights, and in reckless disregard of the harm Defendants

have caused and are foreseeably likely to cause Plaintiffs, such that punitive

damages should be imposed on Defendants.

205.     As a result of Defendants' actions, Plaintiff has been unable to reap

the benefits of ownership, including the ability to use its own domain name,

website content, social media accounts, and phone numbers.

206.     Plaintiffs have suffered damages due to Defendants' conversion of the

Milner Assets in an amount to be determined at trial, plus interest, costs, and

attorneys' fees.

207.     Defendants have caused Plaintiff unnecessary trouble and expense in

bringing and maintaining this action thereby entitling Plaintiff to recover

attorneys' fees and expenses of litigation against Defendants pursuant to

O.C.G.A. §13-6-11.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its

order (1) finding Defendants' actions constitutes conversion, (2) awarding

Plaintiffs its damages sustained, as well as interest, (3) granting immediate return

of the Milner Assets, and (4) finding Defendants have caused unnecessary trouble

and expense in bringing and maintaining this action thereby entitling Plaintiffs to

recover attorneys' fees and expenses.

## COUNT X
### Bailment
### (O.C.G.A. §44-12-10)

208.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

209.     Under Georgia law, a bailment "is a delivery of goods or property

upon a contract, express or implied, to carry out the execution of a special

object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." O.C.G.A. §44-12-40.

210. Plaintiffs bailed Defendant MAI the use of the Milner Assets so Defendant MAI could operate under THE MILNER GROUP name and according to the Milner Family Agreement. Plaintiffs and Defendant MAI previously used the Milner Assets for that purpose and the parties enjoyed mutual benefits from that purpose.

211. Plaintiffs never transferred ownership of the Milner Assets whether to Defendant MAI or any other Defendant.

212. The purpose of the bailment expired and the bailment period ended upon Milner Defendants actions to misappropriate and sell the Milner Assets away from Plaintiff.

213. Georgia law requires that all bailees "exercise care and diligence to protect the thing bailed and to keep it safe." O.C.G.A. §44-12-43.

214. Defendant MAI breached its duty as bailee to keep the Milner Assets safe. Indeed, they misappropriated and sold the Milner Assets, in direct contravention of its obligations as bailees.

215. As a result of Defendant MAI's violations of its obligations as bailee, Plaintiffs (the bailor) have suffered severe losses, including lost business

opportunities, lost income from the use of the Milner Assets, and the total

loss of use and enjoyment of the property due to Defendants' refusal to return

the Milner Assets at the end of the bailment period and still now.

216.     Plaintiffs have suffered damages due to Defendant MAI's violations

as bailee of the Milner Assets in an amount to be determined at trial, plus

interest, costs, and attorneys' fees.

217.     Defendants should be ordered to immediately return the Milner Assets

to Plaintiffs so as to prevent further harm to Plaintiffs.

218.     Defendants have caused Plaintiff unnecessary trouble and expense in

bringing and maintaining this action thereby entitling Plaintiff to recover

attorneys' fees and expenses of litigation against Defendants pursuant to

O.C.G.A. §13-6-11.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its

order (1) finding Defendants' actions constitutes violations of its obligations as

bailee, (2) awarding Plaintiffs its damages sustained, as well as interest, (3)

granting the immediate return of the Milner Assets, and (4) finding Defendants

have caused unnecessary trouble and expense in bringing and maintaining this

action thereby entitling Plaintiffs to recover attorneys' fees and expenses.

## COUNT XI
### Unjust Enrichment

219.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

220.     Defendants have maintained exclusive use and possession of the Milner Assets and/or the proceeds thereof since about December 2022 through present.

221.     As a result of the actions described herein, Defendants have been unjustly enriched at Plaintiffs' expense.

222.     It would be unjust to allow Defendants to fail to fully compensate Plaintiffs for the use and possession of the Milner Assets and/or any proceeds thereof.

