PLAINTIFF'S EXHIBIT 1

## BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC.

### SHAREHOLDERS' AGREEMENT

THIS AGREEMENT made and entered into as of the 22nd day of September, 1982, by and among SEIXAS G. MILNER, JR., FREDERICK R. MILNER, WILLIS LATIMER MILNER AND WHITNER READE MILNER, (hereinafter referred to jointly as the "Shareholders"), and BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC., a Georgia corporation, (hereinafter referred to as the "Company").

W I T N E S S E T H :

WHEREAS, the Shareholders own all of the issued and outstanding capital stock of the Company; and

WHEREAS, the parties to this Agreement believe that it is to their mutual best interest to restrict the sale or transfer of their respective shares and to give the Company and the Shareholders options to purchase the shares of a terminated shareholder-employee to insure continuity and harmony in management and the policies of the Company;

WHEREAS, the parties to this Agreement further believe that it is to their mutual best interest to provide for the purchase of deceased Shareholder's shares by the Company; and

NOW THEREFORE, in consideration of the premises, the mutual agreements and covenants herein contained and other good

and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

    1.    <u>Parties</u>.

This Agreement is made among the Company and the initial Shareholders, but any subsequent shareholders (either in addition to the initial Shareholders or in substitution thereof) shall be deemed to be parties to this Agreement by execution of a counterpart to this Agreement. Such other Shareholders shall then be deemed Shareholders for all purposes hereof.

    2.    <u>Restriction on Sale, Transfer, or Encumbrance of Company Shares</u>.

    a)    The Shareholders agree that the Shares, together with any that may be issued in the future, shall neither be sold, transferred, pledged, encumbered, nor otherwise disposed of without first giving written notice of the transaction and then offering a first right of refusal to the Company and to the other Shareholders, as provided in this Agreement. Any sale, transfer, pledge, encumbrance, or other disposition is hereinafter referred to as a "transfer."

    b)    Any Shareholder desiring to make a transfer of his Shares (the "Transferor") shall give a written notice to the Company of his intent to transfer the Shares. That notice must state the identity of the proposed transferee, the terms of the transfer, the price, if any, offered by the transferee for the Shares, and other facts relevant to the transfer. Copies of the

notice must be simultaneously sent to the other Shareholders. The Transferor shall be bound to the terms of the transfer as stated in the notice, and shall keep the Company and the other Shareholders informed of any material changes in the proposed transfer. The Transferor shall also provide the Company and the other Shareholders with any other information regarding the proposed transfer if such provision is reasonably requested by the Company or by the other Shareholders.

        c)    Upon receipt of such notification by the Company, the Company shall have an option for thirty (30) days, from the date of such receipt, to elect to purchase all, but not less than all, of the Shares the Transferor proposes to transfer. If the option is not exercised by the Company, then the other Shareholders shall have a similar option to purchase the Shares. The option period for the other Shareholders shall begin on the last day of the Company's option period or sooner if the Company gives written notice that it does not intend to purchase the Shares and shall run for thirty (30) days therefrom.

        d)    The closing of the purchase by the Company or by the other Shareholders, as the case may be, shall take place at the principal office of the Company or such other place as may be agreed to by the parties and, unless otherwise agreed, the purchase price shall be paid in cash or certified check at closing. The purchase price shall be that offered by the proposed transferee as stated in the notice from the Transferor, but shall

not exceed the price as determined in Paragraph 4 of this Agreement.  If the proposed transferee's <u>bona fide</u> offer includes payment terms on an installment basis, or if the purchase price is to be paid partly in cash and partly by note, or is otherwise not by a cash payment of the full purchase price, the Company or the other Shareholders, as the case may be, shall be permitted to exercise the same terms of payment for the Shares.

  e) If the Company or the other Shareholders do not exercise the option to purchase the Shares, the Company shall endorse upon the Transferor's certificate or certificates or applicable portion thereof the specific waiver of the noticed transaction by the Company and by the other Shareholders, so as to permit the transfer of such Shares.  Any transfer shall be made only in strict accordance with the terms stated in the notice given to the Company.  If the Transferor shall fail to make the transfer within thirty (30) days following the endorsement of the Shares by the Company, the waiver granted hereunder for such transfer shall lapse.  Such waiver shall, in any event, apply only to the specific transfer regarding which the Transferor notifies the Company.  Anyone acquiring the Shares under this provision shall hold such Shares subject to all of the terms, conditions, and options of this Agreement.

