

Begin forwarded message:

**From:** Chad Milner <chadm@milnergroup.com>
**Date:** August 14, 2017 at 4:16:12 PM EDT
**Subject: Corporate meeting**


Lat,
I think it is past time for the 3 of us to meet in regard to finalizing the naming dispute between The Milner Agency and SBA Group Services. I propose a meeting between the 3 of us (and Shane if you feel necessary) within the next 2 weeks to come to an agreement.
The way I see it, there are two options:
1.) come to an agreement where The Milner Agency and SBA Group Svcs will share the name "The Milner Group" and agree on how they will share customers, costs, etc.
2.) No agreement can be made and neither SBA Group Svcs nor The Milner Agency will use the name "The Milner Group"
I would also like to notify you of my recent acquisition of Whitner's shares of BAII, Inc. Please find attached the necessary documentation to facilitate the stock transfer. I also request a shareholders meeting for BAII within the next 2 weeks.
Thanks,
Seixas "Chad" Milner III
CEO/President
The Milner Group
North American Senior Benefits
Direct Office: 678 252 1788
Mailing Address:
Po Box 492888, Lawrenceville, GA 30049

This email message and any files transmitted with it may contain confidential material and are intended only for those persons or entities to which it is addressed. If you have received this email message and information in error, please contact the sender and delete all copies that you have received.

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement"), made and entered into as of the 7th day of August, 2017, by and between WHITNER READE MILNER, an individual resident of the State of Georgia (hereinafter referred to as "Seller"); and SEIXAS G. MILNER, III, an individual resident of the State of Georgia (hereinafter referred to as "Purchaser").

### W I T N E S S E T H:

WHEREAS, Seller is the owner of one hundred twenty-five (125) shares (the "Shares") of the common stock, par value $1.00 per share (the "Stock"), of British American Insurance Intermediaries, Inc., a Georgia corporation (the "Corporation"), represented by Certificate No. 4; and

WHEREAS, Seller desires to sell all of the Shares to Purchaser, and Purchaser desires to purchase the Shares;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises herein contained, the parties hereto, each intending to be mutually bound, hereby agree as follows:

Section 1. Purchase of Shares and Shareholder Rights. Subject to the terms and conditions hereof, Seller hereby agrees to sell the Shares to Purchaser and Purchaser hereby agrees to purchase the Shares from Seller for an aggregate purchase price of Ten Thousand Dollars ($10,000.00), payable by delivery of Purchaser's check to Seller at the Closing. Without limitation, it is understood and agreed that at the time of the Closing, in addition to the conveyance to Purchaser of the Shares hereunder, by a corresponding Assignment, Seller shall

DMS 10715569v6

transfer and assign to Purchaser any and all rights of Seller in connection with or with respect to Seller's status as a shareholder of the Corporation prior to the Closing.

Section 2.   Closing.   The closing (the "Closing") for the sale and purchase of the Shares shall be held effective as of 3:00 p.m. on August 7$\frac{th}{}$, 2017, at 833 Hurricane Shoals Road, Lawrenceville, Georgia 30043, or at such other time and place as the parties hereto may mutually agree.   At the Closing, (i) Seller shall transfer the Shares to Purchaser by execution and delivery of Certificate No. 4, representing the Shares, or by execution and delivery of a Stock Power in lieu thereof; (ii) Seller shall transfer all of Seller's rights in connection with or with respect to Seller's status as a shareholder of the Corporation prior to the Closing by the execution and delivery to Purchaser of an Assignment effecting such transfer; and (iii) Purchaser shall deliver a check to Seller in the amount of Ten Thousand Dollars ($10,000.00).

Section 3.   Seller's Representations and Warranties.   To induce Purchaser to consummate the transactions contemplated by this Agreement, Seller hereby represents and warrants that the following statements are true and correct as of the date hereof and at the time of the Closing:

(a)    As of the date hereof and immediately prior to the Closing, Seller owns and shall own one hundred twenty-five (125) shares of the Stock, represented by Certificate No. 4, said one hundred twenty-five (125) shares represent all of the Stock owned by Seller at any time prior to the execution of this Agreement, and said one hundred twenty-five (125) shares represent fifty percent (50%) of the outstanding capital stock of the Corporation;

(b)    The Shares to be sold hereunder are owned by Seller, free and clear of any and all liens, pledges, encumbrances, charges, assessments, agreements or claims, and Seller has full

DMS 10715569v6

2

right, power and authority to transfer, convey, assign and deliver the Shares to Purchaser at the Closing, without any restrictions whatsoever;

      (c)     Upon execution and delivery by Seller, this Agreement will constitute the valid and legally binding agreement of Seller, enforceable in accordance with its terms; and

      (d)     Prior to Seller's execution of this Agreement, Seller has had, either individually or with his advisors, as he has deemed necessary or appropriate, opportunity to investigate the Corporation and opportunity to secure access to the books and financial and operational records of the Corporation and to information relating or pertaining to the operations and activities of the Corporation.   Seller is not selling the Shares based on representations by Purchaser or the Corporation or by any person affiliated with Purchaser with respect to the present or future value of the Shares.

