*76387-6402*

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
BARROW COUNTY, GEORGIA
**18-CV-000736-W**
WAYNE D. MCLOCKLIN
MAY 14, 2018 05:17 PM

*Regina B. McIntyre*
Regina McIntyre, Clerk
Barrow County, Georgia

## IN THE SUPERIOR COURT OF BARROW COUNTY
## STATE OF GEORGIA

Willis Latimer Milner.

     *Plaintiff,*

     *v.*

Whitner Reade Millner,

     *Defendant.*

Case No. _____

**PLAINTIFF'S EXHIBIT**
**13**

---

### COMPLAINT

Plaintiff Willis Latimer "Lat" Milner files this Complaint against Defendant Whitner Reade "Whit" Milner and states as follows:

### NATURE OF THE DISPUTE

1.    This action results from Defendant's breach of a September 22, 1982 British American Insurance Intermediaries, Inc. ("BAII") Shareholders' Agreement, attached hereto as Exhibit A. Plaintiff seeks specific performance under the Shareholders' Agreement.

### PARTIES

2.    Plaintiff Willis Latimer Milner is an individual residing in Barrow County at 682 Covered Bridge Road, Hoschton, Georgia, 30548.

3.    Defendant Whitner Reade Milner is an individual residing in Barrow County at 702 Covered Bridge Road, Hoschton, Georgia, 30548.

1

4.    Plaintiff and Defendant are brothers.

5.    Plaintiff and Defendant each own 125 shares of BAII stock.

6.    Plaintiff and Defendant are the only current shareholders of BAII.

7.    Plaintiff is both Chief Executive Officer and Chief Financial Officer of BAII.

## JURISDICTION AND VENUE

8.    The Court has jurisdiction over this matter pursuant to Ga. Const. art. VI, § IV, ¶ 1.

9.    Venue is proper in this Court pursuant to Ga. Const. Art VI § II, Para. VI as Defendant resides in Barrow County.

## FACTUAL BACKGROUND

10.    BAII was formed on September 22, 1982 as a for-profit corporation organized and existing under the laws of Georgia.

11.    On September 22, 1982, the four original shareholders of BAII – Seixas G. Milner, Jr., Frederick R. Miller, Plaintiff Willis Latimer Milner, and Defendant Whitner Reade Milner - executed the Shareholders' Agreement.

12.    On November 24, 1990, Seixas G. Milner, Jr. transferred his shares to BAII.

13.    On August 8, 1997, Frederick R. Milner transferred his shares to BAII.

14. Since August 9, 1997, Plaintiff Willis Latimer Milner and Defendant Whitner Reade Milner have been the only shareholders of BAII.

**The Shareholders' Agreement**

15. BAII stock is exempt from registration, and transfer of BAII shares is restricted by the terms of the Shareholders' Agreement.

16. Specifically, the Shareholders' Agreement provides that BAII shares "shall neither be sold, transferred, pledged, encumbered, nor otherwise disposed of without first giving written notice of the transaction and then offering a right of first refusal to the Company and to the other Shareholders, as provided in this Agreement." Exhibit A, ¶ 2.a.

17. The Shareholders' Agreement further provides that "Any shareholder desiring to make a transfer of his Shares (the "Transferor") shall give a written notice to the Company of his intent to transfer the shares. That notice must state the identity of the proposed transferee, the terms of the transfer, the price, if any, offered by the transferee for the Shares, and other facts relevant to the transfer. … The Transferor shall be bound to the terms of the transfer as stated in the notice, and shall keep the Company and the other Shareholders informed of any changes in the proposed transfer." Exhibit A, ¶ 2.b.

18. The Shareholders' Agreement further provides that, upon receipt of such notice, "the Company shall have an option for thirty (30) days, from the date

of such receipt, to elect to purchase all, but not less than all, of the Shares the Transferor proposes to transfer. If the option is not exercised by the Company, then the other Shareholders shall have a similar option to purchase the Shares." Exhibit A, ¶ 2.c.

### Defendant's Attempted Transfer of Shares

19. On August 7, 2017, Defendant Whitner Reade Milner executed a "Stock Purchase Agreement," purporting to sell his 125 shares of BAII stock to Seixas G. "Chad" Milner, III for a price of $10,000. A copy of this Stock Purchase Agreement is attached as Exhibit B.

20. On August 14, 2017, BAII and Plaintiff Willis Latimer Milner received notice of Defendant Whitner Reade Milner's intent to transfer his BAII shares when Exhibit B was provided to Plaintiff by the purported purchaser, Seixas G. "Chad" Milner, III.

21. This notice contained "the identity of the proposed transferee, the terms of the transfer, the price, if any, offered by the transferee for the Shares, and other facts relevant to the transfer" as required by ¶ 2.b of the Shareholders' Agreement.

