**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| PUREO NATURAL PRODUCTS LLC and TRENDZ BEAUTY ACADEMY LLC | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) Civil Action No. _____ |
| | ) |
| LOCN PRODUCTS LLC, CUT CREATERS SALON SUITES, LLC, DANIELLE TOWNES, OMAR TOWNES, and DOES 1-10 | ) **JURY TRIAL DEMANDED** ) ) ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs PureO Natural Products LLC ("PureO Natural") and Trendz Beauty Academy LLC ("Trendz Beauty") (collectively, "Plaintiffs") file this Complaint against Locn Products LLC ("Locn Products"), Cut Creaters Salon Suites, LLC ("Cut Creaters"), Danielle Townes, Omar Townes, and Does 1 - 10 (collectively, "Defendants"), and in support thereof allege as follows:

**INTRODUCTION**

1.     This action arises out of Defendants' unauthorized use of Plaintiffs' trademarks and service marks and knowing and intentional copying of Plaintiffs' packaging for their LOC N hair care products. Specifically, this is an action for:

trademark and service mark infringement; trade dress infringement, unfair competition, false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition in violation of Georgia common law; unfair and deceptive trade practices in violation of Ga. Code Ann. § 10-1-370, *et seq.*; and breach of contract.

## PARTIES

2.    Plaintiff PureO Natural is a Pennsylvania limited liability company with its principal place of business at 3760 Nicholas Street, Easton, Pennsylvania 18045.

3.    Plaintiff Trendz Beauty is a Pennsylvania limited liability company with its principal place of business at 142 4th St., Nazareth, Pennsylvania 18064.

4.    Defendant Locn Products is a Georgia limited liability company with its principal place of business at 142 Mangum St., Atlanta, Georgia 30313.

5.    Defendant Cut Creaters is a Georgia limited liability company with its principal place of business at 142 Mangum St., Atlanta, Georgia 30313.

6.    Upon information and belief, Defendant Danielle Townes is an individual who resides in Porterdale, Georgia.

7.    Upon and information and belief, Mrs. Townes is the owner and organizer of Cut Creaters and the organizer of Locn Products. Upon information and

belief, Mrs. Townes directs all activities and operations of both Cut Creaters and Locn Products, including the actions complained of herein. Mrs. Townes is also a party to the distribution agreement between the parties that is the subject of certain claims herein.

8.      Upon information and belief, Defendant Omar Townes is an individual who resides in Porterdale, Georgia.

9.      Upon information and belief, Mr. Townes is the founder of Cut Creaters and is also affiliated with Locn Products. Upon information and belief, Mr. Townes directs all activities and operations of Cut Creaters and Locn Products, including the actions complained of herein. Mr. Townes is also a party to the distribution agreement between the parties that is the subject of certain claims herein.

10.     Upon information and belief, Defendants Does 1 – 10, inclusive, are sued herein under fictitious names. Their true names and capacities are currently unknown to Plaintiffs. When their true names and capacities are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities. Plaintiffs are informed and believe and thereon allege, that Does 1 – 10, and each of them, are responsible in some manner for the occurrences alleged herein and that Plaintiffs' damages were proximately caused by such defendants.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, because this action arises under the Federal Lanham Act, 15 U.S.C. § 1051, *et seq*.

12.     This Court has supplemental jurisdiction over Plaintiffs' state law and common law claims pursuant to 28 U.S.C. § 1367.

13.     Defendants Danielle and Omar Townes are subject to personal jurisdiction in this Court because both individuals reside in this District.

14.     This Court has personal jurisdiction over Defendants because they are engaging in the transaction of business in this judicial district, are committing tortious acts within this judicial district, and have otherwise made or established contacts with this judicial district sufficient to permit the exercise of personal jurisdiction by this Court over them.

15.     Venue is proper in this District under 28 U.S.C. § 1391 because all Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this judicial district.

## <u>FACTUAL BACKGROUND</u>

### Creation of LOC N Products

16.     Nicole Shuler is a hair care professional with more than a decade of experience as a licensed cosmetology educator in Pennsylvania.

17.     Ms. Shuler channeled her passion for the beauty industry into creating all-natural hair care products.

18.     In 2013, Ms. Shuler created a hair care product called Lock & Twist Gel, which she subsequently produced and sold through her company, PureO Natural.

19.     In 2014, Ms. Shuler developed a new hair care product – the Original LOC N Gel, which she sold through her company, Trendz Beauty.



