IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.,** and **IQUW SYNDICATE MANAGEMENT LIMITED,** | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| **vs**. | ) ) | Case No. _____ |
| **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC,** | ) ) ) ) | |
| Defendants. | ) ) ) | |

## <u>NOTICE OF AND PETITION FOR REMOVAL</u>

COME NOW Petitioners/Defendants, HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC, and jointly shows this Honorable Court the following:

1.

A civil action was filed by the above-named Plaintiffs, Aspen Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, Scottsdale Insurance Company, Tokio Marine Kiln Syndicates Ltd., and IQUW Syndicate Management Limited, in the State Court of Fulton County, State of Georgia, naming as Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC, Civil Action File No. 23EV003512. A true and correct copy of all pleadings and orders received by Petitioners/Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a Nas, LLC, in said civil action are attached hereto as Exhibit "A."

2.

In the Complaint, Plaintiffs have asserted claims for negligence, and seek damages from HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC for damages sustained by Plaintiffs in a property damage subrogation action currently pending in Fulton County, Georgia. (Compl. ¶ 10, 13)

3.

Plaintiff Aspen Specialty Insurance Company is and was at the time this lawsuit was filed, a foreign corporation, with its principal place of business located at 400 Capital Boulevard, Rocky Hill, Connecticut 06067. (Exhibit "B")

4.

Plaintiff Lexington Insurance Company is and was at the time this lawsuit was filed, a foreign corporation, with its principal place of business located at 99 High Street, Floor 24, Boston, Massachusetts 02110. (Exhibit "C")

5.

Plaintiff Old Republic Union Insurance Company is, and was at the time this lawsuit was filed, a foreign company, with its principal place of business located at 307 North Michigan Avenue, Chicago, Illinois 60601. (Exhibit "D")

6.

Plaintiff Scottsdale Insurance Company is, and was at the time this lawsuit was filed, a foreign company, with its principal place of business located at 1 West Nationwide Boulevard, Columbus, Ohio 43215. (Exhibit "F")

7.

Plaintiff Tokio Marine Kiln Syndicates Ltd. is, and was at the time this lawsuit was filed, a foreign corporation, with its principal place of business located at 20 Fenchurch Street, London EC3M 3BY. (Exhibit "G")

8.

Plaintiff IQUW Syndicate Management Limited, is and was at the time this lawsuit was file, a foreign corporation, with its principal place of business located at 30 Fenchurch Street, London EC3M 3BD. (Exhibit "H")

9.

Petitioner/Defendant HN W-Down Inc. f/k/a Hyper Networks, Inc. is, and was at the time this lawsuit was filed, a foreign corporation, with its principal place of business located at 12249 Nations Ford Road, Suite 102, Pineville, North Carolina 28134. (Exhibit "I")

10.

Petitioner/Defendant Nielsen Advance Solutions LLC d/b/a Nas, LLC, is and was at the time this lawsuit was filed, a foreign company, with its principal place of business located at 924 Chance Way, Sevierville, Tennessee 37876. (Exhibit "J")

11.

The matter in controversy is one in which this Court has jurisdiction pursuant to 28 U.S.C. § 1332 as it involves citizens of different states, and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs. Therefore, pursuant to 28 U.S.C. §§ 1332 and 1441(a), this matter may be removed to this Honorable Court.

12.

In support of its assertion of federal jurisdiction, Petitioners/Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC, refer to the Complaint, attached as Exhibit "A," for which Plaintiffs seek relief from Defendants for negligence in the amount of $592,399.68. (Compl. ¶ 9).

13.

Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391 and 1441.

14.

This Notice of and Petition for Removal is filed within thirty (30) days after receipt by Petitioner/Defendant HN W-Down Inc. f/k/a Hyper Networks, Inc. of the Complaint setting forth the claim for relief upon which said action is based, and said civil action is sought to be removed to this Honorable Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446, *et. seq.*

WHEREFORE, Petitioners/Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC, pray that this Joint Notice of and Petition for Removal be filed, that the entire action referred to hereinabove be removed to and proceed in the United States District Court for the Northern District of Georgia, Atlanta Division, that no further proceedings be held in the case originally filed in the State Court of  Fulton County, State of Georgia, and that Petitioners/Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC, have such other and further relief as this Honorable Court deems just and proper under the circumstances.

This the 1st day of September, 2023.

Respectfully submitted,


/s/ J. Skye Wellesley_____
Michael J. Rust
Georgia Bar No. 621257
J. Skye Wellesley
Georgia Bar No. 265377
Attorneys for Defendant HN W-Down Inc.

**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
950 East Paces Ferry Road
Suite 1700
Atlanta, Georgia 30326
(404) 870-7375 (Rust)
(404) 870-7372 (Wellesley)
(404) 870-1048 facsimile
E-mail: mrust@grsmb.com
        swellesley@grsmb.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE** )<br>**COMPANY**, **LEXINGTON** )<br>**INSURANCE COMPANY**, **OLD** )<br>**REPUBLIC UNION INSURANCE** )<br>**COMPANY**, **SCOTTSDALE** )<br>**INSURANCE COMPANY**, **TOKIO** )<br>**MARINE KILN SYNDICATES** )<br>**LTD.**, and **IQUW SYNDICATE** )<br>**MANAGEMENT LIMITED**, )<br>)<br>Plaintiffs, )<br>)<br>**vs**. )<br>)<br>**HN W-DOWN INC. f/k/a HYPER** )<br>**NETWORKS, INC.** and **NIELSEN** )<br>**ADVANCE SOLUTIONS LLC** )<br>**d/b/a NAS, LLC**, )<br>)<br>Defendants. ) | Case No. _____ |

## **LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

This the 1st day of September, 2023.

Respectfully submitted,

/s/ J. Skye Wellesley
Michael J. Rust
Georgia Bar No. 621257
J. Skye Wellesley
Georgia Bar No. 265377
Attorneys for Defendant HN W-Down Inc.

**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
950 East Paces Ferry Road
Suite 1700
Atlanta, Georgia 30326
(404) 870-7375 (Rust)
(404) 870-7372 (Wellesley)
(404) 870-1048 facsimile
E-mail: mrust@grsmb.com
         swellesley@grsmb.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE** ) <br> **COMPANY, LEXINGTON** ) <br> **INSURANCE COMPANY, OLD** ) <br> **REPUBLIC UNION INSURANCE** ) <br> **COMPANY, SCOTTSDALE** ) <br> **INSURANCE COMPANY, TOKIO** ) <br> **MARINE KILN SYNDICATES** ) <br> **LTD.,** and **IQUW SYNDICATE** ) <br> **MANAGEMENT LIMITED,** ) <br> ) <br>     Plaintiffs, ) <br> ) <br> **vs**. ) <br> ) <br> **HN W-DOWN INC. f/k/a HYPER** ) <br> **NETWORKS, INC.** and **NIELSEN** ) <br> **ADVANCE SOLUTIONS LLC** ) <br> **d/b/a NAS, LLC,** ) <br> ) <br>     Defendants. ) | Case No. _____ |

CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2023 copies of the **NOTICE OF AND PETITION FOR REMOVAL** were electronically served with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

David Terry, Esq.
Cozen O'Connor
1230 Peachtree Street, N.E., Suite 400
Atlanta, GA 30309


This the 1st day of September, 2023.


/s/ J. Skye Wellesley_____
Michael J. Rust
Georgia Bar No. 621257
J. Skye Wellesley
Georgia Bar No. 265377
Attorneys for HN W-Down Inc.

**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
950 East Paces Ferry Road
Suite 1700
Atlanta, Georgia 30326
(404) 870-7375 (Rust)
(404) 870-7372 (Wellesley)
(404) 870-1048 facsimile
E-mail: mrust@grsmb.com
        swellesley@grsmb.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE** | ) | |
| **COMPANY**, **LEXINGTON INSURANCE** | ) | **Civil Action** |
| **COMPANY**, **OLD REPUBLIC UNION** | ) | |
| **INSURANCE COMPANY**, | ) | **File No. _____** |
| **SCOTTSDALE INSURANCE** | ) | |
| **COMPANY**, **TOKIO MARINE KILN** | ) | |
| **SYNDICATES LTD.**, and **IQUW** | ) | |
| **SYNDICATE MANAGEMENT** | ) | |
| **LIMITED**, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **vs**. | ) | |
| | ) | |
| **HN W-DOWN INC. f/k/a HYPER** | ) | |
| **NETWORKS, INC.** and **NIELSEN** | ) | |
| **ADVANCE SOLUTIONS LLC d/b/a** | ) | |
| **NAS, LLC**, | ) | |
| | ) | |
| Defendants. | ) | |

**EXHIBIT "A"**
**TO JOINT NOTICE OF AND PETITION FOR REMOVAL**

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV003512**
**6/12/2023 3:40 PM**
**Donald Talley, Clerk**
**Civil Division**

# IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD., AND IQUW SYNDICATE MANAGEMENT LIMITED, | ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. _____ |
| v. | ) ) | |
| HN W-DOWN INC. F/K/A HYPER NETWORKS, INC. AND NIELSEN ADVANCE SOLUTIONS LLC D/B/A NAS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

## **COMPLAINT**

COME NOW Plaintiffs Aspen Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, Scottsdale Insurance Company, Tokio Marine Kiln Syndicates Ltd., and IQUW Syndicate Management Limited (collectively, "Plaintiffs"), and file their Complaint against Defendants HN W-Down Inc. f/k/a Hyper Networks, Inc. and Nielsen Advance Solutions LLC d/b/a NAS, LLC (collectively, "Defendants") as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiffs are and were at all times mentioned herein duly authorized property insurers, authorized under the laws of the State of Georgia to issue policies of insurance in the State of Georgia.

2.       Defendant HN W-Down Inc. f/k/a Hyper Networks, Inc. is a foreign corporation with its principal place of business in the State of North Carolina. Defendant HN W-Down Inc. f/k/a Hyper Networks, Inc. may be served with process via its Registered Agent, Kali Rae Parks, 6920 Peachtree Industrial Blvd., Norcross, Georgia 30071.

3.       Defendant Nielsen Advance Solutions LLC d/b/a NAS, LLC is a foreign corporation with its principal place of business in the State of Tennessee. Defendant Nielsen Advance Solutions LLC d/b/a NAS, LLC may be served with process via its Registered Agent, David Nielsen, 924 Chance Way, Sevierville, Tennessee 37876.

4.       This Court has jurisdiction of this action and venue is proper in this Court.

## **FACTUAL ALLEGATIONS**

5.       At all times material to this Complaint, Plaintiffs provided property insurance to Carrington Park Condominium Association, Inc. for a property located at 2700 Pine Tree Road, Atlanta Georgia 30324 (the "Property").

6.       At all times relevant hereto, Defendants were installing Google Fiber lines at and near the Property.

7.       On or about July 29, 2021, the Property suffered significant water damage from a breach in a plumbing line.

8.       The cause of the breach in the water line was an employee of one or both Defendants accidentally stepping on it, causing it to rupture.

9.       Pursuant to their policy of insurance, Plaintiffs have suffered significant damages in the amount of $592,399.68 (including their insured's $25,000 deductible).

2

10.     Plaintiffs are equitably and contractually subrogated to the rights, claims, interests, and causes of action belonging to their insured and are entitled to recover the damages from Defendants.

## COUNT I – NEGLIGENCE

11.     The prior allegations are incorporated herein by reference the same as if restated herein in their entirety.

12.     Defendants owed to all foreseeable persons, including Plaintiffs' insured (and therefore to Plaintiffs), the duty to use reasonable care in all of their activities involved with installing the Google Fiber lines.

