# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ARTALIOUS RAYMON SNEED, | **Case No.:** |
| Plaintiff, | |
| v. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| EQUIFAX INFORMATION SOLUTIONS, INC.; EXPERIAN INFORMATION SERVICES, LLC; BANK OZK (CORP) F/K/A BANK OF THE OZARKS, | 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |
| Defendant(s). | |

Plaintiff Artalious Sneed ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendants Equifax Information Solutions, Inc. ("Equifax"), Experian Information Services, LLC ("Experian"), and Bank OZK (Corp), f/k/a Bank of the Ozarks, Inc. ("Ozarks") (referenced collectively as "Defendants").

## INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends that the Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C.

§ 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p ("FCRA") (permitting actions to enforce liability in an appropriate United States District Court).

3.      Venue in the Northern District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District since the Plaintiff resides here.

## PARTIES

4.      Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.      Plaintiff is a natural person who resides in the city of McDonough, Henry County, Georgia.

6.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.     Defendant Ozarks is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2. Defendant Ozarks' principal place of business is located at 18000 Cantrell Road, Little Rock, Arkansas 72223. Defendant Ozarks conducts business in Georgia and can be served at its registered agent in Georgia c/o National Registered Agents, Inc., located at 289 S. Culver Street, Lawrenceville, GA, 30046.

3

10.    During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

11.    Defendant Ozarks regularly engages in the business of lending money to consumers and regularly relies upon the credit reports created by Defendant Equifax and Defendant Experian and other similar CRAs.

12.    During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

13.    Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## FACTUAL BACKGROUND

### *The Role of Credit Reporting Agencies*

14.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

15.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting

methods undermine the public confidence, which is essential to the continual functioning of the banking system.

16.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

17.     The FCRA is intended to ensure CRAs exercise their weighty responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

18.     Defendant Equifax and Defendant Experian (collectively, "the CRA Defendants") are two of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, who regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (i.e., credit reports).

19.     The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit

<u>Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.    The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants, and other information must be independently gathered by the CRA Defendants, or acquired from third party providers, vendors, or repositories, such as computerized reporting services like PACER or Lexis-Nexis.

21.    The CRA Defendants also obtain information from other CRAs, who commonly share information.

22.    The CRA Defendants regularly seek out and procure consumer bankruptcy filing and discharge information on a daily basis, with the intention of including it in the consumer reports that the CRA Defendants sell to third parties for a profit.

23.    The diligence CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in the CRA Defendants subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

24.     The CRA Defendants' unreasonable policies, procedures, and algorithms consistently fail to report consumer information accurately in their credit reports, as required by 15 U.S.C. § 1681e(b).

25.     The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished and reported information, and information contained in their own files.

26.     The vast majority of institutions that offer financial services (such as Defendant Ozarks) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

27.     The information the CRA Defendants include in a consumer report contributes to a consumers' overall creditworthiness and determines their FICO Scores.

28.     FICO Scores are calculated using information contained in the CRA Defendants' consumer reports.

29.     FICO Scores and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

30.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

31.   Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by the CRA Defendants in consumer reports.

32.   DTI compares the total amount a consumer owes to the total amount a consumer earns.

33.   The CRA Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by the CRA Defendants.

34.     A consumer's income, however, is not included in their consumer report; only the amount of debt is.

35.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for consumers to obtain credit, and the worse the credit terms will be (e.g., higher interest, lower credit limits).

36.     Accordingly, a consumer is negatively affected when a CRA reports that a consumer owes a debt with a balance on it when that debt was discharged in a bankruptcy.

37.     The CRA Defendants are well aware that the effect of a nonstandard provision for payments made in an agreement outside of a Chapter 13 Plan has on a consumer's bankruptcy.

38.     However, the CRA Defendants regularly report inaccurate information about consumers' debts after a bankruptcy is completed, such as including a balance when there is none or not marking an account as discharged through bankruptcy.

