SETTLEMENT AGREEMENT & MUTUAL GENERAL RELEASE

This Confidential Settlement Agreement and Mutual General Release (this "Agreement') is made as of April __, 2019 (the "Effective Date") by and among CHARLES AUGUSTUS BANKS IV, an individual ("Banks"); ALISON C. BANKS, an individual and Banks' spouse; and MCA CONSULTING, LLC, a Florida Limited Liability Company (together the "Banks Parties") on the one hand and KEVIN M. GARNETT, an individual ("Garnett"); HAMMER HOLDINGS, LLC, a California Limited Liability Company ("Hammer") and GARNETT ENTERPRISES, INC., a Minnesota Corporation ("Enterprises") (together the "Garnett Parties") on the other, collectively the "Parties".

RECITALS

A. In 1996, Banks, while employed by San Francisco based CSI Capital Management, LLC ("CSI"), was introduced to Garnett who became an advisory client of CSI. Banks handled the Garnett account.

B. In 1999, Banks received an ownership interest in CSI and in 2001, he became its president. He maintained a relationship with Garnett that grew over time.

C. In 2007, Banks left CSI but maintained a close business and personal relationship with Garnett.

D. In 2005, Banks and Garnett formed Hammer to serve as a holding company to make investments in various entities selected by Banks and Garnett. At the outset, Banks and Garnett each held a 50% interest in Hammer.

E. In or about March, 2018, Garnett authorized Hammer to bring an action against Banks in Minnesota State Court for the recovery of certain loans that Banks had taken out of Hammer. Thereafter, the parties agreed to seal the contents of that action, and discontinue that action in favor of proceeding with arbitration before JAMS (the "Arbitration").

F. On or about July 12, 2018, Hammer and Garnett served a demand for arbitration, and an amended demand on September 21, 2018, outlining claims related inter alia to Hammer Holdings, Terroir Funds, Mayacamas, Gameday, Le Metier, and other investments and interactions, including related to the NBA, And1 and TNT. Banks served an answer to the amended demand, containing affirmative defenses and counterclaims on or about October 26, 2018.

G. Hearings for the Arbitration were scheduled for January 23, and 24 and February 25 and 26, 2019. On January 24, 2019, rather than continuing the Arbitration, the parties decided to settle their differences upon the terms and conditions set forth below.

H. No party intends to admit liability in any way by this Agreement, and no part of this Agreement or the Parties' dealings are intended to form a basis for liability in another proceeding



except as set forth herein. The Parties wish for a complete and final resolution of their differences, and an end to all proceedings involving them or their releasees, except as set forth and expressly reserved herein,

AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained in this Agreement, and other good and valuable consideration, the sufficiency of which each of the Parties acknowledges, the Parties hereto agree as follows:

1. Incorporation of Recitals. Each of the above Recitals is incorporated herein by reference and are relied upon by the parties hereto in agreeing to the terms of this Agreement.

2. Settlement Amount and Payment. Banks agrees to pay to Garnett the sum of Fifteen Million Dollars ($15,000,000.00), in accordance with the Payment Schedule, as defined and set forth below (the "Settlement Payment"). The Settlement Amount shall be paid in installments on the dates and in the amounts set forth in the Payment Schedule via wire transfer or bank check. Banks' obligation to pay to Garnett the Settlement Amount is an unconditional and irrevocable obligation and is not and will not be subject to any defenses, offsets, recoupments or counterclaims, except as set forth herein. Upon the occurrence of an Event of Default (defined below), Garnett may, at his option, declare the entire unpaid balance of the Settlement Amount to be immediately due and payable, and the Settlement Amount shall be increased to reflect interest at the rate set forth as the Secured Overnight Financing Rate, or SOFR (currently approximately 2.38 percent) upon the unpaid portion of the Settlement Amount from the Date of Default, and continuing until the Settlement Amount is paid in full. Banks shall pay the Settlement Amount in immediately available funds pursuant to the following (the "Payment Schedule"), though he may elect in his sole discretion to pay sooner:

| Date | Installment Amount |
|---|---|
| On or before 10 business days from the Effective Date | $5,000,000.00 |
| The first anniversary of the Effective Date | $500,000.00 |
| The second anniversary of the Effective Date | $4.750,000.00 |
| The third anniversary of the Effective Date | $4,750,000.00 |

Banks warrants and represents he is not a debtor pursuant to a voluntary or involuntary bankruptcy, insolvency or similar state or federal proceeding, The Parties agree that Banks may treat the Settlement Amount and any other judgments herein to constitute repayment of loans made to him by Hammer and/or Garnett, as well as consideration for Hammer's transfer to Banks of its interest in Coastal Luxury Management ("CLM"), in accordance with Paragraph 13 of this Agreement, provided, however, that the allocation of the Settlement Amount for the

acquisition of Hammer's interest in CLM may not exceed its income tax basis. Garnett commits to cause Hammer to provide Forms K-1 for 2018, and for 2019, to the extent required by law, reflecting the dispositions of assets described herein.

