## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **FONDA PRICE and** | ) | |
| **KRISTIE WALKER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action File No: _____** |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **ATLANTA PUBLIC** | ) | |
| **SCHOOLS,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## PRELIMINARY STATEMENT

1. Plaintiffs **Fonda Price** ("Price") and **Kristie Walker** ("Walker") (collectively referred to as "Plaintiffs"), bring claims of unlawful retaliation against their former employer, Defendant **Atlanta Public Schools** ("APS" or "Defendant"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.A. § 2000e-3(a), and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C.A. § 12203(a).

1

2.     Plaintiffs both seek damages for economic losses, including lost wages and benefits, compensatory damages for emotional distress and mental anguish, as well as their attorneys' fees and litigation expenses.

## THE PARTIES

3.     Plaintiff Price was employed by APS' employee relations department at all relevant times alleged in this complaint.

4.     Plaintiff Walker was employed by APS' employee relations department at all relevant times alleged in this complaint.

5.     APS is a public school district operating within the state of Georgia. For purposes of adverse employment actions including termination, APS is an entity subject to be sued under the ADA[1] and Title VII.

## SUBJECT-MATTER JURISDICTION AND VENUE

6.     Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

7.     Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and

---

[1] *See Lightfoot v. Henry County School District*, 771 F.3d 764, 768-78 (11th Cir. 2014) (for purposes of sovereign immunity analysis, a school district is not an "arm of the state" of Georgia with respect to employment decisions, and is therefore subject to monetary damages for liability under the ADA).

division and the acts or omissions giving rise to the claim occurred in the same venue.

## PERSONAL JURISDICTION

8.     APS may be served with proper process concerning this civil action through personal service of the Superintendent of APS or an agent authorized to receive service at APS' central administrative office at 130 Trinity Ave. SW, Atlanta GA. 30303.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On September 25, 2022, Price filed a charge with the Equal Employment Opportunity Commission ("EEOC") that included claims of gender and disability based discrimination and retaliation. *See* Ex. A. On June 23, 2023, Price received a Notice of Right to Sue, and timely files this cause of action. *See* Ex. B.

10.     On September 25, 2022, Walker filed a charge of gender and disability discrimination with the EEOC. *See* Exhibit C. On June 6, 2023, Walker received a Notice of Right to Sue, and timely files this cause of action. *See* Exhibit D.

## FACTUAL ALLEGATIONS

### Plaintiff's first internal complaints of gender discrimination

11.     Price was hired in July 2021 as a contractor in the employee relations division of APS' human resources ("HR")  department. In November 2021, Price became a full time employee relations specialist for APS.

12.     Price's job responsibilities included conducting employee misconduct investigations and processing disability accommodations requests for 30 schools assigned to her.

13.     Walker was hired by APS in November 2021 as an employee relationship specialist. Her duties involved investigations of employee misconduct. 10-12 schools were assigned to Walker.

14.     Walker and Price reported to Toni Sellers-Pitts, the Executive Director of Employee Relations. While Sellers-Pitts functioned as Plaintiffs' primary supervisor, the authority to terminate Walker or Price was vested solely in the Superintendent of APS.

15.     In the spring of 2022, the employee relations department hired a male specialist, Leverius Glass, who worked in close proximity to both Walker and Price.

16.     From the first weeks of his employment, Glass acted in a disruptive and toxic manner that seemed to target his female colleagues: his behavior

included temperamental outbursts, bullying and intimidation toward coworkers, and featured signs of instability and erratic conduct.

17.     Both Walker and Price constantly observed, and were at times the brunt of, threatening conduct from Glass.

18.     During a mid-April 2022 joint virtual investigative interview Walker and Glass conducted, Glass became argumentative with Walker to the point that she had to disconnect him from the call. Glass reacted by confronting her in a tone that was aggressive enough that she feared he was about to strike her.

19.     Walker and Price each reported Glass' behavior to Sellers-Pitts, the head of their department, but Sellers-Pitts did nothing to intervene.

