IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EMILY FOX,                          :
                                    :
          *Plaintiff*,              :          CIVIL ACTION FILE NO.
                                    :
v.                                  :
                                    :
                                    :          JURY DEMAND
MILESTONE PEDIATRICS &              :
FAMILY MEDICINE, P.C. and           :
IYABO OKUWOBI,                      :
                                    :
          *Defendants*.             :

## COMPLAINT

**NOW COMES** Emily Fox (hereinafter "Plaintiff") and asserts this Complaint

against Defendants Milestone Pediatrics & Family Medicine, P.C. (hereinafter

"Defendant Milestone") and Iyabo Okuwobi (hereinafter "Defendant Okuwobi")

(Defendant Milestone and Defendant Okuwobi hereinafter collectively

"Defendants") for violations of the Fair Labor Standards Act, 29 U.S.C. §201 *et.*

*seq.* ("FLSA" or "the Act") and for violations of Georgia state law.  Plaintiff states

more fully as follows:

## INTRODUCTION

1.     Plaintiff worked for Defendants within three (3) years preceding the filing of

this Complaint (hereinafter "the Actionable Period").  Defendants failed to and

willfully refused to pay the Plaintiff her minimum wages equal as required by the

FLSA, 29 U.S.C. §207. Additionally, Defendants failed to pay Plaintiff for hours

over and beyond the contracted rate as well as other benefits pursuant to her contract with Defendant Milestone. Plaintiff seeks her unpaid wages for three (3) years preceding the filing of this Complaint, liquidated damages thereon, her attorneys' fees and costs of litigation under the FLSA, and additionally her unpaid salary at the hourly rate as well as benefits accrued due to a breach of contract (or, alternatively) promissory estoppel, along with Plaintiff's attorney's fees and costs of litigation under O.C.G.A. §13-6-11.

## JURISDICTION

2.      Plaintiff brings this action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*, and for pendant state law claims. This Court has original jurisdiction pursuant to 29 U.S.C. §216(b), and 28 U.S.C. §1132(a)(1)(B), §1331, and §1337. The Court has supplemental jurisdiction over Plaintiff's Georgia state law claims pursuant to 28 U.S.C. §1367.

## VENUE

3.      Defendant Milestone is a Georgia entity with its business, a pediatric doctor's office,  located at 1438 McLendon Drive, Decatur, DeKalb county, Georgia 30033. Defendant Milestone may be served via its registered agent Defendant Okuwobi at the same address. On information and belief, Defendant Okuwobi works and resides in the Northern District of Georgia. Venue for this action properly lies in the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. §1391(b) and

§1391(c)(2), as the acts and commissions giving rise to this action occurred in the Northern District of Georgia and the action is not founded solely on diversity of citizenship.

## DEFENDANTS' COVERAGE UNDER THE FLSA
### Sub-Part 1: Defendant Milestone

4.      Defendant Milestone operates a business offering medical care to children in the Decatur, Georgia area.

5.      Defendant Milestone buys supplies and equipment, including computers, medical equipment, and medical supplies, out of the stream of interstate commerce.

6.      Defendant Milestone utilizes interstate credit/debit card processing in the course of its business.

7.      Defendant Milestone utilizes the interstate banking system in the course of its business.

8.      Defendant Milestone, and each of its employees, including doctors, nurses, and office staff operate within the stream of interstate commerce.

9.      In calendar year 2022, Defendant Milestone, had an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

10.     For calendar year 2023, Defendant Milestone, has an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000), exclusive of excise taxes at the retail level, as defined in §3(s)(1) of the Act. 29 U.S.C. §203(s)(1).

11.     Defendant Milestone, constitutes an enterprise engaged in commerce or in the production of goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act, 29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a), for the years 2022 through 2023.

12.     For the calendar year 2022, Defendant Milestone was covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

13.     For the calendar year 2023, Defendant Milestone is covered by, and subject to, the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*

14.     Defendant Milestone, is an "employer" in an industry affecting commerce within the meaning of §3(d) of the Act, 29. U.S.C. §203(d).

