## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| CHELSEA DAVIS, | ) | |
|     Plaintiff, | ) | |
| | ) | Civil Action File |
| v. | ) | No. |
| | ) | |
| ATLANTA LUXURY MOTORS, INC, | ) | JURY TRIAL |
| ALM AUTOMOTIVE GROUP LLC, | ) | DEMANDED |
| ALLIANCE CARS LLC | ) | |
| dba ALM NEWNAN, AND | ) | |
| KHUSHWANT BHATIA | ) | |
|     Defendants. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Chelsea Davis ("Plaintiff" or "Ms. Davis"), by and through undersigned counsel, and files this, her Complaint for Damages, showing the Court as follows:

## NATURE OF COMPLAINT

1. Plaintiff brings this action for damages, and reasonable attorney fees against Defendants Atlanta Luxury Motors, Inc., ALM Automotive Group, LLC, Alliance Cars, LLC dba ALM Newnan, and Khushwant Bhatia("Defendants" or "ALM") for violations of her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et. seq.*, of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e ("Title VII"), Pregnancy Discrimination Act of 1978 and certain applicable state law claims.

**PARTIES**

2.    Plaintiff is a citizen of the United States of America and resident of the State of Georgia.

3.    Atlanta Luxury Motors, Inc. was formed on April 28, 2008.

4.    ALM Automotive Group LLC was formed on April 16, 2015

5.    Alliance Cars LLC dba ALM Newnan was formed on December 31, 2014.

6.    Atlanta Luxury Motors, Inc. is a corporation with its principal place of business in Georgia.

7.    Atlanta Luxury Motors, Inc. may be served with process by delivering a copy of the summons and complaint at 949 Image Avenue, Suite B, Atlanta, GA, 30318.

8.    ALM Automotive Group LLC is a limited liability company with its principal place of business in Georgia.

9.    ALM Automotive Group LLC may be served with process by delivering a copy of the summons and complaint at 3740 Davinci Court Ste 350, Norcross, GA, 30092.

10.    Alliance Cars LLC dba ALM Newnan is a limited liability company with its principal place of business in Georgia.

11.    Alliance Cars LLC dba ALM Newnan may be served with process by delivering a copy of the summons and complaint at 3740 Davinci Court Ste 350, Norcross, GA, 30092.

12.   Khushwant Bhatia ("Bhatia") is an individual and the owner of the various ALM entities named as Defendants.

13.   Bhatia may be served with process by delivering a copy of the summons and complaint to 3740 Davinci Court Ste 350, Norcross, GA, 30092.

14.   At all times relevant, Defendants were licensed to conduct business within this district.

15.   During all times relevant hereto, Defendants have employed fifty or more employees, within 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

16.   ALM is now and, at all times relevant hereto, has employed fifteen (15) or more employees for the requisite duration under Title VII.

## JURISDICTION AND VENUE

17.   This Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 over Count I of this Complaint, which arises out of FMLA.

18.   This Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 over Count II of this Complaint, which arises out of FMLA.

19.   This Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 over Count III of this Complaint, which arises out of Title VII.

20.   This Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 over Count IV of this Complaint, which arises out of Title VII.

21.     This Court has federal question jurisdiction pursuant to 28 U.S.C §1331 over Count V of this Complaint, which arises out of The Pregnancy Discrimination act of 1978.

22.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VI of this Complaint, which arises out of the same nucleus of operative facts as Counts I-V.

23.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VII of this Complaint, which arises out of the same nucleus of operative facts as Counts I-V.

24.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count VIII of this Complaint, which arises out of the same nucleus of operative facts as Counts I-IV.

25.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count IX of this Complaint, which arises out of the same nucleus of operative facts as Counts I-V.

26.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count X of this Complaint, which arises out of the same nucleus of operative facts as Counts I-V.

27.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count XI of this Complaint, which arises out of the same nucleus of operative

facts as Counts I-IV.

28.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count XII of this Complaint, which arises out of the same nucleus of operative facts as Counts I-IV.

