IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KELSEY SMITH,

        Plaintiff,

        v.

CIVIL CASE NO.:

CITY OF ATLANTA,
LIEUTENANT DESMOND FLOYD,
in his individual capacity,
and
OFFICER JASON BRAYBOY,
in his individual capacity

        Defendants.

## **COMPLAINT FOR DAMAGES**

COMES NOW Kelsey Smith, a Plaintiff in the above styled action and files this her Complaint for Damages.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. Kelsey Smith ("the Plaintiff") alleges that she was illegally and unconstitutionally detained

1

and arrested by Defendant Officer Jason Brayboy of the City of Atlanta Police Department, and Lieutenant Desmond Floyd, and maliciously prosecuted in violation of the Fourth Amendment of the United States Constitution and Georgia law. Plaintiff also alleges that she was arrested and prosecuted in retaliation for the exercise of her First Amendment rights, and that Defendant City of Atlanta has an unconstitutional policy and practice of providing inadequate training to its officers which resulted in the false arrest and malicious prosecution that is the subject of this suit. Finally, Plaintiff alleges that a final policy maker within the City of Atlanta – Lieutenant Desmond Floyd - ordered the arrest of the Plaintiff and insisted on her prosecution as a result of Plaintiff's First Amendment protected activity.

## PARTIES

1.

Plaintiff Kelsey Smith is a resident of the State of Georgia, United States citizen, and over the age of eighteen.

2.

Defendant Jason Brayboy is an Officer employed by the City of Atlanta

Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Jason Brayboy may be served at this address. At all times relevant to this lawsuit, Defendant Jason Brayboy acted under the color of law. Defendant Jason Brayboy is sued in his individual capacity.

3.

Defendant Desmond Floyd is a Lieutenant employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Desmond Floyd may be served at this address. At all times relevant to this lawsuit, Defendant Desmond Floyd acted under the color of law. Defendant Desmond Floyd is sued in his individual capacity.

4.

Defendant City of Atlanta ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued. The City can be served at: 55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit, Defendant City of Atlanta acted under the color of law.

5.

All defendants reside in the Northern District of Georgia.

## JURISDICTION AND VENUE

6.

This case presents a federal question and this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

8.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. § 1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

9.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and Defendants reside within this district.

10.

All of the parties herein are subject to the jurisdiction of this Court.

11.

Attorney's fees are authorized under 42 U.S.C. § 1988.

**FACTUAL ALLEGATIONS**

12.

On September 8, 2021 a small group of about 12 individuals held a peaceful protest in front of then City Councilwoman Natalyn Archibong's house.

13.

The protest was held to express the protesters' views regarding the proposed construction of a police training facility (also referred to as "Cop City") and City Council's vote related to this highly controversial political matter.

14.

The protesters were holding cardboard signs and chanting. All protesters -
including the Plaintiff in this case - made a conscious and deliberate effort to stand
as close to the curb of the street as possible in order not to obstruct any traffic
while at the same time also not stepping on the grass. This was done in order to
diligently comply with the pedestrian in the roadway statute (OCGA Sec. 40-6-96)
and in order not to trespass on anyone's property.

15.

The street on which the protesters were located is a residential neighborhood
street and has no sidewalks, crosswalks, traffic lights or lanes. The street also has
no shoulder and is not a two lane street.

16.

At all times relevant to this complaint protesters were standing or striding as
near as practicable to an outside edge of the roadway.

17.

Approximately twenty minutes after the protest started police arrived on the
scene. At this time the police did not take any action to interrupt the protest. After

approximately another twenty minutes had elapsed the police announced to the protesters that they were in violation of the noise ordinance.

18.

While the protesters were using two small megaphones the noise produced by chanting and using the megaphones was below the level specified by the noise ordinance and there was nothing in protesters' conduct that would lead officers to believe that anyone was violating the noise ordinance.

19.

Despite the fact that protesters were not violating any laws the protesters briefly paused their chanting after the police announcement and immediately ceased the operation of the megaphones for the remainder of the protest in order to comply with the police order.

20.

Soon thereafter, however, the officers stated that protesters were obstructing traffic and had to leave even though all protesters were as close to the curb as possible and several cars were able to pass them with no problem whatsoever.

