IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| S.M., by and through L.M. and K.M.; L.M.; and K.M., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE |
| ATLANTA INDEPENDENT SCHOOL DISTRICT  aka ATLANTA PUBLIC SCHOOLS and ATLANTA CITY SCHOOL DISTRICT, | ) ) ) ) ) ) | NO. _____ **JURY TRIAL REQUESTED** |
| Defendant. | ) | |

## COMPLAINT

COME NOW Plaintiffs S.M., by and through his parents L.M. and K.M.; L.M.; and K.M. and hereby file this complaint against Defendant Atlanta Independent School District, also known as Atlanta Public Schools and Atlanta City School District (hereinafter referred to as "APS").  Plaintiffs request a jury trial.

## PARTIES

1.

S.M. (hereinafter referred to as "Scott") is a disabled minor child residing in Atlanta, Georgia, and he is 12 years old and has, and has a history of having,

autism with related language disability, social skills deficits, social skills anxiety, dyspraxia, dysgraphia, and sensory integration disability.  Scott's life-long disability of autism substantially limits many of Scott's major life activities, including but not limited to Scott's ability to socially communicate, socialize, write, care for himself, perform fine motor manual tasks, and access many sensory and or socially stimulating places and activities.

2.

L.M. is Scott's mother, and she resides in Atlanta, Georgia.

3.

K.M. is Scott's father, and he resides in Atlanta, Georgia.

4.

APS is a public corporate body and political subdivision operating in Atlanta Georgia, and it receives federal funds and has the capacity to be sued.

## **JURISDICTION AND VENUE**

5.

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

6.

Venue is proper because Defendant APS is located in the Northern District of Georgia, Atlanta Division.

## COUNTS I AND II

## APS' UNLAWFUL DISCRIMINATION OF SCOTT

## IN VIOLATION OF THE ADA AS AMENDED AND SECTION 504

7.

Plaintiff Scott is a minor child with a qualifying disability under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504"), and he incorporates herein the facts set forth in paragraph 1 above.

8.

Defendant APS receives federal financial assistance.

9.

Scott seeks recovery, as set forth herein, from APS of all damages, the monetary amount to be determined by a jury, caused by APS' intentional discrimination of Scott based solely upon his disabilities in violation of the ADA and Section 504.

10.

Plaintiff Scott is a smart, fun, creative, athletic child who loves animals and caring for them, yet his social skills and social interactions are that of an elementary school student.

11.

Scott started attending APS when he was 5 years old and in kindergarten.

12.

Since Scott started attending APS, instead of APS providing Scott necessary and reasonable accommodations under Section 504 and the ADA, APS instead punished, suspended from school, restrained physically, segregated, and isolated Scott solely because of his disabilities.

13.

Due to APS' pattern and practice of intentional discrimination, removal from education, isolation, exclusion, restraints, and refusal to provide Scott necessary and reasonable accommodations, Scott was caused significant anxiety, withdrawal, diminished self-esteem and self-worth, school related anxiety, and educational deprivation.

14.

APS' intentional discrimination based solely upon disability includes that in December 2019, APS insisted Scott be placed at a school that would require Scott ride a school bus 5.5 to 6.5 hours each school day.

15.

Because Scott could not ride a school bus for 5.5 to 6.5 or possibly more hours every school day and because APS insisted upon placement was

discriminatory in other ways as well, APS provided Scott only 20 hours of time with a teacher from January 30, 2020 through March 26, 2020.

16.

APS' intentional discrimination as set forth above resulted in Scott's parents having to locate a non-discriminatory school for Scott, give proper notice of this to APS, place Scott at Jacob's Ladder at its Hope School, and seek reimbursement from APS under the Individuals with Disabilities Education Act ("IDEA").

17.

After Plaintiffs sought relief under the IDEA by filing a request for a due process hearing on January 21, 2021, the parties herein entered into a written settlement agreement on April 19, 2021.

18.

Scott seeks recovery for APS' intentional discrimination from August 1, 2022 forward, yet the prior history set forth herein is relevant to APS' pattern and practice, intent, plan, program, and motive of intentionally discriminating against Scott based solely upon his disability.

19.

For the 2022-2023 school year, which began on August 1, 2022, APS demanded that Scott be placed in one of its "regional autism units" at Sutton Middle School 7th and 8th grade campus.

20.

In APS, some of its middle schools and high schools are separated into two different schools so that the younger students at each setting can attend a school without the older students.  For example, at Sutton Middle School, there are two different physical schools – one school campus for 6th graders and one school campus for 7th and 8th graders.

