# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **AMERIS BANK, THROUGH ITS DIVISION BALBOA CAPITAL CORPORATION** | : | |
| | : | |
| **PLAINTIFF.** | : | |
| | : | |
| **V.** | : | |
| | : | |
| **SPA 4 LESS, LLC AND JAMAAL TERRANCE MILBRY, A/K/A J.T. MILBRY, A/K/A T. MILBRY AND A/K/A LASHAWN MILBRY,** | : | **CIVIL ACTION FILE NO:** _____ |
| | : | |
| **DEFENDANTS.** | : | |

---

## COMPLAINT

---

COMES NOW Ameris Bank, through its division Balboa Capital Corporation (hereinafter "Plaintiff or "Ameris"), and files this its *Complaint* against Spa 4 Less, LLC (hereinafter "Spa") and Jamaal Terrance Milbry also known as J. T. Milbry, also known as T. Milbry and also known as Lashawn Milbry (hereinafter "Milbry") and shows the following:

### I. ALLEGATIONS OF JURISDICTION AND VENUE.

1.

Ameris is a Bank incorporated under the laws of the State of Georgia, is in good standing and is authorized to file this Complaint.

2.

Milbry's domicile is located at 283 North Colonial Home Circle, NW, Atlanta, Georgia 30309.

3.

Milbry is subject to the jurisdiction of this Court.

4.

Spa is a Georgia limited liability company that is currently active but non-compliant.

5.

Pursuant to its last Annual Registration filed with the Georgia Secretary of State on September 20, 2022, Spa's Principal Office is located at 3070 Business Park Drive, Suite G, Norcross, Georgia 30071.

6.

Spa is subject to the jurisdiction of this Court.

7.

As more specifically described below, this civil action arises under the laws of the United States of America.

8.

Pursuant to 28 U.S.C. § 1331, this Court maintains original jurisdiction over this case.

9.

Pursuant to 28 U.S.C. § 1391(b), this Court is the proper venue for this civil action to be brought.

## II.   ALLEGATIONS RELATED TO SPA 4 LESS, LLC.

10.

Spa was formed on November 2, 2021 under the name of 360 Spin Pic, LLC.

11.

Pursuant to the *Articles of Organization* filed with the Georgia Secretary of State's Office, JT Milbry, Kialana Glover (hereinafter "Glover") and Michael Caprio (hereinafter "Caprio") organized 360 Spin Pic, LLC.

12.

At formation, Spa reported 3300 Roswell Road, N.E., Unit 4105, Atlanta, Georgia 30305 as its Principal Office to the Georgia Secretary of State.

13.

The building located at 3300 Roswell Road, N.E., Atlanta, Georgia 30305 is an apartment complex known as Camden Buckhead.

14.

Upon information and belief, 3300 Roswell Road, N.E., Unit 4105, Atlanta, Georgia 30305 is an apartment previously occupied by Kialana Ann Glover (hereinafter "Glover").

15.

Pursuant to documents filed with the Georgia Secretary of State's Office on November 2, 2021, Glover is one of the original organizers of 360 Spin Pic., LLC.

16.

Upon information and belief, Matthew Eric Francis currently resides at 3300 Roswell Road, N.E., Unit 4105, Atlanta, Georgia 30305.

17.

Pursuant to documents filed with the Georgia Secretary of State's Office, on August 29, 2022, 360 Spin Pic., LLC changed its name to Spa 4 Less, LLC.

18.

On September 20, 2022, Spa filed a *Statement of Change of Address of Registered Office* with the Georgia Secretary of State's Office, changing Spa's Registered Office to 3070 Business Park Drive, Suite G, Norcross, Georgia 30305.

19.

On September 20, 2022, Spa filed an Annual Registration with the Georgia Secretary of State, changing Spa's Principal Office's address from 3300 Roswell Road, N.E., Unit 4105, Atlanta, Georgia 30305 to 3070 Business Park Drive, Suite G, Norcross, Georgia 30305.

20.

Upon information and belief, Spa's Registered Office and Principal Office are not and were never located at 3070 Business Park Drive, Suite G, Norcross, Georgia 30305.

21.

The September 20, 2022 Annual Registration also changed the Registered Agent to Ivory Johnson.

22.

At the time Milbry entered into the transactions described below, Buy-Rite Salon & Spa Equipment (hereinafter "Buy-Rite") was located at 3070 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

23.

Pursuant to Buy-Rite's website, Buy-Rite was established in 1936.

24.

Upon information and belief, Milbry changed Spa's Registered Office address and Spa's Principal Office address to an address similar to Buy-Rite's business address to mislead creditors similarly situated to Plaintiff into thinking Spa was Buy-Rite.

25.

As described below, each invoice submitted to Plaintiff by Spa either listed Spa's address as "3070 Business Park Drive, Norcross, Ga 30071" or "3070 Business Park Drive Suite H-I, Norcross, Ga 30071".

26.

Upon information and belief, Milbry used Buy-Rite's business address on Spa's Invoices to provide credibility to its Invoice and to mislead creditors similarly situated to Balboa into thinking Spa was Buy-Rite.

27.

Until recently, Spa maintained a website which listed its address as 3075 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

28.

Pursuant to the Gwinnett County Tax Assessor's Office, 3075 Business Park Drive, Suite H – I, Norcross, Georgia does not exist.

29.

Upon information and belief, Spa listed its address as 3075 Business Park Drive, Suite H-I, Norcross, Georgia 30071 on its website to mislead creditors similarly situated to Plaintiff into thinking Spa was Buy-Rite.

30.

On or about January 10, 2023, Buy-Rite filed a report with the Norcross Police Department, asserting that Spa used Buy-Rite's identity online, used its address for business purposes and used its address to fabricate fraudulent invoices.

31.

At no time has Spa owned any inventory of spa and beauty products.  Milbry formed Spa to carry out his scheme to fraudulently obtain loan proceeds from Plaintiff and other creditors.  Glover and Caprio helped Milbry formulate and carry out the scheme.

### III.  ALLEGATIONS RELATED TO AMERIS AND BALBOA CAPITAL CORPORATION.

32.

Ameris is a banking corporation organized under the laws of the State of Georgia.

33.

Balboa Capital Corporation (hereinafter "Balboa") is a division of Ameris located in Costa Mesa, California.

34.

Ameris is a member of the Federal Deposit Insurance Corporation.

35.

Balboa originates equipment financing loans, which are funded by Ameris.

36.

These loans include the financing of the purchase of equipment, using the instrument of an Equipment Financing Agreement (hereinafter "EFA") to memorialize the transaction.

37.

The vendor selling certain types of equipment prepares and submits the potential EFAs, along with other form documents required by Balboa, to Balboa for approval.

38.

The vendor obtains and enters the name, address. and telephone number of the potential Debtor into each EFA submitted to Balboa.

39.

The vendor obtains and enters the address of where the collateral will be located after delivery into the EFA submitted to Balboa.

40.

The vendor obtains and enters the Federal Tax Identification Number into the EFA submitted to Balboa.

41.

For purposes of providing a means to electronically withdraw funds from Debtor's bank account as payments become due pursuant to the EFA, the vendor

obtains and inputs into the EFA the name, the city and state of the bank, the account

number, the ABA Routing Number for the bank, the business name on the account,

and the street address on the account.

<div align="center">42.</div>

The vendor obtains and inputs the name, title and home telephone number of

the person signing the EFA on behalf of the Debtor into the EFA.

<div align="center">43.</div>

The vendor obtains the Debtor's signature contained in the EFA.

<div align="center">44.</div>

The vendor prepares and submits the Disbursement Authorization to Balboa

for each EFA.

<div align="center">45.</div>

The vendor supplies the name of the payee, the amount of the disbursement

based upon an Invoice prepared by vendor, and the name of the person authorizing

the disbursement contained in the Disbursement Authorization.

<div align="center">46.</div>

The vendor supplies the Equipment Description and the vendor's name

contained in Exhibit "A" to the Disbursement Authorization.

47.

The vendor obtains the Debtor's signature contained in the Disbursement Authorization.

48.

The vendor prepares and submits to Balboa each Personal Guaranty, guarantying the obligations arising from each EFA.

49.

The vendor supplies the name, address, telephone number and Social Security Number of the guarantor for each Guaranty.

50.

The vendor obtains the Guarantor's signature contained in the Personal Guaranty.

51.

The vendor prepares and submits each Delivery and Acceptance Certificate to Balboa with each EFA.

52.

The vendor supplies the name and address of each Debtor contained in each Delivery and Acceptance Certificate.

53.

The vendor supplies the Equipment Description contained in each Delivery and Acceptance Certificate.

54.

The vendor secures the Debtor's signature contained in each Delivery and Acceptance Certificate.

55.

The vendor prepares and submits each Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment (hereinafter "Addendum") to Balboa.

56.

The vendor supplies the name and address of each Debtor contained in each Addendum.

57.

The vendor supplies the supplier's name contained in each Addendum.

58.

The vendor secures the signature of the Debtor and the Guarantor contained in each Addendum.

59.

The vendor prepares and submits to Balboa each invoice related to the equipment purchased by Debtor and financed by Balboa.

60.

In connection with each transaction, the vendor obtains and submits to Balboa a copy of the driver's license of the person signing each document.

61.

The vendor submits the driver's license to Balboa with the other documents related to the loan.

62.

Balboa verbally confirms the information provided by the vendor by contacting the Debtor at the telephone number provided by the vendor to Balboa.

63.

Balboa reviews the loan package submitted in connection with the vendor's sale of the equipment.

64.

Balboa relies upon the information provided by the vendor to make decisions concerning the approval of extension of credit.

65.

If the forms are properly prepared and the potential Debtor meets the credit requirements imposed by Balboa, the EFA is approved by Balboa.

66.

If Balboa approves the extension of credit and the form of the loan documents, Ameris disburses the proceeds of the EFA to the vendor as payment for the equipment financed.

67.

Plaintiff disburses the proceeds of each EFA to the vendor by wire transfer or by means of an electronic funds transfer through the Automated Clearing House (hereinafter "ACH Transfer").

68.

The vendor provides payment instructions to Balboa which includes the party receiving the payment, the receiving bank's account number and ABA Routing Number, and the business address of the party receiving the funds.

69.

Plaintiff disburses the funds in the manner described in the instructions provided.

## IV.  ALLEGATIONS CONCERNING FALSE INFORMATION PROVIDED BY DEFENDANTS TO PLAINTIFF RELATED TO THE ROBIN RUSSELL D/B/A PRESTIGE BEAUTY SPA EQUIPMENT FINANCING AGREEMENT TRANSACTION.

70.

On or about August 30, 2022, Milbry prepared an EFA, describing the

"Debtor Name" as "Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa" (hereinafter "Russell EFA"), using forms provided by Plaintiff.

71.

On or about August 31, 2022, Milbry electronically submitted the Russell EFA to Plaintiff.

72.

A true and correct copy of the original Russell EFA is attached hereto as Exhibit "1".

73.

The Russell EFA purports to contain the electronic signature of Robin Russell on page 5 of 5 of the Russell EFA.

74.

Robin Russell neither signed the Russell EFA nor authorized her electronic signature to be placed upon the Russell EFA.

75.

Milbry forged Robin Russell's signature on the Russell EFA.

76.

Plaintiff would not have disbursed the funds related to the Russell EFA to Milbry had it known that the electronic signature was unauthorized.

77.

The Russell EFA describes the Debtor's Address as 999 Oak Hill Road 5, Lafayette, California 94549.

78.

However, Citizen Salon, LLC is located and has been located at 999 Oak Hill Road 5, Lafayette, CA 94549 since 2018.

79.

The Russell EFA lists 706-510-2998 as Russell's telephone number.

80.

The 706-area code is an Athens, Georgia area code.

81.

Section 12 of the Russell EFA provides for the payment of the amounts due by means of an electronic withdrawal of funds from the bank account described in Section 12 of the Russell EFA.

82.

Section 12 states Russell maintained an account with Middlesex Federal Savings Somerville, MA (hereinafter "Russell Account").

83.

After receiving an initial payment of $2,680.00 due at the signing of the Russell EFA, Plaintiff was unable to withdraw any additional payments from the Russell Account.

84.

On or about August 30, 2022, Milbry prepared a Disbursement Authorization, describing the "Debtor Name" as "Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa" (hereinafter "Russell Disbursement Authorization"), using forms provided by Plaintiff.

85.

On or about August 31, 2022, Milbry electronically submitted the Russell Disbursement Authorization to Plaintiff.

86.

A true and correct copy of the original Russell Disbursement Authorization is attached hereto as Exhibit "2".

87.

The Russell Disbursement Authorization purports to contain the electronic signature of Robin Russell on page 1 of the Russell Disbursement Authorization and Exhibit "A" to the Russell Disbursement Authorization.

88.

Robin Russell neither signed the Russell Disbursement Authorization nor authorized her electronic signature to be placed on the Russell Disbursement Authorization.

89.

Robin Russell neither signed Exhibit "A" of Russell Disbursement

Authorization nor authorized her electronic signature to be placed on Exhibit "A" of Russell Disbursement Authorization.

90.

The Russell Disbursement Authorization states that Spa had delivered and installed the equipment described in the Russell Disbursement Authorization.

91.

Spa did not deliver and install the equipment described in the Russell Disbursement Authorization.

92.

The Russell Disbursement Authorization authorized Plaintiff to disburse $36,350.00 to Spa 4 Less, LLC.

93.

Plaintiff would not have disbursed the $36,350.00 to Milbry had it known Russell neither signed nor authorized anyone to place her electronic signature on the Russell Disbursement Authorization.

94.

Plaintiff would not have disbursed the $36,350.00 had it known Milbry and Spa did not deliver and install the equipment described in the Russell Disbursement Authorization.

95.

On or about August 30, 2022, Milbry prepared a *Personal Guaranty,* describing the guarantor as "Robin Russell" (hereinafter "Russell Guaranty"), using forms provided by Plaintiff.

96.

On or about August 31, 2022, Milbry electronically submitted the Russell Guaranty to Plaintiff.

97.

A true and correct copy of the original Russell Guaranty is attached hereto as Exhibit "3".

98.

The Russell Guaranty purports to contain the electronic signature of Robin Russell.

99.

Robin Russell neither signed the Russell Guaranty nor authorized her electronic signature to be placed on the Russell Guaranty.

100.

The Russell Guaranty also contains the Social Security Number of Robin Lane Russell.

101.

On or about August 30, 2022, Milbry prepared a *Delivery and Acceptance Certificate* describing the "Debtor Name" as "Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa" (hereinafter "Russell Delivery Certificate"), using forms provided by Plaintiff.

102.

On or about August 31, 2022, Milbry electronically submitted the Russell Delivery Certificate to Plaintiff.

103.

A true and correct copy of the original Russell Delivery Certificate is attached hereto as Exhibit "4".

104.

The Russell Delivery Certificate purports to contain the electronic signature of Robin Russell.

105.

Robin Russell neither signed the Russell Delivery

Certificate nor authorized her electronic signature to be placed on the Russell Delivery Certificate.

106.

The Russell Delivery Certificate states that Robin Russell received delivery of certain equipment at her address located at 999 Oak Hill Road 5, Lafayette, California 94549.

107.

Since Citizen Salon, LLC is located at 999 Oak Hill Road 5, Lafayette, California 94549, Spa and Milbry did not deliver the equipment contained in the Russell Delivery Certificate to Russell at that location.

108.

On or about August 30, 2022, Milbry prepared an *Addendum to Equipment Financing Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment* describing the "Debtor Name" as "Robin

Russell a Sole Proprietorship DBA Prestige Beauty Spa" (hereinafter "Russell EFA Addendum"), using forms provided by Plaintiff.

109.

On or about August 31, 2022, Milbry electronically submitted the Russell EFA Addendum to Plaintiff.

110.

A true and correct copy of the original Russell EFA Addendum is attached hereto as Exhibit "5".

111.

The Russell EFA Addendum purports to contain the electronic signature of Robin Russell in the location designated as "Debtor" and the location designated as "Guarantor".

112.

Robin Russell neither signed the Russell EFA Addendum nor authorized her electronic signature to be placed on the Russell EFA Addendum.

113.

On or about August 24, 2022, Milbry prepared Invoice SP02347 on behalf of Spa, describing certain equipment purportedly sold to Prestige Beauty Spa for a total purchase price of $36,350.00 (hereinafter "Russell Invoice").

114.

On or about August 31, 2022, Milbry electronically submitted the Russell Invoice to Plaintiff.

115.

A true and correct copy of the Russell Invoice is attached hereto as Exhibit "6".

116.

The Russell Invoice lists Spa's address as 3070 Business Park Drive, Norcross, Georgia 30071.

117.

At the time Milbry issued the Russell Invoice, Buy-Rite was located at 3070 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

118.

Pursuant to Buy-Rite's website, Buy-Rite was established in 1936.

119.

Upon information and belief, Milbry used Buy-Rite's business address on the Russell Invoice to provide credibility to the Russell Invoice.

120.

The Russell Invoice listed Russell's shipping and billing address as 999 Oak Hill Road 5, Lafayette, California 94549.

121.

Since Citizen Salon, LLC is located at 999 Oak Hill Road 5, Lafayette, California 94549, Spa and Milbry did not deliver the equipment to the address contained in the Russell Invoice.

122.

Upon information and belief, Milbry used Citizen Salon, LLC's business address as Russell's billing and shipping address in the Russell Invoice to provide credibility to the Russell Invoice.

123.

After tendering the initial payment due at the closing of the loan, Russell has not made any payments to Plaintiff which have become due pursuant to the Russell EFA.

## V.  ALLEGATIONS CONCERNING FALSE INFORMATION PROVIDED BY DEFENDANTS TO PLAINTIFF RELATED TO THE BELLA DREAM BODY, LLC EQUIPMENT FINANCING AGREEMENT TRANSACTION.

124.

On or about September 22, 2022, Milbry prepared an EFA, describing the "Debtor Name" as "Bella Dream Body, LLC" (hereinafter "Bella EFA"), using forms provided by Plaintiff.

125.

On or about September 27, 2022, Milbry electronically submitted the Bella EFA to Plaintiff.

126.

A true and correct copy of the original Bella EFA is attached hereto as Exhibit "7".

127.

The Bella EFA purports to contain the electronic signature of Fredel Williamson on page 5 of 5 of the Bella EFA.

128.

Fredel Williamson denies he signed the Bella EFA and denies he authorized his electronic signature to be placed upon the Bella EFA.

129.

Milbry forged Fredel Williamson's signature on the Bella EFA.

130.

Plaintiff would not have disbursed the funds to Milbry as payment for the equipment if Plaintiff had known Fredel Williamson did not authorize his electronic signature to be placed on the Bella EFA

131.

On page 1, the Bella EFA describes the Debtor's Address as 2295 Parklake Dr., Atlanta, Georgia 30345.

132.

Bella did not maintain a business located at 2295 Parklake Dr., Atlanta, Georgia 30345 on the date Milbry submitted the Bella EFA to Plaintiff.

133.

Pursuant to the records filed with the Georgia Secretary of State's Office, on the date Milbry submitted the Bella EFA to Plaintiff, 2295 Parklake Dr. NE, Suite 400, Atlanta, Georgia 30345 was DreamBody Studio, LLC's (hereinafter "DreamBody") Principal Office.

134.

Milbry and Spa used DreamBody's address to give the impression that Bella Dream Body, LLC. (hereinafter "Bella") was DreamBody.

135.

On page 2, the Bella EFA describes Bella's address for its bank account as 5830 Crest Oak Way, Cumming, Georgia 30028.

136.

Pursuant to Bella's 2022 Annual Registration filed with the Georgia Secretary of State's Office, Bella's Principal Office and Registered Office was located at 5830 Crest Oak Way, Cumming, Georgia 30028.

137.

On September 22, 2022, Freo Progress, LLC, a Delaware limited liability company, owned the property located at 5830 Crest Oak Way, Cumming, Georgia 30028 by virtue of a certain Warranty Deed recorded at Deed Book 10501 pages 271 – 279 in the real estate records of the Clerk's Office of the Superior Court of Forsyth County Georgia on November 30, 2021.

138.

The Bella EFA lists Bella's telephone number as 678-890-5149.

139.

On the date Milbry submitted the Bella EFA to Plaintiff, 678-890-5149 was not Bella's telephone number.

140.

Section 12 of the Bella EFA provides for the payment of the amounts due by means of an electronic withdrawal of funds from the bank account described in Section 12 of the Bella EFA.

141.

Section 12 states Bella maintained an account with Piermont Bank in San Francisco, CA (hereinafter "Bella Account").

142.

After receiving an initial payment of $2,600.00 due at the signing of the Bella EFA, Plaintiff was unable to withdraw any additional payments from the Bella Account.

143.

On or about September 22, 2022, Milbry prepared a Disbursement Authorization, describing the "Debtor Name" as "Bella Dream Body, LLC" (hereinafter "Bella Disbursement Authorization"), using forms provided by Plaintiff.

144.

On or about September 27, 2022, Milbry electronically submitted the Bella Disbursement Authorization to Plaintiff.

145.

A true and correct copy of the original Bella Disbursement Authorization is attached hereto as Exhibit "8".

146.

The Bella Disbursement Authorization purports to contain the electronic signature of Fredel Williamson on page 1 of the Bella Disbursement Authorization and on Exhibit "A" of the Bella Disbursement Authorization.

147.

Fredel Williamson denies he signed the Bella Disbursement Authorization and denies he authorized his electronic signature to be placed upon the Bella Disbursement Authorization.

148.

Fredel Williamson further denies he signed Exhibit "A" to the Bella Disbursement Authorization and denies he authorized his electronic signature to be placed upon Exhibit "A" to Bella Disbursement Authorization.

149.

Based upon Fredel Williamson's denials, neither of the signatures were authorized by Fredel Williamson.

150.

The Bella Disbursement Authorization identifies Fredel Williamson as the Managing Member of Bella.

151.

Upon information and belief, Fredel Williamson was neither a member nor the managing member of Bella on September 27, 2022.

152.

The Bella Disbursement Authorization states that Spa delivered and installed the equipment described in the Bella Disbursement Authorization.

153.

Spa did not deliver and install the equipment described in the Bella Disbursement Authorization.

154.

The Bella Disbursement Authorization authorized Plaintiff to disburse $49,687.00 to Spa 4 Less, LLC.

155.

Plaintiff would not have disbursed the $49,687.00 to Milbry and Spa had it known Fredel Williamson neither signed nor authorized anyone to place his electronic signature on the Bella Disbursement Authorization.

156.

Plaintiff would not have disbursed the $49,687.00 had it known Milbry and Spa did not deliver and install the equipment described in the Bella Disbursement Authorization.

157.

On or about September 22, 2022, Milbry prepared a *Personal Guaranty* describing the guarantor as "Fredel Williamson" (hereinafter "Bella Guaranty"), using forms provided by Plaintiff.

158.

On or about September 27, 2022, Milbry electronically submitted the Bella Guaranty to Plaintiff.

159.

A true and correct copy of the original Bella Guaranty is attached hereto as Exhibit "9".

160.

The Bella Guaranty purports to contain Fredel Williamson's signature.

161.

The Bella Guaranty also contains the Social Security Number of Fredel Williamson.

162.

Fredel Williamson denies he signed the Bella Guaranty.

163.

On or about September 22, 2022, Milbry prepared a Delivery and Acceptance Certificate, describing the "Debtor Name" as "Bella Dream Body, LLC" (hereinafter "Bella Delivery Certificate"), using forms provided by Plaintiff.

164.

On or about September 27, 2022, Milbry electronically submitted the Bella Delivery Certificate to Plaintiff.

165.

A true and correct copy of the original Bella Delivery Certificate is attached hereto as Exhibit "10".

166.

The Bella Delivery Certificate purports to contain the electronic signature of Fredel Williamson.

167.

Fredel Williamson denies he electronically signed the Bella Delivery Certificate and denies he authorized his electronic signature to be placed upon the Bella Delivery Certificate.

168.

The Bella Delivery Certificate states that Bella received delivery of certain equipment at its address located at 2295 Parklake Dr., Atlanta, Georgia 30345.

169.

Spa and Milbry did not deliver the equipment contained in the Bella Delivery Certificate to Bella.

170.

Milbry and Spa listed 2295 Parklake Dr., Atlanta, Georgia 30345 as the delivery address because DreamBody is located at that address.

171.

Milbry and Spa used DreamBody's address to deceive Plaintiff into thinking Bella is DreamBody.

172.

On or about September 22, 2022, Milbry prepared an *Addendum to Equipment Financing Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment* describing the "Debtor Name" as "Bella Dream Body, LLC" (hereinafter "Bella EFA Addendum"), using forms provided by Plaintiff.

173.

On or about September 27, 2022, Milbry electronically submitted the Bella EFA Addendum to Plaintiff.

174.

A true and correct copy of the original Bella EFA Addendum is attached hereto as Exhibit "11".

175.

The Bella EFA Addendum purports to contain the electronic signature of Fredel Williamson in the location designated as "Debtor" and the location designated as 'Guarantor".

