IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMIE LOUDERMILK, | Civil Action No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| RACETRAC PETROLEUM A/K/A RACETRAC, INC., | |
| Defendant. | |

## **COMPLAINT FOR DAMAGES**

COMES NOW, Amie Loudermilk ("Plaintiff" or "Ms. Loudermilk"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## **NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant RaceTrac Petroleum a/k/a RaceTrac, Inc. ("Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA"), and Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII, and the ADA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on April 20, 2023; the EEOC issued its Notice of Right to Sue on July 11, 2023.

5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## PARTIES

6.

Plaintiff is a Female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has conducted business within this District.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4). During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5). During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the Title VII. Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b).

9.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Corporate Creations Network Inc., located at 2985 Gordy Parkway, 1st Floor, Marietta, GA, 30066, USA.

3

## FACTUAL ALLEGATIONS

### 10.

On or about July 6, 2022, Ms. Loudermilk began working for Defendant as an Associate in the Jasper location.

### 11.

On or about August 2022, Ms. Loudermilk transferred to the Macedonia location.

### 12.

On or about December 1, 2022, Ms. Loudermilk informed the General Manager, Royce Patton ("Patton") that she was pregnant and that she would no longer be able to work the overnight shift.

### 13.

During the same conversation, Ms. Loudermilk also informed Patton that she would no longer be able to lift heavy objects.

### 14.

Patton agreed that Ms. Loudermilk should no longer lift heavy objects because of her pregnancy.

### 15.

A week or so later, Ms. Loudermilk's doctor placed her on several restrictions, including no squatting.

16.

Patton told Ms. Loudermilk to contact Human Resources' ("HR") Benefits department regarding the restrictions.

17.

Ms. Loudermilk was unable to reach HR via telephone, so the Operations Supervisor Bennett Steph ("Steph") instructed her to send an email from the company computer.

18.

Ms. Loudermilk sent an email informing HR of her pregnancy and restrictions. She copied herself, Steph and Patton in the email.

19.

Ms. Loudermilk was told to contact Human Resources again, a month or so before her due date.

20.

During the same time, Ms. Loudermilk reported that a co-worker would make statements about her weight and state that her baby would be born autistic.

21.

Ms. Loudermilk reported the statements to her manager, Giovanni LNU. Giovanni told Ms. Loudermilk that she would not report it to Patton.

22.

Ms. Loudermilk reported the employee to Patton and he informed her that he would speak to the employee.

23.

In response, the employee was made to apologize to Ms. Loudermilk and then the same employee was promoted to an entry-level shift manager position a few days later.

24.

As Ms. Loudermilk's pregnancy progressed, she asked to no longer be scheduled to work in the kitchen alone.

25.

Management informed Ms. Loudermilk that they could not afford to do so. However, Ms. Loudermilk knew of several other occasions that employees would receive help.

26.

On or about March 15, 2023, Ms. Loudermilk began bleeding and would get lightheaded at work.

27.

Ms. Loudermilk informed Patton, and with a negative attitude, he instructed her to go to the back because "they", meaning him and Ms. Loudermilk, needed to talk.

28.

Patton told Ms. Loudermilk that she needed to start medical leave because she could not leave work otherwise.

29.

Additionally, Patton told Ms. Loudermilk that his "bosses had been on his ass," and if Ms. Loudermilk "did not do something" he was going to have to fire her for leaving.

30.

Patton also told Ms. Loudermilk that she had not been communicating with him or providing medical excuses, which was not true.

31.

When Ms. Loudermilk tried to give Patton her medical documentation, he refused to take them or even look at them.

32.

Ms. Loudermilk had previously provided several medical notes and texted Patton on several occasions regarding her attendance.

33.

Because Ms. Loudermilk was concerned about her health and the health of her unborn child, she left work and called HR. She was directed to someone in ethics.

34.

On or around March 17, 2023, HR called Ms. Loudermilk and left a voicemail.

35.

Ms. Loudermilk returned the call and spoke with Rebecca LNU. Rebecca told Ms. Loudermilk to take medical leave, or she could go to a different store.

