## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JOHN JORDAN,<br><br>     Plaintiff,<br><br>v.<br><br>FREEDOM MORTGAGE<br>CORPORATION,<br><br>     Defendant. | CIVIL ACTION FILE<br>NO. |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Freedom Mortgage Corporation, through undersigned counsel, hereby removes this case from the Superior Court of Gwinnett County, State of Georgia, to the United States District Court for the Northern District of Georgia. Removal is warranted under 28 U.S.C. § 1441(b) because this is a diversity action over which this Court has original jurisdiction under 28 U.S.C. § 1332.

1.      Freedom Mortgage Corporation is the sole defendant in a civil action filed in, and presently pending before, the Superior Court of Gwinnett County, State of Georgia, styled *John Jordan v. Freedom Mortgage Corporation*, Case No. 23-A-06619-2 (the "State Court Action").

2.      Plaintiff John Jordan ("Plaintiff") contends Freedom Mortgage Corporation ("Defendant" or "Freedom") breached its contract with the Plaintiff by failing to deliver insurance proceeds to the Plaintiff. *See* Complaint ("Compl."). Plaintiff further alleges Freedom breached its fiduciary duty by failing to deliver the

insurance proceeds to the Plaintiff despite knowledge that said Plaintiff required those proceeds to re-build his home. *See* Compl. p. 11.

Based on the alleged facts, Plaintiff asserts claims against Freedom for breach of contract, breach of fiduciary duty, punitive damages, and attorney's fees and expenses of litigation *See* Compl. p. 8-13.

3.      As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. §1441 because Freedom has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action under 28 U.S.C. §1332.

4.      Plaintiff is an individual domiciled and residing in the State of Georgia based on his Complaint and, therefore, is a citizen of the State of Georgia for purposes of determining diversity. *See* Compl., ¶ 1.

5.      Freedom is a corporation organized and existing under the laws of the state of New Jersey with its principal place of business in Boca Raton, Florida. *See* Compl., ¶ 2.

6.      Complete diversity exists between Plaintiff and Freedom, thus satisfying 28 U.S.C. §1332(a)(1).

7.      It is apparent on the face of the Complaint that Plaintiff seeks an amount in controversy in excess of $75,000, exclusive of costs and interest. A removing defendant need only show that the amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000. *Huff v. Alfa Ins. Corp*., No. 1:09-CV-584, 2009 U.S. Dist. LEXIS 131639 (N.D. Ga. June 25, 2009). Plaintiff seeks compensatory and general damages in the amount of $40,000. *See* Compl. ¶ 54. Punitive and exemplary damages in the amount of $250,000. See Compl. ¶ 58. Analyzing the Complaint in a light most favorable to Plaintiff while not admitting liability for any amount, the amount of damages alleged to be in controversy for Plaintiff will reasonably exceed $75,000.00, exclusive of interests and costs.

8.      This Notice of Removal is timely pursuant to 28 U.S.C. §1446(b), which allows a defendant to remove a case within thirty days of receipt of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. Freedom was served with Plaintiff's Complaint on August 14, 2023.

9.      Under 28 U.S.C. §1441(a), venue for this action is proper in this Court, which is the district embracing the place where the state action is pending.

10.     In compliance with 28 U.S.C. §1446(a), a copy of all process, pleadings, and orders served upon Freedom or received by Freedom's counsel in this action–the Complaint, Summons, and Civil Case Cover Sheet—are attached at Exhibits A, B, and C.

11.     Written notice of the filing of this Notice of Removal is being served on Plaintiff's counsel.

12.     Under 28 U.S.C. §1446(d), a copy of this Notice of Removal is being served on Plaintiff's counsel and a copy is being filed with the Clerk of the Superior Court of Gwinnett County, State of Georgia.

13.     Defendant denies the allegations contained in Plaintiff's Complaint. Defendant files this Notice of Removal without waiving any defenses, objections, exceptions, or obligations that may exist in its favor in either state or federal court.

14.     Further, in making the assertions in this Notice of Removal, Defendant does not concede in any way that Plaintiff has alleged causes of action upon which relief can be granted, that the allegations or inferences drawn therefrom are accurate, or that Plaintiff is entitled to recover any amounts sought.

15.     Defendant further reserves the right to amend or supplement this Notice of Removal as appropriate.

ACCORDINGLY, Defendant respectfully requests that this action be removed to the United States District Court for the Northern District of Georgia and gives notice to Plaintiff and to the Superior Court of Gwinnett County, State of

Georgia, that the State Court Action shall proceed no further pursuant to 28 U.S.C. §1446(d).

Respectfully submitted this 12th day of September, 2023.

/s/ J. Kelsey Grodzicki
**J. KELSEY GRODZICKI**
Georgia Bar No. 134259

*Counsel for Freedom Mortgage Corporation*

**WINTER CAPRIOLA ZENNER, LLC**
One Ameris Center
3490 Piedmont Road NE, Suite 800
Atlanta, Georgia 30305
(404) 844-5673 (phone)
kgrodzicki@wczlaw.com

6

## CERTIFICATE OF SERVICE AND COMPLIANCE WITH
## LOCAL RULE 7.1

I hereby certify that this document complies with the page limit and font and point selections as set forth in Local Rule 7.1. I further certify that a copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system and served upon the following by first class United States Mail, properly addressed and postage prepaid, on this day:

>Stephen A. Yaklin
>Jordan P. Aldridge
>King, Yaklin & Wilkins, LLP
>192 Anderson Street, Suite 125
>Marietta, Georgia 30060

This day, September 12, 2023.

/s/ J. Kelsey Grodzicki
**J. KELSEY GRODZICKI**
Georgia Bar No. 134259

*Counsel for Freedom Mortgage Corporation*

**WINTER CAPRIOLA ZENNER, LLC**
One Ameris Center
3490 Piedmont Road NE, Suite 800
Atlanta, Georgia 30305
(404) 844-5673 (phone)
kgrodzicki@wczlaw.com

# Exhibit A

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

**23-A-06619-2**

8/2/2023 4:46 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **JOHN JORDAN,** | ) | |
| | ) | Civil Action File Number |
| Plaintiff, | ) | |
| | ) | 23-A-06619-2 |
| v. | ) | |
| | ) | |
| **FREEDOM MORTGAGE CORPORATION,** | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DAMAGES

**COMES NOW,** John Jordan, Plaintiff in the above-styled action, and files this, his

Complaint for Damages against Freedom Mortgage Corporation, showing this Honorable Court as

follows:

## PARTIES, JURISDICTION, AND VENUE

1.

The Plaintiff John Jordan is an individual and resident of the State of Georgia.

2.

The Defendant Freedom Mortgage Corporation is a New Jersey Corporation, authorized to

transact business in the State of Georgia. Defendant Freedom Mortgage Corporation may be served

with process on its Registered Agent, same being CT Corporation System at 289 S Culver St.,

Lawrenceville, Georgia 30046, or alternatively, in any manner authorized pursuant to Georgia law.

