**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| INGRID ERVIN-HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action |
| v. | ) File No.: |
| | ) |
| WHOLE FOODS MARKET GROUP, | ) **JURY TRIAL DEMANDED** |
| INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW, Plaintiff Ingrid Ervin-Harris ("Plaintiff" or "Ms. Ervin-Harris") and submits the following Complaint for Damages and Equitable Relief against Defendant Whole Foods Market Group, Inc. ("Defendant" or "Whole Foods") showing the Court as follows:

## INTRODUCTION

1.

This is an employment discrimination case arising from unlawful age discrimination in violation of the Age Discrimination Employment Act 29 U.S.C. §623 e*t seq*. ("ADEA"); race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, ("Title VII), 42 U.S.C. § 2000e *et seq*. ("Title VII") and in violation of 42 U.S.C. § 1981 ("Section 1981"); and disability discrimination,

including failure to accommodate, and retaliation in violation of the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101 *et seq*.

2.

Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, reinstatement or front pay in lieu of thereof, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

3.

Plaintiff has satisfied all administrative prerequisites to perfect her claims under Title VII, the ADEA, and the ADAAA. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for her claims, and the EEOC issued a notice of right to sue within the last ninety days.

<u>**JURISDICTION AND VENUE**</u>

4.

Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

2

5.

This Court has personal jurisdiction over all the parties to this action.

6.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

**PARTIES**

7.

Plaintiff Ingrid Ervin-Harris was, at all relevant times, a resident of Georgia.

8.

Defendant Whole Foods is a foreign for-profit corporation registered with the Georgia Secretary of State to do business in Georgia.

9.

Defendant Whole Foods is subject to this Court's jurisdiction. Whole Foods may be served by delivering a copy of the Complaint and summons to C T Corporation System, 289 S Culver Street, Lawrenceville, GA, 30046-4805 in Gwinnett County.

## FACTS

10.

Ingrid Ervin-Harris is a Black woman, age 58.

11.

In July 2017, Ms. Ervin-Harris began her career at Whole Foods as the Senior Team Leader, TMS Business Partner Team for the Southern Region with six (6) direct reports.

12.

Ms. Ervin-Harris is a member of the Society of Human Resources Management ("SHRM"), the Ombudsman Association, and the Association for Dispute Resolution.

13.

Ms. Ervin-Harris' entire career has been devoted to achieving excellent results in the human resources field. At the time she started working for Whole Foods, Ms. Ervin-Harris was already an experienced human resources ("HR") professional. She held three previous positions as a Senior Human Resources Manager, including at a Fortune 500 company, where she provided human resource management support to an entire division and every state (and including Europe) inclusive of over 1200 employees.  She also directed human resources management activities including HR strategic management, recruitment and selection, retention, employee relations,

compensation administration, compliance, and performance consulting.  She was solely responsible for efforts to develop talent acquisition and resource augmentation plans in support of business efforts, and she created a national employment mediation and arbitration program.

14.

Ms. Ervin-Harris also began her employment at Whole Foods with experience as a Regional HR manager for a Fortune 500 company where she provided high and senior level employee relations management and expertise to all U.S. store managers, local division human resources management teams, and store employees regarding all employment and performance related matters. Ms. Ervin-Harris has also successfully served as a Regional Human Resources Manager for a Global 500 company.

15.

In her role, as the Senior Team Leader, TMS Business Partner Team for the Southern Region of Whole Foods, Ms. Ervin-Harris directly led and developed a team of experienced generalists who facilitated and managed all employee relations investigations for the South Region.

16.

Ms. Ervin-Harris' direct leadership led to a sharp increase in the percentage of unemployment claims, EEOC Charges and employment disputes that were won. She

designed senior leadership, store management and employee level training programs to reduce legal liability and increase employee performance at all levels.

17.

