## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| DR. PEGGY LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | File No.: |
| | ) | |
| EMORY UNIVERSITY, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

COMES NOW Plaintiff, Dr. Peggy Lee ("Plaintiff" or "Dr. Lee"), and submits the following Complaint for Damages and Equitable Relief against Emory University ("Defendant" or "Emory") showing the Court as follows:

## INTRODUCTION

1.

This is an employment discrimination case arising from unlawful disability discrimination and retaliation in violation of the Americans with Disabilities Act Amendments Act ("ADAAA").

2.

Plaintiff herein claims (1) disability discrimination, (2) failure to accommodate her disability and (3) retaliation in violation of the ADAAA against Plaintiff for having engaged in protected activity.

3.

Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay, liquidated damages, compensatory damages, punitive damages, and attorneys' fees and costs of litigation to remedy these civil rights violations.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.

Plaintiff has satisfied all administrative prerequisites to perfect her claims of disability discrimination and retaliation under the ADAAA. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue for her claims under the ADAAA and timely brings this lawsuit following receipt of the Notice of Right to Sue.

## JURISDICTION AND VENUE

5.

This action arises under the Americans with Disabilities Act Amendments Act

("ADAAA"), 42 U.S.C. § 12101 *et seq*., and other applicable federal laws.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

6.

This Court has personal jurisdiction over all the parties to this action.

7.

Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## **PARTIES**

8.

Plaintiff Dr. Peggy Lee was, at all relevant times, a resident of the Northern District of Georgia, Atlanta Division.

9.

Defendant, Emory University is a Georgia-based educational institution with its principal place of business located at 201 Dowman Drive, Atlanta, GA 30322. At all relevant times, Emory University employed Plaintiff Dr. Peggy Lee and is an entity subject to the provisions of the ADAAA. It can be served with summons and complaint by serving Amy Adelman at 201 Dowman Drive, 312 Administration Building, Atlanta, Georgia 30322.

10.

Defendant Emory is subject to this Court's jurisdiction.

## FACTS

11.

In September 2021, Plaintiff Dr. Peggy Lee, a highly qualified academic scholar, was hired by Emory University for the position of "Assistant Professor" under a 9-month contract.

12.

Plaintiff was employed by Emory University, specifically within the James Weldon Johnson Institute for the Study of Race and Difference (JWJI).

13.

Plaintiff's appointment reflected Emory University's recognition of her expertise and academic contributions.

14.

During the Winter semester, which spanned from January to April 2022, Plaintiff was responsible for teaching within the Department of African American Studies at Emory University.

15.

This teaching assignment was an integral part of her responsibilities as an

"Assistant Professor."

16.

Notably, Emory faculty with the rank of "Assistant Professor," are eligible and entitled to apply for contract renewal.

17.

On the morning of November 17, 2021, Plaintiff initiated contact with her supervisor, Andra Gillespie, via email, expressing her need for a conversation regarding a personal matter.

18.

Later that same day, a phone call was arranged between Plaintiff and Andra Gillespie.

19.

During this conversation, Plaintiff made the significant disclosure that she had been recently diagnosed with breast cancer.

20.

Plaintiff candidly shared her emotional reaction to this shocking diagnosis and her mounting concerns about the implications for her professional commitments, including teaching.

21.

At the time of this disclosure, Plaintiff had already submitted her course proposal for the Winter semester.

22.

However, her medical condition was still in the early stages, with further tests required, and the specifics of her impending surgery and treatment remained uncertain.

23.

Gillespie assured Plaintiff that her medical disclosure would be kept confidential, with the exception of her obligation to inform select colleagues, including Rhonda Patrick (Assistant Director of JWJI), Michelle Yvonne Gordon (Director of Undergraduate Studies of African American Studies), and what was presumed to be Dean of Faculty, Deboleena Roy.

24.

Plaintiff trusted Gillespie's professional judgment and believed that her supervisor was acting in her best interests.

25.

Plaintiff and Gillespie agreed to reevaluate the situation after the Thanksgiving holiday, allowing Gillespie to gather more information and advice related to Peggy

Lee's health crisis.

26.

Emory provided no reference to or recommendation that Plaintiff should engage with the Department of Accessibility Services (DAS) or submit official medical documentation.

27.

