UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| CASSANDRA ROSE,<br>Plaintiff,<br><br>v.<br><br>DELTA AIRLINES, INC.,<br>Defendant. | FILE NO.<br><br><br>**COMPLAINT**<br>(Jury Trial Requested) |

COMES NOW the Plaintiff, CASSANDRA ROSE (hereinafter "Plaintiff"), by and through her undersigned attorneys, hereby files this Complaint for damages and other legal and equitable relief from DELTA AIRLINES, INC. ("Defendant") for violations of Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 *et seq*.; Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.;* and Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq,* and for negligent hiring, supervision and retention; and intentional and negligent infliction of emotional distress.

## NATURE OF THE CASE

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of wrongful termination, discrimination, and retaliation. Defendant's acts of wrongful termination, discrimination and retaliation are in violation of the Age Discrimination in Employment Act (hereinafter "ADEA"), Title VII, Americans with Disabilities Act (hereinafter "ADA") and any other causes of action that can be inferred from the facts set forth herein.

2. On or about January 10, 1994, Defendant employed Plaintiff at its airline headquarters located at 1030 Delta Boulevard, Atlanta, Georgia 30354. Plaintiff endured unlawful discrimination and retaliatory actions as a direct consequence of her engagement in activities protected under the ADEA, Title VII, ADA, and various other applicable statutes. This mistreatment ultimately resulted in Plaintiff's unjust termination on March 9, 2022, forming the basis of this complaint.

## JURISDICTION & VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of

Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; 42 U.S.C. §§ 2000e *et seq.,* as amended, and (iii) 42 U.S.C. §§ 1981 *et seq.,* as amended.

4.  This Court has subject matter jurisdiction over Claims Six through Eight pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy giving rise to Claims One through Five.

5.  Venue is proper in this Court in as much as the unlawful employment practices occurred in this judicial district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c), and (d), in that Defendant maintains offices and conducts business in this district.

## PARTIES

6.  Plaintiff is a 58-year-old female who has been aggrieved by Defendant's actions. At all relevant times, Plaintiff is and has been a resident of Georgia.

7.  At all relevant times, Plaintiff was Defendant's employee and therefore covered by the ADEA, Title VII, and the ADA.

8.  Defendant's registered address is 1030 Delta Boulevard, Atlanta, Georgia 30354. Upon information and belief, Defendant employs approximately ninety-five thousand (95,000) persons.

9.  During all relevant times, Defendant has been an employer covered by the ADEA, Title VII, and the ADA.

10. Defendant transacted and continues to transact business in Georgia by, among other things, employing persons at 1030 Delta Boulevard Atlanta, Georgia, 30354 located within Georgia and within this judicial district.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11. Plaintiff, who has herein alleged claims pursuant to the ADEA, Title VII, and the ADA, exhausted her federal administrative remedies by timely filing a complaint with the Equal Employment Opportunity Commission (hereinafter the "EEOC") and receiving a right to sue letter on June 14, 2023. Plaintiff has duly exhausted all of the required administrative proceedings and now properly files this Complaint in this Court.

## STATEMENT OF FACTS

12. Plaintiff commenced her employment with Defendant on January 10, 1994, at the age of 29-years-old.

13. On March 9, 2013, Plaintiff was promoted to the position of Elite Service Representative.

14. Plaintiff's employment as an Elite Service Representative was terminated on March 9, 2022.

15.  Plaintiff was 57-years-old at the time of her termination.

16. At all relevant times, during her twenty-eight years of employment with Defendant, Plaintiff performed her job duties and responsibilities in an

exemplary manner. As an Elite Services Representative, Plaintiff's job duties involved, *inter alia:* (1) picking up Defendant's "elite" customers and executives from their flights and transporting them to their drivers or curbside; and (2) expediting "elite" customers and executives through airport security and airport lines while avoiding the general area of the airport.

17. At all relevant times, Plaintiff was able to perform her basic and essential functions of her job duties.

18. Upon information and belief, at all relevant times, Defendant employed a Manger of the Elite Service Department, named Marcus Caldwell, who oversaw operations within the department.

19. Upon information and belief, at all relevant times, Defendant employed an additional Manager, named Spencer Hutchinson, who assisted in overseeing operations of the Elite Services Department.

