# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **MICHAEL WRIGHT,**<br><br>  **Plaintiff,**<br><br>vs.<br><br>**ATLANTA PUBLIC SCHOOLS,**<br><br>  **Defendant.** | **CIVIL ACTION**<br><br>**FILE NO.: _____**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff Michael Wright (hereinafter "Mr. Wright"), and files this, his Complaint against Defendant Atlanta Public Schools (hereinafter "Defendant APS"), showing the Court the following:

## INTRODUCTION

1. Mr. Wright brings this action because he experienced a medical emergency as a result of APS's decision to deny him a reasonable accommodation. Mr. Wright has a heart condition known as atrial fibrillation, which places him at increased risk of stroke. On November 14, 2022, Principal St. Joy informed Mr. Wright that he and another paraprofessional, Maya Fuller, would be trading duties, because Ms. Fuller developed a personal conflict another teacher. As a result, Principal St. Joy informed Mr. Wright that he would be moving from his regular

duties in the resource room to the self-containment room. Mr. Wright immediately objected and requested a reasonable accommodation, explaining that when he had previously worked in the self-containment room, he twice experienced a flare-up of his heart condition. In the following days, Mr. Wright completed the school's accommodation paperwork and obtained a letter from his cardiologist. Principal St. Joy denied Mr. Wright's reasonable accommodation and elevated a personal conflict above Mr. Wright's entitlement to a reasonable accommodation under the Americans with Disabilities Act. On December 13, 2022, while working in the self-containment classroom, Mr. Wright's heart rate rose to unsafe levels, he nearly passed out, and the EMS took him to the hospital where he was admitted for several days. The day of Mr. Wright's medical emergency, Principal St. Joy continued to demonstrate her conscious indifference to Mr. Wright's federally protected civil rights and scolded the school nurse for assisting Mr. Wright saying, "you are only responsible for the kids and not the staff."

## THE PARTIES

2. Mr. Wright is a current employee of Defendant APS.

3. Defendant APS is a public school system which may be served through its Superintendent Dr. Lisa Herring at 130 Trinity Ave SW, Atlanta, GA 30303.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the present action under Article III, § 2 of the United States Constitution and 28 U.S.C. § 1331 because this case arises under the ADA.

5. This Court has personal jurisdiction over Defendant APS because it has offices and other locations in this district and transacts significant business in this district, including locating its registered agent within this district.

6. Venue is proper in this court under 28 U.S.C. § 1391 because Defendant APS is located in this judicial district via its offices and registered agent and the illegal action that gave right to this lawsuit occurred in this judicial division.

7. All conditions precedent to the institution of this suit have been fulfilled. On May 5, 2023, Mr. Wright timely filed a charge with the Equal Employment Opportunity Commission, Charge No. 410-2023-08063. Mr. Wright amended his charge on June 6, 2023 to add an additional instance of discrimination, which occurred after he filed his initial charge. The Notice of Right to Sue was received on Tuesday August 8, 2023. This action has been filed within ninety days of receipt of said Notice.

## FACTUAL ALLEGATIONS

8. In 2017, Atlanta Public Schools hired Michael Wright as a special education paraprofessional. Mr. Wright worked in a regular classroom or in a

resource classroom. As a part of his regular duties, APS assigned Mr. Wright to help particular special education students in English Language Arts, mathematics, science, and social studies.

9. Although Mr. Wright worked with special education students, he worked with those students that were capable to being assigned to a regular classroom.

10. Mr. Wright's job duties were not strenuous and involved working with a small number of children in a calm setting.

11. In December 2020, Mr. Wright was diagnosed with atrial fibrillation (AFib), which is an abnormal cardiac rhythm that puts him at increased risk for stroke.

12. In the spring semester of the 2021-2022 school year, APS periodically assigned Mr. Wright to the self-containment room. The self-containment room has duties that differ significantly from Mr. Wright's typical duties working in the resource room and in regular classrooms.

13. The children in the self-containment room have special needs that prevent them from being able to be placed in a regular classroom. Many of the children are non-verbal and therefore do not respond to verbal instruction and require lifting. Moreover, the special needs children in the self-containment room require

assistance with diapering and feeding, require lifting, require restraining, and often have excessive crying/screaming.

