## IN THE UNITED STATES DISTRICT COURT
## THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BRANDON STALLWORTH and, | ) | |
| JAHLEEL WILSON | ) | |
| on behalf of themselves and | ) | |
| all similarly situated persons, | ) | |
| | ) | CIVIL ACTION FILE NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JURY TRAIL DEMANDED** |
| | ) | |
| | ) | |
| SOUTHEAST CONNECTIONS LLC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COLLECTIVE ACTION COMPLAINT</u>

Plaintiffs Brandon Stallworth and Jahleel Wilson bring this action under the Fair Labor Standards Act ("FLSA") on their own behalf and on behalf of all persons similarly situated to them. They respectfully seek collective certification pursuant to 29 U.S.C. § 216(b), unpaid overtime and straight time wages, liquidated damages, attorneys' fees and costs, and other relief.

## <u>NATURE OF THE ACTION AND SUMMARY OF ALLEGATIONS</u>

1.   This is a collective action for unpaid overtime and straight time wages under the FLSA. Plaintiffs bring the action on behalf of themselves and other similarly situated current and former employees of Defendant: Laborers, Pipefitters, Foreman, and other workers whom Defendant compensated on an hourly basis and

whom Defendant directed, suffered, or permitted to work off the clock without compensation, including without overtime compensation. This group of individuals includes the Plaintiffs and all current and former employees of Defendant similarly situated to them and is referred to throughout the Complaint as "the Collective."

2.     Plaintiffs allege that Defendant applied policies and practices to the Collective under which Defendant: (a) compensated Collective members on an hourly basis, (b) directed, suffered, or permitted them to work off the clock, including in excess of 40 hours per work week, and (c) intentionally failed to pay them for their off the clock work hours, including failing to pay them 1.5 times their regular hourly rates for hours in excess of 40 per week.

3.     Plaintiffs and other Collective members who choose to opt into this FLSA collective action pursuant to 29 U.S.C. § 216(b) (the "Collective Action") are entitled to recover: (i) straight time minimum wages for uncompensated off the clock work under 40 hours per work week; (ii) overtime wages at 1.5 times their regular hourly rates for uncompensated off the clock hours exceeding 40 hours per work week, (iii) liquidated damages equal to their unpaid straight and overtime wages, and (iv) their attorneys' fees and costs.

## JURISDICTION AND VENUE

4.     Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over Plaintiffs' FLSA claims and those of the Collective.

5.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in Rockdale County, GA, which is within the Atlanta Division of the Northern District of Georgia; and 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this Complaint occurred within the Northern District of Georgia.

## PARTIES

6.     Stallworth was employed with Defendant from May 2019 through April 2023. He began his employment as a Pipefitter and became a Foreman in approximately June 2021. Stallworth was Defendant's "employee" within the definition of the FLSA at all times relevant to this Complaint. Stallworth's Consent to Become a Party-Plaintiff to this action is Exhibit A to this Complaint.

7.     Wilson was employed with Defendant from April 2020 through April 2022. He was a Laborer. Wilson was Defendant's "employee" within the definition of the FLSA at all times relevant to this Complaint. Wilson's Consent to Become a Party-Plaintiff to this action is Exhibit B to this Complaint.

8.     Defendant Southeast Connections, LLC is a North Carolina corporation that is licensed to conduct business in Georgia and transacts business within the Northern District of Georgia. Defendant's principal office is located within this judicial district at 2730 Dogwood Dr, SE, Conyers, GA 30013. Defendant may be

served with process via its registered agent, Corporate Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9.      Defendant was Plaintiffs' "employer," and the other Collective members' "employer," under the FLSA at all times relevant to this Complaint.

## GENERAL FACTUAL ALLEGATIONS

10.     Defendant is an energy infrastructure contractor focused on the natural gas industry. Its primary businesses are constructing and replacing pipelines, natural gas and liquids facilities maintenance, horizontal directional drilling, and sewer inspections.

11.     Defendant employs approximately 1,600 employees, primarily in Georgia, Tennessee, and North Carolina.

12.     During each of the three years preceding the filing of this Complaint, Defendant has employed at least two employees.

13.     During each of the three years preceding the filing of this Complaint, Defendant's annual business revenues have exceeded $500,000.

### The Work of Plaintiffs and other Collective Members

14.     Stallworth began his employment with Defendant as a Pipefitter in May 2019. In or about June 2021, Stallworth became a Foreman.

