IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Harco National Insurance Company,<br><br>      Plaintiff,<br><br>v.<br><br>Fritz Contractors, LLC, Jason Fritz, and Lacy Fritz,<br><br>      Defendants. | Case Number: |

## COMPLAINT FOR INDEMNITY

Harco National Insurance Company ("Surety") files this Complaint against Fritz Contractors, LLC ("Contractor"), and Jason Fritz and Lacy Fritz ("Indemnitors") and shows the Court the following:

## PARTIES

1. Fritz Contractors, LLC is a corporation organized under the laws of the State of Georgia with its principal place of business in Cherokee County, Georgia.

2. Jason Fritz is a citizen of the State of Georgia with his domicile located in Cherokee County, Georgia.

1

3. Lacy Fritz is a citizen of the State of Georgia with her domicile located in Cherokee County, Georgia.

4. Surety is a corporation formed under the laws of the State of Illinois with its principal place of business in North Carolina.

## JURISDICTION AND VENUE

5. This matter concerns an amount in controversy greater than $75,000.00, exclusive of interest and costs.

6. There is complete diversity of citizenship between the Surety and each of the defendants.

7. This Court has jurisdiction of this matter under 28 U.S.C. § 1332(a), and venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(a) and Local Rule 3.1, as all defendants reside in the Northern District of Georgia, Atlanta Division.

## FACTS

8. Contractor is a grading contractor that in and around 2020 executed a subcontract with Young Contracting/SE, Inc. ("Obligee") for earthwork, demolition, erosion control, storm drainage, site water, and site sanitary sewer work in the amount of $4,488,101.65 (the "Subcontract") in connection with the

development known as Ashwood Perimeter Marketplace in DeKalb County, Georgia (the "Project").

9. The Subcontract required the Contractor to obtain performance and payment bonds.

10. Surety executed the following bonds on behalf of Contractor, which were delivered to Obligee:

| Bond # | Description | Penal Sum |
|---|---|---|
| GRHNSU 0772230 | Subcontract Payment Bond for Ashwood Perimeter Marketplace – 500 Ashwood Parkway, Atlanta, GA 30338 | $4,488,101.65 |
| GRHNSU 0772230 | Subcontract Performance Bond for Ashwood Perimeter Marketplace – 500 Ashwood Parkway, Atlanta, GA 30338 | $4,488,101.65 |

Referred to herein, separately as the "Performance Bond" or "Payment Bond" and collectively as the "Bonds".

11. In partial consideration of Surety's execution of the Bonds on behalf of Contractor, Contractor and Indemnitors executed an Agreement of Indemnity dated August 11, 2020 (the "Indemnity Agreement").

12. A true and accurate copy of the Indemnity Agreement is attached hereto as Exhibit A.

13. The Indemnity Agreement provides, in part, as follows:

**SECOND:** The Contractor or Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement…

In the event of any payment made by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s).

14. The Indemnity Agreement further provides, in part, as follows:

Payments not made by the Contractor or Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at the maximum rate allowed by law, with such interest accruing from the date payment was made by the Surety for which reimbursement is demanded.

4

      A.    **Contractor's default on the Subcontract and Performance Bond losses incurred by the Surety.**

15.    In late 2020, Obligee began expressing concerns with Contractor's performance of the Subcontract.

16.    On September 23, 2020, Contractor received notice of default from Obligee for failure to support change requests, failure to timely perform de-mucking and pond filling, fill operations, sanity sewer work and installation of precast box culverts.

17.    On October 13, 2020, Contractor received notice of default for failure to completely install shot rock, failure to complete the building pad for a Publix which was being constructed as part of the Project, failure to complete sanitary sewer rerouting and the need for constant and competent supervision.

18.    On October 18, 2020, Contractor received notice of default and withholding of payments as provided in the Subcontract due to failure to deliver pads C and D.

19.    On November 9, 2020, Obligee gave Contractor notice of default and 48 hours to cure for failure to meet the Project schedule.

20.    On December 16, 2020, Contractor received notice of default for failure to timely place stockpiled soils causing additional moisture in the stockpile, failure to timely complete building pads for buildings C & D.

21. Ultimately, on or about February 4, 2021, Obligee sent a Notice of Default and Declaration of Default to Contractor and Surety, declaring Contractor in default on the Subcontract and demanding that Surety perform under the terms of the Performance Bond based on Obligee's allegations that Contractor had caused delays in completion of the Project.

22. Surety began an investigation into the circumstances of the default, obtained documentation from Contractor and Obligee, and hired a construction consultant to visit the Project and assist in its investigation.

23. During this time Surety received notices of the non-payment of amounts due to Contractor's subcontractors and suppliers.

24. Following the declaration of Default, Contractor stated its intention to continue to perform the work.

25. On February 24, 2021, Obligee notified Surety that Contractor was not performing any work on the Project and Surety was given notice of its obligations under the Bonds.

26. On March 10, 2021, Surety and Contractor were notified of four test pits dug on the Project and the discovery of failures within the work previously completed.

27.     On or about April 2, 2021, Surety elected to proceed under Section 4.3 of the Performance Bond and tendered payment to Obligee in the amount of $395,341.89.

28.     A true and accurate copy of Surety's election to proceed under Section 4.3 is attached hereto as Exhibit B.

29.     Obligee hired a replacement subcontractor and proceeded to complete the Subcontract work.

30.     Obligee gave notice to Surety of the increased costs to complete the Subcontract and made demands for additional payment under the Performance Bond.

31.     On November 23, 2021, Obligee filed a lawsuit against Surety in the United States District Court for the Northern District of Georgia, Atlanta Division, Case 1:21-cv-04830-SCJ ("the Lawsuit"), seeking a judgment against Surety in an amount not less than $2,355,029.60 under the Performance Bond which Obligee alleged was owed by Harco because of Contractor's default.

