# EXHIBIT C
## Collateral Letter




www.iatinsurance.com

December 5, 2022

**VIA E-MAIL (jason@jafritz.com & lacy@jafritz.com)**

Jason Fritz
Lacy Fritz
Fritz Contractors, LLC
11998 E. Cherokee Drive
Ballground, GA 30107

   RE: Obligee:  Young Contracting/SE, Inc. ("Young")
      Principal:  Fritz Contractors ("Fritz")
      Surety:   Harco National Insurance Company ("Harco")
      Project:   Ashwood Perimeter Marketplace
      Bond No:  GRHNSU 0772230

Dear Jason and Lacy,

  Young has filed suit against Harco and made claims under the performance bond Harco provided on behalf of Fritz on the Ashwood Perimeter Marketplace project. Young currently claims that Harco's outstanding obligation on the performance bond is $2,425,029.71. Harco has answered the complaint and asserted defenses, but it has been left on its own by Fritz to defend the claims on the performance bond that arise out of Fritz's work on the project.

  The Agreement of Indemnity that you provided Harco, to induce Harco to execute the performance bond is attached hereto. This agreement gives Harco multiple rights against Fritz, as principal on the performance bond, and each of you, as individual indemnitors. Those rights, include, but are not limited to, 1) the assignment of Fritz's claims against Young (page 3) and 2) the right to act as your attorney in fact in the handling of the assigned claims (page 7).

  Harco requests that you direct your attention to number 15, entitled "Settlements" on page 6. That paragraph states as follows:

> The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment

or judgments rendered or that may be rendered, with interest, costs, expenses and attorney's fees, including those of the Surety.

To the extent that you intend to make any request on Harco under this paragraph to fully litigate the performance bond claim, you must immediately provide all proof you have that there is no valid claim on the performance bond and deposit cash collateral in the amount of $2,425,029.71.

Failure to provide the information to the satisfaction of Harco that there is no valid claim on the bond, and the failure to deposit cash collateral in the amount of $2,425,029.71, by Wednesday, December 7, 2022, will mean you have not provided a valid request for Harco to litigate the claims.

Harco reserves and does not waive any right it has under the Agreement of Indemnity. You owe Harco indemnity for all losses and expenses incurred as a result of Harco issuing this bond. Harco fully intends to enforce its rights to indemnity.

Sincerely,

Harco National Insurance Company

Frank J. Tanzola
SVP, Chief Legal Officer

Attachment (1)

CC: David A. Harris (dah@boviskyle.com)
    Lochlin Samples (lbsamples@smithcurrie.com)



# AGREEMENT OF INDEMNITY
# (GIA FORM II)

THIS AGREEMENT of Indemnity, made and entered into this 11th day of August , 20 20 by

Fritz Contractors, LLC 11998 E. Cherokee Drive, Ballground, GA 30107

(Insert full name and address of Contractor)
(hereinafter called the Contractor) and

Jason Fritz 11998 E. Cherokee Drive, Ballground, GA 30107

Lacy Fritz 11998 E Cherokee Drive, Ballground, GA 30107

(Insert full name and addresses of Indemnitors, if any)
(hereinafter called the Indemnitors, if any) and

**INTERNATIONAL FIDELITY INSURANCE COMPANY, ALLEGHENY CASUALTY COMPANY, and/or HARCO NATIONAL INSURANCE COMPANY, all affiliates of IAT Insurance Group, Inc.,** One Newark Center, 20th Floor, Newark, NJ 07102 (hereinafter called the Surety),

## WITNESSETH:

WHEREAS, the Contractor, in the performance of contracts and the fulfillment of obligations generally, whether in its own name solely or as co-venturer with others, may desire, or be required to give or procure certain surety bonds; undertakings or instruments of guarantee, and to renew, or continue or substitute the same from time to time; or new bonds, undertakings or instruments of guarantee with the same or different penalties, and/or conditions, may be desired or required, in renewal, continuation, extension or substitution thereof; any one or more of which are hereinafter called Bonds; or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and.

