# EXHIBIT D
## Settlement Agreement



PLAINTIFF'S
EXHIBIT

**D**

### Settlement, Release and Waiver Agreement

This Settlement, Release and Waiver Agreement ("Agreement") is made and entered into as of the date last written below, by and between Harco National Insurance Company ("Harco") and Young Contracting/SE, Inc. ("Young")(collectively the "Parties"), as follows:

**WHEREAS,** Young was the general contractor for the construction of the Ashwood Perimeter Marketplace, located at 500 Ashwood Parkway, Atlanta, GA 30338 (the "Project"), under a contract with the Branch Ashwood Associates, L.P. ("Owner"); and

**WHEREAS,** Young entered into a subcontract agreement with Fritz Contractors, LLC ("Fritz") for the earthwork, demolition, erosion control, storm drainage, site water and site sanitary sewer required for the Project in the amount of $4,488,101.65 (the "Subcontract"); and

**WHEREAS,** in connection with the Subcontract, Fritz requested, and Harco executed: 1) a Subcontract Payment Bond in the penal amount of $4,488,101.65 (the "Payment Bond") and 2) a Subcontract Performance Bond in the penal amount of $4,488,101.65 (the "Performance Bond") (collectively the "Bonds"); and

**WHEREAS,** as partial consideration for the execution of the Bonds by Harco, Fritz and certain other individually named indemnitors executed an Agreement of Indemnity dated August 11, 2020, which included therein in the event of any breach of any bond or of the indemnity agreement an assignment of all "actions, causes of action, claims and demands whatsoever and the proceeds therefrom which [Fritz] may have or acquire against [Young] . . ." and "[a]ny and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds" (the "Fritz Assigned Claims"); and

**WHEREAS,** on or about February 04, 2021 Fritz was declared in default on the Subcontract by Young and claims were made against Harco on the Bonds, including claims by third-parties under the Payment Bond and a claim by Young under the Performance Bond as a result of the default of Fritz; and

**WHEREAS,** on April 2, 2021, Harco elected to perform pursuant to Section 4.3 of the Performance Bond and paid Young the sum of $395,341.89 as partial satisfaction of Harco's liability to Young under the Performance Bond; and

**WHEREAS,** Harco paid claims on the Payment Bond it executed on behalf of Fritz on the Project in the total amount of $932,870.47; and

**WHEREAS,** on July 20, 2021, Harco recorded the assignment given to it by Fritz, including but not limited to the Fritz Assigned Claims, in a UCC Financing Statement,

Page 1 of 6

recorded in the Cherokee County Clerk of Superior Court, file Number 028-2021-001556; and

**WHEREAS**, on November 23, 2021, Young filed a lawsuit against Harco in the United States District Court for the Northern District of Georgia, Atlanta Division, Case 1:21-cv-04830-SCJ, seeking a judgment against Harco in an amount not less than $2,355,029.60 under the Performance Bond which Young alleged was owed by Harco because of Fritz' default of the Subcontract (the "Lawsuit"); and

**WHEREAS**, the Parties desire to settle all of the rights, obligations and disputes asserted or that could have been asserted between them related to the Project, the Subcontract, the Bonds, and the Lawsuit.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, including without limitation the terms and conditions set out in this Agreement, all of which the parties, by their execution of this Agreement, acknowledge as good and sufficient consideration, the Parties agree as follows:

1.   **Acknowledgement of Recitals**. The Parties acknowledge that the foregoing recitals are true and correct, are incorporated herein by reference, and that such recitals are a substantive part of this Agreement.

2.   **Payment to Young.** No later than December 31, 2022, Harco shall deliver payment by check, ACH or wired funds to Young in the amount of One Million Six Hundred Thousand Dollars and No Cents ($1,600,000.00). Such payment is made by Harco for the purpose of settling all claims or disputes relating to the Performance Bond and shall not be construed as an admission of liability.

3.   **Dismissal of Claims with Prejudice**. No later than five (5) days after delivery of the payment described in paragraphs 2 above, the Parties shall file a mutual dismissal with prejudice of the Lawsuit.

