# EXHIBIT H



**Bernstein, Shur,
Sawyer & Nelson, P.A.**
100 Middle Street
PO Box 9729
Portland, ME 04104-5029

T (207) 774 - 1200
F (207) 774 - 1127

Edward J. Sackman
(603) 665-8844 direct
nsackman@bernsteinshur.com

June 5, 2023

**Via Email**

Leon Van Gelderen
2300 Henderson Mill Road, Suite 300
Atlanta, Georgia 30345
leon@lvglaw.com

Re:        Everlast® Trademark

Mr. Van Gelderen:

My firm corresponded with you on behalf of our client Everlast Roofing, Inc. ("Everlast") between 2014 and 2016 regarding your client Everlast Construction Group, LLC ("ECG" or "your client"). Our correspondence concerned ECG's use of the term "EVERLAST" in its company name and on related marketing materials. As you and your client may recall, Everlast owns numerous federally registered trademarks in association with roofing products, including Everlast ®, Everlast II ®, and Everlast Roofing Inc. ®. See attached U.S. Patent and Trademark Office Certificates of Registration.

In October of 2015, ECG agreed to incorporate a disclaimer (the "Disclaimer") on its website www.everlastllc.com indicating that "Everlast Construction Group, LLC does not provide, install, or repair metal roofing and is not associated with Everlast Roofing, Inc." See attached email correspondence between you and my colleague James Keenan. ECG additionally indicated that, in reconstructing its website, it would "make roofing a less prominent feature." In exchange for these promises, Everlast abstained from filing a trademark infringement action against ECG in federal court in Georgia.

It recently came to our attention that ECG no longer includes the Disclaimer on its website. We learned this because a job listing affiliated with ECG populated under Everlast's Indeed page. See screenshot for "Roofing Sales Executive" job listing attached. Because the listing is linked to a company called "Everlast Roofing and Restoration," we also learned that, in March of 2023, Eric Antebi registered the entity Everlast Roofing and Restoration, LLC ("ERR") with the Georgia Secretary of State. Mr. Antebi additionally appears to be building out a website and branding for this new entity at www.roofsbyeverlast.com.

Your client's actions suggest that he no longer intends to abide by the promises he made to Everlast in 2016 via your email. Everlast is deeply concerned about these developments. We write to demand that ECG immediately re-incorporate the Disclaimer on its website www.everlastllc.com. Further, Everlast demands that your client cease and desist any plans or actions associated with use of the name "Everlast Roofing and Restoration, LLC," whether it be associated with a new entity or a rebranding of ECG as it currently exists. Given the fact that ERR's job posts are already being associated with Everlast, we have no doubt that ERR's use of our client's trademarks will again cause confusion among consumers. Finally, we demand that your client cease and desist its apparent plans to use the website www.roofsbyeverlast.com.

In case it is not already clear to you, your client's actions have destroyed any trust that existed between Everlast and your client. As a result, Everlast must now assume ECG is no longer interested in cooperation. If ECG does not immediately correct course, the next step will be the initiation of litigation. Everlast reserves all rights, remedies, and defenses, including but not limited to its right to pursue a trademark infringement action against ECG, ERR, and Mr. Antebi personally.

Please contact me as soon as possible to resolve this matter. If we do not hear from you within five business days, we will assume you no longer represent ECG and, due to Mr. Antebi's apparent plans to move forward, be compelled to reach out to Mr. Antebi personally before his plans come to fruition.

Sincerely,

*/s/ Edward J. Sackman*

Edward J. Sackman, Esq.
Attorney for Everlast Roofing, Inc.

Law Offices
## LEON VAN GELDEREN, P.C.
Suite 300
2300 Henderson Mill Road
Atlanta, Georgia 30345

*Telephone 770.392.9006*

*Facsimile 770.392.2090*

lvgpc@lvglaw.com
*(office email)*

Leon@lvglaw.com
*(direct email)*

June 8, 2023

**Via e-mail to nsackman@bernsteinshur,com**
Edward J. Sackman, Esq,
Bernstein, Shur, Sawyer and Nelson
PO box 9729
Portland, Maine 04104

Dear Mr, Sackman:

    I have reviewed your letter with my client. You incorrectly state that the disclaimer we agreed upon applies to the current website of Everlast Construction Group which no longer refers to roofing but rather refers to just commercial construction contracts. Therefore the disclaimer is inapplicable. The disclaimer will be added to the new website of Everlast Roofing and Restoration which involves residential construction. That company does not manufacture and install metal roofs,and  I remind you that Everlast's trademark is strictly for metal roofing. Your client has no rights to any name involving Everlast construction. There is another Everlast Construction in California that does not contain a disclaimer and has been in business since 2007 - https://everlast-construction.com/  There is also another Everlast Roofing and Restoration in Oklahoma that does not contain a disclaimer and has been in business since 2018 and https://everlastroofingandrestoration.com/.  So your demand to cease using the name Everlast Roofing and Restoration is rejected. But the disclaimer will be added to that website.  This an offer to settle a disputed claim.

