IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Rafiq Huq** ) | |
| ) | CIVIL ACTION FILE |
| Plaintiff, ) | NO. |
| ) | |
| v. ) | |
| ) | |
| **Airgas, Inc.** ) | Jury Trial Demanded |
| ) | |
| Defendant. ) | |

## COMPLAINT

COMES NOW Rafiq Huq, Plaintiff in the above-styled action, and hereby submits this Complaint against Defendant Airgas, Inc. (hereinafter "Airgas" or Defendant).

## JURISDICTION AND VENUE

1.

The jurisdiction of this Court is invoked pursuant to 29 U.S.C. § 1331 (federal question) based on Plaintiff asserting causes of action against Defendant under the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff is seeking declaratory relief, injunctive relief, damages, attorneys' fees and expenses of litigation to redress the deprivation of his rights by Defendant because of its discriminatory and retaliatory treatment of him.

1

2.

Declaratory relief is sought pursuant to 28 U.S.C. § 2201.

3.

Injunctive relief is sought pursuant to Rule 65, Federal Rules of Rules of Civil Procedure.

4.

Defendant has maintained office space and conducted business within the area encompassed by the Atlanta Division of the Northern District of Georgia, as defined under 28 U.S.C. § 1391(c), for all times relevant to the instant lawsuit, and the unlawful employment practices complained of by Plaintiff are alleged to have been committed in the State of Georgia. Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. 2000e-5(f)(3).

## PARTIES

5.

Plaintiff is a citizen of the United States who, at all times relevant to this Complaint, has resided in the State of Georgia.

6.

Plaintiff has been an "employee" of Defendant within the meaning of Title VII and the ADEA at all times relevant to this Complaint.

7.

Plaintiff, who is Asian, falls within the protections provided by Title VII and Section 1981 from discrimination based on his race.

8.

Plaintiff, whose skin tone is brown, falls within the protections provided by Title VII from discrimination based on his color.

9.

Plaintiff, who is Bangladeshi, falls within the protections provided by Title VII from discrimination based on his national origin.

10.

Defendant Airgas is a Delaware corporation that maintains its corporate office at 259 North Radnor-Chester Road, Suite 100 Radnor, PA 19087-5283. Airgas may be served by any method permitted by the Federal Rules of Civil Procedure, including service upon an agent appointed by the company to receive service of process.

11.

Defendant has continuously employed more than 15 persons and meets the definition of "employer" within the meaning of Title VII.

## ADMINISTRATIVE PROCEDURE

12.

On or about June 30, 2022, Plaintiff filed a timely Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on age, race, color and national origin discrimination, as well as unlawful retaliation. Such Charge of Discrimination was filed within 180 days of the occurrence of the last act on which this Complaint is based. *See* Exhibit A.

13.

This civil action is instituted in the appropriate federal district court within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission relating to his Charge of Discrimination against Defendant. *See* Exhibit B.

## CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF

14.

This is a proceeding for a declaratory judgment as to the Plaintiff's rights and for a permanent injunction enjoining the Defendant from maintaining a policy or practice of:

    A.    Unlawfully discriminating against Plaintiff because of his race with respect to compensation, terms, conditions, and privileges of

       employment.

B.     Limiting, segregating, and classifying Plaintiff in ways that deprive him of employment opportunities and otherwise adversely affect his status as an employee because of his race, color, and/or national origin.

C.     Retaliating against Plaintiff for exercising his federally protected right to complain about unlawful discrimination in the workplace.

## STATEMENT OF FACTS

15.

Mr. Huq has been employed by Defendant for over 25 years.

16.

Mr. Huq has held multiple positions as a Vice President during his tenure with Defendant.

17.

On or about February 7, 2019, Mr. Huq submitted a written complaint of discrimination via email to Defendant's Human Resources department.

18.

On or about June 3, 2019, Defendant's Vice President of Human Resources responded to Mr. Huq's February 7, 2019 complaint.

19.

In 2019 Mr. Huq's direct supervisor was Chris Sower, Vice President of Distribution.

