# EXHIBIT A



# Case Information

## Holiday Hospitality Franchising, LLC VS Rick Ly
23A02391

🔄 Refresh    📁🔒    👁🔒    🖨    🔗    | File Into |

| Location | Case Category | Case Type | Case Filed Date |
|---|---|---|---|
| DeKalb - State Court ⇄ | Civil | Contract / Account | 5/31/2023 |

| Judge | Case Status | | |
|---|---|---|---|
| Wong, Alvin T ▾ | Open (E-File Open) | | |

# Parties ②

| Type | Name | Nickname/Alias | Attorneys |
|---|---|---|---|
| Plaintiff | Holiday Hospitality Franchising, LLC ▾ | | Bennett T Richardson ▾ |
| | | | Brittany Nash Herbert ▾ |
| | | | Michael W Tyler ▾ |
| Defendant | Rick Q. Ly ▾ | | |

# Hearings ⓪

No hearings found.

# Events ④

| Oldest | Search events | 🔍 | ❓ | | + All | − All |

## Complaint/Petition
COMPLAINT

**File Date** 5/31/2023

| Name | Description | Security Description | Pages | Price | |
|---|---|---|---|---|---|
| Complaint_with Exhibits.pdf | | SMDOCU | 91 | $45.50 | 🛒 Add |

## General Civil Information Form
General Civil Case Filing Information Form

**File Date** 5/31/2023

| Name | Description | Security Description | Pages | Price | |
|---|---|---|---|---|---|
| General Civil Case Filig Information Form.pdf | | SMDOCU | 1 | $0.50 | 🛒 Add |

## Summons
SUMMONS

**File Date** 5/31/2023

| Name | Description | Security Description | Pages | Price | |
|---|---|---|---|---|---|
| Summons.pdf | | SMDOCU | 2 | $1.00 | 🛒 Add |

## Return of Service
Sheriff's RETURN of Service on Defendant Rick Q. Ly

**File Date** 8/21/2023

| Name | Description | Security Description | Pages | Price | |
|---|---|---|---|---|---|
| Sheriff's RETURN of Service on Defendant Rick Q. Ly.pdf | | SMDOCU | 3 | $1.50 | Owned |

© 2023 Tyler Technologies, Inc. | All Rights Reserved
Version: 2023.8.0.52



**SECOND ORIGINAL**

23A02391

No. _____

**Date Summons Issued and E-Filed**

5/31/2023

/s/ Monica Gay
_____

Deputy Clerk

Deposit Paid $ _____

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

**SUMMONS**

Holiday Hospitality Franchising, LLC
_____

3 Ravinia Dr., Ste. 100, Atlanta, GA 30346
_____
Plaintiff's name and address

**vs.**

[ ] **JURY**

Rick Q. Ly a/k/a Richard Quan Ly
_____

4003 Xavier Ct, Ocean Springs, MS 39564
_____
Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**   See page 2 for complete service information.

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower,DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:

Michael W. Tyler, Esq., Kilpatrick Townsend & Stockton LLP
_____
Name

1100 Peachtree St., Ste. 2800, Atlanta, GA  30309
_____
Address

404-815-6500                          751152
_____
Phone Number                   Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

_____       _____
Defendant's Attorney                               Third Party Attorney

_____       _____
Address                                               Address

_____       _____
Phone No.                 Georgia Bar No.       Phone No.          Georgia Bar No.

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability
☑ Contract ☐ Medical Malpractice
☐ Legal Malpractice ☐ Product Liability
☐Other

Principal $ 1,724,288.44

Interest $  TBD

Atty Fees $  TBD

**To indicate consent to e-service check the box below**

☑(Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.

Troy Peterson, Sheriff

E-file summons1-2014

STATE COURT OF
DEKALB COUNTY, GA.
5/31/2023 11:42 AM
E-FILED
BY: Monica Gay

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

**SUMMONS – Page 2**
*Holiday Hospitality Franchising, LLC v.*
*Rick Q. Ly a/k/a Richard Quan Ly*

<u>Service Addresses:</u>

**RICK Q. LY a/k/a RICHARD QUAN LY**
4003 Xavier Court
Ocean Springs, Mississippi 39564-1414

**or**

**RICK Q. LY a/k/a RICHARD QUAN LY**
1686 Beach Boulevard
Biloxi, Mississippi 39531-5302

# SECOND ORIGINAL

## IN THE STATE COURT OF DEKALB COUNTY
## STATE OF GEORGIA

HOLIDAY HOSPITALITY )
FRANCHISING, LLC, )
)
     Plaintiff, )      CIVIL ACTION FILE
)
v. )      23A02391
)      NO. _____
RICK Q. LY a/k/a RICHARD QUAN LY , )
)
     Defendant. )

## COMPLAINT

Plaintiff, Holiday Hospitality Franchising, LLC ("HHFL"), respectfully states its complaint as follows:

### PARTIES, JURISDICTION, AND VENUE

1.

HHFL is a limited liability company organized under the laws of the State of Delaware, with its principal office located in Atlanta, DeKalb County, Georgia.

2.

Upon information and belief, Defendant Rick Q. Ly a/k/a Richard Quan Ly ("Defendant"), is a resident of the state of Mississippi and may be served personally or by certified mail at 4003 Xavier Court, Ocean Springs, Mississippi, 39564-1414, or at 1686 Beach Boulevard, Biloxi, Mississippi 39531-5302.

3.

This Court has personal jurisdiction over Defendant pursuant to O.C.G.A. § 9-10-91 because, in entering into and performing under the License Agreement (as that term is defined below), Defendant transacted business in Georgia and benefited from the services of HHFL, which is domiciled in Georgia. Specifically, Defendant sought to enter long-term agreements with

HHFL, an entity he knew was headquartered in Atlanta, Georgia (in DeKalb County), through which Defendant became a licensee of HHFL.

4.

This Court also has personal jurisdiction over Defendant and venue is proper in this Court because, in the License Agreement (as that term is defined below), Defendant "expressly and irrevocably submitted himself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of DeKalb County, Georgia for the purpose of any and all disputes." Defendant further acknowledged that "[i]n entering into th[e] [License Agreement], . . . [he] has sought, voluntarily accepted and become associated with [HHFL] who is headquartered in Atlanta, Georgia" and agreed that the License Agreement was "made and entered into in the State of Georgia." Similarly, in the Guaranty (as that term is defined below), Defendant "consent[ed] and submit[ted] . . . to the personal jurisdiction and venue of any courts (federal, superior, or state) situated in the County of DeKalb, State of Georgia."

5.

Venue is proper in this Court pursuant to O.C.G.A. § 9-10-93. Venue is also proper in this Court because a substantial part of the business at issue was transacted in DeKalb County, Georgia and the injury to HHFL at issue occurred in DeKalb County, Georgia.

**FACTUAL BACKGROUND**

6.

HHFL, along with certain of its affiliates, does business as IHG® Hotels & Resorts (all such entities collectively, "IHG"). IHG develops and operates the Holiday Inn® brand system (among numerous other hotel brands), which is comprised of the Holiday Inn® trademark, among others, and associated intellectual property, as well as services and standards related to hotel

marketing, reservations and operations (collectively, the "System"). IHG through HHFL licenses its System to licensees, pursuant to licensing agreements, in exchange for the payment of royalties and other fees by its licensees.

7.

Defendant is a franchised hotel investor and developer.

8.

In 2015, Defendant sought to build, develop and operate a new Holiday Inn®-branded hotel. Accordingly, HHFL entered into a certain New Development License Agreement with Defendant, dated June 25, 2015 (together with any amendments, addendums, modifications, and extensions thereof or thereto, the "License Agreement"), for the development and operation of a Holiday Inn®-branded hotel to be located at 1712 Beach Boulevard, Biloxi, Mississippi (the "Hotel" or "Hotel Property"). The License Agreement required Defendant to build, develop, prepare for opening and operate the Hotel in accordance with the requirements of the License Agreement on the timeline set forth therein. The License Agreement further required that after the Hotel was prepared for opening in accordance with the requirements of the License Agreement and was given permission to open by HHFL (which, as set forth below, never occurred), the Defendant use the System in the operation of the Hotel as a Holiday Inn®-branded hotel for the full term of the License Agreement, in accordance with the requirements thereof. A true and correct copy of the License Agreement is attached hereto as Exhibit A and by this reference is incorporated herein.

9.

In connection with the execution of the License Agreement, Defendant executed a guaranty dated June 16, 2016, personally guaranteeing his payment and performance of all of his obligations

-3-

under the License Agreement (the "Guaranty").   A true and correct copy of the Guaranty is attached hereto as Exhibit B and by this reference is incorporated herein.

10.

Paragraph 12.A of the License Agreement sets forth that the "[License Agreement] will expire without notice **(20) twenty years from the date of the opening of the Hotel** [as a Holiday Inn®-branded hotel] **under the System**." The License Agreement obligates Defendant to comply with the provisions of the License Agreement throughout its term, including, without limitation, paying HHFL the amounts owed to it under the terms of the License Agreement and otherwise. The License Agreement does not permit Defendant to terminate the agreement prior to the expiration of its term.

11.

Pursuant to the License Agreement, Defendant agreed to design, build, and furnish the Hotel Property as a Holiday Inn®-branded hotel, and, thereafter, to operate the Hotel Property as a Holiday Inn®-branded hotel for the duration of the agreement's term.   Specifically, in paragraph 14.I of the License Agreement, Defendant "agree[d] to perform the construction and renovation work, including, without limitation, the purchase of furniture, fixtures and equipment set forth on Attachment 'B' . . . incorporated herein by reference (the 'Work')."

12.

Defendant further acknowledged in paragraph 14.I "that [his] agreement to perform the Work is an essential element of the consideration relied upon by [HHFL] in entering into the [License Agreement]" and "[his] failure to perform the Work in accordance with [HHFL's] requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment 'B' of [the License Agreement]) shall constitute a material breach of [his] obligations under the [License Agreement]."

13.

Pursuant to the License Agreement, after Defendant completed the Work and HHFL authorized Defendant to open the Hotel Property in the System (which, as set forth below, never occurred), Defendant would be authorized and required to operate the Hotel Property as a Holiday Inn®-branded hotel for the duration of the agreement's term.

14.

In exchange for authorization to use the System at the Hotel Property, and other services and products provided by HHFL, Defendant agreed in paragraph 3.B of the License Agreement to pay HHFL monthly fees during the entire 20-year term of the License Agreement. Specifically, paragraph 3.B(1)(a) sets forth a "royalty" in the amount of 5% of the Hotel's Gross Rooms Revenue; paragraph 3.B(1)(b) sets forth a "Services Contribution" that is "equal to the percentage . . . set forth in paragraph 15" in the amount of 3.0% of the Hotel's Gross Rooms Revenue; paragraph 3.B(1)(c) sets forth a "Technology Fee" in the amount of $13.26 for each guest room at the Hotel, plus discretionary annual increases; paragraph 3.B(1)(d) sets forth fees due for travel agent commission programs; and paragraph 3.B(4) provides that additional amounts may be due for optional products and services accepted by Defendant.

15.

Collectively, these fees set forth in paragraph 3.B of the License Agreement are referred to herein as "System Fees." The System Fees compensate HHFL for Defendant's use of the System at the Hotel and other services or products provided by HHFL to Defendant and constitute part of the benefit of the bargain received by HHFL pursuant to the License Agreement.

16.

In paragraph 14.A of the License Agreement, the parties agreed that the agreement is severable and "[t]he remedies provided in th[e] [agreement] are not exclusive." The parties further

agreed in paragraph 14.D of the License Agreement that "[n]o failure to require strict performance or to exercise any right or remedy [under the agreement] will preclude requiring strict performance or exercising any right or remedy in the future."

17.

Under paragraph 14.I of the License Agreement, HHFL may immediately terminate the agreement if "[Defendant] fail[s] to perform the Work in accordance with [HHFL's] requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment 'B' of [the License Agreement])" because, as stated above, such failure "shall constitute a material breach of [Defendant's] obligations under th[e] [License Agreement]."

18.

Paragraph 12.B of the agreement allows HHFL to terminate the License Agreement on notice to Defendant, provided that:

> (a) the notice is mailed at least 30 days (or longer, if required by law) in advance of the termination date; and
>
> (b) the notice reasonably identifies one or more breaches of [Defendant's] obligations; and
>
> (c) the breach(es) are not fully remedied within the time period specified in the notice.

19.

Paragraph 14.I of the License Agreement contains a liquidated damages provision that applies in the event that the License Agreement is terminated before the Hotel Property has opened as a Holiday Inn®-branded hotel due to Defendant's breach of the agreement by failing to timely develop and complete the Work at the Hotel Property. These liquidated damages are a reasonable pre-estimate of HHFL's lost future fees and royalties and other profits payable to HHFL under paragraph 3 of the License Agreement, as well as HHFL's loss of market presence, goodwill, and

brand recognition, among other things, which it would have received each month from Defendant

for the duration of the License Agreement's term if the agreement had not been prematurely

terminated. Paragraph 14.I specifically states:

> In the event [HHFL] terminates this [License Agreement] due to
> [Defendant's] breach of any of [his] obligations under the [License
> Agreement] prior to the time that [Defendant] is authorized to use
> the [Holiday Inn®] System at the Hotel, [Defendant] shall pay to
> [HHFL], as liquidated damages, a lump sum equal to the monthly
> average of all amounts that would have been payable to [HHFL]
> under paragraphs 3.B(1), (3) and (4) of this [License Agreement]
> assuming the Hotel had collected Gross Rooms Revenue based on
> the average daily revenue per available room for all hotels in the
> System for the previous twelve (12) months, as determined by
> [HHFL], multiplied by the greater of (a) six (6) or (b) the number of
> full and partial months from the Term Commencement Date to the
> termination date of the [License Agreement]."

20.

Also as provided in paragraph 14.I of the License Agreement, the parties agreed to a

liquidated damages formula as a "reasonable pre-estimate of [HHFL's] probable loss [caused by

the agreement's premature termination] and not as a penalty or in lieu of any other payment"

because "it would be difficult to determine the injury caused to [HHFL] by [premature] termination

of the [License Agreement]" prior to the time that Defendant is authorized to use the System.

21.

Paragraph 12.A of the License Agreement also provides that "[t]he parties recognize the

difficulty of ascertaining damages to [HHFL] resulting from premature termination of the [License

Agreement], and have provided for liquidated damages which represent their best estimate as to

the damages arising from the circumstances in which they are provided."

22.

Pursuant to paragraph 14.J of the License Agreement, Defendant agreed to pay HHFL "all

expenses, including reasonable attorneys' fees and court costs, incurred by [HHFL], its parents,

subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce or defend itself or any rights under th[e] [License Agreement] (including without limitation any claim, cross claim, or counter-claim brought by [Defendant]), effect termination of th[e] [License Agreement] or collect any amounts due under th[e] [License Agreement]."

23.

As an inducement to HHFL to enter the License Agreement, Defendant executed the Guaranty. *See* Exhibit B.

24.

Pursuant to the Guaranty, Defendant "[personally] guarantee[d] that all of [his] obligations under the [License Agreement] . . . will be punctually paid and performed." Additionally, pursuant to the Guaranty, Defendant agreed that, "[u]pon default . . . and notice from [HHFL], the undersigned will immediately make each payment and perform each obligation required . . . under the [License Agreement]."

25.

The Guaranty "constitutes a guaranty of payment and performance and not of collection." Further, Defendant agreed in the Guaranty that the "Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the guaranteed obligations is rescinded or must otherwise be restored or returned by [HHFL] upon the insolvency, bankruptcy or reorganization of [Defendant] . . . all as though such payment had not been made."

26.

Additionally, under the Guaranty, Defendant

> agree[d] to pay [HHFL] all expenses, including reasonable attorneys' fees and court costs, incurred by [HHFL], its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the [License Agreement], effect termination of this Guaranty or the

[License Agreement], or collect any amounts due under this Guaranty or the [License Agreement].

27.

The License Agreement and Guaranty each provide that they are governed by Georgia law.

28.

Pursuant to the License Agreement and Attachment "B", Defendant was required, among other deadlines, to submit Preliminary Plans for the design and construction of the Hotel Property by November 1, 2016, Final Plans for the Hotel Property by February 1, 2017, to complete Ground Break[1] for the Hotel Property by June 1, 2017, and to have the Hotel Property ready to open for business "in accordance with the [License Agreement]" as a Holiday Inn®-branded hotel by June 1, 2018. These deadlines were subsequently extended by HHFL via a letter dated July 28, 2017 to the Defendant which extended Defendant's Ground Break deadline to November 10, 2017. The letter amendment further extended the deadline for the Licensee to complete construction and development of the Hotel and to have the Hotel "made ready to open for business in accordance with the [License Agreement]" until August 13, 2019. A true and correct copy of the foregoing letter is incorporated herein by reference, and is included with and forms a part of Exhibit A as an Amendment to the License Agreement. The deadlines were further extended via a letter dated November 8, 2017 to the Defendant in which the License Agreement was amended and the Ground Break deadline was extended from November 10, 2017 to May 10, 2018. The letter amendment further extended the deadline for the Licensee to complete construction and development of the Hotel and to have the Hotel "made ready to open for business in accordance with the [License Agreement]" until December 10, 2019. A true and correct copy of the letter is incorporated herein

---

[1] "Preliminary Plans," "Final Plans," and "Ground Break" as defined in the License Agreement.

by reference, and is included with and forms a part of Exhibit A as an Amendment to the License

Agreement.

29.

Defendant continued to experience delays with construction and development of the Hotel

project. Consequently, on May 16, 2018, September 27, 2018, October 29, 2019, and March 16,

2020, IHG, on behalf of HHFL, sent additional amendment letters and an Addendum to License

Agreement[2] to the Defendant. Among other things, the amendment letters and Addendum

extended the License Agreement deadline for completing Ground Break. Ultimately, the letter

amendments and Addendum extended the deadline for completing Ground Break to July 1, 2020,

and extended the deadline for completing development of the Hotel and opening it for business to

November 16, 2021. True and correct copies of the foregoing letters and the Addendum are

incorporated herein by reference and are included with and form a part of Exhibit A as

Amendments and an Addendum to the License Agreement.

30.

Despite the repeated extensions HHFL provided to Defendant, as of July 2020, it was

apparent to HHFL that the Defendant still had failed to commence construction of the Hotel and

was therefore in default under the terms of the License Agreement. Consequently, on July 29,

2020, IHG on behalf of HHFL, sent a Notice of Default and Termination letter advising the

Defendant that, due to his continued failure to commence construction of the Hotel by the

established deadline of June 1, 2017, which was subsequently extended to July 1, 2020, under the

terms of the License Agreement, he was in default. The letter further stated that unless the default

---

[2] The Addendum to License Agreement dated October 29, 2019 (the "Addendum") by and
between HHFL and the Defendant was signed by the Defendant in his capacity as the Licensee
and in his capacity as the Guarantor.

was cured by September 7, 2020, the Licensee Agreement would be terminated by HHFL on November 6, 2020. A true and correct copy of the foregoing letter is attached hereto as Exhibit C and by this reference is incorporated herein.

31.

HHFL provided Defendant even more time to cure his default by commencing construction of the Hotel. Specifically, on December 16, 2020, IHG on behalf of HHFL sent a letter to Defendant extending the deadline for Defendant to cure the Default to March 16, 2021, and advised Defendant that the License would terminate on March 17, 2021 if the Defendant did not commence construction of the Hotel and provide HHFL with evidence that it had done so by March 16, 2021. A true and correct copy of the foregoing letter is attached hereto as Exhibit D and by this reference is incorporated herein.

32.

Defendant did not cure the default or otherwise commence construction of the Hotel by March 16, 2021, and as a result, HHFL terminated the License Agreement on March 17, 2021.

33.

Defendant's failure to commence construction of the Hotel Property by the extended deadline and complete development of the Hotel Property constitutes a material breach of paragraph 14.I of the License Agreement and Attachment "B." Pursuant to paragraph 14.I, the premature termination of the License Agreement due to Defendant's breach thereof entitles HHFL to liquidated damages calculated under the formula in that paragraph.

34.

Under the License Agreement, after Defendant completed the Work and began operating the Hotel Property as a Holiday Inn®-branded hotel (which, as set forth above, never occurred), he was required to pay HHFL System Fees each month for a term of 20 years. The premature

-11-

termination of the License Agreement, therefore, caused HHFL substantial damages because HHFL was completely deprived of the benefits bargained for in the License Agreement, including, without limitation, the System Fees and other amounts that would have been paid to HHFL during the 20-year term of the License Agreement, and the benefit to HHFL from a market presence, goodwill, brand recognition, and competition standpoint of having a Holiday Inn®-branded hotel at the subject location for the 20-year term of the License Agreement.

35.

Under paragraph 14.I of the License Agreement, because the agreement was prematurely terminated as a result of Defendant's breach and before the Hotel Property opened as a Holiday Inn®-branded hotel in the System, Defendant owes HHFL liquidated damages as a reasonable pre-estimate of HHFL's lost future market presence, goodwill, brand recognition, and competition, as well as lost System Fees and other amounts due under paragraphs 3.B(1), (3) and (4) of the License Agreement, among other things, in the amount of $1,724,288.44. A chart summarizing the calculation of liquidated damages under the formula in Paragraph 14.I of the License Agreement is attached hereto as Exhibit E and by this reference is incorporated herein.

36.

In addition to liability under the License Agreement, Defendant is also liable to HHFL for the foregoing amounts pursuant to the Guaranty.

37.

After termination of the License Agreement, HHFL engaged in discussions with the Defendant in an attempt to resolve the amounts owed to HHFL without litigation. Ultimately, these negotiations were unsuccessful. As a result, HHFL engaged outside counsel, and on May 18, 2023, HHFL, through counsel, sent a letter to Defendant (the "May 18, 2023 Demand Letter"), demanding that Defendant immediately pay HHFL the damages he owed as of that date under the

License Agreement, and as required under the Guaranty. In the May 18, 2023 Demand Letter, counsel for HHFL notified Defendant that, if he failed to pay HHFL's full damages owed at that time, HHFL would file a lawsuit against him seeking payment of those damages and, in addition, seeking payment of its attorneys' fees and costs. The Demand Letter also informed Defendant that, pursuant to O.C.G.A. § 13-1-11, if the full damages were paid within ten days of receipt of the letter, HHFL would not seek the payment of its attorneys' fees and costs from Defendant. A true and correct copy of the May 18, 2023 Demand Letter is attached hereto as Exhibit F and by this reference is incorporated herein

38.

