IN THE UNITED STATES DISTRICT COURT
FOR THE  NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CASSANDRA THOMPSON,<br><br>   Plaintiff,<br><br>v.<br><br>CHEROKEE COUNTY DIVISION OF FAMILY AND CHILDREN SERVICES,<br><br>   Defendant. | Civil Action No.<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

COMES NOW, Cassandra Thompson ("Plaintiff" or "Ms. Thompson"), by and through her undersigned counsel, and files this, her Complaint for Damages, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Cherokee County Division of Family and Children Services ("Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq..

1

## JURISDICTION AND VENUE

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. § 2000e-5(f), and 28 U.S.C. §§ 1343.

3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII, and the ADA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2023; the EEOC issued its Notice of Right to Sue on August 8, 2023.

5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## **PARTIES**

6.

Plaintiff is a Female citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

During the relevant time period, Ms. Thompson was employed by Defendant.

8.

Defendant is a county-level government entity that operates in this District.

9.

At all times material hereto, Defendant operated in this District.

10.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4). Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*., in that she had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her request for FMLA. During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under the ADA. Defendant is therefore covered under the ADA in accordance with 42 U.S.C. § 12111(5).During all times relevant hereto, Defendant has employed fifteen (15) or more employees for the requisite duration under the Title VII.

Defendant is therefore covered under Title VII in accordance with 42 U.S.C. § 2000e(b). During all times relevant hereto, Defendant has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

11.

In accordance with Federal Rule of Civil Procedure 4, Defendant may be served through its County Manager, Geoff Morton, at 1130 Bluffs Parkway, Canton, GA, 30114.

## **FACTUAL ALLEGATIONS**

12.

On or about March 16, 2022, Ms. Thompson began working for Defendant. Her last position was Social Service Specialist/Case Manager working primarily from home.

13.

A month later, Ms. Thompson learned that she was pregnant with her first child and informed Defendant.

14.

Ms. Thompson's pregnancy was considered high risk, so she was treated by a specialist.

15.

On or about September 2022, Ms. Thompson told her immediate supervisor, Christine Ortiz ("Ortiz"), that her caseload was stressful and completing her task was difficult because of issues with her work computer.

16.

Ms. Thompson asked Ms. Ortiz to lower her case load but Ms. Ortiz did not want to lower her caseload.

17.

On or about September 15, 2022, Ms. Thompson expressed her concerns to Ms. Ortiz's manager, Malissa Rich ("Ms. Rich").

18.

On or around September 27, 2022, Ms. Rich informed Ms. Thompson that she would be on a Work Plan and be required to come into the office daily to take notes on other employees' laptops.

19.

Ms. Rich did it under the guise that it was intended to help Ms. Thompson.

20.

But the Work Plan only added to Ms. Thompson's workload because she lived an hour away and other employees were not required to work in the office regularly.

21.

Ms. Thompson reported to Ms. Rich that it felt like she was being reprimanded because she did not have a lot of money to commute to the office daily and no one else was required to go into the office every day to complete their notes.

22.

Ms. Thompson followed Defendant's instructions in the work plan and went to work, but the other employees were not present for her to use their computers.

23.

Thus, Ms. Thompson went weeks without a work computer.

24.

While Ms. Thompson was at the office one day waiting for a computer to complete her notes, a supervisor suggested that Defendant provide Ms. Thompson with a loaner computer.

25.

The next day Defendant provided Ms. Thompson with a loaner computer.

26.

During this time, Ms. Thompson was homeless, and in response, Defendant gave her information about EAP services.

27.

Along with that information, Defendant issued Ms. Thompson her first warning.

28.

On or around October 7, 2022, Ms. Thompson requested FMLA leave since HR had previously informed her that it would be approved.

29.

Ms. Thompson requested FMLA leave to start November 21, 2022.

30.

On or about October 14, 2022, Ms. Thompson went to the hospital.

31.

