## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## (ATLANTA DIVISION)

| | | |
|---|---|---|
| NORTHPOINT COMMERCIAL FINANCE LLC, a Delaware limited liability company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TIME OUT COMMUNITIES, LLC, a Delaware limited liability company, TOPPOS LLC, a Delaware limited liability company, NEIL CARMICHAEL BENDER, II, individually, TIME OUT PROPERTIES, LLC, a Delaware limited liability company, TOP PARK SERVICES LLC, a Delaware limited liability company, ABBOT PARK MHC LLC, a North Carolina limited liability company, ALAMAC VILLAGE MHP LLC, a North Carolina limited liability company, CADILLAC RANCH MHC LLC, a North Carolina limited liability company, BRITTANY COURT MHP LLC, an Illinois limited liability company, BULLOCK MHP LLC, a North Carolina limited liability company, CEDARBROOK ESTATES MHP LLC, an Illinois limited liability company, CENTRAL PARK 2 MHP LLC, a North Carolina limited liability company, CENTRAL PARK 3 MHP LLC, a North Carolina limited liability company, CITY VIEW MHC LLC, an | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL ACTION NO. _____ |

Illinois limited liability company,           )
EAGLEWOOD MHP LLC, a North          )
Carolina limited liability company,          )
GRAND VALLEY MHP LLC, an            )
Illinois limited liability company,          )
LITTLEFIELD VILLAGE MHP LLC,     )
a North Carolina limited liability          )
company, MAPLE CREEK MHP LLC,    )
an Illinois limited liability company,      )
COUNTRYSIDE MHC LLC, a North      )
Carolina limited liability company,          )
EASTVIEW MHC LLC, a North          )
Carolina limited liability company,          )
PINE RUN PARK MHP LLC, a North    )
Carolina limited liability company,          )
PRAIRIE KNOLLS MHP LLC, an          )
Illinois limited liability company,          )
ROLLING ACRES MHC LLC, an          )
Illinois limited liability company,          )
SCOTTSDALE MHP LLC, an Illinois    )
limited liability company, TAYLOR     )
PARK MHC LLC, a North Carolina      )
limited liability company,          )
WAYNESVILLE PLANTATION MHP    )
LLC, a North Carolina limited liability   )
company, WEST ESTATES MHC LLC,    )
a North Carolina limited liability          )
company, WYSTERIA VILLAGE         )
MHC LLC, a North Carolina limited      )
liability company, PATCH PLACE        )
MHC LLC, an Ohio limited liability      )
company, DOGWOOD MHC, LLC, a     )
North Carolina limited liability          )
company, LAIKEN ESTATES MHC,       )
LLC, a North Carolina limited liability   )
company, SCHOOLVIEW MHC, LLC,    )
a North Carolina limited liability          )
company, TURNER PARK MHC, LLC,  )

**a North Carolina limited liability** )
**company, VICTORIA ESTATES MHC,** )
**LLC, a North Carolina limited liability** )
**company, RIDGEFIELD MHC LLC, a** )
**North Carolina limited liability** )
**company, PLEASANT HOPE MHC** )
**LLC, a North Carolina limited liability** )
**company, TIME OUT MHP, LLC, a** )
**Delaware limited liability company,** )
**CAPE FEAR MHC LLC, a North** )
**Carolina limited liability company,** )
**GREEN PINES MHC LLC, a North** )
**Carolina limited liability company,** )
**PINE LOG MHC LLC, a North** )
**Carolina** )
**limited liability company, PINEWOOD** )
**MHC LLC, a North Carolina limited** )
**liability company, TAYLOR'S BRIDGE** )
**MHC LLC, a North Carolina limited** )
**liability company, WHITE SANDS** )
**MHC LLC, a North Carolina limited** )
**lability company, BAYSIDE MHC** )
**LLC, a North Carolina limited liability** )
**company, and AFFORDABLE** )
**RESORTS LLC, a North Carolina** )
**limited liability company,** )
)
       **Defendants.** )

## COMPLAINT REQUESTING DAMAGES, APPOINTMENT OF RECEIVER AND OTHER LEGAL AND EQUITABLE RELIEF

**COMES NOW** Northpoint Commercial Finance LLC ("Northpoint"), and

for its Complaint against the defendants identified herein (each a "Defendant" and

collectively, the "Defendants"), states as follows:

## JURISDICTION AND VENUE

1.      Plaintiff Northpoint is a limited liability company organized under the laws of the State of Delaware.  Northpoint's sole member is NCF Commercial Finance Holdings Inc. ("NCF"), a corporation formed under the laws of the State of Delaware.  NCF's principal place of business is in Alpharetta, Georgia.

2.      Defendant Neil Carmichael Bender, II ("Bender"), is an adult citizen of the State of Florida. On information and belief, Bender resides in Broward County, Florida.

3.      Defendant Time Out Communities, LLC ("Time Out") is a limited liability company organized under the laws of the State of Delaware. On information and belief, Bender is the sole member of Time Out.

4.      Defendant TOPPOS LLC ("TOPPOS") is a limited liability company organized under the laws of the State of Delaware. On information and belief, Bender is the sole member of TOPPOS.

5.      Defendant Time Out Properties, LLC is a limited liability company organized under the laws of the State of Delaware. On information and belief, Bender is the sole member of Time Out Properties, LLC.

6.      Defendant Top Park Services LLC is a limited liability company organized under the laws of the State of Delaware. On information and belief, Bender is the sole member of Top Park Services LLC.

