# Exhibit A



**SOCIAL SECURITY ADMINISTRATION**



Office of Hearings Operations
2nd Floor
10155 Eagle Drive
Covington, GA 30014-3804

Date: March 06, 2023

Avien Reese
4011 Phylis Place
Decatur, GA 30035

## Notice of Decision – Unfavorable

I carefully reviewed the facts of your case and made the enclosed decision.  Please read this notice and my decision.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision.  The preferred method for filing your appeal is by using our secure online process available at https://www.ssa.gov/benefits/disability/appeal.html.

You may also use our Request for Review form (HA-520) or write a letter.  The form is available at https://www.ssa.gov/forms/ha-520.html.  Please write the Social Security number associated with this case on any appeal you file.  You may call (800) 772-1213 with questions.

Please send your request to:

> **Appeals Council**
> **5107 Leesburg Pike**
> **Falls Church, VA 22041-3255**

**Time Limit To File An Appeal**

You must file your written appeal **within 60 days** of the date you get this notice.  The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

Form HA-L76-OP2 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**What Else You May Send Us**

You or your representative may send us a written statement about your case.  You may also send us new evidence.  You should send your written statement and any new evidence **with your appeal**.  Sending your written statement and any new evidence with your appeal may help us review your case sooner.

**How An Appeal Works**

The Appeals Council will consider your entire case.  It will consider all of my decision, even the parts with which you agree.  Review can make any part of my decision more or less favorable or unfavorable to you.  The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do.  If the Appeals Council denies your appeal, my decision will become the final decision.

**The Appeals Council May Review My Decision On Its Own**

The Appeals Council may review my decision even if you do not appeal.  If the Appeals Council reviews your case on its own, it will send you a notice within 60 days of the date of this notice.

**When There Is No Appeals Council Review**

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final.  A final decision can be changed only under special circumstances.  You will not have the right to Federal court review.

**New Application**

You have the right to file a new application at any time, but filing a new application is not the same as appealing this decision.  If you disagree with my decision and you file a new application instead of appealing, you might lose some benefits or not qualify for benefits at all.  My decision could also be used to deny a new application for benefits if the facts and issues are the same.  If you disagree with my decision, you should file an appeal within 60 days.

See Next Page

Avien Reese (BNC#: 21E4879H47344)                                                            Page 3 of 3

**If You Have Any Questions**

1. Visit www.ssa.gov for fast, simple, and secure online service.
2. Call us at **1-800-772-1213**, weekdays from 8:00 am to 7:00 pm. If you are deaf or hard of hearing, call TTY **1-800-325-0778**. Please mention this notice and decision when you call.
3. You may also call your local office at (877) 626-9909.

SOCIAL SECURITY
3554 COVINGTON HWY
DECATUR, GA 30032-9803

**How are we doing?** Go to www.ssa.gov/feedback to tell us.

William L. Hogan
Administrative Law Judge

Enclosures:
Decision Rationale

cc:      Kathleen Marie Flynn
         KATHLEEN M FLYNN LLC
         315 W PONCE DE LEON AV
         SUITE 940
         DECATUR, GA 30030

Form HA-L76-OP2 (03-2010)

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings Operations**

**DECISION**

**IN THE CASE OF**                                    **CLAIM FOR**

                                                    Period of Disability, Disability Insurance
                                                    Benefits, and Supplemental Security Income
Avien Reese
(Claimant)

                                                    21E4879H47344
(Wage Earner)                                       (Beneficiary Notice Control Number)
                                                    *Social Security Number removed for your protection*


**JURISDICTION AND PROCEDURAL HISTORY**

On September 16, 2020, the claimant protectively filed a Title II application for a period of disability and disability insurance benefits. The claimant also protectively filed a Title XVI application for supplemental security income on September 16, 2020. In both applications, the claimant alleged disability beginning February 13, 2019. These claims were denied initially on May 20, 2021, and upon reconsideration on July 7, 2022. Thereafter, the claimant filed a written request for hearing received on July 29, 2022 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). The claimant appeared and testified at a hearing held on February 9, 2023, in Covington, Georgia. The claimant's primary representative is Kathleen Marie Flynn, an attorney. At the hearing, the claimant was represented by attorney Brynne Holt. Kenneth Bennett, an impartial vocational expert, also appeared at the hearing and testified by telephone.

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

Although the representative requested reopening of any prior application (B24E), at the hearing, the claimant amended the alleged onset date to February 16, 2019, the day after the prior Administrative Law Judge decision (B1A). As such, reopening is no longer an issue and this request is denied.

Although the undersigned has reviewed and considered all of the medical evidence in the file, the decision discussion focuses on the evidence relevant to the period at interest since around the time of the alleged onset date.

**ISSUES**

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination

of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through June 30, 2023. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from February 16, 2019, through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922, Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512, 404.1560(c), 416.912 and 416.960(c)).

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.**

See Next Page

**2.    The claimant has not engaged in substantial gainful activity since February 16, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).**

The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity.  The claimant had earnings in 2020 and 2021, but these minimal earnings do not come close to the substantial gainful activity levels for those years (B9D, B11D, B13D).

**3.    The claimant has the following severe impairments: bipolar disorder; alcohol use disorder; post-traumatic stress disorder; substance abuse disorder; hypertension; panic disorder; pancreatitis; generalized anxiety disorder; depressive disorder; history of left tibial fracture, status post-open reduction and internal fixation; right fibula fixation; cervical spine fracture and status post-fusion and laminoplasty; hematoma; history of tibial osteomyelitis, status post-revision; history of tibial nonunion, status post-nail exchange; history of cervical nonunion; type 2 diabetes; osteoarthritis right knee and ankle; and alcoholic hepatitis (20 CFR 404.1520(c) and 416.920(c)).**

During any given encounter, mental health professionals have given the claimant various diagnoses and characterized his mental impairment in numerous ways.  However, in determining whether an individual is disabled, what the impairment is called is of no real consequence; rather how a given impairment affects mental functioning is the central inquiry under the Social Security Act.  By finding the claimant to have a "severe" mental impairment, however characterized, all symptoms affecting his mental functioning have been considered.  It is the impact of the disease and in particular, any limitations it may impose upon the claimant's ability to perform basic work functions that is pivotal to the disability inquiry.

