IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| NAMON JONES, | : | CIVIL ACTION NO: |
| Plaintiff, | : | **VERIFIED COMPLAINT** |
| v. | : | **JURY TRIAL DEMANDED** |
| IHEARTMEDIA+ENTERTAINMENT, INC.; JOHN/JANE DOE 1-10, fictitious names; ABC Corps. 1-10, fictitious names, | : | |
| Defendants. | : | |

## COMPLAINT

**COMES NOW** Plaintiff, Namon Jones, (hereafter, "Plaintiff") by and through his attorneys, John A. Moore, Esq. of The Moore Law Group, and hereby submits this Complaint as follows:

## INTRODUCTION

This case arises out of Defendant's employment discrimination and creation of a hostile work environment against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.

1

## JURISDICTION AND VENUE

1. Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, § 1343 (a) and Title VII of the Civil Rights Act of 1964.

2. Venue is proper pursuant to 42 U.S. Code § 2000e–5(f)(3) and pursuant to 28 U.S.C. § 1391(b) and (c), as every act of which Plaintiff complains occurred in the Atlanta Division of the United States District Court for the Northern District of Georgia.

3. Plaintiff is a resident of the State of Georgia and submits himself to the jurisdiction of this Court.

4. Defendant iHeartMedia+Entertainment (hereafter "iHeart") is a foreign corporation that was registered with the Secretary of State to conduct business in the State of Georgia at all times relevant to the allegations in this Complaint, and may be served with process upon its registered agent CT Corporation System, at 289 S. Culver St, Lawrenceville, GA, 30046-4805.

## FACTUAL ALLEGATIONS

5. Plaintiff is an African American resident of Atlanta, Georgia and former iHeart executive who experienced severe and pervasive discrimination, and was subjected to a hostile work environment because of his race, color, and national origin.

2

6. Plaintiff possesses a bachelor's and master's degree in Mass Communications, and he has worked in the media industry for over 25 years.

7. Plaintiff was specifically recruited from his New York State home by white male, Mr. Drew Lauter (President, iHeartMedia Atlanta) to help lead the Atlanta Market as a Vice President.

8. On or about May 2021, Plaintiff met Mr. Drew Lauter who heavily recruited him based on his high-level skill and industry knowledge.

9. Mr. Lauter emphasized to Plaintiff that he did not want to hire a "BWM" [basic white man] given iHeartMedia's poor diversity numbers.

10. Mr. Lauter asked Plaintiff to join his team and help him "make history" - an acknowledgment of iHeart's lack of diversity in leadership and its claimed desire to make substantive changes.

11. On June 23, 2021, Plaintiff was hired to work in iHeart's Atlanta offices as a Vice President and member of the iHeart Atlanta regional sales team that reported directly to Mr. Lauter.

12. Plaintiff received a salary of $180,000, and he was entitled to quarterly bonuses totaling up to $150,000 annually based on individual and overall team performance.

13. Upon starting at iHeart, Plaintiff was immediately subjected to a hostile work environment.

14. iHeart first assigned Plaintiff to the only office decorated with black musical artist.

15. When Plaintiff asked his coworkers who made the decision to put the black artists' artwork in his office, both Mr. Chris Jones - Plaintiff's direct supervisor - and Mr. Garret Stolt (another VP), giggled, stating: *"it's because you're black, Namon."*

16. Thereafter, Mr. Lauter assigned Plaintiff the task of heading up "The Black Information Network (BIN)."

17. When Plaintiff asked Mr. Lauter why he was chosen for the BIN role Mr. Lauter stated, *"because you are black."*

18. While employed in the Atlanta office Mr. Lauter often uttered the racial epithets "Nigger" or "Nigga" in Plaintiff's presence.

19. On or around August 29, 2021, Plaintiff's managers, Drew Lauter and Chris Jones, and Plaintiffs co-worker, Garrett Stolt, all attended the Jim Ellis Automotive Charity Golf Tournament held at Chateau Elan Golf Club.

20. The charity golf tournament was sponsored by iHeart, and the group of men played together in an iHeart foursome.

21. Upon the tournament concluding, Plaintiff, Garrett Stolt, Chris Jones, and Drew Lauter all entered into the same passenger vehicle to begin their commute from the tournament.

22. Chris Jones sat in the driver seat; Garrett Stolt sat in the front passenger seat; and Plaintiff sat in the rear passenger seat behind Chris Jones.

23. Drew Lauter sat to Plaintiff's right in the rear passenger seat behind Garrett Stolt.

24. During the commute, Drew Lauter's behavior became hostile and abusive, and thus Plaintiff took out his cellphone to memorialize Mr. Lauter's live outragous behavior.

