# EXHIBIT A

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-08418-S4**

**11/13/2023 12:08 PM**

**TIANA P. GARNER, CLERK**

## General Civil and Domestic Relations Case Filing Information Form

☐ **Superior or** ☒ **State Court of** ___Gwinnett State Court___ **County**

| For Clerk Use Only | |
|---|---|
| **Date Filed** _____ | **Case Number** _____ |
| **MM-DD-YYYY** | **23-C-08418-S4** |

| **Plaintiff(s)** | **Defendant(s)** |
|---|---|
| Mallik, Ravi | Trustgard Insurance Company |

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix | | Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|---|---|---|---|---|---|

**Plaintiff's Attorney** ___Michael B. Weinstein___   **State Bar Number** ___746386___   **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**
- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☒ Other General Civil

**Domestic Relations Cases**
- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____     _____
**Case Number**                                    **Case Number**

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

# This Page Intentionally Left Blank to Separate Documents

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-08418-S4**
**11/13/2023 12:08 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

### STATE OF GEORGIA

# Ravi Mallik

_____

_____

_____

                     PLAINTIFF

      VS.

# Trustgard Insurance Company

_____

_____

               DEFENDANT

CIVIL ACTION
NUMBER:_____

23-C-08418-S4

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is:

Michael B. Weinstein
3050 Amwiler Road, Ste 200-C
Atlanta, GA 30360

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This **13th**_____ day of **November**_____, 20**23** .

                             Tiana P. Garner
                             Clerk of State Court

                           By_____
                                 Deputy Clerk

**INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.**

**SC-1 Rev. 2011**

# This Page Intentionally Left Blank to Separate Documents

E-FILED IN OFFICE - CB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**23-C-08418-S4**

**11/13/2023 12:08 PM**
TIANA P. GARNER, CLERK

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| RAVI MALLIK, | ) |
| | ) |
| | ) **CIVIL ACTION FILE NO.** |
| **Plaintiff,** | ) |
| | ) |
| v. | ) 23-C-08418-S4 |
| | ) |
| **TRUSTGARD INSURANCE** | ) |
| **COMPANY** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW,** Ravi Mallik ("Plaintiff"), by and through his undersigned counsel, and submits this, his Complaint, against Trustgard Insurance Company ("Defendant"), showing this Court as follows:

1.

Defendant Trustgard Insurance Company is an insurance company organized and existing under the laws of Ohio, with its principal place of business located at 671 S. High Street, Columbus, OH, 43206-1218. Defendant may be served with this lawsuit by service upon its registered agent, CT Corporation, at the address located at 289 S. Culver St., Lawrenceville, Gwinnett County, GA, 30046, or as otherwise allowable at law.

2.

Jurisdiction rests with this Court and is proper as these case sounds in breach of contract.

3.

Venue is proper in this Court pursuant to O.C.G.A. §33-4-1(2) because the Defendant's registered agent is located in Gwinnett County.

4.

On or about October 26, 2021, Plaintiff renewed a Dwelling Fire Policy from Defendant, Policy No. DF 3908438 11 (the "Policy"), in which in exchange for payment of a premium by Plaintiff, Defendant agreed to provide insurance coverage for Plaintiff's property located at 988 Northrope Drive, Atlanta, GA 30324 ("Property"). A copy of the policy is attached hereto as Exhibit "[A]."

5.

The Policy is an all-risk policy, meaning that direct physical loss is covered unless otherwise excluded. Specifically, Section I – Perils We Insure Against, states "We cover direct physical loss to the property insured under Coverage A – Dwelling...except for losses excluded in Section I.

6.

The Property had been used as a rental property by Plaintiff and was not Plaintiff's primary residence. In late November 2020, because of a vacancy, Plaintiff caused the utilities to the property, including the water, to be cut off.

7.

On or about September 17, 2021, the Fulton County Sheriff's Office effected an eviction at the Property. On the same day, Plaintiff performed a brief walkthrough of the property and had a contractor remove all personal property and debris from the Property. On this day, Plaintiff did not observe any physical damage to the Property.

8.

For the approximate time period of October 2021 through August 5, 2022, the Property remained empty, and Plaintiff did not go inside the Property.

9.

Thereafter, on or about August 5, 2022, Plaintiff returned to the property and became aware that there was water flowing from somewhere in the house and that there was substantial water damage to the Property.

10.

Shortly after discovering the substantial damage to the Property, Plaintiff contacted Defendant to report the damage, and Defendant issued claim number ZHM003472119 (the "Claim")

11.

The Claim is a covered loss pursuant to the terms and conditions of the Policy.

12.

After being advised of the Claim, Defendant conducted an investigation into the cause of the damage.

13.

As part of its investigation, Defendant made demands upon Plaintiff to produce documents, provide information, and attend an Examination Under Oath. Plaintiff fully complied with all demands made upon him by Defendant.

14.

On or about June 30, 2023, Defendant sent a notice of cancellation to Plaintiff ("Cancellation Notice"). The Cancellation Notice informed Plaintiff

that the Policy was being cancelled in whole or in part on information contained in a consumer report. The Cancellation Notice informed Plaintiff that the Policy would be cancelled at 12:01 A.M. standard time on August 5, 2023. The Cancellation Notice is attached hereto as Exhibit "[B]."

15.

On or about July 17, 2023, Defendant notified Plaintiff it was declining to provide coverage for the Claim, and as a result, Defendant has not paid any money due and owing under the Policy to Plaintiff. A copy of the denial letter is attached hereto as Exhibit "[C]."

16.

On July 24, 2023, Plaintiff, through counsel, made a written demand to Defendant to within sixty (60) days, acknowledge full coverage of the Claim, adjust the Claim in good faith, and issue payment accordingly ("Demand"). A copy of the July 24, 2023, letter is attached hereto as Exhibit "[D]."

17.

The Demand informed Defendant that if it failed, within sixty (60) days, to acknowledge full coverage of the Claim, adjust it in good faith, and issue payment accordingly, Plaintiff would commence litigation and would pursue claims for breach of contract and bad faith damages pursuant to O.C.G.A. §33-4-6.

18.

As of the filing of this Complaint, more than sixty (60) days have elapsed since the Demand was received by Defendant, and Defendant has failed to acknowledge coverage of the Claim or issue payment on the Claim.

19.

As a result of Defendant's actions, it has breached the terms and conditions of the Policy, and such breach shall be considered to be done in bad faith pursuant to O.C.G.A. §33-4-6.

## COUNT 1 – BREACH OF CONTRACT

20.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-19 above.

21.

The Policy constitutes a valid, binding contract between Plaintiff and Defendant, and pursuant to the terms and conditions contained therein, the Claim is a covered loss under the policy and should be paid in an appropriate manner.

22.

Defendant has breached the Policy by denying coverage of the Claim, and as a result thereof, Plaintiff has been damaged in an amount to be proven at trial, with said amount exceeding $75,000.00.

## COUNT II – BAD FAITH PURSUANT TO O.C.G.A. §33-4-6

23.

Plaintiff hereby incorporates by reference the allegations set forth in Paragraphs 1-23 above.

24.

On July 24, 2023, Plaintiff, through counsel, sent the Demand to Defendant to within sixty (60) days, acknowledge full coverage of the Claim, adjust the Claim in good faith, and issue payment accordingly.

25.

Despite receiving the Demand, Defendant has failed to acknowledge full coverage of the claim and has failed to issue payment on the claim.

26.

The Demand informed Defendant that if it failed, within sixty (60) days, to acknowledge full coverage of the Claim and issue payment accordingly, Plaintiff would commence litigation and would pursue claims for breach of contract and bad faith damages pursuant to O.C.G.A. §33-4-6.

27.

More than sixty (60) days have elapsed since the Demand was received by Defendant and the filing of this action, and Defendant's refusal to acknowledge coverage of the Claim and pay it in full constitutes bad faith, and pursuant to O.G.G.A. §33-4-6, Plaintiff is entitled to recover up to an additional fifty percent (50%) of his damages and his attorney's fees and court costs.

## PRAYER

WHEREFORE, Plaintiff respectfully prays he be granted judgement in his favor against Defendant, for:

a. The full amount of the damage to the Property, and other associated damages, as a result of the loss that occurred sometime between about October 1, 2022, and August 5, 2023;

b. Bad faith penalties pursuant to O.C.G.A. § 33-4-6;

c. Pre- and post-judgement interest; and

d. All other damages deemed just by this Honorable Court and a jury of Plaintiff's peers.

## PLAINTIFF REQUESTS A JURY OF TWELVE (12) PERSONS ON THE ISSUES AS JOINED BY THE PLEADINGS

Respectfully submitted this 13th day of November 2023.

WEINSTEIN & BLACK, LLC

/s/Michael B. Weinstein
Michael B. Weinstein, Esq.
Georgia Bar No. 746386
James D. Elliott, Esq.
Georgia Bar No. 892116
3050 Amwiler Road
Ste. 200.C
Atlanta, GA 30360
(404) 228-2629 (O)
mike@wblegal.net
james@wblegal.net
*Attorneys for Plaintiff*

# EXHIBIT A

November 16, 2022

To Whom It May Concern,

When a certified policy request is received, it is our practice to notarize the affidavit which accompanies the certified policy documents. However, due to the COVID-19 pandemic, our company is following a hybrid work schedule to ensure the health and safety of our associates. Business operations continue, however there may be scenarios where we are unable to provide a notarized certified policy affidavit due to scheduling conflicts.

Should you require the accompanying affidavit to be notarized, we will make arrangements to provide this at a later date. We apologize for any inconvenience this may cause and thank you for your patience and understanding at this time.

Sincerely,

**Kim Colopy**

Personal Lines Operations Assistant

P: 614-561-9376

grangeinsurance.com

 

Grange Enterprise Companies

AFFIDAVIT

STATE OF OHIO            )
                         )  ss
COUNTY OF FRANKLIN   )

First being duly cautioned and sworn, Kim Colopy states as follows:

1.  The matters in this Affidavit are made on my personal knowledge and review of business records and I am competent to testify to the matters stated in this Affidavit.

2.  I am employed by Grange Insurance Company as an Operations Assistant and that in such capacity I have access to certain business records of that Company, including insurance records concerning the policy of insurance issued to Ravi J Mallik.

3.  This information is being presented in response to a request regarding Claim Number: ZHM003472119

4.  After examining the records concerning said insured, Trustgard Insurance Company has issued to said insured a Home Policy number DF 3908436.

5.  I have assembled a copy of the referenced policy which is attached hereto and which shows the policy coverages and amounts thereof in effect on 08/05/2022.

6.  Further affiant saith naught.

<br>

_____
**Kim Colopy**

<br>

Subscribed and sworn to in my presence at Columbus, Ohio, this 16th day of November, 2022.

<br>

_____
**Notary Public**

MARSH & MCLENNAN AGENCY LLC
47 POSTAL PARKWAY
NEWNAN, GA       30263

**Trustgard Insurance Company**
P.O. Box 1218
Columbus, Ohio 43216-1218

(855) 293-3833
Agent No. 10-135-00
mypolicy@grangeinsurance.com
www.jsmithlanier.com

**Declarations Page**

**To report a new claim, call**
1-800-445-3030 or your agent

**Named Insured and Address**

| Policy Type: *Dwelling Fire* |
| --- |

**Reason Issued:** *Renewal*
**Policy Number:** DF 3908436-11
**Issue Date:** 09/27/21
**Billable Party:** *Mortgagee*

RAVI J MALLIK
1014 NORTHROPE DR NE
ATLANTA GA   30324

**From:** 10/26/21 **To:** 10/26/22   12:01 a.m. standard time at the described location and for additional 12 month periods if renewed, as provided in the policy. These declarations with policy provisions, applications, forms, and endorsements, if any, complete the above numbered policy.

