IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JACLYN VOGT,

     Plaintiff,

v.

RSUI INDEMNITY COMPANY,

     Defendant.

CIVIL ACTION FILE

No. _____

## COMPLAINT

Plaintiff Jaclyn Vogt ("Plaintiff" or "Vogt") files this Complaint against her former employer, Defendant RSUI Indemnity Company ("Defendant" or "RSUI"), showing as follows:

### Statement of Claims, Parties, Jurisdiction, and Venue

1.

In 2022, Jaclyn Vogt experienced a family crisis that led to the onset of severe and at times crippling depression and anxiety. She asked her employer of thirteen years, RSUI, to accommodate her new disabilities by slightly modifying its standard hybrid work policy: instead of requiring Plaintiff to work in the office three days each week (which is what RSUI required of non-disabled employees), she asked that she be permitted to telework five days per week on a temporary basis, while her disabilities persisted. After much back and forth,

RSUI begrudgingly granted her request for a limited period of time, but in December 2022, it refused to consider any further remote work accommodations. For the next seven months, it forced Ms. Vogt to take leave that she would not otherwise have needed (and which was unpaid or paid at reduced rates) rather than engage with her in any good-faith attempt to arrive at an accommodation for her disability. She was forced onto intermittent FMLA leave, which expired in July 2023. At that time, rather than giving Plaintiff the chance to return to work (which she was able and willing to do), RSUI terminated Plaintiff's employment. In so doing, RSUI discriminated against Plaintiff in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and it retaliated against Plaintiff in violation of the ADA and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

### *Parties, Jurisdiction, and Venue*

2.

Plaintiff is a citizen and resident of Georgia and submits herself to the jurisdiction of this Court for purposes of the claims asserted in this Complaint.

3.

Defendant RSUI Indemnity Company is a domestic insurance company incorporated and authorized to do business in the State of Georgia. It is headquartered in Atlanta and Fulton County, and it has employees across the

country. It can be served through its registered agent, Ron Hardeman, and its corporate offices located at 945 E. Paces Ferry Rd., Suite 1800, Atlanta, Fulton County, Georgia 30326.

4.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal statues (the ADA and the FMLA).

5.

Venue is proper in this Court because this is the judicial district and division in which the acts and omissions complained of in this Complaint occurred.

6.

With respect to Plaintiff's discrimination and retaliation claims under the Americans with Disabilities Act, all administrative remedies have been exhausted. Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on February 2, 2023, and an Amended Charge of Discrimination on July 28, 2023, following her termination. Although the EEOC's right to sue notice is dated September 15, 2023, it was not provided to or received by Plaintiff or Plaintiff's Counsel until September 18, 2023. This action is timely filed based on Plaintiff's receipt of the right to sue.

7.

Plaintiff's FMLA claims are not subject to any requirement that she exhaust administrative remedies.

***Background Facts Relevant to All Claims***

8.

Ms. Vogt was employed by RSUI from September 2009 until her termination on July 13, 2023. Her last position with the company was Chief Claim Specialist in RSUI's management liability group, with a particular focus on employment practices liability ("EPL") claims.

9.

From 2009 until 2022, Plaintiff successfully performed her job duties, received favorable job evaluations, and was never made aware of any material problems with her performance. Her December 2022 review was very favorable and evidenced successful performance of her job duties, even though she was working remotely at the time. Her supervisor specifically noted that she was on a positive career path, a reference to an upcoming promotion that Plaintiff would have received but for the discriminatory and retaliatory actions alleged in this Complaint.

10.

From March 2020 until early 2022, RSUI's entire workforce, including Plaintiff and other claims handlers, worked remotely on a full-time basis. During this time, Plaintiff and others in her same position were able to perform all of the essential functions of the Chief Claims Specialist job.

11.

In early 2022, RSUI began bringing employees back into the office for a few days each week: first one day a week in person, then two days, and then, beginning in May 2022, for three days each week. Employees could work remotely the other days each week they were not in the office. Employees were also given one telework day each month to use at their discretion, and one telework week each summer.

12.

