# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **WARREN MARTIN**, an individual, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY DEMAND** |
| **NANOLUMENS, INC., d/b/a NANOLUMENS**, a Georgia corporation, | |
| Defendant. | |

Plaintiff WARREN MARTIN ("Plaintiff"), by his undersigned counsel, hereby brings this Complaint under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, against Defendant NANOLUMENS, INC., d/b/a NANOLUMENS, a Georgia corporation ("Defendant"), and states as follows:

### THE PARTIES

1.     Plaintiff is a Georgia resident who has been employed by Defendant as a field engineer since May 11, 2020. (**Exhibit 1**, Offer of Employment.)

2.     Defendant is a Georgia corporation that designs and manufactures digital Light Emitting Diode ("LED") displays.

### JURISDICTION

3.     This Court has subject matter jurisdiction over Plaintiff's FLSA claim under 28 U.S.C. § 1331 because the FLSA claim raises a federal question under 29 U.S.C. § 201 *et seq*.

4.     This Court has personal jurisdiction over Defendant because Defendant resides in Georgia, conducts business in Georgia, and employs individuals in Georgia.

## VENUE

5.      Venue is proper in the Northern District of Georgia under 28 U.S.C. §§ 1391(b)(1) and (2) because Defendant resides in this District, conducts business in this District, and employs individuals in this District.

## INTRADISTRICT ASSIGNMENT

6.      A substantial part of the events or omissions giving rise to Plaintiff's claim occurred in Gwinnett County, Georgia; thus, this action is properly assigned to the Atlanta Division.

## GENERAL ALLEGATIONS

7.      This is an action for unpaid overtime under Section 207 of the FLSA.

8.      At all relevant times, Defendant employed Plaintiff as a field engineer.

9.      At all relevant times, Plaintiff regularly worked up to 65 or more hours per week.

10.     At all relevant times, Plaintiff was a nonexempt employee entitled to overtime pay.

11.     Defendant's field engineers – including Plaintiff – are responsible for supervising the installation of large-scale LED displays in accordance with the manufacturer's specifications.

**Fair Labor Standards Act (FLSA)**

12.     The FLSA was enacted to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981).

13.     Nearly 80 years ago, the Supreme Court wrote that the "the prime purpose" of the FLSA is "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 n.18 (1945). The Court explained that Congress passed this law as

> a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal

> compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce.

*Id.* at 706-07.

14.     The FLSA is designed to ensure each employee the Act covers receives "[a] fair day's pay for a fair day's work" and protects them from "the evil of overwork as well as underpay." *Barrentine*, 450 U.S. at 739 (internal citations and quotations omitted).

15.     Enacted in 1938, the FLSA generally requires covered employers to pay nonexempt employees at least 1.5 times the employee's "regular rate" of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1).

**<u>FLSA Enterprise Coverage</u>**

16.     "An employee who does not receive appropriate overtime pay may bring a private FLSA action against an employer for damages." *Hekmati v. Mindy R. Smith, P.C.*, No. 1:19-CV-04434-ELR, 2021 WL 2561785, at *2 (N.D. Ga. Feb. 23, 2021) (citation omitted).

17.     "In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011)

18.     "There are two (2) types of FLSA coverage: (1) individual coverage, and (2) enterprise coverage." *Hekmati*, 2021 WL 2561785, at *3 (citation omitted).

19.     For enterprise coverage to attach, the employer must (1) have employees engaged in commerce or in the production of goods for commerce, or have employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and (2) have an annual gross volume of sales of at least $500,000. 29 U.S.C. §§ 207(a)(1), 203(s)(1)(A).

20.     The first prong of the enterprise coverage test is satisfied, as Defendant employs

field engineers who handle large-scale LED displays and component parts that have been moved in or produced for commerce.

21.     The second prong of the enterprise coverage test is also satisfied, as Defendant's gross annual sales exceed $500,000.

