IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KARA K. BURKS,                        )
                                      )
      Plaintiff,                    )
                                      )
v.                                    ) Civ. No. 1:23-CV-_____
                                      ) JURY TRIAL DEMANDED
WELLSTAR HEALTH SYSTEM, INC.,         )
and KENNESTONE HOSPITAL, INC.,        )
                                      )
      Defendants.                   )

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Kara K. Burks, pro se, and submits this pleading, stating as follows.

## I.       PRELIMINARY STATEMENT

1.      This is an action by a former employee against her former employers for violations of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (the "ADA")

2.      Plaintiff alleges disability discrimination and retaliation.

## THE PARTIES

3.      Plaintiff was employed by Defendants until her termination on December 6, 2021.

4.      Defendant Wellstar Health System, Inc. ("Wellstar"), is a Georgia nonprofit corporation engaged in the healthcare industry.

5.      Defendant Kennestone Hospital, Inc. ("Kennestone"), is a Georgia nonprofit corporation engaged in the healthcare industry and with which Plaintiff was primarily assigned.

6.      Defendants' Registered Agent for Service of Process Leo E. Reichert, 793 Sawyer Road, Marietta, Georgia, 30062.

## II.      JURISDICTION AND VENUE

7.     Plaintiff's claims present federal questions over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a).

8.     The violations of Plaintiff's rights alleged herein occurred within the Northern District of Georgia.

9.     Venue is proper under 28 U.S.C. § 1391(b) and (c), as a substantial part of the events and omissions giving rise to the claims asserted occurred in the geographic area covered by the Atlanta Division of the United States District Court for the Northern District of Georgia.

10.    Plaintiff received a right to sue as to EEOC Charges 410-2022-05573 & 410-2021-04651 on September 18, 2023 and timely files suit this day.

## III. FACTUAL ALLEGATIONS

11.    Plaintiff began employment at Wellstar in the Long-Term Acute Care Department at Wellstar Windy Hill Hospital in February 1998 as a Staff Nurse. Plaintiff voluntarily transferred to Wellstar Cobb Hospital in 1998, where she worked as a Staff Nurse and Resource Nurse in the Inpatient Pediatric Unit until 2008.  Plaintiff voluntarily transferred to Wellstar Kenestone Hospital in 2008 and worked in the Pediatric Emergency Department as a Staff Nurse and Team Lead

Nurse until 2016 when she was promoted to and accepted the position of Assistant

Nurse Manager (ANM) of the Pediatric Emergency Department (Peds ED).

Plaintiff was employed as the ANM of the Peds ED until her termination

December 6, 2021.

12.    Plaintiff was employed as the Pediatric ED ANM in July 2020 when the new

Wellstar Kennestone ED was opened, requiring a significantly further walk from

the Employee Parking Deck to the Pediatric ED ANM office.

13.    Plaintiff parked, due to the increased distance from the Employee Parking

Deck to Ms. Burks' office, in the unmarked spots outside of the new Pediatric ED

ANM entrance from July 2020 until December 2020.  This was made known by

Ms. Burks to her supervisors, Nichole Thomas, Manager of the Emergency

Department at Wellstar Kennestone Hospital and Dr. Nancy Doolittle, Executive

Director of Emergency Services at Wellstar Kennestone Hospital.  After being

questioned by Jennifer Jones, Emergency Medical Services (EMS) Coordinator,

regarding her parking accommodation, Ms. Burks obtained a letter from her

cardiologist and submitted it in email to her superiors, Ms.Thomas and Dr.

Doolittle, stating it was medically required for Ms. Burks to have a parking

accommodation of any parking space no more than 50 yards from the Pediatric ED

ANM office. In December 2020, Ms. Burks was granted permission by Laura

Price, Vice President of Operations, to park outside the Peds ED ANM office in any of the unmarked spots of the Ambulance Parking Area, where she had knowingly already been parking since opening the new ED in July 2020.

