# Exhibit 9

DocuSign Envelope ID: FCB8D569-C440-4975-B791-BBCB46FA6F2C

Rev. 1/21 U.S.



# LOYALTY AND CONFIDENTIALITY AGREEMENT
## EMPLOYEE: Steven Markowitz

THIS AGREEMENT is entered into at Chicago, Illinois by and between Lawson Products, Inc., an Illinois corporation (together with companies that it owns, controls, or with which it is affiliated) (collectively "Company") and Employee.

Company seeks to place or retain Employee in a position of special trust and confidence, and Employee wishes to accept such a position. As a condition of the employment relationship, and to protect Company Confidential Information (as defined below), inventions and discoveries, training, and/or customer relationships and other goodwill, the parties agree as follows:

### SECTION 1   Benefits and Responsibilities of Employment

**1.1 Items Provided to Employee**   Company will provide Employee with one or more of the following: (a) portions of Company's Confidential Information (through a computer password or other means) and updates thereto; (b) authorization to communicate with customers and prospective customers, and reimbursement of customer development expenses per Company policy limits, to help Employee develop goodwill for Company; and/or (c) authorization to participate in specialized training related to Company's business. As additional consideration in exchange for Employee's agreement to the terms of this Agreement, Employee will be eligible to participate in the benefit plan or compensation program described in Exhibit A hereto (subject to its conditions and limitations), or to receive other consideration described therein when he/she signs this Agreement. This additional consideration is conditioned on Employee's agreement to, and continuing compliance with, the terms of this Agreement, as determined by Company. Employee understands and agrees that this additional consideration has material value and benefit and that he/she would not be entitled to it unless he/she signed the Agreement. Company agrees to provide Employee these items in exchange for Employee's promise to abide by the restrictions in this Agreement.

**1.2 Duty of Loyalty and Conflicts of Interest**   (a) During employment, Employee will dedicate full working time to Company and will use best efforts to perform the duties assigned, remain loyal, comply with Company policies and procedures, and avoid conflicts of interest. It will be a conflict of interest for Employee to pursue business activities that compete with Company. Employee will promptly inform and direct to Company all business opportunities that may be of interest to Company in its line of business. (b) Employee agrees to comply with Company's Code of Ethics and to conduct his or her business dealings on behalf of Company so as not to detract from or reflect adversely upon the reputation of Company or its products. Employee agrees not to knowingly make false negative statements about Company or Company's business, products, officers, or employees, and not to engage in any unfair trade practices toward Company. (c) Employee agrees that if he or she questions whether information constitutes Confidential Information (as defined in Section 2.1 below), whether a business opportunity is covered by this Agreement, or whether the contemplated activity would create a conflict of interest, he or she will provide a written request for clarification to Company's General Counsel or Chief Compliance Officer. (d) Employee confirms that Employee has not and will not disclose or make available to Company or cause Company to use any confidential, proprietary, or trade secret information belonging to Employee's previous employers or other parties. Employee confirms that Employee has not copied, retained, or digitally stored any such information, and will not bring such information onto Company premises or into Company information technology systems. Employee confirms that Company has not induced or solicited the disclosure of such information. (e) Employee further confirms that he or she is not a party to any agreement that would prohibit his or her entry into this Agreement, or that would conflict with Company's business or the obligation to use his or her best efforts to promote the interests of Company. Employee will indemnify, defend, and hold Company harmless from any claim brought by another party alleging a breach by Employee of any such agreement and/or alleging a use, disclosure, or misappropriation of such third party's confidential, proprietary, or trade secret information, and Employee will reimburse Company for any costs (including attorneys' fees) it incurs in defending any such claim.

