**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| **DOLLAR TREE STORES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION FILE NO.** |
| | ) | |
| **v.** | ) | _____ |
| | ) | |
| **NDM (EDENS), LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

COMES NOW, Plaintiff Dollar Tree Stores, Inc. ("Dollar Tree" or "Tenant"), by and through its undersigned counsel, and states its Complaint for Declaratory Judgment and Other Relief against Defendant NDM (Edens), LLC ("Edens" or "Landlord") as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Dollar Tree is a Virginia corporation that actively conducts business in Georgia.  Its principal place of business is in Chesapeake, Virginia.

2.     Defendant Edens is a South Carolina limited liability company.  Upon information and belief, none of the members of Edens are residents or citizens of Virginia.  Edens owns the North Dekalb Mall in Decatur, Georgia (the "Shopping

Center"), and is subject to the personal jurisdiction and venue of this Court. Edens may be served with Summons and process, including a copy of this Complaint, through service of process upon its registered agent: CT Corporation System, 289 S Culver Street, Lawrenceville, Gwinnett County, Georgia, 30046.

3.  This Court has subject matter jurisdiction over this case based upon diversity jurisdiction, insofar as the Parties are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs. See 28 U.S.C. §§ 1332(a).

4.  Venue is proper pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

5.  In 2013, Dollar Tree entered into a long-term lease (the "Lease") to operate a retail store (the "Original Premises") at the Shopping Center. A true and accurate copy of the Lease is attached as Exhibit "A."

6.  Dollar Tree subsequently operated its store at the Original Premises on a continuous basis without material issue or other substantive dispute with the then-owner and landlord of the Shopping Center.

7.  In September 2021, Edens purchased the Shopping Center and assumed the rights, duties, and obligations of the landlord under the Lease with Dollar Tree.

153030103.1
153070381.1
153085172.3

8.     After purchasing the Shopping Center, Edens announced its intention to demolish the Shopping Center and replace it with a mixed-use development called Lulah Hills.

9.     In December 2021, Edens presented its initial site plan for the mixed-use development to the County, and the County approved tax increment financing for the project.  In February 2022, Edens gave its first public presentation about the project.  In May 2022, the County approved a rezoning for the project.

10.     Dollar Tree's rights under the Lease prevented Edens from moving forward with its demolition and redevelopment project as planned.  Paragraph W.22 of the Lease gives the landlord the right to redevelop the Shopping Center, but it states that if the remodel would impact Dollar Tree and require that Dollar Tree be relocated, then the landlord must construct and deliver a new space for Dollar Tree to move into (the "Relocation Premises").   Paragraph W.22 specifies that the landlord must place the Relocation Premises "at a location with visibility and proximity to the other anchor tenants comparable to Tenant's original Premises as of the Effective Date, which location shall be subject to [Dollar Tree's] reasonable approval."  Paragraph W.22 further specifies that Dollar Tree can continue operating its retail store in the Original Premises until the landlord delivers the Relocation Premises.  Paragraph T of the Lease also states that Dollar Tree shall otherwise "have

quiet enjoyment of the Premises without hindrance from any person claiming by, through or under Landlord" during the remainder of the Lease term.

11.     Edens initially offered in the spring of 2022 to relocate Dollar Tree to an outparcel at Lulah Hills away from the premium space required by Paragraph W.22 of the Lease.  Dollar Tree declined the offer because of the proposed location and because the County had imposed a moratorium on opening any new small box discount retail stores, and Edens could not guarantee that Dollar Tree would be able to reopen if it closed the Original Premises.

12.     Edens offered in July 2022 to buy out Dollar Tree's lease rights for $1 million, which offer Dollar Tree declined based on the value of its store at the Original Premises and its rights under the Lease.

13.     The parties continued to negotiate a potential deal through 2022 and the first three months of 2023, and Dollar Tree made several significant changes to Edens' proposal to account for the significant risks that could adversely affect delivery of the Relocation Premises.

