# Exhibit G



Atlanta Office
171 17th St. NW, Suite 2100
Atlanta, GA 30363
Direct Phone: 404.873.8126
Email: david.marmins@agg.com

September 8, 2023

**VIA EMAIL AND FEDERAL EXPRESS**: **MKent@Foxrothschild.com**
Marshall Kent
Fox Rothschild LLP
999 Peachtree Street, NE
Suite 1500
Atlanta, GA 30309

    Re:    The Lease Agreement dated March 25, 2013 (as amended, the "Lease")[1], between NDM (Edens), LLC ("Landlord"), as successor-in-interest to Hendon North DeKalb, LLC, and Dollar Tree Stores, Inc. ("Tenant"), and as guaranteed by Dollar Tree Stores, Inc., for the certain premises known as Space Number 200 (the "Premises"), in the shopping center known as North DeKalb Mall, Phase I in Decatur, Georgia

Dear Marshall:

The purpose of this letter is to respond to your September 1, 2023 letter regarding Landlord's termination of the Lease. I want to be clear that, while we appreciate finally receiving an explanation of Tenant's position and I provide a fulsome response below, the termination was effective and we are not inclined to engage in an extended letter-writing debate. If Tenant refuses to release the Line of Credit ("LOC"), we will pursue a declaration of our rights in court. Further, any attempt by Tenant to "call and collect on the LOC" as threatened in your letter would be premature, in bad faith and Landlord reserves all rights under the applicable agreement and law if Tenants should do so.

You first argue that Section 2 of the Amendment and Relocation Agreement ("Amendment") absolved Tenant of any prior defaults. This is wrong. Section 2, titled "Effectiveness of this Amendment, Closure of Premises" absolved the Parties from performing their respective obligations under the Lease, such as Tenant's duties to operate and pay rent, between the Closure Date and Delivery Date. There is no language in Section 2 retroactively discharging Tenant's obligation to pay Base Rent and Additional Rent prior to the Closure Date.

You next argue that the charges Tenant failed to pay for electric and trash disposal were not Tenant's responsibility. Again, this is wrong under the clear language of the Lease and as indicated by the Parties' course of dealings. More specifically, you have overlooked Section H of

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in the Lease.



Marshall Kent
September 8, 2023
Page 2

the Lease, which specifically provides in Section H(1)(b) that Tenant must pay all its Utilities, including electric, and in H(2) that Tenant must pay for its Rubbish Disposal. Section A(10) of the Lease states that, "Any amounts, other than Base Rent, to be paid by Tenant to Landlord pursuant to the provisions of the Lease…shall be deemed to be 'Additional Rent' and otherwise subject to all provisions of this Lease as to the default in the payment of Base Rent."

Clearly, the electric and trash were Tenant's responsibilities (which is why Tenant, in fact, made many of those payments) and Tenant's failure to pay them amounted to defaults of the Lease. I note that we communicated with Tenant several times this summer about these defaults to no avail. In fact, we did not terminate the Lease until 30 days following delivering of our July 9, 2023 second notice of default and only after being effectively ignored by Tenant despite our repeated requests to pay the outstanding balance and/or explain why the same is not due. Further, we undertook substantial efforts at significant cost toward building out Tenant's new Premises. So, your statements about Landlord's "poorly calculated gambit" and "misrepresentations" about its intent to deliver the Relocation Premises are not only offensive but ill-informed, ignore the relevant facts, and will not provide a basis for Tenant to make equitable claims for detrimental reliance or estoppel. Not only will these claims fail for lack of factual support, but also because the Parties have an enforceable agreement. You will also not succeed in portraying Landlord as the "bad guy" here. In short, Tenant, a company with a market capitalization of over $25 Billion, will not be seen as the "good guy" having failed to make payments due under the Lease despite Landlord's repeated requests.

Landlord has complied with the Lease and Amendment. Tenant defaulted and failed to cure despite notice. Landlord's termination is therefore effective and we renew our demand that Tenant release the LOC. Please have the original letter of credit returned to my attention at the address above within five (5) business days of receipt of this letter and please destroy any copies of the same.

Sincerely,
ARNALL GOLDEN GREGORY LLP

David J. Marmins