# **<u>Exhibit H</u>**



999 Peachtree Street NE
Suite 1500
Atlanta, GA  30309
Tel 404.962.1000  Fax 404.962.1200
WWW.FOXROTHSCHILD.COM

MARSHALL KENT
Direct No: 404.962.1036
Email: MKent@Foxrothschild.com

September 14, 2023

David J. Marmins, Esq.
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, Georgia 30363

RE: Purported August 9, 2023 Termination of Lease Agreement dated March 25, 2013 (as amended, the "Lease") between NDM (Edens), LLC ("Landlord") and Dollar Tree Stores, Inc. ("Tenant") and Apparent Breach by Landlord of Its Obligations Under the Lease and the Amendment and Relocation Agreement dated March 21, 2023 ("Amendment") with Respect to the Original Premises (Unit 200) and Relocation Premises (Unit C60) Defined Therein, at North DeKalb Mall in Decatur, Georgia

Dear David:

    We are in receipt of your letter on behalf of Landlord of September 8, 2023, issued in response to our letter dated September 1, 2023.  Therein, Tenant responded to your letter of August 9, 2023, purporting to terminate the Lease Agreement between the parties.  Please be advised that Tenant takes issue with the conclusory claims set forth in your most recent letter.  Contrary to the claims set forth therein, and based upon the facts set forth in our letter of September 1, 2023, your client's alleged termination of the Lease is invalid and legally ineffective.  Any attempt to persist with or enforce such a termination constitutes an intentional breach, anticipatory or otherwise, of your client's obligations under the Lease and Relocation Agreement.

    Simply put, the claims by your client for utilities and trash removal reimbursement are highly dubious, and not consistent with the express terms of the Lease you cite in your letter.  As you quoted, Additional Rent is defined as amounts to be paid by Tenant "to Landlord," whereas the Lease expressly states that utilities and trash removal were to be billed directly by and paid to the third-party providers.  In any event, any issue related to these charges should have been brought to Tenant's attention in connection with the negotiation of the Amendment/Relocation Agreement.  No such issues appear to have been raised by Landlord while the parties proceeded to enter into the Amendment, however.  In the Amendment, Landlord, among other things, ratified the Lease and agreed on provisions for any future potential default by Tenant, all of which would suggest

A Pennsylvania Limited Liability Partnership

California    Colorado    Delaware    District of Columbia    Florida    Georgia    Illinois    Massachusetts    Minnesota    Missouri
Nevada    New Jersey    New York    North Carolina    Oklahoma    Pennsylvania    South Carolina    Texas    Washington

149235955.3



September 14, 2023
Page 2

that any legitimate prior default claim had been cured, or was deemed cured or else waived by Landlord.

Further, any obligation not addressed prior to the commencement of the Suspension Period now in effect with respect to all Lease obligations (that would include the July Notice of Default and any obligation to cure any alleged default therein within a specified time period) are in fact suspended by the express terms of the Relocation Agreement.  As such, your client's Notice of Default and Termination Notice could not effectively be issued until after the Suspension Period expired, and Tenant was properly provided with an opportunity to cure any alleged default.

In this regard, if your client is genuinely concerned about an alleged default under the Lease, the issue of the alleged claims for Additional Rent can certainly be discussed, negotiated and/or resolved between the parties on "reasonable terms."  We are currently in the Suspension Period under the Amendment, and Landlord is not expecting to receive any rent payments from Tenant until after the Delivery Date, which appears to be well into the future as things currently stand.  So even if Landlord were correct (which we do not believe is the case), there is more than enough time to reasonably cure these alleged defaults from 2022 that were not raised until July 2023.  On the other hand, if, as we suspect, Landlord is seeking to avoid its relocation obligations through an invalid termination of the Lease, Tenant reserves all rights and defenses, including the right to claim against the Letter of Credit.

Tenant encourages Landlord to withdraw its claim of termination immediately, so a reasonable resolution that preserves the existing Lease obligations of the parties is obtained.  As you and your client are no doubt aware, "equity abhors a forfeiture," and any attempt by Landlord to wrongfully terminate the Lease is both inequitable and an intentional breach of the Lease and Relocation Agreement.

We look forward to any attempt by your client to obtain a reasonable resolution, consistent with the foregoing considerations.

Sincerely,

FOX ROTHSCHILD LLP

*/s/ G. Marshall Kent, Jr.*
G. Marshall Kent, Jr.

cc:  David Hartnett, Esq.
     Scott Kipnis, Esq.

149235955.3