# Exhibit A

EFILED IN OFFICE
CLERK OF THE GEORGIA
STATE-WIDE BUSINESS COURT

23-GSBC-0013

JUDGE BILL HAMRICK
DEC 01, 2023 06:18 PM

*Angie T. Davis*
Angie T. Davis, Clerk of Court
Georgia State-wide Business Court

## IN THE GEORGIA STATE-WIDE BUSINESS COURT
## STATE OF GEORGIA

|  |  |
|---|---|
| WELLS FARGO BANK, N.A., and WELLS FARGO DELAWARE TRUST COMPANY, N.A., | Civil Action No. |
| Plaintiffs, | **COMPLAINT FOR DECLARATORY JUDGMENT, STAY OF ARBITRATION, AND OTHER RELIEF** |
| - against - |  |
| BRUCE ACHENBACH, NANCY BELSER, ANDREW COSTANZA, ANDREW DARROW, DAVID DARROW, JONATHAN DARROW, DEAN FLOCK, JAY GRIMM, JR., ROBERT KRAKOVITZ, MOSHE MALKA, LEON MALNIK, BARRY SEPTIMUS, and PHYLLIS SIFEN, |  |
| Defendants. |  |

NOW COME Plaintiffs in the above-captioned action and, pursuant to O.C.G.A. § 9-4-1, *et seq*. (the Declaratory Judgment Act) and O.C.G.A. § 9-9-1, *et seq.* (the Georgia Arbitration Code, or "GAC"), show the Court as follows:

### PRELIMINARY STATEMENT

1.      On October 10, 2023, Defendants Bruce Achenbach, Nancy Belser, Andrew Costanza, Andrew Darrow, David Darrow, Jonathan Darrow, Dean Flock, Jay Grimm, Jr., Robert Krakovitz, Moshe Malk, Leon Malnik, Barry Septimus, and Phyllis Sifen (hereinafter "Defendants") initiated an arbitration against Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo Delaware Trust Company, N.A. ("WFDTC") (together, "Wells Fargo" or "Plaintiffs"), as well as against Liberty One

Funding Trust ("Liberty One") and Liberty Two Funding Trust ("Liberty Two") (collectively, "Liberty") before the American Arbitration Association ("AAA") in Atlanta, Georgia. *See* Demand for Arbitration and Statement of Claim attached as Exhibit A.

2.       Defendants are the purported heirs of 11 persons (the "Insureds") who the Defendants allege obtained funding for life insurance policies from Liberty One or Liberty Two, as the case may be, through Financing Agreements (the "Liberty Financing Agreements"). When those Insureds who participated in the Liberty programs passed away, their beneficiaries (presumably the Defendants) collectively received over $1.6 million in death benefits, the full amounts due to them after application of the Liberty Financing Agreement terms.

3.       Section 6 of the GAC provides that a party may apply for an order to stay arbitration on the grounds that "[n]o valid agreement to submit to arbitration was made." O.C.G.A. § 9-9-6(b)(1). WFDTC was not party to any Liberty Financing Agreements with any of the Defendants' respective Insureds at all. Wells Fargo Bank was a party to the Liberty Financing Agreements solely and expressly in its capacity as Securities Intermediary,[1] and not in its individual capacity, and did not agree to act or to arbitrate any claim in any capacity other than perhaps as a Securities

---

[1] A securities intermediary means "[a] person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is *acting in that capacity*." O.C.G.A. § 11-8-102 (emphasis added).

Intermediary. Moreover, there is no record of any Liberty Financing Agreements in which Wells Fargo Bank was a party in any capacity with the respective Insureds of defendants Jay Grimm, Jr., Robert Krakovitz, Leon Malnik, or Phyllis Sifen.

