UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| SHARETTA COOK, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) FILE NO. |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TD AUTOMOTIVE COMPRESSOR | ) |
| GEORGIA, LLC | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff Sharetta Cook ("Ms. Cook" or "Plaintiff") files this Complaint against Defendant TD Automotive Compressor GA, LLC ("TDA" or "Defendant") and sets forth the following claims:

## INTRODUCTION

1. Plaintiff began working at Defendant in 2014.

2. At all relevant times, Plaintiff suffered from lymphoma with resulting complications or limitations from her treatments, which constitutes a disability as defined by the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101 *et seq*.

3. After Plaintiff requested a reasonable accommodation for her disability, Defendant ultimately denied the requested accommodation and retaliated

1

against Ms. Cook, requiring her to take unpaid leave.

4. Accordingly, Plaintiff asserts claims against Defendant discrimination, failure to accommodate, and retaliation in violation of the ADAA.

5. Plaintiff seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement, compensatory damages, punitive damages, and attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

7. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2); 42 U.S.C. § 12117; 42 U.S.C. § 2000e–5(f)(3).

## THE PARTIES

8. Plaintiff is now, and was at all times relevant to this action, a resident of the State of Georgia.

9. Plaintiff, at all relevant times to this action, was an individual with a disability within the meaning of the ADAAA, 42 U.S.C. § 12102(1).

10. At all relevant times, Plaintiff was a "qualified individual" with a disability because she was able to perform the essential functions of her job with or

without a reasonable accommodation.

11.     Plaintiff was a person with a disability because she has an actual impairment, lymphoma, which substantially limited one or more of her major life activities, because she had a record of impairment, and because she was regarded as having an impairment.

12.     Plaintiff has satisfied all administrative prerequisites to perfect her claims under the ADAAA. Specifically, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

13.     Plaintiff timely brings this suit following receipt of her notice of right to sue.

14.     Defendant TDA is a foreign limited liability company that is registered with the Georgia Secretary of State. Its principal place of business is 1000 Valentine Industrial Pkwy, Pendergrass, GA, 30567.

15.     Defendant is a covered employer under the ADAAA, as it employs more than fifteen people.

16.     Defendant may be served with a summons and copy of the Complaint in this action by delivering process to its registered agent: Business Filings Incorporated, 289 S Culver St., Lawrenceville, GA, 30046.

## **STATEMENT OF FACTS**

17.     Plaintiff began working for Defendant in 2014.

18.     At all relevant times, Plaintiff worked as a Senior Office Assistant.

19.     Plaintiff suffers from lymphoma.

20.     Defendant was aware of Plaintiff's lymphoma.

21.     Part of Plaintiff's job duties include writing or revising operating procedures as well as maintaining binders that are on the shop floor containing documentation.

22.     Plaintiff performed the majority of her work in an office area which is separate from the shop floor.

23.     Plaintiff not required to be on the shop floor every day as part of her usual duties.

24.     The binders Ms. Cook maintained did not require her daily presence on the floor and there was no reason why she could not perform this task at off-shift times.

25.     Similarly, when Ms. Cook helped to write or revise operating procedures, it was not necessary for her to be on the shop floor to complete this task.

26.     The majority of the time Ms. Cook receives a request from the team leader or supervisor to add a picture or terminology to an existing document or to

create from an existing document.

27. When new compressor types are added to a line, Ms. Cook normally communicates with the team leader, mainly via email, to discuss unique aspects of the new compressor.

28. Ms. Cook can receive information via email, such as pictures and instructions, and can get information from other departments to help with creating or updating documents without her going onto the shop floor.

29. If Ms. Cook requires some information from the shop floor, she can plan when to go.

30. When Ms. Cook previously underwent chemotherapy treatments in October and November 2019, she was not required to go onto the shop floor.

31. In March 2020, Ms. Cook provided Assembly Manager Pamela Bailey with a letter from her Cancer Center advising their patients to follow certain guidelines due to COVID-19.

32. Ms. Cook explained that she wanted to work and that her only request was not to go out onto the crowded shop floor the same way as she previously did when undergoing her infusion treatments.

33. Ms. Bailey approved this accommodation and Ms. Cook continued to work with this accommodation in place.

34. On June 30, 2020, however, Joni Bean, HR Asst. Manager, Ms. Bailey, and Alisette Lott, Supervisor, told Ms. Cook that if she could not go out onto the shop floor and work then she had to clock out and go home.

35. Ms. Cook told them that she was not comfortable going out in the assembly area in the middle of the day when all the employees were there due to her health issues.

36. Ms. Cook explained the accommodation that had previously been put into place for her and that she was still under a physician's care for lymphoma.

37. Ms. Cook also stated that she could perform any shop floor-specific tasks either between shifts when the floor was not as crowded or earlier or later in the day.

38. Ms. Baily and Ms. Lott stated that Ms. Cook had until noon to get a detailed letter from her doctor, or she would have to go home and not return until HR received such a letter.

39. Ms. Cook provided the letter but the HR department refused to return her to work and told her that because her office setting is a crowded / populated area she could not return to work.

