## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**SHENARA AUSTIN SEXTON, MD**

       **Plaintiff,**

**v.**

**FOREFRONT DERMATOLOGY, P.C.,**

       **Defendant.**

**CIVIL ACTION NO.**

_____

## COMPLAINT

COMES NOW, Plaintiff Shenara Austin Sexton MD, (hereinafter "Dr. Sexton") and hereby and pursuant to Fed. R. Civ. P. 3, files this Complaint under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981, and the Trafficking Victims' Protection Act, 18 U.S.C. §§ 1589 *et. seq.*, and for good cause, shows the Court as follows:

### *Parties and Service of Process*

1.    Forefront Dermatology, P.C. ("Forefront") is a professional service corporation that operates dermatology physician practices across the country, including practices located in Georgia.

2.    Forefront is a foreign professional corporation that maintains its principal place of business at 801 York Street, Manitowoc, Wisconsin.  At all

relevant times, Defendant maintained a Georgia office at 5505 Peachtree Dunwoody Road, Suite 412, Atlanta, Georgia 30342.

3.     Forefront can be served through its registered agent, CT Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046.

4.     Forefront has over 230 offices throughout the nation, including an office in Atlanta, Georgia.

5.     Plaintiff Dr. Sexton is an individual who was employed by Forefront, working out of one of its Georgia offices beginning in October 2021, located at 5505 Peachtree Dunwoody Road, Suite 412, Atlanta, Georgia 30342.  Dr. Sexton resides at 4143 Randall Court NW, Atlanta, Georgia 30327 which is within the Northern District of Georgia.

### *Jurisdiction and Venue*

6.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, 42 U.S.C. § 1981, and the Trafficking Victims' Protection Act, 18 U.S.C. §§ 1589 *et. seq.* provide for civil actions arising out of the laws of the United States.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant operates practices located in Georgia and thus resides in this judicial district.  Venue is also proper because a substantial part of the acts and omissions

giving rise to the claim occurred in this judicial district.

8.     Venue is proper in the United States District Court for the Northern District of Georgia pursuant to 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 1981 because it is the judicial district where Plaintiff worked and where the unlawful employment practices occurred.

9.     This action is timely filed within ninety (90) days after receiving a Right to Sue notice from the Equal Employment Opportunity Commission following the timely filing of a Charge of discrimination with the agency.

10.     Plaintiff has exhausted all administrative remedies that are a prerequisite to bringing this suit.

### *Factual Allegations*

11.     In June 2021, Dr. Sexton executed an Employment Agreement with Forefront.  Dr. Sexton began her employment at Forefront in October 2021 as a board-certified dermatologist.

12.     As a dermatologist, Dr. Sexton's principal duties were to provide medical care to the patients of Forefront in Atlanta, Georgia.

13.     Section 5.2 of the Employment Agreement provides for a so-called "liquidated damages" clause that would require, in the event Dr. Sexton terminated her employment with Forefront prior to the end of the initial term, for her to pay

Forefront $2,500 for every day between her last day working for Forefront and the end of the initial term.

14.   In November 2021, Dr. Sexton and Forefront entered into an Amendment to the Employee Agreement. The Agreement had an Initial Term of three years commencing on October 25, 2021, and ending on October 24, 2024. The Amendment clarified that Dr. Sexton would only work for Forefront 21 hours a week.

15.   In August 2023, nearly two years into her three-year employment term, Dr. Sexton's family situation changed.  Her husband obtained a job in Illinois.  Dr. Sexton's husband and son moved to Illinois, so Dr. Sexton's son could begin school at the beginning of the school year.

16.   Dr. Sexton's husband obtaining a job in another state was unforeseeable and was not an event she planned for or expected when she began her employment with Forefront.

17.   Dr. Sexton notified Dr. Gregory Cox on August 14, 2023 of her changed family circumstances.

18.   Dr. Sexton also notified Dr. Elizabeth Burns on August 16, 2023 of her changed family circumstances.

19.   On August 17, 2023, representatives from Forefront's corporate offices

communicated with Dr. Sexton regarding her discussions with the physicians in the Atlanta office.

20.    Dr. Sexton engaged in communications and correspondence with Forefront's Chief Operating Officer, and later, with its General Counsel, making them aware of her changed family circumstances and her desire to relocate to Chicago to be with her husband and child.

