IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CEDRIC BURTON as Administrator | ) | |
| of the Estate of James Merritt Byrd; | ) | |
| JASMAN MAXWELL on behalf of | ) | |
| AKASHIA MAXWELL, a minor child and | ) | |
| LADRIQUA MAXWELL, a minor child; and | ) | |
| AMBER GRIFFIN on behalf of | ) | |
| FAITH GRIFFIN, a minor child, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| TIMOTHY WARD, individually and | ) | _____ |
| in his official capacity as Commissioner, | ) | |
| Georgia Department of Corrections; | ) | |
| VICTOR WALKER, individually and in his | ) | |
| official capacity as Warden of Effingham County | ) | |
| Correctional Institution; | ) | |
| RAYMOND HOLMES, individually and in his | ) | |
| official capacity as Corrections Officer, | ) | |
| Effingham County Correctional Institution; | ) | |
| SHAVONTA BAPTISTE, individually and in her | ) | |
| official capacity as Corrections Officer, | ) | |
| Effingham County Correctional Institution; | ) | |
| ROLAND BROWN, individually; | ) | |
| WELLPATH, LLC; | ) | |
| JOHN DOE 1-5, nurses at Effingham County | ) | |
| Correctional Institution; | ) | |
| DYNAMIC MOBILE DENTISTRY, LLC; RICHARD | ) | |
| LIIPFERT, DDS, and EFFINGHAM COUNTY, | ) | |
| | ) | |
| Defendants. | | |

## COMPLAINT FOR DAMAGES

**COMES NOW** CEDRIC BURTON as the Administrator of the Estate of James Merritt Byrd; JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, by and through undersigned counsel and hereby file this Complaint for damages against the above-named Defendants, and as grounds therefore would allege:

## PARTIES

1.

At all relevant times Mr. James Merritt Byrd was an inmate at Effingham County Correctional Institution ("ECCI"), a correctional facility located in the State of Georgia. A copy of the Letters of Administration is attached hereto as Exhibit A.

2.

Plaintiff Cedric Burton has been appointed as the Administrator of the Estate of James Merritt Byrd by the Probate Court of Hart County, Georgia (Estate of James Merritt Byrd; Estate No. 22ES135). A copy of the Letters of Administration is attached hereto as Exhibit A.

3.

Jasman Maxwell is the mother of Akashia Maxwell and Ladriqua Maxwell. Akashia and Ladriqua are minor children and surviving children of James Merritt Byrd.  Jasman Maxwell is a resident of the State of Georgia.

4.

Amber Griffin is the mother of Faith Griffin. Faith is a minor child and a surviving child of James Merritt Byrd. Amber Griffin is a resident of the State of Georgia.

5.

At all relevant times Timothy Ward was the Commissioner of the Georgia Department of Corrections ("GDC"). In his position as the Commissioner of the GDC, Mr. Ward was responsible for final policy and decision-making authority, including policies relating to healthcare and dental care treatment for inmates, such as Mr. James Byrd. Mr. Ward also exercised control over the personnel who enforced those policies. Mr. Ward had the authority to issue directives concerning the healthcare and dental care treatment of prison inmates. Mr. Ward is being sued in his individual capacity as well as his official capacity as the Commissioner of the Georgia Department of Corrections.

6.

At all relevant times Victor Walker was the Warden of ECCI, GDC. In his position as the Warden of ECCI, GDC, Mr. Walker was responsible for final policy and decision-making authority, including policies relating to healthcare, dental care, and well-being for inmates at ECCI, such as Mr. James Byrd. Mr. Walker also exercised control over the personnel who enforced those policies at ECCI. Mr. Walker had the authority to issue directives concerning healthcare, dental care, and the well-being of prison inmates at ECCI. Mr. Walker is being sued in his individual capacity as well as his official capacity as the Warden at ECCI.

7.

At all relevant times Raymond Holmes was a Corrections Officer at ECCI, Georgia Department of Corrections. Mr. Holmes is being sued in his individual capacity as well as his official capacity as a Corrections Officer at ECCI.

8.

At all relevant times Shavonta Baptiste was a Corrections Officer at ECCI, Georgia Department of Corrections. Ms. Baptiste is being sued in her individual capacity as well as her official capacity as a Corrections Officer at ECCI.

9.

At all relevant times Roland Brown was a medical doctor at ECCI. Mr. Brown was responsible for the medical care of inmates at ECCI, including Mr. James Byrd. Mr. Brown is being sued in his individual capacity.

10.

At all relevant times Wellpath, LLC had a legal contract to provide healthcare services, by and through, its medical assistants, licensed practical nurses, nurse practitioners, physician assistants, and/or physicians, to inmates at ECCI, including Mr. James Byrd. Wellpath, LLC is a foreign corporation with its principal place of business located in Nashville, Tennessee. Wellpath, LLC was and is doing business in Georgia. Its registered agent for service of process is Corporate Creations Network, Inc., 2985 Gordy Parkway, 1st Floor, Fulton County, Marietta, Georgia 30066.

11.

At all relevant times John Doe 1-5 were the nurses, physician assistants, physicians, and/or other health care providers at ECCI who were involved in the care of James Byrd. The true identities of John Doe 1-5 are currently unknown to Plaintiffs, who therefore sue these defendants by fictitious names. Plaintiffs will seek leave to amend this Complaint to show the true name and capacities of these defendants when ascertained.

12.

At all relevant times Dynamic Mobile Dentistry, LLC provided dental care for inmates at ECCI, including Mr. James Byrd. Dynamic Mobile Dentistry, LLC is a domestic corporation with a principal office address in Macon, Georgia.

13.

At all relevant times, Richard B. Liipfert, DDS, was an agent, principal, and/or employee of Dynamic Mobile Dentistry and provided dental care to Plaintiff's Decedent, James Byrd.  His practice address is 111 Grove Point Drive, Macon, Georgia 31210.

14.

At all relevant times Effingham County was a State of Georgia County, a local subdivision of the State of Georgia, and a public corporation. Effingham County operated, maintained, or managed ECCI.

## JURISDICTION AND VENUE

15.

This is a civil action brought for the redress of deprivation of constitutional rights as protected by 42 U.S.C. §1983 and §1988, the Eighth Amendment and Fourteenth Amendment of the United States Constitution, and Georgia law, O.C.G.A §§ 9-33-33 and 51-4-1, this wrongful death action is brought within two years of the date of JAMES BYRD's injury and death and is therefore timely.

16.

This Court has subject matter jurisdiction of this action under 28 U.S.C. §§1331 and 1343 (a)(3) and (4). Moreover, this Court has supplemental jurisdiction under 28 U.S.C. §1367 over the state law claims as they are part of the same case or controversy under Article III of the United States Constitution.

17.

Venue is proper in this Court under 28 U.S.C. §1391(b) because one or more of the defendants, in this case, are located in this district, all but one defendant reside in the State of Georgia, and a substantial part of the events or omissions giving rise to this Complaint occurred in this district.

## **FACTUAL ALLEGATIONS**

18.

At all times material, WELL PATH, LLC and its employees were under contract with the State of Georgia to provide medical care, diagnosis, and treatment to the inmates, including, decent James Byrd, and as such were acting under color of state law in dispensing medical care, diagnosis, and treatment to inmates, including decedent, James Byrd.

19.

Mr. James Byrd, who was an inmate of the ECCI, underwent a Georgia Department of Corrections Dental Screening by an intake dentist.  The Dental

Screening revealed that Mr. Byrd's gingiva was inflamed.  An intra-transfer assessment was performed.  Mr. Byrd's vital signs were within normal limits, he did not verbalize any complaints, and he was alert and oriented.  His COVID testing was negative on transfer to ECCI.

