## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ROYNEL MCLAURIN**, | |
| *Plaintiff*, | CIVIL ACTION NO. _____ |
| v. | |
| **OMNI CABLE, LLC,** | JURY TRIAL DEMANDED |
| *Defendant.* | |

## COMPLAINT

Plaintiff Roynel McLaurin ("Mr. McLaurin" or "Plaintiff") sets forth this Complaint for Damages against Omni Cable, LLC ("Omni Cable" or "Defendant") and respectfully shows the Court as follows:

### INTRODUCTION

1. This action is for illegal race-based discrimination and retaliation arising under 42 U.S.C. § 1981 ("Section 1981"). Plaintiff seeks declaratory and injunctive relief, back pay, reinstatement or front pay in lieu of reinstatement, a permanent injunction against future violations, compensatory damages, punitive damages, nominal damages, and all attorney's fees and costs.

1

## JURISDICTION AND VENUE

2. Plaintiff's claims under Section 1981 present federal questions over which the Court has jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue is proper pursuant to, *inter alia*, 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices alleged below were committed within the geographic boundaries of the Northern District of the United States District Court, Atlanta Division, and within the state of Georgia.

4. This Court has personal jurisdiction over Defendant as they are located within the geographic boundaries of this Court and/or conduct business within the geographic boundaries of this Court.

## PARTIES

5. Plaintiff is a citizen of the United States and a resident of the State of Georgia.

6. Plaintiff was an employee of Defendant at all times material to this Complaint, concluding with her unlawful termination.

7. Plaintiff is an African American and a member of a protected class under Section 1981.

8. Defendant is a company registered to conduct business and transact business in the state of Georgia.

9. Defendant may be served with process through its registered agent if formal service of process is not waived.

> Registered Agent Name: **Corporation Service Company**
> Physical Address: **2 SUN COURT, SUITE 400, PEACHTREE CORNERS, GA, 30092, USA**
> County: **Gwinnett**

10. Defendant employed fifteen or more employees for each working day in each of twenty or more calendar weeks throughout Plaintiff's tenure.

11. Defendant is subject to the anti-discrimination provisions of Section 1981.

## STATE MENT OF FACTS

## RACIAL DISCRIMINATION ALLEGATIONS

12. Plaintiff's race is African American.

13. Plaintiff began his employment with Defendant on or about November 29, 2021.

14. Plaintiff was hired as an hourly distribution center associate ("DCA") at Defendant's Norcross, Georgia distribution center.

15. The primary responsibilities of Plaintiff as a DCA included operating production equipment, namely a rim drive machine or a respooler machine, in order to cut wire to a predetermined length.

16. Plaintiff had no disciplinary issues for the first several months of his employment.

17. During his employment with Defendant, there were five DCAs, composed of two African American males, two Hispanic males, and one Caucasian male.

18. DCAs reported directly to the manager of the distribution center, Wilbert Ruiz ("Mr. Ruiz"), or the assistant manager, Santos Sorto ("Mr. Sorto").

19. Both Mr. Ruiz and Mr. Sorto were Hispanic males.

20. Shortly after his employment began, Plaintiff began to notice that the African American employees were being treated in a disparate manner to the Hispanic DCAs employees.

21. For example, there are 5 machines that DCAs operate, two of which are much newer compared to the other three.

22. Plaintiff noticed that the Hispanic DCAs were consistently placed at the newer machines, while the non-Hispanic DCAs had to use the older machines.

23. Plaintiff also witnessed that Hispanic DCAs were allowed to do things such as drink coffee, take phone calls, and detail their cars on the clock, while non-Hispanic DCAs faced disciplinary action if they did anything other than their assigned tasks.

24. Plaintiff also believe that the Hispanic DCAs received less work than their non-Hispanic counterparts.

25. On March 15, 2022, Plaintiff clocked in and then went back to his car to get a water jug.

26. While he was getting the jug, Plaintiff received a phone call about a medical situation with his child.

27. Defendant saw Plaintiff on the phone and told him that he could not make or receive phone calls while on the clock, contrary to what he'd seen from the Hispanic employees.

28. During that conversation, Plaintiff communicated that he felt discriminated against due to his race. Specifically, that he felt like the African American employees were being treated unfairly compared to the Hispanic employees.

29. After the conversation, Plaintiff asked for a contact number for Human Resources so that he could formalize his complaint with them.

30. Defendant told Plaintiff that he could call HR, but that he had to clock out before he did.

31. Plaintiff clocked out and started calling HR. After several attempts, Plaintiff reached someone in Defendant's HR department. Plaintiff made a complaint of race discrimination, and was told to go home, and that HR was investigating his complaint, and that he would be contacted.

32. A few days later, Plaintiff reached someone at HR, and they informed him that he had clocked out without permission, and that Defendant considered that a resignation.

33. Plaintiff tried to explain that he was told to clock out by his manager.

34. HR did not listen to Plaintiff's version of events.

35. Plaintiff tried several more times to call HR and was told that he was being terminated due to job abandonment.

36. Plaintiff believes he has terminated in retaliation for his complaints of racial discrimination.

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF SECTION 1981

37. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

38. Plaintiff is a member of a protected class (African American).

39. Plaintiff was employed by Defendant at all times material to this Complaint.

40. Plaintiff was qualified for the position he held.

41. Plaintiff was subjected to race discrimination and was subjected to disparate treatment by Defendant in the terms and conditions of his employment as described above.

42. This disparate treatment was because of Plaintiff's race and in violation of Section 1981.

43. Defendant willfully and wantonly disregarded Plaintiff's rights and Defendant's discrimination against Plaintiff was undertaken in bad faith.

44. Defendant failed to take prompt and appropriate remedial measures to stop or cure the aforementioned discrimination.

45. As a direct and proximate result of Defendant's unlawful discriminatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience,

loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

## COUNT II
## RETALIATION IN VIOLATION OF SECTION 1981

46. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

47. Plaintiff engaged in activities protected under Section 1981 by making multiple complaints of race-based discrimination as detailed above

48. After Plaintiff's complaints of Defendant's conduct prohibited, Plaintiff suffered adverse employment actions including termination.

49. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation.

**WHEREFORE**, Plaintiff demands a trial by jury and for the following relief:

(a) That Summons issue;

(b) That Defendant be served with the Summons and Complaint;

(c) Full back pay from the date of Plaintiff's termination, taking into account all raises to which Plaintiff would have been entitled but for the unlawful

termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

(d) Reinstatement to Plaintiff's former position with Defendant, or in the alternative, front pay to compensate Plaintiff for lost future wages, benefits, and/or pensions;

(e) Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiff's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life, and special damages;

(f) Punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendant for their conduct toward Plaintiff and deter Defendant from similar conduct in the future;

(g) Reasonable attorney's fees and costs;

(h) Judgment against Defendant for damages incurred by Plaintiff;

(i) Judgment against Defendant in such an amount as will fully and adequately compensate Plaintiff; and

(j) Other and further relief as the Court deems just and proper.

Respectfully submitted, this 19th day of December, 2023

/s/ J. Stephen Mixon

                                    J. Stephen Mixon
                                    Georgia Bar No. 514050
                                    steve@mixon-law.com
                                    Attorney for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Rd. Suite 800
Atlanta, GA 30326
Telephone: (770) 955-0100