## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MAKITA BRYANT, | |
| Plaintiff, | Civil Action No. |
| v. | |
| C&M DEFENSE GROUP LLC, CHARLES REEDY, JR., and REGINALD DANIELS, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## COLLECTIVE ACTION COMPLAINT

Plaintiff Makita Bryant ("Plaintiff" or "Bryant") files this Complaint against Defendant C&M Defense Group LLC ("Defendant C&M"), Defendant Charles Reedy, Jr. ("Defendant Reedy"), and Defendant Reginald Daniels ("Defendant Daniels") (collectively "Defendants").

Plaintiff bring this Collective Action Complaint on behalf of herself and all others similarly situated, against Defendant C&M and Defendant Reedy, alleging systemic violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") (Counts I and II).

Plaintiff additionally asserts Georgia state law claims against Defendant C&M for negligent failure to prevent sexual harassment (Count III) and negligent and

wrongful hiring and supervision (Count IV). Plaintiff asserts state law claims against Defendant Daniels for civil battery (Count V), civil assault (Count VI), and false imprisonment (Count VII). Plaintiff asserts state law claims for conversion of property (Count VIII) and trespass to chattel (Count IX) against Defendant C&M and Defendant Reedy. Plaintiff asserts state law claims against Defendant C&M, Defendant Reedy, and Defendant Daniels for intentional infliction of emotional distress (Count X), punitive damages (Count XI), and attorneys' fees and expenses of litigation (Count XII).

Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and will amend her Complaint to include her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII") following the issuance and receipt of the Notice of Right to Sue ("NTRS").

Plaintiff shows the Court as follows:

## JURISDICTION AND VENUE

1.     This court has federal-question jurisdiction over Plaintiff's FLSA claims, pursuant to 28 U.S.C. §§ 1331 and 1343.

2.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state-law claims because such claims are so related to Plaintiff's

employment claims brought under federal law that they form part of the same case or controversy.

3.     Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

4.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits himself to the jurisdiction of this Court.

5.     Plaintiff was employed as a Security Officer for Defendant C&M Defense from approximately April 2021 to April 3, 2023.

6.     Defendant C&M is a Georgia corporation with its principal place of business at 3961 Floyd Rd, Ste 300198, Austell, GA, 30106, USA.

7.     Defendant C&M regularly transacts business in the Atlanta Division of the Northern District of Georgia.

8.     Defendant C&M may be served with process at 3961 Floyd Rd, Suite 300198, Austell, GA, 30106, USA.

9.     Defendant Daniels was employed as Vice President of Operations for Defendant C&M.

10.     On information and belief, Defendant Daniels is a Georgia resident, who regularly transacts business in the Atlanta Division of the Northern District of Georgia.

11.     Defendant Daniels may be served with process at his place of employment or residence.

12.     Defendant Reedy is employed as Chief Operating Officer of Defendant C&M.

13.     On information and belief, Defendant Reedy is a Georgia resident, who regularly transacts business in the Atlanta Division of the Northern District of Georgia.

14.     Defendant Reedy may be served with process at his place of employment or residence.

15.     Defendants C&M and Reedy are governed by and subject to 29 U.S.C. §§ 206, 207.

16.     At all relevant times, Defendants C&M and Reedy have been, and continue to be, "employer[s]" engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 201 *et seq.*

17.     At all relevant times, Defendants C&M and Reedy have had two or more "employees engaged in commerce or in the production of goods for commerce," as defined in 29 U.S.C. § 203(s)(1)(A)(i).

18.     On information and belief, at all relevant times, Defendant C&M has had an annual gross volume of sales or business done in excess of $500,000.00.

19.     At all relevant times, Defendants C&M and Reedy were "employers" of Plaintiff and other similarly situated persons as that term is defined by 29 U.S.C. § 203(d).

20.     On information and belief, at all relevant times, Defendant Reedy asserted control of Defendant C&M's day-to-day operations where Plaintiff and similarly situated persons worked and made the decisions regarding the amount that Plaintiff and similarly situated persons would be compensated and is therefore an employer within the meaning of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and all other similarly situated persons, pursuant to 29 U.S.C. § 216(b).

22.     Plaintiff seeks to represent the following group of similarly situated persons pursuant to 29 U.S.C. § 216(b):

All persons who were, or are, employed by Defendants as Security Officers, or performing materially similar work as Security Officers, at any time within three years prior to the filing of this Complaint, and who worked in excess of 40 hours per workweek and were not paid at an overtime rate of one-and-one half their regular rate of pay for all hours worked over 40 per workweek (the "Overtime Collective").

