## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| WENDY BIBACE BRANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | |
| | ) | _____ |
| JULIE ANNE COOPER, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff Wendy Bibace Brant ("Brant" or "Plaintiff") hereby files this Complaint against Defendant Julie Anne Cooper ("Cooper" or "Defendant"), respectfully showing this Court as follows:

## INTRODUCTION

1.     This is an action to settle an authorship dispute to the copyrights and trademarks for "Hanukkah Veronica: the Mitzvah Fairy." Plaintiff developed the Hanukkah Veronica brand, including a book, plush doll, and an entire world of holiday characters. Therefore, Plaintiff brings this action to obtain a declaratory judgment to affirmatively declare herself the sole author and owner of Hanukkah Veronica intellectual property, for the damages Defendant caused by defaming Plaintiff and for reimbursement of Plaintiff's costs and attorneys' fees.

## PARTIES

2.     Wendy Bibace Brant is an individual residing at 2420 Concord Creek Trail, Cumming, Georgia 30041.

3.     Julie Anne Cooper is an individual residing at 541 Augusta Dr. Canton, GA 30115.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Copyright Act, 17 U.S.C. § 101 *et seq.* and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2022.

5.     This Court has personal jurisdiction because Julie Anne Cooper is a Georgia resident.

6.     Venue is proper in the Northern District of Georgia because Julie Anne Cooper is the sole Defendant and resides in Cherokee County, Georgia. 28 U.S.C. § 1391(b)(1).

## FACTS

**A.     The Mitzvah Fairy Idea.**

7.     For years, Jewish children everywhere have sought a culturally-appropriate equivalent to the many Christmas toys advertised during the holiday season.

8.     The Parties are coworkers at Homeowner Management Services (HMS). During their employer's 2018 holiday party, Cooper shared a family memory about a doll she had given to her daughter more than 15 years prior regarding a Jewish equivalent to "Elf on a Shelf."

9.     When Cooper's daughter was a child, she made a ragdoll to act as a "Hanukkah Fairy" who does good deeds (mitzvot) like bringing cookies or gifts. Among her family, the doll was called "Hanukkah Veronica."

10.     "Mitzvah" in Hebrew is often used to mean "good deed." (mitzvot, *plural*). Technically, "mitzvah" is defined as "commandment" and serves as a reference to the Torah commandment to do positive deeds as part of the religion, including doing things like giving gifts.

11.     The "good deeds" described in the idea Cooper gave to her daughter were not unlike those of Santa Claus, who brings presents and eats cookies when he visits those on the "nice list."

12.     Cooper had not revisited the memory since her daughter was a child – which was nearly 15 years ago at the time of the holiday party.

13.     When Plaintiff heard this family memory, she was already in the process of writing another children's book which was not yet complete.

14.     Cooper's idea was not unique, of course. Many Jewish families have created characters embodying the concept of a "Hanukkah Fairy." *See, e.g*., Lisa

Weinstein, *The Hanukkah Fairy*, METROKIDS, https://www.metrokids.com/the-hanukkah-fairy/ (Nov. 17, 2013); DAISY MEADOWS, HANA THE HANUKKAH FAIRY: THE FESTIVAL FAIRIES (RAINBOW MAGIC) (Orchard Books 2019), https://rainbowmagic.fandom.com/wiki/Hana_the_Hanukkah_Fairy.

15.    Of course, cultural takes on "Elf on the Shelf" type merchandise are also not unique. One need look no further than the as-seen-on TV "Mench on a Bench" from the hit television show "Shark Tank."

16.    Moreover, "Veronica" and "Hanukkah" had already been used together in Sesame Street in a vignette entitled "**Hanukkah** with **Veronica** Monica":



https://www.youtube.com/watch?v=3VfChLAADS8 (last visited August 31, 2023) (emphasis added).

4

17.    However, Plaintiff was inspired to write a unique children's story extending beyond Cooper's initial family memory and the other Mitzvah fairies/Veronicas in the Hanukkah market.

**B.    Plaintiff's Original Work: "Hanukkah Veronica: The Mitzvah Fairy."**

18.    Inspired by the ideas of Hannukah fairies past, Plaintiff wrote an entirely new storybook: "Hanukkah Veronica: The Mitzvah Fairy." ISBN #978-1-6653-0221-0.