223.     Plaintiffs are entitled to damages against Defendants based on unjust enrichment for the full value of the Milner Assets and/or any proceeds thereof.

224.     Defendants should be required to disgorge all monies, profits, and/or gains which it has obtained or will unjustly obtain in the future at Plaintiffs' expense and a constructive trust should be imposed thereon for the benefit of Plaintiffs.

225.     Defendants have caused Plaintiffs unnecessary trouble and expense in bringing and maintaining this action thereby entitling Plaintiffs to recover attorneys' fees and expenses of litigation against Defendants pursuant to O.C.G.A. §13-6-11.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its order (1) finding Defendants' have been unjustly enriched (2) awarding Plaintiffs its damages sustained, as well as Defendants' profits, and (3) finding Defendants have caused unnecessary trouble and expense in bringing and maintaining this action thereby entitling Plaintiffs to recover attorneys' fees and expenses.

**<u>COUNT VII</u>**
**Civil Conspiracy**

226.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

227.     An agreement and conspiracy existed and continues to exist between and among Defendants and other co-conspirators to fraudulently obtain and convert the Milner Assets and/or proceeds thereof belonging to Plaintiff and violate, *inter alia*, the Georgia Civil RICO Act and the Georgia Computer Fraud and Abuse Act.

228.     Each Defendant knowingly agreed to engage, and did engage, in one

or more overt acts in pursuit of the conspiracy as set forth with more

particularly in this Complaint.

229.     Defendants have knowingly, directly, and proximately damaged

Plaintiff by this conspiracy and Defendants' actions in furtherance thereof, in

amount of no less than the value of the Milner Assets and/or proceeds

thereof, along with interest and attorneys' fees in an amount to be determined

at trial.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its

order (1) finding Defendants engaged in civil conspiracy and (2) awarding

Plaintiffs its damages sustained, as well as interest, costs, and attorneys' fees.

## COUNT XIII
### Violation of the Georgia Civil RICO Act
### (O.C.G.A. §16-1-3)

230.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set

forth herein.

231.     Defendants each constitute a "person" as defined under Georgia's

civil RICO statute.  O.C.G.A. §16-1-3(12).

232.     Defendants engaged in a pattern of racketeering activity through

engaging in at least two incidents of fraud and theft, which incidents were

violations of, among other things, O.C.G.A. §§16-14-3(5)(A)(xix) and 16-14-3(5)(C).

233.     Specifically, as set forth in detail in this Complaint, Defendants falsely represented on several occasions that they were authorized to use the Milner Mark and misappropriated the Milner Assets to the control of one or more of the Defendants rather than to Plaintiffs.

234.     Through their fraudulent scheme, Defendants have misused, converted, misappropriated and/or stolen the Milner Assets demonstrating a pattern of racketeering activity.

235.     Each Defendant agreed to, and did participate in, the enterprise and the illegal activity of the enterprise directly through misrepresentations, including through computer submissions, false statements, and wires, fraudulently directing the Milner Assets and/or the proceeds thereof, without legal right to do so.

236.     Numerous parties did in fact rely on Defendants' intentionally false and misleading misrepresentations and remitted the Milner Assets to the exclusive control of the Defendants rather than the appropriate parties, namely Plaintiffs.

237.    This pattern of racketeering continued as Milner Defendants then negotiated and sold the Milner Assets to Integrity Defendants.

238.    Upon information and belief, Defendants intentionally misappropriated and converted funds in furtherance of their criminal and fraudulent enterprise.

239.    All of the Defendants' foregoing acts, omissions, and representations occurred after July 1, 1980.

240.    Defendants' continued commission of the above-reference predicate acts related to fraud and civil theft constitute a pattern of racketeering behavior.

241.    Defendants collectively were an enterprise, and each of the Defendants is individually an enterprise.

242.    Defendants engaged in a pattern of racketeering activity for the purpose of fraudulently obtaining and wrongfully retaining the Milner Assets and/or proceeds thereof that belong to Plaintiffs.