  3. <u>Death of a Shareholder</u>.

   a) Upon a Shareholder's death, the Company shall purchase from the decedent's personal representatives and the

decedent's personal representatives shall sell to the Company all the Shares owned by the decedent and to which the decedent or his personal representatives shall be entitled.

      b)   The closing of such purchase shall take place at the office of the Company or such other place as may be agreed upon by the parties on a date designated by the Company, which date shall be not more than thirty (30) days following the date of the qualification of the decedent's personal representative. The purchase price for the Shares shall be determined in accordance with Paragraph 4 hereof. The terms for payment shall be by cash or certified check, unless other terms can be agreed upon by the parties.

    4.   <u>Purchase Price</u>. The price for the Shares may be designated from to time, but at least annually, by mutual agreement of the parties. If a price has not been designated within the last twelve (12) months of the date of transfer, then the highest <u>bona fide</u> offer received by the Shareholder proposing to sell or transfer the Shares, as included in the notice to the Company, shall be the price. If a designated price does not exist and a <u>bona fide</u> offer has not been made then the price shall be _____ ($_____) per share for a period of one (1) year following the date of this Agreement. Thereafter, the price for each share shall be the per share book value of the Company, determined as of the end of the last fiscal quarter preceding the date of transfer under this Agreement. The determination of book value shall be made in accordance with generally accepted

accounting principles, on the basis of accounting regularly used by the Company except that any real estate, securities, and other investments owned by the Company shall be valued at then current fair market value, and all inventories shall be computed and valued at the lower of cost or market.  The determination of book value shall be computed by the accountant then servicing the Company and such determination shall be conclusive on all parties. to the initial Shareholders or in substitution thereof) shall be deemed to be parties to this Agreement by execution of a counterpart to this Agreement.  Such other Shareholders shall then be deemed Shareholders for all purposes hereof.

5.  **Life Insurance**.  The Company or any Shareholder shall have the right to purchase life insurance on the life of any other Shareholder to the extent reasonably necessary to finance any redemption or purchase of Shares described in this Agreement. If a party desires to purchase a life insurance policy, then the insured Shareholder shall cooperate fully by undergoing medical examinations and by generally performing all of the requirements of the life insurer which are conditions precedent to the issuance of such a life insurance policy.

6.  **Endorsement On Share Certificates**.  Each certificate representing Shares of the Company now or hereafter held by the

Shareholders shall be stamped with a legend in substantially the following form:

> "The transfer of the Shares represented by this certificate is restricted under the terms of an Agreement dated as of September 22, 1982, a copy of which is on file at the office of the Company."

7. <u>Notices</u>. Any and all notices, designations, consents, offers, acceptances, or any other communication herein provided for shall be in writing and hand delivered or given by registered or certified mail, postage pre-paid, addressed to the Company at its principal office, and to each Shareholder at his address appearing on the books of the Company or to such other address as he may designate in writing. If registered or certified mail is so used, receipt by the addressee for purposes of this Agreement shall be the date of post mark on the mail.

8. <u>Invalid Provision</u>. The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

9. <u>Modification; Waiver</u>. No change or modification of this Agreement or any release or waiver of any of the provisions hereof shall be valid unless the same be in writing and signed by all the parties hereto.

10. <u>Georgia Contract</u>. This Agreement is made under and shall be construed by the Law of the State of Georgia as to all matters.

11. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Shareholders and their heirs, personal representatives and assigns and the Company and its successors and assigns.

IN WITNESS WHEREOF, the Company has caused this Agreement to be signed by a duly authorized officer and its seal to be affixed hereto, and the Shareholders have hereunto set their hands and seals on the day and year first above written.

Attest:

_____
Secretary

(SEAL)

BRITISH AMERICAN INSURANCE
INTERMEDIARIES, INC.

BY: _____
President

SHAREHOLDERS:

_____(SEAL)
Seixas G. Milner, Jr.

_____(SEAL)
Frederick R. Milner

_____(SEAL)
Willis Latimer Milner

_____(SEAL)
Whitner Reade Milner