      Section 4.  <u>Purchaser's Representations and Warranties</u>.  Purchaser hereby represents and warrants that the following statements are true and correct as of the date hereof and at the time of the Closing:

      (a)     Purchaser is purchasing the Shares for Purchaser's own account and not with a view to the further sale or distribution thereof;

      (b)     Purchaser is aware that the Shares have not been registered under any securities laws and may not be resold or transferred except in a transaction which complies with applicable federal and state securities laws, and Purchaser shall not make any such resale or transfer except in compliance with said laws;

DMS 10715569v6

3

(c)     Upon execution and delivery of this Agreement by Purchaser, this Agreement will constitute the valid and legally binding agreement of Purchaser, enforceable in accordance with its terms; and

(d)     Prior to Purchaser's execution of this Agreement, Purchaser has had, either individually or with his advisors as he has deemed necessary or appropriate, opportunity to investigate the Corporation.  Purchaser is not purchasing the Shares based on representations by Seller or by any person affiliated with Seller with respect to the present or future value of the shares that are the subject matter of this Agreement.

Section 5.   Brokers.   Purchaser and Seller hereby represent and warrant, one to another, that neither has engaged any broker or agent or incurred any finder's fee with respect to the transactions contemplated hereby.

Section 6.   Entire Agreement.   The parties hereto have not made any representations, warranties or covenants not set forth herein regarding the purchase and sale of the Shares hereunder, and this Agreement and the documents referenced herein constitute the entire agreements between the parties hereto regarding the subject transaction.

Section 7.   Survival of Representations.   All the representations, warranties, covenants and agreements set forth in this Agreement shall survive the Closing.

Section 8.  Miscellaneous.

(a)     Each party hereto agrees to take such further actions and to execute and deliver such additional instruments and documents as any other party hereto may from time to time

DMS 10715569v6

4

reasonably request in order to effectuate the transfer of the Shares to be sold hereunder, and to otherwise effect the purposes of this Agreement.

(b)     The parties hereto agree that they shall bear their own corresponding expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transactions contemplated hereunder.

(c)     All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly and properly given and received when personally delivered or three (3) days after mailing by United States Mail, postage prepaid, as follows:

(i)  If to Seller, to:

Mr. Whitner Reade Milner
702 Covered Bridge Road
Hoschton, GA  30548

(ii)  If to Purchaser, to:

Mr. Seixas G. Milner, III
833 Hurricane Shoals Road
Lawrenceville, GA  30043

or at such different addresses as may be specified in writing, given by one party to the other in accordance with the foregoing.

(d)     Neither this Agreement nor any provision contained herein may be changed, modified, discharged or terminated orally.  Such action may be effected only by an instrument in writing signed by the party or parties against which or against whom enforcement of such change, modification, discharge or termination is sought.

DMS 10715569v6

5

(e)     This Agreement has been executed in the State of Georgia and shall be governed and construed in accordance with the laws thereof.  All personal pronouns in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders.  Titles of Sections in this Agreement are for convenience only and neither limit nor amplify the provisions hereof.

(f)     No assignment or transfer by any party hereto of his rights and obligations hereunder shall be made except with the prior written consent of the other party hereto.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective personal representatives, heirs, successors in interest and permitted assigns.

(g)     Time is of the essence of this Agreement.

(h)     No waiver or breach of any provision of this Agreement shall constitute a waiver or breach of any other provision hereof.  The failure of any party hereto to insist upon strict adherence to any term of this Agreement on any occasion shall not constitute a waiver or deprive such party of the right thereafter to insist upon strict adherence to that term or any other term contained herein.  All remedies provided by law or any agreement hereunder, and the exercise of any remedy, shall not be deemed an election to the exclusion of any other remedy, any such claim by the other parties being hereby waived.

IN WITNESS WHEREOF, the parties hereto have set forth their respective hands and seals, as of the day and year first above written.

**[SIGNATURES ON FOLLOWING PAGE]**

DMS 10715569v6

6

SELLER:

_Kellie M. Braswell_ (SEAL)
Witness

_Whitner Reade Milner_ (SEAL)
Whitner Reade Milner

PURCHASER:

(SEAL)
Witness

(SEAL)
Seixas G. Milner, III

DMS 10715569v6

7



## ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to that certain August __, 2017 Stock Purchase Agreement between the parties hereto (by reference made an integral part hereof), the undersigned, Whitner Reade Milner ("Assignor"), hereby transfers, conveys and assigns to Seixas G. Milner, III ("Assignee") any and all rights of Assignor in connection with or with respect to Assignor's status as a shareholder of British American Insurance Intermediaries, Inc., a Georgia corporation, prior to the date hereof

IN WITNESS WHEREOF, Assignor has hereunto executed this Assignment for the benefit of Assignee this 7th day of August, 2017.

_____
Whitner Reade Milner


## ACCEPTANCE

The undersigned, Seixas G. Milner, III, hereby accepts the aforementioned assignment of rights.

IN WITNESS WHEREOF, the undersigned has hereunto executed this Acceptance this this 7th day of August, 2017.

_____
Seixas G. Milner, III

## STOCK POWER

**FOR VALUE RECEIVED**, I, Whitner Reade Milner, hereby transfer, convey and assign unto Seixas G. Milner, III, all of the outstanding capital stock which I own in British American Insurance Intermediaries, Inc. (the "Corporation"), a Georgia corporation, consisting of one hundred twenty-five (125) shares standing in my name on the books of the Corporation, represented by Stock Certificate No. 4, and do hereby irrevocably constitute and appoint Seixas G. Milner, III as attorney in fact to transfer the said stock on the books of the Corporation, with full power of substitution in the premises.

Dated: August 7th, 2017

_____
Whitner Reade Milner

In Presence Of:

_____
Witness

DMS 10715796v1