22. Via letter dated August 21, 2017, BAII, acting through counsel, informed Defendant Whitner Reade Milner that BAII considered the purported Stock Purchase Agreement written notice of Defendant's intent to transfer shares

pursuant to ¶ 2.b of the Shareholders' Agreement. The August 21, 2017 letter is attached hereto as Exhibit C.

23.     In the same letter, BAII further recommended that the company exercise its option to purchase Defendant's shares at the terms set forth in the Stock Purchase Agreement.

24.     In the same letter, BAII requested that Defendant execute and agree to a resolution transferring his shares to BAII on those terms, and do so by September 13, 2017 – before the expiration of BAII's thirty-day option period.

25.     Defendant did not execute the resolution as requested, and otherwise refused to transfer his shares to BAII on the terms set forth in the Stock Purchase Agreement.

26.     BAII's option to purchase Defendant's shares expired on September 14, 2017, giving rise to another 30-day option period during which the other shareholders of BAII could opt to purchase Defendant's shares.

27.     Via letter dated October 6, 2017, Plaintiff Willis Latimer Milner, acting through counsel, timely informed Defendant that Plaintiff wished to purchase Defendant's shares on the terms set forth in the Stock Purchase Agreement. The October 6, 2017 letter is attached hereto as Exhibit D.

28.   In a conversation with Plaintiff on October 6, 2017, Defendant agreed to honor his obligations under the Shareholders' Agreement and transfer his shares to Plaintiff on the terms set forth in the Stock Purchase Agreement.

29.   At some point thereafter, Defendant changed his mind and has since failed to cooperate in finalizing the transfer of his shares of BAII to Plaintiff.

## COUNT I: BREACH OF CONTRACT

30.   Plaintiffs incorporate by reference Paragraphs 1 through 29 as if fully set forth herein.

31.   Under the terms of the Shareholders' Agreement, notice of the Stock Purchase Agreement triggered an option by BAII to purchase Defendant's shares.

32.   When BAII did not elect to purchase Defendant's shares within thirty (30) days of receiving notice of the Stock Purchase Agreement, a similar option arose in favor of the other shareholders of BAII – namely Plaintiff.

33.   Plaintiff has performed all duties, promises and obligations required of Plaintiff and all conditions precedent that Plaintiff agreed to perform in the Shareholders' Agreement.

34.   Under the terms of the Shareholders' Agreement, Defendant was obligated to transfer and convey his shares in BAII to Plaintiff.

35.   Defendant has failed and refused, and continues to fail and refuse, to transfer and convey his shares in BAII to Plaintiff.

36.    Defendant's failure and refusal to transfer and convey his shares in BAII to Plaintiff constitutes a breach of the Shareholders' Agreement.

37.    Because of Defendant's breach of the Shareholders' Agreement, Plaintiff has suffered general and consequential damages in an amount to be proven at trial.

## COUNT II: DECLARATORY JUDGMENT

38.    Plaintiffs incorporate by reference Paragraphs 1 through 37 as if fully set forth herein.

39.    An actual controversy exists between Plaintiff and Defendant as to the their respective rights under the Shareholders' Agreement.

40.    The ends of justice require that a determination he made as to the rights of the parties under the Shareholders' Agreement.

41.    Plaintiff is being irreparably harmed by Defendant's refusal to convey his shares in BAII to Plaintiff.

42.    Plaintiff respectfully requests that this Court grant a declaratory judgment ruling that Defendant is obligated to transfer his shares in BAII to Plaintiff on the terms set forth in the Stock Purchase Agreement.

## COUNT III: SPECIFIC PERFORMANCE

43.    Plaintiffs incorporate by reference Paragraphs 1 through 42 as if fully set forth herein.

44.     Plaintiff timely elected to exercise his right of first refusal and has offered to purchase Defendant's shares of BAII on the terms set forth in the Stock Purchase Agreement.

45.     The terms set forth in the Stock Purchase Agreement, most notably that Defendant transfer his entire ownership of his BAII shares to Plaintiff in exchange for payment of $10,000 to Defendant, are certain and fair.

46.     Plaintiff remains ready, willing and able to purchase Defendant's shares of BAII on the terms set forth in the Stock Purchase Agreement.

47.     Defendant has refused and continues to refuse to convey his shares of BAII to Plaintiff on the terms set forth in the Stock Purchase Agreement.

48.     Plaintiff has no adequate remedy at law to enforce the provisions of the Shareholders' Agreement other than specific performance of the Shareholders' Agreement.

49.     Plaintiff is entitled to specific performance of the terms, conditions, and provisions of the Shareholders' Agreement, by court decree, among other things, ordering Defendant to convey his shares of BAII to Plaintiff on the terms set forth in the Stock Purchase Agreement.