20.     The Original LOC N Gel product would eventually grow into an entire line of products, including LOC N Loc & Braid Growth Oil, LOC N Shine Spray, and more (the "LOC N Products") (see exemplary images below).




21.     The LOC N Products are sold exclusively to distributors to retail customers, who in turn sell the LOC N Products to consumers.

22.     The LOC N Products are highly sought after due to their quality ingredients and the unique benefits customers experience when using the products on their hair locks and braids.

<b>The LOC N Trademarks and Service Marks</b>

23.     Since at least as early as April 2014, PureO Natural has continuously and exclusively used the trademarks and service marks LOC N and the LOC N design displayed below (collectively, the "LOC N Marks") in commerce in the

United States in connection with hair care products and retail services related to hair care products.



24.     Since at least as early as April 2014, PureO Natural has licensed the LOC N Marks to Trendz Beauty for the manufacture and sale of the LOC N Products.

25.     As a result of substantial advertising, promotion, and sale of hair care products and services under the LOC N Marks, Plaintiffs own valid and enforceable common law trademark and service mark rights in the LOC N Marks, and the marks serve to identify products made by and services offered by Plaintiffs alone.

26.     Thus, Plaintiffs are the owners of all right, title, and interest in and to the LOC N Marks.

**Trendz Beauty's Trade Dress**

27.    Trendz Beauty's current iteration of the trade dress for the LOC N Products ("LOC N Products Trade Dress") has been in use in interstate commerce since at least as early as 2014. Specifically, the LOC N Products Trade Dress includes:

- A circular, black jar and black lid;

- The trademark LOC N in block-style gold lettering in the center of the packaging, with the word LOC on top of a larger letter "N" with the specific product name written in the middle of the letter "N;" and

- Beginning in the upper, right corner, a burgundy background that grows gradually darker in shade as it progresses toward the bottom, left corner of the packaging.

An exemplary image of the LOC N Products Trade Dress is below:



28.     The LOC N Products Trade Dress is one of the key identifiers of Trendz Beauty's goods and services in the marketplace and is central to Trendz Beauty's marketing efforts.

29.     The LOC N Products Trade Dress is recognized as a unique and distinctive symbol representing the quality of the goods and services that Plaintiffs have for years delivered to the hair care industry.

30.    More than 350,000 of Plaintiffs' LOC N Products in the LOC N Products Trade Dress have been sold in the United States, generating over $4.2 million dollars in retail sales.

31.    Plaintiffs have consistently and extensively advertised and promoted their LOC N Products using the LOC N Products Trade Dress to retail customers and consumers through attendance at industry trade shows and establishing and maintaining a presence in local salons and beauty supply stores.

32.    The LOC N Products Trade Dress is inherently distinctive. Alternatively, and in any event, the LOC N Products Trade Dress has acquired distinctiveness and has achieved significant secondary meaning as a branding device for Trendz Beauty's LOC N Products well prior to Defendants' unlawful conduct described herein.

33.    The combination of elements of the LOC N Products Trade Dress is distinctive and serves to identify Plaintiffs as the source of the LOC N Products Trade Dress. The elements are not merely functional, and the overall trade dress design is not required to achieve any particular function. As such, competitors of Plaintiffs have many alternative product designs available to them.

34.    To Plaintiffs' knowledge, apart from Defendants' unlawful actions that are the subject of this complaint, no other individual or entity uses the LOC N

Products Trade Dress or any designs similar thereto in connection with hair care products.

35.     By virtue of its continuous and extensive use of the LOC N Products Trade Dress since at least as early as 2014, Plaintiffs own common law rights in the LOC N Products Trade Dress.

36.     Through the extensive, continuous use and promotion of the LOC N Products Trade Dress, Plaintiffs have developed substantial goodwill in that trade dress, and the LOC N Products Trade Dress is associated exclusively with the hair care products and services offered by Plaintiffs under the LOC N Marks.

## Business Relationship Between the Parties

37.     In 2013, PureO Natural was approached by Danielle Townes, who asked to become a distributor of the Lock & Twist Gel.

38.     Mrs. Townes, along with her husband and business partner, Omar Townes (collectively, the "Townes"), then distributed the Lock & Twist Gel to customers for a short time.

39.     After the development of the new LOC N Gel in 2014, the Townes and Cut Creaters became the exclusive distributor of Trendz Beauty's LOC N Gel.

40.     Trendz Beauty exclusively sold the LOC N products to the Townes and Cut Creaters, who distributed the products to retail outlets for sale to consumers.