13.     Defendants breached the duties they owed to Plaintiffs' insured (and therefore to Plaintiffs) by negligently damaging a water line, as described herein.

14.     As a direct, proximate, and foreseeable result of the breach(es) of duty and negligence of Defendants, Plaintiffs have suffered damages in the approximate amount of $592,399.68 (including their insured's $25,000 deductible).

WHEREFORE, Plaintiffs Aspen Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, Scottsdale Insurance Company, Tokio Marine Kiln Syndicates Ltd., and IQUW Syndicate Management Limited pray that:

A.     Process issue and be served upon Defendants compelling them to appear and answer this Complaint;

B.     Plaintiffs have judgment against Defendants, including interest and the costs of this action; and

C.     Plaintiffs have all other relief allowed by law and equity.

3

Respectfully submitted this 12th day of June 2023.

/s/David A. Terry
David A. Terry
Georgia Bar No. 051508
**COZEN O'CONNOR**
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 572-2016
Facsimile:  (404) 572-2199
E-mail:      dterry@cozen.com

*Attorney for Plaintiffs Aspen Specialty Insurance Company, Lexington Insurance Company, Old Republic Union Insurance Company, Scottsdale Insurance Company, Tokio Marine Kiln Syndicates Ltd., and IQUW Syndicate Management Limited*

4

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV003512**
**6/12/2023 3:40 PM**
**Donald Talley, Clerk**
**Civil Division**

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior or** ☐ **State Court of** _____ **County**

| For Clerk Use Only |
|---|
| **Date Filed** _____         **Case Number** _____ |
| **MM-DD-YYYY** |

**Plaintiff(s)**                                                   **Defendant(s)**

| Last | First | Middle I. | Suffix | Prefix |   | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix |   | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |   | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix |   | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____   **Bar Number** _____   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**
- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**
- ☐ **Adoption**
- ☐ **Dissolution/Divorce/Separate Maintenance**
- ☐ **Family Violence Petition**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

**Post-Judgment – Check One Case Type**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Modification**
- ☐ **Other/Administrative**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____         _____
**Case Number**                             **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
                                                                                    **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18

**Addendum to General Civil and Domestic Relations Case Filing Initiation Form**

**Additional Plaintiffs:**

Tokio Marine Kiln Syndicates Ltd.

IQUW Syndicate Management Limited

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV003512**
**6/12/2023 3:40 PM**
**Donald Talley, Clerk**
**Civil Division**

**GEORGIA, FULTON COUNTY**

DO NOT WRITE IN THIS SPACE

## STATE COURT OF FULTON COUNTY
**Civil Division**

**CIVIL ACTION FILE #:** _____

Aspen Specialty Insurance Company, et

al., c/o David Terry, 1230 Peachtree St.,

Ste. 400, Atlanta, GA 30309

Plaintiff's Name, Address, City, State, Zip Code

vs.

HN W-Down Inc. f/k/a Hyper Networks,

Inc., 6920 Peachtree-Industrial

Blvd.,   Norcross, GA   30071

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [  ] ACCOUNT | PRINCIPAL $ 592,399.68 |
| [  ] CONTRACT | |
| [  ] NOTE | INTEREST $_____ |
| [  ] TORT | |
| [  ] PERSONAL INJURY | ATTY. FEES $_____ |
| [  ] FOREIGN JUDGMENT | |
| [  ] TROVER | COURT COST $_____ |
| [  ] SPECIAL LIEN | |
| \*\*\*\*\*\*\*\*\*\*\*\* | |
| [  ] NEW FILING | |
| [  ] RE-FILING:  PREVIOUS CASE NO. _____ | |

## SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

  You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: David A. Terry, Cozen O'Connor

Address: 1230 Peachtree St., Suite 400

City, State, Zip Code: Atlanta, GA 30309          Phone No.: (404) 572-2016

An answer to this complaint, which is herewith served upon you, must be filed within thirty (30) days after service, not counting the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSES MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing or, if desired, at the e-filing public access terminal in the Self-Help Center  at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

Donald Talley, Chief Clerk (electronic signature)

*SERVICE INFORMATION:*

Served, this _____ day of _____, 20_____.     _____

DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20_____.     _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV003512**
**6/12/2023 3:40 PM**
**Donald Talley, Clerk**
**Civil Division**

**GEORGIA, FULTON COUNTY**

DO NOT WRITE IN THIS SPACE

## STATE COURT OF FULTON COUNTY
**Civil Division**

CIVIL ACTION FILE #: _____

Aspen Specialty Insurance Company, et

al., c/o David Terry, 1230 Peachtree St.,

Ste. 400, Atlanta, GA 30309

Plaintiff's Name, Address, City, State, Zip Code

vs.

Nielsen Advance Solutions LLC d/b/a

NAS, LLC, 924 Chance Way, Sevierville,

TN     37876

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [ ] ACCOUNT | PRINCIPAL $ 592,399.68 |
| [ ] CONTRACT | |
| [ ] NOTE | INTEREST $_____ |
| [ ] TORT | |
| [ ] PERSONAL INJURY | ATTY. FEES $_____ |
| [ ] FOREIGN JUDGMENT | |
| [ ] TROVER | COURT COST $ _____ |
| [ ] SPECIAL LIEN | |
| | \*\*\*\*\*\*\*\*\*\*\*\* |
| [ ] NEW FILING | |
| [ ] RE-FILING: PREVIOUS CASE NO. _____ | |

## SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

  You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: David A. Terry, Cozen O'Connor

Address: 1230 Peachtree St., Suite 400

City, State, Zip Code: Atlanta, GA 30309                    Phone No.: (404) 572-2016

An answer to this complaint, which is herewith served upon you, must be filed within thirty (30) days after service, not counting the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSES MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing or, if desired, at the e-filing public access terminal in the Self-Help Center  at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

Donald Talley, Chief Clerk (electronic signature)

*SERVICE INFORMATION:*

Served, this _____ day of _____, 20_____.       _____

DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:

We, the jury, find for _____

_____

This _____ day of _____, 20_____.     _____ Foreperson

**(STAPLE TO FRONT OF COMPLAINT)**

State Court of Fulton County
**E-FILED**
23EV003512
8/9/2023 2:07 PM
Donald Talley, Clerk
Civil Division

## RETURN OF SERVICE

SHERIFF NUMBER: 23010574

<u>PARTY TO BE SERVED</u>                    <u>ATTORNEY / PETITIONER</u>
HN DOWN INC. FKA HYPER NETWORKS, INC
1201 HAYS STREET
TALLAHASSEE, FL 32301

PLAINTIFF:    ASPEN SPECIALTY INSURANCE COMPANY, ET AL, ETC
      -VS-
DEFENDANT:   HN W-DOWN INC FKA HYPER NETWORKS, INC

TYPE OF WRIT: SUMMONS, COMPLAINT

COURT:    OUT OF STATE /                    COURT DATE:
CASE  #:   23EV003512                       COURT TIME:

Received the above-named writ on August 1, 2023, at 10:08 AM, and SERVED the same on the 2nd day of August 2023, at 11:30 AM.  Service was completed at 1201 HAYS STREET TALLAHASSEE, FL 32301 in LEON County, Florida, as follows:

CORPORATE

By delivering a true copy of this writ together with a copy of the initial pleadings, if any, with the date and hour of service endorsed thereon by me to wit: <u>Sebrena Randolph</u>  as <u>registered agent</u> of the within named corporation according to Chapter 48.081 (3) and 48.091, Florida Statutes.

SERVICE COST: $40.00                    WALT MCNEIL, SHERIFF
ThomasQ, CIVIL CLERK                    LEON COUNTY, FLORIDA

COURT:                          TB 1501

COUNTY CLERK OF COURT              BY:_____
                          Process Server Tracie Baker, Badge # 1501

**GEORGIA, FULTON COUNTY**

**STATE COURT OF FULTON COUNTY**
Civil Division

**State Court of Fulton County**
**\*\*E-FILED\*\***
**23EV003512**
**6/12/2023 3:40 PM**
**Donald Talley, Clerk**
**Civil Division**

**DO NOT WRITE IN THIS SPACE**

**CIVIL ACTION FILE #:** _____

Aspen Specialty Insurance Company, et
al., c/o David Terry, 1230 Peachtree St.,
Ste. 400, Atlanta, GA 30309

Plaintiff's Name, Address, City, State, Zip Code

vs.

HN W-Down Inc. f/k/a Hyper Networks,
Inc., 6920 Peachtree-Industrial
Blvd.,   Norcross, GA  30071

Defendant's Name, Address, City, State, Zip Code

| TYPE OF SUIT | AMOUNT OF SUIT |
|---|---|
| [  ] ACCOUNT | PRINCIPAL $ 592,399.68 |
| [  ] CONTRACT | |
| [  ] NOTE | INTEREST $_____ |
| [  ] TORT | |
| [  ] PERSONAL INJURY | ATTY. FEES $_____ |
| [  ] FOREIGN JUDGMENT | |
| [  ] TROVER | COURT COST $_____ |
| [  ] SPECIAL LIEN | |
| | \*\*\*\*\*\*\*\*\*\*\* |
| [  ] NEW FILING | |
| [  ] RE-FILING: PREVIOUS CASE NO. _____ | |

### SUMMONS

TO THE ABOVE NAMED-DEFENDANT:

You are hereby required to file with the Clerk of said court and to serve a copy on the Plaintiff's Attorney, or on Plaintiff if no Attorney, to-wit:

Name: David A. Terry, Cozen O'Connor

Address: 1230 Peachtree St., Suite 400

City, State, Zip Code: Atlanta, GA 30309                     Phone No.: (404) 572-2016

An answer to this complaint, which is herewith served upon you, must be filed within thirty (30) days after service, not counting the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint, plus cost of this action. **DEFENSES MAY BE MADE & JURY TRIAL DEMANDED**, via electronic filing or, if desired, at the e-filing public access terminal in the Self-Help Center  at 185 Central Ave., S.W., Ground Floor, Room TG300,  Atlanta, GA 30303.

Donald Talley, Chief Clerk (electronic signature)

_____

**SERVICE INFORMATION:**

Served, this _____ day of _____, 20_____.

_____
DEPUTY MARSHAL, STATE COURT OF FULTON COUNTY

WRITE VERDICT HERE:
We, the jury, find for _____

_____

This _____ day of _____, 20_____.    _____ Foreperson

(STAPLE TO FRONT OF COMPLAINT) SERVED THIS 2 DAY OF Aug
20 23 AT 1:30 A.M. P.M.
WALT McNEIL, SHERIFF OF LEON COUNTY FL
BY _____ DS

State Court of Fulton County
**E-FILED**
23EV003512
8/31/2023 11:37 AM
Donald Talley, Clerk
Civil Division

## IN THE STATE COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY**, **SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED,**<br><br>Plaintiffs,<br><br>**vs**.<br><br>**HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC,**<br><br>Defendants. | )<br>)<br>)<br>)  Case No. 23EV003512<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### DEFENDANT HN W-DOWN INC. F/K/A HYPER NETWORKS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT AND CROSS-CLAIM AGAINST NIELSEN ADVANCE SOLUTIONS, LLC.

COMES NOW, HN W-Down Inc. f/k/a Hyper Networks, Inc. ("Hyper Networks"), Defendant in the above-styled action, and hereby files its Answer to Plaintiff's Complaint.

### FIRST DEFENSE

For a First Defense, Hyper Networks responds to the numbered paragraphs of the Complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

### 1.

Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 1 of the Complaint.

-1-

2.

Hyper Networks admits that it is a foreign corporation with its principal place of business located in the state of North Carolina and that it may be served through its registered agent.  Hyper Networks denies the remainder of the allegations contained in Paragraph 2 of the Complaint.