39.     Rather than follow reasonable procedures to assure maximum possible accuracy, as it is required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

40.     The CRA Defendants regularly publish consumer information that conflicts with the information provided by data furnishers, included in the CRA Defendants credit files, contained in public records that the CRA Defendants regularly access, and/or sourced through the CRA Defendants' independent and voluntary efforts.

41.     Such inaccuracies are made in violation of the FCRA at 15 U.S.C. § 1681e(b).

42.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate consumer reporting following the completion of a Chapter 13 Bankruptcy, including failure to accurately report which debts were included in the Chapter 13 Plan.

43.     Therefore, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, which often produce inaccurate public record information, balances, and account and payment statuses.

### *Plaintiff's Chapter 13 Bankruptcy*

44.     On or around February 2016, Plaintiff entered into a secured car loan agreement with Ozarks, hereinafter "Ozarks Agreement."

45.     On or around February 6, 2019, Plaintiff filed for a Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, petition no. A19-bk-52135-JWC.

46.     On April 24, 2019, the Plaintiff filed a final amended Chapter 13 Plan that included a provision whereby the co-debtor of the Plaintiff would maintain contractual installment payments directly to Defendant Ozarks for the vehicle under the Ozarks Agreement and the loan would remain outside the bankruptcy plan.

47.     The final version of the amended version of Plaintiff's Chapter 13 Plan was confirmed on June 4, 2019.

48.     Plaintiff's Chapter 13 Bankruptcy was completed on February 2, 2022, and an Order of Discharge was entered on April 11, 2022.

49.     Upon information and belief, the CRA Defendants received notice of Plaintiff's bankruptcy filings through their independent collection of Plaintiff's consumer information through vendors such as Lexis-Nexis, as well as from furnishers that provided data regarding the individual tradelines featured on Plaintiff's consumer reports.

50.     The CRA Defendants prepared one or more consumer reports concerning the Plaintiff both during and after his bankruptcy was completed.

51.     The CRA Defendants reported Plaintiff's credit history, including names of credit accounts, account numbers, account types, responsibility for the

11

account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the date of the last status update.

52.     Despite being stated otherwise in the Plaintiff's Chapter 13 Bankruptcy filings and Chapter 13 Plan, the CRA Defendants misreported the Ozarks Account as an Account that was including in Plaintiff's Chapter 13 Bankruptcy and was discharged with the Chapter 13 Plan.

*Defendant Equifax's Reports*

53.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

54.     The Plaintiff reviewed his Equifax credit report after receiving his discharge from his Chapter 13 Bankruptcy.

55.     Upon information and belief, Defendant Equifax prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his Ozarks Account with an account number ending with x0216.

56.     The Equifax Credit Report inaccurately reports the status of the Ozarks Account as "INCLUDED_IN_CHAPTER_13."

57.     In actuality, the Ozarks Account was not included in Plaintiff's Chapter 13 Bankruptcy because the Plaintiff specifically agreed with the Court and Ozarks

that the regular monthly payments would be continue to made by the co-borrower directly to the Defendant Ozarks.

58.    Defendant Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

59.    On or around May 2023, Plaintiff mailed Defendant Equifax a dispute letter, disputing the information in his credit reports regarding the Ozarks Account being improperly reported as discharged in bankruptcy.

60.    Pursuant to 15 U.S.C. § 1681i(a)(2)(A), a CRA, such as Defendant Equifax, "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

61.    Upon information and belief, Defendant Equifax notified Defendant Ozarks of the Plaintiff's dispute regarding the Ozarks Account.

62.    Despite the dispute by the Plaintiff that the information on his consumer report was inaccurate with respect to the disputed account, Defendant Equifax did not timely evaluate or consider any of the information, claims, or evidence of the

Plaintiff and did not timely try to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

63.    Defendant Equifax violated 15 U.S. Code § 1681i(a)(1)(A) by failing to conduct a reasonable investigation since it failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

64.    Furthermore, on June 8, 2023, in response to the dispute letter, Defendant Equifax responded with its own letter, stating that the Ozarks Account has been verified to have been accurate, but the date updated, last payment made, rating, and historical trended data were updated.