3. Financial Statement. Attached hereto as Schedule A is a personal financial statement executed by Banks (the "Financial Statement"). Banks warrants and represents that the Financial Statement is accurate and complete and represents Banks' current financial condition as of its date of execution, and reflects updated financial information consistent with his Final Presentence Report ("PSR") without waiving any privilege thereby. Without limiting the generality of the foregoing, Banks warranties and represents that he does not own or possess, either actually or constructively any tangible or intangible property ("Property"), and that no third party, is holding Property in which Banks has any ownership interest, except as that Property is expressly disclosed in the Financial Statement. Garnett undertakes to review the Schedule A, and disclose to Banks any discrepancies he is aware of within five (5) Business Days of execution of this Agreement, and also provide a summary of the disposition of any Hammer assets undertaken since September 2017. Banks understands, acknowledges and agrees that as a material inducement to Garnett's willingness to agree to the Settlement Amount, Garnett is relying upon the accuracy and completeness of the Financial Statement. If the Financial Statement is incomplete or inaccurate in any material way (defined as any ownership of a particular asset of $250,000.00 value or greater, that Mr. Garnett is not currently aware of), then such shall constitute an Event of Default, as defined below, by reason of which, in addition to all other remedies available to him under this Agreement, Garnett shall have the right to receive title to any Property which Banks failed to disclose on the Financial Statement; and for the judgment amount herein to be increased by an additional sum of $10,000,000.00. By way of example, if on April 30, 2019, Garnett discovers that Banks has an ownership interest in one or more assets that were not disclosed on the Financial Statement and are worth more than $250,000.00 each and were not known to Garnett as of the Effective Date ("Undisclosed Assets"), then Mr. Garnett shall be entitled to own the Undisclosed Assets, and in addition shall be entitled to increase the judgment amount an additional $10,000,000.00, for a total of $20,000,000.00. This Section 3 shall be extinguished and of no further force and effect upon complete payment of the $15,000,000.00 Settlement Amount reflected herein.

4. Financial Disclosure. Within seven (7) days of the execution of this Agreement Banks shall provide to Garnett's counsel account statements for all bank accounts in which Banks had an interest for the past three (3) years as well as copies of all his federal income tax returns for the past three years.

5. Default. Each of the following shall constitute an "Event of Default" under this Agreement:

(a) the failure to timely pay all or any portion of the Settlement Amount as provided in Section 2; or

(b) A declaration of or filing for bankruptcy by or against Banks, unless after payment of the full $15,000,000.00 Settlement Amount prior to any applicable preference period.

6. Remedies. Upon the occurrence of an Event of Default by Banks, Garnett shall be entitled to declare all unpaid amounts owing to Garnett under this Agreement to be immediately due and payable, and exercise any one or more of the rights and remedies granted to Garnett under this Agreement, in such order and manner and at such times as Garnett may determine in its sole and absolute discretion, including without limitation filing and enforcing the Confession of Judgment (defined below) upon its entry. Garnett may also exercise the option, at his sole and absolute discretion upon an Event of Default, to elect to instead receive 50% of Banks' after tax earnings or income from any source, including gains from CLM, or otherwise, until the complete Settlement Amount plus Default Interest is satisfied, and may still pursue the enforcement of Confession of Judgment if Banks fails to accurately report his earnings and pay them over to Garnett within ten (10) Business Days of each receipt of earnings or income from any source. Garnett shall have audit rights under this Agreement upon an Event of Default to all tax returns of and regular financial reports from Banks.