20.     At one point, Sellers-Pitts told Walker that she would not discipline Glass because she believed he was gay, and that APS might be subject to potential liability for taking corrective action against an LGBT employee. Sellers-Pitts did not explain why she believed APS' anti-harassment policies did not apply with equal force to all personnel.

21.     Glass' aggression affected both Walker and Price in acutely negative ways. Walker, for example, has a history of suffering from anxiety, and began having panic attacks in the aftermath of the mid-April 2022 incident where Glass appeared to be on the verge of violence.

22.     Walker sought counseling from the mental health wellness coordinator in the HR department, Nizinga Benton, and a therapist in APS' employee assistance program, Carol Meltzer.

23.     Melter told Walker that she believed Walker should seek legal counsel to address the hostile environment she was experiencing. Walker's condition required her to take medical leave in late April 2022.

24.     Price suffers periodic migraine headaches that are compounded by stress. Her headaches increased in the late spring of 2022 due to the ongoing strain of Glass' repeated belligerence..

25.     On June 9, 2022, Price filed a formal complaint with the HR department regarding Glass' threatening conduct and Sellers-Pitts's failure to act to protect female employees.

26.     In late June 2022, Walker also filed a HR complaint about the toxic conditions in the employee relations department and the demeaning atmosphere for women in the department.

27.     APS did not take any apparent steps to investigate either Walker's or Price's complaints, ignoring APS' protocols for promptly investigating complaints of bullying or harassment in the workplace.

28.     While APS did not address the complaints about Glass, he ended up being fired in July 2022 for inciting an argument with two onsite security officers.

**Retaliation by Seller-Pitts**

29.     During June and early July 2022, Sellers-Pitts was notified of Price's and Walker's hostile environment complaints.

30.     Sellers-Pitts had previously remarked in staff meetings that she felt protected from employee complaints because she was a member of the same sorority as Nicole Lawson, APS' Chief HR Officer, and Superintendent Lisa Herring.

31.     Sellers-Pitts had also made other comments that Walker and Price took as veiled threats that the staff needed to be mindful of taking any steps that would reflect negatively on her or damage her relationship with the Superintendent.

32.     As the summer of 2022 progressed, Sellers-Pitts began to act in an increasingly hostile manner toward Walker and Price, becoming snide and dismissive of both women, often in front of their peers, and started regularly finding fault with their work.

33.     At one point in mid June 2022, within days of learning of Price's HR complaint, Sellers-Pitts encouraged an employee to report Price for not adequately

investigating a misconduct allegation that the employee had filed against a
coworker.

34.     During the June and July 2022 time frame, Sellers-Pitts repeatedly
chastised Price verbally and in writing for being tardy in completing investigative
reports: Sellers-Pitts knew better, and fully understood that the culprit for any delay
was Sellers-Pitts' slowness in working through a  backlog of reports in the
department, all of which required her approval.

**Additional internal complaints from Price and Walker: August 2022**

35.     In early August, 2022, Walker lodged a second complaint with the HR
department regarding Sellers-Pitts. Walker described a number of instances where
Sellers-Pitts had retaliated against her for the complaint two months earlier by
being verbally abusive and making unwarranted criticisms of her work, and
detailed a variety of other inappropriate or questionable actions by Sellers-Pitts.

36.     One of Walker's complaints involved Sellers-Pitts' comments to
coworkers about her sex life, which included stories about sexual encounters with
multiple men, and her use of explicit language to describe her trysts.

37.     Walker alleged that when she contracted a serious case of Covid-19 in
May 2022 and took sick leave, Sellers-Pitts had ordered her to complete

assignments remotely, even though Walker had reported she was experiencing difficulty breathing.

38.     Walker's complaint also identified a number of substantive concerns about Sellers-Pitts' running of the department. It described an ongoing failure to adequately protect the confidentiality of ADA accommodation and medical leave requests: paperwork from medical providers was left in plain view of staffers who had no role in the accommodation or leave approval process.