15.     Defendant Milestone, was an "employer" of Plaintiff as defined in §3(d) of the Act.  29 U.S.C. §203(d), in 2022.

16.     Defendant Milestone, was an "employer" of Plaintiff as defined in §3(d) of the Act.  29 U.S.C. §203(d), in 2023.

17.     During the relevant time period – June 2022 through July 2023 – Defendant Milestone, constituted an enterprise engaged in commerce or in the production of

4

goods or services for commerce within the meaning of §3(r), §3(s)(1), §6(a) and §7(a) of the Act.  29 U.S.C. §203(r), §203(s)(1), §206(a) and §207(a).

## Sub-Part 2: Defendant Okuwobi as "Employer" under the FLSA

18.    Defendant Okuwobi is an owner and/or has an interest in Defendant Milestone.

19.    Defendant Okuwobi, along with other individuals, manages the day-to-day operations of Defendant Milestone.

20.    Defendant Okuwobi hired Plaintiff.

21.    Defendant Okuwobi authorized the agreement between Defendant Milestone, Defendant Okuwobi, and Plaintiff.

22.    Defendant Okuwobi determined the terms and conditions of Plaintiff's employment, including her rate of pay, form of payment, her job duties and her classification as an employee.

23.    Defendant Okuwobi acted directly in the interest of Defendant Milestone, in relation to Defendant Milestone's employees, such as Plaintiff.  Thus, Defendant Okuwobi was an "employer" of the Plaintiff within the meaning of §3(d) of the FLSA, 29 U.S.C. §203(d).

## FLSA RELATED FACTS

24.     Plaintiff was employed by Defendants from approximately June 20, 2022, through on or about July 26, 2023 (hereinafter the "Employment Period.")

25.     Defendants employed Plaintiff as a licensed nurse practitioner pursuant to an employment contract (hereinafter "Employment Agreement") agreed to with Defendant Milestone for work at the pediatric practice Milestone Pediatrics & Family Medicine, PC, located at 1438 McLendon Drive, Decatur, DeKalb County, Georgia 30033 (hereinafter "Pediatric Clinic.") The Employment Agreement is attached as Exhibit "1."

26.     During the Employment Period, Plaintiff was licensed as a pediatric nurse practitioner in Georgia.

27.     Pursuant to the Employment Agreement, the Defendants and Plaintiff agreed that: (a) Defendants would employ Plaintiff for four (4) shifts per week, from the period 8:00 AM until 5:00 PM (or whenever the Plaintiff's work duties are fully completed).

28.     During the Employment Period, Plaintiff's duties as a nurse practitioner included, but was not limited to, the following tasks and duties: (a) evaluate and treat pediatric patients who present with an illness or injury; (b) perform well child checks, sports physicals and immunizations; (c) provide education to patients and families; (d) refer patients to specialists as needed; (e) review labs and imaging

results; (f) review reports/notes from outside providers; (g) update patients and families on results; and, (h) work with staff to provide safe and efficient care guided by AAP and CDC guidelines and standards of care.

29.    Plaintiff's work week for the Employment Period was Saturday through Friday.

30.    Plaintiff's initial salary during the Employment Period was $116,500 for four working days in a work week, plus additional benefits such as a paid holidays, retirement benefits, health insurance, and reimbursement and paid work days for continuing medical education (hereinafter "CME.")

31.    On or about October 18, 2022, Defendants agreed to and increased Plaintiff's salary to $120,000.00 per annum for four days of work each work week.

 Defendants agreed to and increased Plaintiff's salary on or about March 21, 2023 to $130,000.00 per annum for four days of work each week.

32.    Plaintiff's duties required her to regularly work through her lunch period, such that Plaintiff rarely used more than thirty (30) minutes per lunch during the Employment Period. Many of the days Plaintiff worked for Defendants she did not take a lunch at all, or ate while working.

33.    On April 27, 2023, Plaintiff had surgery that necessitated approximately two (2) weeks off work, from approximately April 27, 2023, through May 10, 2023.