29.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count XIII of this Complaint, which arises out of the same nucleus of operative facts as Counts I-IV.

30.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Count XIV of this Complaint, which arises out of the same nucleus of operative facts as Counts I-IV.

31.    This Court has a specific personal jurisdiction over Defendants because the unlawful employment practices herein were committed within the Atlanta Division of Northern District of Georgia.

32.    Venue is appropriate in this Court because the unlawful employment practices herein were committed within the Atlanta Division of the Northern District of Georgia.

## ADMINISTRATIVE PROCEDURES

33.    Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII.  Plaintiff filed her charge of Discrimination with the

Equal Employment Opportunity Commission ("EEOC") on December 30th, 2020; the EEOC issued its Notice of Right to Sue on June 15th, 2023.

34.  Plaintiff timely files this action within (90) days of receipt of the Notice of Right to Sue from EEOC.

## **FACTUAL ALLEGATIONS**

35.  Plaintiff is a woman.

36.  Plaintiff was pregnant.

37.  Plaintiff decided to terminate her pregnancy.

38.  Plaintiff worked for Defendants, as a car sales person, from April 2nd, 2019 through September 14th, 2020 at its 40 International Park, Newnan, GA 30265 location.

39.  During the course of Plaintiff's employment, she was subjected to degrading comments, sexual harassment, public disclosure of private medical records, and forcible kissing, among other denigrations.

40.  Anthony Williams ("Williams") was Plaintiff's manager.

41.  Williams would numerous times tell Plaintiff to "get the fuck out of his office" when bringing him complaints of harassment throughout her employment there.

42.  On or about April of 2019, Plaintiff reported her co-worker Alex Ajura ("Ajura") to human resources for making degrading comments about her

appearance stating that, "You need to wear makeup to be successful and you look like you are wearing a maternity shirt."

43.    On or about April of 2019, Vikhas Khalia ("Khalia") was one of Plaintiff's managers.

44.    On or about April of 2019, Khalia would speak in sexually provocative manner to Plaintiff.

45.    On or about April of 2019, Khalia through coercion and intimidation, convinced Plaintiff to send him provocative, nude photos with false promises of moving up in the company.

46.    During the course of Plaintiff's employment, Plaintiff made the mistake of admitting to her co-worker James Putnam ("Putnam") that she possessed naked photos and videos of herself.

47.    From that point onwards, Putnam hounded Plaintiff to show him naked pictures and videos of Plaintiff.

48.    After incessant harassment by Putnam to see photos and videos, Plaintiff caved to the pressure and showed him a video.

49.    Throughout the course of Plaintiff's employment with Defendants, Putnam would solicit Plaintiff to find him sexual partners for cash.

50.    Putnam also told Plaintiff that he had paid $40.00 to another fellow female employee for oral sex in the parking lot.

51.   Putnam told Ajura about Plaintiff possessing naked photos and videos of herself. Ajura then constantly harassed Plaintiff to see the pictures and videos.  Plaintiff under the pressure, showed him the pictures and videos as well.

52.   Plaintiff complained of the harassment to management on multiple occasions. She was told to get back to work, and nothing was done to remedy the situation.

53.   Another fellow male employee of Plaintiff, Jason Dyke ("Dyke"), began victimizing Plaintiff by harassing her to see the videos and photos.  Plaintiff, broken by the repeated victimization, showed Dyke the videos and photos of herself.

54.   At a later date, Dyke showed Plaintiff a picture of himself in his underwear with an erect penis.

55.   Khalia invited Plaintiff to dinner with the owner of the Defendant corporations Khushwant Bhatia ("Bhatia").

56.   Khalia insisted it would be good for standing in the company and likely lead to a promotion.

57.   After dinner when Plaintiff was about to leave, Bhatia grabbed Plaintiff by the arms above the elbows, pulled her close to him, and kissed her on the lips.