In order to further alleviate any concerns that police may have the protesters started to walk while chanting as opposed to standing in place.

21.

After a few minutes of walking back and forth the protesters decided to leave the area due to police harassment, intimidation and threats of arrest. Around this time Defendant Floyd gave an order to arrest all protesters.

22.

While the protesters were walking away and were clearly in the process of leaving the area various officers conducted arrests for the crime of Pedestrian in the Roadway and arrested all protesters. This Plaintiff was arrested by Officer Jason Brayboy and charged with the offense of Pedestrian in the Roadway (OCGA 40-6-96).

23.

None of the protesters were charged with violation of a noise ordinance.

24.

During the protest other individuals (presumably neighborhood residents) were walking in the same street where the protest was taking place but were not

arrested or harassed by the police because they were not engaged in the first amendment activity that the protesters were engaged in.

25.

At some point during the protest the daughter of Councilwoman Archibong came outside and spoke with the protesters. At no point did the daughter or the Councilwoman ask the protesters to leave.

26.

Upon her arrest Plaintiff was transported to City of Atlanta Detention Center. The prosecution of Plaintiff's case was transferred from Atlanta Municipal Court to the State Court of Fulton County. The Fulton County Solicitor's Office never filed an accusation in Plaintiff's case and therefore no criminal prosecution against this Plaintiff is currently pending. Accordingly – based on this information and belief – and although the case was never formally dismissed - Plaintiff believes that Fulton County Solicitor's Office has decided not to prosecute her case.

## COUNT I
## 42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment
### (As to Defendants Brayboy, and Floyd)

27.

Paragraphs 1 through 26 are hereby re-alleged as if fully pled herein.

28.

The conduct of Defendants Brayboy and Floyd in causing and procuring the arrest and detention of Plaintiff without arguable probable cause constituted an unreasonable seizure of her person in violation of the Fourth Amendment.

29.

The law being clearly established in 2021 that an officer of the state cannot cause someone to be arrested and prosecuted without arguable probable cause, Defendants are not entitled to qualified immunity.

## COUNT II
## 42 U.S.C. § 1983: Malicious Prosecution in violation of the Fourth Amendment
### (As to Defendants Brayboy, and Floyd)

30.

Paragraphs 1 through 26 are hereby re-alleged as if fully pled herein.

31.

Defendants Brayboy and Floyd caused a criminal prosecution to be initiated against Plaintiff for the offense of pedestrian in the roadway.

32.

Defendant Brayboy not only caused the prosecution to be initiated, and arrest to be executed, but he caused the prosecution to continue based on his arrest warrant affidavit and police report such that Ms. Smith had to endure a criminal case which ultimately terminated in her favor. Defendant Floyd is liable for said prosecution due to his ordering Defendant Brayboy to initiate the arrest and prosecution.

33.

Defendants knew that there was no probable cause to support the charges against Plaintiff, but they persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

34.

Said prosecution was based upon statements by Defendants that were either knowingly false or made with reckless disregard for the truth.

35.

Accordingly, said prosecution was carried on maliciously and without probable cause, and it was ultimately terminated in Plaintiff's favor.

36.

The law being clearly established in 2021 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendants are not entitled to qualified immunity.

**COUNT III**
**Municipal Liability**
**(As to Defendant City of Atlanta)**

37.

Paragraphs 1 through 26 are hereby re-alleged as if fully pled herein.

38.

The City is liable under the Monell doctrine due to its failure to provide proper training and because there was a decision by a final policy maker to arrest Ms. Smith or to conduct arrests in cases such as Ms. Smith's.

39.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

40.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB) where 19 protesters were corralled and arrested for pedestrian in the roadway within minutes of starting to protest, and another mass arrest in May of 2022 when a number of Stop Cop City protesters were arrested in Inman Park and also charged with pedestrian in the roadway. Baker case – much like the present case - likewise involved an order given by a high ranking officer to arrest all protesters on the scene. This leads to a conclusion that there is an official policy or directive by final policy maker(s) within the City of Atlanta to engage in practice

of arresting protesters under the pretext of violating pedestrian in the roadway laws and the City – if not deliberately promoting this policy – is at the very least deliberately indifferent to it.

41.