21.

For the 2022-2023 school year, APS demanded that Scott attend Sutton Middle School for 7th and 8th graders when it was appropriate and necessary for Scott to attend 5th grade, and without retention, Scott would have been a 6th grader.

22.

For the 2022-2023 school year, APS demanded that Scott attend 6th grade at a school for 7th and 8th graders despite the fact all private experts involved in his education recommended that Scott attend 5th grade, as he was still behind academically (despite having made progress at the Hope School) and because placing academic demands on Scott that are too difficult or beyond his level causes him extreme anxiety.

23.

Soctt is physically very small (less than 5 percentile in height), and his social skills are severely delayed, and he withdraws when in class with students who are

much older and larger than he is as he was severely bullied in APS by his classmates.

24.

During the 2022-2023 school year, APS intentionally discriminated against Scott by excluding him totally from 5th grade placement.

25.

During the 2022-2023 school year, APS intentionally discriminated against Scott by demanding he attend a school for 7th and 8th grade students, thereby totally isolating and excluding him from 5th and from 6th grade students based solely upon his disability.

26.

During the 2022-2023 school year, APS intentionally discriminated against Scott by totally isolating and excluding him from attending school with non-disabled students his age as well as non-disabled students attending 5th grade.

27.

During the 2022-2023 school year, APS intentionally discriminated against Scott by totally excluding and isolating him from all access to 5th and 6th grade connections, special, and elective classes (such as band, chorus, physical education, art, etc.) and 5th and 6th grade events (such as pep rallies, spirit week, book fair, picnics, etc.) based solely upon Scott's disability.

28.

During the 2022-2023 school year forward, APS intentionally discriminated against Scott based solely upon his disability by excluding him from participation in intramural sports.

29.

For the 2023-2024 school year, Scott is in 6th grade, and APS is still intentionally discriminating against Scott by excluding and isolating Scott completely from attending a school for 6th grade students and from participating in 6th grade sports, connections, specials, electives, and school activities, as well as social interactions with students in 6th grade.

30.

For the 2023-2024 school year, APS is intentionally discriminating against Scott by insisting Scott be placed in one of APS' regional autism units at Sutton Middle School 7th and 8th grade campus even though Scott is in 6th grade in all regular education classes and on grade level, making friends, progressing, and not in need of APS' insisted upon self-contained, segregated, regional autism unit in a 7th and 8th grade school.

31.

For the 2022-2023 and 2023-2024 school years, APS was and still is discriminating against Scott by demanding he be placed in APS' segregated

regional autism unit where most, if not all, of the children have significant cognitive impairment such that they cannot access statewide assessments, and where many, if not most, cannot communicate or access academics beyond a kindergarten to 2nd grade level.

32.

APS has high schools that are also, like Sutton Middle School, split into two different school campuses – one for 9th grade and one for 10th to 12th grades, and APS must be enjoined from excluding and isolating Scott from a school that does not provide Scott education at his grade level.

33.

During the 2022-2023 and 2023-2024 school years, APS discriminated against Scott and continues to do so by isolating him from any grade level general education by demanding he attend a school for 7th and 8th grade students.

34.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated and continues to intentionally discriminate against Scott by isolating and excluding him from grade level state standards by demanding he attend a school for 7th and 8th grade students in APS' regional autism unit.

35.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated and continues to discriminate against Scott by insisting that if he wants to take physical education, art, music, chorus, band, and any other such classes, he can only do so in a 7th grade, 8th grade, or 7th and 8th grade class.

36.

APS can repeat the above intentional discrimination for years to come since APS has high schools with two campuses but only its regional autism unit at the school for older, much more mature, and much larger students.

37.

During the 2022-2023 and 2023-2024 school years, APS intentionally discriminated against Scott and continues to do so by insisting that Scott go into an APS segregated regional autism unit with very low functioning students who take the Georgia Alternative Assessment ("GAA") and where the curriculum is not aligned to the State standards at Scott's grade level but is instead for students in kindergarten through 2nd grade and involves a lot of repetitive video watching and repetitive activities.

38.

As set forth above, since August 1, 2022 forward and ongoing, APS is intentionally discriminating against Scott because he is a child with autism, and

APS is doing so in three different ways, which include 1) APS refusing to provide Scott reasonable, necessary accommodations, 2) APS disparately treating Scott, and 3) APS totally isolating and excluding Scott.