176.

Fredel Williamson denies he electronically signed the Bella EFA Addendum and denies he authorized his electronic signature to be placed upon the Bella EFA Addendum.

177.

On or about September 13, 2022, Milbry prepared Invoice SP02605 on behalf of Spa, describing certain equipment purportedly sold to Bella for a total purchase price of $49,687.00 (hereinafter "Bella Invoice").

178.

On or about September 27, 2022, Milbry electronically submitted the Bella Invoice to Plaintiff.

179.

A true and correct copy of the Bella Invoice is attached hereto as Exhibit "12".

180.

The Bella Invoice lists Spa's address as 3070 Business Park Drive, Norcross, Georgia 30071.

181.

At the time Milbry issued the Bella Invoice, Buy-Rite was located at 3070 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

182.

Pursuant to Buy-Rite's website, Buy-Rite was established in 1936.

183.

Upon information and belief, Milbry used Buy-Rite's business address on the Bella Invoice to provide credibility to the Bella Invoice.

184.

The Bella Invoice states that Spa billed the outstanding amount to Bella Dream Boby, LLC located at 2295 Parklake Dr, Atlanta, Georgia 30345.

185.

The Bella Invoice states that Spa shipped the equipment described in the Bella Invoice to Bella Dream Body, LLC located at 2295 Parklake Dr, Atlanta, Georgia 30345.

186.

Bella did not have a business located at 2295 Parklake Dr, Atlanta, Georgia 30345 on the date of the Bella Invoice.

187.

Milbry and Spa used DreamBody's address to deceive Plaintiff into thinking Bella is DreamBody.

188.

Milbry and Spa did not deliver the equipment described in the Bella Invoice to 2295 Parklake Dr, Atlanta, Georgia 30345.

189.

On or about September 27, 2023, Milbry submitted a Driver's License to Plaintiff which purported to be Fredel Williamson.

190.

Although the license purports to be issued on December 2, 2020, the license was not issued on the form which the Georgia Department of Driver's Services began using during 2019.

191.

Also, the picture on the Driver's License portrays a caucasian male that clearly is not fifty-eight years of age.

192.

In contrast, Mr. Fredel Williamson, whose address is the same as the address in the Driver's License submitted to Plaintiff and who was born July 6, 1962, is an African-American man.

193.

The Driver's License states that Nathan Deal was Governor of the State of Georgia.

194.

Nathan Deal was not Governor of the State of Georgia on the date the Driver's License was issued.

195.

The Driver's License states that Gregory C. Dixon was the Commissioner of the Georgia Department of Driver Services on the date the Driver's License was issued.

196.

Gregory C. Dixon was not the Commissioner of the Georgia Department of Driver Services on the date the Driver's License was issued.

197.

The Driver's License is an altered Driver's License.

198.

Milbry and Spa submitted an altered Driver's License to Plaintiff to deceive Plaintiff into believing that the transaction was a legitimate transaction.

199.

After receiving the initial payment of $2,600.00 due at closing, Bella has not made any payments to Plaintiff which has become due pursuant to the Bella EFA.

## VI.  ALLEGATIONS CONCERNING FALSE INFORMATION PROVIDED BY DEFENDANTS TO PLAINTIFF RELATED TO THE SUSAN KLINE, INC. EQUIPMENT FINANCING AGREEMENT TRANSACTION.

200.

On or about October 18, 2022, Milbry prepared an EFA, describing the "Debtor Name" as "Susan Kline, Inc. DBA TO Salon" (hereinafter "Kline EFA"), using forms provided by Plaintiff.

201.

On or about October 19, 2022, Milbry electronically submitted the Kline EFA to Plaintiff.

202.

A true and correct copy of the original Kline EFA is attached hereto as Exhibit "13".

203.

Susan Kline, Inc. did not own the TO Salon on the date Milbry submitted the Kline EFA to Plaintiff.

204.

Donna Bard and Becki Wood owned Salon Suites LLC dba TO Salon Suites located at 1655 E. Thousand Oaks Blvd, Suite 201, Thousand Oaks, California on the date Milbry submitted the Kline EFA to Plaintiff.

205.

The Kline EFA purports to contain the electronic signature of Susan Kline on page 5 of 5 of the Kline EFA.

206.

Susan Kline did not sign the Kline EFA and did not authorize her electronic signature to be placed upon the Kline EFA.

207.

Milbry forged Susan Kline's signature on the Kline EFA.

208.

Plaintiff would not have disbursed the funds to Milbry as payment for the equipment if Plaintiff had known Susan Kline did not authorize her electronic signature to be placed on the Kline EFA

209.

On page 1, the Kline EFA describes the Debtor's Address as 1655 E. Thousand Oaks Blvd Ste 201, 202, 204, Thousand Oaks, California 91362.

210.

Pursuant to the *Statement of Information Corporation* filed by Susan Kline, Inc. on October 19, 2022 with the California Secretary of State's Office, Susan Kline, Inc's Principal Address and Mailing Address is 28620 Vineyard Lane, Castaic, California 91384.

211.

Pursuant to the *Statement of Information Corporation* filed Susan Kline, Inc. on October 19, 2022 with the California Secretary of State's Office, the type of business conducted by Susan Kline, Inc. is "real estate".

212.

Susan Kline, Inc. did not maintain a business location at 1655 E. Thousand Oaks Blvd Ste 201, 202, 204 Thousand Oaks, California 91362 on the date Milbry submitted the Kline EFA to Plaintiff.

213.

Pursuant to the records filed with the California Secretary of State's Office, on the date Milbry submitted the Kline EFA to Plaintiff, 1655 E. Thousand Oaks Blvd, Thousand Oaks, California 91362 was Salon Suites LLC's Principal Office.

214.

Milbry and Spa used Salon Suites LLC's address to give the impression that Kline was Salon Suites LLC.

215.

On page 2, the Kline EFA describes Kline's address for its bank account as 1655 E. Thousand Oaks Blvd, Thousand Oaks, California.

216.

Pursuant to Kline's 2022 Annual Registration filed with the California Secretary of State's Office, its Principal Office and Registered Office was located 28620 Vineyard Lane, Castaic, California 91384.

217.

Section 12 of the Kline EFA provides for the payment of the amounts due by means of an electronic withdrawal of funds from the bank account described in Section 12 of the Kline EFA.

218.

Section 12 states Kline maintained an account with Truist in Charlotte, North Carolina (hereinafter "Kline Account").

219.

After receiving an initial payment of $5,255.00 due at the signing of the Kline EFA, Plaintiff was unable to withdraw any additional payments from the Kline Account.

220.

On or about October 18, 2022, Milbry prepared a Disbursement Authorization, describing the "Debtor Name" as "Susan Kline, Inc. DBA TO Salon" (hereinafter "Kline Disbursement Authorization"), using forms provided by Plaintiff.

221.

On or about October 19, 2022, Milbry electronically submitted the Kline Disbursement Authorization to Plaintiff.

222.

A true and correct copy of the original Kline Disbursement Authorization is attached hereto as Exhibit "14".

223.

The Kline Disbursement Authorization purports to contain the electronic signature of Susan Kline on page 1 of the Kline Disbursement Authorization and on Exhibit "A" of the Kline Disbursement Authorization.

224.

Susan Kline did not sign the Kline Disbursement Authorization and did not authorize her electronic signature to be placed upon the Kline Disbursement Authorization.

225.

Susan Kline did not sign the Exhibit "A" to the Kline Disbursement Authorization and did not authorize her electronic signature to be placed upon Exhibit "A" to Kline Disbursement Authorization.

226.

The Kline Disbursement Authorization states that Spa delivered and installed the equipment described in the Kline Disbursement Authorization.

227.

Spa did not deliver and install the equipment described in the Kline Disbursement Authorization.

228.

The Kline Disbursement Authorization authorized Plaintiff to disburse $80,532.73 to Spa 4 Less, LLC.

229.

Plaintiff would not have disbursed the $80,532.73 to Milbry and Spa had it known Susan Kline neither signed nor authorized anyone to place her electronic signature on the Kline Disbursement Authorization.

230.

Plaintiff would not have disbursed the $80,532.73 had it known Milbry and Spa did not deliver and install the equipment described in the Kline Disbursement Authorization.

231.

On or about October 18, 2022, Milbry prepared a *Personal Guaranty,* describing the guarantor as "Susan Kline" (hereinafter "Kline Guaranty"), using forms provided by Plaintiff.

232.

On or about October 19, 2022, Milbry electronically submitted the Kline Guaranty to Plaintiff.

233.

A true and correct copy of the original Kline Guaranty is attached hereto as Exhibit "15".

234.

The Kline Guaranty purports to contain Susan Kline's signature.

235.

The Kline Guaranty also contains the Social Security Number of Susan Kline.

236.

Susan Kline did not sign the Kline Guaranty and did not authorize her electronic signature to be placed upon the Kline Guaranty.

237.

On or about October 18, 2022, Milbry prepared a Delivery and Acceptance Certificate, describing the "Debtor Name" as "Kline Dream Body, LLC" (hereinafter "Kline Delivery Certificate"), using forms provided by Plaintiff.

238.

On or about October 19, 2022, Milbry electronically submitted the Kline Delivery Certificate to Plaintiff.

239.

A true and correct copy of the original Kline Delivery Certificate is attached hereto as Exhibit "16".

240.

The Kline Delivery Certificate purports to contain the electronic signature of Susan Kline.

241.

Susan Kline did not sign the Kline Delivery Certificate and did not authorize her electronic signature to be placed upon the Kline Delivery Certificate.

242.

The Kline Delivery Certificate states that Kline received delivery of certain equipment to 1655 E. Thousand Oaks Blvd Ste 201, 202, 204 Thousand Oaks, California 91362.

243.

Since Salon Suites, LLC was located at 1655 E. Thousand Oaks Blvd, Thousand Oaks, California 91362, Spa and Milbry did not deliver the equipment contained in the Kline Delivery Certificate to Kline at that location.

244.

Milbry and Spa listed 1655 E. Thousand Oaks Blvd, Ste 201, 202, 204, Thousand Oaks, California 91362 as the delivery address because Salon Suites LLC d/b/a TO Salon Suites is located at that address.

245.

Milbry and Spa used Salon Suites LLC's address to deceive Plaintiff into thinking Kline is Salon Suites LLC.

246.

On or about October 18, 2022, Milbry prepared an *Addendum to Equipment Financing Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment* describing the "Debtor Name" as "Susan Kline, Inc. DBA TO Salon" (hereinafter "Kline EFA Addendum"), using forms provided by Plaintiff.

247.

On or about October 19, 2022, Milbry electronically submitted the Kline EFA Addendum to Plaintiff.

248.

A true and correct copy of the original Kline EFA Addendum is attached hereto as Exhibit "17".

249.

The Kline EFA Addendum purports to contain the electronic signature of Susan Kline in the location designated as "Debtor" and the location designated as "Guarantor".

250.

Susan Kline neither signed the Kline EFA Addendum nor authorized her electronic signature to be placed on the Kline EFA Addendum.

251.

On or about September 13, 2022, Milbry prepared Invoice SPA13244 on behalf of Spa, describing certain equipment purportedly sold to Susan Kline, Inc. DBA TO Salon for a total purchase price of $80,532.73 (hereinafter "Kline Invoice").

252.

On or about October 19, 2022, Milbry electronically submitted the Kline Invoice to Plaintiff.

253.

A true and correct copy of the Kline Invoice is attached hereto as Exhibit "18".

254.

The Kline Invoice lists Spa's address as 3070 Business Park Drive, Norcross, Georgia 30071.

255.

At the time Milbry issued the Kline Invoice, Buy-Rite was located at 3070 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

256.

Milbry used Buy-Rite's business address on Spa's Invoice to provide credibility to Spa's Invoice.

257.

The Kline Invoice states that Spa billed the outstanding amount to Susan Kline, Inc. located at 1655 E, Thousand Oaks Blvd. Suite 201, 202, 203, 204, 205, 207, Thousand Oaks, California 91362.

258.

The Kline Invoice states that Spa shipped the equipment described in the Kline Invoice to Susan Kline, Inc. located at 1655 E, Thousand Oaks Blvd. Suite 201, 202, 203, 204, 205, 207, Thousand Oaks, California 91362.

259.

Kline did not have a business located at 1655 E, Thousand Oaks Blvd. Suite 201, 202, 203, 204, 205, 207, Thousand Oaks, California 91362 on the date of the Kline Invoice.

260.

Milbry and Spa did not deliver the equipment described in the Kline Invoice to 1655 E, Thousand Oaks Blvd. Suite 201, 202, 203, 204, 205, 207, Thousand Oaks, California 91362.

261.

Milbry and Spa used Salon Suites LLC's address to deceive Plaintiff into thinking Kline is Salon Suites LLC.

262.

On or about October 19, 2023, Milbry submitted a Driver's License to Plaintiff which purported to be Susan Kline.

263.

On the date the Driver's License was issued, Susan Kline was seventy-five (75) years old.

264.

The picture on the Driver's License portrays a person that is clearly not seventy-five (75) years of age.

265.

The Driver's License is an altered Driver's License.

266.

Milbry and Spa submitted an altered Driver's License to Plaintiff to deceive Plaintiff into believing that the transaction was a legitimate transaction.

267.

After receiving the initial payment of $5,255.00 due at closing, Kline has not made any payments to Plaintiff which has become due pursuant to the Kline EFA.

## VI.  ALLEGATIONS CONCERNING FALSE INFORMATION PROVIDED BY DEFENDANTS TO PLAINTIFF RELATED TO CHELSEY MOWBRAY EQUIPMENT FINANCING AGREEMENT TRANSACTION.

### 268.

On or about October 28, 2022, Milbry prepared an EFA, describing the "Debtor Name" as "Chelsy Mowbray, a sole proprietor DBA Hair 360 Studio" (hereinafter "Mowbray EFA"), using forms provided by Plaintiff.

### 269.

On or about October 31, 2022, Milbry electronically submitted the Mowbray EFA to Plaintiff.

### 270.

A true and correct copy of the original Mowbray EFA is attached hereto as Exhibit "19.

### 271.

The Mowbray EFA purports to contain the electronic signature of Chelsey Mowbray on page 5 of 5 of the Mowbray EFA.

### 272.

Chelsey Mowbray denies she signed the Mowbray EFA and denies she authorized her electronic signature to be placed upon the Mowbray EFA.

273.

Milbry forged Chelsey Mowbray's signature on the Mowbray EFA.

274.

Plaintiff would not have disbursed the funds to Milbry as payment for the equipment if Plaintiff had known Chelsey Mowbray did not authorize her electronic signature to be placed on the Mowbray EFA.

275.

The Mowbray EFA describes the Debtor's Address as 402 Ingalls St, Santa Cruz, California 95060.

276.

Mowbray did not maintain a business location at 402 Ingalls St, Santa Cruz, California 95060 on the date Milbry submitted the Mowbray EFA to Plaintiff.

277.

On the date Milbry submitted the Mowbray EFA to Plaintiff, 402 Ingalls St, Santa Cruz, California 95060 was The Loft Salon & Spa's (hereinafter "The Loft") place of business.

278.

Milbry and Spa used The Loft's address to give the impression that Mowbray was The Loft.

279.

The Mowbray EFA lists Mowbray's telephone number as 313-327-0319.

280.

On the date Milbry submitted the Mowbray EFA to Plaintiff, 313-327-0319 was not Mowbray's telephone number.

281.

The 313 Area Code is in Detroit, Michigan.

282.

Section 12 of the Mowbray EFA provides for the payment of the amounts due by means of an electronic withdrawal of funds from the bank account described in Section 12 of the Mowbray EFA.

283.

Section 12 states Mowbray maintained an account with Middlesex Federal Savings in Somerville, MA (hereinafter "Mowbray Account").

284.

After receiving an initial payment of $4,000.00 due at the signing of the Mowbray EFA, Plaintiff was unable to withdraw any additional payments from the Mowbray Account.

285.

On April 20, 2023, Mowbray sent Plaintiff a credit deletion request, alleging that her identity had been stolen, and the Mowbray EFA was fraudulently entered into by the person who stole her identity.

286.

On or about October 28, 2022, Milbry prepared a Disbursement Authorization, describing the "Debtor Name" as "Chelsy Mowbray, a sole proprietor DBA Hair 360 Studio" (hereinafter "Mowbray Disbursement Authorization"), using forms provided by Plaintiff.

287.

On or about October 31, 2022, Milbry electronically submitted the Mowbray Disbursement Authorization to Plaintiff.

288.

A true and correct copy of the original Mowbray Disbursement Authorization is attached hereto as Exhibit "20".

289.

The Mowbray Disbursement Authorization purports to contain the electronic signature of Chelsey Mowbray on page 1 of the Mowbray Disbursement Authorization and on Exhibit "A" of the Mowbray Disbursement Authorization.

290.

Chelsey Mowbray denies she signed the Mowbray Disbursement Authorization and denies she authorized her electronic signature to be placed upon the Mowbray Disbursement Authorization.

291.

Chelsey Mowbray denies she signed Exhibit "A" to the Mowbray Disbursement Authorization and denies she authorized her electronic signature to be placed upon Exhibit "A" to Mowbray Disbursement Authorization.

292.

The Mowbray Disbursement Authorization identifies Chelsey Mowbray as the owner of Hair 360 Studio.

293.

Chelsey Mowbray was not the owner of Hair 360 Studio on October 31, 2022.

294.

The Mowbray Disbursement Authorization states that Spa delivered and installed the equipment described in the Mowbray Disbursement Authorization.

295.

Spa did not deliver and install the equipment described in the Mowbray Disbursement Authorization.

296.

The Mowbray Disbursement Authorization authorized Plaintiff to disburse $50,808.00 to Spa.

297.

Plaintiff would not have disbursed the $50,808.00 to Milbry and Spa had it known Chelsey Mowbray neither signed nor authorized anyone to place her electronic signature on the Mowbray Disbursement Authorization.

298.

Plaintiff would not have disbursed the $50,808.00 had it known Milbry and Spa did not deliver and install the equipment described in the Mowbray Disbursement Authorization.

299.

On or about October 28, 2022, Milbry prepared a *Personal Guaranty,* describing the guarantor as "Chelsey Mowbray" (hereinafter "Mowbray Guaranty"), using forms provided by Plaintiff.

300.

On or about October 31, 2022, Milbry electronically submitted the Mowbray Guaranty to Plaintiff.

301.

A true and correct copy of the original Mowbray Guaranty is attached hereto as Exhibit "21".

302.

The Mowbray Guaranty purports to contain Chelsey Mowbray's signature.

303.

The Mowbray Guaranty also contains the Social Security Number of Chelsey Mowbray.

304.

Chelsey Mowbray denies she signed the Mowbray Guaranty.

305.

On or about October 28, 2022, Milbry prepared a *Delivery and Acceptance Certificate,* describing the "Debtor Name" as "Chelsy Mowbray, a sole proprietor DBA Hair 360 Studio" (hereinafter "Mowbray Delivery Certificate"), using forms provided by Plaintiff.

306.

On or about October 31, 2022, Milbry electronically submitted the Mowbray Delivery Certificate to Plaintiff.

307.

A true and correct copy of the original Mowbray Delivery Certificate is attached hereto as Exhibit "22".

308.

The Mowbray Delivery Certificate purports to contain the electronic signature of Chelsey Mowbray.

309.

Chelsey Mowbray denies she electronically signed the Mowbray Delivery Certificate and denies she authorized her electronic signature to be placed upon the Mowbray Delivery Certificate.

310.

The Mowbray Delivery Certificate states that Mowbray received delivery of certain equipment at her business address located at 402 Ingall Street, Santa Cruz, California 95060.

311.

Since The Loft was located at 402 Ingall Street, Santa Cruz, California 95060, Spa and Milbry did not deliver the equipment contained in the Mowbray Delivery Certificate to Mowbray at that location.

312.

Milbry and Spa listed 402 Ingall Street, Santa Cruz, California 95060 as the delivery address because The Loft is located at that address.

313.

Milbry and Spa used The Loft's address to deceive Plaintiff into thinking Mowbray is The Loft.

314.

On or about October 28, 2022, Milbry prepared an *Addendum to Equipment Financing Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment,* describing the "Debtor Name" as "Chelsy Mowbray, a sole proprietor DBA Hair 360 Studio" (hereinafter "Mowbray EFA Addendum"), using forms provided by Plaintiff.

315.

On or about October 31, 2022, Milbry electronically submitted the Mowbray EFA Addendum to Plaintiff.

316.

A true and correct copy of the original Mowbray EFA Addendum is attached hereto as Exhibit "23".

317.

The Mowbray EFA Addendum purports to contain the electronic signature of Chelsey Mowbray in the location designated as "Debtor" and the location designated as 'Guarantor".

318.

Chelsey Mowbray denies she electronically signed the Mowbray EFA Addendum and denies she authorized her electronic signature to be placed upon the Mowbray EFA Addendum.

319.

On or about September 13, 2022, Milbry prepared Invoice INV0782 on behalf of Spa describing certain equipment purportedly sold to Chelsy Mowbray, a sole proprietor DBA Hair 360 Studio for a total purchase price of $50,808.00 (hereinafter "Mowbray Invoice").

320.

On or about October 31, 2022, Milbry electronically submitted the Mowbray Invoice to Plaintiff.

321.

A true and correct copy of the Mowbray Invoice is attached hereto as Exhibit "24".

322.

The Mowbray Invoice lists Spa's address as 3070 Business Park Drive, Norcross, Georgia 30071.

323.

At the time Milbry issued the Mowbray Invoice, Buy-Rite was located at 3070 Business Park Drive, Suite H-I, Norcross, Georgia 30071.

324.

Milbry used Buy-Rite's business address on the Mowbray Invoice to provide credibility to the Mowbray Invoice.

325.

The Mowbray Invoice states that Spa billed the outstanding amount to "Chelsey Mowbray, a sole proprietor – Hair 360 Studio" located at 402 Ingall Street, Santa Cruz, California 95060.

326.

The Mowbray Invoice states that Spa shipped the equipment described in the Mowbray Invoice to "Chelsy Mowbray, a sole proprietor - Hair 360 Studio" located at 402 Ingall Street, Santa Cruz, California 95060.

327.

Mowbray did not have a business located at 402 Ingall Street, Santa Cruz, California 95060 on the date of the Mowbray Invoice.

328.

Milbry and Spa used The Loft's address to deceive Plaintiff into thinking Mowbray is The Loft.

329.

Milbry and Spa did not deliver the equipment described in the Mowbray Invoice to 402 Ingall Street, Santa Cruz, California 95060.

330.

On or about October 31, 2023, Milbry submitted a Driver's License to Plaintiff which purported to be Chelsey Mowbray.

331.

After receiving the initial payment of $4,000.00 due at closing, Mowbray has not made any payments to Plaintiff which has become due pursuant to the Mowbray EFA.

## VI.  COUNT I – CLAIM FOR BREACH OF THE RUSSELL EFA.

332.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

333.

Milbry forged Russell's signature on Exhibits "1" through "5" (hereinafter

Exhibits "1" through "5" and Exhibit "6" are collectively referred to as "Russell Loan Documents").

334.

Pursuant to O.C.G.A. § 11-3-403, an unauthorized signature is ineffective except as to the signature of the unauthorized signer in favor of a person who in good faith pays the instrument.

335.

Plaintiff accepted Milbry's unauthorized signature contained in the Russell EFA and paid Spa and Milbry $36,350.00 in good faith.

336.

By signing the Russell EFA without Robin Russell's authorization, Milbry is liable for all amounts due pursuant to the Russell EFA.

337.

The Russell EFA obligates Milbry to pay Plaintiff twenty (20) quarterly payments of $2,680.00 each, beginning on November 15, 2022.

338.

Pursuant to the Russell EFA, a failure to make a payment within three (3) business days after it became due is an event of default.

339.

Milbry breached the Russell EFA by failing to make the first payment arising pursuant to the Russell EFA on November 15, 2022 and each payment thereafter when each payment became due.

340.

The Russell EFA became in default on November 18, 2022 when Milbry failed to make the first payment.

341.

Pursuant to the Russell EFA, upon default, Plaintiff is entitled to recover the following sums: (1) all unpaid quarterly payments and other payments, including late charges in the amount of eighteen per cent (18%) of each outstanding payment and interest, due under the Russell EFA, (2) All accelerated future payments due through the last day of the term of this Russell EFA; (3) all other costs or expenses paid or incurred by Plaintiff at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Plaintiff's rights and remedies under the Russell EFA, including, but not limited to, attorneys' fees and costs; and (4) Interest accruing at the rate of eighteen percent (18%) per annum on all outstanding principal amounts.

342.

On November 18, 2022, all outstanding principal and accrued interest became immediately due.

343.

On November 18, 2022, principal in the amount of $36,350.00, accrued interest in the amount of $1,246.61 and late charges in the amount of $482.40 became immediately due.

344.

Beginning on November 19, 2022 and continuing each day thereafter, interest accrued and continues to accrue on the outstanding principal amount at the rate of eighteen percent (18%) per annum or $17.93 per day.