36.

Defendant then removed Ms. Loudermilk from the schedule.

37.

On or about March 24, 2023, Sun Life Insurance called Ms. Loudermilk regarding medical leave.

38.

Defendant was forcing Ms. Loudermilk to take leave and to sign off on it.

39.

Sun Life Insurance instructed Ms. Loudermilk to take the paperwork to her doctor to sign stating that she needed unpaid medical leave as an accommodation.

40.

Rebecca later asked Ms. Loudermilk for medical documents, and Ms. Loudermilk gave her hospital paperwork. She informed Ms. Loudermilk that she needed to get her medical records from her doctor.

41.

On or about March 30, 2023, Ms. Loudermilk sent Rebecca her doctor's notes showing her restrictions.

42.

Afterward, Rebecca stopped communicating with Ms. Loudermilk.

43.

However, Sun Life Insurance told Ms. Loudermilk that she could return to work.

44.

Ms. Loudermilk informed Sun Life Insurance that she would be able to return to work.

45.

Sun Life Insurance responded that they needed to speak with Ms. Loudermilk's managers before she could return and asked for another date she could return to work.

46.

After some time, Sun Life Insurance informed Ms. Loudermilk that she would be able to return on April 3, 2023.

47.

On April 3, Sun Life Insurance called Ms. Loudermilk inquiring if Ms. Loudermilk returned to work.

48.

Sun Life Insurance also stated that they would contact Defendant's HR and management.

49.

On or about April 4, Ms. Loudermilk called and emailed Sun Life Insurance, but she did not receive a response and was not placed on the schedule.

50.

Defendant placed Ms. Loudermilk on an involuntary unpaid medical leave indefinitely and she has not worked since March 15, 2023.

51.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Ms. Loudermilk was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e., pregnant woman.

52.

Ms. Loudermilk was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

53.

Ms. Loudermilk requested a reasonable accommodation of her disabilities.

54.

Specifically, Ms. Loudermilk requested no heavy lifting, no squatting, and assistance in the kitchen.

55.

Defendant failed to engage in the interactive process with Ms. Loudermilk, even though doing so would not have been an undue hardship.

56.

Defendant discriminated against Ms. Loudermilk because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity.

57.

But for Ms. Loudermilk's disability status and/or request for a reasonable accommodation of the same, she would not have suffered the adverse employment action.

58.

Ms. Loudermilk was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for her disability.

## CLAIMS FOR RELIEF

## COUNT I:  FAILURE TO ACCOMMODATE IN VIOLATION OF ADA

59.

Plaintiff re-alleges paragraphs 10-58 as if set forth fully herein.

60.

Plaintiff has a physical impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

61.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

62.

Defendant was aware of Plaintiff's disability.

63.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

64.

Plaintiff was able to perform the essential functions of her job with a reasonable accommodation.

65.

Plaintiff requested that Defendant accommodate her disability with no heavy lifting, no squatting, and assistance in the kitchen.

66.

Upon receiving Plaintiff's request for an accommodation, Defendant failed to meaningfully engage in the interactive process with Plaintiff regarding her request for a reasonable accommodation of her disability.

67.

Defendant refused to provide Plaintiff with reasonable accommodations, even though to do so would not impose an undue hardship.

68.

By refusing to accommodate Plaintiff, Defendant violated the ADA, as amended.

69.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's failure to accommodate Plaintiff's disability was undertaken in bad faith.

70.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

71.

As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

72.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

73.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADA, as amended.

74.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

75.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  PREGNANCY DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT / TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

76.

Plaintiff re-alleges paragraphs 10-58 as if set forth fully herein.

77.

When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

78.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment because of her pregnancy constitutes unlawful discrimination on the

basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

79.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

80.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her pregnancy.

81.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made victims of acts that have adversely affected her psychological and physical well-being.

82.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

16

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

Respectfully submitted this 11th day of September 2023.

**BARRETT & FARAHANY**

s/ *Ianna O. Richardson*

Ianna O. Richardson
Georgia Bar No. 655153

*Counsel for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
ianna@justiceatwork.com