3.

The Defendant Freedom Mortgage Corporation is subject to jurisdiction of this Court, and

venue is proper.

## BACKGROUND FACTS REGARDING THE SECURITY DEED
## RECORDED AGAINST THE PROPERTY

4.

On October 27, 2014, the Plaintiff John Jordan purchased that certain improved real property in Fulton County, Georgia commonly known as 650 Chantress Court, Alpharetta, Georgia 30004 (hereinafter referred to as the "Property").

5.

In connection with his purchase of the Property, the Plaintiff John Jordan granted a Security Deed to Non-Party Primelending. A true and correct copy of said Security Deed dated October 27, 2014 is attached hereto as Plaintiff's Exhibit "A."

6.

The Security Deed was then assigned by Non-Party Primelending to Non-Party Roundpoint Mortgage Servicing Corp. on or about October 20, 2020. A true and correct copy of the Corporate Assignment evidencing said assignment is attached hereto as Plaintiff's Exhibit "B."

7.

Also on October 20, 2020, Non-Party Roundpoint Mortgage Servicing Corp. assigned the Security Deed to Defendant Freedom Mortgage Corporation. A true and correct copy of the Corporate Assignment evidencing said assignment is attached hereto as Plaintiff's Exhibit "C."

8.

On January 4, 2023, the Plaintiff John Jordan sold the Property, and satisfied the outstanding balance of the indebtedness secured by the Security Deed.

9.

Following the sale of the Property, Defendant Freedom Mortgage Corporation filed a Cancellation of Deed to Secure Debt on February 27, 2023, a true and correct copy of which is attached hereto as Plaintiff's Exhibit "D."

## **BACKGROUND FACTS REGARDING THE CATOSTROPHIC FIRE AT THE PROPERTY AND FREEDOM MORTGAGE CORPORATION'S BREACHES**

10.

On or about July 18, 2020, which was a few months before the assignment of the Security Deed to Defendant Freedom Mortgage Corporation, the Plaintiff John Jordan suffered a catastrophic fire at the Property which severely damaged his residence.

11.

The Plaintiff John Jordan reported the fire loss to his insurance company, Non-Party Travelers Personal Insurance Company.

12.

The Plaintiff John Jordan also engaged a builder, Non-Party Parker Young Construction, to reconstruct his home.

13.

Non-Party Travelers Personal Insurance Company delivered the total of $144,530.10 via multiple payments to the Plaintiff John Jordan via two-party checks payable to said Plaintiff and Defendant Freedom Mortgage Corporation.

14.

Plaintiff John Jordan then delivered those two-party checks to Defendant Freedom Mortgage Corporation, as required by said Defendant.

15.

Plaintiff John Jordan delivered those two-party checks with the expectation that Defendant Freedom Mortgage Corporation would process same and either return the proceeds to him or to his builder to cover the costs of the re-construction of the residence.

16.

Defendant Freedom Mortgage Corporation did return and deliver some, but not all payments to Plaintiff John Jordan.

17.

As of May 10, 2022 (nearly two years following the fire), Plaintiff John Jordan's builder had performed significant work rebuilding the residence. However, as of that date, Defendant Freedom Mortgage Corporation had only delivered to said Plaintiff a total of $56,000.00, via a $40,000.00 check on July 2, 2021 and via a $16,000.00 check on September 27, 2021.

18.

Also as of May 10, 2022, Non-Party Travelers Personal Insurance Company and Plaintiff John Jordan had delivered a total of $144,749.00 to Defendant Freedom Mortgage Corporation, meaning that as of that date, said Defendant was still holding $88,749.00 of Plaintiff John Jordan's insurance proceeds which should have been used to cover re-construction costs.

19.

However, Defendant Freedom Mortgage Corporation unjustifiability refused to turn over sufficient funds to cover the re-construction costs.

20.

Prior to May 10, 2022, Plaintiff John Jordan's builder had filed a lien on the Property for unpaid invoices concerning its rebuild of the residence. The builder also refused to continue forward with re-construction until payment was made.

21.

On multiple occasions, the Plaintiff John Jordan notified the Defendant Freedom Mortgage Corporation of his builder's lien and its demand for payment. However, as of May 10, 2022, the Defendant Freedom Mortgage Corporation had failed to turn over the funds if was obligated to turn over.

22.

As particular instances of the Plaintiff John Jordan's notice and demand to Defendant Freedom Mortgage Corporation, counsel for said Plaintiff delivered demand letters to said Defendant on February 18, 2022 and April 13, 2022, therein demanding the immediate payment of funds to cover outstanding re-construction costs. True and correct copies of said demand letters are attached hereto as Plaintiff's Exhibit "E."

23.

However, as of May 10, 2022, Defendant Freedom Mortgage Corporation failed to deliver the demanded funds to Plaintiff John Jordan. The re-construction of said Plaintiff's residence was at a standstill, the builder had filed a lien against the Property, and said Defendant had provided no indication that it was going to voluntarily turn over the payments to said Plaintiff.

24.

Also, Plaintiff John Jordan was holding a $31,060.66 check from Non-Party Travelers Personal Insurance Company. In his letter of April 13, 2022, Plaintiff John Jordan requested that

Defendant Freedom Mortgage Corporation provide him with the authority to indorse the check over to his builder, as said Plaintiff was reluctant to deliver additional money to said Defendant. Said Defendant had not responded to this request or provided any direction related to the check.

25.

Due to Defendant Freedom Mortgage Corporation's lack of response and action, the Plaintiff John Jordan accessed funds available to him from his retirement 401(k) account. On May 10, 2022, the Plaintiff John Jordan withdrew $41,530.10 from his 401(k) account and on June 21, 2022, the Plaintiff John Jordan withdrew another $87,776.10 from his 401(k) account.

26.

In connection with these withdrawals, which totaled $129,306.11, the Plaintiff John Jordan incurred significant penalties, fees, and interest.

27.

Of the $129,306.11 that Plaintiff John Jordan withdrew from his 401(k) account, he should not have been forced to withdraw $88,749.00, as that was the amount that Defendant Freedom Mortgage Corporation was unjustifiability withholding at the time of the withdrawals.

28.

Thankfully, and in no part due to Defendant Freedom Mortgage Corporation, the Plaintiff John Jordan's builder agreed to continue re-construction following said Plaintiff's withdrawal of his retirement funds and payment of the outstanding invoices due to said builder.

29.

Following the Plaintiff John Jordan's withdrawal of these amounts, and more than two months after said Plaintiff notified Defendant Freedom Mortgage Corporation that he was holding the $31,060.66 check from Non-Party Travelers Personal Insurance Company, Defendant

Freedom Mortgage Corporation finally directed said Plaintiff to deliver the check to it on or about August 3, 2022, and returned the endorsed check to said Plaintiff on or about August 16, 2022.

30.

Following the return of said check to the Plaintiff John Jordan, the Defendant Freedom Mortgage Corporation continued to hold $57,688.92 of said Plaintiff's money, despite said Plaintiff's demand for delivery of the money to him.