Ms. Ervin-Harris' numerous accomplishments spanning her career at Whole Foods include:

- Creating an employee mediation program for the South Region;

- Implementing the region's first investigation tracker to determine costs, per store, of internal HR investigations;

- Overseeing implementation of strategically focused and integrated TMS (HR) initiatives;

- Leading and implementing TMS measurement and evaluation strategies, tactics, recording and analysis at the client and region level;

- Negotiating and managing services and costs with external providers and consulting companies

- Accountability for day-to-day and longer-term operations;

- Monitoring human resources functions, processes and initiatives across the industry to identify advances and trends that might benefit the company;

- Continuously engaging with her human resources colleagues to ensure programs, initiatives and processes were well-integrated, effectively

communicated, and applied in a manner that supported client needs and business objectives;

- Leading and implementing human resources measurement and evaluation strategies, tactics reporting and analysis at the client level;
- Monitoring business partner outcomes and metrics and driving process improvement for human resources and operations;
- Partnering with the legal department and supporting employee investigations; Promoting diversity and inclusion across the organization; and
- Championing ethical practices and confidentiality across the organization.

18.

During her employment at Whole Foods, Ms. Ervin-Harris was diagnosed with two brain tumors. Both affected her memory. One was operable and was removed. The other tumor remained.

19.

Ms. Ervin-Harris informed her manager, Kenisha Adams, of her medical condition, and she sought accommodation for her sometimes-faulty memory due to her brain tumors. Thereafter, instead of accommodating her, Ms. Adams repeatedly harassed Ms. Ervin-Harris often about her memory.

20.

In April 2020, Ms. Ervin-Harris made Ms. Adams' peer, Executive Leader, Matar Diouf, aware of the hostile work environment she was working in under Ms. Adams.  She provided him with examples of Ms. Adams' behavior and stated:

> "Not only is she creating a hostile work environment, Matar, but she's passive aggressive when I speak with her about her behavior. Here's what I'm dealing with – I believe that she's acting this way because of my age and the fact that my remaining brain tumor is affecting my memory at times.  I even reminded her that I didn't want her job, as I've held national responsibility before and I don't want that level of accountability anymore at this point in my career."

Ms. Ervin-Harris asked him for advice and he simply told her that he would be there if she needed a sounding board.  Contrary to Whole Foods Policy, he did not escalate her complaint.

21.

Several times in 2019 and in April 2020, Ms. Ervin-Harris notified store manager, Debbie Pelkie, of her continued negative experiences with Ms. Adams.  Ms. Pelkie told her to notify Reginal Vice President Marc Mastroapolo.  Ms. Ervin-Harris opted to inform Region President, Bobby Turner, instead.

22.

On Tuesday, May 5, 2020, Ms. Ervin-Harris made an official complaint of workplace harassment/hostile working environment to Region President, Bobby Turner.  She notified him of her hostile work environment allegations, gave him

8

examples and said that she thought it was because of her age and because of her tumor-related disabilities. She told him, by phone, that she had, for three years, experienced a hostile work environment from Ms. Adams.  In response, Mr. Turner told Ms. Ervin-Harris that he would not address the issue with her directly, that he would not escalate the concerns but, instead, recommended that Ms. Ervin-Harris have a meeting with Ms. Adams to hold her accountable for her behavior and to make her aware again of her behaviors.

23.

Ms. Ervin-Harris was alarmed by Mr. Turner's refusal to follow company policy, as on three prior occasions, she complained to Ms. Adams without any resulting change in her behavior.

24.

On May 12, 2020, Mr. Turner sent Ms. Ervin-Harris a text message asking for an update as to how her fourth conversation with Ms. Adams went.  She told him that Ms. Adams accepted responsibility for only one issue and did not address her concerns about a hostile work environment and discrimination based on her age and brain tumor-related disability.

25.

On Thursday, May 14, 2020, Ms. Ervin-Harris had yet another conversation with Ms. Adams complaining about her behavior and Ms. Ervin-Harris' concerns.  Ms. Adams did not take ownership of her behaviors except to apologize for falsely accusing Ms. Ervin-Harris of making a mistake in April 2018.  Ms. Ervin-Harris informed Mr. Turner of the conversation and he told her to keep him posted.

26.

During the week of May 18, 2020, Ms. Ervin-Harris received her annual performance review and a 2.75/3 percent salary increase.  Her performance was deemed "good."

27.

On Thursday, July 9, 2020, Ms. Adams and Erin Killick, Executive Leader Employee Relations, informed Ms. Ervin-Harris that she was being placed on paid administrative leave for performance-related allegations.  Ms. Killick would not provide Ms. Ervin-Harris with any information and told her she would speak with her in a few days.  Shortly thereafter and on the same day, Ms. Ervin-Harris learned that her company issued cell phone had been turned off.