Recommending that an employee engage with the DAS and submit medical documentation is standard procedure in cases of employee medical disclosure requiring accommodations under ADAAA regulations.

28.

Emory's initial handling of the disclosure was not aligned with DAS training and protocol, and deprived Dr. Lee of an opportunity to engage in an interactive dialogue in order to seek accommodations for her disability.

29.

Following the Thanksgiving holiday, Gillespie reached out to Plaintiff via email on November 29, 2021, to check in on her well-being. In response, Plaintiff requested an in-person meeting to discuss her situation further.

30.

On Friday, December 3, 2021, Plaintiff and Gillespie convened for an in-person

meeting at the JWJI conference room.

31.

Plaintiff had sought permission to bring her partner, Angel Valant, to the meeting as emotional support, a request that Gillespie approved.

32.

During the meeting, Dr. Lee explained to Dr. Gillespie that her doctor ordered more testing and did not yet know what her treatment plan would be. Dr. Lee noted that if she had to have a bilateral mastectomy, then teaching would be difficult, and she would need time to recover as a reasonable accommodation.

33.

Gillespie provided several key updates during this meeting:

a.  She assured Plaintiff that her funding for the academic year 2021-2022 would not be jeopardized due to her health status.

b.  Regarding Plaintiff's Winter semester teaching responsibilities, Gillespie conveyed the Dean's strong preference that the course not be canceled. She mentioned that they had been "brainstorming accommodations," mainly focused on transitioning the course to an online format and securing a graduate student instructor to assist Plaintiff during the semester.

c.   Gillespie discussed the possibility of extending Plaintiff's funding for the next

academic year (2022-2023) and mentioned that there was an "extenuating circumstances" clause within the Mellon Foundation's grant for potential research funding extension. While not guaranteed, she expressed her intention to reach out to Mellon about the possibility of extending Plaintiff's funding.[1]

34.

Plaintiff also mentioned her hope for a "minor" surgery (lumpectomy) and avoidance of chemotherapy but expressed her concerns about the challenges of teaching in the event of a double mastectomy, emphasizing her need for time to recover in such a scenario.

35.

Plaintiff's perception was that Gillespie was her advocate and representative in the accommodation process, which prevented her from engaging with the DAS, the entity responsible for ensuring ADA compliance in accommodation procedures.

36.

Plaintiff was not referred to the DAS for third-party representation in the creation of accommodations, and instead her direct supervisor and the Dean of Faculty "brainstormed accommodations" without her participation.

---

[1] The Mellon Foundation provided a grant which funded Plaintiff's Post-Doctoral Fellowship.

37.

After the meeting, Gillespie promptly arranged for a graduate student, Ms. Ra'Niqua Lee, to assist Plaintiff with her course.

38.

On January 26, 2022, Plaintiff and Gillespie held a phone conversation to discuss updates since their December meeting.

39.

During this conversation, Plaintiff sought information regarding health insurance and the possibility of extending it beyond her contract's expiration in May 2022.

40.

Gillespie conveyed that extending Plaintiff's health insurance was highly unlikely but mentioned her intention to "make a case to the Dean."

41.

Gillespie suggested alternative options, including researching COBRA health insurance through Emory, exploring coverage through Plaintiff's partner's insurance, or securing health coverage through a new job.

42.

The idea of obtaining coverage through a new job added to Plaintiffs anxiety

about her job prospects and the pressure to secure employment outside of Emory in a competitive academic job market to maintain her health coverage.

43.

Additionally, during this conversation, Plaintiff engaged in protected activity when she raised the topic of accommodations with Gillespie once more.

44.

During this conversation, Plaintiff inquired about applying to renew her contract for a second year at Emory.

45.

In response to Plaintiff's inquiry, Gillespie stated that given Plaintiff's medical condition, she would need to "make a case to the Dean," and told Dr. Lee she was not sure Dr. Lee could apply for a second year.

46.

In stating that she was not sure Dr. Lee could apply for a second year, Gillespie also made an inaccurate statement, suggesting that Plaintiff had likely not accomplished significant research work during the year due to her diagnosis.

47.

This assertion was untrue, and it led Plaintiff to send an immediate follow-up email to Gillespie, clarifying that she had indeed maintained a substantial workload,

including research efforts, despite her health challenges.

48.

Despite this email, Plaintiff was not provided with the opportunity to apply for a contract renewal.

49.