20. Upon information and belief, at all relevant times Marcus Caldwell had the authority to hire employees to work for Defendant in the Elite Services Department.

21. Upon information and belief, Marcus Caldwell possessed the authority to terminate employees of the Defendant working within the Elite Services Department.

22. Upon information and belief, Marcus Caldwell had the authority to discipline Defendant employees who worked in the Elite Services Department.

23. Upon information and belief, Marcus Caldwell was responsible for implementing Defendant's policies and procedures regarding employees of Defendant who worked in the Elite Services Department, specifically including any anti-harassment and retaliation policies.

24. On or about June 19, 2021, Plaintiff was falsely accused and written up by Marcus Caldwell on the premise that Plaintiff bumped into another employee, Alicia Adams, while walking past her in the hallway at work.

25. Plaintiff was not given the opportunity to respond to the incident by Defendant and was suspended without pay, pending an investigation by Defendant.

26. On or about June 29, 2021, Plaintiff was reinstated, as the investigation revealed that the allegations set forth in paragraph 24 were frivolous.

27. Defendant failed to reprimand Marcus Caldwell for the false report; rather, it promoted him to the position of General Manager.

28. On or about June 19, 2021, Plaintiff was diagnosed by her doctor with major depressive disorder, mixed anxiety, and depressed mood due to the level of stress and mistreatment she was experiencing at work by her supervisors.

29. Upon information and belief, Defenant by its agents constantly subjected Plaintiff to disparate treatment due to her age, gender, and disability.

30. Plaintiff's doctor placed her on medical leave through September 16, 2021, under the Family and Medical Leave Act (hereinafter "FMLA").

31. Said FMLA request stemed from a condition that was caused by Defendant.

32. On or about September 9, 2021, Plaintiff had a follow-up doctor's appointment. Plaintiff's doctor extended her medical leave through October 15, 2021.

33. On or about November 12, 2021, Plaintiff returned to work from her medical leave.

34. Upon Plaintiff's return to work, she immediately began to endure a pattern of harassment and hostile work environment by Marcus Caldwell's actions of following, stalking, taunting, and locking Plaintiff out of her vehicle. Moreover, Marcus Caldwell did not treat Defendant's employees under 40-years-old in the manner set forth herein. Additionally, Marcus Caldwell did not treat Defendant's male employees in the manner set forth herein. Lastly, Marcus Caldwell did not treat Defendant's non-disabled employees in the manner set forth herein.

35. On or about November 30, 2021, Plaintiff received a call to pick up a platinum medallion member and his cousin from their incoming flight to the Atlanta airport.

36. Plaintiff performed her jobs duties as normal, and picked up the platinum medallion member to bring him from the plane directly to his driver.

37. It was part of Defendant's customs and practices for Elite Services Representatives to pick up their elite customers and their guests traveling with them on the same flight.

38. Unbeknownst to Plaintiff, agents from the Federal Bureau of Investigations (hereinafter "FBI"), were waiting for the platinum medallion member to deplane.

39. After Plaintiff transported the platinum medallion member, he offered her a tip and Plaintiff refused the tip, but the platinum medallion member left the $20.00 tip in the cupholder and exited the vehicle.

40. Upon information and belief, at all relevant times prior to Plaintiff's termination, Defendant had a policy in effect that allowed employees to accept tips from customers in the amount of Twenty-Five Dollars or less.

41. Upon information and belief, Defendants changed this tipping policy to prohibiting tips, after terminating Plaintiff.

42. On or around January 3, 2022, Plaintiff complained to Spencer Hutchinson about the bullying and harassment that she had been subjected to by Marcus Caldwell and Alicia Adams due to Plaintiff's age, gender, and disability.

43. On or about January 4, 2022, Plaintiff used her paid time off to take a mental vacation.

44. On the morning of February 2, 2022, Plaintiff's doctor diagnosed her with vitiligo, which is a skin disorder caused by the work-related stress and mistreatment she was experiencing at work by her supervisors.

45. As a result, Plaintiff informed her supervisors that she suffered from this condition and needed to take time off from work to recover.