14. During the spring of 2022, Mr. Wright was temporarily placed in the self-containment room and he experienced two AFib flare-up while working in the self-containment room. During these AFib flare-ups, Mr. Wright experienced an irregular, rapid heartbeat that left him feeling weak and dizzy with shortness of breath. During his AFib episodes, standing and walking become challenging for Mr. Wright. Moreover, the AFib episodes are life threatening for Mr. Wright and increase his risk for a stroke.

15. Later in the spring of 2022, APS hired Michael Jackson to work as a paraprofessional in the self-containment room and Mr. Wright returned to his regular duties.

16. During the summer of 2022, Michael Jackson quit.

17. For approximately the first five weeks of the 2022-2023 school year, Mr. Wright worked in the self-containment room. During this time, Mr. Wright was told that his placement in the self-containment room was temporary, that the school was hiring someone else for self-containment, and that he would soon return to his normal duties.

18. APS hired Maya Fuller to work as a paraprofessional in the self-containment room. After Maya Fuller shadowed Mr. Wright for about a week, Mr. Wright returned to his regular schedule in the resource room and regular classroom.

19. On November 14, 2022, Principal St. Joy switched Mr. Wright's and Maya Fuller's duties, placing Mr. Wright in the self-containment room full time and Maya Fuller upstairs in the resource room.

20. When Principal St. Joy informed Mr. Wright of the transfer, Mr. Wright objected and explained that he had a heart condition and that on two prior occasions he went into AFib in the self-containment classroom.

21. Principal St. Joy denied his accommodation request, said he would be in the self-containment classroom for the time being, and directed him to complete paperwork.

22. Mr. Wright promptly provided Defendant APS with a letter dated November 15, 2022 from Mr. Wight's cardiologist, Dr. Rouse. The letter described that Mr. Wright was at risk for a stroke from stress and anxiety from working in particular environments.

23. Dr. Rouse's letter listed restrictions of avoiding environments that increase physical load, stress, and anxiety which can in turn provoke atrial fibrillation.

24. Dr. Rouse, also imposed work restrictions of no repetitive lift/push/pull over 5lbs and no standing or walking greater than 15 minutes.

25. Mr. Wright submitted accommodation paperwork requesting to continue to work with special needs children or any other children who do not require self-help accommodations.

26. Both Mr. Wright's accommodation paperwork and Dr. Rouse's letter explained the importance of the accommodation and explained that AFib jeopardized Mr. Wright's health by increasing his risk of stroke, which could be life threatening.

27. Even after Mr. Wright returned his completed accommodation paperwork, Defendant APS continued to insist that he work in the self-containment room.

28. Despite having medical documentation from his cardiologist that the stressful environment in the self-containment room placed Mr. Wright at risk for stroke, Defendant APS claimed it needed ten (10) business days to make a decision.

29. It was exceptionally stressful for Mr. Wright to go into work day in and day out, for a month, and work in the self-containment room knowing that this work placed his health and life in jeopardy.

30. In this conversation, Ms. Long (assistant principal) and Mr. Wright discussed the possibility of him transferring positions to another building.

31. On December 8, 2022, Mr. Wright spoke with an accommodation coordinator Keisha Greir. During the call Mr. Wright reaffirmed his request for an accommodation to work in a position outside of the self-containment room.

32. On Friday December 9, 2022, Principal St. Joy denied Mr. Wright's accommodation request and instructed him that he would be working in the self-containment room.

33. As a result of APS's failure to accommodate Mr. Wright, on Tuesday December 13, 2022, he experienced a medical emergency and passed out while working in the containment room.

34. Mr. Wright was hospitalized at Emory until December 16, 2022.

35. Following his hospitalization, Mr. Wright went on unpaid leave.

36. In the spring of 2023, Mr. Wright continued to request accommodations of working outside the self-containment room.

37. Mr. Wright was cleared by his physician to return to work on May 30, 2023. Mr. Wright when to the school on May 30, 2023, requested to work, and stated that he wanted to work. But Mr. Wright was told by the secretary that he could not work and was sent home.

38. It was only after Mr. Wright retained counsel and was on unpaid leave for several months that Defendant APS finally elected to accommodate Mr. Wright by transferring him to a virtual school.

39. Because of Defendant APS's failure to accommodate Mr. Wright, he lost wages from December 13, 2022 until he started at the virtual school.