15.     Defendant compensated Stallworth on an hourly basis throughout his employment, both as a Pipefitter and as a Foreman.

4

16.     Stallworth's hourly pay rate was approximately $23 per hour as of the end of his employment with Defendant.

17.     As a Pipefitter, Stallworth's primary job duty was to provide manual labor for Defendant's pipe installation, replacement, and maintenance projects. His job responsibilities generally entailed: preparatory work at Defendant's facility including helping load up a company vehicle, traveling in the company vehicle to an assigned job site as part of a work crew, performing manual labor as a member of the work crew, returning from the job site to Defendant's facility in a company vehicle, and unloading the vehicle before leaving work for the day.

18.     When he became a Foreman, Stallworth's duties included basic work crew supervision and safety briefings, and the same manual labor tasks he had performed as a Pipefitter, working alongside the other Laborers and Pipefitters on his crew.

19.     Defendant had a supervisor on its job sites to whom Stallworth reported as a Foreman.

20.     Stallworth's duties as Foreman did not include hiring or firing employees, negotiating contracts with Defendant's customers, assigning job sites to himself or other employees, or other duties typically associated with managerial employees.

5

21.    Defendant operated approximately 15-20 Labor crews out of the Conyers, Georgia facility at which Stallworth worked throughout his employment. Each company truck typically had a Foreman assigned to it, plus a crew of several Laborers, Pipefitters, and other employees whose primary duties were materially similar and whom Defendant paid on an hourly basis, with the number of crew varying depending on the job assigned.

22.    Defendant's other Foremen in the Conyers facility had the same or similar duties as did Stallworth.

23.    Defendant's other Foremen at the Conyers facility started and ended their workdays at Defendant's facility like Stallworth did.

24.    Defendant compensated its other Foremen on an hourly basis.

25.    Plaintiff Wilson was employed by Defendant as a Laborer from April 2020 through April 2022.

26.    Defendant compensated Wilson on an hourly basis throughout his employment.

27.    Wilson's hourly pay rate at the end of his employment with Defendant was approximately $15 per hour.

28.    Wilson's primary job duty as a Laborer was to provide manual labor for Defendant's pipe installation, replacement, and maintenance projects. His job responsibilities generally entailed: preparatory work at Defendant's facility

including helping load up a company vehicle, traveling in the company vehicle to an assigned job site as part of a work crew, performing manual labor as a member of the work crew, returning from the job site to Defendant's facility in a company vehicle, and unloading the vehicle before leaving work for the day.

29.    Defendant employed at least dozens of Laborers in its Conyers facility, where Wilson worked.

30.    Defendant's other Laborers at the Conyers facility had the same or similar duties as Wilson.

31.    Defendant's other Laborers at the Conyers facility started and ended their workdays at Defendant's facility, like Wilson did.

32.    Defendant compensated its Laborers on an hourly basis.

33.    In addition to its Conyers, GA facility at which Stallworth and Wilson worked, Defendant operates multiple facilities in Georgia, North Carolina, and Tennessee, and one facility in Virginia. Defendant employs Foreman, Pipefitters, Laborers, and other similarly situated employees at most or all of its facilities.

34.    Regardless of their work location, Defendant's Laborers (including Wilson) and its Pipefitters (including Stallworth during his time as a Pipefitter) performed substantially similar job duties and worked substantially similar schedules.

35.    For example, in August 2023, Defendant's website posted job descriptions for vacant Construction Pipeline Crew Member positions (one of the positions considered a Laborer position) at Defendant's facilities in Nashville, Lebanon, and Chattanooga, TN: Savannah, Conyers, Warrenton, and Waycross, GA; Asheville and Indian Trail, NC; and Chesapeake, VA. The job descriptions for all these positions, per Defendant's website, are materially identical.

36.    As of August 2023, Defendant's website also posted job descriptions for vacant Commercial Driver Licensed ("CDL") Driver/Crew Member positions (another Laborer position) at Defendant's facilities in Asheville, NC; Chesapeake, VA; and Lebanon, TN. The job descriptions for all these positions, per Defendant's website, are materially identical.