32.     Surety, through its counsel, defended the Lawsuit for more than a year including the taking of numerous depositions.

33.     The Indemnity Agreement provides, in part, as follows:

> **FIFTEENTH:** The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the

7

> Bonds, unless the Contractor and the Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

34. On or about December 5, 2022, Surety sent a letter to Contractor, giving Contractor notice of its right to settle claims and demanded that to the extent Contractor requests that Surety continue to litigate the Obligee's claims, that Contractor provide proof that Obligee's claims were invalid and deposit cash collateral in the amount of $2,425,029.71 by December 7, 2022 (the "Collateral Letter").

35. A true and accurate copy of the Collateral Letter is attached hereto as Exhibit C.

36. Contractor did not deposit any collateral with Surety to support any argument the Contractor had to the claims made in the Lawsuit.

37. Contractor's failure to deposit collateral served as a failure to request the Surety to litigate Obligee's claims.

38. On or about December 15, 2022, Surety entered into a Settlement Agreement with Obligee wherein Surety agreed to reimburse Obligee up to certain amounts on each of the Bonds for the performance of work on the Project.

39. A true and accurate copy of the Settlement Agreement is attached hereto as Exhibit D.

40. On December 15, 2022, pursuant to the obligations contained in the Settlement Agreement, Surety paid the sum of $1,600,000.00 to resolve Obligee's claim on the Performance Bond.

41. Surety's losses on the Performance Bond total $1,995,341.89, excluding expenses of Surety's attorneys and construction consultant.

**B.  Payment Bond losses incurred by Surety.**

42. Numerous subcontractors and suppliers of Contractor submitted claims to Surety under the Payment Bond due to Contractor's failure to pay amounts due.

43. Surety investigated each claim received on the Payment Bond.

44. Surety ultimately paid claims on the Payment Bond in the total amount of $932,870.47.

45. A summary detailing each of the payments made by Surety under the Payment Bond is attached hereto as Exhibit E.

**C.  Expenses incurred by Surety in investigating the claims made on the Bonds and defending the Lawsuit.**

46. In addition to the losses paid under the terms of the Performance and Payment Bond Surety also incurred expenses as a result of the claims on the Bonds and Lawsuit, including, but not limited to, court costs, the cost of services rendered by counsel and construction consultants, along with additional expenses incurred by in-house personnel.

47. Surety hired Nicholson Professional Consultants as surety construction consultants to investigate the claims made under the Bonds.

48. Surety also hired Bovis, Kyle, Burch & Medlin, LLC to provide legal counsel related to the claims made on the Bonds and to defend the Lawsuit.

49. To date, Surety has incurred $217,245.52 in expenses related to the claims made on the Bonds and defending the Lawsuit.

50. Surety continues to incur expenses, including attorneys' fees, in pursuing the enforcement of the Indemnity Agreement

**D.  Contractor and Indemnitors have failed to honor their obligations contained in the Indemnity Agreement.**

51. On or about July 18, 2023, Surety sent a letter to Contractor and Indemnitors demanding reimbursement for payments for losses and expenses incurred by Surety on the Bonds in the amount of $3,145,457.88.

52. A true and accurate copy of the July 18, 2023 letter is attached hereto as Exhibit F.

53. Contractor and Indemnitors have failed to pay the amounts due under the terms of the Indemnity Agreement.

## COUNT I - BREACH OF INDEMNITY AGREEMENT

54. Surety restates and realleges each and every allegation set forth above in paragraphs 8 through 53 as if set forth verbatim herein.

55. Contractor and Indemnitors are liable to Surety for all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, that Surety has incurred and continues to incur as a result of the execution of the Bonds, in an amount greater than $3,145,457.88.

## COUNT II – INTEREST

56. Surety restates and realleges each and every allegation set forth above in paragraphs 8 through 53 as if set forth verbatim herein.

57. Surety is entitled to recover interest on the amount owed by Indemnitors at the maximum rate allowed by law on the total amount of the losses and expenses incurred by Surety under the terms of the Indemnity Agreement.

## COUNT II - ATTORNEY'S FEES AND EXPENSES

58. Surety restates and realleges each and every allegation set forth above in paragraphs 8 through 53 as if set forth verbatim herein.

59. Contractor and Indemnitors are liable to Surety for all attorney's fees, costs, and expenses paid or incurred in investigating claims on the Bonds, defending the Lawsuit brought by Obligee on the Performance Bond, and initiating and prosecuting this present action.

WHEREFORE, Surety prays for a judgment in its favor and against Contractor and Indemnitors, jointly and severally, as follows:

(a) In an amount as shown by the evidence for the losses, costs and expenses that Surety has sustained and continues to sustain as a result of the execution of the Bonds on behalf of Principal, which amount will be shown more fully at trial but no less than $3,145,457.88;

(b) In an amount as shown by the evidence for the attorney's fees that Surety continues to incur initiating and prosecuting this present action, which amount will be shown more fully at trial;

(c) Interest on all losses and expenses incurred by Surety, at the maximum rate allowed by law; and

(d) For all other relief that this Court deems just and appropriate.

Respectfully submitted.

/s/ David A. Harris
David A. Harris
Georgia Bar No. 668708
dah@boviskyle.com

/s/ Mark L. Pickett
Mark L. Pickett
Georgia Bar No. 814645
mpickett@boviskyle.com

BOVIS, KYLE, BURCH & MEDLIN, LLC
200 Ashford Center North, Suite 500
Atlanta, Georgia  30338-2668
Telephone:  (770) 391-9100
Facsimile:   (770) 668-0878

Attorneys for Harco National
Insurance Company