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express understanding that this Agreement of Indemnity should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor or the Surety may have already issued such Bonds in reliance upon execution of this Agreement; and

WHEREAS, the Contractor and Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the premises, the Contractor and Indemnitors for themselves, their existing and future subsidiaries and affiliates, heirs, executors, co-venturers, administrators, successors and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

## PREMIUMS

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

## INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third party providers) and from and against any and all such losses and/or expenses which the Surety may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. The Contractor and Indemnitors shall deposit with the Surety on demand an amount of money or other collateral security acceptable to the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor, equivalent to such amount that the Surety, in its sole judgment, shall deem sufficient to protect it from loss. The Surety shall have the right to use the deposit, or any portion thereof, in payment or settlement of any liability, loss, or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the provisions of this Agreement. If for any reason the Surety deems it necessary to demand an additional amount of collateral security to cover any possible additional liability or loss, the Contractor and Indemnitors shall deposit with the surety, immediately upon the Surety's demand, an additional amount of collateral security equal to such demand. The Surety shall have no obligation to invest or to provide a return on any such deposits. The Contractor and Indemnitors expressly waive any right to interest or other income which may be earned on the money or other collateral security and further agree that the aforesaid money or other collateral security may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such collateral security, at public or private sale, with or without notice to the Contractor and Indemnitors, or by any other method permitted or applicable by law.

In the event of any payment by the Surety the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. The vouchers or other evidence of any such payment(s) made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety, and of the Surety's good faith in making the payment(s). "Good Faith," as used in this paragraph and elsewhere in this Agreement, shall mean honesty in fact and the absence of willful misfeasance or malfeasance. Neither negligence nor gross negligence shall be deemed the absence of good faith.

The Surety is not a fiduciary and owes no fiduciary obligations to the Contractor and/or Indemnitors.

Payments not made by the Contractor or Indemnitors within 10 days after demand for such payment is made upon such party by the Surety shall bear interest at the maximum rate allowed by law, with such interest accruing from the date payment was made by the Surety for which reimbursement is demanded.

The Contractor and Indemnitors shall have no rights of indemnity, contribution or right to seek collection of any other outstanding obligation against each other or each other's property until the Contractor/Indemnitors' obligations to the Surety under this Agreement have been satisfied in full.

No action or failure to act by the Surety shall constitute a waiver of any right, power, or remedy afforded it by this Agreement, at law, or otherwise, nor shall such action or inaction constitute approval of or acquiescence in any breach by the Contractor and/or Indemnitors, except as may be specifically agreed in writing.

The Contractor and Indemnitors also understand and agree that their obligations remain in full force and effect for any and all Bonds issued in reliance upon this Agreement, notwithstanding that the entity on whose behalf said Bonds were issued has been sold, dissolved or whose ownership has been otherwise altered in any way.

## DISCHARGE AND ADDITIONAL SECURITY

THIRD: The Contractor and Indemnitors will, upon the written request of the Surety, promptly procure the full and complete discharge of the Surety from any Bonds specified in such request and all potential liability by reason of such Bonds. If such full and complete discharge is unattainable, the Contractor and Indemnitors will, if requested by the Surety, within five (5) business days, place the Surety in funds that are immediately available and sufficient to meet all of the Surety's liabilities that are in force prior to the date of the Surety's demand. The Surety may make such demand for funds at any time and without regard to whether it has sustained any loss or received any claim. The amount of such demand, including reasonable attorney fees and expenses, is at the sole discretion of the Surety. The Contractor and Indemnitors expressly waive any right to interest or other income which may be earned on the aforesaid funds and further agree that said funds may be held by the Surety in any investment, depository or other vehicle that the Surety in its sole discretion deems advisable. The Surety may sell or realize upon any and all such funds, at public or private sale, with or without notice to the Contractor and Indemnitors, or by any other method permitted or applicable by law.

The Contractor and Indemnitors waive, to the fullest extent permitted by applicable law, each and every right which they may have to contest such payment. Failure to make immediate payment to Surety as herein provided shall cause the Contractor and Indemnitors to be additionally liable for any and all reasonable costs and expenses, including attorneys fees, incurred by the Surety in enforcing this provision.