4.   **Discharge of Performance Bond**. Upon delivery of the payment described in paragraph 2 above, Young shall mark the original Performance Bond "**RELEASED, DISCHARGED, AND CANCELED**" and return the original to Harco within five (5) days.

5.   **Harco Representation and Warranty**. Harco does hereby represent and warrant that is has by assignment the Fritz Assigned Claims which include, but are not limited, to all claims Fritz has against Young and the Owner, from the beginning of time to the end of time related to the Project.

6.   **Young Representation and Warranty**. Young does hereby represent and warrant that 1) it has not assigned, released, or waived any claim it has against Fritz

arising out of or relating to the Subcontract or Project; and 2) it that it has no claims of any kind or nature against the Owner relating to Fritz's work under the Subcontract or on the Project and it has further waived and released all claims for payment against the Owner relating to the entire Project inclusive of all scopes of work.

7.    **Assignment of Claims by Young.** Young does hereby forever and irrevocably assign to Harco all claims or causes of action it has against Fritz arising out of or relating to the Subcontract and Project (the "Young Assigned Claims"). This assignment specifically and unconditionally includes damages Young claims it has incurred as a result of Fritz's default on the Subcontract in addition to the amounts paid by Harco under the Performance Bond and as provided in paragraph 2 above.

8.    **Mutual Release and Waiver.** Except for the Young Assigned Claims, the Parties, for themselves and on behalf of each of their respective parents, subsidiaries, affiliates, divisions, joint ventures, participants, partners, predecessors and successors in interest, past, present, and future agents, employees, officers, directors, attorneys, and other persons and/or entities acting on behalf of either or both of them, do hereby mutually fully and finally forgive, release, remise, acquit, waive and discharge each other, and each of their respective parents, subsidiaries, affiliates, divisions, joint ventures, participants, partners, predecessors and successors in interest, past, present, and future agents, employees, officers, directors, attorneys, and other persons and/or entities acting on behalf of either or both of them, of and from any and all claims, rights, actions, causes of action, charges, debts, demands, damages, liabilities, express or implied contract rights, costs, attorney's fees and/or expenses of any kind, nature, and character, at law or in equity, arising under federal, state, or any other law, whether sounding in tort, contract, or otherwise, of whatever kind or nature, known or unknown, contingent or not, past or present, accrued or hereafter accruing relating to, arising out of, connected with, incidental to, or in any other way related to the Project, the Subcontract, the Bonds, the Fritz Assigned Claims, and the Lawsuit. For the avoidance of any doubt, it is expressly stipulated that this mutual release includes all claims or defenses related in any way to any claim brought, or which could have been brought, by Fritz, on its own or through Harco as assignee, for any claims against Young or the Owner arising out of or related to the Project.

9.    **Preservation of Young Assigned Claims.** The Parties agree and stipulate that nothing contained in this Agreement shall impair or impede any claim, defense, or right of Young against Fritz, all of which have been assigned to Harco under paragraph 7 above, relating to or arising out of the Subcontract or Project.

10.    **Harco Duty to Defend Young.** In the event Fritz brings any lawsuit to recover any amount from Young, and such claim is based on any of the Fritz Assigned Claims, which are fully assigned to Harco and released within the Mutual Release and Waiver provided in paragraph 8 above, Harco does agree to defend and indemnify Young in any such action. Young agrees that Harco may choose any lawyer of Harco's choice to

represent Young in any lawsuit brought by Fritz to pursue any of the Fritz Assigned Claims. Young further agrees that it expressly waives any conflict that might exist for David A. Harris and the law firm of Bovis, Kyle, Burch & Medlin, LLC from being named by Harco as counsel in any such lawsuit brought by Fritz.