    As to the domains  everlastllc.com and roofsbyeverlast.com, they are  not  trade names or product names. Trademark law would not apply to a domain registration.  Please provide some legal basis to your claim and the names of your client's domains that you allege have rights to these URLs or are confusingly similar.

        Sincerely,

        *Leon Van Gelderen*

        Leon Van Gelderen
        Attorney at Law

LVG/mos
cc:  E. Antebi.



Bernstein, Shur,
Sawyer & Nelson, P.A.
100 Middle Street
PO Box 9729
Portland, ME 04104-5029

T (207) 774 - 1200
F (207) 774 - 1127

Edward J. Sackman
(603) 665-8844 direct
nsackman@bernsteinshur.com

June 29, 2023

**Via Email**

Leon Van Gelderen
2300 Henderson Mill Road, Suite 300
Atlanta, Georgia 30345
leon@lvglaw.com

Re:      Everlast® Trademark

Mr. Van Gelderen:

As you know, this firm represents Everlast Roofing, Inc. ("Everlast"). This letter will respond to your June 8, 2023 correspondence on behalf of your clients Everlast Construction Group, LLC ("ECG"), Everlast Roofing and Restoration, LLC ("ERR"), and Mr. Antebi (collectively, "your clients"). The contentions in your letter are just plain wrong, and I am compelled to re-assert the demand that your clients cease and desist. If they do not, we will file suit in Georgia federal court to protect Everlast's rights.

Your letter essentially confirms that ECG has removed the previously negotiated disclaimer *and* that Mr. Antebi has started a new company focused on roofing (ERR) that is advertising itself via the website www.roofsbyeverlast.com. This is completely unacceptable. First, there is no exception to our prior agreement pursuant to which the disclaimer your clients agreed to is no longer required. Even if there was, the proper course would have been to contact us to raise for discussion whether it was appropriate to remove the disclaimer, not to do so unilaterally and without notice. Your clients must put the disclaimer back on the site www.everlastllc.com immediately.

Second, ERR's focus on roofing puts it in more direct competition with Everlast than ECG. No disclaimer could cure the consumer confusion that will inevitably result from your clients' use of the EVERLAST trademark for a company that focuses on roofing. Usage of Everlast's name for the same goods and services is precisely what the Lanham Act is designed to protect against. Your clients must immediately remove this site and all references to it from the web and cease and desist use of the EVERLAST mark in connection with roofing services.

Your letter also assumes without basis that the existence of other "Everlasts" insulates your clients. Everlast monitors the marketplace for potentially confusing uses of its marks and where appropriate advises other companies of the issues with their use and negotiates resolution. When other parties are intransigent, Everlast will not hesitate to initiate litigation. By way of example, I attach for your reference a judgment in a trademark infringement claim against Everlast Roofing & Tuckpointing in the Northern District of Illinois, see Exhibit A Final Judgment Order. Earlier this year, Everlast concluded via settlement litigation against a California company using the name "Everlast Roofing, Inc." that Everlast filed in the Central District of California (Everlast Roofing, Inc. v. Everlast Roofing, Inc., Case No. 2:22-cv-09190-SVW-E). These are but two examples of Everlast's rigorous trademark enforcement program—a program that defends rights we have a duty and incentive to protect.

If your clients do not accede to our demands, Everlast will have no choice but to file suit. If we do not hear from you within five business days, we will assume you reject our requests and will proceed with drafting a complaint. Be further advised that this letter is sent without prejudice and reserves all rights to pursue any and all claims Everlast deems warranted against your clients.

Sincerely,

*/s/ Edward J. Sackman*

Edward J. Sackman, Esq.
Attorney for Everlast Roofing, Inc.

# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EVERLAST ROOFING, INC.,<br><br>Plaintiff,<br><br>v.<br><br>STEVEN R. TAN A/K/A "CALVIN MITCHELL" D/B/A EVERLAST ROOFING & TUCKPOINTING,<br><br>Defendant. | Case No. 21-cv-02213<br><br>Judge Martha M. Pacold |

**FINAL JUDGMENT ORDER**

      Everlast Roofing, Inc. ("Everlast Roofing") asserts a trademark infringement claim pursuant to 15 U.S.C. §§ 1114, 1125, as well as a deceptive trade practices claim pursuant to 815 ILCS 510/2, against defendant Steven R. Tan, a/k/a "Calvin Mitchell" d/b/a Everlast Roofing & Tuckpointing ("Tan"). This Court, having heard the evidence before it, GRANTS Everlast Roofing's Motion for Default Judgment and Permanent Injunction in its entirety against Tan.