20.

On or about July 25, 2019, Mr. Sower informed Mr. Huq that he was considering eliminating Mr. Huq's position within the next 3 to 6 months.

21.

In fear of his job being eliminated, Mr. Huq immediately began looking for open executive-level positions within the Airgas organization for which he was qualified.

22.

On July 31, 2019, Mr. Huq expressed to Mr. Sower that he was interested in an open Transportation Director position in the Central Region, but Mr. Sower informed him that the position was no longer available.

23.

On July 31, 2019, Mr. Huq also expressed to Mr. Sower that he was interested in the Director of Contract Hauler position, and Mr. Sower responded that the position was "downgraded" to a manager position with much less compensation.

24.

On July 31, 2019, Mr. Sower rejected Mr. Huq's offer to take on the

"downgraded" Contract Hauler position in addition to the position he held at the time.

25.

After July 2019, Mr. Sower did not speak to Mr. Huq until on or about October 18, 2019.

26.

In the October 18, 2019, conversation with Mr. Sower, Mr. Huq expressed interest in a vacant Director of Fleet Management position and explained his significant experience in fleet maintenance.

27.

Mr. Sower discouraged Mr. Huq's expression of interest in the Director of Fleet Management position and claimed that the position was going to be "downgraded."

28.

On October 24, 2019, Mr. Huq informed Mr. Sower that he was going to apply for a Vice President of Operations position with Airgas Dry Ice.

29.

On November 12, 2019, Mr. Huq emailed Mr. Sower regarding a recent posting for a Director, Transportation-Central Zone position, and reminded Mr. Sower that he had stated the position was not available when they spoke in July.

7

30.

On November 21, 2019, Mr. Huq was interviewed for the Director, Transportation-Central Zone position.

31.

On November 22, 2019, Mr. Huq was interviewed for the Vice President of Operations position with Airgas Dry Ice.

32.

On November 27, 2019, Mr. Sower informed Mr. Huq that he was not selected for the Director, Transportation-Central Zone position.

33.

On December 22, 2019, a Director of Logistics and Sourcing position with Airgas National Carbonation was posted.

34.

Mr. Huq was reluctant to apply for the Director of Logistics and Sourcing position because he would have to take an approximate 20% reduction in pay.

35.

After applying for the Director of Logistics and Sourcing position, Mr. Huq was interviewed for and offered the job in late January 2021.

36.

A few days after being offered the Director of Logistics and Sourcing position,

Mr. Huq sought the advice of the President of Defendant's Gas Process Division.

37.

The President of Defendant's Gas Process Division told Mr. Huq not to count on getting the Vice President of Operations position with Airgas Dry Ice that he interviewed for in November 2019, and reminded Mr. Huq that he would probably be laid off very soon if he did not accept the Director position.

38.

Fearing unemployment and loss of his health insurance, Mr. Huq accepted the Director of Logistics and Sourcing position, but continued to look for other opportunities within the Airgas organization.

39.

Mr. Huq assumed the role of Director of Logistics and Sourcing in February 2020.

40.

In July 2020 Mr. Huq applied for the President of Airgas National Carbonation position.

41.

In July 2020 Mr. Huq was interviewed for the President of Airgas National Carbonation position.

42.

On August 14, 2020, Mr. Huq learned that he was not selected for the President of Airgas National Carbonation position.

43.

In January 2021 Mr. Huq applied for the Vice President of Operations position with Airgas National Carbonation.

44.

In January 2021 Mr. Huq was interviewed for the Vice President of Operations position with Airgas National Carbonation.

45.

On January 19, 2021, Mr. Huq was informed by Human Resources that he was not selected for the Vice President of Operations position with Airgas National Carbonation.

46.

On October 26, 2021, the Vice President of Operations position with Airgas National Carbonation was re-posted.

47.

In November 2021 Mr. Huq once again applied for Vice President of Operations position with Airgas National Carbonation.

48.