To date, Defendant has failed and refused to pay the amounts due and owing to HHFL pursuant to the terms of the License Agreement and Guaranty.

39.

Defendant's failure and refusal to pay his financial obligations under the License Agreement after notice of his defaults and breaches of the agreement and demands for payment constitutes a material breach of the License Agreement and the Guaranty.

40.

In addition to the foregoing damages, Defendant is liable to HHFL under Georgia law for prejudgment interest, which accrues on the $1,724,288.44 in unpaid liquidated damages at the statutory rate of 7% per annum ($10,058.34 per month; $330.68 per day), from March 17, 2021 (the date of termination of the License Agreement) through the time of judgment. *See* O.C.G.A. § 7-4-15. Under the statutory rate, Defendant is liable for $266,146.36[3] in prejudgment interest as of May 31, 2023, the date of filing of this Complaint.

---

[3] This sum reflects a duration of 26 months and 14 days between March 17, 2021, the date of termination of the License Agreement, and May 31, 2023, the date of filing of the Complaint.

41.

Finally, in accordance with paragraph 14.J of the License Agreement and the terms of the Guaranty, Defendant owes HHFL its reasonable attorneys' fees and costs incurred in enforcing its rights and recovering amounts due under the License Agreement and Guaranty.

42.

In addition to prior notifications, by way of this Complaint and in accordance with O.C.G.A. § 13-1-11, Defendant is hereby notified of his defaults and breaches under the terms of the License Agreement and under the Guaranty in the amount of **$1,990,434.80**, comprised of (a) $1,724,288.44 in liquidated damages under paragraph 14.I of the License Agreement; and (b) statutory prejudgment interest from March 17, 2021 through the time of judgment, which totals $266,146.36 as of May 31, 2023, the date of filing of this Complaint.   HHFL also notifies Defendant that he has ten (10) days from service of this Complaint to pay in full to HHFL the principal and interest of his respective obligations under the License Agreement and the Guaranty without incurring attorneys' fees.

43.

All conditions precedent for bringing this lawsuit have been performed or waived.

<u>**COUNT I**</u>
**BREACH OF CONTRACT FOR BREACH OF THE LICENSE AGREEMENT**
**<u>(AGAINST DEFENDANT AS LICENSEE)</u>**

44.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 43 of the Complaint.

45.

HHFL and Defendant entered into the License Agreement, pursuant to which HHFL authorized Defendant to use the System in the operation of the Hotel once the Hotel was completed and open for business.

46.

The License Agreement constitutes a binding contract between HHFL and Defendant.

47.

Among other obligations, Defendant agreed in the License Agreement to timely complete the Work to design, build, and furnish the Hotel Property and to develop the Hotel Property into a Holiday Inn®-branded hotel.  Pursuant to paragraph 14.I of and Attachment "B" to the License Agreement, Defendant was required to commence construction on the Hotel Property (specifically, by completing "Ground Break," which constituted competition of the Hotel building foundation through ground-level or the completion of the finished ground slab) by June 1, 2017, which deadline was subsequently extended to July 1, 2020.

48.

Defendant materially breached the License Agreement by failing to timely commence construction and complete the development of the Hotel after extensions of time, notice of default, and opportunity to cure the default.

49.

Under paragraph 14.I of the License Agreement, HHFL may terminate the agreement if "[Defendant] fail[s] to perform the Work in accordance with [HHFL's] requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment "B" of [the License Agreement])" because such failure "shall constitute a material breach of [Defendant's] obligations under th[e] [License Agreement]."

-15-

50.

As a result of this breach, HHFL terminated the License Agreement effective March 17, 2021.

51.

Because the License Agreement was prematurely terminated due to Defendant's default and breach thereof, Defendant is liable to HHFL under paragraph 14.I for liquidated damages in the amount of $1,724,288.44.

52.

Defendant's failure to pay the foregoing amounts constitutes a breach of the License Agreement.

53.

Defendant is also liable to HHFL under Georgia law for prejudgment interest, which accrues on the $1,724,288.44 in unpaid liquidated damages at the statutory rate of 7% per annum ($10,058.34 per month; $330.68 per day), from March 17, 2021 (the date of the termination of the License Agreement) through the time of judgment. Under the statutory rate, Defendant is liable for $266,146.36 in prejudgment interest as of May 31, 2023, the date of filing of this Complaint.

54.

Accordingly, as a proximate result of Defendant's breach of the License Agreement for failing to timely develop the Hotel Property, HHFL has incurred damages in the amount of $1,990,434.80, comprised of (a) $1,724,288.44 in liquidated damages under paragraph 14.I of the License Agreement; and (b) statutory prejudgment interest from March 17, 2021 through the time of judgment, which totals $266,146.36 as of May 31, 2023, the date of filing of this Complaint.

55.

In the event the liquidated damages provision contained in the License Agreement is deemed unenforceable, then, in the alternative to liquidated damages, HHFL is entitled to recover its actual damages resulting from the early termination of the License Agreement.

56.

HHFL is entitled to judgment against Defendant for the foregoing amounts.

## COUNT II
## BREACH OF CONTRACT FOR BREACH OF THE GUARANTY
## (AGAINST DEFENDANT AS GUARANTOR)

57.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 56 of the Complaint.

58.

HHFL entered into the Guaranty with Defendant, pursuant to which Defendant, as Guarantor, personally guaranteed the performance and payment of all of his obligations under the License Agreement.

59.

The Guaranty constitutes a binding contract between HHFL and the Guarantor.

60.

The Guarantor is liable to HHFL for the liquidated damages he owes HHFL under the License Agreement in the amount of $1,724,288.44.

61.

HHFL notified Defendant of his default under and breach of the License Agreement and demanded payment of the amounts due pursuant to the terms of the License Agreement and Guaranty.

-17-

62.

Defendant has materially breached his obligations under the Guaranty because he breached the License in the manner described above (the performance of which he guaranteed via the Guaranty), and by failing and refusing to pay his financial obligations (that are due pursuant to the terms of the License Agreement) to HHFL.

63.

In addition to the foregoing amounts, Defendant is liable to HHFL under Georgia Law for prejudgment interest, which accrues on the $1,724,288.44 in unpaid liquidated damages at the statutory rate of 7% per annum ($10,058.34 per month; $330.68 per day), from March 17, 2021 (the date of the termination of the License Agreement) through the time of judgment. Under the statutory rate, Defendant is liable for $266,146.36 in prejudgment interest as of May 31, 2023, the date of filing of this Complaint.

64.

Accordingly, as a proximate result of Defendant's breach of the Guaranty, HHFL has incurred damages in the amount of $1,990,434.80, comprised of (a) $1,724,288.44 in liquidated damages under paragraph 14.I of the License Agreement; and (b) statutory prejudgment interest from March 17, 2021 through the time of judgment, which totals $266,146.36 as of May 31, 2023, the date of filing of this Complaint. In addition to the foregoing amounts, HHFL also has incurred costs and attorneys' fees.

65.

In the event the liquidated damages provision contained in the License Agreement is deemed unenforceable, then, in the alternative to liquidated damages, HHFL is entitled to recover its actual damages resulting from the early termination of the License Agreement, which Defendant owes HHFL pursuant to the Guaranty.

66.

HHFL is entitled to judgment against Defendant for the foregoing amounts.

## COUNT III
## ATTORNEYS' FEES PURSUANT TO O.C.G.A § 13-1-11 AND COURT COSTS

67.

HHFL re-alleges and incorporates by reference, as if set forth fully herein, the allegations contained in paragraphs 1 through 66 of the Complaint.

68.

The License Agreement requires Defendant to pay HHFL's collection expenses, including reasonable attorneys' fees and court costs.

69.

The Guaranty requires Defendant to pay HHFL's collection expenses, including reasonable attorneys' fees and court costs.

70.

HHFL has incurred and continues to incur attorneys' fees in enforcing the terms of the License Agreement and the Guaranty and in collecting amounts due pursuant to the terms of the License Agreement and the Guaranty.

71.

In accordance with O.C.G.A. § 13-1-11, HHFL notified Defendant of his financial obligations under the License Agreement and Guaranty and that he had ten days to pay to HHFL the principal and interest of such financial obligations.

72.

In accordance with O.C.G.A. § 13-1-11, HHFL hereby notifies Defendant of his financial obligations under the License Agreement and Guaranty in the amount of $1,990,434.80, comprised

of (a) $1,724,288.44 in liquidated damages under paragraph 14.I of the License Agreement; and (b) statutory prejudgment interest from March 17, 2021 through the time of judgment, which totals $266,146.36 as of May 31, 2023, the date of filing of this Complaint.  HHFL also notifies Defendant that he has ten (10) days from receipt of such notice to pay to HHFL the principal and interest of such financial obligations without incurring attorneys' fees.

73.

HHFL is entitled to a judgment granting it attorneys' fees pursuant to O.C.G.A. § 13-1-11, which, as of the date of the filing of this Complaint, May 31, 2023, totals $199,068.48, which constitutes 15 percent of the first $500 of principal and interest owed to IHG and 10% of the remainder.  The attorneys' fees HHFL is entitled to will increase as interest continues to accrue on the amounts owed during the pendency of this action.

## PRAYER FOR RELIEF

WHEREFORE, HHFL prays for the following relief:

(a)     That the Court enter judgment in favor of HHFL and against Defendant for damages in the amount of **$1,724,288.44** for liquidated damages;

(b)     In the alternative and in the event the liquidated damages are deemed unenforceable for any reason, that HHFL recover its actual damages resulting from the early termination of the License Agreement, plus pre- and post-judgment interest thereon;

(c)     That the Court enter judgment in favor of HHFL and against Defendant for prejudgment interest on the unpaid liquidated damages at the statutory rate of 7% from March 17, 2021 through the time of judgment, which totals $266,146.36 as of May 31, 2023, the date of filing of this Complaint;

(d)     That the Court enter judgment in favor of HHFL and against Defendant for HHFL's

attorneys' fees and costs incurred in enforcing the terms of the License Agreement and Guaranty,

including amounts incurred in collecting amounts due under the License Agreement and Guaranty,

pursuant to O.C.G.A. §13-1-11, which totals $199,068.48 as of May 31, 2023, the date of filing of

this Complaint;

(e)     That the Court tax all costs against Defendant; and

(f)     That the Court enter any such other relief as is just and proper.

Respectfully submitted, this 31st day of May, 2023.

KILPATRICK TOWNSEND &
STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
MTyler@kilpatricktownsend.com
BHerbert@kilpatricktownsend.com
BTRichardson@kilpatrcktownsend.com

/s/ Michael W. Tyler
Michael W. Tyler
Georgia Bar No. 721152
Brittany Herbert
Georgia Bar No. 230996
Bennett T. Richardson
Georgia Bar No. 974586

*Attorneys for Plaintiff*
*Holiday Hospitality Franchising, LLC*

STATE COURT OF
DEKALB COUNTY, GA.
5/31/2023 11:42 AM
E-FILED
BY: Monica Gay

US2008 21983791 2

-21-

# Exhibit A

LOCATION:   1712 Beach Boulevard
                 Biloxi, MS 39531

LOCATION #:  18013

DATE:   _June 25, 2015_

# HOLIDAY HOSPITALITY FRANCHISING, LLC

## HOLIDAY INN® HOTEL

### NEW DEVELOPMENT
### LICENSE AGREEMENT

**WITH**

**RICK LY**

**LICENSEE**

# HOLIDAY HOSPITALITY FRANCHISING, LLC
## LICENSE AGREEMENT TABLE OF CONTENTS

1. THE LICENSE: .................................................................................................................. 1

   A.   THE HOTEL: .............................................................................................................. 1
   B.   THE SYSTEM: ........................................................................................................... 1

2. GRANT OF LICENSE: ...................................................................................................... 2

3. LICENSEE'S RESPONSIBILITIES: ................................................................................. 2

   A.   OPERATIONAL AND OTHER REQUIREMENTS: ............................................................... 2
   B.   FEES: ...................................................................................................................... 4

4. LICENSOR'S RESPONSIBILITIES: ............................................................................... 5

   A.   TRAINING: ................................................................................................................ 5
   B.   RESERVATION SERVICES: ......................................................................................... 5
   C.   CONSULTATION ON OPERATIONS, FACILITIES AND MARKETING: ................................... 5
   D.   MAINTENANCE OF STANDARDS: ................................................................................ 6
   E.   APPLICATION OF STANDARDS: .................................................................................. 6
   F.   OTHER ARRANGEMENTS FOR MARKETING, ETC.: ...................................................... 6
   G.   USE OF SERVICES CONTRIBUTION: ........................................................................... 6
   H.   PERFORMANCE OF LICENSOR'S OBLIGATIONS: .......................................................... 6

5. APPEALS, CHANGES IN THE STANDARDS: ................................................................. 7

   A.   APPEALS: ................................................................................................................ 7
   B.   CHANGES IN THE STANDARDS: ................................................................................. 7
   C.   DECISIONS ON APPEAL: ........................................................................................... 7
   D.   LIMITATION ON APPEAL RIGHTS: ............................................................................... 7

6. IHG OWNERS ASSOCIATION: ....................................................................................... 7

   A.   MEMBERSHIP: .......................................................................................................... 7
   B.   FUNCTION OF COMMITTEES: ..................................................................................... 8

7. PROPRIETARY RIGHTS: ................................................................................................ 8

   A.   OWNERSHIP OF SYSTEM: ......................................................................................... 8
   B.   TRADEMARK DISPUTES: ........................................................................................... 8
   C.   PROTECTION AND USE OF NAME AND THE MARKS: ................................................... 8
   D.   MODIFICATION OR DISCONTINUATION OF THE MARKS: ............................................... 9
   E.   ARCHITECTURAL MODIFICATIONS: ............................................................................. 9

8. RECORDS AND AUDITS: ................................................................................................ 9

   A.   MONTHLY STATEMENTS AND DATA: ........................................................................... 9
   B.   PREPARATION AND MAINTENANCE OF RECORDS: ....................................................... 9
   C.   AUDIT: ................................................................................................................... 10
   D.   ANNUAL FINANCIAL STATEMENTS: ........................................................................... 10

9. INDEMNITY AND INSURANCE: .................................................................................... 10

   A.   INDEMNITY: ............................................................................................................ 10
   B.   INSURANCE: ........................................................................................................... 10
   C.   EVIDENCE OF INSURANCE: ...................................................................................... 11

10. TRANSFER: .................................................................................................................. 11

   A.   TRANSFER BY LICENSOR: ....................................................................................... 11
   B.   TRANSFER BY LICENSEE: ....................................................................................... 11
   C.   TRANSFER OF EQUITY INTERESTS THAT ARE NOT PUBLICLY TRADED: ...................... 12
   D.   TRANSFERS OF PUBLICLY-TRADED EQUITY INTERESTS: ........................................... 12
   E.   TRANSFER OF THE HOTEL BY NATURAL PERSON: .................................................... 13

| | | |
|---|---|---:|
| F. | TRANSFERS OF EQUITY INTERESTS IN THE LICENSEE UPON DEATH TO FAMILY MEMBERS: | 13 |
| G. | REGISTRATION OF A PROPOSED TRANSFER OF EQUITY INTERESTS: | 14 |
| H. | CHANGE OF OWNERSHIP: | 15 |
| I. | TRANSFER OF REAL ESTATE: | 15 |
| J. | MANAGEMENT OF THE HOTEL: | 16 |

**11. CONDEMNATION AND CASUALTY: ............ 16**

| | | |
|---|---|---:|
| A. | CONDEMNATION: | 16 |
| B. | CASUALTY: | 17 |
| C. | NO EXTENSIONS OF TERM: | 17 |

**12. TERMINATION: ............ 17**

| | | |
|---|---|---:|
| A. | EXPIRATION OF TERM: | 17 |
| B. | TERMINATION BY LICENSOR ON ADVANCE NOTICE: | 17 |
| C. | IMMEDIATE TERMINATION BY LICENSOR: | 18 |
| D. | DE-IDENTIFICATION OF HOTEL UPON TERMINATION: | 19 |
| E. | PAYMENT OF LIQUIDATED DAMAGES: | 19 |

**13. RELATIONSHIP OF PARTIES: ............ 19**

| | | |
|---|---|---:|
| A. | NO AGENCY RELATIONSHIP: | 19 |
| . B. | LICENSEE'S NOTICES TO PUBLIC CONCERNING INDEPENDENT STATUS: | 20 |

**14. MISCELLANEOUS: ............ 20**

| | | |
|---|---|---:|
| A. | SEVERABILITY AND INTERPRETATION: | 20 |
| B. | BINDING EFFECT, CHOICE OF LAW, NO JURY TRIALS, NO PUNITIVE DAMAGES AND LICENSOR'S RIGHT TO INJUNCTIVE RELIEF: | 20 |
| C. | EXCLUSIVE BENEFIT: | 21 |
| D. | ENTIRE AGREEMENT: | 21 |
| E. | LICENSOR WITHHOLDING CONSENT: | 22 |
| F. | NOTICES: | 22 |
| G. | AUTHORITY: | 22 |
| H. | GENERAL RELEASE AND COVENANT NOT TO SUE: | 22 |
| I. | PERFORMANCE OF THE WORK: | 23 |
| J. | REIMBURSEMENT OF EXPENSES: | 23 |
| K. | DESCRIPTIVE HEADINGS: | 23 |
| L. | CAPITAL RESERVE; CAPITAL REINVESTMENT AND RENOVATION CYCLES: | 23 |
| M. | ANTI-TERRORISM, ANTI-BRIBERY AND TRADE SANCTIONS COMPLIANCE: | 24 |
| N. | BUSINESS JUDGMENT: | 25 |

**15. BRAND PROVISIONS: ............ 25**

**16. SPECIAL STIPULATIONS: ............ 26**

**ATTACHMENT "A" ............ 28**

**ATTACHMENT "B" ............ 29**

**ATTACHMENT "C" ............ 32**

**GUARANTY ............ 34**

LA 2015

**Holiday Hospitality Franchising, LLC**
**Three Ravinia Drive, Atlanta, Georgia 30346**

**License Agreement**

This License Agreement ("License") dated _____*June 25*_____, 20 **15**(the "Term Commencement Date") is between Holiday Hospitality Franchising, LLC, a Delaware limited liability company ("Licensor"), and Rick Ly, Individualy ("Licensee") whose address is 1686 Beach Blvd., Biloxi, MS 39531.

**The Parties Agree As Follows:**

### 1.   THE LICENSE:

Licensor operates and licenses a system designed to provide a distinctive, high quality hotel service to the public under the names "Holiday Inn®", "Holiday Inn Express®" and "Holiday Inn Resort®" (the "System" as defined in paragraph 1.B below). High standards established by Licensor are the essence of the System. Future investments may be required of Licensee under this License. Licensee has independently investigated the risks of the business to be operated hereunder, including current and potential market conditions, competitive factors and risks; has read Licensor's Franchise Disclosure Document for prospective Holiday Inn and Holiday Inn Express brand group franchisees; and has made an independent evaluation of all such facts. Neither Licensor nor any other person on Licensor's behalf has made any representation to Licensee concerning this License not fully set forth herein. Aware of the relevant facts, Licensee desires to enter into this License in order to obtain a license to use the System in the operation of the  brand of hotel identified in paragraph 15.A below located at 1712 Beach Boulevard, Biloxi, MS 39531 (the "Hotel").

### A.   The Hotel:

The Hotel comprises all structures, facilities, appurtenances, furniture, fixtures, equipment, and entry, exit, parking and other areas from time to time located on the land identified by Licensee to Licensor in anticipation of this License, or located on any land from time to time approved by Licensor for additions, signs or other facilities. The Hotel now includes the facilities listed on Attachment "A" hereto. No change in the number of approved guest rooms or suites and no other significant change in the Hotel or in the manner in which the Hotel rooms and services are offered to the public (including timesharing and condominium hotel projects not involving short term stays by transient guests) may be made without Licensor's approval. Licensee represents that it is entitled to possession of the Hotel during the entire license term without restrictions that would interfere with anything contemplated in this License. Throughout this License, the words "room" and "guest room" are intended to include the word "suites" unless otherwise indicated.

### B.   The System:

The System is composed of all elements which are designed to identify Holiday Inn, Holiday Inn Express and Holiday Inn Resort branded hotels to the consuming public or are designed to be associated with those hotels or to contribute to such identification or association and all elements which identify or reflect the quality standards and business practices of such hotels, all as specified in this License or as designated from time to time by Licensor. The System at present includes, but is not limited to, the service marks Holiday Inn®, Holiday Inn Express®, Holiday Inn Express® & Suites, Holiday Inn® & Suites and  Holiday Inn® Resort, (as appropriate to the specific hotel operation to which it pertains), Holidex® and the other Marks (as defined in paragraph 7.B below), and intellectual property rights made available to licensees of the System by reason of a license; all rights to domain names and other identifications or elements used in electronic commerce as may be designated from time to time by Licensor in accordance with Licensor's specifications to be part of the System; access to a reservation service operated in accordance with specifications established by Licensor from time to time; distribution of advertising, publicity and other marketing programs and materials; architectural drawings and architectural works; the furnishing of training programs and materials; confidential or proprietary information standards, specifications and policies for construction, furnishing, operation, appearance and service of the Hotel, and other requirements as stated or referred to in this License and from time to time in Licensor's brand standards for System hotels (the "Standards") or in other communications to

Licensee; and programs for inspecting the Hotel, measuring and assessing service, quality and consumer opinion and consulting with Licensee. Licensor may add elements to the System or modify, alter or delete elements of the System in its sole judgment from time to time.