On or about October 15, 2022, Ms. Thompson's doctor faxed her medical documentation to Naomi Matthews regarding her FMLA leave.

32.

Ms. Thompson was on sick leave until October 25, and returned to work on October 26, 2022.

33.

Ms. Thompson's doctor provided a note stating that she was seen in their office on October 25, 2022.

34.

On or about October 30, 2022, Defendant questioned whether Ms. Thompson was coming into the office on time and issued her a final warning.

35.

On or around November 1, 2022, Ms. Thompson's doctor faxed her completed FMLA documentation to Defendant.

36.

On or around November 3, 2022, Ms. Thompson submitted additional medical documentation to Defendant, which again listed her medical restrictions.

37.

From November 21, 2022, through December 12, 2022, Ms. Thompson was on FMLA leave.

38.

Ms. Thompson gave birth to her first child, a baby girl, on November 22, 2022.

39.

On or about December 8, 2022, Defendant denied Ms. Thompson's FMLA leave and said she needed to report to work on January 9, 2023.

40.

Ms. Thompson's doctor said she would need an accommodation to be off from work until January 22, 2023.

41.

On or around January 19, 2023, the Department of Labor ("DOL") began an investigation into Ms. Thompson's FMLA qualification.

42.

On or about January 23, 2023, Defendant asked Ms. Thompson to return to work because they did not have remote work for her to perform.

43.

On or about January 25, 2023, the DOL confirmed that Ms. Thompson was eligible for FMLA leave and on January 26, 2023, Defendant told Ms. Thompson to ignore the denial letter they previously sent and to resume her leave on January 27, 2023.

44.

From January 27, 2023, through February 21, 2023, Ms. Thompson was on approved leave of absence.

45.

On February 21, 2023, Ms. Thompson returned to work.

46.

When she returned, Defendant asked Ms. Thompson to drive four hours to bring a client their shoes and other items. Ms. Thompson was unable to drive the

distance because her car would not make it but stated that she could do it with a rental.

47.

Defendant said that they could provide Ms. Thompson with a rental car, but then realized it would be cheaper for Rebecca Mullinax, the Administrative Secretary, to just mail the items off.

48.

Later that day, CEO Brooke Ford and Kristin Walker from HR, requested a meeting with Ms. Thompson.

49.

During the meeting, Ms. Thompson learned that she was terminated.

50.

In response, Ms. Thompson asked why she was being terminated and if she had done something wrong.

51.

Ms. Ford and Ms. Walker refused to answer her question and stated that they were not going to argue with her and proceeded to offer Ms. Thompson a box to pack her things.

52.

Ms. Thompson later learned that the separation notice stated that Ms. Thompson failed to follow instructions.

53.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text. Ms. Thompson was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e., pregnant.

54.

Defendant interfered with Ms. Thompson's rights under the Family and Medical Leave Act by terminating her employment while she was on medical leave for her serious health condition.

55.

Defendant retaliated against Ms. Thompson for requesting medical leave by terminating her employment as a result of needing an accommodation.

56.

Others outside the Ms. Thompson's protected class, i.e. employees not needing and/or requesting an accommodation, were treated differently.

57.

Ms. Thompson was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

58.

Ms. Thompson requested a reasonable accommodation of her disabilities.

59.

Specifically, Ms. Thompson requested FMLA leave.

60.

Defendant terminated Ms. Thompson because she had a record of a disability and/or because it regarded her as disabled and/or because she engaged in protective activity.

61.

But for Ms. Thompson's disability status and/or request for a reasonable accommodation of the same, she would not have suffered the adverse employment action.

62.

Ms. Thompson was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e. non-disabled employees and/or employees who did not request a reasonable accommodation for their disability.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

63.

Plaintiff re-alleges paragraphs 12-62 as if set forth fully herein.

64.

Plaintiff had a physical impairment that substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, working, and standing.

65.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

66.

Defendant was aware of Plaintiff's disability.

67.