7.      Defendant Abbot Park MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Abbot Park MHC LLC.

8.      Defendant Alamac Village MHP LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Alamac Village MHP LLC.

9.      Defendant Cadillac Ranch MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Cadillac Ranch MHC LLC.

10.     Defendant Brittany Court MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Brittany Court MHP LLC.

11.     Defendant Bullock MHP LLC is a limited liability company organized under the laws of the State of North Carolina.  On information and belief, Bender is the sole member of Bullock MHP LLC.

12.     Defendant Cedarbrook Estates MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Cedarbrook Estates MHP LLC.

13.     Defendant Central Park 2 MHP LLC is a limited liability company organized under the laws of the State of North Carolina.  On information and belief, Bender is the sole member of Central Park 2 MHP LLC.

14.     Defendant Central Park 3 MHP LLC is a limited liability company organized under the laws of the State of North Carolina.  On information and belief, Bender is the sole member of Central Park 3 MHP LLC.

15.     Defendant City View MHC LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of City View MHC LLC.

16.     Defendant Eaglewood MHP LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Eaglewood MHP LLC.

17.     Defendant Grand Valley MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Grand Valley MHP LLC.

18.    Defendant Littlefield Village MHP LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Littlefield Village MHP LLC.

19.    Defendant Maple Creek MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Maple Creek MHP LLC.

20.    Defendant Countryside MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Countryside MHC LLC.

21.    Defendant Eastview MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Eastview MHC LLC.

22.    Defendant Pine Run Park MHP LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Pine Run Park MHP LLC.

23.    Defendant Prairie Knolls MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Prairie Knolls MHP LLC.

24.     Defendant Rolling Acres MHC LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Rolling Acres MHC LLC.

25.     Defendant Scottsdale MHP LLC is a limited liability company organized under the laws of the State of Illinois. On information and belief, Bender is the sole member of Scottsdale MHP LLC.

26.     Defendant Taylor Park MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Taylor Park MHC LLC.

27.     Defendant Waynesville Plantation MHP LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Waynesville Plantation MHP LLC.

28.     Defendant West Estates MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of West Estates MHC LLC.

29.     Defendant Wysteria Village MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Wysteria Village MHC LLC.

**30.**     Defendant Patch Place MHC LLC is a limited liability company organized under the laws of the State of Ohio. On information and belief, Bender is the sole member of Patch Place MHC LLC.

**31.**     Defendant Dogwood MHC, LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Dogwood MHC, LLC.

**32.**     Defendant Laiken Estates MHC, LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Laiken Estates MHC, LLC.

**33.**     Defendant Schoolview MHC, LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Schoolview MHC, LLC.

**34.**     Defendant Turner Park MHC, LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Turner Park MHC, LLC.

**35.**     Defendant Victoria Estates MHC, LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Victoria Estates MHC, LLC.

**36.** Defendant Ridgefield MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Ridgefield MHC LLC.

**37.** Defendant Pleasant Hope MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Pleasant Hope MHC LLC.

**38.** Defendant Time Out MHP, LLC is a limited liability company organized under the laws of the State of Delaware. On information and belief, Bender is the sole member of Time Out MHP, LLC.

**39.** Defendant Cape Fear MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Cape Fear MHC LLC.

**40.** Defendant Green Pines MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Green Pines MHC LLC.

**41.** Defendant Pine Log MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Pine Log MHC LLC.

42.     Defendant Pinewood MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Pinewood MHC LLC.

43.     Defendant Taylor's Bridge MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Taylor's Bridge MHC LLC.

44.     Defendant White Sands MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of White Sands MHC LLC.

45.     Defendant Bayside MHC LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Bayside MHC LLC.

46.     Defendant Affordable Resorts LLC is a limited liability company organized under the laws of the State of North Carolina. On information and belief, Bender is the sole member of Affordable Resorts LLC.

47.     This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship and the amount in controversy is in excess of $75,000.00.

48.     Venue is proper pursuant to 28 U.S.C. § 1391.

**49.**    Additionally, all Defendants expressly consented in writing to the jurisdiction of the federal courts located in the State of Georgia and have waived any objection to venue in this Court of any suit arising under the subject loan documents described herein.

## STATEMENT OF FACTS

**A.    Introduction.**

**50.**    Northpoint provides businesses across North America flexible financing options such as inventory finance and asset-based lending to support their business growth needs.

**51.**    The Defendants are in the manufactured home business.

**52.**    Between May 2020 and June 2023, Northpoint financed Time Out's purchase of hundreds of manufactured homes.

**53.**    Northpoint also financed a rental line for TOPPOS to purchase manufactured homes, including from its affiliate Time Out. In turn, TOPPOS leases manufactured homes to certain of the other Defendants that own and operate manufactured home communities in North Carolina and Illinois.

**54.**    Bender and the Other Defendants (as defined in footnote 2 below) also guaranteed Time Out's and TOPPOS's obligations to Northpoint.

55.     The Defendants are in default of their obligations to Northpoint for, among other things, failure to make timely payments.

56.     The obligations owing to Northpoint are secured by the financed manufactured homes and substantially all other assets of TOPPOS and Time Out.

57.     As of the filing of this Complaint, the Defendants have possession of 607 manufactured homes that Northpoint financed.

58.     The total loan balance owing to Northpoint is no less than $23,020,143.20. Interest, attorneys' fees, and costs continue to accrue. Defendants are jointly and severally liable for all amounts due and owing to Northpoint.

59.     Northpoint files this Complaint seeking a money judgment against all Defendants and for other legal and equitable relief to assist Northpoint in recovering and selling its loan collateral.