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

While the claimant was in motor vehicle accident in November 2022, and had many complaints related to that incident, he was diagnosed with a headache and shoulder strain (B51F). The undersigned finds that shoulder strain is not a severe impairment, as it was not expected to last at a severe level for a continuous period of twelve months.

The claimant alleged suffering from multiple headaches a day, however the claimant has not had a primary headache disorder during the relevant period (SSR 19-4p).  The claimant suffered tension headaches in 2017, but since the alleged onset date, headache complaints have been in the context of hitting his head and other acute trauma (B49F/68, B51F/1). The claimant did not have ongoing complaints or seek regular treatment for headaches, and in fact denied having headaches on multiple occasions (B42F/1202/1261/1352).  As the record contains no objective medical evidence consisting of signs and/or laboratory findings nor evidence from an acceptable medical source a primary headache disorder, it is not a medically determinable impairment.

The claimant also alleged suffering from blurred vision. However, the claimant regularly denied having blurred vision to his providers (B36F/81, B37F/26, B39F/7, B42F/1280, B51F/5).

Furthermore, blurred vision is a symptom of a medically determinable impairment, and not an impairment on its own. Therefore, blurred vision is not a medically determinable impairment.

The claimant has a past medical history of childhood asthma, however, the record contains no objective medical evidence consisting of signs and/or laboratory findings nor evidence from an acceptable medical source diagnosing a asthma during the relevant period. Therefore, it is not a medically determinable impairment.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant's spine, joint, and lower extremity impairments fail to meet or medically equal sections 1.15, 1.16, 1.18, or 1.22 because the record does not demonstrate a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or 2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other extremity of a wheeled and seated mobility device involving the use of one hand; or 3) an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. While the claimant has limitations in his upper extremities, he retains the use of both upper extremities to perform fine and gross movements (B34F, B37F/29, B39F/8, B49F/69/125/163). Additionally, the claimant does not allege that he needs an assistive device requiring the use of both hands and the record does not support his use of one (Testimony, B32F/136, B34F/3, B38F/5, B39F/8/16).

Pancreatitis is not a listed impairment, and as such, it cannot meet a listing. However, the undersigned has considered this impairment under listing 5.08 and has determined that the impairment does not meet this listing either, as the claimant's body mass index remained above 20 during the relevant period (B32F/25, B36F/187, B39F/4, B49F/72/165). Additionally, no medical expert has given testimony indicated that the claimant's pancreatitis medically equals any listing or combination of listings.

The undersigned has considered the claimant's hepatitis under listing 5.05. The medical evidence of record does not support requisite findings of hemorrhaging, ascites or hydrothorax, peritonitis, hepatorenal syndrome, heptopulmonary syndrome, or end stage liver disease (B32F/30, B37F/18). While the claimant had hepatic encephalopathy in December 2019, it was not present one two evaluations at least 60 days apart within a consecutive six-month period (B32F/97).

The undersigned considered the claimant's hematoma under listing 11.18, however the claimant does not have disorganization of motor function in two extremities resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities (B34F/3, B37F/29, B39F/8/15, B49F/69/125/163). Additionally, the claimant does not have marked limitation in any area of mental functioning, as noted below.

See Next Page

As noted in 4.00H(1), hypertension should be evaluated with reference to the specific body systems affected (heart, brain, kidneys, or eyes), when its effects under the listings are considered. There is no indication or allegation that the claimant's hypertension has a listing level effect on his heart, brain, kidneys, or eyes.

The undersigned considered the claimant's diabetes mellitus according to the guidelines set forth in SSR 14-2p, which require an endocrine disorder to be evaluated under the underlying body systems affected. The effects of diabetes mellitus, either alone or in combination with another impairment, may meet or medically equal the criteria of a listing in an affected body system. The undersigned has considered listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00 and finds that the claimant has not exhibited any symptoms or suffered from any complications resulting from diabetes mellitus that would indicate that this impairment meets or medically equals the criteria of a listing.

The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.15. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.

In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant alleged having problems with memory and understanding (B15E). At times, providers noted preoccupied thought content and a memory deficit (B30F/25, B31F/127, B33F/8, B40F/33, B43F/18, B47F/35, B50F/80). However, the claimant was generally described as alert and oriented, with above average range of intelligence (B34F/3, B31F/61/129, B32F/147, B33F/30, B38F/5, B43F/18, B47F/35, B49F/163, B50F/65/80). He listed self-reported abilities including writing, analyzing and figuring out problems and referred to his intuitive nature (B44F/27). At most appointments, the claimant was described as having normal memory (B31F/119/129/147, B33F/31, B34F/3, B38F/5, B43F/18, B47F/35, B49F/137, B50F/80). Therefore, the claimant has no more than moderate limitation in this domain.

In interacting with others, the claimant has a moderate limitation. The claimant reported experiencing some irritability and short temper towards authority figures and having lost jobs due to interpersonal difficulties (B16E). A provider described him as being hyperverbal at an appointment (B31F/127). However, the claimant was noted to be friendly and cooperative, with good eye contact and normal speech (B30F/25, B31F/61/129, B38F/5, B47F/35, B50F/65). He was a leader in three support groups 2-3 times a week, he attended church and family activities (B16E). The claimant was described as being well-liked and friendly (B16E). He is able to leave the house often, shop in stores, and has regular contact with family and friends (B15E, B38F/5). Additionally, while he endorsed some irritability, he denied acting out aggressively (B50F/87). Therefore, the claimant has no more than moderate limitation in this domain.