25. Plaintiff captured cellphone video of Drew Lauter shouting multiple statements that were discriminatory and misogynistic, including:

    a. *"Black man. White, white man, fuck you. Oh, I'm sorry. Oh, I'm sorry, white man. Fuck you. Negro, suck my dick. Chris, shut up. Shut up. Run over bitches and Negros."*

    b. *"Fuck all you bitches. Suck a dick! Suck a dick! Ouch, I hurt my hand. Shut up. No one likes you, K'Merrit. K"Merrit. [referencing Mr. Garret Stolt] Hey, my name is K' Merrit. I like touching vaginas."*

    c. *"This is Namon. Hey, Shut up. You motherfucker. You better move your arm. You better shut up. Are you black? Are you white, I don't know? No one cares. Show me that titty, give me that titty...give me that titty. You better give me that titty.. You better give me that goddamn titty. Shut the fuck up. You better give me that titty. You better*

*give me that titty. Better give me that titty. Shut the fuck up. Don't fuck with me. You better give me that titty. You better give me that titty. What happened? What happened? What was that?"*

d.  *AHHHH! Are you racist? Black people say it all the time. So do white people… Oh, Nigger, Nigga! Oh..."*

26. After Chris Jones drove Drew Lauter back to his vehicle, Plaintiff reported Drew Lauter's outrageous discriminatory behavior to his direct supervisor Chris Jones - who similarly witnessed Drew Lauter's behavior during the commute.

27. Mr. Jones responded to Plaintiff's complaints about discrimination, "*I will take care of it and talk with him.*"

28. The plaintiff endured ongoing severe and pervasive discrimination, along with a hostile work environment, for the nine months leading up to his termination by Drew Lauter on June 21, 2022.

29. On October 14, 2022, the local ABC News affiliate for Atlanta, WSBTV ran a news story about Drew Lauter's racially discriminatory and misogynistic tirade that was captured on the Plaintiff's cellphone video.[1]

30. On or about October 14, 2022, after the ABC News story, iHeart issued a public announcement that Drew Lauter was no longer an employee, stating:

---

[1] https://youtu.be/1jhrEeU8nAI?si=fwwpCdFD9bDG63kv

*"...[W]hile we do not comment on personnel matters, allegations of this nature go against both our company values and our policies and we take them very seriously. As soon as they were brought to our attention we acted quickly, retaining an outside investigator to conduct a thorough review, and when we received the outside investigator's findings, we took the appropriate course of action."*[2]

31. On or about December 15, 2022, Plaintiff filed a complaint against iHeart with the Equal Employment Opportunity Commission (EEOC).

32. On or around September 15, 2023, Plaintiff received a *Determination and Notice of Rights* letter from the EEOC containing his right to sue.

## COUNT ONE:

## Namon Jones Experienced Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964

33. Plaintiff re-alleges and incorporates every allegation in this Complaint as if each allegation was recounted at length herein.

34. By the acts and practices detailed in this Complaint, Defendants discriminated against Plaintiff on the basis of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

---

[2] https://www.cnn.com/2022/10/14/us/atlanta-radio-executive-departs-racial-slurs-video/index.html

35. As a result of Defendants' discriminatory acts and practices, Plaintiff has suffered and continues to suffer harm and substantial economic losses, including, but not limited to, salary, bonuses, and other monetary benefits, impairment to his name and reputation, and emotional harm and psychological trauma, with associated physical symptoms.

36. Defendants intentionally discriminated against Plaintiff with malice or reckless indifference to Plaintiff's rights thereby entitling Plaintiff to punitive damages.

## COUNT TWO

### Namon Jones Experienced Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964

37. Plaintiff realleges and incorporates every allegation in this Complaint as if each allegation was recounted at length herein.

38. To prove a hostile work environment claim, an employee must show that his "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

39. A plaintiff seeking to prove a Hostile Work Environment claim based on race, must show that (1) he belongs to a statutorily-protected class; (2) has been subject to unwelcome harassment; (3) the harassment was based on a protected

characteristic, such as race or religion, or based on engagement in protected conduct, such as filing an EEOC grievance; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or direct liability. Adams v. Austal, USA, LLC, 754 F.3d 1240, 1248–49 (11th Cir. 2014)

40. By the acts and practices detailed in this Complaint, Defendants discriminated against Plaintiff on the basis of his race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

a. That the Court take jurisdiction of this matter;

b. That process be served;

c. That the Court declaring that the acts and practices complained of herein are unlawful and violate Title VII;

d. That the Court award Plaintiff compensatory damages for back and front pay, bonuses and other monetary benefits to which Plaintiff is entitled;

e. That the Court direct award Defendants front pay and other prospective relief;

f.  That the Court award compensatory damages in an amount to be determined by the trier of fact;

g.  That the Court award punitive damages in an amount to be determined by the trier of fact;

h.  That the Court award Plaintiff costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

i.  That the Court grant such relief as the Court deems proper and just.

Respectfully submitted this 14th day of December, 2023.

                              ATTORNEY FOR PLAINTIFF

/s/ John A. Moore
John A. Moore, Esq.
Georgia Bar No. 519792
THE MOORE LAW GROUP
1745 Martin Luther King Jr. Dr.
Atlanta, GA 30314
(678) 288-5600 – phone
(888) 726-4355 - fax
jmoore@moorelawllc.com