The premises covered by this policy is located at: 998 NORTHROPE DR NE
                                                      ATLANTA GA        30324

*Coverage is provided where a specific premium charge or limit of liability is shown.*

| Coverages | Limits of Liability | Premium |
| --- | --- | --- |
| **TOTAL POLICY PREMIUM** | | **$1,542.00** |
| **Section I - Property Protection** | | |
| Coverage A - Dwelling | $279,100 | 2,374.00 |
| Coverage B - Other Structures | 27,910 | Included |
| Coverage C - Personal Property | | |
| Coverage D - Loss of Rents | 27,910 | Included |
| Coverage E - Additional Living Expenses | 27,910 | Included |
| Loss deductible  $1000 | | |
| **Section II - Liability Protection** | | |
| Coverage L - Premises Liability | | |
| Coverage M - Premises Medical Payments | | |
| **Total Basic Coverage Premium** | | 2,374.00 |
| **Total Discounts, Surcharges and Optional Coverages Premium** | | 832.00CR |
| Your Total Policy Premium Is | | **$1,542.00** |

**THIS IS NOT A BILL.**
Any outstanding balance due will be billed at a later date.

*Continued...*
DFPOL1C

DF 241C (08-2006)

| Other Interests/Additional Named Insureds | | |
|---|---|---|
| First Mortgagee<br>NATIONSTAR MORTGAGE LLC<br>ISAOA<br>PO BOX 7729<br>SPRINGFIELD OH<br>45501<br>Loan Number: 0598674380 | | |

### Type of Policy & Rating Information

| | |
|---|---|
| Dwelling Form: DF-3 (11/15) | Dwelling Number: 1 |
| Number of Families: 1 | Territory: 032 |
| Type of Construction: Frame | Residence Usage: Tenant Occupied |
| Protection Class: 1 | |

### Description of Discounts, Surcharges and Optional Coverages

| | Premium |
|---|---|
| Inflation protection applies to this residence at renewal, Additional Coverage - Section I. | Included |
| Section I - Fungi, Wet or Dry Rot, or Bacteria Coverage Coverage Applies to Unit Number 1 Base Policy Limit = $13,955 | Included |
| Policy Deductible Charge Or Credit | $261.00CR |
| Age of Dwelling Adjustment | $457.00 |
| Insurance Score Level 31Q | $1,028.00CR |
| MU-01 (01-2019) Mutual Conditions | No Charge |
| NM-01 (01-2019) Company Name Change - Grange | No Charge |
| Discount/Surcharges are estimated. The sum of discounts/surcharges may not add up to the total due to rounding. | |
| **Total Discounts, Surcharges and Optional Coverages Premium** | 832.00CR |

Named Insured: *RAVI J MALLIK*
Policy Number: *DF 3908436*

| **Mutual Conditions** | **MU 01** |
| --- | --- |

Grange Insurance Company
671 South High Street
Columbus, OH 43206-1066

**Policy Number:** FA 2468182

*This endorsement should be attached to **your** policy as it constitutes an important part of the contract.*

By acceptance of this policy and payment of the premium, **you** become a member of Grange Mutual Holding Company, and shall be entitled to vote at all member meetings of the Grange Mutual Holding Company, but upon cancellation or other termination of this policy, **you** shall cease to be a member.

**Policy Non-Assessable**

This policy is non-assessable.

**Notice of Members' Annual Meeting**

**You,** by virtue of this policy, are a member of Grange Mutual Holding Company while this policy is in force and are entitled to one vote at all meetings of the members. The annual meeting of the members is held at 10:00 A.M. on the fourth Thursday of February of each year at **our** Home Office, Columbus, Ohio, for the election of directors and for the transaction of such other business as may properly come before the meeting.

| Endorsement | NM 01 |
|---|---|

**Company Name Change – Grange**

*This endorsement should be attached to **your** policy as it constitutes an important part of the contract.*

When this endorsement appears on the Declarations page, the policy is changed as follows:

When used in the policy, or any forms included with the policy, the words Grange Mutual Casualty Company now means Grange Insurance Company.

All other terms, agreements, conditions, and provisions remain unchanged.

# Dwelling Fire Policy DF-3 Special Form

*Georgia*



**Trustgard Insurance Company**
**671 South High Street ● Columbus, OH 43206-1066**

*A Stock Company Wholly-Owned by*
*Grange Mutual Casualty Company*

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

THIS PAGE

INTENTIONALLY

LEFT BLANK.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

DWELLING FIRE POLICY COVER SHEET

This Dwelling Fire Policy Cover Sheet identifies the important forms that make up **your** Dwelling Fire insurance policy. **Your** Dwelling Fire insurance policy is a legal contract between **you** and Trustgard Insurance Company and consists of the following forms:

**Declarations Page**

This is the form which shows **your** coverages, amounts of insurance, premium charges, risk characteristics, and any endorsements that modify **your** policy or provide **you** with additional coverages.

| Policy Form/Section | Page Numbers | Form Number | Edition Date |
|---|---|---|---|
| DF-3 Special Form - GEORGIA | | | |
| Policy Form Title Page | | BHH205Q | (11-2015) |
| Dwelling Fire Policy Cover Sheet | | BHH205QJ | (11-2015) |
| Index | Index - 1 and 2 | IHH205QK | (5-2007) |
| Definitions | Definitions - 1 and 2 | IHH205QL | (5-2007) |
| Section I - Property Protection | A - 1 through A - 6 | IHH205QA | (5-2007) |
| Section I - Perils We Insure Against | B - 1 and B - 2 | AHH205QB | (3-2010) |
| Section I - Property Protection Exclusions | C - 1 through C - 4 | AHH205QC | (3-2010) |
| Section I - Property Protection Conditions | D - 1 through D - 4 | AHH205QD | (3-2010) |
| Section II - Liability Protection | E - 1 and E - 2 | AHH205QE | (3-2010) |
| Section II - Liability Protection Exclusions | F - 1 through F - 4 | AHH205QF | (3-2010) |
| Section II - Liability Protection Conditions | G - 1 and G - 2 | IHH205QG | (5-2007) |
| Section I - Property Protection and Section II - Liability Protection Conditions | H - 1 through H - 4 | AHH205QH | (11-2015) |

**Endorsements**

Endorsements that modify **your** coverage may be included with **your** DF-3 Special Form - Georgia policy. If so, they will be listed on **your** Declarations Page.

**Please read your Declarations Page, DF-3 Special Form - Georgia policy form, and any endorsements included with your policy carefully.**

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

THIS PAGE

INTENTIONALLY

LEFT BLANK.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

**Your** Dwelling Fire insurance policy is an important legal contract between **you** and Trustgard Insurance Company. **PLEASE READ YOUR POLICY CAREFULLY.** This policy sets forth, in detail, the rights and obligations of both **you** and Trustgard Insurance Company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY.**

The following Index identifies the major provisions of **your** policy and the page number where these provisions are located in **your** policy form. Amendatory or optional coverage endorsements may be attached to **your** policy to modify these policy provisions or provide **you** with additional coverage(s).

THESE POLICY PROVISIONS WITH THE DECLARATIONS PAGE AND ENDORSEMENTS, IF ANY, COMPLETE THIS POLICY.

## INDEX

| Subject | Beginning On Page |
|---|---|
| Agreement | Definitions - 1 |
| Definitions | Definitions - 1 |
| **Section I - Property Protection** | |
| Additional Coverages | A - 3 |
| Collapse | A - 3 |
| Debris Removal | A - 4 |
| Emergency Removal of Property | A - 4 |
| Fire Department Charges | A - 4 |
| Glass or Safety Glazing Material | A - 4 |
| Inflation Protection | A - 4 |
| Loss of Rents and Additional Living Expenses | A - 4 |
| Necessary Repairs After Loss | A - 4 |
| Other Structures | A - 5 |
| Trees, Shrubs, Plants and Lawns | A - 5 |
| Conditions | D - 1 |
| Abandoned Property | D - 3 |
| Appraisal | D - 2 |
| How Losses Are Settled | D - 1 |
| Insurable Interest | D - 3 |
| Loss Payable Clause | D - 4 |
| Loss to a Pair or Set | D - 3 |
| Mortgagee | D - 3 |
| No Benefit to Bailee | D - 4 |
| Other Sources of Recovery | D - 4 |
| Our Payment of Loss | D - 3 |
| Recovered Property | D - 4 |
| Suit or Claims Against Us | D - 3 |
| What to do in Case of Loss | D - 1 |
| Coverage A - Dwelling | A - 1 |
| Coverage B - Other Structures | A - 1 |
| Coverage C - Personal Property | A - 1 |
| Coverage D - Loss of Rents | A - 2 |
| Coverage E - Additional Living Expenses | A - 3 |
| Deductible | D - 1 |
| Exclusions | C - 1 |
| Perils We Insure Against | B - 1 |

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

<u>Subject</u>

<u>Beginning<br>On Page</u>

**Section II - Liability Protection**

Additional Coverages ........................................................................................ E - 2
   Claims Expenses ........................................................................................ E - 2
   First Aid Expenses ........................................................................................ E - 2

Conditions ........................................................................................ G - 1
   Bankruptcy of an Insured Person ........................................................................................ G - 2
   Duties of an Injured Person -- Coverage M - Premises Medical Payments Coverage ................ G - 1
   Limits of Liability ........................................................................................ G - 1
   Other Insurance -- Coverage L - Premises Liability Coverage ........................................ G - 2
   Severability of Insurance ........................................................................................ G - 1
   Suit Against Us ........................................................................................ G - 1
   What to do in Case of Bodily Injury or Property Damage ............................................ G - 1
Coverage L - Premises Liability Coverage ........................................................................ E - 1
Coverage M - Premises Medical Payments Coverage ........................................................ E - 1

Exclusions ........................................................................................ F - 1

**Section I - Property Protection and Section II - Liability Protection Conditions**

Assignment ........................................................................................ H - 1
Cancellation ........................................................................................ H - 1
   Our Right to Cancel or Refuse to Renew ........................................................................ H - 1
   Return of Premium ........................................................................................ H - 1
   Your Right to Cancel ........................................................................................ H - 1
Changes ........................................................................................ H - 2
Concealment or Fraud ........................................................................................ H - 2
Conformity to State Law ........................................................................................ H - 2
Continuous Renewal ........................................................................................ H - 2
Earned Premium Collection for a Canceled Policy ........................................................ H - 3
Joint Obligations ........................................................................................ H - 2
Known Loss ........................................................................................ H - 2
Our Right to Recover Payment ........................................................................................ H - 2
Policy Period ........................................................................................ H - 2

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## AGREEMENT

In return for **your** premium payment and **your** compliance with all of the provisions of this policy, **we** agree to provide insurance subject to all the terms of this policy. The coverages provided, the limits of **our** liability and the premiums are shown on the Declarations Page of this policy.