Plaintiff did not initially oppose the return to in-office work, but in June 2022, she experienced a family crisis that led her to develop depression and anxiety, mental-health impairments that were often accompanied by physical manifestations (such as migraines and vomiting) and which substantially limit one or more of her major life activities. These are diagnosed medical disorders for which she seeks ongoing treatment from medical and mental-health professionals and for which she has been prescribed medications.

13.

Plaintiff's anxiety and depression substantially limit major life activities such as sleeping, eating, concentrating, thinking, and regulating her emotions.

14.

Plaintiff's anxiety and depression constitute disabilities under the Americans with Disabilities Act.

15.

Beginning in June 2022, Ms. Vogt made multiple requests to RSUI for reasonable accommodations of her disabilities.

16.

Ms. Vogt's disabilities never interfered with her ability to perform the essential functions of her job, which were investigating and analyzing insurance claims, providing coverage opinions and liaising with defense counsel to monitor and assist in crafting litigation strategy, reviewing and reporting on legal documents and motion practice, attending mediations (the majority of which became virtual in 2020 and continue to be so today) when needed, and other computer-based activities relating to the evaluation, monitoring, and reporting on insurance claims and litigation matters. All of these essential functions could be performed virtually.

17.

Ms. Vogt's disabilities made it challenging for her to meet the non-essential job function of being in the office three days per week. It was difficult for her to feel comfortable, to check on her husband and children to alleviate her worry, to take short breaks as needed to process her stress and sense of overwhelm, and otherwise put her mind at ease that both her family and work obligations were being met. In addition, Ms. Vogt's office at RSUI featured a large glass wall and was located near the bathroom and break room, so Ms. Vogt had no privacy if she became emotional or physically ill at work as a result of her disabilities.

18.

In June 2022, Ms. Vogt asked RSUI to grant her a reasonable accommodation by modifying its standard hybrid work schedule to allow her to work remotely five days per week on a temporary basis while her disabilities persisted. She knew this request was reasonable and would not be an undue hardship for RSUI in light of, among other things, her 13 years' experience in the job, the fact that she had successfully performed her job for two years while fully remote from 2020 until 2022, and the fact that RSUI granted remote work as accommodations for employees with physical disabilities.

19.

In her initial communications with RSUI about her request for reasonable accommodations, the company appeared skeptical that her disabilities were genuine and expressed an attitude that mental-health disabilities (as opposed to physical conditions) were not real or worthy of accommodations.

20.

RSUI's Benefits Manager, Zach McClure, told Ms. Vogt in June 2022 that the company does not accommodate "non-physical" disabilities. Its Chief Human Resources Officer, Cindy Maxey, reiterated that position during a July 5, 2022 call, when she told Ms. Vogt that "anxiety is not normally – it's normally something that would not be approved" for accommodations. During the same call, Ms. Maxey gave examples of situations when RSUI would grant accommodations, and all involved physical disabilities, such as being immobilized by surgery or pain medication such that an employee "physically can't move, like they physically cannot get around."

21.

On July 7, 2022, Ms. Vogt submitted a formal complaint of disability discrimination to RSUI, invoking the ADA by name and citing its definition of disability (which includes mental impairments), complaining that RSUI's policy of not accommodating mental-health disabilities "is a clear violation of federal

- 8 -

law," and reiterating her request for relief in the form of reasonable accommodations.

22.

In mid-July 2022, after extensive back-and-forth communications between Ms. Vogt and RSUI, and after Ms. Vogt submitted numerous records and documentation requested by RSUI, RSUI finally (and begrudgingly) granted her request for a reasonable accommodation in the form of temporary telework for five days per week.

23.

That accommodation was in place between mid-July 2022 and December 2, 2022.

24.

In both July and September 2022, RSUI's Benefits Manager, Zach McClure, provided Ms. Vogt with a job description for her position so that she could forward it to her medical providers in connection with her requests for accommodations. Neither job description included any reference to in-person attendance at the office, let alone listing that as an essential function of the job.

25.