22.     Hence, Defendant is a covered enterprise under the FLSA.

**FLSA Overtime Violations**

23.     At all relevant times, Plaintiff regularly worked 65+ hours per week.

24.     From May 11, 2020 to November 16, 2022, Plaintiff was employed solely on a semimonthly salary basis and was misclassified as exempt from overtime pay.

25.     The U.S. Department of Labor ("DOL"), in its regulations interpreting the FLSA, explains the correct way an employer must calculate the "regular rate" of pay based on a semimonthly salary:

> If the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate. If an employee is hired at a salary of $350 and if it is understood that this salary is compensation for a regular workweek of 35 hours, the employee's regular rate of pay is $350 divided by 35 hours, or $10 an hour, and when the employee works overtime the employee is entitled to receive $10 for each of the first 40 hours and $15 (one and one-half times $10) for each hour thereafter. If an employee is hired at a salary of $375 for a 40-hour week the regular rate is $9.38 an hour.

> ***

> Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent. A monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks). A semimonthly salary is translated into its equivalent weekly wage by multiplying by 24 and dividing by 52. Once the weekly wage is arrived at, the regular hourly rate of pay will be calculated as indicated above. The regular rate of an employee who is paid a regular monthly salary of $1,560, or a regular semimonthly salary of $780 for 40 hours a week, is thus found to be $9 per hour.

29 C.F.R. § 778.113.

26.     Plaintiff's starting base salary in May 2020 was $80,500.00 per annum, paid semimonthly, which equates to $3,354.17 per pay period and $1,548.08 per week. Plaintiff's semimonthly salary was intended to compensate him for 40 hours a week. Hence, Plaintiff's "regular rate" of pay was $38.70 ($1,548.08 / 40 hours). *Id.*

27.     In April 2022, Defendant raised Plaintiff's base salary to $85,000.00 per annum, paid semimonthly, which equates to $3,541.67 per pay period and $1,634.62 per week. Plaintiff's semimonthly salary was intended to compensate him for 40 hours a week. Hence, Plaintiff's "regular rate" of pay was $40.87 ($1,634.62 / 40 hours). *Id.*

28.     In August 2022, Defendant raised Plaintiff's base salary to $90,000.00 per annum, paid semimonthly, which equates to $3,750.00 per pay period and $1,730.77 per week. Plaintiff's semimonthly salary was intended to compensate him for 40 hours a week. Hence, Plaintiff's "regular rate" of pay was $42.27 ($1,730.77 / 40 hours). *Id.*

29.     On November 16, 2022, Defendant reclassified Plaintiff as a nonexempt, hourly employee and henceforth paid Plaintiff an hourly wage equal to $42.00. (**Exhibit 2**, Employee Change of Status.)

30.     Defendant willfully violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times his "regular rate" of pay for all hours worked over 40 in a workweek from May 11, 2020 to November 16, 2022.[1]

---

[1] When an employee covered by the FLSA works more than 40 hours in a week, his employer must pay him for the excess hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). This "regular rate" must be expressed as an hourly rate, 29 C.F.R. § 778.109, but here, Plaintiff was paid a fixed salary from May 11, 2020 to November 16, 2022, regardless of the number of hours he worked. For such employees, the "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary *is intended to compensate.*" *Id.* § 778.113(a)

**The FLSA and its Relevant Exemptions**

31.     "Under the FLSA, employers must pay their employees one and one-half times the employees' usual hourly wage for all hours worked in excess of forty hours per week." *Reycraft v. Portal 3 LLC*, No. 1:21-CV-1130-MHC, 2022 WL 4596683, at *3 (N.D. Ga. Aug. 22, 2022) (citing 29 U.S.C. § 207(a)(1)).

32.     However, there are exemptions to the FLSA's overtime pay requirement that may apply in particular cases depending on the type of work performed by the employee.

33.     For example, the FLSA exempts from overtime pay "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).

34.     "[T]he employer has the burden of showing that it is entitled to the exemption." *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997) (citation omitted).