14. In April 2021, HR Representative, Cami Legacy, was notified by Ms. Burks of her parking accommodation granted by Ms. Price.  Per Ms. Legacy's request, Plaintiff submitted a second letter from her cardiologist in April 2021 to accommodate "indefinitely" any parking spot within 50 yards of the Peds ED ANM office; Ms. Legacy never provided feedback on an alternate parking spot or area which was within 50 yards of the Peds ED ANM office.  In April 2021, the parking accommodation was abruptly revoked by Laura Price, and no other parking area was substituted as a reasonable accommodation within 50 yards of the Peds ED ANM office. Ms. Burks was provided alternate parking areas which were equally as far as the Employee Parking Deck or further than the employee parking deck, but not within the medically necessary 50-yard ADA accommodation request, previously granted by Laura Price.

15.     Plaintiff requested and was granted a private, quiet work area to be used in the new ED with natural lighting by way of a window.  This disability accommodation request was made multiple times by Ms. Burks to Dr. Nancy Doolittle, Executive Director of the Emergency Services at Wellstar Kenestone

Hospital, during the planning phase of the new ED.  Dr. Doolittle worked with the Project Manager, Richard Kulik, to ensure a separate work area for Ms. Burks which was quiet, with less interruptions and distractions as an accommodation for her disability. Dr. Doolittle also had Mr. Kulik, Project Manager for new ED build, add a window to the new private Peds ED ANM office, during planning and building, per ADA accommodation request by Ms. Burks for natural light, and this was granted and built accordingly without issue.

16.     Plaintiff, and all other ED ANMs, have been allowed since Ms. Burks promotion to ANM of Peds ED in 2016 and before to have flexible self-scheduling of their time worked, requiring collaboration among the ANMs and approval from the Manager of the ED to assure all days were covered with ANM coverage in the ED.  Flexible scheduling was revoked by Laura Price in April 2021 for Ms. Burks only, not the other ANMs, without a reasonable explanation and without alternatives for accommodation. Ms. Price and Freda Lyon, Vice President of Emergency Services for the Wellstar System, were made aware by email and by multiple conversations and meetings that being scheduled five shifts in a row by Laura Price was physically impossible for her. No other reasonable accommodation was offered.  No other ANM was made to work five shifts in row, and no ANM on orientation was made to work five shifts in a row.  Ms. Burks was

6

singled out and forced to work a schedule Laura Price and Freda Lyon knew and were reminded she physically could not do due to her known disabilities.

17.     Plaintiff suffers from disabilities. Specifically, Plaintiff suffers from (1) Ehlers-Danlos Type III, Hypermobile Type (EDS), (2) Postural Orthostatic Tachycardia Syndrome (POTS), (3) Anxiety, and (4) Depression.

18.     Plaintiff's disability substantially limits her with respect to chronic pain in multiple body systems, early onset osteoarthritis, chronic joint subluxations and dislocations, loose skin over entire body, early onset degenerative joint disease, chronic fatigue, decreased stamina, decreased ability to walk and/or stand for prolonged times, dizziness, near-syncopal episodes, syncopal episodes, concentration issues, insomnia, chest pain, gastrointestinal upset, severe abdominal pain, frequent urinary tract infections, muscle spasms, temperature sensitivity, stress intolerance, dysautonomia, severe headaches, nausea and vomiting, and other connective tissue and dysautonomia issues.

19.     Plaintiff was subjected to discriminatory treatment and retaliation for reporting the discriminatory treatment on account of her disability in the following ways:

> (1) In October 2020, a male coworker took the loose skin under Ms. Burks' arm and shook it while laughing in front of her coworkers to

humiliate Ms. Burks' by body shaming her for the loose skin caused by her disability.