### SECTION 2   Confidentiality and Business Interests

**2.1 Definition of Confidential Information**   "Confidential Information" refers to any item of information or compilation of information, in any form (whether or not reduced to writing, and regardless of how or where it is stored), related to Company's business that Company has not made public or authorized public disclosure of and that is not generally known to the public or to other persons who might obtain value or competitive advantage from its disclosure or use. Confidential Information includes information conceived, originated, discovered, or developed by Employee in connection with his/her work under this Agreement. Confidential Information will not lose its protected status under this Agreement if it becomes generally known to the public or to other persons through improper means such as the unauthorized use or disclosure of the information by Employee or another person. Confidential Information includes, but is not limited to, (a) Company's business plans and analyses, information on customers and prospects and customer/prospect points of contact (including, but not limited to, their buying practices, needs, and preferences for Company's products and services), Company's buying practices and supplier lists, marketing plans and strategies, sales forecasts, research and development data, human resources information obtained from Company's confidential personnel records (including, but not limited to, internal evaluations of performance, capability and potential of any Company employee), pricing and financial data, operational data, methods, techniques, technical data, know-how, innovations and discoveries, incentive and promotional programs, compensation programs, customer loyalty programs, computer programs, un-patented inventions and improvements, and trade secrets; (b) information about the business affairs of third parties (including, but not limited to, customers and acquisition targets) that such third parties provide to Company in confidence. Confidential Information will include trade secrets, but an item of Confidential Information need not qualify as a trade secret to be protected by this Agreement. Company's failure to identify any of the Confidential Information as confidential or proprietary will not affect its status as Confidential Information herein. Company's confidential exchange of information with a third party for business purposes will not remove it from protection under this Agreement. Confidential Information will not include information which Employee can prove (1) was independently developed by Employee, (2) was obtained from a third party who had the right to disclose such information to Employee,

or (3) was or became generally available to the public (other than as a result of disclosure by Employee or other persons in breach of their duty to Company). Confidential Information also will not include Employee's general skills and experience as defined under the governing law of this Agreement. Employee acknowledges that certain items of Confidential Information derive economic value, actual or potential because they are not generally known by the public or others who could use them to their economic benefit and/or to the competitive disadvantage of Company and thus should be treated as Company's trade secrets.

**2.2 Unauthorized Use or Disclosure** Employee agrees he or she will not directly or indirectly engage in any unauthorized use or disclosure of Confidential Information (as defined above) or knowingly use Confidential Information to harm Company. Employee understands this means he or she may not use or disclose Confidential Information in any way unless Company expressly authorizes him or her to do so, or unless compelled by law to do so (such as by a court order or valid subpoena). Nothing in this Section 2.2 will be interpreted to prohibit Employee from using Confidential Information of Company in the performance of Employee's duties while employed by Company. If disclosure is compelled by law, Employee will give Company as much written notice as possible under the circumstances, will refrain from use or disclosure for as long as the law allows, and will cooperate with Company to protect such information, including taking every reasonable step to protect against unnecessary disclosure. Employee agrees, if he or she becomes aware of any unauthorized use or disclosure of Company's Confidential Information, he or she will immediately notify Company's Legal Department, whether or not Employee is a Company employee when he or she becomes aware of the disclosure. Confidential Information does not include information lawfully acquired by a non-management employee about wages, hours, or other terms and conditions of peers if used by them for purposes protected by §7 of the National Labor Relations Act (the NLRA) such as joining or forming a union, engaging in collective bargaining, or engaging in other concerted activity for their mutual aid or protection.

**2.3 Employee Recordkeeping** Employee agrees to use the authorizations, Confidential Information, and other benefits of his or her employment to further the business interests of Company. Employee agrees to preserve records on current and prospective Company customers, suppliers, and other business relationships that he or she develops or helps to develop, and not use these records in any way, directly or indirectly, to harm Company's business. At the end of Employee's employment with Company, or earlier if so requested, Employee will (a) return to Company all documents, records, and materials of any kind in his or her possession or under his or her control, incorporating Confidential Information or otherwise, relating to Company's business, and any copies thereof (electronic or otherwise), and (b) provide for inspection any personal electronic storage devices that Company believes may contain Confidential Information, in a state that makes inspection possible, to permit Company to confirm that Employee has completely removed all Confidential Information from the devices. If Employee stores any Confidential Information with a third-party service provider, then (c) Employee consents to the service provider's disclosure of such Confidential Information to Company, and (d) where allowed by law, Employee will execute any additional authorizations required by the service provider to disclose such Confidential Information to Company. Employee agrees to comply with Company's record retention policies and information technology policies during and at the end of Employee's employment with Company.