14.     The parties ultimately agreed that Edens would relocate Dollar Tree to an acceptable Relocation Premises at Lulah Hills, and that Dollar Tree would surrender the Original Premises before construction and completion of the

153030103.1
153070381.1
153085172.3

Relocation Premises, which Edens estimated would take twelve months, and during which all ongoing lease obligations would be suspended.

15.     The parties also agreed that Edens would reimburse $250,000 of the costs incurred by Dollar Tree for improving the Relocation Premises to ensure it met brand standards (the "Tenant Allowance").

16.     The parties further agreed that Edens would pay Dollar Tree $2 million if either Edens was late in delivering the Relocation Premises or the County otherwise prevented Dollar Tree from opening and operating in the Relocation Premises.  They agreed this amount was not a penalty but a reasonable estimate of damages to Dollar Tree if it did not timely receive the Relocation Premises.

17.     To guarantee the $2 million termination fee, Edens agreed to provide Dollar Tree with a $2 million irrevocable letter of credit that Dollar Tree could draw on in the event of Edens' breach of the agreement.

18.     In March 2023 the parties memorialized their agreement in an amendment to the Lease (the "Amendment").  A true and accurate copy of the Amendment dated March 21, 2023, is attached as Exhibit "B."

19.     On March 22, 2023, Edens issued the Closure Notice required under the Amendment, which states that Dollar Tree must cease operating in the Original Premises and surrender it to Edens on or before June 21, 2023 (the "Closure Date").

20.     Edens then issued the $2 million letter of credit to Dollar Tree on June 13, 2023.

21.     Dollar Tree ceased operating and surrendered the Original Premises to Edens on June 20, 2023.

22.     Under Paragraph 4(a) of the Amendment, Edens agreed to deliver the Relocation Premises to Dollar Tree on or before June 21, 2024.

23.     Paragraph 5 of the Amendment states that if Edens fails to deliver by that date, and does not cure the failure and deliver the Relocation Premises to Dollar Tree within 60 days thereafter, or by August 20, 2024, "then the Lease shall terminate and [Edens] shall owe [Dollar Tree] a termination fee in the amount of Two Million and 00/100 Dollars ($2,000,000.00) (the 'Termination Fee')."

24.     The Amendment refers to the time between the Closure Date when Dollar Tree surrendered the Original Premises and the date when Dollar Tree would have to start paying rent again after Edens delivers the Relocation Premises as the "Closure Period."

25.     Paragraph 2 of the Amendment states that, during the Closure Period, "Landlord and Tenant's respective ongoing obligations under the Lease with regard to the Original Premises and the operations therein shall be suspended and such obligations shall be governed solely under the Terms of this Amendment."

153030103.1
153070381.1
153085172.3

26.     Paragraph 2 of the Amendment further states that, once Edens has delivered the Relocation Premises to Dollar Tree, the parties' ongoing obligations under the Lease shall be reinstated, except for Dollar Tree's obligation to pay Base Rent or Additional Rent to Edens. Dollar Tree would not have to resume that obligation until the earlier of (i) 210 days after Edens delivers the Relocation Premises or (ii) the date Dollar Tree opens for business to the public in the Relocation Premises.

27.     When the parties executed the Amendment in March 2023, there was no allegation that Dollar Tree was in default under the Lease.  In fact, the parties expressly affirmed in the Amendment that, except as amended, the Lease was "in full force and effect."

28.     From execution of the Amendment until Dollar Tree surrendered the Original Premises in June 2023, Edens did not allege that Dollar Tree was in default under the Lease.

29.     Other than the Closure Notice, the only communications between Edens and Dollar Tree from execution of the Amendment until the start of the Closure Period were about (i) the condition of the store and logistics for closing and surrendering the Original Premises; (ii) confirmation that Dollar Tree would be able to, and in fact did, surrender the Original Premises by the Closure Date; and (iii)

153030103.1
153070381.1
153085172.3

arrangements for Edens to deliver the Letter of Credit to Dollar Tree.  The only other documentation Dollar Tree received from Edens during this time period was the Letter of Credit itself.