4.     Defendants also lack standing to bring their claims in arbitration or elsewhere. None of the Defendants was a party to a Liberty Financing Agreement, and they were never in privity with Wells Fargo. In addition, on information and belief, none of the Defendants has been appointed as the legal representative of their respective Insured's estate. Under Georgia law and the laws of the different states where the Insureds resided before they died (Florida, Tennessee, New York, Virginia, Oregon, Colorado, New Jersey, and Maryland), the Defendants lack legal capacity and standing to sue on behalf of the Insureds. *Dominic v. Eurocar Classics*, 310 Ga. App. 825, 828, 714 (2011); O.C.G.A. § 9–2–20(a); *De La Riva v. Chavez*, 303 So. 3d 955, 959 (Fla. Dist. Ct. App. 2020); Fla. Stat. Ann. § 733.309; *First Nat'l Bank v. Howard,* 302 S.W.2d 516, 518 (Tenn. Ct. App. 1957); *Bishop v. Young,* 780 S.W.2d 746, 750 (Tenn. Ct. App. 1989); N.Y. Est. Powers & Trusts Law § 11-3.2; *Campbell v. Harmon*, 628 S.E.2d 308, 312 (2006); *Steiger v. Burroughs*, 878 P.2d 131, 135 (Colo. App. 1994); *DeLane ex rel. DeLane v. City of Newark*, 343 N.J. Super. 225, 235 (App. Div. 2001); Md. Code Ann., Est. & Trusts § 7-401; *Rosebrock v. E. Shore Emergency Physicians, LLC*, 221 Md. App. 1, 12, 108 A.3d 423, 429 (2015).

5.      In addition, for the Defendants whose respective Insureds had an identifiable Liberty Financing Agreement and who can demonstrate standing to pursue claims on behalf of the related Insureds estate, Section 5 of the GAC still authorizes this Court to issue a stay of arbitration "[i]f a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration or to vacate the award, as provided in this part." O.C.G.A. § 9-9-5(a). The claims these Defendants have brought to the AAA are time-barred and are merely a belated attempt to squeeze additional money from the long-since settled Liberty Financing Agreements, which already greatly benefited the Insureds' beneficiaries. The three claims asserted by Defendants in the AAA arbitration and the statute of limitations for each are: Illegal Wagering and Lack of Insurable Interest (at most, six years under Georgia law); Breach of Contract and Indemnification, and Breach of Implied Covenant of Good Faith and Fair Dealing (six years under Georgia law from the date the insurance benefits became due); and Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) (four years under federal law). None would be timely if asserted in court, and Defendants should not be able to escape the time bar by slipping their untimely claims into arbitration.

6.      Plaintiffs therefore complain to stay the arbitration against them, and for a declaration that: (1) Defendants may not pursue arbitration because Plaintiffs

have not entered into a pre-dispute arbitration agreement with Defendants; (2) Defendants lacked standing to bring their claims; and (3) even for those Defendants whose Insureds had an identifiable Liberty Financing Agreement, the claims are time-barred from any further arbitration. O.C.G.A. § 9-9-5.

7.      Plaintiffs bring this Complaint to stay the arbitration not more than 30 days after having been served with the Defendants' Demand for Arbitration and Statement of Claim.

## IDENTITY OF THE PARTIES AND

## STATEMENT OF JURISDICTION AND VENUE

8.      Wells Fargo Bank is a national banking association organized and existing under federal law with its main office located in Sioux Falls, South Dakota. It was a party to certain Liberty Financing Agreements solely and expressly in the capacity of Securities Intermediary.

9.      Wells Fargo Delaware Trust Company, N.A. is a national banking association organized and existing under federal law with its main office located in Wilmington, Delaware.

10.     Defendants are the purported heirs of the Insureds who Defendants allege obtained funding from the Liberty One or Liberty Two Funding Trusts, as the case may be, through the Liberty Financing Agreements for the purpose of acquiring and paying the premiums for life insurance policies.

11.     Defendants only attach a copy of a single Liberty Financing Agreement to their Statement of Claim in support of their Demand for Arbitration. For several of the Defendants (Jay Grimm, Jr., Robert Kaskovitz, M.D., Leon Malnik, and Phyllis Sifen), Wells Fargo does not have any record or evidence that the respective Insureds (Jay Grimm, Sylvia Hankin, Abraham Malnik, and Paul Sifen) participated in the Liberty One or Liberty Two premium financing program or ever signed a Liberty Financing Agreement.

12.     For the Insureds that did sign an identifiable Liberty Financing Agreement that contains the pre-dispute arbitration agreement upon which Defendants improperly seek to force Wells Fargo into AAA arbitration, those same Liberty Financing Agreements state that they are to be governed by and under the law of the State of Georgia, including "all rights and remedies being governed by said law."

13.     The same arbitration provision by which Defendants seek to improperly force Wells Fargo to arbitrate the claims before the AAA in Atlanta, Georgia also provides for personal jurisdiction in this Court over the Insureds, and therefore over the Defendants because they purport to be pursuing claims that belong to the Insureds and because the Insureds agreed "to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County, Georgia, for the sole purpose of enforcing [the Agreements] (including, where appropriate, issuing injunctive

relief).""