40. Ms. Cook asked if she was being furloughed or should apply for unemployment and was told "you're just out."

41. Ms. Cook's physician then provided a second letter in which he recommended that Ms. Cook be allowed the reasonable accommodation of performing her job duties from her office area but not going out onto the shop floor except before start of shift when it was not so crowded and therefore, less of a risk to her compromised immune system.

42. The HR Department continued to second guess Ms. Cook's physician's medical judgment and maintained that Ms. Cook could not come to work because her open office setting was in some way a danger to her.

43. Ms. Cook's office work area was sufficiently separate from the nearest coworker, and she took measures to keep the area sanitized.

44. Further, Ms. Cook had much greater control over access to her work area than she did the shop floor.

45. For example, Ms. Cook had arranged for a separate location away from her workstation where her co-workers would leave documents for her attention.

46. Similarly, Ms. Cook could communicate with co-workers remotely by telephone and also electronically through the internal messaging system.

47. But when Ms. Cook was on the shop floor, she has no choice but to interact with or at least be in the presence of the line workers in that particular part of the shop floor.

48. If Defendant had some concern with Ms. Cook's workspace, there were other locations in the office area to which she could have moved.

49. Ms. Cook suggested that to the extent a need arose on the shop floor during the shift, she could handle the matter without even going onto the shop floor through speaking via telephone or walkie talkie with the employee (and if necessary receiving electronically a photo of the needed part or other item) and taking the necessary steps to resolve the issue.

50. Defendant, however, did not allow Ms. Cook to return to work at that time and she lost income as a result.

51. Following further notes from Ms. Cook's physician, Defendant eventually allowed Ms. Cook to return to work on June 2021.

## COUNT ONE
## DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADAAA – ACTUAL DISABILITY

52. Plaintiff incorporates by references paragraphs 1 through 51 of this Complaint as if stated fully herein.

53. Plaintiff is a qualified individual with a disability. Plaintiff's disability substantially limited one or more major life activities.

54. Nonetheless, Plaintiff was able to perform the essential functions of her job.

8

55. Plaintiff requested a reasonable accommodation from Defendant in the form of modifications of her time on the shop floor during the COVID pandemic.

56. Defendant intentionally discriminated against Plaintiff by subjecting her to adverse employment actions including, but not limited to, denying her requested accommodations and refusing to allow her to return to work for several months.

57. Defendant's denial of accommodation and its refusal to allow Plaintiff to return to work for several months were intentional and willful violations of the ADAAA in violation of Plaintiff's rights thereunder.

58. Plaintiff is entitled to an award of back pay, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the ADAAA.

## COUNT TWO
## DISCRIMINATION IN VIOLATION OF THE ADAAA – REGARDED AS DISABLED

59. Plaintiff incorporates paragraphs 1 through 51 of this Complaint as if stated fully herein.

60. Defendant refused to allow Plaintiff to return to work because it regarded her as being disabled.

61. Defendant's refusal to allow Plaintiff to return to work for several

months was an intentional and willful violation of the ADAAA in violation of Plaintiff's rights thereunder.

62. Plaintiff is entitled to an award of back pay, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief available under the ADAAA.

## COUNT THREE
## RETALIATION IN VIOLATION OF THE ADAAA

63. Plaintiff incorporates paragraphs 1 through 51 of this Complaint as if stated fully herein.

64. Plaintiff is a qualified individual with a disability. Plaintiff's disability substantially limited one or more major life activities.

65. Plaintiff was able to perform the essential functions of her job with Defendant.

66. Plaintiff requested a reasonable accommodation from Defendant in the form of her time on the shop floor.

67. Plaintiff's request for reasonable accommodation constituted protected conduct under the ADAAA.

68. Defendant kept Plaintiff out of work and unpaid for several months in retaliation for her protected conduct of requesting a reasonable accommodation

under the ADAAA.

69. Defendant's action in keeping Plaintiff out of work was an intentional and willful violation of the ADAAA in violation of Plaintiff's rights thereunder.

70. Plaintiff is entitled to an award of back pay, compensatory and punitive damages and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

A. That this Court take jurisdiction of this matter;

B. That process be served on Defendant;

C. That Plaintiff be awarded a declaratory judgment that Defendant violated the ADAAA;

D. That this Court enter a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of the ADAAA;

E. That the Court award Plaintiff back pay and all benefits, privileges, and rights previously denied;

F. That the Court award Plaintiff compensatory damages in an amount to be determined by the trier of fact;

G. That the Court award Plaintiff punitive damages as determined by the

trier of fact;

    H.    That the Court award Plaintiff her costs in this action and reasonable attorneys' fees;

    I.    That the Court grant to Plaintiff the right to have a trial by jury on all issues triable to a jury; and

    J.    That the Court grant such additional relief as the Court deems proper and just.

Respectfully submitted this 18th day of December, 2023.

**BUCKLEY BALA WILSON MEW LLP**

*/s/ Thomas J. Mew IV*
Thomas J. Mew IV
Georgia Bar No. 503447
BUCKLEY BALA WILSON MEW LLP
600 Peachtree Street, NE, Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101
tmew@bbwmlaw.com

*Counsel for Plaintiff*