21.    Communications with Forefront officers and directors revealed that Forefront refused to accept Dr. Sexton's attempts to leave her employment in Atlanta, instead requiring that she continue to labor for the company in Atlanta for the remainder of the term of her contract.

22.    Forefront advised Dr. Sexton that they would not discuss a date by which she could move to live with her family other than October 2024.  Instead, they insisted she owed them the duty to remain in servitude to Forefront for the remaining term, or face significant and serious financial consequences.

23.    Dr. Sexton made several different attempts to reach a resolution with Forefront, but each time was met with a demand from Forefront that she had to continue working for it in Atlanta, notwithstanding her family situation.

24.    Dr. Sexton offered to relocate to a Forefront office in Illinois so that she could continue to work for Forefront yet be able to live with her family.  Forefront

refused.

25.     Dr. Sexton offered to continue her employment by flying back to Atlanta from Chicago during her scheduled workdays if Forefront would pay for the expense of her travel.  Forefront refused.

26.     Notably the cost of flying Dr. Sexton back to Atlanta was far less than the "liquidated damages" Forefront has claimed it is incurring.

27.     Forefront proposed that Dr. Sexton misrepresent her employment status to federal Medicare agencies.  Forefront intended to hire *locum tenens* or other temporary staff under the false premise that Dr. Sexton was still employed by Forefront, if she would return and work a half day every 60 days.

28.     Dr. Sexton was concerned that doing so would require her to participate in making a false statement to a federal agency regarding her employment status.

29.     Additionally, this proposal would prevent Dr. Sexton from seeking employment elsewhere because Forefront would be claiming to be her employer for Medicare provider purposes.

30.     Despite concerns about potential Medicare fraud issues, Forefront demanded she acquiesce to their demand to continue laboring for them and to agree to make false statements to federal agencies.

31.     Dr. Sexton communicated several times with Forefront officers and

directors, each time seeking a way for her to join her family in Illinois while minimizing any impact her departure might have on patient care in Atlanta, Georgia.

32.     Forefront refused in every instance to allow Dr. Sexton to leave her employment with Forefront without the threat of a lawsuit against her seeking punitive amounts as a penalty if she left her employment.

33.     Dr. Sexton submitted her Notice of Resignation on August 31, 2023, with an effective date of December 1, 2023, providing Forefront with more than 90-days advance notice of her last day.

34.     In her notice to Forefront, Dr. Sexton agreed to cooperate with Forefront to identify a suitable Physician to fill the position and offered to assist with interviews.

35.     Dr. Sexton also offered to stay employed longer to assist with any transitioning of patient care in the event that Forefront asked her to help with "onboarding" a suitable replacement.

36.     Dr. Sexton expressed her willingness to find a mutually agreeable solution if Forefront would allow her to move to Chicago where her husband and son were located without the threat of financial harm or penalty.

37.     Despite all her efforts, Dr. Sexton was notified by the President of Forefront that Forefront would not accept her resignation.  Forefront demanded she

continue to labor for the company or face significant and serious financial harm.

38.     Forefront threatened and coerced Dr. Sexton to remain employed by claiming she would have to pay the company $2,500 per day in the event she decided to be with her husband and child.

39.     In making these threats, Forefront claimed that Dr. Sexton would have to pay "liquidated damages" penalties for days that she was never going to work for Forefront.

40.     Forefront claimed that Dr. Sexton would have to pay "liquidated damages" penalties for days when Forefront's Atlanta office was not open, did not see patients, and received no revenue.

41.     Forefront threatened to file a lawsuit against Dr. Sexton if she ended her employment.

42.     Forefront's disparate treatment of Dr. Sexton based upon her race and gender were part of a pattern of maintaining a discriminatory environment at the Atlanta office and elsewhere.

43.     In the Atlanta office, Dr. Sexton learned of comments made by the head physician about employees and patients having too many "long braids" that appeared "ghetto," a derogatory comment referencing stereotypes about the hairstyles of African-American women.  As an African-American female physician, Dr. Sexton

was troubled by these comments in the workplace.

44.    Dr. Sexton knew of multiple female employees who left their employment with Forefront because of a perception of a hostile environment, sexual harassment and sex discrimination.

45.    In one instance, Dr. Sexton was made aware of the head male physician yelling at a female employee and punching her in the arm.  Dr. Sexton learned that the employee had reported the incident to Forefront's Human Resources office and had requested not to work with this physician.