20.

On or about December 14, 2021, a prescription for Amoxicillin and Ibuprofen was prescribed for 7 days.  There is no indication why it was prescribed.

21.

On or about January 6, 2022, Mr. Byrd was seen and treated by Richard Liipfert, DDS of Dynamic Mobile Dentistry, LLC, who performed a tooth extraction of tooth #19.  There are no other reports, or imaging study reports by the dentist regarding the condition of Mr. Byrd's dentition nor was there a treatment plan for post-extraction.

22.

Defendant Liipfert, an agent, employee, and/or principal of Dynamic Mobile Dentistry, LLC, did not provide Mr. Byrd with antibiotics or discharge instructions post tooth extraction nor did he provide written orders for the health care personnel at ECCI.

23.

Upon information and belief, on or about January 14, 2022, Mr. Byrd began asking the corrections officers and medical staff (defendants Holmes, Baptiste, Brown, and/or John Doe 1-5) several times, for medical treatment due to pain in his mouth and feeling ill.

24.

Mr. Byrd was taken to the medical until at ECCI on January 18, 2022, to be evaluated for complaints of an infected tooth socket at the location of his tooth extraction. Mr. Byrd reported to defendants John Doe 1-5 and/or defendant Brown that he had been sick for at least four days, and the health care providers, John Doe 1-5 and/or defendant Brown reported observing foul-smelling white puss drainage at the site of the tooth extraction in Mr. Byrd's mouth.

25.

Despite the complaints Mr. Byrd made to John Doe 1-5 and/or defendant Brown on January 18, 2022, and despite the observations by John Doe 1-5 and/or defendant Brown of the foul-smelling white puss drainage in Mr. Byrd's mouth, Mr. Byrd was ordered to return to his prison cell. The plan was to administer Amoxicillin 500 mg 2 caps by mouth, twice a day, and Ibuprofen 800 mg 1 tablet by mouth, twice a day. Mr. Byrd was instructed to return to the clinic if the symptoms got worse or persisted.

26.

On or about January 19, 2022, Mr. Byrd was again taken to the medical unit at ECCI to see John Doe 1-5 and/or defendant Brown. Mr. Byrd made complaints of nausea, and the inability to eat due to the pain in his mouth, and Mr. Byrd continued to have drainage from the tooth socket. During this visit to the medical unit, Mr. Byrd pleaded with John Doe 1-5 and/or defendant Brown to be sent to the hospital. However, John Doe 1-5 and/or defendant Brown refused Mr. Byrd's request to be transported to the hospital, deeming Mr. Byrd's condition to be "not an emergent issue for the hospital." Mr. Byrd was instructed to start his medication and he was advised that his issue was not emergent, but that Mr. Byrd, who at the time "did not verbalize understanding or agreement" and "displayed anger with the outcome of the visit," was ordered to return to his prison cell.

27.

Mr. Byrd was again taken to the medical unit at ECCI on January 20, 2022, to see John Doe 1-5 and/or defendant Brown; this time Mr. Byrd arrived at the medical unit "slouching" in a wheelchair. Again Mr. Byrd complained of pain at the tooth extraction site. John Doe 1-5 and/or defendant Brown noted Mr. Byrd was "mumbling" and made reports of an inability to "keep food down." John Doe 1-5 and/or defendant Brown observed continued drainage from Mr. Byrd's

mouth. However, despite the objective condition of Mr. Byrd's health rapidly deteriorating, Mr. Byrd was again ordered to return to his prison cell.

28.

On January 21, 2022, John Doe 1-5 and/or defendant Brown received a call from the Deputy Warden at ECCI, asking John Doe 1-5 and/or defendant Brown to check on Mr. Byrd in his prison cell. John Doe 1-5 and/or defendant Brown observed Mr. Byrd "laying on left side in bunk." Mr. Byrd had "purulent drainage coming from [the] socket" of his tooth extraction. Despite continued indications Mr. Byrd's health was rapidly deteriorating, John Doe 1-5 and/or defendant Brown refused to take Mr. Byrd to the hospital.

29.

Defendants Baptiste and Holmes found Mr. Byrd unresponsive inside his prison cell in the segregation unit on the night of January 22, 2022. Mr. Byrd died while in his cell at the segregation unit of ECCI from septicemia, a medical condition well known by medical professionals to be lethal without proper treatment.

30.

The Defendants and their employees, who were present at the prison from January 6, 2022, up and through the time of Mr. Byrd's death on January 23, 2022,

and readily observed and/or became knowledgeable of Mr. James Byrd's severe illness, physical distress, pain and the need for urgent medical care.

31.

The aforementioned Defendants, over an eight (8) day period, willfully ignored James Byrd's pleas for help, assistance, evaluation, and appropriate medical care until it was far too late, despite their direct knowledge of the seriousness of his condition, their direct knowledge that he was in urgent need of emergency medical care and treatment, and their direct knowledge of his severe pain and distress.

32.

Despite James Byrd's obvious severe illness and readily observable symptoms of great physical distress, pain, and need for urgent medical care, said employees of Defendant, WellPath, LLC failed to render any adequate medical care and further failed to transport James Byrd, or cause him to be transported, to an appropriate medical facility.

33.

Under the supervision of defendant Ward, the GDC has an extensive history of well-documented cases of inadequate medical care provided to Georgia inmates.

34.

Under the supervision of defendant Walker, ECCI has an extensive history of well-documented cases of inadequate medical care provided to inmates at ECCI.

35.

Under the ownership and control of defendant Effingham County, ECCI has an extensive history of well-documented cases of inadequate medical care provided to inmates at ECCI.

36.

The willful deprivation of access to reasonably necessary medical care, and the failure to administer reasonable and necessary medical attention to Mr. Byrd by defendants Wellpath, LLC, Richard Liipfert, DDS, Dynamic Mobile Dentistry, LLC, Brown, John Doe 1-5, Baptiste, and Holmes directly led to Mr. Byrd's death by overwhelming sepsis and death due to septicemia, a fully treatable medical condition.

37.

The Rules and Regulations of the State of Georgia provide that "When a person is committed to a correctional institution it becomes the responsibility of the correctional authorities to provide the necessary health care for the inmate." (Rule 125-4-4.01)

38.

Defendants violated the Rules and Regulations of the State of Georgia by failing to provide Mr. Byrd with necessary health care.

39.

The Rules and Regulations of the State of Georgia provide that "All inmates shall receive dental and optical treatment...Such treatment shall be provided irrespective of the length of an inmate's sentence or the proximity of his discharge date." (Rule 125-4-4.07)

40.

Defendants violated the Rules and Regulations of the State of Georgia by failing to provide Mr. Byrd with necessary or adequate dental care.

41.

The Rules and Regulations of the State of Georgia provide that "When an inmate is placed in administrative segregation or disciplinary isolation, security shall notify a member of the medical staff. A licensed health care provider will review the inmates' medical record to determine if the inmate would be medically or mentally harmed by the environment of disciplinary isolation." (Rule 125-4-4.08)

42.

Defendants violated the Rules and Regulations of the State of Georgia by placing Mr. Byrd in the segregation unit without a proper evaluation by a physician to determine if Mr. Byrd would be medically harmed by such isolation.

43.

The Rules and Regulations of the State of Georgia provide that "If any state inmate develops an illness or sustains any injury that requires immediate emergency attention, the Warden/Superintendent shall arrange to provide that attention immediately at the nearest facility." (Rule 125-4-4.10)

44.