23.     Although the precise number of members of the Overtime Collective is unknown, and the facts upon which the calculation of that number is dependent are in the sole possession of Defendants, upon information and belief, there are more than fifty (50) members the Overtime Collective, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, and/or knowledge of their claims.

24.     In 2022 and 2023, two individual FLSA lawsuits against Defendant C&M were filed by Security Officers and alleged overtime violations.

25.     Plaintiff will fairly and adequately protect the interests of the members of the Overtime Collective and has retained counsel who is experienced and competent in the fields of wage and hour law and collective action litigation.

26.     Questions of law and fact common to the members of the Overtime Collective predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members of the Overtime Collective.

## **STATEMENT OF FACTS**

27.     Plaintiff began working for Defendant C&M as a Security Officer in approximately April 2021.

28.     Defendants C&M and Reedy employ, and have employed in the statutory period, a number of individuals as Security Officers, who they pay on an hourly basis and misclassify as independent contractors.

29.     Throughout the period in which Defendants C&M and Reedy misclassified Plaintiff as an independent contractor, Defendants C&M and Reedy paid Plaintiff a set hourly rate of $15.00 for all time worked on the clock.

30.      While Defendants misclassified Plaintiff as an independent contractor, Plaintiff was, at all times, an employee of Defendants.

31.     Defendants provided Plaintiff with her schedule, worksites, shifts, and her uniform, including her shirt and tactical vest. Plaintiff did not have the ability to turn down work.

32.     Plaintiff made little to no investment in Defendants' business.

33.     Defendants were solely responsible for generating the schedule of available shifts for Security Officers, including Plaintiff.

34.     Defendants dictated Plaintiff's hourly pay.

35.     Plaintiff's wages depended entirely on the number of hours she worked at the rates set by Defendants. Managerial skill and individual initiative were not material factors in Plaintiff's compensation because, *inter alia*, her job duties were assigned and controlled by Defendants, Defendants controlled her schedules, and Plaintiff was solely compensated based on the number of hours she worked at rates set by Defendants.

36.     Plaintiff and members of the Overtime Collective regularly worked more than forty (40) hours per workweek without being paid one-and-one-half times the regular rate of pay for all overtime worked.

37.     At times throughout Plaintiff's employment, Plaintiff was required to work over one-hundred hours a week and was not paid one-and-one-half times her regular rate of pay for all overtime worked.

38.     Defendants C&M and Reedy knew or should have known that Plaintiff and members of the Overtime Collective worked in excess of forty (40) hours per workweek.

39.     Each and every week that Plaintiff and members of the Overtime Collective worked in excess of forty (40) hours per week, Defendants C&M and Reedy failed to pay them overtime wages for time worked in excess of forty (40) hours per week.

40.     Despite Defendants' knowledge of overtime worked by Plaintiff and other members of the Overtime Collective, Defendants continued its practice of misclassifying Plaintiff and other members of the Overtime Collective as independent contractors.

41.     Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff and other members of the Overtime Collective at a rate of one-and-one-half times their regular rate of pay for all time worked in excess of forty (40) hours per workweek.

42.     In January 2022, while Plaintiff was working at one of the worksites, Defendant Daniels showed up at the end of her shift, said that he did not want to go home, and asked if Plaintiff wanted to go to a strip club.

43.     Plaintiff told him that she did not want to go to a strip club.

44.     Defendant Daniels then asked her if she wanted to get some food and talk.

45.     Plaintiff felt that she had to agree because Defendant Daniels was her boss.

46.     Plaintiff and Defendant Daniels then went to American Deli and took their food to Defendant Daniels' company car.

47.   While in Defendant Daniels' company car, Defendant Daniels asked if he could give Plaintiff a hug.

48.   Defendant Daniels then began rubbing Plaintiff's back and pulling her shirt out of the back of her pants.

49.   Plaintiff, who was startled and frightened by Defendant Daniels' actions, asked Defendant Daniels to stop.

50.   Defendant Daniels then asked Plaintiff when she "got laid" last. Defendant Daniels asked Plaintiff to let him "get [her] off."