19.    Hanukkah Veronica was intended to be the first book in a cast of characters that would educate one another about their culture and celebrate the various international holidays together.

20.    In Plaintiff's book, Hanukkah Veronica did not simply perform the mitzvahs, like the fairy did in Cooper's family memory or other characters on the market, but she instead inspired children to do their own good deeds. The idea of using Hanukkah Veronica to inspire children to do their own good deeds originated with Plaintiff.

21.    In Plaintiff's book, Hanukkah Veronica also left behind hearts matching her heart-shaped wings after the children performed their mitzvahs. Hanukkah Veronica and her heart-shaped wings are pictured below:



22.    These plots and plot devices were unique to Plaintiff's creation: Neither the hearts nor the children's performance of mitzvot were part of the one-off idea Cooper related her daughter more than 15 years ago.

23.    Plaintiff completed the "Hanukkah Veronica" text in or around November 2020. Plaintiff met Cooper at Altobelli's restaurant around the same time and discussed her progress on the Hanukkah Veronica story.

24.    Plaintiff's meeting with Cooper was a friendly visit between coworkers. To that point and to date, except for a few minor comments (most of which were disregarded), Cooper had nothing to do with Plaintiff's bringing Hanukkah Veronica to life in a tangible way. Although the initial plan was to collaborate, Cooper candidly admitted (after the meeting at the restaurant) that, although she had fond

memories of her daughter's childhood, she did not have any significant capital or other contributions to invest in Plaintiff's story and brand. Thus, Plaintiff and Hanukkah Veronica were on their own to move forward.

25.    As a testament to her friendship with Cooper, and her generosity, Plaintiff offered Cooper meaningful opportunities for Cooper to contribute to Hanukkah Veronica in the hopes they could one day share Hanukkah Veronica as coworkers and friends. Although Cooper created nothing independently copyrightable, Plaintiff tried to include Cooper in discussions about the book, placed her name on the cover as an author (even though her contribution did not fit the legal definition of an author) and celebrated her in any way she could. Kickstarter money and even monies on future sales were offered to Cooper. Plaintiff even went so far as to pay an attorney thousands of dollars to formalize the incredibly generous offer, which was refused by Cooper.

26.    Plaintiff hoped that Cooper would want to join her in her journey with Hanukkah Veronica and would aim to participate equally in the work and reward.

27.    Despite Plaintiff's attempts to involve Cooper, Cooper either could not or chose not to contribute to Hanukkah Veronica beyond the tangentially related idea Cooper shared in 2018.

28.     With Cooper unwilling or unable to make any significant or tangible or intangible contributions, Plaintiff had no choice but to move forward in her plans to develop the Hanukkah Veronica brand, doll, and book on her own.

**C.     Hanukkah Veronica and the Bonta Friends.**

29.     Plaintiff intended Hanukkah Veronica to be the first character in a larger universe of characters known as Bonta Friends – an empowering, inclusive group of girls representing multicultural holidays such as Halloween, Christmas, Diwali, and Kwanzaa. "Bonta" is Italian for "kindness."

30.     Bonta Friends was wholly conceived by Plaintiff to celebrate the many cultures and traditions of the world, and to educate children about different cultures.

31.     The back of each book contains a history section with information on how the holiday developed and the meaning behind the symbols of the holiday.

32.     Plaintiff created Bonta Friends, LLC as the sole owner and member.

33.     Thus, while Plaintiff was developing Hanukkah Veronica, Plaintiff was simultaneously creating the cast of Bonta Friends characters to be Hanukkah Veronica's counterparts. The Bonta Friends are pictured below:



34.     Cooper had no involvement with the Bonta Friends characters, designs, or stories.

**D.     Plaintiff Single-Handedly Brings the "Hanukkah Veronica" Brand to Life.**

35.     After drafting the text of the Hanukkah Veronica story, Plaintiff researched, found, contacted, hired, and paid the illustrator to create the Hanukkah Veronica character rendering that exists today.