243.    Defendants acted willfully and maliciously and ultimately succeeded in their scheme to defraud Plaintiffs through a pattern of racketeering activity to acquire and/or gain control of Plaintiffs' rightful property, including

money in the form of the sale of the Milner Assets and infringement of the Plaintiff's registered Milner Mark.

244.     As a direct result of Defendants' racketeering activity, they have damaged Plaintiffs in an amount of no less than the value of the Milner Assets and/or proceeds thereof, along with other damages to Plaintiffs' business, diverted sales, and other foreseeable damages resulting from Defendants' scheme.

245.     Defendants' acts were made in bad faith, constitute stubborn litigiousness, and caused Plaintiffs unnecessary trouble and expense, thereby entitling Plaintiffs to recover its expenses of litigation, including attorneys' fees and costs pursuant to O.C.G.A. §13-6-11.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its order (1) finding Defendants' actions constitutes a violation of the Georgia Civil RICO Act, (2) awarding Plaintiffs its damages sustained, as well as Defendants' profits, and (3) finding Defendants have caused unnecessary trouble and expense in bringing and maintaining this action thereby entitling Plaintiffs to recover attorneys' fees and expenses.

## COUNT XIV
**Attorney's Fees and Prejudgment Interest**

246.     Plaintiffs repeat and reallege the preceding paragraphs as if fully set forth herein.

247.     In relation to the wrongful acts described above, and to each and every count set forth above, Defendants have acted in bad faith and have caused Plaintiffs unnecessary trouble and expense.  As detailed above, Defendants intentionally and in bad faith engaged in infringement, unfair competition, conversion, and more with full knowledge of the harm that would result to the public and to Plaintiffs.

248.     Additionally, Defendants have refused to cease use of the Milner Mark, and confusingly similar marks, despite knowing of the infringement from the time they began using the Milner Mark and confusingly similar marks.

249.     Furthermore, Defendants have refused to return any of the Milner Assets despite knowing Plaintiffs' rights to them prior.

250.     Finally, Defendants have used Plaintiff's Milner Mark and the Milner Assets to divert business from Plaintiffs and tortiously interfere with Plaintiffs' business, all of which was done with knowledge and intent to harm Plaintiffs.

251.    Plaintiffs are entitled to recover all expenses and fees arising from the

misconduct of Defendants giving rise to the present litigation, including the

reasonable attorney fees expended by Plaintiff, pursuant to O.C.G.A. §13-6-

11 and applicable federal law.

252.    Plaintiff is also entitled to recover prejudgment interest on its damages

pursuant to O.C.G.A. §13-6-13.

WHEREFORE, for the foregoing reasons, Plaintiffs pray this Court enter its

order finding Plaintiffs are entitled to recover all expenses and fees arising from

the misconduct of Defendants, including reasonable attorneys' fees and

prejudgment interest on its damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of

them, jointly and severally, as follows:

253.    That, pursuant to federal and state law and in equity, the Court issue

preliminary and permanent injunctions enjoining the Defendants and each of

them, and their respective agents, servants, employees, officers, successors,

licensees and assigns, and all persons acting in concert or participation with

each or any of them from, directly or indirectly:

a. Further use of the Milner Mark or any other reproduction, counterfeit, copy, confusingly similar variant, or colorable imitation of the Milner Mark, including but not limited to Milner Financial, in commerce in any medium;

b. Selling or otherwise disposing of the Milner Assets at issue in this action; and

c. Otherwise unfairly competing with Plaintiffs;

254. That, pursuant to federal and state law and in equity, the Court issue a preliminary and permanent injunction compelling the Defendants to return the Milner Assets, including the Legacy Phone Number, milnergroup.com and the milnerfinancial.com domains, and social media accounts, at issue;

255. Finding that Defendants have infringed Plaintiff's Milner Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114;

256. Finding that Defendants have infringed Plaintiff's Milner Mark in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(a);