50.     Plaintiff is entitled to compensation incidental to a decree of specific performance in the form of attorneys' fees incurred in bringing this action.

8

**WHEREFORE, Plaintiff respectfully demands and prays that:**

A. The Court grant Plaintiff a declaratory judgment ruling that Defendant is obligated to transfer his shares in BAII to Plaintiff on the terms set forth in the Stock Purchase Agreement.; and

B. The Court issue a decree of specific performance requiring Defendant to transfer his shares in BAII to Plaintiff on the terms set forth in the Stock Purchase Agreement: and,

C. The Court award compensation to Plaintiff incidental to a decree of specific performance in the form of attorneys' fees incurred in bringing this action.

Respectfully submitted this 14th day of May, 2018

/s/ *Joseph J. Gleason*

Joseph J. Gleason
Georgia Bar No. 297202
**Gleason Law LLC**
780 Morosgo Drive #14084
Atlanta, GA 30324-9998
404-594-3550
joe@gleason.legal

# EXHIBT A

BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC.

SHAREHOLDERS' AGREEMENT

THIS AGREEMENT made and entered into as of the 22nd day
of September, 1982, by and among SEIXAS G. MILNER, JR., FREDERICK
R. MILNER, WILLIS LATIMER MILNER AND WHITNER READE MILNER ,
(hereinafter referred to jointly as the "Shareholders"), and
BRITISH AMERICAN INSURANCE INTERMEDIARIES, INC., a Georgia
corporation, (hereinafter referred to as the "Company").

W I T N E S S E T H :

WHEREAS, the Shareholders own all of the issued and
outstanding capital stock of the Company; and

WHEREAS, the parties to this Agreement believe that it is
to their mutual best interest to restrict the sale or transfer of
their respective shares and to give the Company and the
Shareholders options to purchase the shares of a terminated
shareholder-employee to insure continuity and harmony in
management and the policies of the Company;

WHEREAS, the parties to this Agreement further believe
that it is to their mutual best interest to provide for the
purchase of deceased Shareholder's shares by the Company; and

NOW THEREFORE, in consideration of the premises, the
mutual agreements and covenants herein contained and other good

and valuable consideration, receipt of which is hereby acknowledged, the parties agree as follows:

1.   Parties.

This Agreement is made among the Company and the initial Shareholders, but any subsequent shareholders (either in addition to the initial Shareholders or in substitution thereof) shall be deemed to be parties to this Agreement by execution of a counterpart to this Agreement.  Such other Shareholders shall then be deemed Shareholders for all purposes hereof.

2.   Restriction on Sale, Transfer, or Encumbrance of Company Shares.

a)   The Shareholders agree that the Shares, together with any that may be issued in the future, shall neither be sold, transferred, pledged, encumbered, nor otherwise disposed of without first giving written notice of the transaction and then offering a first right of refusal to the Company and to the other Shareholders, as provided in this Agreement.  Any sale, transfer, pledge, encumbrance, or other disposition is hereinafter referred to as a "transfer."

b)   Any Shareholder desiring to make a transfer of his Shares (the "Transferor") shall give a written notice to the Company of his intent to transfer the Shares.  That notice must state the identity of the proposed transferee, the terms of the transfer, the price, if any, offered by the transferee for the Shares, and other facts relevant to the transfer.  Copies of the

-2-

notice must be simultaneously sent to the other Shareholders.   The
Transferor shall be bound to the terms of the transfer as stated
in the notice, and shall keep the Company and the other
Shareholders informed of any material changes in the proposed
transfer.   The Transferor shall also provide the Company and the
other Shareholders with any other information regarding the
proposed transfer if such provision is reasonably requested by the
Company or by the other Shareholders.

        c)   Upon receipt of such notification by the
Company, the Company shall have an option for thirty (30) days,
from the date of such receipt, to elect to purchase all, but not
less than all, of the Shares the Transferor proposes to transfer.
If the option is not exercised by the Company, then the other
Shareholders shall have a similar option to purchase the Shares.
The option period for the other Shareholders shall begin on the
last day of the Company's option period or sooner if the Company
gives written notice that it does not intend to purchase the
Shares and shall run for thirty (30) days therefrom.

        d)   The closing of the purchase by the Company or
by the other Shareholders, as the case may be, shall take place at
the principal office of the Company or such other place as may be
agreed to by the parties and, unless otherwise agreed, the
purchase price shall be paid in cash or certified check at
closing.   The purchase price shall be that offered by the proposed
transferee as stated in the notice from the Transferor, but shall

not exceed the price as determined in Paragraph 4 of this Agreement.  If the proposed transferee's bona fide offer includes payment terms on an installment basis, or if the purchase price is to be paid partly in cash and partly by note, or is otherwise not by a cash payment of the full purchase price, the Company or the other Shareholders, as the case may be, shall be permitted to exercise the same terms of payment for the Shares.