41.    Upon information and belief, the Townes have always distributed Trendz Beauty's products through the company Cut Creaters.

42.    Plaintiffs also authorized Mrs. Townes' use of the business name Locn Products LLC and the domain name <locnproducts.com> for use in the distribution of Trendz Beauty's LOC N Products.

43.    The Townes' and Cut Creaters' business relationship with Plaintiffs is and has always been that of a *distributor* of Trendz Beauty's LOC N Products, and Plaintiffs retained all ownership of and rights to the LOC N Marks and the LOC N Products Trade Dress.

44.    In February 2023 and March 2023, Mr. and Mrs. Townes decided to memorialize in writing their long-standing distribution relationship. Mr. and Mrs. Townes, individually and in their roles with Cut Creaters, respectively, entered into Distribution Agreements with Trendz Beauty. True and correct copies of the Distribution Agreements are attached as **Exhibit A**.

45.    The Distribution Agreements set forth in writing the business relationship that had existed between the parties for the prior nine years; in that, Cut Creaters had the exclusive right to sell Trendz Beauty's LOC N Products to beauty supply stores and salons in the United States for the duration of the agreements.

46.   In the Distribution Agreements, the Townes and Cut Creaters acknowledged the following:

- "Trendz Beauty's ownership of the Branding LOCN Gel, and any other names or marks licensed [] by virtue of the relationship with and Products sold by Trendz Beauty;" and

- "[That] valuable goodwill is attached to such Branding, trade names, trademarks, and service marks and that Distributor will use same only in the manner and to the extent specified by [the] Agreement."

47.   Under the Distribution Agreements, the Townes and Cut Creaters agreed to refrain from the following:

- using the Products and Branding other than as identified and permitted under the Agreement;

- relabeling or rebranding the Products, or altering the Branding without express written permission of Trendz Beauty;

- selling other products that have the Branding, or confusingly similar variations of the Branding, unless they are sourced from Trendz Beauty; and

- contesting Trendz Beauty's or any affiliate's exclusive ownership and rights to each and every aspect of the Product and Branding.

48.     Under the Distribution Agreements, the Townes and Cut Creaters also agreed to do the following:

- be diligent and make commercially reasonable efforts to promote and sell the Products in the Territory; and

- pay, at a minimum, $9,202.91 to Trendz Beauty on the 16th of every month in order to pay off the total balance of $220,870 owed to Trendz Beauty.

49.     The Distribution Agreement between Trendz Beauty, on the one hand, and Danielle Townes and Cut Creaters, on the other hand, also continued to allow Danielle Townes to use the domain name <locnproducts.com> to operate a website for use in promoting and distributing Trendz Beauty's LOC N Products.

50.     The Distribution Agreements provide that Trendz Beauty may terminate the agreements without prior notice in the event that the Townes or Cut Creaters, default on any term of the agreements for which the default is not cured within ten (10) days' notice from Trendz Beauty.

51.     The Townes and Cut Creaters agreed that, upon termination of the Distribution Agreements, they would stop using or selling products having any of the branding, trademarks, tradenames, logos, slogans, or other source identifiers, including any confusingly similar variations thereof. Further, the Townes and Cut

Creaters agreed to return any consigned products to Trendz Beauty and to promptly pay Trendz Beauty for all products not accounted for.

### Defendants' Wrongful Conduct

52.     Upon information and belief, Defendants began misrepresenting to distributors and the general public that Danielle Townes – not Trendz Beauty – launched LOC N Gel and LOC N Products in 2016. Further, Defendants began representing that Mrs. Townes created the LOC N Products, formulated the gel product, and was the first to use the LOC N trademark and brand colors.

53.     Mrs. Townes did not launch LOC N Gel or LOC N Products in 2016. Instead, Trendz Beauty launched LOC N Gel and LOC N Products in 2014.

54.     Mrs. Townes did not create the LOC N Products or formulate the gel product. Instead, Trendz Beauty created the LOC N Products and formulated the gel product.

55.     Mrs. Townes was not the first to use the LOC N trademark and brand colors. Instead, Trendz Beauty was the first to use the LOC N trademark and brand colors.

56.     On September 19, 2022, Locn Products improperly and without authorization filed a trademark application with the USPTO for the mark LOCN

GEL, covering "hair gel and hair products" in Class 3 (App. Serial No. 97/597,273).

The application claims a first use date of June 15, 2023.