3.

Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the Complaint.

4.

Hyper Networks denies the allegations contained in Paragraph 4 of the Complaint.

## **FACTUAL ALLEGATIONS**

5.

Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 5 of the Complaint.

6.

Hyper Networks denies the allegations contained in Paragraph 6 of the Complaint.

7.

Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 of the Complaint.

8.

Hyper Networks denies the allegations contained in Paragraph 8 of the Complaint.

9.

Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the allegations contained in Paragraph 9 of the Complaint.

10.

Hyper Networks denies that Plaintiff is entitled to recover damages from Hyper Networks. Hyper Networks is without sufficient knowledge to form a belief as to the truth or falsity of the remainder of the allegations contained in Paragraph 10 of the Complaint.

## COUNT I - NEGLIGENCE

11.

Hyper Networks reasserts and incorporates by reference its responses to Paragraphs 1 through 10 of the Complaint as set forth above.

12.

Hyper Networks admits having the applicable duties as required by Georgia law.  Hyper Networks denies the remainder of the allegations contained in Paragraph 12 of the Complaint.

13.

Hyper Networks denies the allegations contained in Paragraph 13 of the Complaint.

14.

Hyper Networks denies the allegations contained in Paragraph 14 of the Complaint.

## SECOND DEFENSE

For a Second Defense, Hyper Networks asserts that Plaintiff's claims may be barred by the applicable statute of limitations.

## THIRD DEFENSE

For a Third Defense, Hyper Networks asserts the improper service of process.

## FOURTH DEFENSE

For a Fourth Defense, Hyper Networks asserts insufficient service and the failure of Plaintiff to comply with the applicable service and process requirements.

## FIFTH DEFENSE

For a Fifth Defense, Hyper Networks asserts the lack of personal jurisdiction over Hyper Networks.

## SIXTH DEFENSE

For a Sixth Defense, Hyper Networks asserts that no act or omission on its part caused or contributed to the injuries alleged in the Complaint.

## SEVENTH DEFENSE

For a Seventh Defense, Hyper Networks asserts that it has breached no duty owed to Plaintiff.

## EIGHTH DEFENSE

For a Eighth Defense, Hyper Networks asserts the amounts claimed by Plaintiff may have been a voluntary payment for which Plaintiff cannot recover against Hyper Networks.

## NINTH DEFENSE

For a Ninth Defense, Hyper Networks asserts that Plaintiff's Complaint fails to state a claim upon which relief may be granted against Hyper Networks.

## TENTH DEFENSE

For a Tenth Defense, Hyper Networks asserts that no act or omission on its part was the proximate cause of the Plaintiff's damages.

## ELEVENTH DEFENSE

For a Eleventh Defense, Hyper Networks asserts that Fulton County may be an improper venue.

## CROSS-CLAIM AGAINST NIELSEN ADVANCED SOLUTIONS, LLC.

Pursuant to O.C.G.A. § 9-11-13, Defendant HN W-Down, Inc. f/k/a Hyper Networks, Inc. ("Hyper Networks") by and through counsel, states its Crossclaim against Co-Defendant, Nielsen Advanced Solutions, LLC. ("Nielsen"), as follows:

1.

The allegations of Hyper Network's Answer and affirmative defenses are adopted and incorporated herein by reference.

2.

Plaintiff is subject to the jurisdiction and venue of this Court by reason of having filed the and Answer in this action.

3.

On or about July 6, 2021, Hyper Network entered into an Independent Contractor's Master Services Agreement with Nielsen Advanced Solutions ("Nielsen") whereby Nielsen was to perform all work issued from Hyper Network to Nielsen.  (Nielsen's scope of work is more fully described in the Independent Contractor's Master Services Agreement attached as Exhibit "A.")

4.

Hyper Network has been named as a defendant in the above-styled action, wherein Plaintiff seeks to recover from Hyper Network damages for alleged issues in the work performed by Nielsen.

5.

Although Hyper Network denies any liability whatsoever to Plaintiff in the above-styled action, Plaintiff has sought to recover from Hyper Network for damages resulting from allegedly defective work of Nielsen.

6.

In Paragraph 17, entitled Defense and Indemnity, of the Independent Contractor's Master

Services Agreement, Nielsen agreed as follows:

> "To the fullest extent possible under Applicable Law, [Nielsen] will defend and indemnify [Hyper Networks]…from and against any and all claims, demands, debts, causes of action, liabilities, awards, penalties, fines, judgments, damages, court costs, losses and expenses, including actual attorneys' and consultants; fees and costs…to the extent arising out of or resulting from…the performance or failure to perform services ana provide the deliverables, including perform or providing defective workmanship or faulty services…[Nielsen's] indemnity and defense obligations will apply regardless of the fault or negligence of the contractor parties, whether or not the claim has any merit…."

7.

In Paragraph 17(a), entitled Defense, of the Independent Contractor's Master Services

Agreement, Nielsen agreed as follows:

> "[Nielsen] will immediately defend…the Indemnified Parties from and against any and all Claims.  Such defense obligation will arise immediately upon written notice of Claim being provide to Contractor, and includes the obligation to defend with respect to matters related to investigation and resolution of claims…."

8.

In addition to the defense and indemnity Obligations, the Independent Contractor's Master

Services Agreement included a provision requiring Nielsen to provide insurance and Hyper

Network is an additional insured under Nielsen's insurance policies.

9.

Pursuant to the terms of the Independent Contractor's Master Services Agreement,

Nielsen is required to indemnify and defend Hyper Network from any and all suits arising

from Nielsen's work.

## CONTRACTUAL INDEMNITY

10.

Hyper Network reasserts and incorporates by reference each and every allegation contained Paragraphs 1 through 9 of the Cross-Claim as set forth above.

11.

Pursuant to Hyper Network's contract with Nielsen, Nielsen has a duty to indemnify Hyper Network for any losses, damages, or expenses whatsoever incurred by Hyper Network as a result of Plaintiff initiating this lawsuit.

12.

Hyper Network denies any wrongdoing related to the claims asserted in the Plaintiff's Complaint or related to the damages claimed by Plaintiff.

13.

If, however, Hyper Network should be found liable in whole or in part to Plaintiff in any manner, then Nielsen is liable to Hyper Network for indemnification as to all sums which Hyper Network is required to pay Plaintiff.

14.

Hyper Network is entitled to be indemnified by Nielsen for any alleged damages caused to Plaintiff based on Plaintiff's claims against Nielsen, including any recovery by Plaintiff against Hyper Network, and any expenses incurred by Hyper Network in defending against Plaintiff's Complaint, including but not limited to Hyper Network's attorney's fees and costs of litigation.

## BREACH OF CONTRACT – INSURANCE REQUIREMENTS

15.

Hyper Network reasserts and incorporates by reference each and every allegation contained

Paragraphs 1 through 14 of the Cross-Claim as set forth above.

16.

The Independent Contractor's Master Services Agreement expressly requires Hyper Network to provide certain specified insurance.

17.

The Independent Contractor's Master Services Agreement required Nielsen to include Hyper Network as an insured on its policies.

18.

Hyper Link is an insured under the policies of insurance issued to Nielsen.

19.

To the extent Nielsen did not provide the coverage required under the Independent Contractor's Master Services Agreement, such failure was a breach of the Independent Contractor's Master Services Agreement.

20.

To the extent Hyper Network is not provided the coverage required under the Independent Contractor's Master Services Agreement, such failure was a breach of the Independent Contractor's Master Services Agreement.

21.

To the extent Hyper Network is not provided the coverage under Nielsen's insurance policies as additional and/or named insureds, such failure is a breach of the Independent Contractor's Master Services Agreement.

22.

Hyper Network has demanded, in writing, Nielsen defend, indemnify, and hold Hyper

Network harmless from the claims asserted in Plaintiff's Complaint.

23.

Hyper Network has demanded, in writing multiple times, that Nielsen's insurers defend and indemnify Hyper Network without reservation.

24.

To date, neither Nielsen nor its insurers have accepted Hyper Network's tender or agreed to defend and indemnify Hyper Network in this matter.

WHEREFORE, having fully answered, Hyper Networks asserts that, requests that this case go forward and that it receives a judgment in its favor, with all costs cast against Plaintiff, and such other and further relief as the Court deems just and proper under the circumstances. Hyper Networks specifically prays for an order:

(a) That it be indemnified by Nielsen for any judgment obtained by Plaintiff against Hyper Networks;

(b) That it be awarded its costs and attorney's fees; and,

(c) For such other and further relief as this Court may deem just, proper, and equitable under the circumstances.

This 31st day of August, 2023.

Respectfully submitted,

/s/ J. Skye Wellesley
Michael J. Rust
Georgia Bar No. 621257
J. Skye Wellesley
Georgia Bar No. 265377
Attorneys for Hyper Networks

**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
1700 Salesforce Tower Atlanta
950 East Paces Ferry Road
Atlanta, Georgia 30326
404-870-7375 (Rust)
404-870-7372 (Wellesley)
404-870-1048 fax
e-mail: mrust@grsmb.com
        swellesley@grsmb.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the foregoing **DEFENDANT HN W-DOWN INC. F/K/A HYPER NETWORKS, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT** upon all counsel of record via United States Mail appropriate postage affixed thereto:

<div align="center">

David A. Terry
COZEN O'CONNOR
The Promenade, Suite 400
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
dterry@cozen.com
***Attorney for Plaintiffs***

</div>

This 31st day of August, 2023.

/s/ J. Skye Wellesley
Michael J. Rust
Georgia Bar No. 621257
J. Skye Wellesley
Georgia Bar No. 265377
Attorneys for Hyper Networks

# Exhibit A

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

## <u>INDEPENDENT CONTRACTOR'S MASTER SERVICES AGREEMENT</u>

THIS AGREEMENT (this "Agreement") is made at the date of execution by both parties, between HYPER NETWORKS, INC (hereinafter the "Company") and the contractor (hereinafter "Contractor") specified in signature block (each of the Company and Contractor may be referred to as a "Party" or, collectively, as the "Parties").

<u>WITNESSETH:</u>

WHEREAS, the Company is engaged in the business of telecommunications and telecommunications contracting, and

WHEREAS, the Company desires to engage Contractor to perform services in the areas specified (the "Contract Area") and for the customers of the Company (the "Customer"), and Contractor desires to accept such engagement upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing promises and the mutual covenants and agreements hereinafter set forth, the Company and Contractor hereby agree as follows:

1. Contract structure: All services performed by Contractor will be governed by this Master Services Agreement ("MSA").

    a. Customer Addendum.  Dependent upon customer requirements, further restrictions or requirements may be outlined in a customer specific amendment ("Customer Addendum") which may be added at the time of execution of this Agreement, at time work begins, or at such time as Customer and/or the Company requires.  In the event of any inconsistency or conflict between the terms and conditions of the Customer Addendum and this Agreement, the terms and conditions of this Agreement shall govern and control.

    b. Scope of Work.  All work will be issued from Company to Contractor in either the form of a Scope of Work (SOW), Purchase Order (PO), and/or Work Authorization (WA). These forms of issued work will herein be referred to collectively as "Scope of Work" or "SOW" Contractor is not authorized to perform work and is not entitled to receive payment for any work not duly authorized in one of these three forms.   Further, the Company will have no obligation to Contractor for any such work.

2. Engagement: Any and all Customer Addendum and/or Scope of Work shall be governed by and incorporated into this Agreement.  The Company hereby engages Contractor, and Contractor hereby accepts such engagement, upon the terms and conditions set forth herein.