65.    These changes made by Defendant Equifax do not correct the primary issue pertaining to the Ozarks Account, which is that the Ozarks Account was not included in Plaintiff's Chapter 13 Bankruptcy, rather the Plaintiff's account should reflect as all payments made timely.

66.    Had Defendant Equifax done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Defendant Equifax that the disputed Ozarks Account was not discharged nor included in Plaintiff's Chapter 13 Bankruptcy.

67.    Defendant Equifax has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

68.     Notwithstanding Plaintiff's efforts, Defendant Equifax continued to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

69.     Defendant Equifax's reporting of the Ozarks Account is patently inaccurate.

70.     If not patently inaccurate, Defendant Equifax's reporting of the Ozarks Account is materially misleading.

71.     As a result of the Defendant Equifax's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

*Defendant Experian's Reports*

72.     Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

73.     The Plaintiff reviewed his Experian credit report after receiving his discharge from his Chapter 13 Bankruptcy.

74.     Upon information and belief, Defendant Experian prepared and issued credit reports concerning the Plaintiff that included inaccurate and misleading information relating to his Ozarks Account.

75.     The Experian Credit Report inaccurately reports the status of the Ozarks Account as "Discharged through Bankruptcy Chapter 13."

76.     In actuality, the Ozarks Account was not included in Plaintiff's Chapter 13 Bankruptcy because the Plaintiff specifically agreed with the Court and Ozarks that the regular monthly payments would be continue to made by the co-borrower directly to the Defendant Ozarks.

77.     Defendant Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

78.     On or around June, 2023, Plaintiff mailed Defendant Experian a dispute letter, disputing the information regarding the Ozarks Account reported in his credit report by Defendant Experian.

79.     Pursuant to 15 U.S.C. § 1681i(a)(2)(A), a CRA, such as Defendant Experian, "shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the

person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller."

80.     Upon information and belief, Defendant Experian notified Defendant Ozarks of the Plaintiff's dispute regarding the Ozarks Account.

81.     Despite the dispute by the Plaintiff that the information on his consumer report was inaccurate with respect to the disputed account, Defendant Experian did not timely evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not timely try to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

82.     Defendant Experian violated 15 U.S. Code § 1681i(a)(1)(A) by failing to conduct a reasonable investigation since it failed to delete or correct the disputed trade line within 30 days of receiving Plaintiff's dispute letter.

83.     Had Defendant Experian done a reasonable investigation of the Plaintiff's dispute, it would have been revealed to Defendant Experian that the disputed Ozarks Account was not discharged nor included in Plaintiff's Chapter 13 Bankruptcy.

84.     Defendant Experian has been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors.

85.    Notwithstanding Plaintiff's efforts, Defendant Experian continued to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

86.    Defendant Experian's reporting of the Ozarks Account is patently inaccurate.

87.    If not patently inaccurate, Defendant Experian's reporting of the Ozarks Account is materially misleading.

88.    As a result of the Defendant Experian's failure to comply with the FCRA, the Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

<em><u>Failure to Investigate by Defendant Ozarks</u></em>

89.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

90.    Upon information and belief, the CRA Defendants notified Defendant Ozarks of the Plaintiff's disputes regarding the credit reporting of the Ozarks Account.

91.     Upon receipt of the disputes of the Ozarks Account, Defendant Ozarks failed to conduct a reasonable investigation and continued to report false and inaccurate information on Plaintiff's consumer reports, which negatively affected his creditworthiness.

92.     Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

93.     The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

94.     The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher, such as the Defendant Ozarks, must be reported to other agencies which were supplied such information.

95.     Defendant Ozarks violated 15 U.S.C. § 1681s-2 by failing to fully and properly investigate the dispute of the Plaintiff; by failing to review all relevant information regarding the same by failing to correctly report results of an accurate investigation to the credit reporting agencies.