7. Confessions of Judgment. Simultaneously with the execution of this Agreement, Banks shall execute the documents authorizing entry of two contingent Confessions of Judgment Without Action against Banks pursuant to California Civil Code §§ 1132-1134 (each a "Confession") annexed hereto as Schedule B. The first Confession shall be in the sum of $10,000,000.00, plus accrued and unpaid interest if any as set forth herein, and may be filed upon an Event of Default by Banks in making any payment due pursuant to the Payment Schedule set forth in Paragraph 2 of this Agreement. The Second Confession shall be in the amount of $20,000,000.00, plus accrued and unpaid interest, and shall be filed in the event that Banks commits an Event of Default of his obligations pursuant to Paragraph 3 of this Agreement. In the event that Garnett files the Second Confession after having previously filed the First Confession, the Second Confession shall be deemed to have superseded the first one. Either Confession shall be reduced by all payments of the Settlement Amount made by Banks subsequent to the initial $5,000,000.00 payment, and by any restitution or other amounts ordered and collected or seized by any state or federal government agency and paid over to Garnett Parties. Nothing in the Confessions may be used by anyone other than Garnett, and the Confessions are not intended as an admission by Banks, and are not effective until and unless an Event of Default occurs.

8. Garnett Parties Releases. The Garnett Parties hereby irrevocably release and discharge the Banks Parties, their spouses, parents, siblings, descendants (including adoptive relationships and stepchildren), and the spouses of each such natural persons (collectively, "Family Members"), attorneys, counsel, agents, assigns, successors, members, partners, directors, officers, affiliates, and heirs, from any and all causes of action, suits, liabilities, obligations, debts, damages, controversies, agreements, trespasses, judgments, executions, costs, expenses, demands, challenges to transfers, claims, and counterclaims of any kind whatsoever, whether in law or equity, accrued or unaccrued, certain or contingent, liquidated or unliquidated, asserted or that could have been asserted in the Minnesota action or arbitration, or in any forum, foreign, state, or federal, including but not limited to in family or estate proceedings, bankruptcy or otherwise, arising out of any facts, circumstances, or occurrences, from the beginning of time and up to and until the Effective Date, except for the obligations of Banks under this Agreement, which alone shall survive this release and are expressly reserved.

THE GARNETT PARTIES AND EACH OF THEM DO HEREBY AGREE THAT THIS AGREEMENT SHALL APPLY TO ALL UNKNOWN OR UNANTICIPATED RESULTS OF THE TRANSACTIONS AND OCCURRENCES DESCRIBED ABOVE, AS WELL AS THOSE KNOWN AND ANTICIPATED, AND UPON ADVICE OF COUNSEL, EACH PARTY DOES HEREBY KNOWINGLY WAIVE ANY AND ALL RIGHTS AND PROTECTIONS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH SECTION HAS BEEN DULY EXPLAINED AND READ AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

9. Banks Parties Releases. The Banks Parties hereby irrevocably release and discharge the Garnett Parties, their Family Members, attorneys, counsel, agents, assigns, successors, members, partners, directors, officers, affiliates, and heirs, from any and all causes of action, suits, liabilities, obligations, debts, damages, controversies, agreements, trespasses, judgments, executions, costs, expenses, demands, challenges to transfers, claims, and counterclaims of any kind whatsoever, whether in law or equity, accrued or unaccrued, certain or contingent, liquidated or unliquidated, asserted or that could have been asserted in the Minnesota action or arbitration, or in any forum, foreign, state or federal, including but not limited to in family or estate proceedings, bankruptcy or otherwise, arising out of any facts, circumstances, or occurrences, from the beginning of time up to and until the Effective Date, except for the obligations of Garnett under this Agreement, which alone shall survive this release and are expressly reserved.

THE BANKS PARTIES AND EACH OF THEM DO HEREBY AGREE THAT THIS AGREEMENT SHALL APPLY TO ALL UNKNOWN OR UNANTICIPATED RESULTS OF THE TRANSACTIONS AND OCCURRENCES DESCRIBED ABOVE, AS WELL AS THOSE KNOWN AND ANTICIPATED, AND UPON ADVICE OF COUNSEL, EACH PARTY DOES HEREBY KNOWINGLY WAIVE ANY AND ALL RIGHTS AND PROTECTIONS UNDER CALIFORNIA CIVIL CODE SECTION 1542, WHICH SECTION HAS BEEN DULY EXPLAINED AND READ AS FOLLOWS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Parties Intend that Banks' Payment Obligations be Non-dischargeable Upon Event of Default.