39.     There were additional allegations in Walker's complaint that under Sellers-Pitts' leadership, the department was chronically slow in processing ADA requests, taking months to review applications when APS protocols require action within days; and that the department routinely failed to process Title IX complaints by employees or students or to promptly initiate investigations, despite APS' policy that Title IX was a priority task.

40.     On August 9, 2022, Price initiated her second HR complaint against Sellers-Pitts. Like Walker, Price recounted examples of verbal abuse and retaliation from Sellers-Pitts for the previous June complaint. Price also reported Sellers-Pitts' delays in completing routine administrative tasks related to ADA and Title IX enforcement within the department.

**More retaliation from Sellers-Pitts**

**Additional retaliation toward Price**

41.     Despite internal reports of retaliation, misconduct, and breaches of APS policy by two of her team members, the school district did not place Sellers-Pitts on administrative leave or limit her interactions with the sources of the complaints. As a result, Sellers-Pitts, who was notified of the June and August 2022 complaints, remained in a position to engage in more retaliation toward Walker and Price, and promptly did so.

42.      In late July 2022, in an effort to return to pre-pandemic levels of in-person engagement, Sellers-Pitts had announced a new policy that all employee relations specialists would be required to make onsite visits to the schools assigned to them.

43.     Price became immediately concerned that mandatory visits to crowded school settings would trigger a medical condition of hers that has been diagnosed as chronic social anxiety. She submitted an ADA accommodation request on or about August 11, 2022 seeking an exemption from the obligation to make onsite visits.

44.     Over the next two weeks, Price's accommodation request was not processed. When Price sought to move the process forward, a member of the

employee relations department's leave management team, Lakea Fullwood, told Price that Sellers-Pitts had instructed that the accommodations request be "slow-walked" and that Seller-Pitts had directed Fullwood to resort to dilatory tactics like seeking unnecessary supplemental documentation.

45.     During the last week in August 2022, Price was warned by a source within the department that paperwork had been created to terminate Price and was awaiting approval from Superintendent Herring's office.

46.     To avoid being fired, Price submitted her resignation or about September 2, 2022.

47.     At Seller-Price's direction, APS began the process of terminating Price within two weeks of her request for an ADA accommodation, and within two and a half weeks of her filing a formal complaint that Sellers-Pitts had engaged in retaliation and failed to follow Title IX and ADA reporting protocols.

**Additional retaliation toward Walker**

48.     After Walker's second complaint against Sellers-Pitts, Walker was directed to meet in early August 2023 with Connie Brown, the executive director of APS' Office of Internal Compliance.

49.     During the meeting, Walker disclosed to Brown that she had spiraled into deep depression and feared that she was at an emotional breaking point.

50.     Brown at one point during the meeting suggested to Walker that she resign, a comment that Walker took as either an implicit threat or an implication that APS did not take her concerns about the leadership of her department seriously.

51.     In late August 2022, a student whose complaint of sexual misconduct by a teacher had been investigated by Walker posted a video on social media describing in graphic detail the incidents at the center of the investigation.

52.     On September 2, Walker overheard Sellers-Pitts in a verbal tirade against her, exclaiming in reference to Walker, "f*** that b****'" and describing Walker as a "heifer."

53.     Walker also explicitly heard Sellers-Pitts devising a plan to use the fallout from the video release to instigate Walker's firing. Walker heard Sellers, referring to Walker, say "that b**** is trying to complain about me, well I have her ass in a snare." Sellers-Pitts went on to discuss her intentions to report to APS administrators that Walker failed to perform an adequate investigation of the student's claims, an assertion Sellers-Pitts knew was meritless, but would have likely resulted in Walker's termination by APS.

54.     Walker, convinced that she had no other recourse, resigned later the afternoon of September 2, 2022.

**APS' failure to take prompt remedial action against Sellers-Pitts**

55.     As of early August 2022, APS had actual knowledge of Walker's and Price's reporting of incidents of retaliation and ongoing violations of APS policies by the head of its employee relations department. Yet, in addition to failing to follow APS' normal routine of administrative leave, it remains unclear precisely when APS initiated any formal investigation.