Defendants did not pay Plaintiff for this time off from approximately April 28th through May 10th, 2023.

34.    On or about May 11, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

35.    Defendants paid Plaintiff a total of $204.50 for the bi-weekly pay period April 29, 2023, through May 12, 2023. This paystub is attached as Exhibit "2."

36.    On or about May 15, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

37.    On or about May 16, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

38.    On or about May 17, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

39.    On or about May 18, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

40.    On or about May 22, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

41.    On or about May 23, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

42.    On or about May 24, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

43.    On or about May 25, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

44.    On or about June 2, 2023, Defendants paid Plaintiff a total of $1957.26 for the bi-weekly pay period May 13, 2023, through May 26, 2023. This paystub is attached as Exhibit "3."

45.    On or about May 29, 2023, Plaintiff was available for work for a paid holiday.

46.    On or about May 30, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

47.    On or about May 31, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

48.    On or about June 1, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

49.    On or about June 5, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

50.    On or about June 6, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

51.    On or about June 7, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

52.    On or about June 8, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 1:00 PM.

53.    Defendants have failed to pay Plaintiff any wages, salary, or benefits for the bi-weekly pay period of May 27, 2023, through June 9, 2023.

54.    On or about June 12, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

55.    On or about June 13, 2023, Plaintiff worked for Defendants from approximately 7:00 AM through 3:00 PM.

56.    On or about June 14, 2023, Plaintiff worked for Defendants from approximately 8:00 AM through 5:00 PM.

57.    Defendants have failed to pay Plaintiff any wages, salary, or benefits for the bi-weekly pay period of June 10, 2023, through June 24, 2023.

58.    Defendants informed Plaintiff that Defendants were withholding Plaintiff's wages and benefits for May and June 2023 due to her reduced work schedule.

## DEFENDANTS' ACTIONS WERE "WILLFULL"

59.    Defendants either knew, or acted with reckless indifference, that their failure to pay minimum wages and/or overtime wages violated FLSA.

60.    On information and belief, Defendants never sought any professional advice regarding their legal obligations under the FLSA.

61.    On information and belief, Defendants never sought any professional advice regarding the proper classification of workers, the payment of minimum wage, and/or the payment of overtime wages.

## PLAINTIFF'S STATE LAW CLAIMS FACTS
### Sub-Part A: State Law Claim Employment Agreement

62.    Defendants employed Plaintiff to work at their Pediatric Office through a written employment contract, effective for one year (with a renewal option), from June 20, 2022, through June 19, 2023. The Employment Agreement is attached as Exhibit "1."

63.    The Employment Agreement states that the Plaintiff's work is for four days a week, Monday, Tuesday, Thursdays, and Fridays.

64.    The Employment Agreement states, "Daily work starts promptly at 8 am and ends at 5 pm, (or whenever your daily work duties are fully completed) with 1 hour for lunch from 1-2pm (sic); lunch hour is contingent on personally efficiently (sic) managing your own work flow.

65.    The Employment Agreement states, "You will not be required to participate in any after hours call coverage. However, if a patient you have seen requires you to call back after hours, you will be notified to contact them by phone. However, the after hours phone call coverage may change at any time. [Defendant Milestone] may need you to participate in phone call coverage in the future, but the call coverage will then be shared by you and the other providers in the group, and will be no more than 1 in 3 call [sic]. Phone call only [sic]."

66.    The Employment Agreement states, "Your annual salary from June 20th[sic] will be $116,500.00. Your salary will be considered for further increases annually. The rate of increase will depend on work performance, which will be determined by various metrics like productivity, efficient coding, maintenance of proper and efficient medical record documentation. [sic] and general reviews from patients, parents, colleagues and support staff."

67.    The Employment Agreement states, "Other benefits: Full malpractice coverage will be provided by Employer. Premium individual medical, dental, vision coverage. Employer will cover $311.00 per month of [Plaintiff's] medical insurance premium. Retirement plan-Employee eligible to participate in either 401k or Roth IRA with 4% match by Employer to commence after first year of employment."