58.   The sexual contact was unwanted, unprovoked, and upsetting to Plaintiff.

59.   Another fellow male employee, Zachary Collins ("Collins"), confessed to Plaintiff that he was physical attracted to underage girls and that he would

consider intercourse with 10-14 year old girls. He proudly called himself a "hebephile".

60.  Troubled by the revelation and concerned for the safety of children who may come into the business, Plaintiff brought it to her manager, Anthony William's, attention, and the only response received by Plaintiff was that"they are trying to make pedophilia legal."

61.  On or about July 7th, 2020, Plaintiff told her manager Williams in confidence that she was pregnant.

62.  Plaintiff told Williams in confidence that she was not certain whether she would be seeking an abortion.

63.  Plaintiff indicated that she would need additional time off if she were to elect to have an abortion.

64.  On or about July 13, 2020, Plaintiff came to work only to find out that Williams had disclosed her pregnancy and her possibly electing to have an abortion to the entire staff at Defendants' place of business.

65.  Plaintiff was petrified that this personal information which she confided in Williams was disclosed so intentionally and blatantly to her colleagues.

66.  Soon thereafter, Plaintiff told Williams that she would need time off to have the abortion performed, and he replied, "Handle that shit on your day off."

67. Plaintiff told Williams that she will need a week off of work to complete the medical abortion and recover.  To this Williams responded, "do not come back to work unless you have a doctor's note."

68. At the time of Plaintiff's request for FMLA leave, Plaintiff had worked for Defendant for approximately 68 weeks.

69. At the time of Plaintiff's request for FMLA leave, Plaintiff had worked more than 1250 hours within the prior 52 weeks.

70. While Plaintiff was pregnant and prior to the time she decided to have an abortion performed, a coworker's wife tested positive for COVID.

71. Despite the fact that this co-worker's wife had tested positive for COVID, he sat directly next to Plaintiff, disregarding the fact that she was pregnant.

72. Plaintiff brought this to the attention of her manager, Williams, and he refused to take any action on that.

73. Plaintiff then contacted human resources and the Occupational Safety and Health Administration ("OSHA").

74. OSHA contacted Williams and told him that operations would need to be shut down due to the contact with a COVID positive person.  Williams hung up the phone and said, "OSHA can suck my dick."

75. On or about July 17, 2020, Plaintiff, depressed and emotionally distraught, had the abortion performed.

76. Upon returning to work in August, Ajura told Plaintiff, "You are going to regret murdering that baby."

77. Plaintiff reported Ajura to management, only to be told, "You know how Alex is."

78. On or about September 14th, 2020, Plaintiff complained about all the foregoing issues to Human Resources which included but not limited to, failure to give her time off when she needed, public disclosure of private medical records, degrading comments and sexual harassment, among other denigrations.  Human resources promised that they would look into Plaintiff's complaints and that her job was not in jeopardy.

79. On or about September 16th, 2020, Defendants terminated Plaintiff from her employment shortly after she raised the most recent complaint.

**CLAIMS FOR RELIEF**
**COUNT I: FMLA INTERFERENCE**

80. Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

81. ALM is an "employer" as defined by the FMLA.

82. Plaintiff was an eligible employee under the FMLA, as shown in Paragraphs 68-69.

83. Plaintiff worked at least 1250 hours for Defendant ALM within the 12 months preceding her request for medical leave pursuant to the FMLA.

84. Plaintiff was employed by Defendant ALM for more than 12 months.

85. Plaintiff was employed by Defendant ALM at a worksite with 50 or more employees within 75 miles of that worksite.

86. Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

87. Plaintiff had a serious medical condition that required more than three days of leave.

88. Plaintiff had a "serious medical condition" as defined by the FMLA.

89. Defendant improperly denied Plaintiff's request for protected medical leave.

90. Defendant interfered with rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

91. The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits.

92. As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant ALM violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