Officer Brayboy also acted pursuant to direct instructions from a final City of Atlanta policy maker Defendant Floyd.

42.

By virtue of issuing an order to a large group of officers to "arrest all members of the group" and by virtue of his rank Defendant Floyd acted as a final policy maker for the City of Atlanta in the incident at issue in this case.

**COUNT IV**
**O.C.G.A. § 51-7-40: Malicious Prosecution**
**(As to Defendants Brayboy, and Floyd)**

43.

Paragraphs 1 through 26 are hereby re-alleged as if fully pled herein.

44.

Officers Brayboy and Floyd initiated a criminal prosecution against Ms. Smith for a misdemeanor offense, and they knew or should have known that no

14

arguable probable cause existed to believe that Ms. Smith had violated any laws or committed any crime recognized by law.

45.

Officers Brayboy and Floyd initiated and maintained the arrest and prosecution of Ms. Smith with malice, as interpreted under Georgia law.

46.

This criminal prosecution terminated favorably for Ms. Smith.

47.

As a result of the arrest and prosecution, Ms. Smith has suffered physical, emotional, mental and financial injury, entitling her to recover nominal, compensatory and punitive damages against Defendant Officers Brayboy and Floyd for the loss of her rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

**COUNT V**
**42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment**
**(As to Defendants Brayboy, and Floyd)**

48.

Paragraphs 1 through 26 are hereby re-alleged as if fully pled herein.

15

49.

Defendants deliberately initiated and or caused arrest and prosecution
against this Plaintiff because Plaintiff exercised her rights to free speech and
participated in a protest. Ms. Smith was targeted for arrest because she was part of
a protest. Plaintiff Smith would not have been arrested but for her exercise of her
First amendment rights.

50.

Defendants' actions were meant to punish the Plaintiff for her exercise of her
First Amendment rights and to prevent her from further speaking and continuing to
protest by abruptly cutting her off and arresting her.

51.

The intentional actions of Defendants in falsely accusing Plaintiff of a
misdemeanor crime interfered with Plaintiff's right of freedom of speech and
expression in violation of the First Amendment to the US Constitution.

52.

The law being clearly established in 2021 that an officer of the state cannot
make false statements or make an arrest to retaliate against a person for their

exercise of freedom of speech, Defendants are not entitled to qualified immunity.

53.

Ms. Smith alleges that she was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech or expression had not been arrested. Indeed there were other individuals walking on the same street during the protest that were not arrested because they were not engaged in speech.

54.

Ms. Smith alleges that no person has been arrested for being a Pedestrian In the Roadway when they were not engaged in the type of protected speech Ms. Smith was engaged in.

55.

Had Ms. Smith not been protesting Officers Brayboy and Floyd would not have arrested her. This is evidenced by the common knowledge that officers typically exercise their discretion not to arrest in cases of jaywalking even when probable cause is present. Ms. Smith asks that the Court take judicial notice of same or allow Ms. Smith to gather evidence of such typical exercise of discretion during discovery. Ms. Smith alleges that Officer Brayboy had no arguable probable

cause to arrest her for any crime and nothing in this complaint should be construed as an admission or allegation that arguable probable cause existed for any crime.

56.

Retaliatory motive is further evidenced by the fact that Defendant Floyd ordered the arrest of all members of the group without regard for what any individual member was doing.

## DAMAGES

57.

Paragraphs 1 through 56 are hereby re-alleged as if fully pled herein.

58.

As a direct and proximate result of the above described conduct of Defendants, Plaintiff was unreasonably and unlawfully arrested and prosecuted without probable cause and as a retaliation for exercising her First Amendment rights, was imprisoned and deprived of her liberty, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff in an amount to be

proven at trial and determined by the enlightened conscience of fair and impartial jurors.

59.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

60.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiff's constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of

19

litigation;

 e) That all costs of this action be taxed against Defendants; and

 f) That the Court award any additional or alternative relief as may be deemed

appropriate under the circumstances.

 Respectfully submitted this 8th day of September 2023.

/s/Drago Cepar, Jr. 

Drago Cepar, Jr.

Georgia Bar No. 142362

1900 The Exchange, Suite 490

Atlanta, Georgia 30339

Phone: 770-940-3233

Fax: 770-874-2987

dcepar@gmail.com