### 39.

Because APS has intentionally discriminated against Scott based solely upon his disability and because APS continues to do so, Scott is entitled to recover monetary damages for his injuries in an amount to be determined by a jury and to injunctive relief.

## COUNTS III AND IV

## APS' UNLAWFUL RETALIATION OF PLAINTIFFS

## IN VIOLATION OF THE ADA AS AMENDED AND SECTION 504

### 40.

Plaintiffs incorporate paragraphs 1, 7, and 8 as if fully set forth herein.

### 41.

APS has a history of retaliating against, harassing, intimidating, and interfering with Scott from exercising his rights under the ADA and Section 504.

### 42.

APS has a history of retaliating against, harassing, intimidating, and interfering with Scott's parents, Plaintiffs K.M. and L.M., because they have attempted to aid Scott in enjoying his rights under the ADA and Section 504 and

because they have advocated for him to be free from discrimination based solely upon disability.

43.

In 2019, Scott's parents were advocating for Scott to be free from discrimination based upon disability by attending meetings and requesting services and supports from APS, and in violation of the anti-retaliation provisions of the ADA and Section 504, APS staff started to retaliate first against Scott by mocking him, calling him names, allowing students to bully Scott due to his disabilities, removing him from class, removing him from school, suspending him, placing him in an isolation room, intentionally upsetting and dysregulating him, and calling the police on Scott when he was just in third grade.

44.

In 2019, APS staff harassed, retaliated against, intimidated, coerced, and threatened Scott by violently restraining him in violation of the Georgia Department of Education regulations when Scott was not a danger to himself or others and by using prone restraint on Scott so that he could not breathe.

45.

Scott's parents were so concerned about the violent, unlawful restraints of Scott by APS staff, Soctt's parents sought warrant applications against three APS staff, but Scott's parents proceeded pro se, the staff did not testify, and since

Scott's parents were not at the school at the time of the restraints and Scott could not testify given his age and the trauma he suffered, the warrant applications were denied on September 26, 2019.

46.

On December 4, 2019, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by restraining Scott so violently and so improperly that Scott could not breathe, causing him to start vomiting, and APS had to call an ambulance to the school from Grady Hospital.

47.

In December 2019, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by insisting Scott had to be placed in an APS school so far from his home that Scott would be required to ride a school bus 5.5 to 6.5 hours a day.

48.

On December 4, 2029, APS staff continued to retaliate against, threaten, coerce, harass, and intimidate Scott and his parents by insisting Scott ride a school bus for 2 hours and 15 minutes each morning to school and then ride a school bus 4 hours and 30 minutes from school to home.

49.

The retaliation as set forth herein required Scott's parents to have to place

him in a private school, retain an attorney, and request a hearing under the IDEA,

which was settled.

50.

Because of Scott's parents ongoing advocacy for Scott and because Scott

and they were attempting for Scott to exercise his rights under the ADA and

Section 504, once the settlement period ended, APS once again started to retaliate

against, threaten, and intimidate Plaintiffs and interfere with Plaintiffs' rights under

the ADA and Section 504.

51.

Because Scott's parents had sought supports and services in a safe setting,

requested a hearing, and entered into a settlement agreement with APS and because

they and Scott were seeking for Scott to exercise his rights to be free from

discrimination based upon disability, once the settlement period ended, starting

August 1, 2022, APS intentionally violated the anti-retaliation provisions of the

ADA and Section 504 by not allowing Scott's parents to participate in the decision

making process for Scott, demanding Scott could only attend an APS school,

refusing to consider a non-discriminatory educational setting, and refusing to allow

Scott to attend 5th grade.

52.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by refusing to allow Scott to attend a 5th or 6th grade school and insisting Scott attend a 7th and 8th grade school when he was going into 5th grade and when his social skills and physical size made him appear to be a 3rd or 4th grader.

53.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by demanding Scott be isolated and totally excluded from being educated with students his age and with students in his grade level.

54.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by demanding Scott be segregated for the majority of the school day from all other students except those with significant cognitive impairments and severe autism.

55.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scott to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by not allowing Scott to participate in sports, extracurricular activities, specials, connections, school events with his same age peers or with his grade level peers.

56.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scot to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, APS violated intentionally the anti-retaliation provisions of the ADA and Section 504 by refusing to provide Scott access to the Georgia academic standards except at the kindergarten to 2nd grade level.

57.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scot to exercise his rights to be free from discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by insisting Scott be placed in an overwhelming environment with a modified curriculum.

58.