345.

As of August 24, 2023, the outstanding balance of principal, accrued interest and late charges due on the Russell EFA totaled $43,080.37.

346.

As a result of Milbry's breach of the Russell EFA, Plaintiff has been damaged in the amount of $43,080.37 plus interest accruing after August 24, 2023 at the rate of $17.93 per day.

## VII.  COUNT II – CLAIM FOR BREACH OF THE BELLA EFA.

347.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199 of this Complaint as if fully restated herein.

348.

Milbry forged Fredel Wiliamson's signature on Exhibits "7" through "11" (hereinafter Exhibits "7" through "11" and "12" are hereinafter collectively referred to as the "Bella Loan Documents").

349.

Pursuant to O.C.G.A. § 11-3-403, an unauthorized signature is ineffective except as to the signature of the unauthorized signer in favor of a person who in good faith pays the instrument.

350.

Plaintiff accepted Milbry's unauthorized signature contained in the Bella EFA and paid Spa and Milbry $49,687.00 in good faith.

351.

By signing the Bella EFA without Fredel Williamson's authorization, Milbry is liable for all amounts due pursuant to the Bella EFA.

352.

The Bella EFA obligates Milbry to pay Plaintiff sixty (60) monthly payments of $1,300.00 each, beginning on November 26, 2022.

353.

Pursuant to the Bella EFA, a failure to make a payment within three (3) business days after it became due is an event of default.

354.

Milbry breached the Bella EFA by failing to make the first payment arising pursuant to the Bella EFA on November 26, 2022 and each payment thereafter when each payment became due.

355.

The Bella EFA became in default on November 29, 2022 when Milbry failed to make the first payment.

356.

Pursuant to the Bella EFA, upon default, Plaintiff is entitled to recover the following sums: (1) all unpaid quarterly payments and other payments, including late charges in the amount of eighteen per cent (18%) of each outstanding payment and interest, due under the Bella EFA, (2) All accelerated future payments due through the last day of the term of this Bella EFA; (3) all other costs or expenses paid or incurred by Plaintiff at any time in connection with the execution, delivery,

administration, amendment and enforcement or exercise of any of the Plaintiff's rights and remedies under the Bella EFA, including, but not limited to, attorneys' fees and costs; and (4) Interest accruing at the rate of eighteen percent (18%) per annum on all outstanding principal amounts.

357.

On November 29, 2022, all outstanding principal and accrued interest became immediately due.

358.

On November 29, 2022, principal in the amount of $49,687.00, accrued interest in the amount of $1,569.51 and late charges in the amount of $234.00 became immediately due.

359.

Beginning on November 30, 2022 and continuing each day thereafter, interest accrued and continues to accrue on the outstanding principal amount at the rate of eighteen percent (18%) per annum or $24.50 per day.

360.

As of August 24, 2023, the outstanding balance of principal, accrued interest and late charges due on the Bella EFA totaled $58,057.37.

361.

As a result of Milbry's breach of the Bella EFA, Plaintiff has been damaged in the amount of $58,057.37 plus interest accruing after August 24, 2023 at the rate of $24.50 per day.

## VIII.  COUNT III – CLAIM FOR BREACH OF THE KLINE EFA.

362.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267 of this Complaint as if fully restated herein.

363.

Milbry forged Susan Kline's signature on Exhibits "13" through "17" (hereinafter Exhibits "13" through "17" and Exhibits "18" collectively referred to as the "Kline Loan Documents").

364.

Pursuant to O.C.G.A. § 11-3-403, an unauthorized signature is ineffective except as to the signature of the unauthorized signer in favor of a person who in good faith pays the instrument.

365.

Plaintiff accepted Milbry's unauthorized signature contained in the Kline EFA and paid Spa and Milbry $80,532.73 in good faith.

366.

By signing the Kline EFA without Susan Kline's authorization, Milbry is liable for all amounts due pursuant to the Kline EFA.

367.

The Kline EFA obligates Milbry to pay Plaintiff twenty (20) quarterly payments of $5,255.00 each, beginning on January 15, 2023.

368.

Pursuant to the Kline EFA, a failure to make a payment within three (3) business days after it became due is an event of default.

369.

Milbry breached the Kline EFA by failing to make the first payment arising pursuant to the Kline EFA on January 15, 2023 and each payment thereafter when each payment became due.

370.

The Kline EFA became in default on January 18, 2023 when Milbry failed to make the first payment.

371.

Pursuant to the Kline EFA, upon default, Plaintiff is entitled to recover the following sums: (1) all unpaid quarterly payments and other payments, including late charges in the amount of eighteen per cent (18%) of each outstanding payment

and interest, due under the Kline EFA, (2) All accelerated future payments due through the last day of the term of this Kline EFA; (3) all other costs or expenses paid or incurred by Plaintiff at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Plaintiff's rights and remedies under the Kline EFA, including, but not limited to, attorneys' fees and costs; and (4) Interest accruing at the rate of eighteen percent (18%) per annum on all outstanding principal amounts.

<div align="center">372.</div>

On January 18, 2023, all outstanding principal and accrued interest became immediately due.

<div align="center">373.</div>

On January 18, 2023, principal in the amount of $80,532.73, accrued interest in the amount of $2,104.78 and late charges in the amount of $945.00 became immediately due.

<div align="center">374.</div>

Beginning on January 19, 2023 and continuing each day thereafter, interest accrued and continues to accrue on the outstanding principal amount at the rate of eighteen percent (18%) per annum or $39.71 per day.

375.

As of August 24, 2023, the outstanding balance of principal, accrued interest and late charges due on the Kline EFA totaled $92,241.23.

376.

As a result of Milbry's breach of the Kline EFA, Plaintiff has been damaged in the amount of $92,241.23 plus interest accruing after August 24, 2023 at the rate of $39.71 per day.

## IX.  COUNT IV – CLAIM FOR BREACH OF THE MOWBRAY EFA.

377.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331 of this Complaint as if fully restated herein.

378.

Milbry forged Chelsey Mowbray's signature on Exhibits "19" through "23" (hereinafter Exhibits "19" through "23" and Exhibit "24" are hereinafter referred to as the "Mowbray Loan Documents").

379.

Pursuant to O.C.G.A. § 11-3-403, an unauthorized signature is ineffective except as to the signature of the unauthorized signer in favor of a person who in good faith pays the instrument.

380.

Plaintiff accepted Milbry's unauthorized signature contained in the Mowbray EFA and paid Spa and Milbry $50,808.00 in good faith.

381.

By signing the Mowbray EFA without Chelsey Mowbray's authorization, Milbry is liable for all amounts due pursuant to the Mowbray EFA.

382.

The Mowbray EFA obligates Milbry to pay Plaintiff twenty (20) quarterly payments of $4,000.00 each, beginning on January 15, 2023.

383.

Pursuant to the Mowbray EFA, a failure to make a payment within three (3) business days after it became due is an event of default.

384.

Milbry breached the Mowbray EFA by failing to make the first payment arising pursuant to the Mowbray EFA on January 15, 2023 and each payment thereafter when each payment became due.

385.

The Mowbray EFA became in default on January 18, 2023 when Milbry failed to make the first payment.

386.

Pursuant to the Mowbray EFA, upon default, Plaintiff is entitled to recover the following sums: (1) all unpaid quarterly payments and other payments, including late charges in the amount of eighteen per cent (18%) of each outstanding payment and interest, due under the Mowbray EFA, (2) All accelerated future payments due through the last day of the term of this Mowbray EFA; (3) all other costs or expenses paid or incurred by Plaintiff at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Plaintiff's rights and remedies under the Mowbray EFA, including, but not limited to, attorneys' fees and costs; and (4) Interest accruing at the rate of eighteen percent (18%) per annum on all outstanding principal amounts.

387.

On January 18, 2023, all outstanding principal and accrued interest became immediately due.

388.

On January 18, 2023, principal in the amount of $50,808.00, accrued interest in the amount of $2,063.77 and late charges in the amount of $720.00 became immediately due.

389.

Beginning on January 19, 2023 and continuing each day thereafter, interest continues to accrue on the outstanding principal amount at the rate of eighteen percent (18%) per annum or $25.06 per day.

390.

As of August 24, 2023, the outstanding balance of principal, accrued interest and late charges due on the Mowbray EFA totaled $59,053.98.

391.

As a result of Milbry's breach of the Mowbray EFA, Plaintiff has been damaged in the amount of $ $59,053.98 plus interest accruing after August 24, 2023 at the rate of $25.06 per day.

## X.  COUNT V – CLAIM FOR ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-1-11.

392.

Paragraphs 332 through 391 of this Complaint are hereby incorporated as if fully restated herein.

393.

The Russell EFA provides that Debtor shall pay Plaintiff's attorney's fees in the collection of outstanding amounts due Plaintiff.

74

394.

The Bella EFA provides that Debtor shall pay Plaintiff's attorney's fees in the collection of outstanding amounts due Plaintiff.

395.

The Kline EFA provides that Debtor shall pay Plaintiff's attorney's fees in the collection of outstanding amounts due Plaintiff.

396.

The Mowbray EFA provides that Debtor shall pay Plaintiff's attorney's fees in the collection of outstanding amounts due Plaintiff.

397.

Pursuant to O.C.G.A. § 13-1-11, Plaintiff is entitled to recover attorney's fees in an amount equal to fifteen percent (15%) of the first $500.00 of principal and interest owing on each of the Russell EFA, Bella EFA, Kline EFA, and Mowbray EFA (collectively, the "EFAs"), and ten percent (10%) of the remaining portion of principal and interest owing on the EFAs.

398.

Plaintiff hereby notifies Defendant Milbry that if the entire aggregate amount of principal and interest of $42,597.97 owing Plaintiff on the Russell EFA is not paid in full within ten (10) days after the service of this Complaint on Milbry, then Plaintiff will be entitled to recover its costs and attorney's fees in the amount

provided by O.C.G.A. § 13-1-11. To avoid paying Plaintiff's attorney's fees, Milbry must pay Plaintiff in full within ten (10) days after the service of this Complaint.

<div align="center">399.</div>

Plaintiff hereby notifies Defendant Milbry that if the entire aggregate amount of principal and interest of $57,823.37 owing Plaintiff on the Bella EFA is not paid in full within ten (10) days after the service of this Complaint on Milbry, then Plaintiff will be entitled to recover its costs and attorney's fees in the amount provided by O.C.G.A. § 13-1-11. To avoid paying Plaintiff's attorney's fees, Milbry must pay Plaintiff in full within ten (10) days after the service of this Complaint.

<div align="center">400.</div>

Plaintiff hereby notifies Defendant Milbry that if the entire aggregate amount of principal and interest of $91,295.33 owing Plaintiff on the Kline EFA is not paid in full within ten (10) days after the service of this Complaint on Milbry, then Plaintiff will be entitled to recover its costs and attorney's fees in the amount provided by O.C.G.A. § 13-1-11. To avoid paying Plaintiff's attorney's fees, Milbry must pay Plaintiff in full within ten (10) days after the service of this Complaint.

<div align="center">401.</div>

Plaintiff hereby notifies Defendant Milbry that if the entire aggregate amount of principal and interest of $58,333.98 owing Plaintiff on the Mowbray EFA is not paid in full within ten (10) days after the service of this Complaint on Milbry, then

<div align="center">76</div>

Plaintiff will be entitled to recover its costs and attorney's fees in the amount provided by O.C.G.A. § 13-1-11. To avoid paying Plaintiff's attorney's fees, Milbry must pay Plaintiff in full within ten (10) days after the service of this Complaint.

## XI.  COUNT VI – DEFENDANTS' FRAUDULENT MISREPRESENTATIONS CONCERNING THE RUSSELL TRANSACTION.

402.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

### A. Forged Signatures.

403.

Each Defendant falsely represented to Plaintiff that the electronic signatures contained in the Russell Loan Documents were authentic and authorized signatures of Robin Russell.

404.

Each Defendant knew that each signature of Robin Russell contained in each of the Russell Loan Documents was not the authorized, authentic signature of Robin Russell.

405.

Each Defendant intentionally made the false representations concerning the authenticity and authorization of the signatures of Robin Russell with the intention

and purpose of deceiving and inducing Plaintiff to disburse $36,350.00 to Defendants.

<div align="center">406.</div>

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Robin Russell's signatures in the Russell Loan Documents to disburse to Plaintiffs $36,350.00.

<div align="center">407.</div>

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $36,350.00.

**B. False Address of Debtor.**

<div align="center">408.</div>

Each Defendant falsely represented to Plaintiff that Robin Russell maintained a business at 999 Oak Hill Road 5, Lafayette, CA 94549 on August 30, 2022 to deceive Plaintiff into believing Robin Russell maintained an established business at the location.

<div align="center">409.</div>

Each Defendant knew that Robin Russell did not maintain a business at 999 Oak Hill Road 5, Lafayette, CA 94549 on August 30, 2022.

410.

Each Defendant intentionally made the false representations concerning Robin Russell's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $36,350.00 to Defendants.

411.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Robin Russell's business address to disburse to Plaintiffs $36,350.00.

412.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $36,350.00.

**C. False Address of Defendants.**

413.

Each Defendant falsely represented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on August 30, 2022 to deceive Plaintiff into believing Spa maintained an established business at the location.

414.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on August 30, 2022.

415.

Each Defendant intentionally made the false representations concerning Spa's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $36,350.00 to Defendants.

416.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $36,350.00.

417.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $36,350.00.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

418.

Each Defendant falsely represented to Plaintiff that Spa delivered the equipment described in the Russell Invoice to Russell to deceive Plaintiff into disbursing $36,350.00.

419.

Each Defendant knew that Spa did not deliver the equipment described in the Russell Invoice to Russell.

420.

Each Defendant intentionally misrepresented to Plaintiff that Spa delivered the equipment described in the Russell Invoice to Russell with the intention and purpose of deceiving and inducing Plaintiff to disburse $36,350.00 to Defendants.

421.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's delivery of the equipment to disburse to Plaintiffs $36,350.00.

422.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $36,350.00.

## XII. COUNT VII – DEFENDANTS' FRAUDULENT MISREPRESENTATIONS CONCERNING THE BELLA TRANSACTION.

423.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199 of this Complaint as if fully restated herein.

### A. Forged Signatures.

424.

Each Defendant falsely represented to Plaintiff that the electronic signatures contained in the Bella Loan Documents were authentic and authorized signatures of Fredel Williamson.

425.

Each Defendant knew that each signature of Fredel Williamson contained in each of the Bella Loan Documents was not the authorized, authentic signature of Fredel Williamson.

426.

Each Defendant intentionally made the false representations concerning the authenticity and authorization of the signatures of Fredel Williamson with the intention and purpose of deceiving and inducing Plaintiff to disburse $49,687.00 to Defendants.

427.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Fredel Williamson's signatures in the Bella Loan Documents to disburse to Plaintiffs $49,687.00.

428.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $49,687.00.

**B. False Address of Debtor.**

429.

Each Defendant falsely represented to Plaintiff that Bella maintained a business at 2295 Parklake Dr., Atlanta, Georgia 30345 on September 27, 2022 to

deceive Plaintiff into believing Bella maintained an established business at the location.

<p style="text-align:center">430.</p>

Each Defendant knew that Bella did not maintain a business at 2295 Parklake Dr., Atlanta, Georgia 30345 on September 27, 2022.

<p style="text-align:center">431.</p>

Each Defendant intentionally made the false representations concerning Bella's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $49,687.00 to Defendants.

<p style="text-align:center">432.</p>

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Bella's business address to disburse to Plaintiffs $49,687.00.

<p style="text-align:center">433.</p>

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $49,687.00.

**C. False Address of Defendants.**

<p style="text-align:center">434.</p>

Each Defendant falsely represented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on September 27, 2022 to

deceive Plaintiff into believing Spa maintained an established business at the location.

435.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on September 27, 2022.

436.

Each Defendant intentionally made the false representations concerning Spa's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $49,687.00 to Defendants.

437.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $49,687.00.

438.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $49,687.00.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

439.

Each Defendant falsely represented to Plaintiff that Spa delivered the equipment described in the Bella Invoice to Bella to deceive Plaintiff into disbursing $49,687.00.

84

440.

Each Defendant knew that Spa did not deliver the equipment described in the Bella Invoice to Bella.

441.

Each Defendant intentionally represented to Plaintiff that Spa delivered the equipment described in the Bella Invoice to Bella with the intention and purpose of deceiving and inducing Plaintiff to disburse $49,687.00 to Defendants.

442.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $49,687.00.

443.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $49,687.00.

**E. Defendants' Fraudulent Representations Related to Fredel Williamson's Driver's License.**

444.

Each Defendant falsely represented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Fredel Williamson's authentic Driver's License to deceive Plaintiff into disbursing $49,687.00.

445.

Each Defendant knew that the copy of the Driver's License submitted to Plaintiff was a forged Driver's License.

446.

Each Defendant intentionally represented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Fredel Williamson's authentic Driver's License with the intention and purpose of deceiving and inducing Plaintiff to disburse $49,687.00 to Defendants.

447.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the copy of the Driver's License submitted to Plaintiff to disburse to Plaintiffs $49,687.00.

448.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $49,687.00.

## XIII.  COUNT VIII – DEFENDANTS' FRAUDULENT MISREPRESENTATIONS CONCERNING THE KLINE TRANSACTION.

449.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267 of this Complaint as if fully restated herein.

### A. Forged Signatures.

450.

Each Defendant falsely represented to Plaintiff that the electronic signatures contained in the Kline Loan Documents were authentic and authorized signatures of Susan Kline.

451.

Each Defendant knew that each signature of Susan Kline contained in each of the Kline Loan Documents was not the authorized, authentic signature of Susan Kline.

452.

Each Defendant intentionally made the false representations concerning the authenticity and authorization of the signatures of Susan Kline with the intention and purpose of deceiving and inducing Plaintiff to disburse $80,532.73 to Defendants.

453.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Susan Kline's signatures in the Kline Loan Documents to disburse to Plaintiffs $80,532.73.

454.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $80,532.73.

**B. False Address of Debtor.**

455.

Each Defendant falsely represented to Plaintiff that Susan Kline, Inc. maintained a business at 1655 E. Thousand Oaks Blvd., Thousand Oaks, California 91362 on October 19, 2022 to deceive Plaintiff into believing Susan Kline, Inc. maintained an established business at the location.

456.

Each Defendants knew that Susan Kline, Inc. did not maintain a business at 1655 E. Thousand Oaks Blvd., Thousand Oaks, California 91362 on October 19, 2022.

457.

Defendants intentionally made the false misrepresentations concerning Susan Kline, Inc.'s business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $80,532.73 to Defendants.

458.

Plaintiff reasonably relied upon Defendants' representations concerning Susan Kline, Inc.'s business address to disburse to Plaintiffs $80,532.73.

459.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $80,532.73.

**C. False Address of Defendants.**

460.

Each Defendant falsely represented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 19, 2022 to deceive Plaintiff into believing Spa maintained an established business at the location.

461.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 19, 2022.

462.

Each Defendant intentionally made the false representations concerning Spa's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $80,532.73 to Defendants.

463.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $80,532.73.

464.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $80,532.73.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

465.

Each Defendant falsely represented to Plaintiff that Spa delivered the equipment described in the Kline Invoice to Susan Kline, Inc. to deceive Plaintiff into disbursing $80,532.73.

466.

Each Defendant knew that Spa did not deliver the equipment described in the Kline Invoice to Susan Kline, Inc.

467.

Each Defendant intentionally represented to Plaintiff that Spa delivered the equipment described in the Kline Invoice to Susan Kline, Inc. with the intention and purpose of deceiving and inducing Plaintiff to disburse $80,532.73 to Defendants.

468.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $80,532.73.

469.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $80,532.73.

### E. Defendants' Fraudulent Representations Related to Susan Kline's Driver's License.

470.

Each Defendant falsely represented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Susan Kline's authentic Driver's License to deceive Plaintiff into disbursing $80,532.73.

471.

Each Defendant knew that the copy of the Driver's License submitted to Plaintiff was a forged Driver's License.

472.

Each Defendant intentionally represented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Susan Kline's authentic Driver's License with the intention and purpose of deceiving and inducing Plaintiff to disburse $80,532.73 to Defendants.

473.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the copy of the Driver's License submitted to Plaintiff to disburse to Plaintiffs $80,532.73.

474.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $80,532.73.

## XIV.  COUNT IX – DEFENDANTS' FRAUDULENT MISREPRESENTATIONS CONCERNING THE MOWBRAY TRANSACTION.

475.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331 of this Complaint as if fully restated herein.

**A. Forged Signatures.**

476.

Each Defendant falsely represented to Plaintiff that the electronic signatures contained in the Mowbray Loan Documents were authentic and authorized signatures of Chelsey Mowbray.

477.

Each Defendant knew that each signature of Chelsey Mowbray contained in each of the Mowbray Loan Documents was not the authorized, authentic signature of Chelsey Mowbray.

478.

Each Defendant intentionally made the false representations concerning the authenticity and authorization of the signatures of Chelsey Mowbray with the intention and purpose of deceiving and inducing Plaintiff to disburse $50,808.00 to Defendants.

479.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Chelsey Mowbray's signatures in the Mowbray Loan Documents to disburse to Plaintiffs $50,808.00.

480.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $50,808.00.

**B. False Address of Debtor.**

481.

Each Defendant falsely represented to Plaintiff that Chelsey Mowbray maintained a business at 402 Ingalls Street, Santa Cruz, California 95060 on October 28, 2022 to deceive Plaintiff into believing Chelsey Mowbray maintained an established business at the location.

482.

Each Defendant knew that Chelsey Mowbray did not maintain a business at 402 Ingalls Street, Santa Cruz, California 95060 on October 28, 2022.

483.

Each Defendant intentionally made the false representations concerning Chelsey Mowbray's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $50,808.00 to Defendants.

484.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Chelsey Mowbray's business address to disburse to Plaintiffs $50,808.00.

485.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $50,808.00.

## C. False Address of Defendants.

486.

Each Defendant falsely represented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 28, 2022 to deceive Plaintiff into believing Spa maintained an established business at the location.

487.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 28, 2022.

488.

Each Defendant intentionally made the false representations concerning Spa's business address with the intention and purpose of deceiving and inducing Plaintiff to disburse $50,808.00 to Defendants.

489.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $50,808.00.

490.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $50,808.00.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

491.

Each Defendant falsely represented to Plaintiff that Spa delivered the equipment described in the Mowbray Invoice to Mowbray to deceive Plaintiff into disbursing $50,808.00.

492.

Each Defendant knew that Spa did not deliver the equipment described in the Mowbray Invoice to Mowbray.

493.

Each Defendant intentionally represented to Plaintiff that Spa delivered the equipment described in the Mowbray Invoice to Mowbray with the intention and purpose of deceiving and inducing Plaintiff to disburse $50,808.00 to Defendants.

494.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $50,808.00.

495.

As a proximate result of Plaintiff's reliance upon Defendants' fraudulent representations, Plaintiff has been damaged in the amount of $50,808.00.

## XV.  COUNT X – DEFENDANTS' NEGLIGENT MISREPRESENTATIONS CONCERNING THE RUSSELL TRANSACTION.

496.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

**A. Forged Signatures.**

497.

Each Defendant negligently misrepresented to Plaintiff that the electronic signatures contained in the Russell Loan Documents were authentic and authorized signatures of Robin Russell.

498.

Each Defendant failed to use reasonable care to determine if each signature of Robin Russell contained in each of the Russell Loan Documents was the authorized, authentic signature of Robin Russell.

499.

Each Defendant made the misrepresentations concerning the authenticity and authorization of the signatures of Robin Russell while knowing Plaintiff would rely upon the authenticity and authorization of the signatures to disburse $36,350.00 to Defendants.

500.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Robin Russell's signatures in the Russell Loan Documents to disburse to Plaintiffs $36,350.00.

501.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $36,350.00.

**B. False Address of Debtor.**

502.

Each Defendant negligently misrepresented to Plaintiff that Robin Russell maintained a business at 999 Oak Hill Road 5, Lafayette, CA 94549 on August 30, 2022.

503.

If both Defendants had used reasonable care in preparing the Russell Loan Documents, they would have known that Robin Russell did not maintain a business at 999 Oak Hill Road 5, Lafayette, CA 94549 on August 30, 2022.

504.

Each Defendant made the misrepresentations concerning Robin Russell's business address knowing Plaintiff would rely upon the misrepresentation to disburse $36,350.00 to Defendants.

505.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Robin Russell's business address to disburse to Plaintiffs $36,350.00.

506.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $36,350.00.

**C. False Address of Defendants.**

507.

Each Defendant negligently misrepresented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on August 30, 2022.

508.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on August 30, 2022.

509.

Each Defendant made the misrepresentations knowing Plaintiff would rely upon the misrepresentation to disburse $36,350.00 to Defendants.

510.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $36,350.00.

511.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $36,350.00.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

512.