31.

Then, as set forth, *supra*, on or about January 4, 2023, the Plaintiff John Jordan sold the Property and satisfied the Defendant Freedom Mortgage Corporation's indebtedness secured by the Property through the sales proceeds.

32.

However, despite the Defendant Freedom Mortgage Corporation holding no interest in the Property, it failed to deliver the balance of $57,688.92 to the Plaintiff John Jordan, thereby forcing said Plaintiff to demand the release of the money. Attached hereto as Plaintiff's Exhibit "F" is a true and correct copy of said Plaintiff's March 2, 2023 demand letter.

33.

Following the Plaintiff John Jordan's March 2, 2023 demand letter, the Defendant Freedom Mortgage Corporation did deliver $17,688.92 to said Plaintiff. However, said Defendant continued to hold $40,000.00.

34.

Concerning the $40,000.00 the Defendant Freedom Mortgage Corporation continues to hold, said Defendant contends that it attempted to deliver those funds to the Plaintiff John Jordan. Said Plaintiff never received those funds and has fully cooperated with said Defendant in its

investigation by submitting numerous affidavits of fraudulent transactions to said Defendant at said Defendant's request.

35.

Despite the Plaintiff John Jordan's cooperation, Defendant Freedom Mortgage Corporation has refused to deliver the $40,000.00 to said Plaintiff, providing the excuse that its fraud investigation remains ongoing.

36.

Despite these vague statements regarding its internal fraud investigation, Defendant Freedom Mortgage Corporation has produced no allegation or evidence that Plaintiff John Jordan ever received the $40,000.00. Plaintiff John Jordan has repeatedly requested updates regarding the investigation and delivery of the $40,000.00. However, the Defendant Freedom Mortgage Corporation has failed to provide any meaningful update or any valid excuse for its failure to deliver the funds to Plaintiff John Jordan.

## COUNT I: BREACH OF CONTRACT

37.

The Plaintiff John Jordan incorporates and re-alleges Paragraphs 1 through 36 of the above-styled Complaint for Damages as if expressly set forth herein.

38.

Section 4 of the Security Deed provides that Plaintiff John Jordan was required to insure all improvements on the Property, and said Plaintiff fully complied with this requirement.

39.

Also, Section 4 provided that Defendant Freedom Mortgage Corporation had two options regarding the insurance proceeds.

40.

First, pursuant to Section 4(a), the Defendant Freedom Mortgage Corporation was permitted to apply the insurance proceeds to the reduction of the indebtedness under the note secured by the Security Deed.

41.

Defendant Freedom Mortgage Corporation did not exercise this option, as evidenced by the payments totaling $56,000.00, via a $40,000.00 check on July 2, 2021 and via a $16,000.00 check on September 27, 2021.

42.

Second, Defendant Freedom Mortgage Corporation held the option to deliver the insurance proceeds to Plaintiff John Jordan pursuant to Section 4(b), for the restoration or repair of the damaged Property.

43.

Defendant Freedom Mortgage Corporation did exercise this option, as evidenced by the payments totaling $56,000.00, via a $40,000.00 check on July 2, 2021 and via a $16,000.00 check on September 27, 2021.

44.

Accordingly, by delivering payments to Plaintiff John Jordan, Defendant Freedom Mortgage Corporation elected its option to restore and repair the Property, and was therefore estopped from exercising a contrary option, as Plaintiff John Jordan relied on said Defendant's exercise of its option, in that said Plaintiff incurred liability to his builder in reliance on said Defendant's continued payments.

45.

Further, pursuant to Section 4(b), "any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto."

46.

As Plaintiff John Jordan has satisfied all outstanding indebtedness, and has been forced to complete the rebuild of the Property on his own and from his own funds, said Plaintiff is the party legally entitled to the remaining insurance proceeds.

47.

The Plaintiff John Jordan has honored all terms and performed all conditions precedent to the enforcement of the contractual terms of the Security Deed.

48.

The Defendant Freedom Mortgage Corporation has breached its contractual obligations under the Security Deed by failing to deliver all insurance proceeds to the Plaintiff John Jordan.

49.

The Defendant Freedom Mortgage Corporation's breaches of its contractual obligations under the Security Deed have damaged the Plaintiff John Jordan in an amount to be proven at trial.

## COUNT II: BREACH OF FIDUCIARY DUTY

50.

The Plaintiff John Jordan incorporates and re-alleges Paragraphs 1 through 49 of the above-styled Complaint for Damages as if expressly set forth herein.

51.

Pursuant to O.C.G.A. § 23-2-58, "Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary administrator and heir, legatee, devisee, or beneficiary; trustee and beneficiary; and similar fiduciary relationships."

52.

Resulting from the Plaintiff John Jordan and Defendant Freedom Mortgage Corporation's contractual relationships, said Defendant exercised a controlling influence over said Plaintiff's interest in the insurance proceeds from Non-Party Travelers Personal Insurance Company such that said Defendant bore a fiduciary duty to the Plaintiff John Jordan concerning those insurance proceeds.

53.

The Defendant Freedom Mortgage Corporation breached its fiduciary duty by failing to deliver the insurance proceeds to the Plaintiff John Jordan, despite its knowledge that said Plaintiff required those proceeds to re-build his home.

54.

The Defendant Freedom Mortgage Corporation's breaches of fiduciary duty have damaged the Plaintiff John Jordan in the amount of $40,000.00, and in the amount of penalties, interest, and fees created through said Defendant's stubborn refusal to deliver the insurance proceeds, thereby necessitating said Plaintiff's withdrawal of his retirement funds.

55.

The Defendant Freedom Mortgage Corporation is liable to the Plaintiff John Jordan for breach of fiduciary duty in an amount to be proven at trial.

## COUNT III: PUNITIVE DAMAGES

56.

The Plaintiff John Jordan incorporates and re-alleges Paragraphs 1 through 55 of the above-styled Complaint for Damages as if expressly set forth herein.

57.

The Defendant Freedom Mortgage Corporation's breaches of fiduciary duties toward Plaintiff John Jordan evidence that said Defendant's actions were performed with willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care that raises the presumption of conscious indifference to consequences.

58.

The Defendant Freedom Mortgage Corporation is liable to the Plaintiff John Jordan for an award of punitive damages in an amount necessary to punish and deter such further actions by said Defendant in an amount to be proven at trial, but in an amount not less than $250,000.00.

## COUNT IV: ATTORNEYS' FEES AND EXPENSES OF LITIGATION

59.

The Plaintiff John Jordan incorporates and re-alleges Paragraphs 1 through 58 of the above-styled Complaint for Damages as if expressly set forth herein.

60.

The Defendant Freedom Mortgage Corporation has acted in bad faith, has been stubbornly litigious, and has caused the Plaintiff John Jordan unnecessary trouble and expense within the meaning of O.C.G.A. § 13-6-11.

61.