28.

On Friday, July 10, 2020, Ms. Ervin-Harris advised Ms. Adams that her daughter had tested positive for COVID-19. She was placed on COVID paid time off ("PTO") with the understanding she would still receive a call from Erin Killick. That call never came.

29.

On Tuesday, July 14, 2020, Ms. Adams texted Ms. Ervin-Harris, informing her that the vendor shut down her corporate credit card, as they believed there had been fraudulent activity on the card. Ms. Ervin-Harris reminded Ms. Adams that she had listed a 99-cent unknown Apple charge as fraudulent. However, Ms. Ervin-Harris never heard from the internal corporate card team as Ms. Adams indicated that she would.

30.

On Thursday, June 18, 2020, David Pinkney, Executive Leader of Operations and Ms. Ervin-Harris were instructed by Kenisha Adams, to issue store manager, Debbie Pelkie, a written warning for failing to follow Ms. Ervin-Harris' separation recommendation. During that conversation, Ms. Pelkie falsely accused Ms. Ervin-Harris of lying and stated that Ms. Ervin-Harris had told her that she could delay the

conversation until Sunday, June 21, 2020.  Ms. Ervin-Harris informed Ms. Adams that Ms. Pelkie was lying and not taking responsibility.

31.

On Tuesday, July 28, 2020, Ms. Ervin-Harris was interviewed as part of an investigation.  She was informed that she was accused of improper management of fraudulent charges with respect to SHRM and Apple, improperly managing her expense report receipts by using the missing/lost affidavit receipt option, and that she had been accused of advising store manager, Debbie Pelkie, that she could not wait until she returned from PTO to terminate a department manager.  She was also accused of having improper conversations with Ms. Pelkie and Region President Bobby Turner when she asked for advice as to how to deal with Ms. Adams' unprofessional conduct when she was creating a hostile work environment.

32.

The accusations directed at Ms. Ervin-Harris were a fabricated smoke screen and pretext for discrimination.

33.

With respect to the Apple charge, Ms. Ervin-Harris was not aware of it and, when she became aware of the charge, she correctly listed it as fraudulent.  With respect to the duplicate SHRM charge, Ms. Ervin-Harris noted that she paid for

several HR employees' SHRM memberships. Importantly, these allegedly "fraudulent" credit card reports were approved each month by Ms. Adams who, prior to July 2020, never had a discussion with Ms. Ervin-Harris about any of these charges.

34.

Other white and younger employees who had misappropriated larger sums and who had not engaged in protected speech were not treated so harshly and were not subject to termination.

35.

The allegation that Ms. Ervin-Harris improperly managed her expense report receipts is also without merit. She merely followed standard procedure with respect to the missing/lost affidavit receipt option.  Again, Ms. Adams and the audit team approved Ms. Ervin-Harris' expense reports each month.

36.

With respect to the allegation that she advised store manager, Debbie Pelkie, that she could not wait until she returned from PTO to terminate a department manager, Ms. Ervin-Harris explained that that was simply false.  It is worth noting that a region leadership and human resources professional, Jenn Dixon and Cam Boivin, were involved in that transaction. Yet, neither of them were investigated related to this allegation.

37.

During the investigation interview, Ms. Ervin-Harris was asked by Erin Killick if she mentioned to store manager, Debbie Pelkie, that Ms. Adams had sarcastically made a comment about Ms. Ervin-Harris' memory challenges.   Ms. Ervin-Harris informed Ms. Killick that Ms. Adams knew that she was older and that she had a brain tumor and that it affected her memory.   Ms. Ervin-Harris told Ms. Killick that she had confronted Ms. Adams before about her concerns about being treated differently based upon her age and disability.

38.

The accusation that Ms. Ervin-Harris had an improper conversation with Ms. Pelkie asking advice about how to deal with a hostile working environment generated by Ms. Adams concerns protected speech, and Ms. Ervin-Harris so characterized that during the interview.

39.

Other unsubstantiated accusations directed at Ms. Ervin-Harris include being accused of intentionally lying when she said that she assigned an Amazon employee complaint to her direct report, Van Trieu, to investigate though she had not done so. Ms. Ervin-Harris advised that she did not remember the case as that store had over ten investigations, and that the entire region had multiple active Amazon complaints and

that she may have failed to remember one correctly because of her brain tumor. In addition, Ms. Ervin-Harris was accused of intentionally lying when she stated that she forwarded newsletter information to Regional Vice President, Marc Mastroapolo. In response, she stated that she had not remembered what was being referred to but that she had simply gotten her emails confused.