Plaintiff expressed her commitment to her academic responsibilities and her willingness to resubmit an application for a second-year fellowship. However, she received no follow-up or clarity on an application for a second year. Rather, Dr. Gillespie allowed the deadline to pass and neither she nor anyone else at Emory permitted Dr. Lee to renew her contract for a second year.

50.

Gillespie considered Plaintiff's diagnosis a problem for Emory and sought to eliminate Plaintiff from her department.

51.

On February 10, 2022, Plaintiff's surgeon ultimately recommended bilateral mastectomy surgery as her best treatment route.

52.

With the semester well under way, Plaintiff felt she had no choice but to continue teaching her course while managing the most emotional and physically

difficult time of her life.

53.

Teaching also shaped Plaintiff's decision to forgo same-day reconstruction after the mastectomy because of the increased recovery time and additional surgery.

54.

While six weeks is the general recovery recommendation for the procedure, Plaintiff strategically scheduled her mastectomy date for February 22, 2022, to limit the impact on her teaching.

55.

Plaintiff only had three weeks of recovery, and it included the spring break week.

56.

Plaintiff prepared pre-recorded interactive lectures to play in class for the two Tuesdays she would miss, and she had the graduate instructor lead the two Thursday lectures she would miss.

57.

On March 14, 2022, Plaintiff requested an in-person meeting with Gillespie and Rhonda Patrick to discuss her experiences and concerns over the past year, particularly related to her cancer diagnosis.

58.

An in-person meeting was scheduled, but only Plaintiff and Gillespie were present.

59.

During this meeting, Plaintiff expressed her intent to reflect on the past months, share her perspectives and constructive feedback, and discuss ways to improve future responses to similar situations.

60.

Plaintiff shared three main points during the meeting:

a. Communication regarding accommodations should involve the Department of Accessibility Services (DAS) immediately, rather than reporting directly to the Dean.

b. A provision should be in place to accommodate an additional fellowship year for individuals facing unforeseen health crises or personal challenges.

c. Plaintiff disclosed her exhaustion and the challenges she faced throughout the year.

61.

Gillespie engaged with these points and defended the necessity of reporting to the Dean. However, she expressed empathy regarding Plaintiff's situation due to her

health crisis and the pressure to secure a job.

62.

During this meeting, Plaintiff experienced sudden vertigo, a physical manifestation of stress, further indicating the emotional and physical toll these discussions were taking on Plaintiff.

63.

Towards the end of the meeting, Gillespie inquired about Plaintiff's job market status.

64.

Plaintiff shared that she had secured both a prestigious postdoctoral fellowship and a tenure-track position at a research-intensive university.

65.

In response, Gillespie offered to extend Plaintiff's health insurance and stipend at Emory.

66.

The extension was granted with relative ease, provided Plaintiff established a start date for her new job and informed Gillespie accordingly.

67.

On April 13, 2022, Plaintiff was scheduled for an exit interview with Rhonda

Patrick, who was departing JWJI for a new job in the private sector. The exit interview was conducted via Zoom.

68.

During this exit interview, Patrick made an assumption that Peggy Lee would continue for another year with JWJI. This assumption was based on incorrect information and was not aligned with the actual status of Peggy Lee's participation for the next academic year.

69.

Plaintiff clarified that her contract would not be renewed and so she had instead secured a postdoctoral fellowship and a tenure-track position at a research-intensive university, dispelling the misconception that she would be continuing at JWJI.

70.

The exit interview, which Plaintiff had anticipated as an opportunity to share her concerns and experiences, felt rushed and lacked engagement.

71.

On April 20, 2022, Plaintiff met with Joelle Butler, the Associate Director of Emory's DAS.

72.

During this meeting, Plaintiff provided a detailed account of the discrimination

and challenges she had faced at Emory due to her cancer diagnosis.

73.

Butler acknowledged the severity of Plaintiff's experiences, characterizing them as "atrocious."

74.

Importantly, Butler confirmed that Gillespie had not adhered to the established protocol in handling Plaintiff's case, highlighting significant deviations from ADAAA accommodation guidelines. Shockingly, Dr. Lee subsequently learned that because she held the rank of "Assistant Professor" she was entitled to apply for renewal – a fact that Dr. Gillespie would have known, but instead failed to disclose to Dr. Lee.

75.