46. Upon information and belief, Plaintiff's doctor directly informed Defendant of Plaintiff's medical leave.

47. At all times relevant herein, Defendant and its agents were aware of Plaintiff's medical conditions.

48. Plaintiff was placed on medical leave pursuant to the FMLA.

49. This subsequent FMLA leave period stemed from a condition that was caused by Defendant.

50. On or about February 2, 2022, approximately two hours after Plaintiff was placed on medical leave, two agents from the FBI showed up at Plaintiff's home.

51. The FBI agents inquired about a pickup that Plaintiff conducted while working for Defendant on or around November 30, 2021, as described in paragraphs 35 through 39 of this Complaint.

52. Plaintiff informed the FBI agents that she was unaware of any specific written safety protocols in place for Defendant's Elite Services Department.

53. After Plaintiff explained the lack of uniformity and protocol in the Elite Services Department, one FBI Agent looked at his partner and said "oh [Defendant] did not explain that to us like that."

54. FBI then inquired about Plaintiff's job description and Plaintiff informed the agents of her day-to-day duties.

55. Plaintiff further informed the FBI Agents that Defendant failed to provide adequate training or a set written policies regarding the services given by their Elite Services Department.

56. Upon information and belief, Defendant did not have any procedures or policies in place to ensure that the Elite Services Department was not transporting airline passengers who posed a threat or who were wanted by authorities.

57. During Plaintiff's tenure in the department, Defendant did provide Plaintiff with any outlined rules or standards in conducting day-to-day operations.

58. Defendant also failed to adequately train Plaintiff how to avoid the instance that occurred on or about November 30, 2021.

59. Plaintiff and the other employees of the Elite Services Department did not and were not required by Defenadnt to follow a normal clock-in procedure.

60. Plaintiff was often called in to assist with unscheduled pickups or called in to assist with early morning red-eye arrival pickups, where she was assigned a "suprise and delight" duty.

61. This lack of structure would often result in Plaintiff working prior to her scheduled shift.

62. Upon information and belief, approximately 50% of Plaintiff's shifts worked in 2021 did not align precisely with her clock-in and clock-out records.

63. On or about February 3, 2022, while Plaintiff was out on medical leave, Spencer Hutchinson called Plaintiff and insisted that Plaintiff urgently come to the office for a meeting.

64. On or about February 4, 2022, Plaintiff went in for a meeting. During that meeting, George Taylor was present, Mark Lucas, the head of Defendant's Corporate Security and Veronica Aikens were present. They viciously and aggressively interrogated Plaintiff and accused Plaintiff of interfering with their Elite Services Department.

65. Defendant asked Plaintiff if the platinum medallion member was on the schedule, and Plaintiff explained that his transport was part of the "surprise and delight" service that the Elite Service Department offered, where VIP customers are frequently surprised and delighted with this service even if they are not on the schedule.

66. Defendant falsely insinuated that Plaintiff had a personal relationship with the platinum medallion member who was picked up on or about November 30, 2022.

67. Defendant also made false suggestive comments to Plaintiff, accusing Plaintiff of providing intimate services beyond her job duties.

68. Notably, George Taylor begrundingly stated that, "Delta will now have to end its contract with Porsche because of Plaintiff's statements to the FBI."

69. On or about February 4, 2022, Spencer Hutchinson called to inform Plaintiff that Defendant suspended her, pending their investigation.

70. On or about March 9, 2022, while Plaintiff was out on medical leave, and while Defendants had notice that Plaintiff was out on medical leave, Plaintiff received a call from Spencer Hutchinson and informed Plaintiff that she had been terminated from her job.

71. Defendant falsely and maliciously articulated pretextual reasons as the reason for Plaintiff's termination.

72. Defendant terminated Plaintiff allegedly due to her "unsatisfactory job performance," however, Plaintiff's employment record and job performance throughout her career had been exemplary.

73. Defendant also claimed that Plaintiff accepted a tip from the platinum medallion member incontravention of Defendant's policies.

74. Upon information and belief, Defendant changed the tipping policy to prohibit all tips after Plaintiff's termination in an effort to manufacture a "legitimate, non-discriminatory" reason for terminating her.