## COUNT ONE
## FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA

40. Mr. Wright incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

41. At all times relevant herein, due to his AFib Mr. Wright had a disability or was regarded as disabled by Defendant APS. 29 C.F.R. § 1630.2(g).

42. At all times relevant herein, Mr. Wright had or was regarded as having a condition that limits major life activities, including, but not limited to, breathing, standing, walking, and lifting, pursuant to 42 U.S.C. § 12102(2)(A) and 29 CFR § 1630.2(i)(1)(i), and which limits the operating of major bodily functions, such as cardiovascular, respiratory, and circulatory functions.

43. Mr. Wright was at all relevant times qualified for his position and able to perform all of the essential functions of this position with or without a reasonable accommodation.

44. Despite Mr. Wright's requests for reasonable accommodations of returning to his regular duties in the resource room and regular classroom or being transferred to a position outside of the self-containment room, Defendant APS discriminated against the qualified Mr. Wright by failing to provide reasonable accommodations during his employment.

45. Defendant APS excused non-disabled Maya Fuller from the self-containment room but did not extend similar treatment to disabled Mr. Wright.

46. Defendant APS failed to engage in an interactive process regarding said accommodations, and said accommodations did not impose an undue hardship on Defendant APS's large business. 42 U.S.C. § 12112(b)(5)(A).

47. Defendant APS acted with malice or reckless indifference towards Mr. Wright's federally protected rights under the ADA when it elevated a personal conflict above Mr. Wright's federally protected rights and required that he continue to work in the self-containment room, with knowledge of the serious health risk that such work posed to Mr. Wright. Furthermore, Defendant APS's malice or reckless indifference towards Mr. Wright's federally protected rights under the ADA is apparent from Principal St. Joy scolding the school nurse from assisting Mr. Wright during a time that he needed medical attention.

48. As a direct result of Defendant APS's refusal to provide Mr. Wright with reasonable accommodations, Mr. Wright has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

## COUNT TWO
## ADA DISABILITY DISCRIMINATION

49. Mr. Wright incorporates herein by reference the allegations set forth in the preceding paragraphs of his Complaint as if fully set forth herein.

50. At all times relevant herein, Mr. Wright had a disability or was regarded as disabled by Defendant APS. 29 C.F.R. § 1630.2(g).

51. At all times relevant herein, Mr. Wright had or was regarded as having a condition that limits major life activities, including, but not limited to, breathing, standing, walking, and lifting, pursuant to 42 U.S.C. § 12102(2)(A) and 29 CFR § 1630.2(i)(1)(i), and which limits the operating of major bodily functions, such as cardiovascular, respiratory, and circulatory functions.

52. Mr. Wright was at all relevant times qualified for his position and able to perform all of the essential functions of this position with or without a reasonable accommodation.

53. Defendant APS discriminated against Mr. Wright by refusing to allow him to return to work on May 30, 2023.

54. Defendant APS failed to engage in an interactive process regarding Mr. Wright's request to return to work on May 30, 2023. 42 U.S.C. § 12112(b)(5)(A).

55. As a direct result of Defendant APS's refusal to allow Mr. Wright to return to work, Mr. Wright has suffered and continues to suffer damages from that wrongful act and is entitled to the relief sought in the prayer for relief.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Wright respectfully prays this Court grant the following relief:

a. That Mr. Wright have and recover from Defendant APS lost back pay and benefits, with prejudgment interest thereon;

c. That Mr. Wright have and recover compensatory damages in an amount to be determined by a jury;

d. That Mr. Wright have and recover punitive damages in an amount to be determined by a jury;

e. That Mr. Wright recover his attorneys' fees, litigation expenses, and costs of litigation pursuant to all applicable federal laws; and

f. Any and other such further relief this Court or the Finder of Fact deems equitable and just.

## **JURY DEMAND**

Plaintiff demands a trial by jury for all issues so triable.

This 13th day of September, 2023.

        Respectfully submitted,

By:   */s/ **Julie H. Burke***
      Julie H. Burke
      Georgia State Bar No. 448095
      HILL, KERTSCHER & WHARTON, LLP
      3625 Cumberland Blvd., SE, Ste. 1050
      Atlanta, GA  30339-6406
      Telephone:  770-953-0995
      E-mail:  jb@hkw-law.com

*Attorney for Plaintiff*