37.    Additionally, as of August 2023, Defendant's "Careers" webpage, on which it advertises for vacant positions, contains a "Day in the Life of a Laborer" video. The video is non-specific as to job location, specific job title, or any other characteristic; i.e., it applies to all Laborer positions throughout the company. The video describes a schedule and work duties common to Defendant's Laborers, including: (a) Laborers arrive at Defendant's facility at 6:30AM to start their workday; (b) Laborers leave Defendant's facility for their job site in a company truck at about 7:15AM; (c) Laborers' work includes digging trenches; (d) after finishing work at the job site, Laborers return from the site to Defendant's facility.

38.     Defendant's Foremen, including Stallworth (during his time as Foreman) also performed substantially similar job duties and worked substantially similar schedules regardless of their work location.

39.     For example, in August 2023, Defendant's website posted job descriptions for vacant Foreman positions at Defendant's Savannah, GA; Nashville and Lebanon, TN; and Indian Tail, NC facilities. The job descriptions for all these Foreman positions are, per Defendant's website, materially identical.

40.     Like its Day in the Life of a Laborer video, as of August 2023, Defendant's careers website also contains a "Day in the Life of a Foreman" video. This video is also non-specific to job location; i.e., it applies to Foreman at all of Defendant's locations. The video describes a schedule and work duties common to Defendant's Foremen, including: (a) Foremen help lead safety talks for their crews at Defendant's facility at 6:30AM; (b) Foremen drive with their crews from Defendant's facility to the job site; (c) Foremen are responsible for ensuring the company truck is fueled, equipped, and ready for the workday; (d) Foremen brief their crews on job hazards; (e) Foreman are in charge of traffic control; (f) Foremen are "working foremen" and, as such, they work alongside their crew; (g) Foremen secure the job site at the end of each day; (h) Foremen have 30 minutes to compete paperwork after they return to Defendant's facility.

**Defendant's Collective-Wide Pay Practices in Violation of the FLSA**

41.     Pursuant to Collective-wide timekeeping and pay practices, Defendant did not compensate Wilson, Stallworth, or other Collective Members for all their compensable working time as required by the FLSA.

42.     Defendant required Collective Members including Wilson and Stallworth to arrive at its facility at or around 6:30 AM to begin work, such as loading the truck for the day. However, Defendant did not start counting Collective Members' compensable time until 7:00 AM. Plaintiffs and other Collective Members worked an average of 15-30 minutes off the clock each morning.

43.     After they finished working at the job site each day, Collective Members including Stallworth and Wilson returned from the job site to Defendant's facility riding in a company vehicle. These return trips from the job site to Defendant's facility varied in duration depending on the job site's location. They were typically 45 to 60 minutes each day but often substantially longer.

44.     Per Collective-wide policy and practice, Defendant only deemed the crew member who drove the truck back to the facility to be on the clock. The other crew members, riding back to the same facility from the same job site in the same company truck were, per Defendant's policy and practice, deemed off the clock and therefore no longer paid once work at the job site ended. Thus, non-driving Plaintiffs and other Collective Members worked an additional 45-60 minutes, and

often much longer, off the clock each day during their return trips from the work site to Defendant's facility in company vehicles.

45.     Defendant's Collective-wide practice of failing to pay the non-driving Collective Members for their time traveling from the job site back to Defendant's facility violated the FLSA. 29 C.F.R. 785.38 ("Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform other work there, or to pick up and to carry tools, the travel from the designated place to the workplace is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice").

46.     Stallworth and other Foremen typically rotated the return driving duty among themselves and those employees on their crew who had passed the driving test and physical examination required to drive Defendant's vehicles. This allowed as many employees as possible to receive at least some "on the clock" time for the return trips from job site to facility over the course of the work week.

47.     Per Defendant's Collective-wide practice, upon returning to the facility in the company vehicle, the Collective Member who drove the company truck then went "off the clock" for the day, too.

Case 1:23-mi-99999-UNA   Document 2968   Filed 09/13/23   Page 12 of 29


48.     However, after Plaintiffs and other Collective Members arrived back at Defendant's facility, they performed additional off the clock work, averaging approximately 30 minutes per day, unloading the truck and performing other tasks. Defendant also did not compensate Plaintiffs or other Collective Members for this time.

49.     Defendant's Collective-wide practice of requiring, suffering, or permitting Collective Members to work off-the-clock and without compensation before and after the start of their "on-the-clock" workday violated the FLSA. 29 C.F.R. §§ 785.11; 785.13.

50.     In addition, Defendant deducted 30 minutes for lunch from Collective Members' paychecks every day, even though Wilson, Stallworth, and other Collective Members frequently worked through some or all of their lunch break time.