In the event that any or all of the Contractor and Indemnitors fail to comply with such demand as stated in this provision, the Contractor and Indemnitors hereby authorize and empower any attorney of any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and confess judgment against them or any of them for any sum or sums of money up to the amount of any or all Bond or Bonds, with costs, interest and attorney's fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Contractor and Indemnitors to Surety under the terms of this provision. The authority to confess judgment as set forth herein shall not be exhausted by one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Contractor and Indemnitors to the Surety shall have been paid in full. Demand shall be sufficient if sent by registered or certified mail, hand delivered, or via overnight mail to the last known address of the Contractor and Indemnitors, whether or not actually received.

## ASSIGNMENT

FOURTH: The Contractor, the Indemnitors hereby consenting, will assign, transfer and set over, and does hereby assign, transfer and set over to the Surety, as collateral, to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety, whether heretofore or hereafter incurred, the assignment in the case of each bonded contract to become effective as of the date of the bond covering such contract, but only in the event (1) of any abandonment, repudiation, forfeiture or breach of any contracts referred to in the Bonds or of any breach of any said Bonds; or (2) any advice or notification to the Surety that it is unable to perform any contract or obligation without financial assistance from the Surety; or (3) of any breach of the provisions of any of the paragraphs of this Agreement; or (4) of a default in discharging such other indebtedness or liabilities when due; or (5) of any assignment by the Contractor for the benefit of creditors or of the appointment, or of any application for the appointment, of a receiver or trustee for the Contractor whether insolvent or not; or (6) of any proceeding which deprives the Contractor of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (7) of the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony, or imprisoned if the Contractor be an individual: (a) All the rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Contractor in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to in the bonds, materials which may be in process of construction, in storage elsewhere, in transportation anywhere, or in the process of being manufactured; (c) All the rights, title and interest of the Contractor in and to all subcontracts and/or purchase orders let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of action, claims and demands whatsoever and the proceeds therefrom which the Contractor may have or acquire against any subcontractor, vendor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools or other equipment in connection with or on account of any and all contracts referred to in the Bonds; against any owner, architect, engineer or accountant; and against any surety or sureties of any subcontractor, laborer, or materialman; (e) All claims, causes of actions due, claimed or received on insurance policies, including but not limited to life insurance policies, builders risk policies, fire policies and casualty policies, including premium refunds; (f) Any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work; and (g) Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not in which the Contractor has an interest.

## TRUST FUND

FIFTH: The Contractor, the Indemnitors hereby consenting, agrees that all monies due or to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or otherwise, for the benefit of persons performing labor or providing materials for projects covered by the Bonds and for payment of all obligations in connection with any such contract or contracts for which the Surety would be liable under any said Bond, which trust funds also inure to the benefit of the Surety for liability or loss it may have or may sustain under any said Bond, and further agrees to use such money for the purpose of performing the contract and discharging the obligations of the Bond and for no other purpose until the Bond is completely exonerated. If the Surety discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds. This Agreement and declaration shall constitute notice of such trust. Such trust or trusts shall terminate on the payment by Contractor or Indemnitors of all the contractual obligations for the payment of which the trust or trusts are hereby created or upon the expiration of 20 years from the date hereof, whichever shall first occur.

The Contractor shall, upon demand of the Surety and in implementation of the trust or trusts hereby created, enter into a funds control escrow agreement or agreements in a form as the Surety shall designate, in its sole and absolute discretion, with a funds control company designated by the Surety for the collection, deposit and disbursement of the trust funds as described above. Further, the trust funds are to be placed with a bank or similar depository designated by Surety in its sole and absolute discretion.

## SECURITY INTERESTS AND UCC SECURITY AGREEMENT

SIXTH: This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity. A carbon, photographic or other reproduction of this Agreement may be filed as a Financing Statement.

The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under the Code.

This Security Agreement and Financing Statement shall secure payments made, and to be made, by the Surety hereunder and under the Bonds issued by the Surety that are not reimbursed to the Surety by the Contractor or Indemnitors and shall cover and attach to the following collateral: all tangible or intangible personal property and fixtures owned by the Contractor and Indemnitors, wherever located or situated and whether now owned or hereafter acquired, including the personal property described in Paragraph Fourth, and shall cover proceeds from sale of covered property.