11. **Young's Cooperation.** Young agrees to cooperate with Harco in the event of any lawsuit or counterclaim which asserts any right of action on the Fritz Assigned Claims, the Young Assigned Claims, and/or under the August 11, 2020 Agreement of Indemnity. This duty to cooperate includes without limitation, 1) providing access to all non-privileged information contained withing Young's records relating to the allegations in any such the lawsuit, 2) making representatives of Young available to counsel hired by Harco in any such lawsuit to provide information, some of which may be protected by attorney client privilege, and 3) to make available for deposition or trial any employees or authorized representatives of Young requested by counsel for the defense or prosecution of any such lawsuit. Nothing contained herein shall be deemed a waiver of any privilege or right any Party has in any information or documents.

12. **Receipt of Payment by Owner.** In the event Young receives any payment by Owner at any point after the execution of this Agreement in any amount and the basis for such payment was in any part related to work performed by Fritz under the Subcontract or for amounts due to Young which would have been due to Fritz under any properly submitted pass-through claim related to the Subcontract, Young agrees to pay Harco such amount that would have been due Fritz.

13. **Miscellaneous Provisions.** The Parties further agree as follows:

    a.    This Agreement contains the entire agreement and understanding between the Parties and supersedes and replaces all prior agreements, written or oral, prior negotiations and proposed agreements, written or oral. The Parties acknowledge that no other party, nor agent nor attorney of any other party, has made any promise, representation, or warranty, express or implied, not contained in this Agreement concerning the subject matter of this Agreement to induce this Agreement, and the Parties acknowledge that they have not executed this Agreement in reliance upon any such promise, representation or warranty not contained in the Agreement. No oral agreement, promises, inducements or agreements not herein expressed have been made by any of the Parties. This Agreement may not be altered, amended, modified or otherwise changed except by a writing duly executed by all Parties.

    b.    The Parties acknowledge that they may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this Agreement, but they

agree that it is their intent to fully, finally and forever settle and release any and all claims released hereby, known or unknown, suspected or unsuspected, patent or latent, that now exist, or heretofore have existed, or may hereafter exist, and without regard to the subsequent discovery of the existence of such different or additional facts.

c.      Each party hereto acknowledges that neither the other party nor any agent or attorney of the other party, has made any promise, representation or warranty whatsoever, express or implied, not contained herein concerning the subject matter hereof, to induce it to execute this Agreement in reliance upon any such promise, representation or warranty not contained herein.

d.      This Agreement is solely for the benefit of the Parties hereto and shall not create any rights in any person not a party hereto, or in any way increase the rights of third persons, or increase the obligations of any party hereto to any third person.

e.      In the event that one or more of the provisions of this Agreement shall be declared to be invalid, illegal, or unenforceable in any respect (unless such invalidity, illegality, or unenforceability shall be tantamount to a failure of consideration), the validity, legality, and enforceability of the remaining provisions contained in this Agreement shall not in any way be affected or impaired thereby.

f.      The Parties hereby represent and warrant that prior to the execution of the Agreement they have not assigned or transferred to any other person any debt, claim, right, demand, obligation, cost, expense, or cause of action, in law or in equity, that any of them may have against the others, that is the subject of this Agreement.

g.      The Parties acknowledge that they have fully read and understand fully the terms and conditions of this Agreement and have consulted or had the opportunity to consult with counsel regarding this Agreement.

h.      This Agreement has been drafted jointly by the Parties and the rule of *contra proferentem* shall not apply.

i.      This Agreement shall be binding upon its execution by all Parties hereto, and their successors and assigns.

j.   This Agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Georgia, without regard to the principles of conflicts of law thereof.

k.   This Agreement may be executed by electronic signature and in any number of identical counterparts, which, when taken together, shall collectively constitute one agreement, but in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged.

l.   The undersigned each represent and warrant that they are duly authorized and empowered to execute this Agreement on behalf of Harco and Young, respectively.

m.   Photographs, copies, facsimiles, or electronic copies of this Agreement including counterparts shall be deemed originals and shall be as valid and enforceable as an original.

n.   The Effective Date of this Release is the date of the last signature below.

**Harco National Insurance Company**

By: _____

Printed Name: KYLE MURPHY

Title: VP, CLAIMS COUNSEL

Date: 12/15/2022

**Young Contracting/SE, Inc.**

By: _____

Printed Name: LARY W. YOUNG

Title: CEO

Date: 12/15/2022