      Everlast Roofing has properly completed service of process on Tan pursuant to Federal Civil Rule of Procedure 4(e) by leaving a copy of the complaint at Tan's dwelling and serving copies of the Court's orders advising him of the need to appear and respond to Everlast Roofing's filings via FedEx. These actions provided notice reasonably calculated under the circumstances of the present case to apprise Tan of the pendency of the action and have afforded Tan the opportunity to answer and present his objections. Tan failed to answer or otherwise respond to the complaint, and the time to answer the complaint has expired.

      THE COURT HEREBY FINDS that it has personal jurisdiction over Tan as Everlast Roofing adequately alleges that Tan resides within this judicial district and does business in the district, and Tan has not contested these allegations. Specifically Tan has conducted business using infringing versions of Everlast Roofing's registered EVERLAST Trademarks identified in the chart below:

7

| Reg. Date | Reg. Number/ Serial Number | Mark | Class | Type |
|---|---|---|---|---|
| 01/17/2006 | 3,046,168/ 78-550,917 | EVERLAST | IC 6 | Trademark on Principal Register |
| 08/02/2005 | 2,980,967/ 78-372,754 | EVERLAST II | IC 6 | Trademark on Principal Register |
| 03/07/2006 | 3,065,577/ 78-550,925 | EVERLAST ROOFING, INC. | IC 6 | Trademark on Principal Register |

THIS COURT FURTHER FINDS that Tan is liable for willful federal trademark infringement (15 U.S.C. § 1114) and violation of the Illinois Deceptive Trade Practices Act (815 ILCS 510/2).

IT IS HEREBY ORDERED that Everlast Roofing's Motion for Entry of Default Judgment is GRANTED in its entirety, that Tan is deemed in default, and that this Final Judgment is entered against Tan.

IT IS FURTHER ORDERED that:

1. Tan, his agents, servants, employees, and other persons acting in concert with him are permanently enjoined and restrained from using Everlast Roofing's trademarks ("EVERLAST," "EVERLAST II," and "EVERLAST ROOFING, INC.") and anything confusingly similar to the marks, such as misspellings or phonetic equivalents, in any form, including, without limitation: domain names, social media handles, Google Adwords, or other keyword advertising;

2. Within thirty days of entry of judgment, Tan shall serve upon Everlast Roofing a report in writing and under oath setting forth in detail the manner and form in which Tan has complied with the injunction;

3. Within thirty days of the entry of judgment, Tan shall also serve upon Everlast Roofing an accounting of all monies received as a result of his infringement of Everlast's trademarks ("EVERLAST," "EVERLAST II," and "EVERLAST ROOFING, INC."); and

4. Everlast Roofing is entitled to its reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a) and 815 ILCS 510/3 and shall file a motion for attorneys' fees within twenty-one days from the entry of this order.

8

Dated:   December 2, 2021

/s/ Martha M. Pacold
Martha M. Pacold

9

**BCS**

BRISKIN, CROSS & SANFORD, LLC
ATTORNEYS AT LAW

33 SOUTH MAIN STREET
SUITE 300
ALPHARETTA, GA 30009

TEL: 770.410.1555
FAX: 770.410.3281
WWW.BRISKINLAW.COM

July 17, 2023

**Via Email: nsackman@bernsteinshur.com**

Edward "Ned" Sackman, Esq.
670 North Commercial Street
Suite 108
Manchester, NH 03105-1120

   RE:  **Everlast Roofing, Inc. Claim of Infringement**

Dear Mr. Sackman:

  As you are aware, this firm represents Everlast Construction Group, LLC ("ECG"), Everlast Roofing and Restoration, LLC ("ERR"), and Eric Antebi ("Mr. Antebi") with regards to their corporate and intellectual property matters. We are in receipt of your correspondence with Leon Van Geldern, who previously represented ECG, ERR and Mr. Antebi, on this particular matter. Please direct all future correspondence to my office.

  In reviewing your previous communications with Mr. Van Geldern and the allegations in the California litigation that you reference, you represent that the alleged infringing parties are offering "the same goods and services" as your client. Specifically, in the referenced California litigation, you allege in the complaint that the "roofing installation services" being provided by the defendant are the same as your client's services. However, in identifying your client's goods and services, you state that "Everlast Roofing is a manufacturing, wholesale, and retail roofing business with office locations in Pennsylvania, Indiana, Ohio, and Maine." While the term "roofing" can certainly refer either to "material for constructing a building's roof" or "the process of constructing a roof or roofs," this does not mean that your client is providing both. And while there is certainly an argument that the products and services are related, they are demonstrably not "the same."