On November 23, 2021, Human Resources acknowledged receipt of Mr. Huq's application for the Vice President of Operations position with Airgas National Carbonation.

49.

Mr. Huq did not get an interview for the re-posted Vice President of Operations position with Airgas National Carbonation.

50.

On January 30, 2023, during the pendency of his EEOC Charge, Mr. Huq applied for the Director of Process Chemicals position.

51.

Mr. Huq was interviewed for the Director of Process Chemicals position, but was not selected.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

52.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 51 as though set forth in full herein.

53.

Plaintiff is a member of the class of persons protected by Section 1981 who

has suffered adverse employment actions based on his race (Asian).

54.

Plaintiff was qualified for the Director, Transportation-Central Zone position, but Defendant hired a Caucasian person to fill the position.

55.

Plaintiff was qualified for the Vice President of Operations position with Airgas Dry Ice, but Defendant hired a Caucasian person to fill the position.

56.

Plaintiff was qualified for the President of Airgas National Carbonation position, but Defendant hired a Caucasian person to fill the position.

57.

Plaintiff was qualified for the Vice President of Operations position with Airgas National Carbonation that he applied for in January 2021, but Defendant hired a Caucasian person to fill the position.

58.

Plaintiff was qualified for the Vice President of Operations position with Airgas National Carbonation that he applied for in November 2021, but Defendant failed to consider his application and hired a Caucasian person to fill the position.

59.

Plaintiff was qualified for the Director of Process Chemicals position, but

Defendant hired a Caucasian person to fill the position.

60.

In not selecting Mr. Huq for the aforementioned positions Defendant discriminated against Plaintiff with respect to the terms and conditions of his employment based on his race (Asian) in violation of Section 1981.

61.

Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's acts of discrimination.

62.

All of the acts of the Defendant complained of herein were intentional and were committed with reckless disregard of Plaintiff's federally protected rights.

### COUNT II
### TITLE VII – RACE, COLOR AND NATIONAL ORIGIN DISCRIMINATION

63.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 62 as though set forth in full herein.

64.

In early January 2022, Plaintiff learned that a white, Caucasian American was hired for the Vice President of Operations position with Airgas National Carbonation that he applied for in November 2021.

13

65.

Plaintiff filed his EEOC Charge against Defendant shortly after he learned that a white, Caucasian American was hired for the Vice President of Operations position for which Mr. Huq was qualified but not considered.

66.

In or around February 2023, while his EEOC Charge was pending, Mr. Huq learned that a white, Caucasian American was hired for the Director of Process Chemicals position for which Mr. Huq was qualified.

67.

In not selecting Mr. Huq for the aforementioned positions Defendant deprived Plaintiff of equal employment opportunity and to income in the form of wages, bonuses, prospective retirement benefits, and other benefits of employment due to him as an employee on the basis of his race (Asian), color (brown) and national origin (Bangladeshi) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

68.

All of the acts of the Defendant complained of herein were intentional and were committed with reckless disregard of Plaintiff's federally protected rights.

69.

Plaintiff is now suffering and will continue to suffer irreparable injury from

Defendant's policies, customs, and the specific acts of discrimination as set forth herein.

## COUNT III
## RETALIATION IN VIOLATION OF SECTION 1981

70.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 69 as though set forth in full herein.

71.

Mr. Huq engaged in protected activity when he complained about discrimination related to his employment to Defendant's Human Resources department in February 2019.

72.

Mr. Huq continued to engage in protected activity by retaining counsel, who contacted Defendant's Vice President of Human Resources on or about August 4, 2019, and began communicating with Defendant's in-house counsel on or about September 13, 2019, regarding Mr. Huq's concerns regarding unlawful discrimination becuase of his race and unlawful retaliation as a result of his prior complaint of discrimination.

73.

Mr. Huq's counsel continued communications with Defendant's in-house

counsel regarding Mr. Huq's concerns regarding unlawful discrimination becuase of his race and retaliation until August 23, 2023.

74.