## 2.   GRANT OF LICENSE:

Licensor hereby grants to Licensee a non-exclusive license to use the System only at the Hotel, but only in accordance with this License and only during the "License Term" beginning with the Term Commencement Date and terminating as provided under paragraph 12 hereof. The License applies to the location specified herein and to no other location. Licensee acknowledges that Licensor, its divisions, subsidiaries, affiliates and parents are and may in the future be engaged in other business activities including lodging and related activities, and that Licensee is acquiring no rights hereunder other than the right to use the System as specifically defined herein in accordance with the terms of this License.

This License does not limit Licensor's right or the rights of any parent, subsidiary or affiliate of Licensor, to use or license the System or any part thereof or to engage in or license any business activity at any other location, including, without limitation, the licensing, franchising, ownership, operation and/or management of lodging facilities and related activities under the names and marks associated with the System and/or any other names and marks. Licensee acknowledges that Licensor's rights to use and/or license the System, referenced immediately above, pre-date this License and are not limited or changed by the terms of this License. Licensee agrees that by acknowledging those rights, the parties do not intend to make Licensor's exercise of such rights subject to rules applicable to contractual performance or the exercise of contractual discretion under this License.

## 3.   LICENSEE'S RESPONSIBILITIES:

### A.   Operational and Other Requirements:

Throughout the entire License Term, Licensee will at its sole cost and expense:

(1)   maintain a high moral and ethical standard and atmosphere at the Hotel;
(2)   maintain the Hotel in a clean, safe and orderly manner and in first class condition;
(3)   provide efficient, courteous and high-quality service to the public including, without limitation, maintaining minimum product and service quality standards and scores for quality assurance programs established and maintained by Licensor, as such programs may be modified by Licensor from time to time;
(4)   operate the Hotel 24 hours a day every day except as otherwise permitted by Licensor based on special circumstances;
(5)   strictly comply in all respects with the Standards (as they may from time to time be modified or revised by Licensor) and with all other policies, procedures and requirements of Licensor which may be from time to time communicated to Licensee (which communication may be, at Licensor's option, in hard paper copy or digital, electronic or computerized form and Licensee must pay any costs to retrieve, review, use or access such digital, electronic or computerized communication);
(6)   strictly comply with all of Licensor's standards and specifications for goods and services used in the operation of the Hotel and other reasonable requirements to protect the System and the Hotel from unreliable sources of supply;
(7)   strictly comply with Licensor's requirements as to:
　　(a)   the types of services and products that may be used, promoted or offered at the Hotel;
　　(b)   the types and quality of services and products that, to supplement services listed on Attachment A, must be used, promoted or offered at the Hotel;
　　(c)   the use, display, style and type of signage and of all other forms of identification at or pertaining to the Hotel, including but not limited to any use of the Holiday Inn name or any other of Licensor's service marks,
　　　   ·   trademarks or copyrights (in all formats, including but not limited to print,

2                                                          LA 2015

electronic or other media), which are seen by members of the consuming public or used to identify the Hotel to actual or prospective consumers;

(d) directory and reservation service listings of the Hotel;

(e) training of persons to be involved in the operation of the Hotel;

(f) participation in all marketing, reservation service, advertising, training and operating programs designated by Licensor as System-wide (or area-wide) programs in the best interests of hotels using the System including, without limitation, all guest frequency or loyalty programs related to the System; provided that with regard to area-wide programs, Licensee may request Licensor's approval that Licensee need not participate, reasonable approval not to be withheld;

(g) maintenance, repair, appearance and condition of, and customer service at, the Hotel, including, without limitation, participation in all guest complaint programs and quality assurance programs established and maintained by Licensor, as such programs may be modified by Licensor from time to time;

(h) quality and types of services offered to customers at the Hotel; and

(i) maintenance of a capital reserve and adherence to capital reinvestment and renovation cycles (as further specified in paragraph 14.L hereof and as Licensor may supplement from time to time by the Standards).

(8) use such automated guest service and/or hotel management and/or telephone or telecommunication system(s) which Licensor deems to be in the best interests of the System, including any additions, enhancements, supplements, or variants thereof which may be developed during the term hereof;

(9) participate in and use those reservation services which Licensor deems to be in the best interests of the System, including any additions, enhancements, supplements or variants thereof which may be developed during the term hereof;

(10) adopt all improvements or changes to the System as may be from time to time designated by Licensor;

(11) with respect to all aspects of this Licensee and the Hotel and its ownership, development and operation, strictly comply with all applicable laws, rules, regulations, requirements, codes, orders, ordinances and standards of all governmental jurisdictions in which the Hotel is located or that are otherwise applicable to Licensee or the Hotel, pay timely all taxes and other governmental fees, assessments and impositions, and obtain timely and maintain throughout the License Term all governmental licenses, authorizations and permits necessary to own (or lease, as may be applicable) and operate the Hotel in accordance with the System;

(12) permit inspection of the Hotel by Licensor's representatives at any time and give them free lodging for such time as may be reasonably necessary to complete their inspections;

(13) promote the Hotel on a local or regional basis subject to Licensor's requirements as to form, content and prior approvals;

(14) ensure that no part of the Hotel or the System is used to further or promote a competing business or other lodging facility, except as Licensor may approve for businesses or lodging facilities owned, licensed, operated or otherwise approved by Licensor or its parents, divisions, subsidiaries, and affiliates;

(15) use every reasonable means to encourage use of Holiday Inn facilities everywhere by the public;

(16) in all respects use Licensee's best efforts to reflect credit upon and create favorable public response to the name "Holiday Inn";

(17) promptly pay to Licensor all amounts due Licensor, its parents, subsidiaries and affiliates as royalties or fees, whether or not arising out of this License, or for goods or services purchased by Licensee for use at the Hotel; and

(18) comply with Licensor's requirements concerning confidentiality of information, and in particular Licensee shall not disclose without Licensor's written permission, (i) information pertaining to Licensor's marketing, reservations, quality assurance, guest loyalty and satisfaction, technology or other systems or programs that has not been intentionally disclosed to the public by Licensor or (ii) any of the Standards.

LA 2015

**B.   Fees:**

   (1)    For each month (or part of a month) during the License Term, Licensee will pay to Licensor by the 15th of the following month, except in the case of the Technology Fee in paragraph 3.B(1)(c) below, which is payable monthly in advance:

       (a)    a royalty of **5% of the Gross Rooms Revenue** attributable to or payable for rental of guest rooms at the Hotel (including, without limitation, any mandatory fee or surcharge charged to all or substantially all guests renting a room, including but not limited to resort fees), with no deduction for any item including but not limited to no adjustment for the cost of any food and beverage items provided or made available to a guest as an incident of a guest room rental, however with deductions for sales and room taxes only ("Gross Rooms Revenue"); and

       (b)    a "Services Contribution" equal to the percentage of Gross Rooms Revenue set forth in paragraph 15 below, to be used by Licensor for marketing, reservations, and other related activities which, in Licensor's sole business judgment as to the long-term interests of the System, support marketing, reservations and other related functions. Costs that Licensee incurs in the acquisition, installation or maintenance of reservations services, equipment or training, or in its own marketing activities, do not constitute payment of the "Services Contribution". The Services Contribution is subject to change by Licensor from time to time if either approved by: (i) a majority of members (which shall be counted on the basis of one hotel, one vote) of the System who represent a majority of the hotels to be subject to the increase; or (ii) approved by a majority of the members of the System or the "IHG Owners Association" (the franchisee association or successor sanctioned as such by Licensor) at a meeting of System licensees or at an annual IHG Owners Association meeting either as may be convened by Licensor upon no less than 45 days' advance notice. Licensor may, in its sole judgment, upon 30 days' prior notice, increase this Services Contribution by an amount not to exceed 1% of Gross Rooms Revenue and such increase shall be effective for a period no longer than 12 months; provided that, in the event of such increase, Licensor shall not make such a discretionary increase again for a period of 24 months after the expiration of any such increase; and

       (c)    a monthly Technology Fee of $13.26 for each guest room at the Hotel to be used by Licensor for provision of technology services, such as, but not limited to satellite communications services to the Hotel, plus such increases as Licensor may judge reasonable, but in no case exceeding in any calendar year 10% of the fee in effect at the beginning of that year (the Technology Fee does not include the cost, installation, maintenance or repair of any equipment at the Hotel); and

       (d)    all fees due for travel agent commission programs, including Electronic Commission Services and any Field Marketing Co-op programs attributable to the Hotel, and all fees due in connection with mandatory marketing, technology, guest loyalty and frequency, guest satisfaction, quality assurance, training, new hotel opening and other systems and programs established by Licensor, its parents, subsidiaries or its affiliated entities relating to the System; and

       (e)    an amount equal to any sales, gross receipts or similar tax imposed on Licensor and calculated solely on payments required hereunder, unless the tax is an optional alternative to an income tax otherwise payable by Licensor.

Licensor may, at its election, require Licensee to pay all outstanding fees by electronic funds transfer/direct debit of account or other similar technology designed to accomplish the same purposes.

LA 2015

Licensee will operate the Hotel so as to maximize Gross Rooms Revenue of the Hotel consistent with sound marketing and industry practice and will not engage in any conduct that reduces Gross Rooms Revenue of the Hotel in order to further other business activities.

(2)     A standard application fee for additional rooms as set forth in Licensor's then current Holiday Inn disclosure document will be charged upon application for any additional guest rooms to be added to the Hotel.

(3)     Additional royalties may be charged on revenues (or upon any other basis, if so determined by Licensor) from any activity if it is added at the Hotel by mutual agreement and:

(a)     it is not now offered at System hotels generally and is likely to benefit significantly from or be identified significantly with the Holiday Inn name or other aspects of the System; or

(b)     it is designed or developed by or for Licensor.

(4)     Charges may be made for optional products or services accepted by Licensee from Licensor, either in accordance with current practice or as developed in the future.

(5)     Each payment under this paragraph 3.B, except the standard additional room application fee or other fee not determined from Gross Rooms Revenue, shall be accompanied by the monthly statement referred to in paragraph 8.A. Licensor may apply any amounts received under this License to any amounts due under this License. If any amounts under this License are not paid when due, such non-payment shall constitute a breach of this License and, in addition, such unpaid amounts will accrue interest beginning on the first day of the month following the due date at 1 1/2% per month or the maximum interest permitted by applicable law, whichever is less.

(6)     Local and regional marketing programs and related activities may be conducted by Licensee, but only at Licensee's expense and subject to Licensor's requirements. Reasonable charges may be made for optional advertising materials ordered or supplied by Licensor to Licensee for such programs and activities.

(7)     Licensor has the right, at its election, to require Licensee to tender all or any part of the payments due to Licensor under this License to Licensor, one or more of Licensor's parents, subsidiaries, affiliated entities or other designees.

## 4.     LICENSOR'S RESPONSIBILITIES:

### A.     Training:

During the License Term, Licensor will continue to specify and provide required and optional training services and programs at various locations. A fee may be charged for certain required and optional training services. Travel, lodging and other expenses of Licensee and its employees will be borne by Licensee. Reasonable charges also may be assessed for training materials.

### B.     Reservation Services:

During the License Term, so long as Licensee is in full compliance with its material obligations hereunder, Licensor will afford Licensee access to reservation service for the Hotel on terms consistent with this License. However, Licensor has no obligation to afford Licensee access to reservation service for the Hotel regarding reservations for any date after the expiration date of this License or for any date after the termination date established by Licensor, following any applicable notice period or any applicable opportunity to cure.

### C.     Consultation on Operations, Facilities and Marketing:

During the License Term, Licensor will, from time to time at Licensor's election, make available to Licensee consultation and advice in connection with operations, facilities and marketing. Licensor may from time to time furnish to Licensee names of suppliers or recommend to Licensee suppliers of goods and services required or useful in the operation of the Hotel; however, Licensor is not

obligated to furnish any such names or to continue doing so, and Licensee is under no obligation to use any such supplier, unless expressly required to do so by the terms of this License, the Standards or otherwise. In identifying or recommending suppliers, Licensor exercises its business judgment based on its information as of that date and its sense of the long-term interests of the System. Licensor's identification or recommendation of a supplier is not a warranty of the financial condition or performance of any supplier or of any other factor, and Licensee's use of an identified or recommended supplier that sells products or services meeting Licensor's standards and specifications may facilitate compliance with those standards and specifications, but it is not a substitute for such compliance.

### D.   Maintenance of Standards:

Licensor will conscientiously seek to maintain high standards of quality, cleanliness, appearance and service at all hotels using the System so as to promote, protect and enhance the public image and reputation of the Holiday Inn name and to increase the demand for services offered by the System. Licensor's judgment in such matters shall be controlling in all respects, and it shall have wide latitude in making such judgments.

### E.   Application of Standards:

Licensee's Hotel and all other hotels operated under the System will be subject to the Standards, as they may from time to time be modified or revised by Licensor, including limited exceptions from compliance which may be made based on local conditions, type of hotel or special circumstances. The Standards and any modification to them can be delivered by Licensor to Licensee in hard paper copy or, at Licensor's option, be made available to Licensee in digital, electronic or other computerized form. If communicated in digital, electronic or other computerized form, Licensee must pay any costs to retrieve, review, use or access the Standards. The Standards are confidential and remain the property of Licensor.

### F.   Other Arrangements for Marketing, Etc.:

Licensor may enter into arrangements for development, reservation services, marketing, operations, administrative, technical and support functions, facilities, programs, services and/or personnel with any other entity, and may use any facilities, programs, services or personnel used in connection with the System, in connection with any business activities of its parents, subsidiaries, divisions or affiliates.

### G.   Use of Services Contribution:

Licensor will make available and use Services Contribution funds computed on the basis generally applicable to licensees of the System. Licensor is not obligated to expend funds for marketing, reservations or related services in excess of the amounts received from licensees using the System and those funds made available by Licensor as set forth above. Services Contribution funds are not intended to benefit any specific market or hotel. Licensor and its affiliates have no obligations to spend from Services Contribution funds, or otherwise, any amount fixed or proportionate to the amount of Services Contributions Licensee pays, nor do Licensor or its affiliates have any obligation to ensure that Licensee benefits directly or proportionately from Services Contributions paid or expenditures made from collected Services Contributions. Local and regional marketing programs and related activities may be conducted by Licensee but only at Licensee's expense and subject to Licensor's requirements. Reasonable charges may be made for optional advertising materials ordered or used by Licensee for such programs and activities.

### H.   Performance of Licensor's Obligations:

Licensee understands and agrees that Licensor, in its sole judgment, may perform any or all of its obligations under this License directly or through Licensor's parents, affiliates, subsidiaries or other designees.

LA 2015

5.    **APPEALS, CHANGES IN THE STANDARDS:**

   A.    **Appeals:**

   Decisions, other than termination notices or decisions of Licensor's Franchise Committee, made on behalf of Licensor specifically with reference to the Hotel may be appealed to Licensor's Franchise Committee if done promptly after Licensee has diligently sought relief through Licensor's normal channels of authority.  With the approval in writing of any member of the Franchise Committee, the decision may be further appealed to the Executive Committee of Licensor's Board of Directors.

   B.    **Changes in the Standards:**

   Each change in the Standards shall be communicated in writing to Licensee at least 30 days before it goes into effect (which communication may be in hard paper copy or, at Licensor's option, in digital, electronic or other computerized form, and if such communication is in digital, electronic or other computerized form, Licensee must pay any costs to retrieve, review, use or access same).  Licensor's Franchise Committee or its equivalent, or designee subcommittee, must approve any such change and must determine that the change was formulated in good faith in the best interests of the System, after seeking the advice and counsel of the appropriate committee of the IHG Owners Association.

   C.    **Decisions on Appeal:**

   Licensor shall have the right to decide appeals under this paragraph 5, solely on the basis of written submissions.  No appeal will suspend a decision or change, until and unless the appeal is successful.  Any action taken by Licensor in the enforcement of this License that is shown to be arbitrary or capricious will be rescinded by Licensor to the extent feasible, but wide discretion and latitude will be allowed to the judgment of Licensor in the discharge of its overriding responsibility to maintain and improve the standards, performance and facilities of the hotels using the Holiday Inn, Holiday Inn & Suites, Holiday Inn Express, Holiday Inn Express & Suites, Holiday Inn Resort or any other Holiday Inn hotel brand or Holiday Inn name.  Licensor will conscientiously seek to maintain high standards of quality, cleanliness, appearance and service at all hotels using the System so as to promote, protect and enhance the public image and reputation of all Holiday Inn hotel brand names or any other Holiday Inn name, and to increase the demand for services offered by the System.  The Standards will apply to all hotels operated under the System by Licensor and its licensees.  Limited exceptions from compliance may be made based on local conditions or special circumstances.

   D.    **Limitation on Appeal Rights:**

   Licensee will not be arbitrary, capricious or unreasonable in exercising its appeal (or any other) rights under this License, and will use them only for the purpose for which intended.

6.   **IHG OWNERS ASSOCIATION:**

   A.    **Membership:**

   Licensee, other licensees of the System, and Licensor are eligible for membership in the IHG Owners Association and are entitled to vote at its meetings on the basis of one hotel, one vote, provided that Licensee or Licensor, as the case may be, has paid all its dues and fees owing to the IHG Owners Association.  The purposes of the IHG Owners Association will be to consider and discuss, and make recommendations on common problems relating to the operation of System hotels.  Licensor will seek the advice and counsel of the IHG Owners Association's  Board of Directors or, subject to the approval of Licensor, such committees, directors or officers of the IHG Owners Association to which or to whom  the IHG Owners Association Board of Directors may delegate such responsibilities.

**B.     Function of Committees:**

IHG Owners Association committees, their functions and their members will be subject to approval in writing by Licensor, which approval will not be unreasonably withheld. Recognizing that the IHG Owners Association must function in a manner consistent with the best interests of all persons using the System, the Licensee and Licensor will use their best efforts to cause the governing rules of the IHG Owners Association to be consistent with this License.

## 7.     PROPRIETARY RIGHTS:

**A.     Ownership of System:**

Licensee acknowledges and will not contest, either directly or indirectly, Licensor's and its subsidiaries', affiliates' and parents' unrestricted and exclusive ownership of and right to use the System and any element(s) or component(s) thereof, or that Licensor or any of its parents, subsidiaries or affiliated entities has the sole and exclusive right to grant licenses to use all or any element(s) or component(s) of the System and will not take any other action in derogation of such ownership and rights of Licensor and any of its parents, subsidiaries or affiliated entities. Licensee specifically agrees and acknowledges that Licensor owns or is licensed to use the names and marks Holiday Inn, Holiday Inn & Suites, Holiday Inn Express, Holiday Inn Express & Suites, Holiday Inn Resort, and all other Marks (as defined in Paragraph 7.B below) and other elements associated with the System, as defined in paragraph 1.B of this License, or derived therefrom (including but not limited to domain names or other identifications or elements used in electronic commerce), together with the goodwill symbolized thereby, and that Licensee will not contest directly or indirectly the validity or ownership of the Marks or take any other action in derogation of such validity or ownership either during the term of this License or after its termination. All improvements, modifications and additions whenever made to or associated with the System by the parties hereto or anyone else, and all service marks, trademarks, copyrights, and service mark, trademark, domain name or similar registrations at any time used, applied for or granted in connection with the System, and all goodwill arising from Licensee's use of Licensor's marks and other intellectual property, including (without limitation) local goodwill, shall inure to the benefit of and become the property of Licensor. Upon expiration or termination of this License, no monetary amount shall be assigned as attributable to any goodwill associated with Licensee's use of the System or any element(s) or component(s) of the System including any trademarks or service marks licensed hereunder.

**B.     Trademark Disputes:**

The "Marks" means the names and marks Holiday Inn, Holiday Inn Express, Holiday Inn Resort, Holiday Inn & Suites, Holiday Inn Express & Suites and Holidex, and their distinguishing characteristics and the other service marks, trademarks, trade names, slogans, commercial symbols, logos, trade dress, copyrighted material and intellectual property associated with the System, including, without limitation, those which Licensor may designate in the future for use and those which Licensor does not designate as withdrawn from use (the "Marks"). Licensee shall promptly notify Licensor of (i) any objections, demands, controversies, allegations or actions asserted or taken by third parties involving any of the Marks or any part of the System of which Licensee becomes aware and (ii) any potentially infringing or unauthorized uses of any of the Marks or any part of the System of which Licensee becomes aware. Licensor, its parent or one of its affiliated entities, will have the sole and exclusive right to handle disputes with third parties concerning use of all or any part of the Marks or System, and Licensee will, at its reasonable expense, extend its full cooperation to Licensor in all such matters. All recoveries made as a result of disputes with third parties regarding use of the Marks or System or any part thereof shall be for the account of Licensor. Licensor need not initiate suit against alleged imitators or infringers, and may settle any dispute by grant of a license or otherwise. Licensee will not initiate any suit or proceeding against alleged imitators or infringers or any other suit or proceeding to enforce or protect the Marks or System.

**C.     Protection and Use of Name and the Marks:**

Both parties will make every effort consistent with the foregoing to protect and maintain the Marks. Licensee agrees to execute any documents deemed necessary by Licensor or its counsel to obtain or maintain  protection for the Marks or any part of the System or to maintain their continued validity and enforceability. Licensee agrees to use the Marks associated with the System (i)  only in

connection with the operation of the Hotel during the License Term following opening of the Hotel in the System or at such earlier time as is expressly and specifically authorized by Licensor, (ii) only in the manner expressly authorized by Licensor and (iii) in no way that would tend to allow the Marks to become generic, lose their distinctiveness, become liable to mislead the public or be detrimental to or inconsistent with the good name, good will or favorable reputation and image of the Marks or Licensor. Licensee acknowledges that any unauthorized, unpermitted or prohibited use of any of the Marks shall constitute infringement of Licensor's rights.

### D.   Modification or Discontinuation of the Marks:

If Licensor modifies or discontinues use of any of the Marks licensed under this License as a result of any proceeding or settlement or for any other reason, then Licensee agrees to comply with Licensor's instructions in order to implement such modification or discontinuation. Licensee further agrees that it will have no right to any compensation or other remedies from Licensor or any of its parents, subsidiaries or affiliated entities as a consequence of any such modification or discontinuation.