Defendant regarded Plaintiff as having a disability such that she is a person with a disability and/or perceived disability within the meaning of the ADA, as amended.

68.

Plaintiff has a record of having a disability and/or perceived disability such that she is a person with a disability within the meaning of the ADA, as amended.

69.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

70.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

71.

Defendant terminated Plaintiff's employment because of her accommodation requests.

72.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

73.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext for disability discrimination.

74.

Defendant treated other employees outside Plaintiff's protected class differently.

14

75.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

76.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

77.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

78.

As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

79.

As a result of Defendant's discriminatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

80.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADA, as amended.

81.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

82.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  RETALIATION IN VIOLATION OF THE ADA, AS AMENDED

83.

Plaintiff re-alleges paragraphs 12-62 as if set forth fully herein.

84.

Plaintiff has a physical impairment that substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, and standing.

85.

Plaintiff's physical impairment is a "disability" within the meaning of the ADA, as amended.

86.

Defendant was aware of Plaintiff's disability.

87.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

88.

Defendant terminated Plaintiff for requesting an accommodation for her disability and/or perceived disability.

89.

Plaintiff's request for an accommodation of her disability and/or perceived disability constitutes protected conduct under the ADA, as amended.

90.

Defendant retaliated against Plaintiff by terminating her employment on the basis of her request for an accommodation.

91.

Defendant terminated Plaintiff's employment within a close temporal proximity to Plaintiff's accommodation requests.

92.

Defendant's proffered reasons for terminating Plaintiff's employment are a pretext designed to hide Defendant's retaliatory motive.

93.

Defendant's retaliatory actions against Plaintiff were in violation of the ADA, as amended.

94.

Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's retaliation against Plaintiff was undertaken in bad faith.

95.

As a result of Defendant's retaliatory actions against Plaintiff, she has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

96.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation, and all other relief recoverable under the ADA, as amended.

97.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

98.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT III:  PREGNANCY DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT / TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

99.

Plaintiff re-alleges paragraphs 12-62 as if set forth fully herein.

100.

When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

101.

Defendant's actions in subjecting Plaintiff to different terms and conditions of employment because of her pregnancy constitutes unlawful discrimination on the

basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

102.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

103.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her pregnancy.

104.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made victims of acts that have adversely affected her psychological and physical well-being.

105.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT IV:  FMLA RETALIATION

106.

Plaintiff re-alleges paragraphs 12-62 as if set forth fully herein.

107.

Defendant is an 'employer' as defined by the FMLA.

108.

Plaintiff was an eligible employee under the FMLA.

109.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding their request for medical leave pursuant to the FMLA.

110.

Plaintiff was employed by Defendant for more than 12 months.

111.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

112.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

21

113.

Plaintiff had a medical condition that required Plaintiff to take time off work.

114.

Plaintiff had a serious medical condition as defined by the FMLA.

115.

Defendant received notice of Plaintiff's need for protected medical leave for their medical condition on or around September 15, 2022.

116.

Defendant terminated Plaintiff's employment because of her request for medical leave, and/or to avoid having to accommodate Plaintiff's respective rights to protected medical leave.

117.

Defendant's termination of Plaintiff's employment was causally related to their attempt to exercise her rights to protected medical leave pursuant to the FMLA.

118.

Defendant's termination of Plaintiff's employment for alleged policy violations constitutes unlawful retaliation against Plaintiff for their attempt to exercise their rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

119.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation, and approval of said acts;

(c) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(d) Reasonable attorney's fees and expenses of litigation;

(e) Trial by jury as to all issues;

(f) Prejudgment interest at the rate allowed by law;

(g) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(h) All equitable relief available under the FMLA, including injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(i) All other relief to which she may be entitled.

Respectfully submitted this 14th day of September 2023.

**BARRETT & FARAHANY**

/s/ *Ianna O. Richardson*

Ianna O. Richardson
Georgia Bar No. 655153

*Counsel for Plaintiff*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
ianna@justiceatwork.com