**B.      The Loan and Security Agreement.**

60.     Northpoint and Time Out are parties to a certain *Loan and Security Agreement* dated May 18, 2020 (the "May 2020 Loan and Security Agreement"). A true and correct copy of the May 2020 Loan and Security Agreement is attached hereto as **Exhibit A** and incorporated by reference.

61.     Pursuant to the May 2020 Loan and Security Agreement, and other agreements among Northpoint and Time Out, Northpoint advanced funds to Time

Out for Time Out's acquisition, financing, and/or refinancing of manufactured home inventory. This type of lending is commonly referred to as a "floor plan line."

62.    On January 4, 2022, Northpoint, Time Out, and TOPPOS executed that certain *Addendum to Loan and Security Agreement (Joinder)* (the "January 2022 Joinder"). A true and correct copy of the January 2022 Joinder is attached hereto as **Exhibit B** and incorporated by reference.

63.    As reflected in the January 2022 Joinder, Time Out and TOPPOS requested that Northpoint add TOPPOS as a "Borrower" to the May 2020 Loan and Security Agreement.

64.    TOPPOS and Time Out also executed an *Addendum to Loan and Security Agreement* dated January 4, 2022 (the "January 2022 Addendum").  A true and correct copy of the January 2022 Addendum is attached hereto as **Exhibit C** and incorporated by reference.

65.    The May 2020 Loan and Security Agreement, as amended by the January 2022 Joinder and January 2022 Addendum, is referred to herein as the "Loan and Security Agreement."

66.    In particular, TOPPOS requested financing from Northpoint to purchase manufactured homes, including purchases from Time Out. TOPPOS's

manufactured homes would then be rented to third parties, including other Defendants that are affiliates of Time Out and TOPPOS. This financing arrangement is referred to as the "rental line."

67.     Pursuant to the Loan and Security Agreement, Time Out and TOPPOS are jointly and severally liable for all obligations owing to Northpoint under the Loan and Security Agreement. Accordingly, Time Out and TOPPOS are individually and collectively referred to herein as "Borrowers."

68.     To secure their obligations owing to Northpoint, and as set forth in the Loan and Security Agreement, the Borrowers granted Northpoint blanket liens and security interests against Borrowers' personal and fixture property of every kind and nature whether then owned or later acquired.

69.     Northpoint has perfected its security interests in Borrowers' assets via UCC Financing Statements describing the collateral as "All assets of Debtor whether now owned or hereafter acquired or arising." True and correct copies of Northpoint's recorded UCC Financing Statements are attached hereto as **Exhibit D** and incorporated by reference.

70.     Northpoint has also perfected its interests in TOPPOS's financed manufactured homes with certificates of title by having Northpoint's lien noted on such certificates of title under applicable law.[1]

71.     All property securing Borrowers' obligations to Northpoint is referred to herein as "Northpoint's Collateral."

**C.      Financing Terms Under the Floor Plan Line.**

72.     Northpoint's terms for financing the purchase of a manufactured home on the floor plan line is set forth in a statement of financial transaction ("SOFT") that is provided to Borrowers at the time of financing.

73.     In general, Northpoint's floor plan line financing terms were consistent with a proposal letter executed by Time Out on April 1, 2020. A true and correct copy of this letter is attached as **Exhibit E.**

74.     As contemplated in the Loan and Security Agreement, the terms of any SOFT provided to Borrowers at the time of a floor plan line financing govern if inconsistent with the April 1, 2020 proposal letter.

75.     Manufactured homes financed on the floor plan line were to be repaid on these general terms (unless otherwise specified in a SOFT):

---

[1]     As of the date of filing this Complaint, Northpoint financed 248 rental and 14 used manufactured homes that have certificates of title. Northpoint has omitted copies of the voluminous certificates of title from this Complaint.

a.  Northpoint finances 100% of invoice cost, including freight.

b.  All financed amounts are due when the manufactured home is sold or at maturity. Financing matures and due in full 720 days after funding.

c.  Interest due on the 15th of the month and curtailment payments (which reduce the principal balance of the financing) due on the 25th of the month.

d.  Between days 1 and 360, interest accrues at a rate of LIBOR (converted to SOFR +.1145% on April 1, 2022) plus 4.65% up to 5.25%, depending upon average daily balance on account during the month.

e.  Between days 361 and 720, interest accrues at a rate of LIBOR (converted to SOFR +.1145% on April 1, 2022) plus 6.15% up to 6.75%, depending upon average daily balance on account during the month.

f.  No curtailment payments (which reduce the principal balance of the financing) until the twelfth month, then 3% monthly thereafter.

**76.**   Northpoint also financed Time Out's acquisition of used manufactured homes.

**77.**   In general, Northpoint's used floor plan line financing terms were consistent with a proposal letter executed by Time Out on March 4, 2022. A true and correct copy of this letter is attached as **Exhibit F.**

**78.**   As contemplated in the Loan and Security Agreement, the terms of any SOFT provided to Borrowers at the time of a used floor plan line financing govern if inconsistent with the March 4, 2022 proposal letter.

79.    Manufactured homes financed on the used floor plan line were to be repaid on these general terms (unless otherwise specified in a SOFT):

    a.  Northpoint finances greater of payoff amount owed to current Northpoint or 90% of wholesale value of manufactured home.

    b.  Financing matures and due in full 360 days after funding.

    c.  Monthly interest payments.

    d.  Interest accrues at a rate between Benchmark Rate (as defined in the March 4, 2022 letter) plus 5.90% up to 6.65%, depending upon Borrowers' principal balance with Northpoint.

    e.  Any units that reach maturity accrue interest at Benchmark Rate plus 8.00%

    f.  7.00% curtailment payments (which reduce the principal balance of the financing) every 90 days for the first twelve months, then 7.00% monthly curtailment thereafter.