See Next Page

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant alleged having problems with completing tasks, concentration, and following spoken instructions (B15E, B16E). At times, providers described the claimant as being easily distracted (B30F/25, B33F/8, B40F/16/33) and described him as having a non-linear, mildly disorganized thought process requiring redirection and prompting (B40F/16). However, oftentimes, the claimant was noted to have linear, logical, and goal directed thought process (B30F/26, B31F/119/129, B33F/8, B33F/30, B38F/5, B43F/18, B47F/35). Additionally, he was often described as having normal attention and concentration (B31F/119, B33F/31, B43F/18, B47F/35, B49F/137, B50F/80). He was noted to be engaged at sessions and is able to drive himself, evincing an ability to maintain attention to his surroundings (B38F/5, B50F/45). Therefore, the claimant has no more than moderate limitation in this domain.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reporting not handling stress or changes in routine well (B15E, B16E). Providers sometimes noted abnormal mood or affect (B31F/117, B32F/162, B38F/5). Oftentimes, the claimant was found to have impaired insight and/or judgment (B31F/118/129, B38F/5, B40F/17/33, B43F/18, B47F/33, B50F/80). At one point, he was noted to have impaired hygiene and grooming (B31F/127). However, he usually had appropriate grooming and hygiene (B31F/118, B34F/3, B38F/5) and was also often noted to have normal mood and affect (B30F/2, B32F/147, B34F/3, B37F/29, B40F/18, B47F/35, B49F/69/125/163). Additionally, the claimant was described as having appropriate behavior (B31F/61, B32F/147). Therefore, the claimant has no more than moderate limitation in this domain.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant has a conservative treatment history that has not involved a history of psychiatric hospitalization. He has also maintained diverse activities of daily living and mental status findings were often intact (B31F/119, B33F/31, B34F/2, B38F/5, B43F/18, B47F/35, B49F/137, B50F/80). This evidence does not indicate that the claimant is limited to "marginal adjustment".

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he cannot climb ropes, ladders or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, but he can never crawl. The claimant can occasionally perform overhead reaching bilaterally and can perform occasional pushing/pulling with the lower left extremity. He can perform frequent**

**handling and fingering bilaterally, and can have frequent exposure to workplace hazards. The claimant can understand, remember and carry out simple instructions. He can have occasional interaction with supervisors, coworkers and the general public. He can respond appropriately to changes in a routine work setting and can make judgments on simple work-related decisions.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities.  For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

Through testimony and written evidence, the claimant alleges disability due to pain in multiple joints, and spasms. He testified that he sometimes needs cane for ambulation. He can stand for 10 minutes before needing to sit, and can sit for 15 minutes before needing to stretch. He can lift and carry up to 10 pounds, but has limited use of upper extremities for reaching, grasping, and fine manipulation. He indicated that his mental health impairments cause confusion, irritability, shortness of breath, agitation, and racing thoughts, and that these symptoms are sometimes triggered by stress and pain. He reported that he gets agitated quickly and needs to walk away from situations "a lot". The claimant also indicated that he experiences side effects from medication including sleepiness, confusion, and vertigo (B15E, B21E).

These allegations find some support in the record. In 2016, the claimant was a pedestrian when he was hit by a motor vehicle, and he sustained severe injuries including a left tibial fracture, right fibular fracture, a cervical fracture and right frontal scalp hematoma (B5F). Due to the accident the claimant was hospitalized for a month and had an open reduction internal fixation of the left tibia, fibula fixation of the right fibula, left elbow wound, and cervical fusion and laminoplasty (B5F, B6F, B9F, B16F). There were complications and infections including osteomyelitis resulting in several subsequent surgeries removing and replacing hardware in 2017 (B13F, B18F, B19F, B21F, B23F, B29F). The claimant's condition improved some, however he continues treatment for these injuries suffered as a result of the motor vehicle accident. Cervical

spine imaging in April 2021 showed postsurgical changes with multi-level neural foraminal narrowing (B39F/16). Imaging in November 2022 showed no additional fracture or malalignment, but degenerative changes (B51F/11). At times during the relevant period, providers observed tenderness, reduced strength in the bilateral upper extremities, pain with palpation, and reduced range of motion (B32F/162/166, B39F/15, B49F/163). 2022 imaging also showed mild joint space loss and osteophyte formation in the claimant's right knee and ankle (B45F/27). The claimant's pain is treated with Neurontin and tizanidine (B32F/147, B46F/37). At one appointment during the relevant period, the claimant was noted to be using a cane due to residual left sided weakness in the left leg, and another time he was noted to walk with an unsteady gait (B34F/3, B39F/16).

Additionally, the claimant has had many hospital admissions for pancreatitis, gastritis, and hepatitis in the context of alcohol abuse. He had epigastric tenderness and severe alcohol withdrawal (B32F/81/92, B36F/41, B37F/37). The claimant also has hypertension and diabetes mellitus, for which he takes clonidine and glipizide (B37F/38, B39F/9).

The claimant has also sought treatment for co-occurring mental health impairments and substance abuse (B30F). Providers have observed psychological signs of dysphoric mood, impaired insight and judgment, and abnormal memory, concentration and thought process (B30F/25, B31F/118/129, B38F/5, B40F/17/33, B43F/18, B47F/33, B50F/80). Providers have prescribed multiple psychotropic medications, including hydroxyzine, Lexapro, Remeron, and clonidine (B31F/116, B36F/41).

Therefore, this evidence is sustained medical and psychiatric treatment, positive signs of tenderness, weakness, and restricted motions, history of musculoskeletal trauma resulting in multiple surgeries, and recurrent symptoms of mental distress provides some support for the claimant's allegations and testimony.