## DEFINITIONS

The following terms appear in bold type throughout this policy and are defined as follows:

1. **"You"** and **"your"** refer to the Named Insured shown on the Declarations Page. **"You"** and **"your"** also includes the spouse of an individual Named Insured shown on the Declarations Page if that spouse is a resident of the same household as the individual Named Insured.

2. **"We"**, **"us"** and **"our"** refer to Trustgard Insurance Company.

3. **"Bodily injury"** means bodily harm, sickness or disease, including required care, loss of services, and resulting death.

4. **"Business"** means any full-time or part-time trade, profession or occupation. It does not include the rental or holding for rent any part of the **insured premises** for use as a dwelling.

5. **"Fungi"** means:

   a. any type or form of fungus, including mold or mildew, and any mycotoxins, spores, or by-products produced or released by **fungi**.

   b. under Section II - Liability Protection, this does not include any **fungi** that are on, or are contained in, a good or product intended for consumption.

6. **"Insured"** means:

   a. the person or organization shown as the Named Insured on the Declarations Page;

   b. any person or organization while acting as real estate manager for **you**; and

   c. any additional insured shown on the Declarations Page, but only for Coverage A - Dwelling, Coverage B - Other Structures, Coverage L - Premises Liability, and Coverage M - Premises Medical Payments and only for the **insured premises**.

7. **"Insured premises"** means the premises covered by this policy at the location shown on the Declarations Page.

8. a. **"Motor vehicle"** means:

   (1) any registered or unregistered motorized vehicle or conveyance which is designed for travel on public roads or property;

   (2) any registered or unregistered motorized vehicle or conveyance designed for recreational use off public roads;

   (3) any other registered or unregistered motorized vehicle or conveyance that is not described in 8. a. (1) or 8. a. (2) above;

   (4) any hovercraft, amphibious vehicle, or aircraft;

   (5) any trailer which is being carried on, towed by or hitched for towing by a vehicle described in 8. a. (1) through 8. a. (4) above, or a semi-trailer regardless of its use;

   (6) any vehicle while being towed by or carried on a vehicle or conveyance described in 8. a. (1) through 8. a. (5) above;

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

(7) any vehicle or conveyance described in 8. a. (1) through 8. a. (5) above that:

(a) is not maintained and in good or workable condition; or

(b) is outdated, obsolete or unusable and is stored or not being used.

(8) equipment and accessories of any motorized vehicle or conveyance, trailer or semi-trailer defined in 8. a. (1) through 8. a. (7) above.

b. Under Section I - Property Protection coverages, **motor vehicle** does not include a motorized vehicle or conveyance which is not required to be registered for use on public roads or property and is:

(1) used solely to service the **insured premises**; or

(2) designed for assisting the handicapped.

9. "**Occurrence**" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in **bodily injury** or **property damage** during the policy period.

10. "**Property damage**" means physical injury to or destruction of tangible property, including loss of its use.

11. "**Remediation**" includes, but is not limited to:

a. any remediation of **fungi**, wet or dry rot, or bacteria, including the cost or expense to:

(1) remove the **fungi**, wet or dry rot, or bacteria from covered property or to repair, restore or replace that property;

(2) tear out and replace any part of the building or other covered property as needed to gain access to the **fungi**, wet or dry rot, or bacteria; and

(3) contain, treat, detoxify, neutralize or dispose of or in any way respond to or access the effect of the **fungi**, wet or dry rot, or bacteria;

b. the cost of any and all testing or expense associated with confirming the type, absence, presence, or level of **fungi**, wet or dry rot, or bacteria and its origin, whether performed prior to, during or after removal, repair, restoration, or replacement of covered property.

12. "**Residence employee**" means an employee of an **insured** whose duties are in connection with the maintenance or use of the **insured premises**.

## SECTION I - PROPERTY PROTECTION

## COVERAGE A - DWELLING

A. **We** cover:

    1. the dwelling, including structures attached to it, on the **insured premises** shown on the Declarations Page. The dwelling must be used principally for dwelling purposes.

    2. construction materials and supplies on or adjacent to the **insured premises** for use in the construction, alteration or repair of the dwelling on the **insured premises**.

    3. building equipment and outdoor equipment used to service the **insured premises** if such equipment is:

        a. owned by **you**;

        b. located at the **insured premises**; and

        c. not covered otherwise in this policy.

B. **We** do not cover land or water, no matter where located, or the replacement, rebuilding, restoration, remediation, stabilization or value of any such land or water.

## COVERAGE B - OTHER STRUCTURES

A. **We** cover:

    1. other structures on the **insured premises** which are not attached to the dwelling and are permanently attached to or otherwise forming a part of the realty. Structures connected to the dwelling by only a utility line, fence or similar connection are considered to be other structures and not part of the dwelling.

    2. construction materials and supplies on or adjacent to the **insured premises** for use in the construction, alteration or repair of the other structures on the **insured premises**.

B. **We** do not cover:

    1. other structures on the **insured premises**, which are not attached to the dwelling and are permanently attached to or other wise forming a part of the realty, if used to any extent for **business** purposes;

    2. other structures on the **insured premises**, which are not attached to the dwelling and are permanently attached to or other wise forming a part of the realty, if rented or held for rental in whole or in part to a person other than a tenant of the dwelling, unless used only for private garage purposes; or

    3. land or water, no matter where located, or the replacement, rebuilding, restoration, remediation, stabilization or value of any such land or water.

## COVERAGE C - PERSONAL PROPERTY

A. We cover personal property usual to the occupancy as a dwelling and owned or used by an **insured** while the property is on the **insured premises**. This includes items not permanently attached to or otherwise forming a part of the realty. Personal property located away from the **insured premises**, anywhere in the world, is covered up to a limit that is 10% of the Coverage C - Personal Property limit shown on the Declarations Page. This 10% limit does not increase the limit shown on the Declarations Page for Coverage C - Personal Property.

**We** also cover **your** personal property, which is removed from the **insured premises** to **your** newly acquired principal residence, for the first 30 days after **you** begin to move property there.  This coverage does not apply after  the termination date of this policy.  The amount of insurance that applies at each location, while **you** are moving, is the proportion of the limit of liability that the covered value of the personal property at each dwelling bears to the value of all covered personal property.

B. At **your** request, **we** will cover personal property of a guest or **residence employee** while the property is on the **insured premises**.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

C. **We** do not cover:

1. animals, birds, fish or reptiles.

2. **motor vehicles**.

3. aircraft and parts. But **we** do cover model airplanes not used or designed for transporting cargo or persons.

4. money, bank notes, bullion, coins and medals and other numismatic property and precious metals including platinum, gold and silver.

5. securities, accounts, deeds, evidence of debt, letters of credit, notes other than bank notes, passports, manuscripts, tickets, stamps and other philatelic property.

6. watercraft of all types (other than rowboats or canoes while on the **insured premises**), including their trailers, furnishings, equipment and outboard motors.

7. data, including data stored in:

   a. books of account, drawings or other paper records;  or

   b. electronic data processing tapes, wires, records, discs or other software media.

However, **we** do cover the cost of blank recording or storage media and of pre-recorded computer programs available on the retail market.

8. credit cards, gift cards or fund transfer cards.

9. electronic apparatus and accessories, while in or upon a **motor vehicle** but only if the apparatus is equipped to be operated by power from the electrical system of the **motor vehicle** while still capable of being operated by other power sources.  Accessories include antennas, tapes, wires, records, discs or other media that can be used with any such apparatus.

10. land or water, no matter where located, or the replacement, rebuilding, restoration, remediation, stabilization or value of any such land or water.

11. property specifically described and insured by this or any other insurance.

---

## COVERAGE D - LOSS OF RENTS

A. **We** will pay for **your** loss of rent resulting from a covered loss while the rented part of the **insured premises** is uninhabitable, less charges and expenses which do not continue during that time.  **We** will pay this loss of rent only for the shortest time needed to make the rented part habitable, but not to exceed 12 months.

B. If damage caused by a Peril **We** Insure Against occurs at a neighboring premises, **we** will pay reasonable loss of rent for up to 15 days should civil authorities prohibit occupancy of the **insured premises**.

Payment under this coverage will not exceed the limit shown on the Declarations Page for Coverage D - Loss of Rents.

The period of time allowed for this coverage will not be shortened by the expiration of this policy.

**We** will not pay for loss or expense due to the cancellation of a lease or agreement.

No deductible will apply to this coverage.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## COVERAGE E - ADDITIONAL LIVING EXPENSES

A.  If a covered loss makes the **insured premises** uninhabitable, **we** will pay the reasonable increase in **your** living expenses necessary to maintain **your** normal standard of living while **you** live elsewhere.

**Our** payment is limited to increased costs **you** incur for the shortest of:

1.  the time required to repair or replace the damaged property;

2.  the time required for **your** household to settle elsewhere;  or

3.  9 months.

B.  If damage caused by a Peril **We** Insure Against occurs at a neighboring premises, **we** will pay reasonable additional living expenses for up to 15 days should civil authorities prohibit occupancy of the **insured premises**.

Payment under this coverage will not exceed the limit shown on the Declarations Page for Coverage E - Additional Living Expenses.

The period of time allowed for this coverage will not be shortened by the expiration of this policy.

**We** will not pay for loss or expense due to the cancellation of a lease or agreement.

No deductible will apply to this coverage.

## SECTION I - ADDITIONAL COVERAGES

1.  **Collapse**

    a.  **We** cover direct physical loss to covered property caused by the complete **collapse** of a building or any part of a building.

    b.  **Collapse**, as used in this coverage, means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of **collapse** if it is standing:

        (1)  but not in imminent danger of falling down or caving in;
        (2)  but has separated from any other part of the building; or
        (3)  even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    c.  The **collapse** must be sudden and accidental and caused by one or more of the following:

        (1)  Perils **We** Insure Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this Additional Coverage;
        (2)  hidden decay;
        (3)  hidden insect or vermin damage;
        (4)  weight of contents, equipment, animals or people;
        (5)  weight of rain which collects on a roof; or
        (6)  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

    d.  **We** do not cover loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock under items 1. c. (2) through 1. c. (6) above, unless the loss is a direct result of the **collapse** of a building.

    e.  This coverage does not increase the limit of liability applying to the damaged covered property.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

2. **Debris Removal**

   **We** will pay reasonable expenses **you** incur to remove debris of covered property if a Peril **We** Insure Against causes the loss to that covered property.

   This expense is included in the limit of liability shown on the Declarations Page that applies to the damaged property. If the loss to that property and the cost of debris removal is more than **our** limit of liability for the property, **we** will pay up to an additional 5% of that limit for debris removal.

3. **Emergency Removal of Property**

   **We** will pay for covered property damaged in any way when being removed or while removed from a premises because of danger from a Peril **We** Insure Against. Coverage is limited to a 30-day period from date of removal. Payments will not increase the amount of insurance applying to the covered property.

4. **Fire Department Charges**

   **We** will pay up to $500 for **your** liability under an agreement for service charges made by a fire department when called to protect **your** covered property from a Peril **We** Insure Against. **We** will not pay if the covered property is within the limits of the city, municipality, or protection district which provides the fire department response. Payments are in addition to the amount of insurance applying to the loss. No deductible applies to this coverage.

5. **Glass or Safety Glazing Material**

   **We** cover the breakage of glass or safety glazing material which is part of a covered building, storm door or storm window. **We** also cover damage to covered property caused by breakage of glass or safety glazing material which is part of a building, storm door or storm window.