In May 2023—after Ms. Vogt had retained counsel and filed a Charge of Discrimination, but before her termination—RSUI provided a position statement

to the EEOC responding to Ms. Vogt's Charge. Attached to that position statement was a document that purported to be a job description for Plaintiff's job. This was not the same job description that had previously been provided to Plaintiff in connection with her requests for accommodations, nor had it ever otherwise been shown or given to Plaintiff. This job description had been altered to add a paragraph at the beginning that described in-office work an essential function of the role, when it never had been previously.

26.

The altered job description that was provided to the EEOC in May 2023 is not a genuine description of the essential functions of Plaintiff's job and was contrived by RSUI solely to bolster its defense against Ms. Vogt's claims. Notwithstanding this altered job description, the requirement to work in the office was never an essential function of Plaintiff's job.

27.

Evidence that in-office work was not an essential function of Ms. Vogt's job includes at least the facts that: (a) for years, RSUI granted remote work (on both a temporary and full-time basis) as an accommodation to individuals with physical disabilities, even for minor issues that could have been accommodated in other ways, such as by minor deviations from the company's dress code; (b) in January 2023, RSUI closed its California office and made its entire California

workforce, including individuals in the same or comparable positions as Ms.

Vogt, fully remote on a permanent basis; and (c) Ms. Vogt and others in her

position were able to successfully perform their job duties while working remote

on a full-time basis from March 2020 until early 2022;

28.

Furthermore, the standard "hybrid work schedule" policy in RSUI's

handbook says nothing about in-office work being an "essential function" of any

job, and in fact, that policy expressly states that it *is* subject to being modified as a

reasonable accommodation for a disabled employee: "This policy does not apply

to requests for reasonable accommodation . . . . Employees requesting to

telecommute outside this policy as a reasonable accommodation should follow

RSUI's procedures on requests for reasonable accommodations."

29.

With Ms. Vogt's December 5th return-to-work date looming, her

psychologist recommended extending her remote work because of her

continuing symptoms. Ms. Vogt notified RSUI, through Mr. McClure, and

requested that the remote-work accommodation be extended by twelve weeks.

30.

At 5:15 p.m. on Friday, December 2, 2022—the last day of Ms. Vogt's then-

scheduled leave—Mr. McClure finally responded to say that her request was

denied and she was expected to return to work in-person on Monday, December 5.

31.

Between December 5, 2022, and January 11, 2023, Ms. Vogt worked her standard two weekly telework days and was able to use a combination of accrued PTO days, COVID leave, and company-wide flexible telecommute days to cover the days she would otherwise have been expected to work in the office.

32.

On approximately January 11, 2023, Ms. Vogt applied for intermittent FMLA leave to commence January 12, intended to cover the days that she would otherwise be required to report to the office in person.

33.

RSUI's leave administrator, The Hartford, mistakenly approved Ms. Vogt on February 1, 2023 for six weeks of *continuous* FMLA leave, rather than the intermittent leave she had applied for. When Ms. Vogt notifies the Hartford of this error, the Hartford issues a letter indicating that they are missing information, but they do not specify what is missing. When Ms. Vogt takes the initiative to call the Hartford for clarification, the Hartford tells her that it needs more details about the frequency and duration of the flare ups of her condition. Ms. Vogt provides the requested information to the Hartford, and on February 9,

is approved for intermittent FMLA leave (three days per week of leave) through February 24, 2023.

34.

Ms. Vogt's intermittent FMLA leave was extended on several occasions, into May 2023.

35.

In May 2023, Ms. Vogt's medical providers cleared her to return to in-person work one day per week. She asked RSUI to agree to a modified accommodation of four telework days each week, but RSUI refused and insisted that Ms. Vogt adhere to the same hybrid work schedule as non-disabled employees.

36.

Significantly, in December 2022, RSUI had stated it would not continue to approve telework as an accommodation because it did not believe Ms. Vogt ever intended to return to the office, so they treated as an indefinite request. Even after being released to return to work one day per week, however, the company refused to reconsider that position.

37.

On May 24, 2023, Ms. Vogt submitted a request, with supporting medical documentation, to extend her intermittent FMLA leave through August 11. The

Hartford requested additional information on multiple separate occasions, which Ms. Vogt provided on June 15 and June 29.