35.     "The defendant must prove applicability of an exemption by clear and affirmative

---

(emphasis added). Plaintiff's salary was intended to compensate him for 40 hours a week. (*See, e.g.*, **Exhibit 3**, Insperity Time and Attendance.) This means that Plaintiff has not been compensated *at all* for any hours he worked over 40 in any week. Nevertheless, Defendant will argue that Plaintiff's salary was intended to compensate him for not just 40 hours a week, but however many hours he actually worked in a week, meaning that Plaintiff has already received his "regular rate" for any hours worked over 40, and he is only owed a 50% premium for those hours to bring his pay up to time-and-a-half. This method, known as the "fluctuating workweek" method, is permissible under the FLSA. That is, the FLSA allows an employer to pay a fixed salary for the hours worked each workweek, whatever their number, and then pay extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half the regular rate of pay. 29 C.F.R. § 778.114(a). However, this method is only permissible if, *inter alia*, the parties "have a clear and mutual understanding that the fixed salary is compensation … for the total hours worked each workweek regardless of the number of hours." *Id.* Defendant will argue that because Plaintiff accepted his semimonthly salary for whatever hours he worked in a given pay period, Plaintiff understood that the salary was intended to compensate him for all hours worked. This argument misses the mark. The critical issue is not whether Defendant paid Plaintiff a fixed salary for varying hours, but whether Defendant and Plaintiff understood that the fixed salary was intended to compensate Plaintiff for all hours worked. *Dearth v. Hartford Fire Ins. Co.*, No. 6:16-CV-1603-ORL-37KRS, 2018 WL 4537474, at *9 (M.D. Fla. Sept. 4, 2018). The answer to that question will be hotly disputed.

evidence." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992) (quotation and citation omitted).

36.     To meet its burden in proving an exemption, an employer must establish that an employee's duties, salary level, and salary basis meet certain thresholds. *See* 29 C.F.R. § 541.700 (duties test); *id*. § 541.600 (salary level test); *id*. § 541.602 (salary basis test).

37.     Notably, "[a] job title alone is insufficient to establish the exempt status of an employee. The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." *Id*. § 541.2.

38.     Plaintiff does not dispute that he satisfied the "salary level test" and the "salary basis test" when he was a salaried employee.

39.     Plaintiff, however, did not satisfy the "duties test" with respect to the executive, administrative, or professional exemptions when he was a salaried employee.

**Plaintiff was not Employed in a Bona Fide Executive Capacity under the FLSA**

40.     The executive employee exemption covers employees

[w]hose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; ... [w]ho customarily and regularly directs the work of two or more other employees; and ... [w]ho has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a)(2)-(4).

41.     Plaintiff was not employed in a bona fide executive capacity because, *inter alia*, he did not manage the enterprise or a customarily recognized department or subdivision thereof. To the contrary, Plaintiff spent most of his time on the road supervising the installation of large-scale LED displays in accordance with the manufacturer's specifications, and he was required to report

to Defendant's Director of Services and Support.

42.     Moreover, Plaintiff did not customarily or regularly direct the work of <u>two or more</u> <u>other employees</u>. Defendant's large-scale LED displays were installed by third-party independent contractors. Hence, the individuals Plaintiff supervised <u>were not Defendant's employees</u>.

43.     Finally, Plaintiff did not have the authority to hire or fire other employees; nor were his suggestions or recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees given any particular weight.

44.     Hence, Plaintiff was not employed in a bona fide executive capacity within the meaning of 29 U.S.C. § 541.100.

**Plaintiff was not Employed in a Bona Fide Administrative Capacity under the FLSA**

45.     The administrative employee exemption covers employees "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and ... [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2)-(3).

46.     Plaintiff was not employed in a bona fide administrative capacity because, *inter alia*, his primary duty was not the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.

47.     Per DOL regulations, to meet the requirement that an employee perform work "directly related to the management or general business operations," an employee "must perform work directly related to assisting with the *running or servicing* of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Id*. § 541.201(a) (emphasis added). *See also Cotten v. HFS-USA, Inc.*, 620

8

F. Supp. 2d 1342, 1347 (M.D. Fla. 2009) ("This prong is met if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs.") (citation and quotations omitted).