(2) Ms. Burks reported the battery and disability discrimination incident to Ms. Thomas, Dr. Doolittle, and Ms. Legacy

(3) Ms. Burks, being the employee's superior, was notified that due to his status of a Final Corrective Action for ongoing unprofessional behavior, this would be grounds for the employee to be terminated from employment at Wellstar. After reporting this, leaders, staff, and coworkers in the ED at Kennestone started to treat Ms. Burks differently.  Ms. Burks stopped being invited to and notified of important and job-relevant meetings in which she previously participated and often was a key contributor.  Relationships with other staff changed from very amicable to almost non-existent.  Ms. Burks started being scrutinized by Ms. Price.  Ms. Burks' anxiety was exacerbated by the events following the reporting of the ADA discrimination and results of the reporting. Ms. Burks continued to report concerns regarding how the incident was handled, especially after learning the decision to terminate the employee by Human Resources was reversed and the employee who shook her arm was not

terminated, but allowed to transfer to a sister ED.  Ms. Burks no longer felt safe or comfortable in the Peds ED Environment and her anxiety was exacerbated due to the change in treatment after reporting the disability discrimination, battery, and handling of the incident forementioned. Ms. Burks began applying for and seeking a transfer out of the ED and was forced onto FMLA leave in January 2021, due to severe anxiety and panic attacks. Ms. Burks was in contact with Cami Legacy regarding transferring and complaining about the handling of the battery incident.

(4) ED Leadership eliminated the Pediatric ED ANM position in February 2021.  This was reported to Ms. Burks by another ANM while on approved medical leave for anxiety.  This was validated by Connie Bradley, Chief Nursing Officer (CNO) at Wellstar Kennestone, Jenna Garber, and Mary Louise Tavernaro during the plantiff's lawfully taken and approved FMLA in February 2021.  Ms. Burks was told she would be placed into an ED ANM position by Laura Price, Freda Lyon, Connie Bradley, and Marianne Hatfield. Ms. Burks' duties would be changed from managing a16 bed Pediatric ED to a166 bed ED.  ED Leadership also changed ANM duties from a

9

primary office environment  more of a clinical role, requiring

primarily walking the entire three stories of ED, which is the second

largest ED in the country and over 263,000 square feet.  By placing

Ms. Burks into this new job code, ANM of the ED, it significantly

increasing her walking, standing, and stamina requirements to fulfill

the job expectations communicated by Ms. Price, Ms. Lyon, Ms.

Bradley, Ms. Legacy, Ms. Garber, Donna Whitehead who was interim

ED Manager, and Marianna Hatfield.  Ms. Burks' hours and job duties

were also changed, which would decrease her pay as she would no

longer receive the off-duty shift differential she had received since

taking the ED ANM position in 2016.  Ms. Burks reached out to

Wellstar Human Resources in March 2021, after being notified of the

elimination of her current position and after a phone call by Connie

Bradley in February 2021.  This occurred during Ms. Burks' leave of

absence for anxiety, where Ms. Bradley reported a sudden concern for

Ms. Burks' job performance.  Ms. Burks specifically reported to

Human Resources in March 2021, via email and via TEAMS meeting,

concerns of retaliation for reporting ADA discrimination and for

further retaliation for reporting the discrimination and retaliation after

being questioned repeatedly by staff about the approved parking accommodation and after reporting Wellstar's ineffective follow-up and handling of the battery and body shaming incident which knowingly targeted her disability.  Specifically, Ms. Burks asked Jenna Garber and Mary Louise Tavernaro how Wellstar would prevent further retaliation upon her return from FMLA in March 2021, including concerns for blocking job transfers into more appropriate positions with her extensive and well-documented and celebrated pediatric experience and physical and mental abilities and disabilities.

(5) Ms. Burks was in the process of negotiating pay for a promotion to the Pediatric Program Manager position within the Wellstar Health System and the ED Leaders were aware of that promotion. In fact, Ms. Burks reported this to Connie Bradley and was encouraged to take the position in January 2021 before beginning her FMLA.  Ms. Burks' work and data submission was praised by Connie Bradley at that time in a 1:1 meeting and by email.  No concerns were mentioned about any performance issues.  Ms. Burks also reported concerns of properly maintaining and advocating for the Pediatric ED in her

absence during FMLA and after accepting the job promotion.