**2.4 Inventions and Discoveries** Employee agrees to promptly inform Company's Legal Department and disclose to Company all inventions, copyright eligible works, ideas, improvements, software, discoveries, and other intellectual property he or she develops, discovers, or creates (a) that relate to Company's or affiliates' business, or to any actual or demonstrably anticipated Company or affiliate research, future work or projects, whether or not conceived or developed alone or with others, and whether or not conceived or developed during regular working hours, or (b) that result from any work Employee performed for Company or its affiliates, performed on Company time, or performed using Company or affiliate property or resources; all such works and materials being hereafter referred to as "Company Inventions and Intellectual Property." All Company Inventions and Intellectual Property, and rights thereto, moral and otherwise, will be Company's exclusive property unless otherwise agreed by both parties in writing. While employed, and as necessary thereafter, Employee will assist Company to obtain patents or copyrights on all such Company Inventions and Intellectual Properties that Company seeks to protect, and will execute all documents and do everything necessary to obtain for Company copyrights, patents, licenses, and other rights and interests that would be necessary to secure for Company the complete benefit of Company Inventions and Intellectual Property. Employee hereby assigns to Company or its designee all right, title, and interest to all Company Inventions or Intellectual Property Employee has acquired, or acquires in the future, during employment or association with Company or its affiliates. To the extent state law where Employee resides requires it (such as under Cal. Lab. Code, § 2870; Del. Code Title 19 § 805; Illinois 765 ILCS 1060/1-3; Kan. Stat. Section 44-130; Minn. Statutes, 13A, Section 181.78; N. Car. General Statutes, Art. 10A, Chapter 66, Commerce and Business, § 66-57.1; Utah Code § 34-39-1 through 34-39-3; Wash. Rev. Code, Title 49 RCW: Labor Regulations, Chapter 49.44.140), Employee is notified that *no provision in this Agreement requires Employee to assign any of his or her rights to an invention for which no equipment, supplies, facility, or trade secret information of Company was used and which was developed entirely on Employee's own time, unless (a) the invention relates at the time of conception or reduction to practice of the invention, (i) to the business of Company, or (ii) to Company's actual or demonstrably anticipated research or development, or (b) the invention results from any work performed by Employee for Company.* Section 2.4 is intended to complement and supplement, not replace, any additional written agreement(s) the parties may have regarding Company Inventions and Intellectual Property.

**SECTION 3   Protective Covenants** Employee agrees that the following covenants are (i) ancillary to the other enforceable agreements contained in the Agreement and (ii) reasonable and necessary to protect legitimate Company business interests.

**3.1 Definitions Related to Protective Covenants**

(a) "Covered Customer" is any one of the following: (i) a current customer of Company with which Employee has developed a business relationship or had substantial business contact as a result of Employee's employment with Company; (ii) a customer of Company to which Company has made sales in the twelve (12) months preceding the end of Employee's employment with Company, and for which Employee was a point of contact; (iii) a prospective customer of Company, where Employee has been actively discussing, on behalf of Company, a potential business relationship, in the twelve (12) months preceding the end of Employee's employment with Company; or (iv) a customer of Company about which Employee has received, used or accessed Confidential Information. References to the end of Employee's employment in this Agreement refer to the end, whether by resignation or termination and without regard for the reason employment ended.

2

(b) "Conflicting Product or Service" is a product and/or service that is the same or similar in function or purpose to a Company product and/or service, such that it would replace or compete with: (i) a product and/or service Company provides to its customers; or (ii) a product or service that is under development or planning by Company but not yet provided to customers and regarding which Employee was provided Confidential Information in the course of employment. Employee understands that Company is engaged in the sale and distribution of services, systems, and products to the industrial, commercial and institutional maintenance, repair, and operations (MRO) marketplace, as more particularly described in the catalogs and websites of Company, as modified by Company in its sole discretion from time to time. Conflicting Products or Services do not include a product or service of Company if Company is no longer in the business of providing such product or service to its customers at the end of Employee's employment with Company.