30.    Fifteen days after Dollar Tree surrendered the Original Premises, Edens sent Dollar Tree a lease default notice dated July 6, 2023, claiming that Dollar Tree had been in ongoing default since *April 2022* for small charges totaling $24,553.914. A true and accurate copy of the default notice is attached as Exhibit "C."

31.    The alleged defaults were broken down on a 5-page ledger, which purportedly showed failures to pay:

       a.  Monthly trash escrows since April 2022;

       b.  Electricity invoices;

       c.  Common Area maintenance (CAM) charges;

       d.  Landlord operating expenses; and

       e.  Base Rent for July 2023

32.    Even though the parties were clearly in the Closure Period, Edens demanded payment within 10 days and asserted that "Tenant's continued failure to pay monthly Minimum Rental [sic] and Additional Rent may entitle Landlord to, among other things, terminate the Lease and recover damages incurred by reason of the breaches…."

33.     The default charges are invalid and an improper basis for terminating the Lease because, among other things,

    a.  Edens waived the alleged defaults or is estopped from relying on them as a basis to terminate the Lease because they were never raised in connection with the execution of the Amendment;

    b.  Edens improperly issued the default notice after the commencement of the Closure Period, during which any obligation Dollar Tree might have to pay Base Rent or Additional Rent to Edens was expressly tolled;

    c.  The Lease is a "gross lease" where all amounts owed by Dollar Tree to Edens are included in the monthly base rent,

    d.  None of the charges characterized by Edens in its default notice constitute "Additional Rent" or amounts to be paid by Dollar Tree to Edens pursuant to the provisions of the Lease;

    e.  The utility charges are to be paid by Dollar Tree directly to the utility companies;

    f.  All valid invoices that Dollar Tree received prior to the Closure Period, and whatever amounts Dollar Tree could otherwise conceivably owe Edens, were already fully paid; and

    g.  To the extent any of the alleged charges were valid and not fully cured within the time set forth in the Lease, Dollar Tree nonetheless in good faith commenced performance requisite to cure it within 30 days after receipt of Edens' Notice of Default.  Additionally, Dollar Tree thereafter continuously and with reasonable diligence proceeded to complete the performance required to cure the alleged default.  Under paragraph P of the Lease, the alleged defaults were therefore "deemed cured."

153030103.1
153070381.1
153085172.3

34.     Notwithstanding these considerations, about which Edens was made aware, Edens gave Dollar Tree notice on August 9, 2023 that it was terminating the Lease "effective immediately."  A true and accurate copy of the lease termination notice is attached as Exhibit "D."

35.     On August 14, 2023, Edens sent a follow-up notice that said because it had terminated the Lease, "at no point will [Edens] owe any portion of the Termination Fee to [Dollar Tree]," and demanded that Dollar Tree return the $2 million letter of credit.  A true and accurate copy of Edens' demand is attached as Exhibit "E."

36.     On September 1, 2023, Dollar Tree, through its counsel, responded to Edens' termination and demand for return of the letter of credit, highlighting the impropriety of Eden's actions.

37.     Counsel for the parties have engaged in additional correspondence over the above issues, yet as of the date of this Complaint, Edens refuses to rescind the termination in an attempt to avoid its express obligations to Dollar Tree under the Lease and Amendment.

38.     True and accurate copies of Dollar Tree's September 1st letter, Edens' response, and Dollar Tree's further reply, are attached as Exhibits "F," "G," and "H."

153030103.1
153070381.1
153085172.3

39.    A legitimate issue exists whether Edens ever intended to comply with its obligations under the Amendment, or simply misrepresented its present intentions to perform thereunder.

40.    Based on the foregoing, Edens is estopped from claiming a default and/or terminating the Lease.

41.    Edens' improper actions further constitute an anticipatory repudiation and a breach of the Lease and Amendment, including Edens' obligations thereunder, with respect to which Dollar Tree reserves the right to declare its own termination for cause, and draw upon the letter of credit.