14.     The Liberty Financing Agreements also supply venue in this Court. O.C.G.A. § 9-9-4(b)(1) provides that "[v]enue for applications to the court shall lie: (1) [i]n the county where the agreement provides for the arbitration hearing to be held." The Liberty Financing Agreements specify that the arbitration hearing will be held in Atlanta, Georgia.

15.     Despite the fact that WFDTC is not a party to any Liberty Financing Agreement, and despite the fact that Wells Fargo Bank is a party to only a few identifiable Liberty Financing Agreements solely and expressly in the capacity of Securities Intermediary and not in its individual capacity, Defendants have included them as respondents in the arbitration they have filed with the AAA against Liberty One and Liberty Two. See *Achenbach et al. v. Liberty One Funding Trust, et al.*, AAA Case No. 1-23-0004- 4523 (initiated October 10, 2023) ("*Achenbach* Arbitration") Ex. A.

16.     Plaintiffs seek an order staying the arbitration claims of all Defendants against them because no arbitration agreement exists as to WFDTC at all or Wells Fargo Bank, in its individual capacity. Since the *Achenbach* Arbitration designates Atlanta, Georgia, as the place of arbitration, venue here is appropriate, and this Court has subject matter jurisdiction over these claims to stay the arbitration.

17.     Plaintiffs seek to stay the arbitration claims of all Defendants and for a

declaration that (1) Defendants may not pursue arbitration against Plaintiffs because they have not entered into a pre-dispute arbitration agreement with Plaintiffs; (2) Defendants lacked standing to bring these claims; and (3) the Defendants' arbitration claims are time-barred and may not be pursued under the GAC, O.C.G.A. § 9-9-5. This Court has subject matter jurisdiction over these claims. See *Cantor Colburn LLP v. Gs-Cleantech Corp.*, 874 S.E.2d 859, 867 (Ga. Ct. App. 2022).

## FACTUAL BACKGROUND

### The Liberty Premium Finance Program

18.     The Liberty premium finance programs allowed individuals to obtain life insurance on their own lives with named beneficiaries, and the premiums were paid for through non-recourse financing provided by Liberty One or Liberty Two through the Liberty Financing Agreements.

19.     The Insureds who were parties to a Liberty Financing Agreement paid nothing for the premiums on the life insurance policies. Instead, they knowingly and voluntarily elected to have Liberty finance the premiums for them so that they could continue to enjoy the use of their own funds while they were alive in exchange for a reduced benefit payout to their beneficiaries so that Liberty would be paid back after such Insureds died. In short, those Insureds agreed that Liberty would be repaid from the proceeds of the life insurance policies after the Insureds' passing, in respect of the funds advanced by them and certain costs with accrued interest. The beneficiaries

(presumably the Defendants) of those Insureds still received the net death benefits of the life insurance policies, which for the Insureds with identifiable Liberty Financing Agreements collectively totaled more than $1.6 million.

20.     The Liberty Financing Agreements set forth explicit formulas for calculating the amounts due to Liberty, affording Liberty modest rates of return on the amounts advanced under the Liberty Financing Agreements. The balance of the policies' net proceeds were paid to the Insureds' beneficiaries. To ensure that the Insureds understood the arrangements, Liberty provided them with non-guaranteed projections of the amounts their beneficiaries would receive, depending upon how long the Insureds lived. The Insureds and Defendants received all of the benefits of the bargains they made when the Insureds contracted with Liberty.

21.     Despite having received what they were promised and having invested no money of their own, and after waiting in some instances 13 years after the death of the Insureds, Defendants are now pursuing belated claims in arbitration not just against Liberty but also against Wells Fargo Bank and WFDTC.

### *The* Achenbach *Arbitration*

22.     Defendants have initiated an arbitration proceeding against Wells Fargo Bank, WFDTC, and Liberty One and Liberty Two. See *Achenbach, et al. v. Liberty One Funding Trust, et al.*, AAA Case No. 1-23-0004- 4523 (initiated October 10, 2023) (the "*Achenbach* Arbitration") (Ex. A).

23.      In the *Achenbach* Arbitration, Defendants assert claims for (1) Illegal Wagering and Lack of Insurable Interest (first cause of action), under Georgia law; (2) Breach of Contract and Indemnification, and Breach of Implied Covenant of Good Faith and Fair Dealing (second cause of action), under Georgia law; and (3) Violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) ("RICO") (third cause of action), under federal law.