46.    Dr. Sexton overheard many comments from female employees identifying examples of sex-based derogatory comments or treatment.  Dr. Sexton knew that the lead male physician was considered to be difficult to work with.  Dr. Sexton knew that Forefront was aware of these issues, but did nothing to correct them.

47.    Dr. Sexton also was routinely assigned fewer medical assistants during her working days, making the conditions of her employment more difficult than those of other similarly situated physicians provided with adequate staffing.

48.    Based on these comments and her own observations of how female and African-American employees were treated, Dr. Sexton knew that Forefront created and tolerated a work environment that devalued female and African-American

employees.

49.     Forefront's tolerance of hostile and discriminatory treatment of females and African-Americans contributed to its decision to sue Dr. Sexton rather than allow her to terminate her employment by mutual agreement.

50.     Forefront's devaluing of female and African-American employees was also evidenced by Forefront complaining to Dr. Sexton, and claiming in its lawsuit against her, that she owed Forefront a unique and unheard of "duty."  Forefront claimed that Dr. Sexton had an obligation to tell the company about her family, including her husband's career decisions and her child's education, before she could make a decision with her family about those issues.

51.     Forefront threatened to sue, and did sue, Dr. Sexton claiming that she owed them financial damages because she did not keep the company informed of personal and private decisions about her family before making them.

52.     Dr. Sexton is not aware of any other employee, including any other physician, employed by Forefront who Forefront has claimed owed it a duty to be apprised of that employee's personal life in advance.

53.     Forefront's lawsuit claiming Dr. Sexton "breached a duty of good faith and fair dealing," by not keeping Forefront informed of her husband and child's career and education choices in advance, placed a discriminatory term and condition

of employment upon Dr. Sexton based on her race and gender.

54.     The decision to sue Dr. Sexton and to treat her differently from other physicians was informed and influenced by Forefront's tolerance of a workplace that was hostile and discriminatory towards females and African-Americans.

55.     On October 10, 2023, Forefront filed a lawsuit against Dr. Sexton in the Eastern District of Wisconsin, a state she had no contacts with, even though the contract required the application of Georgia law.   In that suit, Forefront seeks damages in excess of $820,000 (nearly three times Dr. Sexton's yearly salary) which represents its calculation under the punitive "liquidated damages" clause.

56.     Dr. Sexton was still employed and performing her duties for Forefront when it sued her.

57.     Forefront's goal in filing the lawsuit against Dr. Sexton prior to her last day of employment was to coerce her, through the threat of indebtedness, expense, and harassment, to remain employed and in servitude to Forefront.

58.     Forefront's intent to coerce Dr. Sexton to remain employed was also evident in other proposals it made to her, including the continued use of her Medicare provider number while Forefront used *locum tenens* physicians.   This proposal would have required Dr. Sexton to remain in servitude to Forefront and prohibited her from working as a physician anywhere else in the country.

59.     Other physicians had left employment with Forefront prior to the expiration of the term of their employment agreement.

60.     On information and belief, Forefront has not sued any other employee claiming $820,000 or more in damages solely for attempting to negotiate an amicable termination of employment.

61.     Dr. Sexton is the only African-American physician employed in the Atlanta office.  Dr. Sexton is the only physician to be sued by Forefront in an effort to force her continued involuntary servitude to the company.  Dr. Sexton is the only African-American to be threatened and sued by Forefront.

62.     Dr. Sexton is the only female physician to be sued by Forefront in an effort to force her continued involuntary servitude to the company.

63.     On information and belief, Forefront has had other physicians resign their employment from Forefront.

64.     Forefront has not sued any other physician for damages based upon their leaving employment prior to the end of a designated term of employment.

65.     On information and belief, Forefront has worked with other physicians and reached agreements with them to allow them to terminate their employment with Forefront on mutually agreeable terms.  Forefront was unwilling to offer the same terms and conditions to Dr. Sexton.

66.     Forefront's proffered reasons, if any, for not offering the same terms and conditions to Dr. Sexton as it has offered to other physicians who have left the employment of Forefront are pretextual.

67.     If Forefront's lawsuit were successful against Dr. Sexton, she would be placed in a position of indebtedness to Forefront for more money than Forefront ever paid her for any services she rendered as an employee.

68.     If Forefront's lawsuit succeeds against Dr. Sexton, she will have incurred indebtedness as a consequence of not continuing her involuntary servitude to Forefront.