Defendants violated the Rules and Regulations of the State of Georgia by failing to arrange to provide immediate medical attention for Mr. Byrd.

45.

The Georgia Department of Corrections Standard Operating Procedures ("GDOC SOP") provides that "Emergency services will be made available twenty-four (24) hours a day, seven (7) days a week at all facilities for medical, dental, and mental health conditions." (GDOC SOP 507.04.27(I))

46.

Defendants violated GDOC SPO by failing to provide Mr. Byrd with emergency medical and/or dental services.

47.

The GDOC SOP provides that "When the offender returns to the facility following transportation for an urgent/emergent event, a nurse practitioner, Physician's assistant, or Physician will evaluate them the next working day for follow-up care. The follow-up encounter will be documented on a progress note in the health record. (GDOC SOP 507.04.37(IV)(I)(1))

48.

Defendants violated GDOC SOP by failing to have a qualified medical provider evaluate Mr. Byrd following his return to ECCI after his tooth extraction.

49.

The GDOC SOP provides that "Health care staff will monitor the health of offenders who are placed in restrictive housing." (GDOC SOP 507.04.33(I))

50.

Defendants violated GDOC SOP by failing to have health care staff monitor Mr. Byrd's health while in the segregation unit at ECCI.

51.

The Georgia Department of Corrections has been subject to numerous investigations and legal actions involving inadequate medical care provided to Georgia inmates.

52.

Defendants' failure to address long-standing inadequate medical treatment for Georgia inmates represents deliberate indifference to the constitutional rights and procedural rights of Georgia inmates.

53.

Defendants willfully ignored James Byrd's pleas for help, assistance, and proper medical care until it was far too late, despite their direct knowledge of the seriousness of providing his condition, their direct knowledge that he was in urgent need of emergency medical care and treatment, and their direct knowledge of his agonizing pain and distress.

54.

Defendants willfully ignored and failed to follow the Rules and Regulations of the State of Georgia and GDOC SOP and directly caused or contributed to Mr. James Merritt Byrd's death.

## **COUNT 1: VIOLATION OF EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983**

55.

The Eighth Amendment of the United States Constitution prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. Included in the prohibition against cruel and unusual punishments is the right to be free from a known and

substantial risk of serious harm while in the custody of the State, and the provision for adequate treatment for a serious medical need while in the custody of the State.

56.

Defendants Walker, Holmes, Baptiste, Brown, Wellpath, Richard Liipfert, DDS, Dynamic Mobile Dentistry, Effingham County, and John Doe 1-5 were aware of Mr. Byrd's complaints of severe pain in his tooth socket and mouth, and the malodorous purulent white puss, which was indicative of a potentially life-threatening infection, presented a well-known and substantial risk of serious harm to Mr. Byrd, and required adequate medical evaluation, care and treatment from a competent and trained health care provider.   Contrarily, the Defendants deprived Mr. Byrd of proper medical care, intravenous fluids and antibiotics, laboratory testing, and an emergent transport to a higher level of care at a hospital, which was also in direct violation of established policies of the State of Georgia and the Department of Corrections.

57.

These Defendants were aware or should have been aware of Mr. Byrd's urgent medical condition but isolated him by placing him in the segregation unit at ECCI.

58.

The Defendants' failure or willful disregard for following procedures and policies regarding inmate healthcare in accordance with the policies and procedures of the State of Georgia and the Department of Corrections directly or proximately caused the death of Mr. Byrd.

59.

Defendants Walker, Holmes, Baptiste, and Effingham County acted under the color of state law when they refused Mr. Byrd necessary and life-saving healthcare.

60.

Defendants' (Ward, Walker, and Effingham County) policies, acts, and omissions under the color of law constituted deliberate indifference to a serious risk of harm to Mr. Byrd and constitute clearly established violations of the Cruel and Unusual Punishments clause of the Eighth Amendment, made applicable to the States through the Fourteenth Amendment of the United States Constitution. As a proximate result of the Defendants' illegal and unconstitutional acts and omissions, Mr. Byrd was left without adequate healthcare and died as a result.

61.

These Defendants acted with deliberate indifference to the safety of Mr. Byrd. As a consequence, Mr. Byrd was incarcerated under conditions posing a significant risk of harm.

62.

The above-described actions and omissions were deliberate and in reckless disregard of the constitutional rights of Mr. Byrd. These Defendants' conduct warrants an award of punitive damages in an amount to be determined at trial.

63.

These Defendants' deliberate policies, practices, acts, and omissions created conditions in which Mr. Byrd's death was foreseeable. As such, the Plaintiffs are entitled to an award in an amount of the full value of the life of Mr. Byrd.

## COUNT 2: STATE LAW CLAIM: NEGLIGENCE

64.

Under Georgia law, "In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances…The absence of such diligence is termed ordinary negligence." O.C.G.A. §51-1-2.

65.

All Defendants knew or should have known Mr. Byrd's complaints of severe pain in his tooth socket and mouth, and the infection symptoms in his mouth, represented a known and substantial risk of serious harm to Mr. Byrd, and represented the need for adequate medical treatment.

66.

Despite this knowledge, and despite Mr. Byrd's repeated pleas to be taken to the hospital, Defendants refused to send Mr. Byrd to the hospital.

67.

Defendants' negligence, to wit: refusal to take or transport Mr. Byrd to the hospital despite very objective signs of Mr. Byrd's health rapidly deteriorating, proximately led to Mr. Byrd's pain and suffering and eventual death.

68.

Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

69.

Thus, Plaintiffs are entitled to an award of special, general, and punitive damages against these Defendants.

## COUNT 3: STATE LAW CLAIM: BREACH OF LEGAL DUTY

70.

Plaintiffs, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-69, and further allege:

71.

Under Georgia law, "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

72.

Georgia law required Defendants to provide necessary healthcare to Mr. Byrd; Georgia law also required Defendants, specifically Defendant Walker, to arrange to provide emergency healthcare treatment immediately at the nearest facility for Mr. Byrd.

73.

Defendants failed to and/or willfully refused to provide necessary healthcare to Mr. Byrd and willfully refused to transport Mr. Byrd to the nearest healthcare facility.

74.

Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

75.

Thus, Plaintiffs are entitled to an award of special, general, and punitive damages against these Defendants.

## <u>COUNT 4: STATE LAW CLAIM:</u><br><u>WRONGFUL DEATH AND SURVIVAL DAMAGES</u>

76.

Plaintiff, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-75, further alleges:

77.

Under Georgia law the surviving children of Mr. James Byrd can recover from Defendants, for the homicide of Mr. Byrd, the full value of the life of Mr. Byrd.

78.

Defendants are liable for the death of Mr. Byrd due to the negligent acts or failure to act as described herein.

79.

The surviving children of Mr. Byrd are entitled to recover from Defendants the full value of the life of Mr. Byrd, as determined by the enlightened conscience of a fair and impartial jury.

80.

The Plaintiffs are entitled to recover the following damages from all Defendants:

a. General compensatory damages for the full value of JAMES MERRITT BYRD's life, inclusive of personal injuries and physical, mental, and emotional pain and suffering proximately caused by the Defendants herein described negligence.

b. Special damages for the pain and suffering of JAMES MERRITT BYRD before his death, and for the medical, funeral, and burial

expenses incurred by the Estate as a result of the injuries and death of JAMES MERRITT BYRD, as described in this Complaint and proximately caused by the Defendants willful and deliberate indifference, deprivation of rights, negligence and gross negligence.