51.   Plaintiff rejected Defendant Daniels' advances and was visibly uncomfortable.

52.   Despite Plaintiff's protestations, Defendant Daniels continued and told Plaintiff that she was making "something get hard in [his] pants, between [his] legs," referring to his erect penis.

53.   Plaintiff again protested and stated that she was uncomfortable.

54.   Defendant Daniels apologized and said that he went too far "unless [Plaintiff] wanted to."

55.   Defendant Daniels then suggested that he get a hotel room for him and Plaintiff for the night.

56.     Plaintiff told him no and that she was uncomfortable because he was her manager. Plaintiff then got out of the car.

57.     Plaintiff was emotionally distraught following these events.

58.     Plaintiff told her now-deceased aunt what Defendant Daniels did to her, and her aunt provided her with a recording device to use in case Defendant Daniels sexually harassed or assaulted her again.

59.     Plaintiff began carrying the recording device with her out of fear that Defendant Daniels would sexually harass and assault her again.

60.     About a month later, in February 2022, while Plaintiff was working by herself in the guard shack at the worksite in Forest Park, Defendant Daniels showed up and said that he wanted to go look inside the building with Plaintiff because Defendant C&M had recently lost the contract with the worksite.

61.     Plaintiff went into the building with Defendant Daniels as he requested.

62.     Once inside the building, Plaintiff noticed that all of the security cameras had been taken down. Plaintiff believes that this was a result of Defendant C&M's contract ending.

63.     Defendant then stated, "Yeah, it is empty in here," walked to the very back of the building area, and asked Plaintiff to come with him.

64.     Defendant Daniels then asked Plaintiff, "Why haven't you tried to reach out to me?"

65.     Defendant Daniels asked Plaintiff to have sex with him. Defendant Daniels stated that he and Plaintiff "can do it here."

66.     Plaintiff told him again that she was not comfortable, that she did not want to have sex with him, and that he was married.

67.     In response, Defendant Daniels told Plaintiff to let him worry about his wife.

68.     Defendant Daniels then asked Plaintiff, "Have you gotten laid yet?"

69.     Defendant Daniels then pushed Plaintiff up against the wall, grabbed and groped Plaintiff's breast, and tried to undo her belt.

70.     Defendant Daniels kept Plaintiff up against the wall, unzipped his pants, fully exposed his erect penis to Plaintiff, and ordered her to touch his erect penis.

71.     Plaintiff, who was frightened that Defendant Daniels was going to force her to touch his penis and then rape her, told him no and that a truck would be showing up at the worksite soon, as an excuse to get away from him.

72.     After this, Plaintiff was able to escape from Defendant Daniels and quickly went outside of the building.

73.     Defendant Daniels followed Plaintiff out of the building and said, "You need to let me take care of you" and began discussing a promotion for Plaintiff.

74.     Defendant Daniels offered to do some "favors" for Plaintiff, including paying to have Plaintiff's car fixed.

75.     Plaintiff rejected Defendant Daniels' advances and requests for sexual acts in exchange for a promotion and "favors."

76.     At one point, in response to Plaintiff's opposition, Defendant Daniel stated, "I do not know why you do not like me."

77.     Defendant Daniels also stated, "You need to let me get you off or a female or we could have fun with a friend" or words to that effect. He also told Plaintiff that she needed to give him a chance.

78.     Plaintiff is a lesbian.  Defendant Daniels knew this and made sexual comments related to Plaintiff's sexuality.

79.     Plaintiff audio recorded the February 2022 sexual harassment and assault, described in preceding paragraphs 60-78, on her recording device, which was inside her tactical vest.

80.     From February 2022 to December 2022, Defendant Daniels continued to ask Plaintiff if she had "gotten laid yet."

81.    In December 2022, Defendant Daniels called Plaintiff on the phone while she was working at the Fairburn GXO Tesla worksite, asked when the employees were going on break, and said, "I bet you won't go in the bathroom during the break and play with yourself. I am horny. I bet you are not freaky enough to go in the bathroom and play with yourself and FaceTime me and let me watch."

82.    Plaintiff was disgusted by Defendant Daniels' sexual requests and once again rejected his advances.

83.    On March 31, 2023, around 1:30 a.m., Defendant Reedy came to the GXO Tesla worksite while Plaintiff was working, and informed Plaintiff that Defendant Daniels was no longer employed with Defendant C&M and that Defendant C&M had lost the contract where Plaintiff was working.