36.     In doing so, Plaintiff dedicated a significant part of her family savings to develop the Bonta Friends brand, including the Hanukkah Veronica doll and book.

37.     At all relevant times, Cooper had no involvement beyond the occasional, suggested refinements of the illustrator's work. Most of these were not considered and Cooper had no control over the illustrations or Plaintiff's text.

38.     Plaintiff then created the Hanukkah Veronica doll that is currently being sold, which bears almost no resemblance to the original hand-sewn doll

Cooper created fifteen years ago. The dolls are pictured side by side below. The doll on the right is the doll on the market, and the doll on the left is the doll Cooper sewed many years ago:



39.     Plaintiff also created the packaging and trade dress for the doll and gift set, which required plentiful research and investment due to the heavy compliance requirements within the toy industry. Cooper did not participate in these activities.

40.     For example, insurance and doll registration fees alone for Hanukkah Veronica exceed $7,000 annually – an amount Plaintiff has paid without any contribution from Cooper.

41.     The doll designed by the Plaintiff had multiple unique design items. In particular, the Plaintiff's dolls have soft natural human-like hair, similar to an American Girl Doll; the doll has special shoes that matched the Plaintiff's design in

the book, the doll reflected the Heart Shaped Wings the Plaintiff included in the character design. The colors, look, feel, fabric size, clothing, shoes and face and finish of the doll are all completely different to Cooper's hand sewed original.

42.    Plaintiff also coordinated with a rabbi, Rabbi Levi Mentz, to receive support and confirmation of the accuracy of the educational section on the history of Hanukkah.

43.    Plaintiff also designed the marketing collateral and website for the doll. Cooper did not ask to be and was not involved in this development.

44.    Plaintiff designed the physical book to include fabric hearts that children could use when they performed mitzvahs.

45.    Plaintiff identified the publisher for the Hanukkah Veronica book and worked with the publisher to launch the Hanukkah Veronica products. Cooper was not involved at all.

46.    Plaintiff also purchased the insurance for her new business venture. Cooper again was not involved and has made no payments toward the insurance premiums or any of the other costs for the development of Hanukkah Veronica.

47.    Plaintiff contacted and paid the social media expert, the public relations employee, website designer, video editor, attorneys, and quality control personnel for the Hanukkah Veronica brand. Cooper provided no leads or any financial contribution.

48.     Plaintiff and her family offered warehouse, staffing, fulfillment, and shipping center services for the Hanukkah Veronica brand. Cooper's family did not store or ship a single Hanukkah Veronica doll. Plaintiff Copyrights Hanukkah Veronica.

49.     On December 5, 2020, Plaintiff filed an application for a Copyright of the Hanukkah Veronica character.

50.     The Application title for the character was: "Christmas Fairy and 8 Other Unpublished Works." Cooper was not involved in the application process.

51.     Plaintiff drafted the text sent to the United States Copyright Office entirely on her own. The Copyright Office issued Registration No. Txu002237560 on November 15, 2020 for the Chanukah Veronica text. Note: This registration spelled Hanukkah with a "CH."

52.     In March of 2021, Plaintiff also fielded questions from the United States Copyright Office about the spelling of Hanukkah (versus Chanukah) on the application. Again, Cooper was not involved.

53.     The Copyright Office ultimately issued Registration No. VAu001423519 for the Hanukkah Veronica visual material.

54.     Plaintiff bore all legal fees and costs for the copyrighting of Hanukkah Veronica.

55.     Because Plaintiff did not understand what it meant to be considered an "author," Plaintiff incorrectly put Cooper's name on the applications as an "author." However, Plaintiff did not include Cooper as a person with "Rights and Permissions" for the copyrights.

56.     Plaintiff was the only person listed for rights and permissions because she knew she had been the only one responsible for developing the Hanukkah Veronica brand as described above.

57.     Importantly, the Copyright Act of 1976 provides that copyright ownership vests initially in the author a copyrighted work. 17 U.S.C. § 201(a). The "author" is "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Here, that is person is indisputably Plaintiff – not Cooper.

58.     Plaintiff continued to develop the Bonta Friends brand, introducing Hanukkah Veronica's friends Christmas Chloe, Diwali Deepa, Kwanzaa Keisha, and Halloween Hannah.