257. Finding that Defendants use of milnergroup.com and milnerfinancial.com constitute cybersquatting in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(d);

258.     Finding that Defendants have engaged in deceptive trade practices in

violation of O.C.G.A. §10-1-372;

259.     Finding that Defendants have tortiously interfered with Plaintiffs'

business relationships and economic advantages in violation of the common

law of the State of Georgia;

260.     Finding that Defendants have infringed Plaintiff's Milner Mark in

violation of O.C.G.A. §23-2-55;

261.     Finding that Defendants knowingly transmitted data through a

computer network or over transmission facilities or through local telephone

networks for the purpose of setting up, maintaining, operating, or exchanging

data with an electronic mailbox, home page, or any other electronic

information storage bank or point of access to electronic information that

uses the Milner Mark which falsely identifies and/or implies association or

authorization to use the Milner Mark in violation of O.C.G.A. §16-9-93.1;

262.     Finding that Defendants actions constitute unfair and deceptive trade

practices and competition in violation of the common law of the State of

Georgia;

263.     Finding that Defendants exercised unauthorized dominion over

Plaintiffs' property and thereby converted the property in violation of the

common law of the State of Georgia;

264.     Finding that Defendants breached their duties as bailees in violation of

O.C.G.A. §44-12-40;

265.     Finding that Defendants have been unjustly enriched at the expense of

Plaintiffs in violation of the common law of the State of Georgia;

266.     Finding that Defendants committed civil conspiracy to harm Plaintiffs

in violation of the common law of the State of Georgia;

267.     Finding that Defendants have violated the Georgia RICO Act,

O.C.G.A. §16-1-3, by participating and/or conspiring to participate in an

enterprise to steal Plaintiffs' property and convert it to their own profit,

including through violation of O.C.G.A. §16-9-93.1;

268.     For monetary damages as to Counts I through XIV in an amount to be

determined at trial, including but not limited to compensatory, statutory,

and/or enhanced damages, as appropriate;

269.     Judgment in favor of Plaintiffs against Defendants for compensatory,

treble, and punitive damages as appropriate pursuant to O.C.G.A. §51-12-5.1,

15 U.S.C. §1117, and/or other applicable law;

270.     That Plaintiffs recover the taxable costs of this civil action, including

reasonable attorney's fees and costs and interest pursuant to 15 U.S.C. §1117,

O.C.G.A. §13-6-11, and/or other applicable law; and

271.     That Plaintiffs be awarded all other and further relief as the Court may

deem just and proper under the facts and circumstances of this case.

### JURY DEMAND

Plaintiffs hereby request a trial by jury as to all issues so triable.

Dated: August 30, 2023          Respectfully submitted,

ANDERSEN, TATE & CARR, P.C.

By:    /s/ R. Matthew Reeves
        R. Matthew Reeves
        Georgia Bar No. 598808
        S. Lanier Flanders
        Georgia Bar No. 703767
        One Sugarloaf Centre
        1960 Satellite Boulevard, Suite 4000
        Duluth, GA  30097
        Telephone | 770-822-0900
        Facsimile  | 770-822-9680
        mreeves@atclawfirm.com
        lflanders@atclawfirm.com

        Attorneys for Plaintiffs
        British American Insurance
        Intermediaries, Inc., and Security Benefit
        Associates Group Services, Inc.

FortmanSpann, LLC

By:   /s/ Kelly M. Spann_____
         Kelly M. Spann
         Missouri Bar No. 73954
         250 Saint Catherine Street
         Florissant, MO 63031
         (314) 522-2312
         (314) 524-1519 (Facsimile)
         kms@fortmanlaw.com

Attorney for Plaintiffs
British American Insurance
Intermediaries, Inc., and Security Benefit
Associates Group Services, Inc.

Pro Hac Vice pending

4861-7122-3677, v. 1