e)   If the Company or the other Shareholders do not exercise the option to purchase the Shares, the Company shall endorse upon the Transferor's certificate or certificates or applicable portion thereof the specific waiver of the noticed transaction by the Company and by the other Shareholders, so as to permit the transfer of such Shares.  Any transfer shall be made only in strict accordance with the terms stated in the notice given to the Company.  If the Transferor shall fail to make the transfer within thirty (30) days following the endorsement of the Shares by the Company, the waiver granted hereunder for such transfer shall lapse.  Such waiver shall, in any event, apply only to the specific transfer regarding which the Transferor notifies the Company.  Anyone acquiring the Shares under this provision shall hold such Shares subject to all of the terms, conditions, and options of this Agreement.

3.   Death of a Shareholder.

a)   Upon a Shareholder's death, the Company shall purchase from the decedent's personal representatives and the

-4-

decedent's personal representatives shall sell to the Company all the Shares owned by the decedent and to which the decedent or his personal representatives shall be entitled.

b)   The closing of such purchase shall take place at the office of the Company or such other place as may be agreed upon by the parties on a date designated by the Company, which date shall be not more than thirty (30) days following the date of the qualification of the decedent's personal representative.  The purchase price for the Shares shall be determined in accordance with Paragraph 4 hereof.  The terms for payment shall be by cash or certified check, unless other terms can be agreed upon by the parties.

4.   <u>Purchase Price</u>.  The price for the Shares may be designated from to time, but at least annually, by mutual agreement of the parties.  If a price has not been designated within the last twelve (12) months of the date of transfer, then the highest <u>bona fide</u> offer received by the Shareholder proposing to sell or transfer the Shares, as included in the notice to the Company, shall be the price.  If a designated price does not exist and a <u>bona fide</u> offer has not been made then the price shall be _____($_____) per share for a period of one (1) year following the date of this Agreement.  Thereafter, the price for each share shall be the per share book value of the Company, determined as of the end of the last fiscal quarter preceding the date of transfer under this Agreement.  The determination of book value shall be made in accordance with generally accepted

-5-

accounting principles, on the basis of accounting regularly used by the Company except that any real estate, securities, and other investments owned by the Company shall be valued at then current fair market value, and all inventories shall be computed and valued at the lower of cost or market.   The determination of book value shall be computed by the accountant then servicing the Company and such determination shall be conclusive on all parties. to the initial Shareholders or in substitution thereof) shall be deemed to be parties to this Agreement by execution of a counterpart to this Agreement.   Such other Shareholders shall then be deemed Shareholders for all purposes hereof.

5.   <u>Life Insurance</u>.   The Company or any Shareholder shall have the right to purchase life insurance on the life of any other Shareholder to the extent reasonably necessary to finance any redemption or purchase of Shares described in this Agreement. If a party desires to purchase a life insurance policy, then the insured Shareholder shall cooperate fully by undergoing medical examinations and by generally performing all of the requirements of the life insurer which are  conditions precedent to the issuance of such a life insurance policy.

6.   <u>Endorsement On Share Certificates</u>.   Each certificate representing Shares of the Company now or hereafter held by the

Shareholders shall be stamped with a legend in substantially the following form:

> "The transfer of the Shares represented by this certificate is restricted under the terms of an Agreement dated as of September 22, 1982, a copy of which is on file at the office of the Company."

7.  <u>Notices</u>.  Any and all notices, designations, consents, offers, acceptances, or any other communication herein provided for shall be in writing and hand delivered or given by registered or certified mail, postage pre-paid, addressed to the Company at its principal office, and to each Shareholder at his address appearing on the books of the Company or to such other address as he may designate in writing.  If registered or certified mail is so used, receipt by the addressee for purposes of this Agreement shall be the date of post mark on the mail.

8.  <u>Invalid Provision</u>.  The invalidity or unenforceability of any particular provision of this Agreement shall not affect the other provisions hereof, and the Agreement shall be construed in all respects as if such invalid or unenforceable provisions were omitted.

9.  <u>Modification; Waiver</u>.  No change or modification of this Agreement or any release or waiver of any of the provisions hereof shall be valid unless the same be in writing and signed by all the parties hereto.

10.  <u>Georgia Contract</u>.  This Agreement is made under and shall be construed by the Law of the State of Georgia as to all matters.

-7-

11.  <u>Binding Effect</u>.  This Agreement shall be binding
upon and inure to the benefit of the Shareholders and their heirs,
personal representatives and assigns and the Company and its
successors and assigns.