57.     On June 16, 2023, Locn Products improperly and without authorization

filed a trademark and service mark application with the USPTO for the mark LOC

N, covering "hair care products, namely, hair gels, lotions, shampoos, conditioners

and oils" in Class 3 (with a claimed first use date of August 2016) and "online retail

store services and wholesale services featuring hair care products, namely, hair gels,

lotions, shampoos, conditioners and oils" in Class 35 (with a claimed first use date

of March 7, 2018) (App. Serial No. 98/046,036).

58.     Defendants also began promoting and offering for sale in commerce

their own unauthorized hair care products using Plaintiffs' LOC N Marks, an

example of which is shown below.



59.    Defendants' infringing product packaging copies nearly every design

element of Trendz Beauty's LOC N Products Trade Dress, including the following:

- A circular jar;

- A circular, black lid;

- The trademark LOC N in block-style gold lettering in the center of
  the packaging, with the word LOC on top of a larger letter "N" with
  the specific product name written in the middle of the letter "N;"
  and

- Beginning in the upper, right corner, a burgundy background that
  grows gradually darker in shade as it progresses toward the bottom,

left corner of the packaging (the "Infringing LOC N Product Packaging").

60.     Plaintiffs have not licensed or otherwise authorized the LOC N Marks or the LOC N Products Trade Dress to Defendants for use in the above-described manner.

61.     Upon information and belief, Defendants are distributing, promoting, marketing, advertising, offering for sale, and selling their products to wholesale customers and at industry trade shows. Plaintiffs' products are also distributed, promoted, marketed, advertised, offered for sale, and sold to wholesale customers and at industry trade shows. As such, Defendants' products with the Infringing LOC N Product Packaging are distributed, promoted, marketed, advertised, offered for sale, and sold through the same channels of trade and to the same consumers as Plaintiffs' LOC N Products.

62.     Because Defendants offer goods and services identical to those of Plaintiffs using a nearly identical facsimile of the LOC N Products Trade Dress, as well as the LOC N Marks, Defendants' actions are likely to cause confusion among consumers regarding whether Defendants' goods and services are sponsored or endorsed by, are associated or affiliated with, or even originate from Plaintiffs.

63.     Having been distributors of Trendz Beauty's LOC N Products, Defendants are well aware of the LOC N Marks and the LOC N Products Trade Dress and, upon information and belief, Defendants have intentionally copied the LOC N Marks and the LOC N Products Trade Dress in order to transition their customers away from Plaintiffs' well-known LOC N brand to Defendants' infringing products.

64.     Defendants have not only stolen Plaintiffs' intellectual property but have gone as far as to affirmatively represent to consumers that Plaintiffs' products are counterfeit products.

65.     In the June 2023 edition of OTC Beauty Magazine, Defendants distributed an advertisement warning consumers to be on the lookout for "a certain company [that] has counterfeit[ed] LOC N Gel and LOC N Products." The advertisement then portrays an image of one of Plaintiffs' product and identifies it as a "counterfeit jar" (see image below). The advertisement is attached as **Exhibit B**.



66.    The advertisement advises consumers to look for two items on the product packaging in order to ensure that they do not purchase a "counterfeit" product – (1) "the company's official Gold Seal" and (2) "Danielle's gold signature" (see images below).



67.    On July 5, 2023, Trendz Beauty received a cease and desist letter from counsel for Locn Products, alleging, among other things, that: (1) Locn Products was

the original, authentic owner and the only authorized user of the LOC N Marks, and (2) Trendz Beauty was infringing upon Locn Products' alleged intellectual property rights. Locn Products also stated that it intended to publish the cease and desist letter to industry participants.

68.     On July 10, 2023, Trendz Beauty sent a cease and desist letter to Locn Products disputing the claims made in the July 5, 2023 letter and demanding, among other things, that Locn Products cease using the LOC N Marks, the LOC N Products Trade Dress, and any confusingly similar variation thereof.

69.     On July 11, 2023, Trendz Beauty, pursuant to the terms of the Distribution Agreements, provided notice to Cut Creaters, Danielle Townes, and Omar Townes that they were in breach of their respective Distribution Agreements.

70.     At the conclusion of the 10-day notice and cure period, Trendz Beauty had received no response from Cut Creaters or Mr. Townes and received a response from Mrs. Townes which failed to cure the instances of default identified in the July 10, 2023 notice letters.