3. Services: Contractor represents, warrants and agrees that it will perform and complete the services outlined in the Scope of Work (the "Services") as follows:

    a. In a timely manner, not to exceed any applicable time periods set forth in the Scope of Work;

    b. in accordance with information outlined or inferred from the Scope of Work;

    c. In accordance with all applicable industry, legal, Company and Customer standards in effect;

    d. In accordance with standards, specifications and requirements set forth in the agreement between the Company and the applicable customer of the Company or published by the Customer;

    e. In a manner satisfactory to the Company so as to gain Customer acceptance;

    f. In accordance with all applicable federal, state or local statutes, regulations or ordinances then in effect; and

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

      g.  In accordance with any applicable Customer Addendum.

4.  Flow Down: All applicable provisions of the agreement maintained between the Company and Customer shall apply to Contractor and its delegates and subcontractors with the same force and effect as they apply to the Company.

5.  Subcontractors: To the extent Contractor desires to engage subcontractors to perform Services ("Subcontractors"), Contractor must notify the Company that it desires to use a subcontractor by providing the name and contact information of such subcontractor (a "Subcontractor Notice") at least five (5) business day prior the date on which Contractor proposes that such Subcontractor would begin any work relating to the Services. The Company, through its officers, may approve or disapprove of the engagement of any such Subcontractor in the Company's sole discretion for any reason, or no reason at all. If the Company has not approved or disapproved of the engagement of a Subcontractor within five (5) business days of the Company's receipt of the applicable Subcontractor Notice, Contractor agrees that such engagement shall be deemed to have been disapproved by the Company and Contractor is not permitted to use such Subcontractor.  Contractor further warrants that:

      a.  It shall provide each such Subcontractor with proper identification and uniforms satisfactory to the Company;

      b.  Any Subcontractor engaged by Contractor shall be deemed to be an employee or independent contractor of Contractor and under Contractor's sole control and authority and shall have no employment or other relationship of any kind whatsoever to the Company or Customer;

      c.  Each Subcontractor engaged by Contractor to perform the Services hereunder must agree to comply with and fulfill the same obligations set forth in this Agreement that Contractor must comply and fulfill with respect to the performance of such Services;

      d.  Contractor shall provide to the Company a completed and executed All Persons Screening Certificate upon request by Company;

      e.  Copies of subcontractor agreements and other proof of subcontractor compliance with any portion of this Agreement must be provided to the Company immediately upon request but in any event no later than twenty four (24) hours after request by the Company;

      f.  Subcontractors will be paid promptly in accordance with all applicable laws.  In the event that Contractor fails to make payment to any Subcontractor within seven (7) days of payment of Contractor by the Company, the Company has the right, but not the duty, to compensate the Subcontractor and deduct the amount paid from any present or future amounts owed to Contractor;.

      g.  The Company reserves the right to demand replacement or removal of subcontractors at any time in its sole discretion for any reason  or no reason at all; and

      h.  Contractor is solely responsible for any and all losses arising from any Subcontractor's noncompliance with any terms of this Agreement and Contractor will indemnify the Company for any and all losses arising from Subcontractor's noncompliance with any terms of this Agreement.

6.  Transmission of Production/Consumption Logs: Contractor shall transmit electronically to the Company daily production (by driver/unit if applicable) and material consumption (by part number) logs reflecting all Services completed by 8:00 AM local time on the day following completion of Services.  The format of this file transmission may be dictated by the Company in its sole discretion, and may require the use of a computer, phone, tablet or other device which Contractor agrees to provide along with any necessary data services or internet access.  Should no format or system be specified by the Company for the given Scope of Work, Contractor agrees to furnish this information via email.  Contractor agrees and understands that failure to submit adequate and accurate daily logs is likely to delay invoice approval due to reconciliation.

7.  As-Build and other Deliverables: All construction work will require as-build data to be completed and turned in by segment/section defined in Scope of Work.  If requirements for deliverables are not further spelled out in subordinate amendments, Contractor Addendum, Scope of Work and/or other documents, Contractor must submit, at a minimum, the following:

*(Contractor Initials)*

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

   a.  Construction: Marked up maps/prints/designs, scanned in color with adequate resolution and legible annotations and notes along with digital photographs of each vault, pedestal, enclosure or other significant feature of installed plant, pre and post bore photos, and any other documentation required by the Company in its sole discretion;

   b.  Splicing/Testing: Original file format test results, labelled adequately, photos of all splice enclosures / trays showing proper labeling and cable routing; and

   c.  Engineering: Specified file format source files for designs in editable/non-software locked state along with PDF's of completed designs.

8.  Pricing: Pricing is defined in individual Purchase Orders, Statements of Work, and/or Work Authorizations.

9.  Changes/Change Orders: Under no circumstances, shall Contractor be authorized to perform any work outside the Scope of Work ("Out of Scope Work") without specific written or emailed authorization in the form of an approved Purchase Order from the Company's Project Manager or his/her specified delegate as defined in the Scope of Work.. The Company has no obligation to pay Contractor, or any Subcontracts, for any Out of Scope Work not previously authorized, including the inclusion of adders.

10.  Transmission of Invoices: Contractor shall utilize a standard electronic form of invoice which shall be approved by the Company in its sole discretion, and the Company shall not be obliged to honor any invoices submitted by Contractor unless in the approved form. Scope of Work will dictate segments authorized to bill, and may define billing upon completion, upon segment completion, or upon defined periodic progress. Invoices will be reviewed for approval by market teams within four (4) business days unless otherwise specified in the SOW. Market teams will provide invoice approval or written defect lists ("Gig-Sheets") within this time frame, and payment terms will commence upon approval. Contractor will work diligently to correct deficiencies presented in Gig-Sheets within two (2) business days. If Contractor fails to correct deficiencies in this time period, the Company shall have the right (but no obligation) to have the corrective work performed by a third-party and deduct the cost of such corrective work, plus a fifteen percent (15%) administrative fee, from any balance owed under this Agreement. The Company may also, in its sole discretion, invoice Contractor for the amount of the corrective work, plus a fifteen percent (15%) administrative fee, payable net fifteen (15) and incurring interest on any amounts outstanding at the rate of six percent (6%) per annum. At all times, Company reserves the right to inspect all work (including Gig-Sheets corrections), and Contractor agrees to provide access and personnel necessary to accommodate said inspections.

11.  Payment of Invoices: Payments will be made once weekly by Company for all invoices due. Payments will be made by check, delivered via U.S. Mail unless otherwise agreed to in writing. Contractor may elect to have funds wire transferred for a twenty-nine dollar ($29) fee per transfer. This election may be made by returning the completed "Wire Transfer Instructions" attachment.

   a.  Except as otherwise provided herein, Contractor shall be paid in accordance with the Rate Schedule. Contractor must provide a completed contractor package, to include a W-9 to the Company. All payments from the Company to the Contractor shall be made payable to the Contractor in its Legal or DBA name (as indicated on line 1 of the W-9 provided to the Company), and in no event shall such payments be made payable to any officers or employees of the Contractor, nor shall the Company have any obligation or liability or responsibility for payment to any such person or persons. Contractor shall provide to the Company all federal, state or local tax identification numbers, together with any and all other information reasonably required by the Company.

   b.  No payment for Services shall become due and payable to Contractor by the Company until such Services are completed and approved in accordance with the requirements of this Agreement, Customer Addendum and/or pertinent other subordinate agreements; provided, that if the Company determines, in its sole discretion, to make any payments prior to Contractor's satisfaction of the standards of this Agreement, such payment shall not discharge

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

Contractor of its obligations to complete the Services in accordance with such standards, this Agreement, Customer Addendum and/or other subordinate agreements. If Contractor is not in default under this Agreement, any Customer Addendum and/or other subordinate agreements, all proper invoices for such completed Services shall be paid in accordance with the terms set forth in the relevant Scope of Work after the Company's approval provided for herein.  If Contractor is in default under this Agreement, any Customer Addendum and/or other subordinate agreements, no payments shall be owed or become due and payable to Contractor by the Company until such default is cured, or until Contractor has taken such steps to cure the default as shall be satisfactory to the Company; provided, that if the Company determines, in its sole discretion, to make any payment to Contractor while Contractor is in default under this Agreement, any Customer Addendum and/or other subordinate agreements, such payment shall not constitute a waiver of such default or an obligation to make any future payments while in default.

c.   No payments to Contractor shall become due and payable to Contractor by the Company if any of the insurances required by this Agreement expire, and/or if new, current, insurance certificates are not supplied to the Company prior to such expiration.  Company may (but is not obligated to)  secure insurance of its choosing if any insurances required by Contractor lapse without providing new certificates meeting proper standards being provided.  Should Company procure any such insurance, Contractor agrees and permits Company to offset any amounts owed to Contractor by the amounts incurred procuring such insurance.

12. Warranty: Unless specified otherwise in SOW, Contractor warrants that all Services performed under this Agreement shall be free from defects in workmanship for a period of two (2) years (or longer to the extent provided by any applicable laws) from and after the date of acceptance of the specified Services. All labor, workmanship, components, material or other parts will be free from defects in material and workmanship under normal use and service. Contractor shall, at its sole cost and expense, repair or replace any defective components or parts supplied by the Company.

13. Materials: The Company shall furnish to Contractor all hardware and other materials specifically set forth in the Scope of Work on Exhibit B (the "Materials") in sufficient quantities to complete the Services. Contractor hereby acknowledges and agrees that:

a.   Contractor shall have no ownership or other legal right to or interest in any Materials and the Materials are the sole and exclusive property of the Company, and/or Customer;

b.   All Materials not permanently installed by Contractor in the performance of Services shall be promptly returned to the Company but in no event returned later than seven (7) days after the completion of Services;

c.   In no event shall Contractor have the right to use any of the Materials other than for the Services specified, and Contractor shall not otherwise sell, dispose of or use the Materials or cause or allow any lien to be placed upon the Materials;

d.   Contractor shall remain liable for all materials issued by the Company until such time as materials are either returned to designated Company locations or until accepted as part of work acceptance by the Company; and

e.   If Contractor fails to promptly return any unused Materials in good order, or loses, damages or otherwise causes to be unsuitable for future installation any of the Materials issued, the Company shall have the right to collect from Contractor, including by way of deduction or offset of any amounts due and owing Contractor, a monetary amount equal to the fair market value of the Materials that Contractor has failed to return, account for, and/or return damaged plus an administrative fee of fifteen percent (15%).

*Dn*

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

14. Equipment: Other than the Materials, Contractor shall supply, at its sole cost and expense, all trucks, tools, test equipment, voice and data processing hardware and equipment necessary to perform the Services and accurately report and/or submit progress, consumption, production, closeouts and invoices (the "Contractor Equipment"). The Contractor Equipment shall be of a type satisfactory to the Company. Contractor shall also supply to all workers engaged in the Service with uniforms (if required by the Company) of a type satisfactory to the Company, and Contractor shall require all of its workers to wear such uniforms while engaged in the Services or in any work related thereto. Contractor and the Company may agree on terms relating to the use or leasing of equipment and any such agreement upon execution shall become part of this Agreement.