96.     As a result of the conduct, action and inaction of Ozarks, Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from

credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

*Plaintiff's Damages*

97.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

98.    As a preliminary matter, the CRA Defendants incorrectly marked the Ozarks Account as a debt that was discharged in Plaintiff's Chapter 13 Bankruptcy, rather than reporting it as an account that paid outside of the Plaintiff's Chapter 13 Plan, as stated in the confirmed Plaintiff's Chapter 13 Plan.

99.    Plaintiff's creditworthiness is lowered because Defendant Ozarks failed to inform the correct status of the Ozarks Account to the CRA Defendants and the CRA Defendants continue to mark the Ozarks Account as a debt that was discharged in Plaintiff's Chapter 13 Bankruptcy.

100.    As an individual attempting to improve his credit score for future credit transactions, the Plaintiff was harmed because of the CRA Defendants reporting of the Ozarks Account and Ozarks' failure to investigate properly.

101.    The CRA Defendants' consumer reports indicating that the Ozarks Account was included in Plaintiff's Chapter 13 Bankruptcy causes severe damage to Plaintiff's creditworthiness and his financial wellbeing because an account

included in a bankruptcy has a negative impact on Plaintiff's creditworthiness when it was actually paid in full through a separate agreement.

102.   The CRA Defendants' inaccurate reporting of the Ozarks Account was published to multiple organizations, companies, and financial institutions by the CRA Defendants after Plaintiff completed his Chapter 13 Bankruptcy.

103.   Potential credit grantors reviewed Plaintiff's consumer reports prepared by the CRA Defendants, as evidenced by soft and hard pulls on Plaintiff's credit reports.

104.   These credit reports were created after the completion of Plaintiff's Chapter 13 Bankruptcy and after Plaintiff received an Order of Discharge.

105.   Notwithstanding Plaintiff's efforts to correct the information regarding the Ozarks Account, the CRA Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors, as evidenced by the inquiries on the Plaintiff's credit report in the form of hard and soft pulls.

106.   On or around June 28, 2022, Plaintiff was denied a loan for a home improvement project with Medallion Bank ("Medallion"), and the denial letter from Medallion specifically mentions that Medallion obtained Plaintiff's credit report from Experian when making its decision to approve or deny the Plaintiff.

107.   On or around September 2, 2022, Plaintiff's financing application was denied by TD Bank, after it obtained Plaintiff's credit report from Experian.

108.   On or around October 31, 2022, Plaintiff's application for a credit card was denied by JP Morgan Chase Bank ("Chase"), the denial letter from Chase specifically mentions that Plaintiff's credit report from Experian was obtained.

109.   On or around November 1, 2022, Plaintiff's application for a loan was denied by Affirm, Inc. ("Affirm") after it obtained Plaintiff's credit report from Experian.

110.   As a result of the CRA Defendants' and Defendant Ozarks' failure to comply with the FCRA, Plaintiff suffered concrete harm in the form of loss of credit, loss of ability to purchase and benefit from credit, a chilling effect on applications for future credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denial.

111.   Additionally, Ozarks' failure to review its own records and to inform the CRA Defendants of the proper status of the Ozarks Account harmed the Plaintiff.

112.  Plaintiff's consumer credit file and consumer reports were also reviewed by numerous other entities after the discharge of his bankruptcy; those entities viewed the erroneous information published by the CRA Defendants.

113.   As a direct result of Defendants' inaccurate reporting, Plaintiff suffered damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

114.   As a direct result of Defendants' inaccurate reporting, Plaintiff also suffered actual damages in the form of attorneys' fees incurred.

115.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, disturbance of sleep, reputational damage, humiliation, stress, anger, frustration, shock, invasion of Plaintiff's privacy, embarrassment, and anxiety.

## COUNT I
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681e(b)

116.   Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

117.   Pursuant to 15 U.S.C. § 1681e(b), the FCRA requires CRAs, like the CRA Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information.

118.   The CRA Defendants negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after a consumer completes their bankruptcy.

119.   The CRA Defendants received notice of Plaintiff's bankruptcy through public records, independent collection of consumer information directly obtained by the CRA Defendants through sources of consumer information such as Lexis-Nexis, the CRA Defendants' own files, and information provided by data furnishers, yet the CRA Defendants misapplied that information.