The parties have agreed to stipulated findings of fact and conclusions of law, to be entered as an award by the JAMS assigned arbitrator, Robert A. Meyer, and then held in escrow (the "Nondischarge Award"). The Nondischarge Award is intended to represent findings sufficient to constitute an "Exception to Discharge" pursuant to Section 523(a)(4) of the United States Bankruptcy Code and may be utilized by Garnett solely to avoid a discharge of Banks' obligations under this Agreement in connection with any federal or state bankruptcy, insolvency or similar proceeding. Mr. Meyer may issue a Nondischarge Award in the attached form as

agreed by the Parties. The Nondischarge Award shall not be confirmed until an Event of Default, and is not admitted hereby by Banks in any event, and may not be used in any way in any non-bankruptcy or non-insolvency proceeding. Banks will stipulate the elements are met either upon Event of Default, including bankruptcy without Settlement Payments completed. For the avoidance of doubt, these findings are solely for purpose of this escrowed Nondischarge Award, and without admitting fault, and with no legal force or effect of any kind until and unless an Event of Default, and the Nondischarge Award is not to be confirmed and entered by Garnett until and unless an Event of Default, and voided if shown to any regulator or third party as part of any collection effort or otherwise before an Event of Default.

10. Confidentiality. The terms of this Agreement and the Nondischarge Award shall be deemed confidential. No Party shall reveal any of the terms of this Agreement (other than to their respective legal counsel, accountants, insurers, trustees and financial advisors who agree or are obligated to maintain such information in confidence), reveal the Nondischarge Award, or speak to the press or make any public statements regarding the Minnesota Litigation ("Litigation") or this Agreement, except as set forth below or to enforce the terms of this Agreement or as may be required in a legal or arbitration proceeding after formal subpoena. Notwithstanding the foregoing, Garnett on his own behalf and on behalf of Hammer, after receipt of the initial $5,000,000.00 payment, shall provide Banks with a statement, which Banks may use publicly as describing a resolution of the Litigation and arbitration between the parties made public in the Welenken/Wertheim complaint and comments of Garnett's Minnesota counsel, including the dates of the proceeding and fact of resolution, and provide to the government at Banks' sole discretion, stating that Garnett "is satisfied with the resolution between the parties per their Agreement, which includes each party exchanging assets, and desires no further proceedings with Banks, and that the parties had extensive business dealings with each other, including $22 million in acknowledged loans, and views all those matters as now resolved. He wishes peace for the Banks family and his own family as well."

11. Transfers of Banks' Interest in Hammer. Simultaneously with the execution of this Agreement, Banks shall execute and deliver the transfer document attached hereto as Schedule D in which he shall transfer all of his right, title and interest in Hammer to Garnett or his nominee.

12. Transfer of Hammer's Interest in CLM. Within five (5) days of Garnett's receipt of the initial $5,000,000 payment due hereunder, Hammer shall execute and deliver a document legally sufficient to transfer all of Hammer's right, title and interest in CLM to Banks or his designee. Except for its interest in CLM, Banks hereby releases any claim to or interest in any other asset currently owned by Hammer, including but not limited to Columbia Care LLC, with such relinquishment documented on the 2019 Form K-1 noted above; provided however, that Banks' various personal Terroir interests continue to be as held in trust, and any personal investment of Garnett in Terroir, including his loan to the Terroir wine fund that was converted to equity, remain Garnett's.

13. Terroir. Banks acknowledges that Garnett is a creditor of Banks' interests in Terroir held in trust, and any amounts realized from Terroir and paid over by Banks' trustee to Garnett will be credited against the Settlement Payments described herein. Garnett likewise holds

personally his own interest in the Terroir Hotel Fund, and interest (including the converted loan) in the Terroir Wine Fund, and any recovery related to those interests are Garnett's alone and not credited hereunder.

14. No Admissions. The Parties agree that this Agreement is for purposes of settling disputed claims and shall not be deemed an admission of the legal or factual assertions set forth in any of the pleadings filed in the Arbitration or in previously filed litigation, or otherwise, is not to be construed as an admission of any liability whatsoever on the part of any of the Parties to or Releasees under this Agreement, and may not be used by the Parties except as set forth herein.

15. Severability. If any one or more of the provisions of this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, the remaining provisions of this Agreement shall be unimpaired; and invalid, illegal, or unenforceable provisions shall be replaced by a mutually acceptable provision which, being, valid, legal, and enforceable, comes closest to the intention of the Parties underlying the invalid, illegal, or unenforceable provision.

16. Choice of Law; Continuing Jurisdiction by Arbitrator. This Agreement shall be interpreted and enforced under the laws of the State of California, without regard to its choice of law rules. The Parties agree that the language used herein has been reviewed and agreed upon by counsel for all Parties and that no Party shall be deemed to be the author or drafter hereof. The Parties consent to the continuing jurisdiction of the Jams arbitrator chosen to adjudicate the Arbitration, Mr. Robert A. Meyer, with respect to violations and/or enforcement of this Agreement.