56.     Based on reporting of open records requests by the Atlanta-Journal Constitution, APS did not act to remove Sellers-Pitts from her position until a date a few days before September 16, 2022, nearly six weeks after the August complaints, and over three months after Plaintiffs' first complaints in June 2022. Https://www.ajc.com/education/atlanta-public-schools-official-resigns-amid-human-resources-upheaval.

57.     As the Atlanta Journal Constitution's reporting made clear, Walker and Price were hardly the only APS employees to lodge allegations against Sellers-Pitts. In the words of Chief HR Officer Lawson's mid-September 2022 memo to then-Superintendent Herring, Lawson had "received numerous complaints from principals, staff, and employees within the employee relations department regarding Toni Sellers-Pitts."

58.     Yet, despite "numerous" pieces of information that Sellers-Pitts was a risk to APS, the district and the leadership of the HR department stood pat. As the AJC's reporting further reveals, Sellers-Pitts  did not learn her job was in jeopardy until mid-September 2022, and was never formally interviewed about the slew of allegations against her.

59.     APS' delay in taking corrective action proximately damaged both Walker and Price, exposing both Plaintiffs to retaliatory acts as described herein, and the inevitable emotional distress that resulted.  Had APS taken even the standard remedial step of placing Sellers-Pitts on administrative leave in order to investigate the allegations against her, both plaintiffs would not have been subjected to the retaliatory conduct they endured that led to their resignations.

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**Plaintiff Fonda Price**
**(retaliatory mistreatment in violation of 42 U.S.C.A. § 2000e-3(a))**

60.     Plaintiff Price incorporates by reference paragraphs 1-59 of this complaint as though set forth fully and separately herein.

61.     Price engaged in protected activity by opposing acts or practices made unlawful under Title VII, in that she made multiple internal complaints to APS of

conduct that constitutes gender discrimination or retaliation, including (1) a failure to remedy a hostile work environment in the spring of 2022 that was at least partly motivated by gender; (2) ongoing retaliatory conduct during the summer of 2022 that was motivated by her earlier reporting of sex-based discrimination; and (3) her department's failure to adequately resolve Title IX complaints that included employee complaints.

62.   Because of Price's protected activity, APS, through Price's direct supervisor, the Executive Director of Employee Relations, engaged in conduct that well might have dissuaded a reasonable employee from making or supporting a charge of discrimination, including but not limited to initiating the process to terminate Price in late August 2022.

63.   As a result of APS' retaliatory conduct,  Price has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits;  and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

**COUNT II**

**Plaintiff Fonda Price**

**(Retaliation in violation of 42 U.S.C.A. § 12203(a))**

64.    Plaintiff Price incorporates by reference paragraphs 1-59 of this complaint as though set forth fully and separately herein.

65.    Price engaged in protected activity under the ADA by making a request for a reasonable accommodation, specifically her application to be excused from making onsite visits to schools within her assigned jurisdiction due to her diagnosis of a social anxiety disorder.

66.    Price further engaged in protected activity under the ADA by making an internal complaint that APS' employee relations department was failing to follow proper protocols regarding the timely processing of ADA accommodations requests.

67.    Because of Price's protected activity, APS, through Price's direct supervisor, the Executive Director of Employee Relations, engaged in conduct that well might have dissuaded a reasonable employee from making or supporting a charge of discrimination, including but not limited to refusing to process Price's accommodation request, and initiating the process to terminate Price in late August 2022.

68.    As a result of APS' retaliatory conduct,  Price has suffered monetary damages, including but not limited to back pay and front pay; loss of future

benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT III

### Plaintiff Kristie Walker

### (retaliatory mistreatment in violation of 42 U.S.C.A. § 2000e-3(a))

69.     Plaintiff Walker incorporates by reference paragraphs 1-59 of this complaint as though set forth fully and separately herein.

70.     Walker engaged in protected activity by opposing acts or practices made unlawful under Title VII, in that she made multiple internal complaints to APS of conduct that constitutes gender discrimination or retaliation, including (1) a failure to remedy a hostile work environment in the spring of 2022 that was at least partly motivated by gender; (2) ongoing retaliatory conduct during the summer or 2022 that was motivated by her earlier complaint of sex-based discrimination; and (3) her department's failure to adequately resolve Title IX complaints that included employee complaints.