68.    The Employment Agreement states, "Employer will reimburse you for the cost of license renewals, and board certification renewals. However, you will not be eligible for these in your first 90 days of employment."

69.    The Employment Agreement states, "Vacation will be 15 paid working days per annum. Vacation is accrued all through the year, starting from the date of employment. Vacation or CME time cannot be taken in the first 90 days of this contract, unless previously agreed upon. All major holidays will be covered. Employee is required to provide a six (6) week notice to Employer for vacation or CME time."

70.    The Employment Agreement states, "CME time off will be 3 working days, with $1500 in expenses paid by Employer. Proof of attendance of the CME and proof of payment and expenses will be needed before the $1500 is reimbursed."

71.    The Employment Agreement states, "Termination notice by employer will be 30 days [sic]."

72.    The Employment Agreement states, "In the event of termination of employment by either party, you will not be permitted to practice within an eight (8) mile radius of 1438 McLendon Drive, Decatur, Georgia 30033 for 18 months. In the event of termination of your employment solicitation of patients and staff of Milestone Pediatrics will be strictly prohibited."

### Sub-Part B: State Law Breach Of Contract – Insurance Benefits

73.    In or about September 1, 2022, Plaintiff, per the Employment Agreement's terms, became eligible for health insurance benefits, including medical, dental, life and vision insurance.

74.    In or about September 1, 2022, Plaintiff contacted Defendant Okuwobi via e-mail regarding Defendant Milestone with health insurance.

75.    On or about September 22, 2022, Defendant Okuwobi informed Plaintiff via e-mail that Defendant Okuwobi was "working on adding you to the health insurance."

13

76.    On or about September 30, 2022, Defendant Milestone, through Defendant Okuwobi, provided an enrollment application and other benefits related paperwork to apply for the Plaintiff's health, vision, life and dental insurance.

77.    On or about September 30, 2022, Plaintiff completed her insurance benefits application(s) and returned them to Defendant Milestone.

78.    On or about October 13, 2022, Defendants supplied Plaintiff with proof of her insurance benefits.

79.    On or about October 14, 2022, Defendants informed Plaintiff that her insurance was being cancelled due to the cost and that Plaintiff could enroll for insurance during open enrollment and benefits would start on January 1, 2023.

80.    After Defendants informed Plaintiff that her insurance was cancelled, Plaintiff protested that cancelling Plaintiff's medical insurance contravenes the terms of the Employment Agreement.

81.    On or about October 15, 2022, Defendants and Plaintiff amended the Employment Agreement by agreement to the following changes: (a) Plaintiff would pay for her own insurance premiums for September and October 2022; (b) Defendants would pay for 100% of Plaintiff's health, dental, and vision insurance beginning on November 1, 2022;  (c) Defendants would increase Plaintiff's salary to $120,000.00 per year beginning in the next payroll period, on or about the week of October 30, 2022; and, (d) Plaintiff's amended working schedule is for Monday

14

and Wednesdays from 8:00 AM to 5:00 PM, with a one hour period for lunch, and Tuesdays and Thursdays from 7:00 AM to 3:00 PM, with no lunch period.

82.     Defendants regularly paid Plaintiff's medical, dental, and vision insurance per the agreement for the remainder of 2022 and some time in 2023.

83.     In or about March 21, 2022, Defendants and Plaintiff agreed to modify the Employment Agreement again with a merit based pay raise to $130,000.00 per annum.

84.     On or about April 27, 2023, Plaintiff had surgery and was paid with paid time off for this day.

85.     On or about May 1, 2023, through May 10, 2023, for a period of seven (7) work days, the Plaintiff recovered from surgery and elected to receive no wages for these days not worked.

86.     On or about May 11, 2023, the Plaintiff returned to work and worked her scheduled shifts until June 14, 2023.

87.     On or about June 27, 2023, Defendants provided Plaintiff with a written notice terminating their Employment Agreement in thirty (30) days.