## COUNT II: FMLA RETALIATION

93.  Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

94.  ALM is an "employer" as defined by the FMLA.

95.  Plaintiff was an eligible employee under the FMLA, as shown in Paragraphs 68-69.

96.  Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

97.  Plaintiff was employed by Defendant for more than 12 months.

98.  Plaintiff was employed by Defendant ALM at a worksite with 50 or more employees within 75 miles of that worksite.

99.  Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

100.  Plaintiff had serious medical conditions that required her to take more than one day of leave.

101.  Plaintiff had a serious medical condition as defined by the FMLA.

102.  Despite Plaintiff's eligibility for FMLA leave, Defendant ALM still refused her request.

103.  On September 16th, 2020, Defendant terminated Plaintiff.

104.  Defendant terminated Plaintiff because she asked for time off for a serious

medical condition.

105. Defendant's termination of Plaintiff's employment was causally related to her attempt to exercise her rights to protected medical leave pursuant to the FMLA.

106. Defendant's termination of Plaintiff's employment for alleged policy violations constitutes unlawful retaliation against Plaintiff for her attempt to exercise her rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

107. As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

108. Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

109. Plaintiff is a member of a protected class, as shown in Paragraphs 35-37.

110. Plaintiff suffered harassment on the basis of sex in violation of Title VII, as shown in Paragraphs 39, 42, 44-45, 47-60, 64 and 75-77.

111. Plaintiff suffered harassment on the basis of pregnancy in violation of Title VII, as shown in Paragraph 61-66 and 75-77.

112.   Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of her gender in violation of Title VII.

113.   Defendant has willfully and wantonly disregarded Plaintiff's rights, and their discrimination against Plaintiff was undertaken in bad faith.

114.   The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her gender.

115.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

116.   Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT IV: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

117.   Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

118.   The reports in Paragraphs 61-66 and 75-77 constituted protected activity under Title VII.

119. Plaintiff filed a complaint with Human Resources on September 14th, 2020, detailed in Paragraph 78 constituted protected activity under Title VII.

120. Plaintiff suffered the adverse action of termination, as detailed in Paragraph 63.

121. The close temporal proximity between the protected activity referenced in Paragraph119 and 120 suggest a retaliatory motive.

122. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

123. Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendants' unlawful retaliation.

## COUNT V: THE PREGNANCY DISCRIMINATION ACT (PDA) OF 1978

124. Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

125. Plaintiff is a member of a protected class, as shown in Paragraphs 35-37.

126. Plaintiff suffered adverse employment actions detailed in Paragraphs 61-69 and 75-79.

127. The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her pregnancy and her decision to go forward with an abortion.

128. As a direct and proximate result of Defendant's violation of PDA, Plaintiff has

been made the victim of acts that have adversely affected her economic, psychological, and physical well-being.

129.   Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination due to her pregnancy.

## COUNT VI: NEGLIGENT FAILURE TO PREVENT SEXUAL HARASSMENT  (Georgia State Law)

130.   Plaintiff reassertsand incorporates Paragraphs 1-79 as if set forth fully herein.

131.   Defendant had a duty to Plaintiff to prevent sexual harassment in the workplace.

132.   By virtue of the aforementioned conduct by Ajura, Khalia, Putnam, Dyke, and Bhatia, detailed in Paragraphs 42-58, and the failure of Defendant to prevent sexual harassment, Defendant failed to use ordinary care to prevent sexual harassment in the workplace, causing Plaintiff to be sexually harassed.

133.   Defendant is thus liable to Plaintiff for damages.

## CLAIM VII: NEGLIGENT AND WRONGFUL HIRING, RETENTION AND SUPERVISION  (Georgia State Law)

134.   Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

135.   Defendant knew, or in the exercise of ordinary diligence, should have known, of the propensity of its employees, including Ajura, Khalia, Putnam, and Dyke, to

engage in sexually offensive conduct toward other employees, and Plaintiff in particular.

136. Defendant knew, or in the exercise of ordinary diligence, should have known, of the propensity of its employees, including Collins, to be physically attracted to underage girls, detailed in Paragraph 59-60.