Because Scott's parents had sought supports and services in a safe setting, requested a hearing, and entered into a settlement agreement with APS and because they and Scott were seeking for Scot to exercise his rights to be free from

discrimination based upon disability, once the settlement period ended, starting August 1, 2022, APS intentionally violated the anti-retaliation provisions of the ADA and Section 504 by denying Scott an education track to a high school diploma at the age of 11.

59.

When APS evaluated Scott's intelligence, APS reported that Scott had an overall intelligence quotient of 117 standard score, placing him in the above-average range of intelligence but to punish, threaten, coerce, and intimidate Scott's parents so they would remove Scott from APS and not seek services and supports for Scott from APS and so Scott would not attend APS, APS demanded from August 1, 2022 going forward that Scott be segregated to a setting with very low functioning students who could not add simple single digit numbers and many, if not all, could not access regular education academics but on a very low kindergarten, 1st grade level.

60.

APS continues to retaliate against, harass, intimidate, coerce, and threaten Scott and his parents and interfere with the exercise of their rights under the ADA and Section 504 by not educating Scott, totally excluding him from any education provided by APS at the current time, not allowing him to access grade level curriculum, not allowing him to attend a 6th grade school when he is in 6th grade,

and not allowing him to access sports, extracurricular activities, specials, connections, and other classes for 6th grade students.

61.

APS continues to retaliate against, harass, intimidate, coerce, and threaten Scott and his parents and interfere with the exercise of their rights under the ADA and Section 504 by taking and continuing to take the actions set forth in paragraphs 50-56 above when APS is fully informed that Scott is attending regular education classes, is on grade level, is accessing and performing well in the general education classes, making friends with students without autism, having no behavioral issues, playing sports with his grade level peers, and accessing the benefits of education that APS refuses to provide to Scott by trying to force him into a harmful, dysregulating, low functioning, segregated class for children with significant cognitive impairments and severe autism.

62.

APS' violation of the anti-retaliation provisions of the ADA and Section 504 have harmed and continue to harm Plaintiffs, who are entitled to recover from APS damages, in an amount to be determined by a jury.

## COUNT V

## APS' DENIAL OF EQUAL PROTECTION UNDER THE LAW

### 63.

Since August 1, 2022 forward, APS has and still is intentionally denying

Scott his right to equal protection of the law pursuant to the Fourteenth

Amendment of the U.S. Constitution.

### 64.

Because Scott is a child with autism, APS intentionally refuses to treat Scott

in the same manner as non-disabled students and as other disabled students who do

not have autism by refusing to allow him to attend a grade-level school, to access

the grade level standards for his current grade, to participate in activities and

programs for students in his grade, and to not be segregated with very low

functioning students to watch repetitive videos in a highly modified curriculum not

designed to result in the attainment of a high school diploma.

### 65.

Because Scott is a child with autism and his parents advocated for him under

the ADA, IDEA, and Section 504, APS intentionally refuses to treat Scott in the

same manner as non-disabled students and as other disabled students who do not

have autism by refusing to allow him to attend a school for his grade level, to

access the grade-level standards for his grade, to participate in sports, activities,

classes, and programs for students in his grade, and to not be segregated with very low functioning students to watch repetitive videos in a highly modified curriculum not designed to result in the attainment of a high school diploma.

66.

Because Scott is a child with autism and his parents advocated for him under the ADA, IDEA, and Section 504, APS has since August 1, 2022 and is still refusing to provide Scott with equal access to education in violation of the Fourteenth Amendment to the U.S. Constitution, giving Scott a cause of action pursuant to 42 U.S.C. § 1983 against APS, and Scott is entitled to recover his damages caused by APS in an amount to be determined by a jury.

67.

APS continues to violate Scott's right to access regular education in a non-modified curriculum with peers who are not mostly, if not all, significantly cognitively impaired in a highly segregated setting despite the fact APS is fully informed that Scott can access regular education at the 6th grade level, has been doing so, is very successful in 6th grade general education curriculum, has no behavioral issues at school, is making friends with students without autism, and is participating in school extracurricular activities, sports, events, and programs successfully.

68.

Because Scott is and will remain a child with autism and because Scott's parents continue to advocate for him, APS can repeat its denial of equal protection under the law when Scott enters 9th grade by denying him access to grade level standards, a non-segregated class with very low functioning students, a school that teaches 9th grade students and offers activities, sports, programs, classes, and curriculum for 9th grade students, such that Scott is entitled to injunctive relief against APS.

## COUNT VI

## APS' BREACH OF CONTRACT

69.