Each Defendant negligently misrepresented to Plaintiff that Spa delivered the equipment described in the Russell Invoice to Russell.

513.

Each Defendant knew that Spa did not deliver the equipment described in the Russell Invoice to Russell.

514.

Each Defendant misrepresented to Plaintiff that Spa delivered the equipment described in the Russell Invoice to Russell knowing Plaintiff would rely upon the misrepresentation to disburse $36,350.00 to Defendants

515.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's delivery of the equipment to disburse to Plaintiffs $36,350.00.

516.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $36,350.00.

## XVI.  COUNT XI – DEFENDANTS' NEGLIGENT MISREPRESENTATIONS CONCERNING THE BELLA TRANSACTION.

517.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199 of this Complaint as if fully restated herein.

### A. Forged Signatures.

518.

Each Defendant negligently misrepresented to Plaintiff that the electronic signatures contained in the Bella Loan Documents were authentic and authorized signatures of Fredel Williamson.

519.

Each Defendant failed to use reasonable care to determine if each signature of Fredel Williamson contained in each of the Bella Loan Documents was the authorized, authentic signature of Fredel Williamson.

520.

Each Defendant made the misrepresentations concerning the authenticity and authorization of the signatures of Fredel Williamson while knowing Plaintiff would rely upon the authenticity and authorization of the signatures to disburse $49,687.00 to Defendants.

521.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Fredel Williamson's signatures in the Bella Loan Documents to disburse to Plaintiffs $49,687.00.

522.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $49,687.00.

**B. False Address of Debtor.**

523.

Each Defendant negligently misrepresented to Plaintiff that Bella maintained a business at 2295 Parklake Dr., Atlanta, Georgia 30345 on September 27, 2022.

524.

If both Defendants had used reasonable care in preparing the Bella Loan Documents, they would have known that Bella did not maintain a business at 2295 Parklake Dr., Atlanta, Georgia 30345 on September 27, 2022.

525.

Each Defendant made the misrepresentations concerning Bella's business

address while knowing Plaintiff would rely upon the misrepresentation to disburse $49,687.00 to Defendants.

526.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Bella's business address to disburse to Plaintiffs $49,687.00.

527.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $49,687.00.

**C. False Address of Defendants.**

528.

Each Defendant negligently misrepresented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on September 27, 2022.

529.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on September 27, 2022.

530.

Each Defendant made the misrepresentations knowing Plaintiff would rely upon the misrepresentation to disburse $49,687.00 to Defendants.

531.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $49,687.00.

532.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $49,687.00.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

533.

Each Defendant negligently misrepresented to Plaintiff that Spa delivered the equipment described in the Bella Invoice to Bella.

534.

Each Defendant knew that Spa did not deliver the equipment described in the Bella Invoice to Bella.

535.

Each Defendant misrepresented to Plaintiff that Spa delivered the equipment described in the Bella Invoice to Bella while knowing Plaintiff would rely upon the misrepresentation to disburse $49,687.00 to Defendants.

536.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $49,687.00.

537.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $49,687.00.

**E. Defendants' Negligent Misrepresentations Related to Fredel Williamson's Driver's License.**

538.

Each Defendant negligently misrepresented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Fredel Williamson's authentic Driver's License.

539.

If both Defendants had used reasonable care in preparing the Bella Loan Documents, they would have known that the copy of the Driver's License submitted to Plaintiff was a forged Driver's License.

540.

Each Defendant misrepresented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Fredel Williamson's authentic Driver's License while knowing Plaintiff would rely upon the misrepresentation to disburse $49,687.00 to Defendants.

541.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the copy of the Driver's License submitted to Plaintiff to disburse to Plaintiffs $49,687.00.

542.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $49,687.00.

## XVII.  COUNT XII – DEFENDANTS' NEGLIGENT MISREPRESENTATIONS CONCERNING THE KLINE TRANSACTION.

543.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267 of this Complaint as if fully restated herein.

**A. Forged Signatures.**

544.

Each Defendant negligently misrepresented to Plaintiff that the electronic

signatures contained in the Kline Loan Documents were authentic and authorized signatures of Susan Kline.

545.

Each Defendant failed to use reasonable care to determine if each signature of

Susan Kline contained in each of the Kline Loan Documents was the authorized, authentic signature of Susan Kline.

546.

Each Defendant made the misrepresentations concerning the authenticity and authorization of the signatures of Susan Kline knowing Plaintiff would rely upon the authenticity and authorization of the signatures to disburse $80,532.73 to Defendants.

547.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Susan Kline's signatures in the Kline Loan Documents to disburse to Plaintiffs $80,532.73.

548.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $80,532.73.

**B. False Address of Debtor.**

549.

Each Defendant negligently misrepresented to Plaintiff that Susan Kline, Inc. maintained a business at 1655 E. Thousand Oaks Blvd., Thousand Oaks, California 91362 on October 19, 2022.

550.

If both Defendants had used reasonable care in preparing the Kline Loan Documents, they would have known that Susan Kline, Inc. did not maintain a business at 1655 E. Thousand Oaks Blvd., Thousand Oaks, California 91362 on October 19, 2022.

551.

Each Defendant made the misrepresentations concerning Susan Kline, Inc.'s business address while knowing Plaintiff would rely upon the misrepresentation to disburse $80,532.73 to Defendants.

552.

Plaintiff reasonably relied upon Defendants' representations concerning Susan Kline, Inc.'s business address to disburse to Plaintiffs $80,532.73.

553.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $80,532.73.

**C. False Address of Defendants.**

<div align="center">554.</div>

Each Defendant negligently misrepresented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 19, 2022.

<div align="center">555.</div>

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 19, 2022.

<div align="center">556.</div>

Each Defendant made the misrepresentations knowing Plaintiff would rely upon the misrepresentation to disburse $80,532.73 to Defendants.

<div align="center">557.</div>

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $80,532.73.

<div align="center">558.</div>

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $80,532.73.

**D. Defendants' False Representations Concerning the Delivery of the Equipment.**

<div align="center">559.</div>

Each Defendant negligently misrepresented to Plaintiff that Spa delivered the

equipment described in the Kline Invoice to Susan Kline, Inc. to deceive Plaintiff into disbursing $80,532.73.

560.

Each Defendant knew that Spa did not deliver the equipment described in the Kline Invoice to Susan Kline, Inc.

561.

Each Defendant misrepresented to Plaintiff that Spa delivered the equipment described in the Kline Invoice to Susan Kline, Inc. knowing Plaintiff would rely upon the misrepresentation to disburse $80,532.73 to Defendants.

562.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's delivery of the equipment to disburse to Plaintiffs $80,532.73.

563.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $80,532.73.

**E. Defendants' Negligent Misrepresentations Related to Susan Kline's Driver's License.**

564.

Each Defendant falsely represented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Susan Kline's authentic Driver's License.

565.

If both Defendants had used reasonable care in preparing the Kline Loan Documents, they would have known that the copy of the Driver's License submitted to Plaintiff was a forged Driver's License.

566.

Each Defendant misrepresented to Plaintiff that the copy of the Driver's License submitted to Plaintiff was Susan Kline's authentic Driver's License while knowing Plaintiff would rely upon the misrepresentation to disburse $49,687.00 to Defendants.

567.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the copy of the Driver's License submitted to Plaintiff to disburse to Plaintiffs $80,532.73.

568.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $80,532.73.

## XVIII.  COUNT XIII – DEFENDANTS' NEGLIGENT MISREPRESENTATIONS CONCERNING THE MOWBRAY TRANSACTION.

569.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331

of this Complaint as if fully restated herein.

**A. Forged Signatures.**

570.

Each Defendant negligently misrepresented to Plaintiff that the electronic signatures contained in the Mowbray Loan Documents were authentic and authorized signatures of Chelsey Mowbray.

571.

Both Defendants failed to use reasonable care to determine if each signature of Chelsey Mowbray contained in each of the Mowbray Loan Documents was the authorized, authentic signature of Chelsey Mowbray.

572.

Each Defendant made the misrepresentations concerning the authenticity and authorization of the signatures of Chelsey Mowbray knowing Plaintiff would rely upon the authenticity and authorization of the signatures to disburse $50,808.00 to Defendants.

573.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning the authenticity and authorization of Chelsey Mowbray's signatures in the Mowbray Loan Documents to disburse to Plaintiffs $50,808.00.

574.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $50,808.00.

**B. False Address of Debtor.**

575.

Each Defendant negligently misrepresented to Plaintiff that Chelsey Mowbray maintained a business at 402 Ingalls Street, Santa Cruz, California 95060 on October 28, 2022.

576.

If both Defendants had used reasonable care in preparing the Mowbray Loan Documents, they would have known that Chelsey Mowbray did not maintain a business at 402 Ingalls Street, Santa Cruz, California 95060 on October 28, 2022.

577.

Each Defendant made the misrepresentations concerning Chelsey Mowbray's business address knowing Plaintiff would rely upon the misrepresentation to disburse $50,808.00 to Defendants.

578.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Chelsey Mowbray's business address to disburse to Plaintiffs $50,808.00.

579.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $50,808.00.

**C. False Address of Defendants.**

580.

Each Defendant negligently misrepresented to Plaintiff that Spa maintained a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 28, 2022.

581.

Each Defendant knew that Spa did not maintain a business at 3070 Business Park Drive, Norcross, Georgia 30305 on October 28, 2022.

582.

Each Defendant made the misrepresentations knowing Plaintiff would rely upon the misrepresentation to disburse $50,808.00 to Defendants.

583.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $50,808.00.

584.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $50,808.00.

**D. Defendants' Negligent Misrepresentations Concerning the Delivery of the Equipment.**

585.

Each Defendant negligently misrepresented to Plaintiff that Spa delivered the equipment described in the Mowbray Invoice to Mowbray.

586.

Each Defendant knew that Spa did not deliver the equipment described in the Mowbray Invoice to Mowbray.

587.

Each Defendant misrepresented to Plaintiff that Spa delivered the equipment described in the Mowbray Invoice to Mowbray knowing Plaintiff would rely upon the misrepresentation to disburse $50,808.00 to Defendants.

588.

Plaintiff reasonably relied upon Defendants' misrepresentations concerning Spa's business address to disburse to Plaintiffs $50,808.00.

589.

As a proximate result of Plaintiff's reliance upon Defendants' negligent misrepresentations, Plaintiff has been damaged in the amount of $50,808.00.

## XIX.  COUNT XIV – CIVIL RICO IN VIOLATION OF 18 U.S.C.A. §§ 1961 *et. Seq.*

590.

Plaintiff hereby incorporates paragraphs 10 through 331 and 402 through 495 of this Complaint as if fully restated herein.

591.

Plaintiff is a bank incorporated under the laws of the State of Georgia, is capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

592.

Defendant Milbry is an individual, capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

593.

Glover is an individual, capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

594.

Caprio is an individual, capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

595.

Ivory Johnson is an individual, capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

596.

Defendant Spa is a limited liability company organized under the laws of the State of Georgia, is capable of holding a legal or beneficial interest in property and is a person within the meaning of 18 U.S.C. § 1961(3).

**A. The Enterprise.**

597.

Milbry, Glover and Caprio organized Spa for the purpose deceiving Plaintiff, and other persons, into believing Spa was a legitimate vendor of beauty and spa equipment.   Milbry used Spa as an instrument to defraud Plaintiff into disbursing loan proceeds to Milbry based upon fraudulent loan documents electronically submitted to Plaintiff's Division, Balboa, by Milbry and false invoices issued by Spa.

598.

Spa was originally organized under the name 360 Spin Pic, LLC.

599.

On August 29, 2022, the day before Milbry prepared and submitted the Russell Loan Documents to Plaintiff, Milbry filed an *Articles of Amendment* to change 360 Spin Pic, LLC's name to Spa 4 Less, LLC.

600.

To provide the appearance of a legitimate business, Milbry caused Spa to assume the identity of Buy-Rite by listing Buy-Rite's business address of 3070 Business Park Drive, Suites H-I, Norcross, GA 30071 or 3070 Business Park Drive, Norcross, GA 30071 on each invoice submitted to Plaintiff.

601.

To further assume Buy-Rite's identity, on August 19, 2022, Milbry caused a website to be created, listing Spa's address as 3075 Business Park Drive, Suite H-I, Norcross, Georgia 30071 and depicting various spa and beauty equipment.

602.

The Gwinnett County Tax Assessors Office has no records for a property located at 3075 Business Park Drive, Norcross, Georgia.

603.

3075 Business Park Drive, Norcross, Georgia is a fictitious address created by Milbry.

604.

Likewise, Spa did not own any of the spa, beauty and salon equipment advertised on its website.

605.

To further Spa's assumption of Buy-Rite's identity, on September 20, 2022, Ivory Johnson filed a *Statement of Change of Address of Registered Office* on behalf of Spa with the Georgia Secretary of State's office to change its Registered Office address to 3070 Business Park Drive, Suite G, Norcross, GA 30071 and an *Annual Registration* with the Georgia Secretary of State to change its Principal Office address to 3070 Business Park Drive, Suite G, Norcross, GA 30071.

606.

In furtherance of the enterprise, Milbry, under the guise of Spa, submitted EFAs with forged or unauthorized signatures, altered customer Driver's Licenses, Delivery Certificates with forged or unauthorized signatures, guaranties with forged or unauthorized signatures and false invoices to Balboa, Plaintiff's division, to induce Plaintiff to fund the fraudulent EFAs.

607.

Spa could not and did not deliver any of the equipment described in the invoices because Spa did not own any inventory of spa, beauty and salon equipment.

608.

On each occasion, each invoice requested Plaintiff to disburse the loan proceeds into a bank account maintained by Milbry at Piermont Bank in New York,

New York.  Further, each invoice listed Milbry's personal address as the business address of the receiving bank account.

<div align="center">609.</div>

Milbry, individually, received loan proceeds totaling $217,377.73 in connection with the four fraudulent transactions.

<div align="center">610.</div>

Milbry submitted each of the forged and altered documents, including the Russell Loan Documents, Bella Loan Documents, Kline Loan Documents, and Mowbray Loan Documents, to Plaintiff using electronic means and received the loan proceeds from each transaction by electronic transfers.

**B. Pattern of Bank Fraud (18 U.S.C § 1344).**

<div align="center">611.</div>

Plaintiff is an FDIC insured bank.

<div align="center">612.</div>

Spa and Milbry submitted the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA with forged signatures to Plaintiff for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction.

613.

Spa and Milbry submitted the Russell Delivery Certificate, the Bella Delivery Certificate, the Kline Delivery Certificate and the Mowbray Delivery Certificate with forged signatures to Plaintiff for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

614.

Spa and Milbry submitted the Russell Disbursement Authorization, the Bella Disbursement Authorization, the Kline Disbursement Authorization and the Mowbray Disbursement Authorization with forged signatures to Plaintiff for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

615.

Spa and Milbry submitted the Russell Guaranty, the Bella Guaranty, the Kline Guaranty and the Mowbray Guaranty with forged signatures to Plaintiff for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

616.

Spa and Milbry submitted the Russell Invoice, the Bella Invoice, the Kline Invoice and the Mowbray Invoice to Plaintiff for the purpose of inducing Plaintiff

into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

617.

Spa and Milbry submitted the altered Fredel Williamson Driver's License and the altered Susan Kline Driver's License to Plaintiff for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from Bella EFA and the Kline EFA despite failing to deliver the equipment.

618.

Plaintiff disbursed the loan proceeds from the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA, in an amount totaling $217,377.73, to the "Spa 4 Less – J.T. Milbry" bank account.

619.

Plaintiff disbursed the loan proceeds to the "Spa 4 Less – J.T. Milbry" bank account with Piermont Bank in New York, New York via Automatic Clearing House, reasonably relying upon each of the documents submitted to Plaintiff.

620.

As a direct result of Milbry's and Spa's fraudulent actions, Plaintiff has incurred actual damages of $217,377.73.

621.

Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to recover from Defendants threefold the damages it has sustained plus the costs of the suit, including attorney's fees.

622.

Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to recover from Defendants $652,133.19 plus costs of the suit, including attorney's fees.

**C. Pattern of Wire Fraud (18 U.S.C § 1343).**

623.

Spa and Milbry electronically submitted the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA with forged signatures to Balboa, Plaintiff's division, by means of the electronic submission portal used by Balboa, eOriginal, for the purpose of inducing Plaintiff into paying Spa and Milbry the loan proceeds from each transaction. eOriginal allowed Spa and Milbry to input the data in designated fields of the documents which was transmitted to Plaintiff's computer server by electronic means using the internet.

624.

Spa and Milbry electronically submitted the Russell Delivery Certificate, the Bella Delivery Certificate, the Kline Delivery Certificate and the Mowbray Delivery Certificate with forged signatures to Balboa, Plaintiff's division, by means of

eOriginal for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

625.

Spa and Milbry electronically submitted the Russell Disbursement Authorization, the Bella Disbursement Authorization, the Kline Disbursement Authorization and the Mowbray Disbursement Authorization with forged signatures to Balboa, Plaintiff's division, by means of eOriginal for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

626.

Spa and Milbry electronically submitted the Russell Guaranty, the Bella Guaranty, the Kline Guaranty and the Mowbray Guaranty with forged signatures to Balboa, Plaintiff's division, by means of eOriginal for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

627.

Spa and Milbry electronically submitted the Russell Invoice, the Bella Invoice, the Kline Invoice and the Mowbray Invoice to Balboa, Plaintiff's division, by means of eOriginal for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

628.

Spa and Milbry electronically submitted the altered Fredel Williamson's Driver's License and the altered Susan Kline's Driver's License to Balboa, Plaintiff's division, by means of eOriginal for the purpose of inducing Plaintiff into paying Milbry and Spa the loan proceeds from Bella EFA and the Kline EFA despite failing to deliver the equipment.

629.

Plaintiff disbursed the loan proceeds from the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA, in an amount totaling $217,377.73, to the "Spa 4 Less – J.T. Milbry" bank account with Piermont Bank in New York, New York via Automatic Clearing House, relying upon each of the forgoing documents.

630.

As a direct result of Milbry's and Spa's fraudulent actions, Plaintiff has incurred actual damages of $217,377.73.

631.

Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to recover from Defendants threefold the damages it has sustained plus the costs of the suit, including attorney's fees.

632.

Pursuant to 18 U.S.C § 1964(c), Plaintiff is entitled to recover from Defendants $652,133.19 plus costs of the suit, including attorney's fees.

## XX.  COUNT XV – CIVIL RICO IN VIOLATION OF O.C.G.A. §§ 16-14-1 *et. Seq.*

633.

Plaintiff hereby incorporates paragraphs 10 through 331 and 402 through 495 of this Complaint as if fully restated herein.

### A. Pattern of Theft by Deception (O.C.G.A. § 16-8-3).

635.

Spa and Milbry submitted the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry the loan proceeds from each transaction.

636.

Spa and Milbry submitted the Russell Delivery Certificate, the Bella Delivery Certificate, the Kline Delivery Certificate and the Mowbray Delivery Certificate with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

637.

Spa and Milbry submitted the Russell Disbursement Authorization, the Bella Disbursement Authorization, the Kline Disbursement Authorization and the Mowbray Disbursement Authorization with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

638.

Spa and Milbry submitted the Russell Guaranty, the Bella Guaranty, the Kline Guaranty and the Mowbray Guaranty with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

639.

Spa and Milbry submitted the Russell Invoice, the Bella Invoice, the Kline Invoice and the Mowbray Invoice to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

640.

Spa and Milbry submitted the altered Fredel Williamson's Driver's License and the altered Susan Kline's Driver's License to Plaintiff for the purpose of

deceiving Plaintiff into paying Milbry and Spa the loan proceeds from Bella EFA and the Kline EFA despite failing to deliver the equipment.

### 641.

Plaintiff disbursed the loan proceeds from the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA, in an amount totaling $217,377.73, to the "Spa 4 Less – J.T. Milbry" bank account.

### 642.

The Plaintiff disbursed the loan proceeds to the "Spa 4 Less – J.T. Milbry" bank account with Piermont Bank in New York, New York via Automatic Clearing House, reasonably relying upon each of the forgoing documents.

### 643.

As a direct result of Milbry's and Spa's deceitful actions, Plaintiff has incurred actual damages of $217,377.73.

### 645.

Pursuant to O.C.G.A. § 16-4-6(c), Plaintiff is entitled to recover from Defendants threefold the damages it has sustained plus the costs of the suit, including attorney's fees.

### 646.

Pursuant to O.C.G.A. § 16-4-6(c), Plaintiff is entitled to recover from Defendants $652,133.19 plus costs of the suit, including attorney's fees.

## B.  Pattern of Forgery (O.C.G.A. § 16-9-1).

647.

Spa and Milbry submitted the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction.

648.

Spa and Milbry submitted the Russell Delivery Certificate, the Bella Delivery Certificate, the Kline Delivery Certificate and the Mowbray Delivery Certificate with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

649.

Spa and Milbry submitted the Russell Disbursement Authorization, the Bella Disbursement Authorization, the Kline Disbursement Authorization and the Mowbray Disbursement Authorization with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

650.

Spa and Milbry submitted the Russell Guaranty, the Bella Guaranty, the Kline Guaranty and the Mowbray Guaranty with forged signatures to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from each transaction despite failing to deliver the equipment.

651.

Spa and Milbry submitted the forged Fredel Williamson's Driver's License and the forged Susan Kline's Driver's License to Plaintiff for the purpose of deceiving Plaintiff into paying Milbry and Spa the loan proceeds from Bella EFA and the Kline EFA despite failing to deliver the equipment.

652.

Plaintiff disbursed the loan proceeds from the Russell EFA, the Bella EFA, the Kline EFA and the Mowbray EFA, in an amount totaling $217,377.73, to the "Spa 4 Less – J.T. Milbry" bank account.

653.

Plaintiff disbursed the loan proceeds to the "Spa 4 Less – J.T. Milbry" bank account with Piermont Bank in New York, New York via Automatic Clearing House, reasonably relying upon each of the forgoing documents.

654.

As a direct result of Milbry's and Spa's deceitful actions, Plaintiff has incurred actual damages of $217,377.73.

655.

Pursuant to O.C.G.A. § 16-4-6(c), Plaintiff is entitled to recover from Defendants threefold the damages it has sustained plus the costs of the suit, including attorney's fees.

656.

Pursuant to O.C.G.A. § 16-4-6(c), Plaintiff is entitled to recover from Defendants $652,133.19 plus costs of the suit, including attorney's fees.

## XVI.  COUNT XVI – CONVERSION OF THE PROCEEDS DELIVERED BASED UPON THE RUSSELL LOAN DOCUMENTS.

657.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

658.

Plaintiff delivered $36,350.00 to Defendants relying upon the validity of the Russell Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Russell Invoice to Russell.

659.

As described above, the Russell Loan Documents were forged and contained numerous misrepresentations.

660.

Neither Defendant delivered the equipment described in the Russell Invoice to Russell.

661.

Defendants are in possession of the loan proceeds totaling $36,350.00.

662.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $36,350.00.

663.

A true and correct copy of the Demand is attached hereto as Exhibit "25".

664.

Defendants refuse to return the loan proceeds, totaling $36,350.00.

## XXII.  COUNT XVII – CONVERSION OF THE PROCEEDS DELIVERED BASED UPON THE BELLA LOAN DOCUMENTS.

665.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199 of this Complaint as if fully restated herein.

666.

Plaintiff delivered $49,687.00 to Defendants relying upon the validity of the Bella Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Bella Invoice to Bella.

667.

As described above, the Bella Loan Documents were forged and contained numerous misrepresentations.

668.

Neither Defendant delivered the equipment described in the Bella Invoice to Bella.

669.

Defendants are in possession of the loan proceeds totaling $49,687.00.

670.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $49,687.00.

671.

A true and correct copy of the Demand is attached hereto as Exhibit "26".

672.

Defendants refuse to return the loan proceeds, totaling $49,687.00.

## XXIII.  COUNT XVIII – CONVERSION OF THE PROCEEDS DELIVERED BASED UPON THE KLINE LOAN DOCUMENTS.

673.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267 of this Complaint as if fully restated herein.

674.

Plaintiff delivered $80,532.73 to Defendants relying upon the validity of the Kline Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Kline Invoice to Susan Kline, Inc.

675.

As described above, the Kline Loan Documents were forged and contained numerous misrepresentations.

676.

Neither Defendant delivered the equipment described in the Kline Invoice to Kline.

677.

Defendants are in possession of the loan proceeds totaling $80,532.73.

678.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $80,532.73.

679.

A true and correct copy of the Demand is attached hereto as Exhibit "27".

680.

Defendants refuse to return the loan proceeds, totaling $80,532.73.

## XXIV.  COUNT XIX – CONVERSION OF THE PROCEEDS DELIVERED BASED UPON THE MOWBRAY LOAN DOCUMENTS.

681.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331 of this Complaint as if fully restated herein.

682.

Plaintiff delivered $50,808.00 to Defendants relying upon the validity of the Mowbray Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Mowbray Invoice to Chelsey Mowbray.

683.