The Defendant Freedom Mortgage Corporation is liable to the Plaintiff John Jordan in an amount to be proven at trial.

**WHEREFORE**, Plaintiff John Jordan respectfully requests that this Court grant the following relief;

a)  That service of process issue against the Defendant Freedom Mortgage Corporation;

b)  That the Defendant Freedom Mortgage Corporation be found liable to the Plaintiff John Jordan for Breach of Contract as averred in Count I of the above-styled Complaint for Damages;

c)  That the Defendant Freedom Mortgage Corporation be found liable to the Plaintiff John Jordan for Breach of Fiduciary Duty as averred in Count II of the above-styled Complaint for Damages;

d)  That the Defendant Freedom Mortgage Corporation be found liable to the Plaintiff John Jordan for an award of punitive damages as averred in Count III of the above-styled Complaint for Damages;

e)  That the Defendant Freedom Mortgage Corporation be found liable to the Plaintiff John Jordan for an award of attorneys' fees and expenses of litigation as averred in Count IV of the above-styled Complaint for Damages;

f)  That a jury of twelve serve as finder of fact in the above-styled action; and

g)  For such further relief that this Honorable Court deems just and appropriate.

This 2nd day of August, 2023.

                                        **KING, YAKLIN & WILKINS, LLP**
                                        *Attorneys for Plaintiff John Jordan*


                                        /s/ STEPHEN A. YAKLIN
                                        Stephen A. Yaklin
                                        Georgia Bar No.: 780125
                                        Jordan P. Aldridge
                                        Georgia State Bar No.: 402062


192 Anderson Street, Suite 125
Marietta, Georgia 30060
(770) 424-9235 (phone)
syaklin@kingyaklin.com
jaldridge@kingyaklin.com

# PLAINTIFF'S EXHIBIT A

Campbell & Brannon, LLC
2475 Northwinds Parkway, #150
Alpharetta, GA 30009
*A141983T*

Prepared By:
CHEREESE PRILOT
POLUNSKY BEITEL GREEN, LLP
18111 PRESTON ROAD, SUITE
900
DALLAS, TX 75252
(888) 812-2711

When Recorded Mail To:
PRIMELENDING, A
PLAINSCAPITAL COMPANY
17330 PRESTON ROAD, SUITE
160B
DALLAS, TX 75252
ATTN: FINAL DOCUMENTS
(888) 812-2711

Deed Book 54336 Pg   423
Filed and Recorded Nov-03-2014 08:30am
2014-0315142
Georgia Intangible Tax Paid $465.00
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia
ASGN
DE Book 55676 Page 99

[Space Above This Line For Recording Data]

## SECURITY DEED

FHA Case No.
105-8470702-703
JORDAN
Loan #: 2177000302
MIN: 100053601314328088
MERS Phone: 1-888-679-6377
PIN: 22-5420-0973-124-6.

THIS SECURITY DEED ("Security Instrument") is given on OCTOBER 27, 2014. The grantor is JOHN JORDAN, AN UNMARRIED MAN ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, Michigan 48501-2026, telephone (888) 679-MERS. PRIMELENDING, A PLAINSCAPITAL COMPANY, is which is organized and existing under the laws of TEXAS, and whose address is 18111 PRESTON ROAD, SUITE 900, DALLAS, TX 75252 ("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED FIFTY-FOUR THOUSAND EIGHT HUNDRED FORTY-THREE AND 00/100 Dollars (U.S. $154,843.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2044. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS, with power of sale, the following described property located in FULTON County, Georgia:
ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 973 OF THE 2ND DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 56, AVENSONG

FHA Georgia Security Deed - 12/13
371.24

Page 1 of 10



34

Deed Book 54336 Pg 424

2177000302

SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED IN PLAT BOOK 193, PAGE 50-57, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION. SAID PROPERTY BEING KNOWN AS 650 CHANTRESS COURT ACCORDING TO THE PRESENT SYSTEM OF NUMBERING PROPERTY IN FULTON COUNTY, GEORGIA.

which has the address of 650 CHANTRESS COURT, ALPHARETTA, Georgia 30004-7486 ("Property Address"):

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

**UNIFORM COVENANTS:**

1. **Payment of Principal, Interest and Late Charge**
   Borrower shall promptly pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance and Other Charges**
   Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for

   (a) taxes and special assessments levied or to be levied against the Property,

   (b) leasehold payments or ground rents on the Property, and

   (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either

      (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or

      (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by

FHA Georgia Security Deed - 12/13
⬥ 371.24                          Page 2 of 10

Deed Book 54336 Pg 425

2177000302

the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Sec. 2601 et seq. and implementing regulations, 12 C.F.R. Part 1024, as they may be amended from time to time (RESPA), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums. Borrowers account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.  **Application of Payments**
    All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

    *   First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    *   Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    *   Third, to interest due under the Note;

    *   Fourth, to amortization of the principal of the Note; and

    *   Fifth, to late charges due under the Note.

4.  **Fire, Flood, and Other Hazard Insurance**
    Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

    In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either

FHA Georgia Security Deed - 12/13
371.24                                          Page 3 of 10

2177000302

(a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or

(b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds**

Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned property. Borrower shall also be in default if borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation**

The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property**

Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform

2177000302

any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower:

(a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender;

(b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lenders opinion operate to prevent the enforcement of the lien; or

(c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees**
   Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will

2177000302

limit Lender rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement**
Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:

(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding,

(ii) reinstatement will preclude foreclosure on different grounds in the future, or

(iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released: Forbearance by Lender Not a Waiver**
Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrowers successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers**
The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrowers covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note:

(a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument;

(b) is not personally obligated to pay the sums secured by this Security Instrument; and

(c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that

2177000302

Borrower's consent.

13. **Notices**
Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability**
This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy**
Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances**
Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any Investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this Paragraph 16, "Environmental law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents**
Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

2177000302

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its right under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other rights or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure**

If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorney's fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in Paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place under the terms designed in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such a conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the property is sold pursuant to this Paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19. **Release**

Deed Book **54336** Pg   **431**

2177000302

Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead**
Borrower waives all rights of homestead exemption in the Property.