40.

Other similarly situated white and younger employees, who suffered from memory problems and/or forgot to perform tasks not related to a disability were given a pass; however, on August 5, 2020, Ms. Ervin-Harris was terminated by Ms. Adams and Mr. Mastroapolo, allegedly for performance-related issues which were a pretext for discrimination as set forth above.

**<u>COUNT I</u>**
**<u>AGE DISCRIMINATION IN VIOLATION OF THE ADEA</u>**

41.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

42.

Plaintiff is fifty-eight years old and, at all relevant times, was an employee protected by the ADEA.

15

43.

At the time of her termination, Plaintiff was qualified for the position she held based on her record of performance and length of service.

44.

Plaintiff's supervisors, including but not limited to Kenisha Adams, harbored a discriminatory animus toward older employees.

45.

Kenisha Adams among others, discriminated against Plaintiff in violation of the ADEA by taking adverse actions against her, including but not limited to not allowing her to check her notes and have additional time to answer her questions; on occasion, correct errors; and terminating her employment.

## COUNT II
## RACE DISCRIMINATION IN VIOLATION OF TITLE VII

46.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

47.

Plaintiff is a member of a protected class in that she is Black.

48.

At all relevant times, Plaintiff was an "employee" of Defendant Whole Foods

as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq*.

49.

At all relevant times, Defendant Whole Foods was an "employer" as that term is defined by Title VII, 42 U.S.C. § 2000e *et seq.*

50.

Defendant Whole Foods subjected Plaintiff to disparate treatment in the terms and conditions of employment and subjected her to adverse employment actions based on her race, including, but not limited to: (1) creating barriers to success based on Plaintiff's race that her similarly situated white colleagues were not subjected to and (2) terminating her employment.

51.

Defendant Whole Foods lacks any legitimate justification for subjecting Plaintiff to the disparate treatment and adverse employment actions complained of above, and/or any such purported justifications are mere pretext for race discrimination.

52.

The above-pled actions constitute race discrimination in violation of Title VII of the Civil Rights Act of 1964.

53.

The actions of Defendant Whole Foods in subjecting Plaintiff to disparate treatment and the adverse actions complained of above were willful, deliberate, and intended to cause Plaintiff harm, and/or were committed with reckless disregard for the harm caused to Plaintiff and were in derogation of her federally protected rights.

54.

Plaintiff's race was a "motivating factor" in Whole Foods' decision(s) to subject her to discrimination on the basis of her race as pled above.

55.

As a direct and proximate result of Defendant Whole Foods' violations of Title VII, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

56.

As a result of the above-pled violations of Title VII, Plaintiff is entitled to recover her lost wages and economic benefits of her employment, compensatory damages for emotional distress, as well as front pay and other equitable relief, punitive damages and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT III
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

57.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

58.

Plaintiff and Defendant were parties to an employment agreement under which Plaintiff worked for Defendant and Defendant compensated Plaintiff for her work.

59.

Plaintiff performed her contractual obligations under her employment agreement.

60.

42 U.S.C. § 1981 prohibits Defendant from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of her employment agreement with Defendant.

61.

Defendant violated Plaintiff's rights under 42 U.S.C. § 1981 on the basis of her race by, *inter alia*, (1) creating barriers to success based on Plaintiff's race that her similarly situated white colleagues were not subjected to and (2) terminating her

employment.

62.

Plaintiff's race was a but-for factor in Defendant's decision(s) to subject her to discrimination as pled above.

63.

As a direct and proximate result of Defendant's violations of 42 U.S.C. § 1981, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

64.

Defendant's actions were willful, wanton, and intentionally directed to harm Plaintiff.

65.

Defendant's actions were reckless and were taken in willful disregard of the probable consequences of its actions.

66.

Pursuant to 42 U.S.C. § 1981, Plaintiff is entitled to damages in an amount to be determined by the trier of fact, including back pay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, and pursuant to 42

U.S.C. § 1988, attorneys' fees and costs of litigation, as well as all other relief recoverable under § 1981.