As a result, Plaintiff's contract was not renewed, and her employment terminated in June 2022.

## <u>COUNT I</u>
## <u>Disability Discrimination in Violation of the ADAAA</u>

76.

Plaintiff incorporates paragraphs 1-75 of this Complaint by reference as if they were fully set forth herein.

77.

At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) was diagnosed with breast cancer, which qualifies as a disability under the ADAAA, (b) had a record of such condition, and/or (c) was regarded by Defendant as a person with such condition.

78.

Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because she was able to perform the essential functions of her job with or without a reasonable accommodation.

79.

Plaintiff, a highly qualified academic scholar, began working for Emory in the Fall of 2021.

80.

Throughout her employment, Plaintiff's performance consistently met or exceeded the Emory's expectations.

81.

In compliance with the ADAAA, Plaintiff formally requested a reasonable accommodation by seeking time to recover from a potential mastectomy, which ultimately occurred, health insurance and the possibility of extending it beyond her

contract's expiration in May 2022, as well as an opportunity to apply to renew her contract for a second year at Emory.

82.

These accommodations were necessary to address her disability as Emory had provided no reference to or recommendation that Plaintiff should engage with the DAS or submit official medical documentation upon notification of Plaintiff's disability.

83.

As a direct consequence of Plaintiff being denied the opportunity to apply for a contract extension, Emory terminated Plaintiff's employment, effective June 30, 2022.

84.

This action was taken despite Plaintiff's eligibility, as she held the rank of "Assistant Professor," which entitled her to apply for renewal.

85.

Emory was fully aware of this entitlement, making Plaintiff's denial of the application to extend her contract particularly unjust.

86.

Plaintiff's request for accommodation was reasonable and in accordance with

the ADAAA's requirements.

87.

However, instead of providing the required accommodation, Emory unlawfully terminated Plaintiff's employment and denied her the opportunity to apply for contract renewal.

88.

By terminating Plaintiff's employment and denying her the opportunity to apply for renewal, Emory engaged in disability discrimination, as defined by the ADAAA.

89.

Defendant's discriminatory conduct not only violates the ADAAA's prohibition against disability discrimination but also undermines the legislative intent of the law, which seeks to protect individuals with disabilities from unjust treatment in the workplace.

90.

As a direct result of Emory's disability discrimination, Plaintiff suffered economic losses, emotional distress, pain and suffering, and other related harms.

91.

Defendant discriminated against Plaintiff in violation of the ADAAA by

taking adverse actions against her, including but not limited to terminating her employment and denying her the opportunity to apply for contract renewal.

92.

In so doing, Defendant knowingly and intentionally discriminated against Plaintiff in violation of the ADAAA.

93.

As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

94.

Plaintiff is entitled to an award of back pay and benefits, front pay, compensatory damages, punitive damages, injunctive relief, attorneys' fees, and all other appropriate damages, remedies, and other relief available under the ADAAA and all federal statutes providing remedies for violations of the ADAAA.

95.

Defendant's actions were undertaken intentionally, willfully, and maliciously with respect to, or with reckless disregard for, Plaintiff's federally protected rights, and she is therefore entitled to punitive damages.

96.

In taking these adverse actions against Plaintiff, Defendant unlawfully discriminated against her based on her disability in violation of the ADAAA, 42 U.S.C. § 12112(b)(4).

## COUNT II
## Disability Discrimination - Failure to Accommodate

97.

Plaintiff realleges and incorporates by reference paragraphs 1-96 of this Complaint.

98.

In compliance with the ADAAA, Plaintiff formally requested a reasonable accommodation by seeking time to recover from a potential mastectomy, which ultimately occurred, health insurance and the possibility of extending it beyond her contract's expiration in May 2022, as well as an opportunity to apply to renew her contract for a second year at Emory.

99.

Defendant failed to provide Plaintiff with reasonable accommodations as required under the ADAAA. This includes not referring her to the DAS for third-party representation and not allowing her direct participation in the accommodation/ interactive process.

100.

Defendant's refusal to allow Plaintiff to apply for a renewed contract when she was able to perform the essential functions of her job effectively denied Plaintiff that accommodation by terminating her employment.

101.

Emory University's actions, as described in this Complaint, constitute a failure to accommodate Plaintiff Dr. Peggy Lee's disability in violation of the ADAAA.

## COUNT III
## Retaliation in Violation of the ADAAA

102.