75. Upon information and belief, Defendant hired a representative under the age 40 to replace Plaintiff's position.

76. Defendant summarily terminated Plaintiff's employment due to discrimination and retaliation.

## FIRST CAUSE OF ACTION
## DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF 42 U.S.C. §§ 12101, 12112, 12132 et seq.

77. Plaintiff incorporates and realleges by reference all previous paragraphs, and each and every part thereof, of this Complaint, with the same force and effect as though set forth at length herein.

78. Defendant is an "employer" within the meaning of and subject to 42 U.S.C. §§ 12101 et seq., commonly referred to as the *Americans with Disabilities Act* of 1990 (ADA).

79. At all relevant times, Plaintiff was a qualified individual with a disability who with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds. 42 U.S.C. § 12118(8). A disability is a "physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(a).

80. 42 U.S.C. §§ 12112(a) provides in pertinent part that, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.… (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the know disability of an individual with whom the qualified individual is known to have a relationship or association: (5)(A) not making reasonable accommodation to the known physical or mental limitations of the otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business or such covered entity"

81. On or about June 19, 2021, Plaintiff was diagnosed by her doctor with major depressive disorder, mixed anxiety, depressed mood, and vitiligo due to the

level of stress and mistreatment she was experiencing at work by her supervisors.

82. Plaintiff's doctor placed her on medical leave due to a condition that was caused by an improper suspension issued by Defendant.

83. Upon information and belief, Plaintiff's doctor directly informed Defendant of Plaintiff's medical leave.

84. At all times relevant herein, Defendant and through its agents were aware of Plaintiff's medical conditions.

85. Defendant terminated Plaintiff's employment while Plaintiff was on medical leave.

86.   Defendant discriminated against Plaintiff because Plaintiff suffered from a disability/condition and requested reasonable accommodations in the form of using medical leave under FMLA.

87. Plaintiff was discriminated and retaliated against for exercising her right to take FMLA intermittent leave to care for herself and recover from her disability/condition.

88. Upon information and belief, Defendant terminated Plaintiff to avoid the possibility of having to accommodate any anticipated future additional leave(s) of absences and/or accommodations that Plaintiff might further require.

89. But for Plaintiff's disability/medical conditions and requesting a reasonable accommodation, she would not have been terminated by Defendant.

90. The discriminatory actions of Defendant against Plaintiff constitute unlawful discrimination based on disability in violation of the ADA, 42 U.S.C. §§ 12101 et seq.

91. Defendant did not seek to accommodate Plaintiff's medical disability, instead, Plaintiff was discriminated and retaliated for requesting a reasonable accommodation in violation of 42 U.S.C. §§ 12101 et seq.

92. The failure of Defendant to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff constitute a failure to take all steps necessary to prevent discrimination and retaliation in violation of ADA, codified in 42 U.S.C. §§ 12101 et seq.

93. Plaintiff's request for reasonable accommodation were Defendant's true reason for terminating Plaintiff's employment.

94. As a proximate result of the Defendant's actions, Plaintiff suffered economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

95. As a further proximate result of the aforementioned acts of Defendant, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's

damage in an amount to be ascertained at the time of trial.

96. As a further proximate result of the acts of Defendant, Plaintiff has spent and will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendant's acts, in an amount to be ascertained at the time of trial.

97. As a direct and proximate result of the above-described acts of Defendant, Plaintiff has necessarily incurred attorney's fees and costs and, pursuant to the provisions of 42 U.S.C. § 12205, Plaintiff is entitled to the reasonable value of such attorney's fees and costs.

98. The above-described acts of Defendant, was willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

## SECOND CAUSE OF ACTION
## HOSTILE ENVIRONMENT IN VIOLATION OF TITLE VII
## 42 U.S.C. § 2000E-2(A)

99. Plaintiff realleges and incorporates the foregoing allegations as if set forth herein.

100. While discrete acts cannot alone form the basis of a hostile work environment claim, they certainly can combine with other acts of harassment to constitute a pervasive and hostile environment. Indeed, *Morgan* itself held that a jury could consider discrete acts as part of a hostile work environment claim. *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

101. Plaintiff was subjected to an intimidating, offensive and/or hostile work environment after June 2021, as alleged above.