51.     To legally deduct an unpaid meal break under the FLSA, such as the 30-minute per day unpaid lunch Defendant deducted from Collective members' paychecks, the employer must completely relieve the employee of his employment duties for the entire meal break. 29 CFR §785.19(a).

52.     Because Defendant did not completely relieve Plaintiffs and Collective members of their duties during their full unpaid lunch breaks, the lunch break time Plaintiffs and Collective members spent working was compensable work time under

the FLSA, not bona fide meal break time, and Defendant's deduction of that time violated the FLSA. 29 CFR § 785.19(a).

53.    Plaintiffs do not have records of their uncompensated working time, though Defendant did keep time records for Plaintiffs and other Collective Members' "on the clock hours" in its timekeeping software.

54.    Plaintiffs typically worked Monday through Friday each work week.

55.    Per Defendant's Collective-wide pay practices, Plaintiffs and other Collective Members regularly started on the clock at 7:00 AM and (except for the return driver) went off the clock after working until late afternoon on the job site. Therefore, Collective Members' official on-the-clock workday was typically at least 8 hours, even accounting for the 30-minutes Defendant automatically deducted for lunch. In fact, Plaintiffs and other Collective Members' on the clock workdays were sufficiently long that they sometimes worked more than 40 hours per week on the clock (in addition to all their "off the clock" hours). Thus, all or substantially all the compensable labor time Defendant suffered or permitted Plaintiffs and other Collective Members to work each day was time in excess of 40 hours per workweek.

56.    In an average workweek, Defendant obtained the following average amounts of uncompensated off the clock labor time from Plaintiffs and other Collective Members:

a.  Approximately 1.25-2.5 hours via the average of 15-30 minutes' off the clock labor at Defendant's facility before Defendant placed Plaintiffs and other Collective Members on the clock at the start of their shifts;

b.  Approximately one hour of additional off the clock labor during lunch break times for which Plaintiffs and other Collective Members were not fully relieved of work duties;

c.  (i) For Collective Members who never drove the company truck back to Defendant's facility after work at the job site concluded (like Wilson), approximately 3.75-5 hours' off-the-clock travel time that was all in a day's work assuming low-end average return trip time from job site to facility of 45-60 minutes each day; and, (ii) for Collective Members who took turns driving the company truck back to the facility and whom Defendant therefore considered on the clock while driving (like Stallworth), approximately half that number of hours, accrued on the days when they rode back in the company truck but were not driving and were therefore not on the clock per Defendant's Collective-wide pay practice to that effect;

d.  2.5 hours via the 30 minutes' off the clock labor at Defendant's facility after returning to the facility in the company truck.

57.     Plaintiffs lack records of their total work hours each week, but the following describes a representative workweek. Exhibit C is an earnings statement Stallworth received for the week of January 22, 2023. The earnings statement shows Defendant compensated Stallworth for 40.0 hours of regular time and 1.0 hour of overtime on the clock per Defendant's Collective-wide pay and timekeeping policies and practices. However, in addition to this on the clock time for which Defendant compensated Stallworth, Defendant also suffered or permitted Stallworth to work substantial additional overtime off the clock and without compensation as follows.

58.     During such representative week, Stallworth accrued, on average, $293.25 unpaid off the clock wage damages, all of which would constitute unpaid overtime wages calculated at Stallworth's overtime premium rate of $34.50 (1.5 times his $23/hour pay rate), since his on the clock hours during this representative week exceeded 40 hours. Stallworth's unpaid overtime wages in this representative workweek were:

> a.  2.5 hours unpaid off the clock labor at Defendant's facility via 30 minutes' off the clock labor each morning pre-shift: 2.5 hours x $34.50 = $86.25;

b.  One hour of unpaid off the clock labor during lunch breaks deducted from Stallworth's time even though he was not fully relieved of duty: 1.0 hour x $34.50 = $34.50;

c.  Assuming 2.5 hours' total off the clock time during return trips from the job site to Defendant's facility when Stallworth was an off the clock non-driver for two or three of the workdays: 2.5 hours x $34.50 = $86.25;

d.  2.5 hours via the 30 minutes' unpaid off the clock labor at Defendant's facility each day after returning to it from the job site: 2.5 hours x $34.50 = $86.25.[1]