## TAKEOVER

SEVENTH: In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the U.S. Bankruptcy Code, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Code, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

## CHANGES

EIGHTH: The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in the Bonds, and/or any contracts referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligees and with the same or larger or smaller penalties, it being expressly understood and agreed that the Contractor and Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might substantially increase the liability of said Contractor and Indemnitors.

## ADVANCES

NINTH: The Surety is authorized and empowered to guarantee loans, to advance or lend to the Contractor any money, which the Surety may see fit, for the purpose of any contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor. Nothing herein shall be construed to impose upon the Surety any obligation to use either its own funds, or collateral provided by anyone to fund the Contractor to complete any Contract or to loan it any money or credit. Such determination shall be at the sole discretion of the Surety.

## CONTINUING DUTY OF DISCLOSURE TO SURETY

TENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, if the Contractor and/or Indemnitors become aware of any materially adverse change in the Contractor's financial condition, or any fact(s) suggesting the possibility of any such change (including, but not limited to, pending legal actions against the Contractor), the Contractor and/or Indemnitors shall immediately advise the Surety of same in writing.

As used herein, "materially adverse change" shall be defined to include: (a) any event or circumstance which, when considered individually or together with other events, could be expected to have a materially adverse effect on (i) the financial condition of the Contractor, or on the earnings, operations, assets, business affairs or business prospects of the Contractor; (ii) the ability of the Contractor to perform or observe any of its obligations under this Agreement or under any contract that is the subject of the Surety's Bond obligations; (iii) the rights and remedies of the Surety under this Agreement; and/or (iv) the Surety's evaluation of risk in determining whether to continue to extend surety credit to the Contractor and/or in determining the terms and conditions of any such extension of credit.

## BOOKS AND RECORDS

ELEVENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts and payments of accounts. The Contractor and Indemnitors agree to execute, as requested by the Surety, any additional documents to cause the release of records and information authorized by this paragraph.

## DECLINE EXECUTION

TWELFTH: Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declination shall not diminish or alter the liability that may arise by reason of having executed the Bid or Proposal Bond.

## NOTICE OF EXECUTION

THIRTEENTH: The Indemnitors hereby waive notice of the execution of said Bonds and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all liability on their part hereunder, to the end and effect that, the Contractor and the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## HOMESTEAD

FOURTEENTH: The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale or other legal process under the laws of any State, Territory, or Possession.

## SETTLEMENTS

FIFTEENTH: The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Contractor and the Indemnitors shall demonstrate to the Surety's satisfaction in the Surety's sole discretion that there is a valid basis to dispute said claim, demand, suit or judgment, and shall in good faith request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, and shall deposit with the Surety, at the time of such request, cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those of the Surety.

## CO-SURETIES AND REINSURERS

SIXTEENTH: In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.

## SUITS

SEVENTEENTH: Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.

The Contractor and Indemnitors hereby consent and submit to personal jurisdiction in the courts of New Jersey with regard to claims and actions against them by the Surety hereunder and consent that any process necessary or proper for the initiation of any court action in New Jersey or for entry of judgment may be served upon them by certified and ordinary mail, addressed to them or to their attorneys, at their last known addresses.

The Contractor and Indemnitors furthermore hereby agree to submit to personal jurisdiction in any forum in which the Surety may be sued on an obligation for which the Contractor and Indemnitors have agreed to indemnify the Surety.

## OTHER RIGHTS

EIGHTEENTH: All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise, any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against any one or more of the Contractor and/or Indemnitors shall not release or waive any right against any other of the Contractor/Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Contractor or to await receipt of any dividends from the legal representatives of the Contractor before asserting its rights under this Agreement against the Indemnitors.

The rights, powers and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and/or Indemnitors or others whether by terms of any other agreement, by operation of law or otherwise.

## OTHER INDEMNITY

NINETEENTH: The Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement. No subsequent agreements of indemnity or other agreements of any type whatsoever between the Surety and the Contractor and/or Indemnitors, or any of them, shall be deemed a novation of this Agreement.