  While goods and services may be related, the ultimate determination that confusion is likely does not end there. In fact, your client has benefitted on multiple occasions from the fact that the USPTO has not taken the same hardline approach that these "goods and services" are "the same." As shown by the timeline below, your client was only able to obtain its registrations because the USPTO did not embrace your position.

  Specifically, the below logo[1] was registered to The American Everlast Roofing Company on December 11, 2001, for "Roofing installation services," and was live on the USPTO registry until September 13, 2008.

---

[1] "American" and "Roofing Company" disclaimed.

BUSINESS.  TECHNOLOGY.  COMMUNITY.



Letter Ned Sackman, Esq.
July 17, 2023
Page 2 of 3



While this registration was live, on January 20, 2005, your client applied to register "Everlast" for "metal roofing" in metal goods category IC 006, identifying a first use date of 1997. Your client's application proceeded to registration without an office action and has been active from 2005 to the present. In 2004, your client obtained its "Everlast II" registration for the same goods. Again, without any office action related to the prior registration of the above mark for roofing installation services.[2] Your client was then allowed to register "Everlast Roofing, Inc" in 2006, also for metal roofing products in IC 006, while the above senior mark was still live.[3]

In twenty-five years, your client has never attempted to register any of its Everlast marks for roofing services.  Further, it does not appear that your client has used any of its Everlast marks for roofing or any other services.  As such, my clients appear to have priority over your client as to construction and roofing installation and repair services.  As you know, the USPTO examiners apply a very broad approach to 2(d) confusion issues in *ex parte* proceedings, as the non-party registrant is not present to assert its own rights, and because these determinations are made in a factual vacuum that is limited to the details set out in the relevant applications and registrations themselves.  The fact that not once was a priority registration for a similar Everlast mark for roofing services cited as a bar to your client's Everlast registrations for roofing products is certainly an indication that these marks and the respective goods and services are not as confusingly similar as you suggest.  As the considerations of all the facts in a federal trademark litigation is even broader, we are confident that a district court will not find that our clients' use of Everlast Construction Group and Everlast Roofing and Restoration, respectively, is infringing upon your client's trademark rights.

All of the above being said, while my client strongly believes that its use of Everlast Construction Group and Everlast Roofing and Restoration for construction services and for roofing installation and repair services does not infringe on your client's rights, it certainly recognizes that there is a benefit to reaching an amicable resolution and avoiding potential litigation.  As you will note, upon a review of the everlastllc.com website for ECG, roofing services are not only not prominently displayed, the term "Roofing" is only found once on the site at all, as a bullet point under "Multifamily."  This single, obscure reference to roofing services can certainly not be considered the basis of any likelihood of confusion or any claim of infringement.  To the extent that your client would prefer ECG to enter into a formal agreement as to its limited mention of roofing services, we will certainly consider any proposal.  With regards to ERR and its website at roofsbyeverlast.com, you will note that ERR has added a disclaimer to the bottom of each page of the site.  If your client has a preference for how this disclaimer reads, we can certainly consider modifying this.  And to the extent that your client would prefer ECG to enter

---

[2] Your client also did not to receive an office action on the basis of Phillips Manufacturing Company's "Everlast" application that was pending at the time in IC 006 for metal products used in construction, which registration is still active.
[3] Your client is not the only party to benefit from the USPTO's decidedly different position on the possibility of these metal roofing goods and services that involve roofing. In 2015, Bassad, Inc. applied for and received a registration for "Everlast Construction" (Construction disclaimed) for construction and renovation services with no office action on the basis of your client's registration.

Letter Ned Sackman, Esq.
July 17, 2023
Page 3 of 3

into a formal agreement as to the placement and language for such a disclaimer, we will certainly consider any proposal.

    I am hopeful that the above discussion and the actions taken by my client to minimize any potential confusion is satisfactory to your client. To the extent that your client wishes to enter into a formal co-existence agreement, for the dual purpose of setting out the details of our agreement, and also evidencing that your client is affirmatively policing the use of similar marks and only allowing the use upon the entering into of a formal agreement, we are certainly willing to consider such an agreement.

    Please feel free to call me to discuss the terms of a mutually agreeable co-existence agreement. I look forward to working with you to reach an amicable resolution of this issue.

Sincerely,

BRISKIN, CROSS & SANFORD, LLC

Michael A. Penn
For the Firm