Mr. Huq also engaged in protected activity by filing his EEOC Charge on or about June 30, 2022 and participating in the EEOC process regarding such Charge until the case was terminated June 16, 2023.

75.

Between November 2019 and September 2022 Mr. Huq learned that was not selected by Defendant for the following positions for which he applied and was qualified: Director, Transportation-Central Zone (November 27, 2019), Vice President of Operations with Airgas Dry Ice (May 2020), President of Airgas National Carbonation (late July 2021), Vice President of Operations with Airgas National Carbonation (February 1, 2021), a second Vice President of Operations position with Airgas National Carbonation (January 4, 2022) and Director of Process Chemicals (February 2023).

76.

None of the selectees for the above-referenced positions had engaged in protected activity by alleging workplace discrimination or retaliation by Defendant.

77.

The alleged reasons for Mr. Huq's non-selection for the positions referenced

herein are a pretext to mask Defendant's retaliatory motive for Mr. Huq exercising his right under Section 1981 to oppose unlawful race discrimination and retaliation in the workplace.

78.

Defendant's acts of retaliation were performed with malice and reckless indifference to Plaintiff's civil rights.

79.

As a consequence of the aforementioned discriminatory and retaliatory conduct, Plaintiff has suffered financial losses and emotional harm.

### TITLE VII – RETALIATION

80.

Plaintiff re-alleges each and every allegation in paragraphs 1 through 79 as though set forth in full herein.

81.

Mr. Huq re-applied for the Vice President of Operations position with Airgas National Carbonation in November 2021.

82.

When Mr. Huq applied for the same position in January 2021, he was interviewed but not selected for the job.

83.

When Mr. Huq applied for this same position in November 2021, Defendant did not interview him.

84.

Mr. Huq learned on January 4, 2022, that Defendant hired someone else for the Vice President of Operations position with Airgas National Carbonation that became available again in late 2021.

85.

Mr. Huq filed his EEOC Charge as a result of learning he was not considered for the Vice President of Operations position with Airgas National Carbonation.

86.

In late 2022, while his EEOC Charge was pending, Mr. Huq applied for Director of Process Chemicals position.

87.

In or around February 2023 Mr. Huq learned he was not selected for the Director of Process Chemicals position.

88.

The selectees for the above-referenced Vice President of Operations position with Airgas National Carbonation and Director of Process Chemicals position had

not engaged in protected activity by alleging workplace discrimination or retaliation by Defendant.

89.

The alleged reasons for Mr. Huq's non-selection for the positions referenced herein are a pretext to mask Defendant's retaliatory motive for exercising his right under Title VII to oppose unlawful discrimination and retaliation in the workplace.

90.

Defendant's acts of retaliation were performed with malice and reckless indifference to Plaintiff's civil rights.

91.

As a consequence of the aforementioned retaliatory conduct, Plaintiff has suffered financial losses and emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

1. Issue a declaratory judgment that the Defendant's acts, policies, practices, and procedures complained of herein violate the Plaintiff's rights as secured under Section 1981 and Title VII;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its officers, agents, employees, attorneys, and other representatives, and those acting in

concert with them and at their discretion, from engaging in any employment policy or practice which discriminates against employees because of their race, color, and/or national origin.

3. Grant Plaintiff judgment against the Defendant for back pay, front pay and other benefits and opportunities of employment of which he has been deprived by reason of Defendant's violations of the Section 1981 and Title VII;

4. Grant Plaintiff compensatory and punitive damages for Defendant's violations of Title VII and Section 1981;

5. Grant Plaintiff attorneys' fees, costs, and disbursements;

6. Grant Plaintiff trial by jury; and

7. Grant such additional and further relief as the Court deems just and proper.

Respectfully submitted this 13th day of September 2023.

s/Robert C. D. McDonald
Georgia Bar No. 489600
Attorney for Plaintiff

The Law Offices of Robert C. D. McDonald, P.C.
5410 Matt Highway, PMB 3
Cumming, Georgia 30028
Phone: (404) 314-6738
lawyerbobmcd@yahoo.com