### E.   Architectural Modifications:

If Licensee engages a third party, in compliance with the terms of this License and the franchise disclosure document, to prepare modifications, additions, and/or improvements to any architectural drawings or architectural works licensed to Licensee as part of the System ("Architectural Modifications"), Licensee shall cause such third party to assign all copyrights in such Architectural Modifications to Licensor in such form as Licensor may specify from time to time.

## 8.   RECORDS AND AUDITS:

### A.   Monthly Statements and Data:

At least monthly, Licensee shall prepare a statement which will include all information concerning Gross Rooms Revenue, other revenues generated at the Hotel, room occupancy rates, reservation data and other information required by Licensor that may be useful (in Licensor's sole business judgment) in connection with marketing, reservations, guest loyalty and satisfaction and other functions, purposes or requirements of Licensor, its parents, subsidiaries or affiliated entities (collectively, the "Data"). Subject to applicable law, the Data shall be the property of Licensor although Licensee shall have the non-exclusive right to use the Data so long as its use is lawful and in connection with owning or operating the Hotel. The Data will be permanently recorded and retained by Licensee as may be reasonably required by Licensor. By the third of each month, Licensee will submit to Licensor a statement setting forth the Data and reflecting the computation of the amounts then due under paragraph 3.B. The statement and Data will be in such form (including but not limited to electronic transmission or automatic capture) and detail as Licensor may reasonably request from time to time, and may be used by Licensor for its reasonable purposes, including without limitation for company and industry reporting purposes. Licensee agrees that any Data provided by it pursuant to this paragraph 8.A as well as any other reports, data, information or material provided to Licensor pursuant to or in connection with this License shall be true and correct and not misleading and shall comply with all standards, policies and requirements of Licensor with respect to privacy and security of Data related to guests and other customers of the Hotel.

### B.   Preparation and Maintenance of Records:

Licensee will, in a manner and form satisfactory to Licensor and utilizing accounting and reporting standards as reasonably required by Licensor, prepare on a current basis (and preserve for no less than four years or Licensor's record retention requirements, whichever is longer), complete and accurate records concerning Gross Rooms Revenue and all financial, operating, marketing and other aspects of the Hotel, and maintain an accounting system which fully and accurately reflects all financial aspects of the Hotel and its business. Such records shall include but not be limited to books of account, tax returns, governmental reports, register tapes, daily reports, and complete quarterly and annual financial statements (profit and loss statements, balance sheets and cash flow statements).

### C.    Audit:

Licensor may require Licensee to have Licensee's Gross Rooms Revenue and/or monies due hereunder computed and certified as accurate by a certified public accountant. During the License Term and for two years afterward, Licensor and its authorized agents will have the right to verify information required under this License by requesting, receiving, inspecting and auditing, at all reasonable times, any and all records referred to above wherever they may be located (or elsewhere if reasonably requested by Licensor). If any such inspection or audit discloses a deficiency in any payments due hereunder, and the deficiency in any payment is not offset by overpayment, Licensee shall immediately pay to Licensor the deficiency and interest thereon as provided in paragraph 3.B(5). Licensee shall also immediately pay to Licensor an audit fee of $3,000, as such amount may be increased on a System-wide basis. No acceptance by Licensor of any audit fee or deficiency payment shall be deemed to waive any right of Licensor to pursue a default under the License by reason of such underpayment. If the audit does not result in a deficiency being assessed, then no audit fee will be assessed. If the audit discloses an overpayment, Licensor will credit this overpayment, without interest, against future payments due from Licensee under this License or if this License has terminated, promptly refund it, without interest, to Licensee.

### D.    Annual Financial Statements:

Licensee will submit to Licensor as soon as available but not later than 90 days after the end of Licensee's fiscal year, and in a format as reasonably required by Licensor, complete financial statements for such year. Licensee will certify them to be true and correct and to have been prepared in accordance with generally accepted accounting principles consistently applied, and any false certification will be a breach of this License.

## 9.    INDEMNITY AND INSURANCE:

### A.    Indemnity:

Licensee will indemnify Licensor, its parents, subsidiaries and affiliated entities and each of their respective officers, directors, employees, agents, successors and assigns (collectively, the "Indemnitees") against, hold them harmless from, and promptly reimburse them for all payments of money (fines, damages, legal fees, expenses, settlement amounts, judgments, etc.) by reason of any claim, demand, tax, penalty, or judicial or administrative investigation or proceeding whenever asserted or filed (even where negligence of any of the Indemnitees is alleged), regardless of whether any of the foregoing is reduced to judgment,  arising from any claimed occurrence at or related to the Hotel or any act, error, neglect, omission or obligation of Licensee or anyone associated or affiliated with Licensee or the Hotel. Licensee agrees to give Licensor written notice of any such judicial or administrative investigation or proceeding or any other event that could be the basis for a claim for indemnification by any Indemnitee within three days of Licensee's knowledge of it. At the election of Licensor, Licensee will defend Licensor and the other Indemnitees against the indemnified matters. In any event, Licensor will have the right, through counsel of its choice, to control any matter to the extent it could directly or indirectly affect Licensor and/or any of the other Indemnitees. Licensor will have the right, at any time it considers appropriate, to offer, order, consent or agree to settlements or take any other remedial or corrective actions it considers expedient with respect to any action, suit, proceeding, claim, demand, inquiry or investigation if, in Licensor's sole judgment, there are reasonable grounds to do so.    Under no circumstance will Licensor or any of the other Indemnitees be required to seek recovery from third parties or otherwise mitigate its or their losses to maintain a claim against Licensee. Licensee agrees that any failure to pursue recovery from third parties or mitigate loss will in no way reduce the amounts recoverable by Licensor or any of the other Indemnitees from Licensee. Licensee agrees to pay Licensor all expenses including attorneys' fees and court costs, incurred by Licensor or any of the other Indemnities, and their successors and assigns, to remedy any defaults of or enforce or defend itself or any rights under this License (including without limitation any claim, cross claim or counter-claim brought by Licensee) effect termination of this License or collect any amounts due under this License.

### B.    Insurance:

During the License Term, Licensee will comply with all insurance requirements of any lease or mortgage covering the Hotel, and Licensor's specifications for insurance as to the amount and

type of coverage as may be reasonably specified by Licensor from time to time in writing, and will in any event maintain on the Hotel as a minimum, the following insurance underwritten by a reputable insurer approved by Licensor.

(1) employer's liability with minimum limits of $1,000,000 per occurrence; and

(2) worker's compensation insurance; and

(3) employment practices liability insurance (including coverage for harassment, discrimination and wrongful termination, and covering defense and indemnity costs) with a limit of $10,000,000 in the aggregate; and

(4) the holder of the liquor license will maintain liquor liability insurance with single limit coverage for personal and bodily injury and property damage of at least $15,000,000 per occurrence naming Licensor and its parents, subsidiaries and affiliates, (and Licensee if applicable) as additional insureds; and

(5) commercial general liability insurance, (including coverage for product liability, completed operations, contractual liability, host liquor liability and fire legal liability) and business automobile liability insurance (including hired and non-owned liability) with single-limit coverage for personal and bodily injury and property damage of at least $15,000,000 per occurrence, naming Licensor and its parents, subsidiaries and affiliates as additional insureds. In connection with all construction at the Hotel during the License Term, Licensee will cause the general contractor to maintain commercial general liability insurance (including coverage for product liability, completed operations and contractual liability) and business automobile liability insurance (including hired and non-owned liability) with limits of at least $15,000,000 per occurrence for personal and bodily injury and property damage underwritten with insurers approved by Licensor. Licensor and its parents, subsidiaries and affiliates will be named as additional insureds.

(6) If multiple locations are insured on policies containing an aggregate limit, then the aggregate limit must apply on a per location aggregate basis.

(7) The Licensee will ensure the royalties, Services Contributions and any other sums payable to Licensor are insured within the Licensee's business interruption insurance policy. The policy should insure against 'all risks' of physical loss or damage, and be endorsed to provide for payments to be made directly to Licensor.

(8) All policies must be written on a fully insured basis. Deductibles or self-insured retentions are subject to approval on an individual basis.

## C.   Evidence of Insurance:

At all times during the License Term, Licensee will furnish to Licensor certificates of insurance evidencing the term and limits of coverage in force, names of applicable insurers and persons insured. Revised certificates of insurance shall be forwarded to Licensor each time a change in coverage or insurance carrier is made by Licensee, and/or upon renewal of expired coverages. At Licensor's option, Licensee may be required to provide certified insurance policy copies.

## 10.   TRANSFER:

### A.   Transfer by Licensor:

Licensor shall have the right to transfer or assign this License or any of Licensor's rights, duties or obligations hereunder, in whole or in part, to any person or legal entity without requirement of prior notice to, or consent of, Licensee.

### B.   Transfer by Licensee:

Licensee understands and acknowledges that the rights and duties set forth in this License are personal to Licensee, and that Licensor has granted this License in reliance on the business skill, financial capacity, and personal character of Licensee (if Licensee is a natural person), and upon the owners, members, partners or stockholders of Licensee (if Licensee is a partnership, company,corporation or other legal entity (an "Entity")). Accordingly, neither Licensee nor any immediate or remote successor to any part of Licensee's interest in this License, nor any natural person or Entity

which directly or indirectly owns an Equity Interest (as that term is defined below) in Licensee or the License, may sell, assign, transfer, convey, pledge, mortgage, encumber, or give away, any direct or indirect interest in the License or Equity Interest in Licensee, except as expressly provided in this License. Any purported sale, assignment, transfer, conveyance, pledge, mortgage, or encumbrance by operation of law or otherwise, of any interest, collaterally or otherwise, in this License or any Equity Interest in Licensee not in accordance with the provisions of this License, shall be null and void and shall constitute a material breach of this License, for which Licensor may terminate this License without opportunity to cure pursuant to paragraph 12.C of this License.

    (1)    For the purposes of this paragraph 10, the term "Equity Interests" shall mean any ownership, membership, stock or partnership interests in Licensee and the interests of any partner, whether general or limited, in any partnership, with respect to such partnership, and of any stockholder, member or owner of any corporation or company with respect to such corporation or company, which partnership, corporation or company is Licensee hereunder or which partnership, corporation or company owns a direct or indirect beneficial interest in Licensee. References in this License to "publicly-traded Equity Interests" shall mean any Equity Interests which are traded on any securities exchange or are quoted in any publication or electronic reporting service maintained by the National Association of Securities Dealers, Inc. or any of its successors.

    (2)    If Licensee is an Entity, Licensee represents that the Equity Interests in Licensee are directly and (if applicable) indirectly owned, as shown in Attachment "A."

    (3)    In computing changes of Equity Interests, limited partners will not be distinguished from general partners, and Licensor's judgment will be final if there is any question as to the definition of Equity Interests or as to the computation of relative Equity Interests, including transfers of Equity Interests, the principal considerations being:

        (a)    direct and indirect power to exercise control over the affairs of Licensee;
        (b)    direct and indirect right to share in Licensee's profits; and
        (c)    amounts directly or indirectly exposed at risk in Licensee's business.

## C.    Transfer of Equity Interests That Are Not Publicly Traded:

Except where otherwise provided in this License, Equity Interests in Licensee that are not publicly-traded may be transferred, issued, or eliminated with Licensor's prior written consent, which will not be unreasonably withheld, provided that after the transaction:

    (a)    Less than 50% of all Equity Interests in Licensee will have changed hands since Licensee first became a party to this License, or

    (b)    Less than 80% of all Equity Interests in Licensee will have changed hands since Licensee first became a party to this License, and no Equity Interest(s) will be held by any natural person or Entity other than those who held them when Licensee first became a party to this License.

## D.    Transfers of Publicly-Traded Equity Interests:

    (1)    Except as otherwise provided in this License, publicly-traded Equity Interests in Licensee may be transferred without Licensor's consent but only if:

    (a)    immediately before the proposed transfer, the transferor owns less than 25% of the Equity Interests in Licensee; and

    (b)    immediately after the transfer, the transferee will own less than 25% of the Equity Interests in Licensee; and

    (c)    the transfer is exempt from registration under federal securities law.

    (2)    Publicly-traded Equity Interests may be transferred with Licensor's written consent, which may not be unreasonably withheld, if the transfer is exempt from registration under federal securities law.

    (3)    The chief financial officer of Licensee shall certify annually to Licensor that Licensee is in compliance with the provisions of this paragraph 10.D. Such certification shall be delivered to Licensor with the annual financial statements referred to in paragraph 8.D.

**E.    Transfer of the Hotel by Natural Person:**

(1)    Licensee, if a natural person, may with Licensor's consent, which will not be unreasonably withheld, transfer the Hotel to Licensee's spouse, parent, sibling, son, daughter, niece or nephew  provided that:

(a)    adequate provision acceptable to Licensor is made for the management of the Hotel; and

(b)    the transferee executes a new license agreement for the unexpired term of this License, on the standard form then being used to license new hotels under the System, except the fees charged thereunder shall be the same as those contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License, and Licensee executes a termination agreement of this License on Licensor's then current form; and

(c)    Licensee guarantees, on Licensor's then current form, the performance of the new licensee's obligations under the newly executed license agreement.

(2)    Licensee, if a natural person, may, without the consent of Licensor, upon 30 days' prior written notice to Licensor, transfer the Hotel to a corporation entirely owned and controlled by Licensee, provided that prior to such transfer:

(a)    adequate provision acceptable to Licensor is made for the management of the Hotel; and

(b)    the transferee executes a new license agreement for the unexpired term of this License on the standard form then being used to license new hotels under the System, except the fees charged then shall be the same as those contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License; and Licensee executes a termination agreement of this License on Licensor's then current form; and

(c)    Licensee guarantees, on Licensor's then current form, the performance of the new licensee's obligations  under the newly executed license agreement.

(3)    If Licensee is a natural person, upon Licensee's death, Licensee's interest in the License may pass in accordance with Licensee's will, or, if Licensee dies intestate, in accordance  with the laws of intestacy governing the distribution of Licensee's estate, provided that:

(a)    adequate provision acceptable to Licensor has been made for management of the Hotel; and

(b)    Licensor gives written consent, which consent will not be unreasonably withheld; and

(c)    the transferee(s) of Licensee's interest in the License is one or more of the decedent's spouse, parents, siblings, sons, daughters, nieces or nephews, and;

(d)    Licensee's heirs or legatees promptly advise Licensor and the transferee promptly executes a new license agreement for the unexpired term of this License on the standard form then being used to license new hotels under the System, except the fees charged thereunder shall be the same as contained herein including any adjustments to such fees as may have been implemented from time to time in accordance with the terms of this License, and Licensee's executor or estate administrator executes a termination agreement of this License on Licensor's then current form.

**F.    Transfers of Equity Interests in the Licensee Upon Death To Family Members:**

(1)    If an Equity Interest in an Entity is owned by a natural person, the Equity Interest may pass upon such person's death, in accordance with such person's will or, if such person dies intestate, in accordance with the laws of intestacy governing the distribution of such person's estate, provided that:

(a)  adequate provision acceptable to Licensor is made for management of the Hotel; and

(b)  Licensor gives written consent, which consent will not be unreasonably withheld; and

(c)  the transferee(s) of such Equity Interest is one or more of the decedent's spouse, parents, siblings, sons, daughters, nieces or nephews and;

(d)  the transferee(s), or such other natural person or Entity as Licensor may approve, assumes, in writing, on a continuing basis, the decedent's guarantee, if any, of the Licensee's obligations under this License.

## G.  Registration of a Proposed Transfer of Equity Interests:

(1)  Any public offering, private placement or other sale of securities in or by Licensee or the Hotel ("Securities") requires Licensor's consent. All materials for the offer or sale of those Securities disseminated to any prospective purchaser thereof, filed with any governmental or quasigovernmental entity or intended for distribution to any form of media must be submitted to Licensor for its review at least sixty (60) days before the date Licensee disseminates or distributes those materials or files them with any governmental agency, including any materials to be used in any offering exempt from registration under any securities laws. Licensee must submit to Licensor a non-refundable Twenty Five Thousand Dollar ($25,000) processing fee with the offering materials and pay any additional costs Licensor may incur in reviewing such materials, including reasonable attorneys' fees. Except as legally required to describe the Hotel in the offering materials, Licensee may not use any of the Marks or otherwise imply Licensor's participation or that of its affiliates, officers, directors, members, managers and employees  in such offering or its/their endorsement of any Securities or any Securities offering.  Licensor will have the right to approve any description of this License or Licensee's relationship with Licensor, or any use of the Marks, contained in any prospectus, offering memorandum or other communications or materials used by Licensee in the sale or offer of any Securities. Licensor's review of these documents will not in any way be considered Licensor's agreement with any statements contained in those documents, including any projections, or our acknowledgment or agreement that the documents comply with any applicable laws.

(2)  Licensee may not offer and/or sell any Securities unless Licensee clearly discloses to all purchasers and offerees in any and all Securities offer and/or sale materials that: (i) neither Licensor, nor any of its affiliates, nor any of their respective officers, directors, managers, agents or employees, will in any way be deemed an issuer or underwriter of the Securities, as those terms are defined in applicable securities laws;  (ii) neither Licensor, its affiliates nor any of their respective officers, directors, managers, agents and employees will have any liability or responsibility for any financial statements, projections or other financial information contained in any prospectus, offering and solicitation material or similar written or oral communication; plays (or will play) any role in the offer or sale of Licensee's securities; has any responsibility for the creation or contents of any offering and/or solicitation materials (including any prospectus); in no fashion controls (or will control) Licensee's day-to-day business operations or any element or instrumentality thereof; that any individual or entity purchasing Securities must understand that its sole recourse for any alleged or actual impropriety relating to the offer and sale of such Securities and/or Licensee's operation of its business will be against Licensee (and/or, as may be applicable, the seller of such Securities); and, that in no event may such purchaser seek to impose liability arising from or related to such activity, directly or indirectly, upon any of Licensor, its affiliates or any of their respective officers, directors, managers, agents or employees.

(3)  Licensee expressly agrees that its obligations to indemnify and hold harmless Licensor and the other indemnitees under Paragraphs 9.A and 14.J of this Agreement extends to and embraces liabilities arising from or relating to, directly or indirectly, any and every element of Licensee's offer and/or sale of Securities

which Licensee may propose to or does engage in, including (without limitation) any statements, representations or warranties that Licensee and/or its affiliates may give to or receive from any proposed or actual purchaser of such Securities and/or any claim that Licensee, its affiliates and/or the officers, directors, managers, members, agents and employees of each of the foregoing, or Licensee's assignee, engaged in fraud, deceit, violation of securities laws or other illegality in connection with Licensee's proposed or actual offer and/or sale of Securities. As with all other indemnification obligations set forth in this License, this specific indemnification obligation will survive the termination or expiration of this License.

## H.    Change of Ownership:

(1)      Notwithstanding any other term or provision of this License to the contrary, neither this License nor any right or interest herein is assignable or transferable by Licensee.

(2)      If Licensee (i) receives an offer to purchase or lease the Hotel or any portion thereof, (ii) desires to sell or lease the Hotel or any portion thereof, (iii) wishes to convey the Hotel, Hotel site, or any interest in the Hotel or Licensee, Licensee shall give prompt written notice thereof to Licensor, stating the identity of the prospective transferee, purchaser or lessee and the terms and conditions of the conveyance, including a copy of any proposed agreement and all other information with respect thereto, that Licensor may reasonably require.

(3)      Any (i) transfer of Equity Interests in an Entity (other than a transfer expressly permitted hereunder) or (ii) transfer of all or a material part of the Hotel or Hotel site (if the Hotel or Hotel site is owned directly or indirectly by Licensee or by a natural person or Entity that owns any Equity Interest in Licensee) to a new owner who desires to continue to operate the Hotel as a Holiday Inn hotel brand, shall constitute a change of ownership requiring submittal of an application for a new license.

(4)      Licensor shall process such change of ownership application in accordance with Licensor's then current procedures, criteria and requirements regarding fees, upgrading of the Hotel, financial capacity and guaranty requirements, curing of outstanding defaults, operational abilities and capabilities, prior business dealings, market feasibility and other factors deemed relevant by Licensor. If such change of ownership application is approved by Licensor, the new owner and Licensor shall, upon termination of this License by Licensor and Licensee on Licensor's then current form, enter into a new license agreement. The new license agreement shall be on Licensor's then current form and contain Licensor's then current terms (except for duration), which shall reflect the new term agreed by Licensor as part of the approval of the change in ownership of the Hotel), and if required by Licensor, the new license agreement will contain specified upgrading and other requirements.

(5)      If a change of ownership application for the proposed new owner is not approved by Licensor and the conveyance of the Hotel, Hotel site, or any Equity Interest in the Hotel or Equity Interest in Licensee to the proposed new owner occurs, then Licensor shall have the right to terminate this License pursuant to paragraph 12.C hereof and Licensor shall be entitled to all of its remedies.

## I.    Transfer of Real Estate:

If (i) the real property used in the operation of the Hotel is owned directly or indirectly by Licensee or by a natural person or an Entity that owns any Equity Interest in Licensee and (ii) Licensee or that natural person or Entity proposes to transfer all or a substantial part of such property to a third party, such transfer shall constitute a transfer under the provisions of this License requiring an application for a new license agreement, unless Licensee receives Licensor's prior written consent for the transaction. Licensee may however, without Licensor's consent, mortgage or otherwise grant a security interest in the real estate or other tangible assets of the Hotel (but specifically excluding this License or any right or interest herein) in connection with commercially reasonable financing for the Hotel with a third party bank or other commercial lending institution which is not a competitor of Licensor or any of its affiliated entities.

The selling, offering for sale, or establishment or registration of any condominium, cooperative, flat, timeshare, fractional interest, or interval ownership or regime or any similar type of ownership or regime relating to all or any part of the Hotel is prohibited.