80.    As of August 31, 2023, Northpoint has outstanding loans for 345 manufactured homes on the new floor plan line and 14 manufactured homes on the used floor plan line.

81.    As of August 31, 2023 Borrowers owe $13,934,723.49 to Northpoint on the floor plan line (both new and used units), consisting of principal in the amount of $13,254,607.93 and interest (including default interest) in the amount of $680,115.56. Interest, costs, attorneys' fees, and other recoverable expenses continue to accrue.

82.    Borrowers' obligations to Northpoint on the floor plan line are secured by Northpoint's UCC financing statements and notation of Northpoint's liens on the certificates of title for used units.

**D.    Financing Terms Under the Rental Line.**

83.    Much like the floor plan line, Northpoint's terms for financing the purchase of a manufactured home on the rental line were set forth in a SOFT that was provided to Borrowers at the time of financing.

84.    In general, Northpoint's rental line financing terms were consistent with a proposal letter executed by TOPPOS on January 18, 2022. A true and correct copy of this letter is attached as **Exhibit G.**

85.    As contemplated in the Loan and Security Agreement, the terms of any SOFT provided to Borrowers at the time of a rental line financing govern if inconsistent with the January 18, 2022 proposal letter.

86.    Manufactured homes financed on the rental line were to be repaid on these general terms (unless otherwise specified in a SOFT):

  a.  Northpoint would finance between 90% and 100% of cost.

  b.  Financing matures and due in full 10 years after funding.

  c.  Monthly interest and principal curtailment payments (which reduce the principal balance of the financing).

d. Interest accrues at a rate between Benchmark Rate (as defined in the January 18, 2022 letter) plus 5.90% up to 6.65%, depending upon Borrowers' principal balance with Northpoint (and subject to rates being fixed for certain terms).

e. Monthly principal curtailment payments (which reduce the principal balance of the financing) starting at .35% and increasing yearly up to .61%.

87.    As of August 31, 2023, Northpoint has outstanding loans for 248 manufactured homes on the rental line.

88.    As of August 31, 2023 Borrowers owe $9,085,419.71 to Northpoint on the rental line, consisting of principal in the amount of $8,725,592.43 and interest (including default interest) in the amount of $359,827.28. Interest, costs, attorneys' fees, and other recoverable expenses continue to accrue.

89.    Borrowers' obligations to Northpoint on the rental line are secured by Northpoint's UCC financing statements and notation of Northpoint's liens on the certificates of title for financed rental units.

**E.    Bender Guaranteed the Borrowers' Obligations.**

90.    Bender is the sole member and manager of the Borrowers and the other Defendants.

91.    To induce Northpoint to make its loans to the Borrowers, Bender "unconditionally, absolutely, and irrevocably guarantee[d] to Northpoint, without

off-set or deduction, the prompt payment and performance of all indebtedness, obligations and liabilities" of Borrowers under the Loan and Security Agreement.

**92.** Bender's guarantee of Borrowers' obligations is evidenced by that certain Guaranty dated May 18, 2020 (the "Bender 2020 Guaranty") and that certain Guaranty dated January 4, 2022 (the "Bender 2022 Guaranty" and, collectively with the Bender 2020 Guaranty, the "Bender Guarantees").

**93.** A true and correct copy of the Bender 2020 Guaranty is attached hereto as **Exhibit H** and incorporated by reference.

**94.** A true and correct copy of the Bender 2022 Guaranty is attached hereto as **Exhibit I** and incorporated by reference.

**F.    The Other Defendants Guaranteed the Borrowers' Obligations.**

**95.** The Defendants other than Bender and the Borrowers (collectively, the "Other Defendants") are also affiliates of the Borrowers based on Bender's common ownership.[2]

---

[2]      The "Other Defendants" are: Time Out Properties, LLC, Top Park Services LLC, Abbot Park MHC LLC, Alamac Village MHP LLC, Cadillac Ranch MHC LLC, Brittany Court MHP LLC, Bullock MHP LLC, Cedarbrook Estates MHP LLC, Central Park 2 MHP LLC, Central Park 3 MHP LLC, City View MHC LLC, Eaglewood MHP LLC, Grand Valley MHP LLC, Littlefield Village MHP LLC, Maple Creek MHP LLC, Countryside MHC LLC, Eastview MHC LLC, Pine Run Park MHP LLC, Prairie Knolls MHP LLC, Rolling Acres MHC LLC, Scottsdale MHP LLC, Taylor Park MHC LLC, Waynesville Plantation MHP LLC, West Estates MHC LLC, Wysteria Village MHC LLC, Patch Place MHC LLC, Dogwood MHC, LLC, Laiken Estates MHC, Schoolview MHC, LLC, Turner Park MHC, LLC, Victoria Estates MHC, LLC, Ridgefield MHC LLC, Pleasant Hope MHC LLC, Time Out MHP, LLC, Cape Fear MHC LLC, Green Pines MHC LLC,

96.     To induce Northpoint to make its loans to the Borrowers, the Other Defendants "unconditionally, absolutely, and irrevocably guarantee[d] to Northpoint, without off-set or deduction, the prompt payment and performance of all indebtedness, obligations and liabilities" of Borrowers under the Loan and Security Agreement.

97.     The Other Defendants' guarantees of Borrowers' obligations are evidenced by a certain Guaranty dated May 12, 2020, Amendment to Guaranty dated January 1, 2022, Guaranty dated January 4, 2022, Addendum to Guaranty (Joinder) dated March 8, 2022, and Addendum to Guaranty (Joinder) dated October 17, 2022 (collectively, the "Other Defendants' Guarantees").