However, after careful consideration of the evidence, the undersigned finds that while the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

To begin, although the claimant alleges debilitating pain that prevents him walking or sitting more than a few minutes at a time, the record routinely described him as being in no acute distress (B32F/20/162, B34F, B36F/39, B39F/8, B45F/24, B49F/69/125/163, B52F/8). The claimant's gait was often normal or unremarkable (B38F/5, B39F/8). While he alleged he needed a cane for ambulation, the record shows the claimant's used his cane "every now and then," "intermittently," and for "distance walking" (B32F/54, B34F/1). While he was noted to be using a cane at an appointment in April 2021, the record during the relevant period does not describe any longitudinal use of assistive walking devices. While the claimant alleges extremity numbness and weakness that prevented him from lifting more than a few pounds of performing basic activities of daily living, physical examinations frequently found intact strength, dexterity and neurological functioning (B37F/29, B39F/8, B49F/69/125/163). Even when deficits in strength were found, the claimant exhibited normal dexterity (B34F/3).

The undersigned notes that while the claimant's traumatic injuries had a significant impact and recovery well proceeding this case, the level of treatment sought for pain and dysfunction during the relevant period is not consistent with the claimant's allegations. There were very few visits for pain complaints and no real change in the claimant's level or type of treatment. He did not appear to pursue acupuncture, physical therapy, occupational therapy, chiropractic care, aqua therapy, etc. He did not receive steroid injections, nerve blocks or medial branch blocks, nor did he receive increasingly potent medication. This evidence of conservative and minimal treatment during the relevant is not consistent with the severe functional limitations alleged.

The claimant's digestive and endocrine disorders resulted in acute exacerbations, however did not appear to result in significant ongoing problems for the claimant. When he was not having an acute incident, the claimant's abdominal examinations were generally (B32F/147/162, B36F/145/185/254/346, B46F/20, B49F/125, B51F/9).

With regards to the claimant's mental impairments, he has a conservative treatment history that consisted primarily of sporadically attended counseling and medical management during the relevant period at issue. While the claimant alleges significant mental distress preventing him from working a fulltime job, his providers routinely found him to be in no acute distress during his appointments (B32F/20/162, B34F, B36F/39, B39F/8, B45F/24, B49F/69/125/163, B52F/8). He was often described as cooperative with normal mood, affect, behavior, grooming and eye contact, which does not reflect the claimant's allegations of anxiety, being overwhelmed, and irritability (B30F/2/25, B31F/61/118/129, B32F/147, B34F/3, B37F/29, B38F/5, B40F/18, B47F/35, B49F/69/125/163, B50F/65). Furthermore, the claimant routinely showed no psychomotor abnormalities (B30F/25, B31F/119, B33F/30, B39F/8, B47F/35). The claimant's reported difficulties with task completion, memory, and concentration must also be balanced against the longitudinal mental status examinations describing him as alert and oriented, with intact memory, attention, concentration, thought process, and above average intelligence (B31F/119, B33F/31, B34F/3, B31F/61/129, B32F/147, B33F/30, B38F/5, B43F/18, B47F/35, B49F/163, B50F/65/80).

The undersigned notes that the claimant's substance abuse appears to remain ongoing throughout the relevant period, and the record indicates that the claimant's continued abuse of substances may impact the effectiveness of his medications and progress toward recovery (B44F/24). Elsewhere it is noted that non-adherence to his treatment regiment, including medications and psychiatric appointments, have been contributing to his persistent anxiety (B47F/33). The record shows many instances of no-shows to appointments throughout the relevant period and medication noncompliance (B47F, B48F, B50F, B52F). The claimant's substance abuse and treatment noncompliance are not material to the finding of disability, as even with these issues, the claimant would not be disabled. However, these issues are noted here to show that while the claimant's lack of insight and judgment appear generally related to ongoing substance abuse and failure to follow medical orders, these issues would not preclude the claimant from being able to make simple work-related decisions and respond appropriately to changes in a routine work setting, nor complete simple tasks. The evidence related to the claimant's activities of daily living supports this. He reported being able to manage personal finances (B16E), and complete all non-strenuous activities of daily living (B34F/2, B38F/5). The claimant is able to do errands

without assistance from others and drive a car, which exhibits his independence, ability to make some decisions, adjust to changes in environment, and stay on task (B20E). Additionally, he reported enjoying gardening, painting, and other art projects, noting that his interest in gardening and art decreases his symptoms and increases his happiness (B44F/36, B50F/53).

The undersigned additionally notes that the claimant's interest in gardening is inconsistent with someone who has alleged significant deficits in standing, bending, kneeling, reaching, grasping, handling, and fingering. Furthermore, the record is replete with other instances of the claimant's activity which would appear inconsistent with his claim of disability. For example, the claimant injured himself while falling off a ladder while doing carpentry work, which is also inconsistent with deficits in reaching, manipulation and strength (B49F/68). He reported keeping himself really busy, working at home, working within an organization that helps others, building a business, and working on the home at other times (B47F/20/30/38, B50F/27).

The record shows that the claimant continued to abuse alcohol and drugs, miss mental health appointments and run out of his medication despite medical personnel stressing that these behaviors adversely impacted his mental health (Exhibits 50F p. 71, 75 and 92; 47F p. 13, 30 and 33; 44F p. 24 and 36; and 30F p. 14). Exhibit 52F also shows that the claimant was a no-show for several appointments. The exam at Exhibit 38F p. 5-6 shows that the claimant continued his alcohol and substance abuse despite knowing it is likely to exacerbate his physical and mental problems. Despite that, Exhibit 50F p. 53 shows that the claimant was making his art a priority in his life and focusing on up-cycling artwork items, and p. 71 and 82 show he was keeping really busy by working at home and building a business.