   This coverage does not include loss on the **insured premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   Loss for damage to glass will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

   This coverage does not increase the limit of liability that applies to the damaged property.

6. **Inflation Protection**

   The limits of **our** liability shown on the Declarations Page of this policy for Coverage A - Dwelling will be increased by an amount as determined by **us**. This increase will be applied at the renewal date of the policy. In no event will the limits of liability be reduced to less than those shown on the most recent Declarations Page.

7. **Loss of Rents and Additional Living Expenses**

   **You** may apply up to a total of 10% of the limit of liability shown on the Declarations Page for Coverage A - Dwelling, to cover Additional Living Expenses and Loss of Rents as described in this policy under Coverage D - Loss of Rents, and Coverage E - Additional Living Expenses. Payment under this coverage will not reduce the limit of liability applying to Coverage A - Dwelling.

8. **Necessary Repairs After Loss**

   **We** will pay the reasonable cost of necessary repairs made solely to protect covered property from additional damage following a loss from a Peril **We** Insure Against. Payments will not increase the amount of insurance applying to the covered property.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

9. **Other Structures**

**You** may apply up to 10% of the limit of liability shown on the Declarations Page for Coverage A - Dwelling, to a loss to structures, as described in this policy under Coverage B - Other Structures, caused by a Peril **We** Insure Against.  Payment under this coverage will not reduce the limit of liability applying to Coverage A - Dwelling.

10. **Trees, Shrubs, Plants and Lawns**

   a. **We** will pay up to 5% of the limit of liability shown on the Declarations Page under Coverage A - Dwelling, for loss to trees, shrubs, plants and lawns at the **insured premises**.  Coverage applies to loss caused by the following Perils **We** Insure Against:  Fire or Lightning, Explosion, Riot or Civil Commotion, Aircraft, Smoke, Collapse of building, Vehicles not owned or operated by an occupant of the **insured premises**, Vandalism or Malicious Mischief or Burglars.  Payments are in addition to the amount of insurance shown on the Declarations Page under Coverage A - Dwelling.

   b. **We** will not pay:

      (1) more than $500 of this limit on any one tree, shrub or plant;  or

      (2) for trees, shrubs, plants or lawns grown for **business** purposes.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

THIS PAGE

INTENTIONALLY

LEFT BLANK.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION I - PERILS WE INSURE AGAINST

A. **We** cover direct physical loss to property insured under Coverage A - Dwelling and Coverage B - Other Structures except for losses excluded in Section I - Property Protection Exclusions.

B. **We** cover direct physical loss to property insured under Coverage C - Personal Property caused by:

1. **Fire or Lightning**

2. **Windstorm or Hail**

   This does not include loss:

   a. caused directly or indirectly by frost, cold weather, ice other than hail, snow or sleet whether driven by wind or not;

   b. to the interior of a building, or property within, caused by rain, snow, sand, sleet or dust unless the building is first damaged by the direct force of wind or hail, creating an opening through which the rain, snow, sand, sleet or dust enters; or

   c. to the following when outdoors:

      (1) radio, or television antennas or aerials including their lead-in wiring, masts or towers;

      (2) watercraft and their trailers, furnishings, equipment and motors;

      (3) lawns, trees, shrubs, or plants; or

      (4) awnings, canopies and signs.

3. **Explosion**

4. **Riot or Civil Commotion**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, if the loss is sudden and accidental. This peril does not apply to loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or Malicious Mischief**

   This peril does not apply to loss:

   a. by theft, burglary or larceny; or

   b. at the **insured premises** if the covered dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. **Burglars**

   **We** do not cover any loss to property:

   a. taken by burglars; or

   b. at the **insured premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

10. **Falling Objects**

    This peril does not apply to loss to:

    a. property within a building unless the falling object first damages the exterior of the building;

    b. outdoor radio and television antennas and aerials, including their lead-in wiring, masts or towers;  or

    c. outdoor equipment, awnings, canopies and fences.

    **We** do not cover damage to the falling object.

11. **Weight of ice, snow or sleet** which damages property in the building.

12. **Sudden and accidental tearing apart, cracking, burning, bursting or bulging** of a steam or hot water heating system, air conditioning system or automatic fire protection sprinkler system or a water heater. This peril does not apply to loss to the system, or water heater, or loss which is caused by or results from freezing except as provided by the peril of Freezing in this policy.

13. **Sudden and accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater, or household appliance.

    This peril does not apply to loss:

    a. to the system, water heater, or household appliance from which the water or steam escapes;

    b. due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of weeks, months or years and results in deterioration, corrosion, rust, or **fungi;**

    c. caused by or resulting from freezing except as provided by the peril of Freezing in this policy;

    d. at the **insured premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A building under construction is not considered to be vacant; or

    e. on the **insured premises** caused by accidental discharge or overflow which occurs off the **insured premises**.

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater, or household appliance.

    This peril does not include loss on the **insured premises** while the dwelling is vacant, unoccupied or being constructed, unless **you** have used reasonable care to:

    a. maintain heat in the building; or

    b. shut off the water supply and drain the systems, water heater and household appliances of water.

    In this peril, a plumbing system does not include a sump, sump pump or related equipment.

15. **Volcanic Eruption** other than loss caused by earthquake, land shock waves or tremors. Volcanic eruption means the eruption, explosion or effusion of a volcano.

    One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION I - PROPERTY PROTECTION EXCLUSIONS

A. **We** do not cover loss resulting directly or indirectly by any of the following under any Section I - Property Protection coverages. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. Enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy. **We** do cover loss caused by actions of civil authorities to prevent the spread of a fire caused by a Peril **We** Insure Against.

2. Earthquake or other earth movement including loss caused by, contributed to or aggravated by landslide, mine subsidence, mudflow, earth sinking, rising or shifting.

3. Water damage, meaning:

   a. flood, surface water, waves, tidal water or overflow of a body of water. **We** do not cover spray from any of these, whether or not driven by wind;

   b. water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

   c. water or water-borne material below the surface of the ground. This includes water which exerts pressure on or flows, seeps or leaks through any part of a building or other structure, sidewalk, driveway, foundation or swimming pool;

   caused by or resulting from human or animal forces or any act of nature.

   This exclusion (A.3.c.) does not apply when water seepage or leakage is unknown to the insured person and is hidden from view.

   **We** do cover direct loss that follows, caused by fire or explosion.

4. Failure or interruption of power or other utility service which occurs away from the **insured premises**. **We** will pay for loss caused solely by a Peril **We** Insure Against that ensues at the **insured premises**.

5. Neglect of an **insured** to use all reasonable means to protect covered property at and after the time of loss, or when property is endangered by a covered loss under Section I - Property Protection.

6. War (declared or undeclared), civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. Nuclear action, meaning nuclear reaction, radiation, radioactive contamination or discharge of a nuclear weapon even if accidental, or any consequence of any of these. Loss caused by nuclear action is not considered loss by perils of Fire, Explosion or Smoke. Direct loss by fire resulting from nuclear action is covered.

8. a. Intentional acts, meaning loss resulting from an action by or at the direction of any **insured**, committed with the intent to cause a loss, or where the results of such action are reasonably foreseeable and cause a loss. Intentional acts include criminal acts for which an **insured** is actually convicted. In the event of such loss, no **insured** is entitled to coverage, even an **insured** who did not commit or conspire to commit the act causing the loss.

   b. However, this exclusion (A.8.a.) does not apply:

      (1) if an intentional act was committed to protect life or property.
      (2) to an innocent insured victim of family violence if the loss:

         (a) Arose out of family violence; and
         (b) Is caused by the intentional act of an **insured** against whom a family violence complaint is brought for the act causing the loss.

   c. If **we** pay a claim pursuant to Paragraph A.8.(2), **our** payment to the innocent co-insured is limited to that **insured's** insurable interest in the property. In no event will **we** pay more than the Limit of Liability.

**Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy**

9.  a.  Any actual or alleged failure, malfunction or inadequacy of:

   (1) any of the following, whether belonging to any **insured** or to others;

   (a) computer hardware, including microprocessors;
   (b) computer application software;
   (c) computer operating systems and related software;
   (d) computer networks;
   (e) microprocessors (computer chips) not part of any computer system;
   (f) any other computerized or electronic equipment or components; or

   (2) any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in 9. a. (1) (a) through 9. a. (1) (f) of this exclusion:

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

   b.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by **you** or for **you** to determine, rectify or test for, any potential or actual problems described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion.

   If an excluded cause of loss as described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion results in a Peril We Insure Against **we** will pay only for the loss or damage caused by the described peril.

   **We** will not pay for repair, replacement or modification of any items, described in 9. a. (1) (a) through (f), and 9. a. (2) of this exclusion, to correct any deficiencies or change any features.

10. **Fungi,** wet or dry rot, or bacteria. This includes the presence, growth, proliferation, spread, or any activity of **fungi,** wet or dry rot, or bacteria.

   However, this exclusion does not apply when **fungi,** wet or dry rot, or bacteria damage results directly or indirectly from a covered fire or lightning loss, the total of all damages, including **remediation** of **fungi,** wet or dry rot, or bacteria, is subject to the Section I - Property Protection Limits of Liability stated on the Declarations page.

   **We** do cover, up to the limit shown on the Declarations page under Section I - **Fungi,** Wet or Dry Rot, or Bacteria Coverage, any subsequent damage or cost arising from **fungi,** wet or dry rot, or bacteria and its **remediation,** where the proximate cause of loss is a result of a Peril **We** Insure Against, other than the peril of fire or lightning.

B.  In addition to the Section I - Property Protection Exclusions A. 1. through A. 10. above that apply to all Section I coverages, **we** do not insure for loss to property described in Coverage A - Dwelling and Coverage B - Other Structures caused directly or indirectly by any of the following:

1.  a.  Wear and tear, marring, or scratching, deterioration;

   b.  Inherent vice, latent defect, mechanical breakdown;

   c.  Smog, rust or other corrosion;

   d.  Smoke from agricultural smudging or industrial operations;

   e.  Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril **We** Insure Against under Coverage C - Personal Property of this policy.

   Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

   f.  Settling, shrinkage, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings;

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

    g.  Birds, vermin, rodents or insects;

    h.  Animals owned or kept by an **insured**;

    i.  Pressure from or presence of tree, shrub or plant roots;

    j.  Mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material; or

    k.  Mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

If water escapes from a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater or household appliance because of any loss identified in exclusion B.1.a. through B.1.k., **we** cover loss caused by the water. **We** also cover the cost of tearing out and replacing any part of the covered building necessary to repair the system, water heater or household appliance. **We** do not cover loss to the system, water heater or household appliance from which the water escapes.

2.  Theft in or from a dwelling under construction or of construction materials and supplies until completed and occupied.

3.  Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock.

4.  Vandalism or malicious mischief, theft or attempted theft, or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant.

5.  Freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater, or household appliance, or by discharge, leakage or overflow from the system, water heater or household appliance caused by freezing while the dwelling is vacant, unoccupied or being constructed, unless **you** have used reasonable care to:

    a.  maintain heat in the building; or

    b.  shut off the water supply and drain the systems, water heater and household appliances of water.

6.  Weather conditions, if they contribute to produce the loss in any way with a cause or event excluded under Section I - Property Protection Exclusions A. 1 through A. 10.