38.

Between May 24 and July 9, 2023, Ms. Vogt heard nothing from the Hartford about her request to extend her leave. Ms. Vogt reached out to the Hartford on numerous occasions but received no response.

39.

On July 10, 2023, the Hartford notified Ms. Vogt that it was denying her intermittent FMLA request for the time period May 23 through July 10 due to "invalid supporting documents," although it provided no details as to what documentation was missing or invalid. Ms. Vogt contacted the Hartford on numerous occasions for clarification and advice on how to cure the issue. The information shared with her was constantly a moving target, as on those occasions when she was able to speak with someone, she was told different things. Eventually, she was told that her doctor needed to fill out a form in a different way than he had. Ms. Vogt told the Hartford that she had a follow-up appointment scheduled on July 18th and that she would submit the updated paperwork after that appointment.

40.

Ms. Vogt was also in communication with RSUI during this time to discuss her anticipated return to work.

41.

On June 15, 2023, Zach McClure told Ms. Vogt that beginning on July 1, 2023, she was "expected to return to RSUI's hybrid remote schedule and will no longer be on an accommodation." Again ignoring the medical basis for her request, he accused Ms. Vogt of trying to "find ways to not come into the office" and thereby "going outside of the spirit of what [RSUI is] trying to achieve." Mr. McClure contended that if Ms. Vogt could not meet RSUI's hybrid remote schedule beginning July 1, then you will not meet the essential functions of your position." In reality, in-office work was never (in June 2023 or otherwise) an essential function of Ms. Vogt's position.

42.

Subsequent developments moved Ms. Vogt's final day of FMLA leave to Tuesday, July 11, 2023. She was already approved to take time off on Wednesday, July 12. On Thursday, July 13, 2023, Ms. Vogt reported to work in-person as required by RSUI.

43.

RSUI terminated Plaintiff's employment on Thursday, July 13, 2023, while Ms. Vogt was in the office.

44.

At the time RSUI terminated Plaintiff's employment, RSUI was aware that Plaintiff had a follow-up doctor's appointment scheduled for July 18, 2023, just five days later. All of the working days until July 18 were company-approved telework days, meaning that Ms. Vogt would not be required to use any FMLA or other leave (paid or unpaid) for July 14th, 17th, or 18th.

45.

At her July 18, 2023, appointment, Plaintiff was released back to work in-person at an office three days each week. But for her termination on July 13, Ms. Vogt would have been able to comply with RSUI's hybrid attendance policy without using any further FMLA leave.

46.

RSUI nevertheless terminated Plaintiff's employment on July 13, citing exhaustion of her FMLA leave, intending to fire her before she could be released back to work.

47.

RSUI subsequently failed to pay Ms. Vogt for all hours actually worked. Her second-to-last paycheck inaccurately deducted three days' pay for FMLA leave, even though she did not use FMLA leave during that pay period. The error was not corrected in her final paycheck. When Ms. Vogt asked RSUI about it after her termination, the company continued to refuse to address the error.

48.

Despite submitting all requested documentation to the Hartford to support her request for intermittent FMLA leave between May 23 and July 10, 2023, the Hartford refused to take any action on that request. The Hartford told Ms. Vogt that RSUI had instructed it to take no further action on the application because Ms. Vogt was no longer employed.

49.

Upon information and belief, RSUI and/or the Hartford are refusing to retroactively approve Ms. Vogt's FMLA leave, even though she met all requirements for that leave, because they believe they are in a more strategic position against any subsequent FMLA interference or retaliation claim if they can say the final request was never approved.

50.

Prior to Plaintiff's complaints of discrimination and her use of FMLA leave, she had always received favorable performance evaluations from RSUI.

51.

For example, in March 2022, Ms. Vogt's manager, Bob Hennelly, noted in her 2021 year-end review that Ms. Vogt "has made great strides developing effective resolution strategies," "has a positive can do attitude and takes her role seriously," "continues to excel at customer service as her coverage letters are usually issued within 24-48 hours from claim setup," "is the epitome of first in class customer service," "routinely develops solid connections with her Insureds," "is very responsive to any concerns that I may have," "is efficient in managing her pending [files]," and "has terrific time management skills."