48.    The regulations provide examples of work that is "directly related to management or general business operations," as follows:

> (b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

49.    The exemption "relates to employees whose work involves servicing the business itself -- employees who can be described as staff rather than line employees." U.S. DOL, Wage & Hour Div., Opinion Letter, 2010 WL 1822423, at *2 (Mar. 24, 2010) (citation and quotations omitted).

50.    "Courts addressing the issue of whether an employee engages in work 'directly related to management or general business operations' often find the 'production versus administrative' dichotomy helpful." *Greene v. Tyler Techs., Inc.*, 526 F. Supp. 3d 1325, 1339 (N.D. Ga. 2021).

51.    This concept is intended to "distinguish between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to running the business itself." DOL Opinion Letter, 2010 WL 1822423, at *3 (citation and quotations omitted); *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 535 (2d Cir. 2009) ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to

the running of any business.").

52.     And while the administrative-production distinction may be an "imperfect analytical tool" in a service-oriented employment context, employees "can be considered 'production' employees in those instances where their job is to generate (i.e., 'produce') the very product or service that the employer's business offers to the public." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 564 F.3d 688, 694 (4th Cir. 2009) (citations omitted).

53.     Stated differently, "[a]pplication of the distinction between production and administrative duties is not limited to the traditional manufacturing context. In a service industry, production activities relate to the 'primary service goal' of the entity." *Cotten*, 620 F. Supp. 2d at 1348 (citation omitted).

54.     In this case, Defendant's primary service goal was installing large-scale LED displays in conformance with contracts between Defendant and its customers and in compliance with the manufacturer's specifications.

55.     Under these circumstances, it cannot be said that Plaintiff's primary duties as a field engineer were directly related to Defendant's management or general business operations.

56.     Although Plaintiff "managed" certain assigned installation sites, his duties were concerned with ensuring that the contract installers received their work orders, received the correct materials from the manufacturer, and completed the installation job as specified in the contract and the work order and in compliance with the manufacturer's specifications.

57.     Plaintiff was not responsible for negotiating or executing contracts, creating work orders, or developing the applicable standards or specifications.

58.     While it's true that Plaintiff did not spend 100% of his time performing manual labor, he did not, as the regulation requires, primarily perform "office" work that was directly

related to Defendant's general business operations. *See* 29 C.F.R. § 541.200(a)(2).

59.     Plaintiff did not work at a branch office, was not involved in formulating business policies or procedures, and did not perform duties directly related to Defendant's financing, budgeting, accounting, auditing, research, employee benefits, taxes, insurance, advertising, or computer technology.

60.     Plaintiff's job duties were precisely the type that have been found to be consistent with production rather than administration. *See, e.g., Sack v. Miami Helicopter Serv., Inc.*, 986 F. Supp. 1456, 1470-71 (S.D. Fla. 1997) (employee's duties of opening work orders, planning repair work, ordering required materials, directing mechanics as to what work to perform, determining whether certain parts complied with F.A.A. standards, and directing repair or replacement of parts that failed inspection did not qualify as administrative tasks related to operation of the business); *Gottlieb v. Constr. Services & Consultants, Inc.*, No. 05-14139-CIV, 2006 WL 5503644, at *1-2 (S.D. Fla. July 24, 2006) (project supervisor's job duties for company in the business of constructing shells for houses did not satisfy the FLSA's administrative exemption where the plaintiff was responsible for, among others things, coordinating and scheduling the work of subcontractors, ordering supplies, billing on the construction site, being the company's representative on the construction site, and inspecting the work of subcontractors).

61.     Plaintiff's job duties did not involve any aspect of running Defendant's business, formulating policy, negotiating contracts, or the like. *See* 29 C.F.R. § 541.201(b); *Cotten*, 620 F. Supp. 2d at 1348-49 (finding that plaintiff, a field supervisor for a home finishing company, did not perform work directly related to business operations where he was not involved in formulating business policies or procedures, did not negotiate or execute contracts, create work orders, or perform duties related to defendant's financing, budgeting, accounting, auditing, research,

employee benefits, taxes, insurance, advertising, or computer technology).