(6) Ms. Burks also applied for the Manager of the Inpatient Pediatric Unit at Kennestone. She was not chosen, and Ms. Burks reported to Jenna Garber and Mary Louise Tavernaro in March 2021 that she believed this to be in retaliation for reporting the unlawful disability discrimination and retaliation. Ms. Tavernaro assured her she deserved and would get feedback as to why she was not chosen for the position. Ms. Burks requested this from the recruiter for the position and  on the interview, but never received any response.

 (7) Ms. Burks was told by Laura Price, Vice President of Operations, via texts, during her approved FMLA leave, that she needed to come in before the end of her FMLA leave to empty out her private office in the Pediatric ED, which was provided as an ADA accommodation by Dr. Nancy Doolittle and was known as such an accommodation by Laura Price.  This communication was discussed in multiple ED planning meetings for the new ED.  The reason given by Laura Price for Ms. Burks to immediately empty and move her office was that it was needed immediately for another employee.  Ms. Burks requested this be addressed upon her return from FMLA in March 2021;

however, Ms. Price stated it could not wait and needed done before her return. This was also reported to Jenna Garber and Mary Louise Tavernaro in Human Resources in March 2021.  However, after reporting Ms. Price's demand and revoking of the private, quiet workspace accommodation, well-known to Ms. Price, over one year later, the office remained vacant, and no other employee moved into that office.  Human Resources instructed Ms. Price to allow Ms. Burks to move her office upon return from FMLA.  After returning from FMLA, Ms. Burks did move her contents upstairs and was forced to then share a space with six other ED ANMs and an interim manager, Donna Whitehead, thus revoking her previous ADA accommodation for a quiet and private area, previously granted by Dr. Nancy Doolittle, Executive Director of Emergency Services at Kennestone Hospital, and Nichole Thomas, Manager of the Emergency Department at Wellstar Kennestone Hospital. This was reported to Cami Legacy in Human Resources without any alternate reasonable accommodation, instead, Ms. Legacy asked Ms. Burks why she did not try to gain employment outside of Wellstar.

(8) Upon return from FMLA in March 2021, Ms. Burks made known

to Cami Legacy, Jenna Garber, Mary Louise Tavernaro, Freda Lyon,

Connie Bradley, Laura Price, Marianne Hatfield, and Avril Beckford

that she believed elimination of her ANM Pediatric ED position was

unlawful retaliation.  She also reported that dissolving the Pediatric

ED ANM position was against recommendations from multiple

organizations, including the American Academy of Pediatrics and the

Emergency Nurses Association.  Ms. Burks also made known that she

was concerned about being placed into this position as she felt she

was not going to be able to be successful in the position in which she

was placed because of lack of experience in the Adult ED patient care

and patient flow, lack of physical stamina due to her disability, new

job physical requirements, and new scheduling requirements.   Ms.

Burks reported she was seeking relief by transferring into a pediatric

specific position within the Wellstar System.  Ms. Burks requested a

transfer window per policy and an official orientation after returning

from FMLA, though this was never given.  Ms. Burks reported that if

after returning from FMLA in March 2021, she was not yet

transferred to a new position, she would need 30 days to remain in her

current schedule as per policy and that she would need an official

orientation to adult ED care, adult ED processes, patient flow duties and processes, and Adult ED ANM duties and responsibilities; however, this was never given.

(9) In April 2021, Wellstar eliminated the plantiff's previous parking accommodation, which was provided by the V.P. of Operations at Kennestone Hospital, Laura Price, in December 2020. The revoking of the plantiff's parking accommodation was without an alternate solution to meet the 50 yards accommodation mandated by her physician, despite multiple requests to do so.  It was reported to ED Leadership and Human Resources that Ms. Burks was struggling with increased pain, dizziness, and near-syncopal (black-outs requiring Ms. Burks to sit on the floor) when walking from the employee lot to the new ED. No alternative to any parking spot within 50 yards of Ms. Burks' office was ever provided, and Ms. Burks was reprimanded for questioning the revoking of the previous ADA parking accommodation by Freda Lyon and Laura Price, stating she was arguing about parking.