**3.2 Restriction on Interfering with Employee Relationships**  Employee agrees that for eighteen (18) months following the end of Employee's employment with Company, he or she will not, either directly or indirectly, interfere with Company's business relationship with a Company employee, by (a) soliciting or communicating with such an employee (regardless of who first initiates the communication) to induce or encourage him or her to cease working with Company or to enter into activities competitive with those of Company or to breach any agreements he or she may have with Company, or (b) helping another person or entity evaluate a Company employee as a candidate, or (c) otherwise helping any person or entity hire an employee away from Company unless a duly authorized Company officer gives Employee written authorization to do so. The restriction in this Section 3.2 will apply only to interference undertaken for the benefit of, or on behalf of, a person or entity offering a Conflicting Product or Service.

**3.3 Restriction on Interfering with Customer Relationships**  Employee agrees that for eighteen (18) months following the end of Employee's employment with Company, Employee will not directly or indirectly interfere with Company's business relationships with a Covered Customer, by soliciting or communicating (regardless of who initiates the communication) with a Covered Customer to induce or encourage the Covered Customer to: (i) stop or reduce doing business with Company, or (ii) buy a Conflicting Product or Service, unless a duly authorized Company officer gives Employee written authorization to do so. Employee agrees that direct interference includes, for example, selling a Conflicting Product or Service to a Covered Customer, or soliciting such a sale. Employee agrees that indirect interference includes, for example, (x) sales management or account management responsibility for a Covered Customer where another person or entity has direct solicitation or sales responsibility, and/or (y) acting in concert with another person or entity to sell a Conflicting Product or Service to a Covered Customer or to solicit such a sale. The parties agree this restriction is inherently reasonable because it is limited to the places or locations where the Covered Customer is doing business at the time.

**3.4 Restriction on Working for Certain Competitors**  Employee agrees that for nine (9) months following the end of Employee's employment with Company, Employee will not work in a sales or sales management capacity (including work as an employee, independent contractor, consultant, and/or franchisee) for the following business entities (including any of their affiliates): Applied MSS, Chromate, Maintenance Connection, MSC Industrial Supply, State Industrial Products, TIFCO Industries, Winzer, and Wurth.

**3.5 Restriction on Interfering with Business Relationships**  Employee agrees that for eighteen (18) months following the end of Employee's employment with Company, Employee will not, directly or indirectly, in any way encourage any vendor, wholesaler, joint venturer or business partner of Company to terminate or reduce its business relationship with Company and will not interfere in any way with the business relationship between Company and its vendors, wholesalers, joint venturers or business partners.

**3.6 Survival of Restrictions**   (a) Employee agrees that for eighteen (18) months following the end of Employee's employment with Company, and before accepting new employment, he or she will notify a future employer in writing of the restrictions in this Agreement, and will send a copy of this written notice to Company's General Counsel at the same time. Employee agrees that Company may advise a future employer or prospective employer of this Agreement and its position on the potential application of this Agreement. (b) This Agreement will continue to apply and be valid notwithstanding any change in Employee's duties, responsibilities, position, or title with Company. The Agreement's post-employment obligations will survive the end of Employee's employment with Company, whether by resignation or termination and without regard for the reason employment ended.  (c) If Employee violates one of the post-employment restrictions in this Agreement on which there is a specific time limitation, the period for that restriction will be extended by one day for each day Employee violates it, up to a maximum extension equal to the length of time prescribed for the restriction, to give Company the full benefit of the bargained-for length of forbearance.  (d) The parties further consent to a court modifying (where allowed by controlling law) any restriction herein found to be unenforceable to make it enforceable to protect Company's legitimate business interests.  (e) If Employee becomes employed with an affiliate of Company without signing a new agreement, the affiliate will step into Company's position under this Agreement and will be entitled to the same protections and enforcement rights as Company.