## COUNT ONE – DECLARATORY JUDGMENT

42.    Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

43.    Dollar Tree shows that the Background Facts as alleged herein, including Edens' refusal to rescind the termination and its repeated demands for return of the letter of credit, present an actual case and controversy, and thereby satisfy this condition for the Declaratory Judgment Dollar Tree requests herein.

44.    Dollar Tree shows that this Court should issue a Declaratory Judgment to the effect that Dollar Tree has not defaulted under the terms of the Lease, and that Edens' purported termination of the Lease is invalid and *void ab initio*.

153030103.1
153070381.1
153085172.3

45.     Dollar Tree further requests that this Court issue a Declaratory Judgment to the effect that Edens' wrongful termination of the Lease constitutes an anticipatory repudiation and a breach of the Lease and the Amendment, and that Dollar Tree is thereby authorized to immediately draw upon the Letter of Credit.

## COUNT TWO – BREACH OF CONTRACT

46.     Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

47.     Dollar Tree shows that Edens has anticipatorily and intentionally breached the Lease and Amendment by attempting to exercise an improper and illegal termination of the Lease.

48.     Dollar Tree has incurred compensatory damages as a direct and proximate result of Edens' actions for which Dollar Tree is entitled to recover from Edens, together with interest accrued thereon at the applicable pre-judgment rate.

49.     Dollar Tree as Tenant is also entitled to recover its legal fees and expenses from Edens as Landlord, in accordance with the terms of the Lease.

## COUNT THREE – SPECIFIC PERFORMANCE

50.     Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

153030103.1
153070381.1
153085172.3

51.     In the alternative, Dollar Tree shows that it is entitled to specifically enforce the Lease and Amendment, notwithstanding the invalid and improper anticipatory breach of the Lease by Edens.

52.     Accordingly, this Court may enter an Order requiring Edens to deliver the Relocation Premises to Dollar Tree on or before the Outside Delivery Date.

53.     If and to the extent Edens fails to do so and fails to cure the same and deliver the Relocation Premises within 60 days after the deadline specified in the Amendment, this Court can and should authorize Dollar Tree to draw upon the letter of credit.

## COUNT FOUR – PROMISSORY ESTOPPEL

54.     Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

55.     Pursuant to O.C.G.A. § 13-3-44, Dollar Tree reasonably relied on the agreements, promises, warrants, and covenants in the Amendment that Edens knowingly made for the purpose of inducing Dollar Tree to surrender the Original Premises pending Edens' delivery of the Relocation Premises.

56.     Under the circumstances, Edens is estopped from proceeding to terminate the Lease, irrespective of whether any legitimate grounds exist for any

153030103.1
153070381.1
153085172.3

declaration of default under the Lease and Amendment, pursuant to O.C.G.A. § 13-3-44(a) and the equitable doctrine of estoppel recognized under Georgia law.

57.     Dollar Tree further shows that another equitable maxim this Court can and should consider is that "Equity abhors a forfeiture."  Edens should not be permitted to terminate the Lease, under the facts and circumstances set forth herein, without compensating Dollar Tree for Edens' intentional failure to deliver the Relocation Premises in accordance with the Amendment.

## COUNT FIVE - FRAUD

58.     Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

59.     At all times, Edens was aware of the alleged defaults prior to its entry into and execution of the Amendment.  Edens failed to bring these alleged defaults to Dollar Tree's attention in connection with the negotiation and execution of that Amendment.  Edens then orchestrated the timing of its issuance of the default notice shortly after the Closure Date occurred and Dollar Tree surrendered the Original Premises.

60.     As such, Edens fraudulently misrepresented its present intent to perform its express undertakings under the Amendment for the purpose of inducing

153030103.1
153070381.1
153085172.3

Dollar Tree to surrender the Original Premises. Dollar Tree reasonably and detrimentally relied upon Edens' express undertakings in the Amendment.