24.      In the *Achenbach* Arbitration, Defendants seek:

     i.    the full face amount of the Insureds' life insurance policies, disregarding Liberty's payment of premiums and costs, and disregarding the formulas set forth in the Liberty Financing Agreements;

    ii.    treble damages under RICO;

   iii.    attorneys' fees and costs; and

   iv.    interest, including pre-judgment interest.

25.      Wells Fargo does not submit to arbitration. Wells Fargo Bank is a party to the Liberty Financing Agreements *only* as Securities Intermediary. O.C.G.A. § 11-8-102 (defining a securities intermediary as "[a] person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity"). WFDTC is not a party at all.

26.      Wells Fargo would be prejudiced by being forced to arbitrate the stale

claims Defendants seek to pursue. The Insureds, all of whom are deceased, entered into the Liberty Financing Agreements almost two decades ago, in 2004 and 2005. Their claims arose at that time, and expired four or six years later, depending on the claim, meaning that all claims were expired by 2011.

27.    In addition, while one of the Insureds (Henry Flock) died in 2022, the others passed away some seven (7) to thirteen (13) years ago. None of the Insureds' testimony is available, and it is unlikely and uncertain at best that their files and email accounts are still fully preserved and accessible. The Liberty Financing Agreements were signed nearly twenty (20) years ago, and certain individuals who were involved from Wells Fargo Bank's perspective are no longer employed by it and within its control. Exemplifying this loss of records over time is the fact that the Defendants' counsel cannot even determine from Defendants' files who did or did not enter into the Liberty Financing Agreements. Thus, testimony, information and documents related to the transactions and therefore needed to support Wells Fargo's defenses are likely no longer available.

28.    Wells Fargo would also be prejudiced by Defendants' claims for pre-judgment interest at a rate that far exceeds what a market investment would have returned during the many years that the Insureds and Defendants enjoyed the use of the premium financing and policy benefits while sitting on their claims.

### *Relevant Provisions of the Liberty Financing Agreements*

29.     The Liberty Financing Agreements provide that the parties may elect

to arbitrate disputes, but does not require that arbitration be the exclusive forum for

such resolution:

> (b)     All Disputes shall in the first instance be discussed amicably between the parties with a view to resolving such Dispute, commencing upon one party giving other parties written notice of such Dispute.  In the event that such Dispute is not resolved within thirty (30) days after such notice (or such longer period as the parties may agree in writing with respect to any such Dispute), any party may submit such Dispute to be finally settled by arbitration administered under the Rules by a panel of three arbitrators sitting in Atlanta, Georgia.  One arbitrator shall be nominated by the party initiating arbitration at the time of the filing of its demand for arbitration, the second arbitrator shall be nominated by the opposing party(ies) at the time of the filing of its answering statement, and the third arbitrator (who shall act as chairman) shall be jointly nominated by party-nominated arbitrators if they are able to agree.  If the first two party nominated arbitrators are unable to agree upon a third within thirty (30) days after the nomination of the second, or if either party fails to nominate an arbitrator as set forth herein, an arbitrator shall be appointed pursuant to the Rules.  The award of the arbitrators shall be final and binding upon the parties, and shall not be subject to any appeal or review.  The parties agree that such award may be recognized and enforced in any court of competent jurisdiction.  The parties agree to submit to the personal jurisdiction of the federal and state courts sitting in Fulton County, Georgia, for the sole purpose of enforcing this Agreement (including, where appropriate, issuing injunctive relief), the agreement to arbitrate contained herein and any award resulting from arbitration pursuant to this Section 7.11 and, to the fullest extent permitted by law, waive any objection which they may have at any time to the laying of venue of any proceedings brought in such court and any claim that such proceedings have been brought in an inconvenient forum.

30.     The Liberty Financing Agreements state they are to be governed under

the law of the State of Georgia, including "***all rights and remedies being governed***

***by said law.***"

> SECTION 7.12.  <u>Governing Law</u>.  This Agreement shall be governed by, and construed in accordance with, the local law of the State of Georgia (without regard to conflict of laws principles that could or would cause the application of any other laws), all rights and remedies being governed by said law.

As such, the interpretation and enforceability of the Liberty Financing

Agreements' arbitration provisions are governed by Georgia state law, particularly the GAC, O.C.G.A. § 9-9-1, *et seq*.

## COUNT I

## PETITION FOR STAY OF ARBITRATION UNDER O.C.G.A. § 9-9-6(b)(1)

### (Against All Defendants)

31.     Plaintiffs repeat and re-allege the preceding paragraphs as if set forth fully herein.

32.     WFDTC never signed or agreed to any Liberty Financing Agreement by which it agreed to arbitrate claims with the Insureds or the Defendants.