69.     It was clear to Dr. Sexton she was discriminated against based on her gender (female) and race (African-American) because there were no white persons or males sued by Forefront for similar reasons.

70.     Dr. Sexton filed a Charge of Discrimination with the Equal Employment Opportunity Commission on or about October 25, 2023.  The Charge was timely filed within 180 days of the adverse actions taken against her by Forefront.

71.     On November 16, 2023, Dr. Sexton received a Notice of Right to Sue.

72.     This lawsuit is being filed within ninety (90) days of receiving the Notice of Right to Sue and is thus timely filed.

## COUNT I – TITLE VII DISCRIMINATION ON THE BASIS OF GENDER (FEMALE)

73.     Plaintiff hereby incorporates Paragraphs 1 through 72 as though set forth in full herein.

74.     Defendant discriminated against Dr. Sexton in the terms and conditions of her employment based upon her female gender.

75.     Defendant subjected Dr. Sexton to terms of employment, including but not limited to, suing her for attempting to voluntarily resign, reducing her compensation through claims for damages, and causing her added expense and trouble in her employment different from those of other similarly situated male employee physicians.

76.     Dr. Sexton has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless disregard or other violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended.

77.     Dr. Sexton is entitled to an award of back pay, compensatory damages for economic and noneconomic losses, punitive damages, and her attorneys' fees and costs arising out of Defendant's discriminatory treatment of her.

## COUNT II – TITLE VII DISCRIMINATION ON THE BASIS OF RACE

78.     Plaintiff hereby incorporates Paragraphs 1 through 77 as though set

forth in full herein.

79.     Defendant discriminated against Dr. Sexton in the terms and conditions of her employment based upon her African-American race.

80.     Defendant subjected Dr. Sexton to terms of employment, including but not limited to, suing her for attempting to voluntarily resign, reducing her compensation through claims for damages, and causing her added expense and trouble in her employment different from those of other similarly situated non-African-American physicians.

81.     Dr. Sexton has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless disregard or other violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq,* as amended.

82.     Dr. Sexton is entitled to an award of back pay, compensatory damages for economic and noneconomic losses, punitive damages, and her attorneys' fees and costs arising out of Defendant's discriminatory treatment of her.

## COUNT III EQUAL RIGHTS UNDER THE LAW, DISCRIMINATION ON THE BASIS OF RACE, 42 U.S.C. § 1981

83.     Plaintiff hereby incorporates Paragraphs 1 through 82 as though set forth in full herein.

84.     42 U.S.C. § 1981 prohibits race discrimination in the making,

performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

85.     Defendant intentionally discriminated against Dr. Sexton in the terms and conditions of her employment contract based upon her African-American race.

86.     Defendant subjected Dr. Sexton to terms of employment, including but not limited to, suing her for attempting to voluntarily resign, reducing her compensation through claims for damages, and causing her added expense and trouble in her employment different from those of other similarly situated non-African-American physicians.

87.     Dr. Sexton has been damaged as a direct and proximate result of Defendant's intentional, malicious, willful, wanton, and reckless disregard or other violation of 42 U.S.C. § 1981.

88.     Dr. Sexton is entitled to an award of back pay, compensatory damages for economic and noneconomic losses, punitive damages, and her attorneys' fees and costs arising out of Defendant's discriminatory treatment of her.

## COUNT IV TRAFFICKING VICTIMS' PROTECTION ACT, 18 U.S.C. §§ 1589 *et. seq.*

89.     Plaintiff hereby incorporates Paragraphs 1 through 88 as though set forth in full herein.

90.     The Trafficking Victims Protection Act of 2000, 18 U.S.C. §§ 1859 *et*

*seq.* makes it illegal to use force, threats of serious harm, the abuse of law or legal process, or any other scheme, plan, or pattern intended to cause a person, including Dr. Sexton, to believe that if she did not perform labor or services, she would suffer serious harm.

91.    According to the United States Department of Justice, "Congress enacted § 1589 in response to the Supreme Court's decision in United States v. Kozminski, 487 U.S. 931 (1988), which interpreted § 1584 to require the use or threatened use of physical or legal coercion. Section 1589 broadens the definition of the kinds of coercion that might result in forced labor. https://www.justice.gov/crt/involuntary-servitude-forced-labor-and-sex-trafficking-statutes-enforced.