## COUNT V: MEDICAL NEGLIGENCE OF JOHN DOE 1-5

81.

Plaintiff, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-80, further alleges:

82.

Defendant, WELLPATH, LLC, employed physicians, physician assistants, dentists, licensed practical and registered nurses, and other health care providers, herein identified as JOHN DOES 1-5, to provide medical care and treatment to inmates at Effingham County Correctional Institution.

83.

Defendants, JOHN DOE 1-5, knew or should have known that JAMES MERRITT BYRD's medical condition warranted urgent dental and/or medical attention, the transfer to a medical facility for further evaluation and treatment by

a medical practitioner, and that his condition necessitated the administration of intravenous broad-spectrum antibiotics.

84.

Defendants JOHN DOES 1-5, failed to properly document medical chart entries, and failed to document a comprehensive re-assessment of JAMES MERRITT BYRD.

85.

If Defendants JOHN DOE 1-5, had timely notified either a dental or medical professional of JAMES MERRITT BYRD's condition, requested evaluation by a dental and medical professional, and requested that he be transferred to a medical facility for further medical treatment, JAMES MERRITT BYRD's condition would not have progressed to septicemia and eventually his death as described herein.

86.

Defendant JOHN DOE 1-5 was grossly negligent in failing to recognize that JAMES MERRITT BYRD's continued pleas for medical intervention, the observance of foul-smelling white exudate coming from the extracted tooth socket and his inability to swallow oral antibiotics was a medical emergency that required urgent medical attention and transfer to a medical facility.

87.

Defendant JOHN DOE 1-5, acts and omissions as described herein, was grossly negligent and a deviation from the applicable standard of care generally required of physicians, physician assistants, registered and licensed practical nurses, and other health care professionals under the same conditions and like surrounding circumstances.

88.

Defendant JOHN DOE 1-5 above-described gross negligence and deviations from the applicable standards of care to a reasonable degree of medical and nursing probability, directly or proximately, caused severe and permanent injuries to JAMES MERRITT BYRD and proximately caused his death on January 23, 2022.

89.

As a direct and proximate result of his injuries described herein, JAMES MERRITT BYRD, endured substantial pain and suffering and death.

90.

As a direct and proximate result of MR. BYRD'S death, Plaintiffs are entitled to recovery for the full value of JAMES MERRITT BYRD'S life.

91.

As a direct and proximate result of JAMES MERRITT BYRD's death, Plaintiffs are entitled to recover all damages allowed by Georgia law.

92.

As a result of the above-referenced facts, the Defendants (JOHN DOE 1-5) are liable to Plaintiffs for the Estate and Survivors claims for JAMES MERRITT BYRD's injuries, pain and suffering, medical, funeral, and burial expenses, and all other damages allowed by law.

## VI. VICARIOUS LIABILITY
## WELLPATH, LLC

93.

Plaintiff, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-92, further alleges:

94.

Based on the employment and/or agency relationship as alleged herein, Defendant, WELLPATH, LLC, is vicariously liable for the grossly negligent acts of its physicians, physician assistants, dentists, licensed practical and registered nurses, and other health care providers, herein identified as JOHN DOES 1-5, who were involved in JAMES MERRITT BYRD's medical care from January 14, 2022, through January 23, 2022.

95.

Within a reasonable degree of medical certainty and/or probability, and as a direct and proximate result of the negligence of Defendant JOHN DOE 1-5, for whom negligence, Defendant WELLPATH, LLC, is vicariously liable, JAMES MERRITT BYRD died.

96.

As a direct and proximate result of the above-referenced gross negligence and vicarious liability, the estate of the decedent, JAMES MERRITT BYRD, as well as the decedent's surviving children have suffered damages as stated herein in paragraphs 93-95.

## COUNT VII.   NEGLIGENCE OF RICHARD LIIPFERT, DDS

97.

Plaintiff, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-96, further alleges:

98.

Defendant LIIPFERT, DDS, was contracted to provide dental care and treatment to inmates at the Georgia Department of Corrections, Effingham County Correctional Institution.

99.

Defendant, LIIPFERT, DDS, was required by the standard of care to fully document the dental examination and provide post-extraction instructions on the evaluation and follow-up plan for potential complications that were likely to occur to the extracted tooth.

100.

If Defendant, LIIPFERT, DDS, had properly documented the dental examination findings and prescribed post-extraction instructions and/or orders as required by the applicable standard of care, JAMES MERRITT BYRD, would not have suffered sepsis and septicemia as a result of the infected tooth pocket, and subsequently his death as described herein.

101.

Defendant, LIIPFERT, DDS, negligently failed to document his pertinent findings and failed to prescribe post-extraction instructions and/or orders, and as a result of the aforementioned failures, JAMES MERRITT BYRD, did not receive

appropriate and timely medical intervention, suffered sepsis, septicemia and subsequently his death.

102.

Defendant, LIIPFERT, DDS, acts and omissions as described herein, were negligent and a deviation from the applicable standard of care generally required of a dentist under the same conditions and like surrounding circumstances.

103.

Defendant, LIIPFERT, DDS's above-described negligence and deviations from the applicable standard of care to a reasonable degree of dental probability, directly caused or contributed to, the severe and permanent injuries sustained by JAMES MERRITT BYRD, including his death on January 23, 2022.

104.

As a direct and proximate result of his injuries described herein, JAMES MERRITT BYRD, endured substantial pain and suffering, death and funeral expenses.

105.

As a direct and proximate result of JAMES MERRITT BYRD's death, Plaintiffs are entitled to recovery for the full value of JAMES MERRITT BYRD's life.

106.

As a direct and proximate result of JAMES MERRITT BYRD's death, Plaintiffs are entitled to recovery all other damages allowed by law.

107.

All of JAMES MERRITT BYRD's injuries and his death and all damages flowing from those injuries were proximately caused by the negligence and deviations from the applicable standard of care of Defendant, LIIPFERT, DDS.

108.

As a result of the above-referenced facts, the Defendants are liable to the Plaintiffs for the Estate's claims for JAMES MERRITT BYRD, his injuries, pain and suffering, medical and funeral expenses and all other damages allowed by law.

## COUNT VIII.  VICARIOUS LIABILITY
## DYNAMIC MOBILE DENTISTRY, LLC

109.

Plaintiff, CEDRIC BURTON, as Administrator of the Estate of JAMES MERRITT BYRD, deceased, JASMAN MAXWELL on behalf of AKASHIA MAXWELL, a minor child, and LADRIQUA MAXWELL, a minor child; and AMBER GRIFFIN on behalf of FAITH GRIFFIN, a minor child, adopt and re-alleges paragraphs 1-108 and further alleges:

110.

Based on the employment and/or agency relationship as alleged herein, Defendant, DYNAMIC MOBILE DENTISTRY, LLC, is vicariously liable for the grossly negligent acts of its dentists and other health care providers, including but not limited to RICHARD LIIPFERT, DDS, who was involved in JAMES MERRITT BYRD's dental care on or about January 6, 2022.

111.

Within a reasonable degree of dental certainty and/or probability, and as a direct and proximate result of the negligence of Defendant RICHARD LIIPFERT, DDS, for whom negligence, Defendant DYNAMIC MOBILE DENTISTRY, LLC, is vicariously liable, JAMES MERRITT BYRD died.

112.

As a direct and proximate result of the above-referenced negligence and vicarious liability, the estate of the decedent, JAMES MERRITT BYRD, as well as the decedent's surviving children have suffered damages as stated herein.