84.    Defendant Reedy stated that Defendant Daniels had been stealing from him and that he heard rumors that Defendant Daniels was sexually harassing people at his company.

85.    Plaintiff then complained to Defendant Reedy that she was sexually harassed and assaulted by Defendant Daniels on multiple occasions while working for Defendants.

14

86.     Following her report, Plaintiff went to her car to retrieve the recording device with the audio recording from the February 2022 sexual harassment and assault on it.

87.     Plaintiff then provided the recording device with headphones and tape to Defendant Reedy and informed him that she had an audio recording of what Defendant Daniels did to her in February 2022 on it and that he could review the recording and return it to her.

88.     Defendant Reedy asked to keep the recording device, took possession of the recording device, and promised to review and return it to Plaintiff quickly.

89.     On March 31, 2023, at 4:13 p.m., following the meeting between Defendant Reedy and Plaintiff when Plaintiff reported Defendant Daniels' sexual harassment and assault, Plaintiff sent Defendant Reedy a text message asking when she could get the recording device back. Plaintiff told Defendant Reedy that her deceased aunt's voice was on the other side of the tape.

90.     Mr. Reedy did not respond to the message.

91.     In subsequent messages to Defendant Reedy and Ms. Michelle Hudley, Vice President of Defendant C&M, Plaintiff asked for the return of the recording device, headphones, and tape.

92. On April 2, 2023, Plaintiff called Defendant Reedy, and he said he was working on the schedule and would give Plaintiff a new site soon.

93. On April 2, 2023, Hudley then reassigned Plaintiff to another site location at 585 DeKalb Industrial Way, Decatur, Georgia 30033.

94. Ms. Bryant worked at the site location on April 2, 2023 and April 3, 2023.

95. On April 3, 2023, Hudley gave Plaintiff another worksite for her shift on April 4, 2023.

96. Following her shift on April 3, 2023, Defendant Reedy texted Plaintiff and said, "Hi Markita [sic], Michelle gave you a post to go to tomorrow. Do not report there. That post was already filled."

97. Plaintiff proceeded to ask why she was fired and again requested the return of the recording device with the February 2022 events on it.

98. Defendant Reedy did not respond to Plaintiff.

99. On April 4, 2023, Plaintiff texted Hudley asking if she was terminated and if it was because of the tape recording.

100. Hudley did not respond.

101.   From April 4, 2023 to April 10, 2023, Plaintiff requested placement at another worksite, requested the recording device, headphones, and tape back from Defendants, and received no response from Defendants.

102.   On April 5, 2023, Plaintiff texted Defendant Reedy and said, among other things, "I have asked for the tape recorder back for several days now" and "I gave you the entire tape recorder, ear phones as well as the tape inside in good faith so that you could hear the harassment at Gxo Tesla in Fairburn, Ga on Friday, March 31,2023 [sic] at approximately 2:00 am."

103.   Plaintiff also texted Defendant Reedy to again inform him that her deceased aunt's voice was on the other side of the tape and that it was all that her family had left of her talking.

104.   On April 5, 2023, Plaintiff texted Hudley a similar message requesting the recording device back.

105.   Defendant Reedy did not respond to Plaintiff's messages.

106.   On April 7, 2023, Plaintiff texted Defendant Reedy and said, "When are you going to give me the tape recorder back it doesn't belong to me I gave it to you so that you could hear the harassment from Mr. Daniels."

107.   Defendant Reedy again did not respond to Plaintiff.

108.   On April 7, 2023, Plaintiff texted Hudley and again asked, "Can I please have my Aunt's tape recorder back with the tape and earphones please. You said you would make sure I got it back."

109.   Hudley did not respond to Plaintiff's request for the recording device back.

110.   On April 11, 2023, Hudley stated, "[W]e don't have anything open at this moment."

111.   Defendant C&M and Defendant Reedy terminated Plaintiff following her report of sexual harassment and assault.

112.   On April 14, 2023, Plaintiff, through her counsel, sent an evidence preservation notice and demanded that her recording device, her personal property, be returned within seven calendar days.

113.   Defendant Reedy did not return the recording device.

114.   Plaintiff was a well-performing employee and received nothing but praise for her work up until the report of Defendant Daniels' harassment.

115.   Defendant C&M and Reedy terminated Plaintiff in retaliation for her report of sexual harassment and assault by Defendant Daniels.