59.     Each of these characters is copyrighted in Plaintiff's name alone, as Plaintiff developed the Bonta Friends – including Hanukkah Veronica – independent of Cooper.

**E.**   **Plaintiff Trademarks "Hanukkah Veronica: The Mitzvah Fairy."**

60.    Plaintiff realized that Hanukkah Veronica would likely appear in multiple books by virtue of her friendship with the other Bonta Friends characters.

61.    Therefore, on April 27, 2021, Plaintiff filed U.S. Trademark Application No. 90/979985 for the word mark HANUKKAH VERONICA THE MITZVAH FAIRY (the "'985 Application"). The claimed goods and services under the '985 Application include: "Series of printed babies' books; Series of printed children's books; Series of printed computer game hint books; Series of printed fiction books; Series of printed fiction and non-fiction books on a variety of topics; Series of printed fiction works, namely, novels and books; Series of printed story books; A series of fiction works, namely, printed novels and printed books featuring children's stories; A series of printed books and printed articles in the field of fun and educational children's stories; A series of printed books, printed articles, printed handouts and printed worksheets in the field of the history of Hanukkah, it's meaning, symbols and traditions; Printed children's books and dolls sold as a unit; Printed materials, namely, novels and series of fiction books and short stories featuring scenes and characters based on video games."

62.    The same day, Plaintiff filed U.S. Trademark Application No. 90/674560 for the mark  HANUKKAH VERONICA THE MITZVAH FAIRY and

ultimately received U.S. Trademark Registration 7,146,448 (the "'448" Registration) (together with the '985 Application, the "Marks").

63.    The claimed goods and services of U.S. Trademark Registration 7,146,448 include: "Doll accessories; Doll cases; Doll clothing; Doll costumes; Doll furniture; Doll house furnishings; Doll houses; Dolls; Dolls and doll accessories, namely, clothing for dolls, doll rooms, doll beds, doll houses, toy fabrics and linens for dolls and strollers for dolls; Dolls and dolls' clothing; Dolls and accessories therefor; Dolls and playsets therefor; Dolls and printed children's books sold as a unit; Dolls for Christmas; Dolls for Hanukkah; Dolls for Kwanza; Dolls for playing; Dolls in sitting posture (osuwari dolls); Dolls' beds; Dolls' clothes; Dolls' feeding bottles; Dolls' houses; Dolls' rooms; Ball-jointed dolls; Ball-jointed porcelain dolls; Ball-jointed resin dolls; Ball-jointed vinyl dolls; Bean bag dolls; Bobble head dolls; Bobblehead dolls; Bodhidharma dolls with pupils undrawn (menashi-daruma); Christmas dolls; Clothes for European dolls; Clothes for Japanese traditional dolls; Customized dolls having a face in the form of a particular adolescent who has unexpectedly or tragically died; European style dolls; Fabric dolls; Furniture for doll's houses; Furniture for dolls' houses; Girls' festival dolls and their fittings; Headwear for dolls; Helmets for dolls; Japanese traditional dolls; Kokeshi dolls; Matryoshka dolls; Paper dolls; Plastic dolls; Playsets for dolls; Plush dolls; Plush dolls created from children's drawings; Porcelain dolls; Rag dolls; Russian nesting

dolls (matryoshka dolls); Sakura dolls; Shoes for dolls; Soft sculpture dolls; Stuffed dolls; Talking dolls; Toy doll styling heads; Traditionally dressed dolls; Traditionally dressed western dolls; Traditionally dressed children's dolls; Vinyl dolls."

64.    A copy of the registration certificate for U.S. Trademark Registration 7,146,448 is attached hereto as **EXHIBIT A**.

65.    Plaintiff listed herself as the sole trademark owner for the Marks because Plaintiff was the developer of the written story, the brand, Bonta Friends, and had been the primary mover for all things Hanukkah Veronica.

66.    Cooper was made aware of Plaintiff's intent to file and filing of the applications for the Marks in Plaintiff's name alone August of 2021. As is fitting for her lack of involvement, Cooper did not object.