IN WITNESS WHEREOF, the Company has caused this Agreement
to be signed by a duly authorized officer and its seal to be
affixed hereto, and the Shareholders have hereunto set their hands
and seals on the day and year first above written.

Attest:

BRITISH AMERICAN INSURANCE
INTERMEDIARIES, INC.

Secretary

BY: _____
President

(SEAL)

SHAREHOLDERS:

_____(SEAL)
Seixas G. Milner, Jr.

_____(SEAL)
Frederick R. Milner

_____(SEAL)
Willis Latimer Milner

_____(SEAL)
Whitner Reade Milner

--8--

# EXHIBT B

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT (the "Agreement"), made and entered into as of the ___7th___ day of August, 2017, by and between WHITNER READE MILNER, an individual resident of the State of Georgia (hereinafter referred to as "Seller"); and SEIXAS G. MILNER, III, an individual resident of the State of Georgia (hereinafter referred to as "Purchaser").

W I T N E S S E T H:

WHEREAS, Seller is the owner of one hundred twenty-five (125) shares (the "Shares") of the common stock, par value $1.00 per share (the "Stock"), of British American Insurance Intermediaries, Inc., a Georgia corporation (the "Corporation"), represented by Certificate No. 4; and

WHEREAS, Seller desires to sell all of the Shares to Purchaser, and Purchaser desires to purchase the Shares;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and promises herein contained, the parties hereto, each intending to be mutually bound, hereby agree as follows:

Section 1.   Purchase of Shares and Shareholder Rights.   Subject to the terms and conditions hereof, Seller hereby agrees to sell the Shares to Purchaser and Purchaser hereby agrees to purchase the Shares from Seller for an aggregate purchase price of Ten Thousand Dollars ($10,000.00), payable by delivery of Purchaser's check to Seller at the Closing. Without limitation, it is understood and agreed that at the time of the Closing, in addition to the conveyance to Purchaser of the Shares hereunder, by a corresponding Assignment, Seller shall

DMS 10715569v6

transfer and assign to Purchaser any and all rights of Seller in connection with or with respect to Seller's status as a shareholder of the Corporation prior to the Closing.

Section 2.   Closing.   The closing (the "Closing") for the sale and purchase of the Shares shall be held effective as of 3:00 p.m. on August 7ᵗʰ, 2017, at 833 Hurricane Shoals Road, Lawrenceville, Georgia 30043, or at such other time and place as the parties hereto may mutually agree. At the Closing, (i) Seller shall transfer the Shares to Purchaser by execution and delivery of Certificate No. 4, representing the Shares, or by execution and delivery of a Stock Power in lieu thereof; (ii) Seller shall transfer all of Seller's rights in connection with or with respect to Seller's status as a shareholder of the Corporation prior to the Closing by the execution and delivery to Purchaser of an Assignment effecting such transfer; and (iii) Purchaser shall deliver a check to Seller in the amount of Ten Thousand Dollars ($10,000.00).

Section 3.   Seller's Representations and Warranties.   To induce Purchaser to consummate the transactions contemplated by this Agreement, Seller hereby represents and warrants that the following statements are true and correct as of the date hereof and at the time of the Closing:

(a)   As of the date hereof and immediately prior to the Closing, Seller owns and shall own one hundred twenty-five (125) shares of the Stock, represented by Certificate No. 4, said one hundred twenty-five (125) shares represent all of the Stock owned by Seller at any time prior to the execution of this Agreement, and said one hundred twenty-five (125) shares represent fifty percent (50%) of the outstanding capital stock of the Corporation;

(b)   The Shares to be sold hereunder are owned by Seller, free and clear of any and all liens, pledges, encumbrances, charges, assessments, agreements or claims, and Seller has full

DMS 10715569v6

2

right, power and authority to transfer, convey, assign and deliver the Shares to Purchaser at the Closing, without any restrictions whatsoever;

(c)     Upon execution and delivery by Seller, this Agreement will constitute the valid and legally binding agreement of Seller, enforceable in accordance with its terms; and

(d)     Prior to Seller's execution of this Agreement, Seller has had, either individually or with his advisors, as he has deemed necessary or appropriate, opportunity to investigate the Corporation and opportunity to secure access to the books and financial and operational records of the Corporation and to information relating or pertaining to the operations and activities of the Corporation.    Seller is not selling the Shares based on representations by Purchaser or the Corporation or by any person affiliated with Purchaser with respect to the present or future value of the Shares.