## COUNT ONE
### Common Law Trademark and Service Mark Infringement
### (As to All Defendants)

71.     Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-70, inclusive.

72.     By virtue of their prior adoption and use in interstate commerce of the LOC N Marks in this judicial district and elsewhere, Plaintiffs have acquired, established, and own common law trademark and service mark rights in the LOC N Marks, which serve to identify to the public certain goods and services that are offered by Plaintiffs alone, and the goods and services offered in connection with the mark are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, affiliated with, or otherwise connected to Plaintiffs.

73.     Defendants have adopted marks confusingly similar to the LOC N Marks and use the marks in commerce in connection with the sale, offering for sale, or advertising of their own goods and services without Plaintiffs' authorization, in a manner that is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of Defendants' goods and services.

74.     Defendants' conduct constitutes trademark and service mark infringement in violation of the common law of the State of Georgia.

75.     Defendants' aforesaid conduct has enabled Defendants to earn profits to which Defendants are not in law, equity, or good conscience entitled, and have unjustly enriched Defendants, all to Defendants' profit and Plaintiffs' damage and detriment.

76.     Upon information and belief, Defendants' adoption and use of their infringing LOC N Marks was willful and intended for the purpose of trading off of Plaintiffs' reputation and goodwill.

77.     Defendants' aforesaid conduct has caused and will continue to cause actual and irreparable injury to Plaintiffs and the goodwill associated with the LOC N Marks for which Plaintiffs have no adequate remedy at law.

78.     Plaintiffs are therefore entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

79.     As a result of Defendants' wrongful conduct, Plaintiffs are also entitled to recover their monetary damages, Defendants' profits, treble damages, and their costs and attorneys' fees, in an amount to be determined at trial.

## COUNT TWO
**Trade Dress Infringement, False Designation of Origin, and Unfair Competition Under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a) (As to All Defendants)**

80.     Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-79, inclusive.

81.     The LOC N Products Trade Dress is nonfunctional and inherently distinctive.

82.   In addition, Plaintiffs established secondary meaning in the LOC N Products Trade Dress in connection with hair care products before Defendants' use of the Infringing LOC N Product Packaging.

83.   Defendants' use in commerce of a trade dress that is confusingly similar to the LOC N Products Trade Dress in connection with Defendants' infringing hair care products constitutes a use in interstate commerce that is likely to cause confusion, mistake, or deception among consumers as to the source of origin of Defendants' hair care products, such that consumers may believe that Defendants' hair care products are sponsored by, endorsed by, approved by, licensed by, authorized by, or affiliated with Plaintiffs and/or their LOC N Products.

84.   As such, Defendants' aforesaid conduct constitutes trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

85.   Upon information and belief, Defendants have intentionally, knowingly, and willfully adopted and used the LOC N Marks and the LOC N Products Trade Dress in an unauthorized manner.

86.   As a result of these wrongful acts, Plaintiffs are entitled to recover actual and treble damages, reasonable attorneys' fees, and the costs of this litigation pursuant to 15 U.S.C. § 1117.

87.    In addition, Defendants' acts are causing and continue to cause Plaintiffs harm in the nature of not only lost sales and revenue, but also irreparable harm by virtue of the loss of control over their reputation, the destruction of the distinctiveness of their packaging trade dress, and the loss of substantial consumer goodwill. This irreparable harm to Plaintiffs will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

**COUNT THREE**
**Common Law Unfair Competition**
**(As to All Defendants)**

88.    Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-87, inclusive.

89.    By virtue of their prior adoption and use in interstate commerce of the LOC N Marks in this judicial district and elsewhere, Plaintiffs have acquired, established, and own common law trademark and service mark rights in the LOC N Mark, which serve to identify to the public certain goods and services that are offered by Plaintiffs alone, and the goods and services offered in connection with the mark are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, affiliated with, or otherwise connected to Plaintiffs.

90.   Defendants have adopted marks confusingly similar to the LOC N Marks and use the marks in commerce in connection with the sale, offering for sale, or advertising of their own goods and services without authorization, for the calculated purpose of passing off their goods and services as those of Plaintiffs, or trading upon Plaintiffs' significant goodwill and reputation, and of deceiving the public as to the true nature and characteristics of Defendants' goods and services. Defendants' conduct is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of Defendants' goods and services.