15. Default of Contractor: Contractor shall be fully liable to the Company for any loss, liability, demand, claim, action, cause of action, cost, damage, diminution in value, deficiency, tax, penalty, fine or expense, whether or not arising out of third party claims (including interest, penalties, reasonable attorneys' fees and expenses and all amounts paid in investigation, defense or settlement of any of the foregoing and the enforcement of any rights hereunder) ("Loss") incurred by the Company in the event of any defects in any Services, or any default by Contractor under this Agreement, Customer Addendum and/or other subordinate agreement. The Company shall have the right, at its sole discretion without notice to Contractor, to correct and repair, or cause to be corrected or repaired any and all such defects, and to cure any such defaults, at Contractor's cost and expense plus an administrative fee of fifteen percent (15%). The costs and expenses for which Contractor shall be responsible shall include, but not be limited to, costs of labor, including costs of engaging additional or alternate workers, costs of materials, and costs and expenses of repairing any damage suffered by the Company, Customer, and any customer of the Customer as a result of or relating to any defective Service or any default by the Contractor. Contractor shall reimburse the Company for all such costs and expenses within five (5) days after demand by the Company. If Contractor shall fail to make such reimbursement, the Company shall have the right to either deduct or offset such amount from any amounts due and owing to Contractor or invoice Contractor for the amount of the reimbursement.  In the event the Company invoices Contractor for the amount of any reimbursement, the amounts due and owing will incur interest at the rate of six percent (6%) per annum.

16. Noncompliance of Contractor: Contractor understands that, as a General Contractor, the Company maintains its ability to work based upon its reputation with its customers and government agencies. Noncompliance with standards, contract terms, guidelines or laws ("Standards") by Contractor or any of its subcontractor(s) will consequently create damages which will be difficult to calculate with specificity.  By entering into this Agreement and agreeing to perform the Services, Contractor and all of its subcontractors confirm that they have received and/or reviewed the Standards and they must, at all times, comply with and be in conformance with the Standards. The Standards include (but are not limited to):

    a. Following OSHA and other safety guidelines;

    b. Compliance with Environmental Health and Safety documentation;

    c. Compliance with Safe Digging Guidelines, including but not limited to potholing all utility crossings, and any other 811/Miss-Dig, State, Local, Municipal and customer guidelines;

    d. Compliance with required site restoration requirements;

    e. Compliance with permit guidelines to include encroachment;

    f. Compliance with door tagging and customer notification guidelines;

    g. Compliance with standards specific to the Customer work being performed;

    h. Compliance with industry standards and best practices;

    i. Guidance given to subcontractor teams by Company leadership; and

_Dn_____

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

    j.    Job site cleanliness and care in selecting staging areas, parking areas and when closing or blocking walkways, driveways and roads.

Should contractor neglect and/or fail to comply with the Standards as determined by the Company in its sole discretion, the Company, in its sole discretion, shall be permitted to withhold or offset from any amounts due to Contractor an amount equal to $5,000 per infraction.  This amount shall be in addition to any obligations arising from other portions of this Agreement and is not intended to limit in any way Contractor's other obligations.

17. Defense and Indemnity: To the fullest extent possible under Applicable Law, Contractor will defend and indemnify the Company, and its Customers, Affiliates, directors, officers, and employees, and its affiliates' directors, officers and employees (" Indemnified Parties ") from and against any and all claims, demands, debts, causes of action, liabilities, costs, awards, penalties, fines, judgments, damages, court costs, losses and expenses, including actual attorneys' and consultants' fees and costs (collectively, " Claims ") to the extent arising out of or resulting from (a) the performance of or failure to perform the Services and provide the Deliverables, including performing or providing defective workmanship or Faulty Services, or (b) breach of the representations and warranties or contractual obligations of Contractor under this Agreement, including violations of or failure to comply with any Applicable Law, or (c) allegations that the Company's engagement of Contractor interfered with the ability of any other Company contractor to fulfill such other contractor's obligations, or (d) any claim by, or any act or omission of, Contractor, a Subcontractor, and anyone directly or indirectly employed by any of them, or by anyone for whose acts they may be liable and for which Contractor is responsible (each a " Contractor Party ", and collectively, " Contractor Parties "), or (e) a claim by, or on behalf of, Personnel for any compensation, stock, options, or other rights or benefits provided to Company employees or to employees of Company affiliates, or (f) an allegation that use of the Services or Deliverables infringe or misappropriate any third party's rights, including Intellectual Property Rights. Contractor's indemnity and defense obligations will apply regardless of the fault or negligence of the Contractor Parties, whether or not the Claim has any merit. Notwithstanding the foregoing, in no event will Contractor be obligated to indemnify or defend any Indemnified Party for any claims to the extent that such claims are directly a result of the gross negligence or willful misconduct of the Company.

    a.    Defense: Contractor will immediately defend (with legal counsel reasonably satisfactory to the Company), the Indemnified Parties from and against any and all Claims. Such defense obligation will arise immediately upon written notice of Claim being provided to Contractor, and includes the obligation to defend with respect to matters related to investigation and resolution of Claims. It is the Parties' intention that any of the Indemnified Parties will be entitled to obtain summary adjudication of Contractor's duty to defend and/or duty to indemnify the Indemnified Parties at any time. Contractor's duty to defend the Indemnified Parties includes without limitation the defense of the Indemnified Parties against Claims for which any of the Indemnified Parties may be strictly liable and applies whether or not the issue of Contractor's liability, breach of this Agreement or other obligation or fault has been finally determined.

    b.    Other Rights: The indemnity and defense obligations set forth in this Section 17 (Defense and Indemnity) will not be construed as to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist under this Agreement and/or under Applicable Law as to any party described in this Section 17 (Defense and Indemnity). In Claims against any Indemnified Party by a Contractor Party, the indemnification obligations will not be limited by a limitation on the amount or type of damages, compensation or benefits payable by or for Contractor or any Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

_DN_

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

    c. Control of Defense: Contractor's counsel retained to defend against any Claim in which the Company or any Indemnified Party is a named defendant will be experienced and knowledgeable in the legal issues and principles relating to such Claim. Contractor may not retain any counsel to defend against any such Claim if that counsel has a legal conflict with the Company. In addition, the Company may, in its sole discretion and at Contractor's sole cost, terminate the representation of any counsel chosen by Contractor and retain counsel of the Company's choosing in connection with the defense of any such Claim. Contractor shall be solely responsible for any and all charges, costs, and fees of any counsel retained by the Company. The Company will have the right and obligation to control and participate in the defense of any such Claim concerning matters that relate to the Company. Contractor may not settle any such Claim without first consulting in good faith with the Company. Under no circumstance may Contractor obligate the Company or its customers under any such settlement without first obtaining the Company's consent, which consent will not be unreasonably withheld.

18. Insurance: Contractor shall carry and maintain the polices set forth in the attachment entitled "Insurance Requirements", as well as any and all other forms of insurance that are required by all applicable local, state, provincial and/or federal law, including, by way of example but not limitation, worker's' disability compensation, automobile liability and no-fault protection, general liability and property damage liability, and excessive liability/umbrella coverage ("Insurance Policies"). In addition, Contractor shall maintain and carry Insurance Policies issued by insurance companies with an A.M. Best Insurance Rating of not less than A that are duly licensed and authorized to do business in the Contract Area protecting against loss, liability or expenses resulting from personal injuries, death, disease or property damage arising in any manner in connection with its activities hereunder.

Contractor shall supply copies of all such Insurance Policies to the Company upon its request. The Insurance Policies shall be endorsed to prohibit cancellation or amendment to the Insurance Policies, except upon thirty (30) days prior written notice to the Company, and all such Insurance Policies shall remain in force at the sole cost and expense of Contractor, for a period of one (1) year following the expiration and/or termination of this Agreement for any reason (or until the completion of the Services, whichever is later). If any part of said Insurance Policies lapse, expire, and/or current certificates are not forwarded to the Company, Contractor shall immediately cease all work until all required Insurance Policies are fully restored and/or reinstated, and the current certificates are filed with the Company. Contractor shall reimburse and/or indemnify the Company for any losses related to any delay caused by Contractor's failure to comply with this paragraph and Contractor agrees and permits the Company to deduct or offset any amounts determined, in the Company's sole discretion, to have been caused by the failure to comply with this paragraph from any amounts due and owing to Contractor.

19. Independent Contractor:

    a. Contractor acknowledges that it is an independent contractor, has no authority to bind the Company (except as specifically authorized in this Agreement) and agrees that it will not represent itself, or suffer or permit its officers, directors, agents, subcontractors and/or employees to represent themselves to any other party as having such authority. No acts or assistance given by the Company, nor use by the Contractor of the Company's uniforms, forms or any other materials, shall be construed to alter this relationship. The Contractor shall have no authority to endorse the Company's checks, or commercial paper, or to carry any vendor, credit, bank or other accounts in the name of the Company;

    b. Contractor agrees and acknowledges that nothing herein shall deem Contractor or any of Contractor's employees or independent contractors to be an employee of the Company, and that no Contractor Worker (as defined in paragraph 17), including but not limited to Contractor, Contractor's employees or Contractor's independent contractors will make any employment-related claims (including unemployment claims or workers' compensation claims) against the Company. Should any Contractor Workers make any such claim against the

*Da*
(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

Company, Contractor shall defend, indemnify and hold harmless the Company in accordance with the requirements of paragraph 17;

c. All expenses for the operation of Contractor's offices, administrators, infrastructure, technology and activities as an independent contractor, including but not limited to, office, rent, supplies, clerical assistance, employees and representatives' salaries, telephone and telegraph costs, licenses and taxes, insurance, and the like, shall be borne by Contractor and Contractor shall be solely responsible for the payment of same. Contractor shall also be solely responsible for any loss arising out of or related to injuries suffered by any party in the course of scope of performing Services. Contractor agrees that the Company shall have no liability to Contractor, or any person employed or engaged by Contractor, such as a subcontractor, for any of the foregoing items, or any other type of liability whatsoever. Contractor agrees that it will conduct its activities on behalf of the Company in strict compliance with all state, provincial or federal laws and local ordinances applicable to Contractor;

d. Contractor shall comply with any and all applicable safety rules and regulations governing the Services, including, but not limited to any and all Federal State Occupational Health and Safety standards and any and all applicable local laws, ordinances or rules. Prior to commencement of the Services, Contractor shall inspect the work site(s) at which the Services are to be performed and shall immediately notify the Company of any unsafe condition with respect to the Services and/or other services to be provided by the Contractor to the Company. Contractor shall be solely responsible for eliminating or guarding safety hazards created by the work of the Contractor. Contractor shall require all of its agents, representatives, and employees to work in a safe manner and cooperate in maintaining rules, policies, and procedures relating to safety and health. In this regard, Contractor shall employ or cause to be employed only persons who are fit and skilled in the work assigned to have been properly trained in the rules, policies, and procedures relating to their safety and health in the work assigned;

e. Upon reasonable notice to the Contractor, the Company reserves the right, but not the duty, to audit Contractor's employee screening records. Documentation in form and content reasonably acceptable to the Company will be provided upon request;

f. The Company reserves the right to reject or deny access to any work site to individuals who do not satisfy the employee screening requirements of the Company;

g. Contractor shall maintain adequately experienced and cooperative supervisory personnel, acceptable and satisfactory to the Company in its sole discretion, at the work site at all times. Contractor shall provide a full-time, on site job manager, superintendent, or designated person for each project, acceptable and satisfactory to the Company in its sole discretion, who shall be duly authorized to act for and on behalf of Contractor in all matters pertaining to the project and the Services;

h. Contractor understands the Company is an equal opportunity employer and therefore maintains a policy which prohibits unlawful discrimination based on race, color, creed, sex, age, national origin, physical handicap, disability or any other consideration made unlawful by federal, state or local laws. All such discrimination is unlawful, and Contractor agrees during the term of this Agreement and during the performance of the Services that Contractor will strictly adhere to such Company policy in Contractor's employment practices. Contractor shall comply with all provisions of this Agreement and all applicable federal, state, and local laws and regulations now existing and as may be amended or modified. Contractor represents that any person assigned to perform work hereunder shall meet the employment eligibility requirements of all applicable immigration and naturalization laws including, but not limited to, the Immigration Reform and Control Act of 1986, as amended. Contractor specifically acknowledges that the Immigration Reform and Control Act of 1986 prohibits the hiring and continued employment of unauthorized aliens, requires verification and record keeping with respects to the identity and eligibility for employment, and prohibits discrimination on the basis of national origin, United

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

States citizenship, or intending citizen status. Contractor further agrees the Company has the right (but not the duty) to permit the Company to inspect personnel records to verify compliance with the Immigration Reform and Control Act of 1986; and

i.  No relationship of any kind, including a third-party beneficiary relationship, shall exist in favor of Contractor or any of its subcontractors or suppliers by virtue of this Agreement or otherwise against the Indemnified Parties. In this regard, Contractor waives any and all claims it may have against the Indemnified Parties. Further, Contractor agrees that it will require that its subcontractors and suppliers, and any contracts entered into by them with third-parties for the performance of the Services, waive any and all claims against the Indemnified Parties for any and all work or supplies provided in the Contract Area.