120.   The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, like Plaintiff, who file bankruptcies.

121.   The CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

122.   The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by 15 U.S.C. § 1681e(b).

123.   The CRA Defendants know the information that they report about consumers' bankruptcies is often inconsistent with public records and their own files.

124.   In this case, the inaccurately reported Ozarks Account was an account that the CRA Defendants knew was not included in Plaintiff's Chapter 13 Bankruptcy, because the payments were continually made outside of the Chapter 13 Plan, as stated, and confirmed in the Chapter 13 Plan.

125.   However, the CRA Defendants reported the Ozarks Account as an account that was included in the Plaintiff's Chapter 13 Bankruptcy, which negatively affected Plaintiff's creditworthiness.

126.   Reporting the Ozarks Account as an account that was included in the Chapter 13 Plan is a misrepresentation of the status of the Ozarks Account since it was paid separately outside of Plaintiff's Chapter 13 Bankruptcy.

127.   The CRA Defendants' failure to maintain and employ reasonable procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because the CRA Defendants regularly and voluntarily searches for consumer bankruptcy information to include in credit files.

128.   The CRA Defendants knew or should have known that they are obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

129.   The CRA Defendants knew or should have known that the effect of a nonstandard provision for the Ozarks Account in a Chapter 13 Plan is to show that the Ozarks Account is not included in the Chapter 13 Bankruptcy.

130.   The obligations for the CRA Defendants are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving the CRA Defendants.

131.   Therefore, the CRA Defendants have ample notice of their obligations under the FCRA and their continued use of unreasonable procedures.

132.   If the CRA Defendants contend that they did not have sufficient notice, the CRA Defendants must justify their own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including when consumers file for Chapter 13 Bankruptcy.

133.  The CRA Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports they sell to other parties for a profit.

134.   In this case, the CRA Defendants knew or should have known that the Ozarks Account was not included in the Plaintiff's Chapter 13 Bankruptcy.

135.   Unfortunately, the CRA Defendants willfully and consciously breached their duties as a CRA and deprived Plaintiff of his right to a fair and accurate consumer report.

136.   Despite knowledge of their legal obligations, the CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer report.

137.   The CRA Defendants know that an account that was maintained and paid for outside of a Chapter 13 Plan should not be reported as a debt that was discharged in a Chapter 13 Bankruptcy.

138.   Yet, in this case, the CRA Defendants reported the Ozarks Account as an account that was included and discharged in Plaintiff's Chapter 13 Bankruptcy.

139.   The CRA Defendants knew or should have known the information they reported about the Ozarks Account was inaccurate.

140.   The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to report accurate information when the CRA Defendants knew or should have known that the information the CRA Defendants are reporting is inaccurate, and/or otherwise contradicted by information known by the CRA Defendants, reported to the CRA Defendants, and/or reasonably available to the CRA Defendants.

141.   The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

142.   Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

143.   The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

144.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by the CRA Defendants for failing to report the Ozarks Account as an account that was paid separately, outside of Plaintiff's Chapter 13 Bankruptcy.

145.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

146.   The CRA Defendants' actions are a direct and proximate cause of Plaintiff's damages.

147.   The CRA Defendants' actions are a substantial factor in Plaintiff's damages.

148.   Therefore, the CRA Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

<u>**COUNT II**</u>
**VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681i(a)**

149.   Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

150.   Pursuant to 15 U.S.C. § 1681i(a)(1)(A), after receiving a notice of dispute from a consumer, a credit reporting agency is obligated to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file."

151.   Pursuant to 15 U.S.C. § 1681i(a)(5)(C), "[a] consumer reporting agency shall maintain reasonable procedures designed to prevent the reappearance in a

28

consumer's file, and in consumer reports on the consumer, of information that is deleted pursuant to this paragraph."

152.   The CRA Defendants violated 15 U.S.C. § 1681i(a) by failing to delete inaccurate information from Plaintiff's credit file after receiving actual notice of such inaccuracies and failing to conduct a reasonable reinvestigation.