17. Merger Clause. This document and its exhibits set forth the entire Agreement between the Parties. All negotiations and understandings, whether oral or written, are hereby merged herein. This Agreement may be modified, altered, or amended only by a written instrument signed by all the Parties. No waiver of any of the provisions of this Agreement by any Party shall be deemed, or shall constitute, a waiver of any other provision, whether similar or not similar, nor shall any waiver constitute a continuing waiver.

18. Independent Counsel. The Parties acknowledge that they have read and understand the terms of this Agreement and are entering into this Agreement freely, having had a full and fair opportunity to obtain the advice of counsel in relation hereto. Each Party represents and warrants to the other Party that the individual executing this Agreement on its or her behalf is duly authorized by that Party to do so and to bind that Party to the terms of this Agreement.

19. Counterparts. This Agreement may be signed in counterparts, and electronically reproduced or photocopied signatures shall have the effect of original signatures. This Agreement shall become valid and enforceable upon each Party's receipt of fully executed copies or counterparts of the Agreement.

20. Notices. All notices, demands and requests that any party may or is required to give to any other party under or in connection with this Agreement or the other Settlement Documents shall be in writing and shall become effective (a) upon personal delivery, (b) three (3) days after it shall have been mailed by United States mail, first class, certified or registered, with postage

prepaid; (c) one (1) day after it shall have been sent via a nationally recognized overnight courier (such as Federal Express); or (d) immediately upon transmission of an e-mail, in each case addressed to the party to be notified as follows:

If to Garnett Parties:

Richard C. Ebeling, Esq.
Lanza Reich Daniel & Ebeling, LLP
8 Woodridge
Putnam Valley, NY 10579
Rebeling@LanzaReich.com

If to Banks Parties:

Thad Davis
Gibson Dunn

With a copy to:

Tricia Russell
19 Douglas Drive
Newport News, Virginia 23601

21. Attorneys' Fees. Each party is to bear their own costs, expenses and legal fees in connection with this matter and Agreement.

IT IS SO AGREED, as of the Effective Date.

**HAMMER HOLDINGS, LLC**

By: [signature]

Name: Kevin Garnett

Title: Managing Member

Date: 4/23/2019

**MR. KEVIN GARNETT**

[signature]

Date: 4/23/2019

**MR CHARLES A. BANKS IV**

____________________________

**MS. ALISON C. BANKS**

____________________________

Date: ______________________

**MCA CONSULTING, LLC**

By: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

Date: ______________________

**GARNETT ENTERPRISES, INC.**

By. ______________________

Name: Kevin Garnett

Title: President

Date: 4/23/2019

Approved as to form and Content:

______________________

**RICHARD C. EBELING, ESQ.**
*Attorney for the Garnett Parties*

Date: 4/23/2019

______________________

**THAD DAVIS, ESQ.**
*Attorney for the Banks Parties*

Date: ______________________

prepaid; (c) one (1) day after it shall have been sent via a nationally recognized overnight courier (such as Federal Express); or (d) immediately upon transmission of an e-mail, in each case addressed to the party to be notified as follows:

If to Garnett Parties:

With a copy to:

If to Banks Parties:

Thad Davis
Gibson Dunn

With a copy to:

Tricia Russell
19 Douglas Drive
Newport News, Virginia 23601

21. Attorneys' Fees. Each party is to bear their own costs, expenses and legal fees in connection with this matter and Agreement.

IT IS SO AGREED, as of the Effective Date.

**HAMMER HOLDINGS, LLC**

By: ____________________

Name: ____________________

Title: ____________________

Date: ____________________

**MR. KEVIN GARNETT**

____________________

Date: ____________________

**MR CHARLES A. BANKS IV**

[signature] by Alison C. Banks power of atorny for Charles A Banks IV

Date: 4.19.19

**MS. ALISON C. BANKS**

[signature]

Date: 4.19.19

MCA CONSULTING, LLC

By: ____________

Name: Allison C Banks

Title: ____________

Date: 4.19.19

GARNETT ENTERPRISES, INC.

By: ____________

Name: ____________

Title: ____________

Date: ____________

Approved as to form and Content:

____________

**RICHARD C. EBELING, ESQ.**
*Attorney for the Garnett Parties*

Date: ____________

____________

**THAD A. DAVIS, ESQ.**
*Attorney for the Banks Parties*

Date: April 19, 2019