71.     Because of Walker's protected activity, APS, through Walker's direct supervisor, the Executive Director of Employee Relations, engaged in conduct that well might have dissuaded a reasonable employee from making or supporting a charge of discrimination, including but not limited to instigating a plan to terminate

Walker based on false and pretextual claims of failing to adequately perform her duties.

72.    As a result of APS' retaliatory conduct, Walker has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT IV
### Plaintiff Kristie Walker
### (Retaliation in violation of 42 U.S.C.A. § 12203(a))

73.    Plaintiff Walker incorporates by reference paragraphs 1-59 of this complaint as though set forth fully and separately herein.

74.    Walker engaged in protected activity under the ADA by making an internal complaint that APS' employee relations department was failing to follow proper protocols regarding the timely processing of ADA accommodations requests.

75.    Because of Walker's protected activity, APS, through Walker's direct supervisor, the Executive Director of Employee Relations, engaged in conduct that well might have dissuaded a reasonable employee from making or supporting a charge of discrimination, including but not limited to instigating a plan to terminate

Walker based on false and pretextual claims of failing to adequately perform her duties.

76.     As a result of APS' retaliatory conduct, Walker has suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT V
**Plaintiffs Kristie Walker and Fonda Price**
**(Retaliatory Hostile Environment in violation of Title VII and the ADA)**

77.     Plaintiffs incorporate by reference paragraphs 1-59 of this complaint as though set forth fully and separately herein.

78.     Plaintiffs engaged in protected activity under Title VII and the ADA by reporting discriminatory and retaliatory conduct based on gender, as alleged herein at paragraphs 61 and 70, and disability, as alleged herein, at paragraphs 66 and 74.

79.     As a direct and proximate cause of their opposition to discrimination and retaliation under Title VII and the ADA, Plaintiffs were subjected to retaliatory conduct by the Executive Director of the employee relations department, including but not limited to (1) verbally abusive treatment; (2)

unjustified criticisms of their job performance; (3) the initiation of plans to terminate their employment.

80.    The aforementioned retaliatory conduct, as described in paragraph 79, taken in its totality would have dissuaded a reasonable employee from making or supporting a charge of discrimination under Title VII and the ADA, and therefore constitutes a retaliatory hostile work environment.

81.    Despite having actual knowledge of the retaliatory hostile environment Plaintiffs experienced, APS failed to take prompt remedial action, and as a result is liable for the harassment Plaintiffs experienced.

82.    As a result of the retaliatory hostile environment to which they were subjected, Plaintiffs have each suffered monetary damages, including but not limited to back pay and front pay; loss of future benefits; and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## PRAYER FOR RELIEF

Wherefore, based on the above stated claims, Plaintiffs demand a trial by jury and that the following relief be granted:

A. Back pay, front pay, and lost benefits.

B. Compensatory damages to the extent allowed by law;

C.  Attorneys' fees and costs of litigation.

D.  Pre-judgment and post-judgment interest at the highest lawful rate.

E.  Such other equitable and monetary relief as the court deems just and proper.

F.  A declaratory judgment that Defendant's actions violated Plaintiff's statutory and constitutional rights, and that Defendant shall refrain from future unlawful discriminatory and retaliatory conduct in its employment practices.

Respectfully submitted, the 4th day of September, 2023.

**HKM Employment Attorneys LLP**
*s/Artur Davis*
Artur Davis[2]
ASB-3672-D56A
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com
*s/Kendra Livingston*
Kendra Livingston
GA Bar No. 791806
3344 Peachtree Road NE, Suite 800
Office # 35
Atlanta, GA 30326
Direct: 678-446-3016
klivingston@hkm.com

---

[2]Artur Davis will promptly file for admission *pro hac vice* as an attorney of record in this action. Mr. Davis is licensed in the state of Alabama and the District of Columbia.