88.     Defendants agreed to continue to pay Plaintiff's insurance premiums for Plaintiff's medical, vision, and dental insurance through mid-August 2023.

89.     On information and belief, Defendants did not pay Plaintiff's insurance premiums for Plaintiff's contracted for medical, dental, and vision insurance for the period after July 31, 2023.

### **Sub-Part C: State Law Breach Of Contract – Unpaid Time**

90.     The Parties' Employment Agreement states the hours Plaintiff is to be employed and paid her salary, later modified by agreement by the Defendants and Plaintiff.

91.     Defendants provided Plaintiff with an unpaid leave for the period May 1, 2023, through May 10, 2023.

92.     On May 11, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM.

93.     On May 19, 2023, Defendants paid Plaintiff a total of $204.50, before taxes and other payments were deducted, for the pay period April 29, 2023, through May 12, 2023.

94.     Defendants failed to pay Plaintiff's salary for all her hours worked during the pay period April 29, 2023, through May 12, 2023.

95.     On May 15, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

96.    On May 16, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

97.    On May 17, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

98.    On May 18, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

99.    On May 22, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

100.  On May 23, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

101.  On May 24, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

102.   On May 25, 2023, Plaintiff worked the "preceptor" position from approximately 8:00 AM through 5:00 PM, while also working in the "telehealth" position from 9:00 AM to 1:00 PM.

103.   On June 2, 2023, Defendants paid Plaintiff a total of $1,957.26, before taxes and other payments were deducted, for the pay period May 13, 2023, through May 26, 2023.

104.   Defendants failed to pay Plaintiff's salary for all her hours worked during the pay period May 13, 2023, through May 26, 2023.

105.   On May 29, 2023, Plaintiff was employed by Defendants and provided with a paid holiday, Memorial Day.

106.   On May 30, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

107.   On May 31, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

108.   On June 1, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

109.   On June 5, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

110.   On June 6, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

111.   On June 7, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

112.   On June 8, 2023, Plaintiff worked from approximately 8:00 AM through 1:00 PM.

113.   Defendants did not pay Plaintiff any monies or salary for the pay period May 27, 2023, through June 9, 2023.

114.   On June 12, 2023, Plaintiff worked from approximately 8:00 AM through 5:00 PM.

115.   On June 13, 2023, Plaintiff worked from approximately 7:00 AM through 3:00 PM.

116.   On June 14, 2023, Plaintiff worked from approximately 8:00 AM through 5:00 PM.

117.   Defendants did not pay Plaintiff any monies or salary for the pay period June 10, 2023, through June 23, 2023.

118.   On Tuesday, June 27, 2023, Defendants notified Plaintiff her employment would end in thirty (30) days on July 26, 2023. See the attached Exhibit "4."

119.   Plaintiff was available for work and ready, able, and willing to work on behalf of the Defendants for the period June 27, 2023, through July 26, 2023.

120.   Defendants have not paid Plaintiff any salary, wages, or monies for the period June 27, 2023, through July 26, 2023.

121.   Defendants owe Plaintiff her salary for one month, one-twelfth of Plaintiff's annual salary of $130,000.00, or Ten Thousand, Eight Hundred Thirty Three Dollars and Thirty Three Cents ($10,833.33).

### **Sub-Part D: State Law Breach Of Contract – Unpaid CME**

122.   The Parties' Employment Agreement states that, "[Continuing Medical Education] time off will be three (3) working days, with $1500 [sic] in expenses paid by Employer. Proof of attendance of the CME and proof of payment and expenses will be needed before the $1500 is reimbursed." See the attached Exhibit "1."

123.   In or about March 2023 the Defendants approved Plaintiff's CME leave and cost for three days of paid leave, scheduled for August 4, 2023.

124.   Subsequently, Plaintiff submitted her receipt for the cost of her CME to the Defendants. A copy of the Plaintiff's CME receipt and certificate is attached hereto as Exhibit "5."