137. Defendant nevertheless failed and refused to act to protect Plaintiff from sexual harassment and potential sexual harassment towards young girls who would come into business.

138. Defendant is thus liable to Plaintiff for all of the damages sustained as a result.

## <u>COUNT VIII: RATIFICATION (Georgia State Law)</u>

139. Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

140. Defendants knew, or in the exercise of ordinary diligence, should have known of the propensity of its employees, including Ajura, Khalia, Putnam, Dyke and Collins, to engage in sexually offensive conduct toward other employees/applicants, young girls who would come into business and Plaintiff in particular.

141. Having knowledge of the male employees' sexually offensive and tortious conduct, Defendant permitted the conduct to continue and took no action to stop its employees, including Ajura, Khalia, Putnam, Dyke, and Collins.

142.  As shown in Paragraphs 59-60 and 77, management – on behalf of Defendants – supported and ratified the actions of male employees and the owner himself partook in the actions.

143.  Defendants failed to take action to protect Plaintiff from Ajura, Khalia, Putnam, Dyke, and Bhatia despite possessing knowledge of their sexually offensive conduct.

144.  As a result, Defendants have ratified the sexually offensive conduct and are subject to liability for that conduct.

**COUNT IX: ASSUMPTION OF DUTY (Georgia State Law)**

145.  Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

146.  Defendant voluntarily assumed and undertook the duty to prevent and eliminate sexual harassment in the workplace, imposing upon them a legal duty to prevent and eliminate sexual harassment in the workplace in a non-negligent manner.

147.  Upon information and belief, Defendant assumed these duties by, *inter alia*, adopting sexual harassment policies in which they undertake to take certain steps to prevent and eliminate sexual harassment in the workplace.

148.  The employer is in the best position to end sexual harassment in its workplace.

149.  By implementing a sexual harassment policy and disciplining employees for violations of the policy, employers, including Defendants, have the ability to

prevent and correct workplace sexual harassment.

150.  Employees depend on a harassment-free working environment.

151.  Defendants voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

152.  Defendants delegate authority to supervisors over employees.

153.  Sexual harassment should not be a risk of employment.

154.  Sexual harassment is socially harmful behavior.

155.  Plaintiff suffered harm due to her reliance on Defendants to prevent sexual harassment.

156.  Plaintiff relied to her detriment on the fact that Defendants undertook the duty to prevent sexual harassment.

157.  Defendants' failure to exercise reasonable care increased the risk of harm to Plaintiff, other employees and potentially young girls coming into business.

158.  Defendants' failure to exercise reasonable care caused Plaintiff to suffer harm from the sexual harassment.


## COUNT X: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (Georgia State Law)


159.  Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

160. Ajura, Khalia, Putnam, Dyke, Williams, and Bhatia's conduct was extreme and outrageous.

161. Ajura, Khalia, Putnam, Dyke, Williams, and Bhatia's conduct caused severe emotional distress to Plaintiff.

162. Defendants allowed Plaintiff to be subjected to sexual harassment, sexual touching, public disclosure of private fact, and failed to take any corrective action.

163. Defendants intended to inflict severe emotional distress or knew that it was a high probability that sexual harassment, sexual touching, and public disclosure of private fact inflicted upon Plaintiff would do so.

164. Despite their knowledge of Ajura, Khalia, Putnam, Dyke, Williams, and Bhatia's sexual harassment, Defendants either retained Ajura, Khalia, Putnam, Dyke, and Williams or took no action to prevent Plaintiff from further harm.

165. In addition, Defendants retaliated against Plaintiff after her complaint of sexual harassment by ending her assignment.

166. This retaliation constitutes intentional, extreme/outrageous conduct by Defendants.

167. Defendants are liable for all general and special damages proximately resulting from the intentional infliction of emotional distress.

## COUNT XI: INVASION OF PRIVACY--PUBLIC DISCLOSURE OF PRIVATE FACTS (Georgia State Law)

168.   Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

169.   Defendants unlawfully disclosed Plaintiff's news of pregnancy and her possibly electing to have an abortion to the entire staff. Defendants unlawfully disclosed private medical facts knowing that they contained identifying and recognizable marks which are a clear invasion of her privacy and public disclosure of private facts.