APS breached its settlement agreement it entered into with Plaintiffs in April 2021, and Plaintiffs cause of action for breach of contract is properly filed herein because the Court has supplemental jurisdiction.

70.

In April 2021, Plaintiffs and APS settled a due process hearing submitted by Plaintiffs pursuant to the IDEA, executing a written agreement.

71.

The written settlement agreement the parties entered into in April 2021 involved Scott's past, present, and future education.

72.

Pursuant to said settlement agreement, APS had an explicit contractual obligation to cooperate in good faith to prepare an Individualized Education Program ("IEP") for Scott should Plaintiffs wish to obtain educational services for Scott from APS, including either services at one of APS' public schools or private services at public expense.

73.

In Georgia, every contract has an implied duty to act in good faith and deal fairly.

74.

When Scott's parents notified APS that they wanted APS to provide either privately or by APS educational services to Scott, with said services starting August 1, 2022, APS breached in bad faith the settlement agreement with Plaintiffs from the very beginning.

75.

On February 18, 2022, Ms. Deanna Rogers, APS' Remediation and Support Coordinator, sent an email to Scott's father, K.M., stating that "[p]er the agreement, you are required to notify Ms. Ford by March 15, 2022, if you plan to re-enroll Scott with the District for next school year, so that we have time to prepare an IEP for his return.  If you are asking for that process to begin sooner,

that is okay, we just need <u>written confirmation that you plan to re-enroll Scott</u>.

Once we are in receipt of this, you will be contacted with next steps within 5

business days."

76.

Scott's parents were not required to re-enroll Scott in APS for the parties to

cooperate in good faith in the preparation of an IEP for Scott for the 2022-2023

school year.

77.

Scott's father replied to the email referenced in paragraph 75 above,

explaining that for the time being, Scott's parents planned to continue Scott at the

private school, as Scott could not receive educational receive services provided

from APS until August 1, 2022.

78.

Scott's father added in replying to the email set forth in paragraph 75 above

that an IEP meeting was needed per the agreement to prepare an IEP in "good

faith" "to assess options and, if applicable, secure more funding."

79.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford,

determined prior to the IEP meeting and preparation of the IEP that Scott's only

placement option for the IEP was an APS brick and mortar school, denying Scott's

parents' legal right to be a part of the placement decision and violating APS' duty to prepare in good faith with Scott's parents an IEP for Scott.

80.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford, determined prior to the IEP meeting and preparation of the IEP for Scott that Scott's only placement option for the IEP was a placement in APS' regional autism unit at Sutton Middle School 7th and 8th grade school, thereby denying Scott's parents' legal right to be a part of the placement decision and violating APS' duty to prepare in good faith with Scott's parents an IEP for Scott.

81.

APS and its staff, including Ms. Fitts, Ms. Thomas, and Ms. Ford, determined prior to the IEP meeting and preparation of the IEP for Scott that Scott's only placement option for the IEP was to be placed in 6th grade but at a school for general education students in 7th and 8th grades, violating the law and APS' duty to prepare with the family an IEP in good faith.

82.

APS refused to consider at the IEP meeting in its continuum of placements an IEP placement at a private school for Scott, admitting this. This was a violation of APS' legal duties and a direct violation of APS' contractual obligation to prepare with Scott's parents an IEP for Scott for the 2022-2023 school year.

83.

At the IEP meeting, APS violated its agreement to prepare with Scott's parents in good faith an IEP for Scott by claiming that grade level placement was dependent on APS' retention policy and not upon academic achievement.

84.

APS acted in bad faith when it represented to Scott's family during the preparation of an IEP for Scott that APS had to refer to APS' retention policy before it could consider placing Scott in 5th grade in his IEP.

85.

APS acted in bad faith when during the preparation of an IEP for Scott, APS staff told Scott's family that APS would have to do a "planning worksheet" to consider which placement – an autism class in 5th grade versus an autism regional unit in 6th grade at a 7th and 8th grade school – would be better, as that was not true, and APS never conducted a planning worksheet for Scott.

86.

APS acted in bad faith when it represented to Scott's parents at the IEP meeting that to consider IEP placement of Scott in 5th grade APS staff would have to look at planning worksheets, which it did not have to do and which it did not do.

87.

APS breached its contract with Plaintiffs and its duty to prepare in good faith an IEP for Scott for the 2022-2023 school year when it stated at the IEP meeting a private school was not on APS' continuum of placements in Scott's IEP.

88.

APS admitted that the only way Scott could receive educational services from APS after the agreement was for Scott to re-enroll in APS and return to an APS school when the agreement required private placement consideration by the IEP team and the law required that as well.