As described above, the Mowbray Loan Documents were forged and contained numerous misrepresentations.

684.

Neither Defendant delivered the equipment described in the Mowbray Invoice to Kline.

685.

Defendants are in possession of the loan proceeds totaling $50,808.00.

686.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $50,808.00.

687.

A true and correct copy of the Demand is attached hereto as Exhibit "28".

688.

Defendants refuse to return the loan proceeds, totaling $50,808.00.

## XXV.  COUNT XX – UNJUST ENRICHMENT DERIVED FROM THE FAILURE TO DELIVER THE EQUIPMENT DESCRIBED IN THE RUSSELL EFA AND THE RUSSELL INVOICE.

689.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

690.

Plaintiff delivered $36,350.00 to Defendants relying upon the validity of the Russell Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Russell Invoice to Russell.

691.

As described above, the Russell Loan Documents were forged.

692.

Pursuant to the forged Russell EFA, Russell purportedly granted the Plaintiff a security interest in the equipment described in the forged Russell EFA and the Russell Invoice.

693.

Neither Defendant delivered the equipment described in the Russell EFA and the Russell Invoice to Russell.

694.

Defendants received the benefit of the loan proceeds without delivering the equipment that served as Plaintiff's collateral for the Russell EFA.

695.

Defendants received the benefit of the loan proceeds without delivering the Russell Loan Documents with the authentic and authorized signature of Robin Russell.

696.

Defendants' failure to deliver the equipment serving as Plaintiff's collateral renders the transaction unjust.

697.

Defendants' failure to deliver the Russell Loan Documents with the authentic

and authorized signature of Robin Russell renders the transaction unjust.

## XXVI.  COUNT XXI – UNJUST ENRICHMENT DERIVED FROM THE FAILURE TO DELIVER THE EQUIPMENT DESCRIBED IN THE BELLA EFA AND THE BELLA INVOICE.

698.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199

of this Complaint as if fully restated herein.

699.

Plaintiff delivered $49,687.00 to Defendants relying upon the validity of the

Bella Loan Documents presented to it by Defendants and relying upon Defendants'

representations that they delivered the equipment described in the Bella Invoice to

Bella.

700.

As described above, the Bella Loan Documents were forged.

701.

Pursuant to the forged Bella EFA, Bella purportedly granted the Plaintiff a

security interest in the equipment described in the forged Bella EFA and the Bella

Invoice.

702.

Neither Defendant delivered the equipment described in the Bella EFA and the Bella Invoice to Bella.

703.

Defendants received the benefit of the loan proceeds without delivering the equipment that served as Plaintiff's collateral for the Bella EFA.

704.

Defendants received the benefit of the loan proceeds without delivering the Bella Loan Documents with the authentic and authorized signature of Fredel Williamson.

705.

Defendants' failure to deliver the equipment serving as Plaintiff's collateral renders the transaction unjust.

706.

Defendants' failure to deliver the Bella Loan Documents with the authentic and authorized signature of Fredel Williamson renders the transaction unjust.

## XXVII.  COUNT XXII – UNJUST ENRICHMENT DERIVED FROM THE FAILURE TO DELIVER THE EQUIPMENT DESCRIBED IN THE KLINE EFA AND THE KLINE INVOICE.

707.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267

of this Complaint as if fully restated herein.

708.

Plaintiff delivered $80,532.73 to Defendants relying upon the validity of the Kline Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Kline Invoice to Kline.

709.

As described above, the Kline Loan Documents were forged.

710.

Pursuant to the forged Kline EFA, Kline purportedly granted the Plaintiff a security interest in the equipment described in the forged Kline EFA and the Kline Invoice.

711.

Neither Defendant delivered the equipment described in the Kline EFA and the Kline Invoice to Kline.

712.

Defendants received the benefit of the loan proceeds without delivering the equipment that served as Plaintiff's collateral for the Kline EFA.

713.

Defendants received the benefit of the loan proceeds without delivering the Kline Loan Documents with the authentic and authorized signature of Susan Kline.

714.

Defendants' failure to deliver the equipment serving as Plaintiff's collateral renders the transaction unjust.

715.

Defendants' failure to deliver the Kline Loan Documents with the authentic and authorized signature of Susan Kline renders the transaction unjust.

## XXVI.  COUNT XXIII – UNJUST ENRICHMENT DERIVED FROM THE FAILURE TO DELIVER THE EQUIPMENT DESCRIBED IN THE MOWBRAY EFA AND THE MOWBRAY INVOICE.

716.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331 of this Complaint as if fully restated herein.

717.

Plaintiff delivered $50,808.00 to Defendants relying upon the validity of the Mowbray Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Mowbray Invoice to Mowbray.

718.

As described above, the Mowbray Loan Documents were forged.

719.

Pursuant to the forged Mowbray EFA, Mowbray purportedly granted the Plaintiff a security interest in the equipment described in the forged Mowbray EFA and the Mowbray Invoice.

720.

Neither Defendant delivered the equipment described in the Mowbray EFA and the Mowbray Invoice to Mowbray.

721.

Defendants received the benefit of the loan proceeds without delivering the equipment that served as Plaintiff's collateral for the Mowbray EFA.

722.

Defendants received the benefit of the loan proceeds without delivering the Mowbray Loan Documents with the authentic and authorized signature of Chelsey Mowbray.

723.

Defendants' failure to deliver the equipment serving as Plaintiff's collateral renders the transaction unjust.

724.

Defendants' failure to deliver the Mowbray Loan Documents with the authentic and authorized signature of Chelsey Mowbray renders the transaction unjust.

## XXIX.  COUNT XXIV – MONEY HAD AND RECEVED BASED UPON THE RUSSELL LOAN DOCUMENTS.

725.

Plaintiff hereby incorporates Paragraphs 10 through 123 of this Complaint as if fully restated herein.

726.

Plaintiff delivered $36,350.00 to Defendants relying upon the validity of the Russell Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Russell Invoice to Russell.

727.

As described above, the Russell Loan Documents were forged.

728.

Further, neither Defendant delivered the equipment described in the Russell Invoice to Russell.

729.

Defendants are in possession of the loan proceeds totaling $36,350.00.

730.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $36,350.00 by means of a certified letter dated July 31, 2023, addressed to Milbry and Spa, from Plaintiff's attorney (hereinafter "Demand Letter").

731.

A true and correct copy of the Demand Letter is attached hereto as Exhibit "25".

732.

Defendants refuse to return the loan proceeds, totaling $36,350.00.

## XXX.  COUNT XXV – MONEY HAD AND RECEVED BASED UPON THE BELLA LOAN DOCUMENTS.

733.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 124 through 199 of this Complaint as if fully restated herein.

734.

Plaintiff delivered $49,667.00 to Defendants relying upon the validity of the Bella Loan Documents presented to it by Defendants and relying upon Defendants'

representations that they delivered the equipment described in the Bella Invoice to Bella.

<center>735.</center>

As described above, the Bella Loan Documents were forged.

<center>736.</center>

Further, neither Defendant delivered the equipment described in the Bella Invoice to Bella.

<center>737.</center>

Defendants are in possession of the loan proceeds totaling $49,667.00.

<center>738.</center>

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $49,667.00 by means of the Demand Letter.

<center>739.</center>

Defendants refuse to return the loan proceeds, totaling $49,667.00.

## XXVI.  COUNT XXVI – MONEY HAD AND RECEVED BASED UPON THE KLINE LOAN DOCUMENTS.

<center>740.</center>

Plaintiff hereby incorporates Paragraphs 10 through 69 and 200 through 267 of this Complaint as if fully restated herein.

<center>144</center>

741.

Plaintiff delivered $80,532.73 to Defendants relying upon the validity of the Kline Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Kline Invoice to Kline.

742.

As described above, the Kline Loan Documents were forged.

743.

Further, neither Defendant delivered the equipment described in the Kline Invoice to Kline.

744.

Defendants are in possession of the loan proceeds totaling $80,532.73.

745.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $80,532.73 by means of the Demand Letter.

746.

Defendants refuse to return the loan proceeds, totaling $80,532.73.

## XXXII.  COUNT XXVII – MONEY HAD AND RECEVED BASED UPON THE MOWBRAY LOAN DOCUMENTS.

747.

Plaintiff hereby incorporates Paragraphs 10 through 69 and 268 through 331 of this Complaint as if fully restated herein.

748.

Plaintiff delivered $50,808.00 to Defendants relying upon the validity of the Mowbray Loan Documents presented to it by Defendants and relying upon Defendants' representations that they delivered the equipment described in the Mowbray Invoice to Mowbray.

749.

As described above, the Mowbray Loan Documents were forged.

750.

Further, neither Defendant delivered the equipment described in the Mowbray Invoice to Mowbray.

751.

Defendants are in possession of the loan proceeds totaling $50,808.00.

752.

On July 31, 2023, Plaintiff demanded that Defendants return the entire amount of the $50,808.00 by means of the Demand Letter.

753.

Defendants refuse to return the loan proceeds, totaling $50,808.00.

## XXXIII.  COUNT XXVIII – CLAIM FOR PUNITIVE DAMAGES.

757.

Plaintiff hereby incorporates Paragraphs 10 through 331, 402 through 497 and 591 through 689 of this Complaint as if fully restated herein.

758.

Defendants willfully and fraudulently concocted a scheme to defraud Plaintiff by using forged loan documents, forged driver's licenses, false Delivery Certificates and false Invoices and by stealing the identity of each debtor listed in each EFA, Buy-Rite, Citizen Salon, LLC, Fredel Wiliamson, DreamBody, TO Salon, Susan Kline and the Loft to induce Plaintiff to pay Defendants a total of $217,377.73.

759.

Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish, penalize and deter Defendants pursuant to O.C.G.A. § 51-12-5.1.

## XXXIV.  COUNT XXVIV – CLAIM FOR ATTORNEY'S FEES PURSUANT TO O.C.G.A. § 13-6-11.

760.

Paragraphs 10 through 391, 402 through 497 and 591 through 689 of this Complaint are hereby incorporated as if fully restated herein.

147

761.

Spa and Milbry have acted in bad faith and have caused Plaintiff unreasonable trouble and expenses.

762.

Pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to recovery the expense of this litigation including its reasonable attorney's fees as damages.

WHEREFORE, Plaintiff prays for the following relief:

1. Summons issue, each of the Defendants be served with a copy of this Complaint, and the Defendants be required to appear and answer as required by law;

2. With respect to Count I of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendant Milbry in the amount of the outstanding balance due on the Russell EFA, which as of August 24, 2023, was an amount equal to $43,080.37, with interest accruing after August 24, 2023 at the per diem rate of $17.93 per day;

3. With respect to Count II of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendant Milbry in the amount of the outstanding balance due on the Bella EFA, which as of August 24, 2023, was an amount equal to $58,057.37, with interest accruing after August 24, 2023 at the per diem rate of $24.50 per day;

4.  With respect to Count III of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendant Milbry in the amount of the outstanding balance due on the Kline EFA, which as of August 24, 2023, was an amount equal to $92,241.23, with interest accruing after August 24, 2023, at the per diem rate of $39.71 per day;

5.  With respect to Count IV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendant Milbry in the amount of the outstanding balance due on the Mowbray EFA, which as of August 24, 2023, was an amount equal to $59,063.98, with interest accruing after August 24, 2023, at the per diem rate of $25.06 per day;

6.  With respect to Count V of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendant Milbry for attorney's fees in the amount calculated pursuant to O.C.G.A. § 13-1-11;

7.  With respect to Count VI of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $36,350.00;

8.  With respect to Count VII of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $49,687.00;

9. With respect to Count VIII of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $80,532.73;

10. With respect to Count IX of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $50,808.00;

11. With respect to Count X of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $36,350.00;

12. With respect to Count XI of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $49,687.00;

13. With respect to Count XII of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $80,532.73;

14. With respect to Count XIII of Plaintiff's Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Spa and Milbry, jointly and severally, in the amount of $50,808.00;

15. With respect to Count XIV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and

severally, in the amount of $652,133.19 plus the costs of the suit, including attorney's fees;

16.  With respect to Count XV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $652,133.19 plus the costs of the suit, including attorney's fees;

17.  With respect to Count XVI of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $36,350.00;

18.  With respect to Count XVII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $49,687.00;

19.  With respect to Count XVIII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $80,532.73:

20.  With respect to Count XIX of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $50,808.00;

21.  With respect to Count XX of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $36,350.00;

22.  With respect to Count XXI of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $49,687.00;

23.  With respect to Count XXII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $80,532.73;

24.  With respect to Count XXIII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $50,808.00;

25.  With respect to Count XXIV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $36,350.00;

26.  With respect to Count XXV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $49,677.00;

27. With respect to Count XXVI of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $80,532.73;

28. With respect to Count XXVII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in the amount of $50,808.00;

29. With respect to Count XXVIII of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in an amount sufficient to punish, penalize and deter defendants from its willful misconduct, malice, fraud, wantonness, oppression and behavior which displays the entire want of care;

30. With respect to Count XXVIV of this Complaint, the Court enters judgment in favor of Plaintiff and against Defendants Milbry and Spa, jointly and severally, in an amount equal to the expenses of litigation incurred by Plaintiff in this case pursuant to O.C.G.A. § 13-6-11;

31. That the Court enters judgment awarding Plaintiff all costs incurred in this action against both Defendants;

32. With respect to Counts I through IV, interest accrues on the principal amount of the judgment at the rate of eighteen percent (18%) per annum;

33. That with respect to all other Counts, that interest accrues at the rate established by Georgia Law; and

34. That Plaintiff have such and further relief that this Court may deem equitable and just.

RESPECTFULLY SUBMITTED, this the 11th day of September, 2023.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

By:    */s/   David A. Garland                                   .*
       **DAVID A. GARLAND**
       Georgia Bar Number:   005680
       */s/  Matthew E. Eutzler                             .*
       **MATTHEW E. EUTZLER**
       Georgia Bar Number:  102706
       */s/   Stephan A. Ray                                    .*
       **STEPHAN A. RAY**
       Georgia Bar Number:  649087
       *Attorneys for Ameris Bank*
       2829 Old Dawson Road
       Albany, Georgia 31707
       Telephone:  229-888-3338
       Facsimile:   229-888-1191
       Email:   dgarland@mcdr-law.com
                   sray@mcdr-law.com
                   meutzler@mcdr-law.com

## <u>Local Rule 7.1(D) Certification of Compliance</u>

I hereby certify that the foregoing pleading has been prepared with Times New Roman font, 14 point, one of the font point selections approved by the Court in L.R. 5.1, N.D. Ga.

This 11th day of September, 2023.

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

/s/ *David A. Garland* .
**DAVID A. GARLAND**
Georgia Bar Number 005680
/s/ *Matthew E. Eutzler* .
**MATTHEW E. EUTZLER**
Georgia Bar Number: 102706
/s/ *Stephan A. Ray* .
**STEPHAN A. RAY**
Georgia Bar Number 649087
*Attorneys for Ameris Bank*
2829 Old Dawson Road
Albany, Georgia 31707
Telephone: 229-888-3338
Facsimile: 229-888-1191
Email: dgarland@mcdr-law.com
sray@mcdr-law.com
meutzler@mcdr-law.com

# Exhibit "1"


# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # **420350-000**

## DEBTOR INFORMATION

| Debtor Name:<br>**Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa**<br><br>Phone:<br>**706-510-2998** | Debtor's Address:<br>**999 Oak Hill Road 5**<br>**Lafayette, CA 94549** | Collateral Location:<br>**(if different from Debtor's Address)**<br>**999 Oak Hill Road**<br>**Lafayette, CA 94549** |
|---|---|---|
| Federal Tax ID #:<br>████**8233** | | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers)<br><br>**See Exhibit A and/or invoices attached hereto as Exhibit A1 and incorporated herein by this reference.** | **Collateral Cost:**<br>**$36,350.00** | Initial Payment<br>(**Debtor requests that this amount be electronically debited**)<br>**SECURITY DEPOSIT: $2,680.00** |
|---|---|---|
| Term: **20**<br><br>(Plus any Prefund or Per diem Period)<br><br>Quarterly Payment Amount: **$2,680.00** | **Initial Payment Date:**<br>**11/15/2022** | **Fee %:** **2%**<br>(% of Original Collateral Cost)<br><br>**Total Amount Due:** **$2,680.00** |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Quarterly Payments in the number of quarterly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Quarterly Payment shall be deemed due as of the date indicated above and subsequent Quarterly Payments shall be due on the same day of each quarter thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Quarterly Payment based on a daily charge of one-ninetieth (1/90th) or .01111% of the Quarterly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to ninety (90) days of Per Diem; and b) **the Per Diem is not credited against the Quarterly Payments and is in addition to the Term indicated above.** All Quarterly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Quarterly Payments, may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials   **RR**   sign

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

EFA750K



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 158 of 237

**5. <u>NON CANCELABLE AGREEMENT;</u>** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE QUARTERLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. <u>FINANCING.</u>** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. <u>NO WARRANTIES.</u>   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. <u>LOCATION; INSPECTION; USE</u>.** Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9. <u>ALTERATIONS; SECURITY INTEREST COVERAGE.</u>** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. <u>MAINTENANCE.</u>** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

**11. <u>LOSS AND DAMAGE; CASUALTY VALUE</u>.** In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Quarterly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. <u>PAYMENT OF OBLIGATIONS;</u>** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so.  Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Creditor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: <u>Middlesex Federal Savings</u>                    Bank City, State: <u>Somerville, MA</u>

Account No: <u>██████</u>                    ABA Routing No: <u>██████</u>

Business Name on Account: <u>Prestige Beauty Spa</u>

Street Address on Account: <u>4056 VALENTE CT</u>                    City, State on Account: <u>Lafayette, Ca</u>

Initials: `RR`  🖊sign

EFA750K
The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA    Document 2928    Filed 09/11/23    Page 159 of 237

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Quarterly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Quarterly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE**. Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a quarterly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

**16. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Creditor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**17. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**18. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**19. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Quarterly Payments and other payments, including late charges and interest, due under this

Initials

Page 3 of 5
The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 160 of 237

Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20. LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22. PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

 **23. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given quarter.

**24. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25. ADDITIONAL DOCUMENTS**. Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12th Floor, Costa Mesa CA 92626.

**27. GENERAL. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials  RR    sign

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 161 of 237

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

**28. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**29. GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

**30. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

**31. COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) | (DEBTOR) |
|---|---|
| **Balboa Capital Corporation** | **Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa** |
| **575 Anton Blvd** | **999 Oak Hill Road 5** |
| **12th Floor** | **Lafayette, CA 94549** |
| **Costa Mesa, CA 92626** | |
| By: _Amanda Rusca_ | By: _Robin Russell_ |
| Vice President | Name: Robin Russell |
| | Title: Owner |
| Date: 08/31/2022 | Date: 08/30/2022   Home Phone: (706) 510-2998 |

**sign**

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 162 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  420350-000 .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| Zemits RevolveSculpt, Silhouet-Tone Body Contouring , Facial Lifting | | | Spa 4 Less, llc |

Copy of Original

**Equipment Financing Agreement Number**  420350-000

**Debtor Name**  Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa

**sign** **By:** *Robin Russell*
Aug 30, 2022 10:06:13 AM PDT
**Name:**  Robin Russell
**Title:**  Owner

**Date:**  08/30/2022

**Page 1 of   1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B



# Exhibit "2"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 164 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No. ___420350-000___ dated as of ___08/31/2022___, (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.  The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
|---|---|
| Spa 4 Less, llc | $36,350.00 |

Total Amount to be Disbursed     $36,350.00

**EQUIPMENT - <u>SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.</u>**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor *("Acceptance Date")*

08/31/2022                          (Date)

I hereby authorize ___Robin Russell___ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement # ___420350-000___ in my absence

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Debtor Name:  Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa

**By:** *Robin Russell*  Aug 30, 2022 10:05:06 AM PDT
**Name:** Robin Russell
**Title:** Owner

**Date:** 08/30/2022

EFA302


The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 165 of 237

**BALBOA**
**CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  420350-000_____.  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| Zemits RevolveSculpt, Silhouet-Tone Body Contouring , Facial Lifting | | | Spa 4 Less, llc |

Copy of Original

**Equipment Financing Agreement Number**  420350-000_____

**Debtor Name**  Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa_____

**By:** *Robin Russell*
Aug 30, 2022 10:00:12 AM PDT
**Name:**  Robin Russell_____
**Title:**  Owner_____

**Date:**  08/30/2022_____

**Page 1 of ___1___**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B

# Exhibit "3"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 167 of 237



# PERSONAL GUARANTY

### Equipment Financing Agreement # 420350-000

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

sign  X _Signed By:_ _Robin Russell_
Aug 30, 2022 10:05:21 AM PDT

**Robin Russell** _____    08/30/2022 _____
**Name**                                        **Date**

4056 Valente ct _____
Lafayette, CA 94549 _____
**Home Street Address, City, State, Zip Code**

█████ _____    (706) 510-2998 _____
**Social Security Number**                      **Phone Number**

EFA251



The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:43:59 AM.

# Exhibit "4"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 169 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# Delivery and Acceptance Certificate

**Prior to Delivery**

**Equipment Finance Agreement Number:** <u>420350-000</u>

**Name and Address of Debtor:** Robin Russell a Sole Proprietorship DBA Prestige Beauty Spa

999 Oak Hill Road 5

Lafayette, CA 94549

**Equipment Description:** Zemits RevolveSculpt, Silhouet-Tone Body Contouring

Facial Lifting Machine - Spa Tech Advanced, GOLD FACIAL SPA PACKAGE

**Equipment Location:** 999 Oak Hill Road Lafayette, CA 94549

**Delivery and Acceptance Certification:**

Debtor, by its signature below, acknowledges and confirms to Balboa Capital Corporation. that (i) Debtor has irrevocably accepted all of the personal property described above (the "Equipment") as of the Acceptance Date set forth below and agrees that the Equipment is now subject to the agreement referred to above,(ii) from and after the Acceptance Date set forth below Debtor shall bear all risk of loss or damage to the Equipment and shall insure the Equipment in accordance with the terms of the Equipment Finance Agreement (including while in transit from the supplier, if not yet received at its final location); and (iii) Debtor's obligations under the Equipment Finance Agreement are absolute and unconditional. In reliance upon this certificate, Balboa Capital Corporation will advance funds on account of the Equipment and Debtor shall be fully obligated under the Equipment Finance Agreement even if Debtor has not inspected the Equipment or if the Equipment has not been delivered to its intended final location. Debtor's sole claim in the event of non-delivery shall be against the supplier of the Equipment and Debtor shall have no claim against Balboa Capital Corporation.

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

Acceptance Date:   08/30/2022

Debtor:   **Robin Russell a Sole Proprietorship DBA Prestige Beaut**

_Robin Russell_
Aug 30, 2022 10:00:55 AM PDT

By **Robin Russell**

**Owner**

Title

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:44:00 AM.

# Exhibit "5"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 171 of 237

**BALBOA**
**CAPITAL**
A DIVISION OF AMERIS BANK

**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. ▇▇▇▇▇▇▇ (the "Agreement"). Entered into between
_____ ("You", "your", or "Debtor") and
_____ ("Us", "We", "Our", or "Creditor").

A. You negotiated with your supplier(s), _____,
_____, _____,
("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement. Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier. We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

B. We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

1. Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

2. To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You. Subsequent Rent will be due and owing on the same date thereafter as reflected in Our invoices. YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE RENT PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THEREAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE. You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

3. The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above. The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature. All other terms and conditions of the Agreement are hereby reaffirmed.

|  | Creditor |  | Debtor |
|---|---|---|---|
| By: | *Amanda Rusca* | By: | *Robin Russell* |
|  | Signature |  | Signature |

Vice President
Title of Signer                                               Name and Title of Signer

Date Accepted: 08/31/2022                        Date: 08/30/2022

<u>UNCONDITIONAL GUARANTY</u>

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement. The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

|  | Guarantor |  | Guarantor |
|---|---|---|---|
| X: | *Robin Russell*  ,Individually | X: | ,Individually |
|  | Signature |  | Signature |

Date: 08/30/2022                                    Date:

|  | Guarantor |  |  |
|---|---|---|---|
| X: | ,Individually | Date: |  |
|  | Signature |  |  |

ECEFA843D

The original document is owned by Balboa Capital Corporation and this copy was created on Aug 31, 2022 08:44:00 AM.