**21. Assumption not a Novation**
Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed**
This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider          ☐ Growing Equity Rider          ☐ Adjustable Rate Rider
☒ Planned Unit Development Rider     ☐ Graduated Payment Rider
☒ Other (specify)
     Waiver of Borrower's Rights & Attorney's Affidavit

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

- BORROWER -   JOHN   JORDAN

Signed, sealed and delivered in the presence of:

Unofficial Witness  Faith M. Hoffman

Official Witness

Notary Public, **FULTON** County

AMANDA L. CAMPBELL
COMMISSION EXPIRES
AUG
10
2018
COBB CO. GEORGIA
NOTARY PUBLIC

FHA Georgia Security Deed - 12/13
371.24                    Page 9 of 10

Deed Book 54336 Pg   432

2277000302

_____[Space Below This Line For Acknowledgment]_____

STATE OF GEORGIA

COUNTY OF FULTON

This record was acknowledged before me on __10-27-14__ by JOHN JORDAN, AN
UNMARRIED MAN, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared
before me.
_____ Personally Known
or
___X___ Produced Identification
Type and # of ID (last 4 digits) GA Drv lic. 0428
ID Expiration Date __12-7-2017__

Notary Public
FULTON COUNTY
STATE OF GEORGIA
My Commission Expires: _____

(Notary seal: AMANDA L. CAMPBELL / AUG 10 2018 / COBB CO. GEORGIA / NOTARY PUBLIC)

MORTGAGE LOAN ORIGINATOR ELISABETH TALBOT
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
659060
MORTGAGE LOAN ORIGINATION COMPANY PRIMELENDING, A PLAINSCAPITAL COMPANY
NATIONWIDE MORTGAGE LICENSING SYSTEM AND REGISTRY IDENTIFICATION NUMBER
13649

# PLANNED UNIT DEVELOPMENT RIDER

JORDAN
Loan #: 2177000302
MIN: 100053601314328088
FHA Case No: 105-8470702-703

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 27TH day of OCTOBER, 2014, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to PRIMELENDING, A PLAINSCAPITAL COMPANY ("Lender") of the same date and covering the Property described in the Security Instrument and located at: 650 CHANTRESS COURT, ALPHARETTA, GA 30004-7486 [Property Address]. The Property Address is a part of a planned unit development ("PUD") known as AVENSONG [Name of Planned Unit Development].

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to

⏎ 50.14                    Page 1 of 2              FHA Multistate PUD Rider
                                                                    6/96



2177000302

Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

**B.** Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

**C.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____
- BORROWER -  JOHN  JORDAN

Deed Book **54336** Pg  **435**
Cathelene Robinson
Clerk of Superior Court
Fulton County, Georgia

Georgia / Loan #      2177000302
Grantor:                   John Jordan
Lender:                   PRIMELENDING, A PLAINS CAPITAL COMPANY
Date of Security Deed: October 27th, 2014

## WAIVER OF BORROWER'S RIGHTS

By execution of this paragraph, Grantor expressly:  (1) Acknowledges the right to accelerate the debt and the Power of Attorney given herein to Lender to sell the premises by nonjudicial foreclosure upon default by Grantor without and judicial hearing and without any notice other than such notice as is required to be given under the provisions hereof;  (2) Waives any and all rights which Grantor may have under the Fifth and Fourteenth Amendments to the Constitution for the United States, the various provision of the Constitution for the several states, or by reason of any other applicable law, to notice and to judicial hearing prior to the exercise by Lender of any right or remedy herein provided to Lender, except such notice as is specifically required to be provided hereof;  (3) Acknowledges that Grantor has read this Deed and specifically this paragraph and any and all questions regarding the legal effect of said deed and its provisions have been explained fully to grantor and grantor has been afforded an opportunity to consult with Counsel of Grantor's choice prior to executing this Deed;  (4) Acknowledges that all waivers of the aforesaid rights of Grantor have been made knowingly, intentionally and willingly by Grantor as part of a bargained for loan transaction; and (5) Agrees that the provisions hereof are incorporated into and made a part of the Security Deed/Deed to Secure Debt.

READ AND AGREED BY GRANTOR:

Grantor

Signed, sealed and delivered in
the presence of:

_____          _____ (Seal)
Witness   Faith M. Hoffman            John Jordan

_____          _____ (Seal)
Notary Public

My Commission Expires _____

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who having been first duly sworn according to law states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights.  After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on
The date set forth above.

_____          _____
Notary Public          (Seal)            Closing Attorney  Amanda L. Campbell
My Commission Expires _____

FAITH M. HOFFMAN
Notary Public, Georgia
Forsyth County
My Commission Expires
March 28, 2017

# PLAINTIFF'S EXHIBIT B

Deed Book 62480 Page 611
Filed and Recorded 10/22/2020 9:54:00 AM
2020-0325620
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9562359654
7067927936

**GEORGIA**

PARCEL NO. 22-5420-0973-124-6

COUNTY OF FULTON
LOAN NO.: 2001438742

WHEN RECORDED MAIL TO: ATTN: TODD SLEIGHT, FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, **ROUNDPOINT MORTGAGE SERVICING CORPORATION**, located at **446 WRENPLACE ROAD, FORT MILL, SC 29715**, Assignor, does this day transfer, assign, convey, and deliver unto **FREEDOM MORTGAGE CORPORATION**, located at **10500 KINCAID BLVD, FISHERS, IN 46037**, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of **$154,843.00**, dated **OCTOBER 27, 2014**, executed by **JOHN JORDAN, AN UNMARRIED MAN**, Original Grantor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS**, Original Grantee, and filed for record and recorded on **NOVEMBER 03, 2014** in Deed Book **54336** at Page **423** as Instrument No. **2014-0315142** in the Office of the Clerk of the Superior Court in the County of **FULTON**, State of **GEORGIA**.

LEGAL DESCRIPTION: **ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 973 OF THE 2ND DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 56, AVENSONG SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED IN PLAT BOOK 193, PAGE 193, PAGE 50-57, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION. SAID PROPERTY BEING KNOWN AS 650 CHANTRESS COURT ACCORDING TO THE PRESENT SYSTEM OF NUMBERING PROPERTY IN FULTON COUNTY, GEORGIA.**

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Security Deed, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned.

IN WITNESS WHEREOF, the undersigned has caused this Instrument to be executed this **OCTOBER 20, 2020**.

**ROUNDPOINT MORTGAGE SERVICING CORPORATION**

TODD SLEIGHT, VICE PRESIDENT

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**     ) ss.

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on **OCTOBER 20, 2020**, by TODD SLEIGHT, VICE PRESIDENT, of **ROUNDPOINT MORTGAGE SERVICING CORPORATION**:

Notary Public/Official Witness:

**ADDISON RICE (COMMISSION EXP. 06/15/2024)**
NOTARY PUBLIC

Unofficial Witness:

**KATIE OLSON, Witness**

ADDISON RICE
Notary Public - State of Idaho
Commission Number 20181118
My Commission Expires Jun 15, 2024

RP8020117JM - AM5 - GA

Page 1 of 1

MIN: 100053601314328088

MERS PHONE: 1-888-679-6377

# PLAINTIFF'S EXHIBIT C

Deed Book 62480 Page 611
Filed and Recorded 10/22/2020 9:54:00 AM
2020-0325620
Cathelene Robinson
Clerk of Superior Court
Fulton County, GA
Participant IDs: 9562359654
7067927936

**GEORGIA**

PARCEL NO. 22-5420-0973-124-6

COUNTY OF FULTON
LOAN NO.: 2001438742

WHEN RECORDED MAIL TO: ATTN: TODD SLEIGHT, FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402, PH. 208-528-9895

# CORPORATE ASSIGNMENT

FOR VALUE RECEIVED, ROUNDPOINT MORTGAGE SERVICING CORPORATION, located at 446 WRENPLACE ROAD, FORT MILL, SC 29715, Assignor, does this day transfer, assign, convey, and deliver unto FREEDOM MORTGAGE CORPORATION, located at 10500 KINCAID BLVD, FISHERS, IN 46037, Assignee, its successors, representatives, and assigns, all of Assignor's right, title, and interest in and to that certain Security Deed in the principal sum of $154,843.00, dated OCTOBER 27, 2014, executed by JOHN JORDAN, AN UNMARRIED MAN, Original Grantor, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS GRANTEE, AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS, Original Grantee, and filed for record and recorded on NOVEMBER 03, 2014 in Deed Book 54336 at Page 423 as Instrument No. 2014-0315142 in the Office of the Clerk of the Superior Court in the County of FULTON, State of GEORGIA.