## COUNT IV
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADAAA

67.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

68.

At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) suffered mental and/or physical impairments that substantially limited one or more major life activity, (b) had a record of such impairments, and/or (c) was regarded by Defendant as a person with such impairments.

69.

Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of the job with or without a reasonable accommodation.

70.

Defendant discriminated against Plaintiff in violation of the ADAAA by allowing Adams to subject her to a hostile work environment, taking adverse actions

against her, including but not limited to not allowing her to check her notes and have additional time to answer her questions; on occasion, correct errors; and terminating her employment because of her disability.

71.

In so doing, Defendant knowingly and intentionally discriminated against Plaintiff in violation of the ADAAA.

72.

In taking these adverse actions against Plaintiff, Defendant unlawfully discriminated against her based on her disability in violation of the ADAAA.

73.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

74.

Plaintiff is entitled to an award of back pay and benefits, front pay, liquidated damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

75.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

76.

In taking these adverse actions against Plaintiff, Defendant unlawfully discriminated against her based on her disability in violation of the ADAAA, 42 U.S.C. § 12112(b)(4).

## COUNT V
## DISABILITY DISCRIMINATION - FAILURE TO ACCOMMODATE

77.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

78.

In compliance with the ADAAA, Plaintiff formally requested a reasonable accommodation by seeking accommodation for her memory.

79.

Defendant failed to provide Plaintiff with reasonable accommodations as required under the ADAAA and instead punished her for her memory issues, refusing to accommodate her disability.

80.

Plaintiff reported her manager's harassment and refusal to accommodate her disability to management which refused to take steps to accommodate Plaintiff or to stop the harassment.

81.

Emory University's actions, as described in this Complaint, constitute a failure to accommodate Plaintiff Ingrid Ervin Harris' disability in violation of the ADAAA.

**COUNT VI**
**RETALIATION IN VIOLATION OF THE ADAAA**

82.

Plaintiff incorporates by reference all the preceding paragraphs of the Complaint as if they were fully set forth herein.

83.

Plaintiff engaged in statutorily protected activity by, among other things, exercising or attempting to exercise or enjoy her rights under the ADAAA, including but not limited to, requesting an accommodation for her sometimes-faulty memory.

84.

Defendant unlawfully retaliated against Plaintiff by, including, but not limited to, not granting her request for an accommodation after she repeatedly articulated her memory challenges due to her disability and subsequently terminating her

employment.

85.

Defendant's actions, in subjecting Plaintiff to retaliation for engaging in protected activity constitute unlawful intentional retaliation in violation of the ADAAA.

86.

Defendant's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

87.

As a result of Defendant's unlawful actions, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial as well as emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities compensable under the ADAAA, for which

Defendant is liable.

88.

Defendant violated the ADAAA willfully, wantonly, and intentionally to harm Plaintiff and her federally protected rights. Additionally, and in the alternative, Defendant acted with reckless disregard for Plaintiff and her federally protected rights and she is therefore entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That this Court adjudicate and declare that Defendant has violated Plaintiff's federally protected rights as pled above;

B. That this Court permanently enjoin Defendant from committing similar violations in the future;

C. That this Court award Plaintiff back pay, all lost wages and benefits, pay increases Plaintiff would have received absent her unlawful termination, and all other benefits of employment reducible to a dollar value;

D. That this Court award Plaintiff pre-judgment and post-judgment interest as required by law;

E. That this Court award Plaintiff compensatory damages for emotional pain

and suffering as determined by the enlightened conscience of a jury;

F.  That this Court award Plaintiff punitive damages pursuant to Title VII, Section 1981, the ADAAA, and all other applicable federal and state laws in an amount to be determined by the trier of fact;

G.  That the court award Plaintiff liquidated damages under the ADEA for Defendant's willful violation of the law;

H.  That this Court order Defendant to reinstate Plaintiff with all compensation and benefits made retroactive to her last day of employment or, in lieu of same, award front pay;

I.  That this Court award Plaintiff her reasonable attorneys' fees and expenses; and

J.  That this Court grant such additional relief as may be proper and just.

Respectfully submitted this 12th day of September, 2023.

BUCKLEY BALA WILSON MEW LLP

By:   */s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
edbuckley@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone:  (404) 781-1100
Facsimile:  (404) 781-1101

Counsel for Plaintiff