Plaintiff incorporates paragraphs 1-101 of this Complaint by reference as if they were fully set forth herein.

103.

At all relevant times, Plaintiff was an individual with a "disability" as defined by the ADAAA, 42 U.S.C. § 12102(1), because she (a) was diagnosed with breast cancer, which qualifies as a disability under the ADAAA, (b) had a record of such condition, and/or (c) was regarded by Defendant as a person with such condition.

104.

Plaintiff was at all relevant times a "qualified individual" as that term is defined by the ADAAA, 42 U.S.C. § 12111(8), because he was able to perform the

essential functions of the job with or without a reasonable accommodation.

105.

Plaintiff requested reasonable accommodations from Defendant in the form by seeking time to recover from a potential mastectomy, which ultimately occurred, health insurance and the possibility of extending it beyond her contract's expiration in May 2022, as well as an opportunity to apply to renew her contract for a second year at Emory.

106.

Plaintiff's request for reasonable accommodation constituted protected conduct under the ADAAA.

107.

Defendant retaliated against Plaintiff for exercising her rights under the ADAAA, in violation of the Americans with Disabilities Act Amendments Act ("ADAAA") and other applicable federal laws.

108.

After Plaintiff notified her supervisor at Emory about her disability and requested reasonable accommodation, including seeking time to recover from a potential mastectomy, which ultimately occurred, health insurance and the possibility of extending it beyond her contract's expiration in May 2022, as well as

an opportunity to apply to renew her contract for a second year at Emory, Defendant subjected Plaintiff to retaliatory actions.

109.

Despite Plaintiff's exemplary performance during her employment with Emory, the University terminated Plaintiff's employment, based on pretextual allegations concerning her research productivity. This claim is false and was made as a pretext to terminate Plaintiff in retaliation for Plaintiff's exercise of her rights under the ADAAA.

110.

Defendant refused to allow Plaintiff to apply to renew her contract in retaliation for her protected conduct of requesting a reasonable accommodation under the ADAAA.

111.

Defendant's retaliatory conduct is a clear violation of the ADAAA and federal law, which prohibit retaliation against employees for exercising their rights to request accommodations and oppose discriminatory practices.

112.

Defendant's termination of Plaintiff was an intentional and willful violation of the ADAAA in violation of Plaintiff's rights thereunder.

113.

As a result of Defendant's retaliatory actions, Plaintiff suffered additional economic losses, emotional distress, pain and suffering, and other related harms.

114.

Defendant's actions amount to violations of the ADAAA, which prohibits employers from discriminating against an individual because she has opposed any act or practice made unlawful under the ADAAA, 42 U.S.C. § 12203(a), and also prohibits employers from coercing, intimidating, threatening, or interfering with any individual in the exercise or enjoyment of rights under the ADAAA on account of her having exercised or enjoyed or attempted to exercise or enjoy such rights, 42 U.S.C. § 12203(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

    A. That this Court adjudicate and declare that Defendant have violated Plaintiff's federally protected rights as pled above;

    B. That this Court permanently enjoin Defendant from committing similar violations in the future;

    C. That this Court award Plaintiff back pay, all lost wages and benefits,

pay increases Plaintiff would have received absent his unlawful termination, and all other benefits of employment reducible to a dollar value;

D. That this Court award Plaintiff pre-judgment and post-judgment interest as required by law;

E. That this Court award Plaintiff compensatory damages for emotional pain and suffering as determined by the enlightened conscience of a jury;

F. That this Court award Plaintiff punitive damages pursuant to the ADAAA, and all other applicable federal and state laws in an amount to be determined by the trier of fact;

G. That this Court award Plaintiff his reasonable attorneys' fees and expenses; and

H. That this Court grant such additional relief as may be proper and just.

Respectfully submitted this 12th day of September 2023.

BUCKLEY BALA WILSON MEW LLP

By:   */s/ Edward D. Buckley*
Edward D. Buckley
Georgia Bar No. 092750
ebuckley@bbwmlaw.com
Danny D. Patterson, Jr.
Georgia Bar No. 941731

dpatterson@bbwmlaw.com

600 Peachtree Street, NE
Suite 3900
Atlanta, Georgia 30308
Telephone:  (404) 781-1100
Facsimile:   (404) 781-1101

Counsel for Plaintiff