102. Plaintiff was subjected to continuous ridicule, intimidation, insult, and harassment due to Marcus Caldwell's actions.

103. Plaintiff belongs to a statutorily protected category. Plaintiff's gender, age, and disability were motivating factors for the work environment to which she was subjected.

104. Plaintiff was subjected to unwelcome verbal and physical conduct by Marcus Caldwell, when he ridiculed her and would lock Plaintiff out of her car, preventing her from performing her job duties. Plaintiff was subjected to this demeaning treatment because she was a female representative.

105. At all times relevant herein, Defendant was aware of the acts complained of by Plaintiff regarding Marcus Caldwell.

106. Plaintiff's work environment was sufficiently severe, pervasive and/or offensive to have altered the terms or conditions of her employment and to have been considered abusive and wrongful by a similarly situated and reasonable female employee.

107. Plaintiff perceived her work environment to have been intimidating, offensive and/or hostile.

108. Because of the intimidating, offensive and/or hostile work environment to which she was subjected, Plaintiff is entitled to an award of compensatory damages, attorney's fees and expenses, and other relief permitted under law.

**THIRD CAUSE OF ACTION**
**DISCRIMINATION BASED ON AGE IN VIOLATION OF**
**29 U.S.C. § 623 *et seq*.**

109. Plaintiff realleges and incorporates the foregoing allegations as if set forth herein.

110. Plaintiff was 57-years-old and qualified for her position when Defendant fired her.

111. Upon information and belief, immediately after Plaintiff's termination, Defendant replaced her with a younger employee who is new to the department.

112. Defendant had an exemplary performance history with Defendant.

113. Defendant marginalized Plaintiff while treating younger similarly situated employees more favorably.

114. Specifically, Defendant suspended Plaintiff while allowing a younger employee (Alicia Adams) to continue working during an investigation involving the two employees.

115. Defendant willfully violated Plaintiff's rights under the ADEA and, as a result, is liable for liquidated damages.

116. As a proximate result of the acts of Defendant, Plaintiff suffered economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

117. As a further proximate result of the aforementioned acts of Defendant, and each of them, as alleged above, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the time of trial.

118. As a further proximate result of the acts of Defendant, as alleged above, Plaintiff has spent and will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendant's acts, in an amount to be ascertained at the time of trial.

119. The above-described acts of Defendant, was willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

### FOURTH CAUSE OF ACTION
### VIOLATION OF TITLE VII, 42 U.S.C. § 2000E *ET SEQ.* (GENDER DISCRIMINATION)

120. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

121. Defendant subjected Plaintiff to gender discrimination by terminating her from her employment after repeated complaints about her former Male manager (Marcus Caldwell) who treated Plaintiff unfairly compared to men.

122. Upon information and belief, as set forth above, Defendant failed to conduct a fair and impartial investigation into Marcus Caldwell's actions against Plaintiff due to a pretextual bias.

123. Upon information and belief, Plaintiff has suffered disparate treatment due to her gender.

124. As a proximate result of the acts of Defendant, as described above, Plaintiff suffered economic damages, including lost wages and benefits, and other

compensatory damages in an amount to be ascertained at the time of trial.

125. As a further proximate result of the aforementioned acts of Defendant, and each of them, as alleged above, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the time of trial.

126. As a further proximate result of the acts of Defendant, as alleged above, Plaintiff has spent and will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendant's acts, in an amount to be ascertained at the time of trial.

127. The above-described acts of Defendant, was willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED, 42 U.S.C. §§ 2000E *ET SEQ.***
***(RETALIATION)***

128. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

129. Plaintiff provided to the FBI, information regarding Defendant's lack of procedures and protocols that can protect the employees, the public at large, and avoid future mishaps in the future.

130. Upon information and belief, Delta knew that Plaintiff spoke with the FBI Agents at her home and thereafter called her in for a meeting, when she started her leave and suspended her.

131. Upon knowledge and belief, said employee admitted that Defendant knew that Plaintiff spoke with FBI regarding issue pertaining to federal law and/or aviation safety.

132. The unlawful employment practices complained of above were intentional.

133. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Plaintiff.