59.  Plaintiffs lacking records of their exact work hours each week, the following describes a representative week in which Wilson worked Monday through Friday. During such representative week, he accrued, on average $219.38, unpaid off the clock wage damages, all of which would constitute unpaid overtime wages calculated at Stallworth's overtime premium rate of $22.50 (1.5 times his $15/hour pay rate), since his on the clock hours each week typically equaled or exceeded 40 hours. Stallworth's unpaid overtime wages in such representative workweek were:

---

[1] In this representative week, Stallworth accrued liquidated damages equal to his unpaid wage damages.

a. 2.5 hours unpaid off the clock labor at Defendant's facility via 30 minutes' off the clock labor each morning pre-shift: 2.5 hours x $22.50 = $56.25

b. One hour of unpaid off the clock labor during lunch breaks deducted from Stallworth's time even though he was not fully relieved of duty: 1.0 hour x $22.50 = $22.50

c. Assuming 3.75 hours' total off the clock time during low-end average return trips from the job site to Defendant's facility: 3.75 hours x $22.50 = $84.38

d. 2.5 hours via the 30 minutes' unpaid off the clock labor at Defendant's facility each day after returning to it from the job site: 2.5 hours x $22.50 = $56.25.[2]

60.    As a Foreman, Stallworth was required to enter the working time for himself and his crew each day using Defendant's software and a laptop Defendant issued to him. Stallworth was directed and required to follow Defendant's above-pled Collective-wide pay practices in so doing.

61.    Each day, Stallworth and other Foremen sent their supervisors the time entries for themselves and their crews. The time sheets were referred to as "dailies."

---

[2] In this representative week, Wilson accrued liquidated damages equal to his unpaid wage damages.

62.     To combat Defendant's unlawful pay practices, Stallworth sometimes submitted dailies to his supervisor with the crew's start time at 6:30 AM (when they actually began working at Defendant's facility) rather than 7:00 AM as Defendant's Collective-wide policy required. Stallworth also sometimes submitted dailies reporting as compensable on-the-clock time the return drive time from the job site to Defendant's facility for the entire crew.

63.     When Stallworth submitted dailies that reported time he and/or his crew spent on pre-shift work, on non-driving return trip time, or on post-shift work at the facility, Defendant's Area Manager, Jeff Hamlin, directed Stallworth to revise the time entries to conform to Defendant's Collective-wide practices, or Hamlin revised the dailies himself to so conform.

64.     In October or November 2022, Stallworth told Area Manager Hamlin that he believed Defendant's policies of requiring employees to work off the clock at the facility in the morning and at day's end, and of paying only the driver for the crew's obligatory return travel from site to facility, improperly denied the employees overtime they were entitled to earn.

65.     Hamlin told Stallworth Defendant would not change its policies.

66.     Defendant's Collective-wide practices of directing, suffering, or permitting Plaintiffs and other Collective members to work off the clock without compensation (including overtime compensation) before their official shift start

18

time, during meal breaks, and after their shift officially ended, applied to all Collective members during, at least, the three years prior to the date of this Complaint.

67.     Defendant's above-pled off-the-clock pay practices remained in effect for every work week, for Plaintiffs and other Collective members, during that period.

68.     To Plaintiffs' knowledge, Defendant's unlawful pay practices remain in effect.

69.     The FLSA required Defendant to maintain accurate records of Plaintiffs' and other Collective members' work hours. 29 U.S.C. § 211(c); 29 C.F.R § 516.2.

70.     However, to Plaintiffs' knowledge, Defendant did not keep accurate records of Plaintiffs and their fellow Collective members' work hours; in fact, Defendant's standard, Collective-wide policy was to require intentionally inaccurate records of working time to facilitate Defendant's Collective-wide practices of obtaining free off the clock labor from the Collective Members.

71.     To Plaintiffs' knowledge, the only records Defendant maintained of Plaintiff's and other Collective members' work hours are the dailies which, as above-pled, and as Defendant knew, do not accurately reflect work hours but instead only reflect hours worked within the official shift schedule.

## FLSA COLLECTIVE ACTION ALLEGATIONS

72.   Plaintiffs bring this action on behalf of themselves and all other similarly situated employees pursuant to 29 U.S.C. § 216(b).

73.   Plaintiffs and similarly situated individuals:

a)   are or were employed by Defendant at any time within the period beginning three years prior to filing this action (the "relevant time period");

b)   had the primary duties of performing manual labor at Defendant's job sites or of performing the duties of a foreman at such job sites;

c)   were compensated by Defendant on an hourly basis;

d)   worked off the clock in at least one work week during the relevant time period; and

e)   were not compensated for those off the clock hours at applicable minimum wage and/or overtime premium rates during at least one work week during the relevant time period.