## INVALIDITY

TWENTIETH: In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Contractor and Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor and Indemnitors or others whether by the terms of any other agreement or by operation of law or otherwise. If any part of this Agreement shall be void or unenforceable under the laws of any jurisdiction governing its construction, this Agreement shall not be void or vitiated thereby, but shall be construed and enforced with the same effect as though such part was omitted.

## ATTORNEY IN FACT

TWENTY-FIRST: The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights granted, assigned, and/or transferred to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and meaning of the within rights granted, assigned and/or transferred, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as such attorney-in-fact.

## NOTICE

TWENTY-SECOND: Upon becoming aware of any demand, notice, or proceeding preliminary to fixing any liability with which the Surety may be subsequently charged under any Bond, the Contractor and Indemnitors shall immediately notify the Surety in a writing delivered at its Home Office, One Newark Center, 20th Floor, Newark, New Jersey 07102 to the attention of the Claims Department. The Surety reserves the right to change periodically the address for delivery of notification by the Surety's written direction delivered to the Contractor and Indemnitors.

Any notification by the Surety to any one individual or entity comprising the Contractor and Indemnitors shall constitute notice to the remaining individuals and entities comprising the Contractor and Indemnitors.

## TERMINATION

TWENTY-THIRD: This Agreement may be terminated by the Contractor or Indemnitors upon twenty days' written notice sent by certified or registered mail to the Surety at its home office at One Newark Center, 20th Floor, Newark, New Jersey 07102, but any such notice of termination shall not operate to modify, bar, or discharge the Contractor or the Indemnitors from their obligations under this Agreement as to the Bonds that may have been theretofore executed or executed pursuant to Consent of Surety issued prior to notice of termination or with respect to Bonds executed after the date of such termination (i) upon the award of a contract to the Contractor on a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (ii) which the Surety has become obligated, prior to such date, to execute. Further, such notice of termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given.

## THIRD PARTIES

TWENTY-FOURTH: In the event that the Contractor and/or an Indemnitor(s) and/or their subsidiaries or affiliates request that a Bond or Bonds be issued on behalf of a third party as contractor or principal, the provisions of this Agreement shall apply with equal force to any such Bond or Bonds. This Agreement applies to Bonds executed at the request of the Contractor and/or Indemnitor(s) on behalf of any and all of their wholly or partially owned subsidiary companies, subsidiaries, divisions or affiliates, partnerships, joint ventures or co-ventures whether open or silent, jointly, severally, or in combination with each other, now in existence or which may hereafter be created or acquired.

## AMENDMENTS

TWENTY-FIFTH: This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

## SUBSEQUENT EXECUTION

TWENTY-SIXTH: The Contractor and Indemnitors waive any defense that this instrument was executed subsequent to the date of any Bond, admitting and covenanting that such Bond was executed pursuant to the request of the Contractor/Indemnitors, and in reliance upon the Contractor/Indemnitor's promise to execute this document.

## CROSS-INDEMNITY

TWENTY-SEVENTH: In the event that more than one party executes this Agreement as "Contractor", and the Surety sustains any loss with respect to one or more of the parties identified as "Contractor", all parties executing this Agreement as either "Contractor", or "Indemnitors", or both, shall be jointly and severally liable to the Surety for such loss in accordance with the terms of this Agreement.

## REPRESENTATIONS

TWENTY-EIGHTH: The undersigned represent to the Surety that they have carefully read the entire Agreement and that there are no other agreements or understandings which in any way lessen or modify the obligations set forth herein. The undersigned further warrant and represent to the Surety that all necessary action has been taken by them to authorize the execution and delivery of this Agreement.

## UNIFORM ELECTRONIC TRANSACTIONS ACT

TWENTY-NINTH: The undersigned agree that this document and any and all bonds issued by the Surety will be subject to the terms of the Uniform Electronic Transactions Act ("UETA"), to the extent that the UETA has been adopted by the State legislature in the relevant jurisdiction, and any and all substantially similar federal or state legislation designed to regulate electronic commerce.