### J.   Management of the Hotel:

Licensee must at all times retain and exercise direct management control over the Hotel's business. Licensee shall not enter into any lease, management agreement, or other similar arrangement for the operation of the Hotel or any part thereof (including without limitation, retail or food and/or beverage service facilities) with any natural person or Entity without the prior written consent of Licensor in each instance. The approval by Licensor of any such lease, management agreement or other similar arrangement for operation of the Hotel or any part thereof shall in no way relieve, reduce, mitigate or waive any of the responsibilities of Licensee under this License, it being understood that all such responsibilities shall at all times remain the obligation of Licensee. Licensee must provide Licensor with all information requested by Licensor from time to time regarding ownership, control and management of the Hotel and of Licensee.

Licensor has the exclusive right to name the Hotel. The name of the Hotel may not be changed unless Licensor determines, at its election, to do so.

### K.   Employees of the Hotel:

None of Licensee's employees will be considered to be Licensor's employees. Licensee acknowledges and agrees that Licensee, or its management company engaged to operate the Hotel, as may be applicable, is the sole employer of the employees working at the Hotel and that Licensor does not directly or indirectly control employment policies, discipline, recruitment or termination and that Licensee is solely responsible for all employment decisions, regardless of whether Licensee has received guidance with respect to such matters from Licensor. Neither Licensee nor any of Licensee's employees whose compensation Licensee pays may in any way, directly or indirectly, expressly or by implication, be construed to be Licensor's employee for any purpose, including but not limited to with respect to any mandated or other insurance coverage, tax or contributions, or requirements pertaining to withholdings, levied or fixed by any city, state or federal governmental agency. Licensor will not have the power to hire or fire Licensee's employees. Licensee expressly agrees, and will never contend otherwise, that Licensor's authority under this License to approve certain of Licensee's employees for qualification to perform certain functions for the Hotel does not directly or indirectly vest in Licensor the power to hire, fire or control any such employee.

## 11.   CONDEMNATION AND CASUALTY:

### A.   Condemnation:

Licensee shall, at the earliest possible time, give Licensor full notice of any proposed taking of all or any part of the Hotel by eminent domain. If Licensor acknowledges that the Hotel or a substantial part thereof is to be taken, Licensor will give due and prompt consideration, without any obligation, to changing the site of the Hotel to a nearby location selected by Licensee and approved by Licensor as promptly as reasonably possible and in any event within four months of the taking, provided that Licensee has promptly filed an application to change the location of the Hotel. Such application would not require payment to Licensor of any additional franchise application fee. If the condemnation of all or any material part of the Hotel building occurs in the last two years of the License Term, the License shall automatically terminate effective upon the date of the taking. If the new location and Licensee's application are approved by Licensor Licensee shall promptly execute an addendum to this License substituting the new location and shall open a new hotel at the new location in accordance with Licensor's specifications within two years of the closing of the Hotel if the new hotel is a new development or within one year of the closing of the Hotel if the new hotel is a conversion of an existing building and the new hotel will thenceforth be deemed to be the Hotel licensed under this License. If a condemnation takes place and a new hotel is not, for whatever reason, approved by Licensor to become the Hotel under this License (or if it is reasonably evident to Licensor that such will be the case), the License will terminate forthwith upon notice thereof by Licensor to Licensee and Licensee shall have no liability for the liquidated damages set forth in paragraph 12.E of this License.

**B.**     **Casualty:**

If the Hotel is damaged by fire or other casualty, Licensee will immediately notify Licensor and expeditiously repair the damage; provided, however, if all or virtually all of the Hotel is destroyed by such fire or other casualty, either Licensor or (unless caused by the intentional act of Licensee or its agent) Licensee may terminate this License by fifteen days prior notice to the other delivered within sixty days of the date of the fire or other casualty. If Licensee terminates this License in accordance with this provision, Licensee shall have no liability for the liquidated damages set forth in paragraph 12.E of this License so long as neither Licensee nor any of its affiliates, principals, shareholders, members, partners or other owners, either directly or through another person or entity, develops, leases or operates the site as a hotel or other lodging or residential facility of any kind or sort for at least five years following the date of termination (or the originally scheduled termination date of this License, if earlier) other than pursuant to another license with Licensor.

Unless the License is terminated properly pursuant to the foregoing provision, Licensee will close the Hotel if required by the extent of the damage or if otherwise required by Licensor; will repair or rebuild the Hotel in accordance with Licensor's standards; will commence reconstruction within three months after the fire or other casualty; will expeditiously continue on an uninterrupted basis with such reconstruction and will, if the Hotel was closed, reopen the Hotel for continuous business operations as soon as practicable (but in any event within eighteen months after the fire or other casualty), giving Licensor at least forty-five days advance notice of the date of reopening if the Hotel was closed. If the Hotel was closed, Licensee may not reopen the Hotel or promote or otherwise hold the Hotel out as a hotel in the System unless and until Licensor determines that the reconstruction is completed in accordance with Licensor's then current standards. If the Hotel is not required to be closed, all work to repair damage shall be conducted so as to minimize interference with the Hotel's operation and guests. If the damage is not repaired in accordance with this paragraph, the License will forthwith terminate upon notice thereof by Licensor to Licensee and Licensee shall be responsible for full liquidated damages under paragraph 12.E of this License. Notwithstanding anything else herein to the contrary, during the time the Hotel is closed, Licensee shall pay Licensor a monthly royalty of 2% of Gross Rooms Revenue based on the average monthly Gross Rooms Revenue for the preceding twelve months prior to the date of the fire or other casualty or if the Hotel has not been in the System for twelve months, based on the average monthly Gross Rooms Revenue for the period during which the Hotel has been in operation in the System. Said payment shall be in lieu of all other System Fees under paragraph 3.B of this License.

**C.**     **No Extensions of Term:**

Nothing in this paragraph 11 will or is intended to extend the License Term.

**12.**     **TERMINATION:**

**A.**     **Expiration of Term:**

This License will expire without notice **(20) twenty years from the date of opening of the Hotel under the System**, subject to earlier termination as set forth herein. This License is not renewable, and Licensee acknowledges and agrees that this License confers upon Licensee absolutely no rights of license renewal following the expiration of the License Term. The parties recognize the difficulty of ascertaining damages to Licensor resulting from premature termination of the License, and have provided for liquidated damages which represent their best estimate as to the damages arising from the circumstances in which they are provided.

**B.**     **Termination by Licensor on Advance Notice:**

(1)     In accordance with notice from Licensor to Licensee, this License will terminate (without any further notice unless required by law), provided that:
    (a)     the notice is mailed at least 30 days (or longer, if required by law) in advance of the termination date; and
    (b)     the notice reasonably identifies one or more breaches of the Licensee's obligations; and
    (c)     the breach(es) are not fully remedied within the time period specified in the notice.

(2)    If Licensee shall have engaged in a violation of this License, for which a notice of termination was given and termination failed to take effect because the default was remedied during the then preceding 12 months, the period given to remedy defaults will, if and to the extent permitted by applicable law, thereafter be 10 days instead of 30 (provided, however, if there have been two or more violations of the License in the preceding twelve months for which notices of termination were given, upon the next violation, if and to the extent permitted by applicable law, the License may be terminated by Licensor immediately upon notice).

(3)    In any judicial proceeding in which the validity of termination is at issue, Licensor will not be limited to the reasons set forth in any notice sent under this paragraph.

(4)    Licensor's notice of termination or suspension of services shall not relieve Licensee of its obligations under this License.

## C.   Immediate Termination by Licensor:

This License may be terminated by Licensor immediately (or at the earliest time permitted by applicable law) if:

(1)    (a)    Licensee or any guarantor of Licensee's obligations hereunder shall generally not pay its debts as they become due, or shall admit in writing its inability to pay its debts, or shall make a general assignment for the benefit of creditors; or

        (b)    Licensee or any such guarantor shall commence any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property; or

        (c)    Licensee or any such guarantor shall take any corporate or other action to authorize any of the actions set forth above in paragraphs (a) or (b); or

        (d)    any case, proceeding or other action against Licensee or any such guarantor shall be commenced seeking to have an order for relief entered against it as debtor, or seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property, and such case, proceeding or other action: (i) results in the entry of any order for relief against it which is not fully stayed within seven business days after the entry thereof, or (ii) remains undismissed for a period of 45 days; or

        (e)    an attachment remains on all or a substantial part of the Hotel or of Licensee's or any such guarantor's assets for 30 days; or

        (f)    Licensee or any such guarantor fails, within 60 days of the date of entry of a final judgment or tax lien against Licensee or a guarantor of this License in any amount exceeding $50,000, to discharge, vacate or reverse the judgment or tax lien, or, to stay execution of it, or if appealed, to discharge the judgment within 30 days after a final decision is rendered in the appeal; or

(2)    Licensee voluntarily or involuntarily loses possession or the right to possession of all or a significant part of the Hotel, except as otherwise provided in paragraph 11; or

(3)    Licensee, or any entity or individual having a direct or indirect ownership in it, contests in any court or proceeding Licensor's ownership of the System or any part of it, or the validity of any of the Marks, or other service marks or trademarks or other intellectual property associated with Licensor's businesses; or

(4)    A breach of paragraph 9 or paragraph 10 occurs; or

(5)    Licensee fails to continue to identify the Hotel to the public as a System hotel, engages in any action that violates Licensor's proprietary rights under paragraph 7 or ceases to operate the Hotel as a System hotel; or

                  LA 2015

<table>
<tr><td>(6)</td><td>Any action is taken toward dissolving or liquidating Licensee or any guarantor hereunder, if it is an Entity, except for any such actions resulting from the death of a partner; or</td></tr>
<tr><td>(7)</td><td>Licensee (or any principal stockholder, owner, member or partner of Licensee as the case may be) is, or is discovered to have been, convicted of a felony (or any other offense if it is likely to adversely reflect upon or affect the Hotel, the System or Licensor in any way); or</td></tr>
<tr><td>(8)</td><td>Licensee maintains false books and records of account or submits false reports or information to Licensor; or</td></tr>
<tr><td>(9)</td><td>Licensee knowingly fails to comply with the requirements of the License and/or the Standards on safety, security, or privacy for its guests at the Hotel, or on the reputation of the management, employees or operation of the Hotel, and such failure may significantly adversely reflect upon or affect the Hotel, the System or Licensor, its parents, subsidiaries and affiliates in any way; or</td></tr>
<tr><td>(10)</td><td>A breach of paragraph 14.M occurs; or</td></tr>
<tr><td>(11)</td><td>Licensee uses any of the Marks before being authorized to do so by Licensor; or</td></tr>
<tr><td>(12)</td><td>Licensee uses any of the Marks in any manner prohibited or not expressly authorized or permitted, by this License; or</td></tr>
<tr><td>(13)</td><td>Licensee refuses to allow, or refuses to cooperate with, Licensor's inspection or audit of the Hotel following a reasonable attempt by Licensor to schedule during normal business hours.</td></tr>
</table>

### D.   De-Identification of Hotel Upon Termination:

Licensee will take whatever action is necessary to assure that no use is made of any part of the System at or in connection with the Hotel after the License Term ends. This will involve, among other things, returning to Licensor the Standards and all other materials proprietary to Licensor, ceasing the use of any of Licensor's trademarks or service marks, physical changes of distinctive System features of the Hotel, including removal of the primary freestanding sign down to the structural steel, and all other actions required to preclude any possibility of confusion on the part of the public and to ensure that the Hotel is no longer using all or any part of the System or otherwise holding itself out to the public as a Holiday Inn hotel. Anything not done by Licensee in this regard within 30 days after termination, may be done at Licensee's expense by Licensor or its agents who may enter upon the premises of the Hotel for that purpose.

### E.   Payment of Liquidated Damages:

If the License terminates pursuant to paragraph 12.B or 12.C above, Licensee will promptly pay Licensor, as liquidated damages, a lump sum equal to the total amounts required under paragraphs 3.B(1), (3) and (4) during the 36 calendar months of operation preceding the termination or such shorter period as equals the unexpired License Term at the time of termination; or if the Hotel has not been in operation in the System for 36 months, the greater of:

(1)   36 times the monthly average of such amounts for the period during which the Hotel has been in operation in the System, or

(2)   36 times such amounts as are due for the one month preceding such termination.

Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to Licensor by termination of this License. Licensor and Licensee therefore intend and agree the above liquidated damages calculation to be a reasonable pre-estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

## 13.   RELATIONSHIP OF PARTIES:

### A.   No Agency Relationship:

Licensee is an independent contractor. Neither party is the legal representative nor agent of, or has the power to obligate (or has the right to direct or supervise the daily affairs of) the other for any purpose whatsoever. Licensor and Licensee expressly acknowledge that the relationship intended by them is a business relationship based entirely on and circumscribed by the express

provisions of this License and that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this License. Licensee acknowledges and agrees, and will never contend otherwise, that Licensee alone will exercise day-to-day control over all operations, activities and elements of Licensee and the Hotel and that under no circumstance shall Licensor do so or be deemed to do so. Licensee further acknowledges and agrees, and will never contend otherwise, that the various requirements, restrictions, prohibitions, specifications and procedures of the System which Licensee is required to comply with under this License, whether set forth in the Standards or otherwise, do not directly or indirectly constitute, suggest, infer or imply that Licensor controls any aspect or element of the day-to-day operations of Licensee or the Hotel, which Licensee alone controls, but only constitute standards Licensee must adhere to when exercising its control of the day-to-day operations of Licensee and the Hotel.

**B.    Licensee's Notices to Public Concerning Independent Status:**

Licensee will take such steps as are necessary and such steps as Licensor may from time to time reasonably request to minimize the chance of a claim being made against Licensor for anything that occurs at the Hotel or for acts, omissions or obligations of Licensee or anyone associated or affiliated with Licensee or the Hotel. Such steps may, for example, include giving notice in guest rooms, public rooms and advertisements and on business forms and stationery, etc., making clear to the public that Licensor is not the owner or operator of the Hotel and is not accountable for what happens at the Hotel. Unless required by law, Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates, or any similar words in its corporate, partnership, entity or trade name, nor authorize or permit such use by anyone else. Licensee will not use Licensor's name, the Marks or any other trademarks, service marks or other intellectual property owned or licensed by Licensor or any of its affiliates to incur any obligation or indebtedness on behalf of Licensor.

Licensee shall not register Licensor's name, the Marks or any other trademarks, service marks or other intellectual property as property owned or licensed by Licensor or any of its affiliates as part of any internet domain name or Uniform Resource Locator (URL), and may not display or use any of the Marks or other intellectual property rights related to the System in connection with any web site. Licensee shall not promote, maintain, implement or be responsible for any web site in connection with the licensed Hotel without the prior written approval of Licensor, and if approved by Licensor, any such web site shall comply with all of Licensor's web site requirements as set forth in the Standards or otherwise.

**14.    MISCELLANEOUS:**

**A.    Severability and Interpretation:**

The remedies provided in this License are not exclusive. In the event any provision of this License is held to be unenforceable, void or voidable as being contrary to the law or public policy of the United States or any other jurisdiction entitled to exercise authority hereunder, all remaining provisions shall nevertheless continue in full force and effect, unless deletion of the provision(s) is deemed unenforceable, void or voidable impairs the consideration for this License in a manner which frustrates the purpose of the parties or makes performance commercially impracticable. In the event any provision of this License requires interpretation, such interpretation shall be based on the reasonable intention of the parties in the context of this transaction without interpreting any provision in favor of, or against, any party hereto by reason of the draftsmanship of the party or its position relative to the other party.

**B.    Binding Effect, Choice of Law, No Jury Trials, No Punitive Damages and Licensor's Right to Injunctive Relief:**

(1)    This License shall become valid when executed and accepted by Licensor in Atlanta, Georgia. It shall be deemed made and entered into in the State of Georgia. This License, all relations between the parties, and any and all disputes between the parties, whether sounding in contract, tort or otherwise, shall be governed and construed under, and in accordance with, the laws and decisions (except any conflicts of law provisions) of the State of Georgia. In entering into this License, Licensee acknowledges that it has sought, voluntarily accepted and

become associated with Licensor who is headquartered in Atlanta, Georgia. Licensee hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the U.S. District Court for the Northern District of Georgia, Atlanta Division and the State and Superior Courts of DeKalb County, Georgia for the purpose of any and all disputes. However, Licensor remains entitled to seek injunctive relief in the federal or state courts either of Georgia or of the state of the Hotel's location or of Licensor's principal place of business. Should Licensee initiate litigation against Licensor, its parents, subsidiaries or one of its affiliated entities, Licensee must bring such action in the courts identified above; provided, however, the foregoing will not constitute a waiver of any of Licensee's rights under any applicable franchise law of the state in which the Hotel is located.

(2)     To the extent either Licensor or Licensee initiates litigation relating to this License or any matter relating to their relationship, Licensor and Licensee irrevocably and unconditionally waive their rights to a trial by jury. This waiver will apply to all causes of action that are or might be included in such action, including claims related to the enforcement or interpretation of this License, allegations of state or federal statutory violations, fraud, misrepresentation, or similar causes of action, and in connection with any legal action initiated for the recovery of damages by either of us.

(3)     Licensor and Licensee hereby irrevocably and unconditionally waive, to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special, consequential or other similar damages in any litigation, action, claim, suit, arbitration, mediation or proceeding, at law or equity, arising out of, pertaining to or in any way associated with this License, or any other documents entered into in connection with this License, and the parties covenant never to advance or pursue any such claim for punitive damages and agree that, in the event of a dispute, only actual damages shall be sought as relief to the exclusion of all others.

(4)     Licensee explicitly affirms and recognizes the unique value and secondary meaning attached to the System and the Marks. Accordingly, Licensee agrees that any noncompliance by it with the terms of this License, or any unauthorized or improper use of the System or the Marks by Licensee, will cause irreparable damage to Licensor. Licensee therefore agrees that if Licensee engages in this non-compliance, or unauthorized and/or improper use of the System or Marks, during or after the period of this License, Licensor will be entitled to both temporary and permanent injunctive relief against Licensee from any court of competent jurisdiction, in addition to all other remedies which Licensor may have at law. Licensee consents to the entry of these temporary and permanent injunctions, without Licensor being required to prove the inadequacy of money damages as a remedy, without being required to post a bond and without waiving any other rights or remedies at law or in equity.

**C.     Exclusive Benefit:**

This License is exclusively for the benefit of the parties hereto, and it may not give rise to liability to a third party. No agreement between Licensor and anyone else is for the benefit of Licensee.

**D.     Entire Agreement:**

This is the entire agreement between the parties pertaining to the licensing of the Hotel and supersedes all previous negotiations and agreements between the parties pertaining to the licensing of the Hotel as a Holiday Inn brand group hotel or Holiday Inn Express brand group hotel. Nothing in the preceding sentence is intended, however, to disclaim any representations Licensor made in the franchise disclosure document that Licensor provided to Licensee. No change in this License will be valid unless in writing signed by both parties. No failure to require strict performance or to exercise any right or remedy hereunder will preclude requiring strict performance or exercising any right or remedy in the future.

**E.**  **Licensor Withholding Consent:**

(1)     In no event may Licensee make any claim for money damages based on any claim or assertion that Licensor has unreasonably withheld, delayed and/or denied any consent or approval under this License. Licensee waives any such claim for damages. Licensee may not claim any such damages by way of setoff, counterclaim or defense. Licensee's sole remedy for such a claim will be an action or proceeding to enforce the subject License provision(s), for specific performance or for declaratory judgment.

(2)     Licensor's consent, whenever required, may be withheld if any breach by Licensee exists under this License. Approvals and consents by Licensor will not be effective unless evidenced by a writing duly executed on behalf of Licensor.

**F.**  **Notices:**

Notices will be effective hereunder when and only when they are reduced to writing and delivered personally or mailed by Federal Express or comparable overnight or express delivery service or by certified mail to the appropriate party at its address, hereinafter set forth, or to such person and at such address as may subsequently be designated by one party to the other.

Licensor:     Holiday Hospitality Franchising, LLC
Three Ravinia Drive, Suite 100
Atlanta, Georgia   30346
Attn: Vice President, Franchise Licensing and Compliance

Licensee:     Rick Ly
1686 Beach Blvd.
Biloxi, MS 39531

**G.**  **Authority:**

Licensee represents and warrants to Licensor that the entities and persons signing this License on behalf of Licensee are duly authorized to do so and to bind Licensee to enter into and perform this License. Licensee further represents and warrants to Licensor that Licensee and the entities and persons signing this License on behalf of Licensee have obtained all necessary approvals and that their execution, delivery and performance of this License will not violate, create a default under or breach any charter, bylaws, agreement or other contract, license, permit, order or decree to which they are a party or to which they are subject or to which the Hotel is subject. If Licensee has not already done so prior to the execution of this License, Licensee agrees to submit to Licensor by the date specified by Licensor all of the documents and information that Licensor required or requested in the license application and in connection with the licensing process. Licensee acknowledges that its breach of the representations and warranties in this paragraph, its failure to comply with Licensor's requirements for the submission of information and documents, or any omission or misrepresentation of any material fact in the information

or documents submitted to Licensor in connection with the license application and/or the licensing process will constitute a material breach of Licensee's obligations under this License.

**H.**  **General Release and Covenant Not to Sue:**

Licensee and its respective heirs, representatives, successors and assigns, hereby release, remise and forever discharge Licensor and its parents, subsidiaries and affiliates and their directors, employees, agents, successors and assigns from any and all claims, whether known or unknown, of any kind or nature, absolute or contingent, if any there be, at law or in equity, from the beginning of time to and including, the date of Licensor's execution of this License, and Licensee and its respective heirs, representatives, successors and assigns do hereby covenant and agree that they will not institute any suit or action at law or otherwise against Licensor, directly or indirectly relating to any claim released hereby by Licensee; provided, however, that nothing contained in this release is intended to disclaim or require Licensee to waive reliance on any representation that Licensor made in the Franchise Disclosure Document that it provided to Licensee. This release and covenant not to sue shall survive the termination of this License. Licensee shall take whatever steps are necessary or appropriate

22                                                          LA 2015

to carry out the terms of this release and covenant not to sue upon Licensor's request.