98.     True and correct copies of the Other Defendants' Guarantees are attached hereto as collective **Exhibit J** and incorporated by reference.

**G.     The Community Owners Agreed to Turn Over Rents to Northpoint.**

99.     As discussed above, TOPPOS leases financed manufactured homes to certain of the other Defendants that own and manage communities in North Carolina and Illinois (collectively, the "Community Owners").[3]

---

Pine Log MHC LLC, Pinewood MHC LLC, White Sands MHC LLC, Bayside MHC LLC, Affordable Resorts LLC, and Taylors Bridge MHC LLC.

[3]     The "Community Owners" are: Abbot Park MHC LLC, Alamac Village MHP LLC, Cadillac Ranch MHC LLC, Brittany Court MHP LLC, Bullock MHP LLC, Cedarbrook Estates MHP LLC, Central Park 2 MHP LLC, Central Park 3

100.   Included as part of Northpoint's security for financing the rental line for Borrowers, the Community Owners each executed a Collateral Assignment of Rights Under Lease Agreement (the "Collateral Assignments"). A true and correct copy of the form of the Collateral Assignments is attached hereto as **Exhibit K** and incorporated by reference.[4]

101.   Pursuant to the Collateral Assignments, the Community Owners agreed that, upon TOPPOS's default under the Loan and Security Agreement, the Community Owners would pay directly to Northpoint any amounts due and owing to TOPPOS for leased manufactured homes.

102.   The Collateral Assignments, together with the Loan and Security Agreement, Bender Guarantee, Other Defendants' Guarantees, and all related documents, SOFTs, and any other loan, guarantee, or security documents by or

---

MHP LLC, City View MHC LLC, Eaglewood MHP LLC, Grand Valley MHP LLC, Littlefield Village MHP LLC, Maple Creek MHP LLC, Countryside MHC LLC, Eastview MHC LLC, Pine Run Park MHP LLC, Prairie Knolls MHP LLC, Rolling Acres MHC LLC, Scottsdale MHP LLC, Taylor Park MHC LLC, Waynesville Plantation MHP LLC, West Estates MHC LLC, Wysteria Village MHC LLC, Patch Place MHC LLC, Dogwood MHC, LLC, Laiken Estates MHC, Schoolview MHC, LLC, Turner Park MHC, LLC, Victoria Estates MHC, LLC, Ridgefield MHC LLC, Pleasant Hope MHC LLC, Time Out MHP, LLC, Cape Fear MHC LLC, Green Pines MHC LLC, Pine Log MHC LLC, Pinewood MHC LLC, White Sands MHC LLC, Bayside MHC LLC, Affordable Resorts LLC, and Taylors Bridge MHC LLC.

[4]   Northpoint is omitting the voluminous copies of all Collateral Assignments from this Complaint.

among any of the Defendants and Northpoint are referred to herein as the "Loan Documents."

**H.     The Defendants Have Defaulted under the Loan Documents.**

**103.**  Borrowers defaulted under the terms and conditions of the Loan Documents for, among other things, failing to pay monthly interest or principal curtailment installments (which reduce the principal balance of the financings) beginning in October 2022.

**104.**  By letter dated November 2, 2022, Northpoint provided Defendants written notice of their payment defaults. A true and correct copy of this letter is attached hereto as **Exhibit L** and incorporated by reference.

**105.**   By letter dated February 1, 2023, Northpoint provided Defendants further written notice of their payment defaults. A true and correct copy of this letter is attached hereto as **Exhibit M** and incorporated by reference.

**106.**  By letter dated May 22, 2023, Northpoint provided Defendants further written notice of payment defaults. A true and correct copy of this letter is attached hereto as **Exhibit N** and incorporated by reference.

**107.**   By letter dated June 5, 2023, Northpoint provided Defendants further written notice of payment defaults and suspended Borrowers' credit facility under the Loan Documents. Northpoint also advised Defendants that Borrowers were

prohibited from moving any manufactured homes financed under Time Out's floor plan line or allowing such homes to be affixed to real property or transferred to the possession of TOPPOS. A true and correct copy of this letter is attached hereto as **Exhibit O** and incorporated by reference.

**108.**   By letter dated July 6, 2023, Northpoint provided Defendants further written notice of payment defaults and the suspension of Borrowers' credit facility under the Loan Documents. A true and correct copy of this letter is attached hereto as **Exhibit P** and incorporated by reference.

**109.**   Notwithstanding Northpoint's numerous written demands for payment, Defendants failed and refused to bring their interest and curtailment payment obligations (which reduce the principal balance of the financing) current.

**110.**   Accordingly, by letter dated August 17, 2023, Northpoint advised Defendants that Northpoint had accelerated all obligations owing under the Loan and Security Agreement and had implemented the default rate of interest. Northpoint demanded that the Defendants make immediate payment of all principal, interest, and fees accrued through July 31, 2023. A true and correct copy of this letter is attached hereto as **Exhibit Q** and incorporated by reference.

**111.**   Notwithstanding Northpoint's numerous written demands, Defendants continued to breach the terms of the Loan Documents.

112.   Among other things, during an inspection of Northpoint's Collateral, Northpoint determined that Borrowers had moved certain manufactured home collateral and allowed it to be occupied by third parties. By letter dated August 29, 2023, Northpoint demanded that Borrowers comply with their obligations under the Loan Documents, return manufactured home collateral to Time Out, and produce previously requested financial information. A true and correct copy of this letter is attached hereto as **Exhibit R** and incorporated by reference.