Contrary to the claimant's sworn testimony that he hadn't used street drugs other than marijuana since 2017, Exhibit 50F p. 70 shows he used methamphetamine as recently as September 2022, he was diagnosed with a hallucinogen use disorder in February 2022 at Exhibit 48F p. 10, and he was diagnosed with cocaine abuse in January 2022 at Exhibit 46F p. 42

At Exhibit 41F p. 5 and 11 the claimant reported that he was doing well and that his pain is not bad. At Exhibit 47F p. 16, the claimant was keeping busy and starting to feel normal after resuming his medications, at p. 20 he reported doing well, and at p. 30 and 38 he said he was really busy working at home building his business. Exhibit 39F p. 7-8 shows he had no depressive symptoms and normal musculoskeletal and neurological exams.

Regarding the exam at Exhibit 34F, p. 3 and 5-8 show, other than reduced 4/5 strength in the bilateral lower extremities, a completely normal exam, including that the claimant was not using an assistive device to ambulate, negative straight leg raise tests bilaterally, full 5/5 strength, normal ranges of motion, and a normal psychological exam with no memory problems. The reduced strength in his bilateral lower extremities is accommodated by the above RFC limits on reaching, pushing/pulling and handling and fingering.

As above, this evidence fails to reflect the extent of limitation alleged by the claimant at the hearing.  Pursuant to SSR 16-3p, the undersigned has considered these inconsistencies between the claimant's allegations and the longitudinal evidence of record in evaluating the claimant's residual functional capacity.

As for medical opinions and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

At the initial level, a state agency consultant opined the claimant could perform a reduced range of light exertional work with 4 hours standing/walking, and additional reduced postural and environmental duties (B4A, B5A). Upon reconsideration, the consultant further limited the claimant to occasional bilateral overhead reaching (B8A, B9A). These opinions are both somewhat persuasive. They are accompanied by detailed reviews of the evidence available to the consultants such as pain complaints, mild weakness and abnormal gait, and included a written analysis supporting the opinion (B5A/28, B9A/26). They are generally consistent with the evidence showing tenderness and reduced range of motion, as well as the claimant's testimony related to his sustained limitations (B49F/163). However, given the evidence of upper and lower extremity weakness and continued cervical pain and spams complaints, the undersigned has further limited the claimant's exertional capacity.

Internal medicine consultative examiner Tiffany Lee, MD, opined that the claimant should avoid activities that require distance walking, prolonged standing/sitting, unprotected heights, excessive bending, heavy lifting, overhead reaching, pushing/pulling, holding, or operating machinery using his upper extremities (L>R) until further evaluation has been completed and treatment options considered. He may have some difficulty with sustainability of exertion if required. He is encouraged to use his assistive device as indicated with distance walking, uneven terrain, and when navigating steps. He is advised to avoid concentrated areas of toxins, fumes, and inhalants secondary to his history of asthma. (B34F/4). Parts of this opinion are persuasive. Some of the opined limitations are supported by the examination showing deficits in strength, range of motion, and gait (B34F). While the examination did not find deficits specifically related to the right upper extremity that would completely limit the claimant from pushing/pulling, holding or operating machinery with the right upper extremity, limitations on reaching handling and fingering bilaterally are appropriate given the claimant's cervical dysfunction (B34F). The opined limitation related to prolonged sitting is also not well supported, as the claimant was in no acute distress throughout the examination, and abnormalities were generally related to cervical and upper extremity findings, which are not generally impacted by being in a seated position (B34F).  Additionally, the findings at examination do not support the use of an assistive device, as the claimant was not using one despite unsteady gait. The opinion regarding an assistive device is not consistent with the record after the alleged onset date in which providers generally do not mention observing the claimant to be using an assistive walking device. shows the claimant not to need an assistive walking device.  Furthermore, as the claimant does not suffer from active asthma symptoms, and had no exacerbations during the relevant period, the limitation on avoiding concentrated exposure to pulmonary irritants is not consistent with the

medical record, which routinely shows normal respiratory findings (B32F/147, B39F/8, B49F/69/125/163, B51F/9).  As such, the opinions related to prolonged sitting, use of an assistive device, and pulmonary irritant exposure are not persuasive.

State agency psychological consultants opined that the claimant can understand, remember, and carry out simple and detailed instructions but would have difficulty with complex tasks. He can make simple and detailed work-related decisions and is able to adapt to routine changes in the work setting (B4A, B5A, B8A, B9A). They also noted a moderate limitation in the ability to maintain attention and concentration for extended periods and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  These opinions appear contradictory on their face, however, in any event, the residual functional capacity limitations to performing only simple instructions, simple-work work-related decisions and a routine work environment accommodate all of these opinions. The opinions are briefly supported by describing some relevant mental health records such as the psychological consultative examination and records related to the claimant's substance use disorder (B5A/22, B9A/19). However, the opinions are not consistent with additional evidence showing mental status abnormalities such as dysphoric mood, impaired insight and judgment, and abnormal memory, concentration and thought process (B30F/25, B31F/118/129, B38F/5, B40F/17/33, B43F/18, B47F/33, B50F/80). These opinions were only somewhat persuasive, and given these additional findings, more restrictive mental limitations are warranted related to task complexity, social interaction, and workplace stress.

However, psychological consultative examiner Bruce Grant, PsyD opined the claimant is capable of understanding and carrying out simple to complex instructions. His mood symptoms are severe enough to decrease his concentration and pace moderately to markedly but episodically. He has moderate to marked difficulties with basic social skills, given his reported symptoms and moderate to marked difficulties of adapting to work-related stress due to his mood symptoms (B38F/7-8). This opinion is not persuasive, as it is not supported by the examination, which showed only dysphoric mood, but no additional abnormalities on mental status examination or in the examiner's observations. In fact, the opinion is also not supported by the claimant's own statements that do not include complaints related to social functioning (B38F/5). Additionally, the examiner indicated the opinion was based on the claimant's "reported symptoms," and does not appear to be based on objective findings. This opinion is also inconsistent with the longitudinal evidence of mental status examinations showing the claimant usually had normal attention, concentration, thought process, mood, affect, memory, and social interaction (B30F/26, B31F/119/129, B33F/8, B33F/30, B38F/5, B43F/18, B47F/35).  The undersigned finds that while the claimant's mental symptoms result in residual functional capacity limitations, the claimant retains the ability to sustain fulltime work within the above mentioned residual functional capacity.