7.  Acts or decisions, or the failure to act or decide, of any person, group, organization or governmental body.

8.  Faulty, inadequate or defective:

    a.  planning, zoning, development, surveying, siting;

    b.  design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

    c.  materials used in repair, construction, renovation or remodeling; or

    d.  maintenance;

of parts or all of any property whether on or off the **insured premises**.

9.  Collapse, other than as provided in Section I - Additional Coverages item 1.

10.  Continuous or repeated seepage or leakage of water, steam or moisture, which occurs over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater or household appliance, and results in deterioration, corrosion, rust, or **fungi**. However, **we** do insure for loss under this exclusion B. 10. if the source of the damage is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure and is unknown by the **insured.**

11.  Theft of property which is not actually part of any covered building or structure.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

12.   Wind, hail, ice, snow or sleet to the following when outdoors:

    a.   radio, or television antennas or aerials, including their head-in wiring, masts or towers;

    b.   lawns, trees, shrubs or plants; or

    c.   awnings, canopies and signs.

13.   Damage to fences, driveways and walks caused by vehicles owned or operated by **you** or an occupant of the **insured premises**.

    Under Section I - Property Protection Exclusions B. 1. through B. 11, any ensuing loss to property described in Coverage A - Dwelling and Coverage B - Other Structures not excluded or excepted in this policy is covered.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION I - PROPERTY PROTECTION CONDITIONS

1. **What to do in Case of Loss**

   If a covered loss occurs, the **insured** must:

   a. give immediate notice to **us** or **our** agent.  In case of burglary, also notify the police;

   b. protect the property from further damage, making necessary and reasonable repairs to protect the property, and keep records of the costs of repairs;

   c. make an inventory of all damaged or destroyed property, showing in detail the:  quantity, cost, description, actual cash value and amount of loss claimed.  Attach all bills, receipts and related documents that justify the figures in the inventory;

   d. send to **us**, within 60 days after **we** request, the above inventory and a proof of loss signed and sworn to by the **insured**, including:

      (1) the time and cause of loss;
      (2) the interest of **insured** and all others in the property;
      (3) all encumbrances on the property;
      (4) other insurance that may cover the loss;
      (5) changes in title, use, occupancy or possession of the property during the term of the policy;  and
      (6) if required, any plans and specifications of the damaged buildings or fixtures and detailed estimates for repair of the damage;

   e. exhibit the damaged property to **us** or **our** representative, as often as may be reasonably required;

   f. submit to examinations under oath by any person named by **us**, while not in the presence of any other **insured**, and sign the transcript of the examinations;

   g. produce for examination, with permission to copy, all books of account, bills, invoices, receipts and other vouchers as **we** may reasonably require;

   h. produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records pertaining to any loss of rental income; and

   i. cooperate with **us** in the investigation of a claim.

2. **How Losses Are Settled**

   Loss to covered property is settled as described in this section.  Any loss settlement does not include increased costs incurred to comply with the enforcement of any ordinance or law unless this coverage is provided by **your** policy.

   a. **We** will pay for loss to covered property minus the deductible amount shown on the Declarations Page or endorsements attached to this policy.

   b. (1) A covered loss to the following types of property will be settled on an actual cash value basis at time of loss, but not more than the amount required to repair or replace the damaged property:

      (a) property covered under Coverage C - Personal Property;
      (b) structures that are not buildings;  and
      (c) antennas, carpeting, awnings, household appliances and outdoor equipment, all whether or not attached to buildings.

      Actual cash value includes deduction for depreciation.

      (2) In the event of a covered loss to these types of property, **we** will pay the smallest of:

      (a) the actual cash value of the damaged property;
      (b) the cost to repair or replace the damaged property with property of like kind and quality;
      (c) the limit of liability as shown on the Declarations Page that applies to the damaged property.

**Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy**

   c. A covered loss to property covered under Coverage A - Dwelling and Coverage B - Other Structures will be settled as follows:

      (1) How a loss to the dwelling or other structure will be settled will depend on how the amount of insurance relates to the full replacement cost. In determining full replacement cost, do not include the cost of excavation, underground pipes, wiring and drains, foundations or other supports below the surface of the lowest basement floor. If there is no basement, do not include the cost of those supports below the surface of the ground and inside the foundation walls.

      (2) If, at the time of loss, the amount of insurance for the dwelling or other structure in this policy is 90% or more of the full replacement cost, **we** will pay the full cost to repair or replace the damaged part of the dwelling or other structure, without deduction for depreciation.

      (3) If, at the time of loss, the amount of insurance for the dwelling or other structure in this policy is less than 90% of the full replacement cost, **we** will pay the larger of the following amounts:

         (a) the actual cash value of the damaged part of the dwelling or other structure; or

         (b) the amount of the loss, after application of any deductible and without deduction for depreciation, multiplied by the ratio of the amount of insurance on the dwelling or other structure to 90% of its full replacement cost.

      (4) But, **we** will pay under 2. c. (2) or 2. c. (3) no more than the smallest of the following:

         (a) the limit of liability, as shown on the Declarations Page, in this policy for the dwelling or other structure;

         (b) the cost to replace the damaged dwelling or other structure with equivalent construction for equivalent use on the same premises; or

         (c) the amount actually spent for necessary repair or replacement of the damaged dwelling or other structure.

      (5) If the full cost to repair or replace the damaged property is more than $5,000 or 5% of the insurance for the dwelling in this policy, whichever is less, **we** will pay no more than the actual cash value of the damage until actual repair or replacement is completed. Once actual repair or replacement is complete, **we** will settle the loss according to the provisions of 2. c. (2), 2. c. (3) and 2. c. (4) above.

      (6) **You** may disregard the replacement cost loss settlement provisions and make claim under this policy for loss to buildings on an actual cash value basis. **You** may then make claim for any additional liability according to the provisions of this Condition 2., How Losses Are Settled, provided you notify us of your intent to do so within 180 days after the date of loss.

   d. **We** may make a cash settlement and take all or part of the damaged property at its appraised or agreed on value, or repair or replace the damaged property with property of like kind and quality. **We** must give **you** notice of **our** intention within 30 days after **we** receive **your** proof of loss.

3. **Appraisal**

   If **you** and **we** fail to agree on the actual cash value or amount of loss, either party may make a written demand that the amount of the loss be set by appraisal. Each party will select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the written demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **insured premises** is located to select an umpire.

   The appraisers shall then appraise the loss, stating separately the actual cash value and loss to each item. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon shall be the actual cash value or amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award by two will determine the actual cash value or amount of loss. However, the amount of the award shall be subject to all applicable provisions of the policy, including Section I -- Property Protection Conditions 2. c. (4) and 2. c. (5).

   Each party will pay the appraiser it chooses, and equally pay expenses for the umpire and all other expenses of the appraisal.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

4. **Insurable Interest**

   **We** will not pay more than the insurable interest an **insured** has in the covered property, or more than the applicable limit of liability at the time of loss.

5. **Abandoned Property**

   **We** are not obliged to accept abandoned property.

6. **Loss to a Pair or Set**

   In case of loss to a pair or set, **we** may repair or replace any part of the pair or set to restore it to its value before the loss, or **we** may pay the difference between the actual cash value of the property before and after the loss.

7. **Our Payment of Loss**

   **We** will adjust any loss with **you** and pay **you** unless another payee is named in the policy or is legally entitled to be paid.  **We** will pay within 90 days after **we** receive **your** proof of loss and the amount of loss is finally determined by:

   a. agreement between **you** or **us**;
   b. a court judgment;  or
   c. an appraisal award.

8. **Mortgagee**

   Loss shall be payable to any mortgagee named on the Declarations Page, to the extent of their interests and in the order of precedence.  Mortgagee includes a trustee under a trust deed or a contract seller under a land contract.

   a. **Our** Duties

      **We** will:

      (1) protect the mortgagee's interests in the insured building.  This protection will not be invalidated by any act or neglect of any **insured**, breach of warranty, increase in hazard, change of ownership, change of occupancy or foreclosure if the mortgagee has no knowledge of these conditions;  and

      (2) give the mortgagee 30 days notice before cancelling this policy except that 10 days notice will be given in the event of non-payment of premium or if the policy has been in force less than 60 days.

   b. Mortgagee's Duties

      The mortgagee will:

      (1) furnish proof of loss within 60 days if the **insured** fails to do so;

      (2) pay upon demand any premium due if the **insured** fails to do so;

      (3) notify **us** of any foreclosure, change of ownership or occupancy, or any increase in hazard within 30 days of obtaining knowledge of any of these conditions;

      (4) give **us** the right of recovery against any party liable for loss;  but giving **us** this right will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim;  and

      (5) after a loss, permit **us** to satisfy the mortgagee requirement and receive full transfer of the mortgage.

9. **Suit or Claims Against Us**

   **We** may not be sued unless there is full compliance with all the terms of this policy.  A claim for loss must be reported to **us** or **our** agent within 1 year of the loss event. Any suit for loss must be brought within 2 years after the loss or damage occurs.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

10. **No Benefit to Bailee**

This insurance will not, in any way, benefit any person or organization who may be caring for or handling property for a fee.

11. **Other Sources of Recovery**

If a loss covered by this policy is also covered by:

a. other insurance, **we** will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss, except insurance in the name of an association or corporation or property owners. If there is other insurance in the name of an association or corporation of property owners covering the same property covered by this policy, this insurance is excess;

b. a service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance;  or

c. any other source of recovery not included in 11. a. or 11. b. above, this insurance is excess over any amounts payable by that source of recovery.


12. **Recovered Property**

If **you** or **we** recover any property for which **we** have made payment under this policy, **you** or **we** will notify the other of the recovery. At **your** option, the property will be returned to or retained by **you** or it will become **our** property. If the recovered property is returned to or retained by **you**, the loss payment will be adjusted based on the amount **you** received for the recovered property.

13. **Loss Payable Clause**

Loss shall be payable to any loss payee named on the Declarations Page, to the extent of their interests and in the order of precedence.

a. **Our** Duties

**We** will:

(1) protect the loss payee's interests in the covered property. This protection will not be invalidated by any act or neglect of any **insured**, breach of warranty, increase in hazard, change of ownership, or foreclosure if the loss payee has no knowledge of these conditions;  and

(2) give the same advance notice of cancellation or non-renewal to the loss payee as **we** give to the named insured shown on the Declarations Page.

b. Loss Payee's Duties

The loss payee will:

(1) furnish proof of loss within 60 days if the **insured** fails to do so;

(2) pay upon demand any premium due if the **insured** fails to do so;

(3) notify **us** of any change of ownership or occupancy or any increase in hazard of which the loss payee has knowledge;

(4) give **us** the right of recovery against any party liable for loss;  but giving **us** this right will not impair the right of the loss payee to recover the full amount of the loss payee's claim.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION II - LIABILITY PROTECTION

The coverages provided in this Section II - Liability Protection are optional coverages and apply only when Limits of Liability and a premium charge are shown on the Declarations Pages for Coverage L - Premises Liability and Coverage M - Premises Medical Payments.

## COVERAGE L - PREMISES LIABILITY COVERAGE

**We** will pay all sums, up to **our** limit of liability shown on the Declarations Page for this coverage, arising out of any one loss for which **an insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage**, caused by an **occurrence** covered by this policy and arising out of the ownership, maintenance or use of the **insured premises**. Damages include prejudgment interest awarded against the **insured**.