52.

Her 2022 review, however—which was issued in mid-February 2023, after her request for accommodations, her complaint of discrimination, and her use of FMLA leave—was more critical of Ms. Vogt's job performance. Mr. Hennelly stated that "Jaclyn has fallen behind in her coverage letters as of late," which was not true. He also faulted Plaintiff for not doing enough to independently evaluate her claims and instead relying too much on the opinion of defense

counsel, referring to a specific case that was being handled by the law firm Fisher & Phillips. That criticism, too, was unfounded and baseless.

53.

Ms. Vogt could see in RSUI's employee intranet system that her 2022 year-end review showed a status of "manager re-assessment," indicating that it had been sent back to Mr. Hennelly to change after it was initially prepared. This was unusual according to RSUI's standard business practices: Ms. Vogt had never seen that status before, and when she asked her coworkers what the status of their reviews were at the time these were issued, theirs were "approved."

54.

Ms. Vogt informed RSUI that she disagreed with the 2022 review and believed it was retaliatory. RSUI's Director of Human Resources, Melody Mason, subsequently informed Ms. Vogt that she "looked into" her complaints and "was not able to substantiate any retaliation," essentially because she believed Mr. Hennelly's explanation. Upon information and belief, no actual investigation was done.

55.

After Ms. Vogt complained about disability discrimination and retaliation and exercised her rights under the FMLA, she began to be excluded from company events that she would otherwise have been invited to, including

roundtable team meetings beginning in October 2022 and continuing up to the termination of her employment. In June 2023, Ms. Vogt received a calendar invite for her group's team meeting that included a link to join remotely, but Mr. Hennelly told her eight minutes before the meeting was scheduled to begin that she could not participate because the company wanted to keep the round tables "in person." (The week of June 29th, Ms. Vogt was not on FMLA leave, but was using her company-issued summer telecommute week, and was therefore working remotely in line with standard company policies and practices.) Employees who work remotely because of physical disabilities were routinely permitted to join office meetings and seminars virtually.

56.

After receiving Ms. Vogt's complaint of discrimination and forcing her onto FMLA leave rather than granting her an accommodation, RSUI also treated Ms. Vogt differently than when she has used FMLA in the past. For example, in 2021, when Ms. Vogt took FMLA leave for the birth of her third child, she was permitted to use as-yet-unaccrued PTO days. But after forcing Plaintiff onto FMLA leave in 2023, RSUI did not allow Ms. Vogt to borrow unaccrued PTO days as it has in the past for her and, upon information and belief, as it still allows other employees to do today.

57.

Prior to the onset of her disabilities, her request for reasonable accommodations, and her use of FMLA leave, Plaintiff was on track to receive a promotion that would have entailed a substantial pay increase of at least $25,000 per year, as well as the opportunity for an increased annual bonus. After and because of the events alleged in this Complaint, RSUI denied her that promotion.

58.

Plaintiff has secured replacement employment since being terminated, in an attempt to mitigate her damages. Her base salary is higher, but her total compensation package is lower than at RSUI (for example, RSUI's 401k policy was much more favorable, her new bonus cap is lower than the actual bonuses she received at RSUI, and RSUI offered more favorable annual raises to account for cost of living).

**Count I: Discrimination (Adverse Action and Failure to Accommodate)**
**In Violation of the ADA**

59.

The allegations in the preceding paragraphs are incorporated by reference as if fully restated herein.

60.

At all times relevant to this action, RSUI was (and continues to be) an "employer" as that term is defined in 42 U.S.C. § 12111(5), and Ms. Vogt was RSUI's "employee" as that term is defined in 42 U.S.C. § 12111(4).

61.

At all times relevant to this action, RSUI employed 15 or more employees.

62.

At all times relevant to this action, Ms. Vogt was a "qualified individual" as that phrase is defined in 42 U.S.C. § 12111(8), in that she was able, with or without reasonable accommodations, to perform all the essential functions of her position at RSUI.

63.