62.     Hence, Defendant cannot meet its burden in establishing that Plaintiff's primary duties were directly related to Defendant's management or general business operations.

63.     On the issue of whether an employee is subject to the administrative exemption based on work related to the employer's *customers*, the DOL regulations provide:

> (c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(c).

64.     Courts have explained that "while the regulations provide that 'servicing' a business may be administrative, 'advising the management' … is directed at advice on matters that involve policy determinations, *i.e.*, how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation." *Bratt v. Cnty. of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990) (finding that probation officers were nonexempt because the services they provided to courts were not related to court policy or overall operational management, contrasting with financial advisers who advise customers on how to increase financial productivity or reduce risk); *see also Boyd v. Bank of Am. Corp.*, 109 F. Supp. 3d 1273, 1288 (C.D. Cal. 2015) (holding that real estate appraisers were nonexempt and did not "advise" or "consult" with defendant's customers, mortgage lenders, within the meaning of 29 C.F.R. § 541.201(c), where they did not offer a service meant to guide the internal policies of the customer, contrasting with tax or financial consultants).

65.     Plaintiff's primary job duties did not in any way directly relate to the management or general business operations of Defendant's customers; nor did Plaintiff directly engage in advising Defendant's customers on their policies or operations. In fact, Plaintiff never had any

direct contact with Defendant's customers, as Plaintiff supervised the installation of large-scale LED displays by third-party independent contractors.

66.     To the extent Plaintiff supervised the installation of technology critical to the operations of Defendant's customers, the DOL has explained that installing, configuring, testing, and troubleshooting computer applications, networks, and hardware, and maintaining a computer system and testing by various systematic routines to see that a particular piece of computer equipment or computer application is working properly according to the specifications designed by others, are examples of work that lack the requisite exercise of discretion and independent judgment with respect to matters of significance to management or general business operations of the employer. U.S. DOL, Wage & Hour Div., Opinion Letter, 2006 WL 3406603, at *3-*4 (Oct. 26, 2006) (citing cases). *See also Lee v. MegaMart, Inc.*, 223 F. Supp. 3d 1292, 1300 (N.D. Ga. 2016) (IT workers "who primarily troubleshoot and repair computer systems are not exempt while those who have a more in-depth role in creating and managing computer systems are exempt").

67.     Not only did Plaintiff spend a minimal amount of time troubleshooting, testing, or calibrating the large-scale LED displays, but he undisputedly did not have a role creating or managing computer systems, did not repair computer systems, and did not do work involving any programming expertise. In fact, he is unable to perform such technical work.

68.     In short, Plaintiff did not perform work directly related to the management or general business operations of Defendant's customers.

69.     According to the federal regulations, the third element of the administrative exemption test requires that an employee's primary duties involve "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a).

70.     The regulations provide a non-exhaustive list of factors that may be considered

when determining whether an employee exercises discretion:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b).

71.     Plaintiff supervised the installation of large-scale LED displays by third-party independent contractors.

72.     These installations were conducted according to the manufacturer's specifications and the terms of the particular contract.

73.     Plaintiff had no specialized training and simply ensured that the third-party contractors installed the large-scale LED displays in accordance with the terms of the contract and the manufacturer's pre-established specifications.

74.     Plaintiff filled out forms documenting the installation results and spoke with the contract installers or his supervisors when defects were noted or if component parts were missing.

75.     These routine installation duties did not require the exercise of significant discretion or independent judgment. *See id.* § 541.202(e) ("The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.").

76.     Notably, the federal regulations exclude "ordinary inspection work" from the

administrative exemption. 29 C.F.R. § 541.203(g) provides,

> Ordinary inspection work generally does not meet the duties requirements for the administrative exemption. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They have some leeway in the performance of their work but only within closely prescribed limits.

77.     This section aptly describes Plaintiff's job activities insofar as he was not permitted to deviate from the manufacturer's pre-established specifications, and therefore, those activities lack the requisite exercise of discretion and independent judgment and do not qualify as being directly related to management policies or general business operations.