(10) Ms. Burks also returned from FMLA in March 2021 to find her schedule was made for her without any flexibility, which was not the

case before reporting the discrimination and retaliation. She also noted she was assigned to work five shifts in a row by Laura Price, even though it was made known to Laura Price by Ms. Burks that she could not physically work five shifts in a row on the floor of the ED because of her physical limitations. Ms. Burks proposed switching one shift, and was refused by both Laura Price and Freda Lyon without reasonable operational reasoning. No alternative schedule was offered nor provided.  This act singled out Ms. Burks as no other ANMs were required to be scheduled by Laura Price and continued to have self-scheduling privileges, including those ANMs. In addition, no other ANMs were required to work five shifts in a row.  Ms. Burks was reprimanded for inquiring about being singled out in this way with the schedule and it was stated she was being argumentative.

 (11) In April, 2021, while on approved vacation, Ms. Burks was texted and emailed by Laura Price stating Ms. Burks was over the allowed number of vacation days and needed to return for 2 days in the middle of the current vacation. These were the two days Ms. Burks was scheduled to move and Ms. Price was aware of this. Ms. Burks had to send policy and memos to Ms. Price and Ms. Lyon to

educate them on policy and approved vacation days for a 23-year employee to show Ms. Burks was within her right for earned and approved vacation.

(12) Ms. Burks was singled out and given a failing ad-hoc Mid-Year Assessment by Freda Lyon and Laura Price in May 2021, even though Wellstar sent a previous memo and communication informing all leaders there would not be any Mid-Year Evaluations that year.  This evaluation is not reflective of any evaluation given by any manager at Wellstar in the past more than 23 years at Wellstar, and certainly not reflective of the Final Evaluation given by Nichole Thomas, ED Manager, in late October 2020 prior to the reporting of ADA discrimination, concerns regarding the handling of the disability discriminatory body-shaming incident, and to requesting a medically necessary parking accommodation. This evaluation, in fact, stated Ms. Burks "needs improvement" regarding questioning by Ms. Burks of revoking of the previously approved parking accommodation, private office space accommodation, and ability to have flexible scheduling like the other ANMs.  This evaluation focused on Ms. Burks taking protected FMLA and calling it "extended vacation." This evaluation

was an attempt to threaten Ms. Burks for her questioning of Wellstar's revoking of her ADA accommodations and Federal employment rights.  This evaluation reprimanded Ms. Burks for knowing policy. This evaluation had no truth and was given maliciously with intent to intimidate Ms. Burks and exacerbate her anxiety, as well as to form a falsified paper trail.

(13) In May of 2021, a text was inadvertently sent to Ms. Burks by Donna Whitehead, Interim ED Manager at Kennestone Hospital, while orienting into the new position.  The text showed that Ms. Whitehead was also involved in scrutinizing Ms. Burks, setting her up to fail in the new position, and falsification of documents. Ms. Burks began having a panic attack and told Ms. Whitehead she needed to speak to Corporate HR.  Ms. Burks also called Cami Legacy, Kennestone HR, and asked to speak with Corporate HR; however, Ms. Legacy directed her to Jenna Garber at Kennestone, and not corporate. Ms. Burks explained the work conditions were intolerable and that she needed to speak with corporate HR.  Ms. Legacy assured her she would have corporate contact her. Ms. Burks left at the end of the shift and was not contacted by Corporate HR, but emailed and

asked to write a statement regarding the intolerable retaliative conditions at Kennestone Hospital ED.

(14) Ms. Burks was placed by Jenna Garber on paid administrative leave while they investigated the complaints.

(15) Ms. Burks requested a meeting with Mary Louise Tavernaro at the end of the Paid administrative leave; however, the meeting set up was with Jenna Garber. Ms. Burks specifically requested Ms. Garber not be in attendance as she was allowing the ongoing retaliation and discrimination. This request was never granted.