**3.7 Resolution for Incumbent Employee**  This Section 3.7 applies only if Employee is a current employee of Company or an affiliate when this Agreement is made. Employee has received Confidential Information and/or developed business goodwill with customers through, or in the course of, past association with Company or an affiliate. The nature and scope of restrictions, necessary to protect the parties' interests related to these past events, is unresolved. The parties agree that an important purpose of this Agreement is to resolve such uncertainties and to settle such disputes and provide a set of predictable boundaries upon which they may rely to avoid future disputes over what jobs or conduct will result in misappropriation of Confidential Information, conversion of customer goodwill, or similar irreparable harm. To settle and dispose of any dispute regarding these issues, Employee agrees not to sue or otherwise pursue a legal action to avoid the agreed-upon restrictions in the Agreement.

**3.8 State-Specific Modifications**

*Arkansas addition*   While Employee is a resident of Arkansas, and if the choice of law provision in Section 6(e) does not control, the restrictions on use or disclosure of Confidential Information in Section 2.2 will only apply for three (3) years after the end of Employee's employment with Company where information that does not qualify as a trade secret is concerned. However, the restrictions will continue to apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

*Arizona addition*   While Employee is a resident of Arizona, and if the choice of law provision in Section 6(e) does not control, the restrictions in Section 3.3 will only apply in the states where Employee is assigned to work by Company and any other area about which

3

Employee receives Confidential Information, in the twelve (12) months preceding the end of Employee's employment with Company (the "Restricted Area").

***California addition***   While Employee is a resident of California and subject to its laws, (a) the restrictions in Section 3.2 will be rewritten as follows: "Employee agrees that for eighteen (18) months following the end of Employee's employment with Company, he or she will not, either directly or indirectly, interfere with Company's business relationship with a Company employee by soliciting or communicating with such an employee (regardless of who first initiates the communication) to induce or encourage him or her to cease working with Company, if such solicitation is aided by the use or disclosure of Company's trade secrets (as defined by applicable law);" (b) the restrictions in Section 3.3 will be limited so that they only apply where Employee is aided by the use or disclosure of Company's trade secrets (as defined by applicable law); (c) the restrictions in Section 3.4 will not apply;  (d) the covenant not to sue in Section 3.6 will not apply;  (e) Section 4 will not apply; (f) the Illinois choice-of-forum and choice-of-law provisions of Section 6 will not apply; and (g) the jury trial waiver in Section 7 will not apply.

***Connecticut addition***   While Employee is a resident of Connecticut, and if the choice of law provision in Section 6(e) does not control, the restrictions on use or disclosure of Confidential Information in Section 2.2 will only apply for three (3) years after the end of Employee's employment with Company, where information that does not qualify as a trade secret is concerned. However, the restrictions will continue to apply to trade secret information for as long as the information at issue remains qualified as a trade secret.

***Georgia addition***   While Employee is a resident of Georgia, and if the choice of law provision in Section 6(e) does not control: (a) the tolling provision in Section 3.6(c) will not apply; (b) the covenant not to sue in Section 3.6 will not apply; and (c) the jury trial waiver in Section 7 will not apply.

***Louisiana addition:*** While Employee is a resident of Louisiana and subject to its laws, the enforcement of the restrictions in Section 3.3 will be limited within the state of Louisiana to the parishes where Employee has helped or will help Company do business, and will be limited within other states to those counties where Employee has helped or will help Company do business, or will be limited to the portions of these parishes/counties that are covered by the Restricted Area definition as identified in the Louisiana Exhibit B hereto, whichever is fewer.

***Massachusetts addition***   While Employee is a resident of Massachusetts and subject to its laws, the restriction in Section 3.4 will not apply.

***Missouri addition***    While Employee is a resident of Missouri, and if the choice of law provision in Section 6(e) does not control, the tolling provision in Section 3.6(c) will not apply.

***Montana addition***   While Employee is a resident of Montana, and if the choice of law provision in Section 6(e) does not control, (a) the restrictions on use or disclosure of Confidential Information in Section 2.2 will only apply for three (3) years after the end of Employee's employment with Company where information that does not qualify as a trade secret is concerned (the restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret), and (b) the terms of the Montana Exhibit B hereto will apply.