61.     Thereafter, Edens insisted upon enforcing its dubious termination of the Lease in an attempt to benefit from its misrepresentation by avoiding the obligations and risks it expressly assumed under the Amendment.

62.     Dollar Tree has incurred compensatory damages as the direct and proximate result of its reasonable and detrimental reliance on Edens' misrepresentation of its present intent, for which Dollar Tree is entitled to an award of compensatory damages.

63.     Dollar Tree is further entitled to recover punitive damages against Edens, to deter Edens from undertaking future similar conduct, in an amount to be determined by the trier of fact.

## COUNT SIX – NEGLIGENT MISREPRESENTATION

64.     Dollar Tree incorporates paragraphs 1 through 41 of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

65.     In the alternative to Count Five (Fraud) detailed in paragraphs 58 through 63 of the Complaint, Dollar Tree shows that Edens negligently misrepresented its present intent to perform its express undertakings under the Amendment, inducing Dollar Tree to surrender the Original Premises. Dollar Tree

153030103.1
153070381.1
153085172.3

reasonably and detrimentally relied upon Edens' express undertakings in the Agreement.

66.     Thereafter, Edens has insisted upon enforcing its dubious termination of the Lease in an attempt to benefit from its misrepresentation by avoiding the obligations and risks it assumed under the Amendment.

67.     Dollar Tree has incurred and is entitled to recover compensatory damages as the direct and proximate result of its reliance upon Edens' misrepresentation of its present intent.

68.     Edens' actions are willful and wanton, grossly negligent and reckless, and manifested with conscious disregard for the rights of Dollar Tree set forth herein. Accordingly, Dollar Tree is entitled to recover an award of punitive damages from Edens, in an amount to be determined by the trier of fact.

## COUNT SEVEN – ATTORNEYS' FEES AND EXPENSES UNDER O.C.G.A. § 13-6-11

69.     Dollar Tree incorporates the foregoing paragraphs of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

70.     Edens has acted in bad faith, been stubbornly litigious and caused Tenant unnecessary trouble and expense.

71.     As such, and in addition to Dollar Tree's contractual right to recover its reasonable attorneys' fees and expenses, pursuant to O.C.G.A. § 13-6-11, Dollar Tree is entitled to recover its reasonable attorneys' fees and expenses of litigation from Edens.

## COUNT EIGHT – PUNITIVE DAMAGES

72.     Dollar Tree incorporates the foregoing paragraphs of this Complaint by reference, as if all such paragraphs were restated herein verbatim.

73.     If and to the extent this Court finds that Edens acted with willful, wanton, grossly negligent, or reckless conduct in connection with Dollar Tree's claims for fraud and/or negligent misrepresentation, Dollar Tree is entitled to punitive damages.

74.     Further, if this Court finds that Edens acted, or failed to act, with the specific intent to cause harm with respect to its fraudulent and/or negligent misrepresentations, actions, and omissions detailed herein, Dollar Tree is entitled to punitive damages with no limitation regarding the amount awarded as detailed in O.C.G.A. § 51-12-5.1(f).

**WHEREFORE**, Dollar Tree requests that process issue, that an evidentiary hearing be held on Dollar Tree's claims for entry of a Declaratory Judgment and

153030103.1
153070381.1
153085172.3

Other Relief, and that Dollar Tree be awarded the remedies and relief that this Court

deems just and proper.

This 18th day of December 2023.             FOX ROTHSCHILD LLP

                                            /s/ G. Marshall Kent, Jr.
                                            G. Marshall Kent, Jr.
                                            Georgia Bar No. 415129
                                            Gerald T. Chichester
                                            Georgia Bar No. 210202

                                            *Counsel for Plaintiff Dollar*
                                            *Tree Stores, Inc.*

FOX ROTHSCHILD LLP
999 Peachtree Street NE, Suite 1500
Atlanta, Georgia 30309-3482
Telephone:   (404) 962-1000
Facsimile:   (404) 962-1200
mkent@foxrothschild.com
gchichester@foxrothschild.com

18