33.     Wells Fargo Bank never signed or agreed to any Liberty Financing Agreement by which it agreed to arbitrate claims with Insureds Jay Grimm, Sylvia Hankin, Abraham Malnik, or Paul Sifen, or any of their respective heirs. While Wells Fargo Bank did sign certain agreements that included Insureds Walter Achenbach, Dana Belser, Angelo Costanza, Stanley Darrow, Henry Flock, Victor Malka, and Helen Wilkenfeld, it did so *solely and expressly* in its capacity as Securities Intermediary. Wells Fargo Bank never agreed to arbitrate with those Insureds or the Defendants in Wells Fargo Bank's individual capacity.

34.     This Court is authorized to and should stay the arbitration pursuant to O.C.G.A. § 9-9-6(b)(1) ("[A] party who has not participated in the arbitration . . . may apply to stay arbitration on the grounds that . . . [n]o valid agreement to submit

to arbitration was made…."). Furthermore, the Court is authorized to and should stay arbitration against Wells Fargo Bank in any capacity other than as Securities Intermediary. See *Envision Printing, LLC v. Evans*, 336 Ga. App. 635, 637, 786 S.E.2d 250, 251–52 (2016) (Court of Appeals upheld summary judgment in favor of defendant on the grounds that he was not personally responsible for debt because he signed promissory note solely in his capacity as an officer of a limited liability company, not in his personal capacity).

## COUNT II

### PETITION FOR STAY OF ARBITRATION UNDER

### O.C.G.A. §§ 9-9-5(a) & 9-9-6(b)(3)

**(Against All Defendants)**

35.     Plaintiffs repeat and re-allege the preceding paragraphs as if set forth fully herein.

36.     The Liberty Financing Agreements upon which Defendants base the *Achenbach* Arbitration provide that Georgia law governs all rights and "remedies," the latter of which includes statutes of limitations. *See Hunter* v. *Johnson*, 376 S.E.2d 371, 372 (Ga. 1989) (holding that, under Georgia law, statutes of limitation are procedural because they "look only to the remedy"). The intent of these choice of law provisions is clear: Georgia law is to cover both substantive causes of action in any dispute and procedural issues that address the scope of remedies, such as

applicable statutes of limitations and the interpretation and enforceability of the arbitration provision.

37.     In the *Achenbach* Arbitration, Defendants assert claims for (1) Illegal Wagering and Lack of Insurable Interest (first cause of action), under Georgia law; (2) Breach of Contract, and Indemnification, and Breach of Implied Covenant of Good Faith And Fair Dealing (second cause of action), under Georgia law; and (3) Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C §§ 1962(c) and 1962(d) (third cause of action).

38.     Under Georgia law, while there is not a specific statute of limitations for Illegal Wagering and Lack of Insurable Interest (O.C.G.A. § 33-24-3(i)), the statute of limitations for simple written contracts generally is six years and for other actions on contracts is four years. *See Gen. Elec. Credit Corp.* v. *Home Indem. Co.*, 309 S.E.2d 152, 156 (Ga. Ct. App. 1983) ("The public policy of this state as expressed by the legislature is that actions on contracts shall be brought within six years." (citing O.C.G.A. § 9-3-24)); O.C.G.A. § 9-3-26.

39.     Under Georgia law, the statutes of limitations for Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing are six years from the time the contractual payment becomes due and payable. *See Jackson Nat'l Life Ins. Co. v. Crum*, 2023 WL 6442932, at *10 (N.D. Ga. July 20, 2023), *appeal filed*, No. 23-13192 (11th Cir. Sept. 21, 2023); O.C.G.A. § 9-3-24.

40.     The statute of limitations for claims under the federal RICO statute is four years from when the plaintiff discovers or should have discovered the injury. *See Youngblood-West* v. *Aflac Inc.*, 796 F. App'x 985, 991 (11th Cir. 2019).

41.     The underlying insurance policies and Liberty Financing Agreements were executed in 2004 and 2005, which is when the claims accrued. The applicable statutes of limitations therefore expired four or six years, depending on the claim, after the Insureds' signed the Liberty Financing Agreements, at the latest in 2011. None of the Insureds raised any claims during that time, or at any time before they died.

42.     Even if Defendants could prove that the breach of contract claims did not for some reason accrue until the time when their respective Insured died and a claim was made on the life insurance policy, all but one of the Defendants' claims would still be barred. With the exception of Henry Flock who passed away in 2022, all of the other Insureds died between December 2010 and June 2016. Even if their contract claims did not accrue until the policy benefits were paid to the beneficiaries, all of the Defendants' claims except for those related to Mr. Flock expired in June 2022—more than a year before Defendants initiated the *Achenbach* Arbitration.