92.    "Abuse or threatened abuse of law or legal process" is defined in 18 U.S.C. § 1859(c)(1) as the "use or threatened use of law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."

93.    "Serious harm" is defined in 18 U.S.C. § 1859(c)(1) as including "psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same

background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm."

94.     The threat of financial harm by the filing of a lawsuit is the type of harm that constitutes a violation of the TVPA.

95.     Forefront threatened Dr. Sexton with financial harm by threatening to sue her, and actually suing her, for damages in excess of $820,000, nearly three times her annual salary.

96.     The damages sought by Forefront were not reasonable calculations of any potential damages it could have suffered from Dr. Sexton's termination of employment.  The damages sought were intended to punish Dr. Sexton and cause her serious financial harm as a means to coerce her into providing services for Forefront.

97.     Forefront actively demanded Dr. Sexton continue to provide labor and services to Forefront and used the threat of serious financial harm through a lawsuit or other abuse of the legal process as a means to coerce her to continue to provide services to Forefront.

98.     Forefront's coercion and threats were partially successful, as Dr. Sexton agreed to continue working for Forefront for an additional four months after her son and husband had already moved away. Dr. Sexton provided extended labor

to Forefront during this time in an effort to prevent Forefront from threatening to sue her, but Forefront sued her anyway.

99.    Forefront's intent to threaten and coerce Dr. Sexton to remain employed was also evidenced by its decision to sue her for damages in the Eastern District of Wisconsin while she was still employed with Forefront before it ever incurred any damages whatsoever.

100.   Dr. Sexton had no contacts with the Eastern District of Wisconsin. Forefront elected to sue her in that venue with the intent and purpose of causing her additional expense and duress. This was part of its pattern and effort to coerce Dr. Sexton to continue to provide forced services to Forefront in Atlanta, Georgia.

101.   Forefront continued to maintain and prosecute the lawsuit in the Eastern District of Wisconsin even after Dr. Sexton filed pleadings in the court advising Forefront of her belief that its conduct was knowingly coercive in violation of the TVPA.

102.   Forefront's representatives in the Atlanta office and corporate representatives who corresponded with Dr. Sexton knew or should have known that the threatened lawsuit caused Dr. Sexton to fear financial harm.

103.   Forefront's representatives knew or should have known that Forefront's threats to sue her, and the filing of the actual lawsuit, did in fact coerce her to remain

employed with and providing services to Forefront for a period of nearly four months after her husband and son had moved away from Atlanta, and during which time she was separated from her family.

104.   Forefront's representatives knew or should have known that its conduct in threatening and actually filing a lawsuit seeking in excess of $820,000 in damages against Dr. Sexton was a threat of serious harm intended to coerce Dr. Sexton into continuing to provide services to Forefront against her will.

105.   The TVPA provides for injured parties like Dr. Sexton to file a civil action for violations of the Act.  "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees.  18 U.S.C. § 1595(a).

106.   Dr. Sexton suffered damages and attorneys' fees as a direct and proximate consequence of Forefront's conduct in violation of the TVPA.

107.   Dr. Sexton is entitled to an award of damages and attorneys' fees under 18 U.S.C. 1595(a).

**Prayer for Relief**

WHEREFORE, Plaintiff hereby demands a TRIAL BY JURY, judgment against Defendant, and an award of damages in the form of:

(a)     Back pay or other economic employment damages incurred as a consequence of Defendant's discriminatory treatment;

(b)     Compensatory damages, including, but not limited to, economic losses, emotional distress, damage to reputation, loss of enjoyment, damage to reputation, embarrassment, and accrued interest;

(c)     Punitive Damages;

(d)     Attorney's fees and litigation costs;

(e)     Interest; and

(f)     Such other and further relief in equity or law that may pertain.

Respectfully submitted: December 19, 2023.

DELCAMPO GRAYSON LÓPEZ LLC

*/s/ Randall D. Grayson*
RANDALL D. GRAYSON
Georgia Bar No. 306560
J. ANTONIO DELCAMPO
Georgia Bar No. 216815
DAX E. LÓPEZ
Georgia Bar No. 457888

5455 Chamblee Dunwoody Road
Dunwoody, Georgia 30338
(770) 481-0444
(770) 395-0806 FAX
tony@dglattorneys.com
rgrayson@dglattorneys.com
dax@dglattorneys.com
*Attorneys for Plaintiff*