**AFFIDAVIT OF EXPERTS COMPETENT TO TESTIFY**

113.

This case involves allegations of professional malpractice which may require the filing of an expert affidavit pursuant to O. C. G.A. §9-11-9.1. Accordingly, pursuant to O.C.G.A. §9-11-9.1, Plaintiffs have filed with this

Complaint expert affidavits executed by RASHONDIA WILLIAMS GAINES, DDS, MS, and MICHAEL MCMUNN, DNP, CCHP-A.  The affidavits are attached hereto as Exhibit B and C, respectively.  The affidavits allege at least one negligent act or omission for which the health care professional Defendants are liable, and which proximately caused or contributed to the injuries and death complained of in this Complaint.

## EXPENSES OF LITIGATION

### 114.

Plaintiffs specifically re-assert and incorporate by reference each and every allegation contained in paragraphs 1-113 above as if fully set forth herein.

### 115.

Defendants have acted in bad faith and have caused Plaintiffs to suffer unnecessary trouble and expenses.  Plaintiffs are, therefore, entitled to recovery from Defendants all expenses of litigation, including attorney's fees, costs and expenses pursuant to O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

### 116.

Based on the foregoing Complaint, Plaintiffs respectfully request the following relief:

   a.  That the Court assume jurisdiction over this action;

34

b. That Defendants answer this Complaint;

c. That Plaintiffs have a trial by jury;

d. Declare the acts and omissions described herein violated Plaintiffs' rights under the United States Constitution and laws of the United States and the State of Georgia;

e. That the Plaintiffs recover damages from all Defendants to compensate them for all damages allowed by law, including but not limited to:

    a. The full value of Mr. Byrd's life

    b. Physical, mental, and emotional pain and suffering endured by JAMES MERRITT BYRD;

    c. Nominal damages;

    d. Funeral and Burial expenses;

    e. Punitive damages;

    f. That Plaintiffs recover general and special damages for their mental pain and suffering;

    g. That all costs be cast against the Defendants;

    h. That Plaintiffs recover such other and further relief as the Court shall deem just and appropriate; and

i.   That Plaintiffs the cost of this lawsuit and reasonable attorney's and expert fees expenses pursuant to 42 U.S.C. §1988 (b) & (c) and as otherwise allowed by law.

Undersigned counsel, in accordance with L.R. 5.1(c), hereby certifies that the type of font used herein is 13-point Book Antiqua.

Respectfully submitted this 19th day of December 2023.

/s/ William Arnold_____
**William Arnold, Esquire**
Georgia Bar No.
The Arnold Law Firm, LLC
6440 Old Hillandale Drive, Ste 106
Stonecrest, GA 30058
Ofc:404-692-5251
Fax: 404-573-4899
Email:will@thearnoldlawfirm.com

-and-

/s/ Timothy Raimey_____
**Timothy Raimey, Esquire**
Georgia Bar No. 957293
Raimey Law Firm
4500 Hugh Howell Road, Ste 620D
Tucker, GA 30084
Ofc:404-729-7586
Email:tj@raimeylaw.com

-and-

/s/ Phyllis M. Gillespie_____
**Phyllis M. Gillespie, Esquire**
Gillespie Law Firm
Florida Bar No. 0130801
Tennessee Bar No. 018409

1 SE Ocean Blvd
Stuart, FL 34994
Ofc: 772-238-6388
Fax: 772-783-1007
Email: phyllis@gillespielawfirm.net
Pending Pro Hac Vice Admission

**Attorneys for Plaintiffs**



**EXHIBIT A**

IN THE PROBATE COURT OF _____ HART _____ COUNTY
**STATE OF GEORGIA**

IN RE: ESTATE OF ⁣        )
                                        )
**James Merritt Byrd** _____ ,        )        **ESTATE NO.** 22ES135
**DECEASED**                           )

### LETTERS OF ADMINISTRATION
*[Bond waived and/or certain powers granted]*

At a regular term of probate court, this Court granted an order allowing Cedric Burton _____ to qualify as administrator(s) of the above-named decedent, who was domiciled in this county at the time of his or her death or was domiciled in another state but owned property in this county at the time of his or her death, and that upon so doing, letters of administration be issued to such personal representative(s).

THEREFORE, the said administrator(s), having taken the oath of office and complied with all necessary prerequisites of the law, is/are legally authorized to discharge all the duties and exercise all powers of personal representative(s), according to Georgia law. In addition this Court:

*[Initial all that apply]*

*UNRL* (a) **POWERS GRANTED**: Grants to the administrator(s) all of the powers contained in O.C.G.A. § 53-12-261, except the administrator(s) shall not be authorized to bind the estate by any warranty in any conveyance or contract in violation of O.C.G.A. § 53-8-14 (a).

*UNRL* (b) **REPORTS WAIVED**: Grants to the administrator(s) the specific power to serve without making and filing inventory, and without filing any annual or other returns or reports to any court.

*UNRL* (c) **BOND WAIVED**: Waives the specific requirement to post bond.

*UNRL* (d) **STATEMENTS WAIVED**: Grants to the administrator(s) the specific power to serve without furnishing to the heirs statements of receipts and disbursements.

IN TESTIMONY WHEREOF, I have hereunto affixed my signature as judge of the probate court of said county and the seal of this office this 21ˢᵗ day of September , 2022 .

_____
Judge of the Probate Court

*The following must be signed if the judge does not sign the original of this document:*

Issued by:                                   *[Seal]*

_____
Clerk of the Probate Court

GPCSF 3                          [12]                          Eff. July 2021

IN THE STATE COURT OF EFFINGHAM COUNTY
STATE OF GEORGIA

CEDRICK BURTON, as the Administrator
Of the Estate of JAMES MERRITT BYRD,
Deceased,



**EXPERT AFFIDAVIT OF RASHONDIA GAINES, DDS, MS**

**GEORGIA DEPARTMENT OF CORRECTIONS, EFFINGHAM COUNTY PRISON,
WELLPATH GROUP HOLDINGS, LLC, and its affiliates, and healthcare providers at
EFFINGHAM COUNTY PRISON, DYNAMIC MOBILE DENTISTRY
and RICHARD B. LIIPERT, DDS**

Personally appeared before the undersigned authority RASHONDIA GAINES, DDS, MS

who after first having been duly sworn, does now depose and state under oath the following based

upon her own personal knowledge:

1.

My name is Dr. Rashondia Williams Gaines.   This affidavit is executed for the purpose of

setting forth at least one negligent act or omission of Dr. Richard Liipert and the nursing staff at the

Georgia Department of Corrections at Effingham Correctional Facility and other medical healthcare

providers working at the prison on or about January 6, and 15-22, 2021. It is not intended to be an

exhaustive recitation of my opinions relating to the care and treatment of James Byrd.  I understand

that this affidavit will be used in connection with a Complaint to be filed against Dr. Liipert and the

nursing staff at the Georgia Department of Corrections Effingham County Prison, the professional

nursing staff of Wellpath, Wellpath Group Holdings, LLC, and its affiliates, and other medical

healthcare providers working at the correctional facility based upon the negligent care provided to

James Byrd for the dental and medical illness that began on or about January 6, 2021, and ended with

his death on January 22, 2021.

1

2.