116.   Plaintiff has suffered financial loss, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

117.   Plaintiff has also suffered physical, mental, and emotional damages because of Defendants' actions, including anxiety, depression, and post-traumatic distress disorder.

118.   Defendants' actions and inactions were willful, wanton, and in reckless disregard for Plaintiff's rights.

### COUNT I
### <u>Willful Failure to Pay Overtime Wages In Violation of the FLSA</u>
### (Individual FLSA Claim Against Defendant C&M and Defendant Reedy)

119.   At all relevant times, Defendants C&M and Reedy were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

120.   At all relevant times, Plaintiff was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

121.   On information and belief, at all relevant times, Defendants C&M has and had gross annual revenues in excess of $500,000.00.

122.   At all relevant times, Defendants C&M and Reedy employed Plaintiff within the meaning of the FLSA.

123.     . At all relevant times, Defendants misclassified Plaintiff as an independent contractor.

124.   At all relevant times, Defendant Reedy asserted control of Defendant C&M's day-to-day operations where Plaintiffs worked and made decisions regarding the amount that Plaintiff would be compensated, and is therefore an employer within the meaning of the FLSA.

125.   The overtime wage provisions set forth in the FLSA apply to Defendants C&M and Reedy and protect Plaintiff.

126.   The FLSA requires employers, such as Defendants C&M and Reedy, to compensate non-exempt employees, such as Plaintiff, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

127.   Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff overtime wages at one-and-one half her regular rate for all time worked in excess of 40 hours per week.

128.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).  Because Defendants C&M and Reedy's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

129.   Defendants C&M and Reedy did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff.

130.   Due to Defendants C&M and Reedy's FLSA violations, Plaintiff is entitled to recover from Defendants her unpaid overtime wages for each workweek within the limitations period in which she worked in excess of 40 hours, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

**Count II**
**Willful Failure to Pay Overtime Wages in Violation of the FLSA**
**(Collective FLSA Claim Against Defendant C&M and Defendant Reedy)**

131.   At all relevant times, Defendants C&M and Reedy were, and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 207.

132.   At all relevant times, Plaintiff and other members of the Overtime Collective were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 207.

133.   On information and belief, at all relevant times, Defendants C&M has and had gross annual revenues in excess of $500,000.00.

134.   At all relevant times, Defendants C&M and Reedy employed and/or continue to employ members of the Overtime Collective within the meaning of the FLSA.

21

135.   At all relevant times, Defendants misclassified Plaintiff and other members of the Overtime Collective as independent contractors.

136.   At all relevant times, Defendant Reedy asserted control of Defendant C&M's day-to-day operations at the location where Plaintiff and the Overtime Collective worked and made decisions regarding the amount that Plaintiff and the Overtime Collective would be compensated, and is therefore an employer within the meaning of the FLSA.

137.   The overtime wage provisions set forth in the FLSA apply to Defendants and protect Plaintiff and other members of the Overtime Collective.

138.   The FLSA requires employers, such as Defendants C&M and Reedy, to compensate non-exempt employees, such as Plaintiff and other members of the Overtime Collective, at a rate of one-and-one half their regular rate of pay for all time worked in excess of 40 hours per week.

139.   Defendants C&M and Reedy regularly, and as a routine policy and practice, failed to pay Plaintiff and other members of the Overtime Collective overtime wages at one-and-one half their regular rate for all time worked in excess of 40 hours per week, during workweeks in which Plaintiff and other members of the Overtime Collective worked in excess of 40 hours.

140.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Because Defendants C&M and Reedy's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

141.   Defendants C&M and Reedy did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiff and other members of the Overtime Collective.

142.   Due to Defendants C&M and Reedy's FLSA violations, Plaintiff and other members of the Overtime Collective are entitled to recover from Defendants C&M and Reedy's their unpaid overtime wages for each workweek within the limitations period, an additional and equal amount of liquidated damages, interest, and reasonable attorneys' fees and costs of litigation.

## COUNT III
### Negligent Failure to Prevent Sexual Harassment
### (Against Defendant C&M)

143.   Defendant C&M had an affirmative obligation to provide a workplace free of sexual harassment.

144.   Defendant C&M knew, or in the exercise of reasonable care, should have known of Defendant Daniels' propensity to sexually harass employees.

23

145.   Defendant C&M failed to take action to prevent Defendant Daniels from sexually harassing employees, including Plaintiff.