67.    During the development process, Plaintiff also contacted Global Toy Experts, a leading toy-industry consultancy firm which expressed interest in Hanukkah Veronica and the Bonta Friends product line.

68.    Plaintiff was the primary point of contact with Global Toy Experts.

69.    On around summer of 2021, Global Toy Experts provided Bonta Friends a potential licensing agreement for the entire Bonta Friends brand, including Hanukkah Veronica.

**F.**     **Cooper Becomes Jealous Despite Evidencing No Intent to Merge any Independent Contribution into Plaintiff's Hanukkah Veronica Brand.**

70.     Although Cooper expressed no intent to merge any independently copyrightable material into the inseparable or interdependent parts of the unitary whole of Plaintiff's Hanukkah Veronica story, she became increasingly interested in being associated with Plaintiff's Hanukkah Veronica brand as it went to market.

71.     Plaintiff originally welcomed Cooper's appearances, and she believed Cooper was supporting Plaintiff and the success of Hanukkah Veronica.

72.     However, apparently Cooper decided she wanted to be the "face" of Plaintiff's Hanukkah Veronica brand.

73.     However, Cooper's actions were apparently an effort to damage the Hanukkah Veronica brand as after Plaintiff agreed to let Cooper to participate in an out-of-state book signing event that was arranged and paid for by the venue, Cooper pulled out at the last minute and left Plaintiff scrambling to fill in. An absence at this advertised event, which included a live character appearance for the children, would have destroyed the brand's reputation with the Jewish Book Council. Cooper knew this information and was aware off the irreparable damage her absence would have caused.

74.     Needless to say, Cooper's unfounded jealousy of Plaintiff's work and recognition soured the Parties' relationship.

75.     Cooper then embarked upon a pattern of hurtful and contumacious behavior toward Plaintiff which soon escalated to obstructionism of Plaintiff's legitimate business development efforts and unfounded threats.

76.     Cooper's conduct eventually culminated in defamation in a crowded hotel lobby.

### G.     Cooper Defames Plaintiff in a Crowded Hotel Lobby; Commits Slander Per Se.

77.     Plaintiff and her husband, Rob Brant, met Cooper and her husband, Bart Williams, in the lobby of the bustling Avalon Hotel in Alpharetta to discuss Cooper's vexatious behavior and obstruction of Hanukkah Veronica's success.

78.     At this meeting, Cooper's erratic behavior reached its crescendo.

79.     Exacerbated, Cooper screamed at Plaintiff, claiming she "stole" Cooper's Hanukkah Veronica idea, that Cooper intended to sue Plaintiff, and that Cooper had no intention of showing up at the upcoming event in Atlantic City to promote a book the Plaintiff "stole."

80.     This defamatory statement was published at least to Rob Brant and Bart Williams, as well as several curious bystanders who stopped to investigate Cooper's outburst.

81.     Plaintiff was understandably shocked and concerned at this public defamation, especially because it accused her of the crime of larceny and could damage the Hanukkah Veronica brand. Plaintiff had no way of knowing what

members of her community – or even HMS or industry coworkers – were present in the crowded Avalon lobby that day.

82.   However, as a result of Cooper's defamation, Plaintiff was forced to pause all marketing and public relations efforts to avoid hemorrhaging money and eroding the already considerable goodwill she had worked so hard to build in the Hanukkah Veronica brand.

83.   Cooper's sudden claims to ownership and control of Hanukkah Veronica have clouded Plaintiff's rights in the character and grounded Plaintiff's marketing efforts to a halt.

84.   Therefore, Plaintiff brings this suit to conclusively establish she is the sole owner of the Hanukkah Veronica intellectual property and to hold Cooper responsible for her defamation, legal fees and loss of business. Specifically, in 2023, sales were less than $2,000 since Plaintiff could do no public relations or marketing.

## COUNT I – DECLARATORY JUDGMENT

85.   Plaintiff incorporates Paragraphs 1-84 as if restated verbatim.

86.   Pursuant to 28 U.S.C. § 2201, *et. seq*., an actual and justiciable controversy exists between Plaintiff and Cooper because Cooper contends that she is a joint author and has an ownership interest in Hanukkah Veronica.

87.   Plaintiff, however, denies that Cooper is a joint author and that she has any ownership interest in Hanukkah Veronica.