Section 4.   Purchaser's Representations and Warranties.   Purchaser hereby represents and warrants that the following statements are true and correct as of the date hereof and at the time of the Closing:

(a)     Purchaser is purchasing the Shares for Purchaser's own account and not with a view to the further sale or distribution thereof;

(b)     Purchaser is aware that the Shares have not been registered under any securities laws and may not be resold or transferred except in a transaction which complies with applicable federal and state securities laws, and Purchaser shall not make any such resale or transfer except in compliance with said laws;

DMS 10715569v6

(c)     Upon execution and delivery of this Agreement by Purchaser, this Agreement will constitute the valid and legally binding agreement of Purchaser, enforceable in accordance with its terms; and

(d)     Prior to Purchaser's execution of this Agreement, Purchaser has had, either individually or with his advisors as he has deemed necessary or appropriate, opportunity to investigate the Corporation.  Purchaser is not purchasing the Shares based on representations by Seller or by any person affiliated with Seller with respect to the present or future value of the shares that are the subject matter of this Agreement.

Section 5.   Brokers.   Purchaser and Seller hereby represent and warrant, one to another, that neither has engaged any broker or agent or incurred any finder's fee with respect to the transactions contemplated hereby.

Section 6.  Entire Agreement.   The parties hereto have not made any representations, warranties or covenants not set forth herein regarding the purchase and sale of the Shares hereunder, and this Agreement and the documents referenced herein constitute the entire agreements between the parties hereto regarding the subject transaction.

Section 7.   Survival of Representations.   All the representations, warranties, covenants and agreements set forth in this Agreement shall survive the Closing.

Section 8.  Miscellaneous.

(a)     Each party hereto agrees to take such further actions and to execute and deliver such additional instruments and documents as any other party hereto may from time to time

DMS 10715569v6

4

reasonably request in order to effectuate the transfer of the Shares to be sold hereunder, and to otherwise effect the purposes of this Agreement.

(b)     The parties hereto agree that they shall bear their own corresponding expenses incurred in connection with the preparation and negotiation of this Agreement and the consummation of the transactions contemplated hereunder.

(c)     All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly and properly given and received when personally delivered or three (3) days after mailing by United States Mail, postage prepaid, as follows:

(i) If to Seller, to:

Mr. Whitner Reade Milner
702 Covered Bridge Road
Hoschton, GA  30548

(ii) If to Purchaser, to:

Mr. Seixas G. Milner, III
833 Hurricane Shoals Road
Lawrenceville, GA  30043

or at such different addresses as may be specified in writing, given by one party to the other in accordance with the foregoing.

(d)     Neither this Agreement nor any provision contained herein may be changed, modified, discharged or terminated orally.  Such action may be effected only by an instrument in writing signed by the party or parties against which or against whom enforcement of such change, modification, discharge or termination is sought.

DMS 10715569v6

5

(e)    This Agreement has been executed in the State of Georgia and shall be governed and construed in accordance with the laws thereof.  All personal pronouns in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders.  Titles of Sections in this Agreement are for convenience only and neither limit nor amplify the provisions hereof.

(f)    No assignment or transfer by any party hereto of his rights and obligations hereunder shall be made except with the prior written consent of the other party hereto.  This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective personal representatives, heirs, successors in interest and permitted assigns.

(g)    Time is of the essence of this Agreement.

(h)    No waiver or breach of any provision of this Agreement shall constitute a waiver or breach of any other provision hereof.  The failure of any party hereto to insist upon strict adherence to any term of this Agreement on any occasion shall not constitute a waiver or deprive such party of the right thereafter to insist upon strict adherence to that term or any other term contained herein.  All remedies provided by law or any agreement hereunder, and the exercise of any remedy, shall not be deemed an election to the exclusion of any other remedy, any such claim by the other parties being hereby waived.

IN WITNESS WHEREOF, the parties hereto have set forth their respective hands and seals, as of the day and year first above written.

**[SIGNATURES ON FOLLOWING PAGE]**

DMS 10715569v6

6

SELLER:

_Kellie M. Towne_ (SEAL)
Witness

_Whitner Reade Milner_ (SEAL)
Whitner Reade Milner

PURCHASER:

_____ (SEAL)
Witness

_Seixas G. Milner, III_ (SEAL)
Seixas G. Milner, III

DMS 10715569v6



## ASSIGNMENT

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to that certain August __, 2017 Stock Purchase Agreement between the parties hereto (by reference made an integral part hereof), the undersigned, Whitner Reade Milner ("Assignor"), hereby transfers, conveys and assigns to Seixas G. Milner, III ("Assignee") any and all rights of Assignor in connection with or with respect to Assignor's status as a shareholder of British American Insurance Intermediaries, Inc., a Georgia corporation, prior to the date hereof

IN WITNESS WHEREOF, Assignor has hereunto executed this Assignment for the benefit of Assignee this 7th day of August, 2017.

_____
Whitner Reade Milner

## ACCEPTANCE

The undersigned, Seixas G. Milner, III, hereby accepts the aforementioned assignment of rights.