91.   Defendants have adopted trade dress confusingly similar to the LOC N Products Trade Dress and use the trade dress in commerce in connection with the sale, offering for sale, or advertising of their owns goods and services without Plaintiffs' authorization, for the calculated purpose of passing off their goods and services as those of Plaintiffs, or trading upon Plaintiffs' significant goodwill and reputation, and of deceiving the public as to the true nature and characteristics of Defendants' goods and services. Defendants' conduct is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of Defendants' goods and services.

92.   Defendants' aforesaid conduct constitutes unfair competition in violation of the common law of the state of Georgia.

93.     Defendants' aforesaid conduct has enabled Defendants to earn profits to which Defendants are not in law, equity, or good conscience entitled, and have unjustly enriched Defendants, all to Defendants' profit and Plaintiffs' damage and detriment.

94.     Defendants': (1) unauthorized adoption and use of the LOC N Marks and (2) adoption and use of the Infringing LOC N Product Packaging was willful and intended for the purpose of trading off of Plaintiffs' reputation and goodwill.

95.     Defendants' aforesaid conduct has caused and will continue to cause actual and irreparable injury to Plaintiffs and the goodwill associated with the LOC N Marks and the LOC N Products Trade Dress for which Plaintiffs have no adequate remedy at law.

96.     Plaintiffs are therefore entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

97.     As a result of Defendants' wrongful conduct, Plaintiffs are also entitled to recover its monetary damages, Defendants' profits, and its costs and attorneys' fees, in an amount to be determined at trial.

## COUNT FOUR
### Unfair and Deceptive Trade Practices in Violation of the Uniform Deceptive Trade Practice Act ("UDTPA"), Ga. Code Ann. § 10-1-370, *et seq.* (As to All Defendants)

98.     Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-97, inclusive.

99.     By virtue of its prior adoption and use in interstate commerce of the LOC N Marks in this judicial district and elsewhere, Plaintiffs have acquired, established, and own common law trademark and service mark rights in the LOC N Mark, which serve to identify to the public certain goods and services that are offered by Plaintiffs alone, and the goods and services offered in connection with the mark are regarded by the public as being offered by, sponsored by, approved by, authorized by, associated with, affiliated with, or otherwise connected to Plaintiffs.

100.   Defendants have adopted marks confusingly similar to the LOC N Marks and use the marks in commerce in connection with the sale, offering for sale, or advertising of their own goods and services without authorization, for the calculated purpose of passing off their goods and services as those of Plaintiffs, or trading upon Plaintiffs' significant goodwill and reputation, and of deceiving the public as to the true nature and characteristics of Defendants' goods and services. Defendants' conduct is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of Defendants' goods and services.

101.   Defendants have adopted trade dress confusingly similar to the LOC N Products Trade Dress and use the trade dress in commerce in connection with the sale, offering for sale, or advertising of their owns goods and services without Plaintiffs' authorization, for the calculated purpose of passing off their goods and services as those of Plaintiffs, or trading upon Plaintiffs' significant goodwill and reputation, and of deceiving the public as to the true nature and characteristics of Defendants' goods and services. Defendants' conduct is likely to confuse, mislead, or deceive the public as to the true source, origin, or sponsorship of Defendants' goods and services.

102.   By its actions described above, Defendants have engaged, and are engaging, in unfair methods of competition in or affecting commerce, and unfair or deceptive actions or practices in or affecting commerce and are substantially injurious to Plaintiffs and consumers in Georgia, all in violation of Ga. Code Ann. § 10-1-370 *et seq*.

103.   Defendants' aforesaid conduct has caused and will continue to cause actual and irreparable injury to Plaintiffs and the goodwill associated with the LOC N Marks for which Plaintiffs have no adequate remedy at law.

104.   Plaintiffs are therefore entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

105.   As a result of Defendants' willful and intentional misconduct, Plaintiffs are also entitled to recover costs and reasonable attorneys' fees, in an amount to be determined at trial.

## COUNT FIVE
### Breach of Contract
### (as to Danielle Townes & Cut Creaters)

106.   Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-105, inclusive.

107.   The Distribution Agreement entered into between Trendz Beauty, on the one hand, and Danielle Townes and Cut Creaters, on the other hand, on March 3, 2023, is a valid, binding, and enforceable contract.

108.   Pursuant to a choice of law provision, the Distribution Agreement is to be construed and enforced in accordance with the laws of the State of Pennsylvania.