20. Confidential Information: Contractor hereby agrees that all Confidential Information is to be considered trade secrets of the Company and shall be kept confidential and used by Contractor only in connection with the performance of its duties pursuant to this Agreement and/or Customer Addendum.

As used in this Agreement, "Confidential Information" means any and all information, systems, strategies, data, files, software, intellectual property, photographs, training and/or processes of a confidential or proprietary nature (as determined by the Company in its sole discretion and whether or not specifically labeled or identified as "confidential"), in any form or medium, that relates to the business, products, services and/or research and/or development of the Company's business and/or its respective suppliers, distributors, customers, independent contractors and/or other business relations, including, but not limited to all materials loaned, provided to, or otherwise made available to Contractor by the Company, all customer information, all personal information of the customers and all disclosures made to it and not to the general public by or at the direction of the Company, including, without limitation, all technical information concerning the Customer, its components, manufacture and operations.

Contractor agrees that:

a.  Contractor shall not divulge any of the Confidential Information or any other confidential and proprietary information or other trade secrets of the Company to any person other than its employees, and then only to the minimum extent necessary for the performance of its duties under the Agreement,;

b.  Contractor will not reproduce, copy, exhibit or allow anyone else to reproduce, copy or exhibit any portion of the Confidential Information or any other confidential and proprietary information or other trade secrets of the Company received from the Company;

c.  Contractor will not directly or indirectly, at any time do or cause to be done any act or action disputing, attacking or in any way impairing the Company's right, title and interest in the Confidential Information or any other confidential and proprietary information or trade secrets of the Company;

d.  In the event Contractor is required by law to disclose any Confidential Information, such Contractor shall promptly notify the Company in writing, which notification shall include the nature of the legal requirement and the extent of the required disclosure, and shall cooperate with the Company to preserve the confidentiality of such information consistent with applicable law;

e.  Contractor further agrees to take all appropriate steps (and to cause each of its, his or her employees, subcontractors and/or affiliates to take all appropriate steps) to safeguard such Confidential Information and to protect it against disclosure, misuse, espionage, loss and theft; and

*Dn*
_____
(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

      f.  Provisions of this section shall survive the termination of this Agreement for three (3) years from the date of termination.

21. Noncompetition and No solicitation: Contractor agrees that: (1) while providing Services to the Company; (2) during the term of this Agreement; and (3) for a period of six (6) months after termination of this Agreement (the "Restricted Period"), Contractor will not, other than pursuant to this Agreement, engage in the performance of or provide similar services as that provided by the Company, either directly or indirectly (as a contractor or otherwise), for any individual or entity, including but not limited to any Customers, in the Contract Area or within one hundred (100) miles of the Contract Area. During the Restricted Period, Contractor shall not directly or indirectly:

      a.  Interfere in any way with the relationship between the Company and any employee of the Company;

      b.  Hire any current employee of the Company or former employee of the Company within six (6) months after such person ceases to be an employee of the Company;

      c.  Interfere in any way with the relationship between the Company and any employee, customer, supplier, licensee or business relation.; and

      d.  Directly or indirectly acquire, or attempt to acquire, an interest in any business with which the Company has entertained discussions relating to the acquisition of such business by the Company.

22. Additional Acknowledgements: Contractor acknowledges that the provisions of Section 20 and Section 21 are material provisions of this Agreement and are in consideration of the Company entering into this Agreement, as well as for other additional good and valuable consideration as set forth in this Agreement and do not unreasonably impose limitations on Contractor's ability to earn a living. Contractor acknowledges that the business of the Company and its Subsidiaries will be conducted throughout North Carolina, South Carolina, Kentucky, Missouri, Tennessee, Alabama, Georgia, Florida, and other jurisdictions where the Company conducts business during the term of this Agreement. Contractor agrees and acknowledges that the potential harm to the Company of the non-enforcement of any provision of Section 20 and Section 21 outweighs any potential harm to Contractor of its enforcement of Section 20 an Section 21 by injunction or otherwise.

      a.  In the event of a breach by Contractor or its officers or employees of the obligations imposed by Section 20 or Section 21, the Company shall be entitled to liquidated damages of $1,000,000 plus any other remedies available by law or in equity, as well as to injunctive relief pursuant to the provisions of this Agreement.

23. Entire Understanding: This Agreement contains the entire understanding between and among the parties hereto concerning the matters set forth herein and supersedes all prior understanding and agreements verbal or written between and among them or their predecessors respecting the subject matter of this Agreement and any such prior agreements are hereby terminated and all the rights and obligations of the parties thereunder, performed or unperformed, are hereby cancelled. The person signing on behalf of Contractor represents that he/she has full authority to bind Contractor to the terms and conditions of this Agreement. This Agreement will not be binding upon the Company until signed by an authorized representative of the Company.

24. Assignment: This Agreement and all of the provisions hereof shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns, except that neither this Agreement nor any of the rights, interests or obligations hereunder may be assigned or delegated by Contractor without the prior written consent of the Company. The Company may assign its rights and obligations under this Agreement at any time upon prior written notice to Contractor.

_____
(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

25. This Agreement is valid and binding from the date of signature of the authorized Company representative; until such time that the agreement is terminated. Either Party shall have the right to terminate this Agreement for any reason, or for no reason at all, upon thirty (30) days prior written notice to the other Party. In addition, the Company shall have the additional right to terminate this Agreement upon fourteen (14) days prior written notice to Contractor, in the event that the Contractor shall be in default of its obligations and duties hereunder.

Without limiting the foregoing, and notwithstanding anything in this Agreement to the contrary, upon termination or expiration of this Agreement, whether such termination or expiration is with or without cause, the amount which the Company is otherwise obligated to pay to Contractor shall be reduced by an amount equal to the sum of: (a) all amounts Contractor then owes to Company; and (b) a reserve, in an amount to be determined by the Company, in its sole discretion, for any claims then outstanding or reasonable anticipated, against Contractor or the Company, or any person or persons or engaged by Contractor, arising out of the Services, this Agreement and/or Contractor's activities hereunder. Contractor shall not be entitled to all or any portion of the amounts withheld unless and until the claims against it and/or the Company are finally and definitely settled and released and liability disclaimed with respect to both Contractor and the Company, as determined by the Company in its sole discretion. In such event, Contractor will be entitled only to that portion of the amount withheld that is not paid or payable to the Company or other party in connection with the disposition of the claim against Contractor. In no event shall Contractor be entitled to payment for any work required by the Agreement but not completed in full or for any interest on any portion of any amount withheld pursuant to this paragraph or any other provision of this Agreement.

26. Continuation of Obligations: Except as otherwise provided herein, the obligations of Contractor under this Agreement hereof shall survive the termination of this Agreement, and shall continue for such period of time as Contractor, or the Company, or either of them, shall have any potential liability to any third party or entity as a result of any of the activities contemplated hereunder.

27. Conflicts: This Agreement shall be deemed to be made under and shall be construed in accordance with the laws of the State of North Carolina, exclusive of any choice of law or conflicts rules. Any and all claims arising out of this Agreement shall only be submitted to, and Contractor consents to venue only in, state courts located within the County of Mecklenburg, State of North Carolina or federal courts located within the Western District of North Carolina. If any terms hereof shall be determined to be null and void, ineffectual, invalid, or unenforceable in any court, the remaining terms hereof shall continue in full force and effect.

28. Severability: Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement or the application of any such provision to any person or circumstance shall be held to be prohibited by or invalid, illegal or unenforceable under applicable law in any respect by a court of competent jurisdiction, such provision shall be ineffective only to the extent of such prohibition or invalidity, illegality or unenforceability, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

29. Modification: No modification or amendment hereto shall be effective unless made in writing, signed by the Party to be charged.

30. No Waiver: The failure of either Party to enforce, at any time or for any period of time, any provision of this Agreement shall not be construed as a waiver of said provision or the right of that Party thereafter to enforce the provision.

31. Counterparts: This Agreement is made in multiple counterparts, each of which shall constitute an original hereof.

32. Force Majeure: The Company shall not be responsible for any delays caused by power or telephone companies, governmental authorities, or other third-parties on whose poles or in whose trenches or

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

conduit the Services must take place. Neither Party hereto shall be responsible for any delay caused by any events that prevent the management of the project and the contract Services from being performed on a reasonably continuous basis, including without limitation, unavoidable casualty, delays in delivery of materials, strikes, embargoes, government orders (including those of the franchising authority), acts of civil or military authorities, acts by carriers or other third-parties (excluding the Contractor's subcontractor(s)), or emergency conditions (including weather conditions) incompatible with safety or good quality workmanship (collectively "Unavoidable Acts"). If such Unavoidable Acts occur, the Party injured by the other's inability to perform may elect to: a) terminate this Agreement immediately; and or b) suspend this Agreement for the duration of the Unavoidable Acts, and then resume performance under this Agreement. The Party experiencing the Unavoidable Acts shall cooperate with and assist the injured Party in all reasonable ways to minimize the impact of such circumstances on the injured Party, including assisting in locating and arranging for substitute performance of the Services.

33. Ambiguities: The Parties agree that this Agreement has been jointly prepared by them and any rule of construction to the effect that ambiguities are resolved against the drafting Party shall not apply to the interpretation and construction of this Agreement.

34. Waiver of Jury Trial: Contractor irrevocably waives any and all right to a trial by jury.

35. Arbitration of Certain Disputes:  Notwithstanding anything to the contrary contained in this Agreement, at the Company's sole option and in its sole discretion, claims, disputes and other matters in controversy arising out of or relating to this Agreement and/or the Services, or the performance or breach thereof, may be decided by arbitration. If the Company elects arbitration, then it shall be mandatory on Contractor. Such arbitration shall be conducted in accordance with the construction industry arbitration rules of the American Arbitration Association then applicable, subject to modifications set forth herein, or, at the Company's option and in its sole discretion, an arbitration tribunal other than the American Arbitration Association may be selected to administer the arbitration.

    a. This section shall not be construed to require the Company, under any circumstances, to submit to arbitration;

    b. If arbitration is selected by the Company, then the arbitrator(s) may decide only the issues presented to them and may not vary or disregard any terms of this Agreement or related documents;

    c. Unless the Company decides upon an alternative locality at its option and in its sole discretion, the hearing and administrative conferences pertaining to the arbitration shall take place in Mecklenburg County, North Carolina. If the Company so elects a different locality for arbitration proceeding, then it shall furnish written notice thereof to Contractor and the administrative tribunal, which selection shall be binding on the parties hereto and conclusive on the issue of the hearing local;

    d. No documentary evidence shall be admissible in the arbitration hearing unless copies thereof are furnished to the opposing party at least thirty (30) days prior to date of commencement of the hearing. Furthermore, no witness shall be called to testify or heard at the hearing unless that witness is identified in writing to the opposing party at least thirty (30) days prior to the date of commencement of the hearing. The arbitrator shall have no authority to waive or disregard this requirement without written consent of the Company and Contractor; and

    e. This agreement to arbitrate shall be binding upon the Parties and judgment may be entered upon the arbitration award in accordance with applicable law in any court having jurisdiction thereof. The arbitration award is binding upon Contractor's sureties as if such sureties were named and joined in the arbitration proceeding and, at the Company's option, such sureties may be joined as parties therein.