153.   The CRA Defendants failed to maintain policies and procedures to adequately respond to a dispute by a consumer regarding information contained in their reports.

154.   Plaintiff's dispute letters state the specific issues with the CRA Defendants' credit reports, which were erroneous because the Ozarks Account, which was maintained separately outside of Plaintiff's Chapter 13 Bankruptcy, was listed as an account that was included in Plaintiff's Chapter 13 Plan.

155.   The CRA Defendants' negligently and/or willfully violated 15 U.S.C. § 1681i(a) by failing to conduct a reasonable investigation into the disputed information from Plaintiff's dispute letters and failing to correct the inaccurate information reported about the Ozarks Account.

156.   The CRA Defendants' unreasonable policies and procedures cause them to routinely fail at conducting a reasonable investigation regarding the disputed information.

157.   The CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy even after receiving a dispute from a consumer.

158.   The CRA Defendants know that in response to a dispute letter from a consumer, the CRA Defendants must conduct a reasonable investigation into the dispute and must clarify any mistake or error made by the CRA Defendants on any credit reports.

159.   The CRA Defendants' inadequate procedures damaged Plaintiff's creditworthiness.

160.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by the CRA Defendants' failure to report the Ozarks Account accurately and in failing to respond to his dispute letters correctly.

161.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, loss of sleep, stress, anger, frustration, shock, embarrassment, and anxiety.

162.   The CRA Defendants' actions are a direct and proximate cause of Plaintiff's damages.

163.   The CRA Defendants' actions are substantial factor in Plaintiff's damages.

164.   Therefore, the CRA Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## COUNT III
## VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2

165.   Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

166.   Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

167.   Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

168.   The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

169.   The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the information from a furnisher, such as the Defendant Ozarks, must be reported to other agencies which were supplied such information.

170.   Defendant Ozarks violated 15 U.S.C. § 1681s-2 by failing to fully and properly investigate the dispute of the Plaintiff; by failing to review all relevant information regarding the same by failing to correctly report results of an accurate investigation to the credit reporting agencies.

171.   As a result of the conduct, action and inaction of Ozarks, Plaintiff suffered damage for the loss of credit, loss of the ability to purchase and benefit from credit, a chilling effect on future applications for credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

172.   The conduct, action and inaction of Ozarks was willful, rendering Ozarks liable for actual, statutory, and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

173.   Alternatively, the conduct, action and inaction of Ozarks was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

174.   Ozarks' procedures damaged Plaintiff's creditworthiness.

175.   Ozarks' actions are a direct and proximate cause of Plaintiff's damages.

176.   Ozarks' actions are substantial factor in Plaintiff's damages.

177.   Therefore, Ozarks is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)     Declaratory judgment that Defendant Equifax and Defendant Experian violated the FCRA at 15 U.S.C. §§ 1681e(b) and 1681i(a);

(b)     Declaratory judgment that Defendant Ozarks violated the FCRA at 15 U.S.C. § 1681s-2;

(c)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(d)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(e)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(f)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

(g)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## **JURY DEMAND**

Plaintiff hereby demands jury trial on all issues so triable.

Dated: August 29, 2023                    Respectfully submitted,

                                          */s/ Misty Oaks Paxton*
                                          By: Misty Oaks Paxton, Esq.
                                          3895 Brookgreen Point
                                          Decatur, Georgia 30034
                                          Phone: (405) 529-6257
                                          Fax: (775) 320-3698
                                          attyoaks@yahoo.com
                                          *Attorney for Plaintiff*


                                          STEIN SAKS, PLLC

                                          */s/ M. Hasan Siddiqui*
                                          By: M. Hasan Siddiqui, Esq.
                                          One University Plaza,
                                          Suite 620
                                          Hackensack, NJ 07601
                                          Phone: 201-282-6500 ext. 149
                                          Fax: 201-282-6501
                                          hsiddiqui@steinsakslegal.com
                                          *Pro Hac Vice Pending*