125.   Defendants have refused to re-imburse Plaintiff for $1500.00 of her CME costs plus 3 paid working days.

### **COUNT I:  FAILURE TO PAY MINIMUM WAGES UNDER THE FLSA**

126.   Plaintiff restates and realleges paragraphs one (1) through one-hundred-twenty-five (125), *supra*.

127.   Defendants failed and refused to pay Plaintiff any wages and/or less than the federal minimum wage of $7.25 per hour for the work weeks described above. Defendants have violated the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §206 and 216.

128.   Defendants owe Plaintiff an amount to be determined at trial for failure to pay wages in these work weeks stated above equal to or greater than the federal minimum wage rate. 29 U.S.C. §206 and 216.

129.   Defendants owe Plaintiff an equal amount to be determined at trial for liquidated damages for failure to pay wages in these work weeks stated above equal to or greater than the federal minimum wage rate. 29 U.S.C. §206 and 216.

## COUNT II:  FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

130.   Plaintiff restates and realleges paragraphs one (1) through one-hundred-twenty-five (125), *supra*.

131.   For all work weeks in the Employment Period in which Defendants employed Plaintiff, Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §207, by failing to pay Plaintiff one and one-half (1.5) times her "regular rate" of pay for all hours worked in excess of forty (40) hour per workweek.

132.   Defendants owe Plaintiff back wages for all unpaid overtime, in an amount to be determined at trial, pursuant to 29 U.S.C. §207 and §216.

21

133.   Additionally, Defendants owe Plaintiff liquidated damages in an equal amount for all unpaid overtime wages pursuant to 29 U.S.C. §207 and §216.

134.   Additionally, Defendants owe Plaintiff her reasonable attorneys' fees and costs associated with this Action pursuant to 29 U.S.C. §216.

### COUNT III:  BREACH OF CONTRACT UNDER GEORGIA LAW

135.   Plaintiff restates and realleges paragraphs one (1) through one-hundred-twenty-five (125), *supra*.

136.   Defendants offered, and Plaintiff both accepted and performed the work for the following pursuant to the Employment Agreement for which the Defendants have failed to pay and/or provide to the Plaintiff:

(a) dental, vision, and/or health insurance benefits for the period July 26, 2023, through August 15, 2023;

(b) salary at the prorated rate for the days worked from on or about May 11, 2023, through June 14, 2023 [see paragraphs ninety-two (92) through one-hundred-sixteen (116)] for which Plaintiff worked but was not paid;

(c) salary at the prorated rate for the days for which Plaintiff was available and able to work but not paid per the Employment Agreement from on or about June 14, 2023, through July 26, 2023 [see paragraphs ninety-two (92)

22

through one-hundred-twenty-one (121)] for which Plaintiff worked but was not paid; and,

(d) reimburse Plaintiff for $1,500.00 in CME expenses and the three (3) days of paid time at the pro-rated rate of $130,000.00 annually.

137.  To date, Defendants have failed and/or refused to pay Plaintiff per the agreements stated above in paragraph 136.

138.  Under the terms of their agreements, and pursuant to Georgia law, Defendants, owe Plaintiff for the unpaid work per agreements, plus pre-judgment interest and post-judgment interest,  in an amount to be proven at trial.

## COUNT IV:  (IN THE ALTERNATIVE) CLAIM FOR PROMISSORY ESTOPPEL UNDER GEORGIA LAW

139.  Plaintiff restates and realleges paragraphs one (1) through one-hundred-twenty-five (125), *supra*.

140.  Defendants offered to pay and Plaintiff both performed the work and expended considerable energy on behalf of Defendants during the Employment Period with the expectation that the Plaintiff would be promptly paid for the work and energy expended. Specifically, Plaintiff performed the following work/services on behalf of the Defendants for which the Plaintiff expected to be paid and/or renumerated:

(a) Plaintiff worked for Defendants for the period May 11, 2023, through June 14, 2023;

(b) Plaintiff was available for employment and ready and able to work for the period June 29, 2023, through July 26, 2023; and,

(c) Plaintiff timely booked CME and expected to attend CME with $1,500.00 in renumeration plus three (3) days of paid time off at $130,000.00 in annual salary, prorated.