170.   Defendants' invasion of Plaintiff's privacy has intentionally caused harm to Plaintiff which is continuing and ongoing.

171.   Plaintiff had a legal right to her privacy, and she is protected by federal and state laws.

172.   Defendants had no authority or consent to disclose Plaintiff's pregnancy or abortion news to anyone.

173.   The invasion of her privacy is offensive to Plaintiff in that it caused Plaintiff pain, suffering, anguish, embarrassment, and humiliation, which is continuing and ongoing.

174.   Defendants are liable for all general and special damages proximately resulting from the Invasion of Privacy and Public disclosure of Private Facts.

## COUNT XII: ASSAULT (Georgia State Law)

175.  Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

176.  Defendant Bhatia unlawfully approached, held, and kissed Plaintiff.

177.  Plaintiff suffered injury when she reasonably expected the offensive touching to occur.

178.  The injury from the expectation of touching occurred at a work dinner.

179.  The actions of Bhatia as an individual and as owner of the other Defendant corporations were ratified and showed the systemic nature of the sexual harassment within the workplace.

## COUNT XIII: BATTERY (Georgia State Law)

180.  Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

181.  Defendant Bhatia unlawfully approached, held, and kissed Plaintiff.

182.  Plaintiff suffered injury when an offensive, lustful, unlawful touching occurred.

183.  The injury occurred at a work dinner.

184.  The actions of Bhatia as an individual and as owner of the other Defendant corporations were ratified and showed the systemic nature of the sexual harassment within the workplace.

## COUNT XIV: PUNITIVE DAMAGES (Georgia State Law)

185. Plaintiff reasserts and incorporates Paragraphs 1-79 as if set forth fully herein.

186. Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

187. William's disclosure of Plaintiff's pregnancy and abortion were both willful and malicious and showed he had a conscious indifference to the consequences.

188. Bhatia's unwanted sexual touching was intentional, willful, and without care for the consequences. The systemic nature of that is apparent through the manner in which he managed the various Defendant corporations and allowed sexual harassment, abuse, and harm to be leveled against Plaintiff. Bhatia and the Defendant corporations ratified this conduct. The actions were willfully and maliciously made with conscious indifference to the consequences.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff judgment as follows:

a. General damages for mental and emotional suffering caused by Defendant's misconduct;

b. Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts,including ratification, condonation, and approval of said

acts;

c. Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

d. Reasonable attorney's fees and expenses of litigation;

e. Trial by jury as to all issues;

f. Prejudgment interest at the rate allowed by law;

g. Declaratory relief to the effect that Defendants have violated Plaintiff's statutory rights;

h. Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

i. All other relief to which Plaintiff may be entitled.

Respectfully submitted the 8th day of September, 2023

> The Clifton Law Firm, LLC
>
> /s/ *James W. Clifton*
> **James W. Clifton**
> Georgia Bar No.: 065211
> James.clifton@cliftonlawfirm.com

125 Flat Creek Trail
Suite 120
Fayetteville, Georgia 30214
(770) 828-7339
(770) 744-3896 (facsimile)

## **JURY DEMAND**

Plaintiff requests a jury trial on all questions of fact raised by this Complaint.

This 8th day of September, 2023.


The Clifton Law Firm, LLC

/s/ *James W. Clifton*
**James W. Clifton**
Georgia Bar No.: 065211
James.clifton@cliftonlawfirm.com

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsels for Plaintiff certifies that the within and foregoing

**COMPLAINT** was prepared using Times New Roman, 14-point font in accordance

with LR 5.1 (B).

This 8[th]day of September, 2023.

The Clifton Law Firm, LLC

/s/ *James W. Clifton*
**James W. Clifton**
Georgia Bar No.: 065211
James.clifton@cliftonlawfirm.com