89.

APS breached its contract to prepare in good faith an IEP for Scott when APS insisted that Scott attend a low functioning, segregated APS "regional autism unit" for students with significant cognitive impairments on a modified curriculum with no access to any core curriculum education above 2nd grade and who were so impaired they could not take State standardized assessments.

90.

APS acted in bad faith when APS claimed that at the IEP meeting, APS discussed conducting a psychological evaluation of Scott, which it did not.

91.

APS acted in bad faith when APS claimed it wanted to conduct an IEP meeting after the one held on April 25, 2022 to consider summer services when APS stated it would not provide Scott any services until August 1, 2022.

92.

APS acted in bad faith in the preparation of Scott's IEP for the 2022-2023 school year by withholding critical information from Scott's parents at the IEP meeting, such as withholding the fact the regional autism unit did not offer access to State grade level standards, the program was modified, the students were very cognitively impaired, there were severe behaviors from students in the classroom, and other such critical information.

93.

APS acted and continues to act in bad faith by refusing to consider the continuum of placements for Scott in an IEP.

95.

APS has acted in bad faith when it misrepresented that APS "has demonstrated that [Scott] is capable of making progress on his IEP goals and objectives through the placement offered by the District."

96.

APS acted in bad faith when it claimed placement of Scott in APS' regional autism unit at Sutton Middle School 7th and 8th grade campus was the least restrictive environment for Scott, as APS continues to assert yet APS knows Scott is attending all regular education classes on grade level and making educational progress in areas including academic, emotional, social, behavioral, physical, and other areas.

97.

APS acted and continues to act in bad faith by refusing to prepare in good faith in compliance with Scott's parents' rights an IEP for Scott, retaliating against Scott and his parents, taking actions to force Scott's parents to have to pay for Scott's education by placing him in a segregated improper setting in a school for 7th and 8th grade students when at the time Scott was going into 5th grade and he's now in 6th grade.

98.

APS breached its contract by adopting and implementing a policy, practice, and or procedure that when a student with disabilities seeks educational services after a settlement agreement with APS, the only option offered to the student is for the student to return to an APS brick and mortar school of APS' choice.

99.

Plaintiffs are entitled to a jury decision that APS breached its settlement agreement and its conduct in complying with the settlement agreement and a jury determination of the amount of damages Plaintiffs are entitled to receive for APS' intentional, bad faith dealings.

## COUNT VII

## RECOVERY OF COSTS AND FEES

100.

Plaintiffs incorporate paragraphs 70 to 99 as if fully set forth herein.

101.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including their attorney's fees, in having to bring this lawsuit because APS has acted in bad faith as set forth in Count VI.

101.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including their attorney's fees, because APS has been stubbornly litigious and caused Plaintiffs' unnecessary trouble and expense, requiring this lawsuit be filed when APS unilaterally made IEP decisions regarding preparation of the IEP and excluded Plaintiffs from participating in the

IEP preparation process and in exercising their rights in the IEP preparation process.

102.

Pursuant to O.C.G.A. § 13-6-11 and common law, Plaintiffs are entitled to recover their expenses of litigation, including attorney's fees, in an amount to be determined by a jury.

PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray for the following relief:

1) A jury trial be had on Scott's ADA and Section 504 discrimination and equal protection under the law claims;

2) A jury trial be had on Plaintiffs ADA and Section 504 retaliation, breach of contract claims, and claim for recovery of costs of litigation pursuant to O.C.G.A. § 13-6-11 and common law;

3) That the Court enter an order enjoining APS from isolating and excluding Scott from attendance at a school where his grade level is taught the regular education curriculum and where Scott is given access to State academic standards for Scott's grade level;

4) That Plaintiffs be awarded by this Court their attorney's fees and litigation expenses and costs associated with this matter pursuant to the

ADA, Section 504, the Fourteenth Amendment to the U.S. Constitution, and 42 U.S.C. § 1983; and

5) That Plaintiffs be awarded all other and further relief as the Court deems just and appropriate.

This the 11th day of September 2023.


<u> /s/ Chris E. Vance</u>
Chris E. Vance
Ga. Bar No. 724199
Counsel for Plaintiffs


**CHRIS E. VANCE, P.C.**
Suite 100, 2415 Oak Grove Valley Road
Atlanta, GA 30345
Tel:  (404) 320-6672
Fax: (404) 320-3412
Cell:  (404) 313-3800
chris@chrisvancepc.com