# Exhibit "6"



# Spa4Less

3070 Business Park Drive
Norcross, GA 30071
9706388464
www.spa4less.com
admin@spa4less.com

**INVOICE**
SP02367

**DATE**
08/24/2022

**DUE**
On Receipt

**BALANCE DUE**
USD $36,350.00

**BILL TO**

**Prestige Beauty Spa**

999 Oak Hill Road #5
 LAFAYETTE, CA, 94549
📞 7065102998
📱 7065102998
robinrussell400@gmail.com

Ship To:
Prestige Beauty Spa
999 Oak Hill Road #5
Lafayette, CA 94549

| DESCRIPTION | RATE | QTY | AMOUNT |
|---|---|---|---|
| Zemits RevolveSculpt | $12,000.00 | 1 | $12,000.00 |
| Silhouet-Tone Body Contouring | $7,500.00 | 1 | $7,500.00 |
| Facial Lifting Machine - Spa Tech Advanced | $2,500.00 | 2 | $5,000.00 |
| GOLD FACIAL SPA PACKAGE | $2,500.00 | 3 | $7,500.00 |
| **Shipping - Express**<br>Tracked with UPS | $2,850.00 | 1 | $2,850.00 |
| 1 OPERATOR BASIC SALON PACKAGE | $1,500.00 | 1 | $1,500.00 |

| | | |
|---|---|---|
| **TOTAL** | | $36,350.00 |
| **BALANCE DUE** | | **USD $36,350.00** |

## Payment Info

**100% funds upfront**

**PAYMENT INSTRUCTIONS**
JT Milbry - Spa 4 Less
Account number: ▮▮▮▮▮▮
Routing number: ▮▮▮▮▮▮
Business Address: 3699 Lenox Rd NE, Atlanta, GA

Page 1 of 2

# Exhibit "7"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # __423426-000__

## DEBTOR INFORMATION

| Debtor Name: | Debtor's Address: | Collateral Location: |
|---|---|---|
| **BELLA DREAM BODY, LLC** | 2295 Parklake Dr<br>Atlanta, GA 30345 | **(if different from Debtor's Address)**<br>2295 Parklake Dr<br>Atlanta, GA 30345 |
| Phone:<br>**678-890-5149** | Federal Tax ID #:<br>____5488 | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers)<br><br>**See Invoices attached hereto as Exhibit A1 and incorporated herein by this reference.** | Collateral Cost:<br>**$49,687.00** | Initial Payment<br>(Debtor requests that this amount be electronically debited)<br><br>**SECURITY DEPOSIT: $2,600.00** |
|---|---|---|
| Term:   **60**<br><br>(Plus any Prefund or Per diem Period)<br><br>Monthly Payment Amount:   **$1,300.00** | Initial Payment Date:<br><br>11/26/2022 | Fee %:   **2%**<br>(% of Original Collateral Cost)<br><br>Total Amount Due:   **$2,600.00** |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Monthly Payments in the number of monthly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Monthly Payment shall be deemed due as of the date indicated above and subsequent Monthly Payments shall be due on the same day of each month thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Monthly Payment based on a daily charge of one-thirtieth (1/30th) or .03333% of the Monthly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor.  Debtor acknowledges that: a) Creditor may charge up to thirty (30) days of Per Diem; and b) **the Per Diem is not credited against the Monthly Payments and is in addition to the Term indicated above.**  All Monthly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Monthly Payments, shall be applied to the last Monthly Payment in reverse order until exhausted; provided that if there is a default, any payments under this Agreement may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials      



EFA244O

The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:36 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 177 of 237

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE MONTHLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE**. Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9.  ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

**11. LOSS AND DAMAGE; CASUALTY VALUE**. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Monthly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBLIGATIONS;** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so. Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: Piermont Bank                     Bank City, State: San Francisco CA

Account No: ▮▮▮▮▮▮▮                     ABA Routing ▮▮▮▮▮▮

Business Name on Account: Bella Dream Body, LLC

Street Address on Account: 5830 CREST OAK WAY                     City, State on Account: CUMMING, GA

Initials: _FW_  [sign]

The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:36 AM.

EFA244O

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 178 of 237

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Monthly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Monthly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE**. Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a monthly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

**16. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Debtor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**17. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**18. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**19. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Monthly Payments and other payments, including late charges and interest, due under this Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or

Initials [FW]  [sign]

The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:36 AM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 179 of 237

expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20. LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22. PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**23. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given month.

**24. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25. ADDITIONAL DOCUMENTS.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12ᵗʰ Floor, Costa Mesa CA 92626.

**27. GENERAL. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials  FW

Page 4 of 5
The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:36 AM.

EFA244O

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought**. Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

28. **DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

29. **GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

30. **CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

31. **COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) | (DEBTOR) |
|---|---|
| **Balboa Capital Corporation** | **BELLA DREAM BODY, LLC** |
| **575 Anton Blvd** | **2295 Parklake Dr** |
| **12th Floor** | **Atlanta, GA 30345** |
| **Costa Mesa, CA 92626** | |
| By: _Amanda Rusca_ | By: _Fredel Williamson_ |
| Vice President | Name: Fredel Williamson |
| | Title: Managing Member |
| Date: 09/27/2022 | Date: 09/22/2022    Home Phone: (678) 890-5149 |

**sign**

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 181 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  423426-000 .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| Platinum V /Lux II SPA Facial Equipment Package, MULTI PURPOS | | | Spa 4 Less, llc |

Copy of Original

**Equipment Financing Agreement Number**  423426-000

**Debtor Name**  BELLA DREAM BODY, LLC



**By:** _Fredel Williamson_
**Name:**  Fredel Williamson
**Title:**   Managing Member

**Date:**  09/22/2022

**Page 1 of    1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B



# Exhibit "8"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 183 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No. 423426-000 dated as of 09/22/2022, (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.  The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
|---|---|
| Spa 4 Less, LLC | $49,687.00 |

<span style="opacity:0.3">Copy of</span>

Total Amount to be Disbursed          $49,687.00

**EQUIPMENT - <u>SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.</u>**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor *("Acceptance Date")*

09/27/2022                          (Date)

I hereby authorize  Fredel Williamson _____ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement #  423426-000 _____ in my absence

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Debtor Name:  **BELLA DREAM BODY, LLC**

**sign→**  **By:** *Fredel Williamson*   Sep 22, 2022 8:38:22 AM PDT
**Name:**  Fredel Williamson
**Title:**  Managing Member

**Date:**  09/22/2022

EFA302



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 184 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  423426-000           .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| Platinum V /Lux II SPA Facial Equipment Package, MULTI PURPOS | | | Spa 4 Less, llc |

Copy of Original

**Equipment Financing Agreement Number**  423426-000

**Debtor Name**  BELLA DREAM BODY, LLC

**By:**  *Fredel Williamson*
**Name:**  Fredel Williamson
**Title:**  Managing Member

**Date:**  09/22/2022

**Page 1 of   1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B



The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:38 AM.

# Exhibit "9"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 186 of 237



# PERSONAL GUARANTY

**Equipment Financing Agreement #** __423426-000__

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

sign  X  Signed By: _Fredel Williamson_  Sep 22, 2022 8:37:37 AM PDT

__Fredel Williamson__                          __09/22/2022__
**Name**                                       **Date**

__8122 woodland ave__
__Covington, GA 30014__
**Home Street Address, City, State, Zip Code**

▇▇▇▇▇▇                                         __(678) 890-5149__
**Social Security Number**                      **Phone Number**

EFA251



# Exhibit "10"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 188 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# Delivery and Acceptance Certificate

**Prior to Delivery**

**Equipment Finance Agreement Number:** 423426-000

**Name and Address of Debtor:** BELLA DREAM BODY, LLC

2295 Parklake Dr

Atlanta, GA 30345

**Equipment Description:** Platinum V /Lux II SPA Facial Equipment Package, MULTI PURPOSE MASSAGE

THREE-SIDED RECEPTION DESK W/ BACK-LIT PANEL

COLLINS 628 ALTA B-TALL STYLING STATION W/ MIRROR

**Equipment Location:** 2295 Parklake Dr Atlanta, GA 30345

**Delivery and Acceptance Certification:**

Debtor, by its signature below, acknowledges and confirms to Balboa Capital Corporation. that (i) Debtor has irrevocably accepted all of the personal property described above (the "Equipment") as of the Acceptance Date set forth below and agrees that the Equipment is now subject to the agreement referred to above,(ii) from and after the Acceptance Date set forth below Debtor shall bear all risk of loss or damage to the Equipment and shall insure the Equipment in accordance with the terms of the Equipment Finance Agreement (including while in transit from the supplier, if not yet received at its final location); and (iii) Debtor's obligations under the Equipment Finance Agreement are absolute and unconditional. In reliance upon this certificate, Balboa Capital Corporation will advance funds on account of the Equipment and Debtor shall be fully obligated under the Equipment Finance Agreement even if Debtor has not inspected the Equipment or if the Equipment has not been delivered to its intended final location. Debtor's sole claim in the event of non-delivery shall be against the supplier of the Equipment and Debtor shall have no claim against Balboa Capital Corporation.

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

Acceptance Date:     09/22/2022

Debtor:   **BELLA DREAM BODY, LLC**

sign    *Fredel Williamson*
DS Signed By: | Sep 22, 2022 8:38:01 AM PDT

By **Fredel Williamson**

**Managing Member**

Title

The original document is owned by Balboa Capital Corporation and this copy was created on Sep 27, 2022 08:07:37 AM.

# Exhibit "11"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 190 of 237

**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. _____ (the "Agreement"). Entered into between
_____ ("You", "your", or "Debtor") and
_____ ("Us", "We", "Our", or "Creditor").

A.  You negotiated with your supplier(s), _____,
_____, _____,
("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement.  Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier.  We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

B.  We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

1.  Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

2.  To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You.  Subsequent Rent will be due and owing on the same date thereafter as reflected in Our invoices.  YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE RENT PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THEREAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE.  You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

3.  The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above.  The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature.  All other terms and conditions of the Agreement are hereby reaffirmed.

| Creditor | Debtor |
|---|---|
| By: _Amanda Rusca_ | By: _Fredel Williamson_ |
| Signature | Signature |
| Vice President | |
| Title of Signer | Name and Title of Signer |
| Date Accepted:  09/27/2022 | Date:  09/22/2022 |

<u>UNCONDITIONAL GUARANTY</u>

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement.  The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor  In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment.   The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

| Guarantor | Guarantor |
|---|---|
| X: _Fredel Williamson_ ,Individually | X: _____ ,Individually |
| Signature | Signature |
| Date: 09/22/2022 | Date: _____ |

| Guarantor | |
|---|---|
| X: _____ ,Individually | Date: _____ |
| Signature | |

ECEFA843D



# Exhibit "12"



# Spa4Less

3070 Business Park Drive
Norcross, GA 30071
9706388464
www.spa4less.com
admin@spa4less.com

**INVOICE**
SP02605

**DATE**
09/13/2022

**DUE**
On Receipt

**BALANCE DUE**
USD $49,687.00

**BILL TO**

**Bella Dream Body, LLC**

2295 Parklake Dr
Atlanta, Georgia 30345

☎ 678-890-5149
▫ 678-890-5149
dreambodystudio03@gmail.com

**SHIP TO**

**Bella Dream Body, LLC**

2295 Parklake Dr
Atlanta, Georgia 30345

| DESCRIPTION | RATE | QTY | AMOUNT |
|---|---|---|---|
| **Platinum V SPA Facial Equipment Package**<br>Sale<br><br>a facial bed, multi-function unit,, sterilizer, double wax warmer, hot towel cabi, stool, and trolley. | $4,950.00 | 2 | $9,900.00 |
| **Lux II Spa Equipment Package**<br>a facial bed, multi-function unit, oxygen concentrator, sterilizer, double wax warmer, paraffin machine, hot towel cabi, stool, and trolley. | $4,955.00 | 3 | $14,865.00 |
| **THREE-SIDED RECEPTION DESK W/ BACK-LIT PANEL**<br>Includes (2) Two reception chairs | $6,975.00 | 1 | $6,975.00 |
| **Shipping - Express**<br>Tracked with UPS | $3,757.00 | 1 | $3,757.00 |
| COLLINS 628 ALTA B-TALL STYLING STATION W/ MIRROR COLLINS 628 ALTA B-TALL STYLING STATION W/ MIRROR | $2,980.00 | 3 | $8,940.00 |
| MULTI PURPOSE MASSAGE TABLE | $1,750.00 | 3 | $5,250.00 |

| | |
|---|---|
| **TOTAL** | $49,687.00 |
| **BALANCE DUE** | USD **$49,687.00** |

## Payment Info

**100% funds upfront**

**PAYMENT INSTRUCTIONS**

Spa 4 Less - JT Milbry
Account number: ███████████
Routing number: ██████████
Business Address: 3699 Lenox Rd NE, Atlanta, GA

# Exhibit "13"



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-cv-99999-UNA  Document 2928  Filed 09/11/23  Page 195 of 237

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

**Agreement #** <u>426543-000</u>

## DEBTOR INFORMATION

| Debtor Name: | Debtor's Address: | Collateral Location: |
|---|---|---|
| **SUSAN KLINE, INC. DBA TO Salon** | **1655 E Thousand Oaks Blvd Ste 201, 202, 204, 205, 2 Thousand Oaks, CA 91362** | (if different from Debtor's Address) **1655 E Thousand Oaks Blvd Ste 201, 202, 204, Thousand Oaks, CA 91362** |
| Phone: **310-564-7498** Federal Tax ID #: ███**5233** | | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers) **See Exhibit A and/or invoices attached hereto as Exhibit A1 and incorporated herein by this reference.** | | Initial Payment (Debtor requests that this amount be electronically debited) |
|---|---|---|
| | **Collateral Cost:** $80,532.73 | **SECURITY DEPOSIT: $5,255.00** |
| Term: **20** (Plus any Prefund or Per diem Period) Quarterly Payment Amount: **$5,255.00** | **Initial Payment Date:** 01/15/2023 | **Fee %:** <u>2%</u> (% of Original Collateral Cost) **Total Amount Due:** $5,255.00 |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Quarterly Payments in the number of quarterly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Quarterly Payment shall be deemed due as of the date indicated above and subsequent Quarterly Payments shall be due on the same day of each quarter thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Quarterly Payment based on a daily charge of one-ninetieth (1/90th) or .01111% of the Quarterly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor. Debtor acknowledges that: a) Creditor may charge up to ninety (90) days of Per Diem; and b) **the Per Diem is not credited against the Quarterly Payments and is in addition to the Term indicated above.** All Quarterly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Quarterly Payments, may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials <u>SK</u> 

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:26 PM.
EFA750K



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE QUARTERLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE**. Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9. ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

**11. LOSS AND DAMAGE; CASUALTY VALUE**. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Quarterly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBLIGATIONS;** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so.  Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: Truist                                   Bank City, State: Charlotte, North Carolina

Account No: ▮▮▮▮▮▮▮▮                         ABA Routing No: ▮▮▮▮▮▮▮▮

Business Name on Account: Susan Kline INC

Street Address on Account: 1655 E. Thousand Oaks Blvd          City, State on Account: Thousand Oaks, Ca

Initials: SK  [sign]

EFA750K

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:26 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 197 of 237

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Quarterly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Quarterly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE**. Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a quarterly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

**16. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Creditor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**17. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**18. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**19. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Quarterly Payments and other payments, including late charges and interest, due under this

Initials SK

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:26 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 198 of 237

Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20. LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22. PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**23. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given quarter.

**24. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25. ADDITIONAL DOCUMENTS.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12th Floor, Costa Mesa CA 92626.

**27. GENERAL. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing. This Agreement cannot be modified except in writing signed by the party**

Initials SK | sign

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 199 of 237

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

**28. DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

**29. GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

**30. CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

**31. COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) | (DEBTOR) |
|---|---|
| **Balboa Capital Corporation** | **SUSAN KLINE, INC. DBA TO Salon** |
| **575 Anton Blvd** | **1655 E Thousand Oaks Blvd Ste 201, 202, 204, 205, 207** |
| **12th Floor** | **Thousand Oaks, CA 91362** |
| **Costa Mesa, CA 92626** | |
| By: *Amanda Rusca* | By: *Susan Kline* |
| Vice President | Name: Susan Kline |
| | Title: President |
| Date: 10/19/2022 | Date: 10/18/2022   Home Phone: (310) 564-7498 |

sign

EFA750K

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:26 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 200 of 237

**BALBOA**
CAPITAL
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  426543-000 .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| TAKARA BELMONT SH-505 BAHAMA BACKWASH UNIT | | | Spa 4 Less, llc |

Copy of

Original

**Equipment Financing Agreement Number**  426543-000

**Debtor Name**  SUSAN KLINE, INC. DBA TO Salon

 **By:** *Susan Kline*    eSigned By: ... Oct 18, 2022 10:53:28 AM PDT

**Name:**  Susan Kline

**Title:**  President

**Date:**  10/18/2022

**Page 1 of  1**

   "Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B



# Exhibit "14"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 202 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No. _426543-000_ dated as of _10/18/2022_ , (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.  The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
|---|---|
| Spa 4 Less, LLC | $80,532.73 |

Total Amount to be Disbursed     $80,532.73

**EQUIPMENT - SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor *("Acceptance Date")*

_10/19/2022_                              **(Date)**

I hereby authorize _Susan Kline_ to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement # _426543-000_ in my absence

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Debtor Name:  **SUSAN KLINE, INC. DBA TO Salon**

**By:** _Susan Kline_      Oct 19, 2022 10:51:24 AM PDT
**Name:** Susan Kline
**Title:** President

**Date:** _10/18/2022_

EFA302



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 203 of 237

**BALBOA**
CAPITAL
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  426543-000 .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| TAKARA BELMONT SH-505 BAHAMA BACKWASH UNIT | | | Spa 4 Less, llc |

Copy of

Original

**Equipment Financing Agreement Number**  426543-000

**Debtor Name**  SUSAN KLINE, INC. DBA TO Salon

**sign** **By:** _Susan Kline_

**Name:**  Susan Kline

**Title:**  President

**Date:**  10/18/2022

**Page 1 of   1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B





# Exhibit "15"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 205 of 237



# PERSONAL GUARANTY

### Equipment Financing Agreement #  426543-000

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

sign ➤ **X**   Signed By: _____
_Susan Kline_
Oct 18, 2022 10:51:46 AM PDT

**Susan Kline** _____     10/18/2022 _____
**Name**                                    **Date**

 3308 Big Cloud Cr _____
 Thousand Oaks, CA 91360 _____
**Home Street Address, City, State, Zip Code**

████████ _____     (310) 564-7498 _____
**Social Security Number**                **Phone Number**

EFA251



# Exhibit "16"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 207 of 237

BALBOA
CAPITAL
A DIVISION OF AMERIS BANK

# Delivery and Acceptance Certificate

## Prior to Delivery

**Equipment Finance Agreement Number:** __426543-000__

**Name and Address of Debtor:** SUSAN KLINE, INC. DBA TO Salon

1655 E Thousand Oaks Blvd Ste 201, 202, 204, 205, 207

Thousand Oaks, CA 91362

**Equipment Description:** TAKARA BELMONT SH-505 BAHAMA BACKWASH UNIT

**Equipment Location:** 1655 E Thousand Oaks Blvd Ste 201, 202, 204, 205, 207 Thousand Oaks, CA 91362

**Delivery and Acceptance Certification:**

Debtor, by its signature below, acknowledges and confirms to Balboa Capital Corporation. that (i) Debtor has irrevocably accepted all of the personal property described above (the "Equipment") as of the Acceptance Date set forth below and agrees that the Equipment is now subject to the agreement referred to above,(ii) from and after the Acceptance Date set forth below Debtor shall bear all risk of loss or damage to the Equipment and shall insure the Equipment in accordance with the terms of the Equipment Finance Agreement (including while in transit from the supplier, if not yet received at its final location); and (iii) Debtor's obligations under the Equipment Finance Agreement are absolute and unconditional. In reliance upon this certificate, Balboa Capital Corporation will advance funds on account of the Equipment and Debtor shall be fully obligated under the Equipment Finance Agreement even if Debtor has not inspected the Equipment or if the Equipment has not been delivered to its intended final location. Debtor's sole claim in the event of non-delivery shall be against the supplier of the Equipment and Debtor shall have no claim against Balboa Capital Corporation.

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

Acceptance Date: __10/18/2022__

Debtor: __SUSAN KLINE, INC. DBA TO Salon__

By __Susan Kline__

__President__

Title

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:27 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 208 of 237

**BALBOA**
**CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  426543-000          .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| TAKARA BELMONT SH-505 BAHAMA BACKWASH UNIT | | | Spa 4 Less, llc |

Copy of

Original

**Equipment Financing Agreement Number**  426543-000

**Debtor Name**  SUSAN KLINE, INC. DBA TO Salon

**sign** **By:** _Susan Kline_  DocuSigned By / Oct 18, 2022 10:02:28 AM PDT

**Name:**  Susan Kline

**Title:**  President

**Date:**  10/18/2022

**Page 1 of     1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B



# Exhibit "17"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 210 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. _____ (the "Agreement"). Entered into between _____ ("You", "your", or "Debtor") and _____ ("Us", "We", "Our", or "Creditor").

   A.   You negotiated with your supplier(s), _____ , _____ , _____ , ("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement. Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier. We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

   B.   We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

   1.   Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

   2.   To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You. Subsequent Rent will be due and owing on the same date thereafter as reflected in Our invoices. YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE RENT PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THEREAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE. You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

   3.   The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above. The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature. All other terms and conditions of the Agreement are hereby reaffirmed.

| Creditor | | Debtor |
|---|---|---|
| By: _Amanda Rusca_    Oct 19, 2022 12:04 PM PDT | **sign** | By: _Susan Kline_    Oct 18, 2022 10:51:59 AM PDT |
| Signature | | Signature |
| Vice President | | |
| Title of Signer | | Name and Title of Signer |
| Date Accepted: 10/19/2022 | | Date: 10/18/2022 |

**UNCONDITIONAL GUARANTY**

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement. The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment. The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

| Guarantor | Guarantor |
|---|---|
| **sign** X: _Susan Kline_   Oct 18, 2022 10:51:59 AM PDT ,Individually | X: _____ ,Individually |
| Signature | Signature |
| Date: 10/18/2022 | Date: _____ |

| Guarantor | |
|---|---|
| X: _____ ,Individually | Date: _____ |
| Signature | |

ECEFA843D

 The original document is owned by Balboa Capital Corporation and this copy was created on Oct 19, 2022 12:10:27 PM.

# Exhibit "18"



# Spa4Less

3070 Business Park Drive
Norcross, GA 30071
9706388464
www.spa4less.com
admin@spa4less.com

**INVOICE**
SPA13244

**DATE**
10/15/2022

**DUE**
On Receipt

**BALANCE DUE**
USD $80,532.73

**BILL TO**
## Susan Kline, INC
1655 E. Thousand Oaks Blvd. Suite
201, 202, 203, 204, 205, 207
Thousand Oaks, CA 91362

**SHIP TO**
## Susan Kline, INC
1655 E. Thousand Oaks Blvd. Suite
201, 202, 203, 204, 205, 207
Thousand Oaks, CA 91362

| DESCRIPTION | RATE | QTY | DISCOUNT | AMOUNT |
|---|---|---|---|---|
| COLLINS QSE 5515-66 EXTRA 39 HI WET STATION | $2,250.00 | 6 | | $13,500.00 |
| **TAKARA BELMONT SH-505 BAHAMA BACKWASH UNIT** The Bahama Shampoo Backwash by Takara Belmont offers the perfect combination of quality, style and comfort and adds a sleek and modern look to your salon. The stainless steel base and shiny chrome arms are easy to keep clean and built to last for many years. The large tilting ceramic shampoo bowl and extendable foot rest add to the extreme comfort of this chair. | $3,199.95 | 6 | -$1,919.97 10% | $17,279.73 |
| TAKARA BELMONT ST-N30 LIONESS STYLING CHAIR | $1,315.00 | 6 | | $7,890.00 |
| GUEST SEATING - CONTEMPORARY BLACK LEATHER LOVE SEAT WITH STAINLESS STEEL FRAME | $1,199.00 | 6 | | $7,194.00 |
| **COLLINS 110660 SO RECEPTION DESK W/ BACK-LIT PANEL** The SO Reception Desk w/ Back-Lit Panel by Collins is made 100% in the U.S.A. by Collins, guaranteeing you the utmost quality and craftsmanship in the salon equipment industry.  This sleek reception desk is perfect for any salon, and features a large light box on the front and a  wrap-around accent ledge. The back side of the desk is fully equipped with four pull-out drawers and four locking file drawers, as well as four extra shelves for additional storage! | $7,500.00 | 1 | | $7,500.00 |

| DESCRIPTION | RATE | QTY | DISCOUNT | AMOUNT |
|---|---|---|---|---|
| 3' X 5' RHINO VEGAS HEEL-PROOF MAT W/ ROUND CUT-OUT 1" | $350.00 | 6 | | $2,100.00 |
| **ZEUS DOUBLE STYLING STATION W/ MOBILE BASE & LED MIRROR**<br>The Zeus Double Styling Station w/ Mobile Base & LED Mirror features a cabinet that is 100% Made in the U.S.A. and is double-sided to support two stylists working at the same time! This free-standing salon station ships to you in three fully assembled pieces and comes complete with two 66" full-length LED mirrors that will add a clean & modern touch to any salon, spa or barbershop. The LED mirror features a built-in LED lit frame with an easy and accessible on/off button. This luxurious salon mirror includes an embedded dimmable LED light that will bring refined glamour to your station and will give your client the opulent experience they deserve! | $2,650.00 | 6 | | $15,900.00 |
| PIBBS 129 ECOVAP ION PROFESSIONAL HAIR STEAMER W/ WALL MOUNT | $1,149.00 | 6 | | $6,894.00 |
| **Shipping**<br>Scheduled Delivery with DHL | $2,275.00 | 1 | | $2,275.00 |

| | | |
|---|---|---|
| **TOTAL** | | $80,532.73 |
| **BALANCE DUE** | | **USD $80,532.73** |

## Payment Info

**100% funds upfront**

**PAYMENT INSTRUCTIONS**

Spa 4 Less - JT Milbry
Account number: ██████████
Routing number: █████████
Business Address: 3699 Lenox Rd NE, Atlanta, GA

# Exhibit "19"



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-ml-99999-UNA   Document 2928   Filed 09/11/23   Page 215 of 237

# EQUIPMENT FINANCING AGREEMENT ("Agreement")

Agreement # __424458-000__

## DEBTOR INFORMATION

| | | |
|---|---|---|
| Debtor Name:<br>**Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio** | Debtor's Address:<br>**402 Ingalls St<br>Santa Cruz, CA 95060** | Collateral Location:<br>**(if different from Debtor's Address)**<br>**402 Ingalls Street<br>Santa Cruz, CA 95060** |
| Phone:<br>**313-327-0319** | Federal Tax ID #:<br>■■■8610 | |

## PAYMENT AND TERMS

| Full Description of Collateral (Include Make Model, Serial Numbers)<br>**See Exhibit A and/or invoices attached hereto as Exhibit A1 and incorporated herein by this reference.** | **Collateral Cost:**<br>**$50,808.00** | Initial Payment<br>**(Debtor requests that this amount be electronically debited)**<br>**SECURITY DEPOSIT: $4,000.00** |
|---|---|---|
| Term: **20**<br>(Plus any Prefund or Per diem Period)<br>Quarterly Payment Amount: **$4,000.00** | **Initial Payment Date:**<br>**01/15/2023** | Fee %: **2%**<br>(% of Original Collateral Cost)<br>**Total Amount Due:** **$4,000.00** |

## TERMS OF EQUIPMENT FINANCING AGREEMENT

Balboa Capital Corporation ("Creditor") and Debtor agree as follows:

**1. SECURITY INTEREST:** Debtor hereby grants Creditor a security interest under the Uniform Commercial Code in the above property and equipment (collectively the "Collateral" and individually an "Item of Collateral"). Such security interest is granted to secure performance by Debtor of its obligations hereunder and under any other present or future agreement with Creditor. Debtor shall insure that such security interest is and shall remain a sole first lien security interest. DEBTOR HEREBY AUTHORIZES CREDITOR TO FILE A COPY OF THIS AGREEMENT AS A FINANCING STATEMENT AND APPOINTS CREDITOR OR ITS DESIGNEE AS DEBTOR'S ATTORNEY-IN-FACT TO EXECUTE AND FILE, ON DEBTOR'S BEHALF, FINANCING STATEMENTS COVERING THE COLLATERAL.