LEGAL DESCRIPTION: ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 973 OF THE 2ND DISTRICT, 2ND SECTION, FULTON COUNTY, GEORGIA, BEING LOT 56, AVENSONG SUBDIVISION, UNIT TWO, AS PER PLAT RECORDED IN PLAT BOOK 193, PAGE 193, PAGE 50-57, FULTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS INCORPORATED HEREIN BY REFERENCE AND MADE A PART OF THIS DESCRIPTION. SAID PROPERTY BEING KNOWN AS 650 CHANTRESS COURT ACCORDING TO THE PRESENT SYSTEM OF NUMBERING PROPERTY IN FULTON COUNTY, GEORGIA.

The Assignor herein specifically transfers, conveys and assigns to the above Assignee, its successors, representatives, and assigns the aforesaid Security Deed, the property described therein, together with all the powers, options, rights, privileges, and immunities contained therein on the undersigned.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed this OCTOBER 20, 2020.

**ROUNDPOINT MORTGAGE SERVICING CORPORATION**

_____

TODD SLEIGHT, VICE PRESIDENT

STATE OF IDAHO                COUNTY OF BONNEVILLE      ) ss.

SIGNED, SEALED, AND DELIVERED in the presence of the below named Notary Public, as an official witness and below named unofficial witness, on OCTOBER 20, 2020, by TODD SLEIGHT, VICE PRESIDENT, of ROUNDPOINT MORTGAGE SERVICING CORPORATION:

Notary Public/Official Witness:                          Unofficial Witness:

_____                    _____
ADDISON RICE (COMMISSION EXP. 06/15/2024)     KATIE OLSON, Witness
NOTARY PUBLIC

ADDISON RICE
Notary Public - State of Idaho
Commission Number 20181118
My Commission Expires Jun 15, 2024

RP8020117IM - AM5 - GA                    Page 1 of 1

MIN: 100053601314328088

MERS PHONE: 1-888-679-6377

# PLAINTIFF'S EXHIBIT D

Deed Book 66576 Page 40
Filed and Recorded 02/27/2023 07:43:00 PM
2023-0067311
CATHELENE ROBINSON
Clerk of Superior Court
Fulton County, GA
Participant IDs: 5224125492
7067927936

When Recorded Return To:
JOHN JORDAN
170 N PEACHTREE ST APT 6
NORCROSS, GA 30071-2069

Loan No 0118413293



## CANCELLATION OF DEED TO SECURE DEBT
### (Cancellation of Security Deed)

STATE OF GEORGIA
COUNTY OF FULTON

The indebtedness referred to in that certain Deed to Secure Debt from **JOHN JORDAN** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS GRANTEE, AS NOMINEE FOR PRIMELENDING, A PLAINSCAPITAL COMPANY, ITS SUCCESSORS AND ASSIGNS** dated 10/27/2014, and recorded in Deed **Book 54336 and Page 423** in the office of the Clerk of Superior Court of **FULTON** County, **Georgia**, having been acknowledged as paid in full and the undersigned being the present lienholder of such secured interest by virtue of being the original grantee or the heir, assign, transferee, or devisee of the original grantee, the clerk of such superior court is authorized and directed to cancel that deed of record as provided in Code Section 44-14-4 of the O.C.G.A. for other Mortgage cancellations.
Modification: 03/28/2017 BK# 57338 PG# 640.
Property is commonly known as: 650 CHANTRESS COURT, ALPHARETTA, GA 30004.

**Dated this 17th day of February in the year 2023.**
**FREEDOM MORTGAGE CORPORATION**

By:   _Danielle Weathers_
      **DANIELLE WEATHERS**
      **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.
Signed and delivered in the presence of:

_Cecelia Mansfield_
**CECELIA MANSFIELD**
**WITNESS**

STATE OF FLORIDA   COUNTY OF PINELLAS
I hereby attest that I was present and acknowledged the execution of the foregoing instrument, done before me by means of [X] physical presence or [ ] online notarization on this 17th day of February in the year 2023, by Danielle Weathers as VICE PRESIDENT of FREEDOM MORTGAGE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Vicky McCoy_
**VICKY MCCOY**
**COMM EXPIRES: 12/18/2026**

VICKY MCCOY
Notary Public - State of Florida
Commission # HH 328470
My Comm. Expires Dec 18, 2026
Bonded through National Notary Assn.

FM001 435859576 DOCR T172302-12:17:13 [C-1] ERCNGA5

*D0099577434*

# PLAINTIFF'S
# EXHIBIT E



King, Yaklin & Wilkins, LLP
Attorneys at Law

192 Anderson Street
Suite 125
Marietta, GA 30060
Business: 770-424-9235
Fax: 770-424-9239
www.kingyaklin.com

Jordan P. Aldridge, Esq.
jaldridge@kingyaklin.com

April 13, 2022

**VIA STANDARD U.S. MAIL**
Freedom Mortgage Corporation
c/o C T Corporation System, Registered Agent
289 S. Culver St.
Lawrenceville, Georgia 30046

**VIA EMAIL ATTACHMENT**
Alexander Pridemore
apridemore@pfic.com

RE:    650 Chantress Court, Alpharetta, Georgia 30004
        Loan Number 0118413293
        **Demand for Release of $71,060.66**

Dear Sir or Madam and Alexander:

Please be advised that my Firm represents John Michael Jordan. On February 18, 2022, I delivered a letter via email to Alexander Pridemore, therein demanding that Freedom Mortgage immediately release $40,000.00 in insurance payments for the re-build of Mr. Jordan's home. I have enclosed a copy of my February 18, 2022 letter with this letter. My February 18, 2022 letter put Freedom Mortgage on notice that Mr. Jordan's contractor, Parker Young Construction, filed a lien on Mr. Jordan's property, contending that it is owed $85,478.18 for work that has already been performed for the re-build of Mr. Jordan's home.

I received no response to my February 18, 2022 letter and Freedom Mortgage continues to wrongfully withhold not less than $40,000.00 which should be immediately delivered to Mr. Jordan's contractor for work performed.