134. Upon information and belief, Plaintiff made a complaint about severe disciplinary actions that she received as female employee in comparison to how Marcus Caldwell was treated for his actions against Plaintiff.

135. Upon information and belief, Plaintiff made a complaint about severe disciplinary actions that she received due to her age.

136. Defendant retaliated against Plaintiff by terminating her from her employment after complaining about her former manager, Marcus Caldwell, and her disparate treatment against her.

137. Upon information and belief, as set forth above, Defendant targeted Plaintiff for retaliatory discipline because she was female and because she had complained about treatment she was receiving from her former manager, Marcus Caldwell.

138. As a result of this gender-selective and targeted retaliation, Plaintiff was ultimately terminated because of her gender.

139. As a result of this age-selective and targeted retaliation, Plaintiff was ultimately terminated because of her gender.

140. Defendant's conduct, as described above, was without justification or excuse; is reprehensible; and occurred despite Plaintiff's complaints to prevent, halt, and reverse the discrimination and retaliation.

141. The conduct alleged herein violates Section 704 of Title VII of the Civil Rights Act of 1964, amended, 42 U.S.C §§ 2000e *et seq.*

142. As a proximate result of the acts of Defendant, as described above, Plaintiff suffered economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

143. As a further proximate result of the aforementioned acts of Defendant, and

each of them, as alleged above, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the time of trial.

144. As a further proximate result of the acts of Defendant, as alleged above, Plaintiff has spent and will necessarily continue to expend sums in the future for the treatment of the physical, emotional and mental injuries sustained by Plaintiff as a result of said Defendant's acts, in an amount to be ascertained at the time of trial.

145. The above-described acts of Defendant, was willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

### SIXTH CAUSE OF ACTION
### NEGLIGENCE, NEGLIGENT TRAINING, HIRING, AND RETENTION UNDER GEORGIA LAW

146. Plaintiff incorporates and realleges by reference all previous paragraphs, and each and every part thereof, of this Complaint, with the same force and effect as though set forth at length herein.

147. Defendant owed a duty of care to Plaintiff to exercise ordinary care in the

selection of employees and not retain them after knowledge of their incompetency. Defendant also owed a duty of care to train and supervise its employees to ensure their compentency.

148. Marcus Caldwell was unfit and/or incompetent to perform the work for which he was hired.

149. Defendant knew or should have known that Marcus Caldwell was unfit and/or incompetent and that this unfitness/incompetence created a particular risk to others.

150. Marcus Caldwell had a documented history of harassing Plaintiff.

151. But for Defendant's improper investigation and supervision of Marcus Caldwell, Plaintiff would not have been subjected to constant harassment and retaliation.

152. Defendant knew or should have known of Marcus Caldwell's propensity to cause a hostile environment.

153. Defendant also failed to have adequate policies and procedures in place to screen for fit and competent employees and to prevent against harassment and a hostile work environment.

154. Defendant's negligent hiring, supervision and retention of Marcus Caldwell gave rise to Plaintiffs' injuries.

155. Defendant allowed Marcus Caldwell to have unfettered access to Plaintiff

and her work vehicle, despite the fact that Defendant knew that Marcus Caldwell used this vehicle as a means of harassment to Plaintiff.

156. As a direct and proximate result of the foregoing negligence of Defendant Plaintiff suffered physical, mental, and emotional distress, humiliation, embarrassment, and injuries.

157. As a direct and proximate result of the aforementioned negligence of Defendant, Plaintiff suffered injuries and damages in a sum within the jurisdiction of this Court and which will be shown according to proof.

158. Defendant's negligence in hiring, supervising, and retaining Marcus Caldwell was a substantial factor in causing Plaintiff's damages.

### SEVENTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER GEORGIA LAW

159. Plaintiff incorporates and realleges by reference all previous paragraphs, and each and every part thereof, of this Complaint, with the same force and effect as though set forth at length herein.

160. Under Georgia law, "[a] claim for intentional infliction of emotional distress has four elements: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe." *Pyle v. City of Cedartown,* 240 Ga. App. 445, 447 (1999).

161. Upon Plaintiff's return to work, she immediately began to endure a pattern

27

of harassment and hostile work environment by Marcus Caldwell's actions of following; taunting; and locking Plaintiff out of her vehicle.