74.   Plaintiffs and similarly situated individuals fitting the above-described criteria are the proposed Collective for purposes of the FLSA claims asserted in this Complaint.

75.     As pled, Collective members held the job titles of Foreman or Laborer and may have had other titles though with materially similar duties. The term "Collective" as used in this Complaint describes all Plaintiffs and their fellow Collective members and does not exclude from Collective membership persons who are similarly situated to Plaintiffs and other Collective members but have a different job title.

76.     Collective members were compensated by the hour.

77.     Defendant classified Collective members as non-exempt from the FLSA's overtime requirements.

78.     The Collective is so numerous that individual joinder of all members is impracticable and would not further the intent of 29 U.S.C. § 216(b).  The precise number of persons within the Collective is unknown, and the information permitting a determination of the number of Collective members lies within the sole possession of Defendant. However, there are, upon information and belief, at least hundreds of members of the Collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

79.     Plaintiffs will fairly and adequately protect the interests of the members of the Collective and have retained counsel experienced and competent in wage and hour law and collective action litigation.

80.     Questions of law and fact common to the members of the Collective predominate over  questions that may affect only individual members because Defendant has acted on grounds generally applicable to all members of the Collective.

81.     Members of the Collective are similarly situated under the FLSA because, *inter alia*:

a)     They held the same or materially similar positions with Defendant during the relevant period;

b)     They had the same or materially similar job duties during the relevant time period;

c)     Defendant, applying a policy and practice common to the Collective, compensated all Collective members by the hour and classified them as non-exempt from the FLSA's overtime requirements;

d)     Defendant, applying a policy and practice common to the Collective, directed, suffered, or permitted Collective members to work off the clock before and after their official shift times and during lunch breaks;

e)     Defendant, applying a policy and practice common to the Collective, failed to compensate Collective members for their off the clock work at applicable minimum wage and overtime premium rates.

## COUNT I
## Willful Failure Pay Overtime in Violation of the FLSA

82.     Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if fully restated here.

83.     Defendant engaged in a widespread, centralized pattern, policy, and practice of violating the FLSA by failing to pay Plaintiffs and other Collective members overtime at a rate of one and one-half times their regular rate for their off the clock hours worked in excess of 40 per week.

84.     At all relevant times, Plaintiffs and other members of the Collective were engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

85.     The overtime wage provisions set forth in the FLSA apply to Defendant and protect Plaintiffs and their fellow members of the Collective.

86.     The record-keeping provisions of the FLSA apply to Defendant and required Defendant to, *inter alia*, keep accurate records of the wages and work hours of Plaintiffs and their fellow Collective members.

87.     The meal and break time deduction provisions of the FLSA and its implementing regulations apply to Defendant and required Defendant to, *inter alia*, either fully relieve Plaintiffs and Collective Members of duty during their unpaid 30-minute lunch breaks or pay them for the time worked during such ostensible breaks.

23

88.     At all relevant times, Defendant was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

89.     At all relevant times, Defendant employed Plaintiffs and their fellow members of the Collective within the meaning of the FLSA.

90.     At all relevant times, Defendant has had gross revenues in excess of $500,000.00.

91.     At all relevant times, Defendant has employed at least two employees.

92.     Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Their consents to join are filed herewith and were also filed with the Complaint.

93.     As a result of Defendant's willful failure to compensate Plaintiffs and their fellow members of the Collective at a rate of one and one-half times their regular rate for hours worked in excess of 40 per week, Defendant violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 207(a)(1) and 215(a).

94.     Defendant willfully violated the FLSA's record-keeping provisions by, *inter alia*, failing to keep accurate records of the work hours of Plaintiffs and their fellow Collective members.

95.     Defendant willfully violated the FLSA's meal and break time deduction provisions by, *inter alia*, impermissibly deducting meal break times without

completely relieving Plaintiffs and their fellow Collective members of work duties for the duration of the meal break.

96.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

97.    Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other Collective members.

98.    Due to Defendant's FLSA violations, Plaintiffs and the other members of the Collective are entitled to recover from Defendant their unpaid overtime wages for all hours they worked in excess of 40 per week, an additional and equal amount as liquidated damages for Defendant's willful violations of the FLSA, prejudgment interest, reasonable attorneys' fees, and costs of litigation.