## COUNTERPARTS

THIRTIETH: This Agreement may be executed in any number of counterparts, all of which taken together shall constitute the Agreement. This Agreement shall be effective and immediately binding as to each Contractor and Indemnitor when that Contractor or Indemnitor executes this Agreement, regardless of whether any other Contractor or Indemnitor has executed the Agreement or fails or ceases to be bound by the Agreement for any reason. Delivery of a facsimile, electronic or digital copy of this Agreement's signature pages, executed by any Contractor or Indemnitor, to the Surety or the Surety's agent or representative shall constitute effective execution and delivery of this Agreement by that Contractor or Indemnitor and shall constitute a valid and original signature to this Agreement for all purposes. Contractor's and Indemnitors' obligations to Surety shall not be affected by the failure of any Contractor or Indemnitor to sign any Bond.

IN WITNESS WHEREOF, we have hereunto set our hands and seals.

**WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.**

IMPORTANT: To all indemnitors: please provide your Social Security Number (Individual) or your Federal Tax ID Number (Corporation). The signature of each and every Corporation must be attested to and sealed by the Corporate Secretary or other officer as permitted by the governing documents and/or state law. The signature of each and every LLC, Partnership and/or Trust that is a party to this agreement must be witnessed by at least one disinterested person. The signature of each Individual party does not require a witness except for agreements containing Contractors and/or Indemnitors located in the state of Louisiana, which requires the witness of a disinterested person. All signatures must be notarized.

**CONTRACTORS - {Limited Liability Company Signatories}**

Witness' signature _____

Fritz Contractors, LLC
_____
Name of Limited Liability Company

Member's Signature _____

DANIEL T. CORELL
(Print or Type Name)

Jason Fritz _____ President
(Print or Type Name and Title)

Federal Tax ID ▮1267

S.S. # ▮6640

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF  Georgia
COUNTY OF  Cherokee       S.S.

On This 17th day of August, in the year 20 20 before me personally came

ELIZABETH T LOEHR
Notary Public, Georgia
Cherokee County
My Commission Expires
October 20, 2020

Jason Fritz

President         of the Limited Liability Company of  Fritz Contractors, LLC

to me known and known to me to be the person who is described in and who executed the foregoing instrument and acknowledges to me that

he/she executed the same as and for the act and deed of the said Limited Liability Company.

_____         10-20-2020
(Signature and title of official taking acknowledgment/ Notary)    My Commission Expires (Date)

**INDEMNITORS - {Individual Signatories}**

Witness' signature _____

_____ (Individually)

DANIEL T. CORELL
(Print or Type Name)

Jason Fritz _____ ▮6640
(Print or Type Name)            (S.S #)

Individual Phone Number  770-624-1042

11998 E. Cherokee Drive  Ball Ground, GA 30107
Home Address

**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF Georgia
COUNTY OF Cherokee       S.S.

On This 17th day of August, in the year 20 20 before me personally came

ELIZABETH T LOEHR
Notary Public, Georgia
Cherokee County
My Commission Expires
October 20, 2020

Jason Fritz

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s)
to me that he/she executed the same.

_____         10-20-2020
(Signature and title of official taking acknowledgment/ Notary)    My Commission Expires (Date)

**INDEMNITORS - (Individual Signatories)**

Witness' signature **B. Diane Holley**                              _____ ... (Individually)

**B. Diane Holley**                                                              Lacy Fritz                                  ▮▮▮▮-8604
(Print or Type Name)                                                        (Print or Type Name)                      (S.S #)

Individual Phone Number (770) 893-1187              11998 E. Cherokee Drive  Ballground, GA 30107
                                                                                              Home Address


**INDIVIDUAL ACKNOWLEDGMENT**

STATE OF **Georgia**
COUNTY OF **Cherokee**           s.s.

On This **17th** day of **August**, in the year 20 **20** before me personally appeared

ELIZABETH T LOEHR
Notary Public, Georgia
Cherokee County
My Commission Expires
October 20, 2020

Lacy Fritz

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument and acknowledge(s) to me that he/she executed the same.

_____         **10-20-2020**
(Signature and title of official taking acknowledgment/ Notary)     My Commission Expires (Date)