**I.      Performance of the Work:**

Licensee agrees to perform the construction and renovation work including, without limitation, the purchase of furniture, fixtures and equipment set forth on Attachment B attached hereto and incorporated herein by reference ("the Work"). Licensee acknowledges that its agreement to perform the Work is an essential element of the consideration relied upon by Licensor in entering into the License and agrees that, Licensee may be authorized, in Licensor's sole judgment, to use the System at the Hotel prior to completion of the Work, but only during such time as Licensee is actively meeting its performance obligations in full compliance with the requirements of Attachment B of this License. Licensee shall not commence its operation of the System, or any part thereof, at the Hotel unless and until it receives Licensor's written authorization to do so. Licensee's failure to perform the Work in accordance with Licensor's requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment B of this License) shall constitute a material breach of Licensee's obligations under this License.

In the event Licensor terminates this License due to Licensee's breach of any of its obligations under the License prior to the time that Licensee is authorized to use the System at the Hotel, Licensee shall pay to Licensor, as liquidated damages, a lump sum equal to the monthly average of all amounts that would have been payable to Licensor under paragraphs 3.B(1), (3) and (4) of this License assuming the Hotel had collected Gross Rooms Revenue based on the average daily revenue per available room for all hotels in the System for the previous twelve (12) months, as determined by Licensor, multiplied by the greater of (a) six (6) or (b) the number of full and partial months from the Term Commencement Date to the termination date of the License.

Licensor and Licensee acknowledge and agree that it would be difficult to determine the injury caused to Licensor by termination of this License. Licensor and Licensee therefore intend and agree the above liquidated damages calculations to be a reasonable pre-estimate of Licensor's probable loss and not a penalty or in lieu of any other payment.

**J.      Reimbursement of Expenses:**

Licensee agrees to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce or defend itself or any rights under this License  (including without limitation any claim, cross claim or counter-claim brought by Licensee), effect termination of this License or collect any amounts due under this License.

**K.      Descriptive Headings:**

The descriptive headings in this License are for convenience only and shall not control or affect the meaning or construction of any provision in this License.

**L.      Capital Reserve; Capital Reinvestment and Renovation Cycles:**

(1)     Licensor may require Licensee to establish a capital reserve in an amount not in excess of 5% of Gross Revenue annually to be used for capital expenditures and upgrading of the Hotel including renovation of guest rooms, guest room corridors and other public spaces and replacement of furniture, fixtures and equipment ("Capital Reserve").  Licensor shall give Licensee no less than ninety (90) days notice of imposing such  requirement to establish a Capital Reserve as the same may be established or changed by Licensor from time to time, and in such event, Licensee must establish an escrow reserve account funded monthly in a bank selected by Licensee.  Licensee shall make expenditures from such account for the purposes hereinbefore specified in accordance with Licensor's requirements. Licensee acknowledges that the Capital Reserve may not be sufficient to maintain the Hotel as a first class facility in accordance with Licensor's standards and Licensee shall promptly provide any necessary additional funds to meet

Licensor's product quality and consumer quality requirements, as well as Licensee's renovation obligations specified herein.

(2) Throughout the License Term, regardless of whether Licensor has required Licensee to establish a Capital Reserve, Licensee must complete significant renovations of the guestrooms, corridors and public spaces of the Hotel in order to maintain the Hotel as a first class facility, including: (a) replacing Soft Goods at least every five (5) to six (6) years after such Soft Goods were installed and (b) replacing Case Goods at least every (10) to twelve (12) years after the date such Case Goods were installed; and, if necessary replacing such Soft Goods and Case Goods more frequently in order to maintain compliance with the Standards, Licensor's quality and guest satisfaction programs or to remove risk of injury to persons or property or to ensure compliance with all applicable laws.

(3) Licensee must fund all ordinary and extraordinary maintenance and repair, capital improvements and renovations of the Hotel.

(4) For purposes of this paragraph 14.L the following definitions apply:

    (a) **"Gross Revenue"** means all revenues and income of any nature derived directly or indirectly from the Hotel or from the use or operation thereof, including without limitation room sales; food and beverage sales; telephone, telegraph, fax and internet revenues; rental or other payments from lessees, subleases, concessionaires and others occupying or using space or rendering services at the Hotel (but not the gross receipts of such lessees, subleases or concessionaires); interest on any existing amounts held in the Capital Reserve; and the actual cash proceeds of business interruption, use, occupancy or similar insurance.

    (b) **"Soft Goods"** means textile, fabric and vinyl and similar products used in finishing and decorating the Hotel, its guest rooms, corridors and public spaces, such as vinyl wall and floor coverings, drapes, sheers, cornice coverings, carpeting, bedspreads, lamps, lamp shades, artwork, task chairs, upholstery and all other unspecified items of the same class.

    (c) **"Case Goods"** means furniture and fixtures used in the Hotel, its guest rooms and its public spaces such as chests, armoires, chairs, beds, headboards, desks, tables, television sets, mirrors, pictures, wall decoration, graphics and all other unspecified items of the same class.

    (d) **"FF & E"** means furniture, fixtures, equipment, signage, including exterior signage, as well as other improvements and personal property used in the operation of the Hotel except for those supplies and equipment which are 'OS & E' under the then current version of the Uniform System of Accounts for the Lodging Industry.

(5) Licensee shall inform Licensor of the dates of installation of Soft Goods and Case Goods, which dates Licensor shall be entitled to verify.

(6) Licensee must submit its renovation plans for the Hotel to Licensor for Licensor's review and approval prior to starting any renovations and Licensee shall not start any renovations until Licensor has approved the scope of the plans and the plans' compliance with the Standards.

(7) Licensor shall have the right to require Licensee to make renovations to the Hotel to conform the Hotel's FF & E, décor, building trade dress and improvements to then-current Standards and Holiday Inn® brand design criteria.

## M. Anti-Terrorism, Anti-Bribery and Trade Sanctions Compliance:

(1) Licensee represents, warrants and covenants that neither it nor any entity or individual having a direct or indirect ownership interest in it, any guarantor of Licensee's obligations under this License (**"Guarantor"**) nor any of Licensee's affiliates nor any officer, director, employee, member, partner or shareholder of any of the foregoing, has been or is now:

    (a) directly or indirectly owned or controlled by the government of any nation subject to trade sanctions or embargoes imposed by any of the Sanctioning Bodies (as defined below in sub-paragraph (4));

    (b) acting on behalf of any government of any nation subject to the trade sanctions or embargoes imposed by any of the Sanctioning Bodies,

(c) identified by any of the Sanctioning Bodies as a Prohibited Person;

(d) in violation of any applicable law relating to anti-money laundering, anti-terrorism, anti-bribery, trade sanctions or embargoes, including without limitation, the UK Bribery Act 2010, the US Foreign Corrupt Practices Act, the US Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (US Patriot Act) and related regulations and executive orders related to the foregoing laws (the **"Relevant Laws"**).

(2) Licensee further warrants and represents and covenants that Licensee, any Guarantor and any Person having a direct or indirect ownership in Licensee:

(a) will comply with the Relevant Laws; and

(b) that all individuals authorized to represent Licensee in carrying out its obligations under this License are eligible under applicable United States immigration laws to travel to the United States for training or any other purpose in carrying out Licensee's obligations under this License.

(3) For the purposes of this paragraph 14.M, **"Person"** means any individual, corporation, partnership, joint venture, limited liability company, estate, trust, unincorporated association, any national, provincial, state, county or municipal government or any bureau, office, department or agency thereof and any fiduciary acting in an agency capacity on behalf of any of the foregoing.

(4) **"Prohibited Person"** means any person identifed by Her Majesty's Treasury of the United Kingdom (**"UK"**), the Office of Foreign Assets Control of the Department of the Treasury of the United States (**"US"**), the European Union (**"EU"**) or the United Nations (**"UN"**), (collectively, **"Sanctioning Bodies"**) or any other Person with whom Licensor, or any of its affiliated companies, is otherwise prohibited from transacting business.

## N.   Business Judgment:

Licensor and Licensee recognize and agree, and any mediator or judge is affirmatively advised, that certain provisions of this License describe the right of Licensor (or one of its committees) to take (or refrain from taking) certain actions in the exercise of its business judgment as to the long-term overall interests of the System, and/or upon its determination that the change was adopted in good faith and is consistent with the long-term overall interests of the System. Where such judgment has been exercised by Licensor (or one of its committees), neither a mediator, nor a judge, nor any trier of fact, shall substitute his, her or their judgment for the judgment so exercised by Licensor.

## 15.   BRAND PROVISIONS:

### A.   Holiday Inn Brand Group New Development Provisions.

(1) This License constitutes a license to operate a Holiday Inn brand hotel as a new development.

(2) The percentage of Gross Rooms Revenue that Licensee will pay to Licensor as the Services Contribution, as referenced in paragraph 3 above, is 3.0%.

(3) Licensee must provide food and beverage service in the Hotel as required by the Standards. If Licensee, one of its affiliated entities or persons or a third party, operates a branded restaurant adjacent to or inside the Hotel to serve as the restaurant for the Hotel, in addition to all other requirements of this Licensee, Licensee must ensure, regardless of any conflict between this License and the restaurant's brand standards or other obligations, that such affiliated entity or person or third party:

(a) will operate the restaurant, with respect to guest life and safety standards, in compliance with the restaurant's brands standards and with all life and safety standards required by law or, if higher, by this License;

(b) will keep the restaurant open for meals during the hours required by Licensor;

(c) will provide to Hotel guests all programs required by Licensor, including but not limited to the "Kids Eat Free" program;

(d)     will allow Hotel guests eating in the restaurant or receiving room service from the restaurant to charge restaurant bills to their Hotel guest folio;

(e)     will not use or advertise any of the restaurant names, brands or trademarks together with the Marks unless specifically approved by Licensor in writing;

(f)     will honor at the restaurant all credit cards specified in the Standards; and

(g)     will include the restaurant in all guest satisfaction surveys and quality inspections and will allow Licensor's inspection of the restaurant in accordance with this License and the Standards.

## 16.     SPECIAL STIPULATIONS:

### A.     Site Control.

Licensee expressly understands and agrees that control of the Location by Licensee is a condition precedent to the granting of the license and the final ratification of this License by Licensor. Accordingly, the license is granted and this License is provided only on a conditional basis, subject to Licensor's receipt of satisfactory evidence of Licensee's control of the Location in accordance with the provisions of this paragraph.  Unless Licensor receives and Licensee delivers a copy of the recorded deed or other documentary evidence satisfactory to Licensor that Licensee has fee simple title to the Location or an executed lease of the Location for the term of the License within ninety (90) days from the Term Commencement Date, Licensor shall have the right to terminate the License by written notice to Licensee. Such right shall expire upon Licensor's receipt and acceptance of a copy of the fully executed lease or recorded deed showing such leasehold interest or fee simple title in Licensee.

### B.     General Manager Requirement.

Licensee shall cause the Hotel to be managed at all times by a general manager who has at least two years' experience as a general manager at either (i) a hotel operated under any of Licensor's other brands or (ii) a hotel in a similar brand segment as the Hotel, as defined by Smith Travel Research, Inc.

### C.     Director of Sales Requirement.

Licensee shall cause the Hotel to at all times engage a director of sales who has at least two years' experience as a director of sales at either (i) a hotel operated under any of Licensor's other brands or (ii) a hotel in a similar brand segment as the Hotel, as defined by Smith Travel Research, Inc.

### D.     Change of Ownership Rights.

Notwithstanding Paragraph 10, if Licensee is not then in default under this License, a new license agreement for the Hotel may be issued to a new applicant, without payment of the then current application fee, in which **Rick Ly**, maintains at least a **25% equity interest** upon (i) Licensee's written request, (ii) the applicant's submission of a completed application on Licensor's then current form, (iii) the applicant's qualification under Licensor's then current standards for new licensees, and (iv) Licensor's approval, to be granted or withheld in its discretion, of the application, provided the written request and fully completed application is received prior to the opening of the Hotel in the System. If the written request or the fully completed application is received after the opening of the Hotel in the System, then a non-refundable processing charge of $5,000 will be charged.   If the new applicant is a limited partnership, Licensee must be a general partner of this limited partnership.   Licensor may require the execution of its then current standard form of license agreement, which agreement shall have a term equal to the remaining balance of the original term of this License, a new or supplemental guarantee agreement and related agreements by the applicant and its principals, payment of all System Fees and other amounts due under this License, payment of other amounts then owed Licensor, Six Continents Hotels, Inc. or their affiliated companies by Licensee, the applicant, or their respective affiliates and principals, reasonable renovation and upgrading of the Hotel to System standards applicable to entering conversion hotels at that time, and execution of general releases by Licensee and each of its principals as conditions precedent to the execution of the Change of Ownership License Agreement.   Under no

circumstances shall any such Change of Ownership have the effect of releasing Licensee from its obligations hereunder or releasing the liability of any guarantor of Licensee's obligations, arising or accruing prior to, or in respect of events occurring prior to, the execution of the Change of Ownership License Agreement with the new applicant.

**IN WITNESS WHEREOF**, the parties have executed this License, as of the date first stated above.

**Licensee:**

By: _____
    Rick Ly
    Individually

Witness: _____

**Licensor:**

**HOLIDAY HOSPITALITY FRANCHISING, LLC**

By:  Six Continents Hotels, Inc., its sole managing member

By: _____
    Jerry Tidwell
    Vice President
    Franchise Licensing and Compliance

Attest: _____
    Assistant Secretary

LA 2015

## ATTACHMENT "A"

Facilities and Services (paragraph 1):

Site-Area and general description:      6 Story, Interior Corridor

     Fee owners (names and addresses):     Rick Ly
                                                  1686 Beach Blvd.
                                                  Biloxi, MS 39531

Number of approved guest rooms (including suites):    143

Number of approved suites:   N/A

Restaurants and lounges (number, seating capacity, names and description):   TBD

Gift shop:     N/A

Other concessions and shops:  N/A

Parking facilities (number of spaces, description):      143 +/- surface spaces

Swimming pool:      Outdoor

Other facilities and services:   Fitness Center, Business Center, 3500 sf meeting space

Ownership of Licensee (paragraph 10):

     **RICK LY**                                          **100%**

LA 2015

## ATTACHMENT "B"

### THE WORK

### A.   BEFORE CONSTRUCTION BEGINS.

Before starting construction of the Hotel, Licensee must (at Licensee's sole expense):

1.  Submit to Licensor evidence of insurance as required under this License.

2.  Submit to Licensor evidence that Licensee is entitled to possession of the premises on which the Hotel will be located, which documents shall be subject to Licensor's approval.

3.  Obtain any and all approvals, permits or licenses required for construction to begin.

4.  Submit for Licensor's review and approval, Preliminary Plans to Licensor at least two hundred and ten (210) days before Ground Break (no later than **November 1, 2016**) ("**Ground Break**" means the completion of the Hotel building foundation through ground-level or the completion of the finished ground floor slab) starting construction **or such other date as Licensor may agree with Licensee in writing** ("Preliminary Plans" means site plans, building floor plans (all floor levels), and exterior elevations as prepared by a qualified, licensed professional with knowledge of commercial building design and construction, including spatial relationships, and general quality of building systems, elements, products and materials, as is necessary to describe adequately the design of the Hotel).

5.  Submit for Licensor's review and approval, Final Plans to Licensor at least one hundred and twenty (120) days before Ground Break (no later than **February 1, 2017**) and before final submittal to Licensee's local building authority **or such other date as Licensor may agree with Licensee in writing** ("Final Plans" means final versions of the Construction Plans and associated specifications including architectural, civil, structural, mechanical, electrical, plumbing, fire protection, landscape and other specialty consultant design documents with such detail and containing such information as Licensor may additionally request). The Final Plans as submitted to Licensor shall conform to then prevailing System standards, including the construction standards set forth in the Standards and address all revisions required by Licensor's review and approval of the Preliminary Plans.

6.  Submit to Licensor a pre-construction disability compliance certification signed by an architect with professional experience applying the requirements of the Americans with Disabilities Act ("ADA") and the ADA Standards, in the form of **Attachment C** (the "**ADA Certificate**"). Such certification must confirm the qualifications of the architect and that the Final Plans, as designed, comply with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements.

7.  Preliminary Plans and Final Plans to Licensor in Adobe Acrobat PDF format and in paper, "hard copies" standard sized, scaled drawing sheets or such other format as Licensor may specify to Licensee in writing.

### B.   CONSTRUCTION.

1.  Construction shall not begin unless and until Licensor has approved the Final Plans and Licensor has received the properly executed ADA Certificate. Thereafter, no change shall be made to the Final Plans without the prior written consent of Licensor. Notwithstanding the foregoing, after the Final Plans have been approved, if in the course of actual construction any change in the Final Plans occurs, Licensee shall notify Licensor promptly, and in no event later than ten (10) days after Licensee becomes aware of or should have been aware of any such change.

2.  Licensee must complete Ground Break of the Hotel by **June 1, 2017.**

LA 2015

3. Licensee must submit for Licensor's review and approval any and all signage, shop drawings, guest room FF &E and common area FF & E plans and associated specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed or accredited design professional with commercial building design background, no later than thirty (30) days after Ground Break. Thereafter, no change shall be made to the FF &E Specs without the prior written consent of Licensor. Notwithstanding the foregoing, after the FF & E Specs have been approved, if in the course of actual construction any change in the FF & E Specs occurs, Licensee shall notify Licensor and submit changes, within ten (10) days of any such change, for Licensor's review and approval.

4. Licensee shall submit the FF & E Specs to Licensor in the following format: 30" x 24" color boards representing finishes for all guest room/suites and commercial areas with accompanying specifications for all products.

5. Licensee must notify Licensor if it elects to use any Licensor-pre-approved product, design, or FF&E package.

6. Licensee must submit shop drawings, color boards and specifications to Licensor for its review and approval before purchasing and installing any FF & E Specs, including without limitation, any signage.

7. Once the construction has commenced, it shall continue without interruption (except for interruption by reason of events constituting force majeure) until construction is completed.

8. Notwithstanding the occurrence of any events constituting force majeure, or any other cause, construction shall be completed and the Hotel shall be furnished, equipped and shall otherwise be made ready to open for business in accordance with the License not later than **June 1, 2018** (or such other date as Licensor and Licensee may agree in writing).

9. Licensee shall cause the Hotel to be constructed according to the Final Plans and the FF&E Specs approved by Licensor, and Licensor shall determine at its election whether construction has been completed in accordance with the Final Plans and the FF&E Specs.

10. Extension requests to the starting date of construction of a new development may be considered on a basis of monthly increments up to a twelve (12) month period for any one extension. Requests for less than six (6) months must be accompanied by a sum equal to the then current standard minimum Application Fee for the proposed number of rooms for the Hotel, prorated according to the period of time requested. Requests for a six (6) month extension must be accompanied by a sum equal to one half (1/2) of the then current standard minimum application fee for the proposed number of rooms for the Hotel. Requests for extensions of more than six (6) months and up to twelve (12) months must be accompanied by a sum equal to the then current standard minimum Application Fee for the proposed number of rooms for the Hotel. Approval of extension requests is not automatic. The Licensee will be responsible for any and all expenses that may be incurred by Licensor in the processing of an extension request.

11. If an extension request is approved and construction begins within the extension period, the extension fee paid will be refunded, without interest, less the expenses incurred in processing the extension request. If construction does not commence within the extension period, the extension fee will be deemed earned by Licensor and Licensor may, at its election, refund or retain all or any part of the extension fee.

## C.   OPENING OF THE HOTEL.

1. The Hotel shall not be opened for business under the System unless and until:

   (a) Licensor has approved and accepted, in advance, in writing:

(i)    the construction of the Hotel in accordance with the Final Plans and the FF & E Specs and Licensor's requirements;

(ii)    the installation of all items of equipment, furniture, signs, computer terminals and related supplies and other items; and

(iii)    the staffing and training of such staff necessary to operate the Hotel in accordance with Licensor's requirements;

(b)    no accounts of Licensee are past due to Licensor, its parents, subsidiaries or affiliated companies;

(c)    Licensee is in full compliance with all of the terms of this License;

(d)    Licensee has submitted to Licensor all certificates of insurance (and copies of insurance policies if requested by Licensor) as required under the License;

(e)    Licensee has obtained all necessary governmental approvals, licenses and permits to possess, occupy and operate all areas of the Hotel, according to Licensor's requirements, including specifically without limitation, a permanent certificate of occupancy; and

(f)    Licensee has submitted to Licensor a post–construction disability compliance certification signed by Licensee and an architect with professional experience applying the requirements of the ADA and the ADA Standards, in the form of **Attachment C** – ADA Certificate. Such certification must confirm the qualifications of the architect, the architect has inspected the as-built conditions of the Hotel and building site and that the Hotel and building site have been built in compliance with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements

2.  Notwithstanding anything else herein to the contrary, Licensor may, in its sole judgment, authorize Licensee to open and operate the Hotel as the brand of hotel specified in paragraph 15 of this License, even though Licensee has not fully complied with the terms of this License, provided that Licensee agrees to fulfill all remaining terms of this License on or before the dates established by Licensor as a condition to allowing opening of the Hotel when less than all of the required work has been completed.

3.  Licensee acknowledges and agrees that:  (a) Licensor's review of Preliminary Plans, Final Plans, FF & E Specs or other materials, documents or items submitted to Licensor for review and approval pursuant to this License (collectively "Licensee's  Plans")  is exclusively for determination of compliance with the Standards,  the requirements of the System  and the terms of this License and not for compliance with all applicable law or adequacy or suitability for the purpose intended, (b) no approval of Licensee's Plans by Licensor shall constitute, be deemed or construed in any way as, Licensor's consent, approval, acknowledgment or recognition that Licensee's Plans comply with applicable law or are adequate or suitable for the purpose intended, (c) Licensee shall have the sole responsibility for compliance with applicable law and for the adequacy and suitability for the purpose intended and (d) nothing in this License, and no review and approval (or opportunity for review) by Licensor of Licensee's Plans shall be deemed to create a duty on the part of Licensor that could give rise to any cause of action by  Licensee or any of its affiliated entities or persons, or any other person or entity against Licensor or any of its parents, subsidiaries or affiliated entities nor their respective officers, directors  or employees, based on any alleged deficiency in the adequacy, suitability or legality of  Licensee's Plans.