113.   Similarly, to protect its interest in the rental proceeds of manufactured home collateral, Northpoint sent a demand to the Community Owners on August 29, 2023 pursuant to the Collateral Assignments and the Uniform Commercial Code. Northpoint demanded that the Community Owners pay to Northpoint any sums owed to TOPPOS until the obligations under the Loan Documents are satisfied. A true and correct copy of this letter is attached hereto as **Exhibit S** and incorporated by reference.

114.   As of the filing of this Complaint, Defendants have not complied with the demands in the two letters dated August 29, 2023. The Borrowers have not returned the improperly transferred manufactured home collateral to Time Out, the Borrowers have not provided updated financial information to Northpoint, and the

Community Owners have not paid to Northpoint any amounts due to TOPPOS for leased manufactured home collateral.

115.  Defendants have also allowed Northpoint's manufactured home collateral to be vandalized and damaged and have failed to repair such collateral as required under the Loan Documents.

116.  During a collateral audit conducted in October 2022, Northpoint became aware of damage to Northpoint's Collateral, including vandalism consisting of broken doors and windows, missing appliances and cabinets, in addition to other structural damage caused by transport or weather. Northpoint estimates that approximately 515 homes have sustained damage and are no longer in new condition. Defendants committed to repair damaged manufactured homes as tenants were assigned, which has not occurred. Northpoint's Collateral remains unprotected from vandals and exposed to further weather deterioration.

117.  The Defendants remain in default under the Loan Documents, and all amounts owing under the Loan Documents are immediately due and payable.

## <u>COUNT ONE – BREACH OF CONTRACT</u>
**(Borrowers' Breach of the Loan and Security Agreement)**

118.  Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

119.  The Loan and Security Agreement is a valid and binding contract.

**120.**   Northpoint has fulfilled and performed its obligations under the Loan and Security Agreement.

**121.**   Borrowers are in breach of their obligations owing under the Loan and Security Agreement for, among other things, failure to make payments as and when due under the terms of the Loan and Security Agreement.

**122.**   Despite Northpoint's written demand, Borrowers have failed to perform and remain in breach of their obligations owing under the Loan and Security Agreement.

**123.**   As a consequence of Borrowers' breach and failure to pay their obligations under the Loan and Security Agreement as and when due, Northpoint has suffered damages as set out herein.

**124.**   All amounts due and owing under the Loan and Security Agreement are immediately due and payable.

**125.**   As of August 31, 2023, the indebtedness due and owing under the Loan and Security Agreement totaled $23,020,143.20, exclusive of accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness, and other legally-recoverable amounts.

**126.** Additionally, interest continues to accrue at the per diem rate of $10,990.10.

## COUNT TWO – UNJUST ENRICHMENT
### (Borrowers Have Been Unjustly Enriched)

**127.** Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**128.** As an alternative to Northpoint's claim for breach of contract, Borrowers are also liable to Northpoint under a theory of unjust enrichment.

**129.** Borrowers accepted and received the benefits of, and were substantially benefited by, the funds Northpoint advanced under the Loan and Security Agreement. Borrowers knew, or should have known, that Northpoint expected and was entitled to repayment of all amounts due under the Loan and Security Agreement.

**130.** Northpoint is entitled to recover from the Borrowers under the doctrines of *quantum meruit* or unjust enrichment in an amount of the reasonable value of the principal owed under the Loan and Security Agreement, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing under the Loan and Security Agreement, and other legally-recoverable amounts.

## COUNT THREE – MONEY HAD AND RECEIVED
### (Borrowers Have Received Northpoint's Money and Refused to Repay)

**131.** Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**132.** As an alternative to Northpoint's claim for breach of contract, Borrowers are also liable to Northpoint under a theory of money had and received.

**133.** Borrowers accepted and received the value of Northpoint's funds that were advanced under the Loan and Security Agreement.

**134.** In equity and good conscience, Borrowers should not be permitted to keep Northpoint's funds.

**135.** Northpoint has demanded that Borrowers repay the funds and Borrowers have refused the demands.

**136.** Northpoint is entitled to recover from the Borrowers under the doctrine of money had and received in an amount of the reasonable value of the principal owed under the Loan and Security Agreement, together with all unpaid interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing under the Loan and Security Agreement, and other legally-recoverable amounts.

## COUNT FOUR – BREACH OF CONTRACT
### (Bender's Breach of the Bender Guarantees)

**137.**   Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**138.**   The Bender Guarantees are valid and binding contracts.

**139.**   Northpoint has fulfilled and performed its obligations under the Bender Guarantees.

**140.**   Bender is in breach of his obligations owing under the Bender Guarantees for, among other things, failure to make payments as and when due under the terms of the Bender Guarantees.

**141.**   Despite Northpoint's written demand, Bender has failed to perform and remains in breach of his obligations owing under the Bender Guarantees.

**142.**   As a consequence of Bender's breach and failure to pay his obligations under the Bender Guarantees as and when due, Northpoint has suffered damages as set out herein.

**143.**   All amounts due and owing under the Bender Guarantees are immediately due and payable.

**144.**   As of August 31, 2023, the indebtedness due and owing under the Bender Guarantees totaled $23,020,143.20, exclusive of unpaid and accruing interest (including default interest), late fees, protective advances, and costs,

including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness, and other legally-recoverable amounts.

**145.**   Additionally, interest continues to accrue at the per diem rate of $10,990.10.

**COUNT FIVE – BREACH OF CONTRACT**
**(Other Defendants' Breach of the Other Defendants' Guarantees)**

**146.**   Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**147.**   The Other Defendants' Guarantees are valid and binding contracts.