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record and the opinions of the state agency consultants. The claimant's musculoskeletal, endocrine, and digestive impairments have been accommodated by a limitation to sedentary work with reduced postural and environmental duties.  The claimant's complaints of difficulties with his upper extremities

find support in his history of cervical trauma, and have been further accommodated with limitations on bilateral overhead reaching, handling and fingering. His history of lower extremity trauma and residual weakness has also been accommodated by additional restrictions on pushing and pulling with the left lower extremity.  The claimant's mental impairments have also been accommodated with limitations on task complexity, social interaction, decision making, and workplace stress.  However, due to the evidence of conservative treatment during the relevant period, no acute distress, intact neurological findings, range of activities of daily living, and lack of longitudinal evidence of the need for an assistive device, the undersigned finds that no other limitations are warranted.

**6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

The representative stipulated to the findings related to past relevant work in the prior Administrative Law Decision (B1A).  The claimant has past work as a:

- Cook (Dictionary of Occupational Titles 313.361-014; medium as generally performed; very heavy as actually performed; Specific Vocational Preparation 7); and
- Sandwich Maker (Dictionary of Occupational Titles 317.664-010; medium as generally performed; very heavy as actually performed; Specific Vocational Preparation 2).

The claimant is unable to perform past work as actually or generally performed as the exertional levels of the claimant's past work exceeds the less than sedentary residual functional capacity.

**7.   The claimant was born on April 21, 1977 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.  The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 404.1563 and 416.963).**

**8.   The claimant has at least a high school education (20 CFR 404.1564 and 416.964).**

**9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).  When the claimant

cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14).  If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28 and Rule 201.21.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

- Document Preparer (Dictionary of Occupational Titles 249.587-018; Specific Vocational Preparation 2; sedentary; approximately 15,000 jobs in the national economy);
- Election Clerk (Dictionary of Occupational Titles 205.367-030; Specific Vocational Preparation 2; sedentary; approximately 5,600 jobs in the national economy); and
- Addresser (Dictionary of Occupational Titles 209.587-010; Specific Vocational Preparation 2; sedentary; approximately 2,000 jobs in the national economy).

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is largely consistent with the information contained in the Dictionary of Occupational Titles.  While the limitations related to overhead reaching, unilateral pushing/pulling, climbing ramps/stairs, adjustment to routine work changes, and maintaining concentration and pace are not addressed by the Dictionary of Occupational Titles, the undersigned accepts the vocational expert's testimony regarding this limitation as it was based on his professional experience, education, and training (B27E).

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

**11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

<u>**DECISION**</u>

Avien Reese (BNC#: 21E4879H47344)                    Page 16 of 16

Based on the application for a period of disability and disability insurance benefits protectively filed on September 16, 2020, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income protectively filed on September 16, 2020, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *William L. Hogan*
_____
William L. Hogan
Administrative Law Judge

March 06, 2023
_____
Date

# LIST OF EXHIBITS

## Payment Documents/Decisions

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | B1A | ALJ Hearing Decision | | 2019-02-15 | 26 |
| T1I | B2A | Disability Determination Transmittal | | 2019-02-15 | 2 |
| T1I | B3A | AC Denial | | 2020-01-14 | 5 |
| T1I | B4A | Disability Determination Explanation-DI INITIAL:PRT/RFC-MD | | 2021-05-20 | 35 |
| T1I | B5A | Disability Determination Explanation-DIB INITIAL:PRT/RFC-MD | | 2021-05-20 | 35 |
| T1I | B6A | Initial Disability Determination by State Agency, Title II | | 2021-05-20 | 1 |
| T1I | B7A | Initial Disability Determination by State Agency, Title XVI | | 2021-05-20 | 1 |
| T1I | B8A | Disability Determination Explanation-DI RECON:PRT/RFC-MD | | 2022-06-14 | 32 |
| T1I | B9A | Disability Determination Explanation-DIB RECON:PRT/RFC-MD | | 2022-06-14 | 32 |
| T1I | B10A | Reconsideration Disability Determination by State Agency, Title II | | 2022-06-14 | 1 |
| T1I | B11A | Reconsideration Disability Determination by State Agency, Title XVI | | 2022-06-14 | 1 |

## Jurisdictional Documents/Notices

| Component | No. | Description | Received | Dates | Pages |
|---|---|---|---|---|---|
| T1I | B1B | Fee Agreement for Representation before SSA | | 2020-10-26 | 1 |

| | | | | |
|---|---|---|---|---|
| T1I | B2B | SSA-1696 - Claimant's Appointment of a Representative | 2021-05-19 | 14 |
| T1I | B3B | Notice of Disapproved Claim - Concurrent | 2021-05-20 | 7 |
| T1I | B4B | Request for Reconsideration | 2021-06-02 | 2 |
| T1I | B5B | SSA-1696 - Claimant's Appointment of a Representative | 2021-06-30 | 12 |
| T1I | B6B | Notice of Disapproved Claim - Concurrent | 2022-06-14 | 6 |
| T1I | B7B | Request for Hearing by ALJ | 2022-08-01 | 2 |
| T1I | B8B | Outgoing ODAR Correspondence | 2022-08-06 | 4 |
| T1I | B9B | COVID Hearing Agreement Form | 2022-08-06 | 18 |
| T1I | B10B | Request for Hearing Acknowledgement Letter | 2022-08-08 | 20 |
| T1I | B11B | SSA-1696 - Claimant's Appointment of a Representative | 2022-08-19 | 4 |
| T1I | B12B | Fee Agreement for Representation before SSA | 2022-08-19 | 2 |
| T1I | B13B | Outgoing ODAR Correspondence | 2022-09-28 | 16 |
| T1I | B14B | Hearing Notice | 2022-11-28 | 22 |
| T1I | B15B | Notice Of Hearing Reminder | 2023-01-19 | 6 |
| T1I | B16B | SSA-1696-SUP2 - Representative's Withdrawal of Acceptance of Appointment-KIMBERLY HURT | 2023-02-06 | 1 |
| T1I | B17B | Report of Contact | 2023-02-08 | 1 |
| T1I | B18B | SSA-1696 - Claimant's Appointment of a Representative-Brynne Holt | 2023-02-08 | 4 |