If a claim is made or suit is brought against the **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, **we** will defend the **insured** at **our** expense, using lawyers of **our** choice. **We** reserve the right to recover from any party to whom **we** have provided a defense, any defense costs incurred by **us** should a court of competent jurisdiction conclude that **we** had no duty to provide a defense to that party. **We** are not obligated to pay any claim or judgment or to defend after **we** have paid an amount equal to the limit of **our** liability shown on the Declarations Page for this coverage. **We** may investigate or settle any claim or suit as **we** think appropriate.

## COVERAGE M - PREMISES MEDICAL PAYMENTS COVERAGE

A. **We** will pay the **reasonable** expenses incurred, up to **our** limit of liability shown on the Declarations Page for this coverage, for **necessary** medical, surgical, x-ray and dental services, prosthetic devices, eyeglasses, hearing aids, pharmaceuticals, ambulance, hospital, licensed nursing and funeral services. These expenses must be incurred within three years from the date of an accident causing **bodily injury** covered by this policy.

Each person who sustains **bodily injury** is entitled to this protection when the **bodily injury**:

   a. arises out of a condition in the **insured premises** or the adjoining ways; or

   b. is caused by **your** operations incidental to the ownership, maintenance or use of the **insured premises**.

B. **We** do not cover injury to:

   1. an **insured**;

   2. to a tenant whose injury arises on that part of the premises which the tenant normally occupies; or

   3. to a person who is hired to do work for **you** or on **your** behalf or by any tenant of **yours**. However, this coverage does apply to a **residence employee**.

C. **We** may pay the injured person or the party that renders the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured**.

D. "**Reasonable**" as used in Coverage M - Premises Medical Payments Coverage means: Expenses that are consistent with the usual charges of the majority of similar medical providers in the geographic area in which the expenses were incurred for the specific medical service.

E. "**Necessary**" as used in Coverage M - Premises Medical Payments Coverage means: Services that are rendered by the medical provider within the legally authorized scope of the provider's practice and are recognized within that practice as being appropriate treatment in achieving maximum medical improvement for the **bodily injury** sustained in the accident.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION II - ADDITIONAL COVERAGES

**We** will pay, in addition to **our** limit of liability:

1. **Claims Expenses**

   a. All costs **we** incur in the settlement of a claim or defense of a suit.

   b. Interest on the entire amount of damages awarded in a suit **we** defend accruing after judgment is entered and before **we** have paid, offered to pay, or deposited in court that portion of the judgment which is not more than **our** limit of liability.

   c. Premiums on bonds required in a suit **we** defend. But, **we** will not pay the premium for the portion of a bond amount that is greater than **our** limit of liability. **We** have no obligation to apply for or furnish bonds.

   d. Upon request by the **insured**, reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of a lawsuit, including actual loss of earnings up to $50 a day, but not other income, because of time off from work for attendance at hearings or trials.

3. **First Aid Expenses**

   **We** will pay up to $1,000 per **occurrence** for reasonable and necessary expenses for immediate medical and surgical treatment provided to persons, other than an **insured**, at the time of the accident covered by this policy. **We** will pay only expenses which an **insured** incurs for treatment of the other person's **bodily injury**, resulting from the accident, covered by this policy. **We** will not pay for first aid to **you** or any other **insured**.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION II - LIABILITY PROTECTION EXCLUSIONS

A.  Under Coverage L - Premises Liability Coverage and Coverage M - Premises Medical Payments Coverage, **we** do not cover:

   1.  **Bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading or negligent entrustment of:

      a.  aircraft. **We** do cover model airplanes not used or designed for transporting cargo or persons;

      b.  **motor vehicles**, owned or operated by or rented or loaned to an **insured**.

         This exclusion, A.1.b., does not apply to the ownership, maintenance, use, loading or unloading of:

         (1) a **motor vehicle** that is not subject to registration and:

            (a) used solely to service the **insured premises**; or
            (b) designed for assisting the handicapped.

      c.  any watercraft owned or operated by or rented or loaned to an **insured**.

   2.  **Bodily injury** or **property damage** arising out of the rendering or failing to render professional services.

   3.  **Bodily injury** or **property damage** arising out of **business** pursuits of an **insured**.

   4.  **Bodily injury** or **property damage** caused by the willful, malicious, or intentional act of a minor 13 years of age and older, for which an **insured** is statutorily liable.

   5.  **Bodily injury** or **property damage** caused by the willful, malicious, or intentional act of any person, including any claims alleging negligent supervision, negligent entrustment, or negligent failure to control against any **insured** arising out of the willful, malicious, or intentional act.

      This exclusion (5.) does not apply if an intentional act was committed by a minor under the age of 13, or to protect life or property.

   6.  **Bodily injury** or **property damage** arising out of any premises owned, rented or controlled by an **insured** which is not an **insured premises**.

   7.  **Bodily injury** or **property damage** expected or intended by any **insured**. This includes **bodily injury** or **property damage**:

      a.  caused intentionally by or at the direction of an **insured**; or
      b.  which results from any **occurrence** caused by an intentional act of any **insured** where the results are reasonably foreseeable.

      This exclusion (7.) does not apply if an intentional act was committed by a minor under the age of 13, or to protect life or property or if the loss is caused by the intentional act of an **insured** against whom a family violence complaint is brought by the innocent insured for the act causing this loss.

   8.  **Bodily injury** or **property damage** arising out of:

      a.  war (declared or undeclared), civil war, insurrection, rebellion or revolution; or
      b.  a warlike act by a military force or military personnel.

      Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

   9.  **Bodily injury** or **property damage** arising out of any nuclear reaction, radiation or radioactive contamination or any consequence of any of these.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

10. **Bodily injury** or **property damage** which arises out of the transmission of a communicable disease by an **insured**.

11. **Bodily injury** or **property damage** arising out of sexual molestation or any sexual activity, corporal punishment, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

12. **Bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812.  Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs.  However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician or where the involvement with controlled substance(s) is not within the knowledge of any insured person.

13. a. **Bodily injury** or **property damage** in excess of $50,000, arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of, exposure to or presence of **fungi**, wet or dry rot, or bacteria.

    b. Any loss, cost or expense arising out of, resulting from or in any way related to any:

       (1) claim, suit, request, demand or order that any **insured** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of **fungi**, wet or dry rot, or bacteria.

       (2) claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **fungi**, wet or dry rot, or bacteria.

       (3) If a claim is made or a suit is brought against an **insured person** for damages because of **bodily injury** or **property damage** caused by an **occurrence** of **fungi**, wet or dry rot, or bacteria, **we** will:

          (1) Pay up to $50,000 for damages, which an **insured person** is legally liable. Damages include prejudgment interest awarded against an **insured person**; and

          (2) Provide a defense at **our** expense by counsel of **our** choice, even if the suit is groundless, false or fraudulent.  **We** may investigate and settle any claim or suit that **we** decide is appropriate.

          **Our** duty to settle ends when **our** limit of liability for the **occurrence** has been exhausted by payment of a judgment or settlement.

          **Our** total liability of $50,000 is the most **we** will pay regardless of the number of **insureds**,  claims made or persons injured. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one **occurrence**.

14. **Bodily injury** or **property damage** arising out of:

    a. any actual or alleged failure, malfunction or inadequacy of:

       (1) any of the following, whether belonging to any **insured** or to others;

          (a) computer hardware, including microprocessors;
          (b) computer application software;
          (c) computer operating systems and related software;
          (d) computer networks;
          (e) microprocessors (computer chips) not part of any computer system;
          (f) any other computerized or electronic equipment or components;  or

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

(2) any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph a. of this exclusion:

due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.

b. any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by an **insured** or for an **insured** to determine, rectify or test for, any potential or actual problems described in Paragraph a. of this exclusion.

15. Any loss arising from the sale or transfer, by an **insured**, of any real property when **bodily injury** or **property damage** results from, but is not limited to the following:

    a. known or unknown property or structural defects;
    b. known or hidden defects in the plumbing, heating and electrical systems;
    c. known or unknown soil conditions or drainage problems;  or
    d. concealment or misrepresentation of any known defects.

16. **Bodily injury** or **property damage** arising from a criminal act or omission which is committed by, or at the direction of an **insured**.  This exclusion applies when the **insured** is actually charged with, and convicted of a crime.

17. **Bodily injury** or **property damage** caused by any of the following animals owned by or in the care of an **insured**:

    a. any dog that is being trained or has been trained to attack persons, property or other animals;
    b. any dog that is being trained or has been trained to guard persons, property or other animals;
    c. any dog, used in any manner, as a fighting dog or bred specifically for fighting;
    d. any dog with a prior history of causing:

        (1) **bodily injury** to a person;  or
        (2) injury to another animal;

    established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

    e. any non-domesticated animal.

18. Any claim for a nonowner occupied residence for;

    a. **bodily injury** or **property damage** arising out of, resulting from, caused by or contributed to by the actual, alleged or threatened ingestion, inhalation, absorption of exposure to or presence of lead, lead compounds or materials containing lead; or

    b. any loss, cost or expense arising out of, resulting from or in any way related to any:

        (1) claim, suit, request, demand or order that any **insured person** or others test for, monitor, abate, mitigate, clean up, remove, contain, treat, dispose of, detoxify or neutralize, or in any way respond to, or assess the effects of lead, lead compounds or materials containing lead; or

        (2) claim or suit by or on behalf of a governmental authority for damages because of testing for , monitoring, abatement, mitigation, cleaning up, removing, containing, treating, disposing of, detoxifying or neutralizing, or in any way responding to, or assessing the effects of lead, lead compounds or materials containing lead.

B. Under Coverage L - Premises Liability Coverage, **we** do not cover:

    1. Liability assumed under an oral contract or agreement by an **insured**, or under a contract or agreement in connection with any **business** of an **insured**.

    2. **Property damage** to property owned by an **insured**.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

3. **Property damage** to property occupied or used by an **insured** or rented to or in the care, custody or control of an **insured**. But **we** will cover **property damage** to such property caused by fire, smoke or explosion.

4. **Bodily injury** to a person if an **insured** has or is required to have a policy providing worker's compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease benefits covering the **bodily injury**.

5. **Bodily injury** or **property damage** when an **insured person** is covered under a nuclear energy liability policy. This exclusion applies even if the limits of liability of that policy have been exhausted.

6. **Bodily injury** to any **insured**.

C. Under Coverage M - Premises Medical Payments Coverage, **we** do not cover:

1. **Bodily injury** to a person who is entitled to benefits which are provided or required to be provided under any worker's compensation, Federal Longshoremen's, Harbor Worker's compensation, non-occupational disability or occupational disease law.

2. **Bodily injury** to a **residence employee** if it occurs off the **insured premises** and does not arise out of and in the course of employment by an **insured**.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION II - LIABILITY PROTECTION CONDITIONS

1. **What to do in Case of Bodily Injury or Property Damage**

   In the event of **bodily injury** or **property damage**, the **insured** must:

   a. notify **us** or **our** agent as soon as possible. The notice must give:

      (1) **your** name and policy number;

      (2) the time, place and circumstances of the accident, **occurrence** or loss; and

      (3) the names and addresses of injured persons and witnesses;

   b. send **us** promptly any legal papers received relating to a claim or suit; and

   c. cooperate with **us** and assist **us** in any matter relating to a claim or suit.