Beginning in June 2022, and continuing thereafter to the present, Ms. Vogt suffered from a "disability" as that term is defined in 42 U.S.C. § 12012. Specifically, she suffered from multiple mental impairments, including depression and anxiety, which were frequently accompanied by physical impairments and manifestations, that substantially limit one or more of her major life activities (including caring for herself, eating, sleeping, concentrating, thinking, and communicating) and the operation of major bodily functions (such as her neurological and brain functions).

64.

In and after June 2022, RSUI was aware that Ms. Vogt suffered from a disability.

65.

Ms. Vogt requested that RSUI accommodate her disabilities by modifying its standard, disability-neutral hybrid work schedule to allow her to telework slightly more than other, non-disabled employees.

66.

Ms. Vogt's requested accommodations were reasonable, would have caused RSUI no hardship (let alone an undue hardship) on RSUI, and were similar to policies that RSUI had put in place for both non-disabled individuals and physically disabled individuals.

67.

In-office work was never an essential function of Ms. Vogt's position, as evidenced by the fact that numerous other individuals in her position and comparable roles—including non-disabled California employees who have been fully remote since January 2023, physically disabled employees in Georgia and elsewhere who have been granted both temporary and permanent telework accommodations, and all of RSUI's claims handling employees who worked fully

remote from March 2020 until January 2023—were able to perform all essential functions of the job while working remotely.

68.

RSUI discriminated against Plaintiff by refusing Ms. Vogt's requested accommodations, and it did not engage in an interactive process with her to see if there were other accommodations that RSUI would be willing to accept.

69.

RSUI expressed a blanket discriminatory refusal to accommodate mental-health disabilities such as depression and anxiety, and it was that policy that led it to wrongly deny Ms. Vogt's requests for accommodations.

70.

RSUI also came to its own conclusion, despite medical documentation to the contrary, that Ms. Vogt's disabilities were not "real" or genuine and therefore not worthy of accommodation.

71.

RSUI's refusal to accommodate Plaintiff's disabilities forced Plaintiff to take leave that she would not otherwise have required (or that she would have required less of) and that either was uncompensated (e.g., intermittent FMLA leave), compensated at a reduced rate relative to her normal pay (e.g., company-provided leave), or depleted her accrued but unused paid time off.

72.

RSUI discriminated against Plaintiff by failing to pay her properly while she was using intermittent FMLA leave.

73.

RSUI discriminated against Plaintiff by terminating her at the conclusion of the leave that she was forced to take because of RSUI's failure to grant reasonable accommodations. At the time of her termination, Plaintiff was days away from being released back to in-office work three days per week. She therefore would have been able to perform not only the essential functions of her role, but also the non-essential function of working RSUI's hybrid work schedule, which by its own terms does not apply to individuals seeking reasonable accommodations. RSUI nevertheless fired her.

74.

Plaintiff is entitled to recover from RSUI all damages proximately resulting from RSUI's discriminatory treatment, including lost pay, benefits, lost opportunities for advancement, reinstatement or front pay, compensatory damages for mental anguish and emotional distress, and reasonable attorneys' fees and costs.

75.

RSUI's discriminatory treatment of Plaintiff was oppressive and malicious and done with a conscious disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages in an amount to be proven at trial.

**Count II: Retaliation In Violation of the ADA**

76.

The allegations in the preceding paragraphs are incorporated by reference as if fully restated herein.

77.

Plaintiff exercised her rights under the Americans with Disabilities Act by, among other actions alleged in this Complaint and known to RSUI, filing a formal complaint of discrimination with her supervisor on July 7, 2022; filing an EEOC Charge and Amended Charge in February and July 2023 (respectively); requesting reasonable accommodations on numerous occasions between June 2022 and July 2023; complaining in March 2023 that her 2022 performance review was retaliatory; and otherwise complaining to RSUI that it was discriminating and retaliating against her (for example, in communications with Zach McClure and others in May, June, and July 2023 leading up to her termination on July 13).

78.