78.     Hence, Plaintiff was not employed in a bona fide administrative capacity within the meaning of 29 U.S.C. § 541.200.

**Plaintiff was not Employed in a Bona Fide Professional Capacity under the FLSA**

79.     The professional employee exemption covers employees "[w]hose primary duty is the performance of work: (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." *Id.* § 541.300(a)(2).

80.     Plaintiff was not employed in a bona fide professional capacity because, *inter alia*, he did not perform work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction. To the contrary, Plaintiff and the field engineers were not required to have any specialized knowledge or a specialized degree; nor were they required to undergo any formal academic or on-the-job training in connection with their work as field engineers.

81.     The DOL's regulations make clear that the learned professional exemption is

reserved for professions "where specialized academic training is a *standard* prerequisite for entrance into the profession." 29 C.F.R. § 541.301(d) (emphasis added).

82.     "Thus, the determinative factor is the job requirement and not the education in fact acquired by the employee." *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1565 (11th Cir. 1991).

83.     Notably,

the learned professional exemption is not available for occupations that customarily may be performed with only the general knowledge acquired by an academic degree in any field, with knowledge acquired through an apprenticeship, or with training in the performance of routine mental, manual, mechanical or physical processes. The learned professional exemption also does not apply to occupations in which most employees have acquired their skill by experience rather than by advanced specialized intellectual instruction.

29 C.F.R. § 541.301(d).

84.     Defendant's field engineers were not required to have specialized academic degrees in engineering, technology, computer science, or any other field.

85.     In fact, Plaintiff and many of Defendant's other field engineers don't even possess bachelor's degrees.

86.     Defendant's field engineers were not required to have any formal education whatsoever beyond obtaining a high school diploma or passing the General Educational Development (GED) test.

87.     Defendant regularly hired field engineers such as Plaintiff with no college education and no prior field engineering experience.

88.     To the extent that Defendant employs any field engineers with specialized academic degrees in engineering, technology, computer science, or any other field, such specialized academic degrees are the exception, rather than the rule.

89.     The vast majority of Defendant's field engineers, including Plaintiff, customarily

acquired their knowledge through work experience.

90.     Accordingly, no reasonable juror could conclude that any knowledge acquired by Defendant's field engineers, including Plaintiff, was acquired by a prolonged course of specialized intellectual instruction. *See Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 963 (D. Ariz. 2020) ("With such variety in both formal education and equipment-specific training, the Court rejects any proposition that either was treated as a 'prerequisite for entrance into the profession.' Whatever minimal commonality existed in their backgrounds … merely demonstrates the [Field Service Engineers] 'acquired their skill by experience rather than by advanced specialized intellectual instruction.'") (citations omitted); *Karali v. Branch Banking and Tr. Co.*, No. CV 16-02093-BRM-TJB, 2018 WL 4676073, at *9 (D.N.J. Sept. 28, 2018) (granting summary judgment to employees on the application of the learned professional exemption where there was "no evidence" that they had to complete "any specific, intellectual or academic instruction.").

91.     Hence, Plaintiff was not employed in a bona fide professional capacity within the meaning of 29 U.S.C. § 541.300.

**Plaintiff does not Qualify for the FLSA's Combination Exemption**

92.     The regulations also provide for a so-called "combination exemption":

Employees who perform a combination of exempt duties as set forth in the regulations in this part for executive, administrative, professional, outside sales and computer employees may qualify for exemption. Thus, for example, an employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption. In other words, work that is exempt under one section of this part will not defeat the exemption under any other section.

*Id.* § 541.708.

93.     DOL regulations define "primary duty" as "the principal, main, major or most important duty that the employee performs." *Id.* § 541.700.

94.     Plaintiff's "primary duty" as a field engineer was supervising the installation of

large-scale LED displays in accordance with the manufacturer's specifications.

95.     Hence, for Plaintiff to qualify for the "combination exemption," Defendant must establish that supervising the installation of large-scale LED displays in accordance with the manufacturer's specifications consisted of some combination of exempt executive work, exempt administrative work, exempt professional work, exempt outside sales work, and exempt computer employee work.