(16) Ms. Burks began having severe panic attacks, severe anxiety, increased pain, increased POTS symptoms. She requested and was granted a return to FMLA leave. At the conclusion of FMLA leave, Ms. Burks physician placed her on ADA Accommodation leave for depression and anxiety related to ADA "accommodations not being followed," though it was coded as "Extended FMLA Leave" by Wellstar.

(17) Plaintiff made multiple attempts to communicate with Human Resources regarding the ongoing and worsening harassment and discrimination occurring in the ED at Wellstar Kennestone Hospital

by Freda Lyon, Connie Bradley, Donna Whitehead, and Laura Price. These complaints were made to Cami Legacy, Jenna Garber, Mary Louise Tavernaro, and David A. Jones, without corrective action and many times without any response. These complaints were also sent to the Wellstar Compliance Line and to Beth Kost, Wellstar's Compliance Officer without response or rectifying the retaliation. These attempts by Ms. Burks were by way of emails, meetings, and compliance hotline reports and were made with a sincere effort and with intent to give Wellstar the opportunity to correct the forementioned acts. Wellstar did not provide any relief to Ms. Burks regarding the discrimination nor retaliation, and instead retaliated against her further after reporting the episodes.

(18) Plaintiff applied to and was denied five pediatric specific positions within Wellstar, including the position of ANM Peds ED at Wellstar Douglas Hospital, which was the exact job she had been recognized for and had received awards for the multiple successes in this job and department, including the Hero Award, Child Advocacy Award, and AJC Nurse of the Year. Less qualified candidates were chosen, externally, without reasonable feedback.

20.     Plaintiff requested an appointment with an EEOC investigator in May 2021; however, there were no open appointments.  After multiple attempts at scheduling an appointment online, Plaintiff was able to schedule an interview in August 2021, three months later, with an EEOC investigator to file a former complaint and start and investigation into ongoing ADA discrimination and retaliation to Ms. Burks by Wellstar Health System and Wellstar Kennestone Hospital.  In addition, Ms. Burks was also subjected to retaliation by Defendants after she filed her charge of disability discrimination in August 2021. A supplemental charge was filed in May 2022 as Wellstar continued to create a hostile work environment following the initial charge.  Wellstar ignored and refused to address the complaints per Ms. Burks multiple requests.  Wellstar also denied any relief for Ms. Burks by allowing her to transfer into positions she was qualified and/or overqualified to perform. This impeded Ms. Burks from performing her duties in her repeated attempts to be able to return to her 23-year employment at Wellstar by making the situation untenable and causing Ms. Burks no other alternative than to be forced into resignation in December 2021. Wellstar's conduct is in violation of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C 2000e. et seq.

## COUNT I

## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

21.    Plaintiff restates and re-alleges paragraphs 1 through 20 of the Complaint as if fully set forth herein.

22.    Defendants engaged in and/or knowingly permitted disability discrimination in violation of the mandates of the ADA.

## COUNT II

## RETALIATION IN VIOLATION OF THE ADA

23.    Plaintiff restates and re-alleges paragraphs 1 through 20 of the Complaint as if fully set forth herein.

24.    Defendants engaged in and/or knowingly permitted retaliation against Plaintiff in violation of the proscriptions of the ADA's anti-retaliation provisions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays;

a)          That the Court enter judgment against Defendants and for

Plaintiff.

b)          That the Court enter judgment against Defendants for Plaintiff's

expenses of litigation incurred in this matter, including reasonable

attorneys' fees;

c)          That the Court award front pay;

d)          That the Court awards back pay, including monies paid to

Wellstar under duress, bonuses held, and refunded 403B monies with

gains.

e)          That the Court grant the plaintiff compensatory damages to

included ongoing medial expenses, and intentional infliction of

emotional distress.

f)          That the Court grant the Plaintiff Punitive damaThat the Court

grant Plaintiff a trial by jury; and

h) That the Court grant Plaintiff such other and further relief as it deems just and
proper.

This 15th day of December 2023.

**KARA K. BURKS**
**Pro Se**
**2185 Main St., NW**
**Atlanta, GA, 30318**
**678-471-1275**
**kracerburks@hotmail.com**