***Nebraska addition***   While Employee is a resident of Nebraska, and if the choice of law provision in Section 6(e) does not control, Section 3.1(a)(iv) will not apply.

***Nevada addition***   While Employee is a resident of Nevada and subject to its laws, the restrictions in Section 3.3 and 3.4 will be limited so that they will not restrict Employee from providing a Conflicting Product or Service to a Covered Customer if (a) Employee did not solicit the Covered Customer, (b) the Covered Customer voluntarily chose to leave the Company and seek services from the Employee, and (c) the Employee is otherwise complying with Sections 3.3 and 3.4.

***North Carolina addition***   While Employee is a resident of North Carolina, and if the choice of law provision in Section 6(e) does not control, (a) Section 1.1 is modified to add the following: "The parties intend that the Protective Covenants in Section 3 are ancillary to Company's promises and obligations under this Section 1.1, and the parties' further intend that Company's promises constitute a positive contract and that a court construe Company's promises and Employee's obligations as creating bi-lateral obligations," and (b) the jury trial waiver in Section 7 will not apply.

***North Dakota addition***   While Employee is a resident of North Dakota, and if the choice of law provision in Section 6(e) does not control, (a) the restrictions in Section 3.3 will be limited to only apply if Employee is aided by the use or disclosure of Confidential Information, and (b) the covenant not to sue in Section 3.6 will not apply.

***Oklahoma addition***   While Employee is a resident of Oklahoma, and if the choice of law provision in Section 6(e) does not control, the restrictions in Section 3.3 will apply only to those Covered Customers who had been Company customers within one year of the end of Employee's employment with Company and who have not fully and finally ceased doing business with Company due to no fault of Employee.

***South Carolina addition***   While Employee is a resident of South Carolina, and if the choice of law provision in Section 6(e) does not control, Section 3.1(a)(iv) will not apply.

***Virginia addition***   While Employee is a resident of Virginia, and if the choice of law provision in Section 6(e) does not control, Section 3.1(a)(iv) will not apply.

***Wisconsin addition***   While Employee is a resident of Wisconsin, and if the choice of law provision in Section 6(e) does not control, (a) the restrictions on use or disclosure of Confidential Information in Section 2.2 will only apply for three (3) years after the end of Employee's employment with Company where information that does not qualify as a trade secret is concerned (the restrictions will apply to trade secret information for as long as the information remains qualified as a trade secret); (b) the covenant not to sue Section 3.6 will not apply; and (c) the tolling provision in Section 3.6(c) will not apply.

**3.9 <u>Signing/Retention Bonus Forfeiture and Clawback</u>**   If Employee violates any of the covenants contained in Sections 2.2, 3.2, 3.3, 3.4, or 3.5, Employee agrees to forfeit and immediately repay to Company the signing bonus identified in Employee's offer letter signed at the start of Employee's employment and in conjunction with this Agreement ("Signing Bonus"). Employee's forfeiture of the Signing Bonus shall be in addition to any other remedies available to the Company under this Agreement, at law, or in equity. If Employee voluntarily leaves employment within one year of receiving the retention bonus provided for in Exhibit A hereto ("Retention Bonus"), or if Employee

4

violates any of the covenants contained in Sections 2.2, 3.2, 3.3, 3.4, or 3.5, Employee agrees to forfeit and immediately repay to Company the Retention Bonus.

**SECTION 4**  **Notice**  While employed by Company, and for eighteen (18) months thereafter, Employee will: (a) give Company's General Counsel written notice at least thirty (30) days before going to work for a competitor; (b) provide Company with sufficient information about his or her new position with the competitor to enable Company to determine if Employee's services in the new position would likely lead to a violation of this Agreement; and (c) within thirty (30) days of Company's request, participate in a mediation or in-person conference to discuss and/or resolve any issues raised by Employee's new position with the competitor. Employee will be responsible for all consequential damages caused by failure to give Company notice as provided in this Section 4.