43.     Nor were any of the statutes of limitations tolled. Defendants could and should have "discovered" any injury when they received the payments of the net death benefits. No information or facts were hidden from them before they could

bring the claims in the *Achenbach* Arbitration, nor does the Statement of Claim allege any facts that were justifiably discovered more than four or six years after the date of the payment of the net death benefits.

44.     Defendants sat on their claims in some instances for more than 13 years. In that time, the beneficiaries were paid and the policies were closed, and evidence relevant to the claims and defenses (including the Insureds' testimony) has been irretrievably lost or impaired. Plaintiffs would suffer prejudice if they were forced to arbitrate Defendants' stale claims without the evidence needed to litigate the claims and defenses.

45.     Any claims Defendants might bring against Wells Fargo in arbitration (or a court of law) are therefore time-barred. This Court is authorized to and should exercise its discretion to impose the statute of limitations as a bar to Defendants' untimely claims in arbitration in accordance with O.C.G.A. § 9-9-5(a) ("If a claim sought to be arbitrated would be barred by limitation of time had the claim sought to be arbitrated been asserted in court, a party may apply to the court to stay arbitration . . . ."), and should stay the arbitration pursuant to O.C.G.A. §§ 9-9-5(a) and 9-9-6(b)(3) ("[A] party who has not participated in the arbitration . . . may apply to stay arbitration on the grounds that [t]he arbitration is barred by limitation of time.").

46.     Other than submitting objections to the AAA's exercise of jurisdiction

and a reservation of further rights, Plaintiffs have not participated in the *Achenbach* Arbitration.

## COUNT III

## DECLARATORY JUDGMENT (O.C.G.A. § 9-4-2)

### (Against All Defendants)

47.     Plaintiffs repeat and re-allege the preceding paragraphs as if set forth fully herein.

48.     This dispute presents the Court with an actual controversy that creates uncertainty and insecurity with respect to the rights, status, and other legal relations between the parties because Defendants have asserted claims against Plaintiffs for which the Defendants do not have standing and which are time-barred.

49.     Plaintiffs are entitled to a Declaratory Judgment that they did not enter into and are not bound by any agreement to arbitrate the Defendants' claims.

50.     Plaintiffs are additionally entitled to Declaratory Judgement that Defendants lack standing to bring these claims in arbitration because they themselves were not parties to the alleged Liberty Financing Agreements, nor have they been appointed as the legal representatives of their respective Insureds' estates.

51.     Plaintiffs are also entitled to a Declaratory Judgment that Defendants' claims are barred by the applicable statutes of limitations for those claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

i.      Stay the *Achenbach* Arbitration pursuant to O.C.G.A. §§ 9-9-5(a) and 9-9-6(b)(1) & (b)(3) with respect to each of Defendants' claims against Plaintiffs;

ii.     Declare that Plaintiffs have not entered into any agreement to arbitrate the Defendants' claims;

iii.    Declare that Defendants lack standing to bring their claims and are not in privity of contract with Plaintiffs;

iv.     Declare that Defendants' claims are time-barred;

v.      Award Plaintiffs' attorneys' fees and disbursements pursuant to the Liberty Financing Agreements based on equity and the contractual obligation to indemnify Plaintiffs for their "reasonable costs and expenses, including, without limitation, fees and disbursement of counsel"); and

vi.     Provide such further relief as this Court may deem just and proper.

/ / /

/ / /

/ / /

Respectfully submitted this 1st day of December, 2023.

*Attorneys for Plaintiffs*

*/s/Terry R. Weiss*
Terry R. Weiss, Esq.
Ga. Bar No. 746495
trweiss@duanemorris.com
Catherine G. Lucas, Esq.
Ga. Bar No. 567369
klucas@duanemorris.com

**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309-3929
(404) 253-6912
(telephone) (404) 759-2158 (fax)

-and-

*Jonathan P. Hersey, Esq.
Cal. Bar No. 189240
jonathan.hersey@klgates.com
*Kennedy M. Myers, Esq.
Cal. Bar No. 343152
kennedy.loenhorst@klgates.com

**K&L GATES LLP**
1 Park Plaza, Twelfth Floor
Irvine, CA 92614
(949) 253-0900

*pro hac vice applications pending*

# EXHIBIT A

# [REDACTED]