I am a dentist duly licensed to practice dentistry in the state of Florida. I have been continuously licensed in Florida since 1999 to the present and have actively practiced dentistry since 1999. I earned my undergraduate degree, a bachelor's in chemistry at Hampton University in 1994, a Doctor of Dental Surgery degree from Virginia Commonwealth University (VCU/MCV) Medical College of Virginia in 1998, certification in Advanced Education in General Dentistry from the University of Missouri-Kansas City in 1999 and a Master of Science in Medical Education from Nova Southeastern University in 2013. I currently hold the following professional positions:

Clinical Associate Professor at Nova Southeastern University Health Professions Division, College of Dental Medicine; Director of Clinic Prerequisite Orientation at Nova Southeastern University, Health Professions Division, College of Dental Medicine; Director of Predoctoral Clinic, NSU, Health Professions Division, College of Dental Medicine; Director of Evening Clinic, NSU, Health Professions Division, College of Dental Medicine; Director of Dental Auxiliary Utilization Rotation Course, NSU, Health Professions Division, College of Dental Medicine; Team Leader for Pre-Doc Clinic Davie Clinic, NSU, Health Professions Division, College of Dental Medicine; and Director of Faculty Practice, NSU, Health Professions Division, College of Dental Medicine.

3.

I have been licensed by the Florida State Board of Dentistry since 1999.

4.

I have worked as a dentist for over 20 years. At the time of the negligent acts and omissions described in this affidavit (January 6, and 15-22, 2021, I was licensed to practice dentistry in the state of Florida and have been actively practicing as a dentist and as an associate professor in the field of

2

dental medicine. For the entire five-year period immediately preceding January 15, 2021, and for many years before that, I was actively practicing dental medicine on a full-time basis and, in that role, frequently and regularly performed dental history and examinations, rendered dental care and treatment, supervised dental healthcare professionals and students in the management of patients with dental caries, abscesses formation, and infections. In the five-year period preceding January 6, 2021, I performed and supervised the performance of, dental assessments and the assessment of patients with symptoms such as James Byrd, similar to the assessments and interventions performed by the healthcare providers who rendered care to James Byrd, including but not limited to, Richard B. Liipfert, DDS, M. Mattis, LPN, Steven Finderson, PA-C, Mary G., and others starting on or about January 6, 2021 and January 15-22, 2021. Additionally, in the five-year period preceding January 6, 2021, and January 15-22, 2021, I provided dental care and treatment to patients like James Byrd on a routine basis, making decisions regarding the management of dental caries sepsis, nausea, malaise, and the management of antibiotic medications, including the determination of the course of treatment and referral to the hospital for further medical management.

5.

I have attached hereto, and incorporate by reference, a true and correct copy of my Curriculum Vitae, which more fully and completely outlines my education, background, training, experience, and qualifications, See Exhibit 1.

6.

As a result of my education and experience outlined above, specifically including my practice as a dentist and as an associate professor, and my experience in supervising, instructing, diagnosing, treating, and monitoring patients with signs and symptoms of dental sepsis, I have knowledge of the

standard of care required of healthcare practitioners who manage patients with dental caries, extractions and dental infection with respect to all of the issues addressed in this affidavit, including knowledge of the standard of care that was required of the healthcare practitioners as well as other support staff at Effingham County Prison/Correctional Facility(ECP), with respect to the care and treatment of James Byrd on January 6, 2021, and between January 15, 2021, up through his death on January 23, 2021.

7.

I have reviewed, and incorporated herein by reference, James Byrd's medical records, pertaining to incarceration at Effingham County Prison Facility. I have also reviewed James Byrd's death certificate, autopsy report, and the ante litem notice of claim. These documents herein by reference.

8.

On or about November 17, 2021, James Byrd underwent a Georgia Department of Corrections Dental Screening by an intake dentist. It is documented on the Dental Screening Examination Treatment Plan and Record that Mr. Byrd's gingiva was inflamed. On or about November 24, 2021, Mr. Byrd was transferred to ECP. An intra-transfer assessment was performed. Mr. Byrd's vital signs were recorded as 1BP 24/78, HR 61, RR 18, and Temp 98.8. It was documented that Mr. Byrd was alert and oriented and did not verbalize any complaints. His COVID testing was negative on transfer to ECP.

On or about December 14, 2021, a prescription for Amoxicillin 500mg 2 tablets for 10 days and Ibuprofen 800mg 2 tablets for 7 days per verbal order of Roland Brown, MD. There is no medical or nursing note regarding the purpose of said prescription. There is no indication in the medical chart that the above-prescribed medication was dispensed to Mr. Byrd.

4

On or about January 6, 2022, Mr. Byrd was seen and treated by Richard B. Liipfert, DDS (identified as RBL) in the medical chart from Dynamic Mobile Dentistry.   An extraction of tooth #19 was performed. There are no other reports or imaging study reports by the dentist regarding the condition of Mr. Byrd's dentition or a treatment plan for post-extraction.

Upon information and belief, on or about January 15, 2022, family members of James Byrd contacted EFP and spoke with Mr. Byrd and a prison official and/or staff member.  During the call, the official/staff member acknowledged seeing that Mr. Byrd was in obvious pain and the area of the extraction was inflamed and possibly infected.  The same prison official/staff member informed the family that the next day was a holiday, Martin Luther King Day, Mr. Byrd would have to be transported on the following business day January 18, 2022.  Mr. Byrd was diagnosed with COVID-19 and thereafter, placed in an isolated holding cell in quarantine.

On or about January 18, 2022, Mr. Byrd was seen for a medical evaluation.  He complained that the tooth that was pulled "is infected" and that he had been sick for 4 days.  That assessment revealed:

"lower left molar was removed at the dentist visit on January 6, 2022.  Socket has white pasty drainage, foul smell from patient's mouth, no swelling noted, painful per inmate."

The plan was to administer Amoxicillin 500mg 2 caps PO BID for 7 days and Ibuprofen 800mg 1 tab PO BID x 7 days per verbal order from Robert Donovan.  Mr. Byrd was instructed to return to the clinic if the symptoms got worse or persisted.   There is no signature by the prison personnel who performed the above assessment.

On or about January 19, 2021, at approximately 18:15 (6:15 PM), an officer reported that Mr. Byrd complained of nausea.   At the clinic, Mr. Byrd reported that he wanted to go to the hospital.  Mr. Byrd complained that he could not eat due to tooth pain.  The officer reported that Mr.

Byrd had been eating various soft foods.  The medical provider documented that the area of concern, lower left, continues to have drainage.  The medical provider noted that Mr. Byrd was seen on January 18, 2022, and that the medications ordered arrived today.  The provider noted that she/he instructed Mr. Byrd that he must start his medication and that his issue was not emergent and required hospitalization.  She/he noted that Mr. Byrd did not verbalize understanding or agreement and that he displayed anger with the outcome of the visit.  The provider instructed Mr. Byrd to rinse with warm water and to notify medical if the symptoms persisted.

On or about January 20, 2022, Mr. Byrd had a medical visit.  He was brought to the clinic in a wheelchair and had a complaint of pain from the dental extraction and nausea and vomiting.  The patient was observed to be slouching in the wheelchair. His oxygen saturation was 99% and his pulse of 77.   The written objective assessment noted that Mr. Byrd's lungs were clear to auscultation, that he was mumbling when talking, denies shortness of breath but was unable to keep food down, only fruit.  It was noted that he did have drainage from the tooth socket.  The provider's plan was to give a COVID test, which returned positive.  The provider encouraged Mr. Byrd to notify 'medical' with shortness of breath.

On or about January 21, 2022, at 10:50 AM, medical noted that a call was received from security that the Deputy Warden requested the inmate to be checked out.  It was documented that upon entering the cell, the patient was lying on his left side in the bunk bed.