146.   Defendant C&M failure to take action to prevent Defendant Daniels from sexually harassing employees, allowed and enabled Defendant Daniels to, *inter alia*, sexually harass Plaintiff in the workplace, and to commit the torts of civil battery, civil assault, false imprisonment, and intentional infliction of emotional distress against Plaintiff.

147.   The actions and inactions of Defendant C&M showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

148.   Defendant C&M acted with the specific intent to harm Plaintiff.

149.   As a direct and proximate result of Defendant C&M's failure to provide a workplace free of sexual harassment, Plaintiff was subjected to sexual harassment, civil battery, civil assault, false imprisonment, and intentional infliction of emotional distress, and suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

150.   Plaintiff is entitled to recover compensatory and punitive damages against Defendant C&M in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT IV
## <u>Negligent and Wrongful Hiring and Supervision</u>
### (Against Defendant C&M)

151.   Defendant C&M knew or should have known that Defendant Daniels had the propensity to sexually harass females in the workplace, including through battery.  Defendant C&M nevertheless continued to employ Defendant Daniels and took no action to prevent Defendant Daniels' sexual harassment of female employees.

152.   The negligence of Defendant C&M in retaining and supervising Defendant Daniels allowed and enabled him to, *inter alia*, commit the torts of civil battery, civil assault, false imprisonment, and intentional infliction of emotional distress against Plaintiff.

153.   The actions and inactions of Defendant C&M showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

154.   Defendant C&M acted with the specific intent to harm Plaintiff.

155.   As a direct and proximate result of Defendant C&M's negligence, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

156.   Plaintiff is entitled to recover compensatory and punitive damages against Defendant C&M in an amount to be determined by the enlightened conscience of the jury at trial.

**COUNT V**
**Civil Battery**
**(Against Defendant Daniels)**

157.   By intentionally touching Plaintiff on multiple occasions in attempt to have her agree to submit to his sexual advances, despite Plaintiff repeatedly rejecting them and notifying Defendant Daniels that they were unwelcome, Defendant Daniels committed the tort of civil battery by offensively touching Plaintiff.

158.   A reasonable person would find Defendant Daniels' unlawful touching of Plaintiff to be offensive.

159.   Defendant Daniels' actions showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

160.   Defendant Daniels acted with the specific intent to harm Plaintiff.

161.   As a direct and proximate result of Defendant Daniels' battery of Plaintiff, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

162.  Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

163.  Plaintiff is entitled to recover compensatory and punitive damages against Defendant Daniels in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT VI
### Civil Assault
**(Against Defendant Daniels)**

164.  By relentlessly pursuing Plaintiff despite her rejection of his sexual advances, Defendant Daniels caused Plaintiff to reasonably apprehend a battery from Defendant Daniels' unlawful acts.

165.  Defendant Daniels committed the intentional tort of civil assault.

166.  Defendant Daniels' actions showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

167.  Defendant Daniels acted with the specific intent to harm Plaintiff.

168.  As a direct and proximate result of Defendant Daniels' assault on Plaintiff, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

169.  Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

170.  Plaintiff is entitled to recover compensatory and punitive damages against Defendant Daniels in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT VII
## <u>False Imprisonment Pursuant to O.C.G.A. § 51-7-20</u>
### (Against Defendant Daniels)

171.  By pushing Plaintiff against the wall and holding her there as he groped her breast, tried to undo her belt, exposed his erect penis, and ordered her to touch his erect penis, Defendant Daniels unlawfully detained Plaintiff and deprived her of her personal liberty, thereby committing the intentional tort of false imprisonment.

172.  Defendant Daniels acted with the specific intent to harm Plaintiff.

173.  As a direct and proximate result of Defendant Daniels' false imprisonment of Plaintiff, accomplished by physically pushing her against a wall in the back of the building and then holding her there by physical force while he sexually battered, exposed his erect penis, and ordered her to touch his erect penis, Plaintiff suffered physical pain, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

174.   Defendant Daniels' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

## COUNT VIII
## Conversion Pursuant to O.C.G.A. § 51-10-1
### (Against Defendant C&M and Defendant Reedy)

175.   Defendants C&M and Reedy wrongfully and intentionally retained Plaintiff's recording device.

176.   Defendants C&M and Reedy retained the recording device despite Plaintiff's multiple requests for the return of the recording device.