88.     Courts evaluate joint authorship under a two pronged test. *See Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004); *Quinn v. Powell*, No. 1:21-CV-03163-SDG, 2022 WL 1664554, at *3 (N.D. Ga. May 25, 2022).  The two prongs are: (1) intent to create a joint work; <u>and</u> (2) a contribution of independently copyrightable material. *Quinn*, 2022 WL 1664554 at *3 (citing *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1071 (7th Cir. 1994)). Cooper fails both prongs of the joint authorship test. As described above, Cooper merely relayed a family memory from more than 15 years ago. Cooper had not touched the idea since, nor was the idea original. Plaintiff, out of kindness, did all Plaintiff could to include Cooper out of friendship and because they were co-workers, even though Cooper made no tangible contribution and as a result has no legal claim to the brand created by Plaintiff.

89.     First, Cooper evidenced no intent to create a joint work. The Copyright Act defines a "joint work" as "a work prepared by two or more authors **with the intention that their contributions be merged** into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (emphasis added). "Although, as pointed out above, there is insufficient evidence of independently copyrightable contributions by [Cooper], even more fatal to any claim of joint authorship by [Cooper] is the lack of sufficient evidence of intent among the parties to be co-authors." *Horror Inc. v. Miller*, 335 F. Supp. 3d 273, 312–13 (D. Conn. 2018), *aff'd*, 15 F.4th 232 (2d Cir. 2021)

90.     As described above, Cooper merely relayed a former idea she had for a ragdoll when her daughter was a child more than 15 years ago. Cooper had not touched the idea since.

91.     Cooper had no hand in crafting Hanukkah Veronica's story. She contributed no plot points beyond the generic idea of a mitzvah or any meaningful revisions. The extent of Cooper's involvement comprised on only some suggested – but often discarded – revisions to a few early illustrations. All of this is insufficient to establish joint authorship.

92.     "Providing sketches, ideas or supervision over copyrightable material is not sufficient to make one a joint author." *BancTraining Video Sys. v. First Am. Corp.*, 956 F.2d 268 (6th Cir. 1992). Moreover, "[e]ven if two or more persons collaborate with the intent to create a unitary work, the product will be considered a 'joint work' only if the collaborators can be considered "authors." *Erickson*, 13 F.3d at 1069.

93.     An "author" has been defined as "the [wo]man who really represents, creates, or gives effect to the idea, fancy or imagination." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233 (9th Cir, 2000) (citing *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53 (1884)). Thus, an author requires more than "minimal creative or original contribution to the work." *Id.*

94.    It was Plaintiff's creative inspiration and original work that gave effect to this mitzvah fairy's character and story – not Cooper's. For all of these reasons, Cooper did not demonstrate the requisite intent to create a joint work. Therefore, Cooper fails the first prong of the joint authorship test.

95.    Second, Cooper's "mitzvah fairy" idea is not independently copyrightable. *Gaiman*, 360 F.3d at 658 ("Had someone merely remarked to McFarlane one day, "you need a medieval Spawn" or "you need an old guy to move the story forward," and McFarlane had carried it from there, and if later a copyeditor had made some helpful editorial changes, neither the suggester nor the editor would be a joint owner"). "It is a fundamental principle of our copyright doctrine that ideas, concepts, and processes are not protected from copying." *Attia v. Society of N.Y. Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999). "It is an axiom of copyright law that the protection granted to a copyrightable work extends only to the particular expression of an idea and never to the idea itself." *Reyher v. Children's Television Workshop*, 533 F.2d 87 (2d Cir. 1976). Therefore, Cooper also fails the second prong of the joint authorship test.

96.    Plaintiff lacks an adequate remedy at law for Cooper's allegations of ownership related to the Hanukkah Veronica copyright.

97.     Therefore, the Court should enter an order declaring, adjudging, and decreeing Plaintiff is the Sole author of the Hanukkah Veronica copyright and Marks.

## COUNT II – DEFAMATION PER SE

98.     Plaintiff incorporates Paragraphs 1-97 as if restated verbatim.

99.     Cooper and Plaintiff met at the Avalon Hotel in Georgia, along with Ms. Cooper's husband, Bart Williams, and Wendy Brant's husband, Rob Brant.