IN WITNESS WHEREOF, the undersigned has hereunto executed this Acceptance this this 7th day of August, 2017.

_____
Seixas G. Milner, III

DMS 10721817v1

## STOCK POWER

**FOR VALUE RECEIVED,** I, Whitner Reade Milner, hereby transfer, convey and assign unto Seixas G. Milner, III, all of the outstanding capital stock which I own in British American Insurance Intermediaries, Inc. (the "Corporation"), a Georgia corporation, consisting of one hundred twenty-five (125) shares standing in my name on the books of the Corporation, represented by Stock Certificate No. 4, and do hereby irrevocably constitute and appoint Seixas G. Milner, III as attorney in fact to transfer the said stock on the books of the Corporation, with full power of substitution in the premises.

Dated: August 7th, 2017

_(signature)_
Whitner Reade Milner

In Presence Of:

_(signature)_
Witness

_(notary seal: KELLIE M BRASWELL, COMMISSION EXPIRES, NOTARY PUBLIC, JULY 27, 2019, WALTON COUNTY, GEORGIA)_

DMS 10715796v1

# EXHIBT C



THE SMITH WILLIS FIRM LTD. CO.

August 21, 2017

*Sent Via Email and Postal Mail*
Whitner Reade Milner
833 Hurricane Shoals Rd.
Lawrenceville, GA 30043
Whit@milnergroup.com

RE:    The proposed British American Insurance Intermediaries, Inc stock transfer between Whitner Reade Milner and Seixas G. Milner, III

Dear Mr. Milner:

My firm represents British American Insurance Intermediaries, Inc. ("BAII"). We received the attached Stock Purchase Agreement whereby we were informed that your shares of BAII had purportedly been sold to Seixas G. Milner, III.

Please be advised, the purported sell of your shares of BAII is in direct violation of British American Insurance Intermediaries, Inc.'s Shareholders' Agreement (hereafter "The Shareholder Agreement"). The Shareholder Agreement specifically states that "[t]he Shareholders agree that the Shares, together with any that may be issued in the future, shall neither be sold, transferred, pledged, encumbered, nor otherwise disposed of without first giving written notice of the transaction and then offering a first right of refusal to the Company and to the other Shareholders, as provided in this Agreement." Further, The Shareholder Agreement states, "[u]pon receipt of such notification by the Company, the Company shall have an option for thirty (30) days, from the date of such receipt, to elect to purchase all, but not less than all, of the Shares the Transferor proposes to transfer. If the option is not exercised by the Company, then the other Shareholders shall have a similar option to purchase the Shares."

Accordingly, pursuant to The Shareholder Agreement, before you can sell your shares in BAII to Sexias G. Milner, III, you must first provide written notice of the proposed sell to BAII and allow the Company the option to exercise its right to purchase those shares. Moreover, if the Company decides not to exercise its right to purchase the shares, you are required to allow other BAII shareholders to purchase such shares before they can be sold to an outside party. You did not perform either of these requirements prior to the purported sell of your shares of BAII. Consequently, the supposed transfer of your shares to Sexias G. Milner, III is not recognized by BAII.

Moreover, it is our position that your proposed sell violates Section 5 of the Securities Act of 1933 (hereafter "The Act"), wherein all offers and sales of securities must be registered with the SEC. Furthermore, under the Investment Letter that you signed on September 22, 1982 (hereafter "The Investment Letter"), you agreed that you "shall make no disposition of the Shares except in

Page **1** of **2**



THE SMITH WILLIS FIRM LTD. CO.

accordance with (i) and effective registration statement under the Act and a prospectus then meeting the requirements of the Act or (ii) a writing delivered to the Company in advance of the disposition describing the proposed disposition, which proposed disposition is, in the opinion of counsel for the Company, as communicated to me, exempt from the registration requirements of the Act." You also agreed "that the certificates representing the Shares may bear a legend to restrict their transferability under the Act; and that the Company may refuse to permit the transfer of the Shares unless the Shares are registered under the Act and a prospectus meeting the requirements of the Act is then available or, in the opinion of counsel for the Company, an exemption from registration is available." The certificate representing your shares displayed a legend that restricted its transferability. Nevertheless, you attempted to transfer the certificate despite not having the right to do so. You have violated Section 5 of the Securities Act of 1933 and have not adhered to your representations and agreements made in the Investment Letter. Hence, BAII is exercising its right to refuse to permit the transfer of your BAII shares.