109.   Under the Distribution Agreement, Danielle Townes and Cut Creaters agreed to refrain from: (1) using the Products and Branding other than as identified and permitted under the Agreement; (2) relabeling or rebranding the Products, or altering the Branding without express written permission of Trendz Beauty; (3) selling other products that have the Branding, or confusingly similar variations of the Branding, unless they are sourced from Trendz Beauty; and (4) contesting

Trendz Beauty's exclusive ownership and rights to each and every aspect of the Product and Branding.

110.   Danielle Townes and Cut Creaters are in breach of numerous provisions of the Distribution Agreement due to their: (i) infringement of Trendz Beauty's intellectual property rights in the LOC N Marks and the LOC N Products Trade Dress and (ii) engagement in unfair competition with Trendz Beauty.

111.   Danielle Townes and Cut Creaters are in breach of Section 4(B) of the Distribution Agreement due to (i) the addition of the gold seal and signature to the LOC N Products Trade Dress and (ii) the sale of products that have the LOC N branding, or confusingly similar variations of the branding, which were not sourced from Trendz Beauty.

112.   Danielle Townes and Cut Creaters are in breach of Section 3(A) of the Distribution Agreement by representing to consumers that Locn Products' infringing products are authentic LOC N Products and that Trendz Beauty's products are counterfeit products.

113.   Under Section 4(F) of the Distribution Agreement, Danielle Townes and Cut Creaters, agreed to pay, at a minimum, $9,202.91 to Trendz Beauty on the 16th of every month in order to pay off the total balance of $220,870 owed to Trendz Beauty.

114.   Neither Danielle Townes nor Cut Creaters has made a payment to Trendz Beauty since March 2023.

115.   Each of these activities constitutes a separate and distinct, material breach of the obligations set forth in the Distribution Agreement.

116.   As required under the Distribution Agreement, on July 11, 2023, Trendz Beauty provided notice of default to Danielle Townes and Cut Creaters.

117.   To date, Danielle Townes and Cut Creaters have not cured the breaches identified in the July 11, 2023 default notice.

118.   Plaintiffs are entitled to injunctive relief and monetary damages, in an amount to be determined at trial.

## COUNT SIX
**Breach of Contract**
**(as to Omar Townes & Cut Creaters)**

119.   Plaintiffs incorporate and reallege, as if fully set forth in this paragraph, each and every allegation in the paragraphs 1-118, inclusive.

120.   The Distribution Agreement entered into between Trendz Beauty, on the one hand, and Omar Townes and Cut Creaters, on the other hand, on February 2, 2023, is a valid, binding, and enforceable contract.

121.   Pursuant to a choice of law provision, the Distribution Agreement is to be construed and enforced in accordance with the laws of the State of Pennsylvania.

122.   Under the Distribution Agreement, Omar Townes and Cut Creaters agreed to refrain from: (1) using the Products and Branding other than as identified and permitted under the Agreement; (2) relabeling or rebranding the Products, or altering the Branding without express written permission of Trendz Beauty; (3) selling other products that have the Branding, or confusingly similar variations of the Branding, unless they are sourced from Trendz Beauty; and (4) contesting Trendz Beauty's exclusive ownership and rights to each and every aspect of the Product and Branding.

123.   Omar Townes and Cut Creaters are in breach of numerous provisions of the Distribution Agreement due to their (i) infringement of Trendz Beauty's intellectual property rights in the LOC N Marks and the LOC N Products Trade Dress and (ii) engagement in unfair competition with Trendz Beauty.

124.   Omar Townes and Cut Creaters are in breach of Section 4(B) of the Distribution Agreement due to (i) the addition of the gold seal and signature to the LOC N Products Trade Dress and (ii) the sale of products that have the LOC N branding, or confusingly similar variations of the branding, which were not sourced from Trendz Beauty.

125.   Omar Townes and Cut Creaters are in breach of Section 3(A) of the Distribution Agreement by representing to consumers that Locn Products' infringing

33

products are authentic LOC N Products and that Trendz Beauty's products are counterfeit products.

126.   Under Section 4(F) of the Distribution Agreement, Omar Townes and Cut Creaters, agreed to pay, at a minimum, $9,202.91 to Trendz Beauty on the 16th of every month in order to pay off the total balance of $220,870 owed to Trendz Beauty.

127.   Neither Omar Townes nor Cut Creaters has made a payment to Trendz Beauty since March 2023.

128.   Each of these activities constitutes a separate and distinct, material breach of the obligations set forth in the Distribution Agreement.

129.   As required under the Distribution Agreement, on July 11, 2023, Trendz Beauty provided notice of default to Omar Townes and Cut Creaters.