_Dn_

(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

36. Attorneys' Fees: If the Company makes any claim or files suit against Contractor for any loss arising out of or related to this Agreement, or to enforce the provisions of this Agreement, Contractor shall pay all of the Company's actual attorneys' fees and costs related to such claim or suit.

37. Notices: Any notice given, report or other communication required or permitted to be given hereunder shall be in writing unless some other method of giving such notice, report or other communication is accepted by the Party to whom it is given, and shall be given by being delivered by personal delivery or by first-class mail, with postage prepaid or certified mail, return receipt requested, postage paid to the addresses of the Parties set forth below their signatures hereto. The address of a Party hereto may be changed by giving notice of the new address to the other party hereto.

38. Each Party to this Agreement represents and warrants that the execution, delivery and performance of this Agreement and the consummation of the transaction provided in this agreement have been duly authorized by all necessary action(s) of the respective person or entity, including receipt of approvals from any governing board of directors, and that the person executing this Agreement on its behalf, if applicable, has the full capacity to bind that entity. The Parties acknowledge that they have been given adequate time to consider this Agreement and that they were advised to consult with an independent attorney prior to signing this Agreement and that they have in fact consulted with counsel of their own choosing prior to executing this Agreement. The Parties agree that they have read this Agreement and understand the content herein, and freely and voluntarily assent to all of the terms herein.

IN WITNESS WHEREOF, the Company and Contractor have caused this Agreement to be duly executed on the latest day and year listed below:

**Company:**

Hyper Networks, Inc.
12249 Nations Ford Rd
Pineville, NC 28134

_____
(Printed Name)

_____
(Signature)

_____
(Date)

**Contractor:**

_Nielsen Advance Solutions_
(Contractor Company Name)

_924 Chance Way Sevierville, TN, 37876_
(Business Address)

_David Nielsen_
(Printed Name and Title)

_[signature]_
(Signature)

_7/2/21_
(Date)

_DN_
(Contractor Initials)

Hyper Networks, Inc. Contractor Master Services Agreement v.2021

36. Attorneys' Fees: If the Company makes any claim or files suit against Contractor for any loss arising out of or related to this Agreement, or to enforce the provisions of this Agreement, Contractor shall pay all of the Company's actual attorneys' fees and costs related to such claim or suit.

37. Notices: Any notice given, report or other communication required or permitted to be given hereunder shall be in writing unless some other method of giving such notice, report or other communication is accepted by the Party to whom it is given, and shall be given by being delivered by personal delivery or by first-class mail, with postage prepaid or certified mail, return receipt requested, postage paid to the addresses of the Parties set forth below their signatures hereto. The address of a Party hereto may be changed by giving notice of the new address to the other party hereto.

38. Each Party to this Agreement represents and warrants that the execution, delivery and performance of this Agreement and the consummation of the transaction provided in this agreement have been duly authorized by all necessary action(s) of the respective person or entity, including receipt of approvals from any governing board of directors, and that the person executing this Agreement on its behalf, if applicable, has the full capacity to bind that entity. The Parties acknowledge that they have been given adequate time to consider this Agreement and that they were advised to consult with an independent attorney prior to signing this Agreement and that they have in fact consulted with counsel of their own choosing prior to executing this Agreement. The Parties agree that they have read this Agreement and understand the content herein, and freely and voluntarily assent to all of the terms herein.

IN WITNESS WHEREOF, the Company and Contractor have caused this Agreement to be duly executed on the latest day and year listed below:

**Company:**

Hyper Networks, Inc.
12249 Nations Ford Rd
Pineville, NC 28134

Kali Parks
(Printed Name)

_Kali Parks (signature)_
(Signature)     7/6/2021

(Date)

**Contractor:**

Nielsen Advance Solutions
(Contractor Company Name)

924 Chance Way Sevierville, TN, 37876
(Business Address)

David Nielsen
(Printed Name and Title)

_D. N. (signature)_
(Signature)

7/2/21
(Date)

_DN_
(Contractor Initials)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**, <br><br> Plaintiffs, <br><br> **vs**. <br><br> **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC**, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Civil Action** <br><br> **File No. _____** |

**EXHIBIT "B"
TO JOINT NOTICE OF AND PETITION FOR REMOVAL**



North Dakota
*Secretary of State*

Login

Home

Search

Forms

Lists

Data List Requests

# Business Search

Aspen

Advanced

Results: 1

| Form Info | SOS Contro |
|---|---|
| ASPEN SPECIALTY INSURANCE COMPANY *Insurance Company* | 00000 |

## ASPEN SPECIALTY INSURANCE COMPANY

Insurance Company

Request Certificate

| | |
|---|---|
| *Filing Type* | Insurance Company |
| *Status* | Active |
| *Standing - AR* | Good |
| *Standing - RA* | Good |
| *Standing - Other* | Good |
| *Formed In* | NORTH DAKOTA |
| *Term of Duration* | Perpetual |
| *Initial Filing Date* | 09/24/1996 |
| *Principal Address* | 175 CAPITAL BLVD<br>ROCKY HILL, CT 06067-3914 |
| *Mailing Address* | 175 CAPITAL BLVD<br>ROCKY HILL, CT 06067-3914 |
| *Commercial Registered Agent* | CORPORATION SERVICE COMPANY<br>600 S 2ND ST<br>STE 155<br>BISMARCK, ND 58504 |

View History

© 2023 ND Secretary of State

Contact
Security

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE** | ) | |
| **COMPANY, LEXINGTON INSURANCE** | ) | **Civil Action** |
| **COMPANY, OLD REPUBLIC UNION** | ) | |
| **INSURANCE COMPANY,** | ) | **File No. _____** |
| **SCOTTSDALE INSURANCE** | ) | |
| **COMPANY, TOKIO MARINE KILN** | ) | |
| **SYNDICATES LTD.,** and **IQUW** | ) | |
| **SYNDICATE MANAGEMENT** | ) | |
| **LIMITED,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **HN W-DOWN INC. f/k/a HYPER** | ) | |
| **NETWORKS, INC.** and **NIELSEN** | ) | |
| **ADVANCE SOLUTIONS LLC d/b/a** | ) | |
| **NAS, LLC,** | ) | |
| | ) | |
| Defendants. | ) | |

## EXHIBIT "C"
## TO JOINT NOTICE OF AND PETITION FOR REMOVAL

Delaware.gov                                                                    Governor | General Assembly | Courts | Elected Officials | State Agencies

**Department of State: Division of Corporations**

Allowable Characters

| HOME | Entity Details |
|------|----------------|

<div align="center"><span style="color:red">**THIS IS NOT A STATEMENT OF GOOD STANDING**</span></div>

| File Number: | **623620** | Incorporation Date / Formation Date: | **3/31/1965** (mm/dd/yyyy) |
|---|---|---|---|
| Entity Name: | **LEXINGTON INSURANCE COMPANY** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **CORPORATION SERVICE COMPANY** | | |
|---|---|---|---|
| Address: | **251 LITTLE FALLS DRIVE** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19808** |
| Phone: | **302-636-5401** | | |

<span style="color:red">Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.</span>

Would you like ⃝ Status ⃝ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map | privacy | about this site | contact us | translate | delaware.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**, | ) ) ) ) ) ) ) ) ) ) | **Civil Action**<br><br>**File No. _____** |
| Plaintiffs, | ) ) | |
| **vs**. | ) ) | |
| **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC**, | ) ) ) ) ) | |
| Defendants. | ) | |

**EXHIBIT "D"
TO JOINT NOTICE OF AND PETITION FOR REMOVAL**



# GEORGIA CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE

# BRAD RAFFENSPERGER

**HOME (/)**

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | **OLD REPUBLIC UNION INSURANCE COMPANY** | Control Number: | **J551771** |
| Business Type: | **Foreign Insurance Company** | Business Status: | **See Notepad** |
| Business Purpose: | **NONE** | | |
| Principal Office Address: | **307 N MICHIGAN AVE, CHICAGO, IL, 60601-5311, USA** | Date of Formation / Registration Date: | **8/15/1985** |
| Jurisdiction: | **Illinois** | Last Annual Registration Year: | **2016** |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | **CORPORATION SERVICE COMPANY** |
| Physical Address: | **40 TECHNOLOGY PARKWAY SOUTH, SUITE 300, NORCROSS, GA, 30092, USA** |
| County: | **Gwinnett** |

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| ALDO C ZUCARO | CEO | 307 NORTH MICHIGAN AVENUE, CHICAGO, IL, 60601, USA |
| KARL MUELLER | CFO | 307 NORTH MICHIGAN AVE, CHICAGO, IL, 60601, USA |
| SPENCER LEROY III | Secretary | 307 NORTH MICHIGAN AVENUE, CHICAGO, IL, 60601, USA |

Back

Filing History          Name History

Return to Business Search

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**,<br><br>Plaintiffs,<br><br>vs.<br><br>**HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC**,<br><br>Defendants. | **Civil Action**<br><br>**File No. _____** |

**EXHIBIT "F"**
**TO JOINT NOTICE OF AND PETITION FOR REMOVAL**



**Thu Aug 31 2023**

| | |
|---|---|
| **Entity#:** | 704061 |
| **Filing Type:** | CORPORATION FOR PROFIT |
| **Original Filing Date:** | 06/30/1987 |
| **Location:** | COLUMBUS |
| **Business Name:** | SCOTTSDALE INSURANCE COMPANY |

| | |
|---|---|
| **Status:** | Active |
| **Exp. Date:** | - |

# Agent/Registrant Information

CORPORATION SERVICE COMPANY
3366 RIVERSIDE DRIVE, SUITE 103
UPPER ARLINGTON OH 43221
04/18/2022
Active

# Filings

| Filing Type | Date of Filing | Document ID |
|---|---|---|
| DOMESTIC ARTICLES/FOR PROFIT | 06/30/1987 | G187_1300 |
| MERGER/DOMESTIC | 09/17/1987 | G244_0375 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 09/17/1987 | G244_0375 |
| DOMESTIC/AMENDED RESTATED ARTICLES | 09/17/1987 | G244_0375 |
| CANCELLED BY TAX DEPT W/NOTIFICATION | 12/29/1989 | 000000068133 |
| CANCELLED IN ERROR BY SECRETARY OF STATE | 09/17/1990 | G965_0918 |
| DOMESTIC CONTINUED EXISTENCE LETTER | 09/09/1993 | 000000068134 |
| DOMESTIC CONTINUED EXISTENCE | 11/08/1993 | 000000068135 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 11/19/1993 | 9328_1290 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 10/04/2001 | 200128201660 |
| DOMESTIC AGENT ADDRESS CHANGE | 04/07/2003 | 200309801056 |


| DOMESTIC AGENT ADDRESS CHANGE | 12/24/2007 | 200736000024 |
| DOMESTIC AGENT ADDRESS CHANGE | 12/24/2007 | 200736000642 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 01/22/2014 | 201402401737 |
| DOMESTIC AGENT ADDRESS CHANGE | 11/10/2016 | 201632602630 |
| MERGER/DOMESTIC | 10/01/2018 | 201824900252 |
| DOMESTIC AGENT ADDRESS CHANGE | 04/18/2022 | 202210801594 |