141.  Defendants have never paid Plaintiff for these services / work performed in paragraph 140 above on behalf of the Defendants despite her repeated demands.

142.  Defendants stated that Plaintiff would be paid for these services / work performed on behalf of the Defendants.

143.  Defendants happily utilized services / work of Plaintiff to complete the Defendants own work requirements.

144.  Defendants, pursuant to Georgia law, owe Plaintiff for the unpaid services / work, plus pre-judgment interest and post-judgment interest, in an amount to be proven at trial.


## **COUNT V: CLAIM FOR ATTORNEYS FEES UNDER GEORGIA LAW**

145.  Plaintiff restates and realleges paragraphs one (1) through one-hundred-twenty-five (125), *supra*.

146.   Defendants have acted in bad faith in these transactions, and Defendants have been stubbornly litigious and caused Plaintiff unnecessary trouble and expense, entitling Plaintiff to recover her attorneys' fees and expenses of litigation pursuant to O.C.G.A. §13-6-11.

## JURY TRIAL

147.   Plaintiff demands a jury trial as to all issues triable by a jury trial.

## PRAYER FOR RELIEF

148.   **WHEREFORE**, Plaintiffs respectfully requests that this Court:

A. Grant Plaintiff a trial by jury as to all triable issues of fact;

B. Find that Defendant Milestone Pediatrics & Family Medicine, P.C. is covered by, and subject to, the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*;

C. Find that Defendant Iyabo Okuwobi acted directly in the interest of Defendant Milestone Pediatrics & Family Medicine, P.C. relation to the Plaintiff, and that as such, Defendant Iyabo Okuwobi was an "employer" of Plaintiff within the meaning of §3(d) of the Act, 29 U.S.C. §203(d);

D. Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, have violated the Fair Labor

Standards Act, 29 U.S.C. §201 *et. seq.*, by failing to properly pay the Plaintiff her minimum wages as required;

E. Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, have violated the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.*, by failing to properly pay the Plaintiff her overtime wages as required;

F. Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, acted "willfully" thus entitling the Plaintiff to recover her damages under the Act for the period of three (3) years from the date of this Complaint;

G. Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, be ordered to pay Plaintiff's minimum wages, equal to her "regular rate" of pay, for all workweeks in which Plaintiff worked but was not paid in the preceding two years in an amount to be determined at trial;

H. Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, be ordered to pay Plaintiff's overtime wages, at a rate equal to one and one-half her "regular rate" of pay, for all workweeks in which Plaintiff worked more than forty (40) hours in the in the preceding two years but was not paid overtime;

26

I.  Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, be ordered to pay Plaintiff liquidated damages under the Act for any workweeks in which Plaintiff worked more than forty (40) hours in the in the preceding two years but was not paid overtime;

J.  Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi, collectively, be ordered to pay Plaintiff's reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. §216;

K.  Find that Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi violated their contractual agreements and award an amount to be determined at trial;

L.  In the alternative to breach of contract, find that Plaintiff detrimentally relied upon Defendant Milestone Pediatrics & Family Medicine, P.C., and Defendant Iyabo Okuwobi promises for Plaintiff's services and/or work and award an amount to be determined at trial;

M.  Award Plaintiff punitive damages, pre-judgment, and post-judgment interest for her state law claims in an amount to be determined at trial;

N.  Award the Plaintiff his reasonable attorney's fees and expenses of litigation on Plaintiff's state law claims pursuant to O.C.G.A. § 13-6-11; and,

O. For such other and further relief as the Court finds just and appropriate.

Respectfully submitted this 6th day of September, 2023.

*/s/ Peter H. Steckel*
Peter H. Steckel
Georgia Bar Number 491935
*Counsel for Plaintiff*

**Steckel Law, L.L.C.**
1120 Ivywood Drive
Athens, Georgia 30606
Tele:  (404) 717-6220
Email: peter@SteckelWorkLaw.com