**2. COMMENCEMENT DATE:** This Agreement shall commence upon verification of the delivery of the Collateral in a form acceptable to Creditor ("Commencement Date").

**3. NO AGENCY.** DEBTOR ACKNOWLEDGES THAT NO SUPPLIER OR INTERMEDIARY NOR ANY AGENT OF EITHER THEREOF IS AN AGENT OF CREDITOR AND FURTHER THAT NONE OF SUCH PARTIES IS AUTHORIZED TO WAIVE OR ALTER ANY ITEM OR CONDITION OF THIS AGREEMENT. *THE SUPPLIER IS NOT AN AGENT OF CREDITOR'S AND NOTHING THE SUPPLIER STATES CAN AFFECT DEBTOR'S OBLIGATION UNDER THIS AGREEMENT. DEBTOR WILL CONTINUE TO MAKE ALL PAYMENTS UNDER THIS AGREEMENT REGARDLESS OF ANY CLAIM OR COMPLAINT AGAINST SUPPLIER.*

**4. PAYMENTS; PER DIEM EXPENSE REIMBURSEMENT:** Debtor shall repay Creditor the above Quarterly Payments in the number of quarterly installments indicated above, plus the Per Diem Expense reimbursement as described in this paragraph. The initial Quarterly Payment shall be deemed due as of the date indicated above and subsequent Quarterly Payments shall be due on the same day of each quarter thereafter until paid. The first payment we will charge you shall be a pro rata portion of the Quarterly Payment based on a daily charge of one-ninetieth (1/90th) or .01111% of the Quarterly Payment calculated from number or days from the Commencement Date to the start of the base term (the "Per Diem") and shall be due and payable on a date selected by Creditor.  Debtor acknowledges that: a) Creditor may charge up to ninety (90) days of Per Diem; and b) **the Per Diem is not credited against the Quarterly Payments and is in addition to the Term indicated above.** All Quarterly Payments, Per Diem and other payments due under this Agreement or any other agreement with us (collectively "Obligation" or "Obligations") are payable in U.S. dollars, and may be adjusted upward or downward no more than ten percent (10%) to reflect actual costs. All other amounts due thereunder shall be due upon Debtor's receipt of Creditor's invoice. Advance payments, which are the first and last Quarterly Payments, may be applied to the Obligations at Creditors discretion. In the event Debtor signs this Agreement, but the Agreement is not effected or signed by Creditor, the advanced payments, documentation fee and security deposit may be retained by Creditor so as to compensate Creditor for its processing costs, labor, and other expenses.

Initials  

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.



Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 216 of 237

**5. NON CANCELABLE AGREEMENT;** NO PREPAYMENT, NO OFFSET, THIS AGREEMENT IS NON CANCELABLE BY DEBTOR FOR ANY REASON WHATSOEVER. DEBTOR MAY REPAY THE QUARTERLY PAYMENTS ONLY IN ACCORDANCE HEREWITH. ALL PAYMENTS HEREUNDER ARE TO BE MADE WITHOUT OFFSET.

**6. FINANCING.** THIS AGREEMENT IS SOLELY A COMMERCIAL AND BUSINESS FINANCING AGREEMENT. SEE ADDITIONAL TERMS AND CONDITIONS CONTAINED HEREIN WHICH ARE PART OF THIS AGREEMENT.

**7. NO WARRANTIES.   CREDITOR MAKES NO WARRANTY, EXPRESS OR IMPLIED, REGARDING THE COLLATERAL AND ITS FITNESS, MERCHANTABILITY OR PROFITABILITY FOR ANY PURPOSE WHATSOEVER.** DEBTOR AGREES THAT DEBTOR HAS SELECTED THE SUPPLIER AND EACH ITEM OF COLLATERAL BASED UPON DEBTOR'S OWN JUDGMENT AND DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY CREDITOR. CREDITOR DOES NOT TAKE RESPONSIBILITY FOR THE INSTALLATION OR PERFORMANCE OF THE COLLATERAL.

**8. LOCATION; INSPECTION; USE**. Debtor shall keep, or, as to an Item of Collateral which is movable, permanently garage and not remove from the United States, as appropriate, each Item of Collateral in Debtor's possession and control at the Collateral Location or at such other location to which such Item may have been moved with the prior written consent of Creditor, Upon request, Debtor shall advise Creditor as to the exact location of an Item of Collateral. Each Item shall be used solely for commercial or business purposes and operated in a careful and proper manner an in compliance with all applicable governmental requirements, all requirements of insurance policies carried hereunder and all manufacturer's instructions and warranty requirements.

**9.  ALTERATIONS; SECURITY INTEREST COVERAGE.** Without Creditor's prior written consent, Debtor shall not make any alterations, additions or improvements to an Item of Collateral which detract from its economic value or functional utility. All additions and improvements made to an Item of Collateral shall be deemed accessions thereto, and shall not be removed if removal would impair the Item's economic value or functional utility. Creditor's security interest shall cover all modifications, accessions, additions to and replacements and substitutions for the Collateral. Debtor will not make any replacements or substitutions without Creditor's prior written consent.

**10. MAINTENANCE.** Debtor shall maintain the Collateral in good repair, condition and working order. Debtor shall cause at its sole expense all repairs required to maintain the Collateral in such condition to be made promptly by qualified parties. Debtor will cause each Item of Collateral for which a service contract is generally available to be covered by such a contract which provides coverage typical as to property of the type involved and is issued by a competent servicing entity.

**11. LOSS AND DAMAGE; CASUALTY VALUE**. In the event of loss, theft, destruction or requisition of or damage to an Item of Collateral from any cause Debtor shall give Creditor prompt notice thereof and shall thereafter place the Item in good repair, condition and working order; provided, however, that if such Item is determined by Creditor to be lost, stolen, destroyed or damaged beyond repair or is requisitioned or suffers a constructive total loss under an insurance policy carried hereunder Debtor shall cause the Collateral to be replaced and shall immediately provide Creditor with information necessary to perfect Creditor's security interest in the replacement Collateral, or shall pay Creditor the "Casualty Value" of such Item which shall equal (a) any amounts due at the time of such payment, and (b) each future Quarterly Payment due with respect to such Item discounted at three percent (3%) per annum simple interest from the date due to the date of such payment.

**12. PAYMENT OF OBLIGATIONS:** Payment of the Obligations, the Initial Payment/Total Amount Due, the amounts described in section #14, and any other amounts owed under this Agreement shall be made by electronically withdrawing funds from the bank account listed below in this paragraph, or on which Debtor's deposit check was drawn, or the account from which a cancelled or voided check provided by the Debtor can be drawn, or any other account from which Debtor paid any Obligation under this Agreement. **Debtor initiates each transaction** and authorizes Creditor to debit from any of the foregoing accounts the Obligations, the Initial Payment/Total Amount Due, amounts described in section #14, and any other amounts owed under this Agreement and agrees that Creditor, or its assignees, has the right, but not the obligation, to do so.  Debtor acknowledges that, if Creditor assigns this Agreement to a third party, the assignee is also authorized to debit any of the foregoing accounts outlined above. If Debtor would prefer to authorize Creditor to debit another account, fill in the blanks provided below along with a copy of a voided check from the specified account. Debtor understands and agrees that this authorization to electronically withdraw funds from any of the foregoing accounts is irrevocable.

Bank Name: Middlesex Federal Savings                          Bank City, State: Somerville, MA

Account No: ███████                                           ABA Routing No: ███████

Business Name on Account: Hair Beauty 360 Studio - Chelsey Mowbray

Street Address on Account: 402 Ingalls St                    City, State on Account: Santa Cruz, Ca

Initials: *cm*  [sign]

EFA750K
The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA    Document 2928    Filed 09/11/23    Page 217 of 237

**13. TITLING.** If requested by Creditor, Debtor shall cause an Item of Collateral subject to title registration laws to be titled as directed by Creditor. Debtor shall advise Creditor promptly as to any necessary re-titling. Debtor shall cause all documents of title to be furnished Creditor within sixty (60) days of the date of any titling effected by Debtor. All expenses, fees, costs and charges associated with re-titling to secure Creditors perfected lien rights shall be borne solely by Debtor and reimbursed to Creditor by Debtor.;

**14. TAXES, CHARGES, AND FEES.** Debtor agrees to pay when due all taxes (including personal property tax, fines and penalties) and fees that levied by any State, County or Federal Agency relating to this Agreement or the Collateral. If Creditor pays any of the above taxes on behalf of the Debtor, so as to reimburse Creditor for processing and administrative expenses and time, Debtor will pay a processing fee for each payment. In addition, Debtor also agrees to pay Creditor any UCC filing fees mandated by the Uniform Commercial Code or other law to protect and secure the Collateral and reimburse Creditor for all costs and expenses involved in documenting and servicing this transaction. An inspection of the Collateral will be conducted to evidence the condition of the Collateral and a fee will be charged for this service, which Debtor agrees to reimburse to Creditor. Debtor further agrees to pay Creditor an origination or loan Fee on or before the date the first Quarterly Payment is due, the purpose of this fee is to arrange in advance all the necessary funding sources and process credit and paperwork. Debtor also acknowledges that all such fees and charges are in addition to the Quarterly Payments, and that all such fees may not only cover Creditors costs but they may also include a profit or administrative expense reimbursement of processing.

**15. INSURANCE**. Debtor agrees to maintain, at Debtor's expense, "Special Form" property insurance protecting the Collateral for its full replacement value, **naming Creditor as a loss payee on a "Creditor's Loss Payable" endorsement**; and public liability insurance, in amounts acceptable to Creditor, naming Creditor as an additional insured (together "Required Insurance"). Debtor must provide Creditor satisfactory written evidence of Required Insurance within thirty (30) days of the commencement date of this Agreement or of any subsequent written request. If Debtor does not do so, Creditor may obtain insurance from an insurer of Creditor's choosing in such forms and amounts as Creditor selects ("Insurance"). Insurance covers the Collateral and Creditor only and not Debtor. Debtor shall pay Creditor periodic charges for Insurance ("Insurance Charges") that include: a premium that may be higher than if Debtor maintained Required Insurance separately; a finance charge of up to the implicit rate of this Agreement on any premium advances made by Creditor or Creditors agents; and billing and processing fees; each of which may generate a profit to Creditor and Creditor agents. If Debtor fails to pay billed Insurance Charges within 30 days of their due date, Creditor may pay them by applying funds paid under this Agreement or debiting Debtor's account under any previously authorized payment. At Creditor's election, in lieu of obtaining or continuing Insurance, Creditor may require Debtor to pay a quarterly additional fee up to 2% of the Collateral Cost. This fee is not only calculated with reference to additional risk and constitutes additional profit for Creditor, but represents the basis on which Creditor is willing to forbear from exercising remedies and continue this Agreement without Required Insurance. Debtor will receive no insurance coverage and will not be released from any obligations. **Creditor is not selling insurance.** Creditor will cease charging the additional fee or billing for Insurance 30 days after Debtor provides satisfactory proof of Required Insurance and compliance with this section.

**16. CREDITOR'S PAYMENT.** If Debtor fails to perform any of its obligations hereunder, Creditor may perform such obligation, and Creditor shall (a) reimburse Creditor the cost of such performance and (b) pay Creditor the service charge contemplated in paragraph 14.

**17. INDEMNITY.** Debtor shall indemnify, defend and hold Creditor harmless against any claim, action, liability or expense, including attorneys' fees and court costs, incurred by Creditor related to this Agreement. While it is not anticipated that Creditor shall have any liability for torts related to the Collateral, this indemnity covers tort proceedings including any strict liability claim, any claim under another theory related to latent or other defects and any patent, trademark or service mark infringement claim.

**18. DEFAULT.** Any of the following constitutes an event of default hereunder: (a) Debtor's failure to pay any amount hereunder, within three (3) business days of when due; (b) Debtor's default in performing any other obligation hereunder or under any agreement between Debtor and Creditor; (c) death or judicial declaration of competency of Debtor, if an individual; (d) the filing by or against Debtor of a petition under the Bankruptcy Code or under any other insolvency law or law providing for the relief of debtors, including, without limitation, a petition for reorganization, agreement or extension; (e) the making of an assignment of a substantial portion of its assets by Debtor for the benefit of creditors, appointment of a receiver or trustee for Debtor or for any Debtor's assets, institution by or against Debtor of any other type of insolvency proceeding or other proceeding contemplating settlement claims against or winding up of the affairs of Debtor, Debtor's cessation of active business affairs or the making by Debtor of a transfer of a material portion of Debtor's assets or inventory not in the ordinary course of business; (f) the occurrence of an event described in (c), (d), or (e) as to a guarantor or other surety of Debtor's obligations hereunder, (g) any misrepresentation of a material fact in connection herewith by or on behalf of Debtor; (h) Debtor's default under a lease or agreement providing financial accommodation with a third party or (i) Creditor shall in good faith deem itself insecure as a result of a material adverse change in Debtor's financial condition or otherwise.

**19. REMEDIES.** Upon the occurrence of an event of default Creditor shall have the right, options, duties and remedies of a secured party, and Debtor shall have the rights and duties of a Debtor, under the Uniform Commercial Code (regardless of whether such Code or a law similar thereto has been enacted in a jurisdiction wherein the rights or remedies are asserted) and in connection therewith Creditor may: (a) sue for and recover from Debtor the sum of: (1) all unpaid Quarterly Payments and other payments, including late charges and interest, due under this

Initials  _CM_  ►sign

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 218 of 237

Agreement then accrued, all accelerated future payments due through the last day of the term of this Agreement; (2) any and all costs or expenses paid or incurred by Creditor in connection with the repossession, holding, repair, reconditioning and subsequent sale, lease or other disposition of the Collateral, including but not limited to attorney's fees and costs, whether or not litigation is commenced; (3) all other costs or expenses paid or incurred by Creditor at any time in connection with the execution, delivery, administration, amendment and enforcement or exercise of any of the Creditor's rights and remedies under this Agreement, including, but not limited to, attorneys' fees and costs, whether or not litigation is commenced, and taxes imposed by any governmental agency; (4) any actual or anticipated loss of federal or state tax benefits to Creditor (as determined by Creditor) resulting from Debtor's default or Creditor's repossession or disposition of the Collateral; and (5) any and all other damages proximately caused by Debtor's default; (b) declare the Casualty Value or such lesser amount as may be set by law immediately due and payable with respect to any or all Items of Collateral without notice or demand to Debtor; (c) take possession of and, if deemed appropriate, render unusable any or all Items of Collateral, without demand or notice, wherever located, without any process of law and without liability for any damages occasioned by such taking of possession including damages to contents; (d) require Debtor to assemble any or all Items of Collateral at a location in reasonable proximity to their designated location hereunder, (e) upon notice to Debtor required by law, sell or otherwise dispose of any Items of Collateral, whether or not in Creditor's possession, in a commercially reasonable manner at public or private sale and apply the net proceeds of such sale after deducting all costs of such sale, including, but not limited to, costs of transportation, repossession, storage, refurbishing, advertising and brokers fees, to the obligations of Debtor hereunder with Debtor remaining liable for any deficiency and with any excess being returned to Debtor or (f) utilize any other remedy available under the Uniform Commercial code or otherwise to Creditor. All remedies are cumulative. Any sale may be adjourned by announcement at the time and place appointed for such sale without further published notice, and Creditor may, if permitted by law, bid at any such sale.

**20. LITIGATION EXPENSES.** Debtor shall pay Creditor its costs and expenses not offset as provided in paragraph 19, including repossession and attorneys' fees and court costs, incurred by Creditor in enforcing this Agreement. This obligation includes the payment of such amounts whether an action is filed and whether an action which is filed is dismissed.

**21. ASSIGNMENT.** Without the prior written consent of Creditor, Debtor shall not sell, lease or create or allow any lien other than Creditor's security interest against an Item of Collateral or assign any of Debtor's obligations hereunder. Debtor's obligations are not assignable by operation of law. Consent to any of the foregoing applies only in the given instance. Creditor may assign, pledge or otherwise transfer any of its rights **but none of its obligations** hereunder without notice to Debtor. If Debtor is given notice of any such assignment, Debtor shall acknowledge receipt thereof in writing and shall thereafter pay any amounts due hereunder as directed in the notice. The rights of an assignee to amounts due hereunder shall be free of any claim or defense Debtor may have against Creditor, and Debtor agrees not to assert against an assignee any claim or defense which Debtor may have against Creditor. Subject to the foregoing, this Agreement inures to the benefit of, and is binding upon, the heirs, legatees, personal representatives, successors and assigns of the parties.

**22. PERSONAL PROPERTY.** Debtor shall mark the Collateral or its location as requested by Creditor to indicate Creditor's security interest. As between the parties the Collateral shall at all times be deemed personal. Debtor will provide Creditor any real property waivers requested by Creditor as to the real property where an Item of Collateral is or is to be located.

**23. LATE PAYMENT.** If Debtor fails to pay any amount to be paid hereunder within three (3) days of when due, Debtor agrees to pay us (a) eighteen percent (18%) of each such late payment (to the extent permitted by law) (b) amounts Creditor pays others in connection with the collection of the payment and (c) interest on such unpaid amount from the date due until paid at the lesser of eighteen percent (18%) per annum or the highest rate permitted by applicable law. No more than a single charge under subparagraph (a) will be due in any given quarter.

**24. SECURITY INTEREST RELEASE.** At such time as there is no outstanding obligation secured hereby (including obligations under other agreements contemplated under paragraph 1), Creditor shall provide Debtor such termination statements related to the Collateral as Debtor shall reasonably request. Debtor shall be responsible for the filing of each such UCC3 termination statement at its expense.

**25. ADDITIONAL DOCUMENTS.** Debtor shall provide to Creditor such financing statements and similar documents as Creditor shall request. Debtor authorizes Creditor, where permitted by law, to make filings of such documents without Debtor's signature. Debtor shall reimburse Creditor for all search and filing fees incurred by Creditor related hereto.

**26. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Debtor will be sent to Debtor's last known address in Creditor's records for this Loan. Notice to Creditor may be sent to, Balboa Capital Corporation, 575 Anton Blvd, 12th Floor, Costa Mesa CA 92626.

**27. GENERAL. This Agreement as well as the delivery and acceptance receipt(s) for the Collateral constitute the entire agreement between the parties, and supersede all prior negotiations, written or oral, including any written offer or proposal describing and/or summarizing the terms of any proposed lease/financing.  This Agreement cannot be modified except in writing signed by the party**

Initials CM  sign

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.

EFA750K

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA    Document 2928    Filed 09/11/23    Page 219 of 237

against who enforcement is sought. **Debtor represents to Creditor that it shall not allege in any court proceeding that the parties entered into an oral modification of this Agreement, and further agrees, that in any event, any such oral modification shall not be enforceable unless it is reduced to a writing signed by the party against whom enforcement is sought.** Any waiver by Creditor must be in writing, and forbearance shall not constitute a waiver. If there is more than one Debtor named in this Agreement, the liability of each shall be joint and several. The titles to the paragraphs of this Agreement are solely for the convenience of the parties and are not an aid in the interpretation. Any provision declared invalid shall be deemed severable from the remaining provisions which shall remain in full force and effect. Time is of the essence of this Agreement. The obligations of Debtor shall survive the release of the security interest in the Collateral.

28. **DEBTOR'S WARRANTIES.** DEBTOR CERTIFIES AND WARRANTS:(a) THE FINANCIAL AND OTHER INFORMATION WHICH DEBTOR HAS SUBMITTED, OR WILL SUBMIT, TO CREDITOR IN CONNECTION WITH THIS AGREEMENT IS, OR SHALL BE AT TIME OF SUBMISSION, TRUE AND COMPLETE; (b) THIS AGREEMENT HAS BEEN DULY AUTHORIZED BY DEBTOR AND UPON EXECUTION BY DEBTOR SHALL CONSTITUTE THE LEGAL, VALID AND BINDING OBLIGATION, CONTRACT AND AGREEMENT OF DEBTOR ENFORCEABLE AGAINST DEBTOR IN ACCORDANCE WITH ITS TERMS; AND (c) EACH SHOWING PROVIDED BY DEBTOR IN CONNECTION HEREWITH MAY BE FULLY RELIED UPON BY CREDITOR NONWITHSTANDING ANY TECHNICAL DEFICIENCY IN ATTESTATION OR OTHERWISE. THE PERSON EXECUTING THIS AGREEMENT ON BEHALF OF DEBTOR WARRANTS THAT PERSON'S DUE AUTHORITY TO DO SO. DEBTOR FURTHER WARRANTS THAT EACH ITEM OF COLLATERAL SHALL AT THE TIME CREDITOR FUNDS THE TOTAL ADVANCE BE OWNED BY DEBTOR FREE AND CLEAR OF LIENS OR ENCUMBRANCES AND BE IN GOOD CONDITION AND WORKING ORDER.

29. **GOVERNING LAW (EXCLUSIVE AND MANDATORY TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws.

30. **CONSENT TO EXCLUSIVE AND MANDATORY JURISDICTION AND VENUE OF CALIFORNIA.** Debtor submits to the jurisdiction of California and agrees that any action or proceeding to enforce this Agreement, or any action or proceeding arising out of or related to this Agreement will be exclusively commenced, initiated and litigated in the California State Courts of Orange County California and/or the United States District Court for the Central District of California, Santa Ana Division. Debtor understands and agrees that (i) Creditor is located in Costa Mesa, California, (ii) Creditor makes all credit decisions from Creditor's office in Costa Mesa, California, (iii) this Agreement is made and deemed to be performed in Costa Mesa, California (that is, no binding contract will be formed until Creditor receives and accepts Debtor's signed Agreement in Costa Mesa, California) and (iv) Debtor's payments are not accepted until received by Creditor in Costa Mesa, California. Creditor, at its sole discretion, may commence any action seeking judicial intervention to recover the Collateral in any State Court where the Collateral may be physically located.