On February 18, 2022, I also delivered a letter to Mr. Jordan's insurance company, Travelers Personal Insurance Company, therein demanding that Travelers immediately release additional insurance payments to cover work performed by Mr. Jordan's contractor. Unlike Freedom Mortgage, Travelers did respond, and delivered a check in the amount of $31,060.66 to my office. I have enclosed a redacted copy of said check with this letter.

Freedom Mortgage is clearly not acting in good faith concerning Mr. Jordan and its actions have caused Mr. Jordan to incur additional potential liability to his contractor. Mr. Jordan relied upon Freedom Mortgage's initial course of conduct of releasing insurance payments to his contractor, and, in reliance on this course of conduct, he approved additional work to be performed by his contractor with the expectation that future insurance payments would be promptly delivered to his

Alexander Pridemore
April 13, 2022
Page | 2

contractor by Freedom Mortgage. Inexplicably, now that Mr. Jordan has incurred costs for the work performed by his contractor, Freedom Mortgage refuses to release payment. Having induced Mr. Jordan to incur additional liabilities based on its course of conduct, Freedom Mortgage cannot now refuse to deliver payment to Mr. Jordan. As such, we again demand immediate delivery of all insurance proceeds that Freedom Mortgage has in its possession regarding Mr. Jordan's property.

Based on Freedom Mortgage's bad faith and damage to Mr. Jordan, we are certainly reluctant to now deliver the $31,060.00 Travelers check to Freedom Mortgage. As such, we request that Freedom Mortgage respond in writing, authorizing Mr. Jordan to indorse the enclosed $31,060.00 check over to his contractor for payment of services rendered.

Thank you for your prompt attention into this matter. Please do not hesitate to contact me should you have any questions regarding Mr. Jordan's contentions as set forth herein.

Sincerely,
**KING, YAKLIN & WILKINS, L.L.P.**

Jordan P. Aldridge
For the Firm

Enclosures

cc:    Mr. John Jordan (via email attachment)
       Stephen A. Yaklin, Esq.
       Nicole E. Baker, Esq.



**KING YAKLIN**
KING, YAKLIN & WILKINS, LLP
ATTORNEYS AT LAW

King, Yaklin & Wilkins, LLP
Attorneys at Law

192 Anderson Street
Suite 125
Marietta, GA 30060
Business: 770-424-9235
Fax: 770-424-9239
www.kingyaklin.com

Jordan P. Aldridge, Esq.
jaldridge@kingyaklin.com

February 18, 2022

**VIA EMAIL ATTACHMENT**
Alexander Pridemore
apridemore@pfic.com

RE:   650 Chantress Court, Alpharetta, Georgia 30004
      Loan Number 0118413293
      **Demand for Release of $40,000.00**

Alexander:

Please be advised that my Firm represents John Michael Jordan. It is my understanding that you are Proctor Financial, Inc.'s and Freedom Mortgage's representative regarding Mr. Jordan and the above-referenced property and loan. If you no longer are working on this matter, please forward this correspondence to the current representative concerning this matter and respond with the contact information of the person to whom I should address future correspondence.

Mr. Jordan has been forced to retain my Firm's services resulting from Proctor Financial, Inc. and Freedom Mortgage improperly retaining funds which should be paid for the re-build of Mr. Jordan's home. As you are aware, Mr. Jordan suffered a loss at his home on or around July 18, 2020. Mr. Jordan reported this loss to his insurance company, Travelers Personal Insurance Company. Mr. Jordan also engaged Parker Young Construction to re-build his home.

During Parker Young Construction's re-build of Mr. Jordan's home, Travelers Personal Insurance Company has made $96,000.00 in payments. These payments were delivered by Mr. Jordan to Proctor Financial, Inc. and Freedom Mortgage. However, Proctor Financial, Inc. and Freedom Mortgage has only delivered a portion of these funds to Parker Young Construction. To date, Proctor Financial, Inc. and Freedom Mortgage has released $56,000.00 to Mr. Jordan who in turn, delivered same to Parker Young Construction.

I am aware that Proctor Financial, Inc. and Freedom Mortgage attempted to release an additional $40,000.00 to Mr. Jordan for Parker Young Construction's work, however, said payment was released to the wrong address and apparently intercepted by a third-party, through no fault of Mr. Jordan. Mr. Jordan has cooperated fully with Proctor Financial, Inc. and Freedom Mortgage's investigation into this matter, and it appears that the fault for the funds' interception is attributable solely to the negligence of Proctor Financial, Inc. and Freedom Mortgage.

Due to Proctor Financial, Inc.'s and Freedom Mortgage's failure to deliver the $40,000.00 to Mr. Jordan, Mr. Jordan has been unable to make payment in this amount to Parker Young

Alexander Pridemore
February 18, 2022
Page | 2

Construction. To date, Parker Young Construction contends that it is owed the outstanding total of $85,478.18. Due in part to Proctor Financial, Inc.'s and Freedom Mortgage's refusal to deliver the $40,000.00 to Mr. Jordan, Parker Young Construction has suspended work on the property, and has even filed a lien on Mr. Jordan's property in the amount of $85,478.18.

Proctor Financial, Inc. and Freedom Mortgage are partly responsible for Parker Young Construction's refusal to continue work on Mr. Jordan's home and filing a lien on Mr. Jordan's property. There is simply no good faith reason for Proctor Financial, Inc.'s and Freedom Mortgage's stubborn refusal to release $40,000.00 to Mr. Jordan so that he may deliver same to Parker Young Construction.

Accordingly, Mr. Jordan demands that Proctor Financial, Inc. and Freedom Mortgage deliver a check payable to Mr. Jordan in the amount of $40,000.00 within ten (10) days of the date of this letter. We also anticipate that Travelers Personal Insurance Company will make additional payments in the near future regarding the re-build of Mr. Jordan's home, and we trust that Proctor Financial, Inc. and Freedom Mortgage will promptly process and release same to Mr. Jordan to avoid additional unnecessary interruptions of the construction activities at his home.

Please contact me at your convenience should you wish to discuss this matter in greater detail. I look forward to receiving word that Proctor Financial, Inc. and Freedom Mortgage have delivered $40,000.00 to Mr. Jordan.

Sincerely,
**KING, YAKLIN & WILKINS, L.L.P.**

Jordan P. Aldridge
For the Firm

cc:    Mr. John Jordan (via email attachment)
       Stephen A. Yaklin, Esq.
       Nicole E. Baker, Esq.

# PLAINTIFF'S
# EXHIBIT F



King, Yaklin & Wilkins, LLP
Attorneys at Law

192 Anderson Street
Suite 125
Marietta, GA 30060
Business: 770-424-9235
Fax: 770-424-9239
www.kingyaklin.com

Jordan P. Aldridge, Esq.
jaldridge@kingyaklin.com

March 2, 2023

**VIA STANDARD U.S. MAIL**
Freedom Mortgage Corporation
c/o C T Corporation System, Registered Agent
289 S. Culver St.
Lawrenceville, Georgia 30046

**VIA EMAIL ATTACHMENT**
Alexander Pridemore
apridemore@pfic.com

RE:   650 Chantress Court, Alpharetta, Georgia 30004
       Loan Number 0118413293
       **Demand for Release of $57,688.92**

Dear Sir or Madam and Alexander:

As you are aware, my Firm represents John Michael Jordan. Please allow this letter to serve as additional notice that my client intends to file suit against Freedom Mortgage Corporation if it continues to refuse to return his funds to him.