162. Marcus Caldwell's conduct as described herein is imputed to Defendant under the theory of *respondeat superior*.

163. The outrageous conduct of Defendant, as set forth above, was extreme and outrageous, exceeding all bounds of decency and would not and should not be tolerated in a civilized society. The conduct of Defendant was intentional, reckless and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress, or with conscious disregard for the probability that such consequences would likely ensue.

164. Defendant's actions here were intentional. They not only allowed Plaintiff to continuously be harassed by Marcus Caldwell, but they also deliberately discriminated against Plaintiff and wrongfully terminated her.

165. Defendant and its employees' conduct was extreme and egregious. Plaintiff aided in the FBI investigation and exposed Defendant. For this, Defendant and its employees brutally retaliated against her and embarrassed after serving Defendant's and its clientele for over twenty-eight years.

166. Plaintiff in no way contributed to her own injuries.

167. Defendant and its employees have shown willful misconduct, malice, fraud,

28

wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences and are therefore liable to Plaintiff for both actual and punitive damages for intentional infliction of emotional distress.

168. As a result of the acts committed against Plaintiff such as: 1) the continued harassment Plaintiff endured; 2) the deceptive manner in which Plaintiff was terminated and 3) the termination of Plaintiff's employment. Plaintiff suffered severe stress, loss of sleep, headaches, panic attacks, and other physical and psychological damage that has adversely affected Plaintiff's life. The financial burden of become abruptly unemployed caused Plaintiff financial hardship and she has been forced into severe economic hardship. These difficulties resulted in severe stress and anguish. Plaintiff, additionally, has general feelings of injustice and unfairness in the manner Plaintiff was terminated by Defendant.

169. As a proximate result of the acts of Defendant, and each of them, as described above, Plaintiff suffered economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

170. As a further proximate result of the aforementioned acts of said Defendant, as alleged above, Plaintiff has suffered humiliation, mental anguish, and

severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the time of trial.

171. As a further proximate result of the aforementioned acts of Defendant, as alleged above, Plaintiff has and will necessarily continue to expend sums for the future treatment of the physical and mental injuries sustained by Plaintiff as a result of the acts of Defendant, all to Plaintiff's damage in an amount to be ascertained at the time of trial.

172. As a direct and proximate result of the above-described acts of Defendant, Plaintiff has necessarily incurred attorney's fees and costs and, Plaintiff is entitled to the reasonable value of such attorney's fees.

173. The above-described acts of Defendant, were willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendants and to deter others from engaging in similar despicable conduct.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER GEORGIA LAW

174. Plaintiff incorporates and realleges by reference all previous paragraphs,

and each and every part thereof, of this Complaint, with the same force and effect as though set forth at length herein.

175. Under Georgia law, to recover under this cause of action, a plaintiff must prove the following: (1) the plaintiff sustained a physical impact due to the defendant's conduct; (2) the physical impact caused a bodily injury; and (3) the physical injury caused emotional distress to the plaintiff.

176. The outrageous conduct of Defendant, as set forth above, was extreme and outrageous, exceeding all bounds of decency and would not and should not be tolerated in a civilized society. The conduct of Defendant was negligent, reckless and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional and physical distress, or with conscious disregard for the probability that such consequences would likely ensue.

177. Due to Defendant's negligent and reckless actions, Plaintiff now suffers with a visible physical skin condition that was induced by the stressful environment that Defendant caused Plaintiff to endure.

178. As a result of the acts committed against Plaintiff such as: (1) the continued harassment Plaintiff endured by Defendant;  (2) the deceptive manner in which Plaintiff was terminated by Defenant; and (3) the termination of Plaintiff's employment. Plaintiff suffered severe stress, loss of sleep,

31

headaches, panic attacks, and other physical and psychological damage that has adversely affected Plaintiff's life. The financial burden of becoming abruptly unemployed caused Plaintiff financial hardship and she has been forced into severe economic hardship. These difficulties resulted in severe stress and anguish. Plaintiff, additionally, has general feelings of injustice and unfairness in the manner Plaintiff was terminated by Defendant.