## COUNT II
## Willful Failure Pay Minimum Wages in Violation of the FLSA

99.    Plaintiffs incorporate by reference all preceding paragraphs of the Complaint as if fully restated here.

100.    Defendant engaged in a widespread, centralized pattern, policy and practice of violating the FLSA by failing to pay Plaintiffs and other Collective members minimum wage for their off the clock hours up to 40 hours per workweek.

101.    At all relevant times, Plaintiffs and other members of the Collective were engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

102.    The minimum wage provisions set forth in the FLSA apply to Defendant and protect Plaintiffs and their fellow members of the Collective.

103.    The record-keeping provisions of the FLSA apply to Defendant and required Defendant to, *inter alia*, keep accurate records of the wages and work hours of Plaintiffs and their fellow Collective members.

104.    The meal and break time deduction provisions of the FLSA and its implementing regulations apply to Defendant and required Defendant to, *inter alia*, either fully relieve Plaintiffs and Collective Members of duty during their unpaid 30-minute lunch breaks or pay them for the time worked during such ostensible breaks.

105.    At all relevant times, Defendant was an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

106.    At all relevant times, Defendant employed Plaintiffs and their fellow members of the Collective within the meaning of the FLSA.

107.    At all relevant times, Defendant has had gross revenues in excess of $500,000.00.

108.    At all relevant times, Defendant has employed at least two employees.

109.    Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Their consents to join are filed herewith and were also filed with the Complaint.

110.    As a result of Defendant's willful failure to compensate Plaintiffs and their fellow members of the Collective at applicable minimum wages for their off the clock hours up to 40 hours per workweek, Defendant violated the FLSA, 29 U.S.C. §§ 201 et seq., including 29 U.S.C. §§ 206 and 215(a).

111.    Defendant willfully violated the FLSA's record-keeping provisions by, *inter alia*, failing to keep accurate records of the work hours of Plaintiffs and their fellow Collective members.

112.    Defendant willfully violated the FLSA's meal and break time deduction provisions by, *inter alia*, impermissibly deducting meal break times without completely relieving Plaintiffs and their fellow Collective members of work duties for the duration of the meal break.

113.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

114.    Defendant did not make a good faith effort to comply with the FLSA with respect to its compensation of Plaintiffs and other Collective members.

115.   Due to Defendant's FLSA violations, Plaintiffs and the other members of the Collective are entitled to recover from Defendant their unpaid minimum wages for all hours they off the clock up to 40 per workweek, an additional and equal amount as liquidated damages for Defendant's willful violations of the FLSA, prejudgment interest, reasonable attorneys' fees, and costs of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and all members of the Collective who join this action demand a **TRIAL BY JURY** and the following relief:

a)   Certification of this case as a collective action pursuant to 29 U.S.C. § 216(b);

b)   An order compelling Defendant to produce in electronic format if available or, if not, in print, the names, employment dates, pay records, and last-known contact information of all members of the Collective and, further, authorizing Plaintiffs to send notice of this action to all similarly situated individuals, including publication of notice of the lawsuit online and by other means in a manner reasonably calculated to apprise Collective Members of their rights and provide them the ability to join the lawsuit;

c)   An order designating Plaintiff's as representatives of the Collective and their undersigned counsel as Collective counsel;

d)      An order declaring that the practices complained of herein are unlawful under the FLSA;

e)      Application of the FLSA's three-year statute of limitations commensurate with Defendant's willful FLSA violations;

f)      An order granting judgment in favor of Plaintiffs and the Collective, and awarding the full amount of damages and liquidated damages available;

g)      An award of prejudgment and post-judgment interest;

h)      An award of Plaintiffs' reasonable attorneys' fees and costs; and

i)      Such other and further relief as this Court deems just and proper.

Respectfully submitted September 13, 2023.

LEGARE, ATTWOOD & WOLFE, LLC

By:     */s/ Steven E. Wolfe*
        Georgia Bar No. 142441
        sewolfe@law-llc.com
        Marissa R. Torgerson
        Georgia Bar No. 848356
        mrtorgerson@law-llc.com

Two Decatur Town Center, Suite 380
125 Clairemont Ave.
Decatur, Georgia 30030
Telephone:  (470) 823-4000
Facsimile:  (470) 201-1212