ATTACHMENT "C"



InterContinental Hotels Group

## <u>ACCESSIBILITY CERTIFICATION</u>

**Holidex Code:** _____

**Location #:** _____

**Hotel Name** (as it appears in the IHG Website): _____

**Hotel Address:** _____

**Licensee:** _____

This certification is intended to comply with the accessibility standards and/or the Travelers with Disabilities Section of the relevant brand standards as well as the InterContinental Hotels Group Design & Construction standards, all of which require compliance with Title III of the Americans with Disabilities Act (ADA), including the 1991 and/or 2010 ADA Standards for Accessible Design (ADA Standards), and all other applicable accessibility requirements. These standards require as follows:

    a.  <u>For newly constructed hotels</u>: (1) a pre-construction certification of the final plans for the building and building site submitted prior to the commencement of construction by an architect with professional experience applying the requirements of the ADA and the ADA Standards; and (2) a post-construction certification submitted after an inspection of as-built conditions signed by Licensee.

    b.  <u>For renovations required for relicensing, conversions, brand changes or changes of ownership</u>: a post-renovation certification submitted after an inspection of as-built conditions signed by Licensee.

    c.  <u>For voluntary renovations</u>: a post-renovation certification submitted after an inspection of as-built conditions signed by Licensee.

Please select the option for which this Certification is submitted:

☐ **Newly Constructed Hotel**  (Must submit Certification Options A & B below)

☐ **Renovation Required for Relicensing, Conversion, Brand Change or Change of Ownership** (Must submit Certification Option B below)

☐ **Voluntary Renovation**  (Must submit Certification Option B below)

## CERTIFICATION

Please select the Option(s) for which Licensee is submitting this Certification.

### ☐ Option A: Newly Constructed Hotel - Pre-Construction Certification

The undersigned certifies that (1) he/she is an architect with professional experience applying the requirements of the ADA and the ADA Standards; and (2) the final plans for construction of this building and building site are in compliance with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements, to the best of his/her knowledge, information, and belief.

Name of Architect: _____

Name of Firm: _____

Signature: _____

Title: _____   Date: _____

### ☐ Option B: Licensee Post-Construction or Post-Renovation Certification

The undersigned Licensee, to the best of his/her knowledge, information, and belief, certifies that this building and building site have been built, renovated or altered in compliance with Title III of the ADA and any other applicable accessibility laws, ordinances or requirements, including, but not limited to, any accessibility laws or requirements regarding the following:

- The appropriate number and distribution of accessible guest rooms
- Features in accessible guest rooms
- Parking and exterior accessible routes
- Public entrances and interior accessible routes
- Service counters
- Public and common restrooms
- Meeting rooms
- Food and beverage establishments
- Swimming pools, spas, and fitness centers

Name of Licensee Principal Correspondent: _____

Signature: _____

Date: _____

*By receiving or accepting this Certification, IHG is not confirming that Licensee and/or Licensee's property are in compliance with all applicable federal, state, and local accessibility requirements. Per the relevant license agreement, Licensee is solely responsible for compliance with all applicable accessibility requirements, including the ADA and the 1991 and/or 2010 ADA Standards for Accessible Design.*

LA 2015

## GUARANTY

As an inducement to Holiday Hospitality Franchising, LLC ("Licensor") to execute the License dated _____ _June 25, 2015_____ between Licensor and Rick Ly, ("Licensee"), for the Holiday Inn® branded hotel located at 1712 Beach Boulevard, Biloxi, MS 39531, ("License"), the undersigned (sometimes referred to as the "guarantor(s)"), jointly and severally, hereby unconditionally warrant to Licensor and its successors and assigns that all of Licensee's representations in the License and the application submitted by Licensee to obtain the License are true, and guarantee that all of Licensee's obligations under the above License, including any amendments thereto whenever made (all hereafter referred to collectively as the "License"), will be punctually paid and performed.

Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License. Without affecting the obligations of the undersigned under this Guaranty, Licensor may without notice to the undersigned extend, modify or release any indebtedness or obligation of Licensee or any of the guarantor(s), or settle, adjust or compromise any claims against Licensee or any of the guarantor(s). The undersigned waive notice of amendment of the License and notice of demand for payment or performance by Licensee.

Upon the death of an individual guarantor, the estate of such guarantor will be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death, and the obligations of the other guarantors will continue in full force and effect.

The Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the guarantors specifically waives any obligation of Licensor to proceed against Licensee or any money or property held by Licensee or by any other person or entity as collateral security, by way of set off or otherwise. The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the guaranteed obligations is rescinded or must otherwise be restored or returned by Licensor upon the insolvency, bankruptcy or reorganization of Licensee or any of the undersigned, all as though such payment had not been made.

This Guaranty shall become valid as of the Term Commencement Date of the License which is _____ _June 25, 2015_. It shall be deemed made and entered into in the State of Georgia, and the undersigned agree that this Guaranty and the obligations provided for hereunder shall be governed and construed in all respects by the internal laws and decisions (except any conflicts of law provisions) of the State of Georgia, including all matters of construction, validity, enforceability and performance.

To the extent permitted by law, the undersigned (i) consent and submit, at Licensor's election and without limiting Licensor's rights to commence an action in any other jurisdiction, to the personal jurisdiction and venue of any courts (federal, superior, or state) situated in the County of DeKalb, State of Georgia; (ii) waive any claim, defense or objection in any such proceeding based on lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis; and (iii) expressly waive personal service of process and consent to service by certified mail, postage prepaid, directed to the last known address of the undersigned, which service shall be deemed completed within ten (10) days after the date of mailing thereof.

The undersigned agree to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the License, effect termination of this Guaranty or the License, or collect any amounts due under this Guaranty or the License.

IN WITNESS WHEREOF, each of the undersigned has signed this Guaranty under Seal, as of this ___ day date of June 2015.

Witnesses:                                    Guarantors:

_(signature)_

_(notary seal stamp)_
STATE OF MISSISSIPPI
HELEN McK__
ID No
0,100,791
Comm Expires
Dec. 1, 2015
NOTARY PUBLIC
JACKSON COUNTY

_(signature)_

Rick Ly, legal signature
1686 Beach Blvd.
Biloxi, MS 39531
SSN: REDACTED

LA 2015



**InterContinental Hotels Group**

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

July 28, 2017

<u>**VIA EMAIL - italchin@aol.com**</u>

Mr. Rick Ly
1686 Beach Blvd.
Biloxi, MS 39531

**RE:    LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE
        BEEN AMENDED, THE "LICENSE") BETWEEN RICK LY ("LICENSEE")
        AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR")
        FOR THE HOLIDAY INN® BILOXI, MS/#18013 (THE "HOTEL")**

Dear Mr. Ly:

As an accommodation to Licensee, we are pleased to confirm the following changes:

1.      The License is hereby amended by deleting the first sentence of Paragraph
A.5. of Attachment "B" in its entirety, and replacing it with the following:

   Submit for Licensor's review and approval, Final Plans to Licensor on or before
   **August 1, 2017** ("Final Plans" means final versions of the Construction Plans
   including architectural, structural, mechanical, electrical, plumbing, fire protection,
   and other specialty consultant design documents with such detail and containing such
   information as Licensor may additionally request).

2.      The License is hereby amended by deleting the first sentence of Paragraph
B.2. of Attachment "B" in its entirety, and replacing it with the following:

   Licensee must complete Ground Break of the Hotel by **November 10, 2017**. "Ground
   Break" means the completion of the Hotel building foundation through ground-level
   or the completion of the finished ground floor slab.

3.      The License is hereby amended by deleting the first sentence of Paragraph
B.3. of Attachment "B" in its entirety, and replacing it with the following:

   Licensee must submit for Licensor's review and approval any and all signage, shop
   drawings, guest room FF &E and common area FF & E plans and associated
   specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed
   or accredited design professional with commercial building design background, no
   later than **December 10, 2017**.





*IHG® Rewards Club not applicable to Kimpton® Hotels & Restaurants; to be included at a future date

4.      The License is hereby amended by deleting in its entirety Paragraph B.8. of Attachment "B", and replacing it with the following:

Notwithstanding the occurrence of any events constituting force majeure, or any other cause, construction shall be completed and the Hotel shall be furnished, equipped and shall otherwise be made ready to open for business in accordance with the License not later than **August 13, 2019**.

As a convenience for you, this letter will serve as an amendment to the License for the Hotel to reflect the new milestone dates above, unless we receive your written objection within 10 days of the date of this letter. If you so notify us that you are not in agreement with any of the extended milestone dates, then the original milestone dates will remain unchanged.

Please note that this extension does not change or affect in any way any other aspect of the License, and it does not change or affect in any way the Licensee's obligation to continue to comply with other requirements and milestones of the License.

Sincerely,

*David Ferguson*

David Ferguson
Lead Regional Franchise Licensing Specialist
Franchise Licensing and Compliance

**InterContinental Hotels Group**

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

November 8, 2017

**VIA EMAIL - italchin@aol.com**

Rick Q. Ly
1686 Beach Boulevard
Biloxi, MS 39531

RE:   LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE
      BEEN   AMENDED,   THE   "LICENSE")   BETWEEN   RICK   LY,
      INDIVIDUALLY   ("LICENSEE")   AND   HOLIDAY   HOSPITALITY
      FRANCHISING, LLC ("LICENSOR") FOR THE HOLIDAY INN® BILOXI,
      MS/#18013 (THE "HOTEL")

Dear Mr. Ly:

As an accommodation to Licensee, we are pleased to confirm the following changes:

     1.     The License is hereby amended by deleting the first sentence of Paragraph
B.2. of Attachment "B" in its entirety, and replacing it with the following:

> Licensee must complete Ground Break of the Hotel by **May 10, 2018**. "Ground
> Break" means the completion of the Hotel building foundation through ground-level
> or the completion of the finished ground floor slab.

     2.     The License is hereby amended by deleting the first sentence of Paragraph
B.3. of Attachment "B" in its entirety, and replacing it with the following:

> Licensee must submit for Licensor's review and approval any and all signage, shop
> drawings, guest room FF &E and common area FF & E plans and associated
> specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed
> or accredited design professional with commercial building design background, no
> later than **June 10, 2018**.

     3.     The License is hereby amended by deleting in its entirety Paragraph B.8. of
Attachment "B", and replacing it with the following:

> Notwithstanding the occurrence of any events constituting force majeure, or any other
> cause, construction shall be completed and the Hotel shall be furnished, equipped and
> shall otherwise be made ready to open for business in accordance with the License not
> later than **December 10, 2019**.


InterContinental
Hotels Group

      

     

As a convenience for you, this letter will serve as an amendment to the License for the Hotel to reflect the new milestone dates above, unless we receive your written objection within 10 days of the date of this letter. If you so notify us that you are not in agreement with any of the extended milestone dates, then the original milestone dates will remain unchanged.

Please note that this extension does not change or affect in any way any other aspect of the License, and it does not change or affect in any way the Licensee's obligation to continue to comply with other requirements and milestones of the License.

Sincerely,

*Rhett Daugherty*

Rhett Daugherty
Lead Regional Franchise Licensing Specialist
Franchise Licensing and Compliance



**InterContinental Hotels Group**

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

May 16, 2018

**VIA EMAIL - italchin@aol.com**

Rick Q. Ly
1686 Beach Boulevard
Biloxi, MS 39531

**RE:   LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE
       BEEN AMENDED, THE "LICENSE") BETWEEN RICK LY ("LICENSEE")
       AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR")
       FOR THE HOLIDAY INN® BILOXI, MS/#18013 (THE "HOTEL")**

Dear Mr. Ly:

As an accommodation to Licensee, we are pleased to confirm the following changes:

1.       The License is hereby amended by deleting the first sentence of Paragraph
B.2. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must complete Ground Break of the Hotel by **August 10, 2018**. "Ground
Break" means the completion of the Hotel building foundation through ground-level
or the completion of the finished ground floor slab.

2.       The License is hereby amended by deleting the first sentence of Paragraph
B.3. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must submit for Licensor's review and approval any and all signage, shop
drawings, guest room FF &E and common area FF & E plans and associated
specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed
or accredited design professional with commercial building design background, no
later than **September 10, 2018**.

3.       The License is hereby amended by deleting in its entirety Paragraph B.8. of
Attachment "B", and replacing it with the following:

Notwithstanding the occurrence of any events constituting force majeure, or any other
cause, construction shall be completed and the Hotel shall be furnished, equipped and
shall otherwise be made ready to open for business in accordance with the License not
later than **March 10, 2020**.
















*IHG® Rewards Club not applicable to Kimpton® Hotels & Restaurants; to be included at a future date

As a convenience for you, this letter will serve as an amendment to the License for the Hotel to reflect the new milestone dates above, unless we receive your written objection within 10 days of the date of this letter. If you so notify us that you are not in agreement with any of the extended milestone dates, then the original milestone dates will remain unchanged.

Please note that this extension does not change or affect in any way any other aspect of the License, and it does not change or affect in any way the Licensee's obligation to continue to comply with other requirements and milestones of the License.

Sincerely,

*Alex Jewell*

Alex Jewell
Regional Franchise Licensing Specialist
Franchise Licensing and Compliance



**InterContinental Hotels Group**
Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

September 27, 2018

**VIA EMAIL - italchin@aol.com**

Rick Q. Ly
1686 Beach Boulevard
Biloxi, MS 39531

**RE:   LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE
         BEEN AMENDED, THE "LICENSE") BETWEEN RICK LY ("LICENSEE")
         AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR")
         FOR THE HOLIDAY INN® BILOXI, MS/#18013 (THE "HOTEL")**

Dear Mr. Ly:

As an accommodation to Licensee, we are pleased to confirm the following changes:

　　　1.　　The License is hereby amended by deleting the first sentence of Paragraph
B.2. of Attachment "B" in its entirety, and replacing it with the following:

　　　Licensee must complete Ground Break of the Hotel by **February 18, 2019** "Ground
　　　Break" means the completion of the Hotel building foundation through ground-level
　　　or the completion of the finished ground floor slab.

　　　2.　　The License is hereby amended by deleting the first sentence of Paragraph
B.3. of Attachment "B" in its entirety, and replacing it with the following:

　　　Licensee must submit for Licensor's review and approval any and all signage, shop
　　　drawings, guest room FF &E and common area FF & E plans and associated
　　　specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed
　　　or accredited design professional with commercial building design background, no
　　　later than **March 18, 2019**.

　　　3.　　The License is hereby amended by deleting in its entirety Paragraph B.8. of
Attachment "B", and replacing it with the following:

　　　Notwithstanding the occurrence of any events constituting force majeure, or any other
　　　cause, construction shall be completed and the Hotel shall be furnished, equipped and
　　　shall otherwise be made ready to open for business in accordance with the License not
　　　later than **September 17, 2020.**
















*"IHG® Rewards Club not applicable to Kimpton® Hotels & Restaurants; to be included at a future date*

As a convenience for you, this letter will serve as an amendment to the License for the Hotel to reflect the new milestone dates above, unless we receive your written objection within 10 days of the date of this letter. If you so notify us that you are not in agreement with any of the extended milestone dates, then the original milestone dates will remain unchanged.

Please note that this extension does not change or affect in any way any other aspect of the License, and it does not change or affect in any way the Licensee's obligation to continue to comply with other requirements and milestones of the License.

Sincerely,

*J. CH*

J. Chase Harps
Regional Franchise Licensing Specialist
Franchise Licensing and Compliance

## ADDENDUM TO LICENSE AGREEMENT

This Addendum (the "ADDENDUM") is made and entered into as of this 29th day of October 2019, by and between Holiday Hospitality Franchising, LLC, a Delaware limited liability company ("Licensor") and Rick Ly, individualy ("Licensee"). This Addendum supplements that certain License Agreement dated June 25, 2015, between the parties (as same may have been amended, the "License"), relating to a license to operate a Holiday Inn® Biloxi, MS/#18013 (the "Hotel"). To the extent there is any conflict between the License, and this Addendum, this Addendum shall govern and control.

1. The License is hereby amended by deleting the first sentence of Paragraph B.2. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must complete Ground Break of the Hotel by **December 1, 2019** "Ground Break" means the completion of the Hotel building foundation through ground-level of the completion of the finished ground floor slab.

2. The License is hereby amended by deleting the first sentence of Paragraph B.3. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must submit for Licensor's review and approval any and all signage, shop drawings, guest room FF &E and common area FF & E plans and associated specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed or accredited design professional with commercial building design background, no later than **January 1, 2020**.

3. The License is hereby amended by deleting in its entirety Paragraph B.8. of Attachment "B", and replacing it with the following:

Notwithstanding the occurrence of any events constituting force majeure, or any other cause, construction shall be completed and the Hotel shall be furnished, equipped and shall otherwise be made ready to open for business in accordance with the License not later than **January 28, 2021**.

4. Except as expressly stated in this Addendum, no further additions, modifications or deletions to the License are intended by the parties or made by this Addendum. All other terms and conditions of the License are in full force and effect.

(Signatures begin on the following page.)

IN WITNESS WHEREOF, the parties have executed this Addendum as of the day and year first above written:

LICENSEE:

By: _____
    Rick Ly
    Individually

Witness : _____

LICENSOR:

**HOLIDAY HOSPITALITY FRANCHISING, LLC**
By:    Six Continents Hotels, Inc.,
       its sole managing member

       By: _____
           Jenny Tidwell
           Vice President
           Franchise Licensing and Compliance

       Attest: _____
               Asst. Secretary

AGREED AND ACCEPTED THIS 14 DAY OF October , 2019.

**GUARANTOR:**

By: _____          Witness: _____
    Rick Ly



**InterContinental Hotels Group**

Three Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

March 16, 2020

**VIA EMAIL**

Rick Q. Ly
1686 Beach Boulevard
Biloxi, MS 39531

RE:   **LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE BEEN AMENDED, THE "LICENSE") BETWEEN RICK LY, INDIVIDUALLY ("LICENSEE") AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR") FOR THE HOLIDAY INN® BILOXI, MS/#18013 (THE "HOTEL")**

Dear Mr. Ly:

As an accommodation to Licensee, we are pleased to confirm the following changes:

1.     The License is hereby amended by deleting the first sentence of Paragraph B.2. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must complete Ground Break of the Hotel by **July 1, 2020** "Ground Break" means the completion of the Hotel building foundation through ground-level or the completion of the finished ground floor slab.

2.     The License is hereby amended by deleting the first sentence of Paragraph B.3. of Attachment "B" in its entirety, and replacing it with the following:

Licensee must submit for Licensor's review and approval any and all signage, shop drawings, guest room FF &E and common area FF & E plans and associated specifications ("FF & E Specs") to Licensor, as designed and prepared by a licensed or accredited design professional with commercial building design background, no later than **August 1, 2020**.

3.     The License is hereby amended by deleting in its entirety Paragraph B.8. of Attachment "B", and replacing it with the following:

Notwithstanding the occurrence of any events constituting force majeure, or any other cause, construction shall be completed and the Hotel shall be furnished, equipped and shall otherwise be made ready to open for business in accordance with the License not later than **November 16, 2021**.
















*"HG® Rewards Club not applicable to Kimpton® Hotels & Restaurants; to be included at a future date*

As a convenience for you, this letter will serve as an amendment to the License for the Hotel to reflect the new milestone dates above, unless we receive your written objection within 10 days of the date of this letter. If you so notify us that you are not in agreement with any of the extended milestone dates, then the original milestone dates will remain unchanged.

Please note that this extension does not change or affect in any way any other aspect of the License, and it does not change or affect in any way the Licensee's obligation to continue to comply with other requirements and milestones of the License.

Sincerely,

Rhett Daugherty
Lead Regional Franchise Licensing Specialist
Franchise Licensing and Compliance

# Exhibit B

## GUARANTY

As an inducement to Holiday Hospitality Franchising, LLC ("Licensor") to execute the License dated _____ _June 25, 2015_ between Licensor and Rick Ly, ("Licensee"), for the Holiday Inn® branded hotel located at 1712 Beach Boulevard, Biloxi, MS 39531, ("License"),  the undersigned (sometimes referred to as the "guarantor(s)"), jointly and severally, hereby unconditionally warrant to Licensor and its successors and assigns that all of Licensee's representations in the License and the application submitted by Licensee to obtain the License are true, and guarantee that all of Licensee's obligations under the above License, including any amendments thereto whenever made (all hereafter referred to collectively as the "License"), will be punctually paid and performed.

Upon default by the Licensee and notice from Licensor, the undersigned will immediately make each payment and perform each obligation required of Licensee under the License.  Without affecting the obligations of the undersigned under this Guaranty, Licensor may without notice to the undersigned extend, modify or release any indebtedness or obligation of Licensee or any of the guarantor(s), or settle, adjust or compromise any claims against Licensee or any of the guarantor(s).  The undersigned waive notice of amendment of the License and notice of demand for payment or performance by Licensee.

Upon the death of an individual guarantor, the estate of such guarantor will be bound by this Guaranty but only for defaults and obligations hereunder existing at the time of death, and the obligations of the other guarantors will continue in full force and effect.

The Guaranty constitutes a guaranty of payment and performance and not of collection, and each of the guarantors specifically waives any obligation of Licensor to proceed against Licensee or any money or property held by Licensee or by any other person or entity as collateral security, by way of set off or otherwise.  The undersigned further agree that this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time payment of any of the guaranteed obligations is rescinded or must otherwise be restored or returned by Licensor upon the insolvency, bankruptcy or reorganization of Licensee or any of the undersigned, all as though such payment had not been made.

This Guaranty shall become valid as of the Term Commencement Date of the License which is _____ _June 25, 2015_. It shall be deemed made and entered into in the State of Georgia, and the undersigned agree that this Guaranty and the obligations provided for hereunder shall be governed and construed in all respects by the internal laws and decisions (except any conflicts of law provisions) of the State of Georgia, including all matters of construction, validity, enforceability and performance.