**148.**   Northpoint has fulfilled and performed its obligations under the Other Defendants' Guarantees.

**149.**   The Other Defendants are in breach of their obligations owing under the Other Defendants' Guarantees for, among other things, failure to make payments as and when due under the terms of the Other Defendants' Guarantees.

**150.**   Despite Northpoint's written demand, the Other Defendants have failed to perform and remain in breach of their obligations owing under the Other Defendants' Guarantees.

**151.**   As a consequence of the Other Defendants' breach and failure to pay their obligations under the Other Defendants' Guarantees as and when due, Northpoint has suffered damages as set out herein.

**152.**   All amounts due and owing under the Other Defendants' Guarantees are immediately due and payable.

**153.**   As of August 31, 2023, the indebtedness due and owing under the Other Defendants' Guarantees totaled $23,020,143.20, exclusive of unpaid and accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness, and other legally-recoverable amounts.

**154.**   Additionally, interest continues to accrue at the per diem rate of $10,990.10.

**COUNT SIX – WRIT OF POSSESSION**
**(Northpoint is Entitled to Possession of Northpoint's Collateral)**

**155.**   Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**156.**   Defendants are in default under the terms of the Loan Documents for, among other things, failure and refusal to pay all amounts due and owing.

**157.**   As a consequence of Defendants' defaults, Northpoint has accelerated payment of all principal, interest, and other amounts due and owing under the Loan Documents.

**158.**   Defendants are in wrongful possession and control of Northpoint's Collateral.

**159.** Northpoint is entitled to all process available under applicable law to compel the Defendants to turn over Northpoint's Collateral to appropriate law enforcement for sale on behalf of Northpoint.

## COUNT SEVEN – INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER
### (Injunctive Relief to Preserve Northpoint's Collateral)

**160.** Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

**161.** Northpoint will suffer irreparable harm without the entry of a temporary restraining order and an injunction due to the high risk of loss that will result from the Defendants' continued wrongful retention of Northpoint's Collateral.

**162.** The Defendants have rented Northpoint's manufactured home collateral to third parties and retained and failed to remit rental proceeds to Northpoint.

**163.** Furthermore, despite Northpoint's demands and in violation of the Loan Documents, the Defendants have moved certain of Northpoint's manufactured home collateral and allowed third parties to take possession and residence in such manufactured homes.

164.    None of the Defendants have any right to possession or control of Northpoint's Collateral following the defaults outlined herein.

165.    It is imperative that Northpoint have immediate access to all locations where any of Northpoint's Collateral is located or may be found so that Northpoint can recover, without interference from any of the Defendants, all of Northpoint's Collateral, including rental and sales proceeds of Northpoint's Collateral.

166.    Defendants should be required to provide Northpoint immediate access to Northpoint's Collateral, cooperate with Northpoint by assisting it in identifying Northpoint's Collateral, and be prohibited from moving, selling, transferring, damaging, or destroying any of Northpoint's Collateral or otherwise interfering with Northpoint's efforts to recover Northpoint's Collateral.

167.    If Northpoint is not granted an injunction, Northpoint will suffer irreparable harm. The harm Northpoint would suffer is much greater than the harm that any of the Defendants would potentially suffer as none of the Defendants have rights to retain possession of Northpoint's Collateral.

168.    Furthermore, an injunction is appropriate because it is in the public's interest to not reward individuals and entities who, after defaulting in their obligations to a secured creditor, wrongfully convert, possess, and retain the secured creditor's collateral and proceeds thereof.

169.   The Defendants may not have the means or the ability to satisfy their obligations to Northpoint, so Northpoint must repossess and liquidate Northpoint's Collateral or suffer irreparable harm.

170.   Northpoint will suffer irreparable harm without the entry of a temporary restraining order and an injunction due to the high risk of loss of Northpoint's Collateral which includes manufactured homes, cash, rental and sales proceeds, and other easily movable items of personal property. If Northpoint is not given the right to immediately recover Northpoint's Collateral, Northpoint could suffer irreparable harm that cannot be rectified if the manufactured home rental and sales proceeds are expended, or Northpoint's Collateral is moved or transferred.

## COUNT EIGHT – APPOINTMENT OF RECEIVER FOR NORTHPOINT'S COLLATERAL
**(Appointment of a Receiver to Preserve, Recover, and Sell Northpoint's Collateral)**

171.   Northpoint incorporates herein all of the allegations and averments set forth in paragraphs 1 through 117.

172.   The Defendants are in default under the Loan Documents as set forth above.

173.   None of the Defendants have right to possession or control of Northpoint's Collateral following the defaults outlined herein.

- 36 -

**174.**   Northpoint requests that this Court appoint a receiver for Northpoint's Collateral.

**175.**   "[F]ederal law governs the appointment of a receiver by a federal court exercising diversity jurisdiction." *Nat'l Partnership Inv. Corp. v. Nat'l Housing Development Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998). "Under Federal law, the appointment of a receiver is not a drastic remedy." *U.S. v. Berk & Berk*, 767 F. Supp. 593, 598 (D. N.J. 1991). Northpoint is entitled to the appointment of a receiver for Northpoint's Collateral pursuant to the Court's legal and equitable powers.

**176.**   Federal courts have considered the following factors in deciding whether to appoint a receiver: (1) the existence by a valid claim by the movant; (2) imminent danger that property may be lost, squandered, concealed, injured, or decline in value; (3) an inadequacy of other available legal remedies; (4) the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (5) plaintiff's probability of success in the action; and (6) the possibility of irreparable injury to the plaintiff's interest in the property. *See Consolidated Rail Corp. v. Fore River Ry. Co.*, 861 F.2d 322, 326-27 (1st Cir. 1988); *Waag v. Hamm*, 10 F.Supp.2d 1191, 1193 (D. Colo. 1998); *Mideast Sav. Ass'n v. Riversbend Assocs.*, 724 F. Supp 661, 662 (D.