| T1I | B19B | Fee Agreement for Representation before SSA | | 2023-02-08 | 3 |

## **Non-Disability Development**

| Component | No. | Description | Received | Dates | Pages |
|-----------|-----|-------------|----------|-------|-------|
| T1I | B1D | Lead Protective Filing Worksheet | | 2020-09-16 | 3 |
| T1I | B2D | Application for Disability Insurance Benefits | | 2020-09-17 | 2 |
| T1I | B3D | Application for Supplemental Security Income Benefits | | 2020-09-17 | 7 |
| T1I | B4D | Application for Supplemental Security Income Benefits (Abbreviated) | | 2020-10-26 | 11 |
| T1I | B5D | Application for Disability Insurance Benefits | | 2020-10-26 | 5 |
| T1I | B6D | Authorization for SSA to Obtain Wage and Employment Data | | 2020-12-01 | 6 |
| T1I | B7D | Detailed Earnings Query | | 2022-09-28 | 5 |
| T1I | B8D | Summary Earnings Query | | 2022-09-28 | 1 |
| T1I | B9D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2022-09-28 | 1 |
| T1I | B10D | Certified Earnings Records | | 2022-09-28 | 3 |
| T1I | B11D | Detailed Earnings Query | | 2023-02-03 | 5 |
| T1I | B12D | Summary Earnings Query | | 2023-02-03 | 1 |
| T1I | B13D | New Hire, Quarter Wage, Unemployment Query (NDNH) | | 2023-02-03 | 1 |
| T1I | B14D | Certified Earnings Records | | 2023-02-03 | 3 |

## **Disability Related Development**

| Component | No. | Description | Received | Source | Dates | Pages |
|-----------|-----|-------------|----------|--------|-------|-------|

| T1I | B1E | Statement of Claimant or Other Person | Reese, Avian Lael | to 2016-11-30 | 3 |
| T1I | B2E | Work History Report | Reese, Avien Lael | to 2016-12-05 | 8 |
| T1I | B3E | Work History Report | Reese, Avien Lael | to 2017-01-11 | 9 |
| T1I | B4E | 3rd Party Function Report - Adult | Diantha Reese | to 2017-02-05 | 11 |
| T1I | B5E | Function Report - Adult | Reese, Avien Lael | to 2017-08-05 | 8 |
| T1I | B6E | Statement of Claimant or Other Person | | to 2017-12-29 | 3 |
| T1I | B7E | Statement of Claimant or Other Person | | to 2018-01-16 | 8 |
| T1I | B8E | Education Records - Non Medical | Decatur High School | 2018-04-13 to 2018-04-13 | 3 |
| T1I | B9E | Recent Medical Treatment | | 2018-08-03 to 2018-08-03 | 1 |
| T1I | B10E | Medications | | 2018-08-03 to 2018-08-03 | 2 |
| T1I | B11E | Disability Report - Field Office | | to 2020-09-17 | 3 |
| T1I | B12E | Disability Report - Adult | | to 2020-09-17 | 9 |
| T1I | B13E | Work Activity Report EE | | to 2020-09-24 | 12 |
| T1I | B14E | Headache Questionnaire | Claimant | 2020-12-11 to 2020-12-11 | 2 |
| T1I | B15E | Function Report - Adult | Claimant | 2021-02-05 to 2021-02-05 | 11 |
| T1I | B16E | 3rd Party Function Report - Adult | Diantha Reese-Mother | 2021-02-23 to 2021-02-23 | 9 |
| T1I | B17E | Work History Report | | to 2021-04-08 | 7 |
| T1I | B18E | Disability Report - Appeals | | to 2021-06-02 | 7 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B19E | Disability Report - Field Office | | to 2021-06-02 | 3 |
| T1I | B20E | Pain Questionnaire / Report | | to 2021-08-29 | 5 |
| T1I | B21E | Function Report - Adult | | to 2022-06-25 | 9 |
| T1I | B22E | Disability Report - Appeals | | to 2022-08-01 | 8 |
| T1I | B23E | Disability Report - Field Office | | to 2022-08-01 | 3 |
| T1I | B24E | Representative Correspondence | | to 2022-08-19 | 1 |
| T1I | B25E | Exhibit List to Rep PH2E | | to 2022-09-28 | 21 |
| T1I | B26E | Correspondence regarding efforts to obtain evidence | Kathleen M Flynn | to 2023-01-19 | 2 |
| T1I | B27E | Resume of Vocational Expert | Kenneth L Bennet | to 2023-02-01 | 1 |