   The **insured** will not, except at the **insured's** own cost, voluntarily make any payment, assume any obligation or incur expenses, other than for Section II - Additional Coverages, First Aid Expenses, at the time of the accident.

2. **Duties of an Injured Person -- Coverage M - Premises Medical Payments Coverage**

   The injured person or someone acting on behalf of the injured person will:

   a. give **us**, as soon as possible, written proof of claim under oath if required;

   b. submit to physical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require; and

   c. authorize **us** to obtain medical and other records.

3. **Limits of Liability**

   Regardless of the number of **insureds**, injured persons, claims made or suits brought, **our** liability is limited as follows:

   a. as respects Coverage L - Premises Liability Coverage, the limit of liability stated on the Declarations Page is the total limit of **our** liability for all damages resulting from any one **occurrence**. All **bodily injury** and **property damage** resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be resulting from one **occurrence.**

   b. as respects Coverage M - Premises Medical Payments Coverage, the limit of liability stated on the Declarations Page as applicable to "each person" is **our** limit of liability for all medical expenses for **bodily injury** to any one person as the result of any one accident.

      Subject to the limit for "each person", **our** limit for **bodily injury** to two or more persons in any one accident shall not exceed the limit of liability stated on the Declarations Page as applicable to "each accident".

4. **Severability of Insurance**

   This insurance applies separately to each **insured** against whom claim is made or suit is brought, subject to **our** limits of liability for each **occurrence**.

5. **Suit Against Us**

   **We** may not be sued unless there is full compliance with all the provisions and conditions of this policy.

   **We** may not be sued under the Coverage L - Premises Liability Coverage until the obligation of an **insured** to pay is finally determined either by judgment against the person after actual trial or by written agreement of the person, the claimant and **us**.

   No one shall have any right to join **us** as a party in a suit against an **insured**.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

6. **Bankruptcy of an Insured Person**

   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured**.

7. **Other Insurance -- Coverage L - Premises Liability Coverage**

   This insurance is excess over any other valid and collectible insurance. However, if the other insurance is written as excess insurance over this specific policy, the limits of this policy apply first.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

## SECTION I - PROPERTY PROTECTION AND SECTION II - LIABILITY PROTECTION CONDITIONS

1. **Assignment**

    Interest in this policy may not be transferred without **our** written consent. But, if **you** die, the policy will cover:

    a. a surviving member of the deceased's household who was covered under this policy at the time of death, but only while a resident of the **insured premises**;

    b. the legal representative of the deceased person while acting within that capacity, but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

    c. a person having proper custody of insured property until a legal representative is appointed, but only with respect to the premises and property of the deceased covered under the policy at the time of death.

2. **Cancellation**

    a. **Your** Right to Cancel

      **You** may cancel this policy by returning it to **us** or by advising **us** in writing when at a future date the cancellation is to be effective.

    b. **Our** Right to Cancel or Refuse to Renew

      **We** may cancel by mailing notice of cancellation to **you** at the address shown on the Declarations or by delivering the notice not less than 30 days prior to the effective date of cancellation.

    After coverage under a policy has been in effect for 60 or more days or after the effective date of a renewal policy, a notice of cancellation may be issued only for one or more of the following reasons:

    a. discovery of fraud, concealment of material fact or material misrepresentation made by or with the knowledge of the **insured** in obtaining the policy, continuing the policy, or presenting a claim under the policy;

    b. the **occurrence** of a change in the risk which substantially increases any hazard the policy insures against; or;

    c. the **insured** violates any of the material terms or conditions of the policy.

    But, **we** may cancel with only 10 days notice before the effective date of cancellation if:

    a. **you** have not paid the premium payable to **us**, to **our** agent or under any finance plan; or

    b. this policy has been in effect for less than 60 days.

      **We** will mail to **you** at the address shown in the Declarations and to any lienholder named in the policy or deliver to **you** notice of non-renewal not less than 30 days before the end of the policy period, if **we** decide not to renew or continue this policy.

      Proof of mailing will be sufficient proof of notice. The policy period will end on the date and time stated in the notice.

    c. Return of Premium

      If this policy is cancelled, **you** may be entitled to a premium refund. If so, the premium paid to **us** for the period from the date of cancellation to the premium payment date will refunded. The returned premium, if any, will be pro rata. If the returned premium is not refunded with the notice of cancellation, or when the policy is returned to **us**, **we** will refund it within a reasonable time after cancellation takes effect.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

3. **Changes**

    This policy and the Declarations Page include all the agreements between **you** and **us** relating to this insurance. No change or waiver may be effected in this policy except by endorsement issued by **us**. If a premium adjustment is necessary, **we** will make the adjustment as of the effective date of the change. If any coverage **you** have under this policy is broadened by **us** without charge during the policy period, this policy will automatically provide the broadened coverage as of its effective date.

4. **Concealment or Fraud**

    Coverage may be denied and the policy may be cancelled or non-renewed if, whether before or after a loss, an **insured person** has:

    a. intentionally concealed or misrepresented any material fact or circumstance;
    b. engaged in fraudulent conduct;  or
    c. made false statements;

    in any application or form submitted to **us** for this insurance, or with regard to any other aspect of this insurance, including procurement of this policy.

5. **Conformity to State Law**

    Any policy provision contrary to laws of the state in which this policy is issued is amended to conform to such laws.

6. **Continuous Renewal**

    If **we** elect to continue this insurance, **we** will renew this policy if **you** pay the required renewal premium for each successive policy period subject to **our** premiums, rules and forms then in effect. **You** must pay **us** prior to the end of the current policy period or else this policy will expire.

7. **Joint Obligations**

    The terms of this policy impose joint obligations on the person named on the Declarations Page as the Named Insured and that person's resident spouse.  These persons are defined as **you** or **your**.  This means that the responsibilities, acts and failures to act of a person defined as **you** or **your** will be binding upon another person defined as **you** or **your**.

    The terms of this policy impose joint obligations on any person defined as an **insured**.  This means that the responsibilities, acts and failures to acts and failures to act of a person defined as an **insured** will be binding upon another person defined as an **insured**.

8. **Known Loss**

    **We** do not provide coverage for any loss or **occurrence** which was known to any **insured** and occurred prior to the time **you** signed the application for coverage, or asked **us** or **our** agent to provide coverage, even if the loss or **occurrence** falls within the period covered by the policy.

9. **Our Right to Recover Payment**

    After making payment under this policy, **we** will have the right to recover to the extent of **our** payment from anyone held responsible.  This right will not apply under Section I - Property Protection if **you** have waived it in writing prior to loss.

    The **insured person** will do whatever is required to transfer this right to **us**.

10. **Policy Period**

    This policy applies only to loss under Section I - Property Protection, or **bodily injury** or **property damage** under Section II - Liability Protection, which occurs during the policy period.

*Trustgard Insurance Company -- Dwelling Fire Special Form DF-3 Policy*

11. **Earned Premium Collection for a Canceled Policy**

If another policy issued by **us** to **you** has canceled with earned premium due **us**, **we** will deduct that earned premium amount from any money received with this newly issued policy and apply that amount to the earned premium of the canceled policy.

If this policy cancels for any reason, and **we** later agree to reinstate coverage, **you** must submit the amount of money required by **us** to reinstate this coverage and pay any earned premium due to **us** on any canceled policy that is in **your** name. Any funds received with a reinstatement request for this policy will be applied to earned premium due, if any, on any canceled policy in **your** name.

**We** reserve the right to reject any reinstatement request, and grant no coverage, if funds required by **us** are not submitted, or if the risk is no longer acceptable to **us**.

THIS PAGE

INTENTIONALLY

LEFT BLANK.

# EXHIBIT B

Trusigard Insurance Company
P.O. Box 1218
Columbus, Ohio 43216-1218

Your Agency Is
Marsh & Mclennan Agency LLC
(770) 683-1000
*Agent No. 10-00135*

**Grange**
Insurance®

**Policy Number: DF　3908436**

Print Date: 06/30/2023
PAGE 1

**Cancellation Date:　08/05/2023**

10-00135 3908436
RAVI J MALLIK
1014 NORTHROPE DR NE
ATLANTA GA　30324

# NOTICE OF CANCELLATION

INSURED COPY

REASON FOR CANCELLATION: DWELLING VACANT AND IN DISREPAIR

We are cancelling your Dwelling Fire insurance policy as of 12:01 A.M. standard time on the cancellation date shown above. This is being done in accordance with the conditions of your policy and the laws of your state. Please contact your agent as soon as possible to make arrangements for other coverage.

If you should have difficulty replacing this insurance inquire about the Georgia Fair Access to Insurance Requirements Plan. Your insurance agent can help you apply for this coverage.

Pursuant to Georgia Code, Section 33-24-46, you may be eligible for insurance under the Georgia Fair Access to Insurance Requirements Plan listed below if you have difficulty replacing this insurance.

Georgia Underwriting Association
3355 Annandale Lane, Suite 3
Suwanee, GA  30024

In compliance with the Fair Credit Reporting Act, you are hereby informed that the action taken on your policy is being taken wholly or partly because of information contained in a consumer report from the following consumer reporting agency:

JMI Reports
P.O. Box 33367 North Royalton, OH 44133
(800) 772-0436

LOCATION OF PROPERTY
998 NORTHROPE DR NE
ATLANTA GA  30324

*P370*



Trustgard Insurance Company
P.O. Box 1218
Columbus, Ohio 43216-1218

Your Agency Is
Marsh & Mclennan Agency LLC
(770) 683-1000
*Agent No. 10-00135*

**Grange**
Insurance®

**Policy Number: DF   3908436**

Print Date: 06/30/2023

**Cancellation Date:   08/05/2023**

```
         10-00135 3908436
RAVI  J MALLIK
1014 NORTHROPE DR NE
ATLANTA GA  30324
```

INSURED COPY

How can I get more information?

Within 90 days from the date of the mailing of this notice, you may obtain in
writing the specific information supporting our reasons for this action and the
identity of the source of that information, if the information is not stated
above or protected from disclosure by law. You may also:

- learn about and access recorded information about you;

- ask us to correct, amend, and/or delete any information in our files and
  reconsider any underwriting decision based on incorrect, amended, or
  deleted information;

- give us a concise statement of what you believe is the correct information
  and if we refuse to correct, amend, and/or delete the information, we will
  put your statement in  our file so that anyone reviewing your file will
  see it;

- learn the identity of others to whom we may have disclosed this information
  in the previous 2 years.

To do so, send a written request to:

              Trustgard Insurance Company
        Attn:  Personal Lines Profit Center Underwriting
                    P.O. Box 25195
              Lehigh Valley, PA  18002-5195

Please describe the kind of information you want to review. Please include the
following information in your request:

- Your full name

- Address

- Policy number (if applicable)



*AP370P*

Your Agency Is
Marsh & Mclennan Agency LLC
(770) 683-1000
*Agent No. 10-00135*

**Grange**
Insurance®

Trustgard Insurance Company
P.O. Box 1218
Columbus, Ohio 43216-1218

Policy Number: **DF   3908436**

Print Date: 06/30/2023
PAGE 2

Cancellation Date:   **08/05/2023**

10-00135 3908436
RAVI J MALLIK
1014 NORTHROPE DR NE
ATLANTA GA  30324

You have the right to obtain a free disclosure of the consumer report file from
the consumer reporting company, if you request the report within 60 days. You
have the right to dispute directly with the consumer company the accuracy or
completeness of any information provided by them. The consumer reporting
company did not make the decision and is not able to explain why the decision
was made.