RSUI retaliated against Plaintiff for exercising her rights under the ADA by, among other things, refusing to grant her reasonable accommodations, forcing her onto leave that was unpaid or paid at a reduced rate, forcing her to deplete her paid time off when she would not otherwise have had to, denying her a promotion that she was on track to receive prior to the onset of her disabilities, not paying her properly while on her forced leave, instructing the Hartford not to process Plaintiff's FMLA requests, and terminating Plaintiff's employment.

79.

Plaintiff is entitled to recover from RSUI all damages actually and proximately resulting from RSUI's retaliatory treatment, including lost pay, benefits, lost opportunities for advancement, reinstatement or front pay, compensatory damages for mental anguish and emotional distress, and reasonable attorneys' fees and costs.

80.

RSUI's retaliatory treatment of Plaintiff was oppressive and malicious, and done in conscious disregard of Plaintiff's federally protected rights, entitling Plaintiff to punitive damages in an amount to be proven at trial.

## Count III: Violation of the FMLA

81.

The allegations in the preceding paragraphs are incorporated by reference as if fully restated herein.

82.

At all times relevant to this action, RSUI was an "employer" as that term is defined in 29 U.S.C. § 2611(4) and employed more than 50 employees.

83.

At all times relevant to this action, Ms. Vogt was an "eligible employee" as that phrase is defined in 29 U.S.C. § 2611(2).

84.

The FMLA entitles eligible employees such as Plaintiff to take up to twelve weeks (60 days) of job-protected leave in a twelve-month period to attend to, among other things, the employee's own "serious health condition."

85.

Beginning in June 2022 and continuing through July 13, 2023 and beyond, Plaintiff suffered from a "serious health condition" as that term is defined in 29 U.S.C. § 2611(11), to wit, depression and anxiety for which she received continuing treatment by health care providers.

86.

In January 2023, Plaintiff requested intermittent FMLA-protected leave for
her serious health conditions.

87.

Plaintiff was on approved intermittent FMLA leave between January 12,
2023 and May 22, 2023.

88.

Plaintiff was eligible for, did all that was required of her to be approved
for, and should have been approved for intermittent FMLA leave continuing
beyond May 22, 2023. The only reason she was not approved for that was the
Hartford's refusal to accept the documentation she had provided, and then
RSUI's instruction to the Hartford not to process the request after Plaintiff's
termination.

89.

RSUI retaliated against Plaintiff for taking job-protected FMLA leave by
refusing to restore her to her pre-leave position and by terminating her
employment on July 13, 2023, at a time when Plaintiff would have been able to
return to work three days a week, as previously demanded by RSUI, without
using any further FMLA leave.

90.

RSUI's FMLA violations caused Plaintiff to suffer lost wages and benefits, lost opportunities for advancement, lost future wages, and other damages that Plaintiff is entitled to recover from RSUI.

91.

RSUI is also liable to Plaintiff for liquidated damages and attorneys' fees and expenses of litigation.

**PRAYER FOR RELIEF:**

WHEREFORE, Plaintiff respectfully asks this Court to:

1.   Find that Defendant violated Ms. Vogt's rights under the ADA and the FMLA as described above;

2.   Order Defendant to make Plaintiff whole by awarding her back pay, front pay (reinstatement not being feasible in this case in light of the acrimony that has developed between the parties), other economic and non-economic damages, compensatory and punitive damages to the maximum extent permitted by law, liquidated damages under the FMLA, pre- and post-judgment interest, and reasonable expenses and attorneys' fees;

3.   Grant a trial by jury on all issues so triable; and

4.      Grant any further relief deemed necessary, proper, or just.

Submitted this 15th day of December, 2023.

>                                         */s/ Jennifer K. Coalson*
>                                         A. Lee Parks, Jr.
>                                         Georgia Bar No. 563750
>                                         lparks@pcwlawfirm.com
>                                         Jennifer K. Coalson
>                                         Georgia Bar No. 266989
>                                         jcoalson@pcwlawfirm.com
>                                         **Parks, Chesin & Walbert, PC**
>                                         1355 Peachtree St. NE, Suite 2000
>                                         Atlanta, GA 30309
>                                         404.873.8000 (Phone)
>                                         404.873.8050 (Fax)
>
>                                         *Counsel for Plaintiff*