96.     As established herein, supervising the installation of large-scale LED displays in accordance with the manufacturer's specifications does not constitute exempt executive, administrative, or professional work; nor does it constitute exempt outside sales work or exempt computer employee work. *See id.* § 541.400 (computer employees); *id.* § 541.500 (outside sales employees).

97.     In other words, Plaintiff's principal job duties as a field engineer did not include the performance of *any* exempt work, and thus, the "combination exemption" does not apply.

**FLSA Recordkeeping Violations**

98.     While an employee bringing suit under the FLSA has the burden of proving that he performed work for which he was not properly compensated, *Villasenor v. Professionally Applied Sec. Services, LLC*, No. 1:10-CV-00322-JOF, 2011 WL 13269633, at *2 (N.D. Ga. May 20, 2011) (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)), the FLSA provides that every employer subject to the statute's provisions "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him," 29 U.S.C. § 211(c).

99.     The regulations mandate tracking the hours worked each workday and workweek, as well as total wages paid for each pay period. 29 C.F.R. § 516.2(a).

100.    The Supreme Court in *Mt. Clemens Pottery Co.* recognized that where an employer failed to keep the proper and accurate records required by the FLSA, the employer rather than the employee should bear the consequences of that failure. 328 U.S. at 687-88. The Court stated:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.*

101.    Defendant violated the FLSA by failing to properly maintain records of, among other things, the hours Plaintiff worked each workday and within each workweek.

102.    Hence, Plaintiff is entitled to the relaxed burden-shifting scheme enunciated in *Mt. Clemens Pottery Co.*

**FLSA Statute of Limitations**

103.    The FLSA has a two-year statute of limitations unless the employer's violation was "willful," in which case the statute of limitations is extended to three years. 29 U.S.C. § 255(a).

104.    To establish a "willful" violation, an employee must prove that the employer either knew or showed "reckless disregard" for the matter of whether its conduct was prohibited by statute, *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), where "reckless disregard" means "failure to make adequate inquiry into whether conduct is in compliance with the Act." 5 C.F.R. § 551.104.

105.    Defendant's conduct in this case was "willful" because Defendant knew or recklessly disregarded the possibility it was violating the FLSA.

106.    Defendant failed to take any affirmative steps to ascertain whether its pay scheme

complied with the FLSA.

107.    Had Defendant actively endeavored to ensure compliance with the FLSA, Defendant would have easily discovered that Plaintiff was not employed in a bona fide executive, administrative, or professional capacity within the meaning of 29 U.S.C. § 213(a)(1).

108.    Given that Plaintiff never managed any other employee, never had the power to hire or fire any other employee, never performed work directly related to the management or business operations of Defendant or Defendant's customers, was not permitted to deviate from the manufacturer's pre-established specifications, and does not possess a bachelor's degree, Defendant had no subjective or objective basis to conclude that Plaintiff was employed in a bona fide executive, administrative, or professional capacity within the meaning of 29 U.S.C. § 213(a)(1).

109.    Hence, Defendant's conduct was "willful," and a three-year statute of limitations applies.

## FLSA Liquidated Damages

110.    An employer who violates the FLSA is liable for unpaid overtime compensation plus an additional equal amount as liquidated damages (i.e., double damages). 29 U.S.C. § 216(b).

111.    "Under the FLSA, liquidated damages are mandatory, unless the trial court determines that the employer, while acting in good faith, reasonably believed that its conduct was consistent with the law." *Durrance v. Homer*, No. 1:07-CV-1413-HTW, 2012 WL 13001378, at *2 (N.D. Ga. Feb. 27, 2012) (citations omitted) (emphasis added).

112.    "An employer seeking to avoid imposition of liquidated damages under [the] FLSA 'bears a substantial burden in showing that it acted reasonably and with good faith.'" *Id*. (citation omitted).

113.    Defendant never consulted with the DOL, an attorney, or an accountant to

determine whether its pay practices complied with the FLSA.