**SECTION 5**  **Remedies**  If either party breaches or threatens to breach this Agreement, the prevailing party may recover: (a) an order of specific performance or declaratory relief; (b) injunctive relief by a temporary restraining order, temporary injunction, preliminary injunction, and/or permanent injunction; (c) damages; (d) attorneys' fees and costs (including expert witness fees) incurred in obtaining relief; and (e) any other legal or equitable relief or remedy allowed by law. One Thousand Dollars ($1,000.00) is the agreed amount for the bond to be posted if an injunction is sought by Company to enforce the restrictions in this Agreement on Employee. The parties agree that facsimile copies or photocopies of signatures will be sufficient for all purposes under this Agreement. The parties further agree that Company will be considered "prevailing" if it obtains an order of preliminary injunctive relief, and Company may apply for attorneys' fees and costs associated with obtaining such relief before final judgment.

**SECTION 6**  **Severability, Waiver, Modification, Assignment, Governing Law**  (a) All of the provisions herein contained are severable. The parties intend that if any provision of the Agreement is determined by a court of competent jurisdiction to be void, illegal or unenforceable, in whole or in part, all other provisions will remain in full force and effect, as if the void, illegal, or unenforceable provision is not part of the Agreement.  (b) If either party waives his, her, or its right to pursue a claim for the other's breach of any provision of the Agreement, the waiver will not extinguish that party's right to pursue a claim for a subsequent breach.  (c) Except where otherwise expressly indicated, the Agreement contains the parties' entire agreement concerning the matters covered in it; provided that (i) if Employee is subject to a prior agreement containing post-association obligations to Company, this Agreement and such prior agreement will be read together to provide the greatest protection to Company; and (ii) if a post-employment restrictive covenant in this Agreement is found unenforceable (despite, and after application of, any applicable right to reformation that could add or renew enforceability), then any prior agreement between the parties that would provide for a restriction on the same or substantially similar post-association conduct of Employee will not be considered superseded and will remain in effect. The Agreement may not be waived, modified, altered, or amended except by a written agreement (signed by Employee and an officer of Company) or by court order.  (d) The Agreement will inure to the benefit of Company's successors in interest, affiliates (as defined in Rule 12b-2 under Section 12 of the Exchange Act), subsidiaries, parents, purchasers, or assignees, and may be enforced by any one or more of the same, without need of any further authorization or agreement from Employee.  (e) The laws of the State of Illinois will govern the Agreement, the construction of its terms, the interpretation of the rights and duties of the parties, and all matters arising out of or relating to the employment relationship between Employee and Company (including tort disputes arising out of such relationship), regardless of any conflicts of law principles of the state. The exclusive venue for any legal action arising from this Agreement will be the courts located in Cook County, Illinois (state or federal); provided, however, that if no court in Cook County, Illinois has jurisdiction over Employee, forum will be proper in the state where Employee last regularly worked for Company. Employee stipulates and consents to Illinois courts' personal jurisdiction over him or her and waives his or her right to objection to an Illinois court's jurisdiction.

**SECTION 7**  **Jury Trial Waiver**  The parties hereby waive their right to a jury trial on any legal dispute arising from or relating to this Agreement and consent to the submission of all issues of fact and law arising from this Agreement to the judge of a court of competent jurisdiction as otherwise provided for above.

**SECTION 8**  Nothing in this Agreement will be construed to create a contract of employment for a definite period or to prohibit either party from having the freedom to end the employment relationship at-will, with or without cause.

AGREED to and effective as of January 1, 2021

| EMPLOYEE | COMPANY | LAWSON PRODUCTS, INC. |
|---|---|---|
| PRINT NAME: Steven Markowitz | BY: *Richard D. Pufpaf* (Richard D. Pufpaf (Jan 15, 2021 20:07 CST)) | |
| SIGNATURE: *Steven Markowitz* | ITS: VP, Compensation, Benefits, CCO & Assistant Secretary | |

5



## LOYALTY AND CONFIDENTIALITY AGREEMENT
## EXHIBIT A

**EMPLOYEE: Steven Markowitz**

Company and Employee agree that, in addition to the items provided under Section 1.1 of the Loyalty and Confidentiality Agreement, Employee will be provided with the following:

1. **Offer of Employment**  Company's offer of employment to Employee serves as consideration for Employee's agreement to abide by the terms and provisions of the Loyalty and Confidentiality Agreement. Employee acknowledges and agrees that Company's willingness to employ Employee is contingent on Employee's execution of the Loyalty and Confidentiality Agreement.