His BP was 124/79, Pulse 86, and respirations 23.  His temperature was 97.4.  Mr. Byrd reported that he didn't feel good again.  The medical record stated that Mr. Byrd tested positive for COVID-19 on 1/20/22.  "Patient has no signs of Covid other than not feeling good."  An assessment was performed.  The medical provider noted that Mr. Byrd was placed on Amoxicillin and Ibuprofen on 11/18/22 for a dental infection from tooth extraction on 1/6/22.

6

"Upon examination socket still has purulent drainage coming from socket, no redness or swelling. Patient is not taking antibiotics as prescribed. Has only taken 1000mg of antibiotics since dispensed. Patient eating and drinking Gatorade."

"Patient encouraged to take antibiotics as prescribed. Patient encouraged to notify medical or security should he experience any SOB, Fever, N/V or any other symptoms. Patient indicates understanding will continue to monitor."

On or about January 23, 2022, Byrd was apparently, found dead in his cell.

On January 26, Dr. John Hiserodt performed a forensic pathological examination which revealed that Mr. Byrd died because of septicemia (blood infection) following a tooth extraction for an associated abscess.

9.

Based upon my review of the above-referenced medical records, autopsy report, and the ante litem notice of claim letter, and based upon my education, training, experience, and knowledge outlined in this affidavit, it is my opinion to a reasonable dental and medical probability that the standard of care required Dr. Liipert to document a full dental examination and provide post-extraction instructions on the evaluation and follow-up plan for potential complications that were likely to occur to the extracted tooth; and required the Georgia Department of Corrections and Effingham County Prison's, Wellpath's, and Wellpath Group Holdings, LLC's health care providers (nurses and licensed practical nurses), many of whom names or illegible, including but not limited to, Steven Finderson, PA-C, Mary G., and others, to appreciate that Mr. Byrd's condition required immediate dental and/or medical attention, the transfer to a medical facility for further evaluation and treatment by a medical doctor or dentist and that his condition necessitated the administration of intravenous broad-spectrum antibiotics. Further, the healthcare providers failed to properly document

7

the times of chart entries, failed to make complete entries in the medical chart, and failed to document a comprehensive reassessment of Mr. Byrd on January 21, 2022.   It is my opinion to a reasonable degree of dental and medical probability that the above-referenced healthcare providers were grossly negligent and deviated from the applicable standard of care by failing to have Mr. Byrd evaluated by a medical professional in a timely manner.   It is my opinion to a reasonable degree of dental and medical probability that the negligence and deviations from the applicable standards of care described above resulted in James Byrd's pain and suffering and subsequently his death on January 23, 2022.

10.

I hold the opinions set forth above to a reasonable degree of dental and medical probability. This affidavit is given pursuant to OCGA § 9-11-9.1 for the purposes of setting forth at least one act of negligence by the referenced defendants.   It is not intended to be an exhaustive listing of all the opinions I hold.   I reserve the right to amend or add to the opinions that are referenced herein upon learning additional or different facts.

This _25_ day of _October_ , 2023.

Rashondia W Gaines

Rashondia Williams Gaines, DDS, MS

Sworn to and subscribed before me
this _25_ day of _October_, 2023.

Tatjana S. Gress
Notary Public
My Commission Expires: _May 4, 2026_



TATJANA S. GRESS
Notary Public - State of Florida
Commission # HH 260001
My Comm. Expires May 4, 2026
Bonded through National Notary Assn.

8

IN THE STATE COURT OF EFFINGHAM COUNTY
STATE OF GEORGIA

CEDRICK BURTON, as the Administrator
Of the Estate of JAMES MERRITT BYRD,
Deceased,



**EXHIBIT**

**C**

**EXPERT AFFIDAVIT OF MICHAEL McMUNN, DNP, CCHP-A**

**GEORGIA DEPARTMENT OF CORRECTIONS, EFFINGHAM COUNTY PRISON, WELLPATH GROUP HOLDINGS, LLC, and its affiliates, and healthcare providers at EFFINGHAM COUNTY PRISON**

Personally appeared before the undersigned authority Michael McMunn, DNP, CCHP-A, who after first having been duly sworn, does hereby depose and state under oath the following based upon his own personal knowledge:

1.

My name is Michael McMunn, DNP-CCHP-A. This affidavit is executed for the purpose of setting forth at least one negligent act or omission of nursing staff at the Georgia Department of Corrections at Effingham Correctional Facility and other medical healthcare providers working at the correctional facility on or about January 15-22, 2021, and is not intended to be an exhaustive recitation of my opinions relating to the care and treatment of James Byrd. I understand that this affidavit will be used in connection with a Complaint to be filed against the nursing staff at the Georgia Department of Corrections Effingham Correctional Facility/County Prison, Wellpath, Wellpath Group Holdings, LLC, and its affiliates, and other medical healthcare providers working at the correctional facility based upon the negligent care provided to James Byrd for the dental and medical illness that began on or about January 15, 2021, and ended with his death on January 22, 2021.

2.

I am a nurse practitioner duly licensed to practice medicine in the state of Georgia.  I have been continuously licensed in Georgia since 2000 to the present, and have actively practiced correctional nursing in Georgia since?   I earned my undergraduate degree (ADN) in Nursing from Athens Technical College in 1996, an AA in Religion at Emmanuel College in 1997, a bachelor's degree in nursing from Brenau University, a master's in nursing from Medical College of Georgia in 2000, and a doctorate in nurse practitioner nursing from the University of North Georgia in 2021.  I completed a Correctional Health Professional (CCHP) certification in 2007, CCHP Advanced in 2020, and Mental Health in 2013.

3.

I am licensed by the State of George Board of Nursing as an Advanced Practice Registered Nurse.

4.

I have worked as a nurse practitioner for over 20 years.  At the time of the negligent acts and omissions described in this affidavit (January 15-22, 2021, I was licensed to practice advanced practice nursing in the state of Georgia, and I was actively practicing as a correctional healthcare provider in Georgia.  For the entire five-year period immediately preceding January 15, 2021, and for many years before that, I was actively practicing correctional healthcare nurse practitioner on a full-time basis and, in that role, frequently and regularly performed history and physical examinations and rendered medical care and treatment.  In the five-year period preceding January 15, 2021, I performed and supervised the performance of, dental assessments and the assessment of patients with symptoms such as James Byrd, similar to the assessments and interventions performed by the healthcare providers who rendered care to James Byrd, including but not limited to, M. Mattis, LPN, Steven Finderson, PA-C, Mary G., and others on or about January 15-22, 2021. Additionally, in the five-year

2

period preceding January 15-22, 2021, I provided nursing and medical care and treatment to patients like James Byrd on a routine basis, making decisions regarding the management of sepsis, nausea, malaise, dental caries, and the management of medications, including the determination of the course of treatment and referral to the hospital for further medical management.

5.

I have attached hereto, and incorporate by reference, a true and correct copy of my Curriculum Vitae, which more fully and completely outlines my education, background, training, experience, and qualifications, See Exhibit 1.

6.

As a result of my education and experience outlined above, specifically including my advanced practice nursing and correctional healthcare experience, and my experience in supervising, instructing, diagnosing, treating, and monitoring patients and inmates with signs and symptoms of sepsis, I have knowledge of the standard of care required of registered and licensed practical nurses and physician assistants with respect to all of the issues addressed in this affidavit, including knowledge of the standard of care that was required of the healthcare practitioners as well as other support staff at Effingham County Prison/Correctional Facility(ECP), with respect to the care and treatment of James Byrd between January 15, 2021 up through his death on January 23, 2021.

7.