177.   Defendants C&M and Reedy retained the recording device unlawfully without the consent of Plaintiff and deprived her of the exercise and use of the recording device.

178.   Defendants C&M and Reedy intend to permanently deprive Plaintiff of the recording device.

179.   Plaintiff properly owned and/or had the right to use the recording device, not the Defendants C&M and Reedy.

180.   Plaintiff is entitled to immediate possession of the recording device.

181.   Defendants C&M and Reedy have wrongfully converted Plaintiff's recording device.

182.   Defendants C&M and Reedy's wrongful conduct is of a continuing nature.

183.   Defendants C&M and Reedy's conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

184.   Plaintiff is entitled to recover from Defendants all damages and costs permitted, including the recording device that Defendants wrongfully converted, compensatory and punitive damages.

**COUNT IX**
**Trespass to Chattel Pursuant to O.C.G.A. § 51-1-3**
**(Against Defendant C&M and Defendant Reedy)**

185.   Plaintiff had the right to possess the recording device.

186.   Defendants Reedy and C&M intentionally interfered with and deprived Plaintiff of her right to possess the recording device by dispossessing her recording device, intermeddling with her recording device, and/or destroying her recording device.

187.   Defendants C&M and Reedy's conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

188.     As a consequence of the acts and omissions giving rise to this count, Plaintiff suffered pecuniary and emotional injuries and is entitled to recover compensatory damages and punitive damages.

## COUNT X
### Intentional Infliction of Emotional Distress
### (Against All Defendants)

189.     Defendants' actions, as alleged herein, were intentional or reckless.

190.     Defendants' actions, as alleged herein, were extreme and outrageous.

191.     Defendants subjected Plaintiff to extreme and outrageous misconduct of a sexual and/or retaliatory nature, pursuant to a culture permitting and encouraging such conduct.

192.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered extreme emotional distress and humiliation, including anxiety, depression, and post-traumatic distress disorder.

193.     Plaintiff continues to suffer emotional trauma from the events.

194.     Defendants' actions showed willful misconduct, malice, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to consequences.

195.     Defendants acted with the specific intent to harm Plaintiff.

31

196.     Defendants intended to inflict severe emotional distress and knew that their acts of sexual harassment, assault, battery, conversion, trespass to chattel, and/or retaliation would inflict extreme emotional distress.

197.     Defendants' conduct described herein showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

198.     Plaintiff is entitled to recover compensatory and punitive damages against Defendants in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT XI
### Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1
**(Against All Defendants)**

199.     Defendants' actions, as described herein, showed willful misconduct, malice, wantonness, oppression, and the entire want of care which would raise the presumption of conscious indifference to consequences.

200.     Defendants acted with the specific intent to harm Plaintiff.

201.     Plaintiff is entitled to unlimited punitive damages against Defendants C&M and Daniels, pursuant to O.C.G.A § 52-12-5.1.

**COUNT XII**
**Expenses of Litigation Pursuant to O.C.G.A. § 13-6-11**
**(Against All Defendants)**

202.     Defendants' tortious conduct as described herein was in bad faith and caused Plaintiff unnecessary trouble and expense.

203.     Pursuant to O.C.G.A. § 13-6-11, Defendants are liable for Plaintiff's expenses of litigation, including reasonable attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)     Designation of this action as a collective action and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated persons in the Overtime Collective as defined herein, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Join pursuant to 29 U.S.C. § 216(b) and tolling of the statute of limitations;

b)     A declaratory judgment that Defendants' practices complained of herein are unlawful;

c)     Full lost wages and benefits;

d)    All owed overtime wages and liquidated damages owed to Plaintiff and the Overtime Collective;

e)    Compensatory damages in an amount to be determined by a jury;

f)    Punitive damages in an amount to be determined by a jury;

g)    Injunctive relief requiring the return of Plaintiff's recording device and tape that she had the right to possess;

h)    An award of prejudgment and post-judgment interest;

i)    Attorney's fees and costs; and

j)    All other equitable and other further relief as the Court deems just and proper.

Respectfully submitted, this 19th day of December 2023.

*/s/ Grace A. Starling*
Justin M. Scott
Georgia Bar No. 557463
Grace A. Starling
Georgia Bar No. 464958
RADFORD SCOTT LLP
160 Clairemont Avenue, Suite 610
Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@radfordscott.com
gstarling@radfordscott.com

*Counsel for Plaintiff*