100.    During a conversation in the bustling hotel lobby of the Avalon Hotel, Ms. Cooper screamed at Ms. Plaintiff that she "stole" Cooper's idea.

101.    These statements falsely accuse Plaintiff of the crime of larceny and/or conversion. *See Cottrell v. Smith*, 299 Ga. 517 (2016); *Harrison v. Pool*, 24 Ga. App. 587 (1919) ("Words imputing the crime of larceny are slanderous per se."). Therefore, these statements are slanderous per se, and damage to Plaintiff is inferred. *Infinite Energy, Inc. v. Pardue*, 310 Ga. App. 355 (2011) ("Slander or oral defamation includes making charges against another in reference to his trade, office, or profession, calculated to injure him therein. This type of defamation is actionable per se and *damage is inferred*.").

102.    Cooper's statements were unprivileged communications to at least Plaintiff's husband and the other bystanders in the hotel lobby.

103.   Cooper made these statements with actual knowledge of their falsity or at least reckless disregard for their lack of truthfulness.

104.   Cooper acted out of anger and her own desire to wield complete control over a copyrighted work to which she made no independently copyrightable contribution. Thus, Cooper acted with a specific intent to injure, actual malice, and/or at least negligence.

105.   Cooper's statements were calculated to damage Plaintiff's character and business reputation among her community, manufactures, publishers, distributors, investors, and customers.

106.   Moreover, these statements are patently and unequivocally false.

107.   Therefore, Plaintiff has been harmed and damages are presumed and should be awarded in an amount to be determined by the unbiased minds of twelve fair and impartial jurors at trial.

### **COUNT III – ATTORNEYS' FEES UNDER O.C.G.A. § 13-6-11**

108.   Plaintiff incorporates Paragraphs 1-107 as if restated verbatim.

109.   Plaintiff is also entitled to recover all of her litigation expenses and costs for bringing this action, including reasonable attorney's fees, pursuant to O.C.G.A. § 13-6-11 because Defendant has acted in bad faith, been stubbornly litigious, and have caused Plaintiff unnecessary trouble and expense.

110.   It should be noted that following the egregious events in the Avalon lobby, Plaintiff continued to reach out in a professional manner and attempt to resolve any differences. A meeting was scheduled and Julie Anne Cooper refused to attend. Numerous threats have periodically followed ever since. At every turn the behavior seems erratic, unprofessional, unreasonable devoid of any  connection to the reality of what actually happened in the past three years. Most recently, a letter was sent seeking resolution of the dispute to which Julie Anne Cooper responded by returning  the  letter  to  the  firm,  scribbling  profanities  across  the  letter  and interlineating it with fighting words like "go ahead and sue" and "bring a suit if you feel so strongly." A representative screenshot is reproduced below.



## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays that the Court:

A.     For Count I of Plaintiff's Complaint, order, adjudge, declare and decree that Defendant is not a joint author of Hanukkah Veronica and has no interest in the Hanukkah Veronica copyright and Marks;

B.     For  Count  II  of  Plaintiff's  complaint,  enter  an  award  sufficient  to compensate Plaintiff for Defendant's defamation;

C.     For Count III, award Defendants their expenses, including reasonable attorneys' fees and court costs under O.C.G.A. § 13-6-11;

D.     Award Plaintiff all special, incidental, and/or consequential damages allowed by law;

E.     Award Plaintiff pre-judgment and post-judgment interest according to law;

F.     That Plaintiff's claims be tried by a trial by a jury of twelve persons; and

G.     For any further or additional relief the Court deems just and appropriate.

Respectfully submitted this the 20th day of December 2023.

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

*/s/ L. Clint Crosby*
L. Clint Crosby
Georgia Bar No. 197877
Tyler P. Bishop
Georgia Bar No. 566705
3414 Peachtree Rd. NE, Suite 1500
Atlanta, Georgia 30326
404.577.6000 (Telephone)
404.221.6501 (Facsimile)
ccrosby@bakerdonelson.com
tbishop@bakerdonelson.com

*Counsel for Plaintiff*