Notwithstanding the foregoing, BAII considers the aforementioned Stock Purchase Agreement written notice of your intent to transfer your shares of BAII, thereby triggering BAII's thirty (30) day option period to elect to purchase your shares. Mr. Willis Latimer Milner, as Chairman of BAII's Board of Directors recommends that BAII exercise its right to purchase the shares. As such, Mr. Milner proposes that the attached Board Resolution be adopted wherein BAII elects to purchase your shares. As a member of the Board, please evidence your agreement to this resolution, by signing and returning the resolution to BAII by September 6, 2017. If the Board of Directors is unable to come to an agreement as to exercising its right to purchase your shares, be advised that under The Shareholder Agreement, you are then required to extend the first right of refusal to the remaining shareholder, Mr. Willis Latimer Milner.

I trust that you will take necessary steps to remedy your violations, however note, if BAII is forced to defend its position as to the non-transferability of your stock under the Stock Purchase Agreement, we will seek reimbursement from you of all attorney's fees and any court relates costs and expenses incurred in defending BAII's position.

Sincerely,

Shevonn Willis
The Smith Willis Firm

# EXHIBT D

# GLEASON LAW LLC

October 6, 2017

*Sent via email*

**Mr. Whitner Reade Milner**
833 Hurricane Shoals Rd.
Lawrenceville, GA 30043
whit@milnergoup.com

RE: *Exercise of Purchase Option Pursuant to BAII Shareholder Agreement*

Dear Mr. Milner:

I write on behalf of Mr. Willis Latimer "Lat" Milner. Please consider this letter notice that my client, Mr. Lat Milner, has chosen to exercise his right to purchase your shares of stock in BAII pursuant to § 2.c of the BAII Shareholder Agreement dated September 22, 1982.

We would like to schedule a closing next week to finalize this transaction. You may choose a date, time and location convenient for you, where Mr. Lat Milner will provide you with a certified check for $10,000. In exchange, you will sign and deliver to Mr. Lat Milner your BAII stock certificate.

Please note that if you do not cooperate in scheduling this closing on or before October 12, 2017, Mr. Lat Milner will be forced to pursue legal action against you to enforce his rights and will seek reimbursement from you for any attorneys' fees and other costs incurred in doing so.

Please contact me as soon as possible to schedule the closing. Thanks.

Sincerely,

*Joseph J. Gleason*

Joseph J. Gleason

GLEASON LAW LLC
780 MOROSGO DRIVE #14084
ATLANTA, GA 30324-9998

JOE@GLEASON.LEGAL
404-594-3550
WWW.GLEASON.LEGAL

## SUPERIOR COURT OF BARROW COUNTY
## STATE OF GEORGIA

CIVIL ACTION NUMBER  18-CV-000736-W

Milner, Willis L
_____

**PLAINTIFF**

                                    VS.

Milner, Whitner R
_____

**DEFENDANT**

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Joseph Gleason**
**Gleason Law LLC**
**780 Morosgo Drive #14084**
**Atlanta, Georgia 30324**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**This 14th day of May, 2018.**

Clerk of Superior Court

Regina McIntyre, Clerk
Barrow County, Georgia

Page 1 of 1

**General Civil and Domestic Relations Case Filing Information Form**

&#x2756; **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
BARROW COUNTY, GEORGIA

**18-CV-000736-W**

WAYNE D. MCLOCKLIN
MAY 14, 2018 05:17 PM

*Regina B. McIntyre*
Regina McIntyre, Clerk
Barrow County, Georgia

☑ **Superior or** ☐ **State Court of** _____Barrow_____ **County**

**For Clerk Use Only**

**Date Filed** ___05-14-2018___   **Case Number** ___18-CV-000736-W___
          **MM-DD-YYYY**

| **Plaintiff(s)** | | | | | **Defendant(s)** | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Milner, Willis L | | | | | Milner, Whitner R | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| | | | | | | | | | |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney**  Gleason, Joseph   **Bar Number** ___297202___   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

☐ Medical Malpractice Tort
☐ Product Liability Tort
☐ Automobile Tort
☐ General Tort
☑ Contract
☐ Real Property
☐ Civil Appeal
☐ Habeas Corpus
☐ Restraining Petition
☐ Injunction/Mandamus/Other Writ
☐ Garnishment
☐ Landlord/Tenant
☐ Other General Civil

**Domestic Relations Cases**

☐ Dissolution/Divorce/Separate Maintenance
☐ Paternity/Legitimation
☐ Support – IV-D
☐ Support – Private (non-IV-D)
☐ Adoption
☐ Family Violence Petition
☐ Other Domestic Relations

**Post-Judgement – Check One Case Type**

☐ Contempt
  ☐ Non-payment of child support, medical support, or alimony.
☐ Modification
☐ Administrative/Other

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
    **Case Number**             **Case Number**

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. §9-11-7.1.

☐ Is interpreter needed in this case? If so, provide the language(s) required. _____
                                                                **Language(s) Needed**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.