130.   To date, Omar Townes and Cut Creaters have not cured the breaches identified in the July 11, 2023 default notice.

131.   Plaintiffs are entitled to injunctive relief and monetary damages, in an amount to be determined at trial.

## **JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, by virtue of Defendants' unlawful conduct as alleged in Counts One through Six of this Complaint, Plaintiffs respectfully pray that:

A.      The Court enter judgment that the LOC N Marks and LOC N Products Trade Dress are valid and enforceable trademark and service marks and that Defendants, as a result of their unauthorized use of their infringing marks and trade dress, have:

      1.      infringed Plaintiffs' rights in the LOC N Marks in violation of the common law of the State of Georgia;

      2.      engaged in trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), and the common law of the State of Georgia; and

      3.      engaged in unfair and deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act ("UDPTA"), Ga. Code Ann. § 10-1-370 *et seq.*

B.      The Court enter judgment that Danielle Townes, Omar Townes, and Cut Creaters are in material breach of the Distribution Agreements and order specific performance of the same, including that Danielle Townes, Omar Townes, and Cut

Creaters: (i) stop using or selling products bearing any of Trendz Beauty's intellectual property, or a confusingly similar variation thereof; (ii) return any consigned products to Trendz Beauty and promptly pay Trendz Beauty for all products not accounted for; and (iii) pay the balance of $220,870 owed to Trendz Beauty.

C.     The Court enter a preliminary and, thereafter, permanent injunction, enjoining Defendants and each of their divisions, related companies, officers, directors, agents, servants, employees, and all those persons in concert or participation with each of them, from:

1.     using or authorizing the use of the LOC N Marks, or any reproduction, counterfeit, copy, or colorable imitation thereof, in any form, or in any manner, or otherwise infringing the LOC N Marks;

2.     using or authorizing the use of the LOC N Products Trade Dress, or any reproduction, counterfeit, copy, or colorable imitation thereof, in any form, or in any manner, or otherwise infringing the LOC N Products Trade Dress;

3.     passing off, or inducing or enabling others to sell or pass off any goods or services which are not authorized by Plaintiffs for goods

or services sponsored or endorsed by, associated or affiliated with Plaintiffs;

4.  otherwise unfairly competing with, injuring the business or reputation of, or damaging the goodwill of Plaintiffs in any manner;

5.  otherwise falsely representing themselves as being connected with, sponsored by, or associated with Plaintiffs, including through the use of any indicia of such an association; and

6.  otherwise engaging in deceptive trade practices or unfair competition which in any way injures Plaintiffs.

D.  Pursuant to Section 36 of the Trademark Act of 1946, 15 U.S.C. § 1118, Defendants be directed to deliver to Plaintiffs for destruction all advertising, packaging, promotional materials, or other materials bearing the LOC N Marks or comprising the infringing trade dress;

E.  Defendants transfer the domain name www.locnproducts.com, as well as any other domain name containing the LOC N Marks, in whole or in part, to Trendz Beauty;

F.  Pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117, an accounting be had and judgment rendered against Defendants for both: (1) the

profits, gains, and advantage derived from their wrongful actions and (2) the damages sustained by Plaintiffs as a result of Defendants' actions, including lost sales, price erosion, injury to goodwill, diminution of value of the mark, corrective advertising, and reasonable royalties with such amounts to be trebled as provided by law because of the willful and deliberate nature of Defendants' actions;

G.      Defendants be required to pay Plaintiffs' actual damages, enhanced damages, and punitive damages, where provided by law, in light of the willful and intentional nature of their actions;

H.      Pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117(a), Defendants be required to pay Plaintiffs both the costs of this action and the reasonable attorneys' fees Plaintiffs have incurred in connection with this action; and

I.      The Court grant Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted, this 31st day of August, 2023.

*/s/ BJay Pak*
BJay Pak
bjay.pak@alston.com
Georgia Bar No. 559457
Robert L. Lee
bob.lee@alston.com
Georgia Bar No. 443978
Katie H. Hall
katie.hall@alston.com
Georgia Bar No. 143846
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street NE
Atlanta, Georgia 30309-3424
Tel.: (404) 881-7000
Fax: (404) 881-7777

*Counsel for Plaintiffs PureO Natural Products LLC and Trendz Beauty Academy LLC*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1C</u>

This is to certify that the foregoing document was formatted in accordance with Local Rule 5.1C in Times New Roman font, 14-point type.

*/s/ BJay Pak*
BJay Pak