# Prior Business Names

| Prior Business Name | Effective Date |
| --- | --- |
| NMW CORPORATION | 09/17/1987 |



UNITED STATES OF AMERICA
STATE OF OHIO
OFFICE OF SECRETARY OF STATE

*I, Frank LaRose, Secretary of State of the State of Ohio, do hereby certify that this is a list of all records approved on this business entity and in the custody of the Secretary of State.*

*Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 31st of August, A.D. 2023*

*Ohio Secretary of State*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**, | ) ) ) ) ) ) ) ) ) ) | **Civil Action**<br><br>**File No. _____** |
| Plaintiffs, | ) ) | |
| **vs**. | ) ) | |
| **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC,** | ) ) ) ) ) | |
| Defendants. | ) | |

**EXHIBIT "G"
TO JOINT NOTICE OF AND PETITION FOR REMOVAL**

 **GOV.UK**

# Find and update company information

Companies House does not verify the accuracy of the information filed
(http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)
Advanced company search (/advanced-search)

TOKIO MARINE KILN SYNDICATES LIMITED

Company number **00729671**

Follow this company

File for this company (https://beta.companieshouse.gov.uk/company/00729671/authorise?
return_to=/company/00729671)

— Overview (https://beta.companieshouse.gov.uk/company/00729671)

— Filing history (https://beta.companieshouse.gov.uk/company/00729671/filing-history)

— People (https://beta.companieshouse.gov.uk/company/00729671/officers)

— Charges (https://beta.companieshouse.gov.uk/company/00729671/charges)

— More (https://beta.companieshouse.gov.uk/company/00729671/more)

Registered office address
20 Fenchurch Street, London, EC3M 3BY

Company status
Active

Company type
Private limited Company

Incorporated on
12 July 1962

# Accounts

Next accounts made up to **31 December 2023**
due by **30 September 2024**

Last accounts made up to **31 December 2022**

# Confirmation statement

Next statement date **31 January 2024**
due by **14 February 2024**

Last statement dated **31 January 2023**

# Nature of business (SIC)

- 65110 - Life insurance
- 65120 - Non-life insurance

# Previous company names

| Name | Period |
|------|--------|
| RJ KILN & CO. LIMITED | 23 Oct 2003 - 10 Nov 2014 |
| RJ KILN & CO. (NO.1) LIMITED | 17 Oct 2003 - 23 Oct 2003 |
| R.J.KILN & CO LIMITED | 12 Jul 1962 - 17 Oct 2003 |

Tell us what you think of this service (https://www.smartsurvey.co.uk/s/getcompanyinformation/) Is there anything wrong with this page? (/help/feedback?sourceurl=https://find-and-update.company-information.service.gov.uk/company/00729671)

Policies Link opens in new tab

Cookies (https://beta.companieshouse.gov.uk/help/cookies)

Contact us Link opens in new tab

Accessibility statement (https://beta.companieshouse.gov.uk/help/accessibility-statement)

Developers Link opens in new tab

Built by Companies House                                    © Crown copyright

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE** ) | |
| **COMPANY, LEXINGTON INSURANCE**) | **Civil Action** |
| **COMPANY, OLD REPUBLIC UNION** ) | |
| **INSURANCE COMPANY,** ) | **File No. _____** |
| **SCOTTSDALE INSURANCE** ) | |
| **COMPANY, TOKIO MARINE KILN** ) | |
| **SYNDICATES LTD.,** and **IQUW** ) | |
| **SYNDICATE MANAGEMENT** ) | |
| **LIMITED,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| **vs.** ) | |
| ) | |
| **HN W-DOWN INC. f/k/a HYPER** ) | |
| **NETWORKS, INC.** and **NIELSEN** ) | |
| **ADVANCE SOLUTIONS LLC d/b/a** ) | |
| **NAS, LLC,** ) | |
| ) | |
| Defendants. ) | |

**EXHIBIT "H"**
**TO JOINT NOTICE OF AND PETITION FOR REMOVAL**

 **GOV.UK**

# Find and update company information

Companies House does not verify the accuracy of the information filed (http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

Advanced company search (/advanced-search)

IQUW SYNDICATE MANAGEMENT LIMITED

Company number **00426475**

Follow this company

File for this company (https://beta.companieshouse.gov.uk/company/00426475/authorise?return_to=/company/00426475)

— Overview (https://beta.companieshouse.gov.uk/company/00426475)

— Filing history (https://beta.companieshouse.gov.uk/company/00426475/filing-history)

— People (https://beta.companieshouse.gov.uk/company/00426475/officers)

— Charges (https://beta.companieshouse.gov.uk/company/00426475/charges)

— Registers (https://beta.companieshouse.gov.uk/company/00426475/registers)

— More (https://beta.companieshouse.gov.uk/company/00426475/more)

Registered office address
30 Fenchurch Street, London, England, EC3M 3BD

Company status
Active

Company type
Private limited Company

Incorporated on
30 December 1946

# Accounts

Next accounts made up to **31 December 2023**
due by **30 September 2024**

Last accounts made up to **31 December 2022**

# Confirmation statement

Next statement date **1 May 2024**
due by **15 May 2024**

Last statement dated **1 May 2023**

# Nature of business (SIC)

- 65120 - Non-life insurance

# Previous company names

| Name | Period |
| --- | --- |
| ERS SYNDICATE MANAGEMENT LIMITED | 26 Mar 2014 - 31 Aug 2021 |
| EQUITY SYNDICATE MANAGEMENT LIMITED | 06 Jan 2006 - 26 Mar 2014 |
| COX SYNDICATE MANAGEMENT LIMITED | 11 Nov 1999 - 06 Jan 2006 |
| CHRISTOPHERSON HEATH LIMITED | 22 Dec 1986 - 11 Nov 1999 |
| EQUITY UNDERWRITING AGENCIES LIMITED | 31 Dec 1977 - 22 Dec 1986 |
| HAINAULT UNDERWRITING AGENCIES LIMITED | 31 Dec 1976 - 31 Dec 1977 |
| DIAMEX LIMITED | 30 Dec 1946 - 31 Dec 1976 |

Tell us what you think of this service (https://www.smartsurvey.co.uk/s/getcompanyinformation/) Is there anything wrong with this page? (/help/feedback?sourceurl=https://find-and-update.company-information.service.gov.uk/company/00426475)

Policies Link opens in new tab

Cookies (https://beta.companieshouse.gov.uk/help/cookies)

Contact us Link opens in new tab

Accessibility statement (https://beta.companieshouse.gov.uk/help/accessibility-statement)

Developers Link opens in new tab

Built by Companies House

© Crown copyright

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**, | ) ) ) ) ) ) ) ) ) ) | **Civil Action**<br><br>**File No. _____** |
| Plaintiffs, | ) ) | |
| **vs**. | ) ) | |
| **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC**, | ) ) ) ) | |
| _____Defendants._____ | ) | |

**EXHIBIT "I"
TO JOINT NOTICE OF AND PETITION FOR REMOVAL**



# GEORGIA CORPORATIONS DIVISION

**GEORGIA SECRETARY OF STATE**

# BRAD RAFFENSPERGER

**HOME (/)**

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | **HN W-Down Inc** | Control Number: | **18035141** |
| Business Type: | **Foreign Profit Corporation** | Business Status: | **Withdrawn** |
| NAICS Code: | **Construction** | NAICS Sub Code: | **Power and Communication Line and Related Structures Construction** |
| Principal Office Address: | **12249 Nations Ford Road, Pineville, NC, 28134, USA** | Date of Formation / Registration Date: | **3/15/2018** |
| Jurisdiction: | **Florida** | Last Annual Registration Year: | **2023** |
| Dissolved Date: | **04/07/2023** | | |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | **Kali Rae Parks** |
| Physical Address: | **6920 Peachtree Industrial Blvd, Norcorss, GA, 30071, USA** |
| County: | **Gwinnett** |

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| Patrick Chung | CEO | 12249 Nations Ford Road, Ste. 102, Pineville, NC, 28134, USA |
| Patrick Chung | CFO | 12249 Nations Ford Road, Ste. 102, Pineville, NC, 28134, USA |
| Patrick Chung | Secretary | 12249 Nations Ford Road, Ste. 102, Pineville, NC, 28134, USA |

Back

Filing History          Name History

Return to Business Search

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **ASPEN SPECIALTY INSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, OLD REPUBLIC UNION INSURANCE COMPANY, SCOTTSDALE INSURANCE COMPANY, TOKIO MARINE KILN SYNDICATES LTD.**, and **IQUW SYNDICATE MANAGEMENT LIMITED**, <br><br> Plaintiffs, <br><br> **vs.** <br><br> **HN W-DOWN INC. f/k/a HYPER NETWORKS, INC.** and **NIELSEN ADVANCE SOLUTIONS LLC d/b/a NAS, LLC**, <br><br> Defendants. | **Civil Action** <br><br> **File No. _____** |

**EXHIBIT "J"
TO JOINT NOTICE OF AND PETITION FOR REMOVAL**



**Tre Hargett**
Secretary of State

**Division of Business Services**
**Department of State**
State of Tennessee
312 Rosa L. Parks AVE, 6th FL
Nashville, TN 37243-1102

# Filing Information

Name:   **Nielsen Advance Solutions LLC**

## General Information

| | | | |
|---|---|---|---|
| **SOS Control #** | **000876084** | Formation Locale: | TENNESSEE |
| Filing Type: | Limited Liability Company - Domestic | Date Formed: | 11/22/2016 |
| | 11/22/2016 1:40 PM | Fiscal Year Close | 12 |
| Status: | Active | Member Count: | 1 |
| Duration Term: | Perpetual | | |
| Managed By: | Director Managed | | |

**Registered Agent Address**
DAVID NIELSEN
DAVID NIELSEN
924 CHANCE WAY
SEVIERVILLE, TN  37876-1002

**Principal Address**
DAVID NIELSEN
924 CHANCE WAY
SEVIERVILLE, TN  37876-1002

The following document(s) was/were filed in this office on the date(s) indicated below:

| Date Filed | Filing Description | Image # |
|---|---|---|
| 06/12/2023 | 2022 Annual Report | B1411-6490 |
| 06/02/2023 | Notice of Determination | B1403-2402 |
| 06/15/2022 | 2021 Annual Report | B1235-9185 |
| 06/03/2022 | Notice of Determination | B1223-8454 |
| 01/06/2021 | 2020 Annual Report | B0964-6176 |
| 05/13/2020 | 2019 Annual Report | B0865-9806 |
| Principal Address 1 Changed  From: 671 FLAT CREEK RD  To: 924 CHANCE WAY | | |
| Principal Address 3 Changed  From: DAVID W NIELSEN  To: DAVID NIELSEN | | |
| Principal Postal Code Changed  From: 37876-1016  To: 37876-1002 | | |
| Registered Agent Physical Address 1 Changed  From: 671 FLAT CREEK RD  To: 924 CHANCE WAY | | |
| Registered Agent Physical Postal Code Changed  From: 37876-1016  To: 37876-1002 | | |
| 03/20/2019 | 2018 Annual Report | B0673-7735 |
| 02/11/2018 | 2017 Annual Report | B0496-2197 |
| Principal Address 3 Changed  From: DAVID NIELSEN  To: DAVID W NIELSEN | | |
| 07/16/2017 | 2016 Annual Report | B0416-8517 |
| 06/01/2017 | Notice of Determination | B0404-3726 |

# Filing Information

Name:   **Nielsen Advance Solutions LLC**

11/22/2016   Initial Filing                                                                    B0319-0076

**Active Assumed Names (if any)**                                                  **Date**      **Expires**