31. **COUNTERPARTS AND FACSIMILE SIGNATURES.** If this Agreement was sent electronically, Debtor hereby warrants that this Agreement has not been altered in any way. Any alteration or revision to any part of this Agreement or any attached documents will make all alterations or revisions non-binding and void. Only one counterpart of this Agreement and of each Schedule, Addenda, or Exhibit attached hereto shall bear our signature and shall be marked "Original". To the extent that any Equipment Financing Agreement, Schedule, Addenda or Exhibit hereto constitute chattel paper (as that term is defined by the Uniform Commercial Code), a security interest may only be created in this Agreement, Schedule, Addenda or Exhibit that bears our signed signature and is marked "Original". This Agreement and any documents pertaining to this Agreement may be executed in counterparts. Delivery of this Agreement bearing a facsimile signature, electronic signature, or other signature which is not in ink, shall have the same force and effect as if this document bore an original ink signature. The electronic transmission of this Agreement shall have the same force and effect as delivery of an original and shall be legally admissible under the best or original evidence rule. DEBTOR WARRANTS AND REPRESENTS THIS DOCUMENT IS A COMPLETE AND FULLY NEGOTIATED VERSION, IT CONTAINS NO BLANK SPACES AND REPRESENTS THE FINAL AND AGREED UPON TERMS PRIOR TO SIGNATURE EXECUTION.

| (CREDITOR) | (DEBTOR) |
|---|---|
| **Balboa Capital Corporation** <br> **575 Anton Blvd** <br> **12th Floor** <br> **Costa Mesa, CA 92626** | **Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio** <br> **402 Ingalls St** <br> **Santa Cruz, CA 95060** |
| By: _Amanda Rusca_ <br> Oct 31, 2022 12:20:48 PM PDT <br> Vice President <br><br> Date: 10/31/2022 | **sign** By: _Chelsey Mowbray_ <br> Oct 28, 2022 10:46:23 AM PDT <br> Name: Chelsey Mowbray <br> Title: Owner <br> Date: 10/28/2022   Home Phone: (310) 697-8881 |

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 220 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  424458-000            .  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| ALLEGRO GOLD SALON PACKAGE | | | Spa 4 Less, llc |

Copy of

Original

**Equipment Financing Agreement Number**  424458-000

**Debtor Name**  Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio

**sign**  **By:**  *Chelsey Mowbray*  ⌐Signed By:  Oct 28, 2022 10:49:46 AM PDT

**Name:**  Chelsey Mowbray
**Title:**  Owner

**Date:**  10/28/2022

**Page 1 of    1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:44 PM.



# Exhibit "20"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.



# DISBURSEMENT AUTHORIZATION

TO:  Balboa Capital Corporation

The undersigned hereby certifies that all the property described below (the "Equipment"), which is to be financed for the undersigned pursuant to the Equipment Financing Agreement No.  424458-000  dated as of  10/28/2022  , (the "Agreement") between **Balboa Capital Corporation** and the undersigned, as Debtor, has been furnished to the undersigned, that delivery and installation has been fully completed and that the Equipment is acceptable in all respects to the undersigned.

In view of the above, the undersigned hereby authorizes and requests you to pay for the Equipment in accordance with the terms of any purchase orders the undersigned may have issued for the same and/or to pay the undersigned the advance amount to the extent the undersigned has previously paid for the Equipment, as appropriate.   The undersigned acknowledges that you are relying upon this executed Delivery and Acceptance Certificate in so doing.  Debtor hereby authorizes Creditor to disburse the Total Advance as follows:

| Payee Name | Amount |
|---|---|
| Spa 4 Less, LLC | $50,808.00 |

Total Amount to be Disbursed    $50,808.00

**EQUIPMENT - SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.**

The undersigned recognizes that by executing this Delivery and Acceptance Certificate the undersigned's non-terminable installment payment obligation under the Agreement will commence.  The undersigned reaffirms its understanding that the Agreement is solely a financing agreement and that, accordingly, you have made no express warranties as to the Equipment of any other matter and that there are no related implied warranties created by law and further that, accordingly, the undersigned's obligation to pay amounts due under the Agreement will not be affected by any problems the undersigned experiences with the Equipment or any similar or dissimilar occurrence as also set forth in the Agreement.

Date Equipment accepted by Debtor (*"Acceptance Date"*)

10/31/2022                          (Date)

I hereby authorize  Chelsey Mowbray  to orally verify my/our acceptance of the equipment subject to Equipment Finance Agreement #  424458-000  in my absence

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

Debtor Name:  **Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio**

**By:**  *Chelsey Mowbray*    eSigned By: ... Oct 28, 2022 10:40:43 AM PDT
**Name:**  Chelsey Mowbray
**Title:**  Owner

**Date:**  10/28/2022

EFA302



The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:43 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 223 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number _424458-000_____.  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| ALLEGRO GOLD SALON PACKAGE | | | Spa 4 Less, llc |

Copy of

Original

**Equipment Financing Agreement Number** _424458-000_____

**Debtor Name** _Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio_____

 **By:** _Chelsey Mowbray_
**Name:** _Chelsey Mowbray_____
**Title:** _Owner_____

**Date:** _10/28/2022_____

**Page 1 of __1___**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

EFA248B





The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:44 PM.

# Exhibit "21"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 225 of 237



# PERSONAL GUARANTY

### Equipment Financing Agreement # 424458-000

**THIS PERSONAL GUARANTY CREATES SPECIFIC LEGAL OBLIGATIONS.** When we use the words **you** and **your** in this Personal Guaranty, we mean the **Personal Guarantor (s)** indicated below. When we use the words **we, us** and **our** in this Personal Guaranty, we mean **BALBOA CAPITAL CORPORATION,** its successors and assigns.

In consideration of our entering into the equipment financing agreement above ("EFA"), you unconditionally and irrevocably guarantee to us, our successors and assigns, the prompt payment and performance of any and all obligations of the Customer ("Debtor") under the EFA and any other financial transaction of any kind whatsoever, whether now existing or hereafter arising with us. You agree that this is a guaranty of payment and not of collection, and that we can proceed directly against you without first proceeding against the Debtor or against the Equipment covered by the EFA or against any collateral or security held by us. You waive all defenses and notices, including those of protest, presentment and demand. You agree that we can renew, extend or otherwise modify the terms of the EFA and you will be bound by such changes. If the Debtor defaults under the EFA, you will immediately perform all obligations of the Debtor under the EFA, including, but not limited to, paying all amounts due under the EFA. You will pay to us all expenses (including attorneys' fees) incurred by us in enforcing our rights against you or the Debtor. This is a continuing guaranty that will not be discharged or affected by your death and will bind your heirs and personal representatives. You waive any rights to seek repayment from the Debtor in the event you pay us. If more than one personal guarantor has signed this Personal Guaranty, each of you agree that your liability is joint and several. You authorize us or any of our affiliates to obtain credit bureau reports regarding your personal credit, and make other credit inquiries that we determine are necessary.

**THIS PERSONAL GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. YOU CONSENT TO THE JURISDICTION OF THE COUNTY OF ORANGE IN THE STATE OF CALIFORNIA. YOU HEREBY EXPRESSLY WAIVE THE RIGHT TO TRIAL BY JURY.**

**"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."**

**sign** X   Signed By: _Chelsey Mowbray_   Oct 28, 2022 10:48:06 AM PDT

**Chelsey Mowbray**
**Name**

10/28/2022
**Date**

514 El Dorado St
Vallejo, CA 94590
**Home Street Address, City, State, Zip Code**

████████
**Social Security Number**

(310) 697-8881
**Phone Number**

EFA251



# Exhibit "22"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 227 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# Delivery and Acceptance Certificate

**Prior to Delivery**

**Equipment Finance Agreement Number:** __424458-000__

**Name and Address of Debtor:** Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio
402 Ingalls St
Santa Cruz, CA 95060

**Equipment Description:** ALLEGRO GOLD SALON PACKAGE

**Equipment Location:** 402 Ingalls Street Santa Cruz, CA 95060

**Delivery and Acceptance Certification:**

Debtor, by its signature below, acknowledges and confirms to Balboa Capital Corporation. that (i) Debtor has irrevocably accepted all of the personal property described above (the "Equipment") as of the Acceptance Date set forth below and agrees that the Equipment is now subject to the agreement referred to above,(ii) from and after the Acceptance Date set forth below Debtor shall bear all risk of loss or damage to the Equipment and shall insure the Equipment in accordance with the terms of the Equipment Finance Agreement (including while in transit from the supplier, if not yet received at its final location); and (iii) Debtor's obligations under the Equipment Finance Agreement are absolute and unconditional. In reliance upon this certificate, Balboa Capital Corporation will advance funds on account of the Equipment and Debtor shall be fully obligated under the Equipment Finance Agreement even if Debtor has not inspected the Equipment or if the Equipment has not been delivered to its intended final location. Debtor's sole claim in the event of non-delivery shall be against the supplier of the Equipment and Debtor shall have no claim against Balboa Capital Corporation.

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

Acceptance Date: __10/28/2022__

Debtor: __Chelsey Mowbray, a sole proprietor DBA Hair 360 Stud__

sign ➤ _Chelsey Mowbray_ Oct 28, 2022 10:48:37 AM PDT

By **Chelsey Mowbray**

__Owner__

Title

The original document is owned by Balboa Capital Corporation and this copy was created on Oct 31, 2022 12:24:44 PM.

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 228 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

# EXHIBIT 'A'
## EQUIPMENT DESCRIPTION

The following invoice(s) are referenced, and hereby incorporated, for the purpose of describing the equipment subject to Equipment Financing Agreement ("Agreement") Number  424458-000 _____.  By signing below, I, the debtor, acknowledge that I choose to finance the equipment listed on the invoice(s) per the payment schedule and the terms and conditions set out in the agreement, which is the governing document to this equipment financing  regardless of the price and terms (if any) indicated on the invoice(s).

| EQUIPMENT DESCRIPTION | INVOICE # | INVOICE DATE | VENDOR NAME |
|---|---|---|---|
| See Invoices attached hereto as exhibit A1 and incorporated herein by this reference. | | | |
| ALLEGRO GOLD SALON PACKAGE | | | Spa 4 Less, llc |

Copy of Original

**Equipment Financing Agreement Number**  424458-000 _____

**Debtor Name**  Chelsey Mowbray, a sole proprietor DBA Hair 360 Studio _____

 **By:** [Signed By: *Chelsey Mowbray*  Oct 28, 2022 10:45:46 AM PDT]
**Name:**  Chelsey Mowbray _____
**Title:**  Owner _____

**Date:**  10/28/2022 _____

**Page 1 of    1**

"Delivery of this document bearing a facsimile signature or signatures shall have the same force and effect as if the document bore an original signature."

 EFA248B



# Exhibit "23"

Copy of the Electronic Original® document managed by the eCore® On Demand (EOD™) Service.

Case 1:23-mi-99999-UNA   Document 2928   Filed 09/11/23   Page 230 of 237

**BALBOA CAPITAL**
A DIVISION OF AMERIS BANK

**Addendum to Equipment Finance Agreement and Debtor Acceptance and Authorization for Funding Prior to Delivery/Installation of Equipment**

This is an addendum (the "Addendum") to Equipment Finance Agreement No. _____ (the "Agreement"). Entered into between _____ ("You", "your", or Debtor") and _____ ("Us", "We", "Our", or "Creditor").

A.   You negotiated with your supplier(s), _____, _____, _____, ("Supplier"), to provide the equipment (the "Equipment") described in the Equipment Finance Agreement.  Per your request, we will advance all or a substantial portion of the total cost of the Equipment (the "Equipment Payment") to Supplier.  We will advance the Equipment Payment to Supplier, however, only after confirming herein that You have made an unconditional commitment to fulfill all payment and non-payment Obligations in the Agreement and this Addendum.

B.   We will rely on Your Obligations under the Agreement and this Addendum in making the Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement.

Each party hereby agrees that the Agreement is amended as follows:

1.   Although the Equipment has not been delivered to You, You hereby request and authorize us to advance the Equipment Payment to Supplier.

2.   To induce Us to make any Equipment Payment to Supplier prior to Your receipt and acceptance of the Equipment under the Agreement, YOU AGREE THAT YOUR OBLIGATIONS UNDER THE AGREEMENT HEREBY IMMEDIATELY COMMENCE and that the first payment under the Agreement will be due and owing on the date indicated on Our initial invoice to You.  Subsequent Rent will be due and owing on the same date thereafter as reflected in Our invoices.  YOU FURTHER AGREE THAT THE AGREEMENT IS NON-CANCELABLE AND THAT YOU WILL TIMELY PERFORM ALL OF YOUR OBLIGATIONS UNDER THIS AGREEMENT, INCLUDING MAKING THE RENT PAYMENTS , WITHOUT CLAIM OF SET-OFF, EVEN IF: (a) SOME OR ALL OF THE EQUIPMENT IS NOT DELIVERED AND/OR INSTALLED; (b) THE EQUIPMENT IS DELIVERED BUT NOT ON A TIMELY BASIS OR NOT INSTALLED ON A TIMELY BASIS; AND/OR (C) THE EQUIPMENT DOES NOT, AT THE TIME OF DELIVERY OR THEREAFTER, OPERATE PROPERLY OR THERE IS ANY OTHER NONCONFORMANCE IN THE EQUIPMENT OR IN ANY SERVICE.  You further agree that you will have no claim or defense against Us and that we shall be entitled to enforce the Agreement against You.

3.   The sections of the Agreement governing acceptance of the Equipment and the timing of payments, to the extent inconsistent with the Addendum, are hereby amended to be consistent with paragraphs 1 and 2 above.  The original of this Addendum shall be that copy which bears a facsimile or original of Your signature and which bears Our original signature.  All other terms and conditions of the Agreement are hereby reaffirmed.

| Creditor | | Debtor |
|---|---|---|
| By: _Amanda Rusca_ | **sign** | By: _Chelsey Mowbray_ |
| Signature | | Signature |
| Vice President | | |
| Title of Signer | | Name and Title of Signer |
| Date Accepted: 10/31/2022 | | Date: 10/28/2022 |

eSigned By: ... Oct 31, 2022 12:20:56 PM PDT
eSigned By: ... Oct 28, 2022 10:48:15 AM PDT

<u>UNCONDITIONAL GUARANTY</u>

The undersigned jointly and severally if more than one, unconditionally guarantee(s) that I will timely perform all obligations under the above referenced Agreement.  The undersigned also waive(s) any notification if the Debtor is in default and consent(s) to any extensions or modifications granted to the Debtor In the event of default, the undersigned will immediately pay all sums due under the terms of the Agreement without requiring Creditor to proceed against Debtor, any other party or the Equipment.   The undersigned consents to personal jurisdiction, venue, choice of law and jury trial waiver as stated in the Agreement and agrees to pay all costs and expenses, including attorney's fees, incurred by Creditor related to this guaranty and the Agreement.

| Guarantor | | Guarantor |
|---|---|---|
| **sign** X: _Chelsey Mowbray_ ,Individually | | X: _____ ,Individually |
| Signature | | Signature |
| Date: 10/28/2022 | | Date: _____ |

eSigned By: ... Oct 28, 2022 10:48:15 AM PDT

| Guarantor | | |
|---|---|---|
| X: _____ ,Individually | | Date: _____ |
| Signature | | |



ECEFA843D

# Exhibit "24"



**Spa4Less**

3070 Business Park Drive Suite H-I
 Norcross, GA 30071
wwww.spa4less.com
admin@spa4less.com

**INVOICE**
INV0782

**DATE**
10/24/2022

**DUE**
On Receipt

**BALANCE DUE**
USD $50,808.00

---

**BILL TO**

**Chelsey Mowbray, a sole proprietor - HAIR 360 STUDIO**

402 Ingalls Street
Santa Cruz, CA 95060
(631) 808-5918
hair360studio@gmail.com

**SHIP TO**

**Chelsey Mowbray, a sole proprietor - HAIR 360 STUDIO**

402 Ingalls Street
Santa Cruz, CA 95060
(631) 808-5918
hair360studio@gmail.com

---

| DESCRIPTION | RATE | QTY | AMOUNT |
|---|---:|---:|---:|
| **ALLEGRO GOLD SALON PACKAGE**<br>This package contains:<br>4 x Aria Styling Chair<br>4 x Allegro Styling Station<br>2 x Aria Dryer & Chair Combo<br>2 x Lexus Backwash Unit<br>1 x Child Booster Seat | $7,599.00 | 2 | $15,198.00 |
| KATE DRYER & CHAIR COMBOS | $1,750.00 | 2 | $3,500.00 |
| COLLINS ZADA STYLING VANITY & MIRROR W/ LED LIGHTS | $1,895.00 | 8 | $15,160.00 |
| COLLINS 6807 + 6808 BRIGGS BARBER STATION W/ SOFFIT | $1,800.00 | 3 | $5,400.00 |
| COLLINS 110660 SO RECEPTION DESK W/ BACK-LIT PANEL | $6,500.00 | 1 | $6,500.00 |
| 3' X 5' RHINO VEGAS HEEL-PROOF MAT W/ ROUND CUT | $350.00 | 8 | $2,800.00 |
| **Standard Shipping**<br>7-10 Business Day (Carrier DHL) | $2,250.00 | 1 | $2,250.00 |

---

## Payment Info

**100% funds upfront**

**PAYMENT INSTRUCTIONS**

Spa 4 Less - JT Milbry
Account number:
Routing number:
Business Address: 3699 Lenox Rd NE, Atlanta, GA

**TOTAL**  $50,808.00

**BALANCE DUE**  **USD $50,808.00**

# Exhibit "25"

James H. Moore, Jr.
Luanne Clarke *
Willis A. DuVall, Jr.
W. Ralph Rodgers, Jr.
David A. Garland *(TN)
C. Jason Willcox
Kevin C. Gaulke **
D. Bradley Folsom
Wallace D. Bonner, Jr.
Matthew E. Eutzler *(FL)
R. Lee Brown, Jr.
M. Drew DeMott *(SC)
Michael Eric Hooper
James H. Edge
Stephan A. Ray *(AL)
Wheeler H. Bryant *(FL, SC)
Jessica Crannis
Jamie L. Bratcher
Lindsay Hudgins
Jared Koebble
Avery H. Hayes

+   Additional Licenses
*   Certified Mediator/Arbitrator
**  Certified Mediator



Atlanta Office
3350 Riverwood Parkway SE
Suite 1900
Atlanta, Georgia 30339
(229) 894-0582

Savannah Office
SunTrust Building
33 Bull Street, Suite 203 (31401)
Post Office Box 8427
Savannah, Georgia 31412
(912) 234-0995

Valdosta Office
2611 North Patterson Street (31602)
Post Office Box 4540
Valdosta, Georgia 31604-4540
(229) 245-7823

Tifton Office
T. Mark Sandifer, Partner
3300 Fulwood Road (31794)
Post Office Box 7170
Tifton, Georgia 31793
(229) 382-0037

2829 Old Dawson Road (31707)
Post Office Drawer 71727
Albany, Georgia 31708-1727
Telephone (229) 888-3338
Facsimile (229) 888-1191
Real Estate Fax (229) 888-2199
E-mail: dgarland@mcdr-law.com

Reply To:
Albany Office

July 31, 2023

**VIA CERTIFIED MAIL RETURN RECEIPT REQUESTED AND REGULAR U.S. MAIL**

Mr. Jamaal Terrence Milbry              **Return Receipt No. 9414836105440147941018**
3699 Lennox Road, NE
Atlanta, Georgia 30305

Mr. Jamaal Terrence Milbry              **Return Receipt No. 9414836105440147971343**
283 North Colonial Homes Circle, NW
Atlanta, Georgia 30309

Spa 4 Less, LLC.                        **Return Receipt No. 9414836105440148017712**
c/o Ivory Johnson
3070 Business Park Drive
Suite G
Norcross, Georgia 30071

Spa 4 Less, LLC.                        **Return Receipt No. 9414836105440148041212**
3300 Roswell Road, NE
Unit 4105
Atlanta, Georgia 30305

Re:     Spa 4 Less, LLC. re:  Robin Russell, d/b/a Prestige Beauty Spa; Bella Dream Body,
        LLC.; Susan Kline, Inc.; and Chelsey Mowbray, as sole proprietor-Hair 360 Studio.
        MCDR File No.:  22337.009

Dear Mr. Milbry and Mr. Johnson:

    We represent Ameris Bank, by and through its division Balboa Capital Corporation.  We have been
engaged to investigate and recover certain funds that were disbursed to you as a result Mr. Milbry and Spa 4
Less presenting Equipment Finance Agreements and Invoices on behalf of Spa 4 Less.

Robin Russell

On or about August 30, 2022, Mr. Milbry and Spa 4 Less presented an Equipment Finance Agreement and an Invoice from Spa 4 Less describing the debtor as Robin Russell, a sole proprietorship d/b/a Prestige Beauty Spa. In connection with the Equipment Finance Agreement, Spa 4 Less and Mr. Milbry presented to Balboa Capital Corporation an invoice for certain equipment, requesting payment of $36,350.00. Based upon your representation that Debtor's signature was authentic and that you delivered equipment described in the invoice, Balboa Capital Corporation disbursed $36,350.00 to you via ACH, to an account with Piermont Bank. Subsequently, Balboa Capital Corporation determined that Debtor's signature was forged and that you did not deliver the equipment described in the invoice. Balboa Capital Corporation hereby demands that you refund the entire $36,350.00 to Balboa Capital Corporation on or before Monday, August 7, 2023.

Bella Dream Body:

On or about September 22, 2022, Mr. Milbry and Spa 4 Less presented an Equipment Finance Agreement and an Invoice from Spa 4 Less describing the debtor as Bella Dream Body, LLC. In connection with the Equipment Finance Agreement, Spa 4 Less and Mr. Milbry presented to Balboa Capital Corporation an invoice for certain equipment, requesting payment of $49,687.00. Based upon your representation that Debtor's signature was authentic and that you delivered the equipment described in the invoice, Balboa Capital Corporation disbursed $49,687.00 to you via ACH, to an account with Piermont Bank. Subsequently, Balboa Capital Corporation determined that Debtor's signature was forged and that you did not deliver the equipment described in the invoice. Balboa Capital Corporation hereby demands that you refund the entire $49,687.00 to Balboa Capital Corporation on or before Monday, August 7, 2023.

Susan Kline, Inc:

On or about October 19, 2022, Mr. Milbry and Spa 4 Less presented an Equipment Finance Agreement and an Invoice from Spa 4 Less describing the debtor as Susan Kline, Inc. In connection with the Equipment Finance Agreement, Spa 4 Less and Mr. Milbry presented to Balboa Capital Corporation an invoice for certain equipment, requesting payment of $80,532.73. Based upon your representation that Debtor's signature was authentic and that you delivered the equipment described in the invoice, Balboa Capital Corporation disbursed $80,532.73 to you via ACH, to an account with Piermont Bank. Subsequently, Balboa Capital Corporation determined that Debtor's signature was forged and that you did not deliver the equipment described in the invoice. Balboa Capital Corporation hereby demands that you refund the entire $80,532.73 to Balboa Capital Corporation on or before Monday, August 7, 2023.

Chelsey Mowbray:

On or about October 28, 2022, Mr. Milbry and Spa 4 Less presented an Equipment Finance Agreement and an Invoice from Spa 4 Less describing the debtor as Chelsey Mowbray, a sole proprietorship d/b/a Hair 360 Studio. In connection with the Equipment Finance Agreement, Spa 4 Less and Mr. Milbry presented to Balboa Capital Corporation an invoice for certain equipment, requesting payment of $50,808.00. Based upon your representation that Debtor's signature was authentic and that you delivered the equipment described in the invoice, Balboa Capital Corporation disbursed $50,808.00 to you via ACH, to an account with Piermont Bank. Subsequently, Balboa Capital Corporation determined that Debtor's signature was forged and that you did not deliver the equipment described in the invoice. Balboa Capital Corporation hereby demands that you refund the entire $50,808.00 to Balboa Capital Corporation on or before Monday, August 7, 2023.

If you do not comply with this demand, Ameris Bank, through its division Balboa Capital Corporation, has authorized us to pursue all means necessary to collect the funds.

PLEASE ACT ACCORDINGLY.

Sincerely,

**MOORE, CLARKE, DuVALL & RODGERS, P.C.**

**David A. Garland**
*Attorneys for Ameris Bank, through its division*
*Balboa Capital Corporation*

DAG/tsl

Cc: James J. Grant
     Michelle Chiongson
     Marissa Poulos



**Proof of Delivery
(Electronic)**

Date:  8/2/2023

Client Name:  Moore, Clarke, DuVall & Rodgers, P.C.

Certified with RR(E) item number 9414836105440147971343,
addressed to Jamaal Terrence Milbry was designated Delivered, Left
with Individual at 1:43 PM on August 02, 2023.

The item number, time, date, city, state, and zip code is a true extract of
information provided by the United States Postal Service to
SimpleCertifiedMail.com.

Jamaal Terrence Milbry
283 North Colonial Home Circle, NW
Atlanta, GA 30309
Reference #: 22337.009

The above information is for the sole use of SimpleCertifiedMail.com
clients and represents information provided by the United States Postal
Service.