I first corresponded with Freedom Mortgage Corporation on my client's behalf in February, 2022. My initial correspondence concerned Freedom Mortgage Corporation's refusal to release funds in its possession which had been delivered by Mr. Jordan from his insurance company resulting from a fire at 650 Chantress Court. As of February, 2022, we believed that Freedom Mortgage Corporation was holding $40,000.00 of funds which should have been utilized to cover the construction costs of rebuilding Mr. Jordan's home.

Following additional correspondence from me during 2022, Freedom Mortgage Corporation finally responded, and contended that it had already delivered some or all of the $40,000.00 to my client. In response, my client submitted a series of Affidavits of Fraudulent Transactions, the most recent on June 24, 2022, therein setting forth the fact that he never received the $40,000.00. Following my client having delivered his Affidavit of Fraudulent Transactions on or around June 24, 2022, Freedom Mortgage Corporation has continued to refuse to deliver the $40,000.00, citing an ongoing internal investigation.

On August 16, 2022, Alexander Pridemore emailed my office stating that "An update was received today regarding their case , the team has cited they are still waiting for response from the bank of first deposit, without a timeline provided, but we will continue to follow up on this case until a resolution has been reached."

Freedom Mortgage Corporation
Alexander Pridemore
March 2, 2023
Page | 2

On November 3, 2022, Alexander Pridemore emailed my office stating that "A message has been sent to our team overseeing the fraud case requesting an update that we will provide as soon as a response is received."

On November 4, 2022, Alexander Pridemore emailed my office stating that "We received an update this morning and KeyBank advised they are still waiting to hear back from Bank of America(bank of first deposit)."

Despite these vague status updates over the past 8 months, Freedom Mortgage Corporation has failed to provide any indication as to when its fraud investigation will be complete, nor does it appear to be pursuing this issue with any degree of diligence. My client has complied fully with Freedom Mortgage Corporation's fraud investigation, and Freedom Mortgage Corporation has failed to produce any evidence that my client actually received the $40,000.00, nor has it produced any argument or evidence that the apparent theft of the funds was a result of anything other than Freedom Mortgage Corporation's negligence. <u>Accordingly, we demand the immediate delivery of $40,000.00 to my office via check payable to John Jordan.</u>

Further, in addition to the $40,000.00, Freedom Mortgage Corporation has also been holding $17,688.92 over my client's objection. This amount was delivered by my client's insurance company to him, and my client in turn delivered the insurance proceeds to Freedom Mortgage Corporation.

In total, my client has delivered $144,749.58 in insurance proceeds to Freedom Mortgage Corporation. In turn, Freedom Mortgage Corporation has returned the total of $87,060.66 to my client: $31,060.66 in August, 2023; $40,000.00 on or about July 6, 2021; and $16,000.00 on or about September 27, 2021.

Thus, of the $144,749.58 delivered by my client to Freedom Mortgage Corporation, it has in turn delivered only $87,060.66 to my client, leaving a balance of $57,688.92 owed to my client. I understand that of this amount, Freedom Mortgage Corporation contends that $40,000.00 is subject to its fraud investigation, however, Freedom Mortgage Corporation has failed to provide any excuse or reason why it has failed to deliver the other $17,688.92 to my client.

Of particular concern, Freedom Mortgage Corporation no longer has an interest in the real property at issue. On January 4, 2023, my client sold the real property at 650 Chantress Court and Freedom Mortgage Corporation's mortgage on the property was satisfied in full through the sales proceeds. As Freedom Mortgage Corporation's interest in the property has been satisfied in full, as to the $17,688.92 of my client's funds, Freedom Mortgage Corporation has been holding my client's funds without any conceivable justification for nearly two months. <u>We demand the immediate delivery of the $17,688.92 to my office via check payable to John Jordan.</u>

Freedom Mortgage Corporation's failure to comply with my client's demands will result in my client filing suit for breach of contract, negligence, and attorneys' fees and expenses of litigation.

Freedom Mortgage Corporation
Alexander Pridemore
March 2, 2023
Page | 3

Further, because Freedom Mortgage Corporation has repeatedly ignored my clients' requests, has knowingly and intentionally caused financial harm to my client, and now holds $17,688.92 (which it does not even offer an excuse for retaining), my client will seek an award of punitive damages in an amount greater than $250,000.00 pursuant to O.C.G.A. § 51-12-5.1 (f).

I trust this matter will receive Freedom Mortgage Corporation's full and immediate attention.

Sincerely,
**KING, YAKLIN & WILKINS, L.L.P.**

Jordan P. Aldridge
For the Firm


cc:     Mr. John Jordan (via email attachment)
        Stephen A. Yaklin, Esq.

Exhibit B

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA
**23-A-06619-2**
8/2/2023 4:46 PM
TIANA P. GARNER, CLERK

## IN THE SUPERIOR COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**JOHN JORDAN**

_____

_____

_____

          PLAINTIFF

VS.

**FREEDOM MORTGAGE CORPORATION**

_____

_____

_____

          DEFENDANT

CIVIL ACTION   23-A-06619-2
NUMBER:_____

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

**Stephen A. Yaklin, Esq.**
**King, Yaklin & Wilkins, LLP**
**192 Anderson Street, Suite 125, Marietta, GA 30060**

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

                            3rd day of August, 2023
This _____ day of _____, 20_____.

Tiana P. Garner
Clerk of Superior Court

By_____
            Deputy Clerk

**INSTRUCTIONS:** Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

SC-1 Rev. 2011

Exhibit C

E-FILED IN OFFICE - JM
CLERK OF SUPERIOR COURT
GWINNETT COUNTY, GEORGIA

23-A-06619-2

8/2/2023 4:46 PM

TIANA P. GARNER, CLERK

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior** or ☐ **State Court of** _____ **County**

| | |
|---|---|
| **For Clerk Use Only** | 23-A-06619-2 |
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | |

**Plaintiff(s)**                                              **Defendant(s)**

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |
| Last | First | Middle I. | Suffix | Prefix | Last | First | Middle I. | Suffix | Prefix |

**Plaintiff's Attorney** _____   **Bar Number** _____   **Self-Represented** ☐

### Check One Case Type in One Box

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Dissolution/Divorce/Separate Maintenance**
- ☐ **Family Violence Petition**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

**Post-Judgment – Check One Case Type**

- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Modification**
- ☐ **Other/Administrative**

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

_____          _____
**Case Number**                              **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. _____
**Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

_____
_____

Version 1.1.18