179. As a proximate result of the acts of Defendant, as described above, Plaintiff suffered economic damages, including lost wages and benefits, and other compensatory damages in an amount to be ascertained at the time of trial.

180. As a further proximate result of the aforementioned acts of said Defendant, as alleged above, Plaintiff has suffered humiliation, mental anguish, and severe emotional and physical distress, and has been injured in body and mind all to Plaintiff's damage in an amount to be ascertained at the time of trial.

181. As a further proximate result of the aforementioned acts of Defendant, as alleged above, Plaintiff has and will necessarily continue to expend sums for the future treatment of the physical and mental injuries sustained by Plaintiff as a result of the acts of said Defendant, all to Plaintiff's damage in an amount to be ascertained at the time of trial.

182. As a direct and proximate result of the above-described acts of Defendant, Plaintiff has necessarily incurred attorney's fees and costs and, Plaintiff is entitled to the reasonable value of such attorney's fees.

183. The above-described acts of Defendant, and each of them, were willful, intentional, and malicious and done with the intent to vex, injure and annoy Plaintiff; and were done in conscious disregard of Plaintiff's rights, and, thus, warrant the imposition of exemplary and punitive damages in an amount sufficient to punish said Defendant and to deter others from engaging in similar despicable conduct.

WHEREFORE, Plaintiff, CASSANDRA ROSE, respectfully requests judgment against Defendant as follows:

1. That the Court empanel a jury to hear her cause;

2. A judgment declaring that the practices complained of herein are unlawful and in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e et seq.;

3. A judgment declaring that the practices complained of herein are unlawful and in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et seq.;

4.  A judgment declaring that the practices complained of herein are unlawful and in violation of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. §§ 12101 et seq.;

5.  All damages which Plaintiff has sustained because of Defendant's conduct, including back pay, front pay, benefits, general and specific damages for lost compensation, and job benefits he would have received but for Defendant's retaliatory practices, and for emotional distress, humiliation, embarrassment, and anguish;

6.  Exemplary and punitive damages in an amount commensurate with Defendant's ability and to deter future malicious, reckless, and/or intentional conduct;

7.  Awarding Plaintiff the costs and disbursements incurred in connection with this action, including reasonable attorney's fees, expert witness fees and other costs;

8.  Pre-judgment and post-judgment interest, as provided by law;

9.  That the Court retain jurisdiction over Defendant until such time as it is satisfied that they have remedied the practices complained of and are determined to be in full compliance with the law; and

10. Granting Plaintiff other and further relief as this Court finds necessary and proper.

11. Plaintiff also seeks injunctive relief, including, but not limited to:

12. Training regarding the prohibition against retaliation for engaging in protected activity for all of Defendant's supervisors.

13. Training of all employees regarding retaliation, including the reporting procedures for reporting such retaliation, conducted by reputable outside vendors.

14. Supervisory discipline up to and including termination for any employee who engages in discrimination based upon sex, including any employee who engages in retaliatory practices.

15. Monitoring by the Court or a federal agency to ensure that Defendant complies with all injunctive relief; and

16. Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

*(The rest of this page was intentionally left blank)*

Dated: September 12, 2023

Respectfully submitted,

*/s/ Khalil Corey Eaddy*
Khalil Corey Eaddy
G.A. Bar No. 245157
233 Peachtree Street NE
Suite 1200
Atlanta, GA 30303
(704) 751-0455
Email: khalil@danielsjameslaw.com

*/s/ M. Anthony Burts II*
M. Anthony Burts II
N.C. Bar 49878
*(Pro hac vice application forthcoming)*
Burts Law, PLLC
2520 Sardis Road North
Suite 234
Charlotte, NC 28227
Telephone: (704) 751-0461
Fax: (704) 413-3882
Email: anthony@burtslaw.com

*/s/ Monique S. Larmond*
Monique S. Larmond
C.A. Bar No. 319846
*(Pro hac vice application forthcoming)*
Givens & Larmond Law Group, LLP
5777 W. Century Boulevard
Suite 1110, Office 125
Los Angeles, 90045
Telephone: (310) 270-9284
Fax: (310) 242-4875
Email: mlarmond@thegllaw.com