To the extent permitted by law, the undersigned (i) consent and submit, at Licensor's election and without limiting Licensor's rights to commence an action in any other jurisdiction, to the personal jurisdiction and venue of any courts (federal, superior, or state) situated in the County of DeKalb, State of Georgia; (ii) waive any claim, defense or objection in any such proceeding based on lack of personal jurisdiction, improper venue, forum non conveniens or any similar basis; and (iii) expressly waive personal service of process and consent to service by certified mail, postage prepaid, directed to the last known address of the undersigned, which service shall be deemed completed within ten (10) days after the date of mailing thereof.

The undersigned agree to pay Licensor all expenses, including reasonable attorneys' fees and court costs, incurred by Licensor, its parents, subsidiaries, affiliates, and their successors and assigns, to remedy any defaults of or enforce any rights under this Guaranty or the License, effect termination of this Guaranty or the License, or collect any amounts due under this Guaranty or the License.

IN WITNESS WHEREOF, each of the undersigned has signed this Guaranty under Seal, as of this _16_ date of _June_ 2015.

Witnesses:                                      Guarantors:

Rick Ly, legal signature
1686 Beach Blvd.
Biloxi, MS 39531
SSN:  REDACTED

35                                                              LA 2015

# Exhibit C

**IHG**®
InterContinental
Hotels Group

July 29, 2020

3 Ravinia Drive
Suite 100
Atlanta, GA 30346-2149
www.ihg.com

**VIA EMAIL- italchin@aol.com**

Attn: Mr. Rick Q. Ly
1686 Beach Boulevard
Biloxi, MS 39531

RE:   **LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE BEEN AMENDED, THE "LICENSE"), BETWEEN RICK LY, INDIVIDUALLY ("LICENSEE") AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR") FOR THE HOLIDAY INN® BILOXI-BEACH, MS/#18013 (THE "HOTEL") NOTICE OF DEFAULT AND TERMINATION**

Dear Mr. Ly:

Licensor has reviewed the License for the proposed Hotel and determined it appropriate to issue a Notice of Default and Termination for failure to commence construction by June 1, 2017, which was subsequently extended to July 1, 2020 by our letter dated March 16, 2020 as required in Attachment B of the License.  In particular, Licensee failed to provide evidence of excavation and poured footings with a finished slab by July 1, 2020.

Therefore, this letter constitutes a thirty (30) day Notice of Default and Termination pursuant to the terms of the License for the reasons stated above and a termination date of **November 6, 2020** has been established on which to terminate the License.

If Licensee fails to provide evidence satisfactory to Licensor of excavation and poured footings with a finished slab by **September 7, 2020**, the License will be terminated on **November 6, 2020**.

In addition, if the License is terminated, Licensee will be subject to the payment of damages and the performance of post-termination obligations.

This notice has no bearing on, and in no way supersedes or affects any current or future default and termination notice, if any, issued by Licensor or any of its affiliated companies relative to the subject hotel.

If you have any questions concerning this matter, please call Hotel Opening Services & Transitions at 866-500-6467.

Sincerely,

Jenny Tidwell
Vice President
Franchise Licensing and Compliance

**IHG**®  Hotels & Resorts


       
      

# Exhibit D

December 16, 2020



**VIA OVERNIGHT COURIER**

Rick Q. Ly
1686 Beach Blvd.
Biloxi, MS 39531

3 Ravinia Drive
Suite 100
Atlanta, GA 30346
www.ihg.com

RE:   LICENSE AGREEMENT DATED JUNE 25, 2015 (AS SAME MAY HAVE BEEN
      AMENDED, THE "LICENSE"), BETWEEN RICK Q. LY, INDIVIDUALLY ("LICENSEE")
      AND HOLIDAY HOSPITALITY FRANCHISING, LLC ("LICENSOR") FOR THE
      HOLIDAY INN® BILOXI - BEACH, MS/#18013 (THE "HOTEL")

Dear Mr. Ly:

By letter dated July 29, 2020, Licensor issued a notice of default and termination based on Licensee's failure to commence construction by June 1, 2017, which was administratively extended through a series of extensions to July 1, 2020 and established a cure date of September 7, 2020 and a termination date of November 6, 2020. As an accommodation to Licensee, Licensor has further administratively extended the established termination date to **March 17, 2021**.

If Licensee fails to provide satisfactory evidence to Licensor of excavation and poured footings with a finished slab by **March 16, 2021**, the License will terminate effective at 3:00p.m. Eastern time on **March 17, 2021**, unless the Franchise Compliance Committee of Licensor further extends the termination date. Please comply immediately with all of the Post-Termination Obligations set forth in Paragraph 12.D. of the License.

This notice in no way supersedes or extends any earlier termination date established in a Default and Termination Notice, if any, issued by Licensor relative to the subject Hotel.

Licensor reserves the right to exercise all rights or remedies it may have under the License or otherwise with respect to the License or the termination, including without limitation liquidated damages pursuant to the License.

Should you have any questions, please let us know.

Sincerely,

Jenny Tidwell
Vice President
Franchise Licensing and Compliance



©2019 IHG. All rights reserved.
Proprietary and confidential – further reproduction or distribution is prohibited.

# Exhibit E

IHG HOTELS & RESORTS

| LIQUIDATED DAMAGES |
|---|
| Holiday Inn - Location: 18013 - Biloxi, MS |

| | |
|---|---|
| Average Daily Revenue Per Available Room: | 42.68 |
| Number of Rooms: | 143 |
| Monthly Revenue: | 185,640.22 |
| Term Commencement Date (Date of License): | 6/25/2015 |
| Termination Date: | 3/17/2021 |
| Interim Period: | 68 months and 20 days |

| Fee Type | Basis | Monthly Amount |
|---|---|---|
| Royalty | 5.00% of GRR | $9,282.01 |
| Services Contribution: | 3.00% of GRR | $5,569.21 |
| Monthly Technology Fee: (Holidex) | $14.65 per room | $2,094.95 |
| Travel agent commission program (TACP) and Other Fees: | 4.40% of GRR | $8,168.17 |
| Total Monthly Fee: | | $25,114.34 |
| | | |
| LD Assessed Period in Months: | 68 months | $1,707,774.91 |
| LD Assessed Period in Days: | 20 days | $16,513.54 |
| Total Liquidated Damages: | | $1,724,288.44 |

# Exhibit F



**KILPATRICK TOWNSEND**

ATTORNEYS AT LAW

KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4528
t 404 815 6500  f 404 815 6555

direct dial 404 815 6474
direct fax 404 541 3427
mtyler@kilpatricktownsend.com

May 18, 2023

**VIA CERTIFIED MAIL-RETURN RECEIPT REQUESTED,
REGULAR MAIL, AND EMAIL**

Mr. Rick Q. Ly
4003 Xavier Court
Ocean Springs, MS  39564-1414
italchin@aol.com

Mr. Rick Q. Ly
1686 Beach Blvd.
Biloxi, MS  39531-5302

Re:   Demand for Payment of Damages Owed for Breach of License Agreement and
Guaranty Related to the Former New Development for the Holiday Inn® Hotel,
Biloxi, Mississippi #18013

Dear Mr. Ly:

This law firm represents Holiday Hospitality Franchising, LLC ("HHFL") in connection with the above-referenced matter.  As you know, you and HHFL were parties to a certain Holiday Inn® Hotel New Development License Agreement, dated June 25, 2015 (together with any amendments, modifications and extensions thereof or thereto, the "License Agreement").  In connection with your execution of the License Agreement, you executed a guaranty, personally guaranteeing the payment and performance of your obligations under the License Agreement (the "Guaranty").  We are writing to demand that you immediately pay the amounts owed by you under the License Agreement and Guaranty.

Pursuant to the License Agreement, you agreed to build a Holiday Inn®-branded hotel to be located at 1712 Beach Boulevard, Biloxi, Mississippi (the "Hotel Property") and, thereafter, to operate the Hotel Property as a Holiday Inn®-branded hotel for a term of twenty years.  You acknowledged in paragraph 14.I of the License Agreement that your "agreement to perform the Work is an essential element of the consideration relied upon by [HHFL] in entering into the [License Agreement]" and "[your] failure to perform the Work in accordance with [HHFL's] requirements and specifications (including the progress, milestone, completion and other dates specified in Attachment 'B' of [the License Agreement]) shall constitute a material breach of [your] obligations under the [License Agreement]."  You further agreed in the License Agreement that, in exchange for authorization to use the Holiday Inn® Hotel System in the operation of the Hotel Property, you would pay HHFL the monthly fees set forth in paragraph 3 of the agreement (the monthly fees are collectively referred to herein as "System Fees").  In addition, you agreed in paragraph 3 of the License Agreement to "promptly pay to [HHFL] all amounts due [HHFL], its parents, subsidiaries and affiliates as royalties or fees, whether or not arising out of th[e] [License Agreement]."

Mr. Rick Q. Ly
May 18, 2023
Page 2

As you know, HHFL was forced to terminate the license on March 17, 2021 after your breach of the agreement by failing to commence construction on the Hotel Property by June 1, 2017 (which was subsequently extended to March 16, 2021), as required under paragraph 14 of and Attachment B to the License Agreement. Your failure to commence construction of the Hotel Property by the extended deadline and complete the Work at the Hotel Property constitutes a material breach of the License Agreement, and, consequently, provides grounds for HHFL's early termination of the agreement.

Under paragraph 14.I, because the License Agreement terminated "prior to the time that [you were] authorized to use the [Holiday Inn®] System at the Hotel," you owe HHFL "liquidated damages, [calculated as] a lump sum equal to the monthly average of all amounts that would have been payable to [HHFL]" as System Fees "assuming the Hotel had collected Gross Rooms Revenue based on the average daily revenue per available room for all hotels in the [Holiday Inn®] System for the previous twelve (12) months, as determined by [HHFL], multiplied by the greater of (a) six (6) or (b) the number of full and partial months from the Term Commencement Date to the termination date of the [License Agreement]." Applying the foregoing formula, you owe HHFL $1,724,288.44 in liquidated damages pursuant to the terms of the License Agreement.

In addition to the foregoing damages, you are liable to HHFL under Georgia law for prejudgment interest, which accrues on the $1,724,288.44 in unpaid liquidated damages at the statutory rate of 7% per annum ($10,058.34 per month; $330.68 per day) from March 17, 2021 (the date of termination of the License Agreement) through the time of judgment. Under the statutory rate, you are liable for $261,847.52[1] in prejudgment interest as of the date of this letter, May 18, 2023.

Pursuant to the Guaranty, as a Guarantor you are also liable to HHFL for the foregoing damages. Specifically, in the Guaranty you "guarantee[d] that all of [your] obligations under the [] [License Agreement] . . . w[ould] be punctually paid and performed." Additionally, as Guarantor, you agreed that, "[u]pon default by [you] and notice from [HHFL]," [you] would "immediately make each payment and perform each obligation required of [you] under the [License Agreement.]"

Accordingly, HHFL demands that you immediately pay all amounts due under the License Agreement and Guaranty, which currently total **$1,986,135.96**, comprised of the unpaid liquidated damages of $1,724,288.44, and prejudgment interest from March 17, 2021 through the time of judgment, which totals $261,847.52 as of May 18, 2023. Pursuant to Georgia law, prejudgment interest accrues on the liquidated damages at the statutory rate of 7% per annum from March 17, 2021, the date of termination of the License Agreement, through the time of judgment.

Please be notified that, if the full balance due is not promptly paid, HHFL intends to file a lawsuit against you to recover all amounts due by you under the License Agreement and Guaranty, and HHFL will seek payment of its attorneys' fees and costs incurred in that lawsuit. However, if you pay the full balance due within ten (10) days of receiving this letter, HHFL will not seek payment of its attorneys' and costs. Accordingly, pursuant to O.C.G.A. § 13-1-11, you are hereby

---

[1] This sum reflects a duration of 26 months and 1 day between March 17, 2021, the date of termination of the License Agreement, and May 18, 2023, the date of this letter.

Mr. Rick Q. Ly
May 18, 2023
Page 3

notified that you have ten (10) days from receipt of this letter to pay in full the outstanding principal and interest amounts due and owing under the License Agreement and Guaranty without incurring attorneys' fees and costs.

Payment of the outstanding amounts owed should be made to "Holiday Hospitality Franchising, LLC" in certified funds or by wire (wiring instructions will be provided upon request) to my attention at the following address:

> Michael W. Tyler
> Kilpatrick Townsend & Stockton LLP
> 1100 Peachtree Street, Suite 2800
> Atlanta, Georgia 30309-4528

We look forward to your prompt attention to this matter.

Very truly yours,

Michael W. Tyler

cc:   Bennett T. Richardson, Esq.
      Dianne Gugliuzza

US2008 21896863 2

# General Civil Case Filing Information Form (Non-Domestic)

**Court**                          County  DeKalb                    Date Filed  5/31/2023
☐ **Superior**                                                                    ‾‾‾‾‾‾‾‾‾‾‾‾‾
☑ **State**                        Docket #  23A02391                              MM-DD-YYYY

**Plaintiff(s)**                                            **Defendant(s)**

Holiday Hospitality Franchising, LLC                        Ly, Rick Q. a/k/a Richard Quan Ly
Last    First    Middle I.  Suffix Prefix  Maiden           Last    First    Middle I.  Suffix Prefix  Maiden

Last    First    Middle I.  Suffix Prefix  Maiden           Last    First    Middle I.  Suffix Prefix  Maiden

Last    First    Middle I.  Suffix Prefix  Maiden           Last    First    Middle I.  Suffix Prefix  Maiden

Last    First    Middle I.  Suffix Prefix  Maiden           Last    First    Middle I.  Suffix Prefix  Maiden

**No. of Plaintiffs** ___1___               **No. of Defendants** ___1___

**Plaintiff/Petitioner's Attorney**        ☐ **Pro Se**

Tyler, Michael W.
Last          First          Middle I.    Suffix

**Bar #** 751152

---

### Check Primary Type (Check only **ONE**)

☑ Contract/Account
☐ Wills/Estate
☐ Real Property
☐ Dispossessory/Distress
☐ Personal Property
☐ Equity
☐ Habeas Corpus
☐ Appeals, Reviews
☐ Post Judgement Garnishment, Attachment, or Other Relief
☐ Non-Domestic Contempt
☐ Tort (If tort, fill in right column)
☐ Other General Civil (Specify) _____
_____

### If Tort is Case Type:
### (Check no more than **TWO**)

☐ Auto Accident
☐ Premises Liability
☐ Medical Malpractice
☐ Other Professional Negligence
☐ Product Liability
☐ Other (Specify)_____
_____

**Are Punitive Damages Pleaded?** ☐ Yes ☐ No

---

☑ I hereby certify that the documents in this filing (including attachments and exhibits) satisfy the requirements for redaction of personal or confidential information in O.C.G.A. 9-11-7.1

STATE COURT OF
DEKALB COUNTY, GA.
5/31/2023 11:42 AM
E-FILED
BY: Monica Gay

23A02391

No. _____

**Date Summons Issued and E-Filed**

5/31/2023

_____
/s/ Monica Gay
_____
Deputy Clerk

Deposit Paid $ _____

**STATE COURT OF DEKALB COUNTY**
**GEORGIA, DEKALB COUNTY**

**SUMMONS**

Holiday Hospitality Franchising, LLC
_____
3 Ravinia Dr., Ste. 100, Atlanta, GA 30346
_____
Plaintiff's name and address

**[ ] JURY**

**vs.**

Rick Q. Ly a/k/a Richard Quan Ly
_____
4003 Xavier Ct, Ocean Springs, MS 39564
_____
Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**   See page 2 for complete service information.

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower,DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:
 Michael W. Tyler, Esq., Kilpatrick Townsend & Stockton LLP
_____
Name
 1100 Peachtree St., Ste. 2800, Atlanta, GA  30309
_____
Address
 404-815-6500                                          751152
_____
Phone Number                                        Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

_____          _____
Defendant's Attorney                                  Third Party Attorney

_____          _____
Address                                                    Address

_____          _____
Phone No.               Georgia Bar No.          Phone No.              Georgia Bar No.

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability          Principal $  1,724,288.44
☑ Contract  ☐ Medical Malpractice                                _____
☐ Legal Malpractice ☐ Product Liability          Interest $   TBD
☐Other                                                                     _____

                                                                Atty Fees $  TBD
                                                                              _____

**To indicate consent to e-service check the box below**

☑(**Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.**

**IN THE STATE COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

**SUMMONS – Page 2**
***Holiday Hospitality Franchising, LLC v.***
***Rick Q. Ly a/k/a Richard Quan Ly***

**Service Addresses:**

**RICK Q. LY a/k/a RICHARD QUAN LY**
4003 Xavier Court
Ocean Springs, Mississippi 39564-1414

**or**

**RICK Q. LY a/k/a RICHARD QUAN LY**
1686 Beach Boulevard
Biloxi, Mississippi 39531-5302

23A02391

Holiday Hospitality Franchisings, LLC v. Rick Q. Ly

SHERIFF'S RETURN

STATE OF MISSISSIPPI
COUNTY OF HARRISON

( X ) I PERSONALLY DELIVERED COPIES OF THE SUMMONS AND COMPLAINT ON
THE _16_ DAY OF _August_ , _2023_ ,
TO_Rick Q. Ly_.

(   ) AFTER EXERCISING REASONABLE DILIGENCE I WAS UNABLE TO DELIVER COPIES
OF THE SUMMONS AND COMPLAINT TO _____. I SERVED THE
SUMMONS AND COMPLAINT ON _____ DAY OF _____, _____, AT THE
USUAL PLACE OF ABODE OF SAID _____ BY LEAVING A TRUE
COPY OF THE SUMMONS AND COMPLAINT WITH _____, WHO IS
THE _____(HERE INSERT WIFE, HUSBAND, SON DAUGHTER OR
OTHER PERSON AS THE CASE MAY BE), A MEMBER OF THE FAMILY OF THE PERSON
SERVED ABOVE THE AGE OF EIGHTEEN YEARS AND WILLING TO RECEIVE THE
SUMMONS AND COMPLAINT,

(   ) I WAS UNABLE TO TO SERVE THE SUMMONS AND COMPLAINT.

_Troy Peterson_ , SHERIFF

HARRISON COUNTY, MISSISSIPPI

BY:_D. McDougal #286_ , DEPUTY SHERIFF

SWORN TO AND SUBSCRIBED BEFORE ME
THIS _16_ DAY OF _August_ , _2023_ .
_Brandy Reid_
NOTARY PUBLIC

MY COMMISSION EXPIRES:_9/11/24_

STATE OF MISSISSIPPI
BRANDY REID
ID# 117734
NOTARY PUBLIC
Comm. Expires
Sept. 11, 2024
JACKSON COUNTY

STATE COURT OF
DEKALB COUNTY, GA.
8/21/2023 3:56 PM
E-FILED
BY: Camille Boknight

**SECOND ORIGINAL**

23A02391

No. _____

**Date Summons Issued and E-Filed**

5/31/2023

_____
/s/ Monica Gay

_____
Deputy Clerk

Deposit Paid $ _____

**STATE COURT OF DEKALB COUNTY**
GEORGIA, DEKALB COUNTY

SCE/16/23/1355

**SUMMONS**

Holiday Hospitality Franchising, LLC
_____

3 Ravinia Dr., Ste. 100, Atlanta, GA 30346
_____
Plaintiff's name and address

**vs.**

[ ] JURY

*I have this day executed the within Writ by Personally serving Rick Q. Ly Richard Quan Ly This is the 16 Day of Aug 20. 23 Troy Peterson, Sheriff By MCDougal #384*

Rick Q. Ly a/k/a Richard Quan Ly
_____

4003 Xavier Ct, Ocean Springs, MS 39564
_____
Defendant's name and address

**TO THE ABOVE-NAMED DEFENDANT:**    See page 2 for complete service information.

You are hereby summoned and required to file with the Clerk of State Court, Suite 230, 2nd Floor, Administrative Tower, DeKalb County Courthouse, 556 N. McDonough Street, Decatur, Georgia 30030 and serve upon the plaintiff's attorney, to wit:
Michael W. Tyler, Esq., Kilpatrick Townsend & Stockton LLP
_____
Name
1100 Peachtree St., Ste. 2800, Atlanta, GA 30309
_____
Address
404-815-6500                                          751152
_____
Phone Number                                          Georgia Bar No.

an **ANSWER** to the complaint which is herewith served upon you, within thirty (30) days after service upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

_____      _____
Defendant's Attorney                 Third Party Attorney

_____      _____
Address                              Address

_____      _____
Phone No.          Georgia Bar No.   Phone No.          Georgia Bar No.

**TYPE OF SUIT**

☐ Personal Injury ☐ Products Liability
☑ Contract ☐ Medical Malpractice
☐ Legal Malpractice ☐ Product Liability
☐ Other

Principal $ 1,724,288.44

Interest $ TBD

Atty Fees $ TBD

**To indicate consent to e-service check the box below**

☑(Plaintiff consents to e-service pursuant to OCGA 9-11-5 (f). The email address for service appears in the complaint.

*Harrison County Sheriff
Troy Peterson, Sheriff
AUG 14 2023 1008
By _____ DS*

E-file summons1-2014

**STATE COURT OF
DEKALB COUNTY, GA.**
**5/31/2023 11:42 AM**
**E-FILED**
**BY: Monica Gay**

2-0003 79109

**IN THE STATE COURT OF DEKALB COUNTY
STATE OF GEORGIA**

**SUMMONS – Page 2**
*Holiday Hospitality Franchising, LLC v.
Rick Q. Ly a/k/a Richard Quan Ly*

**Service Addresses:**

**RICK Q. LY a/k/a RICHARD QUAN LY**
4003 Xavier Court
Ocean Springs, Mississippi 39564-1414

**or**

**RICK Q. LY a/k/a RICHARD QUAN LY**
1686 Beach Boulevard
Biloxi, Mississippi 39531-5302