Minn. 1989); *Commodity Futures Trading v. Comvest Trading Corp.*, 481 F. Supp. 438, 441 (D. Mass. 1979).

177.   The Defendants are indisputably in default of their obligations under the Loan Documents and Northpoint is entitled to possession and control of Northpoint's Collateral to satisfy the amounts owing by the Defendants.

178.   The appointment of a receiver is necessary to take control of Northpoint's Collateral and to prevent any waste and diminution in the value of Northpoint's Collateral, and to otherwise protect Northpoint's interests. Without a receiver to properly manage Northpoint's Collateral, Northpoint will suffer irreparable harm.

179.   Specifically, and without limitation, and as will be described in further detail in Northpoint's motion to appoint a receiver, the Defendants have rented Northpoint's manufactured home collateral to third parties and retained and failed to remit to Northpoint rental proceeds. Despite Northpoint's demands, the Defendants have moved certain of Northpoint's manufactured home collateral and allowed third parties to take possession and residence in such manufactured homes. Defendants have also allowed Northpoint's manufactured home collateral to be vandalized and damaged and have failed to repair such homes.

**180.** In addition to the fact that the Defendants have not paid their debts owing to Northpoint, the Defendants are also in default of their loan obligations to other parties. Defendants cannot pay the costs to preserve, protect and oversee Northpoint's Collateral for the benefit of Northpoint.

**181.** Northpoint requests that the receiver shall, at Borrowers' expense, have all of the usual powers and duties of receivers in similar cases, including, without limitation, the full power to manage, maintain, hold, rent, lease, operate, sell, or otherwise use or permit the use of Northpoint's Collateral, subject to Northpoint's approval.

**WHEREFORE**, premises considered, Northpoint prays that the Court award relief, order, and enter judgment, as follows:

    a. **On Count One**:

        i. Judgment against Borrowers, jointly and severally, and in favor of Northpoint in the amount of $23,020,143.20, together with all unpaid and accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing

under the Loan and Security Agreement, and other legally-recoverable amounts; and

    ii.  Such other and further relief as this Court deems appropriate

**b.  On Count Two:**

    i.  Judgment against Borrowers, jointly and severally, and in favor of Northpoint in the amount of $23,020,143.20, together with all unpaid and accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing under the Loan and Security Agreement, and other legally-recoverable amounts; and

    ii.  Such other and further relief as this Court deems appropriate.

**c.  On Count Three:**

    i.  Judgment against Borrowers, jointly and severally, and in favor of Northpoint in the amount of $23,020,143.20, together with all unpaid and accruing interest (including default interest), late fees, protective advances, and costs,

including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing under the Loan and Security Agreement, and other legally-recoverable amounts; and

ii. Such other and further relief as this Court deems appropriate.

d. **On Count Four:**

i. Judgment against Bender and in favor of Northpoint in the amount of $23,020,143.20, together with all unpaid and accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing under the Bender Guarantees, and other legally-recoverable amounts; and

ii. Such other and further relief as this Court deems appropriate.

e. **On Count Five:**

i. Judgment against the Other Defendants, jointly and severally, and in favor of Northpoint in the amount of

$23,020,143.20, together with all unpaid and accruing interest (including default interest), late fees, protective advances, and costs, including, without limitation, attorneys' fees and expenses incurred by Northpoint in collecting the indebtedness owing on the Other Defendants' Guarantees, and other legally-recoverable amounts; and

ii. Such other and further relief as this Court deems appropriate.

**f.  On Count Six:**

i. Ordering that process issue as provided by applicable law;

ii. Issuing a writ of possession or other order compelling Defendants to turn over Northpoint's Collateral to appropriate law enforcement for sale on behalf of Northpoint; and

iii. Such other and further relief as this Court deems appropriate.

**g.  On Count Seven:**

  i. Granting injunctive relief and compelling Defendants to provide Northpoint immediate and exclusive access to Northpoint's Collateral;

  ii. enjoining the Defendants from moving, selling, transferring, damaging, or destroying any of Northpoint's Collateral or otherwise interfering with Northpoint's efforts to recover Northpoint's Collateral;

  iii. compelling Defendants to immediately turn over to Northpoint any proceeds of Northpoint's Collateral, including without limitation, any manufactured home rental proceeds; and

  iv. Such other and further relief as this Court deems appropriate.

**h.  On Count Eight:**

  i. appointing a receiver for Northpoint's Collateral;

  ii. authorizing the receiver to immediately enter upon the Defendants' property and take and maintain full control of Northpoint's Collateral wherever located;

- 43 -

   iii.  authorizing the receiver to market Northpoint's Collateral for sale;

   iv.  granting the receiver broad rights, powers, and authority with respect to Northpoint's Collateral, including, without limitation, the power to collect all manufactured home rental proceeds and take all necessary actions with respect to marketing Northpoint's Collateral and preparing it for sale; and

   v.  granting Northpoint such other relief as the Court deems just and proper.

Respectfully submitted this 14th day of September, 2023.

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ William J. Holley, II*
William J. Holley, II
Georgia Bar No. 362310
Erik J. Badia
Georgia Bar No. 327905
Promenade Tower
1230 Peachtree Street NE
Atlanta, GA 30309
Telephone: 404-868-2100
Facsimile: 404-868-2010
bholley@bradley.com
ebadia@bradley.com

*Counsel for Northpoint Commercial Finance LLC*