## Medical Records

| Component | No. | Description | Received | Source | Dates | Pages |
|---|---|---|---|---|---|---|
| T1I | B1F | Progress Notes | | Dekalb Community Service Board | 2010-04-09 to 2010-05-18 | 410 |
| T1I | B2F | Office Treatment Records | | Winn Way Mental Health Center | to 2011-08-09 | 57 |
| T1I | B3F | Office Treatment Records | | Dekalb Community Service Board | 2010-04-09 to 2013-09-05 | 60 |
| T1I | B4F | Outpatient Hospital Records | | Grady Memorial Hospital | to 2016-11-02 | 701 |
| T1I | B5F | Outpatient Hospital Records | | Grady Memorial Hospital | 2016-11-02 to 2016-11-11 | 701 |
| T1I | B6F | Outpatient Hospital Records | | Grady Memorial Hospital | 2016-12-15 to 2017-02-09 | 177 |
| T1I | B7F | Office Treatment Records | | Change Healthcare | 2016-12-02 to 2017-02-09 | 21 |

| T1I | B8F | Outpatient Hospital Records | Grady Memorial Hospital | to 2017-02-09 | 64 |
|---|---|---|---|---|---|
| T1I | B9F | Office Treatment Records | Change Healthcare | 2016-12-20 to 2017-02-09 | 9 |
| T1I | B10F | Consultative Examination Report | Comprehensive Evaluations Services Inc | to 2017-02-22 | 6 |
| T1I | B11F | Outpatient Hospital Records | Grady Memorial Hospital | to 2017-03-13 | 3 |
| T1I | B12F | Outpatient Hospital Records | Grady Health System | 2017-02-09 to 2017-03-13 | 15 |
| T1I | B13F | Outpatient Hospital Records | Dba Grady Memorial Hospital | 2017-05-17 to 2017-05-24 | 113 |
| T1I | B14F | Hospital Records | Doctors Hospital Of Augusta | 2017-06-16 to 2017-06-18 | 46 |
| T1I | B15F | Hospital Records | Drs Hospital Of Augusta | 2017-06-16 to 2017-06-18 | 27 |
| T1I | B16F | Claimant-supplied Evidence | Patel, Dipan C Md | 2016-11-11 to 2017-06-24 | 65 |
| T1I | B17F | Office Treatment Records | Medical Evidence Submitted With The Claim | to 2017-06-25 | 145 |
| T1I | B18F | Outpatient Hospital Records | Dba Grady Memorial Hospital | 2017-06-23 to 2017-06-29 | 159 |
| T1I | B19F | Outpatient Hospital Records | Dba Grady Memorial Hospital | 2017-06-23 to 2017-07-06 | 173 |
| T1I | B20F | Progress Notes | Shi,Weilong, Md | 2017-08-27 to 2017-08-28 | 107 |
| T1I | B21F | Hospital Records | Grady Memorial Hospital | 2011-06-10 to 2017-09-07 | 381 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B22F | Office Treatment Records | Dekalb Community Service Board | 2017-11-03 to 2017-11-06 | 18 |
| T1I | B23F | Hospital Records | Grady Health System | 2017-08-27 to 2017-11-06 | 107 |
| T1I | B24F | Attorney/Representative -Supplied Evidence | | to 2017-11-07 | 2 |
| T1I | B25F | Hospital Records | Grady Health Systems | 2017-12-04 to 2017-12-29 | 78 |
| T1I | B26F | Office Treatment Records | Change Healthcare | 2017-11-20 to 2018-01-26 | 69 |
| T1I | B27F | Hospital Records | Grady Memorial Hospital | 2017-09-28 to 2018-03-25 | 149 |
| T1I | B28F | Office Treatment Records | Dekalb Community Service Board | 2017-11-08 to 2018-03-30 | 24 |
| T1I | B29F | Hospital Records | Grady Memorial Hospital | 2018-04-16 to 2018-04-16 | 4 |
| T1I | B30F | Progress Notes | Dekalb Community Service Board | 2020-04-08 to 2020-06-09 | 38 |
| T1I | B31F | Progress Notes | Dekalb Community Service Board | 2010-04-09 to 2020-09-17 | 410 |
| T1I | B32F | Hospital Records | Grady Memorial Hospital | 2018-12-18 to 2020-11-25 | 179 |
| T1I | B33F | Progress Notes | Dekalb Community Service | 2021-03-17 to 2021-03-17 | 102 |
| T1I | B34F | CE Internal Medicine | Tiffany Strawbridge Lee Md - CE | to 2021-03-25 | 9 |
| T1I | B35F | Hospital Records | Grady Memorial | 2020-09-15 to 2021-04-05 | 13 |
| T1I | B36F | Hospital Records | Emory Hospital | 2017-12-29 to 2021-04-08 | 566 |

| | | | | | |
|---|---|---|---|---|---|
| T1I | B37F | Hospital Records | Grady Health Systems | 2021-04-08 to 2021-04-10 | 111 |
| T1I | B38F | CE Psychology | Bruce N Grant Psyd - CE | to 2021-04-12 | 9 |
| T1I | B39F | Hospital Records | Grady Hospital | 2021-04-13 to 2021-05-13 | 28 |
| T1I | B40F | Progress Notes | Dekalb Community Service Board | 2021-04-26 to 2021-05-25 | 35 |
| T1I | B41F | Hospital Records | Grady Memorial Hospital | 2021-09-15 to 2021-11-09 | 11 |
| T1I | B42F | Hospital Records | Grady Hospital | 2021-09-20 to 2022-01-10 | 1357 |
| T1I | B43F | Progress Notes | Dekalb Community Service Board | 2021-09-20 to 2022-01-10 | 22 |
| T1I | B44F | Progress Notes | Dekalb Community Service Board | 2021-09-24 to 2022-01-20 | 39 |
| T1I | B45F | Hospital Records | Grady Memorial Hospital | 2022-01-27 to 2022-01-28 | 79 |
| T1I | B46F | Hospital Records | Grady Memorial Hospital | 2022-01-13 to 2022-01-28 | 42 |
| T1I | B47F | Progress Notes | Dekalb Community Service Board | 2022-01-11 to 2022-05-12 | 42 |
| T1I | B48F | Progress Notes | Dekalb Csb | 2022-06-22 to 2022-07-27 | 14 |
| T1I | B49F | Hospital Records | Dekalb | 2018-09-03 to 2022-05-12 | 174 |
| T1I | B50F | Office Treatment Records | Dekalb Csb | to 2022-08-25 | 97 |
| T1I | B51F | Emergency Department Records | Grady Hospital | to 2022-11-16 | 22 |

| T1I | B52F | Progress Notes | Dekalb Csb | 2022-09-08 to 2022-11-23 | 40 |