Mortgagee Notice of Cancellation

Cancellation with respect to your interest is effective at 12:01 A.M. standard
time on the 13th day after the date of this notice or on the cancellation
date, whichever is later.



70B

# EXHIBIT C

**Grange** Insurance®   **Integrity** Insurance®

Grange Enterprise Companies
P.O. Box 25196 Lehigh Valley, PA  18002

**TEMP-RETURN SERVICE REQUESTED**

July 17, 2023

Ravi J Mallik
1014 NORTHROPE DR NE
ATLANTA, GA 30324-4204

Re:   **Claim Number:** ZHM003472119        **Primary Insured:**
      **Date of Loss:** 08/05/2022            **Policy Number:** DF 3908436 11

Dear Mr. Mallik,

This letter is in reference to the above-referenced claim you filed with Trustgard Insurance Company ("Trustgard") for a water loss on August 5, 2022. After taking your recorded statement and examination under oath, reviewing the relevant information produced, and inspecting the loss location, Trustgard has now concluded its investigation of your claim for insurance proceeds.

Following the completion of Trustgard's investigation, it has determined that your policy does not cover the damage at issue in your claim. The professional engineer retained by Trustgard, whose report is enclosed with this letter, found that there was extensive mold and rot damage throughout the loss location and that the damage was due to long term water infiltration and a failure to maintain the exterior envelope of the loss location. Additionally, the water usage readings obtained by Trustgard for the loss location support that there was a long term water leak occurring at the loss location since approximately October 2021 when the water usage drastically increased from approximately 36,000 gallons of water used in September 2021 to almost 229,000 gallons of water used in October 2021 despite the fact that, based on your examination under oath testimony, the property has been vacant since mid-September 2021 when certain illegal tenants were evicted. Your policy provides, in pertinent part, as follows:

SECTION I – PROPERTY PROTECTION EXCLUSIONS
A.   We do not cover loss resulting directly or indirectly by any of the following under any Section I – Property Protection coverages. Such loss is excluded regardless of any other causes or event contributing concurrently or in any sequence to the loss.

******

5.   Neglect of an insured to use all reasonable means to protect covered property at and after the time of loss, or when property is endangered by a covered loss under Section I – Property Protection.

******

10. Fungi, wet or dry rot, or bacteria. This includes the presence, growth, proliferation, spread, or any activity of fungi, wet or dry rot, or bacteria.

However, this exclusion does not apply when fungi, wet or dry rot, or bacteria damage results directly or indirectly from a covered fire or lightning loss, the total of all damages, including remediation of fungi, wet or dry rot, or bacteria, is subject to the Section I – Property Protection Limits of Liability stated on the Declarations page.

We do cover, up to the limit shown on the Declarations page under Section I – Fungi, Wet or Dry Rot, or Bacteria Coverage, any subsequent damage or cost arising from fungi, wet or dry rot, or bacteria, and its remediation, where the proximate cause of loss is a result of a Peril We insure Against, other than the peril of fire or lightning.

******

B.   In addition to the Section I – Property Protection Exclusions A.1 through A.10 above that apply to all Section I coverages, we do not insure for loss to property described in Coverage A – Dwelling and Coverage B – Other Structures caused directly or indirectly by any of the following:

1. a. Wear and tear, marring, or scratching, deterioration;

******

4.   Vandalism or malicious mischief, theft or attempted theft, or breaking of glass or safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately preceding the loss. A building under construction is not considered vacant.

******

8.   Faulty, inadequate or defective:

******

  d.   maintenance;

******

10. Continuous or repeated seepage or leakage of water, steam or moisture, which occurs over a period of weeks, months or years from within a plumbing, heating, air conditioning or automatic fire protection sprinkler system, water heater or household appliance, and results in deterioration, corrosion, rust, or fungi. However, we do insure for loss under this exclusion B. 10. if the source of the damage is hidden within the walls or ceilings or beneath the floors or above the ceilings of the structure and is unknown by the insured.
******
Finally, Trustgard's investigation has revealed good and sufficient evidence that you misrepresented and concealed material facts relating to the onset and duration of the water infiltration into the loss location. As stated above, the professional engineer's findings and the water usage readings support that the damage you reported to Trustgard was the result of long term water leakage into the loss location. You testified during your examination under oath, however, that you visited the loss location in early August 2022 and did not observe any water or mold damage at the property. You further testified that you then returned to the loss location a few days later, on or around August 5, 2022, at which time you, for the first time, observed the water and mold damage at issue in this claim. Your testimony that the damage in question occurred over a short time frame of mere days is in direct contradiction to both the professional engineer's findings and the water usage readings for the loss location. As such, your sworn testimony that you visited the loss location in early August 2022 and that the damage at issue was not present at that time constitutes an intentional misrepresentation and concealment of material facts regarding the onset and duration of the water leak at the loss location in order to obtain coverage for the damage under the policy. As a result of this intentional misrepresentation and concealment, you have violated the Concealment or Fraud provision of your policy, which provides, in pertinent part, as follows:

SECTION I – PROPERTY PROTECTION CONDITIONS

******

4.   Concealment or Fraud

Coverage may be denied and the policy may be cancelled or non-renewed if, whether before or after a loss, an insured person has:

a.   intentionally concealed or misrepresented any material fact or circumstance;



b.   engaged in fraudulent conduct; or
c.   made false statements;

in the application or form submitted to us for this insurance, or with regard to any other aspect of this insurance, including procurement of this policy.

******

Based on the above policy provisions and your misrepresentation and concealment, Trustgard hereby denies the above-referenced claim.

If you believe that Trustgard is operating under a misrepresentation or misunderstanding of the facts, please provide clarification in writing. Trustgard does not intend, by this letter, to waive any other policy provisions or defenses and specifically reserves its right to assert such additional policy provisions or defenses at any time.
Trustgard may not be sued unless there is full compliance with all of the terms of this policy. A claim for loss must be reported to Trustgard or its agent within one (1) year of the loss event. Any suit for loss must be brought within two (2) years after the loss or damage occurs.

Please feel free to call me with any questions at the number listed below.

Sincerely,

Samuel Ellenburg

Property Specialist
Phone:  800-422-0550 ext. 7612
Fax:  866-256-9203
Email:  ellenburgs@grangeinsurance.com

# EXHIBIT D



## WEINSTEIN & BLACK
### ATTORNEYS AT LAW

**VIA OVERNIGHT MAIL & E-MAIL**
July 24, 2023

Mr. Robert Luskin
Chartwell Law
3200 Cobb Galleria Parkway #250
Atlanta, GA 30339

RE:   Insured:        Ravi J Mallik
        Policy No.:     DF 3908436 11
        Claim No.:      ZHM003472119
        Date of Loss:  August 5, 2022

Dear Mr. Luskin:

As you are aware, I represent Mr. Ravi Mallik as it relates to his insurance claim with Grange, which has been assigned Claim No. ZHM003472119. Accordingly, please direct correspondence regarding this matter to my attention.

On August 5, 2022, Mr. Mallik discovered extensive damage to the rental property he owns that is located at 998 Northrope Drive NE, Atlanta, Georgia 30324. At the time of discovering the damage, Mr. Mallik had a homeowner's insurance policy with Grange, Policy No. DF 3908436 11 (the "Policy"). Almost immediately upon discovering the damage, Mr. Mallik, through his insurance agent, reported the damage to Grange. Subsequently, Mr. Mallik complied with all requests from Grange, including providing statements, allowing Grange to inspect the home, producing all documents requested that were available to him, and sitting for his Examination Under Oath. However, despite complying with all of Grange's requests[1], and despite the damage clearly being covered under the Policy, Grange made the inexplicable decision to deny coverage on July 17, 2023. This denial is unfounded, improper, and in bad faith.

Based on the foregoing, please be advised that if Grange does not acknowledge coverage of the Claim within sixty (60) days, and thereafter adjust and pay the Claim accordingly, I have been instructed to commence litigation. Should this become necessary, not only will Mr. Mallik file a claim for breach of contract, but he will also file a claim for bad faith damages as provided for in O.C.G.A. §33-4-6, in which he will seek to recover any and all additional damages allowable under Georgia law.

---

[1] If Grange believes that Mr. Mallik has not complied with all conditions of the Policy, please immediately advise me of same.

Lastly, should Grange desire to perform any further inspections of Mr. Mallik's home, please advise me of same within thirty (30) days of your receipt of this letter. Otherwise, Mr. Mallik expressly reserves the right to perform necessary repairs to the home.

In the interim, this letter shall serve as formal notice of Grange's ongoing legal duty to preserve any and all information relevant to the facts surrounding this matter. This duty to preserve evidence extends, but is not necessarily limited to, the following: (1) business records, (2) paper, digital, and electronic files, including but not limited to, e-mails and text messages, (3) data generated by and/or stored on the company's computers and storage media, and (4) all other electronic data. Violations of the legal duty described in this notice can result in significant sanctions imposed by a court of law for spoliation of actual evidence and/or potential evidence.

By sending this correspondence, Mr. Mallik is not waiving any rights and remedies he may have under the Policy and applicable law, with the same being expressly reserved.

If you would like to discuss this matter, I may be reached at (404) 228-2629.

Sincerely,

Michael B. Weinstein

CC:   Mr. Ravi Mallik

# This Page Intentionally Left Blank to Separate Documents

E-FILED IN OFFICE - JM
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
**23-C-08418-S4**
**11/20/2023 12:59 PM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY

## STATE OF GEORGIA

**RAVI MALLIK**

　　　　　　　Plaintiff,

v/s

　　　　　　　Defendant,

**TRUSTGUARD INSURANCE**

**COMPANY**

**Case No:  23-C-08418-S4**

### AFFIDAVIT OF SERVICE BY A PRIVATE PROCESS SERVER

I hereby certify that an original copy of the **SUMMONS and COMPLAINT** were

served to **Trustguard Insurance Company c/o Registered Agent, C T Corporation System** at

289 S. Culver Street, Lawrenceville, Georgia 30046 on November 16, 2023 at 11:35 am.

**Linda Banks, Intake Specialist,** accepted service on behalf of the registered agent and was

authorized to do so.

State of Georgia

County of Gwinnett

Lee J. Gauthreaux/ Process Server

**I hereby attest that I have witnessed the above statement of service by Lee J. Gauthreaux**

**On this ___17th___ day of November 2023.**

_____ **Notary Public**



IN THE STATE COURT OF GWINNETT COUNTY

STATE OF GEORGIA

IN RE: Permanent Process Servers

Case Number:



## 22 C 07072-4

### ORDER OF APPOINTMENT

The application of the undersigned permanent process server having been read and considered, said applicant is hereby appointed permanent process server of this court pursuant to O.C.G.A. § 9-11-4(c), from the date of this order **up to and including January 4, 2024.**

This order allows the applicant to serve as a process server in Gwinnett County State Court matters only, on an annual renewable basis.

SO ORDERED this _____8th_____ day of ___December___, 20__22__.

_____
Ronda Colvin Leary (Dec 8, 2022 12:39 EST)
Presiding Judge
Gwinnett County State Court

Applicant:

Name _____Lee James Gauthreaux_____

Address _____3552 Cascade Ivc Drive_____

_____Buford, Georgia 30519_____