114.    Defendant had no objective or subjective basis to avoid paying overtime wages to Plaintiff.

115.    Given that Plaintiff never managed any other employee, never had the power to hire or fire any other employee, never performed work directly related to the management or business operations of Defendant or Defendant's customers, was not permitted to deviate from the manufacturer's pre-established specifications, and does not possess a bachelor's degree, it is difficult to ascertain how Defendant could have believed that Plaintiff was employed in a bona fide executive, administrative, or professional capacity within the meaning of 29 U.S.C. § 213(a)(1).

116.    Moreover, even if Defendant *did* believe that Plaintiff was employed in a bona fide executive, administrative, or professional capacity within the meaning of 29 U.S.C. § 213(a)(1), such belief was unreasonable.

117.    Hence, Defendant cannot meet its substantial burden to demonstrate that it acted in good faith and with the reasonable belief that its pay scheme complied with the FLSA, and therefore, there is no basis to limit or deny Plaintiff an award of liquidated damages. *See Anderson v. DataPath, Inc.*, No. 1:20-CV-1713-MHC, 2022 WL 17069583, at *11 (N.D. Ga. Feb. 25, 2022) ("Since DataPath has failed to proffer any evidence to support the proposition that its classification of customer service engineers as exempt was objectively or subjectively reasonable, the good faith safe harbor is inapplicable in this case and there is no basis for this Court to limit or deny Plaintiffs an award of liquidated damages.").

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et seq.*
## FAILURE TO PAY OVERTIME WAGES

118.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

119.    At all relevant times, Defendant was an "employer" and Plaintiff was an "employee" under 29 U.S.C. §§ 203(d) and (e)(1).

120.    At all relevant times, Defendant "suffered or permitted" Plaintiff to work and thus "employed" him under 29 U.S.C. § 203(g).

121.    Plaintiff, by virtue of his job duties and activities actually performed, was a nonexempt employee.

122.    At all relevant times, Plaintiff regularly worked 65+ hours per week for Defendant, but Defendant willfully violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times his "regular rate" of pay for all hours worked over 40 in a workweek from May 11, 2020 to November 16, 2022.

123.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount as liquidated damages (i.e., double damages) plus attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

a.    Finding that Plaintiff was not employed in a bona fide executive, administrative, or professional capacity within the meaning of 29 U.S.C. § 213(a)(1);

b.    Finding that Defendant willfully violated 29 U.S.C. § 207(a)(1) by misclassifying Plaintiff as exempt from overtime pay and not paying overtime wages to Plaintiff at the statutory rate of 1.5 times his "regular rate" of pay for all hours worked over 40 in a workweek from May 11, 2020 to November 16, 2022;

c.    Finding that Plaintiff's fixed semimonthly salary from May 11, 2020 to November 16, 2022 was intended to compensate him for 40 hours a week;

d.    Finding that Defendants failed to keep proper and accurate records of the hours Plaintiff worked each workday and within each workweek, and as such, Plaintiff is entitled to prove his hours worked with reasonable estimates;

e.     Damages under 29 U.S.C. § 216(b) in the amount of Plaintiff's unpaid overtime compensation;

f.     Liquidated damages under 29 U.S.C. § 216(b) in an amount equal to Plaintiff's unpaid overtime compensation;

g.     Reasonable attorneys' fees and costs under 29 U.S.C. § 216(b);

h.     Pre- and post-judgment interest; and

i.     Such other and further relief as the Court deems appropriate.

## **JURY DEMAND**

Plaintiff, by his undersigned counsel, hereby demands a jury trial under Fed. R. Civ. P. 38.

Dated: December 15, 2023

/s Kurt G. Kastorf

Kurt G. Kastorf
GA Bar No. 315315
**KASTORF LAW LLC**
1387 Iverson Street NE
Suite #100
Atlanta, GA 30307

Rod M. Johnston (application for admission *pro hac vice* forthcoming)
**JOHNSTON LAW, PLLC**
6911 Duchess Court
Troy, Michigan 48098
Tel: (586) 321-8466
rod@johnstonlawflsa.com

*Attorneys for Plaintiff*