2. **Base Salary/Draw Payment**  Employee will be eligible to receive a base salary/draw payment from Company, as reflected Company's offer of employment to Employee. Ninety percent (90%) of Employee's base salary/draw payment will be treated as employment compensation, and ten percent (10%) will serve as compensation and consideration for entering the Loyalty and Confidentiality Agreement.

3. **Signing Bonus**  Employee will be eligible to receive a signing bonus of $3,500.00, less required deductions. If granted, this signing bonus will be payable in two installments: the 1st installment will be payable within 30 days of Employee clearing background and DMV driving record checks; the 2nd installment will be payable by January 31, 2021. This signing bonus is subject to Clawback by Lawson, as described in Sect. 3.9 of the Loyalty and Confidentiality Agreement, if (a) Employee voluntarily leaves Lawson's employment prior to December 31, 2021, or (b) Employee breaches any of the covenants contained in Sections 2.2, 3.2, 3.3, 3.4, or 3.5 of the Loyalty and Confidentiality Agreement. This bonus opportunity will serve as consideration for entering the Loyalty and Confidentiality Agreement.

4. **Retention Bonus**  Employee will be eligible to receive a retention bonus of $500.00, less required deductions. This bonus is payable within 30 days of Employee's start date. Employee may retain this bonus unless Employee resigns or is terminated for cause (as determined by Company) within 12 months of receipt. In that case, Employee agrees to either repay this bonus to Company or permit Company to offset this bonus against amounts that Company owes Employee, to the extent permitted by law. This bonus opportunity will serve as consideration for entering the Loyalty and Confidentiality Agreement.

5. **Waiver of Termination Right**  During the first ninety (90) days of Employee's employment, Company agrees to waive its "without cause" termination rights under Section 8 of the Loyalty and Confidentiality Agreement. This will serve as consideration for entering the Loyalty and Confidentiality Agreement.

| EMPLOYEE | COMPANY    LAWSON PRODUCTS, INC. |
|---|---|
| PRINT NAME: Steven Markowitz | BY: *Richard D. Pufpaf* (Jan 15, 2021 20:07 CST) |
| SIGNATURE: *Steven Markowitz* | ITS: VP, Compensation, Benefits, CCO & Assistant Secretary |



# LOYALTY AND CONFIDENTIALITY AGREEMENT
## SALES TERRITORY ADDENDUM

**EMPLOYEE: Steven Markowitz**

Employee is employed by Company only in the Territory described in this Addendum. Employee understands that this Territory is not assigned exclusively to Employee, and that part or all of this Territory may already be assigned to other Company outside sales representatives, inside sales representatives, strategic account managers, other employees, and/or independent contractors. The Territory is defined as the geographic area within the counties and states listed below. Employee and Company may agree to change Employee's Territory. Company may also change Employee's Territory on a prospective basis upon notice to Employee. Employee is authorized to solicit and sell products for Company to customers in the Territory, except for customers already doing business with Company through others. Employee will be compensated for sales under the terms of applicable Lawson policies and procedures.

**STATE:** FL

**COUNTIES:** BROWARD, DADE, PALM BEACH

Effective Date: **January 1, 2021**

| **EMPLOYEE** | **COMPANY**     LAWSON PRODUCTS, INC. |
|---|---|
| PRINT NAME: Steven Markowitz | BY: *Richard D. Pufpaf* (Jan 15, 2021 20:07 CST) |
| SIGNATURE: *Steven Markowitz* | ITS: VP, Compensation, Benefits, CCO & Assistant Secretary |