I have reviewed, and incorporated herein by reference, James Byrd's medical records, pertaining to incarceration at Effingham County Prison Facility.  I have also reviewed James Byrd's death certificate, autopsy report, and the Ante Litem Notice of Tort Claim and I have incorporated these documents herein by reference.

8.

On or about November 17, 2021, James Byrd underwent a Georgia Department of Corrections Dental Screening by intake dentist [Shepard?]. It is documented on the Dental Screening Examination Treatment Plan and Record that Mr. Byrd's Gingiva was inflamed.       On or about November 24, 2021, Mr. Byrd was transferred to ECP. An intra-transfer assessment was performed. Mr. Byrd's vital signs were recorded as 1BP 24/78, HR 61, RR 18, and Temp 98.8. It was documented that Mr. Byrd was alert and oriented and did not verbalize any complaints.   His COVID testing was negative on transfer to ECP.

On or about December 14, 2021, a prescription for Amoxicillin 500mg 2 tablets for 10 days and Ibuprofen 800mg 2 tablets for 7 days per verbal order of Roland Brown, MD. There is no medical or nursing note regarding the purpose of said prescription. There is no indication in the medical chart that the above-prescribed medication was dispensed to Mr. Byrd.

On or about January 6, 2022, Mr. Byrd was seen and treated by Richard B. Liipfert, DDS (identified as RBL) in the medical chart from Dynamic Mobile Dentistry.   An extraction of tooth #19 was performed. There are no other reports or imaging study reports by the dentist regarding the condition of Mr. Byrd's dentition or treatment plan for post-extraction.

On or about January 15, 2022, family members of James Byrd contacted EFP and spoke with Mr. Byrd and a prison official and/or staff member. During the call, the official/staff member acknowledged seeing that Mr. Byrd was in obvious pain and the area of the extraction was inflamed and possibly infected. The same prison official/staff member informed the family that the next day was a holiday, Martin Luther King Day, Mr. Byrd would have to be transported on the following

business day January 18, 2022.  Mr. Byrd was diagnosed with COVID-19 and thereafter, placed in an isolated holding cell in quarantine.

On or about January 18, 2022, Mr. Byrd was seen for a medical evaluation.  He complained that the tooth was pulled "is infected" and that he had been sick for 4 days.  The assessment revealed:

"lower left molar was removed at the dentist visit on January 6, 2022.  Socket has white pasty drainage, foul smell from patient's mouth, no swelling noted, painful per inmate."

The plan was to administer Amoxicillin 500mg 2 caps PO BID for 7 days and Ibuprofen 800mg 1 tab PO BID x 7 days per verbal order from Robert Donovan.   He was instructed to return to the clinic if the symptoms got worse or persisted.   There is no signature by the prison personnel who performed the above assessment.

On or about January 19, 2021, at approximately 18:15 (6:15 PM), an officer reported that Mr. Byrd complained of nausea.   At the clinic, Mr. Byrd reported that he wanted to go to the hospital.  Mr. Byrd complained that he could not eat due to tooth pain.  The officer reported that Mr. Byrd had been eating various soft foods.  The medical provider documented that the area of concern, lower left, continues to have drainage.  The medical provider noted that Mr. Byrd was seen on January 18, 2022, and that the medications ordered arrived today.  The provider noted that she/he instructed Mr. Byrd that he must start his medication and that his issue was not emergent and required hospitalization.  She/he noted that Mr. Byrd did not verbalize understanding or agreement and that he displayed anger with the outcome of the visit.  The provider instructed Mr. Byrd to rinse with warm water and to notify medical if the symptoms persisted.

On or about January 20, 2022, Mr. Byrd had a medical visit.  He was brought to the clinic in a wheelchair and had a complaint of pain from the dental extraction and nausea and vomiting.  The

patient was observed to be slouching in the wheelchair. His oxygen saturation was 99% and his pulse of 77.   The written objective assessment noted that Mr. Byrd's lungs were clear to auscultation, that he was mumbling when talking, denies shortness of breath but was unable to keep food down, only fruit.  It was noted that he did have drainage from the tooth socket.  The provider's plan was to give a COVID test, which returned positive.  The provider encouraged Mr. Byrd to notify 'medical' with shortness of breath.

On or about January 21, 2022, at 10:50 AM, medical noted that a call was received from security that the Deputy Warden requested the inmate to be checked out.  It was documented that upon entering the cell, the patient was lying on left side in the bunk.

BP was 124/79, Pulse 86, and respirations 23.  His temperature was 97.4.  Mr. Byrd reported that he didn't feel good again.  The medical record stated that Mr. Byrd tested positive for COVID-19 on 1/20/22.  "Patient has no signs of Covid other than not feeling good."  An assessment was performed.  The medical provider noted that Mr. Byrd was placed on Amoxicillin and Ibuprofen on 11/18/22 for dental infection from tooth extraction on 1/6/22.

"Upon examination socket still has purulent drainage coming from socket, no redness or swelling.  Patient is not taking antibiotics as prescribed.  Has only taken 1000mg of antibiotics since dispensed.  Patient eating and drinking Gatorade."

"Patient encouraged to take antibiotics as prescribed.  Patient encouraged to notify medical or security should he experience any SOB, Fever, N/V or any other symptoms.  Patient indicates understanding will continue to monitor."

On or about January 23, 2022, Byrd was apparently found dead in his cell.

On January 26, Dr. John Hiserodt, performed a forensic pathological examination which revealed that Mr. Byrd died as a result of septicemia (blood infection) following a tooth extraction for an associated abscess.

9.

Based upon my review of the above-referenced medical records, autopsy report, and the ante litem notice of claim letter, and based upon my education, training, experience, and knowledge outlined in this affidavit, it is my opinion to a reasonable degree of nursing and medical probability that the standard of care required the Georgia Department of Corrections and Effingham County Prison's, Wellpath's, and Wellpath Group Holdings, LLC's health care providers (nurses and licensed practical nurses), many of whom names or illegible,  including but not limited to, Steven Finderson, PA-C, Mary G., and others, failed to appreciate that Mr. Byrd's condition required immediate dental and/or medical attention, the transfer to a medical facility for further evaluation and treatment by a medical doctor or dentist and that his condition necessitated the administration of intravenous broad-spectrum antibiotics.  Further, the healthcare providers failed to properly document the times of chart entries, failed to make complete entries in the medical chart, and failed to document a comprehensive re-assessment of Mr. Byrd on January 21, 2022.   It is my opinion to a reasonable degree of nursing and medical probability that the above-referenced healthcare providers were grossly negligent and deviated from the applicable standard of care by failing to have Mr. Byrd evaluated by a medical professional.  It is my opinion to a reasonable degree of nursing and medical probability that the negligence and deviations from the applicable standards of care described above resulted in James Byrd's pain and suffering and subsequently his death on January 23, 2022.

10.

I hold the opinions set forth above to a reasonable degree of nursing and medical probability. This affidavit is given pursuant to OCGA § 9-11-9.1 for the purposes of setting forth at least one act of negligence by the referenced defendants. It is not intended to be an exhaustive listing of all the opinions I hold. I reserve the right to amend or add to the opinions that are referenced herein upon learning additional or different facts.

This 27th day of September, 2023.

_____
Michael McMunn, DNP, CCHP-A

Sworn to and Subscribed before me
this 27th day of Sept, 2023.

_____
Notary Public
My Commission Expires: 3-17-2024

AMBER CRYER
NOTARY